Robert P. Goe - State Bar No. 137019
Brandon J. Iskander - State Bar No. 300916
**GOE FORSYTHE & HODGES LLP**
17701 Cowan Avenue, Suite 210, Bldg. D
Irvine, CA 92614
rgoe@goeforlaw.com
biskander@goeforlaw.com

Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Attorneys for Judgment Creditors Erica and Joseph Vago

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LESLIE KLEIN,<br><br>      Debtor and Debtor in Possession, | Case No. 2:23-bk-10990-SK<br><br>Chapter 11 Proceeding<br><br>**NOTICE OF MOTION AND MOTION TO DISALLOW DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION PURSUANT TO 11 U.S.C. § 522(q); DECLARATION OF ERICA VAGO AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SAME**<br><br>Date:     May 3, 2023<br>Time:    9:00 a.m.<br>Place:    Courtroom 1575<br>        U.S. Bankruptcy Court<br>        255 E. Temple Street<br>        Los Angeles, CA 90012 |

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED PARTIES**:

**PLEASE TAKE NOTICE** that judgment creditors Erica and Joseph Vago ("Movants") hereby files this motion (hereinafter, the "Objection") to disallow the Debtor's claim of exemption in the real property located at 322 N. June Street, Los Angeles, CA 90004 (the "Property") in any

amount exceeding $189,050.00 pursuant to Section 522(q) of the Bankruptcy Code. This Objection is supported by the Request for Judicial Notice ("RJN") annexed hereto.

**PLEASE TAKE FURTHER NOTICE** that any response to this Objection must be filed and served no later than 14 days before the hearing on this Objection. *See* Local Bankruptcy Rule (LBR) 9013-1(f). Failure to timely file a response to the Objection may be deemed as consent to the Objection. *See* LBR 9013-1(h).

Date: April 11, 2023                    **GOE FORSYTHE & HODGES LLP**

                                        By: /s/ Brandon J. Iskander _____
                                            Robert P. Goe
                                            Brandon J. Iskander
                                            Attorneys for Creditors Joseph and Erica Vago

ii

**MEMORANDUM OF POINTS & AUTHORITIES**

Debtor has claimed a $678,391.00 homestead exemption in the Property pursuant to California Code of Civil Procedure ("C.C.P.") § 704.730 ("Homestead Exemption") which must be disallowed as a matter of federal law.   Section 522(q) operates to reduce any state law homestead exemption claim to $189,050.00 where debtor owes a debt arising from "fraud, deceit, or manipulation in a fiduciary capacity." 11 U.S.C. § 522(q)(1)(B)(ii).   Debtor's 341(a) concluded on March 13, 2023, and thus pursuant to FRBP 4003, this Motion is timely.   Accordingly, Debtor's homestead exemption claim must be disallowed.

## I.     STATEMENT OF FACTS

Movants knew Debtor for more than four decades as a fellow worshipper at temple before in 2012 retaining him as their attorney to assist in the administration of Erica Vago's deceased brother's estate and the handling of an inheritance due to her of approximately $18 million.  (See Vego Declaration attached hereto ("Vago Declaration"), and a true and correct copy of the Movants' Third Amended Complaint ("TAC") filed in *Vago, et. al v. Klein, et. al*, Case No. 20STCV25050 ("Case") attached to the RJN annexed hereto as **Exhibit "1."**   Debtor held himself out to Movants as a tax attorney and accountant whose specialty was the administration of probate estates.   As Movants' attorney, Debtor advised Movants to invest the inheritance funds in life insurance policies.   Relying on Debtor as their attorney, Movants wired to Debtor's law firm's trust account over $12.4 million for investments, plus an additional $6.5 million in funds which Debtor assured them would go to the charity of their choice.   Debtor provided Movants with written memos through his law firm (Les Klein & Associates, Inc.), apprising Movants about the favorable status of their investments and the interest being earned.   However, all of these statements were lies: Debtor did not "invest" in any life insurance policies and instead made non-recourse loans to various life insurance trusts.   If the underlying policy ever lapsed, the policy payout was forfeited.   In September 2019, Movants ultimately learned that Debtor, their attorney, had squandered their money and defrauded them out of millions of dollars.

1

On July 1, 2020, the Case was filed and on August 29, 2022, the Los Angeles Superior Court conducted a jury trial on the Movants claims.  On September 15, 2022, the jury returned a special verdict against Debtor finding him liable to both Movants for intentional misrepresentations, concealment, financial abuse, and breach of fiduciary duty.  A true and correct copy of the Judgment on Special Verdict (hereinafter "Judgment") entered by the Los Angeles Superior Court on December 2, 2022, complete with the jury's findings made on September 15, 2022 is attached to the RJN as **Exhibit "2."**

A.     **The Jury's Findings: False Representations, Concealment, and Elder Financial Abuse by Debtor in a Fiduciary Capacity**

In the Judgment, the jury found that Debtor was someone who "owed . . . fiduciary duties to act with the utmost loyalty and honesty" to both Movants.  (RJN, Ex. 2, at 11, 20.)

Concurrently, the jury specifically found that Debtor made a false representation of a fact to Erica Vago, that Debtor knew the representation was false when he made it or did so recklessly without regard for its truth, that Erica Vago reasonably relied on the representation, and her reliance on Debtor was a substantial factor in the harm caused to her, resulting in damages of $8.3 million.  (RJN, Ex. 2, at 4.)  The jury made identical findings as to Joseph Vago but without an economic damage finding.  (RJN, Ex. 2, at 13-14.)

The jury also found Debtor liable of concealment for intentionally failing to disclose a fact that Erica Vago did not know and could not have reasonably discovered, that Debtor did so with intent to deceive, that the omission was material,[1] and that Debtor's concealment was a substantial factor in causing economic damages of an addition $8.3 million.  (*See* RJN, Ex. 2, at 5-6.)  The jury made identical findings as to Joseph Vago but without an economic damage finding.  (RJN, Ex. 2, at 14-16.)

---

[1] "3. Had the omitted information been disclosed, would Erica Vago reasonably have behaved differently? __X__ Yes . . . ."  (RJN, Ex. 2, at 5.)

2

The jury also found Debtor liable for elder financial abuse for retaining Erica Vago's money or property at a time when she was 65 years of age or older, that Debtor retained her money or property for a wrongful use or with intent to defraud, harming her, and that Debtor's conduct was a substantial factor in causing that harm, for economic damages of $8.3 million. (RJN, Ex. 2, at 9-10.)

In finding that Debtor made intentional misrepresentations to his clients, concealing material information from them, and engaging in elder financial abuse, the jury also found that Debtor breached his fiduciary duty to Movants and separately found that his conduct was "outrageous." (RJN, Ex. 2, at 2, 11-12.)

## B. Debtor's Admissions Thus Far in this Bankruptcy

In his Amended Schedules and Statements filed in the instant bankruptcy case on March 8, 2023, Debtor admitted that he owned over $14 million of assets, even after valuing some of them as Unknown, and that he has no dependents. A true and correct copy of the Debtor's Amended Schedules and Statements filed as Docket No. 34 in In re Leslie Klein, Bankruptcy Case No. 2:23-bk-10990-SK is attached to the RJN as **Exhibit "3."** Debtor also claimed a homestead exemption of $678,391 in the Property on Schedule C.

Debtor listed the Movant's Claims on Schedule D in the amount of $24,880,721.51.

## II. ARGUMENT

### A. Section 522(q) of the Bankruptcy Code Applies to Limit Debtor's Homestead Exemption Claim When He Owes a Debt Arising from Fraud, Deceit, or Manipulation as a Fiduciary

Section 522(q) of the Bankruptcy Code provides in pertinent part:

(q)

(1) As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) which exceeds in the aggregate $125,000 if—

. . .

(B) the debtor owes a debt arising from—

3

. . .

    (ii) <u>fraud, deceit, or manipulation in a fiduciary</u>
<u>capacity</u> or in connection with the purchase or sale of
any security registered under section 12 or 15(d) of the
Securities Exchange Act of 1934 or under section 6 of
the Securities Act of 1933 . . . .

11 U.S.C. § 522(q) (emphasis added).  The Ninth Circuit Court of Appeals has held that as used in Section 522(p) of the Bankruptcy Code, "any amount of interest" means the ownership of real property.  *Greene v. Savage (In re Greene)*, 583 F.3d 614, 624 (9th Cir. 2009).  In sum, if a debtor seeks to exempt his/her ownership of a residence under state law, and owes a debt arising from fraud, deceit, or manipulation in a fiduciary capacity, federal law nevertheless limits the exemption to an inflation-adjusted $125,000 set by the Judicial Conference.[2]

## B.    Debtor Committed Fraud as a Fiduciary to the Movants

Pursuant to Cal. Civ. Code § 3294(c)(3) (emphasis added), fraud is defined as "<u>an</u> <u>intentional misrepresentation, deceit, or concealment of a material fact known to the defendant</u> with the intention on the part of the defendant of thereby depriving a person of property or legal rights or <u>otherwise causing injury</u>."

Here, the jury specifically found Debtor separately liable for both intentional misrepresentation and concealment of a material fact with injuries sustained by Erica Vago of $8.3 million.

Debtor may contend that he disputes liability and has filed an appeal of the Case. However, exemptions are fixed on the Petition Date, and on the Petition Date, Debtor owed debts arising from his fraud as a fiduciary to the Movants.  *See Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206, 1211 (9th Cir. 2010) ("what is frozen as of the date of filing the petition is the value of the debtor's exemption").

---

[2] The Section 522(q) cap was adjusted by the Judicial Conference of the United States on April 1, 2022 to $189,050. 87 F.R. 6625.

## C.    Debtor Engaged in Manipulation as a Fiduciary

As noted in one of the first cases to interpret Section 522(q), *In re Presto*,[3] "manipulation" is not a term that is defined either in the Bankruptcy Code or any state common law.  *In re Presto*, 376 B.R. 554, 597 (Bankr. S.D. Tex. 2007).  However, in connection with a claim by a disgruntled ex-spouse that Mr. Presto concealed the existence of a tax refund that she might otherwise have a right to, the Texas bankruptcy court analyzed the term as follows:

> The most applicable dictionary definition of manipulation is "to change by artful or unfair means so as to serve one's purpose."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 706 (10th Ed. 2001). This definition establishes a much lower standard of proof than common law fraud, and the facts described above under the fraud analysis also satisfy manipulation. Concealing the existence of the tax refund from Evelyn Presto in violation of the terms of the Divorce Decree serving one's own purpose by "unfair means." The Debtor did not send Evelyn Presto the money because, as he testified, he was unhappy about giving so much money to his ex-wife, or, as evidenced by his Wells Fargo account statements, he had already spent the funds and could not afford to send her a check for that amount. Both circumstances would serve the Debtor's own purpose. Thus, the Court finds that the Debtor's concealment was manipulation in a fiduciary capacity.

*Id.* at 597-98.  Under this standard, Debtor undoubtedly engaged in manipulation because the jury found that he retained Erica Vago's inheritance funds for a wrongful use or intent to defraud, that

---

[3] *In re Presto* involved the bankruptcy of a former Enron executive in Texas, a state that permits debtors to claim an unlimited homestead exemption.  While the legislative history of Section 522(q) is scarce, there are some indications in the Congressional Record that Section 522(q) was intended to prevent ousted executives from taking advantage of generous state law exemptions.  *See* House Judicial Committee Report on the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Dissenting Views, Additional Dissenting Views, and Additional Minority Views, H.R. Rep. No. 109-3, pt. 1, at  594-95:

> The debtor owes a debt arising from a violation of the Federal or State securities laws; fraud, deceit or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934, or section 6 of the Securities Act of ''1933; any civil remedy under 18 U.S.C. 1964 [the RICO statute]; any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years. The last clause does not include simple negligence resulting in serious physical injury or death. This reflects a concern among some proponents of the bill that doctors whose malpractice caused serious physical injury or death not lose their unlimited homestead exemption. The limitations due to securities violations and the RICO judgments were added in response to concerns that former Enron Chairman Kenneth Lay would be entitled to an unlimited homestead exemption in his native Texas should he file for bankruptcy. Mr. Lay has not, however, filed for bankruptcy, and it is not yet clear whether he will be found by a court to have run afoul of any of the enumerated offenses.

his conduct was a substantial cause of Erica Vago's loss of $8.3 million.  (RJN, Ex. 2, at 9-10.)  As a fiduciary, Debtor had a duty to hold the funds safe for his clients and return them upon request.  Debtor did the opposite and retained the funds for himself.  Accordingly, Debtor manipulated his attorney-client relationship to commit elder financial abuse.

### D. Debtor is Not Entitled to a Homestead Exemption in any amount exceeding $189,050

Section 522(q) contains a savings clause as follows: "Paragraph (1) shall not apply to the extent the amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) is reasonably necessary for the support of the debtor and any dependent of the debtor."  11 U.S.C. § 522(q)(2).  As noted previously, there are not many cases interpreting Section 522(q), but as was noted in In re Presto, "reasonably necessary for the support of the debtor or any dependent of the debtor" means that after taking into account "other income and exempt property of the debtor, present and anticipated, . . .  the appropriate amount to be satisfied for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed, but taking into account the special needs of the debtor."  *In re Presto*, 376 B.R. 554, 598 (Bankr. S.D. Tex. 2007).

The provision "reasonably necessary for the support of the debtor or any dependent" is far from unknown in California.  For example, California Code of Civil Procedure § 704.140 provides that "an award of damages or a settlement arising out of a personal injury is exempt to the extent necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor."  Cal. Civ. Proc. Code § 704.140(b).  The Ninth Circuit BAP has held that in determining whether an exemption amount is reasonably necessary, the Court should examine: "the debtor's present and anticipated living expenses and income; the age and health of the debtor and his or her dependents; the debtor's ability to work and earn a living; the debtor's training, job skills and education; the debtor's other assets and their liquidity; the debtor's ability to save for retirement; and any special needs of the debtor and his or her dependents." *Roberts v. Pomeroy (In re*

6

1   *Pomeroy)*, 2017 Bankr. LEXIS 1116, *9 (B.A.P. 9th Cir. April 24, 2017) (citing *Moffat v.*

2   *Habberbush (In re Moffat)*, 119 B.R. 201 (B.A.P. 9th Cir. 1990)).

3          Here, whether the standard is "basic needs" or a multi-factor test to determine how

4   otherwise well off the Debtor is, the result is the same.  As Debtor admitted on his Amended

5   Schedules (Docket No. 34), Debtor owns or has an interest in over $14 million of property,

6   including a 5% interest in a life insurance policy business with a value of "Unknown."  (RJN, Ex.

7   4, at 11, 14.)  Moreover, Debtor admitted that he has no dependents.  (RJN, Ex. 4, at 34.)  Thus, it

8   is a very simple question with a very easy answer whether Debtor who owns $14 million of

9   property needs a homestead exemption exceeding $189,050 for his support.  The answer is simply:

10  No.  The same result occurs under the *Moffat* factors: (1) Debtor is an attorney who earns nearly

11  $18,000 per month and although his net income is currently negative, he admitted that he intends

12  to sell his various rental properties to reduce his current liabilities; (2) there is no evidence that

13  Debtor's age or health prevents him from continuing his law practice and Debtor admitted he has

14  no dependents; (3) Debtor is an attorney, which is a highly skilled and lucrative profession; (4)

15  Debtor has significant investment holdings, which indicates that he is already capable of saving

16  for retirement, and (5) there is no evidence that Debtor has any special needs requiring him to

17  retain any more than $189,050 from the Property.  Movants submit that the *Moffat* factors were

18  directed to show compassion to truly indigent debtors, not attorneys who have been found to have

19  defrauded their clients of millions of dollars.

20

21  / / /

22

23  / / /

24

25  / / /

26

27

28                                                          7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    <u>CONCLUSION</u>**

  **WHEREFORE**, based upon the foregoing, Movants respectfully requests the Court enter an Order that (i) disallows the Debtor's Homestead Exemption in any amount exceeding $189,050 and (ii) grants any other relief that the Court deems just and proper under the circumstances of this case.

             Respectfully submitted,

Dated:  April 11, 2023      **GOE FORSYTHE & HODGES LLP**

         By:  <u>/s/ Brandon J. Iskander</u>
           Robert P. Goe
           Brandon J. Iskander
           Attorneys for Movants Erica Vago and Joseph Vago

### <u>DECLARATION OF ERICA VAGO</u>

I, Erica Vago, am a judgment creditor of the Debtor's and one of the Movants seeking that the Court disallow Debtor's homestead exemption.  Except where otherwise stated, I have personal knowledge of the facts set forth below.  I make this declaration in support of our Motion to Disallow Debtor's Claim of Homestead Exemption ("Motion"), to which this declaration is attached.  Unless otherwise defined herein, all terms have the same meanings as they do in the Motion.

1.     I have reviewed the Statement of Facts set forth in the Motion, as well as the exhibits attached hereto.  They are all true and correct based on my personal knowledge.

2.     I knew Debtor for more than four decades as a fellow worshipper at my temple before in 2012 retaining him as our attorney to assist in the administration of my deceased brother's estate and the handling of an inheritance due to me of approximately $18 million.

3.     Debtor held himself out to me as a tax attorney and accountant whose specialty was the administration of probate estates.  As our attorney, Debtor advised me to invest the inheritance funds in life insurance policies.  Relying on Debtor as our attorney, I wired to Debtor's law firm's trust account over $12.4 million for investments, plus an additional $6.5 million in funds which Debtor assured me would go to the charity of my choice.  Debtor provided me with written memos through his law firm (Les Klein & Associates, Inc.), apprising me about the favorable status of our investments and the interest being earned.  However, all of these statements were lies: Debtor did not "invest" in any life insurance policies and instead made non-recourse loans to various life insurance trusts.  If the underlying policy ever lapsed, the policy payout was forfeited.   In September 2019, I ultimately learned that Debtor, my attorney, had defrauded me out of millions of dollars.

4.     On July 1, 2020, I filed the Vago v. Klein, et al. Case.

5.     On August 29, 2022, the Los Angeles Superior Court conducted a jury trial on the claims of my husband and me.

6.      On September 15, 2022, the jury returned a special verdict against Debtor finding Debtor liable to both me and my husband for intentional misrepresentations, concealment, financial abuse, and breach of fiduciary duty, which as of the bankruptcy filing was in the approximate amount of $24,880,721.51.

7.      For the reasons set forth in the Motion, I believe that good cause exists to disallow Debtor's     homestead     exemption     in     any     amount     exceeding     $189,050.00.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 11, 2023, at Cancun, Mexico.

_____
Erica Vago

10

1

## **REQUEST FOR JUDICIAL NOTICE**

2          Federal courts may take judicial notice of facts which are "capable of accurate and ready

3    determination by resort to sources whose accuracy cannot reasonably be questioned." Federal Rule

4    of Evidence 201(c)(2). This includes proceedings in other courts, both within and without the

5    federal judicial system, if those proceedings have a direct relation to the matters at issue. *U.S. ex*

6    *rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). The

7    court may also take judicial notice of undisputed facts that are contained in extrinsic materials,

8    such as public land records. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.

9    1988). Based on the foregoing, Movants request the Court take judicial notice of the following:

10         1.       A true and correct copy of the Movants' Third Amended Complaint ("TAC") filed

11   in *Vago, et. al v. Klein, et. al*, Case No. 20STCV25050 ("Case") is attached hereto and

12   incorporated herein as **Exhibit "1."**

13         2.       A true and correct copy of the Judgment on Special Verdict entered by the Los

14   Angeles Superior Court on December 2, 2022 in the Case is attached hereto and incorporated

15   herein as **Exhibit "2."**

16         3.       A true and correct copy of the Debtor's Amended Schedules and Statements filed

17   as Docket No. 34 in In re Leslie Klein, Bankruptcy Case No. 2:23-bk-10990-SK is attached hereto

18   and incorporated herein as **Exhibit "3."**

19

20                                          Respectfully submitted,

21   Dated:  April 11, 2023              **GOE FORSYTHE & HODGES LLP**

22                                   By:  /s/ Brandon J. Iskander
                                         Robert P. Goe
23                                       Brandon J. Iskander
                                         Attorneys for Movants Erica Vago and Joseph
24                                       Vago

25

26

27

28                                          1

# EXHIBIT 1

# EXHIBIT 1

BRIAN A. PROCEL (State Bar No. 218657)
bprocel@millerbarondess.com
ADAM M. AGATSTON (State Bar No. 325114)
aagatston@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:     (310) 552-4400
Facsimile:     (310) 552-8400

Attorneys for Plaintiffs
JOSEPH VAGO and ERICA VAGO

**FILED**
Superior Court of California
County of Los Angeles

**04/08/2021**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Deputy
P. Cortez

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| JOSEPH VAGO and ERICA VAGO,<br><br>          Plaintiffs,<br><br>     v.<br><br>LESLIE KLEIN, an individual; LES KLEIN & ASSOCIATES, INC., a corporation; KENNETH KOLEV KLEIN, an individual; and DOES 1-25,<br><br>          Defendants. | **CASE NO. 20STCV25050**<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>(1)   **BREACH OF FIDUCIARY DUTY;**<br>(2)   **FRAUD (INTENTIONAL MISREPRESENTATION; FRAUDULENT INDUCEMENT; FALSE PROMISE);**<br>(3)   **SECURITIES FRAUD;**<br>(4)   **NEGLIGENT MISREPRESENTATION;**<br>(5)   **CONVERSION;**<br>(6)   **PROFESSIONAL NEGLIGENCE;**<br>(7)   **UNLAWFUL BUSINESS PRACTICES;**<br>(8)   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>(9)   **FINANCIAL ELDER ABUSE;**<br>(10) **ACCOUNTING; AND**<br>(11) **CONSPIRACY TO COMMIT FRAUD.**<br><br>**[DEMAND FOR JURY TRIAL]** |

Electronically Received 04/08/2021 12:49 PM

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

506306.1

EXHIBIT "1"
Page 1 of 39

1      Plaintiffs Erica Vago and Joseph Vago ("Plaintiffs" or the "Vagos") hereby allege in their

2  Complaint against Defendants Leslie Klein ("Klein"); Les Klein & Associates, Inc.; and Kenneth

3  Kolev Klein (collectively "Defendants") as follows:

4                           **SUMMARY OF THE ACTION**

5      1.      The Vagos knew Klein for more than four decades before getting involved with

6  him on a professional level.  The Vagos and Klein are Orthodox Jews and they attended the same

7  temple at various times.

