1   Robert P. Goe - State Bar No. 137019
    Reem J. Bello – State Bar No. 198840
2   **GOE FORSYTHE & HODGES LLP**
    17701 Cowan Avenue, Suite 210, Bldg. D
3   Irvine, CA 92614
    rgoe@goeforlaw.com
4   rbello@goeforlaw.com

5   Telephone:  (949) 798-2460
    Facsimile:  (949) 955-9437
6
7   Attorneys for Judgment Creditors Erica and Joseph Vago

8                    **UNITED STATES BANKRUPTCY COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

10

11  In re:                                    Case No. 2:23-bk-10990-SK

12  LESLIE KLEIN,                             Chapter 11 Proceeding

13                                            **NOTICE OF MOTION AND MOTION**
           Debtor and Debtor in Possession,  **FOR ORDER DISMISSING DEBTOR'S**
14                                            **CHAPTER 11 BANKRUPTCY CASE;**
                                              **MEMORANDUM OF POINTS AND**
15                                            **AUTHORITIES; DECLARATION OF**
                                              **ERICA VAGO; AND REQUEST FOR**
16                                            **JUDICIAL NOTICE IN SUPPORT OF**
                                              **SAME**
17
                                              **[Declaration of Brian Procel in Support**
18                                            **Filed Concurrently Herewith]**

19                                            Date:       May 17, 2023
                                              Time:       9:00 a.m.
20                                            Place:      Courtroom 1575
                                                          U.S. Bankruptcy Court
21                                                        255 E. Temple Street
                                                          Los Angeles, CA 90012
22

23      **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY**

24  **JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED**

25  **PARTIES**:

26      **PLEASE TAKE NOTICE** that judgment creditors Erica and Joseph Vago ("Vagos" or

27  "Movants") hereby file this motion (hereinafter, the "Motion") for order dismissing Debtor's

28  chapter 11 bankruptcy case ("Bankruptcy Case"). This Motion is made and based upon the

attached Memorandum of Points and Authorities, the Declaration of Erica Vago ("Vago Declaration") and the Request for Judicial Notice ("RJN") each filed concurrently herewith, the papers, pleadings and other documents on file in this Chapter 11 case, and upon such other evidence, both oral and documentary, as the Court may consider prior to or at the hearing on this Motion.

PLEASE TAKE FURTHER NOTICE THAT the hearing on the Motion will take place at 9 a.m. on May 17, 2023 in Courtroom 1575, in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, located at 255 East Temple Street, Los Angeles, CA 90012.

**IF YOU DO NOT OPPOSE THE MOTION, YOU NEED NOT TAKE ANY FURTHER ACTION. HOWEVER, IF YOU DO OPPOSE THE MOTION, PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1, ANY OPPOSITION TO THE MOTION MUST BE FILED WITH THE COURT NO LATER THAN FOURTEEN (14) DAYS PRIOR TO THE HEARING ON THE MOTION. YOU MUST FILE ANY SUCH OPPOSITION WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT. YOU MUST ALSO SERVE A COPY OF ANY SUCH OPPOSITION UPON COUNSEL FOR THE MOVANTS AT THE MAILING ADDRESS SET FORTH IN THE UPPER LEFT CORNER OF THE FIRST PAGE OF THIS MOTION AND UPON THE OFFICE OF THE UNITED STATES TRUSTEE. FAILURE TO TIMELY FILE AND SERVE AN OPPOSITION TO THE MOTION MAY RESULT IN ANY SUCH OPPOSITION BEING WAIVED, AND THE COURT MAY ENTER AN ORDER GRANTING THE MOTION WITHOUT FURTHER NOTICE.**

Date: April 24, 2023                    **GOE FORSYTHE & HODGES LLP**


                                        By: /s/ Robert P. Goe
                                            Robert P. Goe
                                            Attorneys for Creditors Joseph and Erica Vago

1

## MEMORANDUM OF POINTS & AUTHORITIES

2

## I.    INTRODUCTION

3
4
5
6
7

Under well-established Ninth Circuit law, a court may dismiss a Chapter 11 bankruptcy case "for cause," based on, among other things, a finding that the petition was filed in bad faith. And the *debtor* bears the burden of proving that the petition was filed in *good* faith. Here, debtor Leslie Klein ("Debtor") cannot possibly meet his burden of showing good faith. His Chapter 11 petition reeks of bad faith from its inception. As such, it must be dismissed.

8
9
10
11

Debtor is a judicially confirmed fraudster who has stolen millions of dollars from multiple victims via a complex web of deception and chicanery. His rampant abuse of the bankruptcy process has infected every aspect of his Chapter 11 proceeding. Indeed, there are multiple reasons why his Chapter 11 proceeding was filed for an improper purpose and should be dismissed.

12
13
14
15
16
17
18
19
20
21
22

*First*, Debtor filed this Chapter 11 proceeding for the purpose of thwarting his largest creditor's legitimate efforts to collect on a fraud judgment against him. Debtor is an attorney who swindled Movant Erica Vago, his fellow religious congregant, out of her $12 million inheritance by promising to safeguard and invest it for her. In December 2022, Erica and her husband Joe obtained a $24.5 million judgment against Debtor for fraud, concealment, financial elder abuse, breach of fiduciary duty, and intentional infliction of emotional distress. Debtor repeatedly evaded service of a judgment debtor's exam notice. Movants then sought an *ex parte* order appointing a receiver over Debtor–but Debtor filed this Chapter 11 petition hours before the hearing. Debtor has also appealed Movants' judgment against him but is using the automatic stay as a substitute for posting the necessary bond to avoid collection. This alone is well-established grounds for dismissing a bankruptcy petition for cause for having been filed in bad faith.

23
24
25
26
27
28

*Second*, the bankruptcy case should be dismissed because it serves no legitimate purpose, as Movants' claim is non-dischargeable. Creditors cannot be bound by a Chapter 11 plan which prevents a creditor from executing or collecting on a nondischargeable debt. Here, Movants' judgment against Debtors is nondischargeable, as it contains specific factual findings that Debtor committed fraud, breached his fiduciary duty, and with malice, oppression or fraud justifying punitive damages. The vast majority of the unsecured debt in this case is held by Movants (and

1  other creditors in pending fraud litigation with the Debtor), which no Chapter 11 plan could

2  erase/discharge.

3      *Third*, Debtor has no income to support a reorganization. His bankruptcy schedules reflect

4  that he owns over $14 million in assets—far less than Movant's claim alone. At the same time, his

5  only reported income consists of social security and rental income of about $17,000 per month,

6  whereas his reported expenses (despite having no dependents) are $52,000 per month—a $35,000

7  per month shortfall. Debtor testified at the Section 341a meeting that some of the secured lenders

8  have not been paid for as much as two years or more, despite the fact that Debtor has continued to

9  collect the rental income.  Debtor's February 2023 MOR filed a month late on April 19, 2023

10 [Docket No. 77] shows he has a <u>negative bank balance</u> (see Request for Judicial Notice ("RJN"),

11 **Exhibit F**). By Debtor's own admissions, he does not have sufficient income to support a chapter

12 11 reorganization and has no personal business operations to protect or reorganize.

13     *Fourth*, Debtor has already committed multiple abuses of the bankruptcy process. Debtor

14 failed to disclose all of the actions filed against him, including, but not limited to, yet another

15 action in which the plaintiff is claiming over $1 million in damages against Debtor for breach of

16 trust. And Debtor was recently involved in a prior Chapter 11 proceeding before this Court

17 involving an entity called Bay Area Development Co. ("BADCO Bankruptcy"), Case No. 2:22-

18 bk-15031-SK, in which Debtor holds a 100% ownership interest. In December 2022, Debtor

19 falsely represented to the Court in the BADCO Bankruptcy that he would make the mortgage

20 payments on a piece of real property (the "Ventura Property") in connection with an order

21 dismissing the BADCO Bankruptcy. But Debtor failed to make such payments, and, as a result,

22 the Ventura Property—including millions of dollars in equity that could have gone to Debtor's

23 victims—was lost to the secured creditor via foreclosure.

24     There is every reason to believe that Debtor will continue to abuse this Chapter 11

25 bankruptcy proceeding. The Court can and should dismiss it for cause and for lack of good faith.

26 Indeed, this is a textbook case for dismissing a Chapter 11 case for cause if ever there was one.

27

28

II.    **STATEMENT OF FACTS**

    A.    **Debtor's Theft of Millions of Dollars from Movants**

       The Vagos knew Debtor for more than four decades as a fellow worshipper at their synagogue. In 2012, they retained him as their attorney to assist in the administration of Erica's deceased brother's estate and the handling of an inheritance due to her of approximately $18 million. *See* accompanying Vago Declaration and RJN, **Exhibit B** (Third Amended Complaint in *Vago v. Klein*).

       Debtor had held himself out to Movants as a tax attorney and accountant whose specialty was the administration of probate estates. As Movants' attorney, Debtor advised them to invest Erica's inheritance in life insurance policies. Relying on Debtor, Movants wired to Debtor's law firm's trust account over $12.4 million for investments, plus an additional $6.5 million in funds which Debtor assured them would go to the charity of their choice. Debtor provided Movants with written memos through his law firm, Les Klein & Associates, Inc. ("LKA"), apprising Movants about the alleged favorable status of their investments and the interest being earned.

       However, all of these statements were lies. Debtor did not "invest" in any life insurance policies and instead made non-recourse loans to various life insurance trusts. If the underlying policy ever lapsed, the policy payout was forfeited. In 2019, Movants ultimately learned that Debtor had squandered their money and defrauded them out of millions of dollars. Movant filed suit against Debtor and his law firm, LKA, in 2020.

    B.    **Debtors' Attempts to Subvert Movants' Litigation Against Him**

       Debtor's' discovery misconduct in *Vago v. Klein* could not have been more egregious. Debtor served boilerplate objections to all written discovery requests. He refused to produce documents. The State Court granted multiple discovery motions filed by Movants and entered monetary and issue sanctions against Debtor. Debtor then failed to pay his monetary sanctions by the State Court-ordered deadline (his check bounced), and he repeatedly disobeyed other State Court orders. Debtor even walked out of a State Court ordered deposition. He substituted new counsel on the eve of trial, and filed numerous motions to continue the trial date, all of which were denied. (Procel Declaration In Support of Ex Parte to Appoint Receiver ("Decl. ISO Receiver"),

1    ¶ 3, attached to RJN as **Exhibit E**.)

2        **C.**    **Debtor's Rampant Perjury at Trial**

3        Trial in the Vagos' suit against Debtor commenced in August 2022. Debtor initially

4    testified that he had no financial interest in the policies that he purportedly invested the Vagos

5    money in. (*See* Decl. ISO Receiver, Exh. A thereto at 181:9-15.) But he later admitted that he

6    invested his own money in these policies. (*See e.g.*, *id.*, Exh. B thereto at 81:11-20.)

7        Debtor drafted and signed promissory notes where he agreed as trustee that the Vagos

8    would be entitled to 12% interest on their money. (*Id.,* Exh. G.) But Debtor testified at trial that he

9    never had any intention of paying the Vagos that interest. (*Id.*, Exh. B at 88:17-89:2; 90:20-92:1.)

10    Debtor utterly failed to explain what these "investments" actually were; whether the Vagos were

11    entitled to make any money from his perspective; or what he did with their money.

12        Debtor testified at trial that he kept a contemporaneous "ledger" of all transactions relating

13    to the Vagos. (*See e.g.*, *id.*, Exh. A at 172:15-23.) This was a bald-faced lie—no such ledger was

14    produced at trial. (*Id.*, ¶ 8.) Debtor admitted that he provided false and inflated financials to the

15    Vagos on a regular basis. (*Id.*, Exh. C at 20:1-22:18.) Notably, Debtor took out a life insurance

16    policy on an individual named Ann Radow. But Ann Radow testified at trial that she had never

17    met Debtor; that he took out an insurance policy on her life without her knowledge or consent; and

18    that Debtor created the Ann Radow Trust and made himself the trustee without her knowledge or

19    consent. (*Id.*, Exh. D at 9:15-25; 10:2-8; 12:3-26.)

20        **D.**    **Movants' Judgment for Fraud and Related Torts**

21        On September 15, 2022, the jury returned a special verdict against Debtor finding him

22    liable to both Movants for intentional misrepresentations, concealment, financial elder abuse, and

23    breach of fiduciary duty, and to Movant Joe Vago for intentional infliction of emotional distress.

24    A judgment for over $24.5 million, including over $8 million in punitive damages, was entered on

25    December 2, 2022. *See* RJN, **Exhibit A**.

26        In the Judgment, the jury found, among other things, that Debtor made a false

27    representation of a fact to Erica Vago, that Debtor knew the representation was false when he

28    made it or did so recklessly without regard for its truth, that Erica Vago reasonably relied on the

representation, and that her reliance on Debtor was a substantial factor in the harm caused to her, resulting in economic damages of $8.3 million. *See* RJN, Ex. A, at 4.

The jury further found that Debtor was someone who "owed . . . fiduciary duties to act with the utmost loyalty and honesty" to both Movants, and that he breached those duties. *See id*. at 11-12, 20. The jury found Debtor liable of concealment for intentionally failing to disclose a material fact that Erica Vago on which she relied to her detriment. *See id*. at 5-6. The jury made similar predicate factual findings regarding the claim for financial elder abuse. *See id*. at 9-10. And the jury separately found that Debtor's conduct was "outrageous" and committed with fraud, malice, and oppression, so as to warrant over $8 million in punitive damages. *See id*. at 2, 11-12.

### E.    Debtor's Efforts to Thwart Enforcement of Movants' Judgment

The Vagos were diligent in trying to enforce their judgment against Debtor. In December 2022 and January 12, 2023, they recorded abstracts of their judgment in counties in which Debtor was known to own real property and filed a copy of the judgment with the Secretary of State. But Debtor stymied their further efforts to locate additional assets or seize those assets.

The Vagos attempted to serve Debtor with a notice of judgment debtor's exam on more than six occasions. (Decl. ISO Receiver, ¶ 14 & Exh. T.) The Vagos' process server performed a stakeout of Debtor's home but was unable to serve him with any court papers. (*Id*.) According to the process server, Debtor was home but was evading service. (*Id*.) The Vagos attempted to serve Debtor personally at a hearing on a temporary injunction application that Debtor filed, but he did not show up for the hearing. (*Id*.) The Vagos' counsel asked Debtor's counsel if he or Debtor would accept service. He said that Debtor would not agree. (*Id*., ¶ 15.)

On February 21, 2023, the Vagos filed an *ex parte* application to have a receiver appointed over Debtor, and gave notice to Debtor's counsel of the *ex parte*, which was set to be heard on February 23, 2023. Debtor's counsel represented to the Vagos' counsel that he did not intend to file an opposition, and that Debtor might be appearing on his own behalf. *See* the attached declaration of Brian Procel in support of the Motion ("Procel Decl."), at ¶ 2 & **Exhibit 1**.

On the night of February 22, 2023, nine hours before the receivership application was to be heard, Debtor's bankruptcy counsel sent the Vagos Debtor's Chapter 11 petition, and demanded

they take their application off calendar in light of the automatic stay. The Vagos complied. (Procel Decl., ¶ 3 & **Exhibit 2**.)

### F.        Debtor's Appeal and Failure to File a Supersedeas Bond

On February 1, 2023—three weeks before he filed the instant Chapter 11 petition—Debtor filed a notice of appeal from the $24.5 million judgment in *Vago v. Klein*. (Procel Decl., **Exhibit 3**.) But Debtor has never filed a supersedeas bond to stay enforcement of the judgment pending appeal.

Notably, even *after* filing this Chapter 11 petition, Debtor has continued to actively pursue his appeal. On April 7, 2023, Debtor's bankruptcy counsel filed an Appellant's Notice Designated Record on Appeal on behalf of Debtor. (Procel Decl., **Exhibit 5**.) Yet three days earlier, on April 4, 2023, the Court of Appeals indicated that "[a]ll proceedings before this court have been stayed pending determination of the proceedings before the bankruptcy court." (Procel Decl., **Exhibit 4**.) In other words, Debtor is using the automatic stay in this case as both a sword and a shield.

### G.        Debtor's Abuse of a Related Bankruptcy Proceeding

Debtor is the sole officer, director, and shareholder of BADCO. (Decl. ISO Receiver, Exh. J at 28.) BADCO's only assets were a residential property located at 507 N. Mansfield (the "Mansfield Property"), and a commercial property located on Ventura Blvd. in Los Angeles (the "Ventura Property"). (*Id.* at 9.) Debtor transferred these properties—collectively worth over $6 million—to BADCO for no consideration. (*Id.* & Exhs. M, N.)

On September 14, 2022—the day before the jury's verdict against him in the Vagos' case—Debtor filed a voluntary bankruptcy petition on behalf of BADCO, which case was before this Court. (Decl. ISO Receiver, ¶ 23.) Debtor personally paid BADCO's legal fees in the bankruptcy, apparently from another entity he controlled, Big Boyz Legal LLC. (*Id.*, Exh. J at 28.)

Debtor could not keep his story straight as to whether he or BADCO owned the properties. Sometimes Debtor claimed that BADCO owned the properties outright, sometimes he claimed he was an owner in his individual capacity. (*Id.*, Exh. J at 9; Exh. K at 8.)

On December 6, 2022—four days after judgment was entered against Debtor in the Vagos' favor—Debtor voluntarily dismissed BADCO's bankruptcy. (*Id.*, Exh. L.) He claimed the

bankruptcy was filed to forestall an impending nonjudicial foreclosure on the Mansfield Property, which had since been rendered moot, but that he was "willing and able" to make payments going forward on the far more valuable Ventura Property—knowing full well that the court in a separate case filed by the Menlo family had enjoined him from spending his assets. (*Id.* at 2-3; Exh. W.)

Debtor concealed from this Court that BADCO (and/or Debtor) had been in default on the $2.2 million mortgage on the Ventura Property for months (if not years). Debtor also did not make any further mortgage payments on the Ventura Property, as he represented to this Court that he would. ***Debtor committed a fraud upon the Bankruptcy Court***.

On January 26, 2023, the lender on the Ventura Property, Velocity Capital, conducted and was the only bidder at a nonjudicial foreclosure sale. (Decl. ISO Receiver, ¶ 27.) The lender thus acquired a property worth an estimated $5 million for a $2.5 million credit bid. Debtor was never going to see any of that equity anyway—but it could have gone to his victims. Debtor has never explained why he took BADCO *out* of bankruptcy just two months before filing this personal bankruptcy.

### H.    Debtor's Abuse of the Instant Chapter 11 Proceedings

Debtors' longstanding pattern of lying to the court and abusing the privileges of the judicial system has already begun to repeat itself in the short time since he filed this case.

Debtor has failed to comply with requests from the Office of the United States Trustee for turnover of documents and information. He did not disclose his affiliation with, or any assets of, Big Boyz Legal LLC, the wholly owned entity that paid $15,000 for his Chapter 11 filing of another of his wholly owned entities, BADCO, in September 2022. Nor has he explained why Big Boyz Legal LLC was willing and able to pay his bankruptcy attorneys for a Chapter 11 filing just months ago, yet this current Chapter 11 filing was paid by another LLC, Doctor's Marketing Group, ostensibly as a "gift" from a former client. [*See* Docket Nos. 24 and 66.]

Debtor also failed to disclose all of the actions filed against him, including, but not limited to, an action involving the First Amended Wendriger Family Trust dated May 7, 1990, in which the plaintiff claims $1.2 million in damages against Debtor. [*See* Proof of Claim No. 12]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    Debtor's Admitted Lack of Income to Support a Reorganization

In his Original and Amended Schedules and Statements filed in this case, Debtor reported owning over $14 million in assets (even after valuing some of them as Unknown). *See* RJN **Exhibit C** (original schedules); **Exhibit D** (amended schedules). This is a hefty sum for someone with no dependents. But it is still $10 million *less* than Movants' claim alone.

Debtor lists gross income of only $24,000 for the years 2021 and 2022. *See* **Exhibit D**, p. 14. Debtor also lists Social Security Income of only $40,000 and Rental Income of $144,000 for the years 2021 and 2022. *Id*. Debtor's Schedule I lists monthly income in the amount of $17,633.00, while his Schedule J lists monthly expenses in the amount of $52,846.00. *See* pp. 32-35 of **Exhibit C**. By his own admission, Debtor has a shortfall of over **$35,000 per month**. Nor has Debtor identified any personal business operations to protect or reorganize. Moreover, Debtor's recently filed monthly operating report for the month of February 2023 shows that Debtor has a negative balance in his Debtor-in-Possession account ("DIP Account"). [*See* Docket No. 77][RJN, Exhibit F]

## III.    LEGAL STANDARDS

Bankruptcy Code Section 1112(b) allows the Court, upon request of a party in interest, to dismiss a chapter 11 case "for cause." 11 U.S.C. § 1112(b)(1); *see also* 11 U.S.C. §305(a)(1) ("The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if-- (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.").

It is well established in this Circuit that bad faith in filing a Chapter 11 petition constitutes "cause" for dismissal under Section 1112(b). "Although section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994); *see In re City of Desert Hot Springs*, 339 F.3d 782, 792 (9th Cir. 2003) ("Good faith . . . is a requirement of all bankruptcies and without it a bankruptcy is to be dismissed for 'cause' under 11 U.S.C. § 1112(b)."); *see also In re N.R. Guaranteed Retirement, Inc.*, 112 B.R. 263, 270 (Bankr. N.D. Ill.), *aff'd*, 119 B.R. 149 (N.D.Ill.1990) ("There are, in fact, scores of

8

1    Chapter 11 cases in which relief from stay has been granted or dismissal ordered because the case

2    was filed in bad faith.")

3          The requirement of good faith serves important policy functions. First, it "deter[s] filings

4    that seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *In re Marsch*,

5    36 F.3d at 828. Second, "a good faith standard protects the jurisdictional integrity of the

6    bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens,

7    discharge of debts, marshalling and turnover of assets) available only to those debtors and

8    creditors with 'clean hands.' " *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

9          "The existence of good faith depends on an amalgam of factors and not upon a specific

10   fact." *In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986). "In finding a lack of good faith, courts have

11   emphasized an intent to abuse the judicial process and the purposes of the reorganization

12   provisions . . . [p]articularly when there is no realistic possibility of an effective reorganization."

13   *In re Mense*, 509 B.R. 269, 277 (Bankr. C.D. Cal. 2014) (quotation omitted). Ultimately, the test is

14   whether a debtor is "attempting to unreasonably deter and harass creditors or attempting to effect a

15   speedy, efficient reorganization on a feasible basis." *In re Marsch*, 36 F.3d at 828.

16         In determining whether the petition was filed in good faith, "the debtor's subjective intent,"

17   while relevant, "is not determinative." *In re Marsch*, 36 F.3d at 828. Rather, the good faith inquiry

18   focuses on the manifest purpose of the filing and whether the debtor is seeking to achieve thereby

19   "objectives outside the legitimate scope of the bankruptcy laws." *Id.*

20         Notably, although Movants are bringing this motion to dismiss, *they* do not bear the burden

21   of proving that Debtor filed this Chapter 11 petition in *bad* faith. Just the opposite: *Debtor* is the

22   one who bears the burden of proving it was filed in *good* faith. *In re Marshall*, 721 F.3d 1032,

23   1048 (9th Cir. 2013) ("A debtor bears the burden of proving that the petition was filed in good

24   faith.") (internal marks omitted) *citing In re Leavitt*, 209 B.R. 935, 940 (9th Cir. BAP 1997).

25         \\\

26

27         \\\

28

IV.    **DEBTOR'S BANKRUPTCY CASE SHOULD BE DISMISSED FOR CAUSE UNDER SECTION 1112(b) AND AS A BAD FAITH FILING**

A.    **The Filing of the Bankruptcy Case in Lieu of a Supersedeas Bond Constitutes Bad Faith Warranting Dismissal**

Debtor appealed the $24.5 million judgment filed against him in *Vago v. Klein* in December 2022. But he filed the instant bankruptcy proceeding in lieu of posting a supersedeas bond to stay the Vagos' collection efforts. Indeed, he effectively admitted as much during the Section 341 initial creditors' meeting. This is not a valid purpose for a Chapter 11 filing.

It is well established in the Ninth Circuit that a bankruptcy filing in lieu of filing a state court supersedeas bond constitutes bad faith, justifying dismissal under Section 1112(b) "A bankruptcy case should be dismissed as having been filed in bad faith where the debtor has filed only to use the automatic stay as a replacement for a state court appeal bond." *In re Mohyee*, 2009 WL 764527, at *1 (Bankr. N.D. Cal. Feb., 13, 2009) (citing *In re Marsch*, 36 F.3d 825 at 828); *see also In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 128 (3d Cir. 2004) ("[I]f there is a 'classic' bad faith petition, it may be one in which the petitioner's only goal is to use the automatic stay provision to avoid posting an appeal bond in another court.").

In the *Marsch* case, the individual debtor was engaged in state court litigation with her ex-husband and filed her chapter 11 petition on the eve of the state court's entry of a $2.5 million judgment. The plaintiff moved to dismiss the bankruptcy petition, arguing the debtor filed in "bad faith" solely to avoid paying the judgment or posting an appeal bond. The bankruptcy court agreed and dismissed the petition because it did not serve a legitimate purpose under the Bankruptcy Code, and, alternatively, because it was not filed in the best interests of the parties pursuant to 11 U.S.C. § 305(a)(1). The bankruptcy court also sanctioned the debtor $27,452 pursuant to Bankruptcy Rule 9011 because "neither the debtor nor her attorney could have formed a reasonable belief that the filing was well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or that it was filed for a proper purpose." *In re Marsch*, 36 F.3d at 827. The Ninth Circuit affirmed the dismissal of the debtor's petition, concluding that filing in lieu of a supersedeas bond constituted bad faith.

1   Here, not only is Debtor using this proceeding as a substitute for a supersedeas bond, but

2   as he testified at the Section 341a meeting, he intends to sell a number of his properties—in large

3   part to finance his appeal. (Procel Decl., ¶ 7.) This is precisely the circumstance where a case

4   should be dismissed for having been filed in bad faith. *In re Mense*, 509 B.R. at 285 (dismissing

5   for cause where "Debtors filed chapter 11 with the intention of using the automatic stay as a

6   substitute for an appeal bond and intend to liquidate assets as necessary in chapter 11 to pay

7   claims only after all efforts to reverse Kayne's judgment on appeal have been exhausted.")

8   Even if Debtor were to claim he lacks the funds to post a supersedeas bond on a $24.5

9   million judgment, that would not help him here. First, he has not shown he has made any sincere

10  attempt to post the bond or seek a reduction in the bond. *In re Chu*, 253 B.R. 92, 95 (S.D. Cal.

11  2000) (finding bad faith where debtors "made no sincere attempt to post the supersedeas bond or

12  seek further reduction before they filed their respective Chapter 11 petitions"). Second, inability to

13  post a bond cannot be relied upon by the debtor where they are unable to claim that doing so

14  would disrupt an ongoing business venture. *In re Marsch*, 36 F.3d at 829 ("because [debtor] wasn't

15  involved in a business venture, the judgment didn't pose any danger of disrupting business

16  interests."). Here, Debtor has admitted that he has no ongoing operations.

