LOAN #: 1805012162

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.
CAEDEDL  0315
CAEDEDL (CLS)
08/02/2018 10:26 AM PST



**LOAN #: 1805012162**

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all



**LOAN #: 1805012162**

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.            Page 10 of 13            CAEDEDL  0315
CAEDEDL (CLS)
08/02/2018 10:25 AM PST



**LOAN #: 1805012162**

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.

CAEDEDL 0315
CAEDEDL (CLS)
08/02/2018 10:26 AM PST



**LOAN #: 1805012162**

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
LESLIE KLEIN                                        DATE

_____
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

**State of CALIFORNIA**
**County of LOS ANGELES**

On AUGUST 2 2018 , before me, MICHAELA LORRAINE PAULSON NOTARY PUBLIC
(here insert name and title of the officer), personally appeared LESLIE KLEIN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MICHAELA LORRAINE PAULSON (NOTARY)

(SEAL)


MICHAELA LORRAINE PAULSON
Commission # 2111177
Notary Public - California
Los Angeles County
My Comm. Expires May 11, 2019

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                        Page 12 of 13                                        CAEDEDL  0315
CAEDEDL (CLS)
08/02/2018 10:26 AM PST

EXHIBIT E
204

Page 225 of 258

**LOAN #: 1805012162**

**Lender: OCMBC, INC.**
**NMLS ID: 2125**
**Broker: C2 Financial Corporation**
**NMLS ID: 135622**
**Loan Originator: Ari Lindner**
**NMLS ID: 1255224**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                    Page 13 of 13                               CAEDEDL  0315
                                                                                               CAEDEDL (CLS)
                                                                                       08/02/2018 10:26 AM PST



                                                                           Page 226 of 258

# Exhibit A

**LEGAL DESCRIPTION**

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 186 OF TRACT NO. 4924, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 109 PAGES 30 AND 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5526-038-011



**This page is part of your document - DO NOT DISCARD**



## 20210250012



**Pages:
0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/12/21 AT 08:00AM**

| | |
|---|---|
| FEES: | 22.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 97.00 |



**L E A D S H E E T**



**201102120700071**

**00019906958**



**011818672**

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



E531953

**RECORDING REQUESTED BY:**
Fidelity National Title Company

**AND WHEN RECORDED MAIL TO:**

Kenneth Klein and Shoshana Shifra Klein
306 North Highland Avenue
Los Angeles, CA  90036

THIS SPACE FOR RECORDER'S USE ONLY:

Title Order No.: 00281934                                              Escrow No.: 17409-JP

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $0.00**
**"This is a bonafide gift and the grantor received nothing in return, R & T 11911."**
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area    [X] City of Los Angeles **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Leslie Klein, a Widower**

hereby GRANT(s) to:

**Kenneth Klein and Shoshana Shifra Klein, Husband and Wife as Joint Tenants**

the real property in the City of Los Angeles, County of Los Angeles, State of California, described as:
Lot 22 of Tract No. 8320 as per Map recorded in Book 98, Pages 41 to 43 inclusive of Maps, in the Office of the
County Recorder of said County.
Also Known as: 306 North Highland Avenue, Los Angeles, CA  90036
AP#: 5524-037-011
Dated February 9, 2021

_____
Leslie Klein

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF *L-s Angeles*
On *0 2/09/2021* before me, *Seung H. Kim ( Notary public)* A Notary Public personally
appeared *Leslie Klein* who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.
WITNESS my hand and official seal.

Signature _____

SEUNG H. KIM
Notary Public – California
Los Angeles County
Commission # 2191919
My Comm. Expires Apr 15, 2021

(Seal)

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE

*ACCOMMODATION RECORDING* (vertical left margin)



| Attorney or Party without Attorney:<br>Brian Procel (SBN 218657)<br>Procel Law PC<br>401 Wilshire Blvd 12th Floor<br>Santa Monica, CA 90401<br>  *Telephone No:* | | For Court Use Only |
|---|---|---|
| *Attorney For:*   Plaintiff | *Ref. No. or File No.:*<br>Vago V. Klein | |

| Insert name of Court, and Judicial District and Branch Court:<br>Superior Court of California, County Los Angeles - Stanley Mosk Courthouse | | | | |
|---|---|---|---|---|
| *Plaintiff:*   Erica Vago<br>*Defendant:*   Leslie Klein | | | | |
| **AFFIDAVIT OF DUE DILIGENCE** | *Hearing Date:*<br>February 15, 2023 | *Time:*<br>8:30 am | *Dept/Div:* | *Case Number:*<br>20STCV25050 |

1. I, Mohammad Rafiquzzaman 6600, Los Angeles , and any employee or independent contractors retained by FIRST LEGAL are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on subject Leslie Klein as follows:

2. *Documents:* Deposition Subpoena for Personal Appearance and Production of Documents and Things; Application and Order for Appearance and Examination; Plaintiff's First Set Of Judgment Debtor Requests For Production To Leslie Klein Pursuant To Civil Procedure Code §708.010

| Attempt Detail |
|---|

1) Unsuccessful Attempt by: Mohammad Rafiquzzaman (6600, Los Angeles) on: Jan 20, 2023, 6:02 pm PST at 322 N June St, Los Angeles, CA 90004
No answer at the door, but I can hear movement inside. It sounds like someone in the home is being evasive. Saw the shadow through peephole.

2) Unsuccessful Attempt by: Mohammad Rafiquzzaman (6600, Los Angeles) on: Jan 21, 2023, 8:41 am PST at 322 N June St, Los Angeles, CA 90004
No answer at the door, but I can hear movement inside. It sounds like someone in the home is being evasive.

3) Unsuccessful Attempt by: Mohammad Rafiquzzaman (6600, Los Angeles) on: Jan 22, 2023, 3:22 pm PST at 322 N June St, Los Angeles, CA 90004
No answer at the door, but I can hear movement inside. It sounds like someone in the home is being evasive.

4) Unsuccessful Attempt by: Mohammad Rafiquzzaman (6600, Los Angeles) on: Jan 23, 2023, 8:23 pm PST at 322 N June St, Los Angeles, CA 90004
No answer at the door, but I can hear movement inside. It sounds like someone in the home is being evasive.

5) Unsuccessful Attempt by: Mohammad Rafiquzzaman (6600, Los Angeles) on: Jan 25, 2023, 8:23 pm PST at 322 N June St, Los Angeles, CA 90004
No answer and no activity seen in the home. The property looks dark.

6) Unsuccessful Attempt by: Mohammad Rafiquzzaman (6600, Los Angeles) on: Jan 26, 2023, 1:42 pm PST at 322 N June St, Los Angeles, CA 90004
Not answering the door. I can hear movement. Two vehicles parked.



**AFFIDAVIT OF**
**DUE DILIGENCE**

*8264241*
*(5206479)*
**Page 1 of 2**

| Attorney or Party without Attorney: Brian Procel (SBN 218657) Procel Law PC 401 Wilshire Blvd 12th Floor Santa Monica, CA 90401 Telephone No: | | | | For Court Use Only |
|---|---|---|---|---|
| Attorney For:    Plaintiff | Ref. No. or File No.: Vago V. Klein | | | |
| Insert name of Court, and Judicial District and Branch Court: Superior Court of California, County Los Angeles - Stanley Mosk Courthouse | | | | |
| Plaintiff:    Erica Vago Defendant:    Leslie Klein | | | | |
| **AFFIDAVIT OF DUE DILIGENCE** | Hearing Date: February 15, 2023 | Time: 8:30 am | Dept/Div: | Case Number: 20STCV25050 |

Recoverable cost Per CCP 1033.5(a)(4)(B)

*3. Person Who Served Papers:*
   a. Mohammad Rafiquzzaman (6600, Los Angeles)
   **b. FIRST LEGAL**
      1517 W. Beverly Blvd.
      LOS ANGELES, CA 90026
   c. (213) 250-1111

   **d. *The Fee*** for Service was:
   e. I am: A Registered California Process Server

4.    *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.*

01/30/2023
_____
*(Date)*

_____
*(Signature)*

**FL**
FIRST LEGAL

**AFFIDAVIT OF**
**DUE DILIGENCE**

8264241
*(5206479)*
**Page 2 of 2**

FOR REFERENCE ONLY: 20230042759

RECORDING REQUESTED BY:

OLD REPUBLIC TITLE

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

| | | |
|---|---|---|
| APN: 5526-038-011 | TS No: CA08000405-20-1 | TO No: 02-20030904 |

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED August 2, 2018. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

On **February 28, 2023** at 10:00 AM, behind the fountain located in the Civic Center Plaza, 400 Civic
Center Plaza, Pomona CA 91766, MTC Financial Inc. dba Trustee Corps, as the duly Appointed
Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded on
August 6, 2018 as Instrument No. 20180786346, of official records in the Office of the Recorder of Los
Angeles County, California, executed by LESLIE KLEIN, A WIDOWER, as Trustor(s), in favor of
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, as nominee for OCMBC,
INC. as Beneficiary, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER**, in lawful money of
the United States, all payable at the time of sale, that certain property situated in said County, California
describing the land therein as: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is". The street address and other common
designation, if any, of the real property described above is purported to be: 315 N. MARTEL AVE, LOS
ANGELES, CA 90036
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other
common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with
interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust,
estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

**DOC # 2023-0038554**

02/09/2023 12:11 PM Fees: $108.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

Recording requested by:
QUALITY LOAN SERVICE CORPORATION

When recorded mail to:
Quality Loan Service Corporation
2763 Camino Del Rio South
San Diego, CA 92108

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: TERESA #134

---

TS No.  **CA-22-912800-CL**
Order No.: **DEF-409262**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 7/5/2005. UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this
state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or
implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by
the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the
Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the
initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on
the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

| | | |
|---|---|---|
| Trustor(s): | **LESLIE KLEIN AND ERIKA KLEIN** | |
| Recorded: | 8/11/2005 as Instrument No. **2005-0654449** | of Official Records in the office of the |
| | Recorder of **RIVERSIDE** County, California; | |

