| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| SCHEER LAW GROUP, LLP<br>JOSHUA L. SCHEER, #242722<br>REILLY D. WILKINSON, #250086<br>85 ARGONAUT, SUITE 202<br>ALISO VIEJO, CA 92656<br>TELEPHONE (949) 263-8757<br>FACSIMILE (949) 308-7373<br>JSCHEER@SCHEERLAWGROUP.COM<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>LESLIE KLEIN<br><br><br><br><br><br><br><br>                                              Debtor(s). | CASE NO.: 2:23-bk-10990-SK<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 05/17/2023<br>TIME:  8:30am<br>COURTROOM: 1575 |

| **Movant:** Ajax Mortgage Loan Trust 2021-D, Mortgage-Backed Securities, Series 2021-D, By U.S. Bank National Association, as Indenture Trustee, its successors and/or assignees |
|---|

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 04/26/2023

SCHEER LAW GROUP, LLP
Printed name of law firm (if applicable)

JOSHUA L. SCHEER
Printed name of individual Movant or attorney for Movant

/s/JOSHUA L. SCHEER
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

    ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☐ Other (*specify*):

2. **The Property at Issue (Property):**

    a. Address:

    *Street address*: 161 North Poinsettia Place
    *Unit/suite number*:
    *City, state, zip code*: Los Angeles, CA 90036

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __2__): Document Recording Number: 20180758110; Los Angeles County

3. **Bankruptcy Case History:**

    a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13
    was filed on (*date*) __02/22/2023__.

    b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

    c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay**:

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

    (1) ☒ Movant's interest in the Property is not adequately protected.

        (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

        (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

        (C) ☒ ~~Proof of insurance~~ Loss Payee Information regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

    (2) ☐ The bankruptcy case was filed in bad faith.

        (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

        (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

        (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

        (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

        (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

        (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                      Page 3                          **F 4001-1.RFS.RP.MOTION**

(3) ☐ (*Chapter 12 or 13 cases only*)

   (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

   (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
which is ☐ prepetition ☐ postpetition.

(6) ☒ For other cause for relief from stay, ~~see attached continuation page.~~    See Memorandum regarding the failure to segregate funds and misuse of cash collateral.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

   (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit __4__.

d. ☐ Other:

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1.  Relief from the stay is granted under:   ☒ 11 U.S.C. § 362(d)(1)   ☒ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3).

2.  ☒  Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☒  Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4.  ☐  Confirmation that there is no stay in effect.

5.  ☐  The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☐  The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7.  ☒  The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☐  A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐  without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9.  ☐  Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐  The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐  without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐  The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

    ☐  without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐  Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒  If relief from stay is not granted, adequate protection shall be ordered.

14. ☒  See attached continuation page for other relief requested.


Date:  04/26/2023

SCHEER LAW GROUP, LLP
_____
Printed name of law firm (*if applicable*)
JOSHUA L. SCHEER
_____
Printed name of individual Movant or attorney for Movant

/s/JOSHUA L. SCHEER
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 5                              **F 4001-1.RFS.RP.MOTION**

**2:23-bk-10990-SK**
**LESLIE KLEIN**

Continuation of Page 5, Section 14
**For other relief requested**: Order (1) prohibiting the Debtor from using any of the cash collateral generated by the subject Property of this Motion, (2) requiring the Debtor to turnover all cash collateral he is currently in possession of to Movant, and (3) requiring the Debtor to provide an accounting for the cash collateral received post-petition.

# REAL PROPERTY DECLARATION

I, (print name of Declarant) _____Julia Waco_____ , declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

    a.  ☐  I am the Movant.

    b.  ☐  I am employed by Movant as (state title and capacity):

    c.  ☒  Other (specify): I am employed as Bankruptcy Counsel for Gregory Funding LLC, who is servicer for Ajax Mortgage Loan Trust 2021-D, Mortgage-Backed Securities, Series 2021-D, by U.S. Bank National Association, as Indenture Trustee, the movant herein.

2.  a.  ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (see attached):

3.  The Movant is:

    a.  ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit  1___.

    b.  ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 2&3___.

    c.  ☐  Servicing agent authorized to act on behalf of the:

        ☐  Holder.
        ☐  Beneficiary.

    d.  ☐  Other (specify):

4.  a.  The address of the Property is:

        *Street address*: 161 North Poinsettia Place
        *Unit/suite no.*:
        *City, state, zip code*: Los Angeles, CA 90036

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the

        Movant's deed of trust is:

        Document Recording Number: 20180758110; Los Angeles County

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

    a. ☐ Debtor's principal residence      b. ☒ Other residence
    c. ☐ Multi-unit residential      d. ☐ Commercial
    e. ☐ Industrial      f. ☐ Vacant land
    g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

    a. ☒ Sole owner

    b. ☐ Co-owner(s) (*specify*):

    c. ☐ Lienholder (*specify*):

    d. ☐ Other (*specify*):

    e. ☒ The Debtor ☒ did ☐ did not list the Property in the Debtor's schedules.

    f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
        The deed was recorded on (*date*) _____.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
    that encumbers the Property.

    a. ☒ A true and correct copy of the document as recorded is attached as Exhibit __2__.

    b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
        attached as Exhibit __1__.

    c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
        trust to Movant is attached as Exhibit __3__.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 1,207,431.36 |
| b. | Accrued interest: | $ | $ | $ 149,772.53 |
| c. | Late charges | $ | $ | $ 7,247.10 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 4,264.07 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 34,339.44 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[0.00          ] |
| g. | TOTAL CLAIM as of (*date*): 2/22/2023 | $ | $ | $ 1,403,054.50 |

    h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
    has occurred*):

    a. Notice of default recorded on (*date*) _____ or ☒ none recorded.

    b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

    c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

    d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

    e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*　　　　　　　　　　　　　　　Page 7　　　　　　　　　　**F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ 9,063.32_____ for the month of April_____ 20 23 .

    b. Number of payments that have come due and were not made: 23___ . Total amount: $ 219,968.68_____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

      An additional payment of $ 9,063.32 will come due on (*date*) 05/01/2023 , and on the 1st___ day of each month thereafter. If the payment is not received within 15___ days of said due date, a late charge of $ 0.00_____ will be charged to the loan.

    d. The fair market value of the Property is $ 2,000,000**_____ , established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

      (3) ☒ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit __4__.

      (4) ☐ Other (*specify*):

                                                      **Pursuant to the Debtor's Schedules, Movant is informed an believes that the actual value may be lower, and reserves the right to obtain an updated valuation should value be at issue in these proceedings.

    e. **Calculation of equity/equity cushion in Property:**

      Based upon ☐ a preliminary title report ☒ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Movant | $ 954,432.00 | $ 1,403,054.50 |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | Ericka and Joseph Vago | $ 24,334,038.99** | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ 1,403,054.50 | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit __4__ and consists of:

      (1) ☐ Preliminary title report.

      (2) ☒ Relevant portions of the Debtor's schedules.

      (3) ☐ Other (*specify*):

                                                      **Judgment lien scheduled by the Debtor that purportedly emcumbers all properties in the Bankruptcy. If it is determined that the purported judgment lien emcumbers the subject Property of this Motion, it will be clear that there is no equity in the subject Property for an effective reorganization to benefit the Debtor or the Bankruptcy Estate.

    g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
      I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 596,945.50_____ and is 29.84__ % of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
      By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 596,945.50_____ .

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☒ Estimated costs of sale: $160,000.00_____ (estimate based upon _8____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                     $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                               $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:            $[                    ]

        TOTAL POSTPETITION DELINQUENCY:            $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B).  More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is  ☐ prepetition  ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (specify):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property include:

1. Case name: _____
   Chapter: _____  Case number: _____
   Date dismissed: _____  Date discharged: _____  Date filed: _____
   Relief from stay regarding the Property ☐ was  ☐ was not  granted.

2. Case name: _____
   Chapter: _____  Case number: _____
   Date dismissed: _____  Date discharged: _____  Date filed: _____
   Relief from stay regarding the Property ☐ was  ☐ was not  granted.

3. Case name: _____
   Chapter: _____  Case number: _____
   Date dismissed: _____  Date discharged: _____  Date filed: _____
   Relief from stay regarding the Property ☐ was  ☐ was not  granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 10                              F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/21/23 | Julia Waco | |
|---|---|---|
| *Date* | *Printed name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Exhibit "1"

MIN: ████████

# INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In The Wall Street Journal)
### Rate Caps - 10 Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES I MUST PAY.**

| July 25, 2018 | Irvine, | California |
|---|---|---|
| [Date] | [City] | [State] |

**161 North Poinsettia Place, Los Angeles, CA 90036**
**[Property Address]**

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. **$1,097,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **OCMBC, INC., a California Corporation.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.550 %.**    The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will make a payment on the **1st** day of every month, beginning on **September 1, 2018.**
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **August 1, 2048,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **19000 MacArthur Blvd., Ste. 200**
**Irvine, CA 92612**

or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. **$6,901.96** until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the **1st** day of **August, 2025** and the adjustable interest rate I will pay may change on that day every **12th** month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE – ONE-YEAR LIBOR INDEX – 10 Year Interest Only Period – Single Family
Fannie Mae Uniform Instrument Form 3535 6/05 (rev. 6/16)
Ellie Mae, Inc.                                                Page 1 of 4                                                F3535NOT  0916
                                                                                                                          F3535NOT (CLS)
                                                                                                                          07/24/2018 08:51 AM PST

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal**. The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   SIX
                                                percentage point(s) (  **6.000 %**        ) (the "Margin") to the Current Index.
The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   **12.550 %**    or less than **6.000 %**.       Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   **TWO**                               percentage point(s) (  **2.000 %**      ) from the rate of interest I have been paying for the preceding   **12**           month(s). My interest rate will never be greater than   **12.550 % or less than the Margin.**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.   **SEE ATTACHED PREPAYMENT RIDER.**

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   **15**           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   **5.000 %** of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid

**MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE – ONE-YEAR LIBOR INDEX – 10 Year Interest Only Period – Single Family**
**Fannie Mae Uniform Instrument Form 3535 6/05 (rev. 6/16)**

Ellie Mae, Inc.                                          Page 2 of 4                                          F3535NOT  0916
                                                                                                           F3535NOT (CLS)
                                                                                                           07/24/2018 08:51 AM PST




and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**(A)** Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)** When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If

LOAN #

Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
**LESLIE KLEIN**

**Lender: OCMBC, INC.**
**NMLS ID: 2125**
**Broker: C2 Financial Corporation**
**NMLS ID: 135622**
**Loan Originator: Ari Lindner**
**NMLS ID: 1255224**

[Sign Original Only]

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE – ONE-YEAR LIBOR INDEX – 10 Year Interest Only Period – Single Family
Fannie Mae Uniform Instrument Form 3535 6/05 (rev. 6/16)
Ellie Mae, Inc.                      Page 4 of 4                      F3535NOT  0916
                                                                       F3535NOT (CLS)
                                                                       07/24/2018 08:51 AM PST





# PREPAYMENT ADDENDUM TO NOTE
## (Multi-State)

This Prepayment Addendum to Note ("Addendum") is made this **25th**          day of **July, 2018** and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") given by the undersigned (the "Borrower") to evidence Borrower's indebtedness to **OCMBC, INC., a California Corporation**

(the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at **161 North Poinsettia Place, Los Angeles, CA 90036**

(the "Property").

