| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RON BENDER (SBN 143364)<br>KRIKOR J. MESHEFEJIAN (SBN 255030)<br>LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.<br>2818 La Cienega Avenue<br>Los Angeles, CA 90034<br>Tel: (310) 229-1234<br>Fax: (310) 229-1244<br>Email: rb@lnbyg.com; kjm@lnbyg.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Life Capital Group, LLC | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>LESLIE KLEIN,<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:23-bk-10990-SK<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(ACTION IN NONBANKRUPTCY FORUM)** |
| | DATE: 05/17/2023<br>TIME: 8:30 am<br>COURTROOM: 1575 |

**Movant**: LIFE CAPITAL GROUP, LLC

1. **Hearing Location**:
   - ☒ 255 East Temple Street, Los Angeles, CA 90012
   - ☐ 411 West Fourth Street, Santa Ana, CA 92701
   - ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367
   - ☐ 1415 State Street, Santa Barbara, CA 93101
   - ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.


Date:  04/26/2023

Levene, Neale, Bender, Yoo & Golubchik L.L.P.
Printed name of law firm (if applicable)

Krikor J. Meshefejian
Printed name of individual Movant or attorney for Movant


/s/ Krikor J. Meshefejian
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a. ☐ Plaintiff

   b. ☐ Defendant

   c. ☒ Other (*specify*):  Life Capital Group, LLC, party to proposed arbitration proceedings

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*: N/A

   b. *Docket number*: N/A

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending*:

   d. Causes of action or claims for relief (Claims):
   Binding arbitration before the Rabbinical Court of California regarding Debtor's right, title and interest in and to membership and economic interests in Life Capital Group, LLC.

3. **Bankruptcy Case History:**

   a. ☒ A voluntary  ☐ An involuntary   petition under chapter  ☐ 7 ☐ 11 ☐ 12 ☐ 13
   was filed on (*date*)  02/22/2023  .

   b. ☐ An order to convert this case to chapter  ☐ 7 ☐ 11 ☐ 12 ☐ 13
   was entered on (*date*) _____.

   c. ☐ A plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☐ The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☒ The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 3                    **F 4001-1.RFS.NONBK.MOTION**

f. ☐ The bankruptcy case was filed in bad faith.

(1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

(2) ☐ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

(3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

(4) ☐ The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g. ☒ Other (*specify*):
Debtor's membership interest and economic interest in Life Capital Group, LLC is subject to competing creditor claims, and LCG seeks to resolve the question of the extent of Debtor's interests.

5. **Grounds for Annulment of Stay.** Movant took postpetition actions against the Debtor.

a. ☐ The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion: (*Important Note: declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)**

a. ☒ The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

d. ☐ Other evidence (*specify*):

7. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☒ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 4                          **F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☒ Other relief requested.


Date:  04/26/2023

Levene, Neale, Bender, Yoo & Golubchik L.L.P.
_____
Printed name of law firm (*if applicable*)

Krikor J. Meshefejian
_____
Printed name of individual Movant or attorney for Movant


/s/ Krikor J. Meshefejian
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 5                        **F 4001-1.RFS.NONBK.MOTION**

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (*name of Declarant*) Jonathan Polter _____, declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding (Nonbankruptcy Action) because:

    ☐ I am the Movant.
    ☐ I am Movant's attorney of record in the Nonbankruptcy Action.
    ☐ I am employed by Movant as (*title and capacity*):
    ☒ Other (*specify*): I am the Movant's manager.

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

3.  In the Nonbankruptcy Action, Movant is:

    ☐ Plaintiff
    ☐ Defendant
    ☒ Other (*specify*): Party to proposed binding arbitration proceedings

4.  The Nonbankruptcy Action is pending as:

    a.  *Name of Nonbankruptcy Action*: N/A
    b.  *Docket number*:  N/A
    c.  *Nonbankruptcy court or agency where Nonbankruptcy Action is pending*:
        N/A

5.  **Procedural Status of Nonbankruptcy Action**:

    a.  The Claims are:
        Binding arbitration before the Rabbinical Court of California regarding Debtor's right, title and interest in and to membership and economic interests in Life Capital Group, LLC.


    b.  True and correct copies of the documents filed in the Nonbankruptcy Action are attached as Exhibit  N/A  .

    c.  The Nonbankruptcy Action was filed on (*date*) _____.

    d.  Trial or hearing began/is scheduled to begin on (*date*) _____.

    e.  The trial or hearing is estimated to require _____ days (*specify*).

    f.  Other plaintiffs in the Nonbankruptcy Action are (*specify*):

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

g.    Other defendants in the Nonbankruptcy Action are (*specify*):

6.  **Grounds for relief from stay:**

a.  ☐  Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b.  ☐  Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c.  ☐  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.  The insurance carrier and policy number are (*specify*):

d.  ☒  The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

   (1) ☐    It is currently set for trial on (*date*) _____.

   (2) ☐    It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____.  The basis for this belief is (*specify*):

   (3) ☒    The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e.  ☐  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

   (1) ☐    Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2) ☐    The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):

   (3) ☐    Multiple bankruptcy cases affecting the Property include:

   (A) Case name:
      Case number:                              Chapter:
      Date filed:              Date discharged:              Date dismissed:
      Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not  granted.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                              Page 7                              **F 4001-1.RFS.NONBK.MOTION**

(B) Case name:
    Case number:                     Chapter:
    Date filed:           Date discharged:          Date dismissed:
    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

(C) Case name:
    Case number:                     Chapter:
    Date filed:           Date discharged:          Date dismissed:
    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f. ☐ See attached continuation page for other facts justifying relief from stay.

7. ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/26/2023 | Jonathan Polter | |
|---|---|---|
| Date | Printed name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyg.com; kjm@lnbyg.com

Attorneys for Life Capital Group, LLC

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>       Debtor and Debtor in Possession. | Case No. 2:23-bk-10990-SK<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY; DECLARATION OF JONATHAN POLTER IN SUPPORT THEREOF**<br><br>Date: May 17, 2023<br>Time: 8:30 a.m.<br>Place: Courtroom 1575<br>      255 East Temple Street<br>      Los Angeles, CA 90012 |

1

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS

**A.    LCG**

Life Capital Group, LLC ("LCG") is a California limited liability company whose members include Leslie Klein (the "Debtor").  LCG invests in life insurance policies, and pursuant to LCG's operating agreement, the Debtor may receive, from time to time, distributions from LCG based on the Debtor's membership interests in LCG.

The Debtor owns a 50% membership interest in LCG but this interest is subject to competing claims, as detailed below.  Jonathan Polter ("Polter") serves as LCG's manager. Under LCG's  operating agreement, certain disputes are required to be arbitrated pursuant to the rules of the Rabbinical Council of California ("RCC").[1]  A true and correct excerpt of the operating agreement is attached as Exhibit 1 to the attached Declaration of Jonathan Polter ("Polter Declaration").

The RCC is a non-profit organization that, among other things, provides arbitration and mediation services in accordance with Jewish law. The RCC has thus, "adjudicate[d] a wide range of commercial disputes such as employer-employee, landlord-tenant, real property, business interference, breach of contract, breach of fiduciary duty, and unfair competition disputes." https://rccvaad.org/financial-arbitration-din-torah/.  It is a logical choice for the parties since both the Debtor, Polter, LCG's other member and many of the Debtor's creditors self-identify as members of the Orthodox Jewish faith.

**B.    The Instant Proceedings and the Competing Claims in and to the Debtor's Interests in LCG**

On February 22, 2023, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  On March 8, 2023, the Debtor filed his Schedules of Assets and Liabilities (Doc 34) in which he listed on Schedule D a claim in the amount of $2,000,000 held by the Gestetner Charitable Remainder Trust ("Gestetner"), which is alleged to be subject to a UCC

financing lien against the Debtor's membership interests in LCG.

On December 20, 2022, before the filing of these proceedings, Gestetner asserted to LCG and the RCC that the Debtor had pledged his interests in LCG to it before the commencement of these proceedings and that LCG is required to pay to Gestetner directly any payments that would otherwise be made to the Debtor by LCG. *See* Exhibit 2 to the attached Polter Declaration.

