Robert P. Goe - State Bar No. 137019
Reem J. Bello – State Bar No. 198840
**GOE FORSYTHE & HODGES LLP**
17701 Cowan Avenue, Suite 210, Bldg. D
Irvine, CA 92614
rgoe@goeforlaw.com
rbello@goeforlaw.com

Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Attorneys for Judgment Creditors Erica and Joseph Vago

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LESLIE KLEIN,<br><br>Debtor and Debtor in Possession, | Case No. 2:23-bk-10990-SK<br><br>Chapter 11 Proceeding<br><br>**CREDITORS ERICA AND JOE VAGOS' OMNIBUS OPPOSITION TO LIFE CAPITAL GROUP, LLC'S (1) MOTION FOR RELIEF FROM THE AUTOMATIC STAY; AND (2) MOTION FOR AN ORDER AUTHORIZING AND DIRECTING LIFE CAPITAL GROUP, LLC TO PAY FUNDS TO CHAPTER 11 BANKRUPTCY ESTATE; AND DECLARATION OF BRIAN PROCEL IN SUPPORT THEREOF**<br><br>Date:       May 17, 2023<br>Time:      9:00 a.m.<br>Place:     Courtroom 1575<br>              U.S. Bankruptcy Court<br>              255 E. Temple Street<br>              Los Angeles, CA 90012 |

1

## I. INTRODUCTION

Life Capital Group LLC ("LCG") filed a Motion for Relief from Stay and a Motion For An Order Authorizing and Directing Payment of Funds (collectively, the "Motions"). The Motions are part and parcel of Debtor Leslie Klein's ("Debtor") effort to defraud and delay his creditors. Debtor purportedly owns 50% of LCG. And Debtor paid the attorney's fees for LCG. The Motions are not brought by an independent third-party, but rather in the interest of the Debtor himself.

Debtor recently went to trial against Creditor Erica Vago ("Vago"). Vago presented evidence that Debtor forged signatures, falsified documents, and lied under oath for the purpose of stealing his clients' money in a massive fraudulent enterprise. Following a jury trial, the court entered judgment against Debtor and his law firm in the amount of $24.3 million. Another court found that Debtor defrauded the Menlo family out of millions of dollars. Any motions filed by Debtor or his affiliates must be viewed with extreme skepticism.

As an initial matter, the premise of the Motions is false and inaccurate. LCG argues there is a bona fide dispute between Debtor and the Gestetner Remainder Charitable Trust ("Gestetner"). Based on that dispute, LCG claims that relief from stay is appropriate to afford Debtor and Gestetner the opportunity to arbitrate their dispute. LCG has attached a single page from the LCG Operating Agreement, which contains an arbitration provision. It provides that disputes "between the Members regarding this Agreement" shall be resolved through binding arbitration before the Rabbinical Council of California ("RCC"). LCG then suggests that any dispute between Debtor and Gestetner must be resolved before the RCC. That argument does not even get off the ground.

The arbitration provision cited by LCG has no applicability to the alleged dispute. Gestetner is not alleged to be a "Member" of LCG. Gestetner did not sign the LCG Operating Agreement. Nor is there an alleged dispute concerning the LCG Operating Agreement. In fact, the dispute between Debtor and Gestetner actually pertains to a 2016 Promissory Note (the

"Promissory Note"). The Promissory Note does not contain an arbitration provision. Instead, it provides that any dispute will be resolved by the "state and federal courts located in the County and City of Los Angeles." There is no contractual basis to refer this dispute to the RCC or to arbitration generally—this Court has jurisdiction to resolve this matter.

Based on the evidence presented, it is also unclear whether there is a bona fide dispute that needs to be resolved in the first instance. Gestetner is purportedly the secured lender. It did not file the motion for relief from stay. As evidence of a dispute, LCG is relying on an unsigned and largely incomprehensible document created by Debtor in December 2022 (i.e., after judgment had been entered against Debtor for $24.3 million). Debtor created this dispute at a time that he was already scrambling to delay creditors and conceal assets.

The evidence submitted by LCG raises more questions than it answers. The Motions do not provide the full LCG Operating Agreement that would establish Debtor's rights and responsibilities. They do not identify the insured whose death ostensibly led to LCG being entitled to collect $10,000,000. They do not provide a copy the insurance policy that would entitle LCG to those proceeds. They do not provide evidence regarding the balance (if any) still due and outstanding under the Promissory Note from Debtor to Gestetner. And the figures reflected in the documents cited by LCG are all over the map. This appears to be yet another thinly-veiled attempt by Debtor to increase confusion and to create unnecessary delay.

