RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyg.com; kjm@lnbyg.com

Attorneys for Life Capital Group, LLC

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>Debtor and Debtor in Possession. | Case No. 2:23-bk-10990-SK<br><br>Chapter 11<br><br>**LIFE CAPITAL GROUP, LLC'S OMNIBUS REPLY TO OPPOSITIONS/RESPONSES TO MOTIONS:**<br>**(1) FOR RELIEF FROM THE AUTOMATIC STAY; AND,**<br>**(2) FOR PAYMENT DIRECTION; REPLY DECLARATION OF JONATHAN POLTER IN SUPPORT THEREOF**<br><br>[Declaration of Krikor J. Meshefejian filed concurrently herewith]<br><br>Date: May 17, 2023<br>Time: 8:30 a.m. + 9:00 a.m. [1]<br>Place: Courtroom 1575<br>          255 East Temple Street<br>          Los Angeles, CA 90012 |

---

[1] The hearing on the Stay Relief Motion is scheduled for 8:30 a.m. and the hearing on the Payment Direction Motion is scheduled for 9:00 a.m.

1

Life Capital Group, LLC ("LCG") hereby files this omnibus reply to the following oppositions/responses to LCG's: (1) motion for relief from the automatic stay (the "Stay Relief Motion") (Doc 88); and (2) motion for an order authorizing and directing the payment of money (the "Payment Direction Motion" and together with the Stay Relief Motion, the "Motions") (Doc 90)[2]:

    1.    Erica and Joe Vagos' Omnibus Opposition (the "Vago Opposition") (Doc 102) to the Motions;

    2.    The Debtor's Opposition (the "Debtor Opposition") (Doc 103) to the Stay Relief Motion; and

    3.    The Debtor's Response (the "Debtor Response") (Doc 109) to the Payment Direction Motion.

## I. INTRODUCTION

As detailed in the Motions, and as further exemplified by contrasting the Debtor Opposition, which disagrees with the relief sought in the Motions, with Gestetner's response to the Motions (Doc 101), which largely agrees with the relief sought, live disputes exist both as to entitlement to Debtor's interests in LCG, and, as to how payments related thereto should be handled. Specifically, Gestetner asserts an entitlement to Debtor's LCG interests, thereby implicitly demanding that LCG pay Gestetner directly, instead of the Debtor. The Debtor, by contrast, asserts that the LCG interests are part of his bankruptcy estate and that Gestetner is not entitled to any interest in LCG, economic or otherwise. The Debtor further asserts that any payments during the pendency of these proceedings should be directed to him, a request which the Vagos (and seemingly other creditors) oppose. Given that such payments may or may not be property of the Debtor's estate and subject to turnover to the estate, arbitration before the RCC, or alternately judicial direction is appropriate.

The Debtor, while conceding the existence of live disputes, and despite having agreed pre-petition to arbitrate before the RCC, now blithely asserts that such an arbitration would contravene applicable law. *See, e.g.* Debtor Opposition, at p. 2 (rejecting the RCC's adherence to Jewish law

---

[2] Capitalized terms not otherwise defined have the same meaning ascribed to such terms in the Motions.

2

principles and asserting that "Jewish Law, Sharia Law, or any other foreign laws, are not laws of the land, and the dispute between the parties should be determined under either Bankruptcy law of California law.") As demonstrated below, the Debtor is wrong. But, perhaps more importantly, his opposition illustrates that a determination of the parties' respective rights and interests in LCG, including where and to whom LCG should make any payments on account of the Debtor's membership interests in LCG, is necessary and appropriate.

The Vago Opposition goes one step further than the Debtor, denying, in contrast to all other creditors, that a bona fide dispute even exits. This assertion lacks merit given the communications received by LCG from Gestetner's counsel on December 20, 2022 (attached as Exhibit 2 to the Stay Relief Motion) and the documents referenced thereto (and attached as Exhibits 3 – 7 to the Stay Relief Motion), as well as Gestetner's response (Doc 101) to the Motions, and the Debtors' Opposition, which denies the propriety of arbitraiton. The Vagos, in their zeal to insist that no bona fide dispute exists, scarcely address any of these matters.

