1  STEVEN M. MAYER, ESQ. (Bar No. 170548)
   MAYER LAW GROUP, A.P.C.
2  16133 Ventura Blvd., PH-A
3  Encino, California 91436
   Telephone: (818) 528-2858
4  Facsimile: (818) 514-2728
   smayer@MayerLawLA.com
5

6  NATHAN TALEI, ESQ. (Bar No. 281498)
   OLDMAN, SALLUS & GOLD, L.L.P.
7  16133 Ventura Blvd., PH-A
   Encino, California 91436
8  Telephone: (818) 986-8080
   Facsimile: (818) 789-0947
9  ntalei@oclslaw.com

10
   Attorneys for Plaintiff JEFFREY SIEGEL,
11 Successor Trustee, Scott Trust Agreement
   dated December 24, 1992
12

13            **UNITED STATES BANKRUPTCY COURT**
14            **CENTRAL DISTRICT OF CALIFORNIA**
              **(LOS ANGELES DIVISION)**
15

16

17 In re:                                    ) Case No. 2:23-bk-10990-SK
                                              )
18 LESLIE KLEIN,                              )  Chapter 11
                                              )
19 _____ Debtor. _____            ) Adv. Proc. No. _____
                                              )
20 JEFFREY SIEGEL, SUCCESSOR                  ) **COMPLAINT TO DENY**
21 TRUSTEE, SCOTT TRUST AGREEMENT             ) **DISCHARGEABILITY OF DEBT AND**
   DATED DECEMBER 24, 1992                    ) **DENIAL OF DISCHARGE**
22                                            )
              Plaintiff                       ) **[11 U.S.C. §§523(a)(2), 523(a)(4), and**
23                                            ) **523(a)(6)]**
                                              )
24      v.                                    ) Status Conference
                                              ) To be set by court
25 LESLIE KLEIN,                              )
                                              )
26            Defendant                       )
                                              )
27 _____        )

28

                              1
                        COMPLAINT

Jeffrey Siegel, Successor Trustee of the Scott Trust Agreement dated December 24, 1992 ("Siegel"), the Plaintiff in the instant adversary proceeding and a scheduled creditor in the underlying Chapter 11 case, respectfully alleges as follows:

## STATEMENT OF CONSENT

1.      Pursuant to Rule 7008(a) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy 7008-1, Siegel consents "to entry of final orders or judgment by the bankruptcy court."

## JURISDICTION AND VENUE

2.      On February 23, 2023, Defendant/Debtor Leslie Klein ("Klein") filed a voluntary petition under Chapter 11, Title 11 of the United States Code, in the United States Bankruptcy Court, Central District of California, pending in the Los Angeles Division, as case number 2:23-bk-10990-SK.

3.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§1334(b) and 1334(d), in that it arises in or is related to the above-captioned bankruptcy case pending under Chapter 11 of Title 11 of the United States Code.

4.      Siegel is scheduled as a creditor in Klein's bankruptcy case.

5.      This action is a "core proceeding" which may be referred to the United States Bankruptcy Court pursuant to 28 U.S.C. §157(b), in that it is a proceeding to determine the dischargeability of a debt under 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523(a)(6).

6.      Venue of this action is proper under 28 U.S.C. §1409 in that it arises in or relates to the above-captioned case under Title 11 of the United States Code, which case is currently pending in the Central District of California, Los Angeles Division.

## INTRODUCTORY ALLEGATIONS

7.      This Complaint for denial of a discharge of indebtedness arises from allegations of intentional and willful financial fraud and misconduct, and breach of fiduciary duties, committed by

Klein, to the harm, loss, and detriment of Siegel, in his capacity as Successor Trustee of the Scott Trust Agreement dated December 24, 1992 ("the Trust"), in an amount not less than $2,670,000.

8.      The allegations herein are the subject of a pending probate court accounting trial, in the Los Angeles Superior Court (sometimes referred to herein as the "Probate Court"), arising from Klein's accountings of funds before the Probate Court. The damages stemming from Klein's conduct are memorialized by Siegel's petition to surcharge Klein for the financial losses suffered by Klein's conduct. Trial on the accountings and petition for surcharge commenced on February 1, 2023. Conclusion of the trial was stayed by Klein's filing of the underlying bankruptcy case on February 23, 2023.

## **THE PARTIES**

9.      Siegel is a resident of Los Angeles County, California, and a private professional fiduciary licensed by the California Department of Consumer Affairs, Professional Fiduciaries Bureau.

10.     Siegel was appointed as Successor Trustee of the Trust by the Order dated May 20, 2016, entered in the *Conservatorship of the Person and Estate of Hubert Scott*, having Los Angeles Superior Court Case Number BP161682. Hubert Scott is referred to herein as "Mr. Scott." Mr. Scott passed away on December 4, 2016.

