Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:   jdulberg@pszjlaw.com
           jlucas@pszjlaw.com

[Proposed] Counsel to Bradley D. Sharp, Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>       Debtor. | Case No.: 2:23-bk-10990-SK<br><br>Chapter 11<br><br>**CHAPTER 11 TRUSTEE'S APPLICATION TO (A) EMPLOY COLDWELL BANKER REALTY AS REAL ESTATE BROKER AND (B) ENTER INTO EXCLUSIVE LISTING AGREEMENTS; DECLARATIONS RE DISINTERESTEDNESS FOR EMPLOYMENT OF PROFESSIONAL PERSONS UNDER F.R.B.P. 2014**<br><br>[161 N. Poinsettia Place, Los Angeles, CA 90036; 143 S. Highland Avenue, Los Angeles, CA 90036; 315 N. Martel Avenue, Los Angeles, CA 90036]<br><br>[No Hearing Required Pursuant to Local Bankruptcy Rules 2014-1(b)(1) and 9013-1(o)] |

Bradley D. Sharp, the duly appointed chapter 11 trustee (the "Trustee") of the bankruptcy

estate (the "Estate") of Leslie Klein (the "Debtor"), hereby seeks an order approving the

employment of Coldwell Banker Realty (the "Broker") as the Trustee's real estate broker in

connection with the marketing and sale of those certain properties located at 161 N. Poinsettia

Place, Los Angeles, California 90036 (the "Poinsettia Place Property"), 143 S. Highland Avenue,

Los Angeles, California 90036 (the "Highland Avenue Property"), and 315 N. Martel Avenue, Los

Angeles, California 90036 (the "Martel Avenue Property", and together with the Poinsettia Place

DOCS_LA:350295.3 78512/001

Property and the Highland Avenue Property, the ("Properties"), substantially consistent with the terms set forth in the listing agreements attached as **Exhibits "1"** through **"3"**, respectively.

This Application is brought pursuant to section 328 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 2014, and Local Bankruptcy Rule 2014-1. In support of the Application, the Trustee respectfully represents as follows:

## I.

## BACKGROUND

1.     On February 22, 2023, the Debtor filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code.

2.     On April 24, 2023, creditors Erica and Joseph Vago filed a *Motion for Order Dismissing Debtor's Chapter 11 Bankruptcy Case* (the "Motion to Dismiss") [Docket No. 79].

3.     On May 17, 2023, at a hearing held on the Motion to Dismiss, the Court ruled that the appointment of a chapter 11 trustee, and not dismissal of the case, was in the best interests of the estate.

4.     On May 23, 2023, the UST filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No. 151], appointing Bradley D. Sharp to serve as chapter 11 Trustee (the "Trustee").

5.     On May 24, 2023, the UST Filed an *Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154], approved by order entered the same day [Docket No. 155]. On that same day, the Trustee accepted his appointment [Docket No. 156].

6.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.

## MEMORANDUM OF POINTS & AUTHORITIES

7.     The Trustee respectfully applies for authority to employ Coldwell Banker Realty (the "Broker"), through its agents Steven Flores, Jessica Heredia and William Friedman (collectively, the "Agents"), respectively, as the Trustee's real estate broker in connection with the

marketing and sale of the Properties, pursuant to an exclusive listing agreement, based upon the following:

a.    The Properties are scheduled as property of the estate.  This Application is intended to effectuate the listing and marketing of the Properties by the Trustee, to facilitate a sale by the Trustee of said properties for the highest and best price.

b.    The Properties are property of the estate.  This Application is intended to effectuate the listing and marketing of the Properties by the Trustee, to facilitate a sale by the Trustee for the highest and best price.

c.    The Trustee has determined that the best way to market the Properties is via a licensed real estate broker both with experience in marketing properties in the region where the Properties are located, and who understands the bankruptcy sale process.

d.    The Agents employed by the proposed Broker are licensed real estate agents experienced in marketing real property in the region where the Properties are located.  In particular, Mr. Friedman is an expert in real estate sales in bankruptcy cases.

e.    The initial listing prices[1] for the Properties shall be as follows:

i.    Poinsettia Avenue Property:  $2,100,000.00

ii.    Highland Drive Property:    $2,250,000.00

iii.    Martel Avenue Property:    $2,100,000.00

f.    The Trustee proposes to hire Coldwell Banker Realty as his real estate broker for a total commission of five percent (5.0%) of the selling price for each of the Properties (payable only upon close of sale) to be shared as follows:  two and one-half percent (2.50%) to buyer's broker, if any, and the other two and one-half percent (2.50%) to the Broker.

g.    The terms of the exclusive listing agreements upon which the Trustee proposes to enter into with the Broker are reflected in **Exhibits "1"** through **"3"**, respectively, attached hereto and incorporated herein by this reference.

---

[1] These initial listing prices are based upon incomplete property inspections.  They are subject to change, with the Trustee's consent, following inspection of the Properties and in accordance with market conditions.

h.      The Trustee seeks authorization to enter into the listing agreements with the Broker with regard to the Properties and to extend the agreements from time to time as he believes in his sole discretion to be appropriate under the circumstances without further notice or order of the Court.

i.      The Trustee believes the employment of the Broker is in the best interests of the estate, based on the above facts.

## III.

## NOTICE

8.      Pursuant to Local Bankruptcy Rule 2014-1(b)(4), a hearing is not required in connection with the Application unless requested by the United States Trustee, a party in interest, or otherwise ordered by the Court.  Pursuant to Local Bankruptcy Rule 2014-1(b)(3), any response to the Application and request for hearing must be in the form prescribed by Local Bankruptcy Rule 9013-1(f) and must be filed with the Court and served upon the Trustee, his proposed counsel, and the United States Trustee no later than fourteen (14) days from the date of service of notice of the filing of the Application.

9.      Notice of filing of this Application was provided to the Office of the United States Trustee and all parties who filed and served a request for special notice as of the date of service of the Notice.

WHEREFORE, the Trustee prays for entry of an order authorizing him to (1) employ Coldwell Banker Realty as the Trustee's real estate broker effective as of August 1, 2023; (2) execute exclusive listing agreements substantially consistent with the terms and conditions set forth in **Exhibits "1"** through **"3"** attached hereto, subject to price modifications as appropriate in consultation with the Broker; (3) authorize the Trustee to extend that agreement in his sole discretion without further notice or order of the Court; (4) authorize the Trustee to take such other

*[Remainder of Page Intentionally Left Blank]*

1   actions as necessary in furtherance of the marketing and sale of the Properties; and (5)  for all other

2   further and proper relief.

