# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 08/27/2021 06:09 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

**SHUMAKER MALLORY LLP**
Clarisse Young Shumaker (SBN 106505)
youngshumaker@smcounsel.com
Brett J. Wasserman (SBN 315058)
wasserman@smcounsel.com
333 S. Grand Ave., Suite 3400
Los Angeles, California 90071
**Mailing Address**
1 Ringbit Rd. W.
Rolling Hills, CA 90274
Telephone: (213) 793-2020
Facsimile: (213) 674-4268

Attorneys for Plaintiff ADI VENDRIGER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| ADI VENDRIGER, an individual, as Co-Trustee of the FIRST AMENDMENT TRUST WENDRIGER FAMILY; and ADI VENDRIGER, an individual<br><br>Plaintiffs,<br><br>v.<br><br>LESLIE KLEIN, ESQ., an individual; and LES KLEIN & ASSOCIATES, a California Professional Law Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  21STCV31915<br><br>**COMPLAINT FOR:**<br>**1) FRAUD;**<br>**2) BREACH OF FIDUCIARY DUTY;**<br>**3) CONVERSION;**<br>**4) MONEY HAD AND RECEIVED;**<br>**5) UNJUST ENRICHMENT; and**<br>**6) ACCOUNTING**<br><br>**(Filed concurrently with Petition to Return Trust Property; For Damages, Attorney's Fees, And Costs; and Award of Damages, Attorney's Fees, and Costs)**<br><br>Complaint Filed: August 27, 2021<br>Trial Date:<br>Dept:<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ADI VENDRIGER, successor co-Trustee of the First Amendment Trust

Wendriger Family dated May 7, 1990, as amended thereafter, hereby alleges as follows:

///

///

1

COMPLAINT

## GENERAL ALLEGATIONS

1.      Plaintiff ADI VENDRIGER is an individual who resides in Tel Aviv, Israel.  ADI VENDRIGER is a successor co-Trustee of the First Amendment Trust Wendriger Family dated May 7, 1990, as amended.  A true and correct copy of the First Amendment Trust Wendriger Family dated May 7, 1990, as amended ("Trust"), is attached hereto as Exhibit A and made a part hereof.  At all times relevant herein, the Trust was being administered in the State of California, County of Los Angeles.

2.      Respondent LESLIE KLEIN, ESQ. ("Klein") is an individual who on information and belief resides in Los Angeles County, California.  Upon information and belief, at all times relevant herein, Klein was doing business in the State of California, County of Los Angeles. Pursuant to the State Bar of California website, Klein is an Active member, State Bar Number 50908.  Pursuant to the California Department of Consumer Affairs website, Klein formerly held a license as a Certified Public Accountant, License No. 67454, which was surrendered on January 31, 2021.  On March 24, 2010, Klein filed an Ex Parte Application for Issuance of Letters of Special Administration in the Estate of Tania Wendriger in Los Angeles Superior Court, Case No. LP015084 ("Petition for Special Administrator").  Klein was appointed Special Administrator of the Estate of Tania Wendriger under an Ex Parte Order for Probate dated March 24, 2010 and received Letters of Special Administration dated March 24, 2010.

3.      Respondent LES KLEIN & ASSOCIATES, INC., A PROFESSIONAL LAW CORPORATION ("Firm") is a California professional corporation engaged in the practice of law with offices in the State of California, County of Los Angeles, City of Sherman Oaks.

4.      Plaintiff is ignorant of the true names and capacities, whether individual, corporate, or otherwise, of the Defendants identified in this Petition as DOES 1 through 50, inclusive, and therefore, sues such Defendants by the fictitious names.  Plaintiff will amend this Plaintiff to set forth the true names and capacities of said Defendants as soon as such names have been ascertained.   Plaintiff is informed and believes and based upon such information and belief alleges that each Defendant designated herein as DOES 1 through 50, inclusive, is responsible in

**COMPLAINT**

some way and/or manner for the acts and occurrences herein alleged, whether such acts and occurrences were committed intentionally, negligently, recklessly, or otherwise, and that each said DOE Defendant is liable to Plaintiff for the damages suffered by Plaintiff.

## JURISDICTION AND VENUE

5.      Jurisdiction and venue in the Los Angeles Superior Court arises from the administration of the Trust and Defendants residing and functioning in the County of Los Angeles, State of California.

## FACTS

6.      On May 7, 1990, OSCAR WENDRIGER and TANIA WENDRIGER established the FIRST AMENDMENT TRUST WENDRIGER FAMILY ("Trust"), which replaced the prior Trust Agreement dated July 10, 1986. OSCAR WENDRIGER and TANIA WENDRIGER were the initial co-Trustees of the Trust. Plaintiff ADI VENDRIGER, and his brother Jacob Vendriger, also known as Yaacov Vendriger, are the only children of OSCAR WENDRIGER and TANIA WENDRIGER, and were named the successor co-Trustees of the Trust. Pursuant to the terms of the Trust, as amended on March 18, 1993, upon the death of the Surviving Trustor, the Trust Estate shall be distributed as follows: (i) each grandchild shall receive the sum of $10,000, increased six percent (6%) per annum, cumulatively; and (ii) the remainder of the Trust Estate shall be divided equally between ADI VENDRIGER and Jacob Vendriger.

7.      On May 7, 1990, OSCAR WENDRIGER and TANIA WENDRIGER contributed the following three (3) real properties to the Trust as follows:

- Quitclaim Deed transferring 1435 Fairfax Avenue #20, Los Angeles, CA (APN 5554-001-033) from OSCAR WENDRIGER and TANIA WENDRIGER to OSCAR WENDRIGER and TANIA WENDRIGER, Cotrustees of the Wendriger Family Trust, U/D/T 5-7-90, which was recorded in Official Records of Los Angeles County as Instrument No. 90-923693 on May 22, 1990 ("Fairfax Quitclaim Deed").

///

///

///

3

**COMPLAINT**

- Quitclaim Deed transferring 1217 Havenhurst Drive, Los Angeles, CA (APN 5554-016-011) from OSCAR WENDRIGER and TANIA WENDRIGER to OSCAR WENDRIGER and TANIA WENDRIGER, Co-trustees of the Wendriger Family Trust, U/D/T 5-7-90, which was recorded in Official Records of Los Angeles County as Instrument No. 90-923694 on May 22, 1990 ("Havenhurst Quitclaim Deed").
- Quitclaim Deed transferring 948 N. Martel Avenue, Los Angeles, CA (APN 5531-020-002) from OSCAR WENDRIGER and TANIA WENDRIGER to OSCAR WENDRIGER and TANIA WENDRIGER, Cotrustees of the Wendriger Family Trust, U/D/T 5-7-90, which was recorded in Official Records of Los Angeles County as Instrument No. 90-923692 on May 22, 1990 ("Martel Quitclaim Deed").

8.    On May 28, 1996, OSCAR WENDRIGER and TANIA WENDRIGER contributed the following property to the Trust as follows:

- Grant Deed transferring 1435 Fairfax Avenue #4, Los Angeles, CA (APN 5554-001-017) from OSCAR WENDRIGER and TANIA WENDRIGER to OSCAR WENDRIGER and TANIA WENDRIGER, Cotrustees of the Wendriger Family Trust dated 5/7/90, which was recorded in Official Records of Los Angeles County as Instrument No. 96-969585 on June 19, 1996 ("Fairfax Grant Deed").

9.    All four (4) Trust properties are managed by Holley Property Management Company.  Klein is not the Property Manager, but has inserted himself as a middle man between the property management company and the co-Trustees of the Trust.

10.    Pursuant to the Petition for Special Administrator filed by Klein, on October 30, 1999, OSCAR WENDRIGER and TANIA WENDRIGER executed a Note Secured by Trust Deed ("Secured Note") in the sum of $258,815.05, the terms of which provided for all unpaid principal and interest to be due and payable on October 24, 2009.  Pursuant to the Petition for Special Administrator filed by Klein, the Secured Note was secured by a Deed of Trust dated August 2, 1979, and recorded as Instrument No. 79-945848.

11.    On August 23, 2007, OSCAR WENDRIGER, also known as Oscar Vendriger, died.

12.    On November 23, 2007, TANIA WENDRIGER, also known as Tania Vendriger and Tanya Vendriger, died.

13.    Pursuant to the Petition for Special Administrator, at TANIA WENDRIGER's death there was a Chase Account (Account No. 195-248884-9), which was held by OSCAR

4

WENDRIGER and TANIA WENDRIGER, as joint tenants.  At the time of TANIA

WENDRIGER's death, the Chase Account held $194,000, which was in excess of the statutory

limits under Probate Code § 13100.

14.    On March 24, 2010, Klein filed the Petition for Special Administrator in the

Estate of Tania Wendriger in Los Angeles Superior Court, Case No. LP015084.  Klein requested

the following powers: (i) to withdraw all sums on deposit in the Chase Account; (ii) With said

sums, to apply toward payment in full, including all accrued interest until such payment that

certain Note Secured by Deed of Trust, dated October 30, 1990, in favor of Harry Halpin and

Rose Shapiro the final payment on which, in the sum of $200,330.10, was due on October 24,

2009; (iii) to execute and deliver any checks, drafts, withdrawals, or other instruments drawn on

the Chase Account for the payment of the money on deposit in the Chase Account to pay in full

including all accrued interest until such payment, the Secured Note, the final payment of which,

in the sum of $200,330.20, was due on October 24, 2009; and (iv) if necessary, to open any bank

account necessary in the name of the Estate and to deposit in such account any and all sums

withdrawn from said Chase Account.  Thereafter, to execute and deliver any checks, drafts,

withdrawals, or other instruments drawn on such Account for payment of the money on deposit

in such Account to pay in full including all accrued interest until such payment, the Secured

Note, the final payment of which, in the sum of $200,330.20, was due on October 24, 2009.

15.    On March 24, 2010, Klein was issued Letters of Special Administration.  Klein

specifically affirmed the requirement to perform the duties of personal representative according

to law in the Letters filed with the Court.

16.    The Petition for Special Administrator included Nominations of Leslie Klein by

ADI VENDRIGER and Jacob Vendriger, for the purpose of withdrawing the funds in the Chase

account and applying such funds to the payment of the Secured Note, as well as a Power of

Attorney in favor of Leslie Klein, dated February 5, 2010, signed by ADI VENDRIGER and

Jacob Vendriger.  The Petition for Special Administrator also included a Declaration by Leslie

Klein, which specifically notes the Power of Attorney dated February 5, 2010 is in regards to the

Chase Account for the specific purpose of obtaining the funds in the Chase Account and applying said funds toward payment on the Secured Note.

17.    On March 24, 2010, an Order for Special Administrator was issued granting Klein the following powers: (i) to withdraw all sums on deposit in the Chase Account; (ii) With said sums, to apply toward payment in full, including all accrued interest until such payment that certain Note Secured by Deed of Trust, dated October 30, 1990, in favor of Harry Halpin and Rose Shapiro the final payment on which, in the sum of $200,330.10, was due on October 24, 2009; (iii) to execute and deliver any checks, drafts, withdrawals, or other instruments drawn on the Chase Account for the payment of the money on deposit in the Chase Account to pay in full including all accrued interest until such payment, the Secured Note, the final payment of which, in the sum of $200,330.20, was due on October 24, 2009; and (iv) if necessary, to open any bank account necessary in the name of the Estate and to deposit in such account any and all sums withdrawn from said Chase Account.  Thereafter, to execute and deliver any checks, drafts, withdrawals, or other instruments drawn on such Account for payment of the money on deposit in such Account to pay in full including all accrued interest until such payment, the Secured Note, the final payment of which, in the sum of $200,330.20, was due on October 24, 2009.

18.    To date, Klein has not filed a single accounting with the Court as Special Administrator.

19.    On July 27, 2011, Klein sent correspondence to ADI VENDRIGER and Jacob Vendriger which indicated Klein had received $255,792 from Holley Property Management company from March 2010 to June 2011. Klein noted expenses as follows: (i) paying off the Trust Deed in the amount of $205,987.15, $192,824 of which came from "monies held in various bank accounts"; (ii) $10,000 of attorney's fees; (iii) $4,200 for CPA fees, Court costs, and Bonding fees; and (iv) $156,684 in taxes paid for 2008, 2010, and 2011.  Klein noted a balance of $61,349.85 in his account for the benefit of Plaintiff and Jacob after issuance of a $10,400 check to Jacob to "reimburse him for his one half of the taxes which [Klein] paid to the IRS for the fees that were bounced by [Plaintiff]."

**COMPLAINT**

20.     To date, Klein has not filed a Petition for Discharge as Special Administrator despite acknowledging having paid off the Trust Deed prior to July 27, 2011.  Upon information and belief, Klein has charged Plaintiff and Jacob a yearly fee to act as a fiduciary.  In addition, upon information and belief, Klein has wasted Trust funds by paying $800 per year for a Bond that is entirely unnecessary.

21.     Upon information and belief, Klein represented to Holley Property Management Company that he was legally authorized as Trustee and/or Special Administrator to collect the rental income from the Trust properties.

22.     Upon information and belief, despite having no legal authority to handle the rental income of the Trust properties, Klein has collected all of the rental income from the four (4) properties titled in the name of the Trust from Holley Property Management Company from March of 2010 through March of 2021, for ADI VENDRIGER, and August of 2021, for Jacob Vendriger.

23.     Upon information and belief, Klein has failed to provide sufficient and accurate accountings to Plaintiff, as required by Probate Code §1060 et seq., despite numerous requests to do so.

24.     Upon information and belief, Klein has failed to accurately report the actual distributions made to the Plaintiff and/or the proper taxing authorities. For example, in 2020, Klein filed a fiduciary tax return for the Trust indicated a Distributable Net Income of $226,536 and actual distributions of $240,000 ($120,000 to ADI and $120,000 to Jacob); however, ADI only actually received distributions totaling $90,000.  In addition, statements provided by Holley Property Management Company show actual owner distributions totaling almost $346,000, which leaves $116,000 unaccounted for.

25.     Upon information and belief, Klein has engaged in a similar practice of over-reporting the actual distributions made to Plaintiff.  Upon information and belief, such over-reporting was done in efforts to cover Klein's misappropriation of client fund.

///

**COMPLAINT**

26.     Upon information and belief, Klein has failed to accurately report the reserves being held for the benefit of Plaintiff to the Plaintiff and/or the proper taxing authorities.  For example, upon information and belief, Klein should have approximately $1,400,000 held in his account for the benefit of Plaintiff and Jacob.  On March 24, 2021, Klein indicated he held a balance of only $220,000 in his attorney expense account because of an IRS claim for $80,000.

27.     Upon information and belief, Klein's failure to prepare declarations to be submitted to the Israeli Taxing Authorities indicating the reserves held by Klein, despite Plaintiff's numerous demands for Klein to do so, have put Plaintiff in jeopardy of incurring additional taxes and penalties imposed by the Israeli Taxing Authorities.

28.     Upon information and belief, Klein has misappropriated the funds that constitute the difference between the amount Klein is believed to be holding on behalf of Plaintiff and Jacob and the amount Klein is reporting to be holding on their behalf.

29.     Upon information and belief, Klein has also played favorites and has made distributions to Jacob while simultaneously withholding distributions from Plaintiff, despite Plaintiff's repeated demands for distributions to be made to avoid Plaintiff becoming destitute and filing for bankruptcy due to an inability to pay his creditors.

## RECOVERY AND DAMAGES

30.     Plaintiff hereby seeks recovery of the funds wrongfully held by Klein in full plus interest.  Plaintiff also seeks punitive damages against Klein for fraud, conversion, and breach of fiduciary duty.  Law firm trust accounts comprised of funds belonging to other people cannot be used as a lawyer's private bank account.  Misuse of an attorney's trust account is among the most egregious misconducts an attorney can commit.  This is the sort of conduct that leads to the public's mistrust of the legal profession.

31.     Plaintiff is seeking damages and attorney's fees and costs under Probate Code § 859 as a result of Klein's bad faith wrongful taking, concealing, and/or disposing of property belonging to a trust.

///

**COMPLAINT**

32.     Plaintiff also seeks recovery of attorney fees and costs against all defendants on the grounds of tort of another for fraud, breach of fiduciary duty, and conversion.  Plaintiff has been required through the tort of another to act in the protection of their interests by bringing this action against all Defendants. Plaintiff is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures suffered or incurred.

## FIRST CAUSE OF ACTION

### (Fraud – Against All Defendants)

33.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 32, inclusive, above as if fully set forth herein.

34.     When Klein filed the Petition for Special Administrator, he expressly represented to the Court and to Plaintiff and Jacob that the powers he would exercise, including those obtained under the Power of Attorney, would be limited to paying the Trust Deed with the funds from the Chase Account, both of which were held by TANIA WENDRIGER, personally, and not in the name of the Trust.

35.     Upon information and belief, when Klein made such representation, Klein knew such representations to be false.  Upon information and belief, Klein knew that he would use the appointment as Special Administrator to gain access and control over Trust funds in order to misappropriate the same.

36.     Upon information and belief, Klein made representations to Holley Property Management Company that he had legal authority, as Special Administrator or as a Trustee, to collect and hold the rental income derived from the Trust properties.

37.     Upon information and belief, when Klein made such representation, Klein knew such representations to be false.

38.     Upon information and belief, Klein made representations to Plaintiff and the IRS, FTB, and Israeli Taxing Authorities that Klein has reported made distributions to Plaintiff in amounts differing from those actually distributed to Plaintiff.  For example, in 2020, Klein reported distributing $120,000 to Plaintiff, who actually received only $90,000 in distributions.

**COMPLAINT**

39.     Upon information and belief, when Klein made such representation, Klein knew such representations to be false.  Upon information and belief, Klein made such misrepresentations to cover the tracks of his misappropriation of client funds.

40.     Plaintiff justifiably relied upon Klein's representations to the Court and Plaintiff as well as Klein's reputation as an officer of the Court that Klein would follow the rules the administration of Estates and the California State Bar's Rules of Professional Conduct.

41.     Plaintiff has been damaged in an amount of not less than $780,000 plus interest as a result of funds that have been wrongfully withheld and/or improperly not distributed.  Klein had no legal authority to collect the rental income of Trust property let alone retain it.  Despite repeated demand by Plaintiff, the funds in Klein's possession have not been returned to Plaintiff.

42.     As the direct, proximate, and foreseeable consequence of the fraudulent conduct of Klein as herein alleged, Plaintiff has suffered actual damages of not less than $780,000, together with interest on that amount as allowed by law.

43.     The conduct of Klein as alleged herein is intentional, malicious, outrageous, and/or carried out with conscious disregard so as to justify an award of exemplary and punitive damages in an amount according to proof.

44.     Plaintiff also seeks recovery of attorney fees and costs against Klein on the grounds of tort of another.  Plaintiff has been required through the tort of another to act in the protection of his interests by bringing this action against Klein.  Plaintiff is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures suffered or incurred.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty – Against All Defendants)

45.     Plaintiffs realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 44, inclusive, above as if fully set forth herein.

46.     Klein, as Special Administrator, as Agent under Power of Attorney, as an attorney, and as a CPA, was a fiduciary to Plaintiff and owed Plaintiff certain fiduciary duties

**COMPLAINT**

including the duties of good faith, integrity, undivided service, competence, candor, diligence, loyalty, and full and fair disclosure.

47.    Upon information and belief, Klein materially and willfully breached his fiduciary duties to Plaintiff by wrongfully representing he had legal authority to act on behalf of the Trust and collect rental income from Trust properties to third parties, including Holley Property Management Company, by wrongfully withholding Plaintiff's funds, by over-reporting distributions to Plaintiff, by paying himself a fiduciary fee despite not being a Trustee and the purpose of appointment of Special Administrator lapsing almost a decade ago, by failing to provide sufficient and accurate accountings, by failing to provide the proper requested documentation for taxing authorities, and by distributing funds in favor of Jacob while concurrently holding Plaintiff's funds without reasonable cause.

48.    Plaintiff has been harmed by Klein's conduct described herein, including the breach of his fiduciary duties to Plaintiff by wrongfully representing he had legal authority to act on behalf of the Trust and collect rental income from Trust properties to third parties, including Holley Property Management Company, by wrongfully withholding Plaintiff's funds, by over-reporting distributions to Plaintiff, by paying himself a fiduciary fee despite not being a Trustee and the purpose of appointment of Special Administrator lapsing almost a decade ago, by failing to provide sufficient and accurate accountings, by failing to provide the proper requested documentation for taxing authorities, and by distributing funds in favor of Jacob while concurrently holding Plaintiff's funds without reasonable cause.

49.    By doing the acts alleged above, Klein breached his fiduciary duties of good faith, integrity, undivided service, competence, candor, diligence, loyalty, and full and fair disclosure toward Plaintiff by acting in his own interests, and in a manner adverse to Plaintiff's best interests.

50.    As a direct, proximate, and foreseeable result of the Klein's breach of his fiduciary duties, Plaintiff has suffered actual damages of not less than $780,000, together with interest on that amount as allowed by law.

///

**COMPLAINT**

51.     Plaintiff is informed and believe and thereon allege that the aforementioned conduct of Klein, was an intentional misrepresentation, deceit, or concealment of material facts known Klein, and was despicable conduct carried out in conscious disregard of his duties and obligations to Plaintiff. Thus, Plaintiff is entitled to recover exemplary and punitive damages against Klein in an amount according to proof at the time of trial.

52.     Plaintiff also seeks recovery of attorney fees and costs Klein on the grounds of tort of another.  Plaintiff has been required through the tort of another to act in the protection of their interests by bringing this action against Klein.  Plaintiff is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures suffered or incurred.

### THIRD CAUSE OF ACTION

### (Conversion – Against All Defendants)

53.     Plaintiffs realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 52, inclusive, above as if fully set forth herein.

54.     Plaintiff, as a 50% beneficiary of the Trust, the terms of which required distribution of the Trust Estate almost one decade ago, owned and had a right to possess the Plaintiff's share of the rental income held by Klein.

55.     Klein intentionally and substantially interfered with Plaintiff's property by taking possession of the Plaintiff's share of the rental income and by refusing to return the Plaintiff's share of the rental income after demand was made for return of the same.

56.     Plaintiff did not consent to Klein's receipt or retention of Plaintiff's share of the rental income.

57.     Plaintiff was harmed by Klein's receipt and retention of the Plaintiff's share of the rental income.

58.     Klein's conduct in receiving and refusing to return the Plaintiff's share of the rental income was a substantial factor in the harm caused to Plaintiff.

///

**COMPLAINT**

59.     Plaintiff has suffered actual damages in the amount of not less than $780,000, plus costs and prejudgment interest at the maximum legal rate provided by law.

60.     Klein's acts and the conduct of Klein was engaged with oppression, malice, and/or fraud. Thus, Plaintiff is entitled to recover exemplary and punitive damages against Klein in an amount according to proof at the time of trial.

61.     Plaintiff also seeks recovery of attorney fees and costs against Klein on the grounds of tort of another.  Plaintiff has been required through the tort of another to act in the protection of their interests by bringing this action against Klein.  Plaintiff is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures suffered or incurred.

### FOURTH CAUSE OF ACTION

### (Money Had and Received – Against All Defendants)

62.     Plaintiffs realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 61, inclusive, above as if fully set forth herein.

63.     Klein received money in the form of the Plaintiff's share of the rental income.

64.     The Plaintiff's share of the rental income received by Klein was not used for the benefit of Plaintiff.

65.     Klein has not given the money received in the form of the Plaintiff's share of the rental income to Plaintiff.

66.     Plaintiff has suffered actual damages in the amount of not less than $780,000, plus costs and prejudgment interest at the maximum legal rate provided by law.

### FIFTH CAUSE OF ACTION

### (Unjust Enrichment– Against All Defendants)

67.     Plaintiffs realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 66, inclusive, above as if fully set forth herein.

68.     Klein received the Plaintiff's share of the rental income from the Trust properties.

///

**COMPLAINT**

69.     Klein was not entitled to receive the Plaintiff's share of the rental income from the Trust properties.

70.     Klein's receipt of the Plaintiff's share of the rental income came at the expense of Plaintiff.

71.     Plaintiff has suffered actual damages in the amount of not less than $780,000, plus costs and prejudgment interest at the maximum legal rate provided by law.

## ACCOUNTING

72.     Plaintiffs realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 71, inclusive, above as if fully set forth herein.

73.     Klein, as Special Administrator, as Agent under Power of Attorney, as an attorney, and as a CPA, was a fiduciary to Plaintiff.

74.     Plaintiff is unable to ascertain and has demanded a full accounting by Klein in order to determine the amount of Plaintiff's assets wrongfully held by Klein.

75.     Upon information and belief, Plaintiff does not have access to view the funds held by Klein since Plaintiff's assets are held in accounts titled in Klein's name or the in the Firm's name.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

### ON THE FIRST CAUSE OF ACTION

1.      Damages in an amount of not less than $780,000;

2.      Interest at the legal rate from and after a date to be proven at trial;

3.      Exemplary and punitive damages in an amount according to proof;

4.      Attorney fees and costs in an amount according to proof;

5.      An accounting of all funds received, disbursed, and held by Klein;

### ON THE SECOND CAUSE OF ACTION

6.      Damages in an amount of not less than $780,000;

**COMPLAINT**

7.    Interest at the legal rate from and after a date to be proven at trial;

8.    Exemplary and punitive damages in an amount according to proof;

9.    Attorney fees and costs in an amount according to proof;

10.    An accounting of all funds received, disbursed, and held by Klein;

### ON THE THIRD CAUSE OF ACTION

11.    Damages in an amount of not less than $780,000;

12.    Interest at the legal rate from and after a date to be proven at trial;

13.    Exemplary and punitive damages in an amount according to proof;

14.    Attorney fees and costs in an amount according to proof;

### ON THE FOURTH CAUSE OF ACTION

15.    Damages in an amount of not less than $780,000;

16.    Interest at the legal rate in an amount according to proof;

### ON THE FIFTH CAUSE OF ACTION

17.    Damages in an amount of not less than $780,000;

18.    Interest at the legal rate from and after a date to be proven at trial;

### ON THE SIXTH CAUSE OF ACTION

19.    An accounting of all funds received, disbursed, and held by Klein;

### ON ALL CAUSES OF ACTION

20.    For general damages to be proven at trial;

21.    For consequential damages to be proven at trial;

22.    For interest as allowed by law;

23.    For restitution as allowed by law;

///

///

///

///

///

**COMPLAINT**

1

2

24.    For reasonable attorney fees and costs; and

25.    For such other and further relief as the Court deems just and proper.

3

4    Dated:  August 27, 2021                    SHUMAKER MALLORY, LLP

5

6                                              By: _____

7                                                 CLARISSE YOUNG SHUMAKER
                                                  BRETT J. WASSERMAN
8                                                 Attorneys for Plaintiff
                                                  ADI VENDRIGER, as Co-Trustee and
9                                                 individually

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**COMPLAINT**

# EXHIBIT A

AMENDMENT TO FIRST AMENDMENT DECLARATION OF TRUST
(OSCAR and TANIA WENDRIGER a.k.a.
VENDRIGER FAMILY TRUST)

THE FIRST AMENDMENT DECLARATION OF TRUST executed on
the 7th day of May 1990, by OSCAR WENDRIGER and TANIA
WENDRIGER as Trustors, and OSCAR WENDRIGER and TANIA
WENDRIGER as Trustees, is hereby amended by said Trustors and
Trustees pursuant to the right to amend reserved under the
original DECLARATION OF TRUST.  This amendment shall replace
in pertinent part any provisions to the contrary in the
original DECLARATION OF TRUST, and shall otherwise amend said
DECLARATION OF TRUST as follows:

1.  Upon the death of the Surviving Trustor, the
Trustee shall distribute the Trust Estate as follows:

(a)  Each grandchild of the Trustors shall
receive the sum of Ten Thousand Dollars ($10,000), increased
six percent (6%) per annum, cumulatively;

(b)  The remainder of the Trust Estate shall
be divided one-half (1/2) to JACOB VENDRIGER, son of the
Trustors, and one-half (1/2) to ADI VENDRIGER, son of the
Trustors, per stirpes.

IN WITNESS WHEREOF, the Original Trustor and Trustee
have executed this Amendment to the DECLARATION OF TRUST this
12th day of March , 1991.

TRUSTOR:                          TRUSTEE:

_____           _____
OSCAR WENDRIGER                   OSCAR WENDRIGER

_____           _____
TANIA WENDRIGER                   TANIA WENDRIGER

STATE OF CALIFORNIA    )
                       )ss.
COUNTY OF LOS ANGELES )

On _March 18_____, 199_, before me, the undersigned, a
Notary Public, in and for said State, personally appeared
_Oscar Umberto Mena Guadron_____, personally known
to me or proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the
within instrument, and acknowledged that he/she/they executed
the same.

                    WITNESS my hand and official seal this _18th_
day of _March_____, 1993 ___

                              _____
                              Notary Public in and for said
                              County and State

OFFICIAL SEAL
Frances Gaughn Hawley
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires APR 11, 1995

### FIRST AMENDMENT TRUST
### WENDRIGER FAMILY

THIS FIRST AMENDED TRUST AGREEMENT replaces the prior Trust
Agreement dated July 10, 1986, and is entered into by and
between OSCAR WENDRIGER and TANIA WENDRIGER, "Husband" and
"Wife," respectively, of the County of Los Angeles, in the
State of California, hereinafter called "Trustors," and OSCAR
WENDRIGER and TANIA WENDRIGER of the State of California,
hereinafter referred to as "Cotrustees."

In construing this Trust the following definitions shall
apply:

1.   Whenever used herein the expression "Trustors" shall
refer to OSCAR WENDRIGER and TANIA WENDRIGER.
2.   Whenever used herein the expression "Original
Cotrustees" shall refer to OSCAR WENDRIGER and TANIA
WENDRIGER.
3.   Whenever used herein the expression "Original Cotrustee"
shall refer to either OSCAR WENDRIGER or TANIA WENDRIGER.
4.   Whenever used herein the expression "Successor Trustee"
shall refer to JACOB a.k.a. YAACOV VENDRIGER and ADI
VENDRIGER.
5.   Whenever used herein the expression "Alternate Trustee"
shall refer to the surviving Successor Trustee and SHLOMO
MENKES.
6.   Whenever used herein the expression "Trustee" shall be
deemed a reference to whomever is serving as Trustee, or
Cotrustees, whether original, successor or alternate.
7.   The initial primary beneficiaries of this Trust Estate
shall be OSCAR WENDRIGER and TANIA WENDRIGER.
8.   The effective date of this Trust Agreement shall be its
date of execution.

I.   TRUST PROPERTY

    A.   Original Trust Estate

        The Trustors acknowledge that they have transferred
to the Trustee without consideration the sum of ten dollars,
along with the following:

PERSONAL PROPERTY:  All tangible and intangible held personal
property that the Trustors, either separately or as community
property, now own or do hereafter acquire, including but not

limited to household furniture, furnishings, and utensils;
equipment and appliances; art; clothing; cash; personal
effects; bank accounts; registered and unregistered
securities; notes receivable; security interests and liens;
interests in partnerships, firms, businesses (including
inventory), and corporations; contract rights; and amounts
due from employers; excluding, however, any and all such
property subject to any (other) trust or power of
appointment; and any property subject to a pledge, security
agreement or legal restriction on transfer.

All such property owned by Trustors shall be considered and
treated as community property unless listed as separate
property in this Trust on Schedule B (the separate property
of husband, if any), and in Schedule C (the separate property
of wife, if any).

All such property, which is hereby delivered by the Trustors
to the Trustee, shall be held, administered, and distributed
by the Trustee as hereinafter set forth.

B.    Additions to Trust Estate

Additional property may be added to the Trust Estate
at any time by the Trustors or either of them, or by any
person or persons, by inter vivos or testamentary transfer.
All such original and additional property is referred to
herein collectively as the Trust Estate, and shall be held,
managed and distributed as herein provided.

1.    Employee Benefit Plans

In the event that any designation of the Trustee
of this Trust as Beneficiary in any employee benefit plan in
which the Trustors may have an interest shall be ineffectual
in whole or in part, the Trustors specifically request that
the committee, or other group having authority to do so under
any such plans, select the Trustee of the Trust as
beneficiary of such plans to the maximum extent possible.
The Trustee may elect the mode of payment which, in the
Trustee's discretion, appears to be the most advantageous
option available to the Trust and/or its then current income,
Beneficiaries in terms of income tax, estate and inheritance
tax, and/or investment return considerations, based on the
Trustee's evaluation of the facts and circumstances relevant
to such considerations as they exist at the time the Trustee
makes such election.  Further, the Trustee may, predicated
upon the foregoing consideration, elect in writing not to
treat the death benefits as a lump sum distribution for
income tax purposes and thus exclude the maximum allowed from

REVOCABLE LIVING TRUST Page 2

estate taxes.  An election by a Trustee in good faith in the
exercise of the discretionary power conferred upon it shall
be final and binding upon all persons whomsoever and shall be
a full acquittance and discharge to the Trustee, and the
Trustee shall not be liable to any person by reason of its
exercise of such discretionary power.

### C.  Character of Property Unchanged

The property comprising the original corpus of the
Trust Estate is community property of the Trustors, except as
otherwise specifically indicated. During the joint lives of
the Trustors, any property transferred to this Trust shall
retain its original character.  All such property shall be
assumed to be community property unless otherwise
specifically indicated in writing by the Trustors.  In the
event of revocation, the Trustee shall distribute such
property to the Trustors based on the same property rights
they had prior to transfer to the Trust. Any and all gifts
made by the Trustors of Trust assets shall constitute a
revocation by the Trustors as to such property, and,
therefore, a gift by any Trustor having an interest in that
property would also constitute a revocation.

## II.  ORIGINAL AND SUCCESSOR TRUSTEES

### A.  Original Cotrustees

The Original Cotrustees under this Declaration of
Trust shall be as hereinabove defined, to serve with all of
the obligation, powers, and authority contained within this
Trust Agreement.

### B.  Death or Resignation of Original Cotrustee

In the event of the death of either Original
Cotrustee, or if for any reason whatsoever he or she ceases
to serve as Cotrustee hereunder, the Trustors nominate and
appoint the remaining Cotrustee to serve as Trustee hereunder
without the approval of any Court.

In the event of the death of both Original
Cotrustees, or if for any reason whatsoever both cease to
serve as Trustee hereunder, the Trustors nominate and appoint
the Successor Trustee as hereinabove defined to serve as
Trustee hereunder without the approval of any Court.  In the
event that the abovenamed Successor Trustee consists of more
than one person then if for any reason whatsoever any of the
aforesaid do not serve or cease to serve as Cotrustee
hereunder, the Trustors nominate and appoint whomsoever of

REVOCABLE LIVING TRUST Page 3

the aforenamed shall be available to serve as Successor
Trustee hereunder without the approval of any court.

In the event of the death of the Successor Trustee
as hereinabove defined, or if for any reason whatsoever he,
she, or they cease(s) to serve or for any reason refuses to
serve as Trustee hereunder, the Trustors nominate and appoint
the designated Alternate Trustee to serve as Trustee
hereunder without the approval of any Court.  In the event
that the Alternate Trustee consists of more than one person
then if for any reason whatsoever any of the aforesaid do not
serve or cease to serve as Cotrustee hereunder, the Trustors
nominate and appoint whomsoever of the aforenamed shall be
available to serve as Successor Trustee hereunder without the
approval of any court.

In the event of the death of the Original Trustors
hereof, and in the event that neither the aforenamed
Successor Trustee or the aforementioned Alternate Trustee is
available then the majority of then living beneficiaries
hereunder who are issue of the Original Trustors hereof shall
have the right to select another Successor Trustee hereunder
to serve without approval of any court.  In the case of minor
beneficiaries, then any guardian of such a beneficiary shall
act on behalf of such minor beneficiary to select a Successor
Trustee.

C.  Discharge or Resignation of Trustee

The Trustors shall have the right to discharge the
Trustee of any Trust hereunder.  Discharge of a Trustee shall
be by delivery to such Trustee of thirty (30) days' written
notice of discharge, accompanied by the name of the intended
Successor Trustee.

D.  Duties and Responsibilities of Successor Trustees

No Successor Trustee shall have any responsibility
for any acts or omissions of any prior Trustee and no duty to
audit or investigate the accounts or administration of any
such Trustee; nor, unless in writing requested to do so by a
person having a present or future beneficial interest under a
Trust hereunder, any duty to take action to obtain redress
for breach of trust.  It is the intent of the Original
Trustors that the Successor Trustee shall not be required to
obtain Court approval, discharge, or pursue any other Court
proceedings at the request of income Beneficiaries without
first attempting to obtain releases from the majority of the
adult income Beneficiaries with such release and discharge
being completely adequate as to all responsibilities

REVOCABLE LIVING TRUST Page 4

incumbent upon the Trustee. However, under any circumstances, any claim or action against any previous Trustee must in any event be asserted or filed by any Beneficiary within one (1) year after the appointment of a Successor Trustee.

    E.  Bond

      No Trustee shall be required to post bond or any other security for the faithful performance of any duties or obligations of such office.

## III. INITIAL TRUST

      The Trustee shall hold, manage, invest, and reinvest the Trust Estate and shall collect the income thereof, and shall, upon demand of the Trustors, pay to the Trustors during their joint lives all community net income of the Trust Estate and shall pay to each Trustor all separate net income from his or her respective share of the Trust Estate. In the event that the Trustors do not demand payment of the net income of community property, or if either of the Trustors fails to demand distribution of separate property net income, then the Trustee may at his discretion accumulate such income, and such income will become property of the Trust Estate.

      The Trustee shall further pay community property principal, up to the whole thereof, to the Trustors upon written request. Upon the written request of the Trustor who transferred separate estate property to the Trust, the Trustee shall pay so much of the principal of the separate estate established by such Trustor, up to the whole thereof, as he or she shall request.

## IV. REVOCATION AND AMENDMENT

      Either of the Trustors, during their joint lives, may at any time and upon successive occasions, revoke this Trust in whole or in part. The Trustors may jointly alter or amend any of its provisions. Any Amendment may be similarly cancelled or amended. If a Trustor is incompetent, such power to revoke, alter or amend the Trust may be exercised by the guardian or conservator at the direction of a Court of competent jurisdiction where such court approval is required.

      From and after the death of either of the Original Trustors, this Agreement, insofar as it relates to the SURVIVOR'S TRUST, may be revoked or amended at any time and from time to time by the Survivor delivering written notice of revocation or amendment to the Trustee; provided, however,

REVOCABLE LIVING TRUST Page 5

that the duties and liabilities of the Trustee cannot be increased without its consent. In the event of any revocation, the revoking party or parties shall indemnify the Trustee in a manner satisfactory to it against liabilities lawfully incurred by the Trustee in the conduct of its office. If a Survivor is incompetent, such power to revoke, alter or amend the Trust may be exercised by the guardian or conservator at the direction of a Court of competent jurisdiction. Except as hereinabove provided, this Agreement, and the Trusts evidenced hereby, are irrevocable and shall not be subject to amendment.

V.    DISTRIBUTIONS ON DEATH OF EITHER TRUSTOR

Upon the death of the Original Trustor hereof whose death shall occur first, the Trustee shall make any such distributions of specific gifts which are itemized and listed on Schedule D (the Specific Gift Distribution Schedule) which is attached hereto and incorporated herein by reference. With reference to any specific gifts made in accordance with Schedule D, whether referenced in this Article V or Article VI below, the following shall apply. In the event that a Beneficiary does not survive the decedent spouse, any gift to the deceased Beneficiary shall lapse and pass as part of the rest and residue of the Trust Estate.

Thereafter, the Trustee shall divide the Trust Estate, including all property received as a result of the Decedent's death, into two parts, each part to be administered as a separate Trust to be known respectively as the "SURVIVOR'S TRUST," and the "DECEDENT'S TRUST." Reference hereafter to the "DECEDENT" shall refer to either of the Trustors whose death shall first occur, and reference to the "SURVIVOR" shall refer to the Surviving Trustor.

A.    Decedent's Trust

The DECEDENT'S TRUST shall include an amount equal to the lesser of the equivalent Estate Tax Exemption in effect during the year of the death of the decedent, or one-half (1/2) of the Trust Estate.

As a method of illustration of specific amounts for the Estate Tax Exemption, the Trustee is directed to

REVOCABLE LIVING TRUST Page 6

distribute to the DECEDENT'S TRUST an amount equal, in each year, to the amounts as indicated below.

|  | EQUIVALENT ESTATE |
| DATE OF DEATH | TAX EXEMPTION |
| 1990 and after | $600,000 |

In determining the equivalent Estate Tax Exemption, the Trustee is to take into consideration any lifetime gifts made which may decrease the actual amount available to transfer to the DECEDENT'S TRUST. The Trustors acknowledge that their intent is that the amount to be distributed to the DECEDENT'S TRUST shall not exceed an amount which will provide for a zero (0) tax upon the death of the first of the Trustors to die.

B.  Survivor's Trust

All of the rest and residue of the assets of the Trust Estate shall be allocated to the SURVIVOR'S TRUST.

C.  Other Transfers

In the event that property is received by the Trustee, either by Inter Vivos or Testamentary Transfer, and directions are contained in the Instrument of Transfer for allocation to or between the SURVIVOR'S TRUST and the DECEDENT'S TRUST, than the Trustee shall make allocation in accordance with such directions, anything to the contrary notwithstanding.  In the event no specific instructions are given as to allocation, such property as is received from a source other than the Trustors (or either of them), shall be placed in the SURVIVOR'S TRUST.

VI.  SURVIVOR'S TRUST

A.  Distribution of Income

All the net income shall be distributed in convenient installments not less frequently than quarterly to the Survivor during his or her lifetime.

B.  Powers of Appointment of Principal

During his or her lifetime, the Survivor shall have a general power to appoint the principal and any undistributed income of the SURVIVOR'S TRUST or any part thereof, to himself or herself, or to any person or persons.

REVOCABLE LIVING TRUST Page 7

Upon the death of the Survivor, he or she shall have the power to appoint the principal and any undistributed income of the SURVIVOR'S TRUST or any part thereof to his or her Estate or any person or persons, or to the DECEDENT'S TRUST. Such power of appointment shall be exercised only by means of written directions executed by the Survivor and delivered to the Trustee during the lifetime of the Survivor. If the Survivor executes and delivers more than one such written direction to the Trustee, the last one shall control unless, by its context, the Survivor clearly indicates otherwise.

C.  Death of Survivor

Upon the death of the Survivor, the SURVIVOR'S TRUST shall terminate.  The Trustee shall distribute the Trust Estate in accordance with and to the extent provided by the Survivor's exercise of his or her power of appointment.  All specific gifts itemized and listed on Schedule D hereof to be distributed by the Trustee at that time shall then be distributed by the Trustee.  Any part of the Trust Estate with respect to which the Survivor shall not have exercised his or her power of appointment shall become a part of the trust established under Article VIII hereof, and be administered by the Trustee, in accordance with the provisions set forth herein.

VII. DECEDENT'S TRUST

A.  Distribution of Income

All of the net income shall be distributed in convenient installments, not less frequently than quarterly, to the Survivor during his or her lifetime.

B.  Distribution of Principal

The Trustee shall also distribute principal to the Survivor, which in the sole discretion of the Trustee is necessary to provide proper support for the Survivor as defined under Article IX and Article XXII. A.2.

C.  Survivor's Power of Appointment

The Survivor, during his or her lifetime, shall have the power to appoint the principal and undistributed income of the Trust Estate, or any part thereof, to himself or to herself, or to any person or persons; however, the Survivor may exercise said power of appointment during any calendar year only to the extent of Five Thousand Dollars ($5,000) or

REVOCABLE LIVING TRUST Page 8

five percent (5%) of the aggregate value of the Trust Estate,
whichever amount shall be greater.  Any such power of
appointment shall not be construed to be cumulative and if
not exercised in any calendar year, such power shall be
terminated as to that year.  Such power of appointment shall
be exercised only by means of written direction executed by
the Survivor and delivered to the Trustee during the lifetime
of the Survivor.  If the Survivor executes and delivers more
than one such written direction to the Trustee, the last one
shall control unless, by its context, the Survivor clearly
indicates otherwise.

D.  Death of Survivor

Upon the death of the Survivor, the DECEDENT'S TRUST
shall terminate, and shall become a part of the Trust created
under Article VIII, and be administered in accordance with
the provisions of said Article.

VIII.CHILDREN'S TRUST

A.  Income and Principal Prior to Division

Prior to division of the Children's Trust as
provided for in Paragraph C hereinafter, the Trustee is
directed to add any undistributed income to the principal.

B.  Advancements

1.  Request for Advancements

Any Beneficiary of this Trust may, at any time,
and upon successive occasions, by written instrument filed
with the Trustee, request an advancement or advancements on
his or her ultimate anticipated share of the Children's
Trust.  If, in its sole discretion, the Trustee determines
that the requested advancement or advancements will be used
for a worthy objective then the Trustee may make such
advancement or advancements in whole or in part from the
Beneficiary's share of the Trust.  As used herein, the term
"worthy objectives" may include, but not be limited to, the
purchase of a home appropriate to the needs and circumstances
of the Beneficiary; the acquisition of a business interest in
keeping with the age, training and experience of the
Beneficiary, provided that such business interest is needed
for the support of the Beneficiary and his or her family, and
further provided that there is a reasonable probability of
success in the judgment of the Trustee; and the continuance
of the education of any Beneficiary on a full-time program in
an institution of higher learning either on an undergraduate

or graduate level or at a trade or vocational school, with
expenses including, but not limited to, tuition, books,
laboratory fees, room, board and a reasonable spending
allowance.  The Trustee shall incur no liability or
obligation to any Beneficiary or any other person by an
exercise, or nonexercise, in good faith of its discretion
hereunder.

C.   Division of Children's Trust

1.   Time of Division

The Children's Trust shall be divided into
shares immediately upon the death of the survivor of the
Original Trustors.

2.   Terms of Division

The Trustee shall divide two-thirds of all of
the assets then remaining in the Children's Trust, without
making any adjustments for payments for support and
maintenance for any Beneficiary as provided for under Article
X, into equal shares with one share for each of the Trustors'
then living children and one share for each deceased child of
the Trustors who then has issue surviving.  The sole children
of the Trustors are YAACOV a.k.a. JACOB VENDRIGER and ADI
VENDRIGER.

The Trustee shall divide the remaining one-third
of the Trust Estate into as many shares as there are then
living grandchildren.  The share arising out of the existence
of each grandchild shall be added to the share of the parent
of such grandchild for the benefit of said parent.

The division shall be on a per stirpes basis,
except that if none of the Trustors' children survive and if
only grandchildren survive, the division into shares shall be
on a per capita basis.  The share of each deceased child
shall be divided into proportionate smaller shares, or
subshares, for each of such deceased child's then living
issue.  After the division of the assets into shares and
subshares as provided above, the shares shall be distributed
and/or held as hereinafter provided.

D.   Distribution and Administration of Children's Trust

The Trustee shall distribute the respective share or
subshare to any Beneficiary who is a child of the Trustors
immediately upon the death of the Survivor of the Trustors.

REVOCABLE LIVING TRUST Page 10

Trustee shall distribute the respective share or subshare to any Beneficiary who has attained the age of thirty years old.  For any Beneficiary who has not attained the age of 30, the following procedures shall govern.

Upon the division of the Children's Trust into shares and subshares and subsequent thereto; income from each share or subshare therefrom shall be paid not less than quarter-annually to or for the benefit of the respective Beneficiary.  In addition to income, the Trustee shall distribute the principal from the respective share or subshare to the Beneficiary upon the Beneficiary's attaining or having attained the age of 30.

In the event a Beneficiary of the Trustors dies with funds remaining in his or her share or subshare, then such funds shall be paid to his or her then living issue, or if there be no living issue, then to the remaining Beneficiaries of the Trustors, as and in the manner provided for under "Terms of Division."

In the event a Beneficiary elects to have the Trustee continue to administer the distributed portion of the share or subshare, to which such Beneficiary is entitled as hereinbefore provided, or any part thereof, the Trustee may continue to administer such Beneficiary's interest as a separate Trust share in accordance with the terms of Article X and XI hereof, subject to the continuing right of such Beneficiary to withdraw at any time the amounts of said separate Trust share.  If a Beneficiary dies with funds remaining in his or her separate Trust share, such funds shall be paid as he or she designated by testamentary or inter vivos disposition, and failing same, to his or her estate.   Upon the termination of any share, if any assets are distributable to a person who is not yet entitled to distribution, then the distributable share of such Beneficiary shall at once vest in him or her, but the Trustee in its sole discretion, may continue to hold such distributable share until said Beneficiary is entitled to distribution, using so much of the income and/or principal thereof as may be necessary in the opinion of the Trustee for the support of such beneficiary and paying to such Beneficiary the then remaining assets of his or her share upon his or her becoming entitled to distribution.  If the said Beneficiary dies prior to such time as he or she would be entitled to distribution, all the remaining assets of such individual's interest in the Trust share otherwise payable to him or her shall be paid to the estate of such Beneficiary.

REVOCABLE LIVING TRUST Page 11

E.   Provision for Grandchildren

If, prior to the termination of the Children's Trust, any of the Trustors' children are deceased with issue surviving, then the Trustee may, in its discretion, support such issue of deceased children as though they were children of the Trustors.

F.   Termination

1.   No Issue Surviving

In the event that no issue of the Trustors survive the Trustors' deaths, or survive the distribution of the Trust Estate, then and in that event all of the assets that would have been a part of the Trust Estate shall be distributed in the following manner: any assets of the Trust Estate which for any reason cannot be distributed in this manner shall be distributed fifty percent to the otherwise lawful heirs free of trust and fifty percent to charitable facilities in Israel for the benefit of injured soldiers.

2.   Discretionary Termination

Any time that a Trust or Trust share created under this Agreement has, in the judgment of the Trustee, a value so low that the expenses of maintaining the Trust cannot be reasonably justified, the Trustee may, in its discretion, but is not required to, terminate such Trust or Trust share.  In case of such termination, the Trustee shall distribute forthwith the share so terminated to the primary Beneficiaries thereof.

3.   Mandatory Termination

The Trust Estate shall terminate in any and all events not later than twenty-one (21) years after the death of the last surviving Beneficiary herein named who is living at the time of death of the Decedent, it being the intent of the Trustors that this Trust Agreement shall be interpreted so as not to violate the Rule Against Perpetuities.  The Trust Estate, upon such termination, shall be distributed to the Beneficiaries for whom, at that time, a share or subshare has been set aside, each such Beneficiary to receive his or her share or subshare and any accumulations thereon.

IX.   SUPPORT AND MAINTENANCE

If the Trustee of any Trust hereunder deems the net income payable from such Trust not sufficient to support any

REVOCABLE LIVING TRUST Page 12

Beneficiary entitled to receive such support pursuant to the terms of this Trust Agreement, then the Trustee may, as often as it deems necessary, pay to or apply for the use and benefit of such Beneficiary such part of the principal of such Trust, up to and including the whole thereof, as the Trustee in its discretion believes necessary for the support of such Beneficiary.

A.  Standards

In exercising its discretion hereunder, the Trustee shall take into consideration the income, earning capacity, resources and other sources of receipt of the Beneficiary, together with any other factor which the Trustee may deem pertinent, including the accustomed manner of living of such Beneficiary, but need not require the exhaustion of personal resources as a condition for making disbursements under the authority of this paragraph.  The judgment of the Trustee as to the propriety and amount of all such payments shall be conclusive.

Notwithstanding any provision to the contrary, the Trustee shall not distribute principal except within the standards of Internal Revenue Code 2041.

B.  Evidence of Need

The Trustee may, in its discretion, require as a condition precedent to the distribution of any Trust assets for support or advancement, that the Beneficiary furnish evidence of his or her financial condition, income, earning capacity and assets, in form and content satisfactory to the Trustee. The Trustee shall be entitled to rely upon the written certification of such Beneficiary or the guardian of such Beneficiary as to the nature and extent of such Beneficiary's needs for support, and the inadequacy of such Beneficiary's resources apart from the Trust. The Trustee shall not be required to make further inquiry as to the authenticity of the facts so certified.

C.  Preferences

In exercising its discretion hereunder, the Trustee is to consider the needs of the Survivor for support as the primary purpose of the Trusts during his or her lifetime, even if the satisfaction of such needs requires invasion of the entire Trust Estate.

After the death of the Survivor, the support of the children shall be paramount to the conservation of the Trust

Estate for the benefit of those who will be entitled to take
it on termination.  The Trustee shall, in exercising the
discretion given herein for the benefit of the children or
their issue, do so in such a manner as will encourage thrift,
industry, and self-reliance to the maximum extent practicable
by the respective Beneficiaries, and discourage extravagance
or indolence on the part of any such Beneficiary.

D.  Guardian's and Conservator's Expenditures

The Trustors do not desire that the guardian or
Conservator of any Beneficiary should incur personal expense
for the support of such Beneficiary.  The Trustee shall
disburse funds from such Beneficiary's Trust Estate for the
purpose of reimbursing such guardian or conservator for
reasonable expenses incurred in accommodation of such
Beneficiary.

X.    POWERS OF TRUSTEE

The Trustee shall have the following powers, duties and
discretions in addition to those otherwise granted herein or
by law, and except as elsewhere herein specifically
restricted.

A.  Retention

The Trustee shall have the power to retain, without
liability for loss or depreciation resulting from such
retention, the original assets and all other property
hereafter transferred, devised or bequeathed to the Trustee,
although such property may not be of the character prescribed
by law or by the terms of this instrument for the investment
of other Trust assets; and, although it represents a large
percentage or all of the Trust Estate, this said original
property may accordingly be held as a permanent investment.

The Trustee shall have the power, with respect to
any business interest that may become a part of the Trust
Estate, whether organized as a sole proprietorship,
partnership, or corporation, and upon such terms for such
time and in such manner as it may deem advisable, to hold,
retain and continue to operate such business solely at the
risk of the Trust Estate and without liability on the part of
the Trustee for any losses resulting therefrom; to dissolve,
liquidate, or sell at such time and upon such terms as the
Trustee may deem advisable; to incorporate such business and
hold the stock as an asset of the Trust Estate; to use the
general assets of the Trust for the purpose of the business;
to borrow money for business purposes and pledge or encumber

REVOCABLE LIVING TRUST Page 14

the assets of the business or the other assets of the Trust
Estate to secure the loan; to employ such officers, managers,
employees or agents as it may deem advisable in the
management of such business, including electing directors,
officers, or employees of the Trustee to take part in the
management of such business as directors or officers.

### B.  General Property Powers

The Trustee shall have all such powers and is
authorized to do all such acts, take all such proceedings and
exercise all such rights and privileges in the management of
the Trust Estate as if the absolute owner thereof, including,
without limiting the generality of the terms, the right to
manage, control, sell, convey, exchange, partition, assign,
divide, subdivide, improve, or repair; to grant options and
to sell upon deferred payments; to lease for terms within or
extending beyond the duration of the Trust concerned for any
purpose, including the exploration for and removal of oil,
gas and other minerals; to enter into community oil leases,
pooling and unitization agreements; to create restrictions,
easements and other servitudes; to compromise, arbitrate or
otherwise adjust claims in favor of or against the Trust; to
institute, compromise and defend actions and proceedings at
the expense of the Trust Estate; and to carry such insurance
as the Trustee may deem advisable.

### C.  Powers Regarding Securities

The Trustee shall have, respecting securities, all
the rights, powers and privileges of an owner, including the
right to vote stock, give proxies, pay assessments and other
sums deemed by the Trustee to be necessary for the protection
of the Trust Estate; to participate in voting trusts, pooling
agreements, foreclosures, reorganizations, consolidations,
mergers and liquidations, and in connection therewith, to
deposit securities with and transfer title to any protective
or other committee under such terms as the Trustee may deem
advisable; to exercise or sell stock subscription or
conversion rights; to open an account with a brokerage firm
of the choosing of the Trustee in the Trustee's name, in its
own behalf for the purpose of purchasing and selling of all
kinds of securities and authorizing such brokerage firm to
act upon any orders, including margin orders, options, both
covered and uncovered, instructions with respect to such
accounts and/or the delivery of securities or money therefrom
and received from said Trustee; and to retain as an
investment any securities or other property received through
the exercise of any of the foregoing powers.  The Trustee is
further authorized to sign, deliver and/or receive any

REVOCABLE LIVING TRUST Page 15

documents necessary to carry out the powers contained within this paragraph.

### D.    Exercise Stock Options

The Trustee is expressly authorized in the Trustee's sole discretion to exercise any option to purchase stock under any stock option purchase plan in which any Decedent Beneficiary is a participant or may hold such option rights to the extent that any such option rights may be exercised by the Trustee even though the stock involved is stock of a corporation which may be serving as corporate Trustee hereunder, regardless of the amount of such stock or the percentage of the Trust Estate which may be invested in such stock before or after any purchase under such option.

### E.    Investment Powers

#### 1.    General

The Trustee has the power to invest and reinvest principal and income, to purchase or acquire therewith every kind of property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, shares in one or more mutual funds, in any Common Trust Funds administered by the Trustee, corporate obligations of every kind, and stock, preferred or common, which persons of prudence and discretion and intelligence acquire for their own accounts.

The Trustee is further authorized to buy, sell and trade in securities of any nature (including short sales) on margin, and for such purposes may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by him with such brokers as security for loans and advances made to the Trustee.

#### 2.    Life Insurance and Annuities

The Trustee is authorized in the Trustee's discretion to maintain and/or purchase policies of life insurance and/or annuities on the life or for the benefit of any Trust Beneficiaries and to hold and pay for the same as an investment and asset of the Trustee, at any time and upon successive occasions, the premiums to be charged against income or principal, as the Trustee shall determine.

The Trustee shall have the following powers, duties and discretions with respect to policies of life insurance held as a part of the Trust Estate:

REVOCABLE LIVING TRUST  Page 16

a.    The Trustee may pay premiums, assessments or other charges with respect to such policies together with all other charges upon such policies or otherwise required to preserve them as binding contracts, but shall be under no duty to do so.

b.    In the event that the Trustee intends not to pay any premium, assessment or other charge with respect to any policy held by it, or otherwise intends to cancel, convert or substantially modify any such policy, it shall first give the insured, or the guardian of the person of an insured under disability, at least fifteen (15) days' advance written notice of its intention to take such action.

c.    Any amounts received by the Trustee with respect to any policy as a dividend shall be treated as principal.

d.    Upon the receipt of proof of death of any person whose life is insured for the benefit of any Trust hereunder, or upon maturity of any policy payable to a Trustee prior to the death of the insured, the Trustee shall collect all sums payable with respect thereto and shall thereafter hold such sums as principal of the respective Trust Estate, except that any interest paid by the insurer for a period subsequent to maturity shall be considered as income.

e.    The Trustee may accept any payments due it under any settlement arrangement made before or after the death of the insured and may exercise any rights available to it under such arrangement.

f.    The Trustee may compromise, arbitrate or otherwise adjust claims upon any policies, and may, but shall not be required to exercise any settlement options available under such policies.  The receipt of the Trustee to the insurer shall be a full discharge and the insurer is not required to see to the application of the proceeds.

F.    Determination of Income and Principal

The Trustee shall have the power and the authority to determine income and principal, and how receipts and disbursements, including the fees of the Trustee, shall be credited, charged or apportioned as between income and principal; however, all such determination shall be made in accordance with the law of the state of the situs of the Trust and the decision and the accounts of the Trustee in

REVOCABLE LIVING TRUST   Page 17

accordance with said provisions shall be binding on all persons in interest.

Notwithstanding the foregoing, the Trustee shall: (1) allocate to principal all dividends or other payments made by any corporation or mutual investment company that are designated by the company as a distribution of capital gains; (2) where a premium has been paid or a discount received in connection with the purchase of a bond, amortize such premium or discount by making an appropriate charge or credit to income as the case may be; and (3) charge income from time to time with a reasonable reserve for (a) depreciation of all income-producing depreciable real or personal property, and capital improvements and extraordinary repairs on income-producing property; (b) depletion of all depletable natural resources; and (c) all intangible property having a limited economic life. Such allocations and charges need not be made, however, if written consents are obtained from all income Beneficiaries and remaindermen, vested or contingent, living and competent to act.

G. Authority to Borrow and Encumber

Trustee shall have the power to borrow money for any Trust purpose upon such terms and conditions as the Trustee may deem proper, and to obligate the Trust Estate for repayment and to encumber the Trust Estate or any of its property by mortgage, deed of trust, pledge or otherwise, using such procedure to consumate the transaction as the Trustee may deem advisable.

In addition to the power to encumber property for a loan bring made to the Trust, the Trustee is specifically authorized and empowered to obligate, hypothecate and encumber the estate by mortgage, deed of trust, pledge or otherwise, or whatever form the Trustee deems appropriate, or to act as a third party guarantor to guarantee private borrowings of the Trustors or either of them during their joint lifetime. Upon the death of the decedent, such guarantee may only be made from the Survivor's Trust.

H. Loans

1. To Trust

The Trustee shall have the power to, in the Trustee's discretion, advance funds to any Trust herein created for any Trust purpose, such advances with interest at current rates to be a first lien on and be repaid out of principal and as an expense of the Trust; and to reimburse

REVOCABLE LIVING TRUST   Page 18

the Trustee from principal or accumulated income for any loss or expense incurred by reason of the Trustee's ownership or holding of any property in this Trust.

    2.  To Beneficiaries

The Trustee may, at any time and upon successive occasions, loan such sums to the Beneficiaries or any of them as the Trustee shall deem advisable and in the best interest of the Beneficiaries, such loan or loans, if made, to bear interest at the prevailing rate and to be unsecured or secured, as the Trustee may, in the Trustee's discretion, direct. Provided, however, that the Trustee shall have wide discretion in the making or denial of any such loan, and the Trustee's judgment in the matter shall be conclusive and binding on any Beneficiary requesting any such loan.

    I.  Distributions to or for Minor or Incompetent

If at any time any Beneficiary entitled to receive income and/or principal hereunder shall be a minor or an incompetent or a person whom the Trustee deems to be unable, wisely or properly, to handle funds if paid to him or her directly, the Trustee may make any such payments, in the Trustee's discretion, in any one or more, or any combination, of the following ways:

    1.  Directly to such Beneficiary, or

    2.  To the natural guardian or the legally appointed guardian, conservator or other fiduciary of the person or estate of such Beneficiary, or

    3.  To any person or organization furnishing support for such Beneficiary, or

    4.  By the Trustee retaining the principal and making expenditures directly for the support of such Beneficiary.

The Trustee shall not be required to see to the application of any funds so paid or applied, and the receipt of such payee if disbursed for such purpose in the best judgment of the Trustee shall be full acquittance to the Trustee. The decision of the Trustee as to direct payments or application of funds in the manner herein prescribed shall be conclusive and binding upon all parties in interest if made in good faith. The Trustee is requested to make all such disbursements in a way calculated to dispense with the necessity of guardianship proceedings.

REVOCABLE LIVING TRUST   Page 19

The Trustee may, in its sole and absolute discretion, require such reports and take such steps as it may deem requisite to assure and enforce the due application of such money to the purposes aforesaid.

J.    Disbursement for Funeral and Last Illness

The Trustee may pay for the last illness, funeral and burial expenses of either Trustor or of any other Beneficiary of this Trust unless adequate provision shall have been made therefor through his or her Probate Estate or otherwise.

K.    Notification of Trustee

Until the Trustee shall receive written notice of any birth, marriage, death, or other event upon which the right to payment from this Trust may depend, the Trustee shall incur no liability for disbursements or distributions made or omitted in good faith.

L.    Division of Trusts

In making the distributions to any Trust or share created under this Agreement, the judgment of the Trustee concerning the valuation of assets distributed shall be binding and conclusive upon all Beneficiaries.  The Trustee may distribute the shares to the various Trusts or to Beneficiaries by making distribution in cash, or in kind, or partly in cash and partly in kind, or in undivided interests, in such manner as the Trustee, in its sole and absolute discretion, deems advisable.  The Trustee may sell such property as it deems necessary to make any such division or distribution.  The Trustee shall not be required to make physical division of the Trust property, except when necessary for the purposes of distribution, but may, in the Trustee's discretion, maintain and keep the assets of any separate trusts in one or more consolidated trust funds, and as to each consolidated trust fund, the division into various shares comprising such trust fund nsed to be made only upon the Trustee's books of account, in which each separate trust shall be allotted its proportional share of its principal and income of the consolidated fund and shall be charged with its proportionate part of expenses thereof.

M.    Provision for Taxes

Upon the death of either Trustor or of any other Beneficiary, any estate, inheritance, succession or other

REVOCABLE LIVING TRUST  Page 20

death taxes, duties, charges or assessments, together with interest, penalties costs, Trustee's compensation and attorney's fees which shall become due by reason of the Trust Estate or any interest therein being includable in the Estate of either Trustor, or of such other Beneficiary, for such tax purposes, may be paid from the Trust Estate by the Trustee, in its discretion, unless other adequate provision shall have been made therefore. Any such payments shall be charged to the principal of the Trust Estate. The Trustee may make such payments directly, or to the Executor or other fiduciary of the Trustors or such other Beneficiary, and may rely upon the written statement of such fiduciary as to the amount and propriety of such taxes, interest, penalties and other costs. The decision of the Trustee as to any such payments shall be conclusive and binding upon all parties interested in this Trust or such Estate. If the Trust Estate shall be then insufficient or if it be then terminated the Trustee shall be reimbursed by the persons to whom the Trust Estate shall have been distributed, to the extent of the amount received by each distributee. The Trustee, before making any distribution of either income or principal, may accordingly require a refunding agreement or may withhold distribution pending determination or release of any tax lien.

The Trustee is authorized to acquire by purchase, exchange or otherwise, property, real, personal or mixed., from the Executor or Administrator of the Estate of any Beneficiary of this Trust, even though such property may not be of a character prescribed by law or by the terms of the Trust instrument for the investment of Trust funds, and although the acquisition of such property may result in a large percentage or all of the Trust Estate being invested in one class of property. The Trustee is expressly authorized to retain the property so acquired so long as it shall deem this advisable and to make secured or unsecured loans to the Executor or Administrator of such Estate upon such terms as the Trustee shall deem advisable, such procedures being authorized to the extent that they do not adversely affect or diminish the marital deduction available to the Estate. Such purchases or loans shall be without liability to the Trustee for loss resulting to the Trust Estate therefrom. In any dealings with the fiduciary of the Estate, the Trustee may rely upon the statement of such fiduciary as to all material facts.

Any portion of the Trust Estate which was received from any qualified plan as described in Section 2039 of the Internal Revenue Code of 1954, as amended, or any subsequent like or similar law, may not be used for any purpose described in this Article, which would result in inclusion of

REVOCABLE LIVING TRUST    Page 21

said funds in the taxable Federal Estate of the Trustor so long as other sources of funds are available.

If the Trustee considers that any distribution from a Trust hereunder other than pursuant to a power to withdraw or appoint is a taxable distribution subject to a generation-skipping tax payable by the distributee, the Trustee shall augment the distribution by an amount which the Trustee estimates to be sufficient to pay the tax and shall charge the same against the Trust to which the tax relates.  If the Trustee considers that any termination of an interest in or power over Trust property hereunder is a taxable termination subject to a generation-skipping tax, the Trustee shall pay the tax from the Trust property to which the tax relates, without adjustment of the relative interests of the Beneficiaries.  If the tax is imposed in part by reason of Trust property hereunder and in part by reason of other property, the Trustee shall pay that portion thereof which the value of the Trust property bears to the total property taxed, taking into consideration deductions, exemptions, and other factors which the Trustee deems pertinent.

N.    Payment of Trust Expenses

The Trustee shall have the authority to pay all costs, charges and expenses of the Trust Estate, together with reasonable compensation for the Trustee's services hereunder, including services in whole or partial distribution of the Trust Estate; and to employ and compensate from the Trust Estate such agents, assistants and attorneys as in the Trustee's judgment shall be necessary to protect and manage the Trust property.

O.    Estate Settlement

The Trustee is hereby requested to direct any legal questions or requirements concerning settlement of this Trust Estate to Stewart Levin, the Trustor's legal counsel.

P.    Right of Trustee to Probate Trust Assets

Notwithstanding any other provisions of this Trust Agreement, the Trustee may, in its sole discretion, direct the Executor of the Will of either or both of the Trustors, to subject up to and including all Trust assets to the jurisdiction of the Probate Court as if no living transfers had been made to the Trust.

REVOCABLE LIVING TRUST  Page 22

Q.    Power of Cotrustees To Act Independently

Notwithstanding any other provision to the contrary, ths Trustors specifically authorize only either of the original Cotrustees during their joint lives and while serving as Cotrustees, to act independently of the other and have the authority to perform all powers and acts as granted under this Declaration of Trust, except as affects an interest in real property, by example, but not limited thereto, to sell, transfer, assign, mortgage, hypothecate or otherwise encumber the real property of the Trust Estate, which will necessitate the concurrence of both Original Cotrustees as long as both are alive.

Notwithstanding any other provision to the contrary, the Trustors specifically do not authorize any Successor Cotrustees during their joint lives and while serving as Cotrustees, to act independently of the other with respect to performance of any and all powers and acts as granted under this Declaration of Trust.

R.    Commence or Defend Litigation

The Trustee may commence or defend such litigation with respect to the Trust or any property of the Trust Estate as the Trustee may deem advisable at the expense of the Trust.

S.    Compromise Claims

The Trustee may compromise or otherwise adjust any claims or litigation against or in favor of the Trust.

T.    Adjustment for Tax Consequences

The Trustee shall have the power, in the Trustee's absolute discretion, to take any action and to make any election to minimize the tax liabilities of this Trust and its Beneficiaries and to allocate the benefits among the various Beneficiaries and to make adjustments in the rights of any Beneficiaries or between the income and principal accounts, to compensate for the consequence of any tax election or any investment or administrative decision that the Trustee believes has had the effect of directly or indirectly preferring one Beneficiary or group of Beneficiaries over others.

**U.   Budget Income and Expenses**

The Trustee shall have the power to budget the
estimated annual income and expenses of the Trust or Trust
share in such manner as to equalize as far as possible
periodic income payments to Beneficiaries.

**V.   Interest**

The Trustee shall not pay interest on any
distributions required to be made in the Trust Agreement.

**XI.   REPLACEMENT OF TRUSTEE**

During the time that either of the Original Trustees are
acting as a Trustee, his or her capacity to continue to so
function as a Trustee may be terminated by the written
concurrence of the medical physician who is overseeing the
general health of that Trustee and the remaining Original
Cotrustee or the Successor Trustee who would next be
nominated and appointed to serve as Trustee hereunder.   In
the event that these two designated parties are in agreement,
that one of the Original Trustees or both of them should be
removed as a Trustee, they should deliver their
recommendation to the Successor Trustee who would next be
nominated and appointed to serve as Trustee hereunder, who
shall have the authority to then assume full responsibility
as Trustee of this Trust.   In the event that said Successor
Trustee is unavailable then Alternate Trustee named
hereinabove shall provide all functions of said Successor
Trustee hereunder and shall serve as Trustee.

**XII.  GENERAL PROVISIONS**

The administration of any Trust provided for herein
shall be subject to the following general provisions.

**A.   Supplementary Definitions**

**1.   Children and Issue**

The words "children" and "issue" as used herein
shall include natural children and issue of children, and not
legally adopted children and the lawful issue of legally
adopted children.   The word "living" shall include unborn
persons in the persons in the period of gestation.



2.  Support

    The term "support" as used herein shall include proper support, maintenance, medical care, and education, including private grade, secondary or high schools, private or public institutions of higher learning at both undergraduate and graduate levels, professional education, vocational and trade schools, depending upon the abilities and ambitions of the respective Beneficiary.

B.  Annual Accounting

    The Trustee shall render an annual accounting to the Beneficiary or Beneficiaries of the Trust not more than one hundred twenty (120) days following the close of the fiscal year of the Trust.

C.  Spendthrift Clause

    The interests of the Beneficiaries in the principal and/or income of the Trust shall not be subject to the claim or claims of their creditors or others, nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered.

D.  Partial Invalidity

    If any provision of this instrument is void, invalid or unenforceable, the remaining provisions shall nevertheless be valid and carried into effect.  If any Trust herein established exceeds the longest permissible period, it shall persist in its period for the longest period permissible, then terminate.

E.  Headings

    The headings in this instrument are for convenience only and are not part of the text.

F.  Situs of Trust

    The situs of the Trust Estate shall be the state of California.  The situs of the Trust Estate may be transferred from California to such other jurisdiction as the majority of the income Beneficiaries may designate, however, only upon written notice given to the Trustee.

REVOCABLE LIVING TRUST   Page 25

G.  Simultaneous Death

If there be no sufficient evidence that the Trustors
died otherwise than simultaneously, then for the purposes of
this Agreement and the tax effect of this Agreement, it shall
be presumed that the Decedent shall be the Husband and the
Survivor shall be the Wife.

H.  Counterparts

The Agreement may be executed in any number of
counterparts and each shall constitute an original of one and
the same instrument.

I.  Application to Probate Court

If any disputes arise as to interpretation of this
Agreement, or there is need to obtain Court approval of any
accounting or any interpretation in regard to this Agreement,
the Trustors direct the Trustee to make application to the
Probate Court, it being the intent of the Trustors that the
Probate Court shall not assume continuing jurisdiction,
except as may be required by law.

J.  Number and Gender

As used in this Trust Agreement, the masculine,
feminine and neuter gender, and the plural and singular
number shall each be deemed to include the others when the
context so indicates.

K.  Trust Shares or Subshares

For purposes of simplicity, the Trustors have used
in this Trust Agreement the terms "shares" and "subshares."
The Trustors intend, however, that each share or subshare
shall be a separate Trust.

L.  No Contest Provision

If any beneficiary in any manner, directly or
indirectly, contests this instrument or any of its
provisions, any share or interest in the trust given to that
contesting beneficiary under this instrument is revoked and
shall be disposed of as if that contesting beneficiary had
predeceased the Trustors.

This is to witness that We, the undersigned
Trustors, respectively, have read the provisions of this
Trust Agreement and understand the provisions therein, and it

REVOCABLE LIVING TRUST  Page 26

is our intent to enter into this Trust Agreement in
accordance with Community Property law, allowing a Husband
and Wife to enter into a contract with each other regarding
community property.

        IN WITNESS WHEREOF, the provisions of this
Declaration of Trust shall bind OSCAR WENDRIGER and TANIA
WENDRIGER as Trustors, and OSCAR WENDRIGER and TANIA
WENDRIGER as Cotrustees; Successor Trustees assuming the role
of Trustee hereunder, and the Beneficiaries of this Trust, as
well as their successors and assigns.

        Dated at Los Angeles , California,
this  7  day of  May  , 1990.

TRUSTORS:

_Oscar Wendriger_
OSCAR WENDRIGER

_Tania Wendriger_
TANIA WENDRIGER

                                COTRUSTEES:

                                _Oscar Wendriger_
                                OSCAR WENDRIGER

                                _Tania Wendriger_
                                TANIA WENDRIGER

            REVOCABLE LIVING TRUST  Page 27

STATE OF CALIFORNIA    )
                       )
COUNTY OF LOS ANGELES  )

On _____, 1990, before me, the
undersigned, a Notary Public in and for said County and
State, personally appeared OSCAR WENDRIGER and TANIA
WENDRIGER, personally known to me or proved to me on the
basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same.

WITNESS my hand and official seal, this ____ day of
_____, 1990.

_____
Notary Public in and for
said County and State

OFFICIAL SEAL
Frances Dauphin Shapiro
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires AUG 27, 1993

REVOCABLE LIVING TRUST    Page 28