# EXHIBIT C

1 ROBERT P. GOE (State Bar No. 137019
rgoe@goeforlaw.com
2 REEM J. BELLO (State Bar No. 198840)
rbello@goeforlaw.com
3 **GOE FORSYTHE & HODGES LLP**
17701 Cowan Avenue, Suite 210, Bldg. D
4 Irvine, CA 92614
Telephone: (949) 798-2460
5 Facsimile: (949) 955-9437

6 BRIAN A. PROCEL (State Bar No. 218657)
brian@procel-law.com
7 MARTIN H. PRITIKIN (State Bar No. 210845)
marty@procel-law.com
8 **PROCEL LAW, PC**
401 Wilshire Boulevard, 12th Floor
9 Santa Monica, California 90401
Telephone: (424) 788-4538
10

11 Attorneys for Judgment Creditors and Plaintiffs
Erica and Joseph Vago

12 **UNITED STATES BANKRUPTCY COURT**

13 **CENTRAL DISTRICT OF CALIFORNIA**

14 **LOS ANGELES DIVISION**

15

16 In re                                      Case No. 2:23-bk-10990-SK

17 LESLIE KLEIN,                              Chapter 11

18             Debtor.                         Adv. Case No.

19 _____

20 ERICA VAGO and JOSEPH VAGO,        **COMPLAINT TO DETERMINE THE
                                      NONDISCHARGEABILITY OF CERTAIN
21             Plaintiffs,             DEBTS OWED BY DEBTOR LESLIE
                                      KLEIN TO ERICA AND JOSEPH VAGO
22       vs.                           PURSUANT TO 11 U.S.C. § 523 AND TO
                                      DENY DISCHARGE PURSUANT TO
23 LESLIE KLEIN and DOES 1 through 10, SECTION 727(A)(12)

24             Defendants.

25 _____

26

27

28

1

Plaintiffs Erica ("Erica") and Joseph Vago ("Joseph") (collectively, the "Vagos"), allege as follows on personal knowledge:

### Nature of the Case

1. Defendant and Debtor Leslie Klein ("Defendant" or "Debtor") stole more than $8 million from Erica in a complicated life insurance scam.

2. Defendant was the Vagos' friend for more than 40 years. Defendant preyed on the Vagos during a time of vulnerability and desperation. Defendant convinced the Vagos to entrust him with Erica's $15 million inheritance. Defendant claimed he would act as the Vagos' lawyer, accountant and investment adviser.

3. In truth, Defendant is a con man who systematically embezzled the Vagos' money and lied to them every step of the way. Defendant created false financial statements. Defendant misrepresented the nature of the Vagos' "investments." Defendant talked in circles and provided documents that were designed to confuse. Defendant sold insurance policies without telling the Vagos. Defendant fabricated meetings that never happened. Defendant made himself the trustee over life insurance trusts that purportedly held the Vagos' money.

4. In the end, Erica's money simply vanished. Defendant forced the Vagos to take their case to trial. Defendant attempted to derail the litigation at every possible moment. Defendant refused to participate in discovery. The trial court sanctioned Defendant on multiple occasions. At trial, Defendant—who was a CPA for decades—could not account for what happened to $8 million in Erica's inheritance. On cross-examination, Defendant admitted that he had no intention of ever giving Erica a return on her money. This was a scam from start to finish.

5. The jury ultimately returned a verdict holding Defendant liable for intentional fraud, fraudulent concealment, breach of fiduciary duty and elder abuse. The jury awarded more than $8 million in punitive damages. And the trial court entered judgment in the amount of $24.3 million.

6. This debt is not dischargeable in bankruptcy. The Vagos' judgment emanates from a widespread, deliberate and calculated fraud on the part of Defendant.

**Jurisdiction and Venue**

7.      On February 22, 2023 (the "Petition Date"), Defendant filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

8.      This action is a civil proceeding arising in the above-captioned chapter 11 bankruptcy case, which is now pending in this judicial district, and arising under, and arising in and related to title 11 of the United States Code.

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(J) to hear and determine this proceeding and to enter an appropriate final order and judgment.

10.     This matter is a core proceeding pursuant to 28 U.S.C. § 157.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

**The Parties**

12.     The Vagos are judgment creditors in the above-captioned Chapter 11 bankruptcy case.

13.     Defendant is the debtor in the above-captioned Chapter 11 bankruptcy case.

**General Allegations**

**A.      The Friendship**

14.     Joseph first met Defendant in 1970.  They are both Orthodox Jews and they were members of the same temple.

15.     Over the years, the Vagos and Defendant interacted at family and religious events, including birthdays, holidays, shabbat dinners, bar mitzvahs, and weddings.  Defendant and the Vagos were friends.

**B.      Legal Services**

16.     In June 2012, Erica's uncle died.  In October 2012, Erica's brother died.  A few months later, in July 2013, Erica's mother died.  Erica and Joseph had to deal with three lost loved ones in short succession.

3

17.     Erica's brother, Robert Schweitzer ("Schweitzer"), died on October 3, 2012. Schweitzer willed the bulk of his estate to Erica. Schweitzer's estate included roughly $18 million in a foreign bank account.

18.     A few days following Schweitzer's death, the Vagos were at their home mourning the loss of Schweitzer. Defendant went to the Vagos to pay his respects. At that time, Defendant also offered his services as a lawyer and accountant. Defendant said he could handle any issues that might come up with Schweitzer's estate. The Vagos ultimately agreed to retain their longtime friend. The Vagos and Defendant arranged to meet the following week.

**C.     The Life Insurance Policies**

19.     About a week later, the Vagos and Defendant met to discuss Schweitzer's estate. Erica learned before the meeting that Schweitzer had left her more than $18 million, located in a foreign bank account. The Vagos did not know how to handle the will, probate, inheritance, foreign bank accounts, and estate taxes. At the meeting, Erica told Defendant about the inheritance.

20.     Defendant said this issue was his "specialty." Defendant told Erica that he was a jack-of-all-trades—he was a lawyer, CPA, and financial adviser. Defendant told Erica he could deal with the will. Defendant told Erica he could prepare the estate tax returns. Defendant told Erica he could figure out the best way to repatriate the money from the foreign bank account. Defendant told Erica he could even set up investments for the money once the Vagos received it.

21.     The Vagos agreed to let Defendant guide them through this unfamiliar territory. Erica wrote Defendant a $7,000 check that day for the legal services he promised to provide through his law firm Leslie Klein & Associates ("LK&A").

22.     Defendant also recommended that the Vagos invest the inheritance in life insurance policies. Defendant explained the safety and benefits of this strategy. Defendant said that each investment would garner 10 to 12% interest each year, plus a premium on the principal in some cases, all to be paid when the Vagos cashed out. And Defendant emphasized how simple cashing out would be. Defendant advised that investments in these policies were "just like cash." Defendant promised the Vagos they could "sell them for cash any time [they] wanted."

4

23. Defendant added that the best way to effect the transaction would be to wire the money to the LK&A client trust account. Defendant would then invest the money from the LK&A client trust account into life insurance policies. When the Vagos mentioned they wanted to donate substantial sums to charity, Defendant suggested they wire the money to the EKLK Foundation, which Defendant set up and controlled. Defendant said the EKLK Foundation would then distribute funds to charities the Vagos chose.

24. Finally, Defendant said that if the Vagos wanted cash from Erica's inheritance for themselves, they should ask him for it. He would write them a check from the LK&A client trust account.

25. Defendant reassured the Vagos that the strategy was sound. Defendant said he performed the same transactions for "all my clients" as well as his family. Defendant told the Vagos that he invested his own money in the life insurance policies. Defendant added that prominent tax attorneys and accountants "in Century City" confirmed to him that this was a safe and proper strategy. Defendant claimed to have invested in life insurance policies for several prominent members of the Jewish community.

**D.** **The Scam**

26. Over the next four years, Erica arranged more than $15 million in wire transfers from the foreign bank account holding her inheritance. Erica made each transfer at Defendant's direction and to accounts Defendant controlled.

27. About $12.4 million went to the LK&A client trust account, and the rest went to Defendant's EKLK Foundation.

28. As the money came in, Defendant represented to the Vagos that he was executing the investment strategy he had convinced them to follow. Defendant told the Vagos he was investing much of Erica's inheritance in life insurance policies.

29. The life insurance "investments" were not really investments; they were non-recourse loans to irrevocable life insurance trusts. Each life insurance trust purportedly contained a life insurance policy or policies—on the life of a complete stranger to the Vagos—which served as the sole security for the Vagos' loan. The principal and interest on each loan were not due until

the death of the policyholder.  For Erica and Joseph—who were respectively 59 and 61 when

Schweitzer passed—this term rendered the loans almost valueless.  They did not know when—if

ever—the loans would become due.

30.     The Vagos did not know the identities of the other "investors" in each life

insurance trust.  The Vagos did not know how much money Defendant received from other

"investors."  The Vagos had no way to independently verify whether Defendant was paying the

premiums on the insurance policies.  The Vagos had no way to determine whether the insureds

were alive or not.  The Vagos could not find out whether any insurance companies had paid

Defendant money in connection with the policies they "invested" in.  The Vagos had no way to

know whether Defendant sold the policies they thought they invested in.  The Vagos were

completely in the dark and at the mercy of Defendant.

31.     The Vagos' names were nowhere to be found on the promissory notes or on the life

insurance policies.  Rather, the promissory notes were executed for the benefit of the "Estate of

Robert Schweitzer."  It could not be more evident that Defendant structured these "investments" in

a manner designed to confuse and deceive the Vagos.  Defendant knew that these "investments"

were never going to pay out.

32.     Though these promissory notes were nearly worthless to the Vagos, by Defendant's

doing, they still had a huge carrying cost.  To keep the underlying life insurance policies from

lapsing, Defendant told the Vagos that they would have to pay hundreds of thousands of dollars

per year toward insurance premiums.  This money was in addition to the millions already loaned

to the life insurance policy trusts.

33.     By 2019, Defendant claimed to have "invested" $8.3 million of the Vagos' money

in life insurance policies.

**E.     The Misrepresentations**

34.     Defendant routinely visited the Vagos at their house.  During these visits,

Defendant would give the Vagos a memo on the letterhead of LK&A that purported to show the

status of their "investments."  In a July 1, 2017 memorandum, Defendant stated that the Vagos'

"investment" had increased in value to $9.4 million.  And the memorandum indicated that the Vagos were entitled to $3,205,000 in interest since their initial "investment" in 2012.

35.     Defendant provided a memorandum in 2018 that indicated the Vagos' "investments" were worth $10.2 million and the interest was $3,685,000.  These written memoranda were all lies.

**F.     The Vagos Discover Defendant's Fraud**

36.     On or around September 15, 2019, Defendant went to the Vagos' home for their regular meeting.  At this meeting, Erica told Defendant she needed to cash out roughly $1 million. Defendant responded that the "interest" that had accrued on the Vagos' investment was all gone. Defendant falsely stated that "hedge funds are not paying interest anymore" on life insurance policies, so their earnings over the past seven years had vanished.

37.     The Vagos demanded that Defendant refund their money.  Defendant refused.

**G.     The State Board of Accountancy**

38.     At the same time Defendant was defrauding the Vagos, he was accused of stealing money from his client Hubert Scott ("Scott").  The California State Board of Accountancy (the "State Board") brought charges against Defendant in 2019.

39.     The State Board alleged that Scott inherited money when his brother and son died. Defendant purported to serve as Scott's tax preparer, financial planner and investment adviser. Scott, at that time, was 86 years old and had dementia.  Defendant had himself appointed as the trustee of Scott's trust agreement.  Over the course of five years, Scott gave Defendant $2.42 million.

40.     Defendant purported to "invest" Scott's money in non-recourse promissory notes with irrevocable life insurance trusts (i.e., the exact same investments that are at issue here). Defendant invested 85% of Scott's money in these life insurance trusts. Even though Scott was 86 years old, he would only be paid out when the insured passed away.  Defendant also invested Scott's money in companies with which Defendant was affiliated.  Among others, Defendant purportedly invested $750,000 of Scott's money in LEDs sold by Time Square Media, Inc. ("Time Square Media").  Defendant was the president of Time Square Media.  This $750,000 investment

purportedly made by Defendant was not reflected in any accounting. The State Board noted that none of the transactions were made in Scott's name. Instead, Defendant admitted that he did not invest the money in life insurance policies on behalf of his clients, but that he actually borrowed the money himself from his clients.

41.     The State Board alleged that Defendant failed to provide an accounting, and instead periodically provided documents showing inflated values that were inaccurate on their face. Defendant ultimately denied that he was Scott's tax preparer or adviser.

42.     A conservator was appointed in 2016, and Defendant was removed as trustee. The State Board filed the Accusation in 2019, based on allegations of fraud, breach of fiduciary duty, embezzlement, commingling funds and undue influence. Defendant entered into a stipulation with the State Board that resulted in the surrender of his accounting license.

### H.     The Litigation and Defendant's Failure to Comply with Court Orders

43.     The Vagos filed a state court complaint against Defendant on July 1, 2020. From day one, Defendant and LK&A engaged in a scheme to evade discovery and to derail the case.

44.     Defendant served boilerplate objections to all written discovery requests and refused to provide substantive responses. Defendant refused to produce documents. The Vagos then filed several rounds of discovery motions. The Court granted all of them and entered monetary and issue sanctions against Defendant. The Court ordered Defendant to produce a responsivity chart and a privilege log. Defendant did not. The Court ordered Defendant to produce bank records. Defendant did not. Defendant filed a motion to quash a third-party subpoena served on Bank of America, which he lost. Defendant failed to pay the court-ordered monetary sanctions by the deadline and failed to comply with court orders requiring supplemental responses. Defendant even walked out of a court ordered deposition. Defendant stalled and refused to make himself available for deposition. Defendant substituted new counsel on the eve of trial. Defendant filed numerous motions to continue the trial date, all of which were denied

### I.     The Trial, Jury Verdict and Judgment

45.     On August 29, 2022, the trial in the Vagos' state court matter commenced.

46.     At trial, the Vagos presented evidence that Defendant sought out to defraud them when they were at their most vulnerable—just after Erica's brother died and while she was caring for her dying mother in the hospital.  Defendant initially testified that he had no financial interest in the policies that he purportedly invested the Vagos' money in.  But Defendant later admitted that he invested his own money in these same policies.

47.     Defendant drafted and signed promissory notes where he agreed as trustee that the Vagos would be entitled to 12% interest on their money.  But Defendant testified at trial that he never had any intention of actually paying the Vagos that interest.  Defendant utterly failed to explain what these "investments" actually were; whether the Vagos were entitled to make any money from his perspective; or what he did with the Vagos' money.

48.     Defendant testified at trial that he kept a contemporaneous "ledger" of all transactions relating to the Vagos.  This was a lie—no such ledger was produced at trial. Defendant admitted that he provided false and inflated financials to the Vagos on a regular basis. Defendant took out a life insurance policy on an individual named Ann Radow.  Ann Radow testified at trial that she had never met Defendant; that he took out an insurance policy on her life without her knowledge or consent; and that Defendant created the Ann Radow Trust and made himself the trustee without her knowledge or consent.

49.     Unbeknownst to the Vagos, Defendant surrendered his license to practice accounting after he was accused of embezzling money from Scott, an 86-year-old client with dementia. The State Board disciplined Defendant at the same time he was defrauding the Vagos.

50.     The jury ultimately found that Erica had proven her case against Defendant for intentional fraud, fraudulent concealment, financial elder abuse and breach of fiduciary duty.  The jury awarded Erica $8.3 million in compensatory damages, plus $8.3 million more in punitive damages.  And the jury awarded Joseph an additional $400,000 in emotional distress damages. The Court then awarded $7,334,038.99 in prejudgment interest and entered judgment in the amount of $24,334,038.99 ("Judgment").  A true and correct copy of the Judgment is attached as **Exhibit 1**.

### FIRST CLAIM FOR RELIEF

### (Nondischargeability of Debt - 11 U.S.C. § 523(a)(2)(A))

51.    The Vagos reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

52.    At all relevant times, Defendant acted as the Vagos' fiduciary.  Defendant was their attorney, accountant and investment adviser.  Erica entrusted Defendant implicitly with her entire inheritance (more than $15 million).

53.    Defendant owed the Vagos fiduciary duties at all relevant times, including the duty of loyalty and candor.  Defendant further owed a duty to use Erica's funds for legitimate business purposes and to refrain from using her funds and other property for his own personal non-business purposes.

54.    Defendant embezzled and stole from the Vagos.  Defendant misrepresented information to the Vagos for the purpose of convincing Erica to deposit more than $12 million into the LK&A client trust account.  Defendant then stole more than $8 million of Erica's money in a complicated life insurance scam.

55.    A jury found Defendant liable for intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse as set forth in the Judgment.  The jury awarded Erica $8.3 million in punitive damages after finding that Defendant acted with fraud, oppression and malice. The trial court ultimately entered the Judgment against Defendant in the amount of $24.3 million.

56.    Defendant's misappropriation of Erica's funds and other property was unauthorized, without her consent and fraudulent.  Defendant acted with the intent to permanently deprive Erica of the possession, use and benefit of her funds and other property.

57.    As a result of Defendant's unauthorized and fraudulent misappropriation of Erica's funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, the Vagos have suffered damages in the amount of not less than $26,386,891.00.

58.    Defendant's debt to the Vagos is nondischargeable under 11 U.S.C. § 523(a)(2) because it was incurred as a result of false pretenses, false representations, and actual fraud.

59.     The damages arising from Defendant's willful and malicious false pretenses, false representation and actual fraud to the Vagos constitutes a debt against Defendant that is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

## SECOND CLAIM FOR RELIEF

### (Nondischargeability of Debt - 11 U.S.C. § 523(a)(4))

60.     The Vagos reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

61.     At all relevant times, Defendant acted as the Vagos' fiduciary. Defendant was their attorney, accountant and investment adviser. Erica entrusted Defendant implicitly with her entire inheritance (more than $15 million).

62.     Defendant owed the Vagos fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Erica's funds for legitimate business purposes and to refrain from using her funds and other property for his own personal non-business purposes.

63.     Defendant embezzled and stole from the Vagos. Defendant misrepresented information to the Vagos for the purpose of convincing Erica to deposit more than $12 million into the LK&A client trust account. Defendant then stole more than $8 million of Erica's money in a complicated life insurance scam.

64.     A jury found Defendant liable for intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse as set forth in the Judgment. The jury awarded Erica $8.3 million in punitive damages after finding that Defendant acted with fraud, oppression and malice. The trial court ultimately entered the Judgment against Defendant in the amount of $24.3 million.

65.     Defendant's misappropriation of Erica's funds and other property was unauthorized, without her consent and fraudulent. Defendant acted with the intent to permanently deprive Erica of the possession, use and benefit of her funds and other property.

66.     As a result of Defendant's unauthorized and fraudulent misappropriation of Erica's funds and other property while acting in a fiduciary capacity and Defendant's false pretenses, false

11

representations, and actual fraud set forth herein while acting in a fiduciary capacity, the Vagos

have suffered damages in the amount of not less than $26,386,891.00.

67.     The damages to the Vagos arising from Defendant's fraud, defalcation,

embezzlement and larceny while acting in a fiduciary capacity constitutes a debt against

Defendant that is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

### THIRD CLAIM FOR RELIEF

### (Nondischargeability of Debt - 11 U.S.C. § 523(a)(6))

68.     The Vagos reallege and incorporate by reference all of the prior and subsequent

allegations in this Complaint as though fully set forth herein.

69.     At all relevant times, Defendant acted as the Vagos' fiduciary.  Defendant was their

attorney, accountant and investment adviser.  Erica entrusted Defendant implicitly with her entire

inheritance (more than $15 million).

70.     Defendant owed the Vagos fiduciary duties at all relevant times, including the duty

of loyalty and candor.  Defendant further owed a duty to use Erica's funds for legitimate business

purposes and to refrain from using her funds and other property for his own personal non-business

purposes.

71.     Defendant embezzled and stole from the Vagos.  Defendant misrepresented

information to the Vagos for the purpose of convincing Erica to deposit more than $12 million

into the LK&A client trust account.  Defendant then stole more than $8 million of Erica's money

in a complicated life insurance scam.

72.     A jury found Defendant liable for intentional fraudulent, fraudulent concealment,

breach of fiduciary duty and elder abuse as set forth in the Judgment.  The jury awarded Erica $8.3

million in punitive damages after finding that Defendant acted with fraud, oppression and malice.

The trial court ultimately entered the Judgment against Defendant in the amount of $24.3 million.

73.     Defendant's misappropriation of Erica's funds and other property was

unauthorized, without her consent and fraudulent.  Defendant acted with the intent to permanently

deprive Erica of the possession, use and benefit of her funds and other property.

74. As a result of Defendant's unauthorized and fraudulent misappropriation of Erica's funds and other property while acting in a fiduciary capacity and Defendant's false pretenses, false representations, and actual fraud set forth herein while acting in a fiduciary capacity, the Vagos have suffered damages in the amount of not less than $26,386,891.00.

75. The damages arising from Defendant's willful and malicious injury to the Vagos constitutes a debt against Defendant that is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**FOURTH CLAIM FOR RELIEF**

**(For Denial of Discharge - 11 U.S.C. § 727(a)(12))**

76. The Vagos reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

77. Pursuant to 11 U.S.C. § 727(a)(12), the court shall grant the debtor a discharge unless- the court after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge finds that there is reasonable cause to believe that—(A) section 522(q)(1) may be applicable to the debtor; and (B) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

78. On April 11, 2023, the Vagos filed a motion [Docket No. 71] seeking disallowance of Debtor's claim of exemption in the real property located at 322 N. June Street, Los Angeles, CA 90004 (the "Property") in any amount exceeding $189,050.00 pursuant to Section 522(q) of the Bankruptcy Code.

79. Section 522(q) operates to reduce any state law homestead exemption claim to $189,050.00 where debtor owes a debt arising from "fraud, deceit, or manipulation in a fiduciary capacity." 11 U.S.C. § 522(q)(1)(B)(ii).

80. As set forth herein, Debtor owes a debt to the Vagos in an amount of not less than $26,386,891.00 based upon the Judgment which arose from "fraud, deceit, or manipulation in a fiduciary capacity." 11 U.S.C. § 522(q)(1)(B)(ii).

81. Accordingly, Debtor is not entitled to a discharge of his debts pursuant to 11 U.S.C. § 727(a)(12).

**Prayer for Relief**

WHEREFORE, Plaintiffs request judgment on the Complaint as follows:

1.      On the First Claim for Relief, the Vagos seek an order determining that Defendant is indebted to the Vagos in an amount not less than $26,386,891.00 and that Defendant's debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2);

2.      On the Second Claim for Relief, the Vagos seek an order determining that Defendant is indebted to the Vagos in an amount not less than $26,386,891.00 and that Defendant's debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4);

3.      On the Third Claim for Relief, the Vagos seek an order determining that Defendant is indebted to the Vagos in an amount not less than $26,386,891.00 and that Defendant's debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6);

4.      On the Fourth Claim for Relief, the Vagos seek an order denying Defendant his discharge pursuant to 11 U.S.C. § 727(a)(12);

5.      For costs of suit incurred herein; and

6.      For such other and further relief as the Court may deem appropriate.

Respectfully submitted,

Dated:  May 10, 2023                          **GOE FORSYTHE & HODGES LLP**


By:  /s/Robert P. Goe
     Robert P. Goe
     Attorneys for Plaintiffs Erica Vago and
     Joseph Vago

14

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 17701 Cowan, Bldg. D., Suite 210, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER DISMISSING DEBTOR'S CHAPTER 11 BANKRUPTCY CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ERICA VAGO, BRIAN PROCEL; AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SAME** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 10, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒     Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) May 10, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒     Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) May 10, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Sandra R. Defendant, USBC, 255 E. Temple Street, Ctrm 1575, Los Angeles, CA 90012

1

1     ☐     Service information continued on attached
page

2

3     I declare under penalty of perjury under the laws of the United States that the foregoing is true and
correct.

4     May 10, 2023          Susan C. Stein                                    /s/Susan C. Stein

5     *Date*                *Printed Name*                                   *Signature*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                            2

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

**Mailing Information for Case 2:23-bk-10990-SK**

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Reem J Bello**      rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Michael Jay Berger**      michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Greg P Campbell**      ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Theron S Covey**      tcovey@raslg.com, sferry@raslg.com
- **Dane W Exnowski**      dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
- **Robert P Goe**      kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Michael Jones**      michael.jones4@usdoj.gov
- **Ron Maroko**      ron.maroko@usdoj.gov
- **Joshua L Scheer**      jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- **Mark M Sharf (TR)**      mark@sharflaw.com, C188@ecfcbis.com;sharf1000@gmail.com;2180473420@filings.docketbird.com
- **Alan G Tippie**      Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **United States Trustee (LA)**      ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**      mwachtell@buchalter.com
- **John P. Ward**      jward@attleseystorm.com, ezhang@attleseystorm.com
- **Clarisse Young**      youngshumaker@smcounsel.com, levern@smcounsel.com
- **Paul P Young**      paul@cym.law, jaclyn@cym.law

# EXHIBIT 1

# EXHIBIT 1

Electronically Received 11/15/2022 10:32 AM

Electronically Received 11/15/2022 10:32 AM

1 | BRIAN A. PROCEL (State Bar No. 218657)
brian@procel-law.com
2 | PROCEL LAW, PC
401 Wilshire Boulevard
3 | 12th Floor
Santa Monica, California 90401
4 | Telephone: (424) 788-4538

5 | Attorneys for Plaintiffs
ERICA VAGO and JOSEPH VAGO

6

7

**FILED**
Superior Court of California
County of Los Angeles

**12/02/2022**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ M. Ventura _____ Deputy

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10

11 | ERICA VAGO and JOSEPH VAGO,

12 | Plaintiffs,

13 | v.

14 | LESLIE KLEIN; LES KLEIN &
ASSOCIATES, INC.; KENNETH KOLEV
15 | KLEIN; and LAW OFFICE OF KENNETH
KLEIN, P.C.,

16 | Defendants.

17

**CASE NO. 20STCV25050**

~~[PROPOSED]~~ **JUDGMENT ON SPECIAL VERDICT**

Assigned for All Purposes to:
Hon. Terry A. Green, Dept. 14

Action Filed: July 1, 2020
Trial Date: August 29, 2022

18

19

20

21

22

23

24

25

26

27

28

1      This action came on regularly for trial on August 29, 2022, in Department 14 of the

2 Superior Court, the Honorable Terry A. Green, Judge Presiding;

3      Plaintiffs Erica and Joseph Vago (collectively, "Plaintiffs") appearing by attorney Brian

4 Procel , Esq.; and Defendants Leslie Klein and Les Klein & Associates, Inc. (collectively,

5 "Defendants") appearing by attorney Jeffrey Slott.

6      A jury of twelve (12) persons was regularly impaneled and sworn and agreed to try the

7 cause. Witnesses were sworn and testified. After hearing the evidence and arguments of counsel,

8 the jury was duly instructed by the Court and the cause was submitted to the jury with directions

9 to return a special verdict. The jury deliberated and thereafter returned to court with its special

10 verdict submitted to the jury and the answers given thereto by the jury, which verdict was in words

11 and figures as follows, to wit:

12

13                **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

14                    **(BY ERICA VAGO AGAINST DEFENDNTS)**

15

16     1.  Was Mr. Klein's conduct outrageous?

17         __X___ Yes    _____ No

18         If your answer to question 1 is yes, then answer question 2. If you answered no,

19         stop here, answer no further questions, and have the presiding juror sign and date

20         this form.

21     2.  Did Mr. Klein intend to cause Erica Vago emotional distress?

22         _____ Yes    __X__ No

23         If your answer to question 2 is yes, then answer question 4. If you answered no, go

24         to question 3.

25     3.  Did Mr. Klein act with reckless disregard of the probability that Erica Vago would

26         suffer emotional distress, knowing that Erica Vago was present when the conduct

27         occurred?

28         __X___ Yes    _____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Did Erica Vago suffer severe emotional distress?

_____ Yes     __X___ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Was Mr. Klein's conduct a substantial factor in causing Erica Vago's severe emotional distress?

_____ Yes          _____ No

If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are Erica Vago's damages for pain and suffering?

$   N/A

TOTAL $

N/A

Signed:   /Signature

Presiding Juror

Dated:  September 15, 2022

—[PROPOSED] JUDGMENT

## INTENTIONAL MISREPRESENTATION

## (BY ERICA VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein make a false representation of a fact to Erica Vago?

   __X___ Yes _____ No

   If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein know that the representation was false, or did he make the representation recklessly and without regard for its truth?

   _X____ Yes _____ No

   If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Erica Vago reasonably rely on the representation?

   __X___ Yes _____ No

   If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Erica Vago's reliance on Mr. Klein's representation a substantial factor in causing harm to Erica Vago?

   __X___ Yes _____ No

   If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Erica Vago's economic damages?

   $ __8,300,000_____

4

[PROPOSED] JUDGMENT

1    Please answer question 6.

2    6.    What are Erica Vago's noneconomic damages for pain and suffering?

3          $  0

4

5                                                    TOTAL $ 8,300,000

6

7    Signed:    /Signature
                Presiding Juror
8

9    Dated:  September 15, 2022

10
                        **CONCEALMENT**
11            **(BY ERICA VAGO AGAINST DEFENDNTS)**

12
     We answer the questions submitted to us as follows:
13
     1.    Did Mr. Klein intentionally fail to disclose a fact that Erica Vago did not know and
14
           could not reasonably have discovered?
15
           _X____ Yes    _____ No
16
           If your answer to question 1 is yes, then answer question 2. If you answered no,
17
           stop here, answer no further questions, and have the presiding juror sign and date
18
           this form.
19
     2.    Did Mr. Klein intend to deceive Erica Vago by concealing the fact?
20
           __X___ Yes    _____ No
21
           If your answer to question 2 is yes, then answer question 3. If you answered no,
22
           stop here, answer no further questions, and have the presiding juror sign and date
23
           this form.
24
     3.    Had the omitted information been disclosed, would Erica Vago reasonably have
25
           behaved differently?
26
           __X___ Yes    _____ No
27

28

---
                              5

1   If your answer to question 3 is yes, then answer question 4. If you answered no,

2   stop here, answer no further questions, and have the presiding juror sign and date

3   this form.

4       4.   Was Mr. Klein's concealment a substantial factor in causing harm to Erica Vago?

5       __X___ Yes    _____ No

6   If your answer to question 4 is yes, then answer question 5. If you answered no,

7   stop here, answer no further questions, and have the presiding juror sign and date

8   this form.

9       5.   What are Erica Vago's economic damages?

10      $ 8,300,000

11      Please answer question 6.

12      6.   What are Erica Vago's noneconomic damages for pain and suffering?

13      $ __0_____

14

15      TOTAL $ 8,300,000

16

17  Signed: __/Signature_____

                Presiding Juror

18

19  Dated:  September 15, 2022

20

21

22

23

24

25

26

27

28

6

**FALSE PROMISE**

**(BY ERICA VAGO AGAINST DEFENDNTS)**

We answer the questions submitted to us as follows:

1.  Did Mr. Klein make a promise to Erica Vago?

    __X___ Yes    _____ No

    If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.  Did Mr. Klein intend to perform this promise when he made it?

    __X____ Yes    _____ No

    If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Did Mr. Klein intend that Erica Vago rely on this promise?

    _____ Yes    _____ No

    If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.  Did Erica Vago reasonably rely on this promise?

    _____ Yes    _____ No

    If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.  Did Mr. Klein fail to perform the promised act?

    _____ Yes    _____ No

If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. Was Erica Vago's reliance on Mr. Klein's promise a substantial factor in causing harm to Erica Vago?

_____ Yes        _____ No

If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

7. What are Erica Vago's economic damages?

$ _N/A_____

Please answer question 8.

8. What are Erica Vago's noneconomic damages for pain and suffering?

$ __N/A_____

                                                    TOTAL $ _N/A_____


Signed: ___/Signature_____
              Presiding Juror

Dated: September 15, 2022

[PROPOSED] JUDGMENT

**FINANCIAL ABUSE**

**(BY ERICA VAGO AGAINST DEFENDANTS)**

We answer the questions submitted to us as follows:

1. Did Mr. Klein retain Erica Vago's money or property?

   __X___ Yes _____ No

   If your answer to question 1 is yes, then answer question 2. If you answered no,
   stop here, answer no further questions, and have the presiding juror sign and date
   this form.

2. Were Erica Vago 65 years of age or older at the time of the conduct?

   __X___ Yes _____ No

   If your answer to question 2 is yes, then answer question 3. If you answered no,
   stop here, answer no further questions, and have the presiding juror sign and date
   this form.

3. Did Mr. Klein retain the money or property for a wrongful use or with the intent to
   defraud?

   __X___ Yes _____ No

   If your answer to question 3 is yes, then answer question 4. If you answered no,
   stop here, answer no further questions, and have the presiding juror sign and date
   this form.

4. Were Erica Vago harmed?

   __X___ Yes _____ No

   If your answer to question 4 is yes, then answer question 5. If you answered no,
   stop here, answer no further questions, and have the presiding juror sign and date
   this form.

5. Was Mr. Klein's conduct a substantial factor in causing Erica Vago's harm?

   __X___ Yes _____ No

If your answer to question 5 is yes, then answer question 6. If you answered no,

stop here, answer no further questions, and have the presiding juror sign and date

this form.

6. What are Erica Vago's economic damages?

$ 8,300,000

TOTAL $8,300,000

Signed: __/Signature_____,_____
           Presiding Juror

Dated: September 15, 2022

**PUNITIVE DAMAGES**
**(BY ERICA VAGO AGAINST DEFENDNTS)**

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

__X___ Yes   _____ No

Signed: __/Signature_____
           Presiding Juror

Dated: September 15, 2022

**PUNITIVE DAMAGES AGAINST EMPLOYER OR PRINCIPAL FOR CONDUCT**
**OF A SPECIFIC AGENT OR EMPLOYEE**
**(BY ERICA VAGO AGAINST DEFENDNTS)**

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

__X___ Yes   _____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Signed: ___/Signature_____
            Presiding Juror

Dated: September 15, 2022

## BREACH OF FIDUCIARY DUTY
## (BY ERICA VAGO AGAINST DEFENDNTS)

1. Mr. Klein owed Erica Vago fiduciary duties to act with the utmost loyalty and honesty.

2. Did Mr. Klein breach his fiduciary duties?

   __X___ Yes        _____ No

   If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Was Erica Vago harmed?

   __X___ Yes        _____ No

   If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Mr. Klein's conduct a substantial factor in causing Erica Vago's harm?

   __X___ Yes        _____ No

   If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Erica Vago's economic damages?

   $ 8,300,000

                                                    TOTAL $ 8,300,000

11

Signed: ___/Signature_____
          Presiding Juror

Dated: September 15, 2022

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (BY JOSEPH VAGO AGAINST DEFENDNTS)

1. Was Mr. Klein's conduct outrageous?

    a. _X___ Yes    _____ No

    b. If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein intend to cause Joseph Vago emotional distress?

    a. _____ Yes    ___X__ No

    b. If your answer to question 2 is yes, then answer question 4. If you answered no, go to question 3.

3. Did Mr. Klein act with reckless disregard of the probability that Joseph Vago would suffer emotional distress, knowing that Joseph Vago was present when the conduct occurred?

    a. __X___ Yes    _____ No

    b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Did Joseph Vago suffer severe emotional distress?

    a. __X___ Yes    _____ No

    b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Was Mr. Klein's conduct a substantial factor in causing Joseph Vago's severe emotional distress?

   a. _X____ Yes  _____ No

   b. If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are Joseph Vago's damages for pain and suffering?

   a. $ 400,000

                                                                         TOTAL $400,000

Signed: ___/Signature_____
             Presiding Juror

Dated: September 15, 2022

## INTENTIONAL MISREPRESENTATION
## (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein make a false representation of a fact to Joseph Vago?

   a. __X___ Yes  _____ No

   b. If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein know that the representation was false, or did he make the representation recklessly and without regard for its truth?

   a. _X____ Yes  _____ No

[PROPOSED] JUDGMENT

b. If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Joseph Vago reasonably rely on the representation?

   a. __X__ Yes _____ No

   b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Joseph Vago's reliance on Mr. Klein's representation a substantial factor in causing harm to Joseph Vago?

   a. __X__ Yes _____ No

   b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Joseph Vago's economic damages?

   a. $ __0__

   b. Please answer question 6.

6. What are Joseph Vago's noneconomic damages for pain and suffering?

   a. $ __0__

TOTAL $ __0__

Signed: ___/Signature_____
           Presiding Juror

Dated: September 15, 2022

**CONCEALMENT**
**(BY JOSEPH VAGO AGAINST DEFENDNTS)**

14
[PROPOSED] JUDGMENT

We answer the questions submitted to us as follows:

1. Did Mr. Klein intentionally fail to disclose a fact that Joseph Vago did not know and could not reasonably have discovered?

   a. _X____ Yes _____ No

   b. If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein intend to deceive Joseph Vago by concealing the fact?

   a. __X___ Yes _____ No

   b. If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Had the omitted information been disclosed, would Joseph Vago reasonably have behaved differently?

   a. __X___ Yes _____ No

   b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was Mr. Klein's concealment a substantial factor in causing harm to Joseph Vago?

   a. __X___ Yes _____ No

   b. If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. What are Joseph Vago's economic damages?

   a. $____0_____

   b. Please answer question 6.

6. What are Joseph Vago's noneconomic damages for pain and suffering?

   a. $__0_____

TOTAL $____0_____

Signed: __/Signature_____
         Presiding Juror

Dated: September 15, 2022

## FALSE PROMISE

## (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein make a promise to Joseph Vago?

     a. __X___ Yes _____ No

     b. If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did Mr. Klein intend to perform this promise when he made it?

     a. _X_____ Yes _____ No

     b. If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did Mr. Klein intend that Joseph Vago rely on this promise?

     a. _____ Yes _____ No

     b. If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Did Joseph Vago reasonably rely on this promise?

     a. _____ Yes _____ No

   b. If your answer to question 4 is yes, then answer question 5. If you answered
      no, stop here, answer no further questions, and have the presiding juror sign
      and date this form.

5. Did Mr. Klein fail to perform the promised act?

   a. _____ Yes       _____ No

   b. If your answer to question 5 is yes, then answer question 6. If you answered
      no, stop here, answer no further questions, and have the presiding juror sign
      and date this form.

6. Was Joseph Vago's reliance on Mr. Klein's promise a substantial factor in causing
   harm to Joseph Vago?

   a. _____ Yes       _____ No

   b. If your answer to question 6 is yes, then answer question 7. If you answered
      no, stop here, answer no further questions, and have the presiding juror sign
      and date this form.

7. What are Joseph Vago's economic damages?

   a. $ _N/A_____

   b. Please answer question 8.

8. What are Joseph Vago's noneconomic damages for pain and suffering?

   a. $ __N/A_____

                                                          TOTAL $ _N/A_____


Signed:  __/Signature_____
             Presiding Juror

Dated: September 15, 2022

[PROPOSED] JUDGMENT

**FINANCIAL ABUSE**

**(BY JOSEPH VAGO AGAINST DEFENDANTS)**

We answer the questions submitted to us as follows:

1.  Did Mr. Klein retain Joseph Vago's money or property?

     a.   _____ Yes   __X___ No

     b.  If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.  Were Joseph Vago 65 years of age or older at the time of the conduct?

     a.   _____ Yes   _____ No

     b.  If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Did Mr. Klein retain the money or property for a wrongful use or with the intent to defraud?

     a.   _____ Yes   _____ No

     b.  If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.  Were Joseph Vago harmed?

     a.   _____ Yes   _____ No

     b.  If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.  Was Mr. Klein's conduct a substantial factor in causing Joseph Vago's harm?

     a.   _____ Yes   _____ No

b. If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are Joseph Vago's economic damages?

a. $___N/A_____

TOTAL $__N/A_____

Signed: ___/Signature_____
Presiding Juror

Dated: September 15, 2022

### PUNITIVE DAMAGES

### (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

a. __X___ Yes _____ No

Signed: ___/Signature_____
Presiding Juror

Dated: September 15, 2022

### PUNITIVE DAMAGES AGAINST EMPLOYER OR PRINCIPAL FOR CONDUCT OF A SPECIFIC AGENT OR EMPLOYEE

### (BY JOSEPH VAGO AGAINST DEFENDNTS)

We answer the questions submitted to us as follows:

1. Did Mr. Klein engage in the conduct with malice, oppression, or fraud?

a. __X___ Yes _____ No

b.  If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Signed:   /Signature
          Presiding Juror

Dated:  September 15, 2022

## BREACH OF FIDUCIARY DUTY

## (BY JOSEPH VAGO AGAINST DEFENDNTS)

1.  Mr. Klein owed Joseph Vago fiduciary duties to act with the utmost loyalty and honesty.

2.  Did Mr. Klein breach his fiduciary duties?

    a.  __X___ Yes          _____ No

    b.  If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Was Joseph Vago harmed?

    a.  __X___ Yes          _____ No

    b.  If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.  Was Mr. Klein's conduct a substantial factor in causing Joseph Vago's harm?

    a.  __X___ Yes          _____ No

    b.  If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.  What are Joseph Vago's economic damages?

1        a.  $____0_____

2

3                                                    i.  TOTAL $____0_____

4

5    Signed: ___/Signature_____

6                    Presiding Juror

7    Dated:  September 15, 2022

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      It appearing by reason of said special verdict that Plaintiff Erica Vago is entitled to

2  judgment against Defendants Leslie Klein and Leslie Klein & Associates.

3      NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said Erica

4  Vago shall have and recover from Defendants, jointly and severally:

5      1.    Compensatory damages in the sum of $8,300,000;

6      2.    Prejudgment interest at the rate of 7 (seven) percent in the amount of

7           $7,334,038.99;

8      3.    Punitive damages in the sum of $8,300,000,

9      4.    And interest thereon at the rate of ten percent per annum from the date of the

10  verdict until paid together with costs and disbursements.

11

12      It further appearing by reason of said special verdict that Plaintiff Joseph Vago is entitled

13  to judgment against Defendants Leslie Klein and Leslie Klein & Associates.

14      NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said Joseph

15  Vago shall have and recover from Defendants, jointly and severally:

16      1.    $400,000 for emotional distress

17      2.    And interest thereon at the rate of ten percent per annum from the date of the

18  verdict until paid together with costs and disbursements.

19

20      The total amount of the judgment against Defendants jointly and severally is

21  **$24,334,038.99**.

22

23  Dated:    12/02/2022

24                  **Terry Green**

25                  Terry Green / Judge

                    Hon. Terry Green

                    Judge of the Superior Court

26

27

28

1 | DATED:  November 15, 2022          PROCEL LAW, PC

2

3

4                                                   By: _____
                                                        BRIAN PROCEL
5                                                       Attorneys for Plaintiffs
                                                        JOSEPH VAGO and ERICA VAGO
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3    **PROOF OF SERVICE**

4    **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

5         At the time of service, I was over 18 years of age and not a party to this action. I am
     employed in the County of Los Angeles, State of California. My business address 401 Wilshire
6    Boulevard, 12th Floor, Santa Monica, California 90401.

7         On November 15, 2022, I served true copies of the following document(s) described as:

8    **[PROPOSED] JUDGMENT ON SPECIAL VERDICT**

9    on the interested parties in this action as follows:

10                             **SERVICE LIST**

11   Jeffrey A. Slott                          *Attorneys for Defendants*
     LAW OFFICES OF JEFFREY A. SLOTT, APC
12   15760 Ventura Blvd., Suite 1600           LESLIE KLEIN and
     Encino, CA 91436                          LES KLEIN & ASSOCIATES, INC.
13   Telephone:    (818) 995-1955
     Facsimile:    (818) 995-0955
14   Email:        jslott@aol.com

15

16        **BY E-MAIL:** I caused a copy of the document(s) to be sent from e-mail address
     johnpark@procel-law.com to the person(s) at the e-mail address(es) listed in the Service List. I
17   did not receive, within a reasonable time after the transmission, any electronic message or other
     indication that the transmission was unsuccessful.

18        I declare under penalty of perjury under the laws of the State of California that the
19   foregoing is true and correct.

20        Executed on November 15, 2022, at Santa Monica, California.

21                                            /s/ Brian Procel
                                              _____
22                                            Brian Procel

23

24

25

26

27

28

4

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| ERICA VAGO and JOSEPH VAGO, | LESLIE KLEIN and DOES 1 through 10, |

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>GOE FORSYTHE & HODGES LLP<br>17701 Cowan Avenue, Suite 210, Bldg. D, Irvine, CA 92614<br>Telephone: (949) 798-2460 / Facsimile: (949) 955-9437 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>□ Debto          □ U.S. Trustee/Bankruptcy Admin<br>□ X Creditor   □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ X Debtor       □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor       □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to Determine the Nondischargeability of Certain Debts Owed by Debtor Leslie Klein to Erica and Joseph Vago
Pursuant to 11 U.S.C. § 523 and to Deny Discharge Pursuant to Section 727(a)(12)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
2 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
       actual fraud
1 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement,
       larceny
                   **(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation
       (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court
       if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $  26,386,891.00 |

Other Relief Sought

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br><br>LESLIE KLEIN | BANKRUPTCY CASE NO.<br>2:23-bk-10990-SK | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>SANDRA KLEIN |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*/s/Robert P. Goe* | |
|---|---|
| DATE<br>May 10, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Robert P. Goe |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ROBERT P. GOE (State Bar No. 137019)<br>rgoe@goeforlaw.com<br>REEM J. BELLO (State Bar No. 198840)<br>rbello@goeforlaw.com<br>GOE FORSYTHE & HODGES LLP<br>17701 Cowan Avenue, Suite 210, Bldg. D<br>Irvine, CA 92614<br>Telephone: (949) 798-2460<br>Facsimile: (949) 955-9437<br><br>*Attorney for Plaintiff* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>LESLIE KLEIN,<br><br><br><br>Debtor(s). | CASE NO.: 2:23-bk-10990-SK<br><br>CHAPTER: 11<br><br>ADVERSARY NO.: |
|---|---|
| ERICA VAGO and JOSEPH VAGO,<br><br><br><br>Plaintiff(s)<br><br>Versus<br><br>LESLIE KLEIN and DOES 1 through 10,<br><br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING<br>[LBR 7004-1]** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is _____. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| **Hearing Date:** _____<br>**Time:** _____<br>**Courtroom:** <u>1575</u> | **Address:**<br>☒ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**


**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**


Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____


By: _____
                    Deputy Clerk

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

17701 Cowan Avenue, Suite 210, Bldg. D
Irvine, CA 92614

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

Complaint to Determine the Nondischargeability of Certain Debts Owed by Debtor Leslie Klein to Erica and Joseph Vago

Pursuant to 11 U.S.C. § 523 and to Deny Discharge Pursuant to Section 727(a)(12)

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Date | Printed Name | Signature |
|------|--------------|-----------|

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                   Page 3                                   **F 7004-1.SUMMONS.ADV.PROC**