Jeffrey W. Dulberg (CA State Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:   jdulberg@pszjlaw.com
          jlucas@pszjlaw.com

Counsel to Bradley D. Sharp, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>Debtor. | Case No.: 2:23-bk-10990-SK<br><br>Chapter 11<br><br>**OBJECTION OF CHAPTER 11 TRUSTEE TO MOTION TO CONVERT THIS CHAPTER 11 CASE TO CHAPTER 7**<br><br>Date:         February 28, 2024<br>Time:         9:00 a.m.<br>Courtroom: 1575<br>Location:    255 E. Temple Street<br>                   Los Angeles, CA 90012<br>Judge:        Hon. Sandra R. Klein<br><br>[Relates to Docket No. 608] |

Bradley D. Sharp, the duly appointed chapter 11 trustee (the "**Trustee**") of the bankruptcy estate of Leslie Klein (the "**Debtor**"), hereby files this opposition (the "**Opposition**"), and the supporting *Declaration of Bradley D. Sharp*, *Declaration of Nicholas Troszak*, and the *Declaration of John W. Lucas*, each filed contemporaneously herewith, to the *Motion to Convert This Chapter 11 Case To Chapter 7* [Docket No 608] (the "**Motion to Convert**"), filed by the Debtor.  In support of the Opposition, the Trustee represents as follows:

4881-0419-0369.3 78512.001

# I.

## **PRELIMINARY STATEMENT**

The Debtor does not have an automatic right to convert his case to chapter 7 because he is no longer a debtor in possession since a trustee was appointed. 11 U.S.C. § 1112(a)(1). Consequently, to convert this case to chapter 7, the Debtor must establish cause under section 1112(b) of the Bankruptcy Code. The Debtor's Motion to Convert falls far short of this requirement. The Debtor offers no evidence to support his Motion to Convert. Instead, the Motion to Convert is nothing more than a collection of legal citations where the Debtor makes conclusory statements about the law, fails to explain the facts in any of the cases, and how the facts of this case support the relief requested. Plus, the Debtor uses his various non-debtor entities to shield cash from his bankruptcy estate and to fund his lifestyle and day-to-day activities. The Debtor's improper utilization of his non-debtor entities to the detriment of his creditors assuredly is not an excuse for loss or diminution of the estate to justify conversion. The Debtor voluntarily filed a chapter 11 case. After he demonstrated to the Court that he could not be trusted to administer his own case, he should not be rewarded by having his case converted simply because he is unhappy that he no longer has control over his assets.

The Trustee acknowledges that the Debtor needs income so that he can live, pay his day-to-day expenses, and otherwise carryout his daily activities as an individual and any professional or vocational venture(s) he chooses to pursue. However, the flexibility any debtor seeks in chapter 11 is not and cannot be without limits, especially when it is the Debtor's prepetition conduct that caused him to voluntarily commence the chapter 11 case in the first place and the same conduct that caused this Court to appoint the Trustee to administer this case.

The Trustee and his advisors, immediately after his appointment and numerous times since then, have asked the Debtor and his many different sets of lawyers to propose a budget that shows income, expenses, and projections so that the Trustee can review and consider whether such budget is reasonable under the circumstances of this case. A budget is not only routine in an individual chapter 11 case but it is also necessary to help ensure and avoid the Debtor from incurring unnecessary expenses that will serve to further erode the Debtor's cash and other

4881-0419-0369.3 78512.001                                      2

valuable assets to the detriment of creditors who are collectively asserting claims in the tens of millions of dollars.

The Debtor's lack of control over his estate is not a basis for conversion. More importantly, the Debtor has failed to support the Motion to Convert with any evidence. The Debtor fails to provide any reporting to the Trustee about his income, expenses, and the companies that he controls as required by Bankruptcy Rule 2015.3. For the reasons set forth herein and at the hearing on the Motion to Convert, the Court should deny the Motion to Convert.

## II.

## THE DEBTOR'S MOTION TO CONVERT SHOULD BE DENIED

A.  **Debtor Diverts Property of the Estate By Using Non-Debtor Entities to Fund and Finance His Ordinary and Non-Ordinary Expenses**

The Debtor has used and continues to use cash held in bank accounts of non-debtor entities that he owns or controls to divert funds that would otherwise flow to his bankruptcy estate without reporting any of the income or the expenses that the Debtor incurs. The non-debtor entities include but are not limited to the following:

| Non-Debtor Entity |
|---|
| Les Klein & Associates, Inc. ("**LKA**") |
| Bay Area Development Co. ("**BADCO**") |
| Big Boyz Legal, LLC ("**Big Boyz**") |
| Doctors Marketing Group, LLC ("**Doctors Marketing**") |

1. Payment of Prepetition Claims in Israel

The Trustee has received information confirming that the Debtor was illegally paying the prepetition claims of his estate. On September 13, 2023, counsel for the Trustee asked one of the Debtor's attorneys (Michael Kogan) whether it was correct that the Debtor paid or was in the process of paying an approximate $15,000 claim arising from the Debtor's ownership of real property in Israel and the source of the cash to pay this claim.

On behalf of the Debtor, Mr. Kogan confirmed that the $15,000 was borrowed from LKA and used to pay the claim. Mr. Kogan changed the story after the Trustee's counsel questioned

whether such "loan" from LKA was authorized given the limitations set forth in section 364 of the Bankruptcy Code. In response, Mr. Kogan, on behalf of the Debtor, asserted that the transfer of $15,000 on behalf of the Debtor was not a loan but a gift and that LKA would not seek repayment. A true and correct copy of the email and related invoice is annexed to the Declaration of John Lucas ("**Lucas Declaration**"), **Exhibit A** and **Exhibit B**.

### 2. Diversion of Personal Credit Card Refunds to LKA

For the month ending July 16, 2023, the Debtor received a personal credit card statement from Bank of America (who issued him a Visa credit card) reflecting that the Debtor received a credit or refund of $3,295.02. *See* Declaration of Nicholas Troszak ("**Troszak Declaration**"), **Exhibit A**. Bank of America issued a personal check to the Debtor on July 17, 2023 in the amount of $3,295.02. Troszak Declaration, **Exhibit B**. The check personally payable to the Debtor was deposited into LKA's trust account XXXX-9404. Troszak Declaration, **Exhibit C**.

### 3. Debtor Failed to List LKA as an Asset in Schedules

The Debtor filed his schedules with the Court shortly after the commencement of the case. *See* Docket Nos. 34 and 61]. However, the Debtor did not list one of his primary assets.

### 4. Diversion of Social Security Distributions

On July 10, 2023, the Social Security Administration deposited $7,519.00 into the client trust account held by LKA. Troszak Declaration, **Exhibit C**. Previously, and prior to the appointment of Mr. Sharp as the Chapter 11 trustee, such payments were deposited into the Debtor's personal bank account. Troszak Declaration, **Exhibit D**.

### 5. LKA Pays the Debtor's Homeowner's Insurance Premiums

In the deposition of LKA, where the Debtor testified as the "person most knowledgeable," the Debtor admitted that he uses cash from LKA to pay the homeowner's insurance for his personal residence at 322 June St., Los Angeles, California. Lucas Declaration, **Exhibit C**.

### 6. LKA Owns or Has an Interest in Life Insurance Policies

In the deposition of LKA, where the Debtor testified as the "person most knowledgeable," the Debtor admitted that either LKA owns or holds an interest in certain life insurance policies that the LKA will benefit from when the applicable policies mature. Lucas Declaration, **Exhibit D**.

The transcript of the deposition reflects that LKA stands to gain $3,500,000 when one policy matures, and $1,000,000 when another matures, and that the sales of life insurance policies from LKA to third-parties were documented. The Trustee requested copies of the insurance sale agreements however, the Debtor has failed to produce them. *See*, Lucas Declaration, **Exhibit D**.

7. LKA Charges BADCO Credit Cards for Cash

The attached transcript and corresponding exhibit show that prior to the petition date the Debtor, using LKA and BADCO, utilized the Debtor's credit card (under the name of BADCO) for the purpose of incurring a charge in favor of LKA in the amount of $16,000 presumably for the purpose of generating cash for the benefit of the Debtor. Lucas Declaration, **Exhibit E**. And after the petition date, LKA transferred cash to BADCO for no apparent legitimate reason. Lucas Declaration, **Exhibit F**.

8. The Debtor Uses the Bank Accounts of LKA and Other Non-Debtor Entities to Divert, Hide, and Pay Unauthorized Pre-and Postpetition Claims

The transfers described above are a particular snap-shot of the Debtor's use of non-debtor bank accounts. As reflected in the chart below, the Trustee obtained bank account information for the period April 1, 2023 through July 31, 2023 (*i.e.*, after the petition date and well into the Trustee's appointment), that shows that cash was transferred from at least three non-debtor entities to LKA's client trust account.

| Transferor | Transferee | Amount | Source |
|---|---|---|---|
| Big Boyz | LKA | $314,000 | Unknown |
| Doctors Marketing | LKA | $40,500 | Unknown |
| Miscellaneous | LKA | $27,463 | Credit card refunds (~$4,000); Social Security Distributions (~$10,000); Other Unknown Sources (~$14,000). |

*See* Troszak Declaration, **Exhibit E**.

During this same period of time, LKA disbursed cash as follows:

| Payor | Payee | Amount | Purpose |
|---|---|---|---|
| LKA | Endine Gestetner | $17,500 | Brother of Andor Gestetner, who asserts a $17 million secured claim against the Debtor. |

| Payor | Payee | Amount | Purpose |
|---|---|---|---|
| LKA | Other Parties | $106,135 | |
| LKA | BADCO | $92,000 | See Chart Below |
| LKA | Michelle Ferroni, Michael Berger, Michael Kogan, and a forensic accounting firm | $86,565 | Professionals fees |
| LKA | Mary Ann Newman, Owen Podell and Paychex (fees, taxes, etc.) | $43,921 | Payroll |
| LKA | Bruce Bowie, Joanne Retia, Pearl Rosenthal Trust, Gladys Miamoto property taxes | $49,861 | Unknown |
| LKA | Cona Atlfi Cham of Sigit | $13,500 | Donations |
| LKA | Various | $12,742 | Utilities |
| LKA | Leslie Klein | $6,231 | Personal bank account of Debtor |

*See* Troszak Declaration, **Exhibit E**. A flowchart of the disbursed cash from LKA to various parties is annexed hereto as **Exhibit 1**.

During this same time period, BADCO disbursed cash as follows:

| Payor | Payee | Amount | Purpose |
|---|---|---|---|
| BADCO | Eric Olson and others | $49,015 | Professional fees, of which approximately $40,000 paid to Eric Olson |
| BADCO | Various | $17,500 | Merchandise and Supplies |
| BADCO | Cash | $9,150 | Unknown |
| BADCO | Various | $8,355 | Clothing purchased from Saks Fifth Avenue, Neiman Marcus, Nordstroms |
| BADCO | Various | $8,021 | Food and Beverages |
| BADCO | Various | $6,983 | Airfare and Hotels |
| BADCO | Various | $6,817 | Other |
| BADCO | Various | $3,765 | Transportation |
| BADCO | Various | $2,988 | Medical Expenses |

*See* Troszak Declaration, **Exhibit F**. A flowchart of the disbursed cash from BADCO to various parties is annexed hereto as **Exhibit 2**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### B. Debtor's Conduct Demonstrates Why the Court Should Deny the Motion to Convert

The above summary of the Debtor's conduct and mis-use of various non-debtor entities is merely a snap-shot of the Debtor's abuse of the process and diversion of property that should be directed to the estate. With the Debtor offering little to no cooperation, it has been exceedingly difficult for the Trustee to obtain information regarding the Debtor's non-debtor entities. In that context, the Trustee does not have the necessary transparency into LKA and the other non-debtor entities and how they interact with the Debtor and his day-to-day affairs (and any prepetition claims). The Trustee believes that the above demonstrates the Debtor is using cash held or controlled by his non-debtor entities that would otherwise be payable or distributable to his estate:

- The Debtor fails to list on his schedules LKA as an asset of his estate.

- During the bankruptcy case and after the appointment of the Trustee, the Debtor borrowed cash from LKA to pay his personal prepetition claims arising from his ownership of real estate in Israel.

- During the bankruptcy case and after the appointment of the Trustee, the Debtor takes a refund on his personal credit card (which he should not have) and deposits the check into a client trust account of LKA.

- During the bankruptcy case and after the appointment of the Trustee, the Debtor diverted his social security distributions into a client trust account of LKA.

- During the bankruptcy case and after the appointment of the Trustee, the Debtor caused LKA to pay the premium for his homeowner's insurance policy that covers his personal residence at 322 June St., Los Angeles, California.

- In the deposition of LKA, the Debtor admitted that LKA holds an interest in certain life insurance policies and that LKA stands to receive millions of dollars when the applicable life insurance policies mature. While the Debtor contends certain policies owned by LKA were sold, he and LKA refuse to produce the purchase agreements that governed the sale of the policies (and presumably LKA's remaining rights to recoup the payout when the applicable policies mature).

- LKA charges BADCO for unspecified services presumably for the purpose of generating cash that LKA can use for the Debtor's personal benefit.

- The charts above show the shell game that Debtor plays and how he uses his non-debtor entities to hide cash and pay his personal expenses and sometimes claims against the Debtor's estate. These include:

- $17,500 payment from LKA to the brother of the Debtor's brother-in-law. The brother-in-law (Mr. Gestetner) asserts a secured claim against the estate in excess of $17,000,000 and it is suspected that the Debtor is now making payments to the brother of the brother-in-law in the same amount the Debtor was making prior to petition date when the Debtor was presumable attempting to pay off the debt.

- $86,565 in collective payments from LKA to Michelle Ferroni, Michael Berger, Michael Kogan, and a forensic accounting firm who were each representing the Debtor in his personal capacity in this bankruptcy case, the Menlo action, and other matters that are personal to the Debtor.

- $40,000 payment from BADCO to Eric J. Olson for professional fees.

- $8,355 in collective payments from BADCO for clothing purchased from Saks Fifth Avenue, Neiman Marcus, and Nordstrom.

As noted above, the transfers and transactions described and outlined generally in the section above are just a few examples of the interactions between the Debtor and his non-debtor entities. These examples alone establish that the Debtor is not reporting income and other assets that should inure to the Debtor's bankruptcy estate. As the Trustee learns more about the Debtor's estate, the Debtor's control of the non-debtor entities, and how the two interact, the Trustee expects that he will be able to uncover additional transfers of property that should benefit the estate. The Debtor has a duty to cooperate and provide full transparency into his estate and in simple terms the Debtor refuses to do so. Instead, the Debtor has learned that chapter 11 does not work well for him now that he is no longer a debtor in possession. The Debtor desires to convert his case (which he voluntarily filed) to chapter 7 so that he can embark on a new path of continued obfuscation and deceit to the detriment of estate and all the creditors he has harmed.

For the reasons set forth herein and at the hearing on the Motion to Convert, the Court should deny the Motion to Convert.

///

///

///

///

///

4881-0419-0369.3 78512.001        8

**C. The Debtor Has Failed to Demonstrate Cause to Convert the Case**

The Trustee responds below to each of the Debtor's attempts to support converting this case from chapter 11 to chapter 7.

### 1. A Chapter 7 Case is More Cost-Effective

The Debtor contends that the administration of this case in chapter 7 would be more cost-effective than administering it in chapter 11. Motion to Convert 4:6-8. The Debtor has not offered anything to show that the administration of a chapter 7 case is more cost-effective than a chapter 11 case. Whether this case is administered as a chapter 11 or 7, there will be a trustee who will hire professionals to advise and assist the trustee in his administration of the estate. The only difference between the two is that a chapter 11 case requires the payment of United States Trustee fees, which the Trustee believes are not material when compared to the value of capturing all of the Debtor's assets available to administer this case and for the payment of creditors. In the end, the Debtor assumes that "a Chapter 7 trustee would administer this case at less expense" but fails to explain why that would be possible. *See* Motion to Convert 11:14-15.

### 2. Debtor has Negative Cash Flow

The Debtor asserts that he has little or negative cash flow and cites to the monthly operating reports (the "**Monthly Operating Reports**") that have been prepared by the Trustee since his appointment, which reflect the cash position of the estate.

Importantly, the Debtor's Monthly Operating Reports do not show any regular income from the Debtor **because the Debtor refuses to share any information regarding his income**. The Debtor owns LKA, BADCO, and Big Boyz, each of which have revenue that the Debtor uses to pay his expenses. The Debtor is presumably entitled to the cash generated from the above-referenced companies, which means that such cash is property of the estate. The Trustee cannot report this information unless the Debtor provides the underlying data to the Trustee.

Notably, the Bankruptcy Rules require:

> In a chapter 11 case, the trustee or debtor in possession shall file periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in

a case under title 11, and in which the estate holds a substantial or controlling interest. The reports shall be prepared as prescribed by the appropriate Official Form, and shall be based upon the most recent information reasonably available to the trustee or debtor in possession.

Bankruptcy Rule 2015.3.

The Trustee does not have sufficient access to information that would enable him to prepare periodic financial reports of value, operations, and profitability of the above-referenced non-debtor entities owned by the Debtor's estate (and these are not the only entities owned by the Debtor's estate). If the Debtor provided the underlying data, the Trustee would have a far better understanding whether or not the above entities (and any others) provide the Debtor with cash that should be controlled by the Trustee for the purpose of administering the estate and benefitting creditors.

The Debtor's string citations of numerous cases that stand for the proposition that continued diminution to the estate with no prospects of reorganization is cause alone to convert the case to chapter 7 are not persuasive when (a) the Debtor has not provided any information to support he has no income and (b) the Debtor has not provided the Trustee with necessary financial information about the estate's wholly owned companies that the Debtor relies upon to live.

3.     No Reasonable Likelihood of Rehabilitation

The Debtor contends that he has no likelihood of rehabilitation because (a) he has no business left; (b) he expressly seeks to wind up; (c) he is subject to many non-dischargeability claims; and (d) he is unlikely to be able to file a reorganization plan and be put back in good condition. Motion to Convert 12:9-12.

The Debtor's argument for conversion to chapter 7 is patently nonsensical and is contradicted by the very justifications he offers. The Debtor characterizes himself as having "no business left" and states that he "seeks to wind up." However, the Debtor is not a corporation, a limited liability company, or a partnership that has an existence independent of his own flesh and blood. The Debtor is a human being that owns numerous operating companies that produce cash.

The Trustee does not know what to make of the Debtor's strange characterization that he is "winding-up."

The Debtor's legal citations offer no support for his position. They each stand for the proposition that when an <u>entity</u> (as opposed to a human being) has no business operations there is little reason to attempt to rehabilitate the company. In all but one of the cases, the courts dismissed the cases, instead of converting them. *See*, *e.g.*, *In re Gonic Realty Tr.*, 909 F.2d 624, 627 (1st Cir. 1990) (<u>dismissing</u>, not converting, the chapter 11 case of a real estate company whose assets had been sold and had no operations.); *In re Taberna Preferred Funding, IV. Ltd.*, 594 B.R. 576, 604 (Bankr. S.D.N.Y. 2018) (<u>dismissing</u>, not converting, a chapter 11 case that was involuntarily filed because the alleged debtor, a structured finance entity, was not an operating business and did nothing other than hold securities that generate cash flow to pay noteholders pursuant to the terms of an indenture); *In re Briggs-Cockerham, L.L.C.*, 2010 Bankr. LEXIS 4132 *12-*14 (Bankr. N.D. Tex. Nov. 23, 2010) (<u>dismissing</u>, not converting, a chapter 11 case of a limited liability company that held a mineral lease with no business operations); *Bay Area Material Handling v. United States Tr. (In re Bay Area Material Handling)*, 1996 U.S. App. LEXIS 2272, *4-*6 (9th Cir. Jan. 25, 1996) (affirming the conversion of a company that was a former forklift distributor because it had no business operations and had been in bankruptcy for over two years without filing a viable plan).

    4.    <u>No Reasonable Prospects of Rehabilitation</u>

The Debtor asserts that he has no reasonable prospects of being rehabilitated because he is subject to so many non-dischargeability actions. The Debtor fails to explain how non-dischargeability actions change the administration of his bankruptcy case by it being a chapter 7 case as opposed to a chapter 11 case. *See* Motion to Convert 12:27-28 – 15:7-8. Further, it is unclear what the Debtor means by himself being unable to be rehabilitated. *Id.* The Motion to Convert is nothing more than a collection of legal citations that reach various conclusions devoid of any application of the facts of the Debtor's actual case to the law at issue. This part of the Debtor's Motion to Convert is confused, disjointed, and lacks any evidentiary basis the Court

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

could consider to determine whether conversion is an appropriate remedy. The Debtor remarkably cannot state what assets he owns. Instead, the Debtor makes the following statement:

> The Debtor **alleges** that the only significant assets that the bankruptcy estate has to pay its creditors are real estate interests owned by the Debtor, potential payments on insurance policies the Debtor may have an interest in through LCG which is 25% owned by the Debtor, and avoidance actions and claims that may be made on behalf of the Debtor. Brad Sharp has already been appointed as the Trustee in the bankruptcy case as cause has already been found by the Court for appointment of a trustee or conversion to chapter 7, and he is pursuing the liquidation of these assets. All can equally be accomplished in a chapter 7 bankruptcy case. The only other significant asset that the Debtors estate possesses is that of the 1aw practice of the Debtor, LKA which is not in bankruptcy and is the primary source of employment and **revenue** for the Debtor to pay his living expenses.

Motion to Convert 14:17-26 (emphasis added).

The Trustee does not know where to start with the above statement. First, the Debtor absurdly cannot do any better than offer "allegations" about the assets of his own bankruptcy estate. There ought to be no individual better qualified to make definitive statements about the Debtor's estate than the Debtor. It is remarkable that he cannot do that here.

Second, the Debtor "alleges" he only owns a 25% interest in the Life Capital Group when his the operating agreement for Life Capital Group reflects that he holds a 50% interest. Why is there this discrepancy? Is the Debtor attempting to prevent 25% of his interest in Life Capital Group from being distributed to creditors?

Third, the Debtor acknowledges that he uses LKA to pay for his living expenses. If this is correct, then it is the Debtor's duty to report the revenue that he is using for his personal benefit as each dollar is property of the estate.

Fourth, if LKA generates revenue that suggests LKA indeed does have value. The Trustee should consider whether and how much such revenue should be committed to repay the Debtor's creditors.

Last, the Debtor fails to mention any of the many other companies that he owns (*e.g.*, BADCO.; Big Boyz) and what assets they have that should be made available to repay the Debtor's creditors.

In the end, the Motion to Convert is nothing more than string cites of conclusory statements from various court decisions that provide little or no support for the Motion to Convert because the Debtor has not provided any evidence to support his unsubstantiated assertions.

### D. Unusual Circumstances Do Prevent the Court from Converting the Case

Remarkably, the Debtor contends that "no unusual circumstances exist here that would establish that converting the case is not in the best interests of creditors and the estate." *See* Motion to Convert 16:4-5. The Debtor fails to explain the standard and provides absolutely no information to support why there are no unusual circumstances that should prevent the Court from converting the case. Instead, like the other sections in the Motion to Convert, the Debtor simply cites many cases for conclusory propositions, fails to recite the facts in those cases, and neglects to apply the facts of his case to the applicable law. Even if the Debtor had established cause to convert the case to chapter 7, which he has not, there are unusual circumstances that should persuade the Court to deny the Motion to Convert.

Section 1112(b)(1) of the Bankruptcy Code provides that the Court shall not convert the case if the Court specifically identifies unusual circumstances that establish that conversion is not in the best interests of creditors and the estate. *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707 (Bankr. D. Md. 2011). The Trustee must demonstrate that (a) there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (b) the cause for conversion is other than continuing loss or diminution to the estate without reasonable likelihood of rehabilitation, and (c) there is a reasonable justification for the act or omission of the debtor constituting cause and the act or omission will be cured within a reasonable time.

Again, the Trustee does not concede that the Debtor has established cause, however, if the Court finds he has, the Trustee believes that he will be able to confirm a plan after he obtains control over all of the property of the estate. For example, the Trustee has obtained control over the various single-family residences the Debtor owns. The Trustee has sold two of them where

4881-0419-0369.3 78512.001    13

there was equity in both. The other properties are in the process of being marketed and sold, which should each provide equity to the estate. Also, the Debtor's interest in the LCG could yield a substantial amount of value. Since the petition date, LCG has paid the estate more than $2,000,000. Recently, another policy matured that has a face value of approximately $8,000,000. The face value of the remaining policies have a collective value of approximately $20,000,000.

The Trustee currently believes that the best way to maximize value is by confirming a plan that creates a litigation trust empowered to collect and liquidate the Debtor's assets (and the assets he is not disclosing) and distribute the proceeds to the Debtor's creditors holding allowed claims. The Debtor's creditor body is not large and the Trustee believes that he and his professionals will be able to garner sufficient support from the creditor body to confirm a plan in a reasonable amount of time.

To the extent there is a continuing loss or diminution to the estate it is caused by the Debtor's intentional efforts to divert property away from the estate. As reflected above, the Debtor uses his non-debtor entities to hide cash and support his day-to-day activities. While the estate is beginning to accumulate cash, there would be more cash if the Debtor was not preventing funds that he is using for his own benefit to be transferred to his non-debtor entities, which includes using cash to improperly pay prepetition claims.

Last, the Trustee believes that as he and his professionals will learn more about the Debtor's conduct, his estate, his use of the non-debtor entities that will enable the Trustee to obtain sufficient control over the Debtor and his assets. If necessary, the Trustee will seek relief under Bankruptcy Rule 2005 to compel the Debtor's cooperation. With that control, the Trustee will be able to build a path toward confirmation of a plan that will benefit all creditors.

Dated: February 14, 2024                    PACHULSKI STANG ZIEHL & JONES LLP

By: _/s/ John W. Lucas_
    John W. Lucas

Attorneys for Bradley D. Sharp, Chapter 11 Trustee

# EXHIBIT 1



Bankruptcy Estate of Leslie Klein
Les Klein & Associates, Inc. "Net Cash Activity"
April 1, 2023, through July 31, 2023

# EXHIBIT 2

