Jeffrey W. Dulberg (CA State Bar No. 181200)
John Lucas (CA State Bar No. 271038)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:   jdulberg@pszjlaw.com
             jlucas@pszjlaw.com

Counsel to Bradley D. Sharp, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>           Debtor. | Case No.: 2:23-bk-10990-SK<br><br>Chapter 11<br><br>**OPPOSITION OF CHAPTER 11 TRUSTEE TO MOTION TO COMPEL ABANDONMENT OF PROPERTY BY TRUSTEE**<br><br>Date:         February 28, 2024<br>Time:        9:00 a.m.<br>Courtroom: 1575<br>Location:   255 E. Temple Street<br>                  Los Angeles, CA 90012<br>Judge:       Hon. Sandra R. Klein<br><br>[Relates to Docket No. 607] |

Bradley D. Sharp, the duly appointed chapter 11 trustee (the "**Trustee**") of the bankruptcy estate of Leslie Klein (the "**Debtor**"), hereby files this opposition (the "**Opposition**"), and the supporting Declaration of Bradley D. Sharp, Declaration of Nicholas Troszak, and the Declaration of John W. Lucas, each filed contemporaneously herewith, to the *Motion to Compel Abandonment of Property By Trustee* [Docket No 607] (the "**Motion to Abandon**"), filed by the Debtor. In support of the Opposition, the Trustee represents as follows:

**I.**

**PRELIMINARY STATEMENT**

The Debtor's request seeking to compel the Trustee to abandon the estate's interest in Les Klein & Associates, Inc. ("**LKA**") should be denied. Not only has the Debtor failed to present any

LA:4894-8202-4863.3 78512.001

evidence to support that LKA is burdensome or has inconsequential value to the estate but he also failed to list LKA on the schedules he filed with the Court. The Debtor's failure to list LKA as an asset of the estate in his schedules is enough for the Court to deny the Motion to Abandon. Indeed, the facts demonstrate the contrary is true. LKA appears to hold <u>millions</u> of dollars in assets in unmatured life insurance policies. Plus, the evidence the Trustee has adduced thus far shows the Debtor uses LKA routinely to control or divert cash otherwise payable to the estate for his own unfettered use. In a hopeless attempt to win the Court's favor, the Debtor cites various legal decisions, makes conclusory statements about the law, and fails to explain the facts of any of the cited cases nor how the facts in this case support the relief sought. Now that the Trustee is beginning to understand how the Debtor is improperly using LKA, the Debtor seeks to compel the Trustee to abandon the estate's interest in LKA so that the Debtor is free to further divert estate assets and use LKA as a shell and shield so that he can operate without the restrictions imposed upon him by the Bankruptcy Code. For the reasons set forth herein and at the hearing, the Motion to Abandon should be denied.

## II.

## <u>DEBTOR'S MOTION TO COMPEL ABANDONMENT OF LKA SHOULD BE DENIED</u>

A.  **Debtor Has Failed to Provide Any <u>Information to the Trustee Regarding the Operation of LKA</u>**

1. <u>The Debtor is Not in Compliance with Bankruptcy Rule 2015.3</u>

Chapter 11 debtors are required to report and file with the Court extensive information regarding the value, operation, and profitability of companies owned by the Debtor. Specifically, the Bankruptcy Rules state:

> In a chapter 11 case, the trustee or debtor in possession shall file periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest. The reports shall be prepared as prescribed by the appropriate Official Form, and shall be based upon the most recent information reasonably available to the trustee or debtor in possession.

Bankruptcy Rule 2015.3.

The Trustee does not have sufficient information that would enable him to prepare periodic financial reports of value, operations, and profitability of LKA (as well as the numerous other entities owned and controlled by the Debtor). If the Debtor provided the underlying data, the Trustee would have a much more thorough understanding of whether the cash the Debtor diverts through LKA (and any of the other debtor-owned entities) should instead be directed to the estate so that the Trustee can determine how much should be retained by the estate and how much released to the Debtor as income so that he can reasonably carry out his day-to-day activities.

2.  Debtor Failed to List LKA as an Asset in Schedules

The Debtor filed his schedules with the Court shortly after the commencement of the case. *See* Docket Nos. 34 and 61]. However, the Debtor did not list one of his primary assets.

3.  Payment of Prepetition Claims in Israel

The Trustee has received information confirming that the Debtor was illegally paying the prepetition claims of his estate. On September 13, 2023, counsel for the Trustee asked one of the Debtor's attorneys (Michael Kogan) whether it was correct that the Debtor paid or was in the process of paying a $15,000 claim arising from the Debtor's ownership of real property in Israel and the source of the cash to pay this claim.

On behalf of the Debtor, Mr. Kogan confirmed that $15,000 was borrowed from LKA and used to pay the claim in question. Mr. Kogan changed the story after the Trustee's counsel questioned whether such a "loan" from LKA was authorized given the limitations set forth in section 364 of the Bankruptcy Code. In response, Mr. Kogan, on behalf of the Debtor, asserted that the transfer of $15,000 on behalf of the Debtor was not a loan but rather a gift and that LKA would not seek repayment. A true and correct copy of the email and related invoice is annexed to the *Declaration of John Lucas* ("**Lucas Declaration**"), **Exhibit A** and **Exhibit B**.

4.  Diversion of Personal Credit Card Refunds to LKA

For the month ending July 16, 2023, the Debtor received a personal credit card statement from Bank of America (who issued him a Visa credit card) reflecting that the Debtor received a credit or refund of $3,295.02. *See* Declaration of Nicholas Troszak ("**Troszak Declaration**"), **Exhibit A**. Bank of America issued a personal check to the Debtor on July 17, 2023 in the amount of

$3,295.02. Troszak Declaration, **Exhibit B**. The check personally payable to the Debtor was deposited into LKA's trust account XXXX-9404. Troszak Declaration, **Exhibit C**.

5. Diversion of Social Security Distributions

On July 10, 2023, the Social Security Administration deposited $7,519.00 into the client trust account held by LKA. Troszak Declaration, **Exhibit C**. Previously, and prior to the appointment of Mr. Sharp as the Chapter 11 trustee, such payments were deposited into the Debtor's personal bank account. Troszak Declaration, **Exhibit D**.

6. LKA Pays the Debtor's Homeowner's Insurance Premiums

In the deposition of LKA, where the Debtor testified as the "person most knowledgeable," the Debtor admitted that he uses cash from LKA to pay the homeowner's insurance for his personal residence at 322 June St., Los Angeles, California. Lucas Declaration, **Exhibit C**.

7. LKA Owns or Has an Interest in Life Insurance Policies

In the deposition of LKA, where the Debtor testified as the "person most knowledgeable," the Debtor admitted that either LKA owns or holds an interest in certain life insurance policies that the LKA will benefit from when the applicable policies mature. Lucas Declaration, **Exhibit D**. The transcript of the deposition reflects that LKA stands to gain $3,500,000 when one policy matures, and $1,000,000 when another matures, and that the sales of life insurance policies from LKA to third-parties were documented. The Trustee requested copies of the insurance sale agreements however, the Debtor has failed to produce them. *See*, Lucas Declaration, **Exhibit D**.

8. LKA Charges BADCO Credit Cards for Cash

The attached transcript and corresponding exhibit show that prior to the petition date the Debtor, using LKA and Bay Area Development Co. ("**BADCO**"), utilized the Debtor's credit card (under the name of BADCO) for the purpose of incurring a charge in favor of LKA in the amount of $16,000 presumably for the purpose of generating cash for the benefit of the Debtor. Lucas Declaration, **Exhibit E**. And after the petition date, LKA transferred cash to BADCO for no apparent legitimate reason. Lucas Declaration, **Exhibit F**.

9. **The Debtor Uses the Bank Accounts of LKA and Other Non-Debtor Entities to Divert, Hide, and Pay Unauthorized Pre-and Postpetition Claims**

The transfers described above are a particular snap-shot of the Debtor's use of non-debtor bank accounts. As reflected in the chart below, the Trustee obtained bank account information for the period April 1, 2023 through July 31, 2023 (*i.e.*, after the petition date and well into the Trustee's appointment), that shows that cash was transferred from at least three non-debtor entities to LKA's client trust account.

| Transferor | Transferee | Amount | Source |
|---|---|---|---|
| Big Boyz | LKA | $314,000 | Unknown |
| Doctors Marketing | LKA | $40,500 | Unknown |
| Miscellaneous | LKA | $27,463 | Credit card refunds (~$4,000); Social Security Distributions (~$10,000); Other Unknown Sources (~$14,000). |

*See* Troszak Declaration, **Exhibit E**.

During this same period, LKA disbursed cash as follows:

| Payor | Payee | Amount | Purpose |
|---|---|---|---|
| LKA | Endine Gestetner | $17,500 | Brother of Andor Gestetner, who asserts a $17 million secured claim against the Debtor |
| LKA | Other Parties | $106,135 | Unknown |
| LKA | Bay Area Development Co. | $92,000 | *See* Chart Below |
| LKA | Michelle Ferroni, Michael Berger, Michael Kogan, and a forensic accounting firm | $86,565 | Professional fees |
| LKA | Mary Ann Newman, Owen Podell and Paychex (fees, taxes, etc.) | $43,921 | Payroll |
| LKA | Bruce Bowie, Joanne Retia, Pearl Rosenthal Trust, Gladys Miamoto property taxes | $49,861 | Unknown |
| LKA | Cona Atlfi Cham of Sigit | $13,500 | Donations |
| LKA | Various | $12,742 | Utilities |
| LKA | Leslie Klein | $6,231 | Personal bank account of Debtor |

*See* Troszak Declaration, **Exhibit E**. A flowchart of the disbursed cash from LKA to various parties is annexed hereto as **Exhibit 1**.

**B.   Debtor's Failure to Disclose and Mis-Use of LKA Demonstrates Why the Court Should Deny the Motion to Abandon**

The Debtor's failure to disclose and file with the Court information regarding the value, operations, and profitability of LKA plus his mis-use of LKA to divert cash away from the estate and improperly pay his prepetition claims supports why the Court should deny the Motion to Abandon.

The above summary of the Debtor's use and administration of LKA is merely a snap-shot of the Debtor's abuse of the process and diversion of property that should be directed to the estate. With the Debtor offering little to no cooperation, it has been exceedingly difficult for the Trustee to obtain information about LKA (even after a 2004 motion and an oral examination). In that context, the Trustee does not have the necessary insight into LKA (and the other non-debtor entities) and the Debtor administers LKA as a true business as opposed to a shield for his personal bankruptcy case. The Trustee believes that the above demonstrates the Debtor is using LKA to hold cash and other material assets that would otherwise be payable to his estate:

- The Debtor fails to list on his schedules LKA as an asset of his estate.

- During the bankruptcy case and after the appointment of the Trustee, the Debtor borrowed or obtained cash from LKA to pay his personal prepetition claims arising from his ownership of real estate in Israel.

- During the bankruptcy case and after the appointment of the Trustee, the Debtor deposited a refund on his personal credit card (which he should not have) into a client trust account of LKA.

- During the bankruptcy case and after the appointment of the Trustee, the Debtor diverted his social security distributions into a client trust account of LKA.

- During the bankruptcy case and after the appointment of the Trustee, the Debtor caused LKA to pay the premium for his homeowner's insurance policy that covers his personal residence at 322 June St., Los Angeles, California.

- In the deposition of LKA, the Debtor admitted that LKA holds an interest in certain life insurance policies and that LKA stands to receive millions of dollars when the applicable life insurance policies mature. While the Debtor contends certain policies owned by LKA were sold, he and LKA refuse to produce the purchase agreements that governed the sale of those policies (and

- presumably LKA's remaining rights to recoup the payout when the applicable policies mature).

- LKA charges BADCO for unspecified services presumably for the purpose of generating cash that LKA can use for the Debtor's personal benefit.

- The charts above show the shell game that the Debtor plays and how he uses his non-debtor entities to hide cash and pay his personal expenses and sometimes claims against the Debtor's estate. These include:

  - $17,500 payment from LKA to the brother of the Debtor's brother-in-law. The brother-in-law (Mr. Gestetner) asserts a secured claim against the estate in excess of $17,000,000 and it is suspected that the Debtor is now making payments to the brother of the brother-in-law in the same amount the Debtor was making prior to petition date when the Debtor was presumably attempting to pay off the debt.

  - $86,565 in collective payments from LKA to Michelle Ferroni, Michael Berger, Michael Kogan, and a forensic accounting firm who were each representing the Debtor in his personal capacity in this bankruptcy case, the Menlo action, and other matters that are personal to the Debtor.

As noted above, the transfers and transactions described and outlined in the section above are just a few examples of the interactions between the Debtor and his non-debtor entities. These examples alone establish that the Debtor is not reporting the value, operations, and profitability of LKA pursuant to Bankruptcy Rule 2015.3. As the Trustee learns more about the Debtor's estate, the Debtor's control over LKA, and how the two interact, the Trustee expects that he will be able to uncover additional transfers of property that should benefit the estate. The Debtor has a duty to cooperate and provide full transparency into his estate and in simple terms the Debtor refuses to do so. Instead, the Debtor has learned that chapter 11 does not work well for him and simply trying to remove assets from the estate for the purpose of his continued obfuscation and practice of law.

**C.    Debtor has Failed to Provide Any Evidence to
Support LKA is Burdensome and has Inconsequential Value**

1.    The Debtor has Failed to Show LKA is Burdensome to the Estate

The Debtor seeks to compel the Trustee to abandon the estate's interest in LKA pursuant to section 544(b) of the Bankruptcy Code. The Debtor has provided no evidence to support abandonment of the estate's interest in LKA. Instead, the Debtor's Motion to Abandon is replete with legal citations containing boilerplate conclusions of law where he fails to explain the facts in

LA:4894-8202-4863.3 78512.001                                    7

those cases and how the facts in the present case support the relief requested. In the Motion to Abandon, the Debtor asserts the following:

> The abandonment of the Law Firm is appropriate as the Law Firm is burdensome to the bankruptcy estate and the Trustee no longer needs to administer it for the benefit of the bankruptcy estate. The costs of maintaining the Law Firm and the risk of further claim s against the bankruptcy estate far outweighs its benefit to the Estate. It appears that the Law Firm cannot be sold due to its negative net value to the estate, and that its income is wholly derived from the efforts of Leslie Klein and he could easily resign if the Law Firm were sold or the Trustee did not abandon the Law Firm. Thus, the Law Firm is no longer necessary or beneficial to the estate because the Trustee cannot use this asset for the benefit of creditors of the bankruptcy estate other than the claims he already possesses, and the Law Firm is not necessary for the administration of the estate. Accordingly, the cost for the Trustee to maintain and/or liquidate the Law Firm is overly burdensome to the estate and the standard for compelling abandonment is met.

Motion to Abandon 6:20-28 – 7:1-2.

The above statement is the Debtor's purported evidence to show LKA is burdensome to the estate which has no evidentiary value. The Debtor asserts that abandonment is appropriate because LKA is burdensome but fails to explain why or how. The Debtor fails to explain how claims against LKA pose a risk to the estate. The Debtor presumes LKA cannot be sold (but fails to explain why) and also fails to consider whether any of its assets or accounts receivable could be sold. The Trustee and the Court would have better insight into these issues if the Debtor complied with Bankruptcy Rule 2015.3. The Debtor has failed to explain how the estate must incur the cost to maintain LKA or why its liquidation would be "overly burdensome." Contrary to the Debtor's assumption, he has not satisfied the standard for abandonment of the estate's interest in LKA.

2.    The Debtor has Failed to Show LKA has Inconsequential Value

The Debtor relies on *In re Bolden*, 327 B.R. 657, 667 (Bankr. C.D. Cal. 2005) and other similar cases for the proposition that a *prima facie* showing of inconsequential value of an asset justifies abandonment. Again, the Debtor's efforts fall far short of establishing that LKA has little or no value. In support of the Motion to Abandon, the Debtor asserts the following:

> Here, abandonment of the Law Firm is in the best interest of the bankruptcy estate and is appropriate under § 554. The continued use of

LA:4894-8202-4863.3 78512.001             8

> administering the Law Firm cannot be justified here as the revenue generated by LKA is used to pay the Debtors living expenses, and any claims the Trustee or estate would have including quantum meruit claim s would be preserved if the Law Firm were abandoned. In addition, by maintaining the estate's interest in the Law Firm, the Trustee and the estate could be subject to further malpractice or liability claims generated by the Debtors continued operation of the Law Firm. n us, the Law Firm is burdensome to the bankruptcy estate. Abandonment of the Law Firm would not change the estate's interests in those interests and claims. The continued administration of the Law Firm cannot be justified here. Therefore, the Law Firm is burdensome to the estate and is of inconsequential value and benefit to the estate and the Motion should be approved.

Motion to Abandon 7:22-28 – 8:1-4.

The above statement is the Debtor's purported evidence to show LKA has inconsequential value to the estate, which, again, has no evidentiary value. Here, the Debtor admits that LKA has revenue. As discussed in the Trustee's objection to the Debtor's Motion to Abandon to convert this case to Chapter 7, the Trustee understands that the Debtor needs income to live his day-to-day life. The Trustee has asked the Debtor and his many past and present lawyers to prepare a budget that shows income, expenses, and projections. The Debtor refuses to prepare a budget. Consequently, it is impossible for the Trustee to determine whether and how much of the Debtor's income from LKA should be retained for the Debtor's personal use and how much should be retained by the estate to administer the estate and pay creditors allowed claims. The Debtor admitted in the deposition of LKA that LKA stands to receive millions of dollars from various life insurance policies when they mature. The Debtor has failed to report any of these assets as required by Bankruptcy Rule 2015.3 and refuses to turnover the documentation regarding such policies.

In the end, the Debtor has provided no evidence to support compelling the Trustee to abandon the estate's interest in LKA. On the contrary, the evidence in the hands of the Trustee shows that LKA has value and that the Debtor's improper use of LKA is preventing value from flowing to the estate to the detriment of the estate and creditors. For the reasons set forth herein and at the hearing on the Motion to Abandon, the Court should deny the Motion to Abandon.

| | | |
|---|---|---|
| Dated: February 14, 2024 | | PACHULSKI STANG ZIEHL & JONES LLP |
| | By: | */s/ John Lucas* |
| | | John W. Lucas |
| | | Attorneys for Bradley D. Sharp, Chapter 11 Trustee |

# EXHIBIT 1



# EXHIBIT 2

