# EXHIBIT B

**///STEWART**
— TITLE —

**Mindy Beckham**
Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
Phone:  (805) 367-5628
Fax:
teammindy@stewart.com

# PRELIMINARY REPORT

| | |
|---|---|
| Order No.: | 2045167 |
| Your File No.: | 105890 AA |
| Buyer/Borrower Name: | Roll Sparrow LLC |
| Seller Name: | Leslie Klein and Erika Klein |

Property Address:  2560 N Whitewater Club Drive, Unit B, Palm Springs, CA  92262

In response to the above referenced application for a Policy of Title Insurance, Stewart Title of California, Inc. hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Stewart Title Guaranty Company Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referenced to as an Exception on Schedule B or not excluded from coverage pursuant to the printed Schedules, Conditions, and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on covered Risks of said policy or policies are set forth in Exhibit A attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limits of Liability for certain coverages are also set forth in Exhibit A.  Copies of the policy forms should be read. They are available from the office which issued this report.

Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.

It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.

This report, (and any supplements or amendments thereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance a binder or commitment should be requested.

| | |
|---|---|
| Dated as of March 13, 2024 at 7:30AM | |
| | **Update No. 3** |

**When replying, please contact:**    Mindy Beckham, Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
(805) 367-5628
teammindy@stewart.com

**IF ANY DECLARATION, GOVERNING DOCUMENT (FOR EXAMPLE, COVENANT, CONDITION OR RESTRICTION) OR DEED IDENTIFIED AND/OR LINKED IN THIS TITLE PRODUCT CONTAINS ANY RESTRICTION BASED ON AGE, RACE COLOR, RELIGION, SEX, GENDER, GENDER IDENTITY, GENDER EXPRESSION, SEXUAL ORIENTATION, FAMILIAL STATUS, MARITAL STATUS, DISABILITY, VETERAN OR MILITARY STATUS, GENETIC INFORMATION, NATIONAL ORIGIN, SOURCE OF INCOME AS DEFINED IN SUBDIVISION (p) OF SECTION 12955, OR ANCESTRY, THAT RESTRICTION VIOLATES STATE AND FEDERAL FAIR HOUSING LAWS AND IS VOID, AND MAY BE REMOVED PURSUANT TO SECTION 12956.2 OF THE GOVERNMENT CODE BY SUBMITTING A "RESTRICTIVE COVENANT MODIFICATION" FORM, TOGETHER WITH A COPY OF THE ATTACHED DOCUMENT WITH THE UNLAWFUL PROVISION REDACTED TO THE COUNTY RECORDER'S OFFICE. THE "RESTRICTIVE COVENANT MODIFICATION" FORM CAN BE OBTAINED FROM THE COUNTY RECORDER'S OFFICE AND MAY BE AVAILABLE ON ITS WEBSITE. THE FORM MAY ALSO BE AVAILABLE FROM THE PARTY THAT PROVIDED YOU WITH THIS DOCUMENT. LAWFUL RESTRICTIONS UNDER STATE AND FEDERAL LAW ON THE AGE OF OCCUPANTS IN SENIOR HOUSING OR HOUSING FOR OLDER PERSONS SHALL NOT BE CONSTRUED AS RESTRICTIONS BASED ON FAMILIAL STATUS.**

# <u>PRELIMINARY REPORT</u>

**The form of Policy of Title Insurance contemplated by this report is:**

☐  Standard Coverage Owner's Policy

☐  Extended Coverage Owner's Policy

☒  CLTA/ALTA Homeowners Policy

☐  Standard Coverage Loan Policy

☒  Extended Coverage Loan Policy

☐  Short Form Residential Loan Policy

☐  Other:  _____

# <u>SCHEDULE A</u>

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Condominium as defined in Section 783 of California Civil Code, in fee as to parcel(s) 1 and 2 and an easement more particularly described as to parcel(s) 3.

**Title to said estate or interest at the date hereof is vested in:**

Leslie Klein and Erika Klein, husband and wife as joint tenants

# <u>LEGAL DESCRIPTION</u>

**The land referred to herein is situated in the State of California, County of Riverside, City of Palm Springs and described as follows:**

A Condominium comprised of:

Parcel 1:

An undivided 1/42 interest in and to Lot 1 of Tract No. 9317, in the City of Palm Springs, County of Riverside, State of California, as shown by Map of file in Book 91, Pages 44 and 45, of Maps, Records of Riverside County, California.

Excepting therefrom Units 1 to 42, as shown upon the Condominium Plan recorded July 20, 1977 as Instrument No. 137713 of Official Records of Riverside County, California.

Parcel 2:

Unit 32A, B, and C, as shown upon the Condominium Plan referred to in Parcel 1 above.

Parcel 3:

A non-exclusive easement for ingress and egress over that certain road shown as Whitewater Club Drive, which extends from the Westerly boundary of Tract No. 4362, as shown by Map on file in Book 70, Pages 89 and 90, of Maps, Records of Riverside County, California, to Farroll Drive, in the City of Palm Springs. The easements described in that certain Easement Deed from Whitewater Country Club, a California corporation, to the City of Palm Springs, a municipal corporation, recorded on January 4, 1972 as Instrument No. 1061 of Official Records of Riverside County, California.

APN:  501-500-033

(End of Legal Description)

MAP

THE MAP CONNECTED HEREWITH IS BEING PROVIDED AS A COURTESY AND FOR INFORMATIONAL PURPOSES ONLY; THIS MAP SHOULD NOT BE RELIED UPON. FURTHERMORE, THE PARCELS SET OUT ON THIS MAP MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES. STEWART ASSUMES NO LIABILITY, RESPONSIBILITY OR INDEMNIFICATION RELATED TO THE MAPS NOR ANY MATTERS CONCERNING THE CONTENTS OF OR ACCURACY OF THE MAP.

# <u>SCHEDULE B</u>

**At the date hereof, exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy or policies would be as follows:**

**Taxes:**

A.   Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes, to be levied for the fiscal year 2024 - 2025.

B.   General and special city and/or county taxes, including any personal property taxes, and any assessments collected with taxes, for the fiscal year 2023 - 2024:
1st Installment          : $1,214.51
Status 1st               : Delinquent
Delinquent Date          : December 11, 2023
Penalty                  : $121.45
2nd Installment:         : $1,214.51
Status 2nd               : Open
Parcel No.               : 501-500-033
Code Area/Tracer No. : 011-005

C.   Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal year(s) 2022 for Parcel No. 501-500-033. Amounts due show as follows:
Amount: $1,576.45; due by: March 31, 2024
Amount: $1,594.69; due by: April 30, 2024
Amount: $1,612.93; due by: May 31, 2024
Prior to recording, the final amounts due must be confirmed with tax collector.

D.   The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California.

E.   Taxes and/or assessments affecting the land, if any, for Community Facility Districts including Mello Roos Districts which may exist by virtue of assessment maps or notices filed by said districts. Said taxes and/or assessments are typically collected with the County taxes; however, some districts may remove these taxes and/or assessment from the County taxes and assess and collect them separately.
A resolution establishing watershed benefit assessment areas which provides for the issuing of bonds and the levying of a special tax to pay the interest and principal payments on such bonds upon the herein described property, recorded June 10, 1991 as Instrument Nos. 193749, 193750 and 193751 of Official Records of Riverside County, California.

Reference is hereby made to said document for further and other particulars.

F.   Prior to recording, the final amount due for taxes must be confirmed with tax collector.

**Exceptions:**

1.   Water rights, claims, or title to water, whether or not shown by the Public Records.

2.   Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether

or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

3.  Easements or servitudes appearing in the Public Records affecting the common area.

4.  Rights of parties in possession to any parking spaces, garages, and/or storage spaces.

5.  Easement and rights incidental thereto for public utilities to California Electric Power Company and California Water and Telephone Company, as set forth in a document recorded January 16, 1958, in Book 2207 Page 224, of Official Records.

6.  Easement and rights incidental thereto for ingress and egress and public utilities to City of Palm Springs, California, a municipal corporation, as set forth in a document recorded January 4, 1972, as Instrument No. 1061, of Official Records.

7.  Easement and rights incidental thereto for water and sewage pipe lines to Desert Water Agency, as set forth in a document recorded March 9, 1972, as Instrument No. 31980, of Official Records.

8.  Matters contained in a survey filed in Book 56 Page 29 of Records of Survey.

9.  Matters as shown on the Map of Tract No. 9317, filed in Book 91, Pages 44 and 45, of Maps together with any provisions and recitals contained therein.

10. Easement and rights incidental thereto for public utilities to General Telephone Company of California, a corporation, as set forth in a document recorded October 18, 1977, as Instrument No. 206180, of Official Records.

11. Easement and rights incidental thereto for pipe lines to Desert Water Agency, as set forth in a document recorded October 18, 1977, as Instrument No. 206239, of Official Records.

12. Easement and rights incidental thereto for pipe lines to Southern California Gas Company, as set forth in a document recorded November 10, 1977, as Instrument No. 225170, of Official Records.

13. Easement and rights incidental thereto for either or both pole lines, conduits or underground facilities to Southern California Edison Company, a corporation, as set forth in a document recorded November 21, 1977, as Instrument No. 232449, of Official Records.

14. Covenants, conditions, restrictions, easements, matters, charges and assessments as set forth in a document, recorded November 12, 1997 as Instrument No. 414397, of Official Records.

    Said covenants, conditions, and restrictions provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value.

15. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

    | | | |
    |---|---|---|
    | Amount | : | $228,000.00 |
    | Trustor | : | Leslie Klein and Erika Klein |
    | Trustee | : | Optima, a California Corporation |
    | Beneficiary | : | Washington Mutual Bank, FA, a Federal Association |
    | Recorded | : | August 11, 2005, as Instrument No. 2005-0654449, of Official Records |

    Said deed of trust appears to be an equity line or a revolving line of credit. Prior to recording, a written statement from the beneficiary confirming that the account is frozen must be obtained. Borrower may be required to provide a sworn written statement of indemnity assuring that said deed of trust is frozen and closed. In addition, upon recording and payoff, the account must be closed and reconveyed by the beneficiary.

Substitution of trustee naming Quality Loan Service Corporation as trustee recorded on March 25, 2022, as Instrument No. 2022-0146601, of Official Records.

A Notice of default recorded on April 18, 2022, as Instrument No. 2022-0183082, of Official Records.

A Notice of Trustee's Sale recorded on February 9, 2023, as Instrument No. 2023-0038554, of Official Records.

16.  Notice of assessment and/or lien filed by Palm Springs Country Club Homeowners Association Phase III, in the amount of $7,360.56, recorded December 30, 2021, as Instrument No. 2021-0765522, of Official Records.

17.  Matters contained in a document entitled "Voluntary Petition for individuals filing for Bankruptcy", recorded April 5, 2023, as Instrument No. 2023-0097413, of Official Records.

18.  Unsecured property taxes in the amount of $335.33 and other amounts due thereunder, recorded July 14, 2022 as Instrument No. 2022-0315327, of Official Records.

19.  The requirement that you provide the following for review and approval for recording:
      (a) an Affidavit of Death of Erika Klein, whose interest was acquired in the deed recorded on July 5, 1979, as Instrument No. 140022, of Official Records.
      (b) an original certified copy of a Certificate of Death for the above referenced decedent to attach to the Affidavit of Death.

20.  In order to insure, provide for review and approval prior to recording, a copy of the proposed draft of the order from the Bankruptcy Court regarding the disposition of the Land.
     Additional requirements or items may be requested upon review of the required documents set forth above; contact your title officer for further instruction.

21.  The requirement that a letter be provided from each Homeowner's Association stating that all liens/dues are current.

22.  To assist in the clarifying, confirming and eliminating certain title matters, provide to Stewart Title, prior to recording, a completed Statement of Information for all identified and known Sellers/Owners in this transaction.

(End of Exceptions)

# <u>NOTES AND REQUIREMENTS</u>

A. There are no transfers or conveyances shown in the Public Records within 24 months of the date of this Preliminary Report. If you have knowledge of any transfers or conveyances, please contact your title officer immediately for further requirements.

B. There are no items in this Preliminary Report that will cause Stewart Title Guaranty Company to decline to attach the CLTA Endorsement Form 116 (or equivalent ALTA 22.1) or the CLTA Endorsement Form 116.01-06 (or equivalent ALTA 22-06), there is located a Condominium known as 2560 N Whitewater Club Drive, Unit B, Palm Springs, California .

C. All Transactions - Seller(s) and Buyer(s) or Borrowers are provided, as attachments, the document entitled "Acknowledgement of Receipt, Understanding and Approval of STG Privacy Notice for Stewart Title Companies and Stewart's Affiliated Business Arrangement Disclosure Statement" and the individually or similarly named documents, for review and acknowledgment prior to closing.

D. All Transactions - Buyer(s)/Seller(s)/Borrower(s) are provided the Preliminary Report for review and acknowledgment prior to closing. Buyer(s) approval shall include the Preliminary Report items that are to remain as exceptions to the title policy.

E. All Transactions - Seller(s)/Owner(s) shall submit for review, prior to closing, a completed Stewart Title Guaranty Company's Owner's Affidavit and Indemnity.

F. There are no items in this Preliminary Report that will cause Stewart Title Guaranty Company to decline to attach the CLTA Endorsement Form 100 (or equivalent ALTA 9), or, if applicable, the CLTA Endorsement Form 115.1-06 (or euivalent ALTA 4-06) or CLTA Endorsement Form 115.1 (or equivalent ALTA 4) or the CLTA Endorsement Form 115.2-06 (or equivalent similar ALTA 5 equivalent)to an ALTA Loan Policy, when issued in accordance with Stewart Title Guaranty Company's guidelines.

G. A Preliminary Change of Ownership Report must be completed by the transferee (buyer) prior to the transfer of property in accordance with the provisions of Section 480.3 of the Revenue and Taxation Code. The Preliminary Change of Ownership Report should be submitted to the recorder concurrent with the recordation of any document effecting a change of ownership. If a document evidencing a change of ownership (i.e. Deed, Affidavit-Death Joint Tenant) is presented to the recorder for recording without a preliminary change of ownership report, the recorder may charge an additional $20.00.

# CALIFORNIA "GOOD FUNDS" LAW

California Insurance Code Section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies.  The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement.  Funds received by Stewart Title of California, Inc. via wire transfer may be disbursed upon receipt.  Funds received via cashier's checks or teller checks drawn on a California Bank may be disbursed on the next business day after the day of deposit.  If funds are received by any other means, recording and/or disbursement may be delayed, and you should contact your title or escrow officer.  All escrow and sub-escrow funds received will be deposited with other escrow funds in one or more non-interest bearing escrow accounts in a financial institution selected by Stewart Title of California, Inc..  Stewart Title of California, Inc. may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and Stewart Title of California, Inc. shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by Stewart Title of California, Inc..  Such benefits shall be deemed additional compensation to Stewart Title of California, Inc. for its services in connection with the escrow or sub-escrow.

If any check submitted is dishonored upon presentation for payment, you are authorized to notify all principals and/or their respective agents of such nonpayment.

# **Procedures to Accompany the Restrictive Covenant Modification Form**

The law prohibits unlawfully restrictive covenants based upon:

"…age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry… Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

As the individual holding or acquiring an interest in the property, you may have any unlawfully restrictive covenants "removed", which means "redacted."

To have the unlawfully restrictive covenant removed, you may prepare and submit to the county recorder's office, a "Restrictive Covenant Modification" form (RCM) together with a copy of the attached document with the unlawfully restrictive covenant redacted. This request must be submitted to the county recorder's office and must include your return address so the county recorder can notify you of the action taken by the county counsel.

The process at the county recorder's office is as follows:

- The county recorder takes the RCM with the redacted document and the original document attached and submits it to the county counsel for review to determine if, from a legal standpoint, the language was an unlawfully restrictive covenant and thus the redacted version should be indexed and recorded.
- The county counsel shall inform the county recorder of his/her determination within a reasonable amount of time, not to exceed three months from the date of your request.
- If county counsel determined that the redacted language was unlawful then, once recorded, the redacted document is the only one that effects the property and this modified document has the same effective date as the original document.
- If county counsel determined that the redacted language was not unlawful then county counsel will return the RCM package to the county recorder and the county recorder will advise the requestor that same the request has been denied and the redacted document has not been recorded.
- The modification document shall be indexed in the same manner as the original document and shall contain a recording reference to the original document.

RECORDING REQUESTED BY
_____

AND WHEN RECORDED MAIL TO

NAME

ADDRESS

CITY
STATE & ZIP

| TITLE ORDER NO. | ESCROW NO. | APN NO. |

# RESTRICTIVE COVENANT MODIFICATION
## (Unlawfully Restrictive Covenant Modification Pursuant to Government Code Section 12956.2)

I(We)_____
have or are acquiring an ownership interest of record in the property located at _____
_____ that is covered by the
document described below.

The following reference document contains a restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in Section 12955 of the Government Code, or ancestry, that violates state and federal fair housing laws and is void. Pursuant to Section 12956.2 of the Government Code, this document is being recorded solely for the purpose of eliminating that restrictive covenant as shown on page(s)_____of the document recorded on _____ in book_____and page _____ or instrument number_____of the official records of the County of _____, State of California.

Attached hereto is a true, correct and complete copy of the document referenced above, with the unlawful restrictive covenant redacted.

This modification document shall be indexed in the same manner as the original document pursuant to subdivision (d) of Section 12956 of the Government.

The effective date of the terms and conditions of the modification document shall be the same as the effective date of the original document.

_____
(Signature of Submitting Party)

_____
(Printed Name)

_____
(Signature of Submitting Party)

_____
(Printed Name)

_____ County Counsel, or their designee, pursuant to Government Code Section 12956.2, hereby states that it has been determined that the original document referenced above _____ Does _____ Does Not contain an unlawful restriction and this modification may be recorded.

County Counsel
By:
_____
Date:
_____

# EXHIBIT "A"

## LEGAL DESCRIPTION

Order No.:  2045167
Escrow No.:  2045167

The land referred to herein is situated in the State of California, County of Riverside, City of Palm Springs and described as follows:

A Condominium comprised of:

Parcel 1:

An undivided 1/42 interest in and to Lot 1 of Tract No. 9317, in the City of Palm Springs, County of Riverside, State of California, as shown by Map of file in Book 91, Pages 44 and 45, of Maps, Records of Riverside County, California.

Excepting therefrom Units 1 to 42, as shown upon the Condominium Plan recorded July 20, 1977 as Instrument No. 137713 of Official Records of Riverside County, California.

Parcel 2:

Unit 32A, B, and C, as shown upon the Condominium Plan referred to in Parcel 1 above.

Parcel 3:

A non-exclusive easement for ingress and egress over that certain road shown as Whitewater Club Drive, which extends from the Westerly boundary of Tract No. 4362, as shown by Map on file in Book 70, Pages 89 and 90, of Maps, Records of Riverside County, California, to Farroll Drive, in the City of Palm Springs. The easements described in that certain Easement Deed from Whitewater Country Club, a California corporation, to the City of Palm Springs, a municipal corporation, recorded on January 4, 1972 as Instrument No. 1061 of Official Records of Riverside County, California.

APN:  501-500-033

(End of Legal Description)

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Date:       June 2, 2023

File No.:   2045167

Property:   2560 N Whitewater Club Drive, Unit B, Palm Springs, CA  92262

From:       Stewart Title of California, Inc.


This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") has a business relationship with Stewart Solutions, LLC, DBA – Stewart Specialty Insurance Services, LLC ("Stewart  Insurance"). Stewart Information Services Corporation owns 100% of Stewart Insurance and Stewart Title of California, Inc..  Because of this relationship, this referral may provide Stewart Title a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed.  You are NOT required to use the listed provider(s) as a condition for purchase, sale, or refinance of the subject Property.  THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| *Stewart Insurance Settlement Service* | *Charge or range of charges* |
|---|---|
| Hazard Insurance | $400.00 to $6,500.00 |
| Home Warranty | $255.00 to $  780.00 |
| Natural Hazard Disclosure Report | $  42.50 to $   149.50 |

## ACKNOWLEDGEMENT OF RECEIPT, UNDERSTANDING AND APPROVAL OF STEWART TITLE GUARANTY COMPANY PRIVACY NOTICE FOR STEWART TITLE COMPANIES AND AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

The undersigned hereby acknowledge receipt of the Stewart Title Guaranty Company Privacy Notice for Stewart Title Companies and the Affiliated Business Arrangement Disclosure Statement that apply to this transaction. The undersigned further acknowledge that he/she/they have received, read, understand and accept these documents in connection with the above described transaction.

The undersigned have received a copy of this acknowledgement as evidenced by the signature below.


_____          _____
Leslie Klein                                                            Erika Klein




_____
Roll Sparrow LLC

**CALIFORNIA LAND TITLE ASSOCIATION**
**STANDARD COVERAGE POLICY – 1990 (11-09-18)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy; or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

© California Land Title Association.  All rights reserved.                                                                                           1

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, EXHIBIT A (Rev. 04-22)

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)]

## CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE OWNER'S POLICY (02-04-22)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.    the occupancy, use, or enjoyment of the Land;
        ii.   the character, dimensions, or location of any improvement on the Land;
        iii.  the subdivision of land; or
        iv.   environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.

2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.

3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 9.b.

5.  Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.

6.  Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.

7.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

© California Land Title Association.  All rights reserved.                                                                                      2

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, EXHIBIT A (Rev. 11-04-22)

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*


## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (07-01-2021)


## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.
   a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, or regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.

2. Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.

3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by You;
   b. not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
   c. resulting in no loss or damage to You;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
   e. resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.

4. Lack of a right:
   a. to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
   b. in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
   Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.

© California Land Title Association.  All rights reserved.                                                    3

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, EXHIBIT A (Rev. 11-04-22)

5.  The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 30.

7.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

8.  Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.

9.  Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.

10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**LIMITATIONS ON COVERED RISKS**

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

*   For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 18: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 19: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 21: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |

**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)**

**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

© California Land Title Association.  All rights reserved.                                                    4

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, EXHIBIT A (Rev. 11-04-22)

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.
4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.  in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.


**LIMITATIONS ON COVERED RISKS**

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 18: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 19: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 21: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |

---

© California Land Title Association.  All rights reserved.                                                                                                           5

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

**ALTA OWNER'S POLICY (07-01-2021)**

**EXCLUSIONS FROM COVERAGE**

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
    i. the occupancy, use, or enjoyment of the Land;
    ii. the character, dimensions, or location of any improvement on the Land;
    iii. the subdivision of land; or
    iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
    i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
    ii. for any other reason not stated in Covered Risk 9.b.
5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**EXCEPTIONS FROM COVERAGE**

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.    Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7.    Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a)    Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
          (i)     the occupancy, use, or enjoyment of the Land;
          (ii)    the character, dimensions, or location of any improvement erected on the Land;
          (iii)   the subdivision of land; or
          (iv)   environmental protection;
          or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
      (b)    Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters
      (a)    created, suffered, assumed, or agreed to by the Insured Claimant;
      (b)    not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
      (c)    resulting in no loss or damage to the Insured Claimant;
      (d)    attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
      (e)    resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
      (a)    a fraudulent conveyance or fraudulent transfer; or
      (b)    a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1.    (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.    Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3.    Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.    Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.    Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7.     Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

© California Land Title Association.  All rights reserved.                                                                                                        7

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

File No.:  2045167

# AVAILABLE DISCOUNTS DISCLOSURE STATEMENT

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.

Such discounts apply to and include:

Property located within an area proclaimed a state or federal disaster area;

Property purchased from a foreclosing beneficiary or successful bidder at a foreclosure sale;

Property being refinanced.

Please talk with your escrow or title officer to determine your qualification for any of these discounts.

File No.:  2045167

# Stewart Title of California, Inc.
## STATEMENT OF INFORMATION

**CONFIDENTIAL**

**THE STREET ADDRESS of the property in this transaction is:**    (IF NONE LEAVE BLANK)

ADDRESS  2560 N Whitewater Club Drive, Unit B                                    CITY Palm Springs, CA 92262

IMPROVEMENTS:  ☐ SINGLE RESIDENCE    ☐ MULTIPLE RESIDENCE    ☐ COMMERCIAL

OCCUPIED BY:   ☐ OWNER   ☐ TENANTS

CONSTRUCTION OR IMPROVEMENTS WITHIN THE LAST 6 MONTHS?   ☐ YES    ☐ NO

IF YES, STATE NATURE WORK DONE

| PARTY 1 | PARTY 2 |
|---|---|
| FIRST          MIDDLE          LAST | FIRST          MIDDLE          LAST |
| FORMER LAST NAME(S), IF ANY | FORMER LAST NAME(S), IF ANY |
| BIRTHPLACE          BIRTH DATE | BIRTHPLACE          BIRTH DATE |
| Social Security No.          DRIVER'S LICENSE NO. | Social Security No.          DRIVER'S LICENSE NO. |
| Home          Cell | Home          Cell |
| ☐ AM SINGLE   ☐ AM MARRIED   ☐ HAVE A DOMESTIC PARTNER | ☐ AM SINGLE   ☐ AM MARRIED   ☐ HAVE A DOMESTIC PARTNER |
| Date of Marriage or Partnership | Date of Marriage or Partnership |
| NAME OF <u>CURRENT</u> SPOUSE OR DOM. PARTNER (if other than Party 2): | NAME OF <u>CURRENT</u> SPOUSE OR DOM. PARTNER (if other than Party 1): |
| NAME OF <u>FORMER</u> SPOUSE/DOM. PARTNER: (IF NONE, WRITE "NONE"): | NAME OF <u>FORMER</u> SPOUSE/DOM. PARTNER: (IF NONE, WRITE "NONE"): |

| | | | | | | |
|---|---|---|---|---|---|---|
| Dissolutions pending | Yes | No | (circle one) | Dissolutions pending | Yes | No   (circle one) |
| Required to make child support payments? | Yes | No | (circle one) | Required to make child support payments? | Yes | No   (circle one) |
| Required to make Family support payments? | Yes | No | (circle one) | Required to make Family support payments? | Yes | No   (circle one) |

If paying former spouse directly, please provide address:          If paying former spouse directly, please provide address:

### OCCUPATIONS FOR LAST 10 YEARS (attach additional 10 year information, if applicable)

Party 1: _____

Party 2: _____

| Occupation | Firm Name | Street and City | No. Years |
|---|---|---|---|

### RESIDENCES FOR LAST 10 YEARS (attach additional 10 year information, if applicable)

Party 1: _____

Party 2: _____

| Street No. | Street Name | City | No. Years |
|---|---|---|---|

### Email Address

If you would like us to contact you by email, please provide your email address

Home Phone:                    Business Phone:                    Cell Phone:

**The undersigned declare, under penalty of perjury, that foregoing is true and correct.**

**Signature:**                    **Date:**                    **Signature:**                    **Date:**

Order No.:  2045167 - Statement of Information CA
Rev. 4/09

# STGC TITLE PREMIUM DISCOUNT APPLICATION
# AND CONFIRMATION OF ELIGIBILITY

Order Number: 2045167

Property:  2560 N Whitewater Club Drive, Unit B, Palm Springs, CA  92262

APN: 501-500-033

In connection with the request of the Undersigned ("Applicant") for the preparation and issuance of title insurance, Applicant provides this completed STGC Title Premium Discount Application and Confirmation of Eligibility ("Request Form") for the benefit of, and reliance by, title insurer Stewart Title Guaranty Company, and its policy issuing agent Stewart Title of California, Inc. (collectively hereafter referred to as "Stewart Title") in connection with pricing the title premium in the above referenced transaction:

1.  Applicant understands that Stewart Title has available for qualifying requestors a 10% discount on the title insurance premium charged under certain circumstances; however, all endorsement fees and other charges are not discounted.

2.  Applicant understands that Stewart Title is only able to provide such discount if requested through providing this completed Request Form and is received by Stewart Title at least five (5) business days prior to recording of the transaction to which a discount is requested.

3.  Applicant understands that Stewart Title prohibits combined discounts; accordingly, Stewart Title will provide this requested discount and disregard other applicable discounts, if any, when eligibility requirements for such discount are satisfied.

4.  Applicant requests the following discount and affirms that Applicant meets the criteria and requirements set forth to qualify for such selected discount (SELECT ONLY ONE QUALIFYING DISCOUNT):

☐   <u>Active military personnel and honorably discharged veteran discount</u>* – To qualify for an active military personnel or honorably discharged veteran discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is engaged in full-time, active duty in the military on the date signed below or was a honorably discharged veteran.

☐   <u>Senior citizen discount</u> – To qualify for a senior citizen discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is 55 years of age or older on the date signed below.

*Active military personnel and honorably discharged veterans include those members from the following U.S. military services branches: Air Force, Army, Coast Guard, Marine Corps, Navy and Space Force, and any active Reserve members of these military services branches and any active members of the Air or Army National Guard.

☐ <u>First-time homebuyer discount</u> – To qualify for a first-time homebuyer discount: (1) the property being purchased is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s) is a U.S. citizen, permanent resident or qualified alien and has either never owned any property or, has not been an owner in a primary residence for the last three calendar years from the date signed below.

☐ <u>First responder discount</u> – To qualify for a first responder discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is currently employed as a police officer, firefighter, paramedic or emergency medical technician on the date signed below.

This Request Form is completed under penalty of perjury and is made for the purpose of inducing Stewart Title to provide the title premium discount, and the representations contained herein are material to such insurance coverage pricing.  The undersigned hereby indemnifies and holds Stewart Title harmless from any loss or damage, liability, costs, expenses and attorneys' fees which it may sustain to the extent any representation contained herein is incorrect. The undersigned understands that Stewart Title may decide not to provide the requested title insurance despite the information and affirmations contained herein.

**PLEASE READ AND COMPLETE THE STGC TITLE PREMIUM DISCOUNT REQUEST FORM ON THE PREVIOUS PAGE BEFORE SIGNING BELOW. IF YOU DO NOT UNDERSTAND OR HAVE ANY QUESTIONS ABOUT THIS AFFIDAVIT, YOU SHOULD CONTACT YOUR LOCAL STEWART TITLE PROFESSIONAL.**

**THE UNDERSIGNED DECLARES UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT.**

_____          _____
Signature                                                          Signature

_____          _____
Printed Name                                                     Printed Name

_____          _____
Date Signed                                                       Date Signed

# OWNER'S AFFIDAVIT AND INDEMNITY

**Order No.:** 2045167
**Address/Location:** 2560 N Whitewater Club Drive, Unit B, Palm Springs, CA 92262
**APN:** 501-500-033

In connection with the request of the Undersigned ("Affiant") for the preparation and issuance of insurance, Affiant makes the following statements and representations for the benefit of, and reliance by, title insurer STEWART TITLE GUARANTY COMPANY, and its policy issuing agent STEWART TITLE OF CALIFORNIA, INC. (collectively hereafter referred to as "TITLE").

1.  Affiant owns and holds title to the land described in Schedule A of the Preliminary Report or Commitment issued in connection with the above referenced Order Number (the "Land").

2.  The Affiant's ownership and/or possession of the Land has been peaceful and undisturbed, and title thereto has never been disputed, questioned or rejected, nor has the issuance of title insurance ever been refused, except as follows:  **(If none, please state "none")**
    _____

3.  Other than the Affiant, there are no parties entitled to possession of the Land other than the following:  **(If none, please state "none")**
    _____

4.  There are no leases, licenses, options, rights of first refusal, or contracts to sell, affecting the Land, or any parties currently in possession, of the Land, except the following: **(If none, please state "none")**
    _____

5.  All assessments by a management company or owners' association, or for common area or building maintenance, if any, are paid current or are not yet due and payable except for the following. **(If none, please state "none")**
    _____

6.  There are no pending contemplated repairs/improvements to the Land, except the following: **(If none, please state "none)**
    _____

7.  There has been no construction, building materials, repairs, improvements, or remodeling performed, provided, furnished or delivered within the last 12 months, except as follows: **(If none, please state "none")**
    _____
    This work performed, as detailed above, was completed on _____ (date of completion).

8.  Affiant is not aware of the existence of any of the following:
    a.  Improvements, including fences, encroaching into any easements on the Land, or over any boundary lines of the Land.
    b.  Adjoining property improvements encroaching onto the Land.
    c.  Liens against the Land and/or judgments or tax liens against Affiant or any other property owner currently in title, except those described in the Preliminary Report or Commitment issued in connection with the above referenced Order Number.
    d.  Outstanding claims or persons entitled to claims for mechanics' or materialman liens against the Land.
    e.  Pending repairs/improvements to any adjacent street(s) or any assessments related to road maintenance
    f.  Any pending litigation involving the Land, the Affiant or any other property owner currently in title.
    g.  Recent improvements completed or being made to any common area(s) located within the subdivision in which the Land is located.
    h.  Violations of building permits, zoning laws or recorded covenants, conditions and/or restrictions imposed on the Land.
    i.  Any pending assessments for Community Facility Districts.
    j.  Any new, pending or existing obligation or loan including any home improvements on the Land pursuant to the PACE or HERO program, or any other similar type program.

k.  Any unrecorded or recorded easements, covenants, conditions, or restrictions affecting the Land, other than those listed in the Preliminary Report or Title Commitment.

l.  Any use of the property for the production, sale, warehousing or transporting of fresh fruits, vegetables, livestock or poultry (e.g., supermarkets, restaurants, wineries, breweries and meat packing plants).

**With regard to 8a.-8l, except as follows**: **(If none, please state "none")**

_____

9.  No proceedings in bankruptcy or receivership have been instituted or filed by, or against, the Affiant or any other property owner currently in title.

10. There are no unpaid taxes, assessments or utility type bills including but not limited to bills for water, sewer, hazardous waste, recycling, storm drain and/or rubbish and there are no liens related to such utilities from or on the Land, with the exception of the following: **(If none, please state "none")**

_____

11. There are no financial obligations secured by trust deeds, mortgages, financing statements, vendor's liens, security agreements or otherwise, against the Land, except as set forth in the Preliminary Report, proforma and/or Commitment, and as set forth below: **(If none, please state "none")**

<u>Creditor</u>                                                <u>Approximate Balance</u>

_____              _____

_____              _____

12. There has been no harvesting or production of any oil, gas, geothermal materials or other minerals from or on the Land and there are no oil, gas, geothermal and/or mineral leases, licenses, options, rights of first refusal, and/or contracts to sell, affecting the mineral rights associated with the Land, or other parties currently in possession, of the mineral rights on the Land, except the following: **(If none, please state "none")**

_____

13. Other than the Affiant, there are no other parties currently in possession of the Land, including but not limited to, any possessory interest associated with the harvesting of any oil, gas, geothermal materials or other minerals, except the following: **(If none, please state "none")**

_____

14. Affiant has not executed and will not execute any documents or instruments related to the title to, or interest in, the Land prior to the recordation of the documents in this transaction.

15. By signing below, Affiant agrees to cooperate with TITLE and, upon request from TITLE, to promptly provide and/or execute, any corrective or curative information or documentation requested.

This is a sworn affidavit and is made for the purpose of inducing TITLE to provide certain insurance coverage to a purchaser and/or lender, and the representations contained herein are material to such insurance coverage. The undersigned hereby indemnifies and holds Stewart Title Guaranty Company and its policy issuing agent identified above harmless from any loss or damage, liability, costs, expenses and attorneys' fees which it may sustain under its policies of title insurance or commitments to the extent any representation contained herein is incorrect. The undersigned understands that TITLE may decide not to provide the requested title insurance despite the information and affirmations contained herein.

**PLEASE READ, COMPLETE AND RESPOND TO ALL STATEMENTS CONTAINED IN THIS OWNER'S AFFIDAVIT AND INDEMNITY BEFORE SIGNING IN THE PRESENCE OF A NOTARY PUBLIC. THE NOTARY PUBLIC WILL EXECUTE THE ACKNOWLEDGMENT ON THE FOLLOWING PAGE. HOWEVER, IF YOU DO NOT UNDERSTAND OR HAVE ANY QUESTIONS ABOUT THIS AFFIDAVIT, YOU SHOULD SEEK THE ASSISTANCE OF YOUR INDEPENDENT FINANCIAL AND/OR LEGAL ADVISOR BEFORE SIGNING.**

_____                    _____

Leslie Klein                                                Erika Klein

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California                    )
                                       ) ss.
County of _____ )

Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20_____, by
_____, proved to me on
the basis of satisfactory evidence to be the person(s) who appeared before me.


_____

Notary Signature

# STEWART TITLE GUARANTY COMPANY
# PRIVACY NOTICE

This Stewart Title Guaranty Company Privacy Notice ("Notice") explains how Stewart Title Guaranty Company and its subsidiary title insurance companies (collectively, "Stewart") collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of your information.  Pursuant to Title V of the Gramm-Leach Bliley Act ("GLBA") and other Federal and state laws and regulations applicable to financial institutions, consumers have the right to limit some, but not all sharing of their personal information.   Please read this Notice carefully to understand how Stewart uses your personal information.

The types of personal information Stewart collects, and shares depends on the product or service you have requested.

**Stewart may collect the following categories of personal and financial information from you throughout your transaction:**

1. Identifiers: Real name, alias, online IP address if accessing company websites, email address, account name, unique online identifier, social security number, driver's license number, passport number, or other similar identifiers;

2. Demographic Information: Marital status, gender, date of birth.

3. Personal Information and Personal Financial Information: Name, signature, social security number, physical characteristics or description, address, telephone number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, credit reports, or any other information necessary to complete the transaction.

**Stewart may collect personal information about you from:**

1. Publicly available information from government records.
2. Information we receive directly from you or your agent(s), such as your lender or real estate broker;
3. Information about your transactions with Stewart, our affiliates, or others; and
4. Information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

**Stewart may use your personal information for the following purposes:**

1. To provide products and services to you or in connection with a transaction.
2. To improve our products and services.
3. To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

**Stewart may use or disclose the personal information we collect for one or more of the following purposes:**

- To fulfill or meet the reason for which the information is provided.
- To provide, support, personalize, and develop our website, products, and services.
- To create, maintain, customize, and secure your account with Stewart.
- To process your requests, purchases, transactions, and payments and prevent transactional fraud.
- To prevent and/or process claims.
- To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf pursuant to valid service provider agreements.
- As necessary or appropriate to protect the rights, property or safety of Stewart, our customers or others.
- To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
- To help maintain the safety, security, and integrity of our website, products and services, databases and other technology-based assets, and business.
- To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
- Auditing for compliance with federal and state laws, rules and regulations.

- Performing services including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments.
- To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal information or use the personal information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

## Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties

Stewart does not sell your personal information to nonaffiliated third parties.  Stewart may share your information with those you have designated as your agent throughout the course of your transaction (for example, a realtor, broker, or a lender).  Stewart may disclose your personal information to a non-affiliated third party for a business purpose.  Typically, when we disclose personal information for a business purpose, we enter in a contract that describes the purpose and requires the recipient to both keep that personal information confidential and not use it for any purpose except performing the contract.

We share your personal information with the following categories of third parties:

- Non-affiliated service providers and vendors we contract with to render specific services (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)
- To enable Stewart to prevent criminal activity, fraud, material misrepresentation, or nondisclosure.
- Stewart's affiliated and subsidiary companies.
- Non-affiliated third-party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you.
- Parties involved in litigation and attorneys, as required by law.
- Financial rating organizations, rating bureaus and trade associations.
- Federal and State Regulators, law enforcement and other government entities to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

The law does not require your prior authorization or consent and does not allow you to restrict the disclosures described above.  Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with non-affiliated third parties, except as required or permitted by law.

## Right to Limit Use of Your Personal Information

You have the right to opt-out of sharing of your personal information among our affiliates to directly market to you.  To opt-out of sharing to our affiliates for direct marketing, you may send an "opt out" request to Privacyrequest@stewart.com, or contact us through other available methods provided under "Contact Information" in this Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

## How Stewart Protects Your Personal Information

Stewart maintains physical, technical and administrative safeguards and policies to protect your personal information.

## Contact Information

If you have questions or comments about this Notice, the ways in which Stewart collects and uses your information described herein, your choices and rights regarding such use, or wish to exercise your rights under law, please do not hesitate to contact us at:

| | |
|---|---|
| **Phone:** | Toll Free at 1-866-571-9270 |
| **Email:** | Privacyrequest@stewart.com |
| **Postal Address:** | Stewart Information Services Corporation<br>Attn:  Mary Thomas, Chief Compliance and Regulatory Officer<br>1360 Post Oak Blvd., Ste. 100, MC #14-1<br>Houston, TX  77056 |

Effective Date: <u>January 1, 2020</u>
Updated: <u>January 1, 2023</u>

## Privacy Notice at Collection for California Residents

Pursuant to the California Consumer Privacy Act of 2018 ("CCPA") and the California Privacy Rights Act of 2020, effective January 1, 2023 ("CPRA"), Stewart Information Services Corporation and its subsidiary companies (collectively, "Stewart") are providing this **Privacy Notice at Collection for California Residents** ("CCPA & CPRA Notice").  This CCPA & CPRA Notice supplements the information contained in Stewart's existing privacy notice and applies solely to all visitors, users, and consumers and others who reside in the State of California or are considered California Residents as defined in the CCPA & CPRA ("consumers" or "you").  All terms defined in the CCPA & CPRA have the same meaning when used in this Notice.

### Personal and Sensitive Personal Information Stewart Collects

- Publicly available information from government records.
- Deidentified or aggregated consumer information.
- Certain personal information protected by other sector-specific federal or California laws, including but not limited to the Fair Credit Reporting Act (FCRA), Gramm Leach Bliley Act (GLBA) and California Financial Information Privacy Act (FIPA).

Specifically, Stewart has collected the following categories of **personal and sensitive personal information** from consumers within the last twelve (12) months:

| Category | Examples | Collected |
|---|---|---|
| A. Identifiers. | A real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security number, driver's license number, passport number, or other similar identifiers. | YES |
| B. Personal information categories listed in the California Customer Records statute (Cal. Civ. Code § 1798.80(e)). | A name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information. Some personal information included in this category may overlap with other categories. | YES |
| C. Protected classification characteristics under California or federal law. | Age (40 years or older), race, color, ancestry, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, veteran or military status, genetic information (including familial genetic information). | YES |
| D. Commercial information. | Records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies. | YES |
| E. Biometric information. | Genetic, physiological, behavioral, and biological characteristics, or activity patterns used to extract a template or other identifier or identifying information, such as, fingerprints, faceprints, and voiceprints, iris or retina scans, keystroke, gait, or other physical patterns, and sleep, health, or exercise data. | YES |
| F. Internet or other similar network activity. | Browsing history, search history, information on a consumer's interaction with a website, application, or advertisement. | YES |
| G. Geolocation data. | Physical location or movements. | YES |

| H. Sensory data. | Audio, electronic, visual, thermal, olfactory, or similar information. | YES |
|---|---|---|
| I. Professional or employment-related information. | Current or past job history or performance evaluations. | YES |
| J. Non-public education information (per the Family Educational Rights and Privacy Act (20 U.S.C. Section 1232g, 34 C.F.R. Part 99)). | Education records directly related to a student maintained by an educational institution or party acting on its behalf, such as grades, transcripts, class lists, student schedules, student identification codes, student financial information, or student disciplinary records. | YES |
| K. Inferences drawn from other personal information. | Profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes. | YES |

Stewart obtains the categories of personal and sensitive information listed above from the following categories of sources:

- Directly and indirectly from customers, their designees, or their agents (For example, realtors, lenders, attorneys, brokers, etc.)
- Directly and indirectly from activity on Stewart's website or other applications.
- From third-parties that interact with Stewart in connection with the services we provide.

## Use of Personal and Sensitive Personal Information

Stewart may use or disclose the personal or sensitive information we collect for one or more of the following purposes:

a. To fulfill or meet the reason for which the information is provided.
b. To provide, support, personalize, and develop our website, products, and services.
c. To create, maintain, customize, and secure your account with Stewart.
d. To process your requests, purchases, transactions, and payments and prevent transactional fraud.
e. To prevent and/or process claims.
f. To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf pursuant to valid service provider agreements.
g. As necessary or appropriate to protect the rights, property or safety of Stewart, our customers or others.
h. To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
i. To personalize your website experience and to deliver content and product and service offerings relevant to your interests, including targeted offers and ads through our website, third-party sites, and via email or text message (with your consent, where required by law).
j. To help maintain the safety, security, and integrity of our website, products and services, databases and other technology-based assets, and business.
k. To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
l. Auditing for compliance with federal and state laws, rules and regulations.
m. Performing services including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments, providing advertising or marketing services or other similar services.
n. To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal or sensitive information or use the personal or sensitive information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

## Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties

Stewart does not sell your personal information to nonaffiliated third parties.  Stewart may share your information with those you have designated as your agent throughout the course of your transaction (for example, a realtor, broker, or a lender).  Stewart may disclose your personal information to a third party for a business purpose.

Typically, when we disclose personal information for a business purpose, we enter into a contract that describes the purpose and requires the recipient to both keep that personal information confidential and not use it for any purpose except performing the contract.

We share your personal information with the following categories of third parties:

a.  Service providers and vendors we contract with to render specific services (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)
b.  Affiliated Companies.
c.  Parties involved in litigation and attorneys, as required by law.
d.  Financial rating organizations, rating bureaus and trade associations.
e.  Federal and State Regulators, law enforcement and other government entities

In the preceding twelve (12) months, Stewart has disclosed the following categories of personal information for a business purpose:

Category A:  Identifiers
Category B:  California Customer Records personal information categories
Category C:  Protected classification characteristics under California or federal law
Category D:  Commercial Information
Category E:  Biometric Information
Category F:  Internet or other similar network activity
Category G:  Geolocation data
Category H:  Sensory data
Category I:   Professional or employment-related information
Category J:   Non-public education information
Category K:  Inferences

## Your Consumer Rights and Choices Under CPPA and CPRA

### Your Rights Under CCPA

The CCPA provides consumers (California residents as defined in the CCPA) with specific rights regarding their personal information.  This section describes your CCPA rights and explains how to exercise those rights.

### Access to Specific Information and Data Portability Rights

You have the right to request that Stewart disclose certain information to you about our collection and use of your personal information over the past 12 months.  Once we receive and confirm your verifiable consumer request, Stewart will disclose to you:

•  The categories of personal information Stewart collected about you.
•  The categories of sources for the personal information Stewart collected about you.
•  Stewart's business or commercial purpose for collecting that personal information.
•  The categories of third parties with whom Stewart shares that personal information.
•  The specific pieces of personal information Stewart collected about you (also called a data portability request).
•  If Stewart disclosed your personal data for a business purpose, a listing identifying the personal information categories that each category of recipient obtained.

### Deletion Request Rights

You have the right to request that Stewart delete any of your personal information we collected from you and retained, subject to certain exceptions. Once we receive and confirm your verifiable consumer request, Stewart will delete (and direct our service providers to delete) your personal information from our records, unless an exception applies.

Stewart may deny your deletion request if retaining the information is necessary for us or our service providers to:

1.  Complete the transaction for which we collected the personal information, provide a good or service that you requested, take actions reasonably anticipated within the context of our ongoing business relationship with you, or otherwise perform our contract with you.

2.  Detect security incidents, protect against malicious, deceptive, fraudulent, or illegal activity, or prosecute those responsible for such activities.

3.  Debug products to identify and repair errors that impair existing intended functionality.

4.  Exercise free speech, ensure the right of another consumer to exercise their free speech rights, or exercise another right provided for by law.

5.  Comply with the California Electronic Communications Privacy Act (Cal. Penal Code § 1546 *seq.*).

6.  Engage in public or peer-reviewed scientific, historical, or statistical research in the public interest that adheres to all other applicable ethics and privacy laws, when the information's deletion may likely render impossible or seriously impair the research's achievement, if you previously provided informed consent.

7.  Enable solely internal uses that are reasonably aligned with consumer expectations based on your relationship with us.

8.  Comply with a legal obligation.

9.  Make other internal and lawful uses of that information that are compatible with the context in which you provided it.

## Your Rights Under CPRA

CPRA expands upon your consumer rights and protections offered by the CCPA.  This section describes your CPRA rights and explains how to exercise those rights.

## Opt-Out of Information Sharing and Selling

Stewart does not share or sell information to third parties, as the terms are defined under the CCPA and CPRA.  Stewart only shares your personal information as commercially necessary and in accordance with this CCPA & CPRA Notice.

## Correction of Inaccurate Information

You have the right to request that Stewart correct any inaccurate information maintained about.

## Limit the Use of Sensitive Personal Information

You have the right to limit how your sensitive personal information, as defined in the CCPA and CPRA is disclosed or shared with third parties.

## Exercising Your Rights Under CCPA and CPRA

To exercise the access, data portability, deletion, opt-out, correction, or limitation rights described above, please submit a verifiable consumer request to us by the available means provided below:

1.  Calling us Toll Free at 1-866-571-9270; or

2.  Emailing us at Privacyrequest@stewart.com; or

3.  Visiting http://stewart.com/ccpa.

Only you, or someone legally authorized to act on your behalf, may make a verifiable consumer request related to your personal information.  You may also make a verifiable consumer request on behalf of your minor child, if applicable.

To designate an authorized agent, please contact Stewart through one of the methods mentioned above.

You may only make a verifiable consumer request for access or data portability twice within a 12-month period. The verifiable consumer request must:

•   Provide sufficient information that allows us to reasonably verify you are the person about whom we collected personal information or an authorized representative.

•   Describe your request with sufficient detail that allows us to properly understand, evaluate, and respond to it.

Stewart cannot respond to your request or provide you with personal information if we cannot verify your identity or authority to make the request and confirm the personal information relates to you.

Making a verifiable consumer request does not require you to create an account with Stewart.

**Response Timing and Format**

We endeavor to respond to a verifiable consumer request within forty-five (45) days of its receipt.  If we require more time (up to an additional 45 days), we will inform you of the reason and extension period in writing.

A written response will be delivered by mail or electronically, at your option.

Any disclosures we provide will only cover the 12-month period preceding the verifiable consumer request's receipt.  The response we provide will also explain the reasons we cannot comply with a request, if applicable.  For data portability requests, we will select a format to provide your personal information that is readily useable and should allow you to transmit the information from one entity to another entity without hindrance.

Stewart does not charge a fee to process or respond to your verifiable consumer request unless it is excessive, repetitive, or manifestly unfounded.  If we determine that the request warrants a fee, we will tell you why we made that decision and provide you with a cost estimate before completing your request.

**Non-Discrimination**

Stewart will not discriminate against you for exercising any of your CCPA and CPRA rights.  Unless permitted by the CCPA or CPRA, we will not:

- Deny you goods or services.
- Charge you a different prices or rates for goods or services, including through granting discounts or other benefits, or imposing penalties.
- Provide you a different level or quality of goods or services.
- Suggest that you may receive a different price or rate for goods or services or a different level or quality of goods or services.

**Record Retention**

Your personal information will not be kept for longer than is necessary for the business purpose for which it is collected and processed.  We will retain your personal information and records based on established record retention policies pursuant to California law and in compliance with all federal and state retention obligations.  Additionally, we will retain your personal information to comply with applicable laws, regulations, and legal processes (such as responding to subpoenas or court orders), and to respond to legal claims, resolve disputes, and comply with legal or regulatory recordkeeping requirements

**Changes to This CCPRA & CPRA Notice**

Stewart reserves the right to amend this CCPA & CPRA Notice at our discretion and at any time.  When we make changes to this CCPA & CPRA Notice, we will post the updated Notice on Stewart's website and update the Notice's effective date.

**Link to Privacy Notice**

Stewarts Privacy Notice can be found on our website at https://www.stewart.com/en/privacy.html.

**Contact Information**

If you have questions or comments about this notice, the ways in which Stewart collects and uses your information described herein, your choices and rights regarding such use, or wish to exercise your rights under California law, please do not hesitate to contact us at:

**Phone:**    Toll Free at 1-866-571-9270

**Website:**    **http://stewart.com/ccpa**

**Email:**    Privacyrequest@stewart.com

**Postal Address:**  Stewart Information Services Corporation
Attn:  Mary Thomas, Chief Compliance and Regulatory Officer
1360 Post Oak Blvd., Ste. 100, MC #14-1
Houston, TX  77056

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.







Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.





501 - 500

OCT. 1980

MB 91/44-45 Tract No. (C.M.-19-77-86) (C.M. 28/104-113 AMENDED)