8      2.      In October 2012, Erica's brother Robert Schweitzer passed and left her nearly $18

9  million.  The inheritance was located in a foreign bank account.  The Vagos had never dealt with

10  anything like this before.  They were not experienced in matters relating to taxation, probate, or

11  financial planning.  They needed help.

12      3.      Klein saw an opportunity and pounced.  Klein held himself out to be a jack of all

13  trades.  He told the Vagos he was an attorney, accountant, and financial planner.  From the outset,

14  Klein created a tangled web of professional and personal relationships with the Vagos that was

15  designed to extricate their money from them.  Klein exploited the Vagos' age, trust, and common

16  faith to steal their fortune out from under them.  And he did so when they were most vulnerable,

17  grieving the loss of Erica's uncle and brother.  Klein used deception, outright lies, and faux-

18  appeals to religious authority to effect and conceal his fraud for years.  Klein even used his son

19  Kenneth—also a lawyer—to help maintain his swindle.  But now the jig is up.  After enduring

20  eight years of lies and deception—and losing $11 million—the Vagos discovered Klein to be a

21  conman and a thief.  It is time for him to atone.

22      4.      Just days following Robert's passing, the Vagos were home sitting Shiva to mourn

23  his loss.  Klein came by ostensibly to pay his respects.  He instead offered his services an attorney

24  and accountant.  The Vagos knew they might need help, so they arranged to meet Klein.

25      5.      About a week later, the Vagos met with Klein to discuss Robert's estate.  The

26  Vagos had learned in the meantime that Erica had inherited more than $18 million from her

27  brother, located in a foreign bank account.  The Vagos did not know what to do.  This situation

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

506306.1

was new to them.  But they hoped Klein could help.  At the meeting, the Vagos told Klein about

Erica's inheritance.  He pounced.

6.      Klein initiated his fraudulent scheme right then and there.  He told the Vagos that

this type of thing was his "specialty."  Klein claimed that as a tax attorney and CPA, he took care

of this type of issue for his clients "all the time."  Klein offered to deal with the estate tax return

and any related affairs as well.  And he would figure out the best way to repatriate Erica's

inheritance.  Relieved that their friend could guide them through this time, the Vagos gave Klein a

$7,000 retainer check that day.

7.      In the Vagos' next meeting with Klein, he outlined a financial plan to repatriate and

invest Erica's inheritance.  He said they should invest the money in life insurance policies.  These

were "just like cash" and much smarter to hold than stocks or bonds.  Klein named several

prominent members of the Jewish Community for whom he supposedly made similar investments.

He said his sister-in-law had invested in such policies.  Klein even said the Grand Rabbi in New

York told him personally this was a proper strategy.

8.      But first, Klein said, Erica would have to wire the money to LK&A's client trust

account.  Klein would arrange the life insurance investments from there.  If the Vagos needed any

of the inheritance for themselves, Klein would provide them funds from the client trust account.

When Erica said she wanted to donate a portion of the inheritance to charity, Klein said he would

set up a foundation for that purpose.

9.      Trusting their friend, the Vagos agreed.  Over the next few years, Erica wired more

than $12.4 million of her inheritance to the LK&A client trust account, and sent the rest to Klein's

charitable foundation.  Klein then purportedly invested $6.5 million of those funds in life

insurance trusts.  In regular meetings at the Vagos' home, Klein provided formal memos from his

law firm outlining how well the investments were doing.  In person and through these memos,

Klein conveyed that the Vagos' investments were earning millions of dollars in interest.  But it

was all a fraud.

10.      Klein did not "invest" in life insurance policies.  Instead, he made non-recourse

loans to various life insurance trusts.  These trusts each owned a stranger's life insurance policy or

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   policies.  In return, the Vagos got non-recourse promissory notes from the trusts, promising

2   payment with interest upon the death of the policyholder.  If the specified underlying insurance

3   policy ever lapsed, the Vagos would lose their "investment" entirely.  These instruments were

4   worth almost nothing to the Vagos, who were both over 60 years old when they received them.

5   Even if these were legitimate investments, the Vagos would likely never get their money back.

6   They would need to outlive the insureds in order to see a cent of their investment.  What's more,

7   Klein said the Vagos had to pay hundreds of thousands of dollars annually to help pay premiums

8   on the policies.  And Klein listed himself as the trustee for each of the trusts the Vagos "invested"

9   in.  The entire structure of these "investments" was designed to defraud the Vagos.

10      11.      But all the Vagos knew was what their friend and fiduciary Klein explained, both in

11   formal memos and face-to-face in their dining room.  In 2019, Klein told the Vagos that the life

12   insurance "investments" had earned $6 million in interest alone.  Then Klein's scheme unraveled.

13      12.      In September 2019, Erica asked Klein for $1 million from the client trust account.

14   This was a small portion of the inheritance, especially given the supposed earnings from the

15   Vagos' life insurance investments.  And Klein had given Erica funds from her inheritance upon

16   request before, so why should now be different?  But it was.  For the first time in seven years,

17   Klein said "no."  And then he delivered more bad news: all the interest the life insurance policies

18   had earned was gone.

19      13.      This made no sense to the Vagos.  Klein had come to their home several times each

20   year since 2012 to explain how well the investments were doing.  They had memos on law firm

21   letterhead outlining each investment's earnings.  How could they disappear overnight?  The only

22   explanation turned out to be the true one: Klein was lying all along.  Erica demanded her money

23   back.  Klein refused.  And he refuses to this day.  The Vagos ultimately came to the only

24   reasonable conclusion: that their friend of more than a decade a swindled them out of millions of

25   dollars.

26   **THE PARTIES, JURISDICTION, AND VENUE**

27      14.      Plaintiffs Joseph Vago and Erica Vago are individuals who reside in Los Angeles

28   County, California.

15.    Defendant Leslie Klein is and at all relevant times was an individual domiciled in the County of Los Angeles and is a citizen of the State of California.

16.    Les Klein & Associates, Inc. ("LK&A") is a California professional law corporation with a principal place of business in Los Angeles County, California.  Klein is the sole member and founding attorney of Les Klein & Associates, Inc.  On information and belief, Plaintiffs allege that some of the wrongful acts complained of herein were committed by Klein, acting on behalf LK&A, or were committed by employees, representatives or agents of Defendant LK&A.  To the extent Klein committed wrongful acts by or through LK&A, LK&A is not only directly liable to Plaintiffs but is also liable for the acts of Defendant Klein alleged in this Complaint as his alter ego.  Plaintiffs are informed and believe, and based thereon allege, that recognition of the privilege of separate existence of Klein and LK&A would promote injustice because of any or all of the following reasons: Defendant Klein dominated and controlled Defendant LK&A by commingling funds and other assets of his and LK&A's for his own convenience, by diverting funds and other assets of LK&A to non-company uses, and by failing to adequately capitalize Defendant LK&A; Defendant LK&A is a mere shell, instrumentality, or conduit for Klein's personal business; and by other actions according to proof.

17.    On information and belief, Defendant Kenneth Kolev Klein is and at all relevant times was an individual domiciled in the County of Los Angeles and is a citizen of the State of California.

18.    Plaintiffs are ignorant of the true names, capacities, relationships and extent of participation in the conduct herein alleged of the defendants sued herein as DOES 1 through 25, inclusive, but on information and belief allege that said defendants are legally responsible to them. Plaintiffs will amend this Complaint to allege the true names and capacities of DOES 1 through 25 when ascertained.

19.    This Court has jurisdiction over the claims alleged herein because Plaintiffs seek relief pursuant to the laws of the State of California and the amount in controversy exceeds $25,000, and Defendants are subject to the personal jurisdiction of this Court.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

20.     Venue in Los Angeles Superior Court is proper because the individual Defendants reside in Los Angeles County, and the corporate Defendants have their principal place of business in Los Angeles County.

**GENERAL ALLEGATIONS**

**A.    Klein Develops a Decades-Long Friendship with Plaintiffs**

21.     Joseph first met Klein in 1970 at Temple Chassam Sofer in Los Angeles, where both were congregants.  As members of Los Angeles's small Orthodox Jewish community, they began a friendship centered around Temple and religious celebrations.

22.     Over the years, theirs expanded into a family friendship.  Klein and his wife had four children in the 1970s, then Joseph married Erica in 1982, and the Vagos had a daughter.

23.     When the Vagos moved to a different area of Los Angeles and changed synagogues in 1982, the friendship continued.  The Vagos would regularly see the Kleins at Shabbat dinners and other religious events.  When the Klein or Vago children had a Bar or Bat mitzvah, the other family attended.  When the Klein or Vago children had an engagement party, the other family went.  And when the Klein or Vago children got married, the other family was invited.

24.     Klein was one of relatively few Orthodox Jewish attorneys in the Los Angeles area when he began practicing law in the 1970s.  And he used this distinction to garner trust within the Orthodox Community.  But until 2012 and the events giving rise to this case, the Vagos never used him as an attorney.  Klein was a friend and a fellow religious community member.

**B.    Klein Approaches the Vagos While Erica Grieved Her Brother**

25.     2012 and 2013 were tough years for Erica.  In June 2012, she lost an uncle with whom she was close.  Then in October 2012, she lost her brother.  A few months later, in July 2013, her mother passed.  Erica and Joseph had to deal with three lost loved ones and three estates in short succession.  It was in this vulnerable time that Klein struck.

26.     Erica's brother, Robert Schweitzer, died on October 3, 2012, and willed the bulk of his estate to Erica.  Robert's estate included roughly $18 million in a foreign bank account.

27.     A few days following Robert's death, the Vagos were at their home sitting Shiva, as is Jewish tradition.  Klein arrived at the Shiva to pay his respects, or so the Vagos thought.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   Klein immediately offered his services as a lawyer and accountant.  He said he could handle any

2   issues that might come up with Robert's estate.  The Vagos agreed to let their longtime friend and

3   attorney give them counsel during this difficult time.  They arranged to meet the following week.

4         **C.      Klein Convinces the Vagos to Let Him Invest Erica's Inheritance in Life**

5                 **Insurance Policies**

6         28.      About a week later, the Vagos and Klein met to discuss Robert's estate.  Erica

7   learned before the meeting that Robert had left her more than $18 million, located in a foreign

8   bank account.  The Vagos did not know how to handle this situation, but they hoped their friend

9   could help.  At the meeting, Erica told Klein about the inheritance.  Klein pounced.

10        29.      Klein said this issue was his "specialty."  He told Erica that as a lawyer, CPA, and

11  financial adviser, he took care of this type of thing for clients "all the time."  He would deal with

12  the will.  He would prepare the estate tax returns.  He would figure out the best way to repatriate

13  the money.  He would even set up investments for the money once the Vagos got it.

14        30.      The Vagos were convinced.  They agreed to let their longtime friend and attorney

15  guide them through this unfamiliar territory.  Erica wrote Klein a $7,000 check that day for the

16  services he promised to provide.

17        31.      At their next meeting, Klein presented the Vagos with his plan for repatriating

18  Erica's inheritance.  Klein recommended that the Vagos invest the inheritance in life insurance

19  policies.  Klein explained the safety and benefits of this strategy.  He said that each investment

20  would garner 10 to 12% interest each year, plus a premium on the principle in some cases, all to

21  be paid when they cashed out.  And Klein emphasized how simple cashing out would be.  He

22  advised that investments in these policies were "just like cash."  He promised the Vagos could

23  "sell them for cash any time [they] wanted."

24        32.      Klein added that the best way to effect the transaction would be to wire the money

25  to the LK&A client trust account.  Klein would then invest the money from his firm's client trust

26  account into life insurance policies.  When the Vagos mentioned they wanted to donate substantial

27  sums to charity, Klein suggested they wire the money to the EKLK Foundation, which Klein set

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   up and controlled.  Klein said the EKLK Foundation would then distribute funds to charities the

2   Vagos chose.

3        33.    Finally, Klein said that if the Vagos wanted cash from Erica's inheritance for

4   themselves, they should ask him for it.  He would write them a check from the client trust account.

5        34.    The Vagos had not previously heard of Klein's investment strategy, so Klein

6   reassured them.  He said he facilitated the same type of transactions for "all my clients."  He

7   named acquaintances for whom he had set up life insurance investments, including Klein's sister-

8   in-law.  He said he invested his own money and his family's money in life insurance policies.

9   Klein added that prominent tax attorneys and accountants "in Century City" confirmed to him that

10  this was a safe and proper strategy.

11       35.    Klein also used their shared faith to further gain the Vagos' trust and blind them to

12  his scheme.  Klein claimed to have invested in life insurance policies for several prominent

13  members of the Jewish community.  He named specific members for whom he had supposedly

14  carried out this strategy, including his sister-in-law.  Klein pointed out one member that invested

15  $60 million in life insurance policies with him.  As icing on the cake, Klein stated that he spoke

16  with the Grand Rabbi in New York, who explicitly approved these types of transactions.

17       **D.    Klein Obtains Erica's Inheritance and Claims to "Invest" $8.3 Million in**

18            **Strangers' Life Insurance Policies**

19       36.    After the Vagos' second meeting with Klein, Erica followed her trusted attorney's

20  instructions.  Over the next four years, Erica arranged more than $15 million in wire transfers from

21  the foreign bank account holding her inheritance.  She made each transfer at Klein's direction and

22  to accounts Klein controlled.

23       37.    About $12.4 million went to the LK&A client trust account, and the rest went to

24  Klein's EKLK Foundation.

25       38.    As the money came in, Klein represented to the Vagos that he was executing the

26  investment strategy he had convinced them to follow.  Klein told the Vagos he was investing

27  much of Erica's inheritance in life insurance policies.  These life insurance "investments" turned

28

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    out to be egregiously improper for the Vagos, especially in light of Klein's promises about their

2    safety and liquidity.

3         39.    The life insurance "investments" were not really investments; they were non-

4    recourse loans to irrevocable life insurance trusts.  Each life insurance trust purportedly contained

5    a life insurance policy or policies—on the life of a complete stranger to the Vagos—which served

6    as the sole security for the Vagos' loan.  The principal and interest on each loan were not due until

7    the death of the policyholder.  For Erica and Joseph—who were respectively 59 and 61 when

8    Robert passed—this term rendered the loans almost valueless.  They did not know when—if

9    ever—the loans would become due.

10        40.    And what if the policyholder stopped paying premiums?  The provisions on this

11   term were especially perverse.  If the policyholder defaulted, that would constitute a default on the

12   Vagos' loan. What could the Vagos recover if the borrower defaulted?  Just one asset: the lapsed

13   insurance policy.  In other words, nothing.  The Vagos could get paid upon death of the

14   policyholder should they outlive that person, or not at all.  These ill-advised, illiquid assets were

15   not the safe, liquid investments—"just like cash"—that Klein promised the Vagos.

16        41.    There was more.  The Vagos did not know the policyholders for the policies

17   backing each life insurance trust, but they knew the trustee for each: Leslie Klein.  Each

18   "investment" was memorialized in a non-recourse promissory note, and Klein signed each one on

19   behalf of the life insurance trust borrower as its trustee.  Klein thereby represented both sides of

20   the transaction.  He was the borrower and lender for each loan.  Klein never disclosed he was

21   doing this, and the Vagos certainly never gave him permission to do so.

22        42.    Finally, the Vagos' names were nowhere to be found on the promissory notes.

23   Rather, they were executed for the benefit of the "Estate of Robert Schweitzer."  It could not be

24   more evident that Klein structured these "investments" in a manner designed to confuse and

25   deceive the Vagos.  Klein knew that these "investments" were never going to pay out.

26        43.    Though these promissory notes were nearly worthless to the Vagos, by Klein's

27   doing, they still had a huge carrying cost.  To keep the underlying life insurance policies from

28   lapsing, Klein told the Vagos that they would have to pay hundreds of thousands of dollars per

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1  year toward insurance premiums.  This money was in addition to the millions already loaned to the

2  policy trusts.

3      44.    To further reassure the Vagos that these transactions were proper, Klein again

4  resorted to their common faith.  Jewish law prohibits one Jew from lending money and charging

5  interest to another.  But Rabbis have developed a type of agreement—the Heter Iskoh—that

6  allows Jews to enter into the equivalent of such a transaction without offending Jewish law.  To

7  keep the transaction in seeming compliance with Jewish law, Klein provided a Heter Iskoh with

8  each promissory note.  Klein and two witnesses—both unknown to the Vagos—signed each Heter

9  Iskoh.

10      45.    On or around April 28, 2014, Klein told the Vagos that he had invested $6.5

11  million of Erica's inheritance into various life insurance policies.  Klein provided a memo on

12  LK&A letterhead stating that $6.5 million from the client trust account had been invested in life

13  insurance policies, and an additional $600,000 would be paid each year for the policies'

14  premiums.  By 2019, Klein had put $1.8 million more of the Vagos' money into these life

15  insurance trusts, for a total of $8.3 million.

16      **E.**    **Klein Initiated and Sold Life Insurance Policies in Violation of the California**

17          **Insurance and Corporations Codes**

18      46.    Unbeknownst to the Vagos, and contrary to his representations, Klein violated

19  California statutory law when he initiated and transacted in the life insurance policies in which he

20  "invested" Erica's inheritance.

21      **1.**    **The California Insurance Code**

22      47.    The California Insurance Code imposes numerous obligations on one initiating or

23  transacting in life insurance, life settlements, and viatical settlements.   Section 10113.1(g) of the

24  Insurance Code defines a "[f]raudulent life settlement act" to include "[e]ntering into stranger-

25  originated life insurance" and "[t]ransact[ing] in the business of life settlements in violation of

26  laws requiring a license, certificate of authority, or other legal authority for the transaction of the

27  business of life settlements."  Insurance Code section 10113.2(b)(1) states that "a person may not

28

1  enter into, broker, or solicit life settlements pursuant to Section 10113.1 unless that person has

2  been licensed by the commissioner under this section."

3      48.     On information and belief, each of the life insurance policies securing Klein's

4  "investments" from Erica's inheritance was a stranger-oriented life insurance policy as defined by

5  section 10113.1(w) of the Insurance Code.  Klein initiated these policies for the benefit of himself

6  and various trusts that he created and for which he served as trustee.  But Klein and these trusts

7  had no insurable interest in the lives of the insured under those policies.

8      49.     In addition, Klein was never licensed to transact in life settlements.  But the

9  "investments" he arranged for the Vagos were just that.

10     50.     Despite these clear violations of the California Insurance Code, Klein repeatedly

11 assured the Vagos that their investments in life insurance were legal and proper.

12              **2.     The California Corporations Code**

13     51.     The California Corporations Code regulates who can engage in securities

14 transactions on behalf of others.  Corporations Code section 25004(a) defines "[b]roker-dealer" as

15 "any person engaged in the business of effecting transactions in securities in this state for the

16 account of others or for that person's own account."  Corporations Code section 25019 defines

17 "[s]ecurity" to include a "viatical settlement contract or a fractionalized or pooled interest therein,"

18 and a "life settlement contract or a fractionalized or pooled interest therein."  Corporations Code

19 section 25210 states that "no broker-dealer shall effect any transaction in, or induce or attempt to

20 induce the purchase or sale of, any security in this state unless the broker-dealer has first applied

21 for and secured from the commissioner a certificate, then in effect, authorizing that person to act in

22 that capacity."

23     52.     The life insurance "investments" that Klein arranged, oversaw, and effected for the

24 Vagos constitute "securities" under the Corporations Code.  And Klein acted as a "broker-dealer"

25 under the Corporations Code by effecting and inducing the life insurance "investments."  Yet

26 Klein never received a certificate or license to act as a broker-dealer in California.

27     53.     Despite this clear violation of the California Corporations Code, Klein repeatedly

28 assured the Vagos that their investments in life insurance policies were legal and proper.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**F.    Klein's Son Reassures the Vagos That Their Investments Are Safe**

54.    After receiving the promissory notes and corresponding Heter Iskoh, the Vagos were satisfied that Erica's inheritance was wisely invested.  But they had one concern: what would they do if something happened to Klein?

55.    Klein had organized everything following Robert's passing.  He dealt with probate. He dealt with taxes.  He was the sole trustee for the life insurance trusts the Vagos invested in. And he and LK&A possessed the millions in inheritance that had yet to be invested, donated to charity, or distributed to Erica.  The Vagos wanted to know that their assets would be safe if something happened to Klein.

56.    This time, Klein enlisted his son, Kenneth, to reassure the Vagos.  Klein, Kenneth, and the Vagos met at the Vagos' home to discuss their concern.  At that meeting, Klein repeated his usual lies.  He told the Vagos their money was safely invested in life insurance policies.  He told them the investments would continue earning interest.  He told them they could cash out when they wanted.  At each lie, Kenneth nodded in agreement.

57.    At the end of the meeting, Kenneth gave the Vagos the reassurance they were looking for.  Kenneth told the Vagos that, should something happen to his father, Kenneth would personally make sure that their money and investments would remain safe.  That was a lie.

58.    Klein had already swindled the Vagos.  But Kenneth nevertheless reassured the Vagos that their investments would be safe in the future (i.e., that they were necessarily safe at the time the representation was made).   The Vagos understood Kenneth's comment to mean that their investments were safe and would remain that way.  The Vagos relied on Kenneth's representation to their detriment.  And they transferred more money to and made additional investments with Klein in reliance on Kenneth's representations.

**G.    Klein Reassures the Vagos by Regularly Providing Them Funds from Erica's Inheritance**

59.    As far as the Vagos could see, the portion of Erica's inheritance that Klein did not initially invest in life insurance policies—more than $8.5 million—remained in their control.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

60.     In the first year following Robert's death, Erica told Klein she wanted to donate some of her inheritance to Kollel Shomrei HaChomos and other charities, in accordance with her brother's wishes.  Erica asked for $800,000 from her inheritance to donate, and Klein provided the money.

61.     In the following years, Klein gave the Vagos about $5,300 each month to support their lives.  Klein also paid their credit card bills over this time.

62.     And when the Vagos requested more than these regular payments, Klein complied.  In 2015, the Vagos decided to purchase a duplex in Los Angeles as an investment property.  They needed about $1.8 million for the purchase, so they went to Klein.  Klein provided the money from the client trust account, and the Vagos purchased the apartment.

63.     In fact, the Vagos used Klein's daughter as the broker in their purchase of the duplex.

### H.     Klein Reassures the Vagos by Providing Regular Updates on Their Insurance Policy "Investments"

64.     In the years after Klein "invested" an initial $6.5 million of Erica's inheritance in life insurance policies, he kept in regular contact with the Vagos.  Every six weeks or so, Klein visited the Vagos at their home or hosted them at his home to update the Vagos on their insurance policy investments.

65.     On these visits, Klein would bring along formal memoranda on LK&A letterhead outlining the status of each policy.  Over the months and years, these memoranda reflected a successfully growing investment.

66.     For instance, a July 1, 2017 memorandum that Klein gave to the Vagos listed $9.4 million in total liens on insurance policies.  The memorandum also listed $3,205,000 in "interest" that the Vagos' investment had earned since 2012.  A true and correct copy of this memorandum is attached hereto as Exhibit A.

67.     A memorandum Klein provided on a visit about ten months later showed how their investments had grown.  In this May 2, 2018 memorandum, Klein listed $10.2 million in total

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  liens on insurance policies, and $3,685,000 in total "interest" earned.  A true and correct copy of

2  this memorandum is attached hereto as Exhibit B.

3        **I.        The Vagos Discover Klein's Fraud**

4        68.    Each meeting gave the Vagos more reassurance that their money was safe.

5        69.    On or around September 15, 2019, Klein went to the Vagos' home for their regular

6  meeting.  At this meeting, Erica told Klein she needed more of her inheritance money this time,

7  about $1 million.

8        70.    Erica did not expect this request to be an issue.  When she had asked for substantial

9  sums of her inheritance money before, Klein obliged.

10        71.    Moreover, during the previous seven years, Klein told the Vagos their investments

11  were thriving.  In meeting after meeting and memo after memo, Klein represented that the Vagos'

12  investments were earning millions.  At their last meeting, Klein told the Vagos that the policies

13  had earned more than $6 million in interest.  Klein had previously said that these investments were

14  "as good as cash."  So when Erica asked for just $1 million, she expected Klein to provide it.

15        72.    For the first time in years, Klein had a different message.  He said the $6 million in

16  "interest" was gone.

17        73.    The Vagos were shocked.  They asked how this was possible.  Klein falsely stated

18  that "hedge funds are not paying interest anymore" on life insurance policies, so their earnings

19  over the past seven years had vanished.  Erica said she could not accept this.  She demanded Klein

20  return her money.

21        74.    Since that day, Erica has repeatedly demanded that Klein return their money.  He

22  has refused.

23        **J.        Theft, Deception, and Fraud Were Klein's Modus Operandi**

24        75.    Had Klein told them the truth about his history overseeing client funds, the Vagos

25  would have run the other direction.  On information and belief, the Vagos were just the latest in a

26  string of Klein's victims.  These other marks, like the Vagos, entrusted Klein with their money

27  only to have him lie, embezzle, create fraudulent reports, and refuse to return funds when his

28  clients so demanded.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

76.     On information and belief, Hubert Scott was one such victim.  In 2011, when Mr. Scott was 80 years old, Klein took over his financial life.  And just like he did with the Vagos, Klein "invested"—i.e. loaned—millions of dollars of Mr. Scott's money in trusts for which Klein was trustee.  These included two of the very same irrevocable life insurance trusts in which Klein supposedly "invested" the Vagos' money: the Stuart Yorkshire Irrevocable Life Insurance Trust and the Rosalia Feldman Irrevocable Life Insurance Trust.  The result has naturally been litigation with Mr. Scott's family and an investigation by the California Board of Accountancy, Case number AC-2019-62.

77.     On information and belief, Klein also preyed upon Frank and Vera Menlo and their family.  There, as here, Klein convinced an elderly Orthodox Jewish couple to give him control of their fortune.  For 20 years, Klein has served as sole trustee of the nearly 100 trusts that Mr. and Mrs. Menlo created for their family members, which collectively control millions of dollars.  After spending years misappropriating the trusts' funds, Klein has spent at least the last eight years—and counting—refusing to provide an accounting for the trusts.  His refusals led dozens of the trusts' beneficiaries to file suit in 2012.  Defying countless requests from the trusts' beneficiaries, eight years of litigation, and even several court orders, Klein to this day refuses to account for the millions he is charged with overseeing.

**K.     Klein Violated Several Rules of Professional Conduct**

78.     As the Vagos' accountant and lawyer, Klein was subject to myriad regulations and rules of professional conduct, beyond the duties and standards of care imposed by general California law on fiduciaries.

**1.     Rules Governing Attorneys**

79.     Pursuant to California Business and Professions Code sections 6076 and 6077, the State Bar of California and California Supreme Court has promulgated California's Rules of Professional Conduct to govern California attorneys.  The Rules of Professional Conduct that Klein's aforementioned misconduct violated include the following.

80.     Rule 1.7(b) states: "A lawyer shall not, without informed written consent from each affected client . . . , represent a client if there is a significant risk the lawyer's representation of the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  client will be materially limited by the lawyer's responsibilities to or relationships with another

2  client, a former client or a third person, or by the lawyer's own interests."

3      81.    Paragraph (c) of rule 1.7 provides that, "[e]ven when a significant risk requiring a

4  lawyer to comply with paragraph (b) is not present, a lawyer shall not represent a client without

5  written disclosure of the relationship to the client" if "the lawyer has . . . a legal, business,

6  financial, professional, or personal relationship with or responsibility to a party . . . in the same

7  matter." A "matter" includes a business transaction.

8      82.    Rule 1.8.1 forbids a lawyer from entering into a business transaction with a client

9  or acquiring a pecuniary interest adverse to a client unless three requirements are met:

10      a.    the transaction or acquisition and its terms are fair and reasonable to the
             client and the terms and the lawyer's role in the transaction or acquisition
11           are fully disclosed and transmitted in writing to the client in a manner that
             should reasonably have been understood by the client;
12

13      b.    the client either is represented in the transaction or acquisition by an
             independent lawyer of the client's choice or the client is advised in writing
14           to seek the advice of an independent lawyer of the client's choice and is
             given a reasonable opportunity to seek that advice; and
15

16      c.    the client thereafter provides informed written consent to the terms of the
             transaction or the acquisition, and to the lawyer's role in it.
17

18      83.    Rule 1.15 regulates how a lawyer must treat client funds. Paragraph (c) forbids a

19  lawyer or law firm from depositing or commingling its funds with funds held in a client trust

20  account. Paragraph (d)(3) requires that a lawyer "maintain complete records of all funds,

21  securities, and other property of a client or other person coming into the possession of the lawyer

22  or law firm." Paragraph (d)(4) requires that a lawyer "promptly account in writing to the client or

23  other person for whom the lawyer holds funds or property." And paragraph d(7) requires that a

24  lawyer "promptly distribute, as requested by the client or other person, any undisputed funds or

25  property in the possession of the lawyer or law firm that the client or other person is entitled to

26  receive."

27      84.    Rule 1.4 requires that a lawyer, inter alia, "promptly inform the client of any

28  decision or circumstance with respect to which disclosure or the client's informed consent is

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

16

1  required by these rules or the State Bar Act"; "keep the client reasonably informed about

2  significant developments relating to the representation, including promptly complying with

3  reasonable requests for information and copies of significant documents when necessary to keep

4  the client so informed"; and "explain a matter to the extent reasonably necessary to permit the

5  client to make informed decisions regarding the representation."

6      85.    Klein complied with none of these duties.  He never advised the Vagos that he had

7  a personal interest in the life insurance trusts.  He never mentioned that he would be on both sides

8  of their investments.  He never told them that his personal interests, and those of other clients,

9  conflicted with the Vagos' interests.  He never obtained informed written consent for anything.

10 He never provided a proper accounting of their funds.  He commingled his funds with theirs.  He

11 commingled the funds of other clients with theirs without accounting for what each client

12 contributed.  And when the Vagos asked for their money back, Klein refused.

13          **2.    Rules Governing Accountants**

14     86.    California imposes similarly extensive duties on Klein as an accountant.

15     87.    The California State Board of Accountancy's Rules of Professional Conduct are

16 codified in title 16 of the California Code of Regulations ("CCR"), Division 1.  Section 57 of this

17 title states that an accountant "shall not concurrently engage in the practice of public accountancy

18 and in any other business or occupation which impairs the licensee's independence, objectivity, or

19 creates a conflict of interest in rendering professional services."

20     88.    16 CCR section 68 states that an accountant, "after demand by or on behalf of a

21 client, for books, records or other data, whether in written or machine sensible form, that are the

22 client's records shall not retain such records."

23     89.    16 CCR section 58 requires that accountants "comply with all applicable

24 professional standards," which include the American Institute of CPA's ("AICPA") Code of

25 Professional Conduct.

26     90.    In turn, AICPA Code of Professional Conduct Rule 1.100.001 requires that an

27 accountant "shall maintain objectivity and integrity, shall be free of conflicts of interest, and shall

28 not knowingly misrepresent facts or subordinate his or her judgment to others."

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

506306.1

17

EXHIBIT "1"
Page 17 of 39

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

91.    Rule 1.130.010 states that an accountant violates Rule 1.100.001 if he "makes, or permits or directs another to make, materially false and misleading entries in an entity's financial statements or records"; "fails to correct an entity's financial statements or records that are materially false and misleading"; "signs, or permits or directs another to sign, a document containing materially false and misleading information."

92.    Rule 1.110.010.12 states that, when a conflict of interest exists, an accountant "should disclose the nature of the conflict of interest to clients and other appropriate parties affected by the conflict and obtain their consent to perform the professional services."

93.    Rule 1.110.010.04 offers the following examples of conflicts of interests: "[p]roviding services to both a vendor and a purchaser who are clients . . . in relation to the same transaction"; "[a]dvising a client to invest in a business in which, for example, the immediate family member of the [accountant] has a financial interest"; and "[a] member who is an officer, a director, or a shareholder of an entity has significant influence over the entity, and that entity has a loan to or from a client."

94.    Klein trampled his duties as an accountant the same way he trampled his duties as an attorney.  He never disclosed his egregious conflicts of interest.  He did not properly account for the Vagos' money.  And he created and proffered false and misleading records of the Vagos' funds and investments.

**L.    The Vagos Remain Willing to Settle This Matter in Rabbinical Court**

95.    Keeping to the religious principles that Klein abandoned, the Vagos first sought to settle this dispute in rabbinical court, the Beis Din.  The Vagos demanded that Klein submit to the Beis Din by sending a summons from the local Beis Din servicing Los Angeles, the Rabbinical Council of California "RCC."  Klein initially agreed to appear, but he never followed through.

96.    After months of delay, Klein suggested an alternative type of Beis Din known as a Zabla, in which each party selects a single Rabbi, and then the two Rabbis work with the parties to select a mutually acceptable third Rabbi to adjudicate the dispute.  The Vagos and Klein each selected a Rabbi, but Klein has refused to agree to a third Rabbi from the RCC or the local Los Angeles community, instead suggesting only Rabbis from New York or Israel.  These selections

1    would be unreasonable at any time, but are especially so amid the current COVID pandemic and

2    concomitant travel restrictions.  Klein's choices are transparent, bad faith efforts to delay his day

3    of reckoning.

4    　　　97.　　Despite Klein's stall tactics, the Vagos remain willing to resolve this matter in the

5    Beis Din if Klein agrees to and fully participates in the process on reasonable terms.  This includes

6    entering into an arbitration agreement with the RCC or a mutually acceptable third Rabbi from the

7    local Los Angeles community, an expeditious arbitration schedule, and reasonable discovery of

8    documents and electronically stored information.  If Klein participates in the Beis Din in good

9    faith under these conditions, the Vagos will dismiss this Complaint.

### FIRST CAUSE OF ACTION

### *Violation of Fiduciary Duty*

### (Against Klein)

13    　　　98.　　Plaintiff repeats and realleges each and every foregoing and subsequent allegation

14    contained in the Complaint, and further alleges as follows:

15    　　　99.　　A fiduciary relationship existed between the Vagos and Klein at all relevant times.

16    Klein served as the Vagos' lawyer, accountant, financial adviser, and agent.  Klein held more than

17    $15 million on their behalf.  Based on these roles, Klein owed both legal and ethical duties and

18    obligations to the Vagos to adhere to the utmost standards of care, loyalty, candor, and full

19    disclosure.  Klein was also obligated to comply with the applicable rules of professional conduct

20    as an accountant and lawyer in his dealings with the Vagos.

21    　　　100.　　The Vagos relied on Klein to discharge his duties and obligations in a manner that

22    would cause no detriment to their rights.

23    　　　101.　　Klein breached his duties and obligations to the Vagos, and was negligent, by,

24    among other things:

25    　　　　　　a.　　Failing to protect the Vagos' interests;

26    　　　　　　b.　　Failing to make full and complete disclosures of pertinent information and

27    　　　　　　　　　documents, including the fact that Klein represented the counterparty on all

28    　　　　　　　　　the Vagos' insurance "investments";

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

c.   Placing his own interests over the interests of the Vagos, including by advising the Vagos to transfer all of Erica's inheritance into the LK&A client trust account and lending millions of dollars of the Vagos' money to trusts for which he was trustee;

d.   Placing other clients' interests over the interests of the Vagos;

e.   Continuing to represent the Vagos despite having conflicts of interest;

f.   Refusing to return funds held by Klein in trust when the Vagos requested them;

g.   Failing to return documents held by Klein in trust when the Vagos requested them;

h.   Violating the California Insurance Code, including Code sections 10113.1 and 10113.2, by, inter alia, transacting in life insurance, life settlements, and/or viatical settlements without a license;

i.   Violating the California Corporations Code, including Code section 25210, by, inter alia, effecting securities transactions without a license;

j.   Violating the California Accountancy Act Rules of Professional Conduct, including Rules 57, 58, and 68;

k.   Violating the AICPA's Code of Professional Conduct, including Rules 1.100.001, 1.110.010 and 1.130.010; and

l.   Violating the State Bar of California's Rules of Professional Conduct, including Rules 1.4, 1.7, 1.8.1, and 1.15.

102.   As a direct and consequential result of Klein's failure to properly discharge his fiduciary duties in connection with his representation of the Vagos, the Vagos have been damaged and suffered pecuniary loss in an amount in excess of $11,000,000.

103.   In committing the acts alleged herein, Klein is guilty of oppression, fraud and/or malice within the meaning of California Civil Code section 3294, entitling the Vagos to punitive or exemplary damages in an amount appropriate to punish Klein and make an example of him to the community.

1

## SECOND CAUSE OF ACTION

2

### *Fraud (Intentional Misrepresentation; Fraudulent Inducement; False Promise)*

3

### (Against All Defendants)

4      104.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation

5   contained in the Complaint, and further alleges as follows:

6      105.    As further set forth above, Klein made numerous false or misleading

7   representations to the Vagos, as well as several material omissions.  Klein represented to the

8   Vagos that he specialized in handling large foreign inheritances.  He told them he handled such

9   transactions all the time.  Klein said that the most efficient way to repatriate Erica's inheritance

10   was to transfer it to the LK&A client trust account and invest it in life insurance policies from

11   there.  Klein said investments in life insurance policies were safe and "just like cash."  He told the

12   Vagos they could cash out these investments whenever they wanted.  Klein said he confirmed with

13   other experts, including prominent lawyers in Century City, that investing in life insurance

14   policies this way was safe and legal.  Klein stated that the Grand Rabbi in New York told him that

15   he specifically approved of this type of investment.  Klein said he organized similar investments

16   for all of his clients, including several prominent members of the Los Angeles Jewish Community.

17   Klein said his wife had invested money in life insurance policies this way.  Klein said he invested

18   his own money in similar policies.  And Klein concealed that he was the trustee for each life

19   insurance trust in which he invested the Vagos' money.

20      106.    For years after supposedly "investing" the initial $6.5 million of the Vagos' money

21   in life insurance policies, Klein told them their investment was growing.  In meetings at the

22   Vagos' home roughly every six weeks from the polices' purchase through late 2019, Klein falsely

23   told the Vagos they were receiving substantial returns on their life insurance investments.  Klein

24   often provided formal memoranda on law firm letterhead falsely suggesting the same.  In one

25   meeting with the Vagos, Klein and his son Kenneth assured the Vagos that their investments were

26   safe.  Klein and his son told the Vagos that if something happened to the elder Klein, Kenneth

27   would make sure the Vagos retained access to their money and that their investments would

28   remain safe.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

107.    These representations were false, and Defendants knew it.  They were intended to and did induce the Vagos into sending and entrusting Klein with all of Erica's inheritance.  The Vagos reasonably and justifiably relied on these misrepresentations and sent Klein more than $15 million as a result.  Had the Vagos known that these were false representations, they never would have entrusted Klein with their money.

108.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have suffered damages in excess of $11,000,000, with the exact amount to be proven at trial.

109.    In committing the acts alleged herein, Defendants are guilty of oppression, fraud and/or malice within the meaning of California Civil Code section 3294, entitling the Vagos to punitive or exemplary damages in an amount appropriate to punish Leslie and Kenneth Klein and make an example of them to the community.

## THIRD CAUSE OF ACTION

### *Securities Fraud, California Corp. Code § 25401*

### (Against Klein)

110.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

111.    California Corporations Code section 25019 defines a "security" to include a "viatical settlement contract or a fractionalized or pooled interest therein," or a "life settlement contract or a fractionalized or pooled interest therein."

112.    As set forth above, Klein offered to sell securities to the Vagos in the State of California by means of numerous communications including untrue statements of material fact or omitting to state material facts necessary to make the statements made, in light of the circumstances under which the statements were made, not misleading.  Among other materially false and misleading statements, Klein (i) stated that he specialized in handling large foreign inheritances; (ii) stated that he handled repatriation and investment of foreign inheritances all the time; (iii) stated that the most efficient way to repatriate Erica's inheritance was to transfer it to the LK&A client trust account and invest it in life insurance policies from there; (iv) said these investments in life insurance policies were safe, legal, proper, and "just like cash"; (v) said the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    Vagos could cash out these investments whenever they wanted; (vi) said that he confirmed with

2    other accounting and legal experts that investing in life insurance policies was the optimal way to

3    repatriate Erica's inheritance; (vii) said that the Grand Rabbi in New York told Klein that he

4    specifically approved of this type of investment; (viii) said he coordinated similar investments for

5    all of his clients; (ix) said that several prominent members of the Los Angeles Jewish community

6    successfully invested millions in life insurance policies this way; (x) said that his wife invested in

7    similar policies; (xi) said that he invested his own money in life insurance policies; and (xii)

8    represented orally and through formal LK&A memoranda that the Vagos' existing "investments"

9    in life insurance policies were appreciating and earning substantial interest.

10         113.    These representations were false, and Klein knew it.  They were intended to and did

11    induce the Vagos into sending and entrusting Klein with all of Erica's inheritance.  The Vagos

12    reasonably and justifiably relied on these misrepresentations and sent Klein more than $15 million

13    as a result.  Had the Vagos known that these were false representations, they never would have

14    entrusted Klein with their money.

15         114.    As a direct and proximate result of Klein's fraudulent conduct, Plaintiffs have

16    suffered damages in excess of $11,000,000, with the exact amount to be proven at trial.

17         115.    In committing the acts alleged herein, Klein is guilty of oppression, fraud and/or

18    malice within the meaning of California Civil Code section 3294, entitling the Vagos to punitive

19    or exemplary damages in an amount appropriate to punish Klein and make an example of him to

20    the community.

21                                **<u>FOURTH CAUSE OF ACTION</u>**

22                                 ***Negligent Misrepresentation***

23                                 **(Against All Defendants)**

24         116.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation

25    contained in the Complaint, and further alleges as follows:

26         117.    As further set forth above, Defendants made numerous false or misleading

27    representations to the Vagos, as well as several material omissions, which were intended to and

28    did induce the Vagos to send LK&A millions of dollars, to "invest" much of this money in life

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

THIRD AMENDED COMPLAINT

insurance policies, and to leave these funds in Klein's control.  Among others, Kenneth represented to the Vagos that he would ensure their investments would be safe if something should happen to Klein.  The Vagos understood from this comment that Kenneth represented their investments were safe at the time he made that representation.  Kenneth had an obligation to determine that the Vagos' investments were safe at the time he made that representation.

118.    When the Defendants made the misrepresentations described above, they had no reasonable grounds for believing them to be true.

119.    The Vagos reasonably and justifiably relied on these misrepresentations and trusted Klein with more than $15 million as a result.  Had the Vagos known that these were false representations, they never would have entrusted Klein with their money.

120.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have suffered damages in excess of $11,000,000, with the exact amount to be proven at trial.

### FIFTH CAUSE OF ACTION

#### *Conversion*

#### (Against Klein and LK&A)

121.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

122.    Induced by his lies, the Vagos provided an identifiable sum of money to Klein.

123.    At all relevant times, the Vagos had a right to immediate possession of their property transferred to Klein and LK&A.

124.    At all relevant times, Klein was the sole individual controlling LK&A's client trust account.

125.    Klein interfered with Plaintiffs' right to immediate possession of their property by, among other things, misappropriating, commingling, and otherwise misusing their money for various improper and illegal purposes, including illegal and unethical investments in life insurance trusts.  Klein also outright refused to return the Vagos' money when they so demanded after learning of his fraud in 2019.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

24

126.    As a proximate result of Klein's and LK&A's conversion of the Vagos' property, the Vagos have been harmed in an amount to be determined at trial, but in excess of $11 million.

127.    In committing the acts alleged herein, Klein is guilty of oppression, fraud and/or malice within the meaning of California Civil Code section 3294, entitling the Vagos to punitive or exemplary damages in an amount appropriate to punish Klein and make an example of him to the community.

### SIXTH CAUSE OF ACTION

#### *Professional Negligence*

#### (Against Klein and LK&A)

128.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

129.    As an attorney, accountant, and financial adviser, Klein owed the Vagos duties of care, competence, loyalty, diligence, full and fair disclosure, utmost candor, and the duty to use and possess such knowledge, ordinary care, and skill as is commonly used and possessed by other attorneys, accountants, and financial advisers in the community under like circumstances.

130.    Klein breached his duties and obligations to the Vagos, and was negligent, by, among other things:

a.    Failing to protect the Vagos' interests;

b.    Failing to make full and complete disclosures of pertinent information and documents, including the fact that Klein represented the counterparty on all the Vagos' insurance "investments";

c.    Placing his own interests over the interests of the Vagos, including by advising the Vagos to transfer all of Erica's inheritance into the LK&A client trust account and lending millions of dollars of the Vagos' money to trusts for which he was trustee;

d.    Placing other clients' interests over the interests of the Vagos;

e.    Continuing to represent the Vagos despite having conflicts of interest;

f.    Refusing to return funds held by Klein in trust when the Vagos requested

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

them;

g.  Failing to return documents held by Klein in trust when the Vagos requested them;

h.  Violating the California Insurance Code, including Code sections 10113.1 and 10113.2, by, inter alia, transacting in life insurance, life settlements, and/or viatical settlements without a license;

i.  Violating the California Corporations Code, including Code section 25210, by, inter alia, effecting securities transactions without a license;

j.  Violating the California Accountancy Act Rules of Professional Conduct, including Rules 57, 58, and 68;

k.  Violating the AICPA's Code of Professional Conduct, including Rules 1.100.001, 1.110.010 and 1.130.010; and

l.  Violating the State Bar of California's Rules of Professional Conduct, including Rules 1.4, 1.7, 1.8.1, and 1.15.

131.   As a direct and proximate result of Klein's multiple breaches, Plaintiffs were harmed in an amount to be determined at trial, but in excess of $11,000,000.

## SEVENTH CAUSE OF ACTION

### *Unfair Business Practices - Violation Business and Professions Code Section 17200*

### **(Against All Defendants)**

132.   Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

133.   Plaintiffs are consumers and/or otherwise have standing to raise a claim under Business and Professions Code Section 17200.

134.   As described further above, Defendants engaged in unfair, unlawful, and fraudulent business practices on several grounds, including:

a.  Fraudulently inducing Plaintiffs to transfer Erica's inheritance to the LK&A client trust account through several intentional misrepresentations;

b.  Making material misstatements and omissions in connection with offering

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    to sell and selling securities to Plaintiffs;

2    c.    Acting as a broker-dealer of securities in violation of Corporations Code

3    section 25210;

4    d.    Brokering life settlements and/or viatical settlements without a license in

5    violation of 10113.2(b)(1);

6    e.    Committing fraudulent life settlement acts under 10113.1(g) of the

7    Insurance Code by entering into stranger-originated life insurance and

8    transacting in the business of life settlements without a license therefor;

9    f.    Failing to make full and complete disclosures of pertinent information and

10    documents, including the fact that Klein represented the counterparty on all

11    the Vagos' insurance "investments";

12    g.    Placing his own interests over the interests of the Vagos, including by

13    advising the Vagos to transfer all of Erica's inheritance into the LK&A

14    client trust account and lending millions of dollars of the Vagos' money to

15    trusts for which he was trustee;

16    h.    Placing other clients' interests over the interests of the Vagos;

17    i.    Continuing to represent the Vagos despite having conflicts of interest;

18    j.    Refusing to return funds held by Klein in trust when the Vagos requested

19    them; and

20    k.    Failing to return documents held by Klein in trust when the Vagos

21    requested them;

22    l.    Violating the California Corporations Code, including Code section 25210,

23    by, inter alia, effecting securities transactions without a license;

24    m.    Violating the California Accountancy Act Rules of Professional Conduct,

25    including Rules 57, 58, and 68;

26    n.    Violating the AICPA's Code of Professional Conduct, including Rules

27    1.100.001, 1.110.010 and 1.130.010; and

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    o.    Violating the State Bar of California's Rules of Professional Conduct,

2        including Rules 1.4, 1.7, 1.8.1, and 1.15.

3    135.    Moreover, Klein and LK&A have a pattern and practice of preying on the elderly

4 and members of the Orthodox Jewish community in the same way they preyed on the Vagos.  This

5 practice includes using fraud and deceit to obtain control of their assets, which Klein then

6 misappropriates for his own purposes in violation of his legal and professional obligations.  When

7 his victims demand their money back or at least an accounting of their assets, Klein then lies,

8 obfuscates, and refuses to comply.

9    136.    In effecting his scheme, Klein also has a pattern and practice of transacting in life

10 insurance policies and securities without a proper license, in violation of California's Corporations

11 and Insurance Codes.

12    137.    As a direct and proximate result of Klein's unfair, unlawful, and fraudulent

13 business practices, Plaintiffs were harmed in an amount to be determined at trial, but in excess of

14 $11,000,000.  As a result of Defendants' actions, Plaintiffs have lost more than $11,000,000.

15 Plaintiffs are entitled to recover in restitution these funds.

16    **EIGHTH CAUSE OF ACTION**

17    ***Intentional Infliction of Emotional Distress***

18    **(Against Klein)**

19    138.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation

20 contained in the Complaint, and further alleges as follows:

21    139.    Klein's conduct was extreme and outrageous.  Klein exploited his longstanding

22 relationship and shared faith with the Vagos at a time when they were grieving and extremely

23 vulnerable.

24    140.    The Vagos suffered severe emotional distress because of Klein's conduct.

25    141.    The Vagos have been damaged by Klein's conduct in an amount to be proven at

26 trial.

27    142.    Klein's conduct was malicious, oppressive, and fraudulent, justifying an award of

28 punitive damages.

506306.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

## NINTH CAUSE OF ACTION

### *Financial Elder Abuse, California Welfare & Institutions Code § 15610.30*

### (**Against All Defendants**)

143.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

144.    Joseph Vago was born in 1951 and attained the age of 65 in 2016. Erica Vago was born in 1953 and attained the age of 65 in 2018.  Therefore, during Klein's fraud, Plaintiffs were "elders" as defined in section 15610.27 of the California Welfare and Institutions Code.

145.    Klein has taken, secreted, misappropriated, and retained for a wrongful use and with an intent to defraud, an amount exceeding $11 million from the Vagos.

146.    Klein's son Kenneth knowingly assisted in Klein's taking, secreting, appropriating, obtaining, and retaining for a wrongful use the Vagos' personal property.

147.    As a direct and proximate result of Klein's multiple breaches, and Kenneth's assistance thereof, Plaintiffs have suffered and will continue to suffer substantial damages in an amount to be determined at trial, but in excess of $11 million.

148.    As a result of Defendants' actions, Plaintiffs were forced to retain counsel to file this Complaint.  For the reasons alleged herein, Plaintiffs allege that Defendants' actions were committed fraudulently, willfully, and maliciously, and constitute financial elder abuse under Welfare and Institutions Code section 15610.30 and, therefore, that Plaintiffs are entitled to a mandatory award of attorneys' fees and costs incurred in this matter under Welfare and Institutions Code section 1567.5.

## TENTH CAUSE OF ACTION

### *Accounting*

### (**Against Klein and LK&A**)

149.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

150.    As alleged herein, a fiduciary relationship existed between the Vagos and Klein. Klein violated his fiduciary duties to the Vagos in several ways, as described herein.  As a result

1 of these violations, the Vagos have been denied full and complete information regarding the status

2 of their funds that Klein obtained, as well as the investments Klein made on their behalf.

3      151.    A full and complete accounting is necessary to determine the amount of money and

4 assets that belong to the Vagos.  A determination of the full amount owed to the Vagos in

5 connection with Klein's misconduct cannot be ascertained in the absence of an accounting.

6 ## ELEVENTH CAUSE OF ACTION

7 ### *Conspiracy to Commit Fraud*

8 ### (Against Klein and Kenneth Klein)

9      152.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation

10 contained in the Complaint, and further alleges as follows:

11      153.    On information and belief, sometime prior to Kenneth Klein's 2014 meeting with

12 the Vagos, Leslie Klein and Kenneth Klein entered into a conspiracy to defraud the Vagos by

13 convincing them to entrust Erica's inheritance with Leslie Klein and to invest in various life

14 insurance policy trusts that he represented.  Leslie Klein and Kenneth Klein agreed and intended

15 that Leslie would make false representations to the Vagos to thereby obtain control of and

16 misappropriate Erica's inheritance.

17      154.    This fraudulent scheme has damaged Plaintiffs in a sum to be proven at trial, but in

18 excess of $11,000,000.

19      155.    In committing the acts alleged herein, Leslie Klein and Kenneth Klein are guilty of

20 oppression, fraud and/or malice within the meaning of California Civil Code section 3294,

21 entitling the Vagos to punitive or exemplary damages in an amount appropriate to punish them

22 and make an example of them to the community.

23 ## PRAYER FOR RELIEF

24 **WHEREFORE**, Plaintiffs pray for judgment against Defendants and for relief as follows:

25 (1)    For compensatory damages in a sum of no less than $11,000,000, according to

26        proof.

27 (2)    For restitution pursuant to Cal. Bus & Prof. Code § 17200 *et seq.*;

28 (3)    For punitive and exemplary damages in an amount sufficient to punish Defendants

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    and deter such conduct;

2    (4)    For attorneys' fees;

3    (5)    For costs;

4    (6)    For an accounting as set forth herein;

5    (7)    That the Court order that either a constructive trust be imposed upon those funds

6    which Klein and LK&A improperly obtained as described hereinabove, or in the

7    alternative, that a preliminary and permanent injunction issue enjoining Klein and

8    LK&A from transferring, hypothecating or spending any of the assets in their

9    possession, under their control, or in their names;

10    (8)    For pre-judgment and post-judgment interest; and

11    (9)    Such other and further relief as the court deems just or proper.

12

13    DATED:  April 8, 2021                    MILLER BARONDESS, LLP

14

15                                        By: _____

16                                            BRIAN A. PROCEL
                                            Attorneys for Plaintiffs
17                                            JOSEPH VAGO and ERICA VAGO

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1

## <u>**DEMAND FOR JURY TRIAL**</u>

2        Plaintiffs hereby demands a jury trial.

3

4    DATED:  April 8, 2021                    MILLER BARONDESS, LLP

5

6                                      By: _____

7                                          BRIAN A. PROCEL
                                           Attorneys for Plaintiffs
8                                          JOSEPH VAGO and ERICA VAGO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

506306.1

32

THIRD AMENDED COMPLAINT

## INDEX OF EXHIBITS

| Exhibit No. | Description | Pg. No. |
|---|---|---|
| A. | Memo from Leslie Klein to Erica Vago; Dated July 1, 2017; Re:  Lien on policies | 34 |
| B. | Memo from Leslie Klein to Erica Vago; Dated May 2, 2018; Re:  Lien on policies | 36 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

# EXHIBIT A

LAW OFFICES OF

# LES KLEIN & ASSOCIATES, INC.

A LAW CORPORATION

—

14245 Ventura Boulevard

3rd Floor

Sherman Oaks, CA

91423-2740

Tel (818) 501-2663

Fax (818) 783-5987

—

*California Offices*

Inglewood

Los Angeles

San Fernando Valley

San Gabriel

Sherman Oaks

*National Offices*

Baltimore, Maryland

Washington D.C.



| To: | **ERICA VAGO** |
| --- | --- |
| | Estate of Robert L. Schweitzer |
| **From:** | **LESLIE KLEIN** |
| **Date:** | **July 1, 2017** |
| **Subject:** | **LIEN ON POLICIES** |

| | | |
| --- | --- | --- |
| A. | ERNEST and HEDY WEINBERGER | $2,600,000 |
| B. | IRVING and BELLA HEILBRUN | $2,600,000 |
| C. | MORTON SILBERBERG | $2,600,000 |
| D. | ISABELLA GANDL | $600,000 |
| E. | ANN RADOW | <u>$1,000,000</u> |
| | Total | $9,400,000 |

## INTEREST

| | |
| --- | --- |
| 2012 | $85,000 |
| 2013 | $650,000 |
| 2014 | $720,000 |
| 2015 | $790,000 |
| 2016 | $640,000 |
| 2017 | <u>$320,000</u> |
| Total | $3,205,000 |

# EXHIBIT B



LAW OFFICES OF

# LES KLEIN & ASSOCIATES, INC.

A LAW CORPORATION

—

14245 Ventura Boulevard
3rd Floor
Sherman Oaks, CA
91423-2740

Tel (818) 501-2663
Fax (818) 783-5987

—

*California Offices*

Inglewood

Los Angeles

San Fernando Valley

San Gabriel

Sherman Oaks

*National Offices*

Baltimore, Maryland

Washington D.C.

**To:**       **ERICA VAGO**
            Estate of Robert L. Schweitzer
**From:**    **LESLIE KLEIN**
**Date:**    **May 2, 2018**
**Subject:** **LIEN ON POLICIES**

A.   **ERNEST and HEDY WEINBERGER** ................. $2,800,000

B.   **IRVING and BELLA HEILBRUN** ................... $2,800,000

C.   **MORTON SILBERBERG** ......................... $2,800,000

D.   **ISABELLA GANDL** .............................. $600,000

E.   **ANN RADOW** .................................. $1,200,000

      Total       .......................... $10,200,000

## INTEREST

      2012 ..................................... $85,000
      2013 .................................... $650,000
      2014 .................................... $720,000
      2015 .................................... $790,000
      2016 .................................... $640,000
      2017 .................................... $640,000
      2018 (thru 3-31) .......................... $160,000

      Total       .................... $3,685,000

1

## **PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of Los Angeles, State of California.  My business address is 1999 Avenue

4

of the Stars, Suite 1000, Los Angeles, CA 90067.

5

On April 8, 2021, I served true copies of the following document(s) described as:

6

**THIRD AMENDED COMPLAINT**

7

on the interested parties in this action as follows:

8

Michael L. Wachtell                                    Attorney for Defendants
C. Dana Hobart

9

BUCHALTER, APC                                     *LESLIE KLEIN & LES KLEIN & ASSOCIATES*
1000 Wilshire Boulevard, Suite 1500

10

Los Angeles, CA 90017-1730

11

Telephone: 213.891.0700
Fax: 213.896.0400

12

Email: mwachtell@buchalter.com
        dhobart@buchalter.com

13

14

Alan D. Weinfeld                                       Attorneys for Defendants
PARKER, MILLIKEN, CLARK, O'HARA

15

AND SAMUELSEN                                      *KENNETH KLEIN & LAW OFFICE OF*
555 South Flower Street                                *KENNETH KLEIN, P.C.*

16

30th Floor
Los Angeles, CA 90071-2440

17

18

Telephone:  213-683-6601
Fax:  213-683-6669

19

Email:  aweinfeld@pmcos.com

20

21

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the

22

document(s) to be sent from e-mail address clumia@millerbarondess.com to the persons at the e-
mail addresses listed in the Service List.  I did not receive, within a reasonable time after the

23

transmission, any electronic message or other indication that the transmission was unsuccessful.

24

**BY ELECTRONIC SERVICE:**  I served the document(s) on the person listed in the
Service List by submitting an electronic version of the document(s) to One Legal, LLC, through

25

the user interface at www.onelegal.com.

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

506306.1

EXHIBIT "1"
Page 38 of 39

1        I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

    Executed on April 8, 2021, at Los Angeles, California.

Cindy B. Lumia

EXHIBIT "1"

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# EXHIBIT 2

# EXHIBIT 2

Electronically Received 11/15/2022 10:32 AM

1  BRIAN A. PROCEL (State Bar No. 218657)
   brian@procel-law.com
2  PROCEL LAW, PC
   401 Wilshire Boulevard
3  12th Floor
   Santa Monica, California 90401
4  Telephone:    (424) 788-4538

5  Attorneys for Plaintiffs
   ERICA VAGO and JOSEPH VAGO

6

7

**FILED**
Superior Court of California
County of Los Angeles

**12/02/2022**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ M. Ventura _____ Deputy

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11  ERICA VAGO and JOSEPH VAGO,

12            Plaintiffs,

13        v.

14  LESLIE KLEIN; LES KLEIN &
    ASSOCIATES, INC.; KENNETH KOLEV
15  KLEIN; and LAW OFFICE OF KENNETH
    KLEIN, P.C.,
16
            Defendants.
17

**CASE NO. 20STCV25050**

[PROPOSED] JUDGMENT ON SPECIAL VERDICT

Assigned for All Purposes to:
Hon. Terry A. Green, Dept. 14

Action Filed:    July 1, 2020
Trial Date:      August 29, 2022

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "2"
Page 1 of 24

1    This action came on regularly for trial on August 29, 2022, in Department 14 of the

2    Superior Court, the Honorable Terry A. Green, Judge Presiding;

3    Plaintiffs Erica and Joseph Vago (collectively, "Plaintiffs") appearing by attorney Brian

4    Procel , Esq.; and Defendants Leslie Klein and Les Klein & Associates, Inc. (collectively,

5    "Defendants") appearing by attorney Jeffrey Slott.

6    A jury of twelve (12) persons was regularly impaneled and sworn and agreed to try the

7    cause. Witnesses were sworn and testified. After hearing the evidence and arguments of counsel,

8    the jury was duly instructed by the Court and the cause was submitted to the jury with directions

9    to return a special verdict. The jury deliberated and thereafter returned to court with its special

10    verdict submitted to the jury and the answers given thereto by the jury, which verdict was in words

11    and figures as follows, to wit:

12

13    **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

14    **(BY ERICA VAGO AGAINST DEFENDNTS)**

15

16    1.  Was Mr. Klein's conduct outrageous?

17    __X___ Yes    _____ No

18    If your answer to question 1 is yes, then answer question 2. If you answered no,

19    stop here, answer no further questions, and have the presiding juror sign and date

20    this form.

21    2.  Did Mr. Klein intend to cause Erica Vago emotional distress?

22    _____ Yes    __X__ No

23    If your answer to question 2 is yes, then answer question 4. If you answered no, go

24    to question 3.

25    3.  Did Mr. Klein act with reckless disregard of the probability that Erica Vago would

26    suffer emotional distress, knowing that Erica Vago was present when the conduct

27    occurred?

28    __X___ Yes    _____ No

2

1  |  If your answer to question 3 is yes, then answer question 4. If you answered no,
2  |  stop here, answer no further questions, and have the presiding juror sign and date
3  |  this form.

4.  Did Erica Vago suffer severe emotional distress?

_____ Yes    __X___ No

If your answer to question 4 is yes, then answer question 5. If you answered no,
stop here, answer no further questions, and have the presiding juror sign and date
this form.

5.  Was Mr. Klein's conduct a substantial factor in causing Erica Vago's severe
emotional distress?

_____ Yes    _____ No

If your answer to question 5 is yes, then answer question 6. If you answered no,
stop here, answer no further questions, and have the presiding juror sign and date
this form.

6.  What are Erica Vago's damages for pain and suffering?

$   N/A

TOTAL $

N/A

Signed:   /Signature
          Presiding Juror

Dated:  September 15, 2022

3

**INTENTIONAL MISREPRESENTATION**

**(BY ERICA VAGO AGAINST DEFENDNTS)**

We answer the questions submitted to us as follows:

1. Did Mr. Klein make a false representation of a fact to Erica Vago?

   __X___ Yes    _____ No

   If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein know that the representation was false, or did he make the representation recklessly and without regard for its truth?

   _X____ Yes    _____ No

   If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Erica Vago reasonably rely on the representation?

   __X___ Yes    _____ No

   If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Erica Vago's reliance on Mr. Klein's representation a substantial factor in causing harm to Erica Vago?

   __X___ Yes    _____ No

   If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Erica Vago's economic damages?

   $ __8,300,000_____

1    Please answer question 6.

2    6.   What are Erica Vago's noneconomic damages for pain and suffering?

3    $ __0_____

4

5    TOTAL $ 8,300,000

6

7    Signed:   __/Signature_____
              Presiding Juror

8

9    Dated:  September 15, 2022

10

11    **CONCEALMENT**
      **(BY ERICA VAGO AGAINST DEFENDNTS)**

12

13    We answer the questions submitted to us as follows:

14    1.   Did Mr. Klein intentionally fail to disclose a fact that Erica Vago did not know and

15        could not reasonably have discovered?

16        _X____ Yes     _____ No

17        If your answer to question 1 is yes, then answer question 2. If you answered no,

18        stop here, answer no further questions, and have the presiding juror sign and date

19        this form.

20    2.   Did Mr. Klein intend to deceive Erica Vago by concealing the fact?

21        __X___ Yes     _____ No

22        If your answer to question 2 is yes, then answer question 3. If you answered no,

23        stop here, answer no further questions, and have the presiding juror sign and date

24        this form.

25    3.   Had the omitted information been disclosed, would Erica Vago reasonably have

26        behaved differently?

27        __X___ Yes     _____ No

28

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Mr. Klein's concealment a substantial factor in causing harm to Erica Vago?

__X___ Yes _____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Erica Vago's economic damages?

$ 8,300,000

Please answer question 6.

6. What are Erica Vago's noneconomic damages for pain and suffering?

$ __0_____

TOTAL $ 8,300,000

Signed: ___/Signature_____
              Presiding Juror

Dated: September 15, 2022

6

[PROPOSED] JUDGMENT

EXHIBIT "2"
Page 6 of 24

**FALSE PROMISE**

**(BY ERICA VAGO AGAINST DEFENDNTS)**

We answer the questions submitted to us as follows:

1. Did Mr. Klein make a promise to Erica Vago?

   __X___ Yes    _____ No

   If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein intend to perform this promise when he made it?

   _X____ Yes    _____ No

   If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Mr. Klein intend that Erica Vago rely on this promise?

   _____ Yes    _____ No

   If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Did Erica Vago reasonably rely on this promise?

   _____ Yes    _____ No

   If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.


5. Did Mr. Klein fail to perform the promised act?

   _____ Yes    _____ No

---

7

[PROPOSED] JUDGMENT

1    If your answer to question 5 is yes, then answer question 6. If you answered no,

2    stop here, answer no further questions, and have the presiding juror sign and date

3    this form.

4    6.    Was Erica Vago's reliance on Mr. Klein's promise a substantial factor in causing

5    harm to Erica Vago?

6    _____ Yes        _____ No

7    If your answer to question 6 is yes, then answer question 7. If you answered no,

8    stop here, answer no further questions, and have the presiding juror sign and date

9    this form.

10    7.    What are Erica Vago's economic damages?

11    $ _N/A_____

12    Please answer question 8.

13    8.    What are Erica Vago's noneconomic damages for pain and suffering?

14    $ __N/A_____

15

16    TOTAL $ _N/A_____

17

18    Signed: __/Signature_____

19    Presiding Juror

20    Dated: September 15, 2022

21

22

23

24

25

26

27

28

8

**FINANCIAL ABUSE**

**(BY ERICA VAGO AGAINST DEFENDANTS)**

We answer the questions submitted to us as follows:

1. Did Mr. Klein retain Erica Vago's money or property?

   __X___ Yes _____ No

   If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Were Erica Vago 65 years of age or older at the time of the conduct?

   __X___ Yes _____ No

   If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Mr. Klein retain the money or property for a wrongful use or with the intent to defraud?

   __X___ Yes _____ No

   If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Were Erica Vago harmed?

   __X___ Yes _____ No

   If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Was Mr. Klein's conduct a substantial factor in causing Erica Vago's harm?

   __X___ Yes _____ No

9

[PROPOSED] JUDGMENT

1        If your answer to question 5 is yes, then answer question 6. If you answered no,

2        stop here, answer no further questions, and have the presiding juror sign and date

3        this form.

4       6.  What are Erica Vago's economic damages?

5        <u>$ 8,300,000</u>

6                                                       TOTAL $8,300,000

7

8    Signed:   <u>/Signature</u>
               Presiding Juror

9

10   Dated:  September 15, 2022

11

12                      **PUNITIVE DAMAGES**
           **(BY ERICA VAGO AGAINST DEFENDNTS)**

13

14   We answer the questions submitted to us as follows:

15     1.  Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

16       __X___ Yes   _____ No

17

18    Signed:   <u>/Signature</u>
               Presiding Juror

19

20   Dated:  September 15, 2022

21   **PUNITIVE DAMAGES AGAINST EMPLOYER OR PRINCIPAL FOR CONDUCT**
               **OF A SPECIFIC AGENT OR EMPLOYEE**

22

23             **(BY ERICA VAGO AGAINST DEFENDNTS)**

24   We answer the questions submitted to us as follows:

25     1.  Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

26       __X___ Yes   _____ No

27

28

10

~~[PROPOSED]~~ JUDGMENT

If your answer to question 1 is yes, then answer question 2. If you answered no,
stop here, answer no further questions, and have the presiding juror sign and date
this form.

Signed:   /Signature
                  Presiding Juror

Dated:  September 15, 2022

## BREACH OF FIDUCIARY DUTY

## (BY ERICA VAGO AGAINST DEFENDNTS)

1.  Mr. Klein owed Erica Vago fiduciary duties to act with the utmost loyalty and honesty.

2.  Did Mr. Klein breach his fiduciary duties?

    __X___ Yes        _____ No

    If your answer to question 2 is yes, then answer question 3. If you answered no, stop
    here, answer no further questions, and have the presiding juror sign and date this form.

3.  Was Erica Vago harmed?

    __X___ Yes        _____ No

    If your answer to question 3 is yes, then answer question 4. If you answered no, stop
    here, answer no further questions, and have the presiding juror sign and date this form.

4.  Was Mr. Klein's conduct a substantial factor in causing Erica Vago's harm?

    __X___ Yes        _____ No

    If your answer to question 4 is yes, then answer question 5. If you answered no, stop
    here, answer no further questions, and have the presiding juror sign and date this form.

5.  What are Erica Vago's economic damages?

    $ 8,300,000

                                                              TOTAL $ 8,300,000

1

Signed: __/Signature_____
2                  Presiding Juror

3
Dated: September 15, 2022
4

5        **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

6           **(BY JOSEPH VAGO AGAINST DEFENDNTS)**

7

8        1.  Was Mr. Klein's conduct outrageous?

9               a.  _X____ Yes    _____ No

10              b.  If your answer to question 1 is yes, then answer question 2. If you answered

11                   no, stop here, answer no further questions, and have the presiding juror sign

12                   and date this form.

13       2.  Did Mr. Klein intend to cause Joseph Vago emotional distress?

14              a.  _____ Yes    ___X__ No

15              b.  If your answer to question 2 is yes, then answer question 4. If you answered

16                   no, go to question 3.

17       3.  Did Mr. Klein act with reckless disregard of the probability that Joseph Vago

18            would suffer emotional distress, knowing that Joseph Vago was present when the

19            conduct occurred?

20              a.  __X___ Yes    _____No

21              b.  If your answer to question 3 is yes, then answer question 4. If you answered

22                   no, stop here, answer no further questions, and have the presiding juror sign

23                   and date this form.

24       4.  Did Joseph Vago suffer severe emotional distress?

25              a.  __X___ Yes    _____ No

26              b.  If your answer to question 4 is yes, then answer question 5. If you answered

27                   no, stop here, answer no further questions, and have the presiding juror sign

28                   and date this form.

12
[PROPOSED] JUDGMENT
104

5. Was Mr. Klein's conduct a substantial factor in causing Joseph Vago's severe emotional distress?

    a.  _X____ Yes    _____ No

    b.  If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are Joseph Vago's damages for pain and suffering?

    a.  $ <u>400,000</u>

                                       TOTAL <u>$400,000</u>

Signed:   <u>/Signature</u>
                Presiding Juror

Dated:  September 15, 2022

## INTENTIONAL MISREPRESENTATION
## (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein make a false representation of a fact to Joseph Vago?

    a.  __X___ Yes    _____ No

    b.  If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein know that the representation was false, or did he make the representation recklessly and without regard for its truth?

    a.  _X____ Yes    _____ No

b. If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Joseph Vago reasonably rely on the representation?

   a. __X__ Yes _____ No

b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Joseph Vago's reliance on Mr. Klein's representation a substantial factor in causing harm to Joseph Vago?

   a. __X__ Yes _____ No

b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Joseph Vago's economic damages?

   a. $ __0__

   b. Please answer question 6.

6. What are Joseph Vago's noneconomic damages for pain and suffering?

   a. $ __0__

TOTAL $ __0__

Signed: __/Signature__
       Presiding Juror

Dated: September 15, 2022

## CONCEALMENT
### (BY JOSEPH VAGO AGAINST DEFENDNTS)

14
[PROPOSED] JUDGMENT

EXHIBIT "2"
Page 14 of 24

We answer the questions submitted to us as follows:

1. Did Mr. Klein intentionally fail to disclose a fact that Joseph Vago did not know and could not reasonably have discovered?

    a. __X___ Yes  _____ No

    b. If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein intend to deceive Joseph Vago by concealing the fact?

    a. __X___ Yes  _____ No

    b. If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Had the omitted information been disclosed, would Joseph Vago reasonably have behaved differently?

    a. __X___ Yes  _____ No

    b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Mr. Klein's concealment a substantial factor in causing harm to Joseph Vago?

    a. __X___ Yes  _____ No

    b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Joseph Vago's economic damages?

    a. $____0_____

    b. Please answer question 6.

6. What are Joseph Vago's noneconomic damages for pain and suffering?

    a. $__0_____

TOTAL $____0_____

Signed:    /Signature
                  Presiding Juror

Dated:  September 15, 2022

## FALSE PROMISE

## (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1.  Did Mr. Klein make a promise to Joseph Vago?

    a.    __X___ Yes    _____ No

    b.  If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.  Did Mr. Klein intend to perform this promise when he made it?

    a.   _X____ Yes    _____ No

    b.  If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Did Mr. Klein intend that Joseph Vago rely on this promise?

    a.    _____ Yes    _____ No

    b.  If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.  Did Joseph Vago reasonably rely on this promise?

    a.    _____ Yes    _____ No

16
[PROPOSED] JUDGMENT

b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Did Mr. Klein fail to perform the promised act?

   a. _____ Yes    _____ No

   b. If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. Was Joseph Vago's reliance on Mr. Klein's promise a substantial factor in causing harm to Joseph Vago?

   a. _____ Yes    _____ No

   b. If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

7. What are Joseph Vago's economic damages?

   a. $ _N/A_____

   b. Please answer question 8.

8. What are Joseph Vago's noneconomic damages for pain and suffering?

   a. $ __N/A_____

TOTAL $ _N/A_____

Signed: __/Signature_____
        Presiding Juror

Dated: September 15, 2022

**FINANCIAL ABUSE**

**(BY JOSEPH VAGO AGAINST DEFENDANTS)**

We answer the questions submitted to us as follows:

1. Did Mr. Klein retain Joseph Vago's money or property?

   a. _____ Yes    __X___ No

   b. If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Were Joseph Vago 65 years of age or older at the time of the conduct?

   a. _____ Yes    _____ No

   b. If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Mr. Klein retain the money or property for a wrongful use or with the intent to defraud?

   a. _____ Yes    _____ No

   b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Were Joseph Vago harmed?

   a. _____ Yes    _____ No

   b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Was Mr. Klein's conduct a substantial factor in causing Joseph Vago's harm?

   a. _____ Yes    _____ No

18

[PROPOSED] JUDGMENT

b. If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are Joseph Vago's economic damages?

    a. $___N/A_____

                                                                    TOTAL $__N/A_____

Signed:   /Signature _____
             Presiding Juror

Dated:  September 15, 2022

## PUNITIVE DAMAGES

## (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

    a.   __X___ Yes  _____ No

Signed:   /Signature _____
             Presiding Juror

Dated:  September 15, 2022

## PUNITIVE DAMAGES AGAINST EMPLOYER OR PRINCIPAL FOR CONDUCT OF A SPECIFIC AGENT OR EMPLOYEE
## (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

    a.   __X___ Yes  _____ No

19

[PROPOSED] JUDGMENT

1    b.  If your answer to question 1 is yes, then answer question 2. If you answered

2        no, stop here, answer no further questions, and have the presiding juror sign

3        and date this form.

4

5   Signed:   /Signature
              Presiding Juror

6

7   Dated:  September 15, 2022

8                    **BREACH OF FIDUCIARY DUTY**

9              **(BY JOSEPH VAGO AGAINST DEFENDNTS)**

10

11   1.  Mr. Klein owed Joseph Vago fiduciary duties to act with the utmost loyalty and

12       honesty.

13   2.  Did Mr. Klein breach his fiduciary duties?

14       a.  __X__ Yes         _____ No

15       b.  If your answer to question 2 is yes, then answer question 3. If you answered no,

16           stop here, answer no further questions, and have the presiding juror sign and

17           date this form.

18   3.  Was Joseph Vago harmed?

19       a.  __X__ Yes          _____No

20       b.  If your answer to question 3 is yes, then answer question 4. If you answered no,

21           stop here, answer no further questions, and have the presiding juror sign and

22           date this form.

23   4.  Was Mr. Klein's conduct a substantial factor in causing Joseph Vago's harm?

24       a.  __X__ Yes         _____No

25       b.  If your answer to question 4 is yes, then answer question 5. If you answered no,

26           stop here, answer no further questions, and have the presiding juror sign and

27           date this form.

28   5.  What are Joseph Vago's economic damages?

[PROPOSED] JUDGMENT

EXHIBIT "2"
Page 20 of 24

1

a.   $____0_____

2

3

                                                                           i.   TOTAL $____0_____

4

5

Signed: ___/Signature_____
                      Presiding Juror

6

7

Dated:  September 15, 2022

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] JUDGMENT

1    It appearing by reason of said special verdict that Plaintiff Erica Vago is entitled to

2    judgment against Defendants Leslie Klein and Leslie Klein & Associates.

3    NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said Erica

4    Vago shall have and recover from Defendants, jointly and severally:

5    1.    Compensatory damages in the sum of $8,300,000;

6    2.    Prejudgment interest at the rate of 7 (seven) percent in the amount of

7    $7,334,038.99;

8    3.    Punitive damages in the sum of $8,300,000,

9    4.    And interest thereon at the rate of ten percent per annum from the date of the

10   verdict until paid together with costs and disbursements.

11

12   It further appearing by reason of said special verdict that Plaintiff Joseph Vago is entitled

13   to judgment against Defendants Leslie Klein and Leslie Klein & Associates.

14   NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said Joseph

15   Vago shall have and recover from Defendants, jointly and severally:

16   1.    $400,000 for emotional distress

17   2.    And interest thereon at the rate of ten percent per annum from the date of the

18   verdict until paid together with costs and disbursements.

19

20   The total amount of the judgment against Defendants jointly and severally is

21   **$24,334,038.99.**

22

23   Dated:    12/02/2022

    **Terry Green**

24   Terry Green / Judge

25   Hon. Terry Green
     Judge of the Superior Court

26

27

28

1    DATED:  November 15, 2022         PROCEL LAW, PC

2

3

                       By: _____

4                              BRIAN PROCEL
                             Attorneys for Plaintiffs

5                              JOSEPH VAGO and ERICA VAGO

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3 **PROOF OF SERVICE**

4 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

5    At the time of service, I was over 18 years of age and not a party to this action. I am
employed in the County of Los Angeles, State of California. My business address 401 Wilshire
6 Boulevard, 12th Floor, Santa Monica, California 90401.

7    On November 15, 2022, I served true copies of the following document(s) described as:

8 **[PROPOSED] JUDGMENT ON SPECIAL VERDICT**

9 on the interested parties in this action as follows:

10 **SERVICE LIST**

11 Jeffrey A. Slott                                       *Attorneys for Defendants*
LAW OFFICES OF JEFFREY A. SLOTT, APC
12 15760 Ventura Blvd., Suite 1600                        LESLIE KLEIN and
Encino, CA 91436                                       LES KLEIN & ASSOCIATES, INC.
13 Telephone:    (818) 995-1955
Facsimile:    (818) 995-0955
14 Email:        jslott@aol.com

15

16    **BY E-MAIL:** I caused a copy of the document(s) to be sent from e-mail address
johnpark@procel-law.com to the person(s) at the e-mail address(es) listed in the Service List. I
17 did not receive, within a reasonable time after the transmission, any electronic message or other
indication that the transmission was unsuccessful.

18    I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
19
   Executed on November 15, 2022, at Santa Monica, California.
20

21                                                       /s/ Brian Procel
                                                        Brian Procel
22

23

24

25

26

27

28

EXHIBIT "2"
Page 24 of 24

# EXHIBIT 3

# EXHIBIT 3

## United States Bankruptcy Court
### Central District of California

In re  **Leslie Klein**

_____
Debtor(s)

Case No.  **2:23-bk-10990-SK**

Chapter  **11**

### LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| -NONE- | | | |

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, Leslie Klein, am the named debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date  _3/8/2023_     Signature  _Leslie Klein_

Leslie Klein

_Penalty for making a false statement of concealing property:_ Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Sheet 1 of 1 in List of Equity Security Holders

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Leslie Klein** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **2:23-bk-10990-SK** |

☐ Check if this is an amended filing

# Official Form 106Sum
## Summary of Your Assets and Liabilities and Certain Statistical Information     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:   Summarize Your Assets

**Your assets**
Value of what you own

| | | | |
|---|---|---|---:|
| 1. | Schedule A/B: Property (Official Form 106A/B) | | |
| | 1a. Copy line 55, Total real estate, from Schedule A/B........................................................ | $ | 12,250,000.00 |
| | 1b. Copy line 62, Total personal property, from Schedule A/B.......................................... | $ | 2,044,000.00 |
| | 1c. Copy line 63, Total of all property on Schedule A/B.................................................. | $ | 14,294,000.00 |

### Part 2:   Summarize Your Liabilities

**Your liabilities**
Amount you owe

| | | | |
|---|---|---|---:|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D) 2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D*... | $ | 31,564,856.56 |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F) 3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*.............. | $ | 0.00 |
| | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*.............. | $ | 97,928.00 |
| | **Your total liabilities** | $ | 31,662,784.56 |

### Part 3:   Summarize Your Income and Expenses

| | | | |
|---|---|---|---:|
| 4. | *Schedule I: Your Income* (Official Form 106I) Copy your combined monthly income from line 12 of *Schedule I*................................................ | $ | 17,633.00 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J) Copy your monthly expenses from line 22c of *Schedule J*........................................... | $ | 9,552.00 |

### Part 4:   Answer These Questions for Administrative and Statistical Records

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

    ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

    ■ Yes

7. **What kind of debt do you have?**

    ☐ Your debts are primarily consumer debts. *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

    ■ Your debts are not primarily consumer debts. You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum     **Summary of Your Assets and Liabilities and Certain Statistical Information**     page 1 of 2

Debtor 1    **Leslie Klein**                                                    Case number *(if known)*  **2:23-bk-10990-SK**

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form
   122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.                                    $ _____

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ _____ |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ _____ |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ _____ |
| 9d. Student loans. (Copy line 6f.) | $ _____ |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ _____ |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ _____ |
| 9g. **Total.** Add lines 9a through 9f. | $ _____ |

Software Copyright (c) 1996-2023 Best Case, LLC - www.bestcase.com

Fill in this information to identify your case and this filing:

| | |
|---|---|
| Debtor 1 | **Leslie Klein** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **2:23-bk-10990-SK** |

☐ Check if this is an
   amended filing

## Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

| 1.1 | | What is the property? Check all that apply | |
|---|---|---|---|
| **322 N. June Street** | | ■ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. |
| Street address, if available, or other description | | ☐ Duplex or multi-unit building | |
| | | ☐ Condominium or cooperative | |
| | | ☐ Manufactured or mobile home | |

| | | | |
|---|---|---|---|
| **Los Angeles**   **CA**   **90004-0000** | ☐ Land | Current value of the entire property? | Current value of the portion you own? |
| City          State          ZIP Code | ☐ Investment property | **$4,900,000.00** | **$2,450,000.00** |
| | ☐ Timeshare | | |
| | ☐ Other | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. |

Who has an interest in the property? Check one

**50% is held by Debtor and 50% held by his Erika's irrevocable marital deduction trust**

**Los Angeles**

County

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

☐ Check if this is community property
   (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Debtor's principal residence; paid in full. The property is held in the marital deduction trust. The Debtor's current spouse, Barbara Klein, has a life estate interest in the residence.**

EXHIBIT "3"
Page 4 of 57

Debtor 1    Leslie Klein                                                  Case number *(if known)*  2:23-bk-10990-SK

**If you own or have more than one, list here:**

1.2

**315 N. Martel Avenue**
Street address, if available, or other description

Los Angeles      CA      90036-0000
City            State      ZIP Code

Los Angeles
County

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property.  Debtor collects $5,500/month.**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,500,000.00** | **$2,500,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

☐ **Check if this is community property** (see instructions)

---

**If you own or have more than one, list here:**

1.3

**143 S. Highland Drive**
Street address, if available, or other description

Los Angeles      CA      90036-0000
City            State      ZIP Code

Los Angeles
County

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property. Debtor collects $4,000 per month in rental income.**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,200,000.00** | **$2,200,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

☐ **Check if this is community property** (see instructions)

---

EXHIBIT "3"
Page 5 of 57

Debtor 1    Leslie Klein                                    Case number *(if known)*    2:23-bk-10990-SK

**If you own or have more than one, list here:**

1.4

**161 N. Poinsettia Place**
*Street address, if available, or other description*

| **What is the property?** Check all that apply |
| --- |
| ■ Single-family home |
| ☐ Duplex or multi-unit building |
| ☐ Condominium or cooperative |
| ☐ Manufactured or mobile home |
| ☐ Land |
| ☐ Investment property |
| ☐ Timeshare |
| ☐ Other |

**Los Angeles    CA    90036-0000**
*City                State        ZIP Code*

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| $2,000,000.00 | $2,000,000.00 |

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Los Angeles**
*County*

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**100%**

☐ **Check if this is community property** (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property. Debtor collects $3,000 per month rental income.**

---

**If you own or have more than one, list here:**

1.5

**2560-B Whitewater Club Drive**
*Street address, if available, or other description*

| **What is the property?** Check all that apply |
| --- |
| ☐ Single-family home |
| ☐ Duplex or multi-unit building |
| ■ Condominium or cooperative |
| ☐ Manufactured or mobile home |
| ☐ Land |
| ☐ Investment property |
| ☐ Timeshare |
| ☐ Other |

**Palm Springs    CA    92262-0000**
*City                State        ZIP Code*

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| $350,000.00 | $350,000.00 |

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Riverside**
*County*

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**100%**

☐ **Check if this is community property** (see instructions)

Other information you wish to add about this item, such as local property identification number:

**A condo with 2 bedrooms and 2 bathrooms; vacation home.**

---

EXHIBIT "3"
Page 6 of 57

Debtor 1    Leslie Klein                                          Case number *(if known)*   2:23-bk-10990-SK

### If you own or have more than one, list here:

**1.6**

**3752 Ocean Drive**
Street address, if available, or other description

**Oxnard**          **CA**    **93035-0000**
City              State    ZIP Code

**Ventura**
County

**What is the property?** Check all that apply

- ☑ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

**Who has an interest in the property?** Check one

- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,400,000.00** | **$2,400,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**100%**

- ☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Single family home; vacation home.**

---

### If you own or have more than one, list here:

**1.7**

**Leonardo Plaza Hotel Jerusalem**
Street address, if available, or other description

**Jerusalem**
City              State    ZIP Code

**Israel**
County

**What is the property?** Check all that apply

- ☐ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☑ Investment property
- ☐ Timeshare
- ☑ Other   **Unit in a hotel**

**Who has an interest in the property?** Check one

- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$500,000.00** | **$250,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**50% by Debtor and 50% by deceased wife's irrevocable trust**

- ☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Debtor owns a unit in the Leanoardo Plaza Hotel. Vacation home.**

EXHIBIT "3"
Page 7 of 57

Debtor 1   **Leslie Klein**                                                                    Case number *(if known)*   **2:23-bk-10990-SK**

**If you own or have more than one, list here:**

1.8

| | |
|---|---|
| **Dan Boutique Hotel Jerusalem** | |
| Street address, if available, or other description | |

**What is the property?** Check all that apply

☐ Single-family home

☐ Duplex or multi-unit building

☐ Condominium or cooperative

☐ Manufactured or mobile home

☐ Land

☐ Investment property

☐ Timeshare

■ Other    **Unit in a hotel**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$200,000.00** | **$100,000.00** |

**Jerusalem**
City                    State          ZIP Code

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

**Israel**
County

☐ Check if this is community property *(see instructions)*

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**50% by Debtor and 50% by deceased spouse's irrevocable trust**

Other information you wish to add about this item, such as local property identification number:

**Debtor owns a unit in the Leanoardo Plaza Hotel. Vacation home.**

2.  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................=>

**$12,250,000.00**

Part 2:   **Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.  **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No

■ Yes

3.1   Make:   **Lexus**
Model:   **LS500**
Year:   **2021**
Approximate mileage:   **n/a**
Other information:

**Leased vehicle. Monthly payment is $1,319.00.**

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property *(see instructions)*

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$0.00** | **$0.00** |

3.2   Make:   **Lexus**
Model:   **LS**
Year:   **2021**
Approximate mileage:   **n/a**
Other information:

**Leased vehicle. Debtor's spouses drives this vehicle. Monthly payment is $500.**

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property *(see instructions)*

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$0.00** | **$0.00** |

EXHIBIT "3"
Page 8 of 57

| Debtor 1    Leslie Klein | Case number *(if known)*    2:23-bk-10990-SK |
|---|---|

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
  *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

**5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for
.pages you have attached for Part 2. Write that number here...........................................................................=>**   | $0.00 |

## Part 3:   Describe Your Personal and  Household Items

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**
  *Examples:* Major appliances, furniture, linens, china, kitchenware
  ☐ No
  ■ Yes.  Describe.....

| Debtor's residence: Debtor's residence: Couches, coffee tables, dining room table with chairs, mattresses with bedframes, wall mirrors, desk with chairs, lamps, rugs, dressers, kitchen table, patio furniture,  cabinets, refrigerators, and other household goods and furnishings | $8,000.00 |
|---|---|
| 2560-B Whitewater Club Drive, Palm Spring vacation home: living room sofa, table, chairs, dining room table and chairs, TV, phone, kitchen appliances, china, beds and side tables, mirrors, paintings, and miscellaneous household goods and furnishings. | $5,000.00 |
| 3752 Ocean Drive, Oxnard CA vacation home: living room sofa, table, chairs, dining room table and chairs, TV, phone, kitchen appliances, china, beds and side tables, mirrors, paintings, and miscellaneous household goods and furnishings. | $5,000.00 |

**7. Electronics**
  *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
          including cell phones, cameras, media players, games
  ☐ No
  ■ Yes.  Describe.....

| TVs, phones, computers | $3,000.00 |
|---|---|

**8. Collectibles of value**
  *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
          other collections, memorabilia, collectibles
  ☐ No
  ■ Yes.  Describe.....

| Books and art objects | $4,000.00 |
|---|---|

**9. Equipment for sports and hobbies**
  *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
          musical instruments
  ☐ No
  ■ Yes.  Describe.....

EXHIBIT "3"
Page 9 of 57

Debtor 1    **Leslie Klein**                                    Case number *(if known)*    2:23-bk-10990-SK

| | |
|---|---|
| **Sports and Hobyy equipment** | $2,000.00 |

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No
☐ Yes. Describe.....

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes. Describe.....

| | |
|---|---|
| **Debtor's residence: Clothes and shoes** | $2,000.00 |

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☐ No
■ Yes. Describe.....

| | |
|---|---|
| **Debtor's residence: Furs, diamond ring, gold necklace, diamond earrings,  gold rings and costume jewelry** | $20,000.00 |

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
■ No
☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ....................................................................** | $49,000.00 |

| Part 4: | Describe Your Financial Assets |
|---|---|

**Do you own or have any legal or equitable interest in any of the following?**     Current value of the portion you own? Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
■ No
☐ Yes.................................................................................

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes........................    Institution name:

| | | | |
|---|---|---|---|
| 17.1. | **Checking account ending in 9401** | **Bank of America** | $4,000.00 |

EXHIBIT "3"
Page 10 of 57

Debtor 1    **Leslie Klein**                                    Case number *(if known)*    **2:23-bk-10990-SK**

18.  **Bonds, mutual funds, or publicly traded stocks**
     *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
     ■ No
     ☐ Yes.................    Institution or issuer name:

19.  **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and
     joint venture**
     ☐ No
     ■ Yes.  Give specific information about them...................
                             Name of entity:                              % of ownership:

| | | | |
|---|---|---|---|
| Debtor has a 100% ownership interest in Bay Area Development, Co.   Bay Area Development, Co. filed  a chapter 11 bankruptcy petition on 9/12/2022, Case No.: 2:22-bk-15031-SK.  On December 6, 2022, Bay Area entered into a stipulation with its secured creditor Scott Capital Management Fund 1, LLC and OUST to dismiss the case.  The order dismissing the case with a 180 day bar (due to pending RFS motion) was enterd on 12/6/2022.  The real property owned by Bay Area Development, Co. went into foreclosure.  The company currently does not own any assets. | 100% | % | $0.00 |
| Debtor has a membership interest in Life Capital Group, LLC, which is an investment company. The LLC buys insurance policies on other people's lives and upon passing, the LLC collects the funds and makes a distribution to its members. | 5% membership interest | % | Unknown |

20.  **Government and corporate bonds and other negotiable and non-negotiable instruments**
     *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
     *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
     ■ No
     ☐ Yes. Give specific information about them
                             Issuer name:

21.  **Retirement or pension accounts**
     *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
     ■ No
     ☐ Yes. List each account separately.
             Type of account:              Institution name:

22.  **Security deposits and prepayments**
     Your share of all unused deposits you have made so that you may continue service or use from a company
     *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
     ■ No
     ☐ Yes. .....................    Institution name or individual:

23.  **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
     ■ No
     ☐ Yes.............    Issuer name and description.

24.  **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
     26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
     ■ No
     ☐ Yes.............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25.  **Trusts, equitable or future interests in property** (other than anything listed in line 1), and rights or powers exercisable for your benefit
     ☐ No

Official Form 106A/B                        Schedule A/B: Property                                    page 8

Debtor 1    **Leslie Klein**                                                          Case number *(if known)*   **2:23-bk-10990-SK**

■ Yes. Give specific information about them...

| | |
|---|---|
| **Klein Living Trust dated April 8, 1990. The Settlors of the Trust are Leslie Klein and Erika Noemi Klein, husband and wife. Erika Klein passed away several years ago, and pursuant to the trust provision, Erika Klein's interest in the assets is now in an irrevocable trust ("Marital Deduction Trust"). The assets of the trust are listed on Schedule A/B, item #1 for each property that is part of the Trust.** | $0.00 |

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
■ No
☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes. Give specific information about them...

**Money or property owed to you?**                                          Current value of the portion you own? Do not deduct secured claims or exemptions.

**28. Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else
☐ No
■ Yes. Give specific information..

| | |
|---|---|
| **Isaac Kirzner. Debtor entered into an agreement with Isaac Kirzner whereby he paid the insurance premiums for Mr. Kirzner, and upon Mr. Kirzner's passing, the Debtor would receive $1 Million.** | $1,000,000.00 |
| **Judith Bittman. Debtor entered into an agreement with Judith Bittman whereby he paid the insurance premiums for Ms. Bittmanm and upon Ms. Bittman's passing, the Debtor would receive $1 Million.** | $1,000,000.00 |

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
■ No
☐ Yes. Name the insurance company of each policy and list its value.
     Company name:                               Beneficiary:                          Surrender or refund value:

EXHIBIT "3"
Page 12 of 57

Debtor 1    __Leslie Klein__                                    Case number *(if known)*    __2:23-bk-10990-SK__

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
    ■ No
    ☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes.  Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**.................................................................................................

| $2,004,000.00 |

**Part 5:**    Describe Any Business-Related Property You Own or Have an Interest in. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
    ■ No. Go to Part 6.
    ☐ Yes.  Go to line 38.

**Part 6:**    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest in.
    If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    ■ No. Go to Part 7.
    ☐ Yes.  Go to line 47.

**Part 7:**    Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership
    ■ No
    ☐ Yes.  Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ......................................

| $0.00 |

Official Form 106A/B                        Schedule A/B: Property                        page 10

EXHIBIT "3"
Page 13 of 57

| Debtor 1 | **Leslie Klein** | | Case number *(if known)* | **2:23-bk-10990-SK** |

| **Part 8:** | **List the Totals of Each Part of this Form** | | |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** .................................................................................................. | | **$12,250,000.00** |
| 56. | **Part 2: Total vehicles, line 5** | **$0.00** | |
| 57. | **Part 3: Total personal and household items, line 15** | **$49,000.00** | |
| 58. | **Part 4: Total financial assets, line 36** | **$2,004,000.00** | |
| 59. | **Part 5: Total business-related property, line 45** | **$0.00** | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | **$0.00** | |
| 61. | **Part 7: Total other property not listed, line 54** | + **$0.00** | |
| 62. | **Total personal property. Add lines 56 through 61...** | **$2,053,000.00** | Copy personal property total ▶ **$2,053,000.00** |
| 63. | **Total of all property on Schedule A/B. Add line 55 + line 62** | | **$14,303,000.00** |

EXHIBIT "3"
Page 14 of 57

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| **Debtor 1** | **Leslie Klein** | | |
| | First Name | Middle Name | Last Name |
| **Debtor 2** (Spouse if, filing) | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number (if known) | **2:23-bk-10990-SK** | | |

☐ Check if this is an amended filing

## Official Form 106C
# Schedule C: The Property You Claim as Exempt
**4/22**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own Copy the value from *Schedule A/B* | Amount of the exemption you claim *Check only one box for each exemption.* | | Specific laws that allow exemption |
|---|---|---|---|---|
| **322 N. June Street Los Angeles, CA 90004  Los Angeles County** Debtor's principal residence; paid in full. The property is held in the marital deduction trust. The Debtor's current spouse, Barbara Klein, has a life estate interest in the residence. Line from *Schedule A/B*: 1.1 | $2,450,000.00 | ■ | _____ $678,391.00 ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.730 |
| **Debtor's residence: Debtor's residence: Couches, coffee tables, dining room table with chairs, mattresses with bedframes, wall mirrors, desk with chairs, lamps, rugs, dressers, kitchen table, patio furniture,  cabinets, refrigerators, and other household g** Line from *Schedule A/B*: 6.1 | $8,000.00 | ■ | _____ $8,000.00 ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| **TVs, phones, computers** Line from *Schedule A/B*: 7.1 | $3,000.00 | ■ | _____ $3,000.00 ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |

EXHIBIT "3"
Page 15 of 57

| Debtor 1 | **Leslie Klein** | Case number (if known) | **2:23-bk-10990-SK** |
|---|---|---|---|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Books and art objects**<br>Line from *Schedule A/B*: **8.1** | $4,000.00 | ■             $0.00<br>☐  100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.040** |
| **Sports and Hobyy equipment**<br>Line from *Schedule A/B*: **9.1** | $2,000.00 | ■       $2,000.00<br>☐  100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Debtor's residence: Clothes and shoes**<br>Line from *Schedule A/B*: **11.1** | $2,000.00 | ■       $2,000.00<br>☐  100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Debtor's residence: Furs, diamond ring, gold necklace, diamond earrings, gold rings and costume jewelry**<br>Line from *Schedule A/B*: **12.1** | $20,000.00 | ■       $9,525.00<br>☐  100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.040** |

3. **Are you claiming a homestead exemption of more than $189,050?**
   (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐  No

   ■  Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ■  No

       ☐  Yes

EXHIBIT "3"
Page 16 of 57

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Leslie Klein** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | **2:23-bk-10990-SK** | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion if any |
|---|---|---|---|
| **2.1  CCO Mortgage Corp.** | $19,372.00 | $2,400,000.00 | $0.00 |

| | |
|---|---|
| **CCO Mortgage Corp.** | **Describe the property that secures the claim:** |
| Creditor's Name | **3752 Ocean Drive Oxnard, CA 93035 Ventura County** |
| | **Single family home; vacation home.** |
| **Attn: Bankruptcy 10561 Telegraph Rd Glen Allen, VA 23059** | As of the date you file, the claim is: Check all that apply. |
| Number, Street, City, State & Zip Code | ☐ Contingent |
| | ☐ Unliquidated |
| | ☐ Disputed |
| **Who owes the debt?** Check one. | **Nature of lien.** Check all that apply. |
| ■ Debtor 1 only | ☐ An agreement you made (such as mortgage or secured car loan) |
| ☐ Debtor 2 only | |
| ☐ Debtor 1 and Debtor 2 only | ☐ Statutory lien (such as tax lien, mechanic's lien) |
| ☐ At least one of the debtors and another | ☐ Judgment lien from a lawsuit |
| ☐ Check if this claim relates to a community debt | ■ Other (including a right to offset)    **Secured Line of Credit** |

| | | | |
|---|---|---|---|
| Date debt was incurred | **Opened 05/05  Last Active 1/09/23** | Last 4 digits of account number | **1428** |

EXHIBIT "3"
Page 17 of 57

Debtor 1   **Leslie Klein**
First Name          Middle Name          Last Name                                    Case number (if known)   **2:23-bk-10990-SK**

| 2.2 | **Chase Mortgage** | Describe the property that secures the claim: | $138,719.00 | $350,000.00 | $0.00 |
| --- | --- | --- | --- | --- | --- |

Creditor's Name

Describe the property that secures the claim:

**2560-B Whitewater Club Drive Palm Springs, CA 92262  Riverside County**
**A condo with 2 bedrooms and 2 bathrooms; vacation home.**

**BK Department**
**Mail Code LA4 5555  700 Kansas Ln**
**Monroe, LA 71203**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

Nature of lien. Check all that apply.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
    community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Deed of Trust**

**Opened 07/05  Last Active 8/23/22**

Date debt was incurred   **8/23/22**          Last 4 digits of account number   **2700**

| 2.3 | **Ericka and Joseph Vago** | Describe the property that secures the claim: | $24,334,038.99 | $0.00 | $24,334,038.99 |
| --- | --- | --- | --- | --- | --- |

Creditor's Name

**c/o Brian Procel**
**Procel Law**
**401 Wilshire Blvd., 12th Floor**
**Santa Monica, CA 90401**
Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**Assets of the Debtor**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Who owes the debt?** Check one.

Nature of lien. Check all that apply.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
    community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Notice of Judgment Lien**

Date debt was incurred   **July 2020**          Last 4 digits of account number   **5050**

Official Form 106D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 2 of 8

Debtor 1   **Leslie Klein**
First Name          Middle Name          Last Name

Case number (if known)   **2:23-bk-10990-SK**

| 2.4 | **Fay Servicing LLC** | Describe the property that secures the claim: | $712,265.00 | $2,400,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**3752 Ocean Drive Oxnard, CA 93035
Ventura County
Single family home; vacation home.**

**Attn: Bankruptcy Dept
Po Box 809441
Chicago, IL 60680**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **1st Deed of Trust**

**Opened
10/13/04
Last Active**
Date debt was incurred   **08/20**

Last 4 digits of account number    **9505**

| 2.5 | **Fay Servicing LLC** | Describe the property that secures the claim: | $327,886.00 | $2,400,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**3752 Ocean Drive Oxnard, CA 93035
Ventura County
Single family home; vacation home.**

**Attn: Bankruptcy Dept
Po Box 809441
Chicago, IL 60680**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **2nd Deed of Trust**

**Opened
11/04  Last
Active**
Date debt was incurred   **8/09/22**

Last 4 digits of account number    **9492**

Official Form 106D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 3 of 8

EXHIBIT "3"
Page 19 of 57

| Debtor 1 | Leslie Klein | | | Case number (if known) | 2:23-bk-10990-SK |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| 2.6 | Fiore Racobs & Powers | Describe the property that secures the claim: | $49,436.57 | $350,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**c/o Palm Springs
Country Club HOA
6820 Indiana Ave., Ste
140
6820 Indiana Ave., Ste
140
Riverside, CA 92506**

Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**2560-B Whitewater Club Drive Palm
Springs, CA 92262  Riverside
County
A condo with 2 bedrooms and 2
bathrooms; vacation home.**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **HOA Assessments**

Date debt was incurred   **2020 - 2023**     Last 4 digits of account number   **4460**

| 2.7 | Gestetner Charitable Remainder Trus | Describe the property that secures the claim: | $2,000,000.00 | Unknown | Unknown |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

**Debtor has a membership interest in
Life Capital Group, LLC, which is an
investment company. The LLC buys
insurance policies on other people's
lives and upon passing, the LLC
collects the funds and makes a
distribution to its members.
5% m**

**c/o Andor Gestetner
1425 55th Street
Brooklyn, NY 11219**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **UCC Financing**

Date debt was incurred   **5/14/2021**     Last 4 digits of account number   **3629**

Debtor 1    **Leslie Klein**

<u>First Name</u>        <u>Middle Name</u>            <u>Last Name</u>

Case number (if known)    **2:23-bk-10990-SK**

| 2.8 | **Los Angeles County Tax Collector** | Describe the property that secures the claim: | $15,000.00 | $4,900,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

> 322 N. June Street Los Angeles, CA
> 90004  Los Angeles County
> **Debtor's principal residence; paid in
> full. The property is held in the
> marital deduction trust. The
> Debtor's current spouse, Barbara
> Klein, has a life estate interest in the
> res**

**Bankruptcy Unit
PO Box 54110
Los Angeles, CA
90054-0027**

<u>Number, Street, City, State & Zip Code</u>

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
  community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
  car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Property Taxes**

Date debt was incurred    **2022 - 2023**

Last 4 digits of account number    **3008**

---

| 2.9 | **Mrc/united Wholesale M** | Describe the property that secures the claim: | $954,432.00 | $2,000,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

> 161 N. Poinsettia Place Los
> Angeles, CA 90036  Los Angeles
> County
> **Single family residence; rental
> property. Debtor collects $3,000 per
> month rental income.**

**Attn: Bankruptcy
P. O. Box 619098
Dallas, TX 75261**

<u>Number, Street, City, State & Zip Code</u>

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
  community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
  car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Deed of Trust**

**Opened
05/05  Last
Active**

Date debt was incurred    **11/17/22**

Last 4 digits of account number    **2120**

EXHIBIT "3"
Page 21 of 57

| Debtor 1 | **Leslie Klein** | | | Case number (if known) | **2:23-bk-10990-SK** |
| | First Name | Middle Name | Last Name | | |

| 2.1 0 | **Selene Finance** | | | | $1,755,385.00 | $2,500,000.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

**315 N. Martel Avenue Los Angeles, CA 90036  Los Angeles County Single family residence; rental property.  Debtor collects $5,500/month.**

**Attn: Bankruptcy
Po Box 8619
Philadelphia, PA 19101**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Deed of Trust**

| Date debt was incurred | **Opened 08/18 Last Active 6/22/21** | Last 4 digits of account number | **8372** |

| 2.1 1 | **Shellpoint Mortgage Servicing** | | | | $1,213,516.00 | $2,200,000.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

**143 S. Highland Drive Los Angeles, CA 90036  Los Angeles County Single family residence; rental property. Debtor collects $4,000 per month in rental income.**

**Attn: Bankruptcy
Po Box 10826
Greenville, SC 29603**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Deed of Trust**

| Date debt was incurred | **Opened 04/19  Last Active 12/27/22** | Last 4 digits of account number | **4516** |

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 6 of 8

Debtor 1    **Leslie Klein**
      First Name      Middle Name      Last Name      Case number (if known)    **2:23-bk-10990-SK**

| 2.12 | **Toyota Financial Services** | | $34,318.00 | $0.00 | $34,318.00 |
|---|---|---|---|---|---|

Creditor's Name

**Describe the property that secures the claim:**

> **2021 Lexus LS500 n/a miles Leased vehicle. Monthly payment is $1,319.00.**

**Attn: Bankruptcy**
**Po Box 259001**
**Plano, TX 75025**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Auto Lease**

**Opened 05/21 Last Active 3/18/22**

Date debt was incurred    **3/18/22**    Last 4 digits of account number    **X788**

---

| 2.13 | **Toyota Financial Services** | | $10,488.00 | $0.00 | $10,488.00 |
|---|---|---|---|---|---|

Creditor's Name

**Describe the property that secures the claim:**

> **2021 Lexus LS n/a miles Leased vehicle. Debtor's spouses drives this vehicle. Monthly payment is $500.**

**Attn: Bankruptcy**
**Po Box 259001**
**Plano, TX 75025**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Auto Lease**

**Opened 06/21 Last Active 6/01/22**

Date debt was incurred    **6/01/22**    Last 4 digits of account number    **Y582**

---

Add the dollar value of your entries in Column A on this page. Write that number here:    **$31,564,856.56**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:    **$31,564,856.56**

**Part 2:**    **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

EXHIBIT "3"
Page 23 of 57

| Debtor 1 | **Leslie Klein** | | | Case number (if known) | **2:23-bk-10990-SK** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

[ ]  Name, Number, Street, City, State & Zip Code
**Andor Gestetner**
**c/o Law Offices of Jacob Unger**
**5404 Whitsett Ave Ste. 182**
**Valley Village, CA 91607**

On which line in Part 1 did you enter the creditor?  **2.7**

Last 4 digits of account number ___

[ ]  Name, Number, Street, City, State & Zip Code
**Ericka and Joseph Vago**
**124 N. Highland Ave**
**Sherman Oaks, CA 91423**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

EXHIBIT "3"
Page 24 of 57

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Leslie Klein** | |
| | First Name        Middle Name        Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name        Middle Name        Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number | **2:23-bk-10990-SK** | |
| (if known) | | ☐ Check if this is an amended filing |

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:   List All of Your PRIORITY Unsecured Claims

1.  Do any creditors have priority unsecured claims against you?

  ■ No. Go to Part 2.

  ☐ Yes.

### Part 2:   List All of Your NONPRIORITY Unsecured Claims

3.  Do any creditors have nonpriority unsecured claims against you?

  ☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

  ■ Yes.

4.  List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim. If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  | Total claim |
|---|---|---|
| **4.1** **Bank of America** | Last 4 digits of account number   8296 | **$7,450.00** |

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**4909 Savarese Circle**
**Tampa, FL 33634**
Number Street City State Zip Code

When was the debt incurred?   **Opened 09/16  Last Active 02/23**

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

■ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   **Credit Card**

Official Form 106 E/F                    Schedule E/F: Creditors Who Have Unsecured Claims                    Page 1 of 5
24271

EXHIBIT "3"
Page 25 of 57

Debtor 1    **Leslie Klein**                                          Case number (if known)    **2:23-bk-10990-SK**

| 4.2 | **Bank of America** | Last 4 digits of account number    6416 | $1,566.00 |

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**4909 Savarese Circle**
**Tampa, FL 33634**

When was the debt incurred?    **Opened 04/89  Last Active 02/23**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and another
□ Check if this claim is for a  community debt

□ Contingent
□ Unliquidated
□ Disputed

Type of NONPRIORITY unsecured claim:

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

Is the claim subject to offset?

■ No
□ Yes

□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

| 4.3 | **Barclays Bank Delaware** | Last 4 digits of account number    0647 | $8,896.00 |

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**Po Box 8801**
**Wilmington, DE 19899**

When was the debt incurred?    **Opened 05/09  Last Active 1/11/23**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and another
□ Check if this claim is for a  community debt

□ Contingent
□ Unliquidated
□ Disputed

Type of NONPRIORITY unsecured claim:

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

Is the claim subject to offset?

■ No
□ Yes

□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

| 4.4 | **California Bank & Trust** | Last 4 digits of account number    9505 | $1,695.00 |

Nonpriority Creditor's Name

**Po Box 711510**
**Santee, CA 92072**

When was the debt incurred?    **Opened 02/83  Last Active 02/23**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and another
□ Check if this claim is for a  community debt

□ Contingent
□ Unliquidated
□ Disputed

Type of NONPRIORITY unsecured claim:

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

Is the claim subject to offset?

■ No
□ Yes

□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

EXHIBIT "3"
Page 26 of 57

Debtor 1    **Leslie Klein**                                                                  Case number (if known)    **2:23-bk-10990-SK**

| | | |
|---|---|---|
| 4.5 | **Chase Card Services** | Last 4 digits of account number    **4280**    $22,278.00 |

<table>
<tr><td>4.5</td><td><b>Chase Card Services</b></td><td>Last 4 digits of account number    <b>4280</b></td><td style="text-align:right">$22,278.00</td></tr>
</table>

**4.5**    **Chase Card Services**
Nonpriority Creditor's Name
**Attn: Bankruptcy**
**P.O. 15298**
**Wilmington, DE 19850**
Number Street City State Zip Code

Last 4 digits of account number    **4280**                                    $22,278.00

When was the debt incurred?    **Opened 06/18  Last Active 5/07/21**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a  community debt

Is the claim subject to offset?

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

**4.6**    **Chase Card Services**
Nonpriority Creditor's Name
**Attn: Bankruptcy**
**P.O. 15298**
**Wilmington, DE 19850**
Number Street City State Zip Code

Last 4 digits of account number    **1527**                                    $22,095.00

When was the debt incurred?    **Opened 08/18  Last Active 03/21**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a  community debt

Is the claim subject to offset?

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

**4.7**    **Chase Card Services**
Nonpriority Creditor's Name
**Attn: Bankruptcy**
**Po Box 15298**
**Wilmington, DE 19850**
Number Street City State Zip Code

Last 4 digits of account number    **9155**                                    $17,555.00

When was the debt incurred?    **Opened 09/02  Last Active 02/23**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a  community debt

Is the claim subject to offset?

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

Official Form 106 E/F                    Schedule E/F: Creditors Who Have Unsecured Claims                    Page 3 of 5

Debtor 1    Leslie Klein                                                    Case number (if known)    2:23-bk-10990-SK

| 4.8 | **Chase Card Services** | Last 4 digits of account number | 2050 | $15,112.00 |

Nonpriority Creditor's Name

Attn: Bankruptcy
P.O. 15298
Wilmington, DE 19850

Number Street City State Zip Code

**Opened 01/89  Last Active**
When was the debt incurred?    **1/22/23**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and another

Type of NONPRIORITY unsecured claim:

☐ **Check if this claim is for a community debt**

☐ Student loans

Is the claim subject to offset?

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes

■ Other. Specify    **Credit Card**

---

| 4.9 | **Citibank** | Last 4 digits of account number | 3837 | $1,281.00 |

Nonpriority Creditor's Name

Attn: Bankruptcy
P.O. Box 790034
St Louis, MO 63179

Number Street City State Zip Code

**Opened 11/90  Last Active**
When was the debt incurred?    **8/12/22**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and another

Type of NONPRIORITY unsecured claim:

☐ **Check if this claim is for a community debt**

☐ Student loans

Is the claim subject to offset?

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes

■ Other. Specify    **Credit Card**

---

| 4.10 | **Franklin H. Menlo Irrevocable Trust** | Last 4 digits of account number | 6769 | Unknown |

Nonpriority Creditor's Name

c/o Willkie Farr & Gallagher LLP
Attn: Alex M. Weingarten, Esq.
2029 Century Park East, Suite 3400
Los Angeles, CA 90067

Number Street City State Zip Code

When was the debt incurred?    **2012**

Who incurred the debt? Check one.

☐ Debtor 1 only

As of the date you file, the claim is: Check all that apply

☐ Debtor 2 only

■ Contingent

☐ Debtor 1 and Debtor 2 only

■ Unliquidated

■ At least one of the debtors and another

■ Disputed

☐ **Check if this claim is for a community debt**

Type of NONPRIORITY unsecured claim:

Is the claim subject to offset?

☐ Student loans

■ No

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Yes

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **pending litigation (consolidated and related to 24 other cases)**

---

EXHIBIT "3"
Page 28 of 57

Debtor 1    **Leslie Klein**                                                                     Case number (if known)    **2:23-bk-10990-SK**

| 4.1 | | | |
|---|---|---|---|

**Jeffrey Siegel, Successor Trustee**    Last 4 digits of account number    **2432**    **Unknown**
Nonpriority Creditor's Name
**of the Hubert Scott Trust**    When was the debt incurred?    **2017**
**c/o Oldman, Cooley, Sallus**
**16133 Ventura Blvd., Penthouse**
**Suit**
**Encino, CA 91436-2408**
Number Street City State Zip Code    As of the date you file, the claim is: Check all that apply

**Who incurred the debt? Check one.**

- ☑ **Debtor 1 only**    ☑ Contingent
- ☐ **Debtor 2 only**    ☑ Unliquidated
- ☐ **Debtor 1 and Debtor 2 only**    ☑ Disputed
- ☐ **At least one of the debtors and another**    **Type of NONPRIORITY unsecured claim:**
- ☐ **Check if this claim is for a  community**    ☐ Student loans
  **debt**    ☐ Obligations arising out of a separation agreement or divorce that you did not
**Is the claim subject to offset?**    report as priority claims
- ☑ **No**    ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☐ **Yes**    ☑ Other. Specify    **pending litigation**

---

**Part 3:**    **List Others to Be Notified About a Debt That You Already Listed**

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address    On which entry in Part 1 or Part 2 did you list the original creditor?
**Oldman, Cooley, and Sallus**    Line **4.10** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims
**16133 Ventura Blvd., Penthouse Suit**    ☑ Part 2: Creditors with Nonpriority Unsecured Claims
**Encino, CA 91436-2408**

Last 4 digits of account number

---

**Part 4:**    **Add the Amounts for Each Type of Unsecured Claim**

6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ 0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. | **Other. Add all other priority unsecured claims. Write that amount here.** | 6d. | $ 0.00 |
| | 6e. | **Total Priority. Add lines 6a through 6d.** | 6e. | $ 0.00 |
| | | | | Total Claim |
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |
| | 6i. | **Other. Add all other nonpriority unsecured claims. Write that amount here.** | 6i. | $ 97,928.00 |
| | 6j. | **Total Nonpriority. Add lines 6f through 6i.** | 6j. | $ 97,928.00 |

Official Form 106 E/F    Schedule E/F: Creditors Who Have Unsecured Claims    Page 5 of 5

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Leslie Klein** |
| | First Name     Middle Name     Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **2:23-bk-10990-SK** |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone). See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.**

| | Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|---|
| 2.1 | **Chase Doe**<br>**143 S. Highland Drive**<br>**Los Angeles, CA 90036** | **Month to month residential lease agreement wtih the Debtor for 143 S. Highland Drive,  Los Angeles rental property. Debtor collects $4,000 rental income per month.** |
| 2.2 | **Jacob Rummitz**<br>**315 N. Martel Avenue**<br>**Los Angeles, CA 90036** | **Month to month residential lease agreement wtih the Debtor for 315 N. Martel Avenue, Los Angeles rental property. Debtor collects $5,500 rental income per month.** |
| 2.3 | **Sandra Layton**<br>**161 N. Poinsettia Place**<br>**Los Angeles, CA 90036** | **Month to month residential lease agreement wtih the Debtor for 161 N. Poinsettia Place rental property. Debtor collects $3,000  rental income per month.** |

Official Form 106G        Schedule G: Executory Contracts and Unexpired Leases        Page 1 of 1

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | **Leslie Klein** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 2:23-bk-10990-SK | | |
| (if known) | | | |

☐ Check if this is an
amended filing

# Official Form 106H
## Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.

☐ No
■ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☐ No. Go to line 3.
■ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

    ☐ No
    ■ Yes.

    In which community state or territory did you live?      -NONE-    . Fill in the name and current address of that person.

    _____
    Name of your spouse, former spouse, or legal equivalent
    Number, Street, City, State & Zip Code

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| Column 1: Your codebtor<br>Name, Number, Street, City, State and ZIP Code | Column 2: The creditor to whom you owe the debt<br>Check all schedules that apply: |
|---|---|
| 3.1   **Leslie Klein & Associates, Inc.**<br>     **c/o Parker Milliken**<br>     **555 Flower Street**<br>     **Los Angeles, CA 90071** | ☐ Schedule D, line _____<br>■ Schedule E/F, line   **4.10**<br>☐ Schedule G _____<br>**Franklin H. Menlo Irrevocable Trust** |

EXHIBIT "3"
Page 31 of 57

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Leslie Klein** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | **2:23-bk-10990-SK** |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

<u>Official Form 106I</u>
# Schedule I: Your Income                                                    12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ☒ Employed | ☐ Employed |
| | | ☐ Not employed | ☒ Not employed |
| Occupation | | **Attorney** | |
| Employer's name | | **Leslie Klein & Associates, Inc.** | |
| Employer's address | | **14245 Ventura Blvd., #301 Sherman Oaks, CA 91423** | |
| How long employed there? | | **50 years** | |

## Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $  0.00 | $  0.00 |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$  0.00 | +$  0.00 |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4. | $  0.00 | $  0.00 |

EXHIBIT "3"

Page 32 of 57

Debtor 1    **Leslie Klein** _____    Case number *(if known)*    **2:23-bk-10990-SK**

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| | Copy line 4 here ......................................... 4. | $ 0.00 | $ 0.00 |

5. **List all payroll deductions:**

|  |  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ 0.00 |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ 0.00 |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ 0.00 |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | $ 0.00 |
| 5e. | Insurance | 5e. | $ 0.00 | $ 0.00 |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ 0.00 |
| 5g. | Union dues | 5g. | $ 0.00 | $ 0.00 |
| 5h. | Other deductions. Specify: _____ | 5h.+ | $ 0.00 + | $ 0.00 |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.    $ 0.00    $ 0.00

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.    7.    $ 0.00    $ 0.00

8. **List all other income regularly received:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 1,800.00 | $ 0.00 |
| 8b. | **Interest and dividends** | 8b. | $ 0.00 | $ 0.00 |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. | **Unemployment compensation** | 8d. | $ 0.00 | $ 0.00 |
| 8e. | **Social Security** | 8e. | $ 3,333.00 | $ 0.00 |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | 8f. | $ 0.00 | $ 0.00 |
| 8g. | **Pension or retirement income** | 8g. | $ 0.00 | $ 0.00 |
| 8h. | **Other monthly income. Specify:** Rental Income from Martel Property | 8h.+ | $ 5,500.00 + | $ 0.00 |
| | Rental Income from Highland Property | | $ 4,000.00 | $ 0.00 |
| | Rental Income from Poinsettia Property | | $ 3,000.00 | $ 0.00 |

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.    $ 17,633.00    $ 0.00

10. **Calculate monthly income.** Add line 7 + line 9.    10.    $ 17,633.00 + $ 0.00 = $ 17,633.00
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in *Schedule J.*** Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____    11.  +$ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies    12.    $ 17,633.00

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
☐ No.
■ Yes. Explain: | Debtor intends to sell one or more of his assets to be able to make the payments to his creditors and to successfully reorganize.

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Leslie Klein** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | **CENTRAL DISTRICT OF CALIFORNIA** |
| Case number (If known) | **2:23-bk-10990-SK** |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

# Official Form 106J
## Schedule J: Your Expenses
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Your Household

1.    **Is this a joint case?**

☐ No. Go to line 2.
☐ Yes. Does Debtor 2 live in a separate household?

☐ No
☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.    **Do you have dependents?**    ☐ No

Do not list Debtor 1 and Debtor 2.

☐ Yes.    Fill out this information for each dependent..............

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |

Do not state the dependents names.

3.    **Do your expenses include expenses of people other than yourself and your dependents?**    ☐ No    ☐ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | **Your expenses** |
|---|---|---|

4.    The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot.    4.    $    **0.00**

If not included in line 4:

| | | | |
|---|---|---|---|
| 4a. | Real estate taxes | 4a. $ | **1,250.00** |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ | **333.00** |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ | **350.00** |
| 4d. | Homeowner's association or condominium dues | 4d. $ | **0.00** |
| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. $ | **0.00** |

EXHIBIT "3"
Page 34 of 57

| Debtor 1 | **Leslie Klein** | | Case number (if known) | **2:23-bk-10990-SK** |

| 6. | **Utilities:** | | | | |
|----|---|---|---|---|---|
| | 6a. | Electricity, heat, natural gas | 6a. | $ | 1,800.00 |
| | 6b. | Water, sewer, garbage collection | 6b. | $ | 0.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 200.00 |
| | 6d. | Other. Specify: | 6d. | $ | 0.00 |
| 7. | **Food and housekeeping supplies** | | 7. | $ | 2,000.00 |
| 8. | **Childcare and children's education costs** | | 8. | $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. | $ | 100.00 |
| 10. | **Personal care products and services** | | 10. | $ | 100.00 |
| 11. | **Medical and dental expenses** | | 11. | $ | 200.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | | 12. | $ | 400.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. | $ | 150.00 |
| 14. | **Charitable contributions and religious donations** | | 14. | $ | 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | | |
| | 15a. | Life insurance | 15a. | $ | 0.00 |
| | 15b. | Health insurance | 15b. | $ | 0.00 |
| | 15c. | Vehicle insurance | 15c. | $ | 500.00 |
| | 15d. | Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | | 16. | $ | 0.00 |
| 17. | **Installment or lease payments:** | | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. | $ | 1,319.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. | $ | 500.00 |
| | 17c. | Other. Specify:  **Mortgage for Martel Rental** | 17c. | $ | 10,854.00 |
| | 17d. | Other. Specify:  **Mortgage for Highland Rental** | 17d. | $ | 10,729.00 |
| | | **Mortgage for Poinsettia Rental** | | $ | 10,215.00 |
| | | **Mortgage for Whitewater Club Drive Property** | | $ | 433.00 |
| | | **Property Tax for Whitewater Club Drive Property** | | $ | 100.00 |
| | | **Mortgage for Ocean Drive Property** | | $ | 8,813.00 |
| | | **Leonardo Plaza Hotel Maintenance Expenses** | | $ | 2,500.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income** (Official Form 106I). | | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | | 19. | | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income.** | | | | |
| | 20a. | Mortgages on other property | 20a. | $ | 0.00 |
| | 20b. | Real estate taxes | 20b. | $ | 0.00 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | **Other:** Specify: | | 21. | +$ | 0.00 |

| 22. | **Calculate your monthly expenses** | | | |
|----|---|---|---|---|
| | 22a. Add lines 4 through 21. | | $ | 52,846.00 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | | $ | 52,846.00 |

| 23. | **Calculate your monthly net income.** | | | |
|----|---|---|---|---|
| | 23a. Copy line 12 (your combined monthly income) from Schedule I. | 23a. | $ | 17,633.00 |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. | -$ | 52,846.00 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your monthly net income. | 23c. | $ | -35,213.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☐ No.

■ Yes.    Explain here: **Debtor intends to sell one or more of his assets to be able to make the payments to his creditors and to successfully reorganize.**

EXHIBIT "3"
Page 35 of 57

Fill in this information to identify your case:

Debtor 1     **Leslie Klein**
             _____
             First Name        Middle Name        Last Name

Debtor 2
(Spouse if, filing)   _____
                      First Name        Middle Name        Last Name

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number   2:23-bk-10990-SK
(if known)    _____

☐ Check if this is an
   amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Sign Below**

Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?

☑ No

☐ Yes. Name of person _____   *Attach Bankruptcy Petition Preparer's Notice, Declaration, and Signature (Official Form 119)*

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

X _____     X _____
   Leslie Klein                            Signature of Debtor 2
   Signature of Debtor 1

Date   3/8/2023                          Date _____

Official Form 106Dec                Declaration About an Individual Debtor's Schedules

<table>
<tr><td colspan="4">Fill in this information to identify your case:</td></tr>
</table>

Fill in this information to identify your case:

| Debtor 1 | **Leslie Klein** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | **2:23-bk-10990-SK** | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy           04/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Give Details About Your Marital Status and Where You Lived Before

1.    **What is your current marital status?**

☑ Married
☐ Not married

2.    **During the last 3 years, have you lived anywhere other than where you live now?**

☑ No
☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|

3.    **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

☐ No
☑ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2    Explain the Sources of Your Income

4.    **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
☑ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Sources of income Check all that apply. | Gross income (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ☐ Wages, commissions, bonuses, tips | $4,000.00 | ☐ Wages, commissions, bonuses, tips | |
| | ☑ Operating a business | | ☐ Operating a business | |

Debtor 1   **Leslie Klein**                                     Case number *(if known)*   **2:23-bk-10990-SK**

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **For last calendar year:**<br>(January 1 to December 31, 2022 ) | ☐ Wages, commissions, bonuses, tips | $24,000.00 | ☐ Wages, commissions, bonuses, tips | |
| | ■ Operating a business | | ☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2021 ) | ☐ Wages, commissions, bonuses, tips | $24,000.00 | ☐ Wages, commissions, bonuses, tips | |
| | ■ Operating a business | | ☐ Operating a business | |

5. **Did you receive any other income during this year or the two previous calendar years?**
   Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

   List each source and the gross income from each source separately. Do not include income that you listed in line 4.

   ☐ No
   ■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | Social Security | $6,666.00 | | |
| | Rental Income | $25,000.00 | | |
| **For last calendar year:**<br>(January 1 to December 31, 2022 ) | Social Security | $40,000.00 | | |
| | Rental Income | $144,000.00 | | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2021 ) | Social Security | $40,000.00 | | |
| | Rental Income | $144,000.00 | | |

---

**Part 3:**   **List Certain Payments You Made Before You Filed for Bankruptcy**

6. **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**
   ■ **No.   Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $7,575* or more?
   ■ **No.**   Go to line 7.
   ☐ **Yes**   List below each creditor to whom you paid a total of $7,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
   * Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.

EXHIBIT "3"
Page 38 of 57

| Debtor 1 | Leslie Klein | | Case number *(if known)* | **2:23-bk-10990-SK** |

 

☐ **Yes. Debtor 1 or Debtor 2 or both have primarily consumer debts.**
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

    ☐ **No.** Go to line 7.
    ☐ **Yes** List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still paid | Was this payment for ... |
|---|---|---|---|---|
| | | | | |

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

    ■ No
    ☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|
| | | | | |

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

    ■ No
    ☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|
| | | | | |

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

    ☐ No
    ■ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| In re Matter of the Franklin Henry Menlo Irrevocable Trust, et al. v. Leslie Klein BP136769 | Trust | Superior Court of California 111 Hill St. Los Angeles, CA 90012 | ■ Pending ☐ On appeal ☐ Concluded |
| The Scott Trust DTD 12/24/1992 - Trust BP172432 | Trust | Superior Court of California 111 Hill St. Los Angeles, CA 90012 | ■ Pending ☐ On appeal ☐ Concluded |
| Joseph Vago, Et Al vs. Leslie Klein 20STCV25050 | Fraud | Superior Court of California 111 Hill St Los Angeles, CA 90012 | ☐ Pending ■ On appeal ☐ Concluded |

EXHIBIT "3"
Page 39 of 57

Debtor 1    **Leslie Klein**                                        Case number *(if known)*   **2:23-bk-10990-SK**

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

☑ No. Go to line 11.
☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property | Date | Value of the property |
|---|---|---|---|
| | Explain what happened | | |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

☑ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

☑ No
☐ Yes

### Part 5:    List Certain Gifts and Contributions

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

☑ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| Person to Whom You Gave the Gift and Address: | | | |

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

☑ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600 | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| Charity's Name | | | |
| Address (Number, Street, City, State and ZIP Code) | | | |

### Part 6:    List Certain Losses

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☑ No
☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss | Date of your loss | Value of property lost |
|---|---|---|---|
| | Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | | |

### Part 7:    List Certain Payments or Transfers

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
☑ Yes. Fill in the details.

| Person Who Was Paid | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Address | | | |
| Email or website address | | | |
| Person Who Made the Payment, if Not You | | | |

EXHIBIT "3"
Page 40 of 57

| Debtor 1 | **Leslie Klein** | | Case number *(if known)* | **2:23-bk-10990-SK** |
|---|---|---|---|---|

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, If Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Law Offices of Michael Jay Berger<br>9454 Wilshire Boulevard, 6th floor<br>Beverly Hills, CA 90212<br>michael.berger@bankruptcypower.com | Attorney Fees | 2/15/2023 + the filing fee | $21,738.00 |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

☑ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☑ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

☑ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

<hr>

**Part 8:**    List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☑ No
☐ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

☑ No
☐ Yes. Fill in the details.

| Name of Financial Institution<br>Address (Number, Street, City, State and ZIP Code) | Who else had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

EXHIBIT "3"
Page 41 of 57

Debtor 1   **Leslie Klein**                                    Case number (if known)   **2:23-bk-10990-SK**

22. Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?

■ No
☐ Yes. Fill in the details.

| Name of Storage Facility<br>Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:   Identify Property You Hold or Control for Someone Else**

23. Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.

■ No
☐ Yes. Fill in the details.

| Owner's Name<br>Address (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:   Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

- *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.
- *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.
- *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

■ No
☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25. Have you notified any governmental unit of any release of hazardous material?

■ No
☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.

■ No
☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

**Part 11:   Give Details About Your Business or Connections to Any Business**

27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

Debtor 1   Leslie Klein _____    Case number (if known)  2:23-bk-10990-SK

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies. Go to Part 12.

■ Yes. Check all that apply above and fill in the details below for each business.

| Business Name Address (Number, Street, City, State and ZIP Code) | Describe the nature of the business Name of accountant or bookkeeper | Employer Identification number Do not include Social Security number or ITIN. Dates business existed |
|---|---|---|
| Bay Area Development, Co. 14245 Ventura Blvd Sherman Oaks, CA 91423 | real estate holding company | EIN:   95-2816693 From-To |
| Life Capital Group, LLC 7223 Beverly Blvd., Suite 205 Los Angeles, CA 90036 | investment company | EIN: From-To |

28.  Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.

■ No
☐ Yes. Fill in the details below.

Name                                    Date Issued
Address
(Number, Street, City, State and ZIP Code)

**Part 12:   Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

_Leslie Klein_ (signature)                          _____
Leslie Klein                                        Signature of Debtor 2
Signature of Debtor 1

Date ___3/9/2023___                                 Date _____

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?
■ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?
■ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

EXHIBIT "3"
Page 43 of 57

## Notice Required by 11 U.S.C. § 342(b) for
## Individuals Filing for Bankruptcy (Form 2010)

This notice is for you if:

You are an individual filing for bankruptcy, and

Your debts are primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

Chapter 7 - Liquidation

Chapter 11 - Reorganization

Chapter 12 - Voluntary repayment plan for family farmers or fishermen

Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
|---|---|
| $245 | filing fee |
| $78 | administrative fee |
| + $15 | trustee surcharge |
| $338 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

most taxes;

most student loans;

domestic support and property settlement obligations;

EXHIBIT "3"
Page 44 of 57

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

### Chapter 11: Reorganization

|   |   |   |
|---|---|---|
|   | $1,167 | filing fee |
| + | $571 | administrative fee |
|   | $1,738 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

## Read These Important Warnings

**Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.**

**Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.**

**You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.**

**Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Chapter 12: Repayment plan for family farmers or fishermen

|   |   |   |
|---|---|---|
|   | $200 | filing fee |
| + | $78 | administrative fee |
|   | $278 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

### Chapter 13: Repayment plan for individuals with regular income

|   |   |   |
|---|---|---|
|   | $235 | filing fee |
| + | $78 | administrative fee |
|   | $313 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

## Warning: File Your Forms on Time

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/forms/bankruptcy-forms

### Bankruptcy crimes have serious consequences

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

### Make sure the court has your mailing address

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

### Understand which services you could receive from credit counseling agencies

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from:
http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

In Alabama and North Carolina, go to:
http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

EXHIBIT "3"
Page 47 of 57

| Fill in this information to identify your case: | |
| --- | --- |
| Debtor 1 __Leslie Klein__ | |
| Debtor 2 _____ (Spouse, if filing) | |
| United States Bankruptcy Court for the: __Central District of California__ | |
| Case number __2:23-bk-10990-SK__ (if known) | ☐ Check if this is an amended filing |

## Official Form 122B
## Chapter 11 Statement of Your Current Monthly Income

12/21

You must file this form if you are an individual and are filing for bankruptcy under Chapter 11 (other than Subchapter V). If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).

**Part 1:    Calculate Your Current Monthly Income**

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married.** Fill out Column A, lines 2-11.

   ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ■ **Married and your spouse is NOT filing with you.** Fill out Column A, lines 2-11.

   Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | | Column A Debtor 1 | Column B Debtor 2 |
| --- | --- | --- | --- | --- |
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | | $ 0.00 | $ _____ |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | | $ 0.00 | |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | | $ 0.00 | |

| 5. | **Net income from operating a business, profession, or farm** | Debtor 1 | Debtor 2 | | |
| --- | --- | --- | --- | --- | --- |
| | Gross receipts (before all deductions) | $ | 2,000.00 | | |
| | Ordinary and necessary operating expenses | -$ | 200.00 | | |
| | Net monthly income from a business, profession, or farm | $ | 1,800.00 | Copy here -> $ 1,800.00 | $ _____ |

| 6. | **Net income from rental and other real property** | Debtor 1 | Debtor 2 | | |
| --- | --- | --- | --- | --- | --- |
| | Gross receipts (before all deductions) | $ | 12,500.00 | | |
| | Ordinary and necessary operating expenses | -$ | 0.00 | | |
| | Net monthly income from rental or other real property | $ | 12,500.00 | Copy here -> $ 12,500.00 | $ _____ |

Official Form 122B          Chapter 11 Statement of Your Current Monthly Income          page 1

| Debtor 1 | **Leslie Klein** | | Case number *(if known)* | **2:23-bk-10990-SK** |

| | | Column A<br>Debtor 1 | Column B<br>Debtor 2 |
|---|---|---|---|
| 7. | **Interest, dividends, and royalties** | $ 0.00 | $ |
| 8. | **Unemployment compensation** | $ 0.00 | $ |

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

For you ........................................................... $ 0.00

For your spouse ......................................... $

9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.

$ 0.00    $

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below.

| | Column A | Column B |
|---|---|---|
| _____ | $ _____ | $ _____ |
| _____ | $ 0.00 | $ _____ |
| Total amounts from separate pages, if any. | + $ 0.00 | $ _____ |

11. **Calculate your total current monthly income.**
Add lines 2 through 10 for each column.
Then add the total for Column A to the total for Column B.

$ 14,300.00 + $ _____ = $ 14,300.00

EXHIBIT "3"
Page 49 of 57

Debtor 1  **Leslie Klein** _____    Case number (*if known*)  **2:23-bk-10990-SK** _____

| Part 2: | Sign Below |
| --- | --- |

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

X _____

**Leslie Klein**
Signature of Debtor 1

Date  3 / 8 / 2023
  MM / DD / YYYY

Official Form 122B                Chapter 11 Statement of Your Current Monthly Income                **page 3**

Debtor 1    **Leslie Klein**                                                    Case number (*if known*)    **2:23-bk-10990-SK**

## Current Monthly Income Details for the Debtor

**Debtor Income Details:**
Income for the Period **08/01/2022** to **01/31/2023**.

**Line 5 - Income from operation of a business, profession, or farm**
Source of Income: **Leslie Klein & Associates, Inc.**
Income/Expense/Net by Month:

|  | Date | Income | Expense | Net |
|---|---|---|---|---|
| 6 Months Ago: | **08/2022** | **$2,000.00** | **$200.00** | **$1,800.00** |
| 5 Months Ago: | **09/2022** | **$2,000.00** | **$200.00** | **$1,800.00** |
| 4 Months Ago: | **10/2022** | **$2,000.00** | **$200.00** | **$1,800.00** |
| 3 Months Ago: | **11/2022** | **$2,000.00** | **$200.00** | **$1,800.00** |
| 2 Months Ago: | **12/2022** | **$2,000.00** | **$200.00** | **$1,800.00** |
| Last Month: | **01/2023** | **$2,000.00** | **$200.00** | **$1,800.00** |
| | Average per month: | **$2,000.00** | **$200.00** | |
| | | | Average Monthly NET Income: | **$1,800.00** |

**Line 6 - Rent and other real property income**
Source of Income: **Rental Income from Highland**
Income/Expense/Net by Month:

|  | Date | Income | Expense | Net |
|---|---|---|---|---|
| 6 Months Ago: | **08/2022** | **$4,000.00** | **$0.00** | **$4,000.00** |
| 5 Months Ago: | **09/2022** | **$4,000.00** | **$0.00** | **$4,000.00** |
| 4 Months Ago: | **10/2022** | **$4,000.00** | **$0.00** | **$4,000.00** |
| 3 Months Ago: | **11/2022** | **$4,000.00** | **$0.00** | **$4,000.00** |
| 2 Months Ago: | **12/2022** | **$4,000.00** | **$0.00** | **$4,000.00** |
| Last Month: | **01/2023** | **$4,000.00** | **$0.00** | **$4,000.00** |
| | Average per month: | **$4,000.00** | **$0.00** | |
| | | | Average Monthly NET Income: | **$4,000.00** |

**Line 6 - Rent and other real property income**
Source of Income: **Rental Income from Martel**
Income/Expense/Net by Month:

|  | Date | Income | Expense | Net |
|---|---|---|---|---|
| 6 Months Ago: | **08/2022** | **$5,500.00** | **$0.00** | **$5,500.00** |
| 5 Months Ago: | **09/2022** | **$5,500.00** | **$0.00** | **$5,500.00** |
| 4 Months Ago: | **10/2022** | **$5,500.00** | **$0.00** | **$5,500.00** |
| 3 Months Ago: | **11/2022** | **$5,500.00** | **$0.00** | **$5,500.00** |
| 2 Months Ago: | **12/2022** | **$5,500.00** | **$0.00** | **$5,500.00** |
| Last Month: | **01/2023** | **$5,500.00** | **$0.00** | **$5,500.00** |
| | Average per month: | **$5,500.00** | **$0.00** | |
| | | | Average Monthly NET Income: | **$5,500.00** |

EXHIBIT "3"
Page 51 of 57

Debtor 1   **Leslie Klein**                                    Case number (*if known*)   **2:23-bk-10990-SK**

**Line 6 - Rent and other real property income**
Source of Income: **Rental Income from Poinsettia**
Income/Expense/Net by Month:

|  | Date | Income | | Expense | | Net |
|---|---|---|---|---|---|---|
| 6 Months Ago: | 08/2022 | $3,000.00 | | $0.00 | | $3,000.00 |
| 5 Months Ago: | 09/2022 | $3,000.00 | | $0.00 | | $3,000.00 |
| 4 Months Ago: | 10/2022 | $3,000.00 | | $0.00 | | $3,000.00 |
| 3 Months Ago: | 11/2022 | $3,000.00 | | $0.00 | | $3,000.00 |
| 2 Months Ago: | 12/2022 | $3,000.00 | | $0.00 | | $3,000.00 |
| Last Month: | 01/2023 | $3,000.00 | | $0.00 | | $3,000.00 |
| | Average per month: | $3,000.00 | | $0.00 | | |
| | | | | Average Monthly NET Income: | | $3,000.00 |

**Non-CMI - Social Security Act Income**
Source of Income: **Social Security Income**
Income by Month:

|  | | |
|---|---|---|
| 6 Months Ago: | 08/2022 | $3,333.00 |
| 5 Months Ago: | 09/2022 | $3,333.00 |
| 4 Months Ago: | 10/2022 | $3,333.00 |
| 3 Months Ago: | 11/2022 | $3,333.00 |
| 2 Months Ago: | 12/2022 | $3,333.00 |
| Last Month: | 01/2023 | $3,333.00 |
| | Average per month: | $3,333.00 |

EXHIBIT "3"
Page 52 of 57

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>**Michael Jay Berger**<br>**9454 Wilshire Boulevard, 6th floor**<br>**Beverly Hills, CA 90212**<br>**(310) 271-6223 Fax: (310) 271-9805**<br>**California State Bar Number: 100291 CA**<br>**michael.berger@bankruptcypower.com** | FOR COURT USE ONLY |

☐ *Debtor(s) appearing without an attorney*

■ *Attorney for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>     **Leslie Klein**<br><br><br><br><br><br>     Debtor(s). | CASE NO.: **2:23-bk-10990-SK**<br>CHAPTER: **11**<br><br>**VERIFICATION OF MASTER**<br>**MAILING LIST OF CREDITORS**<br><br>**[LBR 1007-1(a)]** |

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of **4** sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: ___3/8/2023___          _____
                              Signature of Debtor 1

Date: _____          _____
                              Signature of Debtor 2 (joint debtor) ) (if applicable)

Date: ___3/8/2023___          _____
                              Signature of Attorney for Debtor (if applicable)

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2015                              **F 1007-1.MAILING.LIST.VERIFICATION**

Leslie Klein
322 N. June Street
Los Angeles, CA 90001

Michael Jay Berger
Law Offices of Michael Jay Berger
9454 Wilshire Boulevard, 6th floor
Beverly Hills, CA 90212

Andor Gestetner
c/o Law Offices of Jacob Unger
5404 Whitsett Ave Ste. 182
Valley Village, CA 91607

Bank of America
Attn: Bankruptcy
4909 Savarese Circle
Tampa, FL 33634

Barclays Bank Delaware
Attn: Bankruptcy
Po Box 8801
Wilmington, DE 19899

California Bank & Trust
Po Box 711510
Santee, CA 92072

CCO Mortgage Corp.
Attn: Bankruptcy
10561 Telegraph Rd
Glen Allen, VA 23059

Chase Card Services
Attn: Bankruptcy
P.O. 15298
Wilmington, DE 19850

Chase Card Services
Attn: Bankruptcy
Po Box 15298
Wilmington, DE 19850


Chase Doe
143 S. Highland Drive
Los Angeles, CA 90036


Chase Mortgage
BK Department
Mail Code LA4 5555  700 Kansas Ln
Monroe, LA 71203


Citibank
Attn: Bankruptcy
P.O. Box 790034
St Louis, MO 63179


Ericka and Joseph Vago
c/o Brian Procel
Procel Law
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401


Ericka and Joseph Vago
124 N. Highland Ave
Sherman Oaks, CA 91423


Fay Servicing LLC
Attn: Bankruptcy Dept
Po Box 809441
Chicago, IL 60680


Fiore Racobs & Powers
c/o Palm Springs Country Club HOA
6820 Indiana Ave., Ste 140
6820 Indiana Ave., Ste 140
Riverside, CA 92506

Franklin H. Menlo Irrevocable Trust
c/o Willkie Farr & Gallagher LLP
Attn: Alex M. Weingarten, Esq.
2029 Century Park East, Suite 3400
Los Angeles, CA 90067


Gestetner Charitable Remainder Trus
c/o Andor Gestetner
1425 55th Street
Brooklyn, NY 11219


Jacob Rummitz
315 N. Martel Avenue
Los Angeles, CA 90036


Jeffrey Siegel, Successor Trustee
of the Hubert Scott Trust
c/o Oldman, Cooley, Sallus
16133 Ventura Blvd., Penthouse Suit
Encino, CA 91436-2408


Leslie Klein & Associates, Inc.
c/o Parker Milliken
555 Flower Street
Los Angeles, CA 90071


Los Angeles County Tax Collector
Bankruptcy Unit
PO Box 54110
Los Angeles, CA 90054-0027


Mrc/united Wholesale M
Attn: Bankruptcy
P. O. Box 619098
Dallas, TX 75261


Oldman, Cooley, and Sallus
16133 Ventura Blvd., Penthouse Suit
Encino, CA 91436-2408

Sandra Layton
161 N. Poinsettia Place
Los Angeles, CA 90036


Selene Finance
Attn: Bankruptcy
Po Box 8619
Philadelphia, PA 19101


Shellpoint Mortgage Servicing
Attn: Bankruptcy
Po Box 10826
Greenville, SC 29603


Toyota Financial Services
Attn: Bankruptcy
Po Box 259001
Plano, TX 75025

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 17701 Cowan, Bldg. D., Suite 210, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION TO DISALLOW DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION PURSUANT TO 11 U.S.C. § 522(q); DECLARATION OF ERICA VAGO AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SAME** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 11, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) April 11, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) April 11, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Sandra R. Klein, USBC, 255 E. Temple Street, Ctrm 1575, Los Angeles, CA 90012

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 11, 2023   Susan C. Stein | /s/Susan C. Stein |
|---|---|
| *Date*          *Printed Name* | *Signature* |

2

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

**Mailing Information for Case 2:23-bk-10990-SK**

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Michael Jay Berger**    michael.berger@bankruptcypower.com,
  yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Greg P Campbell**    ch11ecf@aldridgepite.com,
  gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Theron S Covey**    tcovey@raslg.com, sferry@raslg.com
- **Dane W Exnowski**    dane.exnowski@mccalla.com,
  bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Michael Jones**    michael.jones4@usdoj.gov
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Joshua L Scheer**    jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- **Mark M Sharf (TR)**    mark@sharflaw.com,
  C188@ecfcbis.com;sharf1000@gmail.com;2180473420@filings.docketbird.com
- **Alan G Tippie**    Alan.Tippie@gmlaw.com,
  atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker
  @gmlaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**    mwachtell@buchalter.com
- **John P. Ward**    jward@attleseystorm.com, ezhang@attleseystorm.com
- **Clarisse Young**    youngshumaker@smcounsel.com, levern@smcounsel.com
- **Paul P Young**    paul@cym.law, jaclyn@cym.law

3

**In re Leslie Klein**
**2:23-bk-10990-SK**

**Debtor**
Leslie Klein
322 N June Street
Los Angeles, CA 90004-1042

United States Trustee (LA)
915 Wilshire Blvd, Ste. 1850
Los Angeles, CA 90017-3560

**Trustee**
Mark M Sharf (TR)
6080 Center Drive, Ste 600
Los Angeles, CA 90045-1540

**Debtor's Counsel**
Michael Jay Berger
9454 Wilshire Blvd, 6th Fl
Beverly Hills, CA 90212-2980

## CREDITORS

Andor Gestetner
c/o Law Offices of Jacob Unger
5404 Whitsett Ave, Ste 182
Valley Village, CA 91607-1615

Bank of America
Attn: Bankruptcy
4909 Savarsee Circle
Tampa, FL 33634-2413

Bank of America, N.A.
PO Box 673033
Dallas, TX 75267-3033

Barclays Bank Delaware
Attn: Bankruptcy
PO Box 8801
Wilmington, DE 19899-8801

CCO Mortgage Corp
10561 Telegraph Rd
Glen Allen, VA 23059-4577

California Bank & Trust
PO Box 711510
Santee, CA 92072-1510

JPMorgan Chase Bank, N.A.
Bankruptcy Mail Intake Team
700 Kansas Lane Floor 01
Monroe, LA 71203-4774

Chase Doe
143 S Highland Drive
Los Angeles, CA 90036-3028

Chase Mortgage
BK Department / Mail Code LA4 5555
700 Kansas Lane
Monroe, LA 71203

Citibank
Attn: Bankruptcy
PO Box 790034
St Louis, MO 63179-0034

Erica Vago and Joseph Vago
c/o Brian A Procel / Procel Law, PC
401 Wilshire Blvd, 12th Fl
Santa Monica, CA 90401-1456

Erica and Joseph Vago
124 N Highland Ave
Sherman Oaks, CA 91423

Fay Servicing LLC
PO Box 814609
Dallas, TX 75381-4609

Fiore Racobs and Powers
Attn Erin A Maloney
6820 Indiana Avenue, Suite 140
Riverside, CA 92506-4261

First Amended Wendriger Family Trust
c/o Shumaker Mallory LLP
Clarisse Young Shumaker
280 S Beverly Dr, Suite 505
Beverly Hills, CA 90212-3908

Franklin H. Menlo Irrevocable Trust
c/o Wilkie Farr & Gallagher LLP
Attn: Alex M Weingarten, Esq.
2029 Century Park East, Ste 3400
Los Angeles, CA 90067-3020

Franklin H. Menlo, Trustee
Paul P Young
c/o Chora Young & Manasser
650 Sierra Madre Villa Ave, Ste 304
Pasadena, CA 91107-2071

Gestetner Charitable Remainder Trust
c/o Andor Gestatner
1425 55th Street
Brooklyn, NY 11219

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services LLC
PO Box 9013
Addison, TX 75001-9013

Jacob Rummitz
315 N Martel Avenue
Los Angeles, Ca 90036-2515

Jeffrey Siegel, Successor Trustee
Of the Hubert Scott Trust
c/o Oldman, Cooley, Sallus
16133 Ventura Blvd, Penthouse Ste
Encino, CA 91436-2447

Los Angeles County Treasurer/Tax
Attn Bankruptcy Unit
PO Box 54110
Los Angeles, CA 90054-0110

Leslie Klein & Associates, Inc.
c/o Parker Milliken
555 Flower Street
Los Angeles, CA 90071-2300

MRS/United Wholesale M
Attn Bankruptcy
PO Box 619098
Dallas, TX 75261-9098

Oldman, Cooley, and Sallus
16133 Ventura Blvd, Penthouse Ste
Encino, CA 91436-2447

Sandra Layton
161 N Poinsettia Place
Los Angeles, CA 90036-2805

Selene Finance
Attn Bankruptcy
PO Box 8619
Philadelphia, PA 19101-8619

Shellpoint Mortgage Servicing
Attn Bankruptcy
PO Box 10826
Greenville, SC 29603-0826

Toyota Financial Services
Attn: Bankruptcy
PO Box 259001
Plano, TX 75025-9001

Toyota Lease Trust
c/o Toyota Motor Credit Corporation
PO Box 9013
Addison, TX 75001-9013

Wilmington Savings Fund Society, FSB
d/b/a Robertson, Anschutz, Schneid, Crane
& Pa
350 10th Avenue, Suite 1000
San Diego, CA 92101-8705