17
18  **B.    Movants Claims are Non-Dischargeable and so this Bankruptcy Case Serves
        No Legitimate Purpose**

19  Where the only debt that requires protection under the bankruptcy laws is

20  nondischargeable, the bankruptcy case should be dismissed, as it serves no purpose. *Matter of

21  Namer*, 141 B.R. 603, 608 (Bankr. E.D. La. 1992). That is precisely the case here.

22  It is clear that the Movants' $24.5 million judgment against Debtor is nondischargeable.

23  Under Section 523, a debt is not dischargeable if, among other things, it is:

24      (2) for money[ or] property . . . to the extent obtained by [] false pretenses, a false
        representation, or actual fraud. . . .

25      (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or
26      larceny; [or]

27      (6) for willful and malicious injury by the debtor to another entity or to the
        property of another entity; . . .
28

11 U.S.C. § 523(a). As set forth above, the Vagos' judgment against Debtor contains specific factual findings made by a jury, including that he breached his fiduciary duty, knowingly made false representations of fact, failed to disclose material facts to with intent to deceive, and obtained at least $8.3 million in property from the Vagos as a result. The Judgment also included findings that Debtor engaged in the conduct with malice, oppression, or fraud justifying punitive damages.

Unlike ordinary creditors, a creditor holding a nondischargeable debt under Section 523 is not bound by a Chapter 11 plan and can enforce such debt outside the plan. *See* 11 U.S.C. § 1141 (d)(2) ("A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title."); *id.*, § 1141(a) ("*Except as provided in subsection[] (d)(2)* . . . , the provisions of a confirmed plan bind . . . any creditor . . . .") (emphasis added); *id.*, § 1141(c) ("*Except as provided in subsection[] (d)(2)* . . . after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors . . . .") (emphasis added).

As the Ninth Circuit Bankruptcy Appellate Panel explained in *Bartleson*, 253 B.R. 75 (B.A.P. 9th Cir. 2000):

> [Section] 1141 describes the effect of a confirmed Chapter 11 plan. Nondischargeable debts are singled out for special treatment. First, an individual debtor is not discharged from any debt excepted from discharge under Section 523. 11 U.S.C. § 1141(d)(2). Second, the holders of the nondischargeable claims are not bound by the provisions of a confirmed plan. 11 U.S.C. § 1141(a). Any property dealt with by the plan is free and clear of all claims and interests, except for the nondischargeable claims. 11 U.S.C. § 1141(c). Based on these provisions of the Code, it has been held that a holder of a nondischargeable claim may execute or collect on his nondischargeable debt without regard to the discharge provisions of the plan.

*In re Bartleson*, 253 B.R. 75 at 84 (quotations omitted). Numerous other courts are in accord. *See, e.g., In re DePaolo*, 45 F.3d 373 (10th Cir.1995) ("The party to whom [a nondischargeable] debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy"); *In re Newman*, 399 B.R. 541, 548 (Bankr. M.D. Fla. 2008) ("[I]t is clear that creditors holding nondischargeable claims may pursue post-confirmation collection efforts, even if their claims were provided for in the plan"); *In re Amigoni*, 109 B.R. 341 (Bankr. N.D. Ill.1989).

1    Here, Movants' $24.5 million judgment against Debtor for fraud, breach of fiduciary duty,

2    and related torts, dwarfs the total of Debtor's assets. That judgment claim is nondischargeable, so

3    no Chapter 11 plan filed by Debtor would erase this debt or Movants' lawful right to collect on it.

4    As such, there is no purpose to this case, and it should be dismissed. *Matter of Namer*, 141 B.R. at

5    608 ("[T]he fact that the FTC debt against him personally is nondischargeable demonstrates that

6    Namer cannot reasonably expect to rehabilitate his financial situation by resort to Chapter 11.").

7    **C.    Debtor's Petition and Schedules Further Show Debtor Cannot Reorganize**

8    Debtor's Schedules evidence that his monthly income is $17,633 while his monthly

9    expenses total $52,846. *See* RJN **Exhibit C**, pp. 32-35. Debtor has a shortfall of over **$35,000 per**

10    **month**. By Debtor's own admissions on his Schedules, he does not have sufficient income to

11    support a chapter 11 reorganization. Moreover, Debtor's most recent monthly operating shows

12    that the DIP Account has a negative balance. [*See* Docket No. 77] Debtor also has no personal

13    business operations to protect or reorganize. In light of these facts, Debtor cannot possibly meet

14    his burden of establishing that his Chapter 11 petition was filed in good faith, i.e., that was filed in

15    an effort "to effect a speedy, efficient reorganization on a feasible basis," as opposed to being an

16    attempt "to unreasonably deter and harass creditors." *In re Marsch*, 36 F.3d at 828. Debtor knew

17    he could not possibly file a viable Chapter 11 plan of reorganization from the moment he filed his

18    petition.

19    Debtor's lack of income to support a reorganization is all the more problematic given that

20    he intends to utilize bankruptcy assets to pursue his appeal of Movants' judgment against him. *See*

21    *In re Mense*, 509 B.R. at 285 ("Because . . . Mense's personal expenses exceed his income, the

22    cash in [the] estate continues to dissipate as the appeal takes its course largely due to Mense's

23    significant personal expenses, accruing administrative expenses, and the cost of the appeal. There

24    is a continuing loss to or diminution of the] estate, and no reasonable likelihood of rehabilitation").

25    **D.    Debtor Has Repeatedly Abused the Bankruptcy Process**

26    As discussed above, Debtor already demonstrated his willingness to take improper

27    advantage of the bankruptcy process when he voluntarily filed—then voluntarily dismissed—a

28    Chapter 11 case for his wholly-owned holding company, BADCO. In his stipulation for dismissal,

1  Debtor **lied to this Court** about his intentions to continue to make mortgage payments on the

2  Ventura Property and **concealed from this Court** the material fact that the Ventura Property had

3  long been in default.

4          Debtor has now seamlessly transferred his assault on the integrity of the bankruptcy system

5  to the instant proceedings. In just the first two months of this Chapter 11 proceeding, Debtor has

6  already failed to disclose the existence of yet another seven-figure lawsuit against him for breach

7  of trust, and failed to disclose the existence of yet another wholly-owned LLC that paid the legal

8  fees for the last bankruptcy filing—but for some reason isn't paying for this one. *See In re*

9  *Rognstad*, 121 B.R. 45, 50 (Bankr. D. Haw. 1990) (dismissing Chapter 11 case where debtor made

10  misrepresentations and ignored court orders; "An important factor in determining the existence of

11  bad faith is whether the Debtors have misrepresented material facts.")

12          Given Debtor's brazen history of disobeying court orders and lying under oath, there is

13  every reason to believe that if this Chapter 11 proceeding continues, Debtor's misdeeds will only

14  multiply. One of the two main purposes of the good faith requirement is to "protect[] the

15  jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons . . .

16  available only to those debtors and creditors with 'clean hands.' " *In re Little Creek*, 779 F.2d at

17  1072). If anyone should be denied access to those powerful weapons, it is Debtor.

18          In *In re Charfoos*, 979 F.2d 390 (6th Cir. 1992), the District Court reversed the Bankruptcy

19  Court's decision *not* to dismiss the Chapter 11 case on grounds of bad faith, and the Sixth Circuit

20  affirmed. Among other things, the debtor had made "factual misrepresentations and omissions on

21  financial statements and bankruptcy pleadings," committed "violations of state court orders," and

22  "failed to appear for a creditor's examination." *Id.* at 393, 394. Here, Debtor has made multiple

23  factional misrepresentations and omissions to this Court in this and another related Chapter 11 of

24  BADCO; he has violated court orders in both *Klein v. Vago* and in the Menlo family's separate

25  litigation; and he repeatedly evaded service to even be served with a judgment debtor's

26  examination notice. If anything, the question here is not whether Debtor's Chapter 11 filing should

27  be dismissed for bad faith, but whether it would be an abuse of discretion *not* to do so.

28

**E.    The Court Should Dismiss the Case Rather Than Convert or Appoint a Trustee**

Section 1112(b) provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." Here, the Court should dismiss rather than convert the case to a chapter 7 or appoint a trustee.

Debtor filed this Chapter 11 petition on the eve of Movants' hearing to have a receiver appointed over him. *See In re Ekamrudra, Inc.*, 144 B.R. 57, 58 (Bankr. E.D. Ky. 1992) (dismissing Chapter 11 case where, among other things, debtor "acted in a manner evidencing an intent to frustrate the creditor's efforts, [and] has waited until the eleventh hour to take action on the matter"). One thing is clear from his conduct: ***Debtor prefers Chapter 11 bankruptcy to a receivership.*** This is no doubt because he expects a receiver would be more likely to unravel his web of financial chicanery more quickly and efficiently than even a Chapter 11 bankruptcy trustee and/or examiner would. Given his sordid and extensive history of fraud and breach of fiduciary duty, Debtor surely knew his creditors would find the prospect of him serving as a debtor-in-possession untenable, and there would soon be an effort to appoint a bankruptcy trustee.

The fact that a charlatan like Debtor prefers bankruptcy to receivership is reason itself to deny him the protection of bankruptcy. *See In re Rognstad*, 121 B.R. at 50 ("As the courts have often repeated, the bankruptcy law is to provide relief to the poor but honest debtor who has tried his best to pay his creditors but failed. Congress has never intended that bankruptcy be a refuge for the irresponsible, unscrupulous or cunning individual.") (quotation omitted).

Conversely, the fact that Movants—by far his largest noncontingent unsecured nonpriority creditors—would prefer dismissal is strong reason to dismiss. *See In re Mense*, 509 B.R. at 285 (finding "dismissal rather than conversion is in the best interest of creditors [where] the creditor holding the largest unsecured nonpriority claim . . . favors dismissal.").

15

Moreover, it is clear that if Debtor's bankruptcy proceeding is allowed to continue, Debtor will continue to manipulate the automatic stay to the fullest extent possible. He has already used the stay as both a sword and a shield in connection with his appeal from Movants' judgment against him. His bankruptcy counsel warned Movants' counsel to take their receivership application off calendar (which they did), yet almost in the same breath filed documents in that appeal, notwithstanding that that Court of Appeal had indicated the proceedings are stayed.

Granted, a trustee might potentially stipulate to relief from stay in certain instances, which could mitigate some of the harm Debtor might try to inflict. But that is just another layer of delay and expense that will diminish the estate to creditors' detriment. *See In re Mense*, 509 B.R. at 285 (electing dismissal over conversion where "the economic value of the [debtors'] estates would diminish rather than improve if the cases either remained in chapter 11 or were exposed to the significant administrative fees and costs associated with a conversion to chapter 7.").

A receiver can enjoin foreclosure of Debtor's assets, thus achieving the benefits of the automatic stay with less potential for abuse by Debtor. As a result, dismissal, not mere conversion or even installation of a trustee and/or examiner, is in the best interests of creditors.

## V.    **CONCLUSION**

**WHEREFORE**, based upon the foregoing, Movants respectfully requests the Court enter an Order granting the Motion.

Respectfully submitted,

Dated:  April 24, 2023                    **GOE FORSYTHE & HODGES LLP**

By:  /s/Robert P. Goe
      Robert P. Goe
      Attorneys for Movants Erica Vago and
      Joseph Vago

### DECLARATION OF ERICA VAGO

I, Erica Vago, am a judgment creditor of the Debtor's and one of the Movants seeking that the Court dismiss Debtor's Chapter 11 case ("Motion"). Except where otherwise stated, I have personal knowledge of the facts set forth below. I make this declaration in support of our Motion, to which this declaration is attached. Unless otherwise defined herein, all terms have the same meanings as they do in the Motion.

1. I have reviewed the Statement of Facts set forth in the Motion, as well as the exhibits attached hereto. They are all true and correct based on my personal knowledge.

2. I knew Debtor for more than four decades as a fellow worshipper at my temple before in 2012 retaining him as our attorney to assist in the administration of my deceased brother's estate and the handling of an inheritance due to me of approximately $18 million.

3. Debtor held himself out to me as a tax attorney and accountant whose specialty was the administration of probate estates. As our attorney, Debtor advised me to invest the inheritance funds in life insurance policies. Relying on Debtor as our attorney, I wired to Debtor's law firm's trust account over $12.4 million for investments, plus an additional $6.5 million in funds which Debtor assured me would go to the charity of my choice. Debtor provided me with written memos through his law firm (Les Klein & Associates, Inc.), apprising me about the favorable status of our investments and the interest being earned. However, all of these statements were lies: Debtor did not "invest" in any life insurance policies and instead made non-recourse loans to various life insurance trusts. If the underlying policy ever lapsed, the policy payout was forfeited. In September 2019, I ultimately learned that Debtor, my attorney, had defrauded me out of millions of dollars.

4. On July 1, 2020, I filed the Vago v. Klein, et al. case.

5. On August 29, 2022, the Los Angeles Superior Court conducted a jury trial on the claims of my husband and me.

6. On September 15, 2022, the jury returned a special verdict against Debtor finding Debtor liable to both me and my husband for intentional misrepresentations, concealment,

1  financial abuse, and breach of fiduciary duty, which as of the bankruptcy filing was in the

2  approximate amount of $24,880,721.51 (the "Judgment").

3       7.    Debtor filed this Bankruptcy Case one day prior to the hearing on my ex parte

4  application to appoint a receiver to enforce the Judgment.

5       I declare under the penalty of perjury under the laws of the United States of America that

6  the foregoing is true and correct.

7       Executed on April 19, 2023, at Cancun, Mexico.

8

9                                          Erica Vago

10

1

## REQUEST FOR JUDICIAL NOTICE

2        Federal courts may take judicial notice of facts which are "capable of accurate and ready

3  determination by resort to sources whose accuracy cannot reasonably be questioned." Federal Rule

4  of Evidence 201(c)(2). This includes proceedings in other courts, both within and without the

5  federal judicial system, if those proceedings have a direct relation to the matters at issue.  *U.S. ex*

6  *rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  The

7  court may also take judicial notice of undisputed facts that are contained in extrinsic materials,

8  such as public land records.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.

9  1988).  Based on the foregoing, Movants request the Court take judicial notice of the following:

10       1.       A true and correct copy of the Judgment on Special Verdict entered by the Los

11  Angeles Superior Court on December 2, 2022 in the Case is attached hereto and incorporated

12  herein as **Exhibit A.**

13       2.       A true and correct copy of the Movants' Third Amended Complaint ("TAC") filed

14  in *Vago, et. al v. Klein, et. al*, Case No. 20STCV25050 ("Case") is attached hereto and

15  incorporated herein as **Exhibit B.**

16       3.       A true and correct copy of the Debtor's Original Schedules and Statements filed as

17  Docket No. 34 in In re Leslie Klein, Bankruptcy Case No. 2:23-bk-10990-SK is attached hereto

18  and incorporated herein as **Exhibit C.**

19       4.       A true and correct copy of the Debtor's Amended Schedules and Statements filed

20  as Docket No. 70 in In re Leslie Klein, Bankruptcy Case No. 2:23-bk-10990-SK is attached hereto

21  and incorporated herein as **Exhibit D.**

22       5.       A true and correct copy of the Ex Parte Application for Appointment of Receiver,

23  et. al. and the Declaration of Brian Procel in Support Thereof is attached hereto and incorporated

24  herein as **Exhibit E**.

25       \\\

26

27

28                                                    19

6.     A true and correct copy of Debtor's February 2023 MOR is attached hereto and incorporated herein as **Exhibit F**.

Respectfully submitted,

Dated:  April 24, 2023         **GOE FORSYTHE & HODGES LLP**

By: /s/ Robert P. Goe
Robert P. Goe
Attorneys for Movants Erica Vago and
Joseph Vago

20

# EXHIBIT A

BRIAN A. PROCEL (State Bar No. 218657)
brian@procel-law.com
PROCEL LAW, PC
401 Wilshire Boulevard
12th Floor
Santa Monica, California 90401
Telephone:    (424) 788-4538

Attorneys for Plaintiffs
ERICA VAGO and JOSEPH VAGO

**FILED**
Superior Court of California
County of Los Angeles

**12/02/2022**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Deputy
        M. Ventura

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| ERICA VAGO and JOSEPH VAGO,<br><br>Plaintiffs,<br><br>v.<br><br>LESLIE KLEIN; LES KLEIN & ASSOCIATES, INC.; KENNETH KOLEV KLEIN; and LAW OFFICE OF KENNETH KLEIN, P.C.,<br><br>Defendants. | **CASE NO. 20STCV25050**<br><br>~~[PROPOSED]~~ **JUDGMENT ON SPECIAL VERDICT**<br><br>Assigned for All Purposes to:<br>Hon. Terry A. Green, Dept. 14<br><br>Action Filed:    July 1, 2020<br>Trial Date:    August 29, 2022 |

Electronically Received 11/15/2022 10:32 AM

1       This action came on regularly for trial on August 29, 2022, in Department 14 of the

2   Superior Court, the Honorable Terry A. Green, Judge Presiding;

3       Plaintiffs Erica and Joseph Vago (collectively, "Plaintiffs") appearing by attorney Brian

4   Procel , Esq.; and Defendants Leslie Klein and Les Klein & Associates, Inc. (collectively,

5   "Defendants") appearing by attorney Jeffrey Slott.

6       A jury of twelve (12) persons was regularly impaneled and sworn and agreed to try the

7   cause. Witnesses were sworn and testified. After hearing the evidence and arguments of counsel,

8   the jury was duly instructed by the Court and the cause was submitted to the jury with directions

9   to return a special verdict. The jury deliberated and thereafter returned to court with its special

10  verdict submitted to the jury and the answers given thereto by the jury, which verdict was in words

11  and figures as follows, to wit:

12

13  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

14  **(BY ERICA VAGO AGAINST DEFENDNTS)**

15

16      1.  Was Mr. Klein's conduct outrageous?

17          __X___ Yes  _____ No

18          If your answer to question 1 is yes, then answer question 2. If you answered no,

19          stop here, answer no further questions, and have the presiding juror sign and date

20          this form.

21      2.  Did Mr. Klein intend to cause Erica Vago emotional distress?

22          _____ Yes  __X__ No

23          If your answer to question 2 is yes, then answer question 4. If you answered no, go

24          to question 3.

25      3.  Did Mr. Klein act with reckless disregard of the probability that Erica Vago would

26          suffer emotional distress, knowing that Erica Vago was present when the conduct

27          occurred?

28          __X___ Yes  _____ No

1    If your answer to question 3 is yes, then answer question 4. If you answered no,

2    stop here, answer no further questions, and have the presiding juror sign and date

3    this form.

4        4.  Did Erica Vago suffer severe emotional distress?

5        _____ Yes   __X___ No

6    If your answer to question 4 is yes, then answer question 5. If you answered no,

7    stop here, answer no further questions, and have the presiding juror sign and date

8    this form.

9        5.  Was Mr. Klein's conduct a substantial factor in causing Erica Vago's severe

10    emotional distress?

11        _____ Yes    _____ No

12    If your answer to question 5 is yes, then answer question 6. If you answered no,

13    stop here, answer no further questions, and have the presiding juror sign and date

14    this form.

15        6.  What are Erica Vago's damages for pain and suffering?

16    $   N/A_____

17

18                                    TOTAL $

19                                   N/A_____

20

21    Signed:  __/Signature_____

22                    Presiding Juror

23    Dated:  September 15, 2022

24

25

26

27

28

**INTENTIONAL MISREPRESENTATION**

**(BY ERICA VAGO AGAINST DEFENDNTS)**

We answer the questions submitted to us as follows:

1. Did Mr. Klein make a false representation of a fact to Erica Vago?

   __X___ Yes    _____ No

   If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein know that the representation was false, or did he make the representation recklessly and without regard for its truth?

   _X____ Yes    _____ No

   If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Erica Vago reasonably rely on the representation?

   __X___ Yes    _____ No

   If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Erica Vago's reliance on Mr. Klein's representation a substantial factor in causing harm to Erica Vago?

   __X___ Yes    _____ No

   If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Erica Vago's economic damages?

   $ __8,300,000_____

4

Please answer question 6.

6. What are Erica Vago's noneconomic damages for pain and suffering?

$ __0_____

TOTAL $ 8,300,000

Signed: ___/Signature_____
              Presiding Juror

Dated: September 15, 2022

## CONCEALMENT
## (BY ERICA VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein intentionally fail to disclose a fact that Erica Vago did not know and could not reasonably have discovered?

   _X___ Yes    _____ No

   If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein intend to deceive Erica Vago by concealing the fact?

   __X___ Yes    _____ No

   If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Had the omitted information been disclosed, would Erica Vago reasonably have behaved differently?

   __X___ Yes    _____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Mr. Klein's concealment a substantial factor in causing harm to Erica Vago?

__X___ Yes    _____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Erica Vago's economic damages?

$ 8,300,000

Please answer question 6.

6. What are Erica Vago's noneconomic damages for pain and suffering?

$ __0_____

                                              TOTAL $ 8,300,000

Signed:  ___/Signature_____
                  Presiding Juror

Dated:  September 15, 2022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FALSE PROMISE

## (BY ERICA VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1.  Did Mr. Klein make a promise to Erica Vago?

    __X___ Yes    _____ No

    If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.  Did Mr. Klein intend to perform this promise when he made it?

    _X____ Yes    _____ No

    If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Did Mr. Klein intend that Erica Vago rely on this promise?

    _____ Yes    _____ No

    If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.  Did Erica Vago reasonably rely on this promise?

    _____ Yes    _____ No

    If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.  Did Mr. Klein fail to perform the promised act?

    _____ Yes    _____ No

[PROPOSED] JUDGMENT

If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. Was Erica Vago's reliance on Mr. Klein's promise a substantial factor in causing harm to Erica Vago?

_____ Yes        _____ No

If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

7. What are Erica Vago's economic damages?

$ _N/A_____

Please answer question 8.

8. What are Erica Vago's noneconomic damages for pain and suffering?

$ __N/A_____

                                                         TOTAL $ _N/A_____

Signed:    /Signature_____
                Presiding Juror

Dated:  September 15, 2022

1

**FINANCIAL ABUSE**

2

**(BY ERICA VAGO AGAINST DEFENDANTS)**

3

4      We answer the questions submitted to us as follows:

5      1.  Did Mr. Klein retain Erica Vago's money or property?

6          __X___ Yes    _____ No

7          If your answer to question 1 is yes, then answer question 2. If you answered no,

8          stop here, answer no further questions, and have the presiding juror sign and date

9          this form.

10     2.  Were Erica Vago 65 years of age or older at the time of the conduct?

11         __X___ Yes    _____ No

12         If your answer to question 2 is yes, then answer question 3. If you answered no,

13         stop here, answer no further questions, and have the presiding juror sign and date

14         this form.

15     3.  Did Mr. Klein retain the money or property for a wrongful use or with the intent to

16         defraud?

17         __X___ Yes    _____ No

18         If your answer to question 3 is yes, then answer question 4. If you answered no,

19         stop here, answer no further questions, and have the presiding juror sign and date

20         this form.

21     4.  Were Erica Vago harmed?

22         __X___ Yes    _____ No

23         If your answer to question 4 is yes, then answer question 5. If you answered no,

24         stop here, answer no further questions, and have the presiding juror sign and date

25         this form.

26     5.  Was Mr. Klein's conduct a substantial factor in causing Erica Vago's harm?

27         __X___ Yes    _____ No

28

[PROPOSED] JUDGMENT

If your answer to question 5 is yes, then answer question 6. If you answered no,

stop here, answer no further questions, and have the presiding juror sign and date

this form.

6. What are Erica Vago's economic damages?

$ 8,300,000

TOTAL $8,300,000

Signed: __/Signature_____
          Presiding Juror

Dated: September 15, 2022

## PUNITIVE DAMAGES
## (BY ERICA VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

__X___ Yes _____ No

Signed: __/Signature_____
          Presiding Juror

Dated: September 15, 2022

## PUNITIVE DAMAGES AGAINST EMPLOYER OR PRINCIPAL FOR CONDUCT
## OF A SPECIFIC AGENT OR EMPLOYEE
## (BY ERICA VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

__X___ Yes _____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Signed:    /Signature
                    Presiding Juror

Dated: September 15, 2022

## BREACH OF FIDUCIARY DUTY

## (BY ERICA VAGO AGAINST DEFENDNTS)

1.  Mr. Klein owed Erica Vago fiduciary duties to act with the utmost loyalty and honesty.

2.  Did Mr. Klein breach his fiduciary duties?

    __X___ Yes        _____ No

    If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Was Erica Vago harmed?

    __X___ Yes        _____ No

    If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.  Was Mr. Klein's conduct a substantial factor in causing Erica Vago's harm?

    __X___ Yes        _____ No

    If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.  What are Erica Vago's economic damages?

    $ 8,300,000

                                                    TOTAL $ 8,300,000

11

Signed:   /Signature
          Presiding Juror

Dated: September 15, 2022

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (BY JOSEPH VAGO AGAINST DEFENDNTS)

1.  Was Mr. Klein's conduct outrageous?

     a.   _X___ Yes      _____ No

     b.  If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.  Did Mr. Klein intend to cause Joseph Vago emotional distress?

     a.   _____ Yes      __X__ No

     b.  If your answer to question 2 is yes, then answer question 4. If you answered no, go to question 3.

3.  Did Mr. Klein act with reckless disregard of the probability that Joseph Vago would suffer emotional distress, knowing that Joseph Vago was present when the conduct occurred?

     a.   __X___ Yes      _____ No

     b.  If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.  Did Joseph Vago suffer severe emotional distress?

     a.   _X___ Yes      _____ No

     b.  If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

[PROPOSED] JUDGMENT
EXHIBIT "A"                    104                    Page 12 of 24

5. Was Mr. Klein's conduct a substantial factor in causing Joseph Vago's severe emotional distress?

    a.  _X____ Yes    _____ No

    b.  If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are Joseph Vago's damages for pain and suffering?

    a.  $ 400,000

<div align="right">TOTAL $400,000</div>

Signed:  _/Signature_____
              Presiding Juror

Dated:  September 15, 2022

## INTENTIONAL MISREPRESENTATION
## (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein make a false representation of a fact to Joseph Vago?

    a.  __X___ Yes    _____ No

    b.  If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein know that the representation was false, or did he make the representation recklessly and without regard for its truth?

    a.  _X____ Yes    _____ No

b. If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Joseph Vago reasonably rely on the representation?

   a. __X__ Yes _____ No

   b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Joseph Vago's reliance on Mr. Klein's representation a substantial factor in causing harm to Joseph Vago?

   a. __X__ Yes _____ No

   b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Joseph Vago's economic damages?

   a. $ __0__

   b. Please answer question 6.

6. What are Joseph Vago's noneconomic damages for pain and suffering?

   a. $ __0__

                                                              TOTAL $ __0__

Signed: ___/Signature_____
                Presiding Juror

Dated: September 15, 2022

## CONCEALMENT
## (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein intentionally fail to disclose a fact that Joseph Vago did not know and could not reasonably have discovered?

   a.  _X____ Yes    _____ No

   b. If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein intend to deceive Joseph Vago by concealing the fact?

   a.  __X___ Yes    _____ No

   b. If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Had the omitted information been disclosed, would Joseph Vago reasonably have behaved differently?

   a.  __X___ Yes    _____ No

   b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Mr. Klein's concealment a substantial factor in causing harm to Joseph Vago?

   a.  __X___ Yes    _____ No

   b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Joseph Vago's economic damages?

   a.  $____0_____

   b. Please answer question 6.

6. What are Joseph Vago's noneconomic damages for pain and suffering?

   a.  $__0_____

[PROPOSED] JUDGMENT

TOTAL $____0_____

Signed:    /Signature_____
                Presiding Juror

Dated:  September 15, 2022

## FALSE PROMISE

## (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1.  Did Mr. Klein make a promise to Joseph Vago?

    a.    __X___ Yes    _____ No

    b.  If your answer to question 1 is yes, then answer question 2. If you answered
        no, stop here, answer no further questions, and have the presiding juror sign
        and date this form.

2.  Did Mr. Klein intend to perform this promise when he made it?

    a.   _X____ Yes    _____ No

    b.  If your answer to question 2 is yes, then answer question 3. If you answered
        no, stop here, answer no further questions, and have the presiding juror sign
        and date this form.

3.  Did Mr. Klein intend that Joseph Vago rely on this promise?

    a.    _____ Yes    _____ No

    b.  If your answer to question 3 is yes, then answer question 4. If you answered
        no, stop here, answer no further questions, and have the presiding juror sign
        and date this form.

4.  Did Joseph Vago reasonably rely on this promise?

    a.    _____ Yes    _____ No

16

[PROPOSED] JUDGMENT

b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Did Mr. Klein fail to perform the promised act?

    a. _____ Yes     _____ No

    b. If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. Was Joseph Vago's reliance on Mr. Klein's promise a substantial factor in causing harm to Joseph Vago?

    a. _____ Yes     _____ No

    b. If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

7. What are Joseph Vago's economic damages?

    a. $ _N/A_____

    b. Please answer question 8.

8. What are Joseph Vago's noneconomic damages for pain and suffering?

    a. $ __N/A_____

TOTAL $ _N/A_____

Signed: ___/Signature_____
              Presiding Juror

Dated: September 15, 2022

17

[PROPOSED] JUDGMENT

# FINANCIAL ABUSE

## (BY JOSEPH VAGO AGAINST DEFENDANTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein retain Joseph Vago's money or property?

   a. _____ Yes    __X___ No

   b. If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Were Joseph Vago 65 years of age or older at the time of the conduct?

   a. _____ Yes    _____ No

   b. If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Mr. Klein retain the money or property for a wrongful use or with the intent to defraud?

   a. _____ Yes    _____ No

   b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Were Joseph Vago harmed?

   a. _____ Yes    _____ No

   b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Was Mr. Klein's conduct a substantial factor in causing Joseph Vago's harm?

   a. _____ Yes    _____ No

18

b. If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are Joseph Vago's economic damages?

    a. $___N/A_____

                                                    TOTAL $__N/A_____

Signed: ___/Signature_____
            Presiding Juror

Dated: September 15, 2022

### PUNITIVE DAMAGES

### (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

    a. __X___ Yes _____ No

Signed: ___/Signature_____
            Presiding Juror

Dated: September 15, 2022

### PUNITIVE DAMAGES AGAINST EMPLOYER OR PRINCIPAL FOR CONDUCT OF A SPECIFIC AGENT OR EMPLOYEE

### (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

    a. __X___ Yes _____ No

19

b.  If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Signed:  ___/Signature_____
          Presiding Juror

Dated:  September 15, 2022

## BREACH OF FIDUCIARY DUTY

## (BY JOSEPH VAGO AGAINST DEFENDNTS)

1.  Mr. Klein owed Joseph Vago fiduciary duties to act with the utmost loyalty and honesty.

2.  Did Mr. Klein breach his fiduciary duties?

    a.  __X__ Yes        _____ No

    b.  If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Was Joseph Vago harmed?

    a.  __X__ Yes        _____ No

    b.  If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.  Was Mr. Klein's conduct a substantial factor in causing Joseph Vago's harm?

    a.  __X__ Yes        _____ No

    b.  If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.  What are Joseph Vago's economic damages?

1

        a.  $____0_____

2

3

                i.  TOTAL $____0_____

4

5

Signed:  __/Signature_____

6

             Presiding Juror

7

Dated:  September 15, 2022

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] JUDGMENT

EXHIBIT "A"

1   It appearing by reason of said special verdict that Plaintiff Erica Vago is entitled to

2   judgment against Defendants Leslie Klein and Leslie Klein & Associates.

3   NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said Erica

4   Vago shall have and recover from Defendants, jointly and severally:

5   1.    Compensatory damages in the sum of $8,300,000;

6   2.    Prejudgment interest at the rate of 7 (seven) percent in the amount of

7        $7,334,038.99;

8   3.    Punitive damages in the sum of $8,300,000,

9   4.    And interest thereon at the rate of ten percent per annum from the date of the

10  verdict until paid together with costs and disbursements.

11

12  It further appearing by reason of said special verdict that Plaintiff Joseph Vago is entitled

13  to judgment against Defendants Leslie Klein and Leslie Klein & Associates.

14  NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said Joseph

15  Vago shall have and recover from Defendants, jointly and severally:

16  1.    $400,000 for emotional distress

17  2.    And interest thereon at the rate of ten percent per annum from the date of the

18  verdict until paid together with costs and disbursements.

19

20  The total amount of the judgment against Defendants jointly and severally is

21  **$24,334,038.99**.

22

23  Dated:    12/02/2022

**Terry Green**

24          Terry Green / Judge

25          Hon. Terry Green
            Judge of the Superior Court

26

27

28

1 | DATED:  November 15, 2022                    PROCEL LAW, PC

2

3

4 | By: _____
                                          BRIAN PROCEL
5 |                                        Attorneys for Plaintiffs
                                          JOSEPH VAGO and ERICA VAGO
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

## PROOF OF SERVICE

4

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

5

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address 401 Wilshire

6

Boulevard, 12th Floor, Santa Monica, California 90401.

7

On November 15, 2022, I served true copies of the following document(s) described as:

8

## [PROPOSED] JUDGMENT ON SPECIAL VERDICT

9

on the interested parties in this action as follows:

10

## SERVICE LIST

11

Jeffrey A. Slott                                        *Attorneys for Defendants*
LAW OFFICES OF JEFFREY A. SLOTT, APC

12

15760 Ventura Blvd., Suite 1600                LESLIE KLEIN and
Encino, CA 91436                                   LES KLEIN & ASSOCIATES, INC.

13

Telephone:    (818) 995-1955
Facsimile:      (818) 995-0955

14

Email:          jslott@aol.com

15

16

**BY E-MAIL:**  I caused a copy of the document(s) to be sent from e-mail address johnpark@procel-law.com to the person(s) at the e-mail address(es) listed in the Service List.  I

17

did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

18

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

19

20

Executed on November 15, 2022, at Santa Monica, California.

21

                                    /s/ Brian Procel

22

                                    Brian Procel

23

24

25

26

27

28

[PROPOSED] JUDGMENT
EXHIBIT "A"

# EXHIBIT B

1    BRIAN A. PROCEL (State Bar No. 218657)
bprocel@millerbarondess.com
2    ADAM M. AGATSTON (State Bar No. 325114)
aagatston@millerbarondess.com
3    MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
4    Los Angeles, California 90067
Telephone:    (310) 552-4400
5    Facsimile:    (310) 552-8400

6    Attorneys for Plaintiffs
JOSEPH VAGO and ERICA VAGO

7

FILED
Superior Court of California
County of Los Angeles

04/08/2021

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ P. Cortez _____ Deputy

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10

11    JOSEPH VAGO and ERICA VAGO,                    **CASE NO. 20STCV25050**

12                    Plaintiffs,                    **THIRD AMENDED COMPLAINT FOR:**

13            v.                                      **(1)    BREACH OF FIDUCIARY DUTY;**
                                                      **(2)    FRAUD (INTENTIONAL**
14    LESLIE KLEIN, an individual; LES KLEIN                **MISREPRESENTATION;**
& ASSOCIATES, INC., a corporation;                        **FRAUDULENT INDUCEMENT;**
15    KENNETH KOLEV KLEIN, an individual;                  **FALSE PROMISE);**
and DOES 1-25,                                    **(3)    SECURITIES FRAUD;**
16                                                  **(4)    NEGLIGENT**
                    Defendants.                           **MISREPRESENTATION;**
17                                                  **(5)    CONVERSION;**
                                                    **(6)    PROFESSIONAL NEGLIGENCE;**
18                                                  **(7)    UNLAWFUL BUSINESS**
                                                          **PRACTICES;**
19                                                  **(8)    INTENTIONAL INFLICTION OF**
                                                          **EMOTIONAL DISTRESS;**
20                                                  **(9)    FINANCIAL ELDER ABUSE;**
                                                    **(10)   ACCOUNTING; AND**
21                                                  **(11)   CONSPIRACY TO COMMIT**
                                                          **FRAUD.**
22
                                                    **[DEMAND FOR JURY TRIAL]**
23

24

25

26

27

28

*Electronically Received 04/08/2021 12:49 PM*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

506306.1

EXHIBIT "B"                                          Page 1 of 39
THIRD AMENDED COMPLAINT

1      Plaintiffs Erica Vago and Joseph Vago ("Plaintiffs" or the "Vagos") hereby allege in their

2  Complaint against Defendants Leslie Klein ("Klein"); Les Klein & Associates, Inc.; and Kenneth

3  Kolev Klein (collectively "Defendants") as follows:

4                                    **SUMMARY OF THE ACTION**

5      1.      The Vagos knew Klein for more than four decades before getting involved with

6  him on a professional level.  The Vagos and Klein are Orthodox Jews and they attended the same

7  temple at various times.

8      2.      In October 2012, Erica's brother Robert Schweitzer passed and left her nearly $18

9  million.  The inheritance was located in a foreign bank account.  The Vagos had never dealt with

10  anything like this before.  They were not experienced in matters relating to taxation, probate, or

11  financial planning.  They needed help.

12      3.      Klein saw an opportunity and pounced.  Klein held himself out to be a jack of all

13  trades.  He told the Vagos he was an attorney, accountant, and financial planner.  From the outset,

14  Klein created a tangled web of professional and personal relationships with the Vagos that was

15  designed to extricate their money from them.  Klein exploited the Vagos' age, trust, and common

16  faith to steal their fortune out from under them.  And he did so when they were most vulnerable,

17  grieving the loss of Erica's uncle and brother.  Klein used deception, outright lies, and faux-

18  appeals to religious authority to effect and conceal his fraud for years.  Klein even used his son

19  Kenneth—also a lawyer—to help maintain his swindle.  But now the jig is up.  After enduring

20  eight years of lies and deception—and losing $11 million—the Vagos discovered Klein to be a

21  conman and a thief.  It is time for him to atone.

22      4.      Just days following Robert's passing, the Vagos were home sitting Shiva to mourn

23  his loss.  Klein came by ostensibly to pay his respects.  He instead offered his services an attorney

24  and accountant.  The Vagos knew they might need help, so they arranged to meet Klein.

25      5.      About a week later, the Vagos met with Klein to discuss Robert's estate.  The

26  Vagos had learned in the meantime that Erica had inherited more than $18 million from her

27  brother, located in a foreign bank account.  The Vagos did not know what to do.  This situation

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    was new to them.  But they hoped Klein could help.  At the meeting, the Vagos told Klein about

2    Erica's inheritance.  He pounced.

3        6.        Klein initiated his fraudulent scheme right then and there.  He told the Vagos that

4    this type of thing was his "specialty."  Klein claimed that as a tax attorney and CPA, he took care

5    of this type of issue for his clients "all the time."  Klein offered to deal with the estate tax return

6    and any related affairs as well.  And he would figure out the best way to repatriate Erica's

7    inheritance.  Relieved that their friend could guide them through this time, the Vagos gave Klein a

8    $7,000 retainer check that day.

9        7.        In the Vagos' next meeting with Klein, he outlined a financial plan to repatriate and

10    invest Erica's inheritance.  He said they should invest the money in life insurance policies.  These

11    were "just like cash" and much smarter to hold than stocks or bonds.  Klein named several

12    prominent members of the Jewish Community for whom he supposedly made similar investments.

13    He said his sister-in-law had invested in such policies.  Klein even said the Grand Rabbi in New

14    York told him personally this was a proper strategy.

15        8.        But first, Klein said, Erica would have to wire the money to LK&A's client trust

16    account.  Klein would arrange the life insurance investments from there.  If the Vagos needed any

17    of the inheritance for themselves, Klein would provide them funds from the client trust account.

18    When Erica said she wanted to donate a portion of the inheritance to charity, Klein said he would

19    set up a foundation for that purpose.

20        9.        Trusting their friend, the Vagos agreed.  Over the next few years, Erica wired more

21    than $12.4 million of her inheritance to the LK&A client trust account, and sent the rest to Klein's

22    charitable foundation.  Klein then purportedly invested $6.5 million of those funds in life

23    insurance trusts.  In regular meetings at the Vagos' home, Klein provided formal memos from his

24    law firm outlining how well the investments were doing.  In person and through these memos,

25    Klein conveyed that the Vagos' investments were earning millions of dollars in interest.  But it

26    was all a fraud.

27        10.        Klein did not "invest" in life insurance policies.  Instead, he made non-recourse

28    loans to various life insurance trusts.  These trusts each owned a stranger's life insurance policy or

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    policies.  In return, the Vagos got non-recourse promissory notes from the trusts, promising

2    payment with interest upon the death of the policyholder.  If the specified underlying insurance

3    policy ever lapsed, the Vagos would lose their "investment" entirely.  These instruments were

4    worth almost nothing to the Vagos, who were both over 60 years old when they received them.

5    Even if these were legitimate investments, the Vagos would likely never get their money back.

6    They would need to outlive the insureds in order to see a cent of their investment.  What's more,

7    Klein said the Vagos had to pay hundreds of thousands of dollars annually to help pay premiums

8    on the policies.  And Klein listed himself as the trustee for each of the trusts the Vagos "invested"

9    in.  The entire structure of these "investments" was designed to defraud the Vagos.

10        11.    But all the Vagos knew was what their friend and fiduciary Klein explained, both in

11   formal memos and face-to-face in their dining room.  In 2019, Klein told the Vagos that the life

12   insurance "investments" had earned $6 million in interest alone.  Then Klein's scheme unraveled.

13        12.    In September 2019, Erica asked Klein for $1 million from the client trust account.

14   This was a small portion of the inheritance, especially given the supposed earnings from the

15   Vagos' life insurance investments.  And Klein had given Erica funds from her inheritance upon

16   request before, so why should now be different?  But it was.  For the first time in seven years,

17   Klein said "no."  And then he delivered more bad news: all the interest the life insurance policies

18   had earned was gone.

19        13.    This made no sense to the Vagos.  Klein had come to their home several times each

20   year since 2012 to explain how well the investments were doing.  They had memos on law firm

21   letterhead outlining each investment's earnings.  How could they disappear overnight?  The only

22   explanation turned out to be the true one: Klein was lying all along.  Erica demanded her money

23   back.  Klein refused.  And he refuses to this day.  The Vagos ultimately came to the only

24   reasonable conclusion: that their friend of more than a decade a swindled them out of millions of

25   dollars.

26                          **THE PARTIES, JURISDICTION, AND VENUE**

27        14.    Plaintiffs Joseph Vago and Erica Vago are individuals who reside in Los Angeles

28   County, California.

15.    Defendant Leslie Klein is and at all relevant times was an individual domiciled in the County of Los Angeles and is a citizen of the State of California.

16.    Les Klein & Associates, Inc. ("LK&A") is a California professional law corporation with a principal place of business in Los Angeles County, California.  Klein is the sole member and founding attorney of Les Klein & Associates, Inc.  On information and belief, Plaintiffs allege that some of the wrongful acts complained of herein were committed by Klein, acting on behalf LK&A, or were committed by employees, representatives or agents of Defendant LK&A.  To the extent Klein committed wrongful acts by or through LK&A, LK&A is not only directly liable to Plaintiffs but is also liable for the acts of Defendant Klein alleged in this Complaint as his alter ego.  Plaintiffs are informed and believe, and based thereon allege, that recognition of the privilege of separate existence of Klein and LK&A would promote injustice because of any or all of the following reasons: Defendant Klein dominated and controlled Defendant LK&A by commingling funds and other assets of his and LK&A's for his own convenience, by diverting funds and other assets of LK&A to non-company uses, and by failing to adequately capitalize Defendant LK&A; Defendant LK&A is a mere shell, instrumentality, or conduit for Klein's personal business; and by other actions according to proof.

17.    On information and belief, Defendant Kenneth Kolev Klein is and at all relevant times was an individual domiciled in the County of Los Angeles and is a citizen of the State of California.

18.    Plaintiffs are ignorant of the true names, capacities, relationships and extent of participation in the conduct herein alleged of the defendants sued herein as DOES 1 through 25, inclusive, but on information and belief allege that said defendants are legally responsible to them. Plaintiffs will amend this Complaint to allege the true names and capacities of DOES 1 through 25 when ascertained.

19.    This Court has jurisdiction over the claims alleged herein because Plaintiffs seek relief pursuant to the laws of the State of California and the amount in controversy exceeds $25,000, and Defendants are subject to the personal jurisdiction of this Court.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    20.    Venue in Los Angeles Superior Court is proper because the individual Defendants

2  reside in Los Angeles County, and the corporate Defendants have their principal place of business

3  in Los Angeles County.

4                                **GENERAL ALLEGATIONS**

5    **A.**    **Klein Develops a Decades-Long Friendship with Plaintiffs**

6    21.    Joseph first met Klein in 1970 at Temple Chassam Sofer in Los Angeles, where

7  both were congregants.  As members of Los Angeles's small Orthodox Jewish community, they

8  began a friendship centered around Temple and religious celebrations.

9    22.    Over the years, theirs expanded into a family friendship.  Klein and his wife had

10 four children in the 1970s, then Joseph married Erica in 1982, and the Vagos had a daughter.

11   23.    When the Vagos moved to a different area of Los Angeles and changed synagogues

12 in 1982, the friendship continued.  The Vagos would regularly see the Kleins at Shabbat dinners

13 and other religious events.  When the Klein or Vago children had a Bar or Bat mitzvah, the other

14 family attended.  When the Klein or Vago children had an engagement party, the other family

15 went.  And when the Klein or Vago children got married, the other family was invited.

16   24.    Klein was one of relatively few Orthodox Jewish attorneys in the Los Angeles area

17 when he began practicing law in the 1970s.  And he used this distinction to garner trust within the

18 Orthodox Community.  But until 2012 and the events giving rise to this case, the Vagos never

19 used him as an attorney.  Klein was a friend and a fellow religious community member.

20   **B.**    **Klein Approaches the Vagos While Erica Grieved Her Brother**

21   25.    2012 and 2013 were tough years for Erica.  In June 2012, she lost an uncle with

22 whom she was close.  Then in October 2012, she lost her brother.  A few months later, in July

23 2013, her mother passed.  Erica and Joseph had to deal with three lost loved ones and three estates

24 in short succession.  It was in this vulnerable time that Klein struck.

25   26.    Erica's brother, Robert Schweitzer, died on October 3, 2012, and willed the bulk of

26 his estate to Erica.  Robert's estate included roughly $18 million in a foreign bank account.

27   27.    A few days following Robert's death, the Vagos were at their home sitting Shiva,

28 as is Jewish tradition.  Klein arrived at the Shiva to pay his respects, or so the Vagos thought.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    Klein immediately offered his services as a lawyer and accountant.  He said he could handle any

2    issues that might come up with Robert's estate.  The Vagos agreed to let their longtime friend and

3    attorney give them counsel during this difficult time.  They arranged to meet the following week.

4          **C.**    **Klein Convinces the Vagos to Let Him Invest Erica's Inheritance in Life**

5               **Insurance Policies**

6          28.    About a week later, the Vagos and Klein met to discuss Robert's estate.  Erica

7    learned before the meeting that Robert had left her more than $18 million, located in a foreign

8    bank account.  The Vagos did not know how to handle this situation, but they hoped their friend

9    could help.  At the meeting, Erica told Klein about the inheritance.  Klein pounced.

10          29.    Klein said this issue was his "specialty."  He told Erica that as a lawyer, CPA, and

11    financial adviser, he took care of this type of thing for clients "all the time."  He would deal with

12    the will.  He would prepare the estate tax returns.  He would figure out the best way to repatriate

13    the money.  He would even set up investments for the money once the Vagos got it.

14          30.    The Vagos were convinced.  They agreed to let their longtime friend and attorney

15    guide them through this unfamiliar territory.  Erica wrote Klein a $7,000 check that day for the

16    services he promised to provide.

17          31.    At their next meeting, Klein presented the Vagos with his plan for repatriating

18    Erica's inheritance.  Klein recommended that the Vagos invest the inheritance in life insurance

19    policies.  Klein explained the safety and benefits of this strategy.  He said that each investment

20    would garner 10 to 12% interest each year, plus a premium on the principle in some cases, all to

21    be paid when they cashed out.  And Klein emphasized how simple cashing out would be.  He

22    advised that investments in these policies were "just like cash."  He promised the Vagos could

23    "sell them for cash any time [they] wanted."

24          32.    Klein added that the best way to effect the transaction would be to wire the money

25    to the LK&A client trust account.  Klein would then invest the money from his firm's client trust

26    account into life insurance policies.  When the Vagos mentioned they wanted to donate substantial

27    sums to charity, Klein suggested they wire the money to the EKLK Foundation, which Klein set

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    up and controlled.  Klein said the EKLK Foundation would then distribute funds to charities the

2    Vagos chose.

3        33.      Finally, Klein said that if the Vagos wanted cash from Erica's inheritance for

4    themselves, they should ask him for it.  He would write them a check from the client trust account.

5        34.      The Vagos had not previously heard of Klein's investment strategy, so Klein

6    reassured them.  He said he facilitated the same type of transactions for "all my clients."  He

7    named acquaintances for whom he had set up life insurance investments, including Klein's sister-

8    in-law.  He said he invested his own money and his family's money in life insurance policies.

9    Klein added that prominent tax attorneys and accountants "in Century City" confirmed to him that

10    this was a safe and proper strategy.

11        35.      Klein also used their shared faith to further gain the Vagos' trust and blind them to

12    his scheme.  Klein claimed to have invested in life insurance policies for several prominent

13    members of the Jewish community.  He named specific members for whom he had supposedly

14    carried out this strategy, including his sister-in-law.  Klein pointed out one member that invested

15    $60 million in life insurance policies with him.  As icing on the cake, Klein stated that he spoke

16    with the Grand Rabbi in New York, who explicitly approved these types of transactions.

17        **D.**      **Klein Obtains Erica's Inheritance and Claims to "Invest" $8.3 Million in**

18            **Strangers' Life Insurance Policies**

19        36.      After the Vagos' second meeting with Klein, Erica followed her trusted attorney's

20    instructions.  Over the next four years, Erica arranged more than $15 million in wire transfers from

21    the foreign bank account holding her inheritance.  She made each transfer at Klein's direction and

22    to accounts Klein controlled.

23        37.      About $12.4 million went to the LK&A client trust account, and the rest went to

24    Klein's EKLK Foundation.

25        38.      As the money came in, Klein represented to the Vagos that he was executing the

26    investment strategy he had convinced them to follow.  Klein told the Vagos he was investing

27    much of Erica's inheritance in life insurance policies.  These life insurance "investments" turned

28

EXHIBIT "B" 8
THIRD AMENDED COMPLAINT

1   out to be egregiously improper for the Vagos, especially in light of Klein's promises about their

2   safety and liquidity.

3        39.    The life insurance "investments" were not really investments; they were non-

4   recourse loans to irrevocable life insurance trusts.  Each life insurance trust purportedly contained

5   a life insurance policy or policies—on the life of a complete stranger to the Vagos—which served

6   as the sole security for the Vagos' loan.  The principal and interest on each loan were not due until

7   the death of the policyholder.  For Erica and Joseph—who were respectively 59 and 61 when

8   Robert passed—this term rendered the loans almost valueless.  They did not know when—if

9   ever—the loans would become due.

10        40.    And what if the policyholder stopped paying premiums?  The provisions on this

11  term were especially perverse.  If the policyholder defaulted, that would constitute a default on the

12  Vagos' loan. What could the Vagos recover if the borrower defaulted?  Just one asset: the lapsed

13  insurance policy.  In other words, nothing.  The Vagos could get paid upon death of the

14  policyholder should they outlive that person, or not at all.  These ill-advised, illiquid assets were

15  not the safe, liquid investments—"just like cash"—that Klein promised the Vagos.

16        41.    There was more.  The Vagos did not know the policyholders for the policies

17  backing each life insurance trust, but they knew the trustee for each: Leslie Klein.  Each

18  "investment" was memorialized in a non-recourse promissory note, and Klein signed each one on

19  behalf of the life insurance trust borrower as its trustee.  Klein thereby represented both sides of

20  the transaction.  He was the borrower and lender for each loan.  Klein never disclosed he was

21  doing this, and the Vagos certainly never gave him permission to do so.

22        42.    Finally, the Vagos' names were nowhere to be found on the promissory notes.

23  Rather, they were executed for the benefit of the "Estate of Robert Schweitzer."  It could not be

24  more evident that Klein structured these "investments" in a manner designed to confuse and

25  deceive the Vagos.  Klein knew that these "investments" were never going to pay out.

26        43.    Though these promissory notes were nearly worthless to the Vagos, by Klein's

27  doing, they still had a huge carrying cost.  To keep the underlying life insurance policies from

28  lapsing, Klein told the Vagos that they would have to pay hundreds of thousands of dollars per

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   year toward insurance premiums.  This money was in addition to the millions already loaned to the

2   policy trusts.

3       44.     To further reassure the Vagos that these transactions were proper, Klein again

4   resorted to their common faith.  Jewish law prohibits one Jew from lending money and charging

5   interest to another.  But Rabbis have developed a type of agreement—the Heter Iskoh—that

6   allows Jews to enter into the equivalent of such a transaction without offending Jewish law.  To

7   keep the transaction in seeming compliance with Jewish law, Klein provided a Heter Iskoh with

8   each promissory note.  Klein and two witnesses—both unknown to the Vagos—signed each Heter

9   Iskoh.

10      45.     On or around April 28, 2014, Klein told the Vagos that he had invested $6.5

11  million of Erica's inheritance into various life insurance policies.  Klein provided a memo on

12  LK&A letterhead stating that $6.5 million from the client trust account had been invested in life

13  insurance policies, and an additional $600,000 would be paid each year for the policies'

14  premiums.  By 2019, Klein had put $1.8 million more of the Vagos' money into these life

15  insurance trusts, for a total of $8.3 million.

16      **E.      Klein Initiated and Sold Life Insurance Policies in Violation of the California**

17          **Insurance and Corporations Codes**

18      46.     Unbeknownst to the Vagos, and contrary to his representations, Klein violated

19  California statutory law when he initiated and transacted in the life insurance policies in which he

20  "invested" Erica's inheritance.

21          **1.      The California Insurance Code**

22      47.     The California Insurance Code imposes numerous obligations on one initiating or

23  transacting in life insurance, life settlements, and viatical settlements.   Section 10113.1(g) of the

24  Insurance Code defines a "[f]raudulent life settlement act" to include "[e]ntering into stranger-

25  originated life insurance" and "[t]ransact[ing] in the business of life settlements in violation of

26  laws requiring a license, certificate of authority, or other legal authority for the transaction of the

27  business of life settlements."   Insurance Code section 10113.2(b)(1) states that "a person may not

28

1    enter into, broker, or solicit life settlements pursuant to Section 10113.1 unless that person has

2    been licensed by the commissioner under this section."

3          48.    On information and belief, each of the life insurance policies securing Klein's

4    "investments" from Erica's inheritance was a stranger-oriented life insurance policy as defined by

5    section 10113.1(w) of the Insurance Code.  Klein initiated these policies for the benefit of himself

6    and various trusts that he created and for which he served as trustee.  But Klein and these trusts

7    had no insurable interest in the lives of the insured under those policies.

8          49.    In addition, Klein was never licensed to transact in life settlements.  But the

9    "investments" he arranged for the Vagos were just that.

10         50.    Despite these clear violations of the California Insurance Code, Klein repeatedly

11   assured the Vagos that their investments in life insurance were legal and proper.

12                    **2.    The California Corporations Code**

13         51.    The California Corporations Code regulates who can engage in securities

14   transactions on behalf of others.  Corporations Code section 25004(a) defines "[b]roker-dealer" as

15   "any person engaged in the business of effecting transactions in securities in this state for the

16   account of others or for that person's own account."  Corporations Code section 25019 defines

17   "[s]ecurity" to include a "viatical settlement contract or a fractionalized or pooled interest therein,"

18   and a "life settlement contract or a fractionalized or pooled interest therein."  Corporations Code

19   section 25210 states that "no broker-dealer shall effect any transaction in, or induce or attempt to

20   induce the purchase or sale of, any security in this state unless the broker-dealer has first applied

21   for and secured from the commissioner a certificate, then in effect, authorizing that person to act in

22   that capacity."

23         52.    The life insurance "investments" that Klein arranged, oversaw, and effected for the

24   Vagos constitute "securities" under the Corporations Code.  And Klein acted as a "broker-dealer"

25   under the Corporations Code by effecting and inducing the life insurance "investments."  Yet

26   Klein never received a certificate or license to act as a broker-dealer in California.

27         53.    Despite this clear violation of the California Corporations Code, Klein repeatedly

28   assured the Vagos that their investments in life insurance policies were legal and proper.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

EXHIBIT "B" 11

THIRD AMENDED COMPLAINT

**F.    Klein's Son Reassures the Vagos That Their Investments Are Safe**

54.    After receiving the promissory notes and corresponding Heter Iskoh, the Vagos were satisfied that Erica's inheritance was wisely invested.  But they had one concern: what would they do if something happened to Klein?

55.    Klein had organized everything following Robert's passing.  He dealt with probate. He dealt with taxes.  He was the sole trustee for the life insurance trusts the Vagos invested in. And he and LK&A possessed the millions in inheritance that had yet to be invested, donated to charity, or distributed to Erica.  The Vagos wanted to know that their assets would be safe if something happened to Klein.

56.    This time, Klein enlisted his son, Kenneth, to reassure the Vagos.  Klein, Kenneth, and the Vagos met at the Vagos' home to discuss their concern.  At that meeting, Klein repeated his usual lies.  He told the Vagos their money was safely invested in life insurance policies.  He told them the investments would continue earning interest.  He told them they could cash out when they wanted.  At each lie, Kenneth nodded in agreement.

57.    At the end of the meeting, Kenneth gave the Vagos the reassurance they were looking for.  Kenneth told the Vagos that, should something happen to his father, Kenneth would personally make sure that their money and investments would remain safe.  That was a lie.

58.    Klein had already swindled the Vagos.  But Kenneth nevertheless reassured the Vagos that their investments would be safe in the future (i.e., that they were necessarily safe at the time the representation was made).   The Vagos understood Kenneth's comment to mean that their investments were safe and would remain that way.  The Vagos relied on Kenneth's representation to their detriment.  And they transferred more money to and made additional investments with Klein in reliance on Kenneth's representations.

**G.    Klein Reassures the Vagos by Regularly Providing Them Funds from Erica's Inheritance**

59.    As far as the Vagos could see, the portion of Erica's inheritance that Klein did not initially invest in life insurance policies—more than $8.5 million—remained in their control.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

60.    In the first year following Robert's death, Erica told Klein she wanted to donate some of her inheritance to Kollel Shomrei HaChomos and other charities, in accordance with her brother's wishes.  Erica asked for $800,000 from her inheritance to donate, and Klein provided the money.

61.    In the following years, Klein gave the Vagos about $5,300 each month to support their lives.  Klein also paid their credit card bills over this time.

62.    And when the Vagos requested more than these regular payments, Klein complied. In 2015, the Vagos decided to purchase a duplex in Los Angeles as an investment property.  They needed about $1.8 million for the purchase, so they went to Klein.  Klein provided the money from the client trust account, and the Vagos purchased the apartment.

63.    In fact, the Vagos used Klein's daughter as the broker in their purchase of the duplex.

**H.    Klein Reassures the Vagos by Providing Regular Updates on Their Insurance Policy "Investments"**

64.    In the years after Klein "invested" an initial $6.5 million of Erica's inheritance in life insurance policies, he kept in regular contact with the Vagos.  Every six weeks or so, Klein visited the Vagos at their home or hosted them at his home to update the Vagos on their insurance policy investments.

65.    On these visits, Klein would bring along formal memoranda on LK&A letterhead outlining the status of each policy.  Over the months and years, these memoranda reflected a successfully growing investment.

66.    For instance, a July 1, 2017 memorandum that Klein gave to the Vagos listed $9.4 million in total liens on insurance policies.  The memorandum also listed $3,205,000 in "interest" that the Vagos' investment had earned since 2012.  A true and correct copy of this memorandum is attached hereto as Exhibit A.

67.    A memorandum Klein provided on a visit about ten months later showed how their investments had grown.  In this May 2, 2018 memorandum, Klein listed $10.2 million in total

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  liens on insurance policies, and $3,685,000 in total "interest" earned.  A true and correct copy of

2  this memorandum is attached hereto as <u>Exhibit B</u>.

3      **I.**      <u>**The Vagos Discover Klein's Fraud**</u>

4      68.    Each meeting gave the Vagos more reassurance that their money was safe.

5      69.    On or around September 15, 2019, Klein went to the Vagos' home for their regular

6  meeting.  At this meeting, Erica told Klein she needed more of her inheritance money this time,

7  about $1 million.

8      70.    Erica did not expect this request to be an issue.  When she had asked for substantial

9  sums of her inheritance money before, Klein obliged.

10      71.    Moreover, during the previous seven years, Klein told the Vagos their investments

11  were thriving.  In meeting after meeting and memo after memo, Klein represented that the Vagos'

12  investments were earning millions.  At their last meeting, Klein told the Vagos that the policies

13  had earned more than $6 million in interest.  Klein had previously said that these investments were

14  "as good as cash."  So when Erica asked for just $1 million, she expected Klein to provide it.

15      72.    For the first time in years, Klein had a different message.  He said the $6 million in

16  "interest" was gone.

17      73.    The Vagos were shocked.  They asked how this was possible.  Klein falsely stated

18  that "hedge funds are not paying interest anymore" on life insurance policies, so their earnings

19  over the past seven years had vanished.  Erica said she could not accept this.  She demanded Klein

20  return her money.

21      74.    Since that day, Erica has repeatedly demanded that Klein return their money.  He

22  has refused.

23      **J.**      <u>**Theft, Deception, and Fraud Were Klein's Modus Operandi**</u>

24      75.    Had Klein told them the truth about his history overseeing client funds, the Vagos

25  would have run the other direction.  On information and belief, the Vagos were just the latest in a

26  string of Klein's victims.  These other marks, like the Vagos, entrusted Klein with their money

27  only to have him lie, embezzle, create fraudulent reports, and refuse to return funds when his

28  clients so demanded.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

76.     On information and belief, Hubert Scott was one such victim.  In 2011, when Mr. Scott was 80 years old, Klein took over his financial life.  And just like he did with the Vagos, Klein "invested"—i.e. loaned—millions of dollars of Mr. Scott's money in trusts for which Klein was trustee.  These included two of the very same irrevocable life insurance trusts in which Klein supposedly "invested" the Vagos' money: the Stuart Yorkshire Irrevocable Life Insurance Trust and the Rosalia Feldman Irrevocable Life Insurance Trust.  The result has naturally been litigation with Mr. Scott's family and an investigation by the California Board of Accountancy, Case number AC-2019-62.

77.     On information and belief, Klein also preyed upon Frank and Vera Menlo and their family.  There, as here, Klein convinced an elderly Orthodox Jewish couple to give him control of their fortune.  For 20 years, Klein has served as sole trustee of the nearly 100 trusts that Mr. and Mrs. Menlo created for their family members, which collectively control millions of dollars.  After spending years misappropriating the trusts' funds, Klein has spent at least the last eight years— and counting—refusing to provide an accounting for the trusts.  His refusals led dozens of the trusts' beneficiaries to file suit in 2012.  Defying countless requests from the trusts' beneficiaries, eight years of litigation, and even several court orders, Klein to this day refuses to account for the millions he is charged with overseeing.

**K.     Klein Violated Several Rules of Professional Conduct**

78.     As the Vagos' accountant and lawyer, Klein was subject to myriad regulations and rules of professional conduct, beyond the duties and standards of care imposed by general California law on fiduciaries.

**1.     Rules Governing Attorneys**

79.     Pursuant to California Business and Professions Code sections 6076 and 6077, the State Bar of California and California Supreme Court has promulgated California's Rules of Professional Conduct to govern California attorneys.  The Rules of Professional Conduct that Klein's aforementioned misconduct violated include the following.

80.     Rule 1.7(b) states: "A lawyer shall not, without informed written consent from each affected client . . . , represent a client if there is a significant risk the lawyer's representation of the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    client will be materially limited by the lawyer's responsibilities to or relationships with another

2    client, a former client or a third person, or by the lawyer's own interests."

3    81.    Paragraph (c) of rule 1.7 provides that, "[e]ven when a significant risk requiring a

4    lawyer to comply with paragraph (b) is not present, a lawyer shall not represent a client without

5    written disclosure of the relationship to the client" if "the lawyer has . . . a legal, business,

6    financial, professional, or personal relationship with or responsibility to a party . . . in the same

7    matter."  A "matter" includes a business transaction.

8    82.    Rule 1.8.1 forbids a lawyer from entering into a business transaction with a client

9    or acquiring a pecuniary interest adverse to a client unless three requirements are met:

10    a.    the transaction or acquisition and its terms are fair and reasonable to the
      client and the terms and the lawyer's role in the transaction or acquisition
11        are fully disclosed and transmitted in writing to the client in a manner that
      should reasonably have been understood by the client;
12

13    b.    the client either is represented in the transaction or acquisition by an
      independent lawyer of the client's choice or the client is advised in writing
14        to seek the advice of an independent lawyer of the client's choice and is
      given a reasonable opportunity to seek that advice; and
15

16    c.    the client thereafter provides informed written consent to the terms of the
      transaction or the acquisition, and to the lawyer's role in it.
17

18    83.    Rule 1.15 regulates how a lawyer must treat client funds.  Paragraph (c) forbids a

19    lawyer or law firm from depositing or commingling its funds with funds held in a client trust

20    account.  Paragraph (d)(3) requires that a lawyer "maintain complete records of all funds,

21    securities, and other property of a client or other person coming into the possession of the lawyer

22    or law firm."  Paragraph (d)(4)  requires that a lawyer "promptly account in writing to the client or

23    other person for whom the lawyer holds funds or property."   And paragraph d(7) requires that a

24    lawyer "promptly distribute, as requested by the client or other person, any undisputed funds or

25    property in the possession of the lawyer or law firm that the client or other person is entitled to

26    receive."

27    84.    Rule 1.4 requires that a lawyer, inter alia, "promptly inform the client of any

28    decision or circumstance with respect to which disclosure or the client's informed consent is

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  required by these rules or the State Bar Act"; "keep the client reasonably informed about

2  significant developments relating to the representation, including promptly complying with

3  reasonable requests for information and copies of significant documents when necessary to keep

4  the client so informed"; and "explain a matter to the extent reasonably necessary to permit the

5  client to make informed decisions regarding the representation."

6      85.    Klein complied with none of these duties.  He never advised the Vagos that he had

7  a personal interest in the life insurance trusts.  He never mentioned that he would be on both sides

8  of their investments.  He never told them that his personal interests, and those of other clients,

9  conflicted with the Vagos' interests.  He never obtained informed written consent for anything.

10 He never provided a proper accounting of their funds.  He commingled his funds with theirs.  He

11 commingled the funds of other clients with theirs without accounting for what each client

12 contributed.  And when the Vagos asked for their money back, Klein refused.

13          **2.    Rules Governing Accountants**

14     86.    California imposes similarly extensive duties on Klein as an accountant.

15     87.    The California State Board of Accountancy's Rules of Professional Conduct are

16 codified in title 16 of the California Code of Regulations ("CCR"), Division 1.  Section 57 of this

17 title states that an accountant "shall not concurrently engage in the practice of public accountancy

18 and in any other business or occupation which impairs the licensee's independence, objectivity, or

19 creates a conflict of interest in rendering professional services."

20     88.    16 CCR section 68 states that an accountant, "after demand by or on behalf of a

21 client, for books, records or other data, whether in written or machine sensible form, that are the

22 client's records shall not retain such records."

23     89.    16 CCR section 58 requires that accountants "comply with all applicable

24 professional standards," which include the American Institute of CPA's ("AICPA") Code of

25 Professional Conduct.

26     90.    In turn, AICPA Code of Professional Conduct Rule 1.100.001 requires that an

27 accountant "shall maintain objectivity and integrity, shall be free of conflicts of interest, and shall

28 not knowingly misrepresent facts or subordinate his or her judgment to others."

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

91.     Rule 1.130.010 states that an accountant violates Rule 1.100.001 if he "makes, or permits or directs another to make, materially false and misleading entries in an entity's financial statements or records"; "fails to correct an entity's financial statements or records that are materially false and misleading"; "signs, or permits or directs another to sign, a document containing materially false and misleading information."

92.     Rule 1.110.010.12 states that, when a conflict of interest exists, an accountant "should disclose the nature of the conflict of interest to clients and other appropriate parties affected by the conflict and obtain their consent to perform the professional services."

93.     Rule 1.110.010.04 offers the following examples of conflicts of interests: "[p]roviding services to both a vendor and a purchaser who are clients . . . in relation to the same transaction"; "[a]dvising a client to invest in a business in which, for example, the immediate family member of the [accountant] has a financial interest"; and "[a] member who is an officer, a director, or a shareholder of an entity has significant influence over the entity, and that entity has a loan to or from a client."

94.     Klein trampled his duties as an accountant the same way he trampled his duties as an attorney.  He never disclosed his egregious conflicts of interest.  He did not properly account for the Vagos' money.  And he created and proffered false and misleading records of the Vagos' funds and investments.

**L.     The Vagos Remain Willing to Settle This Matter in Rabbinical Court**

95.     Keeping to the religious principles that Klein abandoned, the Vagos first sought to settle this dispute in rabbinical court, the Beis Din.  The Vagos demanded that Klein submit to the Beis Din by sending a summons from the local Beis Din servicing Los Angeles, the Rabbinical Council of California "RCC."  Klein initially agreed to appear, but he never followed through.

96.     After months of delay, Klein suggested an alternative type of Beis Din known as a Zabla, in which each party selects a single Rabbi, and then the two Rabbis work with the parties to select a mutually acceptable third Rabbi to adjudicate the dispute.  The Vagos and Klein each selected a Rabbi, but Klein has refused to agree to a third Rabbi from the RCC or the local Los Angeles community, instead suggesting only Rabbis from New York or Israel.  These selections

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    would be unreasonable at any time, but are especially so amid the current COVID pandemic and

2    concomitant travel restrictions.  Klein's choices are transparent, bad faith efforts to delay his day

3    of reckoning.

4        97.    Despite Klein's stall tactics, the Vagos remain willing to resolve this matter in the

5    Beis Din if Klein agrees to and fully participates in the process on reasonable terms.  This includes

6    entering into an arbitration agreement with the RCC or a mutually acceptable third Rabbi from the

7    local Los Angeles community, an expeditious arbitration schedule, and reasonable discovery of

8    documents and electronically stored information.  If Klein participates in the Beis Din in good

9    faith under these conditions, the Vagos will dismiss this Complaint.

10                    **FIRST CAUSE OF ACTION**

11                    ***Violation of Fiduciary Duty***

12                    **(Against Klein)**

13        98.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation

14    contained in the Complaint, and further alleges as follows:

15        99.    A fiduciary relationship existed between the Vagos and Klein at all relevant times.

16    Klein served as the Vagos' lawyer, accountant, financial adviser, and agent.  Klein held more than

17    $15 million on their behalf.  Based on these roles, Klein owed both legal and ethical duties and

18    obligations to the Vagos to adhere to the utmost standards of care, loyalty, candor, and full

19    disclosure.  Klein was also obligated to comply with the applicable rules of professional conduct

20    as an accountant and lawyer in his dealings with the Vagos.

21        100.    The Vagos relied on Klein to discharge his duties and obligations in a manner that

22    would cause no detriment to their rights.

23        101.    Klein breached his duties and obligations to the Vagos, and was negligent, by,

24    among other things:

25            a.    Failing to protect the Vagos' interests;

26            b.    Failing to make full and complete disclosures of pertinent information and

27                documents, including the fact that Klein represented the counterparty on all

28                the Vagos' insurance "investments";

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

c.    Placing his own interests over the interests of the Vagos, including by advising the Vagos to transfer all of Erica's inheritance into the LK&A client trust account and lending millions of dollars of the Vagos' money to trusts for which he was trustee;

d.    Placing other clients' interests over the interests of the Vagos;

e.    Continuing to represent the Vagos despite having conflicts of interest;

f.    Refusing to return funds held by Klein in trust when the Vagos requested them;

g.    Failing to return documents held by Klein in trust when the Vagos requested them;

h.    Violating the California Insurance Code, including Code sections 10113.1 and 10113.2, by, inter alia, transacting in life insurance, life settlements, and/or viatical settlements without a license;

i.    Violating the California Corporations Code, including Code section 25210, by, inter alia, effecting securities transactions without a license;

j.    Violating the California Accountancy Act Rules of Professional Conduct, including Rules 57, 58, and 68;

k.    Violating the AICPA's Code of Professional Conduct, including Rules 1.100.001, 1.110.010 and 1.130.010; and

l.    Violating the State Bar of California's Rules of Professional Conduct, including Rules 1.4, 1.7, 1.8.1, and 1.15.

102.    As a direct and consequential result of Klein's failure to properly discharge his fiduciary duties in connection with his representation of the Vagos, the Vagos have been damaged and suffered pecuniary loss in an amount in excess of $11,000,000.

103.    In committing the acts alleged herein, Klein is guilty of oppression, fraud and/or malice within the meaning of California Civil Code section 3294, entitling the Vagos to punitive or exemplary damages in an amount appropriate to punish Klein and make an example of him to the community.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## SECOND CAUSE OF ACTION

### Fraud (*Intentional Misrepresentation; Fraudulent Inducement; False Promise*)

### (Against All Defendants)

104.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

105.    As further set forth above, Klein made numerous false or misleading representations to the Vagos, as well as several material omissions.  Klein represented to the Vagos that he specialized in handling large foreign inheritances.  He told them he handled such transactions all the time.  Klein said that the most efficient way to repatriate Erica's inheritance was to transfer it to the LK&A client trust account and invest it in life insurance policies from there.  Klein said investments in life insurance policies were safe and "just like cash."  He told the Vagos they could cash out these investments whenever they wanted.  Klein said he confirmed with other experts, including prominent lawyers in Century City, that investing in life insurance policies this way was safe and legal.  Klein stated that the Grand Rabbi in New York told him that he specifically approved of this type of investment.  Klein said he organized similar investments for all of his clients, including several prominent members of the Los Angeles Jewish Community.  Klein said his wife had invested money in life insurance policies this way.  Klein said he invested his own money in similar policies.  And Klein concealed that he was the trustee for each life insurance trust in which he invested the Vagos' money.

106.    For years after supposedly "investing" the initial $6.5 million of the Vagos' money in life insurance policies, Klein told them their investment was growing.  In meetings at the Vagos' home roughly every six weeks from the polices' purchase through late 2019, Klein falsely told the Vagos they were receiving substantial returns on their life insurance investments.  Klein often provided formal memoranda on law firm letterhead falsely suggesting the same.  In one meeting with the Vagos, Klein and his son Kenneth assured the Vagos that their investments were safe.  Klein and his son told the Vagos that if something happened to the elder Klein, Kenneth would make sure the Vagos retained access to their money and that their investments would remain safe.

107.    These representations were false, and Defendants knew it.  They were intended to and did induce the Vagos into sending and entrusting Klein with all of Erica's inheritance.  The Vagos reasonably and justifiably relied on these misrepresentations and sent Klein more than $15 million as a result.  Had the Vagos known that these were false representations, they never would have entrusted Klein with their money.

108.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have suffered damages in excess of $11,000,000, with the exact amount to be proven at trial.

109.    In committing the acts alleged herein, Defendants are guilty of oppression, fraud and/or malice within the meaning of California Civil Code section 3294, entitling the Vagos to punitive or exemplary damages in an amount appropriate to punish Leslie and Kenneth Klein and make an example of them to the community.

## THIRD CAUSE OF ACTION

### *Securities Fraud, California Corp. Code § 25401*

### (Against Klein)

110.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

111.    California Corporations Code section 25019 defines a "security" to include a "viatical settlement contract or a fractionalized or pooled interest therein," or a "life settlement contract or a fractionalized or pooled interest therein."

112.    As set forth above, Klein offered to sell securities to the Vagos in the State of California by means of numerous communications including untrue statements of material fact or omitting to state material facts necessary to make the statements made, in light of the circumstances under which the statements were made, not misleading.  Among other materially false and misleading statements, Klein (i) stated that he specialized in handling large foreign inheritances; (ii) stated that he handled repatriation and investment of foreign inheritances all the time; (iii) stated that the most efficient way to repatriate Erica's inheritance was to transfer it to the LK&A client trust account and invest it in life insurance policies from there; (iv) said these investments in life insurance policies were safe, legal, proper, and "just like cash"; (v) said the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   Vagos could cash out these investments whenever they wanted; (vi) said that he confirmed with

2   other accounting and legal experts that investing in life insurance policies was the optimal way to

3   repatriate Erica's inheritance; (vii) said that the Grand Rabbi in New York told Klein that he

4   specifically approved of this type of investment; (viii) said he coordinated similar investments for

5   all of his clients; (ix) said that several prominent members of the Los Angeles Jewish community

6   successfully invested millions in life insurance policies this way; (x) said that his wife invested in

7   similar policies; (xi) said that he invested his own money in life insurance policies; and (xii)

8   represented orally and through formal LK&A memoranda that the Vagos' existing "investments"

9   in life insurance policies were appreciating and earning substantial interest.

10         113.    These representations were false, and Klein knew it.  They were intended to and did

11   induce the Vagos into sending and entrusting Klein with all of Erica's inheritance.  The Vagos

12   reasonably and justifiably relied on these misrepresentations and sent Klein more than $15 million

13   as a result.  Had the Vagos known that these were false representations, they never would have

14   entrusted Klein with their money.

15         114.    As a direct and proximate result of Klein's fraudulent conduct, Plaintiffs have

16   suffered damages in excess of $11,000,000, with the exact amount to be proven at trial.

17         115.    In committing the acts alleged herein, Klein is guilty of oppression, fraud and/or

18   malice within the meaning of California Civil Code section 3294, entitling the Vagos to punitive

19   or exemplary damages in an amount appropriate to punish Klein and make an example of him to

20   the community.

21                        **<u>FOURTH CAUSE OF ACTION</u>**

22                        ***Negligent Misrepresentation***

23                        **(Against All Defendants)**

24         116.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation

25   contained in the Complaint, and further alleges as follows:

26         117.    As further set forth above, Defendants made numerous false or misleading

27   representations to the Vagos, as well as several material omissions, which were intended to and

28   did induce the Vagos to send LK&A millions of dollars, to "invest" much of this money in life

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  insurance policies, and to leave these funds in Klein's control.  Among others, Kenneth

2  represented to the Vagos that he would ensure their investments would be safe if something should

3  happen to Klein.  The Vagos understood from this comment that Kenneth represented their

4  investments were safe at the time he made that representation.  Kenneth had an obligation to

5  determine that the Vagos' investments were safe at the time he made that representation.

6      118.    When the Defendants made the misrepresentations described above, they had no

7  reasonable grounds for believing them to be true.

8      119.    The Vagos reasonably and justifiably relied on these misrepresentations and trusted

9  Klein with more than $15 million as a result.  Had the Vagos known that these were false

10  representations, they never would have entrusted Klein with their money.

11      120.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have

12  suffered damages in excess of $11,000,000, with the exact amount to be proven at trial.

13                        **FIFTH CAUSE OF ACTION**

14                            *Conversion*

15                      **(Against Klein and LK&A)**

16      121.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation

17  contained in the Complaint, and further alleges as follows:

18      122.    Induced by his lies, the Vagos provided an identifiable sum of money to Klein.

19      123.    At all relevant times, the Vagos had a right to immediate possession of their

20  property transferred to Klein and LK&A.

21      124.    At all relevant times, Klein was the sole individual controlling LK&A's client trust

22  account.

23      125.    Klein interfered with Plaintiffs' right to immediate possession of their property by,

24  among other things, misappropriating, commingling, and otherwise misusing their money for

25  various improper and illegal purposes, including illegal and unethical investments in life insurance

26  trusts.  Klein also outright refused to return the Vagos' money when they so demanded after

27  learning of his fraud in 2019.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

126.   As a proximate result of Klein's and LK&A's conversion of the Vagos' property, the Vagos have been harmed in an amount to be determined at trial, but in excess of $11 million.

127.   In committing the acts alleged herein, Klein is guilty of oppression, fraud and/or malice within the meaning of California Civil Code section 3294, entitling the Vagos to punitive or exemplary damages in an amount appropriate to punish Klein and make an example of him to the community.

## SIXTH CAUSE OF ACTION

### *Professional Negligence*

### (Against Klein and LK&A)

128.   Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

129.   As an attorney, accountant, and financial adviser, Klein owed the Vagos duties of care, competence, loyalty, diligence, full and fair disclosure, utmost candor, and the duty to use and possess such knowledge, ordinary care, and skill as is commonly used and possessed by other attorneys, accountants, and financial advisers in the community under like circumstances.

130.   Klein breached his duties and obligations to the Vagos, and was negligent, by, among other things:

 a.   Failing to protect the Vagos' interests;

 b.   Failing to make full and complete disclosures of pertinent information and documents, including the fact that Klein represented the counterparty on all the Vagos' insurance "investments";

 c.   Placing his own interests over the interests of the Vagos, including by advising the Vagos to transfer all of Erica's inheritance into the LK&A client trust account and lending millions of dollars of the Vagos' money to trusts for which he was trustee;

 d.   Placing other clients' interests over the interests of the Vagos;

 e.   Continuing to represent the Vagos despite having conflicts of interest;

 f.   Refusing to return funds held by Klein in trust when the Vagos requested

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    them;

2    g.    Failing to return documents held by Klein in trust when the Vagos

3          requested them;

4    h.    Violating the California Insurance Code, including Code sections 10113.1

5          and 10113.2, by, inter alia, transacting in life insurance, life settlements,

6          and/or viatical settlements without a license;

7    i.    Violating the California Corporations Code, including Code section 25210,

8          by, inter alia, effecting securities transactions without a license;

9    j.    Violating the California Accountancy Act Rules of Professional Conduct,

10          including Rules 57, 58, and 68;

11    k.    Violating the AICPA's Code of Professional Conduct, including Rules

12          1.100.001, 1.110.010 and 1.130.010; and

13    l.    Violating the State Bar of California's Rules of Professional Conduct,

14          including Rules 1.4, 1.7, 1.8.1, and 1.15.

15    131.    As a direct and proximate result of Klein's multiple breaches, Plaintiffs were

16    harmed in an amount to be determined at trial, but in excess of $11,000,000.

17    <u>**SEVENTH CAUSE OF ACTION**</u>

18    ***Unfair Business Practices - Violation Business and Professions Code Section 17200***

19    **(Against All Defendants)**

20    132.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation

21    contained in the Complaint, and further alleges as follows:

22    133.    Plaintiffs are consumers and/or otherwise have standing to raise a claim under

23    Business and Professions Code Section 17200.

24    134.    As described further above, Defendants engaged in unfair, unlawful, and fraudulent

25    business practices on several grounds, including:

26    a.    Fraudulently inducing Plaintiffs to transfer Erica's inheritance to the LK&A

27          client trust account through several intentional misrepresentations;

28    b.    Making material misstatements and omissions in connection with offering

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    to sell and selling securities to Plaintiffs;

2    c.    Acting as a broker-dealer of securities in violation of Corporations Code

3    section 25210;

4    d.    Brokering life settlements and/or viatical settlements without a license in

5    violation of 10113.2(b)(1);

6    e.    Committing fraudulent life settlement acts under 10113.1(g) of the

7    Insurance Code by entering into stranger-originated life insurance and

8    transacting in the business of life settlements without a license therefor;

9    f.    Failing to make full and complete disclosures of pertinent information and

10    documents, including the fact that Klein represented the counterparty on all

11    the Vagos' insurance "investments";

12    g.    Placing his own interests over the interests of the Vagos, including by

13    advising the Vagos to transfer all of Erica's inheritance into the LK&A

14    client trust account and lending millions of dollars of the Vagos' money to

15    trusts for which he was trustee;

16    h.    Placing other clients' interests over the interests of the Vagos;

17    i.    Continuing to represent the Vagos despite having conflicts of interest;

18    j.    Refusing to return funds held by Klein in trust when the Vagos requested

19    them; and

20    k.    Failing to return documents held by Klein in trust when the Vagos

21    requested them;

22    l.    Violating the California Corporations Code, including Code section 25210,

23    by, inter alia, effecting securities transactions without a license;

24    m.    Violating the California Accountancy Act Rules of Professional Conduct,

25    including Rules 57, 58, and 68;

26    n.    Violating the AICPA's Code of Professional Conduct, including Rules

27    1.100.001, 1.110.010 and 1.130.010; and

28

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 Avenue of The Stars, Suite 1000  Los Angeles, California 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

1      o.      Violating the State Bar of California's Rules of Professional Conduct,

2              including Rules 1.4, 1.7, 1.8.1, and 1.15.

3      135.   Moreover, Klein and LK&A have a pattern and practice of preying on the elderly

4   and members of the Orthodox Jewish community in the same way they preyed on the Vagos.  This

5   practice includes using fraud and deceit to obtain control of their assets, which Klein then

6   misappropriates for his own purposes in violation of his legal and professional obligations.  When

7   his victims demand their money back or at least an accounting of their assets, Klein then lies,

8   obfuscates, and refuses to comply.

9      136.   In effecting his scheme, Klein also has a pattern and practice of transacting in life

10   insurance policies and securities without a proper license, in violation of California's Corporations

11   and Insurance Codes.

12      137.   As a direct and proximate result of Klein's unfair, unlawful, and fraudulent

13   business practices, Plaintiffs were harmed in an amount to be determined at trial, but in excess of

14   $11,000,000.  As a result of Defendants' actions, Plaintiffs have lost more than $11,000,000.

15   Plaintiffs are entitled to recover in restitution these funds.

### EIGHTH CAUSE OF ACTION

#### *Intentional Infliction of Emotional Distress*

#### (Against Klein)

19      138.   Plaintiff repeats and realleges each and every foregoing and subsequent allegation

20   contained in the Complaint, and further alleges as follows:

21      139.   Klein's conduct was extreme and outrageous.  Klein exploited his longstanding

22   relationship and shared faith with the Vagos at a time when they were grieving and extremely

23   vulnerable.

24      140.   The Vagos suffered severe emotional distress because of Klein's conduct.

25      141.   The Vagos have been damaged by Klein's conduct in an amount to be proven at

26   trial.

27      142.   Klein's conduct was malicious, oppressive, and fraudulent, justifying an award of

28   punitive damages.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## NINTH CAUSE OF ACTION

### *Financial Elder Abuse, California Welfare & Institutions Code § 15610.30*

### (**Against All Defendants**)

143.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

144.    Joseph Vago was born in 1951 and attained the age of 65 in 2016. Erica Vago was born in 1953 and attained the age of 65 in 2018.  Therefore, during Klein's fraud, Plaintiffs were "elders" as defined in section 15610.27 of the California Welfare and Institutions Code.

145.    Klein has taken, secreted, misappropriated, and retained for a wrongful use and with an intent to defraud, an amount exceeding $11 million from the Vagos.

146.    Klein's son Kenneth knowingly assisted in Klein's taking, secreting, appropriating, obtaining, and retaining for a wrongful use the Vagos' personal property.

147.    As a direct and proximate result of Klein's multiple breaches, and Kenneth's assistance thereof, Plaintiffs have suffered and will continue to suffer substantial damages in an amount to be determined at trial, but in excess of $11 million.

148.    As a result of Defendants' actions, Plaintiffs were forced to retain counsel to file this Complaint.  For the reasons alleged herein, Plaintiffs allege that Defendants' actions were committed fraudulently, willfully, and maliciously, and constitute financial elder abuse under Welfare and Institutions Code section 15610.30 and, therefore, that Plaintiffs are entitled to a mandatory award of attorneys' fees and costs incurred in this matter under Welfare and Institutions Code section 1567.5.

## TENTH CAUSE OF ACTION

### *Accounting*

### (**Against Klein and LK&A**)

149.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint, and further alleges as follows:

150.    As alleged herein, a fiduciary relationship existed between the Vagos and Klein. Klein violated his fiduciary duties to the Vagos in several ways, as described herein.  As a result

1   of these violations, the Vagos have been denied full and complete information regarding the status

2   of their funds that Klein obtained, as well as the investments Klein made on their behalf.

3        151.    A full and complete accounting is necessary to determine the amount of money and

4   assets that belong to the Vagos.  A determination of the full amount owed to the Vagos in

5   connection with Klein's misconduct cannot be ascertained in the absence of an accounting.

6   **ELEVENTH CAUSE OF ACTION**

7   ***Conspiracy to Commit Fraud***

8   **(Against Klein and Kenneth Klein)**

9        152.    Plaintiff repeats and realleges each and every foregoing and subsequent allegation

10   contained in the Complaint, and further alleges as follows:

11        153.    On information and belief, sometime prior to Kenneth Klein's 2014 meeting with

12   the Vagos, Leslie Klein and Kenneth Klein entered into a conspiracy to defraud the Vagos by

13   convincing them to entrust Erica's inheritance with Leslie Klein and to invest in various life

14   insurance policy trusts that he represented.  Leslie Klein and Kenneth Klein agreed and intended

15   that Leslie would make false representations to the Vagos to thereby obtain control of and

16   misappropriate Erica's inheritance.

17        154.    This fraudulent scheme has damaged Plaintiffs in a sum to be proven at trial, but in

18   excess of $11,000,000.

19        155.    In committing the acts alleged herein, Leslie Klein and Kenneth Klein are guilty of

20   oppression, fraud and/or malice within the meaning of California Civil Code section 3294,

21   entitling the Vagos to punitive or exemplary damages in an amount appropriate to punish them

22   and make an example of them to the community.

23   **PRAYER FOR RELIEF**

24       **WHEREFORE**, Plaintiffs pray for judgment against Defendants and for relief as follows:

25   (1)    For compensatory damages in a sum of no less than $11,000,000, according to

26       proof.

27   (2)    For restitution pursuant to Cal. Bus & Prof. Code § 17200 *et seq.*;

28   (3)    For punitive and exemplary damages in an amount sufficient to punish Defendants

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    and deter such conduct;

2    (4)    For attorneys' fees;

3    (5)    For costs;

4    (6)    For an accounting as set forth herein;

5    (7)    That the Court order that either a constructive trust be imposed upon those funds

6    which Klein and LK&A improperly obtained as described hereinabove, or in the

7    alternative, that a preliminary and permanent injunction issue enjoining Klein and

8    LK&A from transferring, hypothecating or spending any of the assets in their

9    possession, under their control, or in their names;

10    (8)    For pre-judgment and post-judgment interest; and

11    (9)    Such other and further relief as the court deems just or proper.

12

13    DATED:  April 8, 2021                    MILLER BARONDESS, LLP

14

15                                            By: _____

16                                            BRIAN A. PROCEL
                                              Attorneys for Plaintiffs
17                                            JOSEPH VAGO and ERICA VAGO

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1

## DEMAND FOR JURY TRIAL

2          Plaintiffs hereby demands a jury trial.

3

4    DATED:  April 8, 2021                    MILLER BARONDESS, LLP

5

6                                             By: _____
7                                                 BRIAN A. PROCEL
                                                  Attorneys for Plaintiffs
8                                                 JOSEPH VAGO and ERICA VAGO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1

## INDEX OF EXHIBITS

| Exhibit No. | Description | Pg. No. |
|---|---|---|
| A. | Memo from Leslie Klein to Erica Vago; Dated July 1, 2017; Re:  Lien on policies | 34 |
| B. | Memo from Leslie Klein to Erica Vago; Dated May 2, 2018; Re:  Lien on policies | 36 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# EXHIBIT A

LAW OFFICES OF

# LES KLEIN &
## ASSOCIATES, INC.

A LAW CORPORATION

——

14245 Ventura Boulevard

3rd Floor

Sherman Oaks, CA

91423-2740

Tel (818) 501-2663

Fax (818) 783-5987

——

*California Offices*

Inglewood

Los Angeles

San Fernando Valley

San Gabriel

Sherman Oaks

*National Offices*

Baltimore, Maryland

Washington D.C.



| | | |
|---|---|---|
| **To:** | **ERICA VAGO** | |
| | Estate of Robert L. Schweitzer | |
| **From:** | **LESLIE KLEIN** | |
| **Date:** | **July 1, 2017** | |
| **Subject:** | **LIEN ON POLICIES** | |

A.   ERNEST and HEDY WEINBERGER ................. $2,600,000

B.   IRVING and BELLA HEILBRUN ................... $2,600,000

C.   MORTON SILBERBERG ......................... $2,600,000

D.   ISABELLA GANDL ............................. $600,000

E.   ANN RADOW ............................... $1,000,000

Total   ...................... $9,400,000

## INTEREST

2012 ............................................ $85,000
2013 ............................................ $650,000
2014 ............................................ $720,000
2015 ............................................ $790,000
2016 ............................................ $640,000
2017 ............................................ $320,000

Total   ...................... $3,205,000

# EXHIBIT B



LAW OFFICES OF

# LES KLEIN & ASSOCIATES, INC.

A LAW CORPORATION

—

14245 Ventura Boulevard
3rd Floor
Sherman Oaks, CA
91423-2740

Tel (818) 501-2663
Fax (818) 783-5987

—

*California Offices*

Inglewood

Los Angeles

San Fernando Valley

San Gabriel

Sherman Oaks

*National Offices*

Baltimore, Maryland

Washington D.C.

**To:** **ERICA VAGO**
Estate of Robert L. Schweitzer
**From:** **LESLIE KLEIN**
**Date:** **May 2, 2018**
**Subject:** **LIEN ON POLICIES**

A.  **ERNEST and HEDY WEINBERGER** ................. $2,800,000

B.  **IRVING and BELLA HEILBRUN** .................... $2,800,000

C.  **MORTON SILBERBERG** .......................... $2,800,000

D.  **ISABELLA GANDL** ................................ $600,000

E.  **ANN RADOW** .................................. <u>$1,200,000</u>

Total    ......................... $10,200,000

## INTEREST

2012 ........................................ $85,000
2013 ....................................... $650,000
2014 ....................................... $720,000
2015 ....................................... $790,000
2016 ....................................... $640,000
2017 ....................................... $640,000
2018 (thru 3-31)............................ <u>$160,000</u>

Total    ................... $3,685,000

1

## **<u>PROOF OF SERVICE</u>**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1999 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067.

4

5

On April 8, 2021, I served true copies of the following document(s) described as:

6

**THIRD AMENDED COMPLAINT**

7

on the interested parties in this action as follows:

8

Michael L. Wachtell                                Attorney for Defendants
C. Dana Hobart

9

BUCHALTER, APC                            *LESLIE KLEIN & LES KLEIN & ASSOCIATES*
1000 Wilshire Boulevard, Suite 1500

10

Los Angeles, CA 90017-1730

11

Telephone: 213.891.0700
Fax: 213.896.0400

12

Email: mwachtell@buchalter.com
        dhobart@buchalter.com

13

14

Alan D. Weinfeld                                Attorneys for Defendants
PARKER, MILLIKEN, CLARK, O'HARA

15

AND SAMUELSEN                            *KENNETH KLEIN & LAW OFFICE OF*
555 South Flower Street                    *KENNETH KLEIN, P.C.*

16

30th Floor
Los Angeles, CA 90071-2440

17

18

Telephone:  213-683-6601
Fax:  213-683-6669

19

Email:  aweinfeld@pmcos.com

20

21

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the

22

document(s) to be sent from e-mail address clumia@millerbarondess.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the

23

transmission, any electronic message or other indication that the transmission was unsuccessful.

24

**BY ELECTRONIC SERVICE:**  I served the document(s) on the person listed in the

25

Service List by submitting an electronic version of the document(s) to One Legal, LLC, through the user interface at www.onelegal.com.

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1       I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

2

3       Executed on April 8, 2021, at Los Angeles, California.

4

5

6       Cindy B. Lumia

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# EXHIBIT C

## United States Bankruptcy Court
### Central District of California

In re   **Leslie Klein**
_____
                                    Debtor(s)

Case No.   **2:23-bk-10990-SK**
Chapter   **11**

### LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|

**-NONE-**

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, Leslie Klein, am the named debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date  ___3/8/2023___          Signature  _____
                                                          **Leslie Klein**

*Penalty for making a false statement of concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Sheet 1 of 1 in List of Equity Security Holders

<table>
<tr><td colspan="4">Fill in this information to identify your case:</td></tr>
</table>

| | | | |
|---|---|---|---|
| Debtor 1 | **Leslie** | **Klein** | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number (if known) | 2:23-bk-10990-SK | | |

☐ Check if this is an
amended filing

## Official Form 106Sum
### Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

**Part 1:    Summarize Your Assets**

|  |  | **Your assets** Value of what you own |
|---|---|---|
| 1. | **Schedule A/B: Property** (Official Form 106A/B)<br>1a. Copy line 55, Total real estate, from Schedule A/B............................................ | $    **12,250,000.00** |
|  | 1b. Copy line 62, Total personal property, from Schedule A/B................................. | $    **2,044,000.00** |
|  | 1c. Copy line 63, Total of all property on Schedule A/B....................................... | $    **14,294,000.00** |

**Part 2:    Summarize Your Liabilities**

|  |  | **Your liabilities** Amount you owe |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)<br>2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D...* | $    **31,564,856.56** |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)<br>3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*............................. | $    **0.00** |
|  | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*........................... | $    **97,928.00** |
|  | **Your total liabilities** | $    **31,662,784.56** |

**Part 3:    Summarize Your Income and Expenses**

|  |  |  |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I*............................ | $    **17,633.00** |
| 5. | *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J*................................ | $    **9,552.00** |

**Part 4:    Answer These Questions for Administrative and Statistical Records**

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ■ Yes

7. **What kind of debt do you have?**

   ☐ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ■ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum         **Summary of Your Assets and Liabilities and Certain Statistical Information**         page 1 of 2

Debtor 1    Leslie Klein                                                    Case number (if known)    2:23-bk-10990-SK

8.    From the *Statement of Your Current Monthly Income:* Copy your total current monthly income from Official Form
      122A-1 Line 11; **OR,** Form 122B Line 11; **OR,** Form 122C-1 Line 14.                                    $ _____

9.    Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F:*

| From Part 4 on *Schedule E/F,* copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ _____ |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ _____ |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ _____ |
| 9d. Student loans. (Copy line 6f.) | $ _____ |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ _____ |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ _____ |
| 9g. **Total.** Add lines 9a through 9f. | $ _____ |

Software Copyright (c) 1996-2023 Best Case, LLC - www.bestcase.com

EXHIBIT "C"                                    Page 3 of 57

| Fill in this information to identify your case and this filing: | | |
|---|---|---|
| **Debtor 1** | **Leslie Klein** | |
| | First Name    Middle Name    Last Name | |
| **Debtor 2** | | |
| (Spouse, if filing) | First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number | **2:23-bk-10990-SK** | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

| | | |
|---|---|---|
| **1.1** | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. |
| **322 N. June Street** | ■ Single-family home | |
| Street address, if available, or other description | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | |
| **Los Angeles    CA    90004-0000** | ☐ Land | **Current value of the entire property?**    **Current value of the portion you own?** |
| City    State    ZIP Code | ☐ Investment property | **$4,900,000.00**    **$2,450,000.00** |
| | ☐ Timeshare | |
| | ☐ Other | **Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| | **Who has an interest in the property?** Check one | **50% is held in by Debtor and 50% held by his Erika's irrevocable marital deduction trust** |
| **Los Angeles** | ☐ Debtor 1 only | |
| County | ☐ Debtor 2 only | |
| | ☐ Debtor 1 and Debtor 2 only | |
| | ■ At least one of the debtors and another | ☐ **Check if this is community property** (see instructions) |
| | **Other information you wish to add about this item, such as local property identification number:** | |
| | **Debtor's principal residence; paid in full. The property is held in the marital deduction trust. The Debtor's current spouse, Barbara Klein, has a life estate interest in the residence.** | |

EXHIBIT "C"                    Page 4 of 57

Debtor 1    Leslie Klein                                                    Case number (if known)    2:23-bk-10990-SK

If you own or have more than one, list here:

**1.2**

315 N. Martel Avenue
_____
Street address, if available, or other description

Los Angeles    CA    90036-0000
_____
City            State      ZIP Code


Los Angeles
_____
County

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local
property identification number:

**Single family residence; rental property.  Debtor collects $5,500/month.**

Do not deduct secured claims or exemptions. Put
the amount of any secured claims on *Schedule D:
Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,500,000.00** | **$2,500,000.00** |

Describe the nature of your ownership interest
(such as fee simple, tenancy by the entireties, or
a life estate), if known.
**100%**

☐ **Check if this is community property**
(see instructions)

---

If you own or have more than one, list here:

**1.3**

143 S. Highland Drive
_____
Street address, if available, or other description

Los Angeles    CA    90036-0000
_____
City            State      ZIP Code


Los Angeles
_____
County

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local
property identification number:

**Single family residence; rental property. Debtor collects $4,000 per month
in rental income.**

Do not deduct secured claims or exemptions. Put
the amount of any secured claims on *Schedule D:
Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,200,000.00** | **$2,200,000.00** |

Describe the nature of your ownership interest
(such as fee simple, tenancy by the entireties, or
a life estate), if known.
**100%**

☐ **Check if this is community property**
(see instructions)

---

Official Form 106A/B                    Schedule A/B: Property                              page 2

Debtor 1    Leslie Klein                                                    Case number (if known)    2:23-bk-10990-SK

**If you own or have more than one, list here:**

| | |
|---|---|
| 1.4 | |

**161 N. Poinsettia Place**
Street address, if available, or other description

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Los Angeles      CA      90036-0000**
City      State      ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,000,000.00** | **$2,000,000.00** |

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Los Angeles**
County

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**100%**

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property. Debtor collects $3,000 per month rental income.**

---

**If you own or have more than one, list here:**

| | |
|---|---|
| 1.5 | |

**2560-B Whitewater Club Drive**
Street address, if available, or other description

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
■ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Palm Springs      CA      92262-0000**
City      State      ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$350,000.00** | **$350,000.00** |

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Riverside**
County

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**100%**

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**A condo with 2 bedrooms and 2 bathrooms; vacation home.**

---

Official Form 106A/B                     Schedule A/B: Property                     page 3

Debtor 1    Leslie Klein                                                    Case number *(if known)*    2:23-bk-10990-SK

**If you own or have more than one, list here:**

1.6
**3752 Ocean Drive**

Street address, if available, or other description

| | |
|---|---|
| **What is the property?** Check all that apply | |
| ■ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| ☐ Duplex or multi-unit building | |
| ☐ Condominium or cooperative | |

**Oxnard**      **CA**      **93035-0000**

City          State      ZIP Code

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Current value of the entire property?**      **Current value of the portion you own?**
**$2,400,000.00**                            **$2,400,000.00**

**Who has an interest in the property?** Check one

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**100%**

**Ventura**

County

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Other information you wish to add about this item, such as local property identification number:

**Single family home; vacation home.**

---

1.7
**If you own or have more than one, list here:**

**Leonardo Plaza Hotel Jerusalem**

Street address, if available, or other description

| | |
|---|---|
| **What is the property?** Check all that apply | |
| ☐ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| ☐ Duplex or multi-unit building | |
| ☐ Condominium or cooperative | |

**Jerusalem**

City          State      ZIP Code

☐ Manufactured or mobile home
☐ Land
■ Investment property
☐ Timeshare
■ Other    **Unit in a hotel**

**Current value of the entire property?**      **Current value of the portion you own?**
**$500,000.00**                              **$250,000.00**

**Who has an interest in the property?** Check one

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**50% by Debtor and 50% by deceased wife's irrevocable trust**

**Israel**

County

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Other information you wish to add about this item, such as local property identification number:

**Debtor owns a unit in the Leanoardo Plaza Hotel. Vacation home.**

---

Official Form 106A/B                    Schedule A/B: Property                                    page 4

Debtor 1    Leslie Klein                                                    Case number *(if known)*    2:23-bk-10990-SK

**If you own or have more than one, list here:**

1.8

| | |
|---|---|
| **Dan Boutique Hotel Jerusalem** | |
| Street address, if available, or other description | |

**What is the property?** Check all that apply

☐ Single-family home

☐ Duplex or multi-unit building

☐ Condominium or cooperative

☐ Manufactured or mobile home

☐ Land

☐ Investment property

☐ Timeshare

■ Other    **Unit in a hotel**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Jerusalem**

City                State            ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$200,000.00** | **$100,000.00** |

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**50% by Debtor and 50% by deceased spouse's irrevocable trust**

**Israel**

County

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Debtor owns a unit in the Leanoardo Plaza Hotel. Vacation home.**

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................=>    **$12,250,000.00**

<div style="background:black;color:white">Part 2:</div> Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

3.1    Make:    **Lexus**
Model:    **LS500**
Year:    **2021**
Approximate mileage:    **n/a**
Other information:

**Leased vehicle. Monthly payment is $1,319.00.**

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$0.00** | **$0.00** |

3.2    Make:    **Lexus**
Model:    **LS**
Year:    **2021**
Approximate mileage:    **n/a**
Other information:

**Leased vehicle. Debtor's spouses drives this vehicle. Monthly payment is $500.**

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$0.00** | **$0.00** |

| Debtor 1 | **Leslie Klein** | Case number *(if known)* | **2:23-bk-10990-SK** |
| --- | --- | --- | --- |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

   ■ No
   ☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for
   pages you have attached for Part 2. Write that number here...........................................................=>

   | $0.00 |
   | --- |

**Part 3:** **Describe Your Personal and Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
| --- | --- |

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

| Debtor's residence: Debtor's residence: Couches, coffee tables, dining room table with chairs, mattresses with bedframes, wall mirrors, desk with chairs, lamps, rugs, dressers, kitchen table, patio furniture,  cabinets, refrigerators, and other household goods and furnishings | $8,000.00 |
| --- | --- |
| 2560-B Whitewater Club Drive, Palm Spring vacation home: living room sofa, table, chairs, dining room table and chairs, TV, phone, kitchen appliances, china, beds and side tables, mirrors, paintings, and miscellaneous household goods and furnishings. | $5,000.00 |
| 3752 Ocean Drive, Oxnard CA vacation home: living room sofa, table, chairs, dining room table and chairs, TV, phone, kitchen appliances, china, beds and side tables, mirrors, paintings, and miscellaneous household goods and furnishings. | $5,000.00 |

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe.....

| TVs, phones, computers | $3,000.00 |
| --- | --- |

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☐ No
   ■ Yes. Describe.....

| Books and art objects | $4,000.00 |
| --- | --- |

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☐ No
   ■ Yes. Describe.....

Debtor 1    **Leslie Klein**                                    Case number (if known)    **2:23-bk-10990-SK**

| | |
|---|---:|
| Sports and Hobyy equipment | $2,000.00 |

**10. Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No
☐ Yes. Describe.....

**11. Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes. Describe.....

| | |
|---|---:|
| Debtor's residence: Clothes and shoes | $2,000.00 |

**12. Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☐ No
■ Yes. Describe.....

| | |
|---|---:|
| Debtor's residence: Furs, diamond ring, gold necklace, diamond earrings,  gold rings and costume jewelry | $20,000.00 |

**13. Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
■ No
☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...................................................................................

| |
|---:|
| $49,000.00 |

**Part 4:    Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?    **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**16. Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
■ No
☐ Yes..............................................................................................

**17. Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes........................    Institution name:

| | | |
|---|---|---:|
| 17.1. | **Checking account ending in 9401**      **Bank of America** | $4,000.00 |

---

| Debtor 1 | Leslie Klein | | Case number *(if known)* | 2:23-bk-10990-SK |
|---|---|---|---|---|

18. **Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ■ No
   ☐ Yes.................    Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
   ☐ No
   ■ Yes.  Give specific information about them...................

| Name of entity: | % of ownership: | | |
|---|---|---|---|
| Debtor has a 100% ownership interest in Bay Area Development, Co.  Bay Area Development, Co. filed a chapter 11 bankruptcy petition on 9/12/2022, Case No.: 2:22-bk-15031-SK.  On December 6, 2022, Bay Area entered into a stipulation with its secured creditor Scott Capital Management Fund 1, LLC and OUST to dismiss the case.  The order dismissing the case with a 180 day bar (due to pending RFS motion) was enterd on 12/6/2022.  The real property owned by Bay Area Development, Co. went into foreclosure.  The company currently does not own any assets. | 100% | % | $0.00 |
| Debtor has a membership interest in Life Capital Group, LLC, which is an investment company. The LLC buys insurance policies on other people's lives and upon passing, the LLC collects the funds and makes a distribution to its members. | 5% membershi p interest | % | Unknown |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
   ■ No
   ☐ Yes. Give specific information about them
        Issuer name:

21. **Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
   ■ No
   ☐ Yes. List each account separately.
        Type of account:        Institution name:

22. **Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ■ No
   ☐ Yes. .....................    Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
   ■ No
   ☐ Yes.............    Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
   ■ No
   ☐ Yes.............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
   ☐ No

Official Form 106A/B                Schedule A/B: Property                page 8

■ Yes.  Give specific information about them...

| | |
|---|---|
| **Klein Living Trust dated April 8, 1990. The Settlors of the Trust are Leslie Klein and Erika Noemi Klein, husband and wife. Erika Klein passed away several years ago, and pursuant to the trust provision,Erika Klein's interest in the assets is now in an irrevocable trust ("Marital Deduction Trust").  The assets of the trust are listed on Schedule A/B, item #1 for each property that is part of the Trust.** | $0.00 |

**26.  Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
   ■ No
   ☐ Yes.  Give specific information about them...

**27.  Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
   ■ No
   ☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28.  Tax refunds owed to you**
   ■ No
   ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29.  Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
   ■ No
   ☐ Yes. Give specific information......

**30.  Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
        benefits; unpaid loans you made to someone else
   ☐ No
   ■ Yes.  Give specific information..

| | |
|---|---|
| **Isaac Kirzner. Debtor entered into an agreement with Isaac Kirzner whereby he paid the insurance premiums for Mr. Kirzner, and upon Mr. Kirzner's passing, the Debtor would receive $1 Million.** | $1,000,000.00 |

| | |
|---|---|
| **Judith Bittman.  Debtor entered into an agreement with Judith Bittman whereby he paid the insurance premiums for Ms. Bittmanm  and upon Ms. Bittman's passing, the Debtor would receive $1 Million.** | $1,000,000.00 |

**31.  Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
   ■ No
   ☐ Yes. Name the insurance company of each policy and list its value.
        Company name:                              Beneficiary:                    Surrender or refund
                                                                                   value:

Debtor 1    **Leslie Klein**                                                      Case number *(if known)*    **2:23-bk-10990-SK**

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
    ■ No
    ☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes.  Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**................................................................................................

| | $2,004,000.00 |
|---|---|

**Part 5:**    Describe Any Business-Related Property You Own or Have an Interest in. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
    ■ No. Go to Part 6.
    ☐ Yes.  Go to line 38.

**Part 6:**    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest in.
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    ■ No. Go to Part 7.
    ☐ Yes.  Go to line 47.

**Part 7:**    Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership
    ■ No
    ☐ Yes.  Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ....................................

| | $0.00 |
|---|---|

Official Form 106A/B                     Schedule A/B: Property                                page 10

Debtor 1    **Leslie Klein**                                    Case number *(if known)*    **2:23-bk-10990-SK**

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

| | | | |
|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** .................................................................................................... | | **$12,250,000.00** |
| 56. | **Part 2: Total vehicles, line 5** | $0.00 | |
| 57. | **Part 3: Total personal and household items, line 15** | $49,000.00 | |
| 58. | **Part 4: Total financial assets, line 36** | $2,004,000.00 | |
| 59. | **Part 5: Total business-related property, line 45** | $0.00 | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61. | **Part 7: Total other property not listed, line 54** + | $0.00 | |
| 62. | **Total personal property. Add lines 56 through 61...** | $2,053,000.00 | Copy personal property total ▶ **$2,053,000.00** |
| 63. | **Total of all property on Schedule A/B. Add line 55 + line 62** | | **$14,303,000.00** |

Official Form 106A/B                    Schedule A/B: Property                    page 11

EXHIBIT "C"                    Page 14 of 57

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | **Leslie Klein** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | **2:23-bk-10990-SK** | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106C
# Schedule C: The Property You Claim as Exempt
<div align="right">4/22</div>

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | | Specific laws that allow exemption |
|---|---|---|---|---|
| **322 N. June Street Los Angeles, CA 90004  Los Angeles County Debtor's principal residence; paid in full. The property is held in the marital deduction trust. The Debtor's current spouse, Barbara Klein, has a life estate interest in the residence.** Line from *Schedule A/B*: 1.1 | $2,450,000.00 | ■ | $678,391.00 | C.C.P. § 704.730 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Debtor's residence: Debtor's residence: Couches, coffee tables, dining room table with chairs, mattresses with bedframes, wall mirrors, desk with chairs, lamps, rugs, dressers, kitchen table, patio furniture,  cabinets, refrigerators, and other household g** Line from *Schedule A/B*: 6.1 | $8,000.00 | ■ | $8,000.00 | C.C.P. § 704.020 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **TVs, phones, computers** Line from *Schedule A/B*: 7.1 | $3,000.00 | ■ | $3,000.00 | C.C.P. § 704.020 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |

EXHIBIT "C"    Page 15 of 57

| Debtor 1 | **Leslie Klein** | | | | Case number (if known) | **2:23-bk-10990-SK** |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Books and art objects**<br>Line from *Schedule A/B*: **8.1** | $4,000.00 | ■ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.040** |
| **Sports and Hobyy equipment**<br>Line from *Schedule A/B*: **9.1** | $2,000.00 | ■ $2,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Debtor's residence: Clothes and shoes**<br>Line from *Schedule A/B*: **11.1** | $2,000.00 | ■ $2,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Debtor's residence: Furs, diamond ring, gold necklace, diamond earrings, gold rings and costume jewelry**<br>Line from *Schedule A/B*: **12.1** | $20,000.00 | ■ $9,525.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.040** |

3. **Are you claiming a homestead exemption of more than $189,050?**
   (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐ No

   ■ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ■ No

       ☐ Yes

---

EXHIBIT "C"          Page 16 of 57

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Leslie Klein** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **2:23-bk-10990-SK** |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | | Amount of claim Do not deduct the value of collateral. | Value of collateral that supports this claim | Unsecured portion If any |

| 2.1 | CCO Mortgage Corp. | | $19,372.00 | $2,400,000.00 | $0.00 |
|---|---|---|---|---|---|
| | Creditor's Name | | | | |

| | Describe the property that secures the claim: |
|---|---|
| **Attn: Bankruptcy** **10561 Telegraph Rd** **Glen Allen, VA 23059** | **3752 Ocean Drive Oxnard, CA 93035 Ventura County** **Single family home; vacation home.** |
| Number, Street, City, State & Zip Code | As of the date you file, the claim is: Check all that apply. |
| | ☐ Contingent |
| | ☐ Unliquidated |
| | ☐ Disputed |

**Who owes the debt?** Check one.

**Nature of lien.** Check all that apply.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Secured Line of Credit**

| Date debt was incurred | **Opened 05/05  Last Active 1/09/23** | Last 4 digits of account number | **1428** |
|---|---|---|---|

Debtor 1  **Leslie Klein**

First Name    Middle Name    Last Name

Case number (if known)  **2:23-bk-10990-SK**

| 2.2 | **Chase Mortgage** | Describe the property that secures the claim: | $138,719.00 | $350,000.00 | $0.00 |

Creditor's Name

**2560-B Whitewater Club Drive Palm Springs, CA 92262  Riverside County**
**A condo with 2 bedrooms and 2 bathrooms; vacation home.**

**BK Department**
**Mail Code LA4 5555  700 Kansas Ln**
**Monroe, LA 71203**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)  **Deed of Trust**

Date debt was incurred  **Opened 07/05  Last Active 8/23/22**

Last 4 digits of account number  **2700**

| 2.3 | **Ericka and Joseph Vago** | Describe the property that secures the claim: | $24,334,038.99 | $0.00 | $24,334,038.99 |

Creditor's Name

**c/o Brian Procel**
**Procel Law**
**401 Wilshire Blvd., 12th Floor**
**Santa Monica, CA 90401**

Number, Street, City, State & Zip Code

**Assets of the Debtor**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)  **Notice of Judgment Lien**

Date debt was incurred  **July 2020**

Last 4 digits of account number  **5050**

Official Form 106D  Additional Page of Schedule D: Creditors Who Have Claims Secured by Property  page 2 of 8

Debtor 1   **Leslie Klein**
_____
First Name         Middle Name         Last Name

Case number (if known)   **2:23-bk-10990-SK**

| **2.4** | **Fay Servicing LLC** | Describe the property that secures the claim: | $712,265.00 | $2,400,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**3752 Ocean Drive Oxnard, CA 93035
Ventura County
Single family home; vacation home.**

**Attn: Bankruptcy Dept
Po Box 809441
Chicago, IL 60680**
_____
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
   community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
   car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **1st Deed of Trust**

**Opened
10/13/04
Last Active**
Date debt was incurred   **08/20**

Last 4 digits of account number   **9505**

| **2.5** | **Fay Servicing LLC** | Describe the property that secures the claim: | $327,886.00 | $2,400,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**3752 Ocean Drive Oxnard, CA 93035
Ventura County
Single family home; vacation home.**

**Attn: Bankruptcy Dept
Po Box 809441
Chicago, IL 60680**
_____
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
   community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
   car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **2nd Deed of Trust**

**Opened
11/04  Last
Active**
Date debt was incurred   **8/09/22**

Last 4 digits of account number   **9492**

Official Form 106D          **Additional Page of Schedule D: Creditors Who Have Claims Secured by Property**          page 3 of 8

Debtor 1   **Leslie Klein**

First Name          Middle Name          Last Name

Case number *(if known)*   **2:23-bk-10990-SK**

| 2.6 | **Fiore Racobs & Powers** | | $49,436.57 | $350,000.00 | $0.00 |

Creditor's Name

**c/o Palm Springs Country Club HOA**
**6820 Indiana Ave., Ste 140**
**6820 Indiana Ave., Ste 140**
**Riverside, CA 92506**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred   2020 - 2023

Describe the property that secures the claim:

**2560-B Whitewater Club Drive Palm Springs, CA 92262  Riverside County**
**A condo with 2 bedrooms and 2 bathrooms; vacation home.**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **HOA Assessments**

Last 4 digits of account number   4460

| 2.7 | **Gestetner Charitable Remainder Trus** | | $2,000,000.00 | Unknown | Unknown |

Creditor's Name

**c/o Andor Gestetner**
**1425 55th Street**
**Brooklyn, NY 11219**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred   5/14/2021

Describe the property that secures the claim:

**Debtor has a membership interest in Life Capital Group, LLC, which is an investment company. The LLC buys insurance policies on other people's lives and upon passing, the LLC collects the funds and makes a distribution to its members.**
**5% m**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **UCC Financing**

Last 4 digits of account number   3629

Debtor 1   **Leslie Klein**
　　　　First Name　　Middle Name　　Last Name

Case number (if known)   **2:23-bk-10990-SK**

---

| 2.8 | **Los Angeles County Tax Collector** | | $15,000.00 | $4,900,000.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

**322 N. June Street Los Angeles, CA 90004  Los Angeles County Debtor's principal residence; paid in full. The property is held in the marital deduction trust. The Debtor's current spouse, Barbara Klein, has a life estate interest in the res**

Bankruptcy Unit
PO Box 54110
Los Angeles, CA
90054-0027

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Property Taxes**

Date debt was incurred   **2022 - 2023**

Last 4 digits of account number   **3008**

---

| 2.9 | **Mrc/united Wholesale M** | | $954,432.00 | $2,000,000.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

**161 N. Poinsettia Place Los Angeles, CA 90036  Los Angeles County Single family residence; rental property. Debtor collects $3,000 per month rental income.**

Attn: Bankruptcy
P. O. Box 619098
Dallas, TX 75261

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Deed of Trust**

**Opened 05/05  Last Active**

Date debt was incurred   **11/17/22**

Last 4 digits of account number   **2120**

---

Debtor 1    **Leslie Klein**
　　　　　　First Name　　　　Middle Name　　　　Last Name

Case number (if known)    **2:23-bk-10990-SK**

| 2.1 0 | **Selene Finance** | Describe the property that secures the claim: | $1,755,385.00 | $2,500,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**315 N. Martel Avenue Los Angeles, CA 90036  Los Angeles County Single family residence; rental property.  Debtor collects $5,500/month.**

**Attn: Bankruptcy
Po Box 8619
Philadelphia, PA 19101**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
　community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured
　car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)　**Deed of Trust**

**Opened
08/18 Last
Active**
Date debt was incurred  **6/22/21**

Last 4 digits of account number  **8372**

| 2.1 1 | **Shellpoint Mortgage Servicing** | Describe the property that secures the claim: | $1,213,516.00 | $2,200,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**143 S. Highland Drive Los Angeles, CA 90036  Los Angeles County Single family residence; rental property. Debtor collects $4,000 per month in rental income.**

**Attn: Bankruptcy
Po Box 10826
Greenville, SC 29603**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
　community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured
　car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)　**Deed of Trust**

**Opened
04/19  Last
Active**
Date debt was incurred  **12/27/22**

Last 4 digits of account number  **4516**

EXHIBIT "C"    Page 22 of 57

Debtor 1   **Leslie Klein**
    First Name        Middle Name        Last Name        Case number (if known)   **2:23-bk-10990-SK**

| | | |
|---|---|---|

**2.12** | **Toyota Financial Services**
Creditor's Name | Describe the property that secures the claim: | $34,318.00 | $0.00 | $34,318.00

**2021 Lexus LS500 n/a miles Leased vehicle. Monthly payment is $1,319.00.**

Attn: Bankruptcy
Po Box 259001
Plano, TX 75025
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Auto Lease**

Opened 05/21 Last Active 3/18/22
Date debt was incurred   Last 4 digits of account number   **X788**

---

**2.13** | **Toyota Financial Services**
Creditor's Name | Describe the property that secures the claim: | $10,488.00 | $0.00 | $10,488.00

**2021 Lexus LS n/a miles Leased vehicle. Debtor's spouses drives this vehicle. Monthly payment is $500.**

Attn: Bankruptcy
Po Box 259001
Plano, TX 75025
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Auto Lease**

Opened 06/21 Last Active 6/01/22
Date debt was incurred   Last 4 digits of account number   **Y582**

---

Add the dollar value of your entries in Column A on this page. Write that number here:   **$31,564,856.56**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:   **$31,564,856.56**

**Part 2:**   **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Official Form 106D   Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**   page 7 of 8

| Debtor 1 | **Leslie Klein** | | | Case number (if known) | **2:23-bk-10990-SK** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

[ ]  Name, Number, Street, City, State & Zip Code
**Andor Gestetner**
**c/o Law Offices of Jacob Unger**
**5404 Whitsett Ave Ste. 182**
**Valley Village, CA 91607**

On which line in Part 1 did you enter the creditor?  **2.7**

Last 4 digits of account number ___

---

[ ]  Name, Number, Street, City, State & Zip Code
**Ericka and Joseph Vago**
**124 N. Highland Ave**
**Sherman Oaks, CA 91423**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

---

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Leslie Klein** |
| | First Name  Middle Name  Last Name |
| Debtor 2 (Spouse if, filing) | First Name  Middle Name  Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **2:23-bk-10990-SK** |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:    List All of Your PRIORITY Unsecured Claims

1.  Do any creditors have priority unsecured claims against you?

☑ No. Go to Part 2.

☐ Yes.

### Part 2:    List All of Your NONPRIORITY Unsecured Claims

3.  Do any creditors have nonpriority unsecured claims against you?

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

☑ Yes.

4.  List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim. If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  | | Total claim |
|---|---|---|
| **4.1** | **Bank of America** | $7,450.00 |

Last 4 digits of account number    8296

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**4909 Savarese Circle**
**Tampa, FL 33634**
Number Street City State Zip Code

When was the debt incurred?    **Opened 09/16  Last Active 02/23**

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

☑ Debtor 1 only                    ☐ Contingent

☐ Debtor 2 only                    ☐ Unliquidated

☐ Debtor 1 and Debtor 2 only       ☐ Disputed

☐ At least one of the debtors and another       Type of NONPRIORITY unsecured claim:

☐ Check if this claim is for a community debt       ☐ Student loans

**Is the claim subject to offset?**       ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☑ No                    ☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes                   ☑ Other. Specify  **Credit Card**

Debtor 1    **Leslie Klein**                                              Case number (if known)    **2:23-bk-10990-SK**

| 4.2 | **Bank of America** | Last 4 digits of account number    6416 | $1,566.00 |

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**4909 Savarese Circle**
**Tampa, FL 33634**

When was the debt incurred?    **Opened 04/89  Last Active 02/23**

Number Street City State Zip Code

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a  community debt

Is the claim subject to offset?

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    **Credit Card**

| 4.3 | **Barclays Bank Delaware** | Last 4 digits of account number    0647 | $8,896.00 |

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**Po Box 8801**
**Wilmington, DE 19899**

When was the debt incurred?    **Opened 05/09  Last Active 1/11/23**

Number Street City State Zip Code

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a  community debt

Is the claim subject to offset?

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    **Credit Card**

| 4.4 | **California Bank & Trust** | Last 4 digits of account number    9505 | $1,695.00 |

Nonpriority Creditor's Name

**Po Box 711510**
**Santee, CA 92072**

When was the debt incurred?    **Opened 02/83  Last Active 02/23**

Number Street City State Zip Code

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a  community debt

Is the claim subject to offset?

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    **Credit Card**

Debtor 1    **Leslie Klein**                                                      Case number (if known)    **2:23-bk-10990-SK**

---

| 4.5 | **Chase Card Services** | Last 4 digits of account number    5280 | $22,278.00 |

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**P.O. 15298**
**Wilmington, DE 19850**
Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

■ No
☐ Yes

**When was the debt incurred?**    **Opened 06/18  Last Active 5/07/21**

**As of the date you file, the claim is: Check all that apply**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

| 4.6 | **Chase Card Services** | Last 4 digits of account number    1527 | $22,095.00 |

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**P.O. 15298**
**Wilmington, DE 19850**
Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

■ No
☐ Yes

**When was the debt incurred?**    **Opened 08/18  Last Active 03/21**

**As of the date you file, the claim is: Check all that apply**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

| 4.7 | **Chase Card Services** | Last 4 digits of account number    9155 | $17,555.00 |

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**Po Box 15298**
**Wilmington, DE 19850**
Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

■ No
☐ Yes

**When was the debt incurred?**    **Opened 09/02  Last Active 02/23**

**As of the date you file, the claim is: Check all that apply**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

Official Form 106 E/F    Schedule E/F: Creditors Who Have Unsecured Claims    Page 3 of 5

Debtor 1    Leslie Klein                                                                 Case number (if known)    2:23-bk-10990-SK

| 4.8 | **Chase Card Services** | Last 4 digits of account number | 2050 | $15,112.00 |

**Chase Card Services**
Nonpriority Creditor's Name
Attn: Bankruptcy
P.O. 15298
Wilmington, DE 19850
Number Street City State Zip Code

Last 4 digits of account number    2050

Opened 01/89  Last Active
**When was the debt incurred?**    1/22/23

$15,112.00

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt
Is the claim subject to offset?
■ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

| 4.9 | **Citibank** | Last 4 digits of account number | 3837 | $1,281.00 |

**Citibank**
Nonpriority Creditor's Name
Attn: Bankruptcy
P.O. Box 790034
St Louis, MO 63179
Number Street City State Zip Code

Last 4 digits of account number    3837

Opened 11/90  Last Active
**When was the debt incurred?**    8/12/22

$1,281.00

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt
Is the claim subject to offset?
■ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

| 4.10 | **Franklin H. Menlo Irrevocable Trust** | Last 4 digits of account number | 6769 | Unknown |

**Franklin H. Menlo Irrevocable Trust**
Nonpriority Creditor's Name
c/o Willkie Farr & Gallagher LLP
Attn: Alex M. Weingarten, Esq.
2029 Century Park East, Suite 3400
Los Angeles, CA 90067
Number Street City State Zip Code

Last 4 digits of account number    6769

**When was the debt incurred?**    2012

Unknown

Who incurred the debt? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim is for a community debt
Is the claim subject to offset?
■ No
☐ Yes

As of the date you file, the claim is: Check all that apply

■ Contingent
■ Unliquidated
■ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **pending litigation (consolidated and related to 24 other cases)**

---

Official Form 106 E/F                Schedule E/F: Creditors Who Have Unsecured Claims                Page 4 of 5

Debtor 1    **Leslie Klein**                                                Case number (if known)    **2:23-bk-10990-SK**

| 4.1 | | |
|---|---|---|

**Jeffrey Siegel, Successor Trustee**        Last 4 digits of account number    **2432**                    **Unknown**
Nonpriority Creditor's Name
**of the Hubert Scott Trust**              When was the debt incurred?    **2017**
**c/o Oldman, Cooley, Sallus**
**16133 Ventura Blvd., Penthouse**
**Suit**
**Encino, CA 91436-2408**
Number Street City State Zip Code              As of the date you file, the claim is: Check all that apply
Who incurred the debt? Check one.
■ Debtor 1 only                                ■ Contingent
☐ Debtor 2 only                                ■ Unliquidated
☐ Debtor 1 and Debtor 2 only                   ■ Disputed
☐ At least one of the debtors and another       Type of NONPRIORITY unsecured claim:
☐ **Check if this claim is for a  community**   ☐ Student loans
**debt**                                        ☐ Obligations arising out of a separation agreement or divorce that you did not
Is the claim subject to offset?                    report as priority claims
■ No                                            ☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Yes                                           ■ Other. Specify  **pending litigation**

---

**Part 3:    List Others to Be Notified About a Debt That You Already Listed**

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency
is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you
have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be
notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address                    On which entry in Part 1 or Part 2 did you list the original creditor?
**Oldman, Cooley, and Sallus**       Line **4.10** of (Check one):          ☐ Part 1: Creditors with Priority Unsecured Claims
**16133 Ventura Blvd., Penthouse Suit**                                    ■ Part 2: Creditors with Nonpriority Unsecured Claims
**Encino, CA 91436-2408**
                                    Last 4 digits of account number

---

**Part 4:    Add the Amounts for Each Type of Unsecured Claim**

6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each
type of unsecured claim.

|  |  |  | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | Domestic support obligations | 6a. | $ 0.00 |
| | 6b. | Taxes and certain other debts you owe the government | 6b. | $ 0.00 |
| | 6c. | Claims for death or personal injury while you were intoxicated | 6c. | $ 0.00 |
| | 6d. | Other. Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ 0.00 |
| | | | | Total Claim |
| | 6f. | Student loans | 6f. | $ 0.00 |
| **Total claims from Part 2** | 6g. | Obligations arising out of a separation agreement or divorce that you did not report as priority claims | 6g. | $ 0.00 |
| | 6h. | Debts to pension or profit-sharing plans, and other similar debts | 6h. | $ 0.00 |
| | 6i. | Other. Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 97,928.00 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ 97,928.00 |

Official Form 106 E/F              Schedule E/F: Creditors Who Have Unsecured Claims              Page 5 of 5

| Fill in this information to identify your case: |
|---|

| Debtor 1 | **Leslie Klein** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 2:23-bk-10990-SK | | |
| (if known) | | | |

☐ Check if this is an
amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| | Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|---|
| 2.1 | **Chase Doe**<br>**143 S. Highland Drive**<br>**Los Angeles, CA 90036** | **Month to month residential lease agreement wtih the Debtor for 143 S. Highland Drive, Los Angeles rental property. Debtor collects $4,000 rental income per month.** |
| 2.2 | **Jacob Rummitz**<br>**315 N. Martel Avenue**<br>**Los Angeles, CA 90036** | **Month to month residential lease agreement wtih the Debtor for 315 N. Martel Avenue, Los Angeles rental property. Debtor collects $5,500 rental income per month.** |
| 2.3 | **Sandra Layton**<br>**161 N. Poinsettia Place**<br>**Los Angeles, CA 90036** | **Month to month residential lease agreement wtih the Debtor for 161 N. Poinsettia Place rental property. Debtor collects $3,000  rental income per month.** |

| Fill in this information to identify your case: |
|---|

| Debtor 1 | **Leslie Klein** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number   **2:23-bk-10990-SK**
(if known)

☐ Check if this is an
   amended filing

## Official Form 106H
## Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

☐ No
■ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☐ No. Go to line 3.
■ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

   ☐ No
   ■ Yes.

   In which community state or territory did you live?   __-NONE-__   . Fill in the name and current address of that person.

   _____
   Name of your spouse, former spouse, or legal equivalent
   Number, Street, City, State & Zip Code

**3. In Column 1, list all of your codebtors.** Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.

| Column 1: Your codebtor | Column 2: The creditor to whom you owe the debt |
|---|---|
| Name, Number, Street, City, State and ZIP Code | Check all schedules that apply: |

3.1   **Leslie Klein & Associates, Inc.**
      **c/o Parker Milliken**
      **555 Flower Street**
      **Los Angeles, CA 90071**

☐ Schedule D, line _____
■ Schedule E/F, line   **4.10**
☐ Schedule G _____
**Franklin H. Menlo Irrevocable Trust**

---

EXHIBIT "C"

Fill in this information to identify your case:

Debtor 1     **Leslie Klein**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number     **2:23-bk-10990-SK**
(If known)

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter
13 income as of the following date:

MM / DD/ YYYY

## Official Form 106I

# Schedule I: Your Income                                                12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Employment

1.  Fill in your employment information.

    If you have more than one job, attach a separate page with information about additional employers.

    Include part-time, seasonal, or self-employed work.

    Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ■ Employed | ☐ Employed |
| | | ☐ Not employed | ■ Not employed |
| Occupation | | **Attorney** | |
| Employer's name | | **Leslie Klein & Associates, Inc.** | |
| Employer's address | | **14245 Ventura Blvd., #301**<br>**Sherman Oaks, CA 91423** | |
| How long employed there? | | **50 years** | |

### Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $          0.00 | $          0.00 |
| 3. | Estimate and list monthly overtime pay. | 3. | +$          0.00 | +$          0.00 |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $          0.00 | $          0.00 |

EXHIBIT C

Debtor 1    **Leslie Klein**    Case number *(if known)*    **2:23-bk-10990-SK**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| | Copy line 4 here | 4. $ 0.00 | $ 0.00 |

5. List all payroll deductions:

| | | | For Debtor 1 | | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | | $ 0.00 |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | | $ 0.00 |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | | $ 0.00 |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | | $ 0.00 |
| 5e. | Insurance | 5e. | $ 0.00 | | $ 0.00 |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | | $ 0.00 |
| 5g. | Union dues | 5g. | $ 0.00 | | $ 0.00 |
| 5h. | Other deductions. Specify: | 5h.+ | $ 0.00 | + | $ 0.00 |

6. Add the payroll deductions. Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.    $ 0.00    $ 0.00

7. Calculate total monthly take-home pay. Subtract line 6 from line 4.    7.    $ 0.00    $ 0.00

8. List all other income regularly received:

| | | | For Debtor 1 | | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| 8a. | Net income from rental property and from operating a business, profession, or farm<br>Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 1,800.00 | | $ 0.00 |
| 8b. | Interest and dividends | 8b. | $ 0.00 | | $ 0.00 |
| 8c. | Family support payments that you, a non-filing spouse, or a dependent regularly receive<br>Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | | $ 0.00 |
| 8d. | Unemployment compensation | 8d. | $ 0.00 | | $ 0.00 |
| 8e. | Social Security | 8e. | $ 3,333.00 | | $ 0.00 |
| 8f. | Other government assistance that you regularly receive<br>Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.<br>Specify: | 8f. | $ 0.00 | | $ 0.00 |
| 8g. | Pension or retirement income | 8g. | $ 0.00 | | $ 0.00 |
| 8h. | Other monthly income. Specify: **Rental Income from Martel Property** | 8h.+ | $ 5,500.00 | + | $ 0.00 |
| | **Rental Income from Highland Property** | | $ 4,000.00 | | $ 0.00 |
| | **Rental Income from Poinsettia Property** | | $ 3,000.00 | | $ 0.00 |

9. Add all other income. Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.    $ 17,633.00    $ 0.00

10. Calculate monthly income. Add line 7 + line 9.    10.    $ 17,633.00  +  $ 0.00  =  $ 17,633.00
    Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. State all other regular contributions to the expenses that you list in *Schedule J.*
    Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
    Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
    Specify:    11.  +$ 0.00

12. Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.
    Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies    12.    $ 17,633.00

    **Combined monthly income**

13. Do you expect an increase or decrease within the year after you file this form?
    ☐  No.
    ■  Yes. Explain:    Debtor intends to sell one or more of his assets to be able to make the payments to his creditors and to successfully reorganize.

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Leslie Klein** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | **CENTRAL DISTRICT OF CALIFORNIA** |
| Case number (if known) | **2:23-bk-10990-SK** |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Your Household

1.  **Is this a joint case?**

    ■ No. Go to line 2.
    ☐ Yes. Does Debtor 2 live in a separate household?

        ☐ No
        ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.  **Do you have dependents?**    ■ No

| Do not list Debtor 1 and Debtor 2. | ☐ Yes. | Fill out this information for each dependent........... | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|---|---|
| Do not state the dependents names. | | | _____ | _____ | ☐ No  ☐ Yes |
| | | | _____ | _____ | ☐ No  ☐ Yes |
| | | | _____ | _____ | ☐ No  ☐ Yes |
| | | | _____ | _____ | ☐ No  ☐ Yes |
| | | | _____ | _____ | ☐ No  ☐ Yes |

3.  **Do your expenses include expenses of people other than yourself and your dependents?**    ■ No    ☐ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|

| | | | |
|---|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ | 0.00 |
| | If not included in line 4: | | |
| 4a. | Real estate taxes | 4a. $ | 1,250.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ | 333.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ | 350.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ | 0.00 |
| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. $ | 0.00 |

| Debtor 1 | **Leslie Klein** | Case number (if known) | **2:23-bk-10990-SK** |

**6. Utilities:**

| | | | |
|---|---|---|---|
| 6a. | Electricity, heat, natural gas | 6a. $ | 1,800.00 |
| 6b. | Water, sewer, garbage collection | 6b. $ | 0.00 |
| 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 200.00 |
| 6d. | Other. Specify: | 6d. $ | 0.00 |
| **7.** | **Food and housekeeping supplies** | 7. $ | 2,000.00 |
| **8.** | **Childcare and children's education costs** | 8. $ | 0.00 |
| **9.** | **Clothing, laundry, and dry cleaning** | 9. $ | 100.00 |
| **10.** | **Personal care products and services** | 10. $ | 100.00 |
| **11.** | **Medical and dental expenses** | 11. $ | 200.00 |
| **12.** | Transportation. Include gas, maintenance, bus or train fare. Do not include car payments. | 12. $ | 400.00 |
| **13.** | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ | 150.00 |
| **14.** | **Charitable contributions and religious donations** | 14. $ | 0.00 |

**15. Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20.

| | | | |
|---|---|---|---|
| 15a. | Life insurance | 15a. $ | 0.00 |
| 15b. | Health insurance | 15b. $ | 0.00 |
| 15c. | Vehicle insurance | 15c. $ | 500.00 |
| 15d. | Other insurance. Specify: | 15d. $ | 0.00 |
| **16.** | Taxes. Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. $ | 0.00 |

**17. Installment or lease payments:**

| | | | |
|---|---|---|---|
| 17a. | Car payments for Vehicle 1 | 17a. $ | 1,319.00 |
| 17b. | Car payments for Vehicle 2 | 17b. $ | 500.00 |
| 17c. | Other. Specify: **Mortgage for Martel Rental** | 17c. $ | 10,854.00 |
| 17d. | Other. Specify: **Mortgage for Highland Rental** | 17d. $ | 10,729.00 |
| | **Mortgage for Poinsettia Rental** | $ | 10,215.00 |
| | **Mortgage for Whitewater Club Drive Property** | $ | 433.00 |
| | **Property Tax for Whitewater Club Drive Property** | $ | 100.00 |
| | **Mortgage for Ocean Drive Property** | $ | 8,813.00 |
| | **Leonardo Plaza Hotel Maintenance Expenses** | $ | 2,500.00 |
| **18.** | Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I). | 18. $ | 0.00 |
| **19.** | Other payments you make to support others who do not live with you. Specify: | 19. $ | 0.00 |

**20. Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income*.**

| | | | |
|---|---|---|---|
| 20a. | Mortgages on other property | 20a. $ | 0.00 |
| 20b. | Real estate taxes | 20b. $ | 0.00 |
| 20c. | Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| 20e. | Homeowner's association or condominium dues | 20e. $ | 0.00 |
| **21.** | Other: Specify: | 21. +$ | 0.00 |

**22. Calculate your monthly expenses**

| | | |
|---|---|---|
| 22a. Add lines 4 through 21. | $ | 52,846.00 |
| 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | 52,846.00 |

**23. Calculate your monthly net income.**

| | | |
|---|---|---|
| 23a. Copy line 12 (*your combined monthly income*) from Schedule I. | 23a. $ | 17,633.00 |
| 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | 52,846.00 |
| 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | 23c. $ | -35,213.00 |

**24. Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☐ No.

■ Yes. | Explain here: **Debtor intends to sell one or more of his assets to be able to make the payments to his creditors and to successfully reorganize.** |

Fill in this information to identify your case:

Debtor 1    **Leslie Klein**
_____
First Name    Middle Name    Last Name

Debtor 2    _____
(Spouse if, filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number    **2:23-bk-10990-SK**
(if known)    _____

☐ Check if this is an
amended filing

Official Form 106Dec
# Declaration About an Individual Debtor's Schedules    12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

████    **Sign Below**

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of person _____    *Attach Bankruptcy Petition Preparer's Notice, Declaration, and Signature (Official Form 119)*

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

X _____    X _____
Leslie Klein    Signature of Debtor 2
Signature of Debtor 1

Date    3/8/2023    Date _____

Official Form 106Dec    Declaration About an Individual Debtor's Schedules

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Leslie Klein** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **2:23-bk-10990-SK** |
| (if known) | |

☐ Check if this is an
amended filing

# Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy

04/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Give Details About Your Marital Status and Where You Lived Before

1.  **What is your current marital status?**

    ■  Married
    ☐  Not married

2.  **During the last 3 years, have you lived anywhere other than where you live now?**

    ■  No
    ☐  Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

    | Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
    |---|---|---|---|

3.  **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

    ☐  No
    ■  Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2   Explain the Sources of Your Income

4.  **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
    Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
    If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

    ☐  No
    ■  Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Sources of income Check all that apply. | Gross income (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ☐ Wages, commissions, bonuses, tips | $4,000.00 | ☐ Wages, commissions, bonuses, tips | |
| | ■ Operating a business | | ☐ Operating a business | |

---

EXHIBIT "C"    Page 37 of 57

Debtor 1    **Leslie Klein**                                             Case number *(if known)*    **2:23-bk-10990-SK**

|  | **Debtor 1** | | **Debtor 2** | |
|---|---|---|---|---|
|  | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and<br>exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions<br>and exclusions) |
| For last calendar year:<br>(January 1 to December 31, 2022 ) | ☐ Wages, commissions,<br>bonuses, tips | $24,000.00 | ☐ Wages, commissions,<br>bonuses, tips | |
|  | ■ Operating a business | | ☐ Operating a business | |
| For the calendar year before that:<br>(January 1 to December 31, 2021 ) | ☐ Wages, commissions,<br>bonuses, tips | $24,000.00 | ☐ Wages, commissions,<br>bonuses, tips | |
|  | ■ Operating a business | | ☐ Operating a business | |

5. **Did you receive any other income during this year or the two previous calendar years?**
   Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

   List each source and the gross income from each source separately. Do not include income that you listed in line 4.

   ☐ No
   ■ Yes. Fill in the details.

|  | **Debtor 1** | | **Debtor 2** | |
|---|---|---|---|---|
|  | **Sources of income**<br>Describe below. | **Gross income from<br>each source**<br>(before deductions and<br>exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions<br>and exclusions) |
| From January 1 of current year until<br>the date you filed for bankruptcy: | Social Security | $6,666.00 | | |
|  | Rental Income | $25,000.00 | | |
| For last calendar year:<br>(January 1 to December 31, 2022 ) | Social Security | $40,000.00 | | |
|  | Rental Income | $144,000.00 | | |
| For the calendar year before that:<br>(January 1 to December 31, 2021 ) | Social Security | $40,000.00 | | |
|  | Rental Income | $144,000.00 | | |

---

**Part 3:**    **List Certain Payments You Made Before You Filed for Bankruptcy**

6. **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**
   ■ No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $7,575* or more?
   ■ No.    Go to line 7.
   ☐ Yes    List below each creditor to whom you paid a total of $7,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
   * Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.

---

| Debtor 1 | Leslie Klein | | Case number *(if known)* | 2:23-bk-10990-SK |

---

☐ **Yes. Debtor 1 or Debtor 2 or both have primarily consumer debts.**
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ **No.** Go to line 7.

☐ **Yes** List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

7. Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

9. Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
■ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| In re Matter of the Franklin Henry Menlo Irrevocable Trust, et al. v. Leslie Klein BP136769 | Trust | Superior Court of California 111 Hill St. Los Angeles, CA 90012 | ■ Pending ☐ On appeal ☐ Concluded |
| The Scott Trust DTD 12/24/1992 - Trust BP172432 | Trust | Superior Court of California 111 Hill St. Los Angeles, CA 90012 | ■ Pending ☐ On appeal ☐ Concluded |
| Joseph Vago, Et Al vs. Leslie Klein 20STCV25050 | Fraud | Superior Court of California 111 Hill St Los Angeles, CA 90012 | ☐ Pending ■ On appeal ☐ Concluded |

| Debtor 1 | **Leslie Klein** | | Case number (*if known*) | **2:23-bk-10990-SK** |
|---|---|---|---|---|

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

■ No. Go to line 11.
☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property | Date | Value of the property |
|---|---|---|---|
| | Explain what happened | | |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
■ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
☐ No
☐ Yes

**Part 5:   List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
■ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| Person to Whom You Gave the Gift and Address: | | | |

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**
■ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600 | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| Charity's Name | | | |
| Address (Number, Street, City, State and ZIP Code) | | | |

**Part 6:   List Certain Losses**

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

■ No
☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss | Date of your loss | Value of property lost |
|---|---|---|---|
| | Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | | |

**Part 7:   List Certain Payments or Transfers**

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Address | | | |
| Email or website address | | | |
| Person Who Made the Payment, if Not You | | | |

Official Form 107   Statement of Financial Affairs for Individuals Filing for Bankruptcy   page 4

Debtor 1    **Leslie Klein**                                                Case number *(if known)*    **2:23-bk-10990-SK**

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, If Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Law Offices of Michael Jay Berger<br>9454 Wilshire Boulevard, 6th floor<br>Beverly Hills, CA 90212<br>michael.berger@bankruptcypower.com | **Attorney Fees** | 2/15/2023  +<br>the filing fee | $21,738.00 |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

- ■ No
- ☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

- ■ No
- ☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

- ■ No
- ☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

| **Part 8:** | List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units |
|---|---|

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

- ■ No
- ☐ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

- ■ No
- ☐ Yes. Fill in the details.

| Name of Financial Institution<br>Address (Number, Street, City, State and ZIP Code) | Who else had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

Official Form 107                    Statement of Financial Affairs for Individuals Filing for Bankruptcy                    page 5

Debtor 1    **Leslie Klein**                                                Case number *(if known)*    **2:23-bk-10990-SK**

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

    ■ No
    ☐ Yes. Fill in the details.

| Name of Storage Facility<br>Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

---

**Part 9:    Identify Property You Hold or Control for Someone Else**

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

    ■ No
    ☐ Yes. Fill in the details.

| Owner's Name<br>Address (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

---

**Part 10:    Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

    ■ No
    ☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25. **Have you notified any governmental unit of any release of hazardous material?**

    ■ No
    ☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26. **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

    ■ No
    ☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

---

**Part 11:    Give Details About Your Business or Connections to Any Business**

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

    ☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

    ☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

---

Official Form 107                    Statement of Financial Affairs for Individuals Filing for Bankruptcy                    page 6

Debtor 1    Leslie Klein _____    Case number (if known) 2:23-bk-10990-SK

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ **No.** None of the above applies. Go to Part 12.

■ **Yes.** Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| Bay Area Development, Co.<br>14245 Ventura Blvd<br>Sherman Oaks, CA 91423 | real estate holding company | EIN:    95-2816693<br><br>From-To |
| Life Capital Group, LLC<br>7223 Beverly Blvd., Suite 205<br>Los Angeles, CA 90036 | investment company | EIN:<br><br>From-To |

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business?** Include all financial institutions, creditors, or other parties.

■ **No**

☐ **Yes.** Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|

---

**Part 12:    Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

_____    _____
Leslie Klein                                              Signature of Debtor 2
Signature of Debtor 1

Date    3/9/2023                            Date _____

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**
■ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**
■ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

## Notice Required by 11 U.S.C. § 342(b) for
## Individuals Filing for Bankruptcy (Form 2010)

This notice is for you if:

    You are an individual filing for bankruptcy, and

    Your debts are primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

    Chapter 7 - Liquidation

    Chapter 11 - Reorganization

    Chapter 12 - Voluntary repayment plan for family farmers or fishermen

    Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
|---|---|
| $245 | filing fee |
| $78 | administrative fee |
| + $15 | trustee surcharge |
| $338 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

    most taxes;

    most student loans;

    domestic support and property settlement obligations;

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

**Chapter 11: Reorganization**

|   |   |   |
|---|---|---|
|   | $1,167 | filing fee |
| + | $571 | administrative fee |
|   | $1,738 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

## Read These Important Warnings

**Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.**

**Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.**

**You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.**

**Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

---

### Chapter 12: Repayment plan for family farmers or fishermen

|   | | |
|---|---|---|
|   | $200 | filing fee |
| + | $78 | administrative fee |
|   | $278 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

### Chapter 13: Repayment plan for individuals with regular income

|   | | |
|---|---|---|
|   | $235 | filing fee |
| + | $78 | administrative fee |
|   | $313 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

**Warning: File Your Forms on Time**

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/forms/bankruptcy-forms

### Bankruptcy crimes have serious consequences

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

### Make sure the court has your mailing address

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

### Understand which services you could receive from credit counseling agencies

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

In Alabama and North Carolina, go to: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

<table>
<tr><td colspan="2">Fill in this information to identify your case:</td></tr>
<tr><td>Debtor 1</td><td>Leslie Klein</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>Central District of California</td></tr>
<tr><td>Case number<br>(if known)</td><td>2:23-bk-10990-SK</td></tr>
</table>

☐ Check if this is an amended filing

## Official Form 122B
## Chapter 11 Statement of Your Current Monthly Income

12/21

You must file this form if you are an individual and are filing for bankruptcy under Chapter 11 (other than Subchapter V). If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).

**Part 1:     Calculate Your Current Monthly Income**

1.  **What is your marital and filing status?** Check one only.

    ☐ **Not married.** Fill out Column A, lines 2-11.

    ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

    ■ **Married and your spouse is NOT filing with you.** Fill out Column A, lines 2-11.

    Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | Column A<br>Debtor 1 | Column B<br>Debtor 2 |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $         0.00 | $ |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $         0.00 | |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $         0.00 | |

5.  **Net income from operating a business, profession, or farm**

| | Debtor 1 | Debtor 2 | | | |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $ | 2,000.00 | | | |
| Ordinary and necessary operating expenses | -$ | 200.00 | | | |
| Net monthly income from a business, profession, or farm | $ | 1,800.00 | Copy<br>here -> | $ 1,800.00 | $ |

6.  **Net income from rental and other real property**

| | Debtor 1 | Debtor 2 | | | |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $ | 12,500.00 | | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | | |
| Net monthly income from rental or other real property | $ | 12,500.00 | Copy<br>here -> | $ 12,500.00 | $ |

| Debtor 1 | Leslie Klein | | Case number *(if known)* | 2:23-bk-10990-SK |
|---|---|---|---|---|

|  |  | Column A<br>Debtor 1 | Column B<br>Debtor 2 |
|---|---|---|---|
| 7. | Interest, dividends, and royalties | $ _____ 0.00 | $ _____ |
| 8. | Unemployment compensation | $ _____ 0.00 | $ _____ |
|  | Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here: |  |  |
|  | For you _____ $ _____ 0.00 |  |  |
|  | For your spouse _____ $ _____ |  |  |
| 9. | Pension or retirement income. Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title. | $ _____ 0.00 | $ _____ |
| 10. | Income from all other sources not listed above. Specify the source and amount. Do not include any benefits received under the Social Security Act; payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below. |  |  |
|  | _____ | $ _____ | $ _____ |
|  | _____ | $ _____ 0.00 | $ _____ |
|  | Total amounts from separate pages, if any. | + $ _____ 0.00 | $ _____ |

11. **Calculate your total current monthly income.**
   Add lines 2 through 10 for each column.
   Then add the total for Column A to the total for Column B.

| $ 14,300.00 | + | $ _____ | = | $ 14,300.00 |
|---|---|---|---|---|

Debtor 1    __Leslie Klein_____    Case number (*if known*)    __2:23-bk-10990-SK___

---

| Part 2: | Sign Below |
|---------|------------|

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

X ___Leslie Klein_____
**Leslie Klein**
Signature of Debtor 1

Date ___3/8/2023_____
MM / DD / YYYY

---

EXHIBIT "C"                                    Page 50 of 57

| Debtor 1 | **Leslie Klein** | Case number *(if known)* | **2:23-bk-10990-SK** |

## Current Monthly Income Details for the Debtor

**Debtor Income Details:**
Income for the Period **08/01/2022 to 01/31/2023**.

**Line 5 - Income from operation of a business, profession, or farm**
Source of Income: **Leslie Klein & Associates, Inc.**
Income/Expense/Net by Month:

|  | Date | Income | Expense | Net |
|---|---|---|---|---|
| 6 Months Ago: | 08/2022 | $2,000.00 | $200.00 | $1,800.00 |
| 5 Months Ago: | 09/2022 | $2,000.00 | $200.00 | $1,800.00 |
| 4 Months Ago: | 10/2022 | $2,000.00 | $200.00 | $1,800.00 |
| 3 Months Ago: | 11/2022 | $2,000.00 | $200.00 | $1,800.00 |
| 2 Months Ago: | 12/2022 | $2,000.00 | $200.00 | $1,800.00 |
| Last Month: | 01/2023 | $2,000.00 | $200.00 | $1,800.00 |
| | Average per month: | $2,000.00 | $200.00 | |
| | | | Average Monthly NET Income: | $1,800.00 |

**Line 6 - Rent and other real property income**
Source of Income: **Rental Income from Highland**
Income/Expense/Net by Month:

|  | Date | Income | Expense | Net |
|---|---|---|---|---|
| 6 Months Ago: | 08/2022 | $4,000.00 | $0.00 | $4,000.00 |
| 5 Months Ago: | 09/2022 | $4,000.00 | $0.00 | $4,000.00 |
| 4 Months Ago: | 10/2022 | $4,000.00 | $0.00 | $4,000.00 |
| 3 Months Ago: | 11/2022 | $4,000.00 | $0.00 | $4,000.00 |
| 2 Months Ago: | 12/2022 | $4,000.00 | $0.00 | $4,000.00 |
| Last Month: | 01/2023 | $4,000.00 | $0.00 | $4,000.00 |
| | Average per month: | $4,000.00 | $0.00 | |
| | | | Average Monthly NET Income: | $4,000.00 |

**Line 6 - Rent and other real property income**
Source of Income: **Rental Income from Martel**
Income/Expense/Net by Month:

|  | Date | Income | Expense | Net |
|---|---|---|---|---|
| 6 Months Ago: | 08/2022 | $5,500.00 | $0.00 | $5,500.00 |
| 5 Months Ago: | 09/2022 | $5,500.00 | $0.00 | $5,500.00 |
| 4 Months Ago: | 10/2022 | $5,500.00 | $0.00 | $5,500.00 |
| 3 Months Ago: | 11/2022 | $5,500.00 | $0.00 | $5,500.00 |
| 2 Months Ago: | 12/2022 | $5,500.00 | $0.00 | $5,500.00 |
| Last Month: | 01/2023 | $5,500.00 | $0.00 | $5,500.00 |
| | Average per month: | $5,500.00 | $0.00 | |
| | | | Average Monthly NET Income: | $5,500.00 |

Debtor 1    **Leslie Klein**                                                    Case number (*if known*)    **2:23-bk-10990-SK**

**Line 6 - Rent and other real property income**
Source of Income: **Rental Income from Poinsettia**
Income/Expense/Net by Month:

|                  | Date              | Income       | Expense     | Net          |
|------------------|-------------------|--------------|-------------|--------------|
| 6 Months Ago:    | 08/2022           | $3,000.00    | $0.00       | $3,000.00    |
| 5 Months Ago:    | 09/2022           | $3,000.00    | $0.00       | $3,000.00    |
| 4 Months Ago:    | 10/2022           | $3,000.00    | $0.00       | $3,000.00    |
| 3 Months Ago:    | 11/2022           | $3,000.00    | $0.00       | $3,000.00    |
| 2 Months Ago:    | 12/2022           | $3,000.00    | $0.00       | $3,000.00    |
| Last Month:      | 01/2023           | $3,000.00    | $0.00       | $3,000.00    |
|                  | Average per month:| $3,000.00    | $0.00       |              |
|                  |                   |              | Average Monthly NET Income: | $3,000.00 |

**Non-CMI - Social Security Act Income**
Source of Income: **Social Security Income**
Income by Month:

|                  |                   |              |
|------------------|-------------------|--------------|
| 6 Months Ago:    | 08/2022           | $3,333.00    |
| 5 Months Ago:    | 09/2022           | $3,333.00    |
| 4 Months Ago:    | 10/2022           | $3,333.00    |
| 3 Months Ago:    | 11/2022           | $3,333.00    |
| 2 Months Ago:    | 12/2022           | $3,333.00    |
| Last Month:      | 01/2023           | $3,333.00    |
|                  | Average per month:| $3,333.00    |

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Michael Jay Berger<br>9454 Wilshire Boulevard, 6th floor<br>Beverly Hills, CA 90212<br>(310) 271-6223 Fax: (310) 271-9805<br>California State Bar Number: 100291 CA<br>michael.berger@bankruptcypower.com | |

☐ *Debtor(s) appearing without an attorney*
■ *Attorney for Debtor*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>    Leslie Klein<br><br><br><br><br><br>    Debtor(s). | CASE NO.: 2:23-bk-10990-SK<br>CHAPTER: 11<br><br><br>VERIFICATION OF MASTER<br>MAILING LIST OF CREDITORS<br><br>[LBR 1007-1(a)] |
|---|---|

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of __4__ sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: ___3/8/2023___

Signature of Debtor 1

Date: _____

Signature of Debtor 2 (joint debtor) ) (if applicable)

Date: ___3/8/2023___

Signature of Attorney for Debtor (if applicable)

_This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California._

December 2015                                    **F 1007-1.MAILING.LIST.VERIFICATION**

Leslie Klein
322 N. June Street
Los Angeles, CA 90001


Michael Jay Berger
Law Offices of Michael Jay Berger
9454 Wilshire Boulevard, 6th floor
Beverly Hills, CA 90212


Andor Gestetner
c/o Law Offices of Jacob Unger
5404 Whitsett Ave Ste. 182
Valley Village, CA 91607


Bank of America
Attn: Bankruptcy
4909 Savarese Circle
Tampa, FL 33634


Barclays Bank Delaware
Attn: Bankruptcy
Po Box 8801
Wilmington, DE 19899


California Bank & Trust
Po Box 711510
Santee, CA 92072


CCO Mortgage Corp.
Attn: Bankruptcy
10561 Telegraph Rd
Glen Allen, VA 23059


Chase Card Services
Attn: Bankruptcy
P.O. 15298
Wilmington, DE 19850

Chase Card Services
Attn: Bankruptcy
Po Box 15298
Wilmington, DE 19850


Chase Doe
143 S. Highland Drive
Los Angeles, CA 90036


Chase Mortgage
BK Department
Mail Code LA4 5555  700 Kansas Ln
Monroe, LA 71203


Citibank
Attn: Bankruptcy
P.O. Box 790034
St Louis, MO 63179


Ericka and Joseph Vago
c/o Brian Procel
Procel Law
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401


Ericka and Joseph Vago
124 N. Highland Ave
Sherman Oaks, CA 91423


Fay Servicing LLC
Attn: Bankruptcy Dept
Po Box 809441
Chicago, IL 60680


Fiore Racobs & Powers
c/o Palm Springs Country Club HOA
6820 Indiana Ave., Ste 140
6820 Indiana Ave., Ste 140
Riverside, CA 92506

Franklin H. Menlo Irrevocable Trust
c/o Willkie Farr & Gallagher LLP
Attn: Alex M. Weingarten, Esq.
2029 Century Park East, Suite 3400
Los Angeles, CA 90067


Gestetner Charitable Remainder Trus
c/o Andor Gestetner
1425 55th Street
Brooklyn, NY 11219


Jacob Rummitz
315 N. Martel Avenue
Los Angeles, CA 90036


Jeffrey Siegel, Successor Trustee
of the Hubert Scott Trust
c/o Oldman, Cooley, Sallus
16133 Ventura Blvd., Penthouse Suit
Encino, CA 91436-2408


Leslie Klein & Associates, Inc.
c/o Parker Milliken
555 Flower Street
Los Angeles, CA 90071


Los Angeles County Tax Collector
Bankruptcy Unit
PO Box 54110
Los Angeles, CA 90054-0027


Mrc/united Wholesale M
Attn: Bankruptcy
P. O. Box 619098
Dallas, TX 75261


Oldman, Cooley, and Sallus
16133 Ventura Blvd., Penthouse Suit
Encino, CA 91436-2408

Sandra Layton
161 N. Poinsettia Place
Los Angeles, CA 90036


Selene Finance
Attn: Bankruptcy
Po Box 8619
Philadelphia, PA 19101


Shellpoint Mortgage Servicing
Attn: Bankruptcy
Po Box 10826
Greenville, SC 29603


Toyota Financial Services
Attn: Bankruptcy
Po Box 259001
Plano, TX 75025

# EXHIBIT D

| Attorney or Party Name, Address, Telephone & FAX Nos.,State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Michael Jay Berger (SBN 100291)**<br>**Law Offices of Michael Jay Berger**<br>**9454 Wilshire Boulevard, 6th floor**<br>**Beverly Hills, CA 90212**<br>**(310) 271-6223 Fax: (310) 271-9805**<br>**michael.berger@bankruptcypower.com** | |
| ☐ *Individual appearing without attorney*<br>☑ *Attorney for Debtor* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>Leslie Klein<br><br><br><br><br><br>                                   Debtor(s) | CASE NO.: **2:23-bk-10990-SK**<br><br>CHAPTER: **11**<br><br>**SUMMARY OF AMENDED SCHEDULES,**<br>**MASTER MAILING LIST,**<br>**AND/OR STATEMENTS**<br>**[LBR 1007-1(c)]** |
|---|---|

A filing fee is required to amend Schedules D, or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is also required as an attachment if creditors are being added to the Schedule D or E/F. Are one or more creditors being added? ☐ Yes ☑ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☑ Schedule A/B ☐ Schedule C ☐ Schedule D ☐ Schedule E/F ☐ Schedule G

☐ Schedule H ☐ Schedule I ☐ Schedule J ☐ Schedule J-2 ☑ Statement of Financial Affairs

☐ Statement About Your Social Security Number(s) ☐ Statement of Intentions ☐ Master Mailing List

☐ Other (*specify*) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and/or statements are true and correct.

Date: **3/29/2023**            _Leslie Klein_ (signature)
**Leslie Klein**
Debtor 1 Signature

_____
Debtor 2 (Joint Debtor) Signature (if applicable)

**NOTE:** It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2015*                    Page 1                    F 1007-1.1.AMENDED.SUMMARY

EXHIBIT "D"                    Page 1 of 22

Fill in this information to identify your case and this filing:

| | | | |
|---|---|---|---|
| Debtor 1 | **Leslie Klein** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 2:23-bk-10990-SK | | |

☐ Check if this is an
amended filing

## Official Form 106A/B
# Schedule A/B: Property
**12/15**

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1  Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No  Go to Part 2.

■ Yes  Where is the property?

1.1

**322 N. June Street**
Street address if available, or other description

**Los Angeles   CA   90004-0000**
City   State   ZIP Code

**Los Angeles**
County

**What is the property? Check all that apply**

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property? Check one**

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Debtor's principal residence; paid in full. The property is held in the marital deduction trust. The Debtor's current spouse, Barbara Klein, has a life estate interest in the residence.**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$4,900,000.00** | **$2,450,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**50% is held in by Debtor and 50% held by his Erika's irrevocable marital deduction trust**

☐ Check if this is community property (see instructions)

EXHIBIT "D"

Debtor 1    **Leslie Klein**                                   Case number *(if known)*    **2:23-bk-10990-SK**

**1.2** | **If you own or have more than one, list here:**

**315 N. Martel Avenue**
Street address, if available, or other description

| **What is the property?** Check all that apply | |
| --- | --- |
| ■ | Single-family home |
| ☐ | Duplex or multi-unit building |
| ☐ | Condominium or cooperative |
| ☐ | Manufactured or mobile home |
| ☐ | Land |
| ☐ | Investment property |
| ☐ | Timeshare |
| ☐ | Other _____ |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$2,500,000.00** | **$2,500,000.00** |

**Los Angeles      CA      90036-0000**
City           State      ZIP Code

**Who has an interest in the property?** Check one
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

☐ Check if this is community property (see instructions)

**Los Angeles**
County

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property.  Debtor collects $5,500/month.**

---

**1.3** | **If you own or have more than one, list here:**

**143 S. Highland Drive**
Street address, if available, or other description

| **What is the property?** Check all that apply | |
| --- | --- |
| ■ | Single-family home |
| ☐ | Duplex or multi-unit building |
| ☐ | Condominium or cooperative |
| ☐ | Manufactured or mobile home |
| ☐ | Land |
| ☐ | Investment property |
| ☐ | Timeshare |
| ☐ | Other _____ |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$2,200,000.00** | **$2,200,000.00** |

**Los Angeles      CA      90036-0000**
City           State      ZIP Code

**Who has an interest in the property?** Check one
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

☐ Check if this is community property (see instructions)

**Los Angeles**
County

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property. Debtor collects $4,000 per month in rental income.**

---

Official Form 106A/B                    Schedule A/B: Property                    page 2

Debtor 1    **Leslie Klein**                                          Case number *(if known)*    **2:23-bk-10990-SK**

**1.4** **If you own or have more than one, list here:**

**161 N. Poinsettia Place**
Street address if available, or other description

| What is the property? Check all that apply |
| --- |
| ■ Single-family home |
| ☐ Duplex or multi-unit building |
| ☐ Condominium or cooperative |
| ☐ Manufactured or mobile home |
| ☐ Land |
| ☐ Investment property |
| ☐ Timeshare |
| ☐ Other |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Los Angeles    CA    90036-0000**
City    State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$2,000,000.00** | **$2,000,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

**Los Angeles**
County

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property. Debtor collects $3,000 per month rental income.**

---

**1.5** **If you own or have more than one, list here:**

**2560-B Whitewater Club Drive**
Street address if available, or other description

| What is the property? Check all that apply |
| --- |
| ☐ Single-family home |
| ☐ Duplex or multi-unit building |
| ■ Condominium or cooperative |
| ☐ Manufactured or mobile home |
| ☐ Land |
| ☐ Investment property |
| ☐ Timeshare |
| ☐ Other |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Palm Springs    CA    92262-0000**
City    State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$350,000.00** | **$350,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

**Riverside**
County

Other information you wish to add about this item, such as local property identification number:

**A condo with 2 bedrooms and 2 bathrooms; vacation home.**

---

Official Form 106A/B                    Schedule A/B: Property                                page 3

Debtor 1    **Leslie Klein**                                      Case number *(if known)* **2:23-bk-10990-SK**

**1.6**    If you own or have more than one, list here:

**3752 Ocean Drive**
Street address, if available, or other description

**What is the property? Check all that apply**

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Oxnard        CA    93035-0000**
City        State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,400,000.00** | **$2,400,000.00** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
**100%**

**Ventura**
County

**Who has an interest in the property? Check one**

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Single family home; vacation home.**

---

**1.7**    If you own or have more than one, list here:

**Leonardo Plaza Hotel Jerusalem
Suite 1323**
Street address, if available, or other description

**What is the property? Check all that apply**

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☑ Investment property
☐ Timeshare
☑ Other    **Unit in a hotel**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Jerusalem**
City        State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$450,000.00** | **$225,000.00** |

**Who has an interest in the property? Check one**

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
**50% by Debtor and 50% by deceased wife's irrevocable trust**

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Israel**
County

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Debtor owns a unit in the Leanoardo Plaza Hotel. Vacation home.**

---

Official Form 106A/B                    Schedule A/B: Property                    page 4

| Debtor 1 | **Leslie Klein** | | | | Case number *(if known)* | **2:23-bk-10990-SK** |
|---|---|---|---|---|---|---|

**1.8**   If you own or have more than one, list here:

**Dan Boutique Hotel Jerusalem
Suite 505**

Street address, *if available, or other description*

**Jerusalem**

City                          State          ZIP Code

**Israel**

County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
■ Other   **Unit in a hotel**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Debtor owns a unit in the Leanoardo Plaza Hotel. Vacation home.**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$200,000.00** | **$100,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**50% by Debtor and 50% by deceased spouse's irrevocable trust**

☐ Check if this is community property
(see instructions)

---

2.   Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.................................................=>    | **$12,225,000.00** |

---

| **Part 2:** | **Describe Your Vehicles** |
|---|---|

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.   Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
■ Yes

| **3.1** | Make | **Lexus** |
|---|---|---|
| | Model | **LS500** |
| | Year: | **2021** |
| | Approximate mileage: | **n/a** |
| | Other information: | |

**Leased vehicle. Monthly payment is $1,319.00.**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$0.00** | **$0.00** |

| **3.2** | Make | **Lexus** |
|---|---|---|
| | Model | **LS** |
| | Year | **2021** |
| | Approximate mileage | **n/a** |
| | Other information: | |

**Leased vehicle. Debtor's spouse drives this vehicle. Monthly payment is $500.**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$0.00** | **$0.00** |

---

Debtor 1   **Leslie Klein**                                                          Case number *(if known)*   **2:23-bk-10990-SK**

4.  **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
    *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

    ■ No
    ☐ Yes

5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for
    pages you have attached for Part 2. Write that number here............................................ =>    | **$0.00** |

| **Part 3:** | Describe Your Personal and Household Items |
| --- | --- |

Do you own or have any legal or equitable interest in any of the following items?

Current value of the
portion you own?
Do not deduct secured
claims or exemptions.

6.  **Household goods and furnishings**
    *Examples:* Major appliances, furniture, linens, china, kitchenware
    ☐ No
    ■ Yes. Describe.....

| | |
| --- | --- |
| Debtor's residence: Debtor's residence: Couches, coffee tables, dining room table with chairs, mattresses with bedframes, wall mirrors, desk with chairs, lamps, rugs, dressers, kitchen table, patio furniture, cabinets, refrigerators, and other household goods and furnishings | $8,000.00 |
| 2560-B Whitewater Club Drive, Palm Spring vacation home: living room sofa, table, chairs, dining room table and chairs, TV, phone, kitchen appliances, china, beds and side tables, mirrors, paintings, and miscellaneous household goods and furnishings. | $5,000.00 |
| 3752 Ocean Drive, Oxnard CA vacation home: living room sofa, table, chairs, dining room table and chairs, TV, phone, kitchen appliances, china, beds and side tables, mirrors, paintings, and miscellaneous household goods and furnishings. | $5,000.00 |

7   **Electronics**
    *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
    ☐ No
    ■ Yes. Describe.....

| | |
| --- | --- |
| TVs, phones, computers | $3,000.00 |

8.  **Collectibles of value**
    *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
    ☐ No
    ■ Yes. Describe.....

| | |
| --- | --- |
| Books and art objects | $4,000.00 |

9.  **Equipment for sports and hobbies**
    *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
    ☐ No
    ■ Yes. Describe.....

Official Form 106A/B                          Schedule A/B: Property                                        page 6

| Debtor 1 | **Leslie Klein** | Case number *(if known)* | **2:23-bk-10990-SK** |

| Sports and Hobyy equipment | $2,000.00 |

**10. Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ■ No
   ☐ Yes. Describe.....

**11 Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ■ Yes. Describe.....

| Debtor's residence: Clothes and shoes | $2,000.00 |

**12. Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ■ Yes. Describe.....

| Debtor's residence: Furs, diamond ring, gold necklace, diamond earrings, gold rings and costume jewelry | $20,000.00 |

**13. Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ■ No
   ☐ Yes. Describe.....

**14 Any other personal and household items you did not already list, including any health aids you did not list**
   ■ No
   ☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ................................................................................

| $49,000.00 |

**Part 4:    Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own?<br>Do not deduct secured claims or exemptions. |

**16 Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ■ No
   ☐ Yes ....................................................................................

**17. Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
   ☐ No
   ■ Yes.....................

   Institution name:

| 17.1. | Checking account ending in 9401 | Bank of America | $4,000.00 |
| 17.2. | Stock account ending in 4523 | Morgan Stanley | $11,190.00 |

EXHIBIT "D"                                          Page 8 of 22

Debtor 1    **Leslie Klein**                                         Case number *(if known)*  **2:23-bk-10990-SK**

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

    ■ No
    ☐ Yes................              Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and
    joint venture**
    ☐ No
    ■ Yes. Give specific information about them...................

| Name of entity: | % of ownership: | |
|---|---|---|
| Debtor has a 100% ownership interest in Bay Area Development, Co.   Bay Area Development, Co. filed  a chapter 11 bankruptcy petition on 9/12/2022, Case No.: 2:22-bk-15031-SK.  On December 6, 2022, Bay Area entered into a stipulation with its secured creditor Scott Capital Management Fund 1, LLC and OUST to dismiss the case.  The order dismissing the case with a 180 day bar (due to pending RFS motion) was entered on 12/6/2022.  The real property owned by Bay Area Development, Co. went into foreclosure.  The company currently does not own any assets. | 100%     % | $0.00 |
| Debtor has a membership interest in Life Capital Group, LLC, which is an investment company. The LLC buys insurance policies on other people's lives and upon passing, the LLC collects the funds and makes a distribution to its members. | 5% membershi p interest   % | Unknown |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

    ■ No
    ☐ Yes. Give specific information about them
                                       Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

    ■ No
    ☐ Yes. List each account separately.
              Type of account:            Institution name:

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

    ■ No
    ☐ Yes. ....................            Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

    ■ No
    ☐ Yes.............      Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

    ■ No
    ☐ Yes.............      Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property** (other than anything listed in line 1), and rights or powers exercisable for your benefit
    ☐ No

Official Form 106A/B                          Schedule A/B: Property                              page 8

| Debtor 1 | **Leslie Klein** | Case number *(if known)* | **2:23-bk-10990-SK** |
| --- | --- | --- | --- |

■ Yes. Give specific information about them...

> **Klein Living Trust dated April 8, 1990. The Settlors of the Trust are Leslie Klein and Erika Noemi Klein, husband and wife. Erika Klein passed away several years ago, and pursuant to the trust provision,Erika Klein's interest in the assets is now in an irrevocable trust ("Marital Deduction Trust"). The assets of the trust are listed on Schedule A/B, item #1 for each property that is part of the Trust.**

$0.00

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
  *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
  ■ No
  ☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
  *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
  ■ No
  ☐ Yes. Give specific information about them...

**Money or property owed to you?**

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**28. Tax refunds owed to you**
  ■ No
  ☐ Yes Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
  *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
  ■ No
  ☐ Yes. Give specific information......

**30. Other amounts someone owes you**
  *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else
  ☐ No
  ■ Yes. Give specific information..

> **Isaac Kirzner. Debtor entered into an agreement with Isaac Kirzner whereby he paid the insurance premiums for Mr. Kirzner, and upon Mr. Kirzner's passing, the Debtor would receive $1 Million. The current Trustee is Sol Majer.**

$1,000,000.00

> **Judith Bittman. Debtor entered into an agreement with Judith Bittman whereby he paid the insurance premiums for Ms. Bittmanm and upon Ms. Bittman's passing, the Debtor would receive $1 Million. The current Trustee is Sol Majer.**

$1,000,000.00

> **Debtor intends to file a complaint against Frank Menlo for unpaid trustee fees in the amount of $3,000,000.00 - $4,000,000.00. Debtor is unlikely to collect due to the ongoing litigation with Mr. Menlo.**

Unknown

**31 Interests in insurance policies**
  *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
  ■ No

EXHIBIT "D"                    Page 10 of 22

| Debtor 1 | **Leslie Klein** | Case number *(if known)* | **2:23-bk-10990-SK** |

☐ Yes  Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
■ No
☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples: Accidents, employment disputes, insurance claims, or rights to sue*
■ No
☐ Yes.  Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**
■ No
☐ Yes.  Give specific information..

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**................................................................................................................... | **$2,015,190.00** |

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest in. List any real estate in Part 1.

**37** Do you own or have any legal or equitable interest in any business-related property?
■ No  Go to Part 6
☐ Yes  Go to line 38

**Part 6** Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest in.
If you own or have an interest in farmland, list it in Part 1.

**46.** Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?
■ No. Go to Part 7.
☐ Yes.  Go to line 47.

**Part 7:** Describe All Property You Own or Have an Interest in That You Did Not List Above

**53.** Do you have other property of any kind you did not already list?
*Examples: Season tickets, country club membership*
■ No
☐ Yes.  Give specific information.........

**54. Add the dollar value of all of your entries from Part 7. Write that number here** ...................................... | **$0.00** |

| Debtor 1 | Leslie Klein | | | | Case number *(if known)* | **2:23-bk-10990-SK** |

| Part 8: | List the Totals of Each Part of this Form | | |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 55. | Part 1: Total real estate, line 2 .................................................................................................... | | | **$12,225,000.00** |
| 56. | Part 2: Total vehicles, line 5 | | **$0.00** | |
| 57. | Part 3: Total personal and household items, line 15 | | **$49,000.00** | |
| 58. | Part 4: Total financial assets, line 36 | | **$2,015,190.00** | |
| 59. | Part 5: Total business-related property, line 45 | | **$0.00** | |
| 60. | Part 6: Total farm- and fishing-related property, line 52 | | **$0.00** | |
| 61. | Part 7: Total other property not listed, line 54 | + | **$0.00** | |
| 62. | Total personal property. Add lines 56 through 61... | | **$2,064,190.00** | Copy personal property total → **$2,064,190.00** |
| 63. | Total of all property on Schedule A/B. Add line 55 + line 62 | | | **$14,289,190.00** |

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Leslie Klein** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 2:23-bk-10990-SK | | |
| (if known) | | | |

■ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy

04/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Give Details About Your Marital Status and Where You Lived Before**

1.  **What is your current marital status?**

    ■ Married
    ☐ Not married

2.  **During the last 3 years, have you lived anywhere other than where you live now?**

    ■ No
    ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|

3.  **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

    ☐ No
    ■ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2    Explain the Sources of Your Income**

4.  **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
    Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
    If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

    ☐ No
    ■ Yes. Fill in the details.

| | Debtor 1 Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Debtor 2 Sources of income Check all that apply. | Gross income (before deductions and exclusions) |
|---|---|---|---|---|
| From January 1 of current year until the date you filed for bankruptcy: | ☐ Wages, commissions, bonuses, tips | $4,000.00 | ☐ Wages, commissions, bonuses, tips | |
| | ■ Operating a business | | ☐ Operating a business | |

EXHIBIT "D"                                    Page 13 of 22

Debtor 1    **Leslie Klein** _____    Case number (if known) **2:23-bk-10990-SK**

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and<br>exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions<br>and exclusions) |
| **For last calendar year:**<br>(January 1 to December 31, 2022 ) | ☐ Wages, commissions,<br>bonuses, tips | $24,000.00 | ☐ Wages, commissions,<br>bonuses, tips | |
| | ■ Operating a business | | ☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2021 ) | ☐ Wages, commissions,<br>bonuses, tips | $24,000.00 | ☐ Wages, commissions,<br>bonuses, tips | |
| | ■ Operating a business | | ☐ Operating a business | |

5.  **Did you receive any other income during this year or the two previous calendar years?**
    Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

    List each source and the gross income from each source separately. Do not include income that you listed in line 4.

    ☐ No
    ■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Describe below. | Gross income from<br>each source<br>(before deductions and<br>exclusions) | Sources of income<br>Describe below. | Gross income<br>(before deductions<br>and exclusions) |
| **From January 1 of current year until<br>the date you filed for bankruptcy:** | Social Security | $6,666.00 | | |
| | Rental Income | $25,000.00 | | |
| **For last calendar year:**<br>(January 1 to December 31, 2022 ) | Social Security | $40,000.00 | | |
| | Rental Income | $144,000.00 | | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2021 ) | Social Security | $40,000.00 | | |
| | Rental Income | $144,000.00 | | |

**Part 3:    List Certain Payments You Made Before You Filed for Bankruptcy**

6.  **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

    ■ No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $7,575* or more?

    ■ No.    Go to line 7.
    ☐ Yes    List below each creditor to whom you paid a total of $7,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

    * Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.

Debtor 1   **Leslie Klein** _____   Case number *(if known)* **2:23-bk-10990-SK**

☐   **Yes.  Debtor 1 or Debtor 2 or both have primarily consumer debts.**
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐   No.     Go to line 7.
☐   Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not
include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an
attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

7.   **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations
of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for
a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and
alimony.

■   No
☐   Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8.   **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an
insider?**
Include payments on debts guaranteed or cosigned by an insider.

■   No
☐   Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|

**Part 4:   Identify Legal Actions, Repossessions, and Foreclosures**

9.   **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody
modifications, and contract disputes.

☐   No
■   Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| In re Matter of the Franklin Henry Menlo Irrevocable Trust, et al. v. Leslie Klein BP136769 | Trust | Superior Court of California 111 Hill St. Los Angeles, CA 90012 | ■ Pending ☐ On appeal ☐ Concluded |
| The Scott Trust DTD 12/24/1992 - Trust BP172432 | Trust | Superior Court of California 111 Hill St. Los Angeles, CA 90012 | ■ Pending ☐ On appeal ☐ Concluded |
| Joseph Vago, Et Al vs. Leslie Klein 20STCV25050 | Fraud | Superior Court of California 111 Hill St Los Angeles, CA 90012 | ☐ Pending ■ On appeal ☐ Concluded |
| Leslie Klein, et al v. Rechnitz, et al 22STCV18787 | | | ☐ Pending ☐ On appeal ☐ Concluded |

EXHIBIT "D"                    Page 15 of 22

Debtor 1    **Leslie Klein**                                                                Case number *(if known)*    **2:23-bk-10990-SK**

10. Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?
Check all that apply and fill in the details below.

■ No. Go to line 11.
☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property | Date | Value of the property |
|---|---|---|---|
| | Explain what happened | | |

11. Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?
■ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?
■ No
☐ Yes

## Part 5:    List Certain Gifts and Contributions

13. Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?
■ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| Person to Whom You Gave the Gift and Address: | | | |

14. Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?
■ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600 | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| Charity's Name Address *(Number, Street, City, State and ZIP Code)* | | | |

## Part 6:    List Certain Losses

15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?

■ No
☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|

## Part 7:    List Certain Payments or Transfers

16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

Official Form 107          Statement of Financial Affairs for Individuals Filing for Bankruptcy          page 4

Debtor 1   **Leslie Klein**                                        Case number (if known)   **2:23-bk-10990-SK**

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **Law Offices of Michael Jay Berger**<br>9454 Wilshire Boulevard, 6th floor<br>Beverly Hills, CA 90212<br>michael.berger@bankruptcypower.com | **Attorney Fees** | 2/15/2023  +<br>the filing fee | $21,738.00 |
| **Levene, Neale, Bender, Yoo &<br>Golubchik**<br>2818 La Cienega Ave<br>Los Angeles, CA 90034 | $15,000.00 for legal services | 01/2023 | $15,000.00 |

17. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary? (These are often called asset-protection devices.)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

| Part 8: | List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units |
|---|---|

20. Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

Official Form 107                   Statement of Financial Affairs for Individuals Filing for Bankruptcy                   page 5

Debtor 1    **Leslie Klein**                                          Case number *(if known)*    **2:23-bk-10990-SK**

21. Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution | Who else had access to it? | Describe the contents | Do you still |
| Address (Number, Street, City, State and ZIP Code) | Address (Number, Street, City, State and ZIP Code) | | have it? |

22. Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?

■ No
☐ Yes. Fill in the details.

| Name of Storage Facility | Who else has or had access to it? | Describe the contents | Do you still |
| Address (Number, Street, City, State and ZIP Code) | Address (Number, Street, City, State and ZIP Code) | | have it? |

---

**Part 9:    Identify Property You Hold or Control for Someone Else**

23. Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.

■ No
☐ Yes.  Fill in the details.

| Owner's Name | Where is the property? | Describe the property | Value |
| Address (Number, Street, City, State and ZIP Code) | (Number, Street, City, State and ZIP Code) | | |

---

**Part 10:    Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.
■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.
■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

■ No
☐ Yes. Fill in the details.

| Name of site | Governmental unit | Environmental law, if you | Date of notice |
| Address (Number, Street, City, State and ZIP Code) | Address (Number, Street, City, State and ZIP Code) | know it | |

25. Have you notified any governmental unit of any release of hazardous material?

■ No
☐ Yes. Fill in the details.

| Name of site | Governmental unit | Environmental law, if you | Date of notice |
| Address (Number, Street, City, State and ZIP Code) | Address (Number, Street, City, State and ZIP Code) | know it | |

---

Official Form 107          Statement of Financial Affairs for Individuals Filing for Bankruptcy          page 6

Debtor 1   Leslie Klein _____   Case number (if known)  2:23-bk-10990-SK

26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.

■ No
☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>Address (Number, Street, City,<br>State and ZIP Code) | Nature of the case | Status of the<br>case |
|---|---|---|---|

**Part 11:   Give Details About Your Business or Connections to Any Business**

27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies. Go to Part 12.

■ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| Bay Area Development, Co.<br>14245 Ventura Blvd<br>Sherman Oaks, CA 91423 | real estate holding company | EIN:   95-2816693<br><br>From-To |
| Life Capital Group, LLC<br>7223 Beverly Blvd., Suite 205<br>Los Angeles, CA 90036 | investment company | EIN:<br><br>From-To |

28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.

■ No
☐ Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|

**Part 12:   Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

_____           _____
Leslie Klein                                      Signature of Debtor 2
Signature of Debtor 1

Date      3/29/2023                         Date  _____

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?
■ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?
■ No

Debtor 1   **Leslie Klein**                                                    Case number *(if known)*   **2:23-bk-10990-SK**

☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**9454 Wilshire Boulevard, 6th floor**
**Beverly Hills, CA 90212**

A true and correct copy of the foregoing document entitled (*specify*): __ **Summary of Amended Schedules, Master**
**Mailing List, and or Statements** __ will be served or was served **(a)** on the judge in chambers in the form and manner
required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On
(*date*) _3/31/23_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined
that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☑ Service information continued on attached
page

**2. SERVED BY UNITED STATES MAIL:** On (*date*) ____, I served the following persons and/or entities at the last known
addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached
page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method**
**for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ____, I served the following
persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached
page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| _3/31/23_ | Yathida Nipha | /s/Yathida Nipha |
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2015*                                    **Page 2**                          F 1007-1.1.AMENDED.SUMMARY

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

**Goe Forsythe & Hodges: Reem J Bello**   rbello@goeforlaw.com, kmurphy@goeforlaw.com
**Goe Forsythe & Hodges Robert P Goe**   kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com
**Interested Party: Alan G Tippie**   Alan.Tippie@gmlaw.com,
atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,
denise.walker@gmlaw.com
**Debtor's Counsel: Michael Jay Berger**   michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
**Interested Party: Greg P Campbell**   ch11ecf@aldridgepite.com,
gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
**Counsel for Wilmington Savings Fund: Theron S Covey**   tcovey@raslg.com, sferry@raslg.com
**Interested Party: Dane W Exnowski**   dane.exnowski@mccalla.com,
bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
**U.S. Trustee: Michael Jones**   michael.jones4@usdoj.gov
**U.S. Trustee: Ron Maroko**   ron.maroko@usdoj.gov
**Counsel for Ajax Mortgage: Joshua L Scheer**   jscheer@scheerlawgroup.com,
jscheer@ecf.courtdrive.com
**Subchapter V Trustee: Mark M Sharf (TR)**   mark@sharflaw.com,
C188@ecfcbis.com;sharf1000@gmail.com
**United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
**Interested Party: Michael L Wachtell**   mwachtell@buchalter.com
**U.S. Bank: John P. Ward**   jward@attleseystorm.com, ezhang@attleseystorm.com
**Interested Party: Paul P Young**   paul@cym.law, jaclyn@cym.law

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2015                                Page 3                          F 1007-1.1.AMENDED.SUMMARY

EXHIBIT "D"                                                                  Page 22 of 22