Date of Sale:    **3/22/2023 at 9:00 AM**
Place of Sale;    **2410 Wardlow Road #111, Corona, CA 92880, in the Auction.com Room**
Amount of unpaid balance and other charges: **$152,948.70**
The purported property address is:    **2560 N WHITEWATER CLUB DR #B, PALM SPRINGS, CA 92262-
2672**

Assessor's Parcel No.: **501-500-033**

Electronically FILED by Superior Court of California, County of Los Angeles 11/15/2022 10:24 AM Sherri R. Carter, Executive Officer/Clerk, By R. Servando, Deputy Clerk

Case 2:23-bk-10990-SK    Doc 79-3    Filed 04/24/23    Entered 04/24/23 15:15:14    Desc
Exhibit Exhibit E    Pt 3 & Exhibit F    Page 15 of 56

1  Alex M. Weingarten (SBN 204410)
    AWeingarten@willkie.com
2  Logan M. Elliott (SBN 268105)
    LElliott@willkie.com
3  Matthew J. Busch (SBN 307396)
    MBusch@willkie.com
4  Vanessa Rodriguez (SBN 342669)
    VRodriguez@willkie.com
5  **WILLKIE FARR & GALLAGHER LLP**
    2029 Century Park East, Suite 3400
6  Los Angeles, CA 90067
    Telephone:    (310) 855-3000
7
    Attorneys for Petitioner CO-TRUSTEE JEFFREY WINTER
8
9                **SUPERIOR COURT OF CALIFORNIA**

10        **COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

11  In the Matter of                          CASE NO.: BP136769[1]
                                              [Consolidated/Related to 24 Cases]
12
                                              Assigned for All Purposes to
13  FRANKLIN HENRY MENLO                      Hon. Ana Maria Luna, Dept. 3
    IRREVOCABLE TRUST ESTABLISHED
14  MARCH 1, 1983                             **CO-TRUSTEE JEFFREY WINTER'S *EX
                                              PARTE* APPLICATION FOR TEMPORARY
15                                            RESTRAINING ORDER ENJOINING
                                              LESLIE KLEIN'S DISPOSITION OF
16  LESLIE KLEIN, TRUSTEE,                    ASSETS AND REQUESTING DISCLOSURE
                                              OF ASSETS; MEMORANDUM OF POINTS
17          Respondent,                       AND AUTHORITIES IN SUPPORT
                                              THEREOF**
18  LES KLEIN & ASSOCIATES, INC.,
                                              [*Filed concurrently with the Declaration of Alex
19          Respondent.                       M. Weingarten; Declaration of Jeffrey Winter;
                                              and [Proposed] Order*]
20
                                              Date:        November 15, 2022
21                                            Time:        8:30 a.m.
                                              Dept.:       3
22
                                              Action Filed: September 18, 2012
23
24
25
26
    ──────────────
27  [1] Consolidated/Related to Case Nos.: BP139977; BP139978; BP139999; BP140000; BP140001;
    BP140002; BP140003; BP140004; BP140005; BP140007; BP140008; BP140009; BP140010;
28  BP140011; BP140012; BP140013; BP140015; BP140016; BP140017; BP140018;
    BP140019; BP140020; and BP154676.

57030854

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 15, 2022, at 8:30 a.m., or as soon thereafter as the matter can be heard, before the Honorable Ana Maria Luna, Department 3 of the Los Angeles County Superior Court, located at 111 N. Hill Street, Los Angeles, California 90012, Petitioner Jeffrey Winter ("Jeffrey"), Co-Trustee of the twenty-four irrevocable trusts at issue in this action ("Menlo Trusts") will and hereby do bring this *ex parte* application (the "Application") pursuant to California Rule of Court 3.1200 *et seq.* against respondent Leslie Klein ("Klein"), predecessor trustee of the Menlo Trusts.  Specifically, Co-Trustee Jeffrey seeks: (1) a temporary restraining order; (2) an order requiring Klein to disclose all assets he, or entities with which he is associated including but not limited to Les Klein & Associates, the Bay Area Development Corporation, or the Kagan Family Trust, owns, controls or has an interest in; and (3) an order to show cause regarding a preliminary injunction.

### Temporary Restraining Order

Pursuant to California Civil Procedure Code Section 527, Co-Trustee Jeffrey seeks an *ex parte* order enjoining Klein from transferring, selling, disposing of, encumbering, or hypothecating any real property, bank accounts, brokerage accounts, cash, chattels, personal property, securities, and safe deposit boxes in which Klein is affiliated, has the authority to control or encumber, or has any ownership interest in, including but not limited to assets held by Les Klein & Associates, the Bay Area Development Company, or the Kagan Family Trust (the "Affiliated Assets").

Further, pursuant to California Civil Procedure Code Section 527, Co-Trustee Jeffrey seeks an order requiring Klein to immediately disclose and identify all Affiliated Assets, including the location, addresses, account numbers, ownership information, and all pertinent information relating to all Affiliated Assets.

### Order To Show Cause Regarding Preliminary Injunction

Further, pursuant to California Civil Procedure Code Section 527, Co-Trustee Jeffrey seeks requests an order directing Klein to show cause as to why he should not be enjoined from transferring, selling, disposing of, encumbering, or hypothecating any Affiliated Assets pending

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

CO-TRUSTEE JEFFREY WINTER'S *EX PARTE* APPLICATION FOR TRO AND
ORDER REQUIRING DISCLOSURE OF ASSETS

1  resolution of the underlying Petitions to Remove and Suspend Leslie Klein as Trustee filed on

2  September 18, 2012 and March 22, 2013.

3            **Good Cause Exists For This Ex Parte Application**

4            Good cause exists for this Application.  Klein has spent years meticulously looting

5  millions of dollars from the Menlo Trusts, which was fully exposed to the light of day on August

6  29, 2022.  On that day, Judge Reiser issued his comprehensive eighty-four page report and

7  recommendation (the "R&R"), and revealed that: (1) Klein's removal "appears to be a *fait*

8  *accompli*;" and (2) that Klein embezzled from the Menlo Trusts $19,225,065 through an

9  "elaborate scheme" to pay himself "with stunning frequency" by commingling assets, cross-

10  borrowing among the Menlo Action Trusts, taking loans against trust assets, and cross-paying

11  debts.  Declaration of Alex M. Weingarten ("Weingarten Decl."), Ex. 15.  As a result, on

12  September 16, 2022, this Court suspended Klein as Trustee of the Menlo Trusts and appointed

13  the Co-Trustees as interim successor trustees bringing an end to Klein's breathtaking

14  misappropriation scheme.  Weingarten Decl., Ex. 22.

15            On October 19, 2022, the Co-Trustees filed an application for a right to attach order and

16  writ of attachment to ensure that Klein does not disappear with the money he stole from the

17  Menlo Trusts ("Attachment Application").  And, on November 10, 2022, the Court issued a

18  temporary restraining order pending the hearing on the Attachment Application (the "November

19  10 TPO") which states that "Klein shall not transfer, sell, dispose of, encumber or hypothecate

20  any non-exempt property owned by him including, but not limited to, his interest in real

21  property, personal property, equipment, motor vehicles, chattel paper, negotiable and other

22  instruments, securities, deposit accounts, safe deposit boxes, accounts receivable and general

23  intangibles except as authorized by C.C.P. Section 486.060."  *Id.*  Yet, undisclosed by Klein and

24  unbeknownst to the Co-Trustees, beneficiaries, and the Court at the November 10 hearing, Klein

25  was actively scheming that very day to sell at least two residential properties located at 507 N

26  Mansfield Ave., Los Angeles, CA 90036-2011 and 143 S Highland Ave, Los Angeles, CA

27  90036-3028 to frustrate the beneficiaries' eventual recovery.  *See generally*, Declaration of

28  Jeffrey Winter.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

2

1     Klein should be temporarily enjoined from disposing of the Affiliated Assets and should

2   be required to disclose all pertinent information relevant to identifying and monitoring any and

3   all Affiliated Assets.  The Menlo Beneficiaries[2] have a strong probability of prevailing on the

4   merits of their underlying breach of fiduciary duty claims against Klein because the R&R is

5   entitled to the presumption that its findings of embezzlement, failure to account, co-mingling of

6   assets, and failure to abide by the terms of the Menlo Trusts are based on competent and

7   sufficient evidence.  *See Brodie v. Barnes*, 56 Cal. App. 2d 315, 319 (1942) (holding a report

8   issued on a specific reference carries a "presumption that [it is] based on competent and

9   sufficient evidence" to which the non-prevailing party carries the burden of proving any

10   exception by admissible evidence).  And, Klein never produced any evidence at trial that could

11   meet his burden to overcome this presumption of validity.  *See* Weingarten Decl., Ex. 15 at

12   78:21, 30:2-6 (Judge Reiser noting in the R&R that Klein presented "no response" to the Menlo

13   Beneficiaries' charge that Klein embezzled $19,225,065 and presented no witnesses to dispute

14   the accuracy of the misappropriation calculations).  To be sure, this Court already afforded "great

15   weight" to the R&R in finding that there is a strong probability that the Menlo Beneficiaries'

16   claim will prevail when the Court suspended Klein as trustee on September 16, 2022.  Moreover,

17   Klein's documented embezzlement of millions of dollars from the trusts under his control with a

18   principal goal to "render the scope and breadth of [his] misappropriations incalculable and

19   untraceable" is strong evidence that the Co-Trustees' Attachment Application will be meritorious

20   to ensure that the Menlo Beneficiaries do not suffer irreparable harm as a result of Klein evading

21   payment of his eventual surcharge.  Klein's attempt to secretly sell properties in direct

22   contravention of this Court's November 10 TPO is in itself an admission by Klein that the

23   Attachment Application is likely to be granted.

24     Further, the balance of the equities weighs in the Menlo Beneficiaries' favor and against

25   Klein.  The Menlo Beneficiaries have already been substantially injured by Klein's demonstrable

26   theft and misappropriation of the Menlo Trust's assets.  An order requiring Klein to disclose his

27

28   [2] The twenty-four beneficiaries of the Menlo Trusts are referred to herein as the "Menlo
Beneficiaries."

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

3

1    Affiliated Assets and enjoining Klein from disposing of these Affiliated Assets before

2    attachment can issue is necessary to maintaining the status quo and protecting the Menlo

3    Beneficiaries' right to recuperate the millions stolen from them.  The Menlo Beneficiaries will be

4    further harmed if Klein is permitted to circumvent this Court's order by disposing of the

5    Affiliated Assets before such property can be attached.  Klein cannot feign prejudice from an

6    order designed to monitor and curb Klein's efforts to avoid his eventual surcharge.  This is

7    especially true given that within hours of the issuance of the November 10 TPO, evidence had

8    already surfaced that Klein is brazenly attempting to circumvent the November 10 TPO by

9    disposing of Affiliated Assets to avoid attachment and an eventual judgment.  The relief

10   requested herein is consistent with the November 10 TPO enjoining Klein from selling his own

11   property.

12        **Notice Of This Ex Parte Application**

13        On November 15, 2022, at approximately 8:30 a.m., Co-Trustee Jeffrey's counsel

14   emailed Klein and Klein's counsel to provide notice of this *ex parte* application.  Weingarten

15   Decl. ¶ 34, Ex. 29.

16        **Identification Of Attorney Or Party**

17        Pursuant to California Rule of Court 3.1202(a), the contact information for Klein and his

18   counsel is as follows:

19        Leslie Klein
         Les Klein & Associates, Inc., A Professional Law Corporation
20       14245 Ventura Blvd., 3rd Floor
         Sherman Oaks, CA 91423
21       Email: les.kleinlaw@gmail.com

22        Terence S. Nunan
         Alan D. Weinfeld
23       Parker, Milliken, Clark, O'Hara & Samuelian,
         A Professional Corporation
24       555 S. Flower Street, 30th Floor
         Los Angeles, CA 90071
25       Email: tnunan@pmcos.com
         Email: aweinfeld@pmcos.com
26
         Michael L. Wachtell
27       Buchalter, A Professional Corporation
         1000 Wilshire Blvd., Suite 1500
28       Los Angeles, CA 90017

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854                                    4

1  Email: mwachtell@buchalter.com

2  Candice K. Rogers
   Hahn & Hahn LLP
3  301 E. Colorado Blvd., Ninth Floor
   Pasadena, CA 91101-1977
4  Email: crogers@hahnlawyers.com

5  Michael D. Shore
   Shore Law Offices
6  270 N Canon Dr. 3rd Fl,
   Beverly Hills, CA 90210
7  Email: mshore@shorecal.com

8  **Disclosure of Previous Applications**

9       Co-Trustee Jeffrey has not previously sought an application of the same character or for

10  the same relief.  *See* Cal. R. Ct. 3.1202(b).

11      This Application is based on the foregoing, the attached Memorandum of Points and

12  Authorities, the Declaration of Alex M. Weingarten and the Declaration of Jeffrey Winter,

13  submitted concurrently herewith, the [Proposed] Order submitted concurrently herewith, the

14  pleadings and papers on file in this action, and other such evidence and argument as may be

15  presented at or before the hearing of this matter.

16   Dated:  November 15, 2022              **WILLKIE FARR & GALLAGHER LLP**

17

18                                          By:
                                               Alex M. Weingarten
19                                             Logan M. Elliott
                                            Attorneys for Petitioner
20                                          CO-TRUSTEE JEFFREY WINTER

21

22

23

24

25

26

27

28

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

5

CO-TRUSTEE JEFFREY WINTER'S *EX PARTE* APPLICATION FOR TRO AND
ORDER REQUIRING DEPOSIT OF TRUST ASSETS
EXHIBIT E
219

# **TABLE OF CONTENTS**

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 3 |
|     Sam And Vera Menlo Establish Trusts For The Benefit Of Their Family | 3 |
|     Twenty-Four Beneficiaries Of The Menlo Trusts Initiate This Action To Stop Klein's Theft Of Trust Assets | 3 |
|     Klein Submits Bogus Accountings Set For Trial Before Judge Reiser | 4 |
|     Klein Steals From Other Winter Beneficiaries Who Initiate Separate Litigation Against Klein | 4 |
|     Judge Reiser Finds Klein Committed Staggering Embezzlement In This Case And Orders A $30,401,823 Surcharge Against Klein | 5 |
|     The Court In The Menlo Action Suspends Klein As Trustee And Appoints Jeffrey Winter And Frank Menlo As Interim Co-Trustees | 7 |
|     Co-Trustees File An Application For Writ Of Attachment And Right To Attach Order | 7 |
|     Klein Schemes To Sell Properties To Avoid Attachment | 8 |
|     Klein Pays His Personal Attorney Using Trust Funds In Violation of This Court's September 16 Order Freezing Trust Accounts | 8 |
| ARGUMENT | 9 |
| I.    THERE IS A STRONG PROBABILITY THAT THE MENLO BENEFICARIES WILL PREVAIL ON THE MERITS | 10 |
| II.   THE BALANCE OF HARMS WEIGHS IN FAVOR OF ISSUING INJUNCTIVE RELIEF | 14 |
| CONCLUSION | 15 |

57030854

i

# **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Brodie v. Barnes*
56 Cal. App. 2d 315 (1942) ...............................................................................................11

*Cont'l Baking Co. v. Katz*
68 Cal. 2d 512 (1968) ....................................................................................................9, 13

*Donahue v. Donahue*
182 Cal. App. 4th 259 (2010) ...........................................................................................11

*Heckmann v. Ahmanson*
168 Cal. App. 3d 119 (1985) .............................................................................................14

*Jones v. Stubbs*
136 Cal. App. 2d 490 (1955) .............................................................................................12

*Landmark Holding Grp. Inc. v. Superior Court*
193 Cal. App. 3d 525 (1987) ...............................................................................................9

*Ruisi v. Thieriot*
53 Cal. App. 4th 1197 (1997) .........................................................................................2, 11

*Shoemaker v. Cty. of Los Angeles*
37 Cal. App. 4th 618 (1995) ..............................................................................................14

*Toedter v. Bradshaw*
164 Cal. App. 2d 200 (1958) .......................................................................................11, 12

*Van de Kamp v. Bank of Am.*
204 Cal. App. 3d 819 (1988) .............................................................................................12

*Voorhies v. Greene*
139 Cal. App. 3d 989 (1983) .............................................................................................10

*W. Steel & Ship Repair, Inc. v. RMI, Inc.*
176 Cal. App. 3d 1108 (1986) ...........................................................................................14

*White v. Davis*
30 Cal.4th 528 (2003) .........................................................................................................9

*Wind v. Herbert*
186 Cal. App. 2d 276 (1960) .............................................................................................15

**Statutes**

Cal. Civ. Proc. Code § 484.090 ...............................................................................................13

Cal. Civ. Proc. Code § 639 .......................................................................................................11

Cal. Prob. Code § 16006 ..........................................................................................................12

Cal. Prob. Code § 16060 ..........................................................................................................12

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

CO-TRUSTEE JEFFREY WINTER'S *EX PARTE* APPLICATION FOR TRO AND
ORDER REQUIRING DISGORGEMENT OF ASSETS

1

Cal. Prob. Code § 16061 ................................................................................................................12

2

Cal. Prob. Code § 16040 ................................................................................................................12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

iii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## PRELIMINARY STATEMENT

3        Leslie Klein evidently believes he is above this Court's orders.  On November 10, 2022

4    this court issued a temporary protective order in "the interest of equity and justice" stating that

5    "Klein shall not transfer, sell, dispose of, encumber or hypothecate any non-exempt property

6    owned by him including, but not limited to, his interest in real property, personal property,

7    equipment, motor vehicles, chattel paper, negotiable and other instruments, securities, deposit

8    accounts, safe deposit boxes, accounts receivable and general intangibles except as authorized by

9    C.C.P. Section 486.060" (the "November 10 TPO").  Declaration of Alex M. Weingarten

10    ("Weingarten Decl."), Ex. 24.  Yet, unbeknownst to the parties at the November 10 hearing,

11    Klein surreptitiously schemed to sell at least two residential properties he owns *indirectly* to

12    frustrate the Menlo Beneficiaries' eventual recovery in this case.  To be clear, Klein was engaged

13    in a clandestine plot to liquidate his assets even as this Court was issuing an order requiring him

14    to preserve them.  There is no other way to put it: Klein is a fraud who will say and do anything.

15    An order should issue on an *ex parte* basis requiring Klein to identify his assets, owned directly

16    and indirectly, and prohibiting the sale of all such assets consistent with the November 10 TPO.

17        On November 10, 2022, shortly after the November 10 TPO was issued, the Co-Trustees

18    discovered Klein attempted to sell, at fire sale prices evidencing an effort to liquidate these assets

19    as quickly as possible, properties he owns and controls located at 507 N Mansfield Ave., Los

20    Angeles, CA 90036-2011 ("Mansfield Property") and 143 S Highland Ave, Los Angeles, CA

21    90036-3028 ("Highland Property").  Klein owns the Mansfield Property through the Bay Area

22    Development Company ("BADC"), a company for which Klein serves as the Chief Executive

23    Officer.  Klein owns the Highland Property through the Kagan Family Trust although Klein's

24    realtor Jonathan Adams has confirmed that Klein is the *de facto* owner of the property.  There is

25    no telling what other assets Klein is attempting to offload to frustrate the beneficiaries' eventual

26    recovery in this case.

27        There is ample good cause to temporarily enjoin Klein from transferring, selling,

28    disposing of, encumbering, or hypothecating any real property, bank accounts, brokerage

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

57030854                                                          1

1    accounts, cash, chattels, personal property, securities, and safe deposit boxes in which Klein is

2    affiliated, has the authority to control or encumber, or has any ownership interest in, including

3    but not limited to assets held by Les Klein & Associates, BADC, or the Kagan Family Trust (the

4    "Affiliated Assets") and require Klein to disclose the Affiliated Assets. The Menlo Beneficiaries

5    have a strong probability of prevailing on their underlying breach of fiduciary duty claims

6    against Klein because substantial evidence shows that Klein systematically embezzled millions

7    of dollars from the Menlo Trusts, utilized more than a million dollars of the Trust's assets as his

8    own overdraft protection, comingled his assets and his other clients' assets with the Menlo

9    Trust's assets, and failed to abide by the terms of the Trust. Judge Reiser's R&R – confirming in

10    minute detail that Klein engaged in this wanton malfeasance – is afforded "great weight" and is

11    presumptively valid. *Ruisi v. Thieriot*, 53 Cal. App. 4th 1197, 1208 (1997). There is a

12    substantial probability that a final judgment in accordance with the R&R will be entered on the

13    Menlo Beneficiaries' claim as: (1) Klein cannot carry his burden of rebutting the presumption

14    that the R&R is based on competent and sufficient evidence; and (2) this Court already

15    determined there is a strong probability that the Menlo Beneficiaries' claim will prevail by

16    granting the beneficiaries' *ex parte* applications to suspend Klein on September 16, 2022.

17      The balance of harms also favors granting the requested relief. The relief is necessary to

18    ensure that the Menlo Beneficiaries do not suffer irreparable harm as a result of Klein disposing

19    of all of his Affiliated Assets to avoid payment of his eventual surcharge. It is well documented

20    that Klein's embezzlement scheme involves rendering the Trust's assets "untraceable" and there

21    is a legitimate concern that with his personal piggy bank (the Menlo Trusts) now cut off, Klein

22    may attempt to sell off his assets and disappear with the $19,225,065 he stole from the Menlo

23    Trusts. Conversely, Klein faces no cognizable harm given that the Court already issued the

24    November 10 TPO enjoining Klein's sale of his property. A further temporary restraining order

25    broadening the scope of the November 10 TPO to include the Affiliated Assets and requiring

26    Klein to disclose the Affiliated Assets will not further prejudice Klein. Immediate relief is

27    necessary to maintain the status quo pending the hearing on the Attachment Application and

28    ensure that the Menlo Beneficiaries will be able to collect the monies due to them.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

## STATEMENT OF FACTS

### Sam And Vera Menlo Establish Trusts For The Benefit Of Their Family

Sam Menlo ("Sam") and Vera Menlo ("Vera") married in 1956. *See* Petition for Removal, Mar. 22, 2013. During their lifetime together, Sam and Vera amassed significant wealth and had five children: Franklin Henry Menlo, Deborah Menlo Deutsch, Norine Eve Menlo, Judith Menlo Frankel, and Madeline Menlo Lipschitz. *See generally*, *id*. Together as Trustors, Sam and Vera established at least ninety-six irrevocable trusts for each of their children, grandchildren, and future generations including the twenty-four trusts at issue herein (collectively, the "Menlo Trusts"). *Id*. The Menlo Trusts were funded by cash, securities, and life insurance policies on Sam's and Vera's lives. *Id*. Klein has served as sole trustee of the Menlo Trusts since their inception. *Id*.

### Twenty-Four Beneficiaries Of The Menlo Trusts Initiate This Action To Stop
### Klein's Theft Of Trust Assets

Klein is a licensed attorney with a long and proven history of professional misconduct, including misappropriation and commingling of client funds. *See* Weingarten Decl., Ex. 1, at ¶¶ 18–19. As a result, the State Bar of California suspended Klein's law practice license in 1992 and again in 1995. *Id*.

Klein applied his honed embezzlement skills in the course of his stewardship of the Menlo Trusts. *See* Petition for Removal, Sept. 18, 2012. On September 18, 2012, Franklin Menlo filed a petition on behalf of similarly situated Menlo trust beneficiaries against Klein, seeking Klein's removal as trustee, demanding an accounting and requesting surcharge. *See* Petition for Removal, Sept. 18, 2012. On March 22, 2013, twenty-four beneficiaries of the Menlo Trusts filed separate petitions on behalf of their trusts that were ultimately consolidated in Department 3 of this Court. *See* Petition for Removal, Mar. 22, 2013. The beneficiaries contend in their March 2013 verified petitions that Klein breached his fiduciary duties as Trustee by, among other things, misappropriating millions of dollars of funds and assets and establishing lines of credit using the trusts as collateral for his own use and benefit. *Id*.

57030854

3

1    **Klein Submits Bogus Accountings Set For Trial Before Judge Reiser**

2    Klein submitted numerous erroneous, incomplete, and misleading accountings in

3    violation of his fiduciary duties between 2013 and 2018. *See* First Account and Report of

4    Trustee and Petition for Approval, filed Sept. 18, 2013; Second Account and Report of Trustee

5    and Petition for Approval, filed April 19, 2018; Amended Second Account and Report of Trustee

6    and Petition for Approval, filed May 7, 2019; Third Account and Report of Trustee and Petition

7    for Approval, filed Oct. 25, 2019. Klein has not filed an accounting reflecting any trust period

8    following September 30, 2018 (a nearly four year time-span). *See* Weingarten Decl., Ex. 15.

9    On September 15, 2021, this Court appointed the Hon. Glen M. Reiser (Ret.) as Referee

10   under Civil Procedure Code Section 639(a)(1) to conduct consecutive trials on Klein's three

11   pending accounting petitions in this case (the "Accounting Trials"). Order Appointing Referee,

12   Sept. 15, 2021. The September 15 Referee appointment permitted the Referee to decide the

13   amounts of surcharge resulting from a review of Klein's accountings including enhanced

14   damages under Probate Code Sections 850 and 859. *Id.*

15   **Klein Steals From Other Winter Beneficiaries Who Initiate Separate Litigation**

16   **Against Klein**

17   The Menlo Beneficiaries recently discovered that Klein's rampant theft extends beyond

18   the twenty-four trusts in this action and includes trusts belonging to other members of the Winter

19   family (the "Second Winter Petitioners").[3] Weingarten Decl., Exs. 1-4.

20   On February 28, 2022, Klein sent letters to the Second Winter Petitioners listing the total

21   assets on hand for each of their trusts (the "Second Winter Petitioners' Trusts") as of December

22   31, 2021. *Id.* Klein served as Trustee of the Second Winter Petitioners' Trusts since their

23   inception. *Id.* The February 28 letters reveal that Klein virtually emptied the funds in Allan

24   Winter's Trust and removed significant funds from the remaining Second Winter Petitioners'

25   Trusts. *Id.* Allan Winter's Trust account at UBS holds only $444.81 in assets as of December

26

27   [3] The "Second Winter Petitioners" refer to Allan Winter, Emily Winter, Sarah Winter, and

28   Shelley Winter – Norine Winter and Jeffrey Winter's youngest children who are not parties to
this Action.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854                                        4
CO-TRUSTEE JEFFREY WINTER'S *EX PARTE* APPLICATION FOR TRO AND
ORDER REQUIRING DEBTOR TO TURN OVER ASSETS
EXHIBIT E
226
Page 247 of 288

1    31, 2021. *Id*. The steep diminution in value of these trusts' assets defies logic given that Sam

2    and Vera funded each of the Second Winter Petitioners' with $25,000 to $30,000 per year from

3    their inception until December 31, 2013. *Id*. Accordingly, at a minimum, Allan Winter's Trust

4    account should hold at least $392,000. *Id*. Similarly, Emily Winter's Trust account at UBS

5    holds only $182,097.13 as of February 28, 2022, when it should hold at least $320,000. *Id*. And,

6    Klein removed at least $72,000 from Sarah Winter's Trust and at least $95,000 from Shelley

7    Winter's Trust as of June 30, 2022. *Id*.

8         On July 20, 2022, the Second Winter Petitioners initiated probate litigation to remove

9    Klein as trustee and for damages. Weingarten Decl., Exs. 1-4. The Second Winter Petitioners'

10   July 20 removal petitions seek: (1) Klein's suspension and removal as Trustee of the Second

11   Winter Petitioner Trusts, and (2) remedies for Klein's breaches of trust and breaches of fiduciary

12   duty by stealing funds from the Second Winter Petitioner Trusts. *See id*. These cases (Case Nos.

13   22STPB07135, 22STPB07138, 22STPB07143, and 22STPB07148) have been related and

14   consolidated in Department 3.

15        <u>**Judge Reiser Finds Klein Committed Staggering Embezzlement In This Case And**</u>

16        <u>**Orders A $30,401,823 Surcharge Against Klein**</u>

17        On August 29, 2022, Judge Reiser issued his report and recommendation (the "R&R")

18   following trials held from December 15, 2021 through March 30, 2022. Weingarten Decl., Ex.

19   15. Following Judge Reiser's consideration of "thousands of pages of documentary exhibits

20   beyond the accounts themselves" and expert forensic accounting testimony, Judge Reiser

21   excoriated Klein for his wanton theft of trust assets. *Id*. at 16:19-20. Judge Reiser found:

22

23        [T]hat through an elaborate scheme to pay himself by co-mingling assets; cross-
         borrowing among 24 Trusts; taking loans against trust assets and cross-paying
24       debts -- filtered with stunning frequency through Klein's personal and business
         accounts with multiple other sources of income and receipts and outgoing
25       payments, Klein was able to collectively embezzle millions of dollars from the
         Menlo Trusts.

26   *Id*. at 48:11–15. Judge Reiser determined that Klein maximized his co-mingling of trust

27   accounts "to render the scope and breadth of Klein's misappropriations incalculable and

28   untraceable." *Id*. at 30 n. 31. Judge Reiser further found that, among other conduct:

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854                                    5

CO-TRUSTEE JEFFREY WINTER'S *EX PARTE* APPLICATION FOR TRO AND
ORDER REQUIRING DEPOSIT OF TRUST ASSETS
EXHIBIT E
227
Page 248 of 258

1  • "Klein has managed the 24 Menlo Trusts principally for his own personal benefit and enrichment;"

2

3  • "Klein embezzled what has been accurately calculated to be $19,225,065 in Trust assets for which he has no response;"

4  • "Klein refused to account for many years until forced to do so by the Court, and, even after a decade of litigation, still refuses to account for 156 years of collective trust management;"

5

6  • "Klein has borrowed many millions of dollars against Trust assets as to which he has never shown any interest in repaying;"

7

8  • "Klein has deliberately filtered thousands of Trust transactions through his own attorney-client trust account;"

9  • "Klein torpedoed $20,000,000 in valuable Trust life insurance policies because of his compulsion to divert Menlo Trust assets for non-Trust purposes for no legitimate reason;"

10

11  • "Klein unabashedly used Menlo Trust accounts as overdraft protection on his personal credit cards as a means to misappropriate many additional hundreds of thousands of Trust dollars;"

12

13  • "Klein submitted 72 incomplete and misleading accountings to the Court intending to mask his many years and millions of dollars of fiduciary misappropriation."

14

15  *See* Weingarten Decl., Ex. 15 at 78:17-79:8.

16  Judge Reiser further found that Klein embezzled the principal sum of **$19,225,065** based

17  on Klein's proven theft of Menlo Trust assets. *Id*. at 78:20–21. This sum consists of: the net

18  principal sum stolen during the First Accounting period ($10,007,876), the net principal sum

19  stolen during the Second Accounting period ($6,069,214), and the net principal sum stolen

20  during the Third Accounting period ($3,147,974). Ultimately, Judge Reiser recommended that

21  Klein should be surcharged for his theft in the amount of $30,401,823 including double damages

22  under Probate Code Section 859 which imposes enhanced damages based on the "bad faith"

23  concealment of trust property. *Id*. at 55:6–56:2. Judge Reiser further determined that Klein's

24  removal "appears to be a *fait accompli*" under the circumstances. *Id*. at 22:25–27.

25  There is a legitimate risk that Klein will conceal or disappear with the money he

26  embezzled from the Menlo Trusts now that his scheme has been exposed. *See id*., Ex. 23. Klein

27  is a Hungarian citizen increasing the substantial risk that Klein will flee to Hungary with assets

28  from the Menlo Trust. *See id*.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

6

CO-TRUSTEE JEFFREY WINTER'S *EX PARTE* APPLICATION FOR TRO AND
ORDER REQUIRING DEPOSIT OF TRUST ASSETS

**The Court In The Menlo Action Suspends Klein As Trustee And Appoints Jeffrey Winter And Frank Menlo As Interim Co-Trustees**

On September 8, 2022, the Second Winter Petitioners filed *ex parte* applications for a temporary restraining order to suspend Klein as Trustee. *Id.*, Exs. 16–19. On September 15, 2022 the remaining Menlo Beneficiaries represented by Willkie Farr & Gallagher LLP filed *ex parte* applications for a temporary restraining order to suspend Klein as Trustee.[4] *Id.*, Ex. 21. Similarly, on September 14, 2022, the remaining Menlo Beneficiaries represented by Donald Saltzman filed an *ex parte* application to remove Klein as Trustee. *Id*, Ex. 20. The applications were premised on Judge Reiser's irrefutable findings in the R&R that Klein embezzled millions of dollars, refused to comply with the terms of the Trust, wasted $20,000,000 in valuable life insurance policies, and engaged in a deceptive ploy to conceal millions of dollars of fiduciary breaches. *Id*.

On September 16, 2022, the Court suspended Klein as Trustee of the Menlo Trusts and appointed Jeffrey Winter and Franklin Menlo as interim co-trustees of the Menlo Trusts. *Id.*, Ex. 22. In so ruling, the Court relied on the Menlo Beneficiaries' argument in their *ex parte* suspension applications that they have a strong probability of success on the merits of their breach of fiduciary duty claim. *Id*. Further, the Court ordered a freeze of all of the Menlo family trust accounts controlled by Klein as part of this order including the Menlo Children's Trust accounts at Bank of America. *Id*.

**Co-Trustees File An Application For Writ Of Attachment And Right To Attach Order**

On October 19, 2022, the Co-Trustees, on behalf of the Menlo Beneficiaries, brought an application for a right to attach order and a writ of attachment to attach $19,225,064 (the amount Klein provably stole from the Menlo Beneficiaries as identified in the R&R) ("Attachment Application"). *Id.*, Ex. 23. The Co-Trustees brought their Attachment Application to ensure that Klein does not disappear with the money he stole from the Menlo Trusts. *See id.* The Co-

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

---

[4] Willkie Farr & Gallagher represents Norine Eve Menlo Winter, Jeffrey Winter, Jeremy Winter, Michael Winter, Amanda Winter, and Daniel Jay Winter.

57030854

1   Trustees' Attachment Application seeks to attach Klein's non-exempt property, including, but

2   not limited to, Klein's real property, personal property, equipment, motor vehicles, chattel paper,

3   negotiable and other instruments, securities, deposit accounts, safe deposit boxes, accounts

4   receivable, and general intangibles. *See id*.

5          On November 10, 2022, the Court continued the hearing on the Attachment Application

6   to December 9, 2022 and issued a temporary protective order in the interim "in the interest of

7   equity and justice" to prevent Klein from taking further steps to render himself judgment proof.

8   *Id*., Ex. 24. The TPO provides in pertinent part:

9

10         Leslie Klein shall not transfer, sell, dispose of, encumber or hypothecate any non-
           exempt property owned by him including, but not limited to, his interest in real
11         property, personal property, equipment, motor vehicles, chattel paper, negotiable
           and other instruments, securities, deposit accounts, safe deposit boxes, accounts
12         receivable and general intangibles except as authorized by C.C.P. Section
           486.060.

13   *Id*.

14                   **Klein Schemes To Sell Properties To Avoid Attachment**

15         On November 10, 2022, following the hearing on the Attachment Application, the Co-

16   Trustees were informed that Klein attempted to sell two residential properties in which he has an

17   interest, that very day at a substantial discount. Declaration of Jeffrey Winter ("Jeffrey Decl."),

18   ¶¶ 2-3. Specifically, the Co-Trustees discovered that Klein engaged a realtor, Jonathan Adams

19   ("Adams"), at Keller Williams Realty to sell the Mansfield Property and the Highland Property.

20   *Id*. The Mansfield Property's record owner is BADC, a company that Klein is the Chief

21   Executive Officer of and the registered agent for service of process. Weingarten Decl., Ex. 25.

22   The Highland Property's record owner is the Kagan Family Trust, but Klein is the *de facto*

23   owner of the Highland Property with disposition powers. *Id*., at ¶ 30.

24         On November 11, 2022, Alex M. Weingarten, counsel for Co-Trustee Jeffrey Winter,

25   sent Adams a letter requesting that Adams cease any attempted sales of Klein's properties in

26   light of the November 10 TPO. *Id*., Ex. 31. To date, the Co-Trustees have received no

27   assurances that Klein has refrained from selling any of the Affiliated Assets to avoid judgment in

28   this case. *See id* at ¶ 30.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

8

CO-TRUSTEE JEFFREY WINTER'S *EX PARTE* APPLICATION FOR TRO AND
ORDER REQUIRING DISGORGEMENT OF ASSETS

**Klein Pays His Personal Attorney Using Trust Funds In Violation Of This Court's**

**September 16 Order Freezing Trust Accounts**

Klein is openly violating this Court's September 16, 2022 order freezing Menlo Trust

bank accounts by paying his personal attorney with frozen trust funds. *Id.*, Ex. 22. On

November 11, 2022, Donald Saltzman, counsel for Co-Trustee Frank Menlo, informed Klein's

personal attorney, Jeffrey Slott, that Klein paid Slott with trust funds *after this Court's*

*September 16, 2022 order freezing Klein's access to trust bank accounts*. *Id.*, Exs. 27-28. The

Co-Trustees discovered that on September 15, 2022, Klein wrote two checks to Slott in the

amount of $30,000 from the Menlo Children's Trust account at Bank of America ending 6490

(the "Menlo BOA Account") – one check totaling $20,000 and the other check totaling $10,000.

*Id.*, Ex. 28. Importantly, the $20,000 amount was withdrawn from the Menlo BOA Account on

September 19, 2022 and the $10,000 amount was withdrawn on September 21, 2022. *Id*. Both

withdrawals occurred after the September 16 bank account freeze order went into effect. *Id*. To

date, Klein has refused to return the misappropriated $30,000 despite the Co-Trustees repeated

requests. *Id*.

## ARGUMENT

A temporary restraining order, and, in turn, a preliminary injunction, are proper to

"preserve[] the status quo until a final determination" can be made on the merits of the action.

*Continental Baking Co. v. Katz*, 68 Cal. 2d 512, 528 (1968). In determining whether such

interim relief should be ordered, the trial court must evaluate two interrelated factors: (1) the

likelihood that the plaintiff will prevail on the merits; and (2) the relative balance of harms that is

likely to result from the granting or denial of interim injunctive relief. *See White v. Davis*, 30

Cal.4th 528, 554 (2003). Under this standard, as shown below, both factors weigh in favor of

granting interim injunctive relief in this case.

Moreover, on an *ex parte* application for a temporary restraining order, the standard is

somewhat relaxed. *See Landmark Holding Group, Inc. v. Superior Court*, 193 Cal. App. 3d 525,

528 (1987) (noting that "a lesser standard is used"). "The ex parte hearing concerning a TRO is

no more than a review of the conflicting contentions to determine whether there is a sufficiency

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

9

1  of evidence to support the issuance of an interlocutory order to keep the subject of litigation in

2  status quo pending a full hearing to determine whether the applicant is entitled to a preliminary

3  injunction." *Id*. The status quo has been defined to mean "the last actual peaceable, uncontested

4  status which preceded the pending controversy." *Voorhies v. Greene*, 139 Cal. App. 3d 989, 995

5  (1983).

6  A temporary restraining order is necessary to maintain the status quo pending the hearing

7  on the Attachment Application. The Co-Trustees, on behalf of the Menlo Beneficiaries, have a

8  strong likelihood of prevailing on the merits of their breach of fiduciary duty claim against Klein

9  and on their Attachment Application. Klein's breaches of fiduciary duty through theft and

10  misappropriation of the Menlo Trusts is well documented in Judge Reiser's R&R and Klein has

11  already been suspended as trustee to protect the Menlo Trusts from his continued malfeasance.

12  The Co-Trustees meet each requirement in their Attachment Application and it is clear that

13  Klein's non-exempt property should be attached to ensure that the Menlo Beneficiaries can

14  collect on Klein's eventual $19,225,065 surcharge. The balance of harms also weighs against

15  Klein. The Menlo Beneficiaries face substantial loss of their ability to collect on the

16  $19,225,065 (not including the additional double damages under Probate Code Section 859

17  based on Klein's "bad faith" concealment of trust property) that Klein provably stole from the

18  Trust should Klein be able to sell properties in which he has an interest. Klein should be

19  required to disclose all of his property interests so that the Co-Trustees can ensure that none of

20  them are sold pending the Attachment Application. Meanwhile, Klein faces no discernible

21  prejudice if this Application is granted. An order requiring Klein to identify all of his Affiliated

22  Assets and cease all sales of Affiliated Assets is consistent with the November 10 TPO already in

23  effect preventing Klein from engaging in property sales.

24  I.   **THERE IS A STRONG PROBABILITY THAT THE MENLO BENEFICARIES**

25  **WILL PREVAIL ON THE MERITS**

26  The Menlo Beneficiaries have a strong probability of prevailing on the merits of their

27  claim for breach of fiduciary duty against Klein and succeeding on their Attachment

28

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

10

1   Application.[5]  Judge Reiser's R&R deriding Klein for his "elaborate scheme to pay himself" is

2   presumptively based on substantial evidence, and Klein is unable (and has so far failed) to carry

3   his burden to avoid this Court's adoption of the R&R.

4          A referee's report and recommendation issued pursuant to Civil Procedure Code Section

5   639 is "entitled to great weight."  *Ruisi v. Thieriot*, 53 Cal. App. 4th 1197, 1208 (1997); *see also*

6   Cal. Civ. Proc. Code § 639(a)(1) (authorizing the court without the parties' consent to appoint a

7   referee to examine a long account).  Such report and recommendation is entitled to "a

8   presumption that [it is] based on competent and sufficient evidence" to which the non-prevailing

9   party carries the burden of proving any exception by admissible evidence.  *Brodie v. Barnes*, 56

10  Cal. App. 2d 315, 319 (1942).

11         The Menlo Beneficiaries have a strong probability of obtaining a judgment against Klein

12  on their claim for breach of fiduciary duty given the stunning revelations of embezzlement

13  presented in the R&R.  *See* Weingarten Decl., Ex. 15.  Significantly, Klein has so far failed to

14  offer admissible evidence to challenge the presumption that the R&R is based on sufficient

15  evidence and will be adopted by this Court.  *See Brodie*, 56 Cal. App. 2d at 319 (requiring a non-

16  prevailing party to establish admissible evidence to rebut a referee's report).  In fact, the R&R

17  recognized that Klein presented "no response" to the Menlo Beneficiaries' charge that Klein

18  embezzled $19,225,065. Weingarten Decl., Ex. 15 at 78:21.  Similarly, Klein offered no

19  "witnesses at trial to dispute the accuracy of the calculations" of the expert witnesses' detailed

20  damage figure due to Klein's misappropriation.  *Id*. at 30:2-6.  The R&R offered the following

21  conclusions based on substantial evidence that remains unrebutted by Klein:

22         •   "Klein [] managed the 24 Menlo Trusts principally for his own personal benefit
               and enrichment."  Weingarten Decl., Ex. 15 at 78:19-20.  *See Donahue v.*
23             *Donahue*, 182 Cal. App. 4th 259, 269 (2010) ("[S]ervices rendered by the trustee
               must provide a benefit and service to the trust.");  *see also Toedter v. Bradshaw*,
24             164 Cal. App. 2d 200, 208 (1958) (a trustee "may not, under any circumstances,
               be allowed to have any [personal] dealings in the trust property [] or acquire an
25             interest therein").

26

27  ─────────────
    [5] The elements of the cause of action for a breach of fiduciary duty are: "(1) existence of a fiduciary
28  duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."  *Gutierrez
    v. Girardi*, 194 Cal. App. 4th 925, 932 (2011).

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

11

- "Klein embezzled what has been accurately calculated to be $19,225,065 in Trust assets for which he has no response." Weingarten Decl., Ex. 15 at 78:20-21. *See Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819, 835 (1988) (holding that the trustee may not obtain personal or secret profits); *see also Jones v. Stubbs*, 136 Cal. App. 2d 490, 500 (1955) (the trustee "may not obtain any advantage [over a beneficiary] by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind").

- "Klein refused to account for many years until forced to do so by the Court, and, even after a decade of litigation, still refuses to account for 156 years of collective trust management [and] claim[s] to have no Trust documents upon which to account." Weingarten Decl., Ex. 15 at 78:21-24. *See* Cal. Prob. Code § 16060 (duty to keep beneficiaries reasonably informed of the trust and its administration); *see also* Cal. Prob. Code § 16061(duty to provide requested information to the beneficiary relating to the administration of the trust).

- "Klein has ignored the distributive terms of every single Menlo Trust except one." Weingarten Decl., Ex. 15 at 78:23-24. *See* Cal. Prob. Code § 16040(a) (trustee has the "duty to administer the Trust with reasonable care, skill and caution to accomplish the purposes of the Trust according to its terms").

- "Klein has borrowed many millions of dollars against Trust assets as to which he has never shown any interest in repaying." Weingarten Decl., Ex. 15 at 78:25-79:1. *See Van de Kamp*, 204 Cal. App. 3d at 835 (holding that the trustee may not obtain personal or secret profits).

- "Klein has deliberately filtered thousands of Trust transactions through his own attorney-client trust account." Weingarten Decl., Ex. 15 at 78:19-20. *See Toedter*, 164 Cal. App. 2d at 208 (a trustee "may not, under any circumstances, be allowed to have any [personal] dealings in the trust property [] or acquire an interest therein").

- "Klein torpedoed $20,000,000 in valuable Trust life insurance policies because of his compulsion to divert Menlo Trust assets for non-Trust purposes for no legitimate reason." Weingarten Decl., Ex. 15 at 79:3-4. *See* Cal. Prob. Code § 16006 (a trustee has the "duty to take reasonable steps to take and keep control of and to preserve Trust property").

- "Klein unabashedly used Menlo Trust accounts as overdraft protection on his personal credit cards as a means to misappropriate many additional hundreds of thousands of Trust dollars." Weingarten Decl., Ex. 15 at 79:4-6. *See Van de Kamp*, 204 Cal. App. 3d at 835 (holding that the trustee may not obtain personal or secret profits); *see also Toedter*, 164 Cal. App. 2d at 208 (a trustee "may not, under any circumstances, be allowed to have any [personal] dealings in the trust property [] or acquire an interest therein").

- "Klein submitted 72 incomplete and misleading accountings to the Court intending to mask his many years and millions of dollars of fiduciary misappropriation." Weingarten Decl., Ex. 15 at 79:6-8. *See Jones,* 136 Cal. App. 2d at 500 (the trustee "may not obtain any advantage [over a beneficiary] by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind").

This Court already afforded "great weight" to the R&R in granting the Menlo

Beneficiaries' *ex parte* applications to suspend Klein as trustee. *See* Weingarten Decl., Ex. 22.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854
12
CO-TRUSTEE JEFFREY WINTER'S *EX PARTE* APPLICATION FOR TRO AND
ORDER REQUIRING DISCLOSURE OF ASSETS
EXHIBIT E
234
Page 235 of 288

1    This Court – relying on the findings in the R&R – suspended Klein as trustee based on the

2    finding that there is a strong probability that the Menlo Beneficiaries will prevail on the merits of

3    their breach of fiduciary duty claim. *Id.; see also Cont'l Baking Co. v. Katz*, 68 Cal. 2d 512, 528

4    (1968) (defining the likelihood of success on the merits standard as a "reasonable probability that

5    plaintiff will be successful in the assertion of his rights"). The Court also found it necessary to

6    order Bank of America, Morgan Stanley, and UBS to "freeze all Menlo family trust accounts and

7    Menlo Children Trust accounts for which Leslie Klein is designated as trustee" due to the risk

8    that Klein poses to the Menlo Trusts. *Id*. The likelihood of success of the Menlo Beneficiaries'

9    breach of fiduciary duty claim is well-established.

10    In addition, the Co-Trustees are likely to prevail on their Attachment Application on

11    behalf of the Menlo Beneficiaries to ensure that the Menlo Beneficiaries' right to more than

12    $19,225,065 is not rendered unenforceable. The Co-Trustees have met each of the statutory

13    requirements under California law for the issuance of a writ of attachment against Klein. *See*

14    Cal. Civ. Proc. Code § 484.090(a). Attachment is likely to issue on the Menlo Beneficiaries'

15    claim against Klein as it: (1) is based on an implied-in-law contract premised on Klein's outright

16    theft of the funds held in the Menlo Trusts; (2) is fixed or readily ascertainable given that Judge

17    Reiser held three trials on the issue of the amount of Klein's theft and definitively calculated that

18    amount to be $19,225,064; (3) is unsecured by any interests in real property; and (4) arises out of

19    Klein's conduct as a fiduciary who received compensation for his work as Trustee on behalf of

20    the Trust. Weingarten Decl., Ex. 23. To be sure, the Co-Trustees are likely to prevail on the

21    Attachment Application given that the Court found it necessary to issue the November 10 TPO

22    enjoining Klein from "transfer[ing], sell[ing], dispos[ing] of, encumber[ing] or hypothecate[ing]

23    any non-exempt property owned by him." Weingarten Decl., Ex. 24. It is clear that Klein poses

24    a substantial risk that he will render the $19,225,065 he stole from the Menlo Trusts

25    "untraceable" making it likely that the Attachment Application will be meritorious.

26

27

28

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854
13
CO-TRUSTEE JEFFREY WINTER'S *EX PARTE* APPLICATION FOR TRO AND
ORDER REQUIRING DISCLOSURE OF ASSETS
EXHIBIT E
235
Page 286 of 288

## II.     THE BALANCE OF HARMS WEIGHS IN FAVOR OF ISSUING INJUNCTIVE RELIEF

A court should grant injunctive relief if a plaintiff is likely to suffer greater injury from denial of the relief than defendants are likely to suffer if it is granted. *Shoemaker v. Cty. of Los Angeles*, 37 Cal. App. 4th 618, 625 (1995). Courts consider loss of assets to be an injury warranting injunctive relief. *See Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 136 (1985) (permitting motion for preliminary injunction to prevent dissipation of the plaintiffs' profits and allowing the plaintiffs to recover the funds intact rather than a "naked claim for damages").

The Menlo Beneficiaries will be irretrievably harmed if the Application is not granted. Klein intends to defy the November 10 TPO's prohibition on Klein's sale of property by secretly selling at least the Highland Property and the Mansfield Property. It is apparently Klein's view that he can shirk a money judgment and avoid being found in contempt of the November 10 TPO foreclosing Klein's sale of property he owns if he sells assets he owns indirectly (the Mansfield Property is owned by BADC, for which Klein serves as Chief Executive Offer, and the Highland Property is owned by the Kagan Family Trust but is nonetheless controlled by Klein). There is a clear and present risk that Klein will abscond with the proceeds from the sale of his assets and declare himself unable to pay an eventual surcharge in the event the R&R is approve by the Court. As Judge Reiser noted, Klein's' embezzlement is designed "to render the scope and breadth of Klein's misappropriations incalculable and untraceable." Weingarten Decl., Ex. 15 at 30, fn. 31. Klein should not be permitted to liquidate his assets to ensure that he will be judgment proof. *See W. Steel & Ship Repair, Inc. v. RMI, Inc*., 176 Cal. App. 3d 1108, 1114 (1986) ("[P]ast dishonesty, failure to meet obligations, or concealment of assets" are factors considered in issuing a writ of attachment).

By contrast, Klein faces no cognizable harm if this Application is granted. This Court already issued the November 10 TPO which enjoins Klein from "sell[ing], dispos[ing] of, encumber[ing] or hypothecate[ing] any non-exempt property owned by [Klein]" and there is no additional burden in broadening this order to include the enjoining of the sale of his Affiliated Assets. *See* Weingarten Decl., Ex. 24. Moreover, an order requiring Klein to immediately

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854

14

1   disclose his Affiliated Assets would not encumber those Assets or affect Klein's rights thereto, it

2   would merely allow the Co-Trustees and the Court to effectively monitor Klein's efforts to

3   escape judgment and to enforce its temporary restraining order. *See Wind v. Herbert*, 186 Cal.

4   App. 2d 276, 284–86 (1960) (court has a "duty to maintain the status quo pending the trial on the

5   merits"). Klein cannot feign harm as a result of being forced to be honest and forthcoming with

6   the Menlo Beneficiaries.

## CONCLUSION

8       For the reasons set forth above, Co-Trustee Jeffrey respectfully requests that the Court:

9   (1) issue a temporary restraining order enjoining Klein from transferring, selling, disposing of,

10  encumbering, or hypothecating any real property, bank accounts, brokerage accounts, cash,

11  chattels, personal property, securities, and safe deposit boxes in which Klein is affiliated, has the

12  authority to control or encumber, or has any ownership interest in; and (2) order Klein to disclose

13  all of his Affiliated Assets.

14  Dated:  November 15, 2022                **WILLKIE FARR & GALLAGHER LLP**

15

16                                          By: _____
                                                Alex M. Weingarten
17                                              Logan M. Elliott
                                            Attorneys for Petitioners
18                                          CO-TRUSTEE JEFFREY WINTER

19

20

21

22

23

24

25

26

27

28

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

57030854                                    15

# EXHIBIT F

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES

In Re. Leslie Klein

§
§
§
§

_____
Debtor(s)

Case No. 23-10990 _____

☐ Jointly Administered

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 02/28/2023 _____

Petition Date: 02/22/2023 _____

Months Pending: 0 _____

Industry Classification: [0] [0] [0] [0]

Reporting Method:     Accrual Basis ○     Cash Basis ◉

Debtor's Full-Time Employees (current):     0 _____

Debtor's Full-Time Employees (as of date of order for relief):     0 _____


**Supporting Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☐  Statement of cash receipts and disbursements
☐  Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☐  Statement of operations (profit or loss statement)
☐  Accounts receivable aging
☐  Postpetition liabilities aging
☐  Statement of capital assets
☐  Schedule of payments to professionals
☐  Schedule of payments to insiders
☒  All bank statements and bank reconciliations for the reporting period
☐  Description of the assets sold or transferred and the terms of the sale or transfer


/s/Michael Jay Berger _____
Signature of Responsible Party

Michael Jay Berger _____
Printed Name of Responsible Party

04/19/2023 _____
Date

9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212 _____
Address


STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

| Debtor's Name  Leslie Klein | | Case No. 23-10990 |
|---|---|---|

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. | Cash balance beginning of month | $0 | |
| b. | Total receipts (net of transfers between accounts) | $0 | $0 |
| c. | Total disbursements (net of transfers between accounts) | $72 | $0 |
| d. | Cash balance end of month (a+b+c) | $-72 | |
| e. | Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. | Total disbursements for quarterly fee calculation (c+e) | $72 | $0 |

| Part 2: Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a. | Accounts receivable (total net of allowance) | $0 |
| b. | Accounts receivable over 90 days outstanding (net of allowance) | $0 |
| c. | Inventory   (Book ◯  Market ◯  Other ◉  (attach explanation)) | $0 |
| d | Total current assets | $0 |
| e. | Total assets | $0 |
| f. | Postpetition payables (excluding taxes) | $0 |
| g. | Postpetition payables past due (excluding taxes) | $0 |
| h. | Postpetition taxes payable | $0 |
| i. | Postpetition taxes past due | $0 |
| j. | Total postpetition debt (f+h) | $0 |
| k. | Prepetition secured debt | $0 |
| l. | Prepetition priority debt | $0 |
| m. | Prepetition unsecured debt | $0 |
| n. | Total liabilities (debt) (j+k+l+m) | $0 |
| o. | Ending equity/net worth (e-n) | $0 |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. | Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. | Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. | Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. | Gross income/sales (net of returns and allowances) | $0 | |
| b. | Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. | Gross profit (a-b) | $0 | |
| d. | Selling expenses | $0 | |
| e. | General and administrative expenses | $0 | |
| f. | Other expenses | $0 | |
| g. | Depreciation and/or amortization (not included in 4b) | $0 | |
| h. | Interest | $0 | |
| i. | Taxes (local, state, and federal) | $0 | |
| j. | Reorganization items | $0 | |
| k. | Profit (loss) | $0 | $0 |

Debtor's Name  Leslie Klein                                                                                      Case No.  23-10990

| Part 5:  Professional Fees and Expenses | | | | | | |
|---|---|---|---|---|---|---|
| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | Michael Jay Berger | Lead Counsel | $0 | $0 | $0 | $0 |
| ii | | | | | | |
| iii | | | | | | |
| iv | | | | | | |
| v | | | | | | |
| vi | | | | | | |
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |
| xv | | | | | | |
| xvi | | | | | | |
| xvii | | | | | | |
| xviii | | | | | | |
| xix | | | | | | |
| xx | | | | | | |
| xxi | | | | | | |
| xxii | | | | | | |
| xxiii | | | | | | |
| xxiv | | | | | | |
| xxv | | | | | | |
| xxvi | | | | | | |
| xxvii | | | | | | |
| xxviii | | | | | | |
| xxix | | | | | | |
| xxx | | | | | | |
| xxxi | | | | | | |
| xxxii | | | | | | |
| xxxiii | | | | | | |
| xxxiv | | | | | | |
| xxxv | | | | | | |
| xxxvi | | | | | | |

UST Form 11-MOR (12/01/2021)

Debtor's Name Leslie Klein                                                                                                       Case No. 23-10990

| | | | | |
|-----------|--|--|--|--|
| xxxvii | | | | |
| xxxvii | | | | |
| xxxix | | | | |
| xl | | | | |
| xli | | | | |
| xlii | | | | |
| xliii | | | | |
| xliv | | | | |
| xlv | | | | |
| xlvi | | | | |
| xlvii | | | | |
| xlviii | | | | |
| xlix | | | | |
| l | | | | |
| li | | | | |
| lii | | | | |
| liii | | | | |
| liv | | | | |
| lv | | | | |
| lvi | | | | |
| lvii | | | | |
| lviii | | | | |
| lix | | | | |
| lx | | | | |
| lxi | | | | |
| lxii | | | | |
| lxiii | | | | |
| lxiv | | | | |
| lxv | | | | |
| lxvi | | | | |
| lxvii | | | | |
| lxviii | | | | |
| lxix | | | | |
| lxx | | | | |
| lxxi | | | | |
| lxxii | | | | |
| lxxiii | | | | |
| lxxiv | | | | |
| lxxv | | | | |
| lxxvi | | | | |
| lxxvii | | | | |
| lxxvii | | | | |

Debtor's Name  Leslie Klein                                     Case No.  23-10990

| | | | | | | |
|---|---|---|---|---|---|---|
| lxxix | | | | | | |
| lxxx | | | | | | |
| lxxxi | | | | | | |
| lxxxii | | | | | | |
| lxxxii | | | | | | |
| lxxxiv | | | | | | |
| lxxxv | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxix | | | | | | |
| xc | | | | | | |
| xci | | | | | | |
| xcii | | | | | | |
| xciii | | | | | | |
| xciv | | | | | | |
| xcv | | | | | | |
| xcvi | | | | | | |
| xcvii | | | | | | |
| xcviii | | | | | | |
| xcix | | | | | | |
| c | | | | | | |
| ci | | | | | | |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | | | |
| | *Itemized Breakdown by Firm* | | | | | | |
| | Firm Name | Role | | | | | |
| i | | | | | | | |
| ii | | | | | | | |
| iii | | | | | | | |
| iv | | | | | | | |
| v | | | | | | | |
| vi | | | | | | | |
| vii | | | | | | | |
| viii | | | | | | | |
| ix | | | | | | | |
| x | | | | | | | |
| xi | | | | | | | |
| xii | | | | | | | |
| xiii | | | | | | | |
| xiv | | | | | | | |

UST Form 11-MOR (12/01/2021)

Debtor's Name Leslie Klein

| | | | | | |
|------|---|---|---|---|---|
| xv | | | | | |
| xvi | | | | | |
| xvii | | | | | |
| xviii | | | | | |
| xix | | | | | |
| xx | | | | | |
| xxi | | | | | |
| xxii | | | | | |
| xxiii | | | | | |
| xxiv | | | | | |
| xxv | | | | | |
| xxvi | | | | | |
| xxvii | | | | | |
| xxviii | | | | | |
| xxix | | | | | |
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |

Debtor's Name  Leslie Klein                                                    Case No.  23-10990

| | | | | | |
|---|---|---|---|---|---|
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxvii | | | | | |
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |
| xci | | | | | |
| xcii | | | | | |
| xciii | | | | | |
| xciv | | | | | |
| xcv | | | | | |
| xcvi | | | | | |
| xcvii | | | | | |
| xcviii | | | | | |

UST Form 11-MOR (12/01/2021)

Debtor's Name  Leslie Klein                                      Case No.  23-10990

| | | | | | | |
|---|---|---|---|---|---|---|
| | xcix | | | | | |
| | c | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | $0 | |

| Part 6:  Postpetition Taxes | Current Month | Cumulative |
|---|---|---|
| a. Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. Postpetition employer payroll taxes accrued | $0 | $0 |
| d. Postpetition employer payroll taxes paid | $0 | $0 |
| e. Postpetition property taxes paid | $0 | $0 |
| f. Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

**Part 7: Questionnaire - During this reporting period:**

| | | | |
|---|---|---|---|
| a. | Were any payments made on prepetition debt?  (if yes, see Instructions) | Yes ○  No ● | |
| b. | Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions) | Yes ○  No ● | |
| c. | Were any payments made to or on behalf of insiders? | Yes ○  No ● | |
| d. | Are you current on postpetition tax return filings? | Yes ●  No ○ | |
| e. | Are you current on postpetition estimated tax payments? | Yes ●  No ○ | |
| f. | Were all trust fund taxes remitted on a current basis? | Yes ●  No ○ | |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | Yes ○  No ● | |
| h. | Were all payments made to or on behalf of professionals approved by the court? | Yes ○  No ○  N/A ● | |
| i. | Do you have:  Worker's compensation insurance? | Yes ○  No ● | |
| | If yes, are your premiums current? | Yes ○  No ○  N/A ●  (if no, see Instructions) | |
| | Casualty/property insurance? | Yes ●  No ○ | |
| | If yes, are your premiums current? | Yes ●  No ○  N/A ○  (if no, see Instructions) | |
| | General liability insurance? | Yes ○  No ● | |
| | If yes, are your premiums current? | Yes ○  No ○  N/A ●  (if no, see Instructions) | |
| j. | Has a plan of reorganization been filed with the court? | Yes ○  No ● | |
| k. | Has a disclosure statement been filed with the court? | Yes ○  No ● | |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ●  No ○ | |

Debtor's Name  Leslie Klein                                              Case No. 23-10990

| Part 8: Individual Chapter 11 Debtors (Only) |
|---|

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ◯  No ⦿ |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ◯  No ◯  N/A ⦿ |

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

/s/Leslie Klein                                              Leslie Klein
_____            _____
Signature of Responsible Party                             Printed Name of Responsible Party

Debtor                                                    04/19/2023
_____            _____
Title                                                      Date

Debtor's Name Leslie Klein                                    Case No.  23-10990



PageOnePartOne

PageOnePartTwo

PageTwoPartOne

PageTwoPartTwo

Debtor's Name  Leslie Klein                                    Case No.  23-10990


Bankruptcy1to50


Bankruptcy51to100


NonBankruptcy1to50


NonBankruptcy51to100

Debtor's Name  Leslie Klein                                             Case No.  23-10990



PageThree



PageFour

# BANK OF AMERICA

P.O. Box 15284
Wilmington, DE 19850

LESLIE KLEIN
ERIKA KLEIN
322 N JUNE ST
LOS ANGELES, CA  90004-1042

**Customer service information**

📞 Customer service: 1.800.432.1000

En Español: 1.800.688.6086

✉️ bankofamerica.com

✉️ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Adv Tiered Interest Chkg

for February 15, 2023 to March 20, 2023

Account number: ●●●● ●●●● 9401

**LESLIE KLEIN    ERIKA KLEIN**

## Account summary

| | |
|---|---|
| Beginning balance on February 15, 2023 | $7,841.30 |
| Deposits and other additions | 4,409.84 |
| ATM and debit card subtractions | -0.00 |
| Other subtractions | -12,151.16 |
| Checks | -100.00 |
| Service fees | -0.00 |
| **Ending balance on March 20, 2023** | **-$0.02** |

*Annual Percentage Yield Earned this statement period: 0.01%.*
*Interest Paid Year To Date: $0.13.*

Better Money Habits®

## Pursue your goals with confidence

Make more informed decisions with education and guidance from Better Money Habits®.
- Tackle financial stress.
- Find ways to save.
- Get information and ideas on a variety of money-related topics.

Get started today at **BetterMoneyHabits.com**.

SSM-09-22-0035.B | 4920561

LESLIE KLEIN  |  Account #████████9401  |  February 15, 2023 to March 20, 2023

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2023 Bank of America Corporation

Bank of America, N.A. Member FDIC and  Equal Housing Lender

**BANK OF AMERICA**

LESLIE KLEIN   |   Account # █████ 9401   |   February 15, 2023 to March 20, 2023

## Deposits and other additions

| Date | Description | Amount |
|------|-------------|--------|
| 03/01/23 | Counter Credit | 409.82 |
| 03/03/23 | Interest Earned | 0.02 |
| 03/03/23 | PAYPAL          DES:TRANSFER  ID:1025588661294  INDN:LESLIE KLEIN        CO ID:PAYPALSD11 PPD | 4,000.00 |
| **Total deposits and other additions** | | **$4,409.84** |

## Withdrawals and other subtractions

### Other subtractions

| Date | Description | Amount |
|------|-------------|--------|
| 02/17/23 | Agent Assisted transfer to CHK 9404 Confirmation# xjp48x5au | -3,000.00 |
| 02/27/23 | DELTA DENTAL INS DES:PREMIUM     ID:957002787891  INDN:Klein,Leslie        CO ID:1942761537 PPD | -72.10 |
| 03/03/23 | Agent Assisted transfer to CHK 8530 Confirmation# 0287115774 | -2,269.75 |
| 03/03/23 | Agent Assisted transfer to CHK 8543 Confirmation# 0287118313 | -2,269.75 |
| 03/03/23 | Agent Assisted transfer to CHK 8572 Confirmation# 1687120795 | -2,269.75 |
| 03/03/23 | Agent Assisted transfer to CHK 8608 Confirmation# 2987122942 | -2,269.75 |
| 03/03/23 | Agent Assisted transfer to CHK 8530 Confirmation# 0287126139 | -0.02 |
| 03/03/23 | Agent Assisted transfer to CHK 8530 Confirmation# e9mdtm9lm | -0.04 |
| **Total other subtractions** | | **-$12,151.16** |

## Checks

| Date | Check # | Amount |
|------|---------|--------|
| 02/15/23 | 7292 | -100.00 |
| **Total checks** | | **-$100.00** |
| **Total # of checks** | | **1** |



## Do you follow us on social media?

Connect with us on **Facebook** and **Twitter**
for timely information and to learn more
about how to reach your financial goals.





When you use the QRC feature certain information is collected from your mobile device for
business purposes.
SSM-05-22-0100.C  I  4718133

LESLIE KLEIN  |  Account # ████ 9401  |  February 15, 2023 to March 20, 2023

Braille and Large Print Request - You can request a copy of this statement In Braille or Large Print by calling 800.432.1000 or going to bankofamerica.com and enter Visually Impaired Access from the home page.

## TOTAL DISBURSEMENTS FOR 2/23/2023 - 2/28/2023

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| 2/27/2023 | | Delta Dental Insurance | Dental | $72.10 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | $72.10 |