**ADDITIONAL COVENANTS.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant, and agree, that the provisions of the section of the Note titled **BORROWER'S RIGHT TO PREPAY**                are amended to read as follows:

Subject to the prepayment charge provided below, I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under the Note.

**If, within the first 36        month(s) beginning with the date I execute the Note (the "Penalty Period"), I make a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, I will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party, after the first **36**        month(s) of the Note, no prepayment charge will be assessed. In the event of a bona fide sale, I agree to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

The Note Holder will apply all prepayments to reduce the amount of principal that I owe under the Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, partial prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a prepayment charge at the time a prepayment is received shall not be deemed a waiver of such charge. Any prepayment charge not collected at the time the prepayment is received shall be payable on demand.

All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.



LOAN ███████

**NOTICE TO BORROWER**

    Do not sign this Addendum before you read it. This Addendum provides for the payment of a prepayment charge if you wish to repay the loan prior to the date provided for repayment in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_____ (Seal)
LESLIE KLEIN

MultiState Prepayment Addendum to Note
Ellie Mae, Inc.

Page 2 of 2

GPPADNOT   0508
GPPADNOT (CLS)
07/24/2018 08:51 AM PST

# ALLONGE TO NOTE

LOAN #: 

LOAN AMOUNT:  **$1,097,000.00**

PROPERTY ADDRESS.  **161 North Poinsettia Place**
**Los Angeles, CA 90036**

ALLONGE TO NOTE DATED:  **July 25, 2018**

IN FAVOR OF  **OCMBC, INC., a California Corporation**

AND EXECUTED BY  **Leslie Klein**

PAY TO THE ORDER OF

WITHOUT RECOURSE  **OCMBC, INC., a California Corporation**

BY _David Tran_

TITLE _Funding Manager_

Document #L444 LFF305
Ellie Mae, Inc.



G2N13  0311
G2N13 (CLS)
07/24/2018 08:51 AM PST

Exhibit "2"

**This page is part of your document - DO NOT DISCARD**



## 20180758110





**Pages:**
**0026**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/30/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 99.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 174.00 |



**L E A D S H E E T**



201807300120038

**00015540152**



009245070

**SEQ:**
**02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



E464772

FOR REFERENCE ONLY: 20180758110

PRIORITY TITLE

When recorded, mail to:
OCMBC, INC.
Attn: Trailing Docs
19000 MacArthur Blvd., Ste. 200
Irvine, CA 92612




VERUS
KLEIN

Title Ord
LOAN #:

---

------------------------------- [Space Above This Line For Recording Data] -----------------------------

APN: 5512-017-005

# DEED OF TRUST

**MIN**
**MERS PHONE #: 1-888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 25, 2018,**                                          together with all all Riders to this document.

**(B) "Borrower"** is   **LESLIE KLEIN, A WIDOWER.**

Borrower's address is  **322 N. June Street, Los Angeles, CA 90004.**

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is   **OCMBC, INC..**

Lender is  **a California Corporation,**                                        organized and existing under the laws of
**California.**                                   Lender's address is   **19000 MacArthur Blvd., Ste.**
**200, Irvine, CA 92612.**

---

*CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01*
Ellie Mae, Inc.                                          Page 1 of 13                                          CAEDEDL  0315
                                                                                                            CAEDEDL (CLS)
                                                                                                            07/24/2018 08:51 AM PST



705339
Klein
INVC

1055
CSFB2-CWAR

6

PRIORITY TITLE

**When recorded, mail to:**
**OCMBC, INC.**
**Attn: Trailing Docs**
**19000 MacArthur Blvd., Ste. 200**
**Irvine, CA 92612**

**Title Order** ████████████
**LOAN #:** ████████████

─────────── [Space Above This Line For Recording Data] ───────────

APN: 5512-017-005

# DEED OF TRUST

| MIN ████████████ |
| --- |
| **MERS PHONE #: 1-888-679-6377** |

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 25, 2018,** together with all all Riders to this document.

**(B) "Borrower"** is  **LESLIE KLEIN, A WIDOWER.**

Borrower's address is  **322 N. June Street, Los Angeles, CA 90004.**

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is   **OCMBC, INC..**

Lender is  **a California Corporation,** organized and existing under the laws of
**California.**                                                Lender's address is   **19000 MacArthur Blvd., Ste.**
**200, Irvine, CA 92612.**

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.                                   Page 1 of 13                        CAEDEDL  0315
                                                                                       CAEDEDL (CLS)
                                                                                       07/24/2018 08:51 AM PST



**LOAN #** ███████

(D) "Trustee" is   **Priority Title, 17327 Ventura Blvd. Suite 215, Encino, CA 91316.**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   **July 25, 2018.**          The Note states that Borrower owes Lender   **ONE MILLION NINETY SEVEN THOUSAND AND NO/100 * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *** Dollars (U.S.  **$1,097,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2048.**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

|  |  |  |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | **Prepayment Rider** |
| ☐ V.A. Rider | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01

Ellie Mae, Inc.                                   Page 2 of 13                                   CAEDEDL  0315
                                                                                                 CAEDEDL (CLS)
                                                                                                 07/24/2018 08:51 AM PST



LOAN #: ███████████

all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**    [Type of Recording Jurisdiction] of **Los Angeles**    [Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 5512-017-005**

which currently has the address of    **161 North Poinsettia Place, Los Angeles,**
[Street] [City]

California **90036**    ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.    Page 3 of 13    CAEDEDL  0315
CAEDEDL (CLS)
07/24/2018 08:51 AM PST

LOAN #:

to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**LOAN #** ████████

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**



LOAN # ████████

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water

**LOAN** ███████

from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration



LOAN #: ████████

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

LOAN # <span style="background:black">████████</span>

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all



**LOAN** ████████

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

LOAN # <span style="background:black">       </span>

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



Title Order No.:  E82556        Escrow No.: 03-023326-CF        AP#: 5512-017-005

## SIGNATURE PAGE

**Title of Document:  QUITCLAIM DEED**

**Date of Document:   July 25, 2018**

Bay Area Development Company, a California
Corporation

*Leslie Klein*          *Klein*
Leslie Klein                    ;authorized signer

_____    ;authorized signer

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ___*LOS ANGELES*___

On ___JULY 25 2018___ before me, MICHAELA LORRAINE PAULSON,

A Notary Public personally appeared ___LESLIE KLEIN —___
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____              (Seal)

MICHAELA LORRAINE PAULSON
Commission # 2111177
Notary Public - California
Los Angeles County
My Comm. Expires May 11, 2019

LOAN ███████

Lender: OCMBC, INC.
NMLS ID: 2125
Broker: C2 Financial Corporation
NMLS ID: 135622
Loan Originator: Ari Lindner
NMLS ID: 1255224

**CALIFORNIA--**Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.                              Page 13 of 13

                                                              CAEDEDL  0315
                                                              CAEDEDL (CLS)
                                                              07/24/2018 08:51 AM PST

## Exhibit A

**LEGAL DESCRIPTION**

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 52 IN TRACT NO. 7372 IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 107, PAGES 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA.

APN: 5512-017-005

MIN: ▮▮▮▮▮▮▮▮▮▮

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this      **25th**      day of **July, 2018**
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Note to   **OCMBC, INC., a
California Corporation**

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at: **161 North Poinsettia Place
Los Angeles, CA 90036**

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:
   **A.  ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.**
In addition to the Property described in Security Instrument, the following items now
or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security
Instrument: building materials, appliances and goods of every nature whatsoever
now or hereafter located in, on, or used, or intended to be used in connection with
the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing, bath
tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds,
shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto,
shall be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are
referred to in this 1-4 Family Rider and the Security Instrument as the "Property."
   **B.  USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification,
unless Lender has agreed in writing to the change. Borrower shall comply with all
laws, ordinances, regulations and requirements of any governmental body applicable
to the Property.
   **C.  SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall
not allow any lien inferior to the Security Instrument to be perfected against the
Property without Lender's prior written permission.

**MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      **Form 3170 1/01**
Ellie Mae, Inc.                      Page 1 of 3                      F3170RLU  0307
                                                                      F3170RLU (CLS)
                                                                      07/24/2018 08:51 AM PST



LOAN ███████████

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.



**LOAN** █████████

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

    **I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

*Leslie Klein*                                                      7/24/2018    (Seal)

**LESLIE KLEIN**                                                              **DATE**

---

**MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     **Form 3170 1/01**
Ellie Mae, Inc.                                             Page 3 of 3                            F3170RLU  0307
                                                                                                  F3170RLU (CLS)
                                                                                         07/24/2018 08:51 AM PST



MIN: 

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In The Wall Street Journal) – Rate Caps – Ten-Year Interest Only Period)

THIS FIXED/ADJUSTABLE RATE RIDER is made this    25th    day of
**July, 2018,**    and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the
same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable
Rate Note (the "Note") to  **OCMBC, INC., a California Corporation**

("Lender") of the same date and covering the property described in the Security
Instrument and located at:  **161 North Poinsettia Place**
**Los Angeles, CA 90036.**

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTER-
EST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES BORROWER
MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of  **7.550 %.**    The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
**1st**    day of  **August, 2025**    and the adjustable interest rate I will pay may

MULTISTATE FIXED/ADJUSTABLE RATE RIDER – WSJ One-Year LIBOR – Ten-Year Interest Only Period – Single Family
Fannie Mae Uniform Instrument Form 3153 2/06 (rev. 6/16)
Ellie Mae, Inc.                    Page 1 of 5                    F3153RLU   0916
                                                                 F3153RLU (CLS)
                                                       07/24/2018 08:51 AM PST



**LOAN #** ████████

change on that day every **12th** month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal**. The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SIX** percentage point(s) ( **6.000 %** ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.550 %** or less than **6.000 %**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000 %** ) from the rate

MULTISTATE FIXED/ADJUSTABLE RATE RIDER – WSJ One-Year LIBOR – Ten-Year Interest Only Period – Single Family
**Fannie Mae Uniform Instrument Form 3153 2/06 (rev. 6/16)**
Ellie Mae, Inc.                              Page 2 of 5                    F3153RLU  0916
                                                                            F3153RLU  (CLS)
                                                                   07/24/2018 08:51 AM PST



**LOAN #:** <span style="background:black">████████</span>

of interest I have been paying for the preceding   12   month(s). My interest rate will never be greater than  **12.550 % or less than the Margin.**

### (E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes
Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment
The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
1.  Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay



**LOAN #:** ████████

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE FIXED/ADJUSTABLE RATE RIDER – WSJ One-Year LIBOR – Ten-Year Interest Only Period – Single Family
Fannie Mae Uniform Instrument Form 3153 2/06 (rev. 6/16)
Ellie Mae, Inc.                          Page 4 of 5                          F3153RLU  0916
                                                                              F3153RLU (CLS)
                                                               07/24/2018 08:51 AM PST



LOAN #: █████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_Leslie Klein_ _7/nr/ro 18_ (Seal)

LESLIE KLEIN                                                            DATE

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER – WSJ One-Year LIBOR – Ten-Year Interest Only Period –** Single Family
**Fannie Mae Uniform Instrument Form 3153 2/06 (rev. 6/16)**
Ellie Mae, Inc.                                Page 5 of 5                                F3153RLU  0916
                                                                                         F3153RLU (CLS)
                                                                                         07/24/2018 08:51 AM PST



MIN ██████████████

# PREPAYMENT RIDER

THIS PREPAYMENT RIDER is made this **25th** day of **July, 2018**
and is incorporated into and shall be deemed to amend and supplement the Security
Instrument of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note (the "Note") to **OCMBC, INC., a California Corporation**

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: **161 North Poinsettia Place**
**Los Angeles, CA 90036**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

Subject to the prepayment charge provided below, Borrower has the right to
make payments of principal at any time before they are due. A payment of principal
only is known as a "prepayment." A "full prepayment" is the prepayment of the entire
unpaid principal due under the Note. A payment of only part of the unpaid principal
is known as a "partial prepayment." When Borrower makes a prepayment, Borrower
will tell the Note Holder (as defined in the Note) in writing that Borrower is doing so.
Borrower may not designate a payment as a prepayment if Borrower has not made
all the monthly payments due under the Note.

**If, within the first 36 month(s) beginning with the date Borrower
executes the Note (the "Penalty Period"), Borrower makes a full prepayment,
or partial prepayment in any twelve (12)-month period that exceeds 20% of the
original principal loan amount, Borrower will pay a prepayment charge as
consideration for the Note Holder's acceptance of such prepayment. The
prepayment charge will equal the amount of interest that would accrue during
a six (6)-month period on the amount prepaid that exceeds 20% of the original
principal balance of the Note, calculated at the rate of interest in effect under
the terms of the Note at the time of the prepayment, unless otherwise**



**LOAN #:** 

**prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

No prepayment charge will be assessed for any prepayment made after the Prepayment Penalty Period or if the prepayment is concurrent with the bona fide sale of the Property to an unrelated third party after the first **36** month(s) of the Note. In the event of a bona fide sale, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

The Note Holder will apply all prepayments to reduce the amount of principal that Borrower owes under the Note. However, the Note Holder may apply Borrower's prepayment to the accrued and unpaid interest on the prepayment amount, before applying Borrower's prepayment to reduce the principal amount of the Note. If Borrower makes a partial prepayment, there will be no change in the due dates of Borrower's monthly payments unless the Note Holder agrees in writing to those changes.

If the Note is an Adjustable Rate Note, partial prepayments may reduce the amount of Borrower's monthly payment after the first interest rate Change Date (as defined in the Note) following the partial prepayment. However, any reduction due to Borrower's partial prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a prepayment charge at the time a prepayment is received shall not be deemed a waiver of such charge and any such charge calculated in accordance with this section shall be payable on demand.

All other provisions of the Security Instrument are unchanged by this Rider and remain in full force and effect.

## NOTICE TO BORROWER

**DO NOT SIGN THIS PREPAYMENT RIDER BEFORE YOU READ IT. THIS PREPAYMENT RIDER PROVIDES FOR THE PAYMENT OF A CHARGE IF YOU WISH TO REPAY THE LOAN PRIOR TO THE DATE PROVIDED FOR REPAYMENT.**



**LOAN #** ███████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_Leslie Klein_ _____   7/25/2018 _____ (Seal)
**LESLIE KLEIN**                                                        **DATE**

Multistate Prepayment Rider
Ellie Mae, Inc.

Page 3 of 3

GPPRLU  0413
GPPRLU (CLS)
07/24/2018 08.51 AM PST



Exhibit "3"




**This page is part of your document - DO NOT DISCARD**



## 20200411503



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/13/20 AT 03:40PM**

| | |
|---|---|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |





**L E A D S H E E T**



**202004130170093**

**00018115837**



**010665703**

**SEQ:**
**01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**



E493367



RECORDING REQUESTED BY: **CSC/INGEO**

WHEN RECORDED MAIL TO:
**FIRST AMERICAN MORTGAGE SOLUTIONS**
**1795 INTERNATIONAL WAY**
**IDAHO FALLS, ID 83402**
PH. **208-528-9895**
**CALIFORNIA**
COUNTY OF **LOS ANGELES**
LOAN NO ███████

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR OCMBC, INC., ITS SUCCESSORS AND ASSIGNS**. located at **P.O. BOX 2026. FLINT, MICHIGAN 48501-2026**. Assignor. does hereby assign to **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE VERUS SECURITIZATION TRUST 2018-INV2**. located at **2001 M STREET, SUITE 300. WASHINGTON, DC 20036**. Assignee. its successors and assigns, all its rights, title and interest in and to that certain Deed of Trust dated **JULY 25, 2018**. executed by **LESLIE KLEIN, A WIDOWER**. Trustor, to **PRIORITY TITLE**. Trustee. for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR OCMBC, INC., ITS SUCCESSORS AND ASSIGNS**. Original Beneficiary. and recorded on **JULY 30, 2018** as Instrument No. **20180758110** in the official records of the County Recorder's Office in and for the County of **LOS ANGELES**. State of **CALIFORNIA**.

LEGAL DESCRIPTION: **AS DESCRIBED IN SAID DEED OF TRUST REFERRED TO HEREIN**

COMMONLY KNOWN AS: **161 NORTH POINSETTIA PLACE, LOS ANGELES, CA 90036**

TOGETHER WITH all rights accrued or to accrue under said Deed of Trust.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on _____ APR 0 2 2020

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR OCMBC, INC., ITS SUCCESSORS AND ASSIGNS**

**STEPHANIE NICOLE WESSEL. VICE PRESIDENT**

STATE OF **SOUTH CAROLINA**    COUNTY OF **GREENVILLE** ) SS.
On ___APR 0 2 2020___. before me. ___Cynthia M Brock___. personally appeared **STEPHANIE NICOLE WESSEL** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR OCMBC, INC., ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____    _____COMMISSION EXP. _____
NOTARY PUBLIC

███████ - CA    Page 1 of 1    MI███████

**MERS PHONE: 1-888-679-6377**



**This page is part of your document - DO NOT DISCARD**



# 20211361087



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**09/07/21 AT 08:04AM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |



**L E A D S H E E T**



202109070990001

**00021130843**



012636693

**SEQ:**
**01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**



*E465200*

Prepared By and Return To:
**Murat Deniz**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

Space above for Recorder's use

Loan No ▮▮▮▮▮



## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR VERUS SECURITIZATION TRUST 2018-INV2**, whose address is **2001 M STREET NW STE. 300, WASHINGTON, DC 20036**, (ASSIGNOR), does hereby grant, assign and transfer to **AJAX MORTGAGE LOAN TRUST 2021-D, MORTGAGE-BACKED SECURITIES, SERIES 2021-D, BY U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE**, whose address is **13190 SW 68TH PARKWAY SUITE 200, TIGARD, OR 97223**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **7/25/2018**
Original Loan Amount: **$1,097,000.00**
Executed by (Borrower(s)): **LESLIE KLEIN**
Original Trustee: **PRIORITY TITLE**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR OCMBC, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page **N/A**
Document/Instrument No: **20180758110** in the Recording District of **Los Angeles, CA**, Recorded on **7/30/2018**.

Property more commonly described as: **161 NORTH POINSETTIA PLACE, LOS ANGELES, CALIFORNIA 90036**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _8/18/2021_

**WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR VERUS SECURITIZATION TRUST 2018-INV2 BY VERUS RESIDENTIAL LOANCO, LLC, AS ATTORNEY-IN-FACT**

By: **ERIN BAKER**
Title: **COLLATERAL MANAGEMENT OFFICER**

Witness Name: _JOE WESSING_

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of       **MINNESOTA**
County of      **HENNEPIN**

On ___8/18/2021___, before me, **ERICK I. SOTO**, a Notary Public, personally appeared **ERIN
BAKER, COLLATERAL MANAGEMENT OFFICER** of/for **WILMINGTON SAVINGS FUND SOCIETY,
FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR VERUS
SECURITIZATION TRUST 2018-INV2 BY VERUS RESIDENTIAL LOANCO, LLC, AS ATTORNEY-IN-
FACT**, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **MINNESOTA**
that the foregoing paragraph is true and correct. I further certify ERIN BAKER, signed, sealed, attested and
delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____

(Notary Name): **ERICK I. SOTO**
My commission expires: **01/31/2023**

ERICK I. SOTO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2023



**This page is part of your document - DO NOT DISCARD**

## 20211925082

 

**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/29/21 AT 01:59PM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |



**L E A D S H E E T**



202112291020103

**00021715050**



013004375

**SEQ:**
**01**

SECURE - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

E460077

FOR REFERENCE ONLY: 20211925082

Recording Requested by
Simplifile

Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

Loan No: ▓▓▓▓▓

_____ Space above for Recorder's use _____



## CORRECTIVE ASSIGNMENT OF DEED OF TRUST
***This Assignment is being recorded to correct and replace the Assignment recorded on 09/07/2021 as
Instrument# 20211361087 in the records of the Clerk of Los Angeles County, CA to verify the execution of
the assignment***

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY
BUT SOLELY AS TRUSTEE FOR THE VERUS SECURITIZATION TRUST 2018-INV2, whose address is
2001 M STREET NW STE. 300, WASHINGTON, DC 20036, (ASSIGNOR), does hereby grant, assign and
transfer to AJAX MORTGAGE LOAN TRUST 2021-D, MORTGAGE-BACKED SECURITIES, SERIES
2021-D, BY U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, whose address is 13190
SW 68TH PARKWAY SUITE 200, TIGARD, OR 97223, (ASSIGNEE), its successors, transferees and assigns
forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with
all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 7/25/2018
Original Loan Amount: $1,097,000.00
Executed by (Borrower(s)): LESLIE KLEIN
Original Trustee: PRIORITY TITLE
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
BENEFICIARY, AS NOMINEE FOR OCMBC, INC., ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 20180758110 in the Recording District of Los Angeles, CA, Recorded on 7/30/2018.

Property more commonly described as: 161 NORTH POINSETTIA PLACE, LOS ANGELES, CALIFORNIA
90036

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board
of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ **DEC 1 4 2021** _____

WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY
AS TRUSTEE FOR THE VERUS SECURITIZATION TRUST 2018-INV2, BY NEWREZ LLC F/K/A NEW
PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT

_____
By: CYNTHIA MICHELLE BROCK                    Witness Name: Kayla Stanton
Title: MANAGER

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of _____ SC _____
County of _____ Greenville _____

On _____ **DEC 1 4 2021** _____, before me, **Joseph Cooper**, a Notary Public, personally appeared CYNTHIA MICHELLE BROCK, MANAGER of/for NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE VERUS SECURITIZATION TRUST 2018-INV2, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _____ SC _____ that the foregoing paragraph is true and correct. I further certify CYNTHIA MICHELLE BROCK, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **Joseph Cooper**
My commission expires: _____



Exhibit "4"

Fill in this information to identify your case and this filing:

| | | | |
|---|---|---|---|
| Debtor 1 | **Leslie Klein** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 2:23-bk-10990-SK | | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1   Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No  Go to Part 2.

☑ Yes  Where is the property?

**1.1**

**322 N. June Street**
Street address, if available, or other description

**Los Angeles        CA    90004-0000**
City                State    ZIP Code

**Los Angeles**
County

**What is the property?** Check all that apply

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$4,900,000.00** | **$2,450,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**50% is held by Debtor and 50% held by his Erika's irrevocable marital deduction trust**

☐ Check if this is community property (see instructions)

**Debtor's principal residence; paid in full. The property is held in the marital deduction trust. The Debtor's current spouse, Barbara Klein, has a life estate interest in the residence.**

---

Debtor 1    **Leslie Klein**                                                    Case number *(if known)*    **2:23-bk-10990-SK**

---

**1.2**    **If you own or have more than one, list here:**

**315 N. Martel Avenue**
Street address, if available, or other description

| What is the property? Check all that apply |
|---|
| ☑ Single-family home |
| ☐ Duplex or multi-unit building |
| ☐ Condominium or cooperative |
| ☐ Manufactured or mobile home |
| ☐ Land |
| ☐ Investment property |
| ☐ Timeshare |
| ☐ Other _____ |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| **Los Angeles** | **CA** | **90036-0000** |
|---|---|---|
| City | State | ZIP Code |

**Current value of the entire property?**
**$2,500,000.00**

**Current value of the portion you own?**
**$2,500,000.00**

**Who has an interest in the property?** Check one
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Los Angeles**
County

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.
**100%**

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property.  Debtor collects $5,500/month.**

---

**1.3**    **If you own or have more than one, list here:**

**143 S. Highland Drive**
Street address, if available, or other description

| What is the property? Check all that apply |
|---|
| ☑ Single-family home |
| ☐ Duplex or multi-unit building |
| ☐ Condominium or cooperative |
| ☐ Manufactured or mobile home |
| ☐ Land |
| ☐ Investment property |
| ☐ Timeshare |
| ☐ Other _____ |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| **Los Angeles** | **CA** | **90036-0000** |
|---|---|---|
| City | State | ZIP Code |

**Current value of the entire property?**
**$2,200,000.00**

**Current value of the portion you own?**
**$2,200,000.00**

**Who has an interest in the property?** Check one
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Los Angeles**
County

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.
**100%**

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property. Debtor collects $4,000 per month in rental income.**

---

Debtor 1    **Leslie Klein**                                                                                     Case number *(if known)* **2:23-bk-10990-SK**

| | | |
|---|---|---|
| 1.4 | **If you own or have more than one, list here:** | |

**161 N. Poinsettia Place**
Street address, if available, or other description

**What is the property?** Check all that apply

- ■ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Los Angeles    CA    90036-0000**
City    State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,000,000.00** | **$2,000,000.00** |

**Who has an interest in the property?** Check one

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

**Los Angeles**
County

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Single family residence; rental property. Debtor collects $3,000 per month rental income.**

---

| | | |
|---|---|---|
| 1.5 | **If you own or have more than one, list here:** | |

**2560-B Whitewater Club Drive**
Street address, if available, or other description

**What is the property?** Check all that apply

- ☐ Single-family home
- ☐ Duplex or multi-unit building
- ■ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Palm Springs    CA    92262-0000**
City    State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$350,000.00** | **$350,000.00** |

**Who has an interest in the property?** Check one

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**100%**

**Riverside**
County

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**A condo with 2 bedrooms and 2 bathrooms; vacation home.**

---

Debtor 1    **Leslie Klein**                                    Case number (if known)  **2:23-bk-10990-SK**

**If you own or have more than one, list here:**

1.6

**3752 Ocean Drive**
Street address, if available, or other description

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put
the amount of any secured claims on *Schedule D:
Creditors Who Have Claims Secured by Property.*

**Oxnard**        **CA**   **93035-0000**
City              State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,400,000.00** | **$2,400,000.00** |

Describe the nature of your ownership interest
(such as fee simple, tenancy by the entireties, or
a life estate), if known.

**100%**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Ventura**
County

☐ Check if this is community property
(see instructions)

Other information you wish to add about this item, such as local
property identification number:

**Single family home; vacation home.**

---

**If you own or have more than one, list here:**

1.7

**Leonardo Plaza Hotel Jerusalem
Suite 1323**
Street address, if available, or other description

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
■ Investment property
☐ Timeshare
☐ Other    **Unit in a hotel**

Do not deduct secured claims or exemptions. Put
the amount of any secured claims on *Schedule D:
Creditors Who Have Claims Secured by Property.*

**Jerusalem**
City              State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$450,000.00** | **$225,000.00** |

Describe the nature of your ownership interest
(such as fee simple, tenancy by the entireties, or
a life estate), if known.

**50% by Debtor and 50% by deceased
wife's irrevocable trust**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Israel**
County

☐ Check if this is community property
(see instructions)

Other information you wish to add about this item, such as local
property identification number:

**Debtor owns a unit in the Leanoardo Plaza Hotel. Vacation home.**

---

Official Form 106A/B                    Schedule A/B: Property                    page 4

Debtor 1    **Leslie Klein**                                    Case number *(if known)*  **2:23-bk-10990-SK**

1.8 **If you own or have more than one, list here:**

| | What is the property? Check all that apply | |
|---|---|---|
| **Dan Boutique Hotel Jerusalem Suite 505** | ☐ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | **Current value of the entire property?** · **Current value of the portion you own?** |
| **Jerusalem** | ☐ Land | **$200,000.00** · **$100,000.00** |
| City          State     ZIP Code | ☐ Investment property | |
| | ☐ Timeshare | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| | ■ Other   **Unit in a hotel** | |
| | **Who has an interest in the property?** Check one | **50% by Debtor and 50% by deceased spouse's irrevocable trust** |
| **Israel** | ■ Debtor 1 only | |
| County | ☐ Debtor 2 only | |
| | ☐ Debtor 1 and Debtor 2 only | ☐ **Check if this is community property** (see instructions) |
| | ☐ At least one of the debtors and another | |

Other information you wish to add about this item, such as local property identification number:

**Debtor owns a unit in the Leanoardo Plaza Hotel. Vacation home.**

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.............................................=>   **$12,225,000.00**

---

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
■ Yes

| 3.1 | | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|
| Make | **Lexus** | ■ Debtor 1 only | |
| Model | **LS500** | ☐ Debtor 2 only | |
| Year | **2021** | ☐ Debtor 1 and Debtor 2 only | **Current value of the entire property?** · **Current value of the portion you own?** |
| Approximate mileage: | **n/a** | ☐ At least one of the debtors and another | |
| Other information: | | | |
| **Leased vehicle. Monthly payment is $1,319.00.** | | ☐ Check if this is community property (see instructions) | **$0.00** · **$0.00** |

| 3.2 | | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|
| Make | **Lexus** | ■ Debtor 1 only | |
| Model | **LS** | ☐ Debtor 2 only | |
| Year | **2021** | ☐ Debtor 1 and Debtor 2 only | **Current value of the entire property?** · **Current value of the portion you own?** |
| Approximate mileage | **n/a** | ☐ At least one of the debtors and another | |
| Other information: | | | |
| **Leased vehicle. Debtor's spouse drives this vehicle. Monthly payment is $500.** | | ☐ Check if this is community property (see instructions) | **$0.00** · **$0.00** |

Debtor 1    **Leslie Klein**                                                    Case number *(if known)*    **2:23-bk-10990-SK**

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

   ■ No
   ☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for
   pages you have attached for Part 2. Write that number here.............................................=>    **$0.00**

<table>
<tr><td>**Part 3:**  **Describe Your Personal and Household Items**</td><td></td></tr>
</table>

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

   | | |
   |---|---|
   | Debtor's residence: Debtor's residence: Couches, coffee tables, dining room table with chairs, mattresses with bedframes, wall mirrors, desk with chairs, lamps, rugs, dressers, kitchen table, patio furniture, cabinets, refrigerators, and other household goods and furnishings | $8,000.00 |
   | 2560-B Whitewater Club Drive, Palm Spring vacation home: living room sofa, table, chairs, dining room table and chairs, TV, phone, kitchen appliances, china, beds and side tables, mirrors, paintings, and miscellaneous household goods and furnishings. | $5,000.00 |
   | 3752 Ocean Drive, Oxnard CA vacation home: living room sofa, table, chairs, dining room table and chairs, TV, phone, kitchen appliances, china, beds and side tables, mirrors, paintings, and miscellaneous household goods and furnishings. | $5,000.00 |

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe.....

   | | |
   |---|---|
   | TVs, phones, computers | $3,000.00 |

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☐ No
   ■ Yes. Describe.....

   | | |
   |---|---|
   | Books and art objects | $4,000.00 |

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☐ No
   ■ Yes. Describe.....

| Debtor 1 | **Leslie Klein** | | Case number *(if known)* | **2:23-bk-10990-SK** |

| | **Sports and Hobyy equipment** | **$2,000.00** |

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
- ☑ No
- ☐ Yes. Describe.....

**11 Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
- ☐ No
- ☑ Yes. Describe.....

| | **Debtor's residence: Clothes and shoes** | **$2,000.00** |

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
- ☐ No
- ☑ Yes. Describe.....

| | **Debtor's residence: Furs, diamond ring, gold necklace, diamond earrings,  gold rings and costume jewelry** | **$20,000.00** |

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
- ☑ No
- ☐ Yes. Describe.....

**14 Any other personal and household items you did not already list, including any health aids you did not list**
- ☑ No
- ☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...........................................................................

| | **$49,000.00** |

**Part 4:    Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**16  Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
- ☑ No
- ☐ Yes ................................................................

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
- ☐ No
- ☑ Yes........................

Institution name:

| 17.1. | **Checking account ending in 9401** | **Bank of America** | **$4,000.00** |
| 17.2. | **Stock account ending in 4523** | **Morgan Stanley** | **$11,190.00** |

Debtor 1    **Leslie Klein**    Case number *(if known)*    **2:23-bk-10990-SK**

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

    ■ No
    ☐ Yes...............    Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
    ☐ No
    ■ Yes. Give specific information about them...................

| Name of entity: | % of ownership: | |
|---|---|---|
| Debtor has a 100% ownership interest in Bay Area Development, Co.   Bay Area Development, Co. filed  a chapter 11 bankruptcy petition on 9/12/2022, Case No.: 2:22-bk-15031-SK.  On December 6, 2022, Bay Area entered into a stipulation with its secured creditor Scott Capital Management Fund 1, LLC and OUST to dismiss the case.  The order dismissing the case with a 180 day bar (due to pending RFS motion) was entered on 12/6/2022.  The real property owned by Bay Area Development, Co. went into foreclosure.  The company currently does not own any assets. | 100%    % | $0.00 |
| Debtor has a membership interest in Life Capital Group, LLC, which is an investment company.  The LLC buys insurance policies on other people's lives and upon passing, the LLC collects the funds and makes a distribution to its members. | 5% membership interest    % | Unknown |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

    ■ No
    ☐ Yes. Give specific information about them
    Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

    ■ No
    ☐ Yes. List each account separately.
    Type of account:    Institution name:

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

    ■ No
    ☐ Yes. ....................    Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

    ■ No
    ☐ Yes............    Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

    ■ No
    ☐ Yes............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
    ☐ No

Debtor 1    **Leslie Klein**                                                 Case number *(if known)*    **2:23-bk-10990-SK**

■ Yes.  Give specific information about them...

| | |
|---|---|
| **Klein Living Trust dated April 8, 1990. The Settlors of the Trust are Leslie Klein and Erika Noemi Klein, husband and wife. Erika Klein passed away several years ago, and pursuant to the trust provision, Erika Klein's interest in the assets is now in an irrevocable trust ("Marital Deduction Trust").  The assets of the trust are listed on Schedule A/B, item #1 for each property that is part of the Trust.** | $0.00 |

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
    ■ No
    ☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
    ■ No
    ☐ Yes.  Give specific information about them...

**Money or property owed to you?**                               **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**
    ■ No
    ☐ Yes  Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ■ No
    ☐ Yes.  Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
    ☐ No
    ■ Yes.  Give specific information..

| | |
|---|---|
| **Isaac Kirzner. Debtor entered into an agreement with Isaac Kirzner whereby he paid the insurance premiums for Mr. Kirzner, and upon Mr. Kirzner's passing, the Debtor would receive $1 Million. The current Trustee is Sol Majer.** | $1,000,000.00 |
| **Judith Bittman.  Debtor entered into an agreement with Judith Bittman whereby he paid the insurance premiums for Ms. Bittmann  and upon Ms. Bittman's passing, the Debtor would receive $1 Million. The current Trustee is Sol Majer.** | $1,000,000.00 |
| **Debtor intends to file a complaint against Frank Menlo for unpaid trustee fees in the amount of $3,000,000.00 - $4,000,000.00. Debtor is unlikely to collect due to the ongoing litigation with Mr. Menlo.** | Unknown |

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ■ No

Official Form 106A/B                          Schedule A/B: Property                          page 9

Debtor 1    **Leslie Klein**                                    Case number *(if known)*  **2:23-bk-10990-SK**

☐ Yes  Name the insurance company of each policy and list its value.

Company name:                          Beneficiary:              Surrender or refund
value:

32. **Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
■ No
☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
■ No
☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
■ No
☐ Yes.  Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here**.............................................................................................................. | **$2,015,190.00** |

**Part 5:**  Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37  Do you own or have any legal or equitable interest in any business-related property?
■ No  Go to Part 6
☐ Yes   Go to line 38

**Part 6**  Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?
■ No. Go to Part 7.
☐ Yes.  Go to line 47.

**Part 7:**  Describe All Property You Own or Have an Interest In That You Did Not List Above

53. Do you have other property of any kind you did not already list?
*Examples:* Season tickets, country club membership
■ No
☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ..................................... | **$0.00** |

Debtor 1    **Leslie Klein**                                                    Case number *(if known)*    **2:23-bk-10990-SK**

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

| | | | |
|---|---|---|---|
| 55. | Part 1: Total real estate, line 2 ................................................................................................................ | | **$12,225,000.00** |
| 56. | Part 2: Total vehicles, line 5 | **$0.00** | |
| 57. | Part 3: Total personal and household items, line 15 | **$49,000.00** | |
| 58. | Part 4: Total financial assets, line 36 | **$2,015,190.00** | |
| 59. | Part 5: Total business-related property, line 45 | **$0.00** | |
| 60. | Part 6: Total farm- and fishing-related property, line 52 | **$0.00** | |
| 61. | Part 7: Total other property not listed, line 54 | + **$0.00** | |
| 62. | Total personal property. Add lines 56 through 61... | **$2,064,190.00** | Copy personal property total    **$2,064,190.00** |

63.  Total of all property on Schedule A/B. Add line 55 + line 62                                **$14,289,190.00**

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Leslie Klein** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | **2:23-bk-10990-SK** | | |
| (if known) | | | |

☐ Check if this is an
amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ **No.** Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ **Yes.** Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>if any |
|---|---|---|---|---|
| 2.1 **CCO Mortgage Corp.** | Describe the property that secures the claim: | $19,372.00 | $2,400,000.00 | $0.00 |
| Creditor's Name | **3752 Ocean Drive Oxnard, CA 93035**<br>**Ventura County**<br>**Single family home; vacation home.** | | | |
| **Attn: Bankruptcy**<br>**10561 Telegraph Rd**<br>**Glen Allen, VA 23059** | As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | | |
| Number, Street, City, State & Zip Code | Nature of lien. Check all that apply. | | | |
| **Who owes the debt?** Check one. | ☐ An agreement you made (such as mortgage or secured car loan) | | | |
| ■ Debtor 1 only | | | | |
| ☐ Debtor 2 only | ☐ Statutory lien (such as tax lien, mechanic's lien) | | | |
| ☐ Debtor 1 and Debtor 2 only | ☐ Judgment lien from a lawsuit | | | |
| ☐ At least one of the debtors and another | ■ Other (including a right to offset)    **Secured Line of Credit** | | | |
| ☐ Check if this claim relates to a community debt | | | | |

| | | |
|---|---|---|
| | **Opened<br>05/05  Last<br>Active** | |
| Date debt was incurred | **1/09/23** | Last 4 digits of account number    **1428** |

Debtor 1  **Leslie Klein**

| First Name | Middle Name | Last Name |
|---|---|---|

Case number (if known)  **2:23-bk-10990-SK**

---

| 2.2 | **Chase Mortgage** | Describe the property that secures the claim: | $138,719.00 | $350,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**BK Department**
**Mail Code LA4 5555  700**
**Kansas Ln**
**Monroe, LA 71203**

Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**2560-B Whitewater Club Drive Palm**
**Springs, CA 92262  Riverside**
**County**
**A condo with 2 bedrooms and 2**
**bathrooms; vacation home.**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **Deed of Trust**

**Opened**
**07/05  Last**
**Active**
Date debt was incurred   **8/23/22**          Last 4 digits of account number   **2700**

---

| 2.3 | **Ericka and Joseph Vago** | Describe the property that secures the claim: | $24,334,038.99 | $0.00 | $24,334,038.99 |
|---|---|---|---|---|---|

Creditor's Name

**c/o Brian Procel**
**Procel Law**
**401 Wilshire Blvd., 12th**
**Floor**
**Santa Monica, CA 90401**

Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**Assets of the Debtor**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☑ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **Notice of Judgment Lien**

Date debt was incurred   **July 2020**          Last 4 digits of account number   **5050**

---

Debtor 1 **Leslie Klein**
First Name        Middle Name        Last Name

Case number (if known)   **2:23-bk-10990-SK**

---

| 2.4 | **Fay Servicing LLC** | | $712,265.00 | $2,400,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

**3752 Ocean Drive Oxnard, CA 93035
Ventura County
Single family home; vacation home.**

**Attn: Bankruptcy Dept
Po Box 809441
Chicago, IL 60680**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
  community debt

Nature of lien. Check all that apply.

☐ An agreement you made (such as mortgage or secured
  car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **1st Deed of Trust**

**Opened
10/13/04
Last Active**

Date debt was incurred **08/20**   Last 4 digits of account number   **9505**

---

| 2.5 | **Fay Servicing LLC** | | $327,886.00 | $2,400,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

**3752 Ocean Drive Oxnard, CA 93035
Ventura County
Single family home; vacation home.**

**Attn: Bankruptcy Dept
Po Box 809441
Chicago, IL 60680**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
  community debt

Nature of lien. Check all that apply.

☐ An agreement you made (such as mortgage or secured
  car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **2nd Deed of Trust**

**Opened
11/04  Last
Active**

Date debt was incurred **8/09/22**   Last 4 digits of account number   **9492**

---

Debtor 1  **Leslie Klein**
_____First Name_____ ___Middle Name___ _____Last Name_____

Case number (if known)  **2:23-bk-10990-SK**

| 2.6 | **Fiore Racobs & Powers** | | $49,436.57 | $350,000.00 | $0.00 |

**Fiore Racobs & Powers**
Creditor's Name

**c/o Palm Springs
Country Club HOA
6820 Indiana Ave., Ste
140
6820 Indiana Ave., Ste
140
Riverside, CA 92506**
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

Date debt was incurred  **2020 - 2023**

**Describe the property that secures the claim:**

**2560-B Whitewater Club Drive Palm
Springs, CA 92262  Riverside
County
A condo with 2 bedrooms and 2
bathrooms; vacation home.**

**As of the date you file, the claim is:** Check all that
apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured
car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☒ Other (including a right to offset)    **HOA Assessments**

Last 4 digits of account number  **4460**

| 2.7 | **Gestetner Charitable Remainder Trus** | | $2,000,000.00 | Unknown | Unknown |

**Gestetner Charitable
Remainder Trus**
Creditor's Name

**c/o Andor Gestetner
1425 55th Street
Brooklyn, NY 11219**
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

Date debt was incurred  **5/14/2021**

**Describe the property that secures the claim:**

**Debtor has a membership interest in
Life Capital Group, LLC, which is an
investment company. The LLC buys
insurance policies on other people's
lives and upon passing, the LLC
collects the funds and makes a
distribution to its members.
5% m**

**As of the date you file, the claim is:** Check all that
apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured
car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☒ Other (including a right to offset)    **UCC Financing**

Last 4 digits of account number  **3629**

Debtor 1  **Leslie Klein**

First Name          Middle Name          Last Name

Case number (if known)  **2:23-bk-10990-SK**

| 2.8 | **Los Angeles County Tax Collector** | Describe the property that secures the claim: | $15,000.00 | $4,900,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**322 N. June Street Los Angeles, CA 90004 Los Angeles County Debtor's principal residence; paid in full. The property is held in the marital deduction trust. The Debtor's current spouse, Barbara Klein, has a life estate interest in the res**

**Bankruptcy Unit**
**PO Box 54110**
**Los Angeles, CA**
**90054-0027**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
   community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
   car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **Property Taxes**

Date debt was incurred  **2022 - 2023**        Last 4 digits of account number   **3008**

---

| 2.9 | **Mrc/united Wholesale M** | Describe the property that secures the claim: | $954,432.00 | $2,000,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**161 N. Poinsettia Place Los Angeles, CA 90036 Los Angeles County Single family residence; rental property. Debtor collects $3,000 per month rental income.**

**Attn: Bankruptcy**
**P. O. Box 619098**
**Dallas, TX 75261**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
   community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
   car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **Deed of Trust**

**Opened 05/05  Last Active**

Date debt was incurred  **11/17/22**        Last 4 digits of account number   **2120**

---

Debtor 1   **Leslie Klein**

First Name          Middle Name          Last Name

Case number (if known)   **2:23-bk-10990-SK**

| 2.1 0 | **Selene Finance** | | | $1,755,385.00 | $2,500,000.00 | $0.00 |
|---|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

> **315 N. Martel Avenue Los Angeles, CA 90036  Los Angeles County Single family residence; rental property.  Debtor collects $5,500/month.**

**Attn: Bankruptcy
Po Box 8619
Philadelphia, PA 19101**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
   community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
   car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **Deed of Trust**

Date debt was incurred   **6/22/21**

**Opened 08/18 Last Active**

Last 4 digits of account number   **8372**

---

| 2.1 1 | **Shellpoint Mortgage Servicing** | | | $1,213,516.00 | $2,200,000.00 | $0.00 |
|---|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

> **143 S. Highland Drive Los Angeles, CA 90036  Los Angeles County Single family residence; rental property. Debtor collects $4,000 per month in rental income.**

**Attn: Bankruptcy
Po Box 10826
Greenville, SC 29603**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
   community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
   car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **Deed of Trust**

Date debt was incurred   **12/27/22**

**Opened 04/19  Last Active**

Last 4 digits of account number   **4516**

---

Debtor 1    **Leslie Klein**

First Name _____ Middle Name _____ Last Name _____

Case number (if known)    **2:23-bk-10990-SK**

| 2.1 2 | **Toyota Financial Services** | | | | |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:    $34,318.00    $0.00    $34,318.00

**Attn: Bankruptcy
Po Box 259001
Plano, TX 75025**

Number, Street, City, State & Zip Code

**2021 Lexus LS500 n/a miles
Leased vehicle. Monthly payment is
$1,319.00.**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Auto Lease**

**Opened
05/21  Last
Active
3/18/22**

Date debt was incurred    Last 4 digits of account number    **X788**

| 2.1 3 | **Toyota Financial Services** | | | | |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:    $10,488.00    $0.00    $10,488.00

**Attn: Bankruptcy
Po Box 259001
Plano, TX 75025**

Number, Street, City, State & Zip Code

**2021 Lexus LS n/a miles
Leased vehicle. Debtor's spouses
drives this vehicle. Monthly
payment is $500.**

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Auto Lease**

**Opened
06/21  Last
Active
6/01/22**

Date debt was incurred    Last 4 digits of account number    **Y582**

Add the dollar value of your entries in Column A on this page. Write that number here:    **$31,564,856.56**

If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:    **$31,564,856.56**

**Part 2:**   **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Debtor 1   **Leslie Klein**                                                                     Case number (if known)   **2:23-bk-10990-SK**
     First Name        Middle Name        Last Name

[ ]   Name, Number, Street, City, State & Zip Code
     **Andor Gestetner**
     **c/o Law Offices of Jacob Unger**
     **5404 Whitsett Ave Ste. 182**
     **Valley Village, CA 91607**

On which line in Part 1 did you enter the creditor?   **2.7**

Last 4 digits of account number ___

[ ]   Name, Number, Street, City, State & Zip Code
     **Ericka and Joseph Vago**
     **124 N. Highland Ave**
     **Sherman Oaks, CA 91423**

On which line in Part 1 did you enter the creditor?   **2.3**

Last 4 digits of account number ___

1  JOSHUA L. SCHEER #242722
   REILLY D. WILKINSON #250086
2  SCHEER LAW GROUP, LLP
   85 ARGONAUT, SUITE 202
3  ALISO VIEJO, CA  92656
   Telephone:  (949) 263-8757
4  Facsimile:  (949) 308-7373
   Jscheer@scheerlawgroup.com
5  G.550-427S

6  Attorneys for Movant
   Ajax Mortgage Loan Trust 2021-D, Mortgage-Backed Securities, Series 2021-D, by U.S. Bank
7  National Association, as Indenture Trustee, its successors and/or assignees

8              UNITED STATES BANKRUPTCY COURT FOR

9              THE CENTRAL DISTRICT OF CALIFORNIA

10             LOS ANGELES DIVISION

11  In re:                          Bk. No. 2:23-bk-10990-SK

12  LESLIE KLEIN                    Chapter 11

13          Debtor.                 **MEMORANDUM OF POINTS AND
                                    AUTHORITIES IN SUPPORT OF
14                                  MOTION FOR RELIEF FROM
                                    AUTOMATIC STAY**

15
                                    Hearing-
16                                  Date:  May 17, 2023
                                    Time:  8:30am
17                                  Place:  Bankruptcy Court
                                            255 E. Temple Street
18                                          Los Angeles, CA 90012
                                            Courtroom 1575
19

20

21

22

23             [THIS PAGE WAS INTENTIONALLY LEFT BLANK]

24

25

26

27

28

                                    i

1

# <u>TABLE OF CONTENTS</u>

| | |
|---|---|
| I. INTRODUCTION | 1 |
| II. FACTS | 2 |
| III. ARGUMENT | 3 |
| 1.  Sufficient "Cause" Exists to Grant Movant's Motion for Relief from the Automatic Stay as Movant is not Adequately Protected | 3 |
| a.  Lack of Payment | 4 |
| b.  Lack of Adequate Protection | 4 |
| c.  Misuse of Cash Collateral | 5 |
| d.  Insurance Loss Payee Information | 6 |
| 2.  The Property Is Not Necessary to an Effective Reorganization That is in Prospect | 6 |
| a.  Equity Analysis | 7 |
| b.  Reorganization Analysis | 7 |
| 3.  Request to Prohibit Use and for Turnover of Cash Collateral | 8 |
| 4.  Bankruptcy Rule 4001(a)(3) Should Be Waived | 9 |
| IV. CONCLUSION | 9 |

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Federal Cases**

3

*In re A Partners, LLC*, 344 B.R. 114 (Bankr. E.D. Cal. 2006)                                      4

4

*In re Bowers Inv. Co.*, *LLC* 553 B.R. 762 (Bankr. D. Alaska 2016)                           5

5

*In re Mellor*, 734 F.2d 1396 (9th Cir. 1984)                                                               7

6

*La Jolla Mortg. Fund v. Rancho El Cajon Associates*, 18 B.R. 283 (Bankr. S.D. 1982)   7

7

*In re Scottsdale Med. Pavillion*, 159 B.R. 295 (B.A.P. 9th Cir. 1993)                          8

8

*In re Smith*, 1996 Bankr. LEXIS 1486, 78 A.F.T.R.2d (RIA) 7597 (Bankr. D. Cal. 1996)  3

9

*In re Sun Valley Newspapers*, 171 B.R. 71 (Bankr. Fed. App. 1994)                         7

10

*United Sav. Asso. v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365
(U.S. 1988)                                                                                                                      6

11

**Statutes & Treatises**

12

11 U.S.C. §362(d)(1)                                                                                                    3,4

13

11 U.S.C. §362(c)(2)                                                                                                    5,8

14

11 U.S.C. §363(c)(4)                                                                                                       8

15

11 U.S.C. §362(d)(2)                                                                                                       6

16

3 Collier on Bankruptcy P 363.03 (15th 2003)                                                               8

17

7 Collier on Bankruptcy P 1112.04 (16th 2021)                                                             5

18

19

20

21

22

23

24

25

26

27

28

1      Ajax Mortgage Loan Trust 2021-D, Mortgage-Backed Securities, Series 2021-D, by U.S.

2  Bank National Association, as Indenture Trustee, its assignees and/or successors ("**Movant**"),

3  hereby submits this Memorandum of Points and Authorities in Support of its Motion for Relief

4  from Automatic Stay filed in the above-captioned bankruptcy.  This Memorandum is based on

5  the pleadings and records on file in this matter, the Declaration of Julia Waco ("**Movant Dec**"),

6  the Declaration of Joshua L. Scheer ("**Scheer Dec**"), the Motion for Relief from Automatic Stay

7  ("**Motion**") submitted herewith, and the pleadings and records on file in this matter.  Movant's

8  Motion concerns the following property: 161 North Poinsettia Place, Los Angeles, CA 90036

9  ("**Property**").  Movant also requests that the Court take Judicial Notice of certain documents of

10  public record and on file with this Court in accordance with FRE 201.

## I.  INTRODUCTION

12      Movant is the current payee on the promissory note which is secured by the first deed of

13  trust on the Property. The Property produces income, yet the Debtor is severely delinquent on the

14  loan and in the past, has admittedly used this income for other debt.  It is clear that the Debtor is

15  collecting rents from the Property without using those funds to service the debt or even account

16  for them.  Despite the duties imposed as a debtor in possession, the Debtor's lack of disclosure

17  and accounting as to rents has continued *even after the filing for at least two months*.  The

18  Debtor has failed to file Operating Reports that detail the use of rents, failed to provide copies of

19  leases, failed to set up DIP accounts, and failed to provide a budget and accounting despite

20  repeated requests from Movant.  The cash collateral misuse alone is grounds for relief.  Also, the

21  Debtor has not been making any payments on the loan and there does not appear to be any

22  prospect of reorganization.

23      The actions (or inactions) of Debtor show a lack of good faith and/or provide "cause" for

24  relief from stay.  Movant is now seeking an order granting relief from stay to foreclose on the

25  Property, prohibiting the use of cash collateral, requiring the Debtor to turnover any cash

26  collateral he has on hand, and requiring the Debtor to provide an accounting of the cash

27  collateral received post-petition.

28  //

## II. FACTS

Movant is the current payee of a Promissory Note dated July 25, 2018 in the principal amount of $1,097,000.00 (the "**Note**") secured by a First Deed of Trust of same date, which bears interest as specified therein.  The indebtedness evidenced by the Note is secured by a Deed of Trust (the "**Deed of Trust**") executed and recorded in Los Angeles County and which encumbers the Property.[1]  The Deed of Trust was assigned to Movant.[2]  Pursuant to the terms of the Deed of Trust, Movant has an interest in all rents and profits generated from the Property.

Despite receiving rents on the Property, Leslie Klein ("**Debtor**") became significantly delinquent on the Note obligation.  The total amount owed to Movant is $1,403,054.50 as of February 22, 2023, and the total amount to reinstate the loan as of the date of the filing of this Motion for Relief is $219,968.68.[3]

On February 22, 2023, Debtor filed a Petition under Chapter 11 of the Bankruptcy Code, Case No. 2:23-bk-10990-SK ("**Bankruptcy**").  While the Debtor was significantly delinquent on the Note, it has now become clear that there are also other delinquent obligations and debts. Pursuant to the Debtor's Schedules, there is an alleged Judgment Lien in favor of Ericka and Joseph Vago ("**Vago**") in the amount of $24,334,038.99 that purportedly encumbers all properties in the Bankruptcy, including the subject Property.[4]  Pursuant to the Debtor's Schedules, the value of the Property is $2,000,000. The actual value may be lower, and Movant reserves the right to obtain an updated valuation should value be an issue in these proceedings.[5]

Given the concern that Debtor was not using the rents to pay the debt service on the Property, on March 16, 2023, Movant filed a Notice of Security Interest in Rents and Profits ("**NOSI**") regarding the Property.[6]  The NOSI put all parties, including the Debtor on notice of Movant's security interest in any rents generated.

At the Debtor's 341 Meeting, the Debtor acknowledged that there was a renter on the Property who had been paying rent.  However, this rent had previously not been used to pay the

---

[1] *See* Movant Dec, Ex. 1 & 2.
[2] *Id.*
[3] *See* Movant Dec, Par. 8 & 11.
[4] *See* Debtor's Schedule D, Docket No. 34.
[5] *See* Movant Dec, Par. 11; *See also* Debtor's Schedule A, Docket No. 70.
[6] *See* Docket No. 49.

1   debt service on the Property, but instead went towards taxes and insurance on a completely

2   unrelated property.[7]

3        On April 4, 2023, counsel for Movant sent counsel for Debtor a letter detailing its

4   primary concerns as to both the Bankruptcy and the Property ("**Movant's Demand**") and

5   requesting that the items be addressed no later than April 11, 2023. Movant's Demand

6   specifically requested: 1) an accounting of the rents before and after filing, 2) a budget for use of

7   any rents, 3) proof of segregation of rents, 4) copies of all leases and rent rolls, and 5) proof of

8   insurance relating to the Property (collectively "**Movant Requests and Concerns**").[8]

9        On April 12, 2023, counsel for Movant appeared at the Chapter 11 Status Conference and

10   stated the Movant Requests and Concerns on the record, specifically that Movant had concerns

11   as to the use of its cash collateral.[9]  Counsel for Debtor has failed to respond to the Movant

12   Demand or even acknowledge its receipt or that the deficiencies would be addressed.[10]

13        On April 24, 2023, Debtor's largest creditor and the holder of a judgment lien on the

14   Property, Vago, filed a Motion to Dismiss asserting, among other reasons, that the Debtor has no

15   ability to reorganize.[11]

### III.  <u>ARGUMENT</u>

16

17   **1.  Sufficient "Cause" Exists to Grant Movant's Motion for Relief from the Automatic Stay as Movant is not Adequately Protected.**

18

19   11 U.S.C. §362(d)(1) provides that:

20      "On request of a party in interest and after notice and a hearing, the court shall grant

21      relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

22        (1) for cause, including the lack of adequate protection of an interest in property of such party in interest."

23

24   Cause to terminate the stay exists whenever the stay will harm the creditor and lifting the

25   stay will not unjustly harm the debtor or other creditors.  *In re Smith*, 1996 Bankr. LEXIS 1486,

26   78 A.F.T.R.2d (RIA) 7597 (Bankr. D. Cal. 1996).  "Factors to consider in determining whether

27

28
   [7] *See* Scheer Dec, Par. 3.
   [8] *See* Scheer Dec, Par. 4.
   [9] *See* Scheer Dec, Par. 5.
   [10] *See* Scheer Dec, Par. 6.

the automatic stay should be modified for cause include: (1) an interference with the bankruptcy; (2) good or bad faith of the debtor, (3) injury to the debtor and other creditors if the stay is modified; (4) injury to the movant if the stay is not modified; and (5) the relative portionality of the harms from modifying or continuing the stay" *Scripps GSB I, LLC v. A Partners, LLC (In re A Partners, LLC),* 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006).  Here, there is sufficient "cause" to grant relief from the automatic stay.

### a.  Lack of Payment

Debtor has failed to make payments to Movant, including no payments made to Movant in this Bankruptcy. As of February 22, 2023, Movant's total claim amount is $1,403,054.50. Debtor is now due and owing to Movant twenty-three (23) monthly payments in the amount of $9,063.32 each, for a total of $219,968.68. Debtor's lack of payment on the Property does not provide Movant adequate protection and is cause for relief under 362(d)(1).

### b.  Lack of Adequate Protection

Debtor has not provided Movant with sufficient adequate protection. Movant's Note currently has a total balance as of February 22, 2023 of $1,403,054.50 with interest, fees and costs continuing to accrue.  Pursuant to the Debtor's Schedules, the Property is worth $2,000,000.  Movant has not had an opportunity to inspect or value the Property and the actual value may be lower.  Movant reserves the right to obtain a valuation should value be at issue in these proceedings.

Even so, there is a judgment lien on the Property of over $24,000,000.  The cost of sale, plus the junior encumbrances would deplete any possible equity in the subject Property.  In addition, the debt service is close to $10,000/month, yet the Debtor has testified that he collects rents of only $3,000/month.  The lack of equity cushion in the Property, together with the severe delinquency, and the lack of cash flow, does not provide Movant adequate protection and is cause for relief under 3621(d)(1).

//

//

---

[11] *See* Docket No. 79.

### c. **Misuse of Cash Collateral**

Unauthorized use of cash has long been held to be grounds for immediate injunctive relief to prevent such depredation of the interests of the secured creditor. *See* 7 Collier on Bankruptcy P 1112.04 (16th 2021).   The use of cash collateral without court authorization or the creditor's consent can have harsh consequences, including the dismissal of the case or the granting of relief from the automatic stay.  (*In re Bowers Inv. Co*., LLC (Bankr.D.Alaska 2016) 553 B.R. 762, 771.)

11 U.S.C. § 362(c)(2) requires either court or creditor authorization for use. Movant filed the NOSI on March 16, 2023 and put the Debtor on notice of Movant's interest in rents generated from the Property.  It has not, and does not, consent to the use of its cash collateral and the Debtor is fully aware of this.

Debtor acknowledged at the 341 Meeting his understanding that the rents are cash collateral of the creditors and cannot be used without authorization.  Despite notice, acknowledgment, and reiteration, as to the limitations on cash collateral use, the Debtor has still not obtained a court order authorizing the use of cash collateral.  The Debtor's holding, comingling, and misuse of cash collateral is cause for relief to protect Movant's interest in the cash collateral.  This misuse is evidenced by the Debtor's lack of any response or action with regards to rents collected.

For example, Debtor has failed to respond to Movant's Demand that requested 1) an accounting of the rents before and after filing, 2) a budget for use of any rents, 3) proof of segregation of rents, and 4) copies of all leases and rent rolls.  He is either unable to obtain this information or does not want to provide this information for fear of what it may disclose.  Either way, it is in direct violation of 11 U.S.C. § 362(c)(2) for the failure to segregate and account for cash collateral.

This issue is not merely academic as the Debtor testified at the 341 Meeting that he previously used the rents generated from the Property to pay debt service on unrelated property. While he also testified that this has stopped since the filing, the failure or refusal to account for rents post-petition provides significant cause for concern.

1

    **d.** <u>**Insurance Loss Payee Information**</u>

2

    While the Property is admittedly insured, pursuant to Movant's Demand and the Movant

3

Requests and Concerns, Movant has requested that its servicer be listed as a loss payee on the

4

policy.  Similar to the cash collateral requests, no response was received as to this issue.  The

5

failure to update/provide this information is additional cause for relief from stay.

6

    **2.** **The Property is Not Necessary to an Effective Reorganization That is in Prospect.**

7

    11 U.S.C. §362(d)(2) provides an independent basis for Movant to obtain relief from the

8

stay and contains the following requirements:

9

> "On request of a party in interest and after notice and a hearing, the court shall grant
> relief from the stay provided under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay…

10

11

> (2) with respect to a stay of an act against property under subsection (a) of this section,
> if--

12

> (A) the debtor does not have an equity in such property; and

13

> (B) such property is not necessary to an effective reorganization."

14

As held by the Supreme Court in examining the requirements of a request for relief from stay

15

under 11U.S.C. §362(d)(2):

16

> …"the property {must be} essential for an effective reorganization <u>that is in prospect</u>…"
> (*See United Sav. Asso. v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 376
> (U.S. 1988*) at page 376).

17

18

    When interpreting the burden of proof that must be satisfied by the Debtor in showing

19

that reorganization is in prospect, courts have found the following:

20

    …"the burden of proof is a "moving target which is more difficult to attain as the Chapter

21

11 case progresses… the burden can be separated into four stages based upon when the creditor

22

requests relief from the automatic stay. In the early stage of the case, "the burden of proof . . . is

23

satisfied if the debtor can offer sufficient evidence to indicate that a successful reorganization

24

within a reasonable time is 'plausible.'" Near the expiration of the exclusivity period, "the debtor

25

must demonstrate that a successful reorganization within a reasonable time is 'probable.'". After

26

the expiration of the exclusivity period, "the debtor must offer sufficient evidence to indicate

27

that a successful reorganization within a reasonable time is 'assured'. Regardless of the amount

28

of time a case has been pending, if "the evidence indicates that a successful reorganization within

1   a reasonable time is 'impossible,' the court must grant relief from the stay." (*See Sun Valley*

2   *Newspapers v. Sun World Corp. (In re Sun Valley Newspapers)*, 171 B.R. 71, 75 (Bankr. Fed.

3   App. 1994), at page 75 (additional citations omitted).

4       **a. Equity Analysis**

5       The court must first determine whether there is any equity in the subject Property.

6   "Equity" is defined as "the value, above all secured claims against the property that can be

7   realized from the sale of the property for the benefit of the unsecured creditors*." Pistole v.*

8   *Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984); See also *La Jolla Mortg. Fund v.*

9   *Rancho El Cajon Associates*, 18 B.R. 283 (Bankr. S.D. 1982).  A chart of the equity in the

10  Property is as follows:

11

| | |
|---|---|
| Movant's Lien as of February 22, 2023 | $1,403,054.50 |
| Judgment Lien in Favor of Ericka and Joseph Vago | $24,334,038.99 |
| Value Listed in Schedules (subject to dispute and without prejudice to Movant's right to obtain its own valuation) | $2,000,000.00 |
| 8% Cost of Sale | $160,000.00 |
| Total Equity *without* Vago Lien | $436,945.50 (21.8%) |

18

19      Movant's lien on the Property currently totals $1,403,054.50 and is increasing daily.  The

20  debt services totals almost $10,000/month.  The value of the Property, according to the Debtor,

21  is $2,000,000.00, but may actually be lower.  When taking into consideration the judgment lien

22  in favor of Vago, which purportedly encumbers *all properties* in the Bankruptcy, it is clear that

23  there is no equity in the Property for an effective reorganization to benefit the Debtor or the

24  Bankruptcy Estate.

25      **b. Reorganization Analysis**

26      The Debtor has shown an unwillingness and inability to act as the debtor in possession

27  and there is no reorganization on the horizon. The Debtor's largest creditor has filed a Motion to

28  Dismiss asserting that a reorganization is not likely, or even possible given the history and

1   significant debt.  As to Movant's Property, the Debtor appears to be misusing cash collateral,

2   including co-mingling the cash collateral.  Movant has made a request for information regarding:

3   1) an accounting of the rents before and after filing, 2) a budget for use of any rents, 3) proof of

4   segregation of rents, 4) copies of all leases and rent rolls, and 5) proof of insurance relating to the

5   Property.  The Debtor has failed to comply with even the bare minimum of a debtor in

6   possession, i.e., accounting for cash collateral generated.

7        It should also be noted that the rents generated from the Property, according to Debtor's

8   testimony at the 341 Meeting, are only $3,000, yet the debt service is almost $10,000.  There is

9   clearly no ability or need to reorganize the Property under these circumstances.

10      **3.   <u>Request to Prohibit the Use and for Turnover of Cash Collateral</u>**

11       Absent consent or court authorization, a debtor in possession has an affirmative duty to

12   segregate and account for any cash collateral in its possession, custody or control. 11 U.S.C §

13   363(c)(4). Segregation of cash collateral, including rents in which a creditor has a security

14   interest, is mandatory under the statute. *Scottsdale Med. Pavilion v. Mut. Benefit Life Ins. Co. (In*

15   *re Scottsdale Med. Pavillion)*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993).  Segregation of cash

16   collateral is important to secured creditors, particularly in view of the state law requirement that

17   a creditor be able to identify cash proceeds to maintain an interest in such proceeds.  See

18   generally 3 Collier on Bankruptcy ¶ 363.03[4][b], at 363-35 (Alan N. Resnick & Henry J.

19   Sommer eds., 15th ed. rev.2003). Section 363(c)(2)'s proscription recognizes the "unique nature

20   of cash collateral, and the risk to the entity with an interest in such collateral, arising from the

21   dissipation or consumption of the collateral in a rehabilitative effort in bankruptcy." Id.¶

22   363.03[4][c], at 363-36.

23       Here, the Debtor has been collecting and co-mingling Movant's cash collateral since

24   before this case was filed.  Debtor filed this bankruptcy and has continued to collect cash

25   collateral without providing an accounting, obtaining court approval or Movant's consent for

26   use.  Debtor is well aware (or should be) of Movant's interest in the rents generated through the

27   NOSI on file, the Movant Demand, and additional notification at the recent status conference

28   hearing as to its continued concerns.  Regardless, the requests to take action and account have

1    been ignored or disregarded as unimportant.

2         In addition to the request for relief from stay, Movant is requesting this Court issue an

3    Order (1) prohibiting the Debtor from using any of the cash collateral generating by the Property,

4    (2) requiring the Debtor to turnover all cash collateral being held, to Movant, and (3) requiring

5    the Debtor to provide an accounting for the cash collateral received post-petition.

6    **4.    Bankruptcy Rule 4001(a)(3) Should Be Waived**

7         There is cause to waive any waiting period that may be imposed by Bankruptcy Rule

8    4001(a)(3). There is no reason to allow for an additional waiting period after entry of a relief

9    order under the circumstances of the case. Debtor is not making any payments to Movant, has

10    failed to account for cash collateral, and arrears are continuing to grow.

11    **IV.    <u>CONCLUSION</u>**

12         For the reasons stated herein, the Court should grant relief from stay in accordance with

13    11 U.S.C. § 362(d)(1) and (d)(2) immediately with a waiver of any waiting period. In addition,

14    the Court should issue an order (1) prohibiting the Debtor from using any of the cash collateral

15    generated by the Property, (2) requiring the Debtor to turn over all cash collateral he is currently

16    in possession of to Movant, and (3) requiring the Debtor to provide an accounting for the cash

17    collateral received post-petition.

18                              SCHEER LAW GROUP, LLP

19    DATED: April 26, 2023          /s/JOSHUA L. SCHEER
20                                   #242722

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

85 Argonaut, Suite 202, Aliso Viejo, CA 92656

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOSHUA L. SCHEER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _04/26/2023_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Notice: Joshua L Scheer, jscheer@scheerlawgroup.com; Reem J Bello, rbello@goeforlaw.com; Alan G Tippie, Alan.Tippie@gmlaw.com;  Clarisse Young, youngshumaker@smcounsel.com; Dane W Exnowski,  dane.exnowski@mccalla.com; Greg P Campbell, ch11ecf@aldridgepite.com; Michael L Wachtell, mwachtell@buchalter.com; Paul P Young, paul@cym.law; Robert P Goe, kmurphy@goeforlaw.com; John P. Ward, jward@attleseystorm.com; Brandon J Iskander, biskander@goeforlaw.com; Theron S Covey, tcovey@raslg.com;  Debtor's Attorney, Michael Jay Berger, michael.berger@bankruptcypower.com; Trustee: Mark M Sharf, mark@sharflaw.com; United States Trustee, ustpregion16.la.ecf@usdoj.gov; Attorney for U.S. Trustee: Michael Jones, michael.jones4@usdoj.gov; Noreen A Madoyan, Noreen.Madoyan@usdoj.gov; Ron Maroko, ron.maroko@usdoj.gov;

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _04/26/2023_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor: Leslie Klein, 322 N. June Street, Los Angeles, CA 90001
Chamber's Copy: United States Bankruptcy Court, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582 / Courtroom 1575, Los Angeles, CA 90012
Judgment Lienholder: Ericka and Joseph Vago, Attn: to an officer and/or managing agent, c/o Brian Procel, Procel Law, 401 Wilshire Blvd., 12th Floor, Santa Monica, CA 90401 (Via Certified Mail)
Judgment Lienholder: Ericka and Joseph Vago, Attn: to an officer and/or managing agent, c/o Robert P. Goe, 17701 Cowan Avenue, Suite 210, Bldg. D, Irvine, CA 92614 (Via Certified Mail)

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 04/26/2023 | Brieana Tjaden | /s/Brieana Tjaden |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## PROOF OF SERVICE CONTINUATION PAGE

**SERVED BY UNITED STATES MAIL**:

On (*date*) **4/26/2023** , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Andor Gestetner c/o Law Offices of Jacob Unger, 5404 Whitsett Ave Ste. 182, Valley Village, CA 91607

Bank of America, Attn: Bankruptcy 4909, Savarese Circle Tampa, FL 33634

Bank of America, PO Box 673033, Dallas, TX 75267

Barclays Bank Delaware, Attn: Bankruptcy, Po Box 8801 Wilmington, DE 19899

California Bank & Trust, Po Box 711510, Santee, CA 92072

CCO Mortgage Corp. Attn: Bankruptcy 10561 Telegraph Rd Glen Allen, VA 23059

Chase Card Services Attn: Bankruptcy P.O. 15298 Wilmington, DE 19850

Chase Card Services Attn: Bankruptcy Po Box 15298 Wilmington, DE 19850

Chase Doe 143 S. Highland Drive Los Angeles, CA 90036

Chase Mortgage BK Department Mail Code LA4 5555 700 Kansas Ln Monroe, LA 71203

Citibank Attn: Bankruptcy P.O. Box 790034 St Louis, MO 63179

Franklin H. Menlo Irrevocable Trust c/o Willkie Farr & Gallagher LLP Attn: Alex M. Weingarten, Esq. 2029 Century Park East, Suite 3400 Los Angeles, CA 90067

Jacob Rummitz 315 N. Martel Avenue Los Angeles, CA 90036

Jeffrey Siegel, Successor Trustee of the Hubert Scott Trust c/o Oldman, Cooley, Sallus 16133 Ventura Blvd., Penthouse Suit, Encino, CA 9 1436-2408

Leslie Klein & Associates. Inc. c/o Parker Milliken 555 Flower Street Los Angeles, CA 90071

Oldman, Cooley, and Sallus 16133 Ventura Blvd., Penthouse Suit, Encino, CA 91436-2408

Sandra Layton 161 N. Poinsettia Place Los Angeles, CA 90036