Gestetner asserted this position based on:

1. A "Non-Recourse Secured Promissory Note" dated September 1, 2016 and executed by the Debtor, pursuant to which the Debtor agreed to pay to Gestetner the principal sum of $9,630,000 plus interest, "secured by the Borrower's interest (the 'LLC Interest') as a Member of Life Capital Group LLC" and pursuant to which the Debtor agreed to assign, transfer, pledge and grant to Gestetner a security interest in "all right, title and interest in and to the LLC Interest and all Proceeds…therefrom."  This document includes notarized signatures by Gestetner and the Debtor and also includes a section for a joinder by LCG, which is neither executed nor notarized.  *See* Exhibit 3 to the attached Polter Declaration;

2. An "Iska Agreement" by and between Gestetner and Klein, attached as Exhibit 4 to the Polter Declaration;

3. A "Supplement To Non-Recourse Secured Promissory Note And Assignment Of Economic Rights" dated July 25, 2017 and executed by the Debtor, attached as Exhibit 5 to the Polter Declaration;

4. An "Acknowledgment Of Assignment Of Interest in Limited Liability Company" dated July 2017, between the Debtor, Gestetner and LCG, which provides in Recital C that the Debtor "has directed [LCG] to make distributions…[to Gestetner] and it will make said distribution until directed otherwise by [the Debtor]." *See* Exhibit 6 to the Polter Declaration; and

5. A "Memorandum Of Understanding" between Gestetner and LCG, attached as Exhibit 7 to the Polter Declaration, whereby LCG consented to the creation of a security interest against the Debtor's interest in LCG.

Before Gestetner took this position, on December 14, 2022, the Debtor sent Mr. Polter correspondence whereby he purported to revoke his prior direction to continue to make distributions to Gestetner. *See* Exhibit 8 to the Polter Declaration.

LCG is thus faced with conflicting positions asserted by the Debtor and Gestetner, which potentially impact LCG and LCG's members, and whether LCG should pay directly to Gestetner the Debtor's distributable share of proceeds that would ordinarily be payable to the Debtor.  Due to these demands, and those demands of other competing creditors, both Gestetner and LCG sought to commence an arbitration before the RCC, consistent with LCG's Operating Agreement. *See*  Exhibit 1 to the Polter Declaration, Section 12.1.

Given such inconsistent demands and positions, and the presence of other creditors who may not agree with Gestetner's assertion, LCG has determined that it is appropriate to seek relief from the automatic stay, or alternately, to ask for direction from this Court regarding where and to whom LCG should make payments that ordinarily LCG would make directly to the Debtor.  To the extent there is a dispute in respect to the Debtor's membership interests, such a dispute should be arbitrated pursuant to the RCC's commercial procedures.  *See*   Exhibit 1 to the Polter Declaration, Section 12.1.

Moreover, to the extent LCG should make such payments directly to the Debtor, LCG wants to ensure that the Court and the Debtor's creditors are aware of such payments being made by LCG to the bankruptcy estate.  LCG has concurrently filed a separate motion (the "Payment Designation Motion") seeking the entry of an order authorizing and directing LCG to make any payments due to the Debtor directly to the Debtor, or directing LCG to make payments to another person as directed by the Court.

This Motion requests relief from the automatic stay so that LCG, the Debtor, Gestetner and LCG can conduct a binding arbitration before the RCC with respect to the scope and extent of the Debtor's and Gestetner's respective interests in LCG.  Specifically, LCG requests relief from the automatic stay to conduct a binding arbitration before the RCC with respect to:

1. All issues regarding the Debtor's membership interests in LCG and/or his interests in any proceeds or distributions under LCG's operating agreement;

2.  The interests of any third parties in the Debtor's membership interests in LCG and among themselves with respect to LCG;

3.  The Debtor's and third parties' (such as Gestetner's) authority, power, interests and/or rights under LCG's operating agreement;

4.  The obligations of LCG and those having any authority, power or rights in LCG or under LCG's operating agreement; and

5.  Any peripheral issues relating to the foregoing.

A determination of the Debtor's and Gestetner's rights in and to the Debtor's membership and economic interests in LCG should be made in order to determine the parties' respective rights, and such determination should be made pursuant to the binding arbitration provision in LCG's operating agreement by the RCC.

## II.    **ARGUMENT**

Section 362(d) of the Bankruptcy Code provides "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…." *See* 11 U.S.C. § 362(d)(1).

Whether stay relief should be granted or denied is committed to the sound discretion of the Bankruptcy Court. *Benedor Corp. v. Conejo Enterprises, Inc. (In re Conejo Enterprises, Inc.)*, 96 F.3d 346 (9th Cir. 1996).  Upon a showing of "cause," a bankruptcy court shall grant relief from the automatic stay.  *Id.* at 352.  "Cause" has no clear definition and is determined on a case-by-case basis. *Id.*; *see also Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990).

Courts typically look at **twelve** nonexclusive factors to determine whether the stay should be lifted. *see Truebro, Inc. v. Plumberex Specialty Products, Inc. (In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004); *In re Kronemyer*, 405 B.R. 915, 921 (9th Cir.B.A.P.2009); *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285-86 (2d Cir.1990).  Not all factors are relevant in every case.

*Sonnax*, 907 F.2d at 1286.  Here, the factors weigh in favor of granting the Motion.

The factors are as follows and are addressed in turn:

1.    Whether the relief will result in a partial or complete resolution of the issues.
Allowing the RCC to conduct a binding arbitration of the scope and extent of the Debtor's and
Gestetner's interest in LCG will result in complete resolution of the issue of who is entitled to any
payments required to be made by LCG.  Granting relief from the automatic stay will address the
scope and extent of the Debtor's interests in LCG and clarify LCG's obligations under LCG's
operating agreement and agreements between LCG, Gestetner and the Debtor and other
claimants.

2.    The lack of any connection with or interference with the bankruptcy case.    A
binding arbitration before the RCC will not interfere with the Debtor's bankruptcy case.  To the
contrary, it will clarify the parties' respective rights and the scope of the Debtor's interest in LCG.

3.    Whether the foreign proceeding involves the debtor as a fiduciary.  This factor is
not applicable to the Motion.

4.    Whether a specialized tribunal has been established to hear the particular cause of
action and whether that tribunal has the expertise to hear such cases.  LCG's operating agreement
requires a specialized tribunal, the RCC, to conduct binding arbitration of disputes pertaining to
LCG.  That provision requires in respect to any dispute "between the Members regarding this
Agreement or any provision hereof, that dispute shall be resolved through a binding arbitration
proceeding to be conducted in the State of California in accordance with the commercial
arbitration rules of the [RCC]." *See* Exhibit 1 to the Polter Declaration, Section 12.1.  The instant
dispute arises out of Gestetner's disputing the propriety of Klein's purported revocation (*see*
Exhibit 8 to the Polter Declaration).  LCG submits that this implicates a potential dispute between
LCG members that is required to be submitted by the Debtor to binding arbitration, to which
Gestetner has indicated he will also submit.

The Federal Arbitration Act requires that such arbitration be respected, as discussed in
Section 12, below.  Moreover, even if the instant dispute is not subject to the dispute resolution
provisions of LCG's operating agreement requiring binding arbitration before the RCC, this Court

should nevertheless grant stay relief so that the parties may request the RCC, which is already familiar with the members of LCG (including the Debtor), LCG, LCG's operating agreement, and Gestetner's assertions regarding the Debtor's membership interests in LCG, to conduct a binding arbitration.

5.    Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.  This factor is not applicable to the Motion.

6.    Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.  Though the disputes regarding the Debtor's interest in LCG and competing creditor claims to those interests does not involve the Debtor as a bailee or conduit, it does involve third parties.

7.    Whether the litigation in another forum would prejudice the interests of other creditors.  None of the Debtor's creditors would be prejudiced by an arbitration to determine the scope and extent of the Debtor's interests in LCG.  To the contrary, clarification of the Debtor's rights and interests in and to LCG, as well as clarification with respect to where LCG should make payments under LCG's operating agreement and agreements between LCG, the Debtor and Gestetner, will promote the resolution of disputes pertaining to the scope of the Debtor's property interests and the estate's rights.

8.    Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).  This factor is not applicable to the Motion.

9.    Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).  This factor is not applicable to the Motion.

10.    The interests of judicial economy and the expeditious and economical determination of litigation for the parties.  This factor weighs heavily in favor of granting the Motion.  The RCC can expeditiously and economically conduct a binding arbitration.  Moreover, each of Gestetner, Klein and LCG's manager and other member observe religious customs which favor or require the submission of disputes to religious tribunals, such as the RCC.  The RCC is familiar with most of the parties, LCG's operating agreement, and the terms of the parties' settlement agreement, all of which may impact an arbitration of the disputes regarding the scope

and extent of the Debtor's interests and Gestetner's interests in LCG.

Moreover, since there appears to remain a live dispute over whether or not the Debtor retains any interest in LCG, that dispute should be compelled to arbitration pursuant to the RCC's rules since there is "no evidence in the text of the Bankruptcy Code or in the legislative history suggesting that Congress intended to create an exception to the [Federal Arbitration Act] in the Bankruptcy Code." *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1129 (9th Cir. 2012). *See, generally In re Thorpe Insulation Co.*, 671 F.3d 1011, 1023-24 (9th Cir. 2012) (discussing the scope of a bankruptcy court's discretion in respect to the enforcement of pre-dispute arbitration provisions in bankruptcy). Indeed, "[t]he party that is opposing arbitration has the burden of proving 'that Congress intended to preclude a waiver of judicial remedies for [the particular claim' at issue.'" *Eber*, 687 F.3d at 1129 (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). *See also*, *MCI Telecommunications Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 197 (B.A.P. 9th Cir. 1994) (reversing bankruptcy court order denying motion for relief from the automatic stay to assert a counterclaim in an arbitration proceeding, and holding that a bankruptcy court must enforce an agreement to arbitrate a non-core claim). Here, disputes regarding the scope of the parties' interests in LCG are non-core because they are based in state law.

11.    <u>Whether the foreign proceedings have progressed to the point where the parties are prepared for trial</u>.    While a binding arbitration with respect to the Debtor's and Gestetner's respective rights and interests has not been commenced, the RCC is already familiar with certain of the parties and LCG's operating agreement requires binding arbitration before the RCC. The parties administratively opened an arbitration and were awaiting the Debtor's signature on RCC administrative forms. When they followed up with the Debtor's counsel, they learned of the Debtor's bankruptcy case.

12.    <u>The impact of the stay on the parties and the "balance of hurt."</u>    When discussing this factor, one court has stated: "The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." *In re Curtis*, 40 B.R. 795, 806 (Bankr.D. Utah

1984); *see also In re Sunland, Inc.*, 508 B.R. 739, 745 (Bankr.D.N.M.2014).  First, it should be noted that the binding arbitration LCG requests be conducted is aimed toward clarifying and determining the parties' respective rights and interests, which will benefit the estate because it will allow for a determination of the scope and extent of the estate's interests in LCG. Gestetner's demands and claims in and to such interests will be addressed in such arbitration so as to provide the clarity needed for LCG to pay the appropriate party any distributions that would otherwise be made to the Debtor but for the existence of such competing claims.  LCG is in the difficult position of receiving demands for payment directly to Gestetner and potentially competing demands by the Debtor.

  For the reasons discussed above, this Court should enter an order lifting the automatic stay to allow for arbitration before the RCC, or, alternatively, as requested in the Payment Designation Motion, providing for where and to whom LCG should make certain payments that LCG may make to the Debtor pursuant to the Debtor's membership interests in LCG.  The issue before the Court is not who is correct with respect to the Debtor's interests in LCG and where payments from LCG should go, but rather, where and how such matters should be determined.  LCG submits that the RCC should conduct a binding arbitration to resolve these issues, and that relief from the automatic stay is appropriate in order for the RCC to do so.  Granting the relief requested in this Motion will merely allow the extent of the Debtor's interest in LCG to be defined, in a forum that is ready, willing and able to do so without delay.

///

///

///

///

///

///

///

///

# III.    <u>CONCLUSION</u>

WHEREFORE, LCG respectfully requests that the Court enter an order:

1.    Granting this Motion;

2.    Granting relief from the automatic stay to allow for arbitration before the RCC under LCG's Operating Agreement or, alternatively;

3.    As set forth in the Payment Designation Motion filed concurrently herewith, authorizing and directing LCG to make any payments due to the Debtor directly to the Debtor, or directing LCG to make payments to another person as directed by the Court; and

4.    Granting such further relief as the Court deems just and proper.

Dated: April 26, 2023

LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.


By:  _/s/ Krikor J. Meshefejian_____
RON BENDER
KRIKOR J. MESHEFEJIAN
Attorneys for Life Capital Group, LLC

### DECLARATION OF JONATHAN POLTER

I, Jonathan Polter, declare as follows:

1.      I am the manager of Life Capital Group, LLC ("LCG").  I have served in such capacity since approximately 2011.  As LCG's manager, I manage the general business and affairs of LCG.  I have personal knowledge of the following facts, and if called upon and sworn as a witness I could and would competently testify thereto.

2.      LCG is a California limited liability company whose members include Leslie Klein (the "Debtor").  The Debtor owns a 50% membership interest in LCG.  The Debtor is not the manager of LCG.  LCG invests in life insurance policies, and pursuant to LCG's operating agreement, the Debtor may receive, from time to time, distributions from LCG based on the Debtor's membership interests in LCG.

3.      A true and correct excerpt of the operating agreement pertaining to arbitration requirements is attached as Exhibit 1 to this Declaration.

4.      I understand that on February 22, 2023, the Debtor filed a bankruptcy petition.  On March 8, 2023, the Debtor filed his Schedules of Assets and Liabilities (Doc 34) in which he listed on Schedule D a claim in the amount of $2,000,000 held by the Gestetner Charitable Remainder Trust ("Gestetner"), which is alleged to be subject to a UCC financing lien against the Debtor's membership interests in LCG.

5.      On December 20, 2022, before the filing of these proceedings, Gestetner took the position that the Debtor had pledged his interests in LCG to it before the commencement of these proceedings and that LCG is required to pay to Gestetner directly any payments that would otherwise be made to the Debtor by LCG.  Attached as Exhibit 2 to this Declaration is a copy of the correspondence from Gestetner to that effect.

6.      Attached hereto as Exhibit 3 is a true and correct copy of the "Non-Recourse Secured Promissory Note" dated September 1, 2016 sent to LCG by Gestetner, without exhibits.

7.      Attached hereto as Exhibit 4 is a true and correct copy of an "Iska Agreement" by and between Gestetner and the Debtor sent to LCG by Gestetner.

8.      Attached hereto as Exhibit 5 is a true and correct copy of the "Supplement To

Non-Recourse Secured Promissory Note And Assignment Of Economic Rights" sent to LCG by Gestetner.

9.      Attached hereto as Exhibit 6 is a true and correct copy of an "Acknowledgment Of Assignment Of Interest in Limited Liability Company" dated July 2017, between the Debtor, Gestetner and LCG.

10.      Attached hereto as Exhibit 7 is a true and correct copy of a "Memorandum Of Understanding" between Gestetner and LCG.

11.      Before Gestetner took this position, on December 14, 2022, the Debtor sent Mr. Polter correspondence whereby he purported to revoke his prior direction to continue to make distributions to Gestetner.  Attached as Exhibit 8 to this Declaration is such correspondence and documentation.

12.      LCG is thus faced with conflicting positions asserted by the Debtor and Gestetner, which potentially impact whether LCG should pay directly to Gestetner the Debtor's distributable share of proceeds that would ordinarily be payable to the Debtor.  Due to these demands, and those of other competing creditors, both Gestetner and LCG sought to commence an arbitration before the RCC, consistent with LCG's Operating Agreement.  *See* Note 1, *supra.*

13.      Given such inconsistent demands and positions, and the presence of other creditors who may not agree with Gestetner's assertion, LCG has determined that it is appropriate to seek relief from the automatic stay, or alternately, to ask for direction from this Court regarding where and to whom LCG should make payments that ordinarily LCG would make directly to the Debtor. To the extent there is a dispute in respect to the Debtor's membership interests, such a dispute is subject to arbitration pursuant to the RCC's commercial procedures.

14.      Moreover, to the extent LCG should make such payments directly to the Debtor, LCG wants to ensure that the Court and the Debtor's creditors are aware of such payments being made by LCG to the bankruptcy estate.  LCG has concurrently filed a separate motion (the "Payment Designation Motion") seeking the entry of an order authorizing and directing LCG to make any payments due to the Debtor directly to the Debtor, or directing LCG to make payments to another person as directed by the Court.

1  A determination of the Debtor's and Gestetner's rights in and to the Debtor's membership
2  and economic interests in LCG should be made in order to determine the parties' respective
3  rights, and such determination should be made pursuant to the binding arbitration provision in
4  LCG's operating agreement by the RCC. The parties administratively opened an arbitration and
5  were awaiting the Debtor's signature on RCC administrative forms. When we followed up with
6  the Debtor's counsel, we learned of the Debtor's bankruptcy case. The RCC is nevertheless a
7  logical choice for the parties since both the Debtor, LCG's other member and I, and many of the
8  Debtor's creditors self-identify as members of the Orthodox Jewish faith.

9  15.    LCG seeks to ensure that it is in compliance with all applicable provisions of the
10  Bankruptcy Code pertaining to any payments to be made by LCG to the Debtor and seeks to
11  ensure that there is transparency and Court approval with respect to any such payments being
12  made by LCG to the Debtor or any other person or entity to which the Court directs payments to
13  be made. To the extent a person or entity other than the Debtor asserts an interest in such
14  payments, LCG seeks to avoid being embroiled in disputes with such persons/entities regarding
15  the direction of payments on account of the Debtor's membership interests in LCG, and LCG
16  seeks to ensure that any such payments are appropriately accounted for and segregated by the
17  Debtor or any other person or entity to which the Court directs such payments to be made.

18  I declare under penalty of perjury under the laws of the United States of America that the
19  foregoing is true and correct.

20  Executed this 26th day of April, 2023, at Oak Park , Michigan .

21

22  _____
23  JONATHAN POLTER
24

25

26

27

28

13

# EXHIBIT "1"

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## LIFE CAPITAL GROUP, LLC

A California Limited Liability Company

Dated as of June 1, 2011

considered a debt owed by such Member to the Company or to any other Person for any purpose whatsoever.

(c)    The Members shall comply with all requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

Section 11.3    Final Distribution. After the application or distribution of the proceeds of the liquidation of the Company's assets in one or more installments to the satisfaction of the liabilities to creditors of the Company, including to the satisfaction of the expenses of the winding-up, liquidation and dissolution of the Company (whether by payment or the making of reasonable provision for payment thereof), the remaining proceeds, if any, plus any remaining assets of the Company shall be distributed to the Members in accordance with Sections 4.3 and 8.2, as applicable.

Section 11.4    Time for Liquidation, etc. A reasonable time period shall be allowed for the orderly winding up and liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Company to seek to minimize potential losses upon such liquidation. The provisions of this Agreement shall remain in full force and effect during the period of winding up and until the filing of a certificate of cancellation of the certificate with the Secretary of State of the State of California.

Section 11.5    Termination. Upon completion of the winding up of the Company, the Manager (or any duly elected liquidating trustee or other duly designated representative) shall execute, acknowledge and cause to be filed a certificate of cancellation of the Certificate with the Secretary of State of the State of California. Upon the cancellation of the Certificate, this Agreement and the Company shall terminate.

Section 11.6    Return of Contribution Nonrecourse to Other Members. Except as provided by law or as expressly provided in this Agreement, upon dissolution, each Member shall look solely to the assets of the Company for the return of its Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash contribution of one or more Members, such Member or Members shall have no recourse against any other Member, except as otherwise provided by law.

ARTICLE XII
DISPUTE RESOLUTION

Section 12.1    Rabbinical Counsel. If any dispute arises between the Members regarding this Agreement or any provision hereof, that dispute shall be resolved through a binding arbitration proceeding to be conducted in the State of California in accordance with the commercial arbitration rules of the Rabbinical Council of California.

ARTICLE XIII
MISCELLANEOUS

Section 13.1    Entire Agreement. This Agreement, taken together with the other documents expressly referred to herein, each as amended or supplemented, constitutes the entire

17

50028620.3

# EXHIBIT "2"

---------- Forwarded message ---------
From: **Jacob Unger** <junger@jacobungerlaw.com>
Date: Tue, Dec 20, 2022 at 2:56 PM
Subject: Gestetner v Klein
To: Rabbi Avrohom Union <Runion@rccvaad.org>, Gershon Bess <rgbess@gmail.com>, Nachum Sauer
<ravsauer@aol.com>
CC: Avi Wagner <avi@thewagnerfirm.com>, Stephen Wagner <swagner@ctswlaw.com>, Jonathan Polter
<JP@poelcapital.com>, Leslie Klein <les.kleinlaw@gmail.com>, I. Morsel <i.morsel@dalidiamond.com>


Kvod Hadayanim:

I represent Andor Gestetner with respect to this matter. Attached for your reference are:

(i) Promissory Note dated September 1, 2016 ("Note") from Leslie Klein to Gestetner in the amount of $9,630,000
(accruing interest at 13% per annum) ("Loan");
(ii) Iska Agreement
(iii) Supplement to Non-Recourse Secured Promissory Note dated July 25, 2017 ("Supplement") by Leslie Klein;
(iv) Acknowledgment of Assignment of Interest in Limited Liability Company dated July 2017 ("Acknowledgment") by
Klein, Gestetner, and Life Capital Group LLC ("Company"); and
(v) Memorandum of Understanding ("MOU") by the Company and Gestetner.

Pursuant to the Note, Klein pledged all of his interests in, and proceeds from, the Company ("LLC Interests") as security
for the Loan. Pursuant to the MOU, the Company agreed to Klein's pledge of the LLC's Interests to Gestetner and agreed
to pay all amounts payable to Klein under the Operating Agreement of the Company directly to Gestetner.

We understand that an insured under one of the policies owned by the Company has passed away, and the Company is
entitled to receive the policy proceeds in the approximate amount of $10,000,000 ("Proceeds"). Of that amount,
Gestetner is entitled to receive whatever Klein was to receive.  We also understand that pursuant to a Settlement
between the Company, Rechnitz, and Klein, that Klein is to receive certain monies of the Proceeds. Pursuant to the
attached documents, all Proceeds to which Klein is otherwise entitled to, must be paid directly to Gestetner.

Unfortunately, even though Gestetner is entitled to information about the policies and the Proceeds, and despite our diligent efforts, information is not being shared and at this time we don't have detailed information about the policies, the Proceeds or the Settlement.  Specifically, we do not know whether the Proceeds will be paid to the Company or directly to Rechnitz and Klein, thereby bypassing the Company, to the detriment of Gestetner.

We are respectfully asking the Beis Din to issue an Ikul on Klein, the Company and Shlomo Rechnitz (the managing member of the Company) not to distribute any of the Proceeds or agree that the insurance company pay any monies to Klein until this matter is resolved in this Beis Din.

We'd like to stress that we understand the difficult position that Shlomo Rechnitz and his affiliates are in due to Klein's actions, and we believe that we will be able to work things out with Mr. Rechnitz. However, this ikul is necessary to prevent Klein from causing further damage to Gestetner, the Company, Mr. Rechnitz and all other parties involved. We also ask that Bais Din issue an immediate order directing Klein and Rechnitz to release the settlement agreement so that Gestetner, who is an interested party, can protect his interests in the Proceeds.  Please let us know if you need additional information. Thank you.


Jacob Unger
Attorney at Law
5404 Whitsett Ave., Suite 182
Valley Village, CA 91607
tel: (818) 960-0295
fax: (818) 960-0296
mobile: (323) 710-0902
junger@jacobungerlaw.com


Privileged and Confidential Communication. This electronic transmission and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) are for the sole use of the intended recipient(s) named above, and (c) is confidential and may contain legally privileged information. If you are not the intended addressee or the person responsible for delivering it to the intended addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited. If you have received this electronic message in error, please notify the sender at (323) 710-0902 and delete the electronic message and any copies thereof.

IRS Disclosure. Any tax advice contained in this electronic transmission and any attachments thereto was not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code or applicable state or local tax law provisions.

# EXHIBIT "3"

## NON-RECOURSE SECURED PROMISSORY NOTE

| | | |
|---|---|---|
| **Principal Sum:** | **$9,630,000**<br>**Due Date: Upon the death of**<br>**insureds under the Policies**<br>**as set forth below** | **September 1, 2016**<br>**State of California** |

**FOR VALUE RECEIVED**, the undersigned, **LESLIE KLEIN** (the "Borrower"), having an office address of Leslie Klein and Associates, Inc., 14245 Ventura Boulevard, 3rd Floor, Sherman Oaks, California 91423-2740, hereby promises to pay to **ANDOR GESTETNER**, an individual, and **GESTETNER CHARITABLE REMAINDER UNITRUST**, having an address of 1424 55th Street, Brooklyn, New York, 11219, or their respective registered assigns (each a "Holder" and together the "Holders"), the principal sum of **$9,630,000** plus interest thereon at the rate of **13% per annum** and all costs, fees and expenses (including without limitation reasonable attorneys' fees and disbursements) that the Holders or either of them incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve their respective rights in this Note and/or the Collateral (as hereinafter defined) now or hereafter granted ("Expenses").

The Borrower acknowledges that the Holders previously, in or around 2005, delivered the sum of $4,200,000 to the Borrower ($2,000,000 thereof from ANDOR GESTETNER, and $2,200,000 thereof from GESTETNER CHARITABLE REMAINDER UNITRUST) with the agreement that such sum would be invested for the benefit of the Holders. The Borrower further acknowledges that the Holders have now agreed to accept the delivery of this Note, and the Borrower's obligations and grant of Security Interest (as hereinafter defined) hereunder, as repayment of such sum and a notional investment return thereon.

Notwithstanding the use of the singular or plural term herein, each Holder may exercise any and all rights under this Note with respect to the entire principal and interest due under this Note separately as if such Holder was the only holder under this Note; provided, however, that any collection by such Holder shall, after such Holder's expenses of collection, be allocated between the Holders in accordance with their respective interests in this Note at the time of such collection.

**Collateral.** This Note is a non-recourse promissory note but secured by the Borrower's interest (the "LLC Interest") as a Member of **LIFE CAPITAL GROUP LLC** (the "LLC"), a California limited liability company formed on April 8, 2011, and operated pursuant to a Limited Liability Company Agreement dated as of June 1, 2011 (the "Operating Agreement"), attached as Exhibit A hereto and which Borrower represents is a true and correct copy of the Operating Agreement of the LLC as currently in effect. As security for the prompt and complete payment when due of all principal, interest and Expenses payable under this Note, the Borrower hereby assigns, transfers, pledges and grants to the Holders a security interest (the "Security Interest") in all right, title and interest in and to the LLC Interest and all Proceeds (as defined in the Uniform Commercial Code as in effect in the State of California (the "UCC")) therefrom (such right, title and interest in and to the LLC Interest and Proceeds being hereinafter referred to as the

"Collateral"). Borrower represents that the Collateral is, and agrees to keep the Collateral, free and clear of all levies, security interests and other liens and charges whatsoever, excepting only the Holders' first priority perfected security interest therein. Borrower agrees to cooperate with either Holder's efforts (i) to perfect the Holders' security interest in the Collateral in accordance with the requirements of applicable law, (ii) to achieve and maintain the priority of the Holders' security interest in the Collateral, and (iii) to maintain, preserve and protect the Collateral and the Holders' security interest therein.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 13% percent per annum.

**Payment.** Payments sunder this Note shall be made as follows: (1) a monthly payment of the sum of $10,000 to Andor Gestetner on the first day of each month hereafter, beginning on September 1, 2016 and continuing until this Note has been paid in full (the "Monthly Amount"), and (2) from the proceeds of (x) life insurance policies collected by the LLC upon the death of each insured identified on the two lists of policies attached as Exhibit B hereto (together the "List," which List also sets forth the approximate death benefit associated with each such policy (each a "Policy" and collectively the "Policies")), and (y) the Additional Policies (as hereinafter defined), to the extent that Borrower is entitled to a share of such proceeds. Borrower warrants the accuracy of the List and represents that (i) the Policies are in full force and effect, (ii) the LLC has good and marketable title to the Policies, (iii) the List shows nearly all of the policies held by the LLC, (iv) the LLC has good and marketable title to additional policies not shown on the List having an aggregate death benefit of approximately $14,000,000 (each such policy an "Additional Policy" and all such policies collectively the "Additional Policies"), and (v) the Borrower has rights in the proceeds of the Policies and the Additional Policies upon the death of the insureds thereunder and no other party, except the other Member of the LLC, has any rights or interests therein. Borrower also warrants that (i) the approximate annual investment by Shlomo Rechnitz in the LLC in connection with the Policies and the additional Policies (to enable the LLC to pay premiums thereon) is the sum of $1,000,000 and (ii) to date, said Shlomo Rechnitz has contributed approximately $5,500,000 in the aggregate of such investments to the LLC. Borrower agrees that upon the death of each insured the Borrower's entire share of the proceeds of the Policy or Additional Policy on such insured shall be paid directly to the Holders by the LLC, until such time as the entire principal balance under this Note and all accrued interest thereon has been paid. Notwithstanding the foregoing, Borrower agrees that in the event any such proceeds are paid to him, he shall immediately remit such proceeds to the Holders. For the avoidance of doubt, Borrower agrees to pay the Monthly Amount in all events and without regard to (a) whether any insured under the Policies or the Additional Policies is living or deceased or (b) the amount of any Policy or Additional Policy proceeds allocable or distributable to him. Upon payment in full of this Note, the Security Interest in the Collateral shall automatically terminate.

**Prepayment.** The Borrower may prepay the outstanding principal amount of this Note, in

2

00027585v8

whole or in part, together with accrued and unpaid interest on the principal amount so prepaid, without premium, penalty or fee, at any time or times.

**Events of Default.** Each of the following events also shall constitute an "Event of Default": (i) the Borrower fails to pay any amount due under this Note when that amount becomes payable or within ten (10) days thereafter or (ii) any representation of the Borrower in this Note or any other document delivered or statement made by the Borrower in connection with this Note proves to have been incorrect, incomplete or misleading in any material respect at the time it was made.

**Consequences of Default.** If an Event of Default has occurred, the Holders shall have all rights accorded them hereunder, and all rights of a secured party under applicable law, including, without limitation, the right to (a) take immediate possession of the Collateral, with or without legal process, (b) sell, lease or otherwise dispose of the Collateral, at public or private sale, with or without demand, advertisement or notice of the time or place of sale or adjournment thereof (all of which are hereby waived by the borrower and (c) control or manage the Collateral, including without limitation exercising all rights and powers of the Borrower relating to the Collateral.  For the avoidance of doubt, the Collateral is Borrower's LLC Interest and not the Policies, and (i) nothing in this Note shall give the Holders any direct rights to take possession and/or dispose of any of the Policies, to the extent that such rights are not granted to the Borrower pursuant to the Operating Agreement of the LLC, and (ii) in the event that the Holders take possession of the Collateral, the terms of the Operating Agreement of the LLC will be binding upon the Holders in the same manner as they are binding upon the Borrower on the date such possession is taken.  At the request of either of the Holders, the Borrower shall promptly execute and deliver all instruments of title and other documents as such Holder may deem necessary or advisable to permit the Holders or either of them to fully exercise its rights hereunder, and the Borrower hereby appoints each Holder his lawful attorney-in-fact for the execution of any and all such documents. Each right, power and remedy of the Holders with respect to the Collateral shall be cumulative and concurrent and shall be in addition to every other right, power or remedy, and the exercise or beginning of the exercise of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise of any or all such other rights, powers or remedies.

**Waivers.** The Borrower hereby waives, to the fullest extent permitted by law, presentment, demand, protest and notices, including, without limitation, notices of nonperformance, notices of protest, notices of nonpayment, notices of dishonor, notices of the delivery or acceptance of this Note, and notices of the existence, creation or incurrence of new or additional obligations of the Borrower to the Holders, and all other defenses which otherwise might be available. Borrower acknowledges that the Holders have been induced to agree to the loan evidenced by this Note by, among other things, the provisions of this provision. No delay or failure by either Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holders or either of them of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability

00027585v8

to the Holder under this Note shall be limited exclusively to the Collateral (including, without limitation and for the avoidance of doubt, the Borrower's rights and interests in the LLC and the Policies and proceeds thereof), and if any proceedings shall be brought to enforce the provisions of this Note, the Holders shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Collateral.

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holders. Either Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed, by either Holder or such Holder's attorney duly authorized, in writing, a new Note for the principal amount then owed to such Holder will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holders under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one of this Note. Such notice or demand shall be effective, if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice to the Borrower by e-mail is not valid notice under this Note.

**Successors and Assigns.** The Borrower's covenants and agreements contained in this Note shall inure to the benefit of the respective heirs, legal representatives, successors and assigns of the Holders.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN, AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN, THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY AND CITY OF LOS ANGELES, STATE OF CALIFORNIA, IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION, BORROWER SHALL AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons, complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail, return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives

4

(i) any right to assert any counterclaim or setoff or any defense based upon a statute of limitations, upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is obtained as a direct or indirect result of any action on or under this Note.

In addition, the Borrower agrees that (i) any action or proceeding on or under this Note may, in the sole discretion of either party, be brought by him to the Arbitrator (as hereinafter defined) and (ii) in such event the Borrower shall submit to binding arbitration by the Arbitrator who shall determine the matter.  For all purposes under this Note, the "Arbitrator" shall be a Rabbi designated by Beis Din Machon L'hoyroa, Monsey, New York (which, for the avoidance of doubt, may include one of the Rabbis serving on said Beis Din).

_____
**Leslie Klein**

**Witnesses:**

_____

_____

00027585v8

# CALIFORNIA ALL PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    }

COUNTY OF _____ ᘁ᷄ ____ }

On ___ᒥ/ᒥ/2016__ before me , ___Johnney Hong Notary Public___ Notary Public,

      Date                         (here insert name and title of the officer)

personally appeared _____ Leslie Klein _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JOHNNEY HONG
Commission # 2080858
Notary Public - California
Los Angeles County
My Comm. Expires Sep 6, 2018

Signature: _____ (Seal)

_____ OPTIONAL _____

Description of Attached Document

Title or Type of Document: _____    Number of Pages: _____

Document Date: _____    Other: _____

**Joinder of the LLC.**  The LLC hereby: (i) acknowledges receipt of notice of the Security Interest in the Collateral hereby granted by the Borrower to the Holders in the Note which appears on the foregoing pages; (ii) acknowledges that it is not aware of any other security interest created, or other lien or encumbrance, in the Collateral; (iii) consents to the creation of the Security Interest and, upon the occurrence of an Event of Default, consents to and will cooperate with either Holder in connection with the exercise of such Holder's rights under this Note; (iv) agrees, until further notice from Andor Gestetner, to pay all amounts distributable to the Borrower from the LLC by checks payable to each Holder in the proportion set forth in this Note, delivered to: c/o Andor Gestetner, 1424 55th Street, Brooklyn, New York, 11219; (v) agrees to mail copies of all financial statements or other reports issued with respect to the Collateral to the Holders at c/o Andor Gestetner, 1424 55th Street, Brooklyn, New York, 11219, simultaneously with providing same to the Borrower; and (vi) agrees not to permit the Borrower to sell, assign or transfer, or further pledge or otherwise encumber, all or any portion of the Collateral without prior written notice to and the prior written consent of each Holder, which consent may be granted or withheld in each Holder's sole discretion.

Witnesses:                                    **LIFE CAPITAL GROUP, LLC**

**By** _____
       **Jonathon Polter, Manager**

_____

_____

00027585v8

# CALIFORNIA ALL PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    }

COUNTY OF _____}

On _____before me , _____Notary Public,

        Date                                        (here insert name and title of the officer)

personally appeared _____

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____(Seal)

_____ *OPTIONAL* _____

Description of Attached Document

Title or Type of Document: _____    Number of Pages: _____

Document Date: _____ Other: _____

**EXHIBITS TO THIS DOCUMENT INTENTIONALLY OMITTED**

# EXHIBIT "4"

## Iska Agreement

The undersigned recipient (the "Recipient") declares that it has received certain sums from the investing partners (the "Investing Partners") named and signing below opposite the Recipient's name, to be used for business purposes. The Recipient obligates itself to utilize these funds in a manner which it believes will generate profits. Any profits realized or losses sustained shall be shared equally between the Investing Partners and the Recipient.

Any claim of loss must be verified through the testimony of two qualified witnesses in, and under conditions acceptable to, an Orthodox Jewish court of law. Any claim regarding the amount of profit generated by these funds shall be verified under solemn oath, before, and under conditions acceptable to, an Orthodox Jewish court of law.

The amounts due hereunder, if any, to the Investing Partners shall be payable in accordance with the terms of one or more separate loan documents (each a "Loan Document") executed by the Recipient in favor of the Investing Partners. If these profits are being paid in a timely manner, the return of the sum invested herewith shall not be required until the date indicated in the applicable Loan Document. If there are no profits during any given year, the Investing Partners shall be notified of this immediately.

It is specifically agreed that if the Recipient pays to the Investing Partners the sums in accordance with the applicable Loan Document, as payment for his share of the profits which are generated, then the Recipient will not be required to make an oath, nor will the Recipient be required to notify the Investing Partners regarding the profits which were realized. Additional profits, if any, shall be the sole property of the Recipient.

The Investing Partners shall be entitled to the presumption of credibility in any claim regarding compliance of the terms herein. This provision shall survive the termination of this Iska. In the event that the annual payment or notice which is required herein is not given, the presumption shall be that the moneys invested have continued to generate a profit equal to or greater than the amount required by the monthly payment.

The Recipient has received the sum of One Dollar ($1.00) from the Investing Partners as payment for its services during the term of the partnership reflected in this Iska agreement.

In the event of any conflict between the terms of this Iska agreement and the terms of any other agreement signed by the parties in regard to the funds described in this agreement, the terms of this agreement shall prevail.

0002758v2

This agreement shall follow the guidelines of Heter Iska as explained in *Sefer Bris Yehudah.*

| RECIPIENT: | INVESTING PARTNERS: |
|---|---|
| LESLIE KLEIN | ANDOR GESTETNER |
| | GESTETNER CHARITABLE REMAINDER UNITRUST |
| | By: _____<br>Andor Gestetner, Trustee |

00027589v2

2

# EXHIBIT "5"

## SUPPLEMENT TO NON-RECOURSE SECURED PROMISSORY NOTE
## AND
## ASSIGNMENT OF ECONOMIC RIGHTS

**Date: July 25, 2017**

Reference is made to a **NON-RECOURSE SECURED PROMISSORY NOTE** (the "Note"), dated September 1, 2016, made by the undersigned, **LESLIE KLEIN** (the "Borrower"), having an office address of Leslie Klein and Associates, Inc., 14245 Ventura Boulevard, 3rd Floor, Sherman Oaks, California 91423-2740, in favor of **ANDOR GESTETNER**, an individual, and **GESTETNER CHARITABLE REMAINDER UNITRUST**, having an address of 1424 55th Street, Brooklyn, New York, 11219, or their respective registered assigns (each a "Holder" and together the "Holders"), in which the Borrower agreed to pay the principal sum of **$9,630,000** plus interest thereon at the rate of **13% per annum** and other terms and conditions as stated in the Note. The loan evidenced by the Note is secured by a grant by the Borrower to the Holders of a security interest in the Borrower's interest (the "LLC Interest" or "Collateral") as a Member of **LIFE CAPITAL GROUP LLC** (the "LLC"), a California limited liability company formed on April 8, 2011, and operated pursuant to a Limited Liability Company Agreement dated as of June 1, 2011. Under the terms of the Note, the Borrower agreed to cooperate with the Holders to perfect the Holders' security interest in the Collateral, to achieve and maintain the priority of the Holders' security interest in the Collateral, and to maintain, preserve and protect the Collateral and the Holders' security interest therein. Notwithstanding the provisions of the Note and efforts of the Borrower and the Holders, the LLC will not agree to acknowledge the Holders' interests in the Collateral.

The Borrower agrees that until the Note has been paid in full, he will refrain from taking, directly or indirectly, any action that may adversely affect the value of the LLC Interest or the rights of the Holders therein pursuant to the Note. Specifically, and without limitation, the Borrower will not, without the advance written consent from Andor Gestetner, (i) direct the LLC to reduce or halt the distributions from the LLC to the Holders or (ii) assign, transfer, pledge, or otherwise dispose of or encumber all or any part of the LLC Interest. In addition, Borrower agrees to cooperate with either Holder's efforts to obtain information from the LLC about the life insurance policies held by the LLC and collection, distribution and accounting of proceeds thereof, and to send copies of all financial statements and/or other reports received by the Borrower from the LLC to Andor Gestetner at the address listed for the Holders above.

_____
**Leslie Klein**

Witnesses:

_____

_____

00033019v3

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )          ss
COUNTY OF LOS ANGELES        )

On **July 25, 2017**, before me, *Arvin Dermehrabian*, a Notary Public, personally appeared **LESLIE KLEIN** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal

Signature: _____

**NOTARY PUBLIC IN AND FOR SAID COUNTY**

[ SEAL ]

ARVIN DERMEHRABIAN
Notary Public – California
Los Angeles County
Commission # 2187571
My Comm. Expires Mar 23, 2021

# EXHIBIT "6"

# ACKNOWLEDGMENT OF ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

This Acknowledgment of Assignment of Interest in Limited Liability Company ("Acknowledgment") is executed to be effective this _____ day of July, 2017 between Leslie Klein, an individual with an address at 14245 Ventura Boulevard, 3rd Floor, Sherman Oaks, CA 91423, hereinafter referred to as the *"Assignor"*, Andor Gestetner, an individual, and the Gestetner Charitable Remainder Unitrust, both with an address at 1424 55th Street, Brooklyn, NY 11219, hereinafter referred to as the *"Assignee"*, and Life Capital Group, LLC, a California limited liability company (the *"Company"*).

## RECITALS

A.    The Company has been advised by Assignor and Assignee as follows:

i.    Assignee is the holder of that certain note dated September 1, 2016, (the *"Note"*, a copy of which is attached as Exhibit "A") evidencing a loan from Assignee, as lender, to Assignor, as borrower, in the principal amount of $9,630,000.00, which is incurring interest at the rate of 13% per annum (the `"Loan"`).

ii.    Under the terms of the Note, Assignor assigned its rights to any and all distributions from the Company it is entitled to pursuant to Article IV of that certain limited liability company agreement of the Company dated June 1, 2011, (the *"Economic Interest"*) a copy of which agreement is attached hereto as Exhibit "B" (the *"Operating Agreement"*), until the Note is repaid in full.

B.    Assignor owns a 50% membership interest in Life Capital Group, LLC, a California limited liability company (the *"Company"*).

C.    Assignor has directed the Company to make distributions relative to the Economic Interest that Assignor may otherwise be entitled to pursuant to the Operating Agreement to the Assignee and it will make said distributions until directed otherwise by Assignor.

D.    The Company hereby consents to the assignment of the Economic Interest in exchange for Assignor's and Assignee's covenants, representations and warranties herein.

## ACKNOWLEDGMENT

Now therefore, in light of the foregoing recitals which are herein by reference incorporated as part of this Acknowledgment and the mutual covenants herein provided and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    Defined Terms. Any capitalized terms used herein and not otherwise defined shall have the meaning ascribed to the same in the Operating Agreement.

00031876v3

08-15-17 17:10 From-Fax                                          T-579  P0002/0004 F-177

2.    <u>Representations of Assignor and Assignee:</u> Assignor and Assignee hereby represent, warrant and covenant to each other and to Company that Assignor and Assignee have full power and authority to execute and deliver this Acknowledgment.

3.    <u>No Collateral in the Company.</u> Nothing herein shall constitute a grant of any collateral interest in the Company, and Assignee shall not hold, own, cause or otherwise control any collateral interest in the Company, or be deemed to hold, own, cause or otherwise control any collateral interest in the Company. Without limitation on the foregoing, Assignee acknowledges and agrees that it does not have the voting rights of Assignor in the Company and that nothing herein shall require the Company to obtain the consent of Assignee for anything whatsoever.

4.    <u>Cooperation.</u> . The Company will (i) be reasonably responsive to the reasonable inquiries of Assignee about the life insurance policies held by the Company and collection, distribution and accounting of proceeds thereof, and (ii) as a non-binding accommodation to Assignee, endeavor to mail to Assignee copies of all financial statements and/or other reports sent to Assignor, at c/o Andor Gestetner, 1424 55th Street, Brooklyn, New York, 11219, simultaneously with providing same to Assignor.

5.    <u>Covenant Not to Sue Company; Indemnification of Company.</u> Assignor and Assignee hereby agree for the benefit of the Company and any other Member of the Company (other than the Assignor) as follows:

a.)    Notwithstanding anything contained herein to the contrary, it is expressly acknowledged and agreed by Assignee that the Company is not a guarantor of the Loan or surety of the Loan and Assignee covenants with Assignor and the Company that Assignee will not hereafter commence any action, at law or otherwise, against the Company or any other Member of the Company with respect to the Loan or any other obligation that Assignor may have to Assignee.

b.)    Each of Assignor and Assignee, jointly and severally, hereby agrees to indemnify, defend and hold harmless the Company and each other Member of the Company to the fullest extent permitted by applicable law against all losses, damages, liabilities, costs and expenses (including reasonable attorneys' fees) incurred as a result of this Acknowledgment and the Loan.

c.)    Assignor and Assignee agree that at any time and from time to time, such parties will promptly execute and deliver all further instruments and documents, and take all further action that may be reasonably necessary or requested by the Company, in order to effectuate the intent of this Acknowledgment.

d.)    The Company and any other Member of the Company shall be deemed to be intended third-party beneficiaries of this Paragraph 5 and the obligations of Assignor and Assignee hereunder shall not be amended without the written consent of the Company, which consent may be withheld in the sole and absolute discretion of the Company.

#7599 P.004 / 006                                    98L79E78L786          LL0Z/0Z/80

6.    _Miscellaneous._ This Acknowledgment may be executed in counterparts and by facsimile or exchange of electronic copies. This Acknowledgment shall be governed by the laws of the State of California. Headings are for convenience only and shall not be used to interpret the provisions of this Acknowledgment.

00031876v3

IN WITNESS WHEREOF, the undersigned parties hereby execute this Acknowledgment effective as of the day and year first written above.

ASSIGNOR:

_____
LESLIE KLEIN

ASSIGNEE:

_____
ANDOR GESTETNER

Gestetner Charitable Remainder Unitrust

By: _____
Andor Gestetner
Its: Trustee

COMPANY:

Life Capital Group, LLC
a California limited liability company

By: _____
Jonathan Polter
Its: Manager

00031876v3

# EXHIBIT "7"

## MEMORANDUM OF UNDERSTANDING

Reference is made to the Limited Liability Company Agreement of the LLC, dated as of June 1, 2011 (the "Operating Agreement"), a Non-Recourse Secured Promissory Note in the principal amount of $9,630,000, dated September 1, 2016 (the "Promissory Note" evidencing the "Loan"), and the Supplement to Non-Recourse Secured Promissory Note and Assignment of Economic Rights, dated July 25, 2017 (the "Supplement").

Any capitalized terms used in this Agreement without definition shall have the meaning set forth in the Operating Agreement.

For good and valuable consideration, including their mutual promises herein, the parties hereby agree and acknowledge as follows:

a.      Gestetner Lien on Klein's Interest in LLC. The LLC (i) consents to the creation of the Security Interest in Klein's interest in the LLC (the "Collateral") under the Promissory Note, and agrees to execute the attached "Joinder of the LLC" to the Promissory Note, (ii) agrees to cooperate with Gestetner in connection with the exercise of his rights under the Promissory Note in connection with the Collateral; (iii) agrees, until further notice from Gestetner, to pay all amounts distributable to Klein from the LLC to Gestetner; and (iv) agrees not to permit the Borrower to sell, assign or transfer, or further pledge or otherwise encumber, all or any portion of the Collateral without prior written notice to and the prior written consent of Gestetner, which consent may be granted or withheld in Gestetner's sole discretion.

b.      Allocation of Proceeds of Policies. Section 4.3 of the Operating Agreement shall be construed to require that:

(i)      Upon the receipt of proceeds from a Policy that is not a Non-Payment Policy, Rechnitz shall be repaid the Rechnitz Amount before Klein receives any distributions from the LLC.

(ii)      The Rechnitz Amount, defined in Section 14.1 and 3.1 of the Operating Agreement, includes (i) Rechnitz's Initial Capital Contribution of $3,800,000; (ii) the Priority Return on Rechnitz's Initial Capital Contribution; (iii) any additional Capital Contributions made by Rechnitz in respect of the policy at issue; and (iv) the Priority Return on any such additional Capital Contribution.

(iii)     After Rechnitz is paid the Rechnitz Amount, Klein (and/or the Lenders listed on Schedule C of the Operating Agreement) shall be paid the Klein Amount (i.e., Klein's Capital Contributions made in respect of the policy at issue and the Priority Return on such Capital Contributions).

(iv)     After Klein and/or the Lenders receive the Klein Amount, the LLC shall allocate and pay any remaining proceeds equally between and to Rechnitz and Klein (except to the extent that the payment to Klein is (i) reduced in order to maintain the Reserve Account balance or (ii) applied to the direct payment of premiums on the Marouthis Policies (as hereinafter defined), as herein provided).

c.     Regular Reporting. The LLC shall provide to Gestetner (or his counsel) accurate and timely (at least quarterly) financial reporting with respect to the LLC, which reporting shall include (i) a current list of the life insurance policies held by the LLC (including any such policies held elsewhere but treated as between Rechnitz and Klein as held therein), (ii) information with respect to the collection, accounting and distribution of proceeds of same, and (iii) a current list of unpaid loans to which Schedule C of the Operating Agreement applies.

d.     Schedule C Loans. The LLC confirms that the current balance of the loans listed on Schedule C of the Operating Agreement is $_____. There shall be no other loans, or increases in loans, added to said Schedule C by or at the request of Klein or any other party.

e.     Klein Agreements to Remain in Force. All of the terms of prior agreements signed by both Klein and Gestetner relating to the LLC and/or Klein's interest therein shall continue in full force and effect.

f.     Successors and Assigns. Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the parties hereunder and their legal representatives, heirs, administrators, executors, successors and assigns.

g.     Amendments. This Agreement may be modified or amended only with the written consent of all of the parties hereto.

h.     Severability. If any provision, including any phrase, sentence, clause, section or subsection, of this Agreement is invalid, inoperative or unenforceable for any reason, such circumstance shall not have the effect of rendering such provision in question invalid, inoperative or unenforceable in any other case or circumstance, or of rendering any other provision herein contained invalid, inoperative or unenforceable to any extent whatsoever.

i.     Headings. The headings contained in this Agreement are for purposes of convenience only and shall not affect the meaning or interpretation of this Agreement.



2

j.     <u>Governing Law</u>. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED UNDER, THE LAWS OF THE STATE OF CALIFORNIA, WITH ALL RIGHTS AND REMEDIES BEING GOVERNED BY SAID LAWS.

k.     <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, and both of which together shall constitute one and the same instrument. A facsimile or PDF of an executed signature page hereto transmitted by any party hereto to any other party shall be deemed the execution and delivery of an original counterpart of this Agreement by such party.

*[signature page follows]*

Memorandum of
Understanding Life

IN WITNESS WHEREOF, the parties hereto have caused this Agreement
to be executed and delivered on the day and year first above written.

LIFE CAPITAL GROUP, LLC

By: _____

Jonathan Polter, Manager of LLC

_____

ANDOR GESTETNER

ATTACHMENT

(Joinder of LLC to 9/1/2016 Promissory Note)

Memorandum of
Understanding Life

# EXHIBIT "8"

---------- Forwarded message ---------
From: **kleinlaw@earthlink.net** <kleinlaw@earthlink.net>
Date: Wed, Dec 14, 2022 at 2:48 PM
Subject: Re: Life Capital Group, LLC: Correspondence and Document
To: <JP@poelcapital.com>


Attached hereto, please find a copy of the <u>revised</u> above-referenced Document.  **[JP-01 121422.pdf]**

Thank you.

LESLIE KLEIN & ASSOCIATES


**THE INFORMATION CONTAINED IN THIS EMAIL COMMUNICATION  AND ITS ATTACHMENTS  IS
PRIVILEGED,  CONFIDENTIAL  AND PROTECTED FROM DISCLOSURE.  IF THE READER OF THIS EMAIL COMMUNICATION
IS NOT THE ADDRESSEE HEREOF OR AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS EMAIL
COMMUNICATION  TO THE ADDRESSEE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR
COPYING OF THIS EMAIL COMMUNICATION  IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS EMAIL
COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY REPLYING TO THIS MESSAGE AND DELETE IT AND
ITS ATTACHMENTS FROM YOUR COMPUTER WITHOUT READING OR SAVING EITHER OF THEM TO DISK. THANK YOU.**


--

Jonathan Polter
Managing Partner, Poel Capital
Office: 248-566-0097
Fax: 248-281-1733
www.poelcapital.com

## DIRECTION BY ASSIGNOR TO REVOKE ASSIGNMENT OF INTEREST IN LIMITED LIABILITY COMPANY

Pursuant to Section C. of the Contract, I, **LESLIE KLEIN,** a 50% owner of **LIFE CAPITAL GROUP, LLC,** A California Limited Liability Company, hereby revoke my assignment of interest in **LIFE CAPITAL GROUP, LLC** Limited Liability Company to **ANDOR GESTETNER,** an individual, and the **Gestetner Charitable Remainder Unitrust**, both with an address of 1424 55th Street, Brooklyn, NY 11219.

Accordingly, I hereby direct that all distributions pursuant to the Contract shall be made to **LESLIE KLEIN**.

I will continue to make monthly payments in the sum of TEN THOUSAND DOLLARS ($10,000) to **ANDOR GESTETNER** and purchase other policies having an aggregate death benefit of approximately FOURTEEN MILLION DOLLARS ($14,000,000).

This Note is a non-recourse promissory note but secured by the Borrower's interest as a Member of **LIFE CAPITAL GROUP, LLC.**

In the event **ANDOR GESTETNER** sues the **LLC** and any Member of the LLC with respect to disagreement, all legal costs shall be borne by **LESLIE KLEIN.**

**LESLIE KLEIN** hereby agrees to indemnify, defend and hold harmless the Company and each other Member of the Company to the fullest extent permitted by applicable law against all losses, damages, liabilities costs and expenses (including reasonable attorneys' fees) incurred.

**LESLIE KLEIN** agrees that any time and from time to time, he will promptly execute and deliver all instruments and documents and take all further action that may be reasonably necessary or requested by the LLC in order to effectuate the intent of this Agreement.

**LESLIE KLEIN** agrees that any other Member of the Company shall be deemed to be intended third-party beneficiaries.

**IN WITNESS** the undersigned hereby executes this Direction by Assignor on December 12, 2022.


**ASSIGNOR:**

_____
**LESLIE KLEIN**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (ACTION IN NONBANKRUPTCY FORUM)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **_April 26, 2023_**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Reem J Bello    rbello@goeforlaw.com, kmurphy@goeforlaw.com**
- **Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com**
- **Greg P Campbell    ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com**
- **Theron S Covey    tcovey@raslg.com, sferry@raslg.com**
- **Dane W Exnowski    dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com**
- **Brandon J Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com**
- **Michael Jones    michael.jones4@usdoj.gov**
- **Ron Maroko    ron.maroko@usdoj.gov**
- **Joshua L Scheer    jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com**
- **Mark M Sharf (TR)    mark@sharflaw.com, C188@ecfcbis.com;sharf1000@gmail.com;2180473420@filings.docketbird.com**
- **Alan G Tippie    Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Michael L Wachtell    mwachtell@buchalter.com**
- **John P. Ward    jward@attleseystorm.com, ezhang@attleseystorm.com**
- **Clarisse Young    youngshumaker@smcounsel.com, levern@smcounsel.com**
- **Paul P Young    paul@cym.law, jaclyn@cym.law**

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) **_April 26, 2023_**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_April 26, 2023_**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**<u>SERVED BY OVERNIGHT MAIL,</u>**
Honorable Sandra R. Klein
United States Bankruptcy Court
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 26, 2023 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-2
Case 2:23-bk-10990-SK
Central District of California
Los Angeles
Wed Apr 26 09:08:27 PDT 2023

Wilmington Savings Fund Society, FSB, d/b/
Robertson, Anschutz, Schneid, Crane & Pa
350 10th Avenue, suite 1000
San Deigo, CA 92101-8705

Andor Gestetner
c/o Law Offices of Jacob Unger
5404 Whitsett Ave., Ste. 182
Valley Village, CA 91607-1615

Bank of America
Attn: Bankruptcy
4909 Savarese Circle
Tampa, FL 33634-2413

Bank of America, N.A.
PO Box 673033
Dallas, TX 75267-3033

Barclays Bank Delaware
Attn: Bankruptcy
Po Box 8801
Wilmington, DE 19899-8801

(p)CCO MORTGAGE CORP
10561 TELEGRAPH RD
GLEN ALLEN VA 23059-4577

California Bank & Trust
Po Box 711510
Santee, CA 92072-1510

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Chase Doe
143 S. Highland Drive
Los Angeles, CA 90036-3028

Chase Mortgage
BK Department
Mail Code LA4 5555  700 Kansas Ln
Monroe, LA 71203

Citibank
Attn: Bankruptcy
P.O. Box 790034
St Louis, MO 63179-0034

Erica Vago and Joseph Vago
c/o Brian A Procel / Procel Law, PC
401 Wilshire Blvd, 12th Fl
Santa Monica, CA 90401-1456

Erika and Joseph Vago
124 N. Highland Ave
Sherman Oaks, CA 91423

(p)FAY SERVICING  LLC
P O BOX 814609
DALLAS TX 75381-4609

(p)FIORE RACOBS AND POWERS
ATTN ERIN A MALONEY
6820 INDIANA AVENUE
SUITE 140
RIVERSIDE CA 92506-4261

First Amendment Wendriger Family Trust dated
c/o Shumaker Mallory LLP
Clarisse Young Shumaker
280 S. Beverly Dr., Suite 505
Beverly Hills, CA 90212-3908

Franklin H. Menlo Irrevocable Trust
c/o Willkie Farr & Gallagher LLP
Attn: Alex M. Weingarten, Esq.
2029 Century Park East, Suite 3400
Los Angeles, CA 90067-3020

Franklin H. Menlo, Trustee
Paul P. Young c/o Chora Young & Manasser
650 Sierra Madre Villa Ave., Ste. 304
Pasadena, CA 91107-2071

Gestetner Charitable Remainder Trus
c/o Andor Gestetner
1425 55th Street
Brooklyn, NY 11219

INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

Jacob Rummitz
315 N. Martel Avenue
Los Angeles, CA 90036-2515

Jeffrey Siegel, Successor Trustee
of the Hubert Scott Trust
c/o Oldman, Cooley, Sallus
16133 Ventura Blvd., Penthouse Suit
Encino, CA 91436-2403

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

Leslie Klein & Associates, Inc.
c/o Parker Milliken
555 Flower Street
Los Angeles, CA 90071-2300

Mrc/united Wholesale M
Attn: Bankruptcy
P. O. Box 619098
Dallas, TX 75261-9098

Oldman, Cooley, and Sallus
16133 Ventura Blvd., Penthouse Suit
Encino, CA 91436-2447

Sandra Layton
161 N. Poinsettia Place
Los Angeles, CA 90036-2805

Selene Finance
Attn: Bankruptcy
Po Box 8619
Philadelphia, PA 19101-8619

Shellpoint Mortgage Servicing
Attn: Bankruptcy
Po Box 10826
Greenville, SC 29603-0826


Toyota Financial Services
Attn: Bankruptcy
Po Box 259001
Plano, TX 75025-9001

Toyota Lease Trust
c/o Toyota Motor Credit Corporation
PO Box 9013
Addison, Texas 75001-9013

US Bank Trust National Association, et al.
Fay Servicing, LLC
PO Box 814609
Dallas, TX 75381-4609


United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Leslie Klein
322 N. June Street
Los Angeles, CA 90004-1042

(p)MARK SHARF
6080 CENTER DRIVE SUITE 600
LOS ANGELES CA 90045-1540


Michael Jay Berger
9454 Wilshire Blvd 6th Fl
Beverly Hills, CA 90212-2980

Reem J Bello/Robert P Goe
Goe Forsythe & Hodges LLP
17701 Cowan, Bldg. D
Suite 210
Irvine, CA 92614-6840


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


CCO Mortgage Corp.
Attn: Bankruptcy
10561 Telegraph Rd
Glen Allen, VA 23059

Chase Card Services
Attn: Bankruptcy
P.O. 15298
Wilmington, DE 19850


Fay Servicing Llc
Attn: Bankruptcy Dept
Po Box 809441
Chicago, IL 60680

Fiore Racobs & Powers
c/o Palm Springs Country Club HOA
6820 Indiana Ave., Ste. 140
Riverside, CA 92506


Mark M Sharf (TR)
6080 Center Drive #600
Los Angeles, CA 90045