Debtors maintain the dismissal of the bankruptcy (and appointment of a receiver over Debtor) is the most appropriate course of action. Should the Court deny that relief, it is clear that neither Gestetner nor any other putative creditor of Debtor should get ahead of the line.

## II.     THIS COURT SHOULD DENY RELIEF FROM STAY

### A.     LCG's Request For Relief From Stay Is Not Justified

LCG argues that its "operating agreement requires a specialized tribunal, the RCC, to conduct binding arbitration of disputes pertaining to LCG." (Docket No. 88 at 6:16:18.) LCG further acknowledges that the arbitration provision is limited to disputes "between the Members

3

regarding this Agreement . . ." (*Id*. at 6:18-21.) LCG decided not to attached the LCG Operating Agreement in its entirety. The LCG Operating Agreement states that the Members are Debtor Leslie Klein and Shlomo Rechnitz. (*See* attached declaration of Brian Procel ("Procel Decl."), **Exhibit 7**). Gestetner is not a "Member" of LCG. Gestetner did not sign the LCG Operating Agreement. Nor does the record reflect that Gestetner agreed to arbitrate any disputes with Debtor. The arbitration provision in the LCG Operating Agreement is simply a red herring.

The Promissory Note reflects the terms of the agreement between Debtor and Gestetner. (Docket No. 88 at pp. 29-33.) There is no arbitration provision in the Promissory Note. Instead, the Promissory Note provides in all capital letters that Debtor "IRREVOCABLY CONSENTS TO THE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY AND CITY OF LOS ANGELES . . ." (*Id*. at p. 32.) This is the provision that is binding and that pertains to the alleged dispute between Gestetner and Debtor. There is no contractual, legal or factual basis to grant relief from stay to permit the parties to resolve their alleged dispute in some other forum.

LCG further argues that "LCG submits that this implicates a potential dispute between LCG members that is required to be submitted by the Debtor to binding arbitration . . ." (Docket No. 88 at 6:23-25.) To be clear, Debtor assigned its interest in certain distributions from LCG to Gestetner. (Docket No. 88 at p. 29.) But Debtor did not assign his membership interest to Gestetner. Nor is there any evidence that Gestetner has a membership interest or that it is otherwise entitled to any right or obligations under the LCG Operating Agreement.

**B.     LCG Fails to Present Evidence of a Bona Fide Dispute**

Notably, LCG, not Gestetner, the ostensible secured creditor, is seeking relief from stay. Before granting LCG any relief whatsoever, the Court must have reliable evidence as to what Debtor's interest in LCG is, and whether granting LCG's request will ultimately facilitate Debtor's theft and deception of his victims.

4

As an initial matter, there needs to be disclosure as to the relationship between the law firm of Levene, Neale, Bender, Yoo & Golubchik ("Levene Neale") that filed the Motions on behalf of LCG and Debtor himself. As Debtor's statement of financial affairs shows, Debtor paid $15,000 to Levene Neale pre-petition for "legal services". (Docket No. 70 at p. 17 of 22). The Motions were supported by declarations of Jonathan Polter ("Polter Declarations"), the manager of LCG, and several exhibits attached thereto. But rather than attached the entire LLC Agreement for LCG, the Polter declarations attached only a one-page excerpt from the LLC Agreement that includes the arbitration clause. (Docket No. 88, at 22-24 of 61.)

The Polter Declarations attach a promissory note in favor of Gestetner signed by Debtor. But the Motions do not indicate how much, if anything, is still outstanding under the note. The version of the promissory note attached includes an *unsigned* joinder by LCG. (Docket No. 88 at 5.) And its documentary evidence for the purported dispute over Debtor's assignment of his LCG interest to Gestetner consists of a one-page unsigned document purportedly created by Debtor. (Docket No. 88 at p. 57.) It is far from clear if Debtor *wants* it to appear as if there is a dispute over this.

This is not just a matter of dotting i's and crossing t's; it goes to the heart of whether Debtor is pulling the strings. At the Vagos' trial against Debtor, he testified that LCG was the vehicle to which he shifted his clients' investments in life insurance policies. Notably, he testified that he did not have any ownership interest in the life insurance policies (i.e., there would be nothing to assign to Gestetner), and that he retained sufficient control over LCG that he could cause insurance proceeds to be distributed to the Vagos:

> Q. So you shifted your life insurance investment portion of your practice into this LLC?
>
> A That is correct.
>
> Q What is the name of this company if you recall?
>
> A It's Life Settlement, LLC.

5

> Q Life Capital Group?
>
> A Life Capital Group LLC.
>
> . . .
>
> Q So as of 2014, if an insured were to pass away and the insurance company pays money, you don't get any of that money?
>
> A That is correct.
>
> . . .
>
> Q Would you be able to have sufficient control over the Life Capital Group to transfer the policies there directly to the Vagos?
>
> A Yes. No problem at all.

(*See* Procel Decl., **Exhibit 1** (Sep. 6, 2022 Trial Tr. at 181:16-19); **Exhibit 3** (Sep. 8, 2022 Trial Tr. at 105:6-9; *see id.* at 103:20-27.)  Until this Court can sort out which of Debtor's versions of events is true (if any are), it would be inappropriate to allow Debtor to mire his creditors in yet another proceeding in yet another forum.

The evidence attached to LCG's Motions references Gestetner's "understanding that an insured under one of the policies owned by the Company [LCG] has passed away, and the Company is entitled to receive the policy proceeds in the approximate amount of $10,000,000 ("Proceeds")." (Docket No. 88 at p.26.)  However, the Motions do not confirm or deny whether in fact any such insured has died.  They do not identify who this insured is, or when they died.  The Motions do not identify the life insurance policy or other instrument under which LCG and/or its members would be entitled to receive approximately $10 million or any portion thereof.  And they do not identify whether in fact LCG or any of its members have in fact received any portion of the $10 million or have already transferred any portion of that amount.  The Motions raise more questions than they answer.

Debtor's history of fabricating documents heightens the need for a reliable documentary paper trail before granting LCG any relief.  Debtor claimed that he attended a meeting with a

6

respected tax attorney, Mr. Perez, and Mrs. Vago concerning her inheritance, and during discovery produced what he purported to be contemporaneous notes of that meeting. (Procel Decl., **Exhibit 1** (Sep. 6, 2022 Trial Tr. at 175:5-10; **Exhibit 2** (Sep. 7, 2022 Trial Tr. at 26:4-19, 27:21-26); **Exhibit 5** (Trial Exh. 119).) But Mr. Perez testified that no such meeting ever took place. (Procel Decl., **Exhibit 3** (Sep. 8, 2022 Trial Tr. at 8:7-14, 9:10-10:26).) Similarly, Debtor took out a life insurance policy on an individual named Ann Radow. (Procel Decl., **Exhibit 6** (Trial Exh. 21).) But Ann Radow testified at trial that she had never met Debtor; that he took out an insurance policy on her life without her knowledge or consent; and that Debtor created the Ann Radow Trust and made himself the trustee without her knowledge or consent. (*Id.*, **Exhibit 4** (Sep. 9, 2022 Trial Tr. at 9:15-25; 10:2-8; 12:3-26).)

In light of these serious concerns about Debtors' control over or connection to LCG or these motions, no relief should be granted until, at a minimum, more information is provided.

**C.    The Relevant Factors Militate Strongly Against Relief from Stay**

LCG's Motion for Relief from Stay addresses twelve factors relevant to a grant or denial of relief from stay. *See Truebro, Inc. v. Plumberex Specialty Products, Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004). In fact, *none* of the twelve factors favors lifting the stay here.

1. <u>Whether the relief will result in a partial or complete resolution of the issues.</u>  The Motion claims that "[a]llowing the RCC to conduct a binding arbitration of the scope and extent of the Debtor's and Gestetner's interest in LCG will result in complete resolution of the issue of who is entitled to any payments required to be made by LCG." (Docket No. 88 at 6:4-6.) But there is no evidence that the RCC is authorized to determine whether there is a genuine dispute based on authentic documents in the first place. Moreover, the arbitration cannot resolve the dispute between Debtor and at least two of his creditors as to whether Debtor has *any* valid interest in the proceeds of any insurance policies owned by LCG that could be assigned to Gestetner.

7

2. <u>The lack of any connection with or interference with the bankruptcy case.</u> For similar reasons, the arbitration will necessarily interfere with the bankruptcy and with the streamlined claims process it is supposed to facilitate.

3. <u>Whether the foreign proceeding involves the debtor as a fiduciary.</u> The Motion claims that "this factor is not applicable," but the evidence indicates otherwise. As discussed above, Debtor purported to be holding any interests in insurance policies under LCG as a fiduciary of the Vagos and any other clients he purported to be investing in.

4. <u>Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases.</u> Under the excerpt of the LCG LLC Agreement attached to the Motions, it does appear that disputes "between the Members" shall be subject to arbitration under the RCC. However, Debtor's disputes with his investor victims are inextricably intertwined with his disputes with the other Members of LCG. Those victims are *not* bound by any arbitration clause.[1]

The Motion also asserts that the RCC "is already familiar with . . . LCG [and] LCG's operating agreement." (Docket No. 88 at 7:1-2.) But this is merely a conclusory statement. LCG does not present evidence suggesting the extent to which the RCC is familiar with these issues; when the RCC was engaged; or in what capacity the RCC was engaged. Nor does LCG attempt to explain whether RCC is qualified to apply California law, which governs the Promissory Note pursuant to the choice of law provision. (Docket No. 88 at p. 32.)

5. <u>Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.</u> LCG is correct that this factor is not applicable to the Motion.

\\\

\\\

---

[1] The Vagos were initially willing to have their dispute with Debtor resolved by the rabbinic courts, but Debtor refused, forcing them to sue in civil court. The fact that Debtor's entity now purports to prefer rabbinic arbitration is another reason to be skeptical of the request.

8

6. <u>Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.</u> Debtor is not a mere conduit or middleman in a third-party dispute; his interest in proceeds from the LLC is at the heart of the dispute that would be arbitrated.

7. <u>Whether the litigation in another forum would prejudice the interests of other creditors.</u>  This militates against lifting the stay for the reasons discussed above. The evidence attached to the motions indicates that Gestetner is a frustrated creditor who, like the Vagos and the Menlo family, entrusted millions with Debtor in the mistaken belief that he would safeguard and invest the funds on their behalf. (*See* Docket No. 88 at p. 29 ("The Borrower that Holders previously, in or around 2005, delivered to Borrower the sum on $4,200,000 . . . with the agreement that such sum would be invested for the benefit of the Holders.")).  While Gestetner appears to have converted his investment to a note secured by Debtor's right to proceeds from LCG, whether this ostensible security is any more authentic or legitimate than the interests in Debtor's LCG proceeds held by his other victims is not something that can be litigated or decided separately.

8. <u>Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).</u> Again, LCG claims that "[t]his factor is not applicable to the Motion," it is premature at this point to assert that any judgment that might arise from LCG's arbitration would not be subject to equitable subordination.

9. <u>Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).</u> Again, while LCG asserts this factor does not apply, that cannot yet be determined.

10. <u>The interests of judicial economy and the expeditious and economical determination of litigation for the parties.</u> Anything that allows Debtor to divide up the issues into different forums increases the risk of delay and confusion. Debtor has repeatedly used a multiplicity of proceedings to his advantage, playing off a given litigant's or adjudicator's

9

ignorance of the substantive and procedural shenanigans he has engaged in elsewhere. Particularly given the typical lack of transparency in arbitrations, sending a piece of the case to arbitration is particularly perilous.

11. <u>Whether the foreign proceedings have progressed to the point where the parties are prepared for trial</u>. The arbitration appears not to have gotten off the ground, having stalled when Debtor refused to sign the administrative forms. That is no further along than this proceeding is—and certainly no closer to a resolution than the Vagos were when Debtor filed this Chapter 11 proceeding nine hours before their *ex parte* application to appoint a receiver was to be heard.

12. <u>The impact of the stay on the parties and the "balance of hurt."</u> The Vagos are unable to share LCG's optimism that an arbitration "will benefit the estate because it will allow for a determination of the scope and extent of the estate's interests in LCG." (Docket No. 88 at 9:3-4.) How, for example, will the RCC deal with Debtor's inevitable failure and refusal to produce documents or act with candor, or ferret out his creation of forgeries? Debtor has repeatedly evaded service of a judgment debtor's exam in a court that actually has the power to hold him in contempt. With all due respect to the arbitrators, with even less oversight or power he will likely run circles around them.

### D.**LCG's Alternative Relief Is Only Appropriate if a Trustee Is Appointed**

LCG seeks, in the alternative, an order from the Court directing it when and where to make any payments that may be owed to Debtor. One thing is clear: as long as Debtor remains as a debtor-in-possession, no payments should be made to Debtor's Chapter 11 estate. Any funds that Debtor can practically gain control over are as good as having already been stolen.

The Vagos have moved to dismiss this Chapter 11 bankruptcy proceeding in its entirety for cause for having been filed in bad faith. If this case is dismissed, the Vagos would immediately move *ex parte* for an order appointing a receiver over Debtor (which motion was pending when Debtor filed this proceeding.) As discussed in their motion to dismiss, the Vagos believe that a

10

receiver can achieve most of the same results as a Chapter 11 Trustee and/or an examiner could achieve through bankruptcy, but with less administrative expense and delay.

The Vagos stand by their assertion that dismissal is the best and most appropriate course of action. However, should that relief be denied, the Vagos seek to ensure that (1) no creditors unfairly obtain an advantage outside of bankruptcy, and (2) Debtor not be afforded any greater control than absolutely necessary to funds that could and should go to his victims. Thus, relief from stay should be denied; and if dismissal is denied, no payments should be made to Debtor's Chapter 11 estate unless and until a trustee is appointed to safeguard the funds from Debtor's further predations.

### III. CONCLUSION

For the foregoing reasons, the Vagos respectfully request that the Motions be denied.

Respectfully submitted,

Dated: May 3, 2023              **GOE FORSYTHE & HODGES LLP**

By: /s/Robert P. Goe
Robert P. Goe
Attorneys for Movants Erica Vago and Joseph Vago

11

## DECLARATION OF BRIAN PROCEL

I am Brian Procel, co-counsel for Creditors Erica and Joe Vago (collectively, the "Vagos") in this action. I am competent to testify herein, have personal knowledge of the following facts and make this declaration in support thereof.

1. I served as trial counsel for the Vagos in their lawsuit against debtor Leslie Klein ("Debtor") in Los Angeles Superior Court, *Vago v. Klein* ("Vagos Lawsuit").

2. Attached as **Exhibit 1** is a true and correct copy of the relevant portions of the transcript of the trial from September 6, 2022 in the Vagos Lawsuit.

3. Attached as **Exhibit 2** is a true and correct copy of the relevant portions of the transcript of the trial from September 7, 2022 in the Vagos Lawsuit.

4. Attached as **Exhibit 3** is a true and correct copy of the relevant portions of the transcript of the trial from September 8, 2022 in the Vagos Lawsuit.

5. Attached as **Exhibit 4** is a true and correct copy of the relevant portions of the transcript of the trial from September 9, 2022 in the Vagos Lawsuit.

6. Attached as **Exhibit 5** is a true and correct copy of exhibit 119 from the trial in the Vagos Lawsuit.

7. Attached as **Exhibit 6** is a true and correct copy of exhibit 17 from the trial in the Vagos Lawsuit.

8. Attached as **Exhibit 7** is a true and correct copy of the LCG Operating Agreement.

I declare under penalty of perjury according to the laws of the United States that the foregoing is true and correct and that this declaration was signed by me on May 3, 2023 in Los Angeles, California.

_____
Brian Procel

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 17701 Cowan, Bldg. D., Suite 210, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **CREDITORS ERICA AND JOE VAGOS' OMNIBUS OPPOSITION TO LIFE CAPITAL GROUP, LLC'S (1) MOTION FOR RELIEF FROM THE AUTOMATIC STAY; AND (2) MOTION FOR AN ORDER AUTHORIZING AND DIRECTING LIFE CAPITAL GROUP, LLC TO PAY FUNDS TO CHAPTER 11 BANKRUPTCY ESTATE; AND DECLARATION OF BRIAN PROCEL IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 3, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) May 3, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) May 3, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Sandra R. Klein, USBC, 255 E. Temple Street, Ctrm 1575, Los Angeles, CA 90012

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 3, 2023 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

13

**Mailing Information for Case 2:23-bk-10990-SK**
**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Michael Jay Berger**    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Greg P Campbell**    ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Theron S Covey**    tcovey@raslg.com, sferry@raslg.com
- **Dane W Exnowski**    dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com, cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
- **Brandon J Iskander**    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **Michael Jones**    michael.jones4@usdoj.gov
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Krikor J Meshefejian**    kjm@lnbyg.com
- **Joshua L Scheer**    jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- **Mark M Sharf (TR)**    mark@sharflaw.com, C188@ecfcbis.com;sharf1000@gmail.com;2180473420@filings.docketbird.com
- **Alan G Tippie**    Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **Gary Tokumori**    gtokumori@pmcos.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**    mwachtell@buchalter.com
- **John P. Ward**    jward@attleseystorm.com, ezhang@attleseystorm.com
- **Clarisse Young**    youngshumaker@smcounsel.com, levern@smcounsel.com
- **Paul P Young**    paul@cym.law, jaclyn@cym.law
- **Roye Zur**    rzur@elkinskalt.com, cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com