Moreover, contrary to the Vagos' baseless contentions, the Motions are not "part and parcel of Debtor Leslie Klein's efforts to delay and defraud creditors." Nor did the Debtor pay the attorney's fees for LCG.[3] The Debtor had no involvement with or input in, the Motions, and the Debtor does not manage or control LCG. Rather, LCG filed the Motions to ensure compliance with LCG's arbitration provision and all applicable provisions of the Bankruptcy Code, a cautious approach which accords with the very serious allegations the Vagos themselves make against the Debtor. Thus, by the Motions, LCG seeks to avoid being embroiled in disputes, including the very type of "efforts to delay and defraud creditors" which the Vagos decry.

In sum, arbitrable disputes, including questions as to payment direction unquestionably exist (to put it mildly). The questions raised in the Motions surround where and how disputes pertaining to the scope and extent of the Debtor's interests in LCG should be adjudicated. LCG

---

[3] The Vagos' assertions in this regard are false. Neither the Vagos nor their counsel attempted to contact LCG or LCG's counsel to try to obtain the actual facts before making such false statements.

3

respectfully submits that the RCC should resolve the question of the scope and extent of the Debtor's interests in LCG, and that stay relief is appropriate in order to allow the RCC to do so[4].

First, contrary to the Debtor's contentions, the issue of the scope and extent of the parties' respective rights in and to the Debtor's interests in LCG is a non-core issue. Second, contrary to the Vagos' contention (but not the Debtor's) the issue sufficiently implicates the arbitration provision in LCG's operating agreement[5]. Indeed, at least two creditors of the estate agree to binding arbitration [Gestetner agrees (Doc 101) to binding arbitration, as do Robert and Esther Mermelstein (Doc 110]. Third, the RCC is well-equipped to arbitrate the issue, and the use of contractual arbitration before it is appropriate. Such "[a]greements to resolve disputes before a beth din [i.e. rabbinical court] have been enforced in this country's courts." *Dial 800 v. Fesbinder*, 118 Cal.App.4th 32, 46 (2004). . Fourth, the RCC is the logical choice for the parties since they self-identify as members of the Orthodox Jewish faith, who abide by both Jewish and secular legal principles. *See, e.g. See Muller v. Wertzberger,* 972 N.Y.S.2d 144, 2013 WL 2460358, at *3 n. 1 (N.Y. Sup. Ct. 2013) (referencing Jewish law norms regarding to the structuring of loan agrements). As many authorites such as *Dial 800*, cited above, recognize, arbitration before rabbinical tribunals is common in Orthodox Jewish communities. Fifth, granting the relief requested in the Stay Relief Motion will allow the extent of the Debtor's interest in LCG to be defined, in a forum that is ready, willing and able to do so without delay.

## II. REPLY

**A. Relief From The Automatic Stay Is Appropriate to Allow Arbitration Proceeding Before The RCC In Order To Adjudicate Competing Claims To The Debtor's Interests In LCG.**

**1. The Debtor Has No Involvement in the Filing of The Motions.**

---

[4] LCG appreciates that if the Court appoints a chapter 11 trustee or converts this case to chapter 7, a trustee will likely have to weigh in on the relief being requested by LCG and a trustee will likely be involved in proceedings involving the scope and extent of the estate's interests in LCG.

[5] The Debtor's opposition to the Stay Relief Motion, whereby the Debtor seeks a determination of his rights in LCG outside of the scope of the binding arbitration provision in LCG's operating agreement in and of itself also raises at least a nascent dispute between LCG members that is subject to such binding arbitration.

Contrary to the Vagos' contention, the Debtor has no involvement in the filing of the Motions and there is certainly no "conspiracy" between LCG and the Debtor to delay or defraud creditors, as the Vagos argue. Nor do the Vagos offer any evidence to suggest that this is remotely the case. First, the Debtor has *opposed* the Stay Relief Motion, and is therefore adverse to LCG.[6] Second, the Debtor does not manage LCG, nor did the Debtor have any involvement, input or say in LCG's decision to file the Motions, which were filed to address LCG's unenviable position of receiving conflicting demands from the Debtor and others, including Gestetner, for payments.

At bottom, the lone fact identified by the Vagos is the payment of a retainer by the Debtor to LCG's counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG") for matters unrelated to the Motions. While an attorney at LNBYG provided certain limited advice to the Debtor, LNBYG's representation of the Debtor was terminated pre-petition, the Debtor ultimately retained separate bankruptcy counsel, and the attorneys at LNBYG who represent LCG and who prepared the Motions had and have no involvement with any prior representation of the Debtor. Moreover, the payment to LNBYG that the Debtor disclosed in his Statement of Financial Affairs in connection with LNBYG's prior representation of the Debtor is wholly unrelated to LNBYG's representation of LCG, and the Debtor has not paid LNBYG in connection with any services LNBYG has provided to LCG.

**2. There Is An Actual, Bona Fide Dispute Regarding The Scope And Extent Of The Debtor's Interest In LCG.**

The Vagos contend "LCG fails to present evidence of a bona fide dispute." *See* Vago Opposition, p. 4, ll. 21-26. This contention is meritless. There is obviously a dispute between Debtor and Gestetner, and apparently others, including the Vagos, regarding the scope and extent of the Debtor's interests in LCG. Indeed, LCG provided documentary evidence of the dispute

---

[6] Additionally, the Vagos' accusation that the Payment Direction Motion constitutes an effort by the Debtor, who the Vagos suggest is somehow in cahoots with LCG, to defraud creditors is completely unfounded. As set forth in the Payment Direction Motion, LCG is requesting is authority and direction by the Court regarding to whom payment should be made in order to ensure there is complete transparency with respect to any payments by LCG to the estate.

5

between the Debtor and Gestetner, and the conflicting demands LCG has received from each. *See* Exhibits 2 – 7 to the Stay Relief Motion. Given such inconsistent demands and positions, and the presence of other creditors who may not agree with Gestetner's assertion, LCG determined that it is appropriate to seek relief from the automatic stay, or alternately, to ask for direction from this Court regarding where and to whom LCG should make payments that ordinarily LCG would make directly to the Debtor.

3. **The Disputes Regarding The Debtor's Interests In LCG Sufficiently Implicate The Arbitration Provision in LCG's Operating Agreement To Warrant Binding Arbitration Before the RCC.**

To the extent there is a dispute in respect to the Debtor's membership interests, such a dispute should be arbitrated pursuant to the RCC's commercial procedures. Pre-petition, both Gestetner and LCG sought to commence an arbitration before the RCC, consistent with LCG's Operating Agreement. *See* Exhibit 1 to the Stay Relief Motion, Section 12.1, and Exhibit 7 to the Vago Opposition. LCG's operating agreement requires a specialized tribunal, the RCC, to conduct binding arbitration of disputes pertaining to LCG. That provision requires in respect to any dispute "between the Members regarding this Agreement or any provision hereof, that dispute shall be resolved through a binding arbitration proceeding to be conducted in the State of California in accordance with the commercial arbitration rules of the [RCC]." *See* Exhibit 1 to the Stay Relief Motion, Section 12.1. The instant dispute involving LCG, the Debtor and Gestetner arises out of Gestetner's disputing the propriety of Klein's purported revocation directed to LCG (*see* Exhibit 8 to the Stay Relief Motion).

While Gestetner is not a member of LCG, LCG submits that this nevertheless implicates a potential dispute between LCG members that is required to be submitted by the Debtor to binding arbitration, to which Gestetner has indicated he will also submit. Indeed, whether and to what extent the Debtor has interests in LCG at this point, and whether and to what extent Gestetner is entitled to any rights pursuant to its acquisition of any interests from the Debtor, are issues that affect LCG's other member and the parties' respective rights and obligations under LCG's operating agreement. Moreover, even if the instant dispute is not subject to the dispute resolution

provisions of LCG's operating agreement requiring binding arbitration before the RCC, this Court should nevertheless grant stay relief so that the parties may request the RCC to conduct a binding arbitration.

### 4. The RCC Is An Appropriate Forum To Resolve Pending Disputes Pertaining to the Debtor's Interests in LCG.

There is no question that there is a dispute pertaining to the Debtor's rights and interests in and to LCG. The only question is where and how disputes pertaining to the scope and extent of the Debtor's interests in LCG should be adjudicated.

First, contrary to the Debtor's contentions, the issue of the scope and extent of the parties' respective rights in and to the Debtor's interests in LCG is a non-core issue. "Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'" *Sec. Farms v. Int'l Bd. Of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (*citing In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)). "[W]hile a claim arising from a post-petition contract regarding the property of the bankruptcy estate is a core proceeding, a claim arising from a pre-petition contract is a non-core proceeding even if the debtor is a party to the contract at issue." *See In re Tamalpais Bancorp*, 451 B.R. 6, 10–11 (N.D. Cal. 2011).

The Debtor's contention that "it is clear, in reviewing 28 U.S.C. § 157, that the determination of what is an asset of the Debtor's estate…is a core proceeding" is not correct. The Debtor is conflating a dispute regarding whether property of a debtor constitutes property of the bankruptcy estate pursuant to section 541 of the Bankruptcy Code with a dispute regarding the scope and extent of a debtor's property interest. A dispute between a debtor and a third party to determine whether or to what extent the debtor has an interest in an asset vis-à-vis a third party as of the petition date is not a core proceeding. *See In re Felice*, 480 B.R. 401, 423 (Bankr. D. Mass. 2012) ("Even if it is determined that Ernest's interest in the Family Trust is property of the estate, determining the extent of that interest remains a non-core matter. A dispute between the trustee and the debtor as to whether, upon the bankruptcy filing, a particular asset of the debtor became property of the estate is a core proceeding; but a dispute between the trustee and a third party to

1  determine whether (or to what extent) the debtor had an interest in that asset vis-a-vis the third
2  party as of the petition date is not a core proceeding.") Thus, the issue of the scope and extent of
3  the Debtor's interest in LCG under applicable nonbankruptcy law, and, specifically, the disputes
4  between the Debtor and Gestetner, which would exist irrespective of the intervening bankruptcy
5  case, are non-core matters.

6        Second, the RCC is well-equipped to arbitrate these issues, and its arbitration of these
7  issues will not conflict with either bankruptcy law or California law, and thus arbitration before it
8  is appropriate. Contrary to the Debtor's suggestion, there is no anomaly in such an approach.
9  Rather, such "[a]greements to resolve disputes before a beth din [i.e. rabbinical court] have been
10 enforced in this country's courts." *Dial 800, supra v. Fesbinder*, 118 Cal.App.4th 32, 46 (2004).
11 *See, also Blitz v. Beth Isaac Adas Israel Congregation*, 720 A.2d 912, 913, fn. 1 (Md. Ct. App.
12 1998) (same).

13       While Debtor posits that rabbincial arbitration before the RCC will be used to violate
14 California or bankruptcy law, (*see* Debtor Opposition, at p. 2), that assertion is a canard. This is
15 because the RCC, like all rabbinical tribunals, abides by the edict that "the law of the land is the
16 law." Ginnine Fried, "The Collision of Church and State: A Primer to Beth Din Arbitrarion and
17 the New York Secular Courts" 31 Fordham Urb. L.J. 633, 637 (2004, available at:
18 https://ir.lawnet.fordham.edu/ulj/vol31/iss2/8. *Cf. Meisels v. Uhr,* 79 N.Y.2d 526, 538 (1992)
19 ("because the decision of the lower courts in this case casts doubt on the validity of broad
20 arbitration agreements in general, and these particular agreements, which apparently are widely
21 used in Beth Din [i.e. rabbinical court] arbitrations, we consider it appropriate to reaffirm that
22 broad arbitration agreements are permissible.").

23       Third, the RCC is the logical choice for the parties since they self-identify as members of
24 the Orthodox Jewish faith. Due to this self-identification, they choose to abide by both Jewish
25 and secular legal principles. *See, e.g. Muller v. Wertzberger,* 972 N.Y.S.2d 144, 2013 WL
26 2460358, at *3 n. 1 (N.Y. Sup. Ct. 2013) (referencing Jewish law norms regarding the structuring
27 of loan agremnets). Indeed, the Debtor himself purports to so abide. *See* Doc 102-5, Exhibit 3,
28 Pt. 2, at 1 of 77 (Debtor testified how he purportedly sought rabbinic advice about how to interact

with the Vagos); Doc 102-7, Exhibit 5, at 3 of 3 (Debtor's purported notes from this consult). Yet, in stark contrast to his asserted fealty to Jewish law when testifying during the Vago trial, the Debtor now reverses course and now claims that Jewish law somehow poses a bar to adjudication of his LCG interests because it somehow conflicts with secular law. *E.g.* Debtor Opposition, at p. 2. Such a baseless change of position should be estopped. Indeed, as many authorites such as *Dial 800* and *Blitz*, cited above, recognize, arbitration before rabbinical tribunals is common in Orthodox Jewish communities throughout the United States and in no way conflicts with the law of the land.

In sum, allowing the RCC to conduct a binding arbitration of the scope and extent of the Debtor's and Gestetner's interest in LCG will result in complete resolution of the issue of who is entitled to any payments required to be made by LCG. Granting relief from the automatic stay will address the scope and extent of the Debtor's interests in LCG and clarify LCG's obligations under LCG's operating agreement and agreements between LCG, Gestetner and the Debtor and other claimants. None of this will interfere with the Debtor's bankruptcy case. To the contrary, it will clarify the parties' respective rights and the scope of the Debtor's interest in LCG.

**B.  To The Extent The Court Does Not Grant The Stay Relief Motion, The Court Should Provide Direction To LCG Regarding Where LCG Should Make Payments That Would Otherwise Be Paid To The Debtor.**

LCG takes no position regarding who should receive payments from LCG in light of the disputes between the Debtor and the various constituents in this case, including Gestetner. LCG simply seeks to avoid being embroiled in disputes regarding the direction of payments on account of the Debtor's membership interests in LCG, which should be resolved in arbitration. Altnernately, LCG seeks to ensure that any such payments are appropriately segregated and accounted for, especially in light of the serious allegations made against the Debtor by the Vagos, Menlos and the US Trustee, among other creditors. At present, the Vagos object to the payment of any funds to the Debtor, while the Debtor requests that funds be paid to him and be held "in a segregated Debtor-in-Possession bank account" which he will not use "until there is a determination as to who is entitled to the funds." *See* Debtor Response to Payment Direction

Motion, p. 2. Thus, in the event the Court does not allow relief from the stay to proceed with arbitration before the RCC, LCG requests direction from the Court regarding what LCG should do with any payments required to be made by LCG to the Debtor.

Additionally, if the Court is inclined to appoint a chapter 11 trustee, or convert this case to chapter 7, LCG would have no objection to entry of an order authorizing and directing LCG to make payments to the trustee with the use of any funds that are paid to the trustee being subject to a further Court order.

## III. CONCLUSION

For these reasons as well as those discussed in the Motions, this Court should enter an order lifting the automatic stay to allow for arbitration before the RCC, or, alternatively, as requested in the Payment Designation Motion, providing for where and to whom LCG should make certain payments that LCG may make to the Debtor pursuant to the Debtor's membership interests in LCG.

Dated: May 10, 2023

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By: /s/ Krikor J. Meshefejian
    RON BENDER
    KRIKOR J. MESHEFEJIAN
Attorneys for Life Capital Group, LLC

# DECLARATION OF JONATHAN POLTER

I, Jonathan Polter, declare as follows:

1. I am the manager of Life Capital Group, LLC ("LCG"). I have served in such capacity since approximately 2011. As LCG's manager, I manage the general business and affairs of LCG. I have personal knowledge of the following facts, and if called upon and sworn as a witness I could and would competently testify thereto.

2. LCG is a California limited liability company whose members include Leslie Klein (the "Debtor"). The Debtor owns a 50% membership interest in LCG. The Debtor is not the manager of LCG. LCG invests in life insurance policies, and pursuant to LCG's operating agreement, the Debtor may receive, from time to time, distributions from LCG based on the Debtor's membership interests in LCG.

3. LCG submits that it is necessary and appropriate for a determination of the parties' respective rights and interests in LCG, including where and to whom LCG should make any payments on account of the Debtor's membership interests in LCG, given that one or more creditors of the Debtor has asserted an entitlement to it, thereby implicitly demanding that LCG pay such creditor directly, instead of the Debtor, and given that such payments may be property of the Debtor's estate and subject to turnover to the estate.

4. The Debtor did not pay the attorney's fees for LCG.

5. The Debtor had no involvement with or input in, the Motions, and the Debtor does not manage or control LCG.

6. LCG filed the Motions to ensure that it is in compliance with LCG's arbitration provision and all applicable provisions of the Bankruptcy Code, a cautious approach which accords with very serious allegations that the Vagos themselves make against the Debtor.

7. LCG respectfully submits that the RCC should resolve the question of the scope and extent of the Debtor's interests in LCG, and that stay relief is appropriate in order to allow the RCC to do so.

8. LCG takes no position regarding who should receive payments from LCG in light of the disputes between the Debtor and the various constituents in this case, including Gestetner.

LCG simply seeks to avoid being embroiled in disputes regarding the direction of payments on account of the Debtor's membership interests in LCG, which should be resolved in arbitration. Alternately, LCG seeks to ensure that any such payments are appropriately segregated and accounted for, especially in light of the serious allegations made against the Debtor by the Vagos, Menlos and the U.S. Trustee, among others.

9. In the event the Court does not allow relief from the stay to proceed with arbitration before the RCC, LCG requests direction from the Court regarding what LCG should do with any payments required to be made by LCG to the Debtor.

10. Additionally, if the Court is inclined to appoint a chapter 11 trustee, or convert this case to chapter 7, LCG would have no objection to entry of an order authorizing and directing LCG to make payments to the trustee with the use of any funds that are paid to the trustee being subject to a further Court order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of May, 2023, at Oak Park, Michigan.



JONATHAN POLTER

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A true and correct copy of the foregoing document entitled (*specify*): **LIFE CAPITAL GROUP, LLC'S OMNIBUS REPLY TO OPPOSITIONS/RESPONSES TO  MOTIONS: (1) FOR RELIEF FROM THE AUTOMATIC STAY; AND, (2) FOR PAYMENT DIRECTION; REPLY DECLARATION OF JONATHAN POLTER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **May 10, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Reem J Bello**     rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Michael Jay Berger**     michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Greg P Campbell**     ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Theron S Covey**     tcovey@raslg.com, sferry@raslg.com
- **Dane W Exnowski**     dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
- **Robert P Goe**     kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Brandon J Iskander**     biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **Michael Jones**     michael.jones4@usdoj.gov
- **Ron Maroko**     ron.maroko@usdoj.gov
- **Krikor J Meshefejian**     kjm@lnbyg.com
- **Joshua L Scheer**     jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- **Mark M Sharf (TR)**     mark@sharflaw.com, C188@ecfcbis.com;sharf1000@gmail.com;2180473420@filings.docketbird.com
- **Alan G Tippie**     Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **United States Trustee (LA)**     ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**     mwachtell@buchalter.com
- **John P. Ward**     jward@attleseystorm.com, ezhang@attleseystorm.com
- **Clarisse Young**     youngshumaker@smcounsel.com, levern@smcounsel.com
- **Paul P Young**     paul@cym.law, jaclyn@cym.law

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) **May 10, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **May 10, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

**SERVED BY OVERNIGHT MAIL,**
Honorable Sandra R. Klein
United States Bankruptcy Court
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 10, 2023 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**