11.     Siegel is informed and believes that Klein is, and at all relevant times was, a resident of Los Angeles County, California.

12.     Siegel is further informed and believes that Klein is, and at all relevant times was, a licensed member of the California State Bar (State Bar Number 50908), and the California Board of Accountancy, and was Mr. Scott's lawyer, accountant, financial and investment advisor.

///

///

## GENERAL ALLEGATIONS

**Siegel's Appointment as Successor Trustee; Klein as Predecessor Trustee**

13.    Siegel is the former Conservator of the Person and Estate Hubert Scott under Los Angeles Superior Court Case Number BP161682, by Orders dated June 16, 2015 (temporary conservator) and April 19, 2016 (permanent conservator). Siegel was appointed as Successor Trustee of the Trust by Order dated May 20, 2016, entered in the conservatorship matter, BP161682. Siegel was later appointed as the permanent Successor Trustee pursuant to an Order for Substituted Judgment, entered on October 7, 2016 in BP161682. Around this time, Leslie Klein was ordered to file a supplemental accounting in the conservatorship, BP161682. Instead of doing so, Klein filed an accounting in a new trust matter, which was assigned Los Angeles Superior Court Case Number BP172432. Thereafter, the Trust was supervised under Los Angeles Superior Court Case Number BP172432. The BP161682 and BP172432 cases have been ordered related and are collectively referred to as "the Probate Court Cases."

14.    Siegel is informed and believes, and thereon alleges, that at an exact date to be determined, but which is believed to pre-date the acts complained of herein, Klein became trustee of the Trust.

15.    Klein drafted an amendment to the Trust that appointed him as trustee. Additionally, Klein sent a letter to Siegel's counsel on December 7, 2015, representing that he was the trustee of the Trust. In either instance, as a trustee of the Trust and its assets, Klein, at all relevant times, was a fiduciary of the Trust assets and had and owed fiduciary duties Mr. Scott and the Trust beneficiaries, which rights and claims Siegel has standing to assert herein.

16.    Siegel is also informed and believes that Klein is and/or was the trustee of at least 24 other irrevocable trusts as discussed in the unpublished Opinion by the Court of Appeal of California, Second Appellate District, Case No. B281058.

**Klein's Accountings in the Probate Court Cases; Siegel's Petition for Surcharge**

17.    A dispute arose in the Probate Court Cases concerning Klein's accountings therein.

18.    At the direction of the Probate Court, Siegel filed a Petition to Surcharge Klein (the "Petition for Surcharge"), in LASC Case No. BP172423, to memorialize the damages available based on the objections to Klein's various accountings in an amount equal to all funds Klein received from Mr. Scott. The Petition for Surcharge included all of the funds Klein received from Mr. Scott.

19.    On information and belief, Siegel alleges that the amount of Klein's debt (sometimes referred to herein as the amount sought to be surcharged), is not less than $2,670,000.00, along with interest, double damages, and attorneys' fees.

**Calculation of the Base Amount of the Debt that is Subject of Siegel's Petition for Surcharge**

20.    The $2,670,000.00 base amount of the debt is equal to four alleged investments that Klein made using Mr. Scott's Trust funds:

    (a) Genevieve Page Irrevocable Life Insurance Trust ($625,000.00).

        i.    August 15, 2012, $500,000.00 at 8% interest.

        ii.    September 14, 2014, $125,000.00 at 8% interest

    (b) Stuart Yorkshire Irrevocable Life Insurance Trust ($625,000.00).

        i.    June 1, 2011, $500,000.00 at 8% interest.

        ii.    September 14, 2014, $125,000.00 at 8% interest.

    (c) Rosalia Feldman Irrevocable Life Insurance Trust ($1,020,000.00).

        i.    June 11, 2011, $750,000.00 at 8% interest.

        ii.    January 1, 2014, $270,000.00 at 8% interest.

    (d) Bay Area Development Company ($400,000.00).

        i.    June 1, 2011, $300,000.00 on 730 N. Laurel Avenue, Los Angeles, California 90046 ("730 N. Laurel Avenue"), which was due upon sale.

ii.   September 14, 2014, $100,000.00 on 730 N. Laurel Avenue, which was due upon sale.

iii.   These two promissory notes were allegedly "transferred" by way of a Promissory Note dated February 1, 2015, in the amount of $400,000.00 on 161 N. Poinsettia Place, Los Angeles, California 90036 ("161 N. Poinsettia Place"), which is due upon sale.

21.    Klein admits that all of the above funds were obtained by him from the Trust.

**Statutory Additions to the Base Amount of the Debt**

22.    In addition, Siegel seeks and is entitled to recover as part of Klein's debt, the following:

(a)    Prejudgment interest at the maximum rate allowed by law on all funds received by Klein from Mr. Scott or the Trust, calculated from the time that Klein received any sum from Mr. Scott or the Trust to the time of judgment, pursuant to Cal. Probate Code ("Probate Code") §16441 (subsection (a)(1) sets the rate of interest on damages incurred as a result of breach of trust as the legal rate of interest applicable to judgments); and

(b)    An award of double damages, costs, and attorneys' fees for all litigation related to Klein's accountings, pursuant to Probate Code §859, because Klein's taking of Trust assets was wrongful and in bad faith. Worse yet, Klein has refused to turn over assets despite two Probate Court orders requiring that he do so. Alternatively, Siegel requests that the Court issue an award of attorneys' fees and costs for all litigation related to Klein's accountings pursuant to Probate Code section 17211, because Klein was a trustee of the Trust.

**Klein's Conservatorship and Trust Accountings in the Probate Court Cases**

23.    On May 20, 2015, the Probate Court ordered Klein to file an accounting by July 15, 2015, of all assets belonging to Mr. Scott for the period of January 1, 2005, through May 31, 2015.

24.    Klein did not file an accounting in time; consequently, the Probate Court ordered Klein to file a proper accounting by no later than September 18, 2015.

25.    On September 18, 2015, Klein filed an "Accounting of Leslie Klein RE: Assets" under LASC Case No. BP161682 (the "Conservatorship Accounting").

26.    Shortly thereafter, the Probate Court ordered Klein to file a supplement ("Supplement") by January 21, 2016, because of material deficiencies therein.

27.    The Probate Court further ordered (a) Klein to turn over all assets of Mr. Scott to Siegel, (b) that Klein shall have no further contact with Mr. Scott or Mrs. Scott, and (c) continued the matter to February 4, 2016.

28.    Klein's Supplement was not submitted to the Court until January 25, 2015.

29.    Despite having more than six (6) months to file an accounting, the Supplement did not provide the information required by Probate Code §1060, *et seq*., and only indicated that Klein would present "correcting schedules" and "disclosures required by the probate code as soon as possible."

30.    The Supplement represented that Klein obtained promissory notes for Mr. Scott, as trustee of the Trust, against various life insurance policies of which Klein was the trustee, as well as a promissory note for the development of a piece of property that was owned by a company of which Klein is believed to have been the incorporator and president, Bay Area Development Company.

31.    During the February 4, 2016 hearing, among other things, Klein was ordered to file a complete accounting by no later than March 25, 2016.

32.    On or about March 25, 2016, Klein filed the "Accounting of Investments Made by Hubert Scott and Report of Leslie Klein" (the "Trust Accounting"); however, instead of filing it in the conservatorship matter as ordered by the Probate Court, Klein opened a new matter, which was assigned LASC Case No. BP172432.

**Inconsistencies Between Accountings**

33.    Klein's accountings contain conflicting representations.

34.    For example, Klein first claimed that he invested $2,420,000.00 on three life insurance policies (Genevieve Page, Stuart Yorkshire, and Rosalie Feldman) and one property (730 N. Laurel Avenue). Klein later represented that Mr. Scott lent him $2,050,000.00 on the same three life insurance policies (Genevieve Page, Stuart Yorkshire, and Rosalie Feldman) and two properties (730 N. Laurel Avenue and 161 N. Poinsettia Place). Then, Klein represented that he was holding $2,670,000.00 in promissory notes on the same three life insurance policies (Genevieve Page, Stuart Yorkshire, and Rosalie Feldman) but that the two notes on 730 N. Laurel Avenue) were converted to the single note on the Poinsettia Property.

35.    Klein also represented that some of the funds were available, but with only $31,277.78 in interest, which amounts to about 1% per year, not 8% as indicated in the subject promissory notes. In addition, the dates changed from Klein's first accounting to the second.

36.    Moreover, the Trust Accounting is the first accounting that Klein mentioned anything about LED deals in China or life insurance policies on two different individuals—Morris Gluck and Yefim Zayonts.

37.    Further, all three versions of Klein's accountings conflict with documents that Siegel obtained directly before the August 30, 2017 deposition of Mrs. Scott. These documents include, among other things, letters that Klein sent to Mr. Scott representing that he made various investments with Mr. Scott's money, none of which were reflected in the Conservatorship accounting.

38.    Siegel believes that these documents were sent at a time when Mr. Scott was suffering from dementia and, thus, incompetent.

39.    Siegel believes that these documents are part of a series of conduct by Klein

continuing through present and relate to transactions that were only revealed in the Conservatorship and Trust Accountings.

40. These documents show that Mr. Scott believed, and Klein represented, that Trust funds were placed with two different policies (on the lives of Morris Gluck and Yefim Zayonts) and in Daktronics LED, that Klein had already received $2,860,901.50 by August 2011, and that Klein agreed to pay 8% within three years (or by 2014).

**Impropriety of the Alleged Investments and Non-Recourse Promissory Notes**

41. Siegel filed objections to the Trust Accounting on May 31, 2016. Therein, Siegel discussed the impropriety and unsuitability of the aforementioned promissory notes because they do not afford any security.

42. The promissory notes state that the borrower will be in default if it fails to pay any additional premiums or adjustments to premiums required on the policy, notwithstanding payment of such amounts by the holder.

43. More specifically, the promissory notes provide that upon default, the holder of the note may accelerate the due date of repayment. However, the notes' "Non-Recourse" provision provides that, "the Borrower's liability to the Holder under this Note shall be limited exclusively to the extent of the lender's security interest in the Policy or Policies, or proceeds thereof. If any proceeds shall be brought to enforce the provisions of this Note, the Holder shall have recourse hereunder against the Borrower only to the extent of Borrower's interest in the Policy or Policies."

44. Although Mr. Scott never signed the promissory notes, and thus the following provision would not be enforceable against Mr. Scott, Klein even attempts to escape personal liability by including that "[n]either Borrower nor any of its trustees, fiduciaries, or beneficiaries shall be personally liable or otherwise have any obligation hereunder." As a result, there is no requirement that Klein actually pay into any of the life insurance policies.

45.     Should Klein have merely taken Mr. Scott's funds and never paid into the life insurance policies, if these notes were held to be valid (which they are not), Mr. Scott would have no chance of recovery because he would be limited to the extent of Klein's interest in the policies, which could be nothing.

46.     The promissory notes do not have any security or method of foreclosure.

47.     Further, Klein does not provide a loan agreement for any single life insurance policy, as is customary practice.

48.     There are no statements concerning the mechanics of these deals or the individuals involved.

49.     There are no indications that the persons involved, such as Stuart Yorkshire or Rosalia Feldman, are (or were) alive, when they were born, why they decided to enter into these agreements, or even if they know about or decided to enter into these agreements.

50.     Klein also omitted a key element of his capacity in these deals—his commission structure or payment therefrom.

51.     With respect to the real properties, Klein used the same exact promissory notes for the real properties that he used on the life insurance policies. As such, there are references to "life insurance policies" that are nonsensical.

52.     Although each promissory note provides that payment is due upon the sale of the subject property, the borrower does not confirm that it is the owner of the property and is not actually obligated to sell the property.

53.     The promissory notes provide they are each secured by a "continuing first priority security interest" in the respective borrower's life insurance policies. However, there are no separate collateral assignment of life insurance agreements securing the notes. Nor are the borrowers actually required to pay into the property at all.

54.    In other words, a borrower could hold onto the property indefinitely (if the borrower owns the property) and would never have to repay the note. There are no "premiums" to be paid on a piece of property, so the default provisions become worthless.

55.    Additionally, the investments themselves were entirely improper. Klein alleged in the Probate Court Cases that Mr. Scott wanted to invest in life insurance policies on the lives of older individuals; however, Mr. Scott himself was an older individual. It would have been unsuitable for a man of Mr. Scott's age to put his entire fortune out of reach and wager on the lives of other people.

56.    As represented by Klein in his Trust Accounting, the promissory notes on 730 N. Laurel Avenue were "transferred" to 161 N. Poinsettia Place because the tenants decided to move out. However, shortly after "transferring" the notes, Klein's Bay Area Development Company sold 730 N. Laurel Avenue. As a result, the note on 161 N. Poinsettia Place is still pending and Klein did not pay the Trust as he should have under the 730 N. Laurel Avenue notes.

57.    Klein has admitted that neither Mr. Scott nor Siegel, in any representative capacity, ever signed any document allowing Klein to "transfer" the notes.

58.    Further, the only life insurance trust to have paid out is the Genevieve Page policy, which should have generated 8% interest. Klein's Trust Accounting, however, alleges that only $31,277.78 in interest was available, which amounts to about 1% per year.

**Bad Faith Opposition by Respondent**

59.    As a result of Klein's conduct, Siegel was forced to incur significant legal fees to litigate against Klein's accountings and uncover his dealings.

60.    Siegel believes that Klein's opposition to the objections to accountings and the opposition to the Petition to Surcharge were in bad faith because each of Klein's accountings conflicts with the next, the accountings do not comport with documents that Mr. Scott and Klein

1  sent each other, and Klein even attempted to thwart the most basic of written discovery that

2  attempted to verify any of his claims.

3       61.    For example, Klein objected to written discovery by asserting that he was not a party

4  for the purposes of discovery. Despite a Probate Court order finding that he is a party, Klein still

5  referred to himself as a "non-party." Further, although Klein was ordered to turn over funds from

6  the Genevieve Page policy forthwith, he post-dated the checks and had insufficient funds in his

7  account, thereby both violating the Probate Court's order and contradicting his claim that he had the

8
9  money.

**Orders to Turn Over Assets**

10

11       62.    The Probate Court ordered Klein to turn over all assets that belong to Mr. Scott, along

12  with all documents related to the same, to Siegel forthwith, including on December 17, 2015, in

13  BP161682 (Order dated January 22, 2016), and April 8, 2016, in BP161682 (Order dated May 20,

14  2016). Despite these orders, Siegel believes Klein still holds on to substantial funds of the Trust.

15

**Breaches of Fiduciary Duties**

16

17       63.    Siegel is informed and believes that Mr. Scott met Klein through a marketing panel

18  program presented by Klein at which Klein discussed estate planning issues and represented himself

19  as estate planning and financial planning expert, whose target audience were the elderly and

20  religious communities. After that panel, Klein, through his representations of being an expert and

21  that he would achieve for Mr. Scott an extremely high rate of return, convinced Mr. Scott to let him

22  invest his monies.

23

24       64.    After receiving Mr. Scott's funds, Klein sent periodic letters and statements to Mr.

25  Scott representing that he had made safe and prudent investments with Mr. Scott's funds and was

26  pursuing others (such as the investments in the Gluck and Zayonts life insurance policies and LED

27  deals in China mentioned above).

28

65.     Through these representations, and Mr. Scott's reliance thereon, Klein was able to obtain the initial funds and ongoing funds from Mr. Scott and the Trust.

66.     Siegel believes that Klein was either a trustee pursuant to the sixth amendment to the Trust or through his actions alleged herein, he took it upon himself to act as trustee with respect to Trust assets entrusted to him.

67.     As such, Siegel believes that Klein owed fiduciary duties to Mr. Scott, individually and as trustee of the Trust before Klein, and the Trust beneficiaries, and that Klein breached his various fiduciary duties, including: (1) the duty of loyalty by wrongfully taking Trust assets for his own benefit and placing said funds into trusts and entities which he operates and in which he has an interest; (2) the duty to avoid conflicts of interest by using Trust assets for his own profits and taking part in transactions that are adverse to Trust beneficiaries; (3) the duty to preserve trust property by not taking reasonable steps to preserve property, and in fact, dissipating Trust assets for his own benefit; (4) the duty to make trust property productive; (5) the duty to keep trust property separate and identified—although Klein obtained Trust funds, Klein claims that he does not have a ledger of accounts and that the accounts into which he deposited Trust funds also hold monies from numerous other clients; and (6) violating a trustee's standard of care when investing and managing trust assets.

### FIRST CLAIM FOR RELIEF
### (11 U.S.C. §523(A)(2)(a) - (Fraud, False Pretenses, False Representations))

68.     Siegel realleges and incorporates by reference Paragraphs 1 through 67, inclusive, as though fully set forth herein.

69.     11 U.S.C. §523(a)(2)(A) excepts from excepts from discharge debts resulting form from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

70.     Mr. Scott entrusted his lawyer, CPA, and financial and investment advisor Klein with the Trust assets and with the responsibility to ultimately manage and account for those assets, taking

special care to make sound and sensible decisions, and to act with the utmost good faith, trust, confidence, and candor in his dealing for the benefit of himself and the Trust beneficiaries.

71.    In committing the acts alleged hereinabove, including, without limitation, Klein's using, dissipating, and taking Trust assets for his own benefit, placing said funds into trusts and entities which he operates and in which he has an interest, and taking part in transactions, many of which were not adequately document, that were adverse to the Trust beneficiaries, Klein intentionally engaged in a pattern of conduct and self-dealing perpetrated through his material, intentional misrepresentations, deceit and/or concealment of material facts with the intention of depriving Mr. Scott, individually and as the initial trustee of the Trust, and the Trust beneficiaries of their money, property and legal rights. Consequently, Klein financially benefitted from his conduct to the detriment of Mr. Klein, individually and as trustee of the Trust before Klein, and the Trust beneficiaries.

72.    Klein made these misrepresentations, omissions, and failures to disclose knowing they were false when made, and with the intent to deceive and defraud the Trust Parties.

73.    Mr. Scott reasonably and justifiably relied upon Klein's multiple, intentional misrepresentations and omissions to the detriment of himself, individually and as trustee of the Trust before Klein, and the Trust beneficiaries.

74.    In committing the acts alleged hereinabove, Klein incurred a debt to Siegel, in his capacity as Successor Trustee of the Trust, through his commission of actual fraud and, as also alleged above, likewise through false pretenses and false representations.

75.    11 U.S.C. §523(a)(2)(A) provides that money, property, or services obtain by fraud or false pretenses is not dischargeable. Klein's debt to Siegel is one for money, property, or services obtained by false pretenses, false representations, or actual fraud, and is thus excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

COMPLAINT

76.    As a direct and proximate result of the foregoing, Siegel has suffered damages in an amount not fully ascertained but believed to be in excess of $2,670,000.00, which should be exempted from discharge and deemed nondischargeable in Klein's bankruptcy case.

77.    In committing the acts alleged hereinabove, Klein acted willfully, maliciously, and with deliberate intent to deceive, and because thereof, Siegel is entitled to an award of punitive and exemplary damages in an amount to be determined at time of trial or judgment, which amount should also be deemed nondischargeable.

<u>**SECOND CLAIM FOR RELIEF**</u>
**(11 U.S.C. §523(A)(4) - (Fraud or Defalcation in a Fiduciary Capacity))**

81.    Siegel realleges and incorporates by reference Paragraphs 1 through 67, inclusive, as though fully set forth herein.

82.    11 U.S.C. §523(a)(4) excepts from discharge debts resulting from "fraud or defalcation while acting in a fiduciary capacity."

83.    At all relevant times, Klein was acting as a fiduciary on behalf of the Trust beneficiaries.

84.    The Trust is an express trust, which was imposed or created prior to the wrongdoing by Klein alleged herein. As such, a fiduciary relationship between Klein and Siegel as Successor Trustee of the Trust (who as the Probate Court-appointed Successor Trustee is the representative of the Trust and its beneficiaries), arises from an express trust.

85.    A fiduciary relationship between Klein and Siegel as Successor Trustee also arises from a technical trust arising under California law. The technical trust arises from the fiduciary nature of Klein's services, including legal, financial, and accounting services, rendered by Klein to, for, and/or on behalf of Mr. Scott, individually and as trustee of the Trust before Klein, and the Trust beneficiaries, by virtue of Klein's duties of management, control, and disclosure in rendering his services.

86.    Either as trustee of the Trust or through a technical trust arising by operation of law, Klein was a fiduciary, and, in engaging in the conduct alleged hereinabove, was acting in a fiduciary capacity with and having such fiduciary duties as, but not limited to, taking special care to make sound and sensible decisions, and to act with the utmost good faith, trust, confidence, and candor in the best interests of Mr. Scott and the Trust beneficiaries.

87.    Siegel is informed and believes and thereon alleges that Klein breached his various fiduciary duties to Mr. Scott and the Trust beneficiaries, when he engaged in the following acts among others: (1) wrongfully taking Trust assets for his own benefit and placing said funds into trusts and entities which he operates and in which he has an interest; (2) using Trust assets for his own profits and taking part in transactions that are adverse to Trust beneficiaries; (3) not taking reasonable steps to preserve property, and in fact, dissipating Trust assets for his own benefit; (4) not making trust property productive; (5) not keeping trust property separate and identified— although Klein obtained Trust funds, Klein claims that he does not have a ledger of accounts and that the accounts into which he deposited Trust funds also hold monies from numerous other clients; and (6) violating a trustee's standard of care when investing and managing trust assets.

88.    The manner in which Klein breached his fiduciary duties was through fraudulent conduct, as it was conduct consisting of material, intentional misrepresentations, deceit and/or concealment of material facts known to Klein with the intention of depriving the Trust of its money, property and legal rights to the detriment of the Trust beneficiaries.

89.    Further, when Klein converted Mr. Scott's and the Trusts funds for his personal use and benefit, he defalcated in his role as a fiduciary.

90.    By engaging in the conduct alleged hereinabove, Klein also committed one or more acts of defalcation in that his actions constituted a misappropriation of trust funds held in a fiduciary capacity.

91.     Klein's acts of defalcation involved bad faith, moral turpitude or other immoral conduct, which conduct was intentionally improper, and in conscious disregard of the substantial and unjustifiable risk of injury and harm to Mr. Scott and the Trust beneficiaries.

92.     Klein's debt to Siegel arises from fraud or defalcation while acting in a fiduciary capacity, and is thus excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

93.     As a direct and proximate result of the foregoing, Siegel has suffered damages in an amount not fully ascertained but believed to be in excess of $2,670,000.00, which should be exempted from discharge in Klein's bankruptcy case.

94.     In committing the acts alleged hereinabove, Klein acted willfully, maliciously, and with deliberate intent to deceive Mr. Scott and the Trust beneficiaries, and because thereof, Siegel is entitled to an award of punitive and exemplary damages in an amount to be determined at time of trial or judgment, which amount should also be deemed nondischargeable.

### THIRD CLAIM FOR RELIEF
### (11 U.S.C. §523(A)(4) - (Embezzlement))

95.     Siegel realleges and incorporates by reference Paragraphs 1 through 67, inclusive, as though fully set forth herein.

96.     11 U.S.C. §523(a)(4) excepts from discharge debts resulting from "embezzlement."

97.     Klein fraudulently deprived Mr. Scott and the Trust of the money entrusted to him as Mr. Scott's and the Trust's lawyer, accountant, and investment and financial advisor. While in possession and/or control of the Mr. Scott's and the Trust's money, and in making the investments and expenditures alleged herein, Klein appropriated the Trust assets to a use other than which it they intended, namely by taking Trust assets for his own benefit and placing said funds into trusts and entities which he operates and in which he has an interest, to the detriment of Mr. Scott and the Trust beneficiaries. As a result of Klein's conduct, Klein deprived the Trust of its assets, and effectively became the owner of those assets.

98.     As alleged hereinabove, the Probate Court has ordered Klein to turn over all assets that belong to Mr. Scott, along with all documents related to the same, to Siegel forthwith, including on December 17, 2015, in BP161682 (Order dated January 22, 2016), and April 8, 2016, in BP161682 (Order dated May 20, 2016).  Despite these orders, Siegel believes Klein still holds on to substantial funds of the Trust through the various alleged investments.

99.     When Klein appropriated and converted the Trust funds for his personal use and benefit, they were used for a purpose other than for which Klein was entrusted with them.

100.    In committing the hereinabove described acts with the intent to deprive the Trust of its assts, Klein's debt to Siegel as Successor Trustee constitutes embezzlement in the context of nondischargeability of debts and is thus excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

101.    As a direct and proximate result of the foregoing, Siegel has suffered damages in an amount not fully ascertained, in an amount to be ascertained and determined at the time of trial or judgment, which should be exempted from discharge and deemed nondischargeable in Klein's bankruptcy case.

102.    In committing the acts alleged hereinabove, Klein acted willfully, maliciously, and with deliberate intent to deceive Mr. Scott, individually and as trustee of the Trust before Klein, and the Trust beneficiaries, and because thereof, Siegel is entitled to an award of punitive and exemplary damages in an amount to be determined at time of trial or judgment, which amount should also be deemed nondischargeable.

## FOURTH CLAIM FOR RELIEF
### (11 U.S.C. §523(A)(4) - (Larceny))

103.    Siegel realleges and incorporates by reference Paragraphs 1 through 67, inclusive, as though fully set forth herein.

104.    11 U.S.C. §523(a)(4) excepts from discharge debts resulting from "larceny."

105.    In committing the acts alleged hereinabove, Klein's access to, taking, and misappropriation of Mr. Scott's and the Trust's funds through a series of material, intentional misrepresentations, deceit and/or concealment of material facts, was unauthorized, without consent, fraudulent, and unlawful.

106.    Klein acted with the intent to gain access to the funds to permanently deprive Mr. Scott, individually and as trustee of the Trust before Klein, and the Trust beneficiaries of the possession, use and benefit of their funds and other property. Consequently, Klein's debt to Siegel as Successor Trustee constitutes larceny in the context of nondischargeability of debts and is thus excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

107.    As a direct and proximate result of the foregoing, Siegel has suffered damages in an amount not fully ascertained, in an amount to be ascertained and determined at the time of trial or judgment, which should be exempted from discharge and deemed nondischargeable in Klein's bankruptcy case.

108.    In committing the acts alleged hereinabove, Klein acted willfully, maliciously, and with deliberate intent to deceive Mr. Scott, individually and as trustee of the Trust before Klein, and the Trust beneficiaries, and because thereof, Siegel is entitled to an award of punitive and exemplary damages in an amount to be determined at time of trial or judgment, which amount should also be deemed nondischargeable.

### FIFTH CLAIM FOR RELIEF
#### (11 U.S.C. §523(A)(6) - (Willful and Malicious Injury))

109.    Siegel realleges and incorporates by reference Paragraphs 1 through 67, inclusive, as if set forth in full herein.

110.    Pursuant to 11 U.S.C. §523(a)(6), excepts from discharge debts "for willful and malicious injury by the debtor to another entity or the property of another entity."

111.    Among other things, Klein's acts of: (1) wrongfully taking Trust assets for his own benefit and placing said funds into trusts and entities which he operates and in which he has an interest; (2) using Trust assets for his own profits and taking part in transactions that are adverse to Trust beneficiaries; (3) not taking reasonable steps to preserve property, and in fact, dissipating Trust assets for his own benefit; (4) not making trust property productive; (5) not keeping trust property separate and identified—although Klein obtained Trust funds, Klein claims that he does not have a ledger of accounts and that the accounts into which he deposited Trust funds also hold monies from numerous other clients; and (6) violating a trustee's standard of care when investing and managing trust assets, in breach of his fiduciaries duties, establish a pattern or practice of willful and malicious injury actionable under 11 U.S.C. §523(a)(6).

112.    The aforementioned acts and the other acts alleged herein constitute willful and malicious injury to Mr. Scott, individually and as trustee of the Trust before Klein, and the Trust beneficiaries, sufficient to establish a non-dischargeable debt under 11 U.S.C. §523(a)(6).

113.    As a direct and proximate result of the foregoing, Siegel as Successor Trustee has suffered damages in an amount not fully ascertained but believed to be in excess of $2,670,000.00, which should be exempted from discharge in Klein's bankruptcy case.

114.    In committing the acts alleged hereinabove, Klein acted willfully, maliciously, and with deliberate intent to deceive Mr. Scott, individually and as trustee of the Trust before Klein, and the Trust beneficiaries, and because thereof, Siegel is entitled to an award of punitive and exemplary damages in an amount to be determined at time of trial or judgment, which should also be deemed nondischargeable.

WHEREFORE, Plaintiff prays for judgment against Klein as follows:

1.    For entry of a judgment that the entire debt owed by Klein to Siegel as Successor Trustee of the Trust, in an amount to be proven at time or trial or judgment, but which is believed

1    to be not less than $2,670,000, is non-dischargeable pursuant to 11 U.S.C. §523(a)(2), 523(a)(4),

2    and §523(a)(6);

3        2.    For inclusion in the judgment a directive that Klein pay as a surcharge to the Trust

4    the full amount of the judgment;

5        3.    For punitive and exemplary damages;

6        4.    For attorneys' fees and costs;

7        5.    For costs of suit; and

8        6.    For such other relief as the Court deems just and proper.

9

10   Dated: _May 12_, 2023        MAYER LAW GROUP, A.P.C.

11                                By: _____

12                                Steven M. Mayer, Esq.
                                  Attorney for Jeffrey Siegel, Successor Trustee,
13                                Scott Trust Agreement dated December 24, 1992

14
                                  and
15
                                  OLDMAN, SALLUS & GOLD, L.L.P.
16
                                  By: _____
17
                                  Nathan Talei, Esq.
18                                Attorney for Jeffrey Siegel, Successor Trustee,
                                  Scott Trust Agreement dated December 24, 1992
19

20

21

22

23

24

25

26

27

28

B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>**Jeffrey Siegel, Successor Trustee, Scott Trust<br>Agreement dated December 24, 1992** | DEFENDANTS<br>**Leslie Klein** |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>**Steven M. Mayer, Esq. Mayer Law Group, A.P.C.<br>16133 Ventura Blvd., PH-A, Encino, CA 91436-2447<br>(818) 528-2858; and<br>Nathan Talie, Esq., Oldman, Sallus & Gold, L.L.P.<br>16133 Ventura Blvd., PH-A, Encino, CA 91436<br>(818) 986-8080** | ATTORNEYS (If Known)<br>**Michael Jay Berger, Esq./Law Offices of Michael Jay Berger<br>9454 Wilshire Blvd., 6th Fl, Beverly Hills, CA 90212** |
|---|---|

| PARTY (Check One Box Only)<br>[ ] Debtor    [ ] U.S. Trustee/Bankruptcy Admin<br>[X] Creditor   [ ] Other<br>[ ] Trustee | PARTY (Check One Box Only)<br>[X] Debtor    [ ] U.S. Trustee/Bankruptcy Admin<br>[ ] Creditor   [ ] Other<br>[ ] Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)
**Complaint for NonDischargeability of Debt under 11 U.S.C. 523(a)(2)(A), 11 U.S.C. 523(a)(4), and 11 U.S.C. 523(a)(6)**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ ]  11-Recovery of money/property - §542 turnover of property
[ ]  12-Recovery of money/property - §547 preference
[ ]  13-Recovery of money/property - §548 fraudulent transfer
[ ]  14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ ]  21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ]  31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ]  41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ]  51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ]  66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ 1 ]  62-Dischargeability - §523(a)(2), false pretenses,
       false representation, actual fraud
[ 2 ]  67-Dischargeability - §523(a)(4), fraud as fiduciary,
       embezzlement, larceny

      **(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**
[ ]  61-Dischargeability - §523(a)(5), domestic support
[ 3 ]  68-Dischargeability - §523(a)(6), willful and malicious injury
[ ]  63-Dischargeability - §523(a)(8), student loan
[ ]  64-Dischargeability - §523(a)(15), divorce or separation obligation
       (other than domestic support)
[ ]  65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ]  71-Injunctive relief - imposition of stay
[ ]  72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ]  81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ]  91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ]  01-Determination of removed claim or cause

**Other**
[ ]  SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
[ ]  02-Other (e.g. other actions that would have been brought in state
       court if unrelated to bankruptcy case)

| [ ] Check if this case involves a substantive issue of state law | [ ] Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| [ ] Check if a jury trial is demanded in complaint | Demand $ **estimated at not less than $2,670,000** |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| Leslie Klein | | BANKRUPTCY CASE NO.<br>2:23-bk-10990-SK |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Hon. Sandra R. Klein |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>Steven M. Mayer, Esq. | | |
| DATE    5/12/2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Steven M. Mayer, Esq. | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case   Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.