3   Dated:    August 3, 2023                    PACHULSKI STANG ZIEHL & JONES  LLP

4

5                                               By      /s/ *Jeffrey W. Dulberg*

6                                                       Jeffrey W. Dulberg

7                                                       [Proposed] Counsel to Bradley D. Sharp,
                                                        Chapter 11 Trustee
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014
(Coldwell Banker Realty)**

1.      Name, address and telephone number of the professional ("the <u>Professional</u>") submitting this Statement:

Coldwell Banker Realty
3015 Main Street, Ste 400
Santa Monica, CA  90405
Telephone:  310-913-8112

2.      The services to be rendered by the Professional in this case are (specify):

To market and sell real property located at 315 N. Martel Avenue, Los Angeles, Los Angeles County, California 90036 (the "<u>Martel Avenue Property</u>").  Attached as **Exhibit "4"** is a copy of my Resume which describes my expertise and experience.

3.      The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

a total commission of five percent (5.0%) of the selling price for the Martel Ave Property (payable only upon close of sale) to be shared as follows:  two and one half percent (2.50%) to buyer's broker, if any, and the other two and one-half percent (2.50%) to the Broker.

4.      The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

N/A

5.      The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

I have reviewed my files of past clients.  I was never involved with any transaction on this property.

6.      The following is a complete description of all of the Professional's connections with the Chapter 11 Debtor, the debtors, principals of the debtors, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

None.

7.      The Professional is not a creditor, an equity security holder or an insider of the Debtor, except as follows (specify, attaching extra pages as necessary):

None.

8.      The Professional is not and was not an investment banker for any outstanding security of the Debtor.

9.      The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

10.     The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

11.     The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the Debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary):

None

12.     Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

Jessica Heredia
Coldwell Banker Realty
3015 Main Street, Ste 400
Santa Monica, CA  90405
Telephone:  310-913-8112

13.     The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

N/A

14.     Total number of attached pages of supporting documentation:  40

15.     After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on this 3rd day of August, 2023 at Santa Monica, California.

_____
Jessica Heredia

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014
(Coldwell Banker Realty)**

1.      Name, address and telephone number of the professional ("the <u>Professional</u>") submitting this Statement:

Coldwell Banker Realty
9229 Sunset Blvd., Ste 320
West Hollywood, CA  90069
Telephone:  323-210-1422

2.      The services to be rendered by the Professional in this case are (specify):

To market and sell real property located at 161 Poinsettia Place, Los Angeles, Los Angeles County, California 90036 (the "<u>Poinsettia Place Property</u>") and the property located at 143 S. Highland Ave, Los Angeles, CA 90036 (the "<u>Highland Avenue Property</u>").  Attached as **Exhibit "5"** is a copy of my Resume which describes my expertise and experience.

3.      The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

a total commission of five percent (5.0%) of the selling price for the Poinsettia Place Property and 5.0% of selling price of the Highland Avenue Property (payable only upon close of sale) to be shared as follows:  two and one-half percent (2.50%) to buyer's broker, if any, and the other two and one-half percent (2.50%) to the Broker.

4.      The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

N/A

5.      The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

I have reviewed my files of past clients.  I was never involved with any transaction on this property.

6.      The following is a complete description of all of the Professional's connections with the Chapter 11 Debtor, the debtors, principals of the debtors, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

None.

7.      The Professional is not a creditor, an equity security holder or an insider of the Debtor, except as follows (specify, attaching extra pages as necessary):

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

None.

8.      The Professional is not and was not an investment banker for any outstanding security of the Debtor.

9.      The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

10.     The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

11.     The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the Debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary):

None

12.     Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

Steve Flores
Coldwell Banker Realty
9229 Sunset Blvd., Ste 320
West Hollywood, CA  90069
Telephone:  323-210-1422

13.     The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

N/A

14.     Total number of attached pages of supporting documentation:  40

15.     After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on this 3rd day of August, 2023 at West Hollywood, California.

_____
Steve Flores

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014
(Coldwell Banker Realty)**

1.    Name, address and telephone number of the professional ("the <u>Professional</u>") submitting this Statement:

Coldwell Banker Realty
1608 Montana Avenue
Santa Monica, CA  90405
Telephone: (310) 829-3939

2.    The services to be rendered by the Professional in this case are (specify):

To list and aid the Trustee in marketing and selling the real properties located at 161 N. Poinsettia Place, Los Angeles, CA 90036, 143 S. Highland Ave, Los Angeles, CA 90036 and 315 N. Martel Ave, Los Angeles, CA 90036 (collectively the "<u>Properties</u>").  Attached as **Exhibit "6"** is a copy of my Resume which describes my expertise and experience.

3.    The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

a total commission of five percent (5.0%) of the selling price for each of the Properties (payable only upon close of sale) to be shared as follows:  two and one-half percent (2.50%) to buyer's broker, if any, and the other two and one-half  percent (2.50%) to the Broker.

4.    The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):     N/A

5.    The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

I have reviewed my files of past clients.  I was never involved with any transaction on the Properties.

6.    The following is a complete description of all of the Professional's connections with the Chapter 7 trustee, the Debtor, principals of the Debtor, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

None, except that I have previously been employed as broker by bankruptcy trustees who are clients of the Trustee's general counsel, unrelated to the Debtor.

7.    The Professional is not a creditor, an equity security holder or an insider of the Debtor, except as follows (specify, attaching extra pages as necessary):

None.

8.    The Professional is not and was not an investment banker for any outstanding security of the Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9.      The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

10.     The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

11.     The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the Debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary):

None.

12.     Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

William Friedman
Coldwell Banker Realty
1608 Montana Avenue
Santa Monica, CA 90405
Telephone: (310) 829-3939

13.     The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

N/A

14.     Total number of attached pages of supporting documentation:  40

15.     After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on August 3 , 2023, at Los Angeles, California.

William Friedman

# EXHIBIT 1



### RESIDENTIAL LISTING AGREEMENT
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/23)



**Date Prepared:** _07/24/2023_

1. **EXCLUSIVE RIGHT TO SELL:** _____ _Bradley D. Sharp, Chapter 11 Trustee_ ("Seller")
hereby employs and grants _____ _Coldwell Banker Realty_ ("Broker")
beginning (date) _July 25, 2023_ and ending at 11:59 P.M. on (date) _January 25, 2024_ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as _161 N Poinsettia Pl_
_____, situated in _Los Angeles_ (City),
_Los Angeles_ (County), California, _90036_ (Zip Code), Assessor's Parcel No. _5512-017-005_ ("Property").
☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional terms.
☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing Addendum and Advisory (C.A.R. Form PLA) for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _Two Million, One Hundred Thousand_
   _____ Dollars ($ _2,100,000.00_ ).
   B. Listing Terms: _Subject to Bankruptcy Court approval and overbid. Addendum is attached._

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
   AND _____, as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any ~~cancellation of this agreement~~ unless otherwise agreed, Seller enters into a contract to sell, convey, lease ~~or oth~~erwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who ~~physically~~ entered and was shown the Property during the Listing Period or any extension ~~by Br~~oker or ~~a co~~operating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller ~~a si~~gned, written offer to acquire, ~~lease, exc~~hange or obtain an option on the Property. Seller, however, ~~shall have~~ no obligation to Broker under **paragraph 3A(2)** unless, not later th~~an the end~~ of the Listing Period or ~~an~~y extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under **paragraph 3A** shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in **paragraph 3A**, either ☒ _2.500_ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy. ~~Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Seller submits this agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a~~ Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller ~~has not pr~~eviously entered into a listing agreement ~~with another~~ broker regarding the Property, unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay ~~compensation~~ to any other broker regarding the Property unless the Property is transferred to any of the following ~~individ~~uals or entities: _____
      (3) If the Property is ~~sold to anyone~~ listed above during the time Seller is obligated to compensate ~~another broker: (i) Broker~~ is ~~not entitled to~~ compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in ~~such~~ ~~trans~~action.

© 2023, California Association of REALTORS®, Inc.

**RLA REVISED 6/23 (PAGE 1 OF 6)**                     Seller's Initials _____ / _____

### RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 6)

Property Address: _161 N Poinsettia Pl, Los Angeles, CA  90036_          Date: _07/24/2023_

4.  A.  **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
     **ADDITIONAL ITEMS EXCLUDED:** _____
     **ADDITIONAL ITEMS INCLUDED:** _____

     Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

   B.  **(1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
     ☐ Solar power system   ☐ Alarm system   ☐ Propane tank   ☐ Water Softener
     ☐ Other
     **(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
     ☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
     ☐ Other
     Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

   C.  **SMART HOME FEATURES:** The following smart home features/devices are:
     (1) **INCLUDED IN THE SALE (information regarding apps, logins, and instructions may be required in the sale):**
     _____
     _____
     (2) **EXCLUDED FROM THE SALE:** _____
     _____

5.  **MULTIPLE LISTING SERVICE:**
   A.  **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
   B.  **WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
   C.  **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____ **_CLAW_** _____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by **paragraph 7** or by the MLS, Property will be listed with the MLS(s) specified above.

6.  **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS;**
   A.  **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
   B.  **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (i) Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; (ii) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (iii) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; (iv) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
   C.  **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
   D.  **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

   | Seller's Initials | / | | Broker's/Agent's Initials | SF | / | BF |
   |---|---|---|---|---|---|---|

7.  **PUBLIC MARKETING OF PROPERTY:**
   A.  **CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see **paragraph 7F**) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
   B.  **PUBLIC MARKETING WITHIN CLEAR COOPERATION:** (i) Public marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. (ii) Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 6)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          161 N Poinsettia

Property Address: **161 N Poinsettia Pl, Los Angeles, CA 90036**

C. **"COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does ☐ (does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.

D. **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
   (1) ☐ Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).
   OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

E. **Whether paragraph 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

F. ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY: Paragraphs 7A** (other than the language in the parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

8. **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:
   A. **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
   B. **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
      (1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.
      (2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.
   C. **SELLER ELECTION TO OPT-OUT:** ☐ Seller elects to opt out of certain internet features as provided by C.A.R. Form SELI or the local equivalent form.

9. ~~**REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default record~~ ~~the Property; (ii) any delinquent amounts due under any~~ ~~affecting the Property; (iii)~~ ~~insolvency or similar~~ ~~Property; (iv) any litigation, arbitration, administrative action~~ ~~action that affects or may affect the Property or Seller's~~ ~~sfer it; and (v) any current, pending or proposed spec~~ ~~affecting the Property. Seller shall~~ ~~ly notify Broker in writing if Seller becomes aware of any of these items during the Listin~~

10. **BROKER'S AND SELLER'S DUTIES:**
    A. **Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 10E as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.
    B. **Presentation of Offers:** There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire in the hopes Seller will accept before the presentation date. Seller is advised to discuss and consider the best strategy for Seller.
       (1) **Seller instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.
       OR (2) ☐ **Seller instructs Broker not to Present Offers until a Later Time:** Seller has elected to have Broker hold all offers and present them to Seller on ☐ _____ (date) or ☐ _____ Days after the property is listed as active on the MLS. Broker and Seller may amend this time by agreeing in writing. Broker will inform Seller that an offer has come in, but will not submit offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller.
    C. **Buyer Supplemental Offer Letters (Buyer Letters): Paragraph 8** of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.
       (1) **Seller instructs Broker not to present Buyer Letters,** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.
       OR (2) ☐ **Seller instructs Broker to present Buyer Letters.** Broker advises seller that: (i) Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and (ii) if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.
    D. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 3F,** referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

RLA REVISED 6/23 (PAGE 3 OF 6)                    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 6)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      161 N Poinsettia

Property Address: **161 N Poinsettia Pl, Los Angeles, CA 90036**

   E.  **Investigations and Reports:** Seller agrees, within 5 (or      ) Days of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
      ☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other       .
      If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.
      ~~Seller further agrees to indemnify, defend and hold Broker harmless~~ ............................................................... attorney fees ............ ........ information supplied by Seller, or from any material facts ....... Seller knows but fails to disclose including dangerous or hidden ..........................

11.  **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.
12.  **AGENCY RELATIONSHIPS:**
   A.  **DISCLOSURE:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B.  **SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 3F.**
   C.  **POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   D.  **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.
   E.  **POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
   F.  **TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

13.  **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

14.  **PHOTOGRAPHS AND INTERNET ADVERTISING:**
   A.  In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.
   B.  Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

15.  **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.
   A.  Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.



RLA REVISED 6/23 (PAGE 4 OF 6)                          Seller's Initials         /        

DocuSign Envelope ID: F177D3A8-4180-4CE4-A13B-70B82?CF?529

Property Address: *161 N Poinsettia Pl, Los Angeles, CA  90036*

   B. **TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

16. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

17. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

18. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs.

19. **ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
   ☐ Trust Advisory (C.A.R. Form TA)
   ☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

20. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

21. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

22. **DISPUTE RESOLUTION:**

   A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. For any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 22B.

   B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

   C. **ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

23. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

24. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

25. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall deliver to Broker, within 3 Days after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 6)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          161 N Poinsettia

Property Address: _161 N Poinsettia Pl. Los Angeles, CA  90036_

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

☐ **ENTITY SELLERS:** (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)
(1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, other entity or holds a power of attorney.
(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 25** for additional terms.
(3) The name(s) of the Legally Authorized Signer(s) is: _____.
(4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**SELLER SIGNATURE(S):**

(Signature) By, _____     Date: 7/26/2023

Printed name of SELLER: _Bradley D. Sharp, Chapter 11 Trustee_

☐ Printed Name of Legally Authorized Signer: _____     Title, if applicable, _____

Address _____  City _____  State ____ Zip _____

Email _____     Phone # _____

(Signature) By, _____     Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____     Title, if applicable, _____

Address _____  City _____  State ____ Zip _____

Email _____     Phone # _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) _Coldwell Banker Realty_     DRE Lic# _00616212_

Address _1917 Hillhurst Ave_     City _Los Angeles_     State _CA_  Zip _90027_

By _Steve Flores_  Tel._(323)356-3007_  E-mail _stvfl@hotmail.com_  DRE Lic# _01272369_  Date 7/24/2023 | 5:29:5

By _Bill Friedman_  Tel._(213)200-2500_  E-mail _billfried@earthlink.net_  DRE Lic# _00672015_  Date 7/24/2023 | 5:49:2

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2023 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 6/23 (RLA PAGE 6 OF 6)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 6 OF 6)**

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

Bradley D. Sharp, solely in the capacity as the Chapter 11 Trustee ("Trustee") of the bankruptcy estate of Leslie Klein ("Debtor") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker Realty ("Broker") the exclusive right to negotiate a sale of the real property commonly described as 161 N. Poinsettia Pl, Los Angeles, California ("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1.    Addendum.    This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2.    No Liability.    The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3.    Termination.    The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4.    Abandonment.    The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest.    In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5.    Conditions of Sale.    The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

a.    The Trustee is selling the Property in the capacity as the Trustee and not in the Trustee's personal

124805.1    9937176A

capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

b. If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c. The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding if the property is subdividable.

d. The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e. The sale is subject to overbids.

f. The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property. The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

g. The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h. All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

i. The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

j.    The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

k.    If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

l.    Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)    the Trustee must prevail with respect to any objections to the proposed sale; and

(2)    the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

m.    The Property is being sold subject to:

(1)    All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

(2)    Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.    Title, however, is to be transferred free of secured claims of record.

6.    Payment of Commission. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.    The payment of the commission is subject to prior approval of the Bankruptcy Court.

7.    Reduction of Listing Price and Extension of Term of Listing Agreement. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

8.    Entire Agreement. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization

is not contrary to the terms and conditions herein, constitute the entire contract between the parties. All prior agreements between the parties are incorporated into this agreement. Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9.    Bankruptcy Court Jurisdiction. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization. This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

# EXHIBIT 2

DocuSign Envelope ID: 889CF0BD-33D3-444E-8F68-0FFB4815DD84





**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/23)

Date Prepared: _07/24/2023_

1. **EXCLUSIVE RIGHT TO SELL:** _Bradley D. Sharp, Chapter 11 Trustee_ ("Seller")
   hereby employs and grants _Coldwell Banker Realty_ ("Broker")
   beginning (date) _July 25, 2023_ and ending at 11:59 P.M. on (date) _January 25, 2024_ ("Listing Period")
   the exclusive and irrevocable right to sell or exchange the real property described as _143 S Highland Ave_
   _____, situated in _Los Angeles_ (City),
   _Los Angeles_ (County), California, _90036_ (Zip Code), Assessor's Parcel No. _5513-014-024_ ("Property").
   ☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional terms.
   ☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing Addendum and Advisory (C.A.R. Form PLA) for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _Two Million, Two Hundred Fifty Thousand_
      Dollars ($ _2,250,000.00_ ).
   B. Listing Terms: _Subject to Bankruptcy Court approval and overbid. Addendum is attached._

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____, as follows:
      AND
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      ~~(2)~~ ____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered ~~and was shown the Property~~ during the Listing Period or any extension by Broker ~~or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written~~ to acquire, lease, exchange ~~or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period~~ ~~or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyer.~~
      OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under **paragraph 3A** shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in **paragraph 3A**, either ☒ _2.500_ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
      ~~Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a Buyer, Prospective Buyer or other transferee.~~
   F. (1) Seller represents that ~~Seller has~~ not previously entered into a listing agreement ~~with another~~ broker regarding the Property, unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay ~~compensation~~ to any other broker regarding the Property unless the Property is transferred to any of the following ~~individuals or entities:~~ _____
      ~~(3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.~~

© 2023, California Association of REALTORS®, Inc.

RLA REVISED 6/23 (PAGE 1 OF 6)    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 6)**

Property Address: *143 S Highland Ave, Los Angeles, CA 90036*                    Date: *07/24/2023*

4.  A.  **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _____ .
**ADDITIONAL ITEMS INCLUDED:** _____

Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

B.  **(1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
☐ Solar power system  ☐ Alarm system  ☐ Propane tank  ☐ Water Softener
☐ Other _____

**(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system  ☐ Windows or doors  ☐ Heating/Ventilation/Air conditioning system
☐ Other _____

Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

C.  **SMART HOME FEATURES:** The following smart home features/devices are:
(1)  **INCLUDED IN THE SALE (information regarding apps, logins, and instructions may be required in the sale):**
_____

_____ .

(2)  **EXCLUDED FROM THE SALE:** _____

_____ .

5.  **MULTIPLE LISTING SERVICE:**

A.  **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

B.  **WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

C.  **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to    *CLAW*    Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by **paragraph 7** or by the MLS, Property will be listed with the MLS(s) specified above.

6.  **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS;**

A.  **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.

B.  **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (i) Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; (ii) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (iii) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; (iv) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

C.  **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

D.  **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

| Seller's Initials        /        | Broker's/Agent's Initials  SF  /  BF |
|---|---|

7.  **PUBLIC MARKETING OF PROPERTY:**

A.  **CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see **paragraph 7F**) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.

B.  **PUBLIC MARKETING WITHIN CLEAR COOPERATION:** (i) **Public marketing** includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. (ii) Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 6)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com        143 S Highland

Property Address: _143 S Highland Ave, Los Angeles, CA 90036_

C. **"COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.

D. **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
   (1) ☐ Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).
OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

E. **Whether paragraph 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

F. ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** Paragraphs 7A (other than the language in the parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

8. **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:
   A. **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
   B. **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
      (1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.
      (2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.
   C. **SELLER ELECTION TO OPT-OUT:** ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

9. ~~SELLER REPRESENTATIONS:~~ Seller represents that, unless otherwise specified in writing, Seller is unaware ~~of~~ of Default recorded ~~against the~~ Property; (ii) any delinquent amounts due under ~~any~~ ~~secured by,~~ or other obligation affecting, the Property; (iii) any bankruptcy, ~~insolvency or similar proceeding~~ ~~affecting the~~ Property; (iv) any litigation, arbitration, administrative action, government investigation ~~or~~ ~~threatened~~ action that affects or may affect the Property or Seller's ability to transfer it; and (v) ~~any current, pending or proposed~~ ~~assessments affecting the Property.~~ Seller shall ~~promptly~~ notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension ~~thereof.~~

10. **BROKER'S AND SELLER'S DUTIES:**
    A. **Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 10E as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.
    B. **Presentation of Offers:** There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire in the hopes Seller will accept before the presentation date. Seller is advised to discuss and consider the best strategy for Seller.
       (1) **Seller instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.
    OR (2) ☐ **Seller instructs Broker not to Present Offers until a Later Time:** Seller has elected to have Broker hold all offers and present them to Seller on _____ (date) or ☐ ___ Days after the property is listed as active on the MLS. Broker and Seller may amend this time by agreeing in writing. Broker will inform Seller that an offer has come in, but will not submit offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller.
    C. **Buyer Supplemental Offer Letters (Buyer Letters): Paragraph 8** of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.
       (1) **Seller instructs Broker not to present Buyer Letters,** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.
    OR (2) ☐ **Seller instructs Broker to present Buyer Letters.** Broker advises seller that: (i) Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and (ii) if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.
    D. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 3F,** referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

RLA REVISED 6/23 (PAGE 3 OF 6)                          Seller's Initials ___/___

Property Address: **143 S Highland Ave, Los Angeles, CA 90036**

   E.  **Investigations and Reports:** Seller agrees, within 5 (or \_\_\_\_\_) Days of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:

      ☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other _____ .

      If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

   F.  ~~Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising~~ ~~information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden co~~

11.  **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

12.  **AGENCY RELATIONSHIPS:**

   A.  **DISCLOSURE:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

   B.  **SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 3F**.

   C.  **POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

   D.  **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

   E.  **POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

   F.  **TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

13.  **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

14.  **PHOTOGRAPHS AND INTERNET ADVERTISING:**

   A.  In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

   B.  Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

15.  **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

   A.  Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.

**RLA REVISED 6/23 (PAGE 4 OF 6)**         Seller's Initials _____ / _____

Property Address: <u>143 S Highland Ave, Los Angeles, CA 90036</u>

    **B. TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

16. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

17. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

18. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs.

19. **ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)
    ☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

20. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

21. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

22. **DISPUTE RESOLUTION:**
    **A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. For any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 22B.
    **B. ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.
    **C. ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

23. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

24. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

25. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall deliver to Broker, within **3 Days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

Seller's Initials _____ / _____



Property Address: *143 S Highland Ave, Los Angeles, CA 90036*

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

☐ **ENTITY SELLERS:** (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)
(1)  One or more Sellers is a trust, corporation, LLC, probate estate, partnership, other entity or holds a power of attorney.
(2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 25** for additional terms.
(3)  The name(s) of the Legally Authorized Signer(s) is: _____.
(4)  If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**SELLER SIGNATURE(S):**

(Signature) By, _____                                               Date: 7/26/2023

Printed Name of SELLER: *Bradley D. Sharp, Chapter 11 Trustee*

☐ Printed Name of Legally Authorized Signer: _____        Title, if applicable, _____

Address _____ City _____ State ____ Zip _____

Email _____                                    Phone # _____

(Signature) By, _____                                               Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____        Title, if applicable, _____

Address _____ City _____ State ____ Zip _____

Email _____                                    Phone # _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Coldwell Banker Realty*                         DRE Lic# *00616212*

Address *1977 Hillhurst Ave*                              City *Los Angeles*      State *CA*   Zip ____

By  Steve Flores   Tel.*(323)356-3007*   E-mail *stvfl@hotmail.com*   DRE Lic# *01272369*   Date 7/24/2023 | 5:29:3

By  Bill Friedman   Tel.*(213)200-2500*   E-mail *bilifried@earthlink.net*   DRE Lic# *00672015*   Date 7/24/2023 | 5:50:02

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2023 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 6/23 (PAGE 6 OF 6)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 6 OF 6)**

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

Bradley D. Sharp, solely in the capacity as the Chapter 11 Trustee ("Trustee") of the bankruptcy estate of Leslie Klein ("Debtor") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker Realty ("Broker") the exclusive right to negotiate a sale of the real property commonly described as 143 S. Highland Ave, Los Angeles, California ("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1.  __Addendum__.  This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2.  __No Liability__.  The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3.  __Termination__.  The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4.  __Abandonment__.  The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest.  In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5.  __Conditions of Sale__.  The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

    a.  The Trustee is selling the Property in the capacity as the Trustee and not in the Trustee's personal

124805.1    9937176A

capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

   b. If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

   c. The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding if the property is subdividable.

   d. The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

   e. The sale is subject to overbids.

   f. The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property. The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

   g. The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

   h. All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

   i. The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

j.    The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

k.    If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

l.    Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)    the Trustee must prevail with respect to any objections to the proposed sale; and

(2)    the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

m.    The Property is being sold subject to:

(1)    All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

(2)    Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.    Title, however, is to be transferred free of secured claims of record.

6.    <u>Payment of Commission</u>. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.    The payment of the commission is subject to prior approval of the Bankruptcy Court.

7.    <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

8.    <u>Entire Agreement</u>. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization

is not contrary to the terms and conditions herein, constitute the entire contract between the parties. All prior agreements between the parties are incorporated into this agreement. Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9.    <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization. This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

# EXHIBIT 3



CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
**(Exclusive Authorization and Right to Sell)**
**(C.A.R. Form RLA, Revised 6/23)**

COLDWELL BANKER
REALTY

Date Prepared: _07/24/2023_

1.  **EXCLUSIVE RIGHT TO SELL:** _____ _Bradley D. Sharp, Chapter 11 Trustee_ _____ ("Seller")
    hereby employs and grants _____ _Coldwell Banker Realty_ _____ ("Broker")
    beginning (date) _____ _July 24, 2023_ _____ and ending at 11:59 P.M. on (date) _____ _January 31, 2024_ _____ ("Listing Period")
    the exclusive and irrevocable right to sell or exchange the real property described as _315 N Martel Ave_
    _____, situated in _____ _Los Angeles_ _____ (City),
    ___ _Los Angeles_ ___ (County), California, _90036_ (Zip Code), Assessor's Parcel No. _5526-038-011_ ("Property").
    ☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional
    terms.
    ☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing
    Addendum and Advisory (C.A.R. Form PLA) for additional terms.
2.  **LISTING PRICE AND TERMS:**
    A.  The listing price shall be: _Two Million, One Hundred Thousand_
        _____ Dollars (\$ _2,100,000.00_ ).
    B.  Listing Terms: _Subject to bankruptcy court approval and overbid. Addendum is attached._
        _____

3.  **COMPENSATION TO BROKER:**
    **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker
    individually and may be negotiable between Seller and Broker (real estate commissions include all
    compensation and fees to Broker).**
    A.  Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent
        of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ \$ _____
        AND _____, as follows:
        (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready,
            willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the
            Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any
            escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
        OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this
            Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property
            to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property
            during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating
            broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller,
            however, shall have no obligation to Broker under **paragraph 3A(2)** unless, not later than the end of the Listing Period
            or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
        OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise
            transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
    B.  If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would
        have been earned under **paragraph 3A** shall be payable only if and when Seller collects damages by suit, arbitration, settlement
        or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after
        first deducting title and escrow expenses and the expenses of collection, if any.
    C.  In addition, Seller agrees to pay Broker: _____.
    D.  Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
        (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s)
            ("MLS") by offering to MLS brokers out of Broker's compensation specified in **paragraph 3A**, either ☒ _2.500_ percent
            of the purchase price, or ☐ \$ _____
        (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
    E.  Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may
        submit this Agreement, as instructions to compensate Broker pursuant to **paragraph 3A**, to any escrow regarding the Property
        involving Seller and a buyer, Prospective Buyer or other transferee.
    F.  (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property,
            unless specified as follows: _____.
        (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the
            Property is transferred to any of the following individuals or entities: _____
        (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker
            is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such
            transaction.

© 2023, California Association of REALTORS®, Inc.

**RLA REVISED 6/23 (PAGE 1 OF 6)**                          Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 6)**

Coldwell Banker Realty - Venice, 3015 Main Street #400 Santa Monica CA 90405          Phone: (310)913-8112    Fax: (424)280-7404          315 N Martel
Jessica Heredia          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

Property Address: <u>315 N Martel Ave. Los Angeles, CA 90036</u>    Date: <u>07/24/2023</u>

**4.** **A.** **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
   **ADDITIONAL ITEMS EXCLUDED:** _____ .
   **ADDITIONAL ITEMS INCLUDED:** _____
   Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

   **B.** **(1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
   ☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
   ☐ Other _____
   **(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
   ☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
   ☐ Other _____
   Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

   **C.** **SMART HOME FEATURES:** The following smart home features/devices are:
   (1) **INCLUDED IN THE SALE (information regarding apps, logins, and instructions may be required in the sale):**
   _____
   _____

   (2) **EXCLUDED FROM THE SALE:** _____

**5.** **MULTIPLE LISTING SERVICE:**
   **A.** **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

   **B.** **WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

   **C.** **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____<u>THEMLS/CLAW</u>_____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by **paragraph 7** or by the MLS, Property will be listed with the MLS(s) specified above.

**6.** **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS;**
   **A.** **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
   **B.** **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (i) Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; (ii) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (iii) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; (iv) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
   **C.** **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
   **D.** **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

| Seller's Initials _____ / | Broker's/Agent's Initials _____ / |
| --- | --- |

**7.** **PUBLIC MARKETING OF PROPERTY:**
   **A.** **CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see **paragraph 7F**) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
   **B.** **PUBLIC MARKETING WITHIN CLEAR COOPERATION:** (i) **Public marketing** includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. (ii) Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.

RLA REVISED 6/23 (PAGE 2 OF 6)    Seller's Initials _____ / _____

Property Address: <u>315 N Martel Ave, Los Angeles, CA 90036</u>

C. **"COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.

D. **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
   (1) Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).
   OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

E. **Whether paragraph 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

F. ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY: Paragraphs 7A** (other than the language in the parenthetical), **7B, 7D** and **7E** do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

8. **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:
   A. **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
   B. **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
      (1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.
      (2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.
   C. **SELLER ELECTION TO OPT-OUT:** ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

9. ~~SELLER~~ **REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware ~~of: (i) any Notice~~ of Default recorded ~~against the Property;~~ (ii) any delinquent amounts due under ~~any loan secured by,~~ or other obligation affecting, the Property; (iii) any bankruptcy, ~~insolvency or similar proceeding~~ affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation ~~or other~~ pending or threatened ~~action~~ that affects or may affect the Property or Seller's ability to ~~transfer it; and (v)~~ any current, pending or proposed special assessments ~~affecting the Property.~~ Seller shall ~~promptly notify~~ Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension ~~thereof.~~

10. **BROKER'S AND SELLER'S DUTIES:**
   A. **Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in **10E** as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.
   B. **Presentation of Offers:** There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire in the hopes Seller will accept before the presentation date. Seller is advised to discuss and consider the best strategy for Seller.
      (1) **Seller instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.
   OR (2) ☐ **Seller instructs Broker not to Present Offers until a Later Time:** Seller has elected to have Broker hold all offers and present them to Seller on _____ (date) or ☐ _____ Days after the property is listed as active on the MLS. Broker and Seller may amend this time by agreeing in writing. Broker will inform Seller that an offer has come in, but will not submit offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller.
   C. **Buyer Supplemental Offer Letters (Buyer Letters): Paragraph 8** of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.
      (1) **Seller instructs Broker not to present Buyer Letters,** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.
   OR (2) ☐ **Seller instructs Broker to present Buyer Letters.** Broker advises seller that: (i) Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and (ii) if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.
   D. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 3F**, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

RLA REVISED 6/23 (PAGE 3 OF 6)                     Seller's Initials _____ / _____

E. **Investigations and Reports:** Seller agrees, within **5 (or \_\_\_\_\_) Days** of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other _____.
If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

F. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

11. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

12. **AGENCY RELATIONSHIPS:**
    A. **DISCLOSURE:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
    B. **SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 3F**.
    C. **POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
    D. **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.
    E. **POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
    F. **TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

13. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

14. **PHOTOGRAPHS AND INTERNET ADVERTISING:**
    A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.
    B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

15. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.
    A. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.

RLA REVISED 6/23 (PAGE 4 OF 6)                          Seller's Initials _____ / _____

RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 6)
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          315 N Martel

Property Address: <u>315 N Martel Ave, Los Angeles, CA 90036</u>

    **B. TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**16. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**17. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**18. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs.

**19. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ Trust Advisory (C.A.R. Form TA)
☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction
_____

**20. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**21. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**22. DISPUTE RESOLUTION:**

    **A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in **paragraph 22B.**

    **B. ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

    **C. ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**23. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**24. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

**25. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall deliver to Broker, within **3 Days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

RLA REVISED 6/23 (PAGE 5 OF 6)        Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 6)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    315 N Martel

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

☐ **ENTITY SELLERS:** (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)
(1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, other entity or holds a power of attorney.
(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 25** for additional terms.
(3) The name(s) of the Legally Authorized Signer(s) is: _____
(4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**SELLER SIGNATURE(S):**

(Signature) By, _____  Date: __7/26/2023__

Printed name of SELLER: *Bradley D. Sharp, Chapter 11 Trustee*

☐ Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____

Address _____  City _____  State ____ Zip _____

Email _____  Phone # _____

(Signature) By, _____  Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____

Address _____  City _____  State ____ Zip _____

Email _____  Phone # _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Coldwell Banker Realty*  DRE Lic# *00616212*

Address *1608 Montana Ave.*  City *Santa Monica*  State *CA*  Zip *90403*

By _____ Tel.*(213)200-2500*  E-mail *Billfried@earthlink.net*  DRE Lic# *00672015*  Date *7/2y/2 3*
Bill Friedman

By _____ Tel.*(310)913-8112*  E-mail *Jessica@JessicaHeredia.com*  DRE Lic# *01349369*  Date *7|24|23*
Jessica Heredia

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2023 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RLA REVISED 6/23 (PAGE 6 OF 6)

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

Bradley D. Sharp, solely in the capacity as the Chapter 11
Trustee ("Trustee") of the bankruptcy estate of Leslie Klein
("Debtor") in the Debtor's bankruptcy case in the United States
Bankruptcy Court for the Central District of California, agrees
to grant Coldwell Banker Realty ("Broker") the exclusive right
to negotiate a sale of the real property commonly described as
315 N. Martel Ave, Los Angeles, California ("Property") upon the
terms and conditions of the Exclusive Authorization and Right to
Sell Property ("Exclusive Authorization"), as amended by the
following terms and conditions:

1.  Addendum.   This Addendum applies to the Exclusive
Authorization. Notwithstanding any contrary terms and conditions
in the Exclusive Authorization, this Addendum shall apply.

2.  No Liability.   The Trustee is listing the Property for
sale with the Broker in the capacity as Trustee and not in the
Trustee's personal capacity, and no liability or obligations
shall accrue to the Trustee personally as a result of such
listing.

3.  Termination.   The Trustee may terminate the Exclusive
Authorization at the Trustee's option and upon written notice to
the Broker at any time, and no liability or obligations shall
accrue to the estate or to the Trustee, either personally or in
the capacity as Trustee, as a result of any such termination.

4.  Abandonment.   The Trustee reserves the right, in the
Trustee's sole discretion, to determine not to sell the Property
and to abandon the Property by serving a notice of the Trustee's
intention to abandon the Property upon the Debtor, the Debtor's
counsel, the United States Trustee, all creditors, and all
parties in interest.   In the event of any such abandonment, the
Exclusive Authorization and this Addendum shall terminate and no
liability or obligations shall accrue to the estate or to the
Trustee, either personally or the capacity as Trustee, as a
result of any such abandonment and termination.

5.  Conditions of Sale.   The Broker agrees and understands
that any sale of the Property shall be subject to the following
terms and conditions:

a.   The Trustee is selling the Property in the
capacity as the Trustee and not in the Trustee's personal

124805.1    9937176A

capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding if the property is subdividable.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The sale is subject to overbids.

f.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property. The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

g.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h.    All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

i.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

j.    The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

k.    If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

l.    Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)    the Trustee must prevail with respect to any objections to the proposed sale; and

(2)    the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

m.    The Property is being sold subject to:

(1)    All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

(2)    Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.    Title, however, is to be transferred free of secured claims of record.

6.    <u>Payment of Commission</u>. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.    The payment of the commission is subject to prior approval of the Bankruptcy Court.

7.    <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

8.    <u>Entire Agreement</u>. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization

124805.1    9937176A                           3

is not contrary to the terms and conditions herein, constitute the entire contract between the parties.  All prior agreements between the parties are incorporated into this agreement.  Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9.    Bankruptcy Court Jurisdiction. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization.  This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

# EXHIBIT 4

# Jessica Heredia/Realtor

Address: 3015 Main St Ste 400, Santa Monica, CA 90405
Phone: 310-913-8112
Email: Jessica@JessicaHeredia.com

### Summary:
Highly accomplished Real Estate Sales Agent with a successful track record since 2002. Consistently recognized as a top-producing agent, achieving prestigious awards such as International President's Elite, Diamond Society, and President's Circle. Adept at building strong client relationships and delivering exceptional results.

### Experience:

Real Estate Sales Agent, COLDWELL Banker Realty
2007- Present

- Demonstrated expertise in the real estate market, specializing in residential sales.
- Consistently ranked as a top-producing agent since 2007, consistently exceeding sales targets.
- Developed and implemented effective sales and marketing strategies to maximize property exposure.
- Cultivated and maintained strong relationships with clients, providing personalized service and expert guidance.
- Collaborated with buyers, sellers, and fellow agents to negotiate and close successful transactions.
- Conducted accurate market analysis and property evaluations to determine optimal pricing strategies.
- Utilized advanced technological tools to streamline processes and enhance customer experience.

Real Estate Sales Agent, Century 21 Citrus
2002-2007

- Client Acquisition: Actively prospecting and networking to generate leads and establish connections with potential buyers and sellers.
- Client Representation: Representing clients in buying, selling, and leasing properties, ensuring their interests are protected and their needs are met.
- Property Marketing: Creating compelling property listings, brochures, and online advertisements to effectively market and showcase properties to potential buyers and renters.
- Property Showings: Conducting property tours and showings, highlighting key features and addressing any questions or concerns from potential buyers or renters.
- Offer Negotiation: Assisting clients with offer preparation and negotiations to secure favorable terms and conditions for both buyers and sellers.
- Transaction Management: Overseeing all aspects of the real estate transaction, including coordinating inspections, appraisals, and necessary paperwork to ensure a smooth and timely closing.
- Market Research: Conducting market analysis to stay informed about local trends, property values, and neighborhood developments, providing clients with accurate and up-to-date information.

- Client Communication: Keeping clients informed throughout the buying or selling process, providing regular updates, and promptly addressing any questions or issues that may arise.
- Contract Preparation

**Volunteer Work:**

Megan's Wings
- Assisting children with cancer and their families in need. Developed a temporary housing program for families who are receiving treatment.

Meals on Wheels
- Delivered meals to elderly.

Verdugo Hospice
- Visited with patients and assisted with daily tasks.

**Skills:**

- Exceptional Sales Ability: Proficient in sales techniques, with a proven track record of success in closing deals and achieving targets.
- Market Knowledge: In-depth understanding of the local real estate market, including current trends, pricing, and property values.
- Client Relationship Management: Skilled in building and maintaining strong relationships with clients, providing personalized service, and earning their trust.
- Negotiation Skills: Experienced in negotiating terms, prices, and conditions to ensure mutually beneficial outcomes for buyers and sellers.
- Marketing and Advertising: Proficient in developing effective marketing strategies to promote properties, utilizing various channels and technologies.
- Communication Skills: Strong verbal and written communication abilities to engage with clients, understand their needs, and convey information clearly and effectively.
- Problem-Solving: Quick and effective problem-solving skills in dealing with diverse challenges that may arise during real estate transactions.
- Organization and Time Management: Excellent organizational skills to handle multiple listings, paperwork, and deadlines efficiently.
- Technology Proficiency: Familiarity with real estate software, CRM tools, digital marketing platforms, and other technological tools to enhance productivity and client service.
- Ethical Conduct: Committed to maintaining the highest ethical standards in real estate

# EXHIBIT 5

**COLDWELL BANKER** 🅢

RESIDENTIAL BROKERAGE

Steve Flores
**Associate Manager**
**REALTOR / MBA**
**COLDWELL BANKER**
**RESIDENTIAL BROKERAGE**
9229 Sunset Blvd, Suite 320
West Hollywood, CA 90069
(323)210-1422



# Steve Flores

"To give real service you must add something which cannot be bought or measured with money, and that is sincerity and integrity." Douglas Adams

Steve is a Southern California native and real estate professional who represents buyers and sellers in all price ranges, in both residential and commercial real estate. He has extensive knowledge of the real estate market in Southern California.

A member of the National Association of Realtors along with the California Association of Realtors, Steve is a 20 year - plus real estate veteran, Associate Manager and a Certified Commercial Specialist with the Los Feliz & Sunset Strip Offices of Coldwell Banker Residential Brokerage. He is associated with the board of the Coldwell Banker Community Foundation, and has received a high level of success, receiving recognition as a top producer.

Educated at the California State University at Long Beach & Dominguez Hills, he earned a Bachelor's and a Master's Degree in International Business, respectively.

Having a high level of sensitivity towards life's transitions, Steve welcomes the opportunity to represent you in the marketing or purchase of your home, estate or commercial real estate.

Owned by a subsidiary of NRT LLC.

# EXHIBIT 6



**William Friedman**

1608 MONTANA AVE
SANTA MONICA, CA 90403

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 40 years. Mr. Friedman is a top producer for Coldwell Banker. He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

**Bankruptcy Trustees:**
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

**Lenders:**
Countrywide Home Loans
Federal Home Loan Mortgage Corporation
Lincoln Service Corporation
Bank of America
Cal-Fed Enterprises
Union Federal Savings
California Federal Bank

Southern California Savings
Union Federal Bank
Residential Funding Corporation/GMAC
Coast Federal Bank

**Receivers:**
Stephen Donell
Samuel R. Biggs
David L. Ray

Operated by a subsidiary of NRT LLC.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify):* **CHAPTER 11 TRUSTEE'S APPLICATION TO (A) EMPLOY COLDWELL BANKER REALTY AS REAL ESTATE BROKER AND (B) ENTER INTO EXCLUSIVE LISTING AGREEMENTS; DECLARATIONS RE DISINTERESTEDNESS FOR EMPLOYMENT OF PROFESSIONAL PERSONS UNDER F.R.B.P. 2014** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date)* **August 3, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date)* **August 3, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date)* _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 3, 2023 | Nancy H. Brown | /s/ *Nancy H. Brown* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

DOCS_LA:349532.1 78512/001

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Simon Aron**   saron@wrslawyers.com, moster@wrslawyers.com
- **Reem J Bello**   rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Ron Bender**   rb@lnbyg.com
- **Michael Jay Berger**   michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Greg P Campbell**   ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Baruch C Cohen**   bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Theron S Covey**   tcovey@raslg.com, sferry@raslg.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Dane W Exnowski**   dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
- **Robert P Goe**   kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Michael I. Gottfried**   mgottfried@elkinskalt.com, cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
- **Brandon J Iskander**   biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **Michael S Kogan**   mkogan@koganlawfirm.com
- **John W Lucas**   jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- **Ron Maroko**   ron.maroko@usdoj.gov
- **Kirsten Martinez**   Kirsten.Martinez@bonialpc.com, Notices.Bonial@ecf.courtdrive.com
- **Steven M Mayer**   smayer@mayerlawla.com
- **Krikor J Meshefejian**   kjm@lnbyg.com
- **Kenneth Misken**   Kenneth.M.Misken@usdoj.gov
- **Jeffrey P Nolan**   jnolan@pszjlaw.com
- **Eric J Olson**   eric@ejolsonlaw.com
- **Jeffrey N Pomerantz**   jpomerantz@pszjlaw.com
- **Brian A Procel**   bprocel@millerbarondess.com, rdankwa@millerbarondess.com;docket@millerbarondess.com
- **Joshua L Scheer**   jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- **Mark M Sharf (TR)**   mark@sharflaw.com, C188@ecfcbis.com;sharf1000@gmail.com;2180473420@filings.docketbird.com
- **Bradley D. Sharp (TR)**   bsharp@dsi.biz
- **Nikko Salvatore Stevens**   nikko@cym.law, mandi@cym.law
- **Alan G Tippie**   Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **Gary Tokumori**   gtokumori@pmcos.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**   mwachtell@buchalter.com
- **John P. Ward**   jward@attleseystorm.com, ezhang@attleseystorm.com
- **Alex M Weingarten**   aweingarten@willkie.com, lcarter@willkie.com
- **Clarisse Young**   youngshumaker@smcounsel.com, levern@smcounsel.com
- **Paul P Young**   paul@cym.law, jaclyn@cym.law
- **Roye Zur**   rzur@elkinskalt.com, cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

**2. SERVED BY UNITED STATES MAIL:**

Peter C. Anderson, U.S. Trustee
Michael Jones, Assistant U.S. Trustee
Office of the U.S. Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA  90017

Nikko S. Stevens
CHORA YOUNG & MANASSERIAN LLP
650 Sierra Madre Villa Ave., Ste. 304
Pasadena, CA 91107

Joshua L. Scheer
Scheer Law Group, LLP
85 Argonaut, Suite 202
Aliso Viejo, CA 92656

Eric J. Olson
EJ Olson Law
301 E. Colorado Blvd., Ste. 520
Pasadena, CA 91101

Nathan Talei
Oldman, Sallus & Gold, L.L.P.
16133 Ventura Blvd., PH-A
Encino, CA 91436

Brett Wasserman
Shumaker Mallory, LLP
280 S. Beverly Dr., Ste. 505
Beverly Hills, CA 90212

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:349532.1 78512/001

**F 9013-3.1.PROOF.SERVICE**