Jeffrey W. Dulberg (CA Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
Jeffrey P. Nolan (CA Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile: 310-201-0760
Email: jdulberg@pszjlaw.com
        jlucas@pszjlaw.com
        jnolan@pszjlaw.com

Counsel to Bradley D. Sharp, Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>               Debtor. | Case No. 2:23-bk-10990-SK<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF CHAPTER 11 TRUSTEE FOR ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER FAMILY TRUST AND GESTETNER CHARITABLE REMAINDER UNITRUST PURSUANT TO BANKRUPTCY RULE 9019; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRADLEY D. SHARP IN SUPPORT THEREOF**<br><br>Date: February 12, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 1575<br>      255 E. Temple Street<br>      Los Angeles, CA 90012 |

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, A. GESTETNER FAMILY TRUST, GESTETNER CHARITABLE REMAINDER UNITRUST AND THEIR ATTORNEYS OF RECORD, THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

     **PLEASE TAKE NOTICE** that Bradley D. Sharp, in his capacity as Chapter 11 Trustee (the "**Trustee**") of the bankruptcy estate (the "**Estate**") of Leslie Klein, the debtor herein (the "**Debtor**") hereby moves (the "**Motion**") the Court for entry of an order pursuant Rule 9019(a) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") to approve the settlement ("**Settlement**")

by and between the Trustee, on behalf of the Estate, and A. Gestetner Family Trust and Gestetner

Charitable Remainder Unitrust (together, "**Gestetner**", and collectively with the Trustee,  the

"**Parties**").

      The terms of the Settlement are more fully set forth in the Settlement Agreement attached as

**Exhibit 1** to the Declaration of Bradley D. Sharp (the "**Settlement Agreement**"). The principal

terms include: (a) Gestetner shall hold a valid and perfected secured claim against the Debtor's

equity interest in Life Capital Group LLC ("**LCG**"); (b) Gestetner's claim against the Estate shall be

allowed as a single secured claim in the amount of $3,650,000.00 and shall not accrue interest (the

"**Allowed Gestetner Claim**"); and (c) any recoveries the Estate receives from LCG on account of

Debtor's interest in LCG are to be shared evenly between the Estate and Gestetner and paid upon

approval of this Motion with the balance distributed pursuant to a confirmed chapter 11 plan

proposed by the Trustee.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Court's Scheduling Order, a

hearing to consider the Motion has been scheduled for **February 12, 2025** at **9:00 a.m. Pacific

Time**, or as soon thereafter as counsel may be heard before the Honorable Sandra R. Klein, United

States Bankruptcy Judge, in Courtroom 1575, 255 East Temple Street, Los Angeles, California

90012.

      **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion

and Motion, the Memorandum of Points and Authorities and Declaration of Bradley D. Sharp

annexed thereto, the record in this chapter 11 case, as well as any other documentary evidence as

may be presented to this Court at or before the hearing.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Court's Scheduling Order and

Local Bankruptcy Rule 9013-1(f), if you wish to oppose the Motion, you must file a written response

with the Court and serve a copy of it upon the undersigned counsel no later than **January 21, 2025

at 12 p.m. Pacific Time**.  The failure to properly file and serve an opposition may be deemed

consent to the relief requested in the Motion or a waiver of any right to oppose the Motion.

1    **WHEREFORE,** the Trustee respectfully requests that this Court enter an order (a) granting

2  the Motion; (b) approving the terms of the Settlement as set forth in the Settlement Agreement and

3  the Trustee's execution thereof; and (c) granting the Trustee such other and further relief as the

4  Court deems just and proper.

5   Dated: January 7, 2025                        PACHULSKI STANG ZIEHL & JONES LLP

6

7                                                */s/ John W. Lucas*
                                                 John W. Lucas
8

9                                                Counsel to Bradley D. Sharp, Chapter 11 Trustee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

The Gestetners[1] each filed a proof of claim against the Estate in the approximate amount of $17.9 million arising from Debtor's execution of a secured promissory note in favor of the Gestetners. Originally, the Gestetners invested in certain life insurance policies owned or controlled by the Debtor but the Debtor subsequently transferred the life insurance policies to Life Capital Group, LLC ("**LCG**"), an entity co-owned by the Debtor's and Shlomo Rechnitz, resulting in LCG owning and controlling the policies. In connection with the transfer, the Debtor executed a secured promissory note in favor of the Gestetners with the Debtor's equity interest in LCG as collateral securing the  Debtor's repayment obligations . Thus, absent a settlement, any distributions the Debtor isentitled to from LCG must first be paid to the Gestetners pursuant to the note, security agreement, and certain ancillary agreements discussed herein.

The Trustee obtained discovery, formally and informally, from LCG, the Gestetners, and the Debtor for the purpose of analyzing and assessing the validity of the Gestetner Claim (*i.e.*, both $17.9 million claims and as defined herein) . To that end, on September 4, 2024 [Docket No. 800], the Trustee filed a motion seeking to settle the Gestetner Claims with an allowed claim in the amount of $4.2 million secured by the Debtor's equity interest in LCG. The original motion was met with oppositions filed by the Vagos, Mermelsteins, and Berger [Docket Nos. 805, 808, 809, and 811]. In response, the Trustee filed a reply [Docket Nos. 813, 814, and 815]. Because the Trustee raised new substantive evidence and legal issues in the reply, the Court gave the Trustee the choice of proceeding on the original motion (but without the Court's consideration of the reply) or refiling the Motion so that any party in interest could respond to the all evidence and legal issues raised in the Trustee's motion. The Trustee elected not to proceed but instead to delay the filing of the  new

---

[1] A. Gestetner Family Trust (the "**Family Trust**") and Gestetner Charitable Remainder Unitrust (the "**Remainder Trust**" together with Family Trust, the "**Gestetners**").

motion so that he could meet and negotiate with the opposing parties (and ultimately the Gestetners) with the goal of reaching a consensual resolution of the Gestetner Claim.

The Trustee produced certain documents sought by the opposing parties and met with their respective counsels in person. While the Trustee and the opposing parties were not able to reach a resolution that would be acceptable to the Gestetners, the opposing parties, and the Trustee, the Trustee was able to reach a revised settlement with the Gestetners that the Trustee believes is reasonable and beneficial to the Estate.

As set forth in greater detail herein, the current settlement provides that the Gestetners will have a single claim in the amount of $3,650,000.00 (which is a $550,000.00 reduction from the prior settlement) (the "**Allowed Gestetner Claim**") that is secured by the Debtor's equity interest in LCG. The Settlement provides that all distributions from LCG to the Estate will be shared 50/50 with the Estate (as opposed to paying the Gestetner Claim first) until such claim is paid in full without the accrual of any interest, and after the claim is paid the Estate will receive the remainder of any further distributions from LCG for the benefit of the Estate and its creditors.

As of the date of this Motion, the Trustee estimates that the value of the Estate's interest in LCG is $15,200,000.00. Assuming all of the policies held by LCG matured as of the date of this Motion and the Gestetners are paid $3,650,000.00 per the terms of the proposed settlement, the value of the Estate's estimated interest is approximately $13,737,984.00, which includes the payment of the "Initial LCG Distribution" in the amount of $2,187,985.00 that is being split 50/50 between the Estate and the Gestetners.

Absent a settlement and if the Gestetners prevailed on their secured claim, the Trustee estimates that the Gestetner Claim, as secured could range in value from $8.9 million to $17.9. If the claim were allowed in the amount of the lower-end range and paid first as a secured claim the Estate's estimated interest in LCG would be approximately $5,893,339.00 (as opposed to the $13.7

million) If the claim was allowed at the upper-end of the range  all of the Estate's interest in LCG would be consumed by the Gestetner Claim.

Ultimately, the fees, risks, and delays associated with litigating these issues would significantly diminish the recovery of any judgment obtained by the Trustee on behalf of the Estate. Given the likelihood of meaningful litigation expenses needing to be incurred, the Trustee was aware that without settlement, there existed a reasonable risk that any net recovery ultimately made by the Estate could result in a modest net recovery or worse. Thus, for the reasons set forth herein, the Trustee request authorization to enter into the Settlement allowing the Gestetners' claim in the amount of $3,650,000.00 on the terms set forth herein.

## II.    THE GESTETNER CLAIM

### A.    Gestetner Proofs of Claim

The A. Gestetner Family Trust (the "**Family Trust**") and Gestetner Charitable Remainder Unitrust (the "**Remainder Trust**" together with Family Trust, the "**Gestetners**") filed two proofs of claim (Claim Nos. 29-1 and 30-1, respectively, and together the "**Gestetner Claim**") each in the amount of $17,982,955 arising from an initial investment in certain insurance policies that was eventually converted into a promissory note by the Debtor in favor of the Gestetners.

### B.    Funding of the Gestetner Loan

As reflected in the *Declaration of Freddie Morsel* (the "**Morsel Declaration**"), which was filed contemporaneously herewith, the Remainder Trust was the owner of certain real property that was the subject of a sale. The closing statement annexed to the Morsel Declaration reflects that the seller (i.e., the Remainder Trust) was entitled to approximately 50% of more than $7,500,000.00 in sale proceeds.  A ledger reflecting Gestetner as the account holder and the address of the real property that was the subject of the sale (the "**Gestetner Ledger**") was annexed to the closing statement. The Gestetner Ledger reflects that a wire in the amount $3,659,507.10 was sent to the

Debtor on or about October 10, 2005, which is equal to approximately 50% of the sale proceeds that the Remainder Trust was entitled to from the sale as reflected in the closing statement.

On October 11, 2005, a bank account statement (the "**Bank Statement**") for an account controlled by the Debtor reflects that the Debtor received a wire in the amount of $3,659,507.10 (the exact amount reflected in the Gestetner Ledger to the penny).[2]  A true and correct copy of the Bank Statement is annexed as **Exhibit 2** to the *Declaration of Bradley D. Sharp* (the "**Sharp Declaration**").

On December 1, 2005, the Debtor sent a letter (the "**Dec. 1, 2005 Letter**") to Andor Gestetner ("**Andor**") regarding the total amount of his recent investments from the trust that he controlled. A true and correct copy of the Dec. 1, 2005 Letter is annexed to the Sharp Declaration as **Exhibit 3**. The Dec. 1, 2005 Letter reflects that the Debtor acknowledged that Gestetner had invested $4,267,507 with the Debtor.

The Trustee believes that by Gestetner Ledger, the Bank Statement, and the December 1, 2005 Letter, that it is reasonable to conclude that the Debtor received no less than $3,659,507.10 from the Gestetners.[3]

**C.    Acknowledgement of Transferring Policies to Life Capital Group**

At the time Gestetner made his investment with the Debtor, the Debtor had not yet formed LCG. It is the Trustee's understanding that, between 2005 and 2011, the Debtor owned or controlled certain life insurance policies that were the subject of the Gestetners' investment with the Debtor. On June 20, 2016, the Debtor acknowledged that he had transferred certain life insurance policies to LCG by memorializing how the Remainder Trust's investment would be repaid (the "**LCG Transfer Agreement**"). A true and correct copy of the LCG Transfer Agreement is annexed as **Exhibit 4** to the Sharp Declaration.

---

[2] On October 14, 2005, the same bank account statement reflects that the Debtor received a deposit in the amount of $608,000, which together with the $3,659,507.10 transfer equals the approximate amount the Debtor confirmed to the Gestetners in the Dec. 1, 2005 Letter. However, Gestetner is not seeking to enforce the $608,000 loan/investment with the Debtor but only $3,650,000.00 of the $3,659,507.10 the Debtor received.

[3] Notably, the authenticity of the Gestetner Ledger is reinforced by the timing of the various productions. At the time Gestetner produced the Gestetner Ledger, they were not aware that the Menlo Parties had or would produce the Debtor's bank statements reflecting the receipt of $3,659,507.10 (the exact amount reflected in the Gestetner Ledger to the penny) the next day.

1    The LCG Transfer Agreement reflects that the Remainder Trust (*i.e.*, the same party the

2    transferred cash to the Debtor in connection with  the sale reflected in the Morsel Declaration) had

3    invested $3,700,000.00 in life insurance policies owner by the Debtor at the time of the investment

4    and that such policies were transferred to LCG. The reference to $3,700,000.00 is approximately the

5    same amount that is reflected on the Gestetner Ledger and the Bank Statement. The LCG Transfer

6    Agreement also reflects that Remainder Trust would receive 10% interest from the original date of

7    the investment on its investment when the policies held by LCG matured , which, as reflected by the

8    Gestetner Ledger, Bank Statement, and the Dec. 1, 2005 Letter, was likely to be October 11, 2005.

9    As of June 20, 2016, per the terms of the LCG Transfer Agreement, the interest that accrued

10   on Remainder Trust's approximate $3,659,507.10 investment totaled approximately $3,964,466.02.

11   Combined with the initial investment, the Debtor owed the Remainder Trust approximately

12   $7,623,973.12.

13       **D.    The Note, Security Agreement, and Ancillary Agreements**

14   On September 1, 2016, the Debtor executed a promissory note and security agreement (the

15   "**Note**") in a favor of Andor[4] and the Remainder Trust in the principal amount of $9,630,000 that

16   accrued interest at 13% per annum.  A true and correct copy of the Note is annexed as **Exhibit 6** to

17   the Sharp Declaration. The Note reflects that the principal amount arose from Andor's and the

18   Remainder Trust's initial investment with the Debtor in the approximate amount of $4,200,000.00.

19   By the Note, the Debtor granted the Gestetners a security interest in the Debtor's equity

20   interest in LCG. The initial UCC financing statement (the "**UCC Financing Statement**") and its

21   renewal are annexed as **Exhibit 7** to the Sharp Declaration.

22   In connection with the execution of the Note, LCG was party to a memorandum of

23   understanding (the "**Lien Acknowledgement**") wherein LCG expressly consented to the Debtor's

24   grant of a security interest to the Gestetners to secure the Debtor's repayment obligations under the

25   Note. A true and correct copy of the Lien Acknowledgement is annexed as **Exhibit 8** to the Sharp

26   Declaration.

---

27

28   [4] On October 18, 2018, Andor assigned his interest in the Note to the Family Trust, which is the other party that filed a
     claim against the Debtor. A true and correct copy of the foregoing assignment is annexed to the Sharp Declaration as
     **Exhibit 5**.

On September 15, 2016, the Debtor drafted a letter (the "**Sept. 15, 2016 Letter**") to Andor that again acknowledged the amount of the initial investment ($4,200,000), the accrual of interest, the offset of distributions, and the final amount owed to Gestetner as of such date. A true and correct copy of the Sept. 15, 2016 Letter is annexed as **Exhibit 9** to the Sharp Declaration. The Sept. 15, 2016 Letter reflects that as of September 15, 2016 the Debtor was indebted to the Gestetners in the amount of $9,630,000.

On July 25, 2017, the Debtor executed a supplement to the Note (the "**Supplement**") wherein the Debtor agreed not to adversely affect the value of LCG. A copy of the Supplement is annexed as **Exhibit 10** to the Sharp Declaration.

On March 13, 2019, the Debtor entered into a memorandum of understanding (the "**MOU**") with Shlomo Rechnitz,  LCG, and Andor on behalf of his designees regarding distributions from LCG as they relate to the Note and Supplement. A true and correct copy of the MOU is annexed as **Exhibit 11** to the Sharp Declaration. The MOU again confirms the initial amount of the loan (*i.e.*, $4,200,000), the accrual of interest from September 1, 2016 to February 28, 2019, and a reduction of the balance of the loan.

### E.    The High-End of Gestetner Claim and Reduction

After a review of the Debtor's bank records and the records of his wholly owned law firm (Les Klein & Associates), the Trustee's advisors were able to locate and review approximately 85 checks paid to the Gestetners totaling approximately $1,091,500. A true and correct copy of a summary of the payments (the "**Payment Summary**") is annexed as **Exhibit 12** to the Sharp Declaration. Following his review of the Note, Supplement, and the MOU, the Trustee was able to establish the amount outstanding under the Note (using the September 15, 2016 principal amount and interest thereunder) as $16,891,455.00, as of the date the Gestetners filed the Gestetner Claim. A true and correct copy of the summary of the Claim ("**Claim Summary**") is annexed as **Exhibit 13** to the Sharp Declaration.

After a reduction of the amount reflected in the Payment Summary, the Trustee's advisors created a timeline (the "**Timeline**") that reflects the application of the Payment Summary, accrual of interest, and other reductions per the documents described above determining that as of the date the

proof of claim was filed that the Gestetners were owed approximately $16,891,455.00. A true and correct copy of the Timeline is annexed as **Exhibit 14** to the Sharp Declaration. Given the review of the relevant documents, the Trustee believes that $16,891,455.00 is the most that the Gestetners could be owed on account of the claims.

### F.    The Low-End of the Gestetner Claim and Reduction

The Trustee believes that in connection with the less than perfect documentation of the Gestetner Claim that it is best to use the amount that the Remainder Trust invested with the Debtor to arrive at the amount owed to the Gestetner, which as reflected by the Gestetner Ledger, the Bank Statement, and the LCG Transfer Agreement is $3,659,507.10 (before the accrual of interest and any payments made by the Debtor). Pursuant to the LCG Transfer Agreement, wherein the Debtor acknowledged that the Remainder Trust invested $3,700,000.00 (accruing interest at 10% from the inception of the investment), the Gestetners would be owed $3,659,507.10, plus accrued interest at 10% in the amount of $6,373,630.91 (for a period of 17 years, 5 months) for a total of $10,033,138.00, less $1,091,500 for the payments the Debtor made to the Gestetners for a grand total of $8,941,638.00.

## III.    SUMMARY OF THE SETTLEMENT

After a thorough review of Claim 29 and Claim 30, which included informal discovery from the Gestetners, discovery from LCG, and the Trustee's forensic review of in-bound and out-bound payments from the Debtor to the Gestetners, the Trustee and the Gestetners agreed to the following:

- The Gestetners shall have a single allowed claim in the amount of $3,650,000.

- The $3,650,000 claim shall not accrue interest.

- All distributions received from LCG that would otherwise be payable to the Debtor as a result of his ownership interest in LCG are to be shared evenly between the Estate, on the one hand, and the Gestetners, on the other hand, which includes $745,353.42 and $1,442,631.77 (the "**Initial LCG Distribution**") that was distributed to the Trustee from Life Capital Group, and 50% of Initial LCG Distribution would be paid to the Gestetners upon approval of the Motion, with the balance paid pursuant to a chapter 11 plan.

- After the Gestetners have received $3,650,000 from the Estate on account of distributions from LCG, any further distributions from LCG shall not be shared with the Gestetners; instead, the estate shall retain 100% of any such distributions.

- All distributions other than the 50% sharing of the Initial LCG Distribution will be made pursuant to an approved chapter 11 plan proposed by the Trustee.

- The Trustee or any plan administrator will consult with the Gestetners if either elects to sell the Debtor's interest in LCG.

The above terms are referenced herein as the "**Settlement**." A true and correct copy of the settlement agreement (the "**Settlement Agreement**") is annexed to the Sharp Declaration as **Exhibit 1**.

## IV.    RELIEF REQUESTED

By this Motion, the Trustee is seeking an order, pursuant Rule 9019 of the Federal Rules of Bankruptcy Procedure, (a) granting the Motion; (b) approving the Settlement and his entry into the Settlement Agreement; and (c) granting the Trustee such other and further relief as the Court deems just and proper. A proposed form of order is annexed hereto as **Exhibit A**.

## V.    THE SETTLEMENT SHOULD BE APPROVED.

### A.    Standard of Review for Approval of a Compromise.

Bankruptcy Rule 9019(a) sets forth the requirements for the settlement or compromise of controversies after notice to all creditors and a hearing upon each such proposed compromise. Bankruptcy courts favor compromise. *See In re Sassalos*, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise … rests in the sound discretion of the bankruptcy judge."). In reviewing a settlement, bankruptcy courts must determine whether the settlement is "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Protective Committee v. Anderson*, 390 U.S. 414, 424 (1968). When deciding whether to approve a settlement, the bankruptcy court must determine if the settlement is reasonable under the circumstances of the case, fair and equitable, and in the best interest of the estate.  *See Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). Courts generally should "give[ ] deference to a trustee's business judgment in deciding whether to settle a matter" for the benefit of the estate." (citations omitted). *In re Douglas J. Roger, M.D., Inc., APC, ("Roger"),* 393 F. Supp. 3d 940, 961 (C.D. Cal.

2019). Under the circumstances of this case, the Settlement as set forth in the Settlement Agreement between the Trustee and Gestetner meets this standard.

The United States Court of Appeals for the Ninth Circuit has indicated that in determining the fairness, reasonableness, and adequacy of a proposed settlement agreement, a court should consider the following factors:  (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors and the proper deference to their reasonable views in the premises. *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988) (quoting *A & C Props.*, 784 F.2d at 1380). It is not necessary that all of the conclusions reached in the consideration of each of the foregoing factors support the settlement, but taken as a whole, those conclusions must favor the approval of the settlement. *See In re Pacific Gas & Elec. Co*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)). "Ultimately, the court must determine whether the individual settlement sought to be approved under Bankruptcy Rule 9019(a) falls within the lowest range of reasonableness." *In re TCI2 Holdings, LLC*, 428 B.R. 117, 136 (Bankr. D.N.J. 2010).

In this case, the Trustee negotiated a settlement that preserves the Estate's right to fifty percent of the distributions from LCG while at the same time reducing the low-end of a secured claim in the amount of $8,941,638.00 to a claim in the amount of $3,650,000 that will not accrue any additional interest. The Settlement results in an approximate 59% reduction of the Gestetner Claim when using the lowest reasonable range of such claim (or a 71% reduction if the higher end of the range is used, $16,891,455.00). As set forth below, the Settlement represents a fair and adequate settlement that should be approved by this Court.

### B.    The Settlement Agreement Satisfies The Rule 9019(a) Standard.

As discussed below, consideration of the foregoing factors support Court approval of the proposed Settlement. First, the Trustee negotiated a settlement that retains 50% of the distributions payable to the Estate from LCG (instead of permitting any allowed claim by the Gestetners to receive the first dollars from LCG). Second, the Allowed Gestetner Claim was reduced in a range of

59% to 71% to a single claim of $3,650,000. Third, the Allowed Gestetner Claim does not accrue interest even though such claim is secured by collateral that likely has equity.

1.    **Probability of Success.**

The Trustee recognizes that if he had filed an objection to the Gestetner Claim it would not have been resolved without protracted litigation. Furthermore, it was not clear that the Trustee's objections to the Gestetner Claims would have been fully resolved in favor of the Estate.

For example, the Gestetner Claim first arose in 2005 and was later restated in June and September 2016, both more than seven years prior to the Petition Date. In addition, the Debtor acknowledged in connection with numerous acknowledgements, agreements, and documents noted herein that the Gestetners were owed a principal amount of $4,200,000.00. Without additional bank records from 2005 through 2016 it was not possible for the Trustee to ascertain with certainty that the Gestetners invested $4,200,000.00. However, the documents do reflect that the Remainder Trust transferred nearly $3,700,000.00 to the Debtor, which according to the Debtor accrued interest at a rate of no less than 10% per annum. While the Trustee does not believe that the Gestetners would have been able to demonstrate they were owed more than $16.8 million as reflect in the Gestetner Claims, the Trustee believes that there is a reasonable basis to support the claim (reduced by the Payments) in the amount of $8,941,638.00, and the Settlement reduces such claim by 59% to $3,650,000.00.

The Trustee estimates that, as of June 2024, the Estate's interest in LCG was approximately $16,000,000.00, which assumes that all policies matured in June 2024 (which has not occurred). As the life insurance policies are maintained by LCG, the Estate's interest in LCG is reduced by the amount of premium payments made since June 2024 and the accrual of interest against such premium payments and for all other premiums paid for policies that have not yet matured.

As of the date of this Motion, the Trustee estimates that the Estate's interest in LCG is $15,200,000.00. Assuming all of the policies held by LCG matured as of the date of this Motion and the Gestetners are paid $3,650,000.00 per the terms of the proposed Settlement, the Estate's estimated interest is approximately $13,737,984.00, which includes the payment of the LCG Initial Distribution.

Absent a settlement and if the Gestetners prevailed on their secured claim, they could receive anywhere from $8.9 million to $16.8 million, which with the former, lower-end range of the claim would leave approximately $5,893,339.00 (as opposed to the $13.7 million the Estate is preserving under the Settlement) for the Estate or absorb all of the Estate's interest in LCG if the upper-end of the Gestetner Claim were allowed. In addition, the Allowed Gestetner Claim is no longer subject to the accrual of interest thereby capping the claim and the Estate's exposure.

Ultimately, the fees, risks, and delays associated with litigating these issues would significantly diminish the recovery of any judgment obtained by the Trustee on behalf of the Estate. Given the likelihood of meaningful litigation expenses needing to be incurred, the Trustee was aware that without settlement, there existed a reasonable risk that any net recovery ultimately made by the Estate could result in a modest net recovery or worse.

### 2.    Difficulties With Collection

The Trustee believes that litigation against the Gestetners would subject the Estate to a significant collection risk with respect to LCG. While there is always some risk that any judgment might not result in a recovery, the Trustee evaluated the claims against the Gestetners that led him to conclude that sharing the recoveries from LCG was the best outcome because it provides an immediate benefit to the estate while at the same time  substantially reducing a large claim (and elimination another) with no further accrual of interest.

### 3.    The Complexity of the Litigation.

The Trustee believes that while the issues involved in adjudicating the Gestetner Claims are not necessarily overly complex, the Debtor is not a reliable party or witness and the documentation available regarding the Gestetner Claims could have been better memorialized.  As a result, the Trustee believes that there would be a high likelihood of disputed facts that would have resulted in the Court adjudicating the disputed issues in much the same way the Trustee settled them here, but with certainty now and without the need of expensive litigation.

### 4.    Interests of Creditors.

The bankruptcy case has been pending for nearly two years with the Trustee conducting numerous investigations. There are many substantial claims against the Estate some of holders of

1  which have been litigating with the Debtor for more than a decade. As a result, the Trustee believes

2  that Settlement is the best course of action for creditors as this will be the case's first major

3  settlement, which the Trustee aims to use as a template to resolve other disputed claims. In the end,

4  this will result in creditors getting paid sooner without awaiting the completion of what would

5  inevitably be lengthy litigation. Under the circumstances of this case, the Settlement is fair,

6  reasonable and in the best interests of creditors.

7  **WHEREFORE,** the Trustee respectfully requests that this Court enter an order (a) granting

8  the Motion; (b) approving the Settlement and his entry into the Settlement Agreement; and (c)

9  granting the Trustee such other and further relief as the Court deems just and proper.

10

11  Dated: January 7, 2025                              PACHULSKI STANG ZIEHL & JONES LLP

12

13                                                       */s/ John W. Lucas*
                                                         John W. Lucas

14

15                                                       Counsel to Bradley D. Sharp, Chapter 11 Trustee

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**(<u>Proposed Order</u>)**

1    Jeffrey W. Dulberg (CA Bar No. 181200)
      John W. Lucas (CA State Bar No. 271038)
2    Jeffrey P. Nolan (CA Bar No. 158923)
      PACHULSKI STANG ZIEHL & JONES LLP
3    10100 Santa Monica Blvd., 13th Floor
      Los Angeles, California 90067-4003
4    Telephone: 310-277-6910
      Facsimile:  310-201-0760
5    Email: jdulberg@pszjlaw.com
           jlucas@pszjlaw.com
6          jnolan@pszjlaw.com

7

8    Counsel to Bradley D. Sharp, Chapter 11 Trustee

9

                   **UNITED STATES BANKRUPTCY COURT**

10

                   **CENTRAL DISTRICT OF CALIFORNIA**

11

                       **LOS ANGELES DIVISION**

12

| | |
|---|---|
| In re | Case No. 2:23-bk-10990-SK |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | **[PROPOSED] ORDER GRANTING MOTION OF CHAPTER 11 TRUSTEE FOR APPROVAL OF SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER FAMILY TRUST AND GESTETNER CHARITABLE REMAINDER UNITRUST PURSUANT TO BANKRUPTCY RULE 9019** |
| | Date:     February 12, 2025 |
| | Time:    9:00 a.m. |
| | Place:    Courtroom 1575 |
| |              255 E. Temple Street |
| |              Los Angeles, CA 90012 |

         The Court has considered the *Motion of Chapter 11 Trustee for Order Approving Settlement Between the Trustee and A. Gestetner Family Trust and Gestetner Charitable Remainder Unitrust Pursuant to Bankruptcy Rule 9019* (the "**Motion**")[5] [Docket No. _____], filed by Bradley D. Sharp, in his capacity as Chapter 11 Trustee (the "**Trustee**") of the bankruptcy estate of Leslie Klein, and the *Declaration of Bradley D. Sharp* (the "**Sharp Declaration**") and the Declaration of Freddie Morsel

---

[5] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[Docket No. __], each filed in support of the Motion, pursuant to which the Trustee sought approval of a settlement agreement, dated January __, 2025 (the "**Settlement Agreement**") between the Trustee, A. Gestetner Family Trust, and Gestetner Charitable Remainder Unitrust  (and together with the Trustee, the "**Parties**").  The terms of the settlement (the "**Settlement**") are specifically set forth in the Settlement Agreement, a copy of which is attached to the Sharp Declaration.  Based upon the Court's review of the Motion, the Sharp Declaration, and the Settlement, the Court finds that (1) the relief requested in the Motion is reasonable, appropriate, and in the best interests of the Parties; and (2) notice of the Motion was adequate and appropriate under the circumstances and no further notice be given.

**THEREFORE, IT IS HEREBY ORDERED** that:

1.      The Motion is granted and the Settlement and the Settlement Agreement are approved in their entireties.

2.      The Gestetners shall have a single allowed claim in the amount of $3,650,000.00 and such claim shall amend and supersede Claim 29 and Claim 30 (the "**Allowed Gestetner Claim**").

3.      The Allowed Gestetner Claim shall not accrue interest.

4.      All distributions received from Life Capital Group, LLC ("**LCG**") that would otherwise be payable to the Debtor's estate as a result of Debtor's ownership interest in LCG are to be shared evenly between the Debtor's estate, on the one hand, and the Gestetners, on the other hand, which includes $745,353.42 and $1,442,631.77 (the "**Initial LCG Distribution**") that was distributed to the Trustee from LCG. Upon entry of this Order, the Trustee is authorized to pay the Gestetners 50% of the Initial LCG Distribution and the balance owing under the Allowed Gestetner Claim shall be paid under a confirmed chapter 11 plan.

5.      After the Gestetners have received $3,650,000 from the Debtor's estate on account of distributions from LCG, any further distributions from LCG shall not be shared with the Gestetners; instead, the Debtor's estate shall retain 100% of any such distributions.

6.      Other than the 50% of the Initial LCG Distribution, all subsequent distributions to the Gestetners shall be subject to and made pursuant to an approved chapter 11 plan proposed by the Trustee.

7.      The Trustee or any plan administrator shall consult with the Gestetners if either elects to sell the Debtor's interest in LCG.

8.      The Trustee is authorized to enter into and take any and all actions reasonably necessary to effectuate the Settlement Agreement.

# # #

## DECLARATION OF BRADLEY D. SHARP

I, Bradley D. Sharp, declare as follows:

I am the duly appointed Chapter 11 Trustee of the bankruptcy estate of Leslie Klein.

I make this Declaration in support of the *Motion for Order Approving Settlement Between The Trustee and A. Gestetner Family Trust and Gestetner Charitable Remainder Unitrust* (the "**Motion**") to which this Declaration is annexed. All matters set forth herein are based on either my personal knowledge, my review of relevant documents and information, including, without limitation, documents and information supplied to me by my professionals, and the record in these Cases for which judicial notice is sought. All capitalized terms herein which are otherwise not defined herein shall have the same meaning ascribed to them in the Motion to which this Declaration is attached. If called upon to testify, I could and would testify competently to the facts set forth herein.

A true and correct copy of the Settlement Agreement is attached to this Declaration as **Exhibit 1**.

During the course of the my administration of the Debtor's chapter 11 case, I have worked with the my forensic accountants, Development Specialist, Inc. ("**DSI**") and my bankruptcy counsel, Pachulski Stang Ziehl & Jones ("**PSZJ**"), to seek the production of documents, informally and pursuant to Bankruptcy Rule 2004 (the "**Rule 2004 Motions**"), from the Debtor, the Debtor's creditors and business partners, and other third parties regarding claims against the Debtor, claims held by the Debtor, the Debtor's assets, and generally how the Debtor conducted his affairs and his administration of various businesses, trusts, and other companies that he owned or controlled.

Through Rule 2004 Motions, public filings, proofs of claim, and informal discovery, I was able to obtain records regarding certain bank accounts of the Debtor and the Debtor's law firm, Les Klein & Associates, among others, and also various transactional documents between the Debtor, on the one hand, and various creditors or other business partners or ventures, on the other hand. With the help of DSI's review of these business records and other documents, I was able to form a basis for the in-flow of cash that funded the loan between the Debtor and the Gestetners.

1    The A. Gestetner Family Trust (the "**Family Trust**") and Gestetner Charitable Remainder

2    Unitrust (the "**Remainder Trust**" together with Family Trust, the "**Gestetners**") filed two proofs of

3    claim (Claim Nos. 29-1 and 30-1, respectively, and together the "**Gestetner Claim**") each in the

4    amount of $17,982,955 arising from an initial investment in certain insurance policies that was

5    eventually converted into a promissory note by the Debtor in favor of the Gestetners.

6    Through informal discovery from the Menlo parties, the Trustee obtained a bank account

7    statement (the "**Bank Statement**") for the period of October 1, 2005, through October 31, 2005. The

8    Bank Statement is for an account (xxxxx-09404) held by Les Klein & Associates ("**LKA**") that the

9    Debtor controlled and used for himself and for LKA. A true and correct copy of the Bank Statement

10    is annexed hereto as **Exhibit 2**. The Bank Statement reflects that the Debtor received a wire in the

11    amount of $3,659,507.10 (the exact amount reflected in the Gestetner Ledger to the penny).

12    On December 1, 2005, the Debtor sent a letter (the "**Dec. 1, 2005 Letter**") to Andor

13    Gestetner ("**Andor**") regarding the total amount of his recent investments from the trust that he

14    controlled. A true and correct copy of the Dec. 1, 2005 Letter is annexed hereto as **Exhibit 3**. The

15    Dec. 1, 2005 Letter reflects that the Debtor acknowledged that Andor had invested $4,267,507 with

16    the Debtor.

17    I believe that by Gestetner Ledger, the Bank Statement, and the December 1, 2005 Letter,

18    that it is reasonable to conclude that the Debtor received no less than $3,659,507.10 from the

19    Remainder Trust.

20    At the time the Gestetners made his investment with the Debtor, the Debtor had not yet

21    formed LCG. It is my understanding that, between 2005 and 2011, the Debtor owned or controlled

22    certain life insurance policies that were the subject of the Gestetners' investment with the Debtor. On

23    June 20, 2016, the Debtor acknowledged that he had transferred certain life insurance policies to

24    LCG by memorializing how the Remainder Trust's investment would be repaid (the "**LCG**

25    **Transfer Agreement**"). A true and correct copy of the LCG Transfer Agreement is annexed hereto

26    as **Exhibit 4**.

27    The LCG Transfer Agreement reflects that the Remainder Trust (*i.e.*, the same party the

28    transferred cash to the Debtor  resulting the sale reflected in the Morsel Declaration) invested

$3,700,000.00 and that such policies were transferred to LCG. The reference to $3,700,000.00 is approximately the same amount that is reflected on the Gestetner Ledger and the Bank Statement. The LCG Transfer Agreement also reflects that Gestetner would receive 10% interest on his investment when the policies held by LCG mature from the original date of the investment, which, as reflected by the Gestetner Ledger, Bank Statement, and the Dec. 1, 2005 Letter, is likely October 11, 2005.

As of June 20, 2016, per the terms of the LCG Transfer Agreement, the interest that accrued on Remainder Trust's approximate $3,659,507.10 investment totaled approximately $3,964,466.02, which when combined with the investment, the Debtor owed the Remainder Trust approximately $7,623,973.12.

On September 1, 2016, the Debtor executed a promissory note and security agreement (the "**Note**") in a favor of Andor[6] and the Remainder Trust in the principal amount of $9,630,000 that accrued interest at 13% per annum.  A true and correct copy of the Note is annexed hereto as **Exhibit 6**. The Note reflects that the principal amount arose from the Andor and the Remainder Trust's initial investment with the Debtor in the approximate amount of $4,200,000.00.

By the Note, the Debtor granted the Gestetners a security interest in the Debtor's equity interest in LCG. The initial UCC financing statement (the "**UCC Financing Statement**") and its renewal are annexed hereto as **Exhibit 7**.

In connection with the execution of the Note, LCG was party to a memorandum of understanding (the "**Lien Acknowledgement**") wherein LCG expressly consented to the Debtor's grant of a security interest to the Gestetners to secure the Debtor's repayment obligations under the Note. A true and correct copy of the Lien Acknowledgement is annexed hereto as **Exhibit 8**.

On September 15, 2016, the Debtor drafted a letter (the "**Sept. 15, 2016 Letter**") to Andor that again acknowledged the amount of the initial investment ($4,200,000), the accrual of interest, the offset of distributions, and the final amount owed to the Gestetners as of such date. A true and correct copy of the Sept. 15, 2016 Letter is annexed hereto as **Exhibit 9**. The Sept. 15, 2016 Letter

---

[6] On October 18, 2018, Andor assigned his interest in the Note to the Family Trust, which is the other party that filed a claim against the Debtor. A true and correct copy of the foregoing assignment is annexed to the Sharp Declaration as **Exhibit 5**.

reflects that as of September 15, 2016 that the Debtor was indebted to the Gestetners in the amount of $9,630,000.

On July 25, 2017, the Debtor executed a supplement to the Note (the "**Supplement**") wherein the Debtor agreed not to adversely affect the value of LCG. A copy of the Supplement is annexed hereto as **Exhibit 10**.

On March 13, 2019, the Debtor entered into a memorandum of understanding (the "**MOU**") with Shlomo Rechnitz, LCG, and Andor on behalf of his designees regarding distributions from LCG as they relate to the Note and Supplement. A true and correct copy of the MOU is annexed hereto as **Exhibit 11**. The MOU again confirms the initial amount of the loan (*i.e.*, $4,200,000), the accrual of interest from September 1, 2016 to February 28, 2019, and a reduction of the balance of the loan.

After a review of the Debtor's bank records and the records of his wholly owned law firm (Les Klein & Associates), the me and my advisors were able to locate and review approximately 85 checks paid to the Gestetners totaling approximately $1,091,500. A true and correct copy of a summary of the payments (the "**Payment Summary**") is annexed hereto as **Exhibit 12**. Following my review of the Note, Supplement, and the MOU, with the aid of my advisors, I was able to establish the amount outstanding under the Note as $16,891,455.00, as of the date the Gestetners filed the Gestetner Claim. A true and correct copy of the summary of the Claim ("**Claim Summary**") is annexed hereto as **Exhibit 13**.

After a reduction of the amount reflected in the Payment Summary, with the assistance of my advisors, I oversaw the creation of a timeline (the "**Timeline**") that reflects the application of the Payment Summary, accrual of interest, and other reductions per the documents described above determining that as of the date of the proof of claim was filed that the Gestetners were owed approximately $16,891,455.00. A true and correct copy of the Timeline is annexed hereto as **Exhibit 14**. Given the review of the relevant documents, I believe that $16,891,455.00 is the most that the Gestetners could be owed on account of the claims.

However, I believe that in connection with the less than perfect documentation of the Gestetner Claim that it is best to use the amount that the Remainder Trust invested with the Debtor

to arrive at the amount outstanding, which as reflected by the Gestetner Ledger, the Bank Statement, and the LCG Transfer Agreement is no more than $3,659,5078.10 (before the accrual of interest and any payments made by the Debtor). Pursuant to the LCG Transfer Agreement, wherein the Debtor acknowledged that the Remainder Trust invested $3,700,000.00 (accruing interest at 10% from the inception of the investment), the Gestetners would be owed $3,659,507.10, plus accrued interest at 10% in the amount of $6,373,630.91 (for a period of 17 years, 5 months) for a total of $10,033,138.00, less $1,091,500 for the payments the Debtor made to the Gestetners for a grand total of $8,941,638.00.

One of the Debtor's primary assets is his equity interest in Life Capital Group, LLC ("**LCG**"). LCG is a company that was co-founded by the Debtor and Shlomo Rechnitz, which purchased life insurance policies, paid the premiums, and then obtained the life insurance proceeds upon the death of an insured person. The insurance proceeds were subject to an even split between the Debtor and Mr. Rechnitz after the repayment of loans, premiums, and accrued interest. The unmatured policies held by LCG could yield substantial value to the estate depending upon when an insured dies and the amount loans, premiums, and other expenses are paid. As of the date of the Motion, I estimate that the Estate's current interest in LCG is approximately $15,200,000.00, which assumes all policies matured of the date of the Motion. As time passes without the maturation of the subject life insurance policies, LCG's and the Debtor's interest in such policies deteriorates. As set forth in greater details in the Motion and herein, I believe that it is in the estate's interest to secure the benefits of these policies for the estate in general and also to settle the Gestetner Claims in an a substantial reduced amount that also permits the Estate to obtain the benefits of any LCG distributions on a 50/50 basis until the Allowed Gestetner Claim is paid in full.

In this case, through my advisors, I negotiated a settlement that preserves the estate's right to fifty percent of the distributions from LCG while at the same time reducing the low-end of a secured claim in the amount of $8,941,638.00 to a claim in the amount of $3,650,000 claim that will not accrue any additional interest. The Settlement results in an approximate 59% reduction of the Gestetner Claim when using the lowest reasonable range of such claim (or a 71% reduction if the

higher end of the range is used, $16,891,455.00). As set forth below, the settlement represents a fair and adequate settlement that should be approved by this Court.

The Gestetner Claim first arose in 2005 and was later restated in June and September 2016, both more than seven years prior to the Petition Date. In addition, the Debtor acknowledged in connection with numerous acknowledgements, agreements, and documents noted herein that the Gestetners were owed a principal amount of $4,200,000.00. Without additional bank records from 2005 through 2016 it was not possible for me to ascertain with certainty that the Gestetners invested $4,200,000.00. However, the documents do reflect that the Remainder Trust transferred nearly $3,700,000.00 to the Debtor, which according to the Debtor accrued interest at a rate of no less than 10% per annum.

While I do not believe that the Gestetners would have been able to demonstrate they were owed more than $16.8 million as reflect in the Gestetner Claims, I do believe there is a reasonable basis to support the claim (reduced by the Payments) in the amount of $8,941,638.00, but the Settlement importantly reduces such claim to $3,650,000.00 (*i.e.*, by 59%).

I estimate that, as of June 2024, the Estate's interest in LCG was approximately $16,000,000.00, which assumes that all policies matured in June 2024 (which has not occurred). As the life insurance policies are maintained by LCG, the Estate's interest in LCG is reduced by the amount of premium payments made since June 2024 and the accrual of interest against such premium payments and for all other premiums paid for policies that have not yet matured.

As of the date of this Motion, the Trustee estimates that the Estate's interest in LCG is $15,200,000.00. Assuming all of the policies held by LCG matured as of the date of this Motion and the Gestetners are paid $3,650,000.00 per the terms of the proposed settlement, the Estate's estimated interest is approximately $13,737,984.00, which includes the payment of the LCG Initial Distribution.

Absent a settlement and if the Gestetners prevailed on their secured claim, they could receive anywhere from $8.9 million to $16.8 million, which with the former, lower-end range of the claim would leave approximately $5,893,339.00 (as opposed to the $13.7 million that the Estate is preserving under the Settlement) for the Estate or absorb all of the Estate's interest in LCG if the

upper-end of the Gestetner Claim were allowed. In addition, the Allowed Gestetner Claim is no longer subject to the accrual of interest thereby capping the claim and the Estate's exposure.

Ultimately, the fees, risks, and delays associated with litigating these issues would significantly diminish the recovery of any judgment obtained by me on behalf of the estate. Given the likelihood of meaningful litigation expenses needing to be incurred, I was aware that without settlement, there existed a reasonable risk that any net recovery ultimately made by the estate could result in a modest net recovery or worse.

I believe that while the issues involved in adjudicating the Gestetner Claim are not necessarily overly complex, the Debtor is not a reliable party or witness and the documentation available regarding the Gestetner Claim could have been better memorialized. As a result, I believe it is better to obtain certain value for the estate rather than litigate disputed facts that would result in the Court adjudicating the disputed issues in much the same way the Trustee settled them here, but with certainty now and without the need of expensive litigation.

The bankruptcy case has been pending for nearly two-years wherein I have conducted and continue to conduct numerous investigations and have filed adversary proceedings whose goals are aimed to bring value into the estate. There are many substantial claims against the estate and some of the holders of which have been litigating with the Debtor for more than a decade. As a result, I believe that settlement is the best course of action for creditors as this will be the first major settlement, which I expect to use as a template to resolve other disputed claims. In the end, this will result creditors getting paid sooner, without awaiting the completion of what would inevitably be lengthy litigation. Under the circumstances of these cases, the Settlement is fair, reasonable and in the best interests of creditors.

Ultimately, the fees, risks, and delays associated with litigating the issues would significantly diminish the recovery of any judgment obtained by me on behalf of the estate. Given the likelihood of extensive litigation expenses needing to be incurred, I am aware that without settlement, there exists a reasonable risk that any net recovery ultimately achieved by the estate would be immaterial.

1    I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3    Executed this 6th day of January, 2025 at Los Angeles, California.

4

5    _____

6    Bradley D. Sharp

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>Exhibit 1</u>**

(Settlement Agreement)

## SETTLEMENT AGREEMENT

This *Settlement Agreement* ("Agreement") is made and entered into as of the later of the dates beneath each Party's signature below ("Execution Date"), by and between Bradley D. Sharp, in his capacity as the chapter 11 trustee (the "Trustee") of the Leslie Klein (the "Debtor") bankruptcy estate, and A. Gestetner Family Trust ("GFT") and Gestetner Charitable Remainder Unitrust ("GCRU") (together, "Gestetner"), with reference to the following facts and recitals. The Trustee and Gestetner are referred to collectively hereinafter as the "Parties," and individually as a "Party."

## R E C I T A L S

WHEREAS, the Debtor commenced a voluntary chapter 11 case on February 22, 2023, Case No.: 2:23-bk-10990-SK, in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court").

WHEREAS, on May 3, 2023, GFT filed proof of claim number 29-1 ("Claim 29-1") in the amount of $17,982,955 as a secured claim arising from a promissory note and security agreement executed by the Debtor as the obligor in favor of GFT.

WHEREAS, on May 3, 2023, GCRU filed proof of claim number 30-1 ("Claim 30-1" and together with Claim 29-1, the "Gestetner Claims") in the amount of $17,982,955 as a secured claim arising from a promissory note and security agreement executed by the Debtor as the obligor in favor of GCRU.

WHEREAS, on May 17, 2023, in response to certain motions to dismiss the Debtor's chapter 11 case, the Court entered an order directing the UST to appoint a chapter 11 trustee. *See* [Docket No. 142]. On May 23, 2023, the UST filed a notice appointing Bradley D. Sharp as the chapter 11 trustee of the Debtor's chapter 11 case. *See* [Docket No. 151]. On May 24, 2023, the UST filed an application for an order approving the appointment of Mr. Sharp as the Trustee. *See* [Docket No. 154]. On May 24, 2023, the Court entered an order approving the appointment of Mr. Sharp as the Trustee. *See* [Docket No. 155]. On May 24, 2023, Mr. Sharp accepted his appointment as Trustee. *See* [Docket No. 156].

WHEREAS, the Trustee has reviewed the Gestetner Claims and information regarding the Debtor's prepetition payments to Gestetner with respect to the Gestetner Claims, and, following such review, and after substantial negotiations between the Parties, the Parties have agreed to allow the Gestetner Claims as set forth hereinbelow, subject to the approval of the Court.

In consideration of the mutual covenants, conditions and provisions set forth below, and each Party intending to be legally bound, the Parties agree as follows:

*A G R E E M E N T*

## 1.    EFFECTIVENESS OF AGREEMENT

This Agreement shall become effective on the later of the date (the "**Effective Date**") that (a) the Parties have executed this Agreement and (b) entry of order by the Court approving the Agreement.

## 2.    GLOBAL SETTLEMENT

(a)    <u>Gestetner Security Interest.</u>  The Parties agree that Gestetner holds a valid and perfected secured claim in the Debtor's equity interest in Life Capital Group LLC ("LCG"). However, any distribution the Debtor's estate receives from LCG on account of the Debtor's ownership interest in LCG, including but not limited to the amounts of $745,353.42 and $1,442,631.77, which currently totals $2,187,985.19 (the "Existing LCG Distribution"), that already has been received by the Debtor's estate on account of such ownership interest in LCG, shall be shared evenly (50% for each Party) between Gestetner and the Debtor's estate. Solely as an example, if LCG distributes $100,000 to the Debtor's estate on account of the Debtor's ownership interest in LCG, the Parties agree that $50,000 would be paid to the Debtor's estate and $50,000 would be paid to Gestetner.

(b)    <u>Allowance of Gestetner Claim</u>.  The Parties agree that the Gestetner Claim shall be allowed as a single secured claim in the amount of $3,650,000.00 and such claim shall not accrue interest but shall be reduced upon receiving distributions as set forth herein.

(c)    <u>Distributions to Account of Gestetner Claim</u>.  The Parties agree that any recoveries the Debtor's estate receives from LCG on account of the Debtor's interest in LCG shall be distributed to Gestetner as follows: (i) upon approval of this Agreement, Gestetner shall receive 50% of the Existing LCG Distribution or $1,093,992.60 and (ii) any further distributions pursuant to the terms and conditions of a confirmed chapter 11 plan proposed by the Trustee. After Gestetner receives $3,650,000.00 from the Debtor's estate, Gestetner shall not be entitled to any further distributions from the Debtor's estate or on account of the Debtor's interest in LCG.

(d)    <u>Approval</u>. The Parties agree that, promptly after execution of this Agreement, the Trustee shall seek the Court's approval of this Agreement pursuant to Bankruptcy Rule 9019.

(e)    <u>Amendment of Gestetner Claims</u>.  Upon the Execution Date, the Gestetner Claims shall be deemed amended in accordance with the terms of this Agreement.

## 3.    MUTUAL GENERAL RELEASE

<u>Mutual Release</u>.  Upon the Effective Date, Gestetner, on the one hand, and Trustee, on behalf of the Debtor's estate, on the other hand, mutually releases each other and each of

SF 4887-4293-1406.4 78512.001

their respective predecessors, successors, corporate parents, subsidiaries, affiliates, present or former trustees, directors, officers, attorneys, agents and employees from any and all claims, suits, damages, liabilities, costs, losses, interest, or expenses of any kind or nature whatsoever, which have arisen or could arise on or before the applicable Cutoff Date under each applicable Payor Agreement. Each Party hereby waives and releases any and all rights under Section 1542 of the California Civil Code, which provides as follows: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or releasing party."

## 4.    GENERAL

(a)    This Agreement may be executed in counterparts and copies may be used instead of originals and delivered with electronic mail (including in PDF format) with the same force and effect as originals. The executed counterparts shall be construed as and constitute one document.

(b)    This Agreement is the final and entire agreement of Gestetner and Trustee, on behalf of the Debtor's estate, regarding the subject matter herein, and supersedes all previous oral and written understandings, negotiations, term sheets, and agreements on the subject matter herein. This Agreement may only be modified by a written amendment signed by an authorized signatory of each Party.

[*Remainder of page intentionally left blank*]

SF 4887-4293-1406.4 78512.001

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date.

**Chapter 11 Trustee**                              **A. Gestetner Family Trust**

_____                          _____
Authorized Signature                               Authorized Signature

Bradley D. Sharp, Chapter 11 Trustee               Isidore Morsel,
                                                   Trustee, A. Gestetner Family Trust


January 6, 2025_____                      _____
Date                                               Date



                                                   **Gestetner Charitable Remainder Unitrust**


                                                   _____
                                                   Authorized Signature

                                                   Shulamith Josowitz,
                                                   Trustee, Gestetner Charitable Remainder Trus


                                                   _____
                                                   Date

4

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date.

**Chapter 11 Trustee**

_____
Authorized Signature

Bradley D. Sharp, Chapter 11 Trustee

_____
Date

**A. Gestetner Family Trust**

_____
Authorized Signature

Isidore Morsel,
Trustee, A. Gestetner Family Trust

_____
Date

**Gestetner Charitable Remainder Unitrust**

_____
Authorized Signature

Shulamith Josowitz,
Trustee, Gestetner Charitable Remainder Trus

_____
Date

## **Exhibit 2**

(Bank Statement)

# Your Bank of America Business Checking Statement

0343 P
E 58-2

**Statement Period:**
October 1 through October 31, 2005

**Account Number: 03439-09404**

**Priority Customer Service**
Call: 1.800.678.1433

LES KLEIN & ASSOCIATES
TRUST ACCOUNT
DBA FAMILY LEGAL SERVICES
14245 VENTURA BLVD STE 301
SHERMAN OAKS  CA  91423-2773

**Written Inquiries**
Bank of America
Larchmont Village Branch
PO Box 37176
San Francisco, CA 94137-0001

Customer since 1987
Bank of America appreciates your
business and we enjoy serving you.

Our free Online Banking service allows you to check balances, track account activity, pay bills and more. **With Online Banking you can also view up to 18 months of this statement online.** Enroll at www.bankofamerica.com/smallbusiness.

## ☐ Summary of Your Business Checking Account

| | | | |
|---|---|---|---|
| Beginning Balance on 10/01/05 | $734,154.57 | Number of checks paid | 58 |
| Total Deposits and Other Credits | + 4,300,887.00 | Number of 24 Hour Customer Service Calls | |
| Total Checks, Withdrawals, Transfers, Account Fees | - 891,242.39 | Self-Service | 36 |
| | | Assisted | 0 |
| | | 6 of your Customer Service Calls are free of charge each statement period. | |
| *Ending Balance* | $4,143,799.18 | | |

## ☐ Important Information About Your Account

Based on the minimum balance you've maintained in this account, your monthly service charge has been waived.

## ☐ Deposits

| Number | Date Posted | Amount | | Number | Date Posted | Amount |
|---|---|---|---|---|---|---|
| | 10/03 | $ 137.99 | | | 10/20 | 5,700.00 |
| | 10/03 | 15,427.23 | | | 10/28 | 135.40 |
| | 10/06 | 4,379.28 | | | 10/31 | 2,500.00 |
| | 10/11 | 5,100.00 | | Total of 8 deposits | | $641,379.90 |
| | 10/14 | 608,000.00 | | | | |

## ☐ Checks Paid          * Gap in check sequence

| Date Paid | Number | Amount | | Date Paid | Number | Amount |
|---|---|---|---|---|---|---|
| 10/03 | 5111 | $ 2,719.35 | | 10/12 | * 5135 | 2,500.00 |
| 10/03 | 5112 | 5,101.95 | | 10/06 | 5136 | 4,000.00 |
| 10/03 | 5113 | 7,483.75 | | 10/17 | * 5139 | 88,000.00 |
| 10/18 | * 5126 | 5,000.00 | | 10/06 | 5140 | 625.00 |
| 10/18 | 5127 | 6,000.00 | | 10/05 | 5141 | 1,000.00 |
| 10/11 | 5128 | 5,999.17 | | 10/11 | 5142 | 500.00 |

Continued on next page

**CONFIDENTIAL  HH0000239**

LES KLEIN & ASSOCIATES
TRUST ACCOUNT

Statement Period: October 1 through October 31, 2005
Account Number: 03439-09404

---

## ❑ Checks Paid Continued    * Gap in check sequence

| Date Paid | Number | Amount | Date Paid | Number | Amount |
|---|---|---|---|---|---|
| 10/03 | * 5145 | 2,000.00 | 10/14 | * 5173 | 320.00 |
| 10/03 | 5146 | 1,150.00 | 10/14 | 5174 | 300.00 |
| 10/03 | 5147 | 360.00 | 10/14 | 5175 | 2,000.00 |
| 10/03 | 5148 | 6,000.00 | 10/14 | 5176 | 1,000.00 |
| 10/03 | 5149 | 1,000.00 | 10/14 | 5177 | 5,000.00 |
| 10/12 | * 5151 | 26,000.00 | 10/24 | 5178 | 2,375.00 |
| 10/12 | * 5153 | 19,000.00 | 10/17 | 5179 | 2,000.00 |
| 10/06 | 5154 | 1,000.00 | 10/17 | 5180 | 250.00 |
| 10/06 | 5155 | 150.00 | 10/17 | 5181 | 1,150.00 |
| 10/07 | * 5157 | 1,006.00 | 10/17 | 5182 | 7,000.00 |
| 10/07 | 5158 | 1,500.00 | 10/27 | * 5184 | 500.00 |
| 10/11 | 5159 | 117,910.23 | 10/20 | 5185 | 2,000.00 |
| 10/07 | 5160 | 5,000.00 | 10/20 | 5186 | 10,000.00 |
| 10/12 | 5161 | 480,000.00 | 10/21 | * 5188 | 2,000.00 |
| 10/11 | 5162 | 5,000.00 | 10/21 | 5189 | 550.00 |
| 10/25 | 5163 | 600.00 | 10/24 | 5190 | 1,500.00 |
| 10/18 | 5164 | 2,000.00 | 10/28 | * 5193 | 800.00 |
| 10/18 | 5165 | 10,000.00 | 10/28 | 5194 | 1,000.00 |
| 10/11 | 5166 | 25,000.00 | 10/28 | 5195 | 200.00 |
| 10/11 | 5167 | 400.00 | 10/31 | 5196 | 3,500.00 |
| 10/11 | 5168 | 91.94 | 10/31 | * 5198 | 2,000.00 |
| 10/11 | 5169 | 1,000.00 | 10/31 | 5199 | 1,100.00 |
| 10/11 | 5170 | 1,250.00 | **Total of 58 Checks Paid** | | **$886,392.39** |
| 10/14 | 5171 | 3,500.00 | | | |

---

## ❑ Account Activity

| Date Posted | Description | Reference Number | Amount |
|---|---|---|---|
| | **Other Deposits and Credits** | | |
| 10/11 | Money Transfer-Calif    Trn: 051011-051333 Sender Ref: 0095500284et Src: Fedwire Benf: Les Klein & Associates Trust Orig: ▓▓▓▓▓▓ Cfm Acct. | | $3,659,507.10 |
| | **Withdrawals, Transfers and Account Fees** | | |
| 10/06 | Stop Payment Orders Fee | | $20.00 |
| 10/11 | Processing Fee For Money Tfr-CA Trn: 051011-051333 | | 10.00 |
| 10/14 | Deposited Item Returned Fee | | 5.00 |
| 10/14 | Deposited Item Returned | | 4,800.00 |
| 10/31 | 30 Self Service Calls | | 15.00 |
| | *Total Withdrawals, Transfers and Account Fees* | | *$4,850.00* |

---

## ❑ FACTS - FDIC Insured Account Disclosure Information

If a merchant or financial institution requests pre-authorization for a debit card transaction, we may place a hold on your account for the pre-authorized amount. The hold will reduce the balance available for debit card authorizations. The hold will not affect other withdrawals such as checks, electronic transfers or previously authorized debit card transactions. The hold will not prevent the pre-authorized transaction from overdrawing your account if funds are not available when the actual transaction is posted. We will remove a hold from your account when the actual transaction amount is debited or up to three business days after the pre-authorization request, whichever occurs sooner.

**CONFIDENTIAL  HH0000240**

## **Exhibit 3**

(Dec. 1, 2005 Letter)

LAW OFFICES OF

# LES KLEIN &

## ASSOCIATES, INC.

A LAW CORPORATION

———

14245 Ventura Blvd.
3rd Floor
Sherman Oaks, CA
91423-2740

Tel (818) 501-2663
Fax (818) 501-2859

———

*California Offices*

Anaheim

Los Angeles

San Diego

San Fernando Valley

San Francisco

San Gabriel

San Jose

Sherman Oaks

*National Offices*

Phoenix, Arizona

Denver, Colorado

Miami, Florida

Tampa, Florida

Wichita, Kansas

Marrero, Louisiana

Baltimore, Maryland

St. Louis, Missouri

Phila., Pennsylvania

Dallas, Texas

Fairfax, Virginia

Washington D. C.

December 1, 2005

**ANDOR GESTETNER**
1424 55th Street
Brooklyn, New York

Dear Andor:

Enclosed please find Page 1 and 23 of your prepared original First
Amended Gestetner A/B Trust to be inserted in lieu of the existing pages.

Enclosed also please find list of investments regarding your Living Trust
and Charitable Trust.

Very truly yours,

**LESLIE KLEIN**
LK:mn
Enc.

## ANDOR and MAGDA GESTETNER INVESTMENTS

### *CHARITABLE TRUST*

| | | | |
|---|---|---|---|
| 6 /. | 1. | EQUITABLE AXA | $1,000,000 |
| 4.1 | 2. | C.D.<br>WASHINGTON MUTUAL | $500,000 |
| 4.1 | 3. | C.D.<br>DOWNEY SAVINGS | $500,000 |
| 4 1 | 4. | C.D.<br>BANK OF AMERICA | $267,507 |

### *ANDOR and MAGDA GESTETNER LIVING TRUST*

| | | | |
|---|---|---|---|
| 6 | 1. | MORGAN STANLEY TAX FREE | $500,000 |
| | 2. | AMERICAN GENERAL TAX FREE | $1,000,000 |
| 6 ). | 3. | AMERICAN GENERAL FRANKLIN BOND FUND | $500,000 |
| | | **TOTAL** | **$2,000,000** |

# **Exhibit 4**

(LCG Transfer Acknowledgment)

## AGREEMENT

THIS AGREEMENT, made and entered into this 20th day of June, 2016 between **LESLIE KLEIN as Trustee of the GESTETNER CHARITABLE REMAINDER UNITRUST and LESLIE KLEIN an individual.**

## RECITALS:

A.    LESLIE KLEIN as Trustee of the GESTETNER CHARITABLE REMAINDER UNITRUST has invested $3,700,000 into life insurance policies.   The policies have been sold to LIFE CAPITAL GROUP LLC.  LESLIE KLEIN desires to put in writing the Agreement.

## AGREEMENT:

NOW, **THEREFORE,** in consideration of the premises, and statements of the Agreement, the parties, intending to be legally bound, agrees as follows:

The parties have agreed to the following agreement.

1.    LESLIE KLEIN has invested $3,700,000 in life insurance policies on behalf of the GESTETNER CHARITABLE REMAINDER UNITRUST

2.    The life insurance policies that the funds were invested in have been assigned to LIFE CAPITAL GROUP LLC.

3.    When the individual insureds pass away, LIFE CAPITAL GROUP LLC will receive all the premiums plus 12% interest on the funds that it has paid on these policies.

4.    After LIFE CAPITAL GROUP LLC receives their funds, the GESTETNER CHARITABLE REMAINDER UNITRUST shall receive their funds with 10% interest from the date of the investment.

1

5.    **GENERAL PROVISIONS**

a.    **ENTIRE AGREEMENT:** This Agreement represents the entire and complete agreement of the Parties with respect to the subject matter hereof, and supersedes all prior understandings and agreements, both written and oral, as to the subject matter hereof by and among any of the Parties hereto.

b.    **NOTICES:** Except as otherwise specifically provided herein, whenever any notice or other communication is required or permitted to be give hereunder, such notice or other communication shall be in writing and shall be (as elected by the party giving such notice); (A) DELIVERED IN PERSON; OR (B) SENT BY U.S. REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, POSTAGE PREPAID TO THE PERSON TO WHOM SUCH NOTICE IS INTENDED TO BE GIVEN AT SUCH ADDRESS AS SUCH PERSON MAY HAVE PREVIOUSLY FURNISHED IN WRITING TO SUCH PERSON'S LAST KNOW ADDRESS. Any notice or other communication delivered in person shall be deemed effectively given when delivered, and any such notice or other communication mailed as hereinabove provided shall be effectively given on the date of receipt.

c.    **MODIFICATIONS:** No change or modification of this Agreement shall be valid or binding upon a Party, nor shall any term or condition of this Agreement be considered waived by a Party, unless such change, modification, or waiver is in writing and is signed by such Party.

d.    **BINDING EFFECT:** This Agreement shall inure to the benefit of, and shall be binding upon, the Parties, their legal representative, transferees, heirs, successors, and assigns.

e.    **CONSTRUCTION:** This Agreement shall be interpreted, construed and binding in accordance with the laws of the Torah.

f.    **GENDER:** Throughout this Agreement, whenever the context requires or permits, genders shall be deemed interchangeable, and single number shall be deemed to include the plural, and vice versa.

2

g.    **SEPARABILITY OF PROVISIONS:** Each provision of this Agreement shall be considered separable and if for any reason some portion of this agreement shall be deemed contrary to any existing or future law, such invalidity shall not impair the operation of affect those portions of this Agreement which are valid.

h.    **HEADINGS:**   The underlined headings of the sections and subsections herein are the convenience of reference only and shall not affect the interpretation of this Agreement.

   **IN WITNESS WHEREOF,** the parties hereto have executed, sealed and delivered this Agreement as of the date first above written.

**LESLIE KLEIN**

ORIGINAL

3

## **Exhibit 5**

(Assignment)

## ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT (this "Agreement") is made and entered into as of _OCTOBER 21_ , 2018, by and between Andor Gestetner, individually (the "Assignor"), and Deborah Susan Frischman, Shulamith Josowitz and Isidore Morsel, as Trustees of the A. Gestetner Family Trust (the "Trust" or the "Assignees").

### W I T N E S S E T H:

WHEREAS, the Assignor is a "Holder" under a Non-Revocable Secured Promissory Note, dated as of September 1, 2016, made by Leslie Klein in the original principal amount of $9,630,000, attached hereto as Exhibit A (the "Note"); and

WHEREAS, under the terms of the Note, a Holder of the Note may freely assign its interest the Note to any person or entity; and

WHEREAS, the Assignor wishes to assign, transfer and convey all of his right, title and interest in and to the Note to the Assignee, and the Assignee wishes to accept the assignment of the Note.

NOW, THEREFORE, the parties hereto hereby agree as follows:

1.    <u>Assignment</u>.  The Assignor hereby assigns, transfers and delivers unto the Assignee, all of the Assignor's right, title and interest in and to the Note (the "Assignment").

2.    <u>Acceptance</u>.  The Assignee hereby accepts the Assignment.

3.    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, heirs, administrators, executors, successors and assigns.

4.    <u>Governing Law</u>.  **This Agreement and the rights of the parties hereunder shall be governed by, and construed in accordance with, the laws of the State of New York without regard to principles of conflicts of law thereof.**

5.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. A facsimile or PDF of an executed signature page hereto transmitted by any party hereto to any other party shall be deemed the execution and delivery of an original counterpart of this Agreement by such party.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered on the day and year first above written.

ASSIGNOR:

By: _____
Andor Gestetner

ASSIGNEE:

A. GESTETNER FAMILY TRUST

By: _____
Deborah Susan Frischman, Trustee

By: _____
Shulamith Josowitz, Trustee

By: _____
Isadore Morsel, Trustee

2

Case 2:23-bk-10990-SK    Doc 882    Filed 01/07/25    Entered 01/07/25 10:55:18    Desc
Main Document    Page 47 of 82

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered on the day and year first above written.

ASSIGNOR:

By: _____
Andor Gestetner

ASSIGNEE:

A. Gestetner Family Trust

By: _____
Deborah Susan Frischman, Trustee

By: _____
Shulamith Josowitz, Trustee

By: _____
Isadore Morsel, Trustee

2

00040029v5

## **Exhibit 6**

(Note)

## NON-RECOURSE SECURED PROMISSORY NOTE

**Principal Sum:**      $9,630,000                                            **September 1, 2016**
                        **Due Date: Upon the death of**                       **State of California**
                        **insureds under the Policies**
                        **as set forth below**

FOR VALUE RECEIVED, the undersigned, **LESLIE KLEIN** (the "Borrower"), having an
office address of Leslie Klein and Associates, Inc., 14245 Ventura Boulevard, 3rd Floor,
Sherman Oaks, California 91423-2740, hereby promises to pay to **ANDOR GESTETNER**, an
individual, and **GESTETNER CHARITABLE REMAINDER UNITRUST**, having an
address of 1424 55th Street, Brooklyn, New York, 11219, or their respective registered assigns
(each a "Holder" and together the "Holders"), the principal sum of **$9,630,000** plus interest
thereon at the rate of **13% per annum** and all costs, fees and expenses (including without
limitation reasonable attorneys' fees and disbursements) that the Holders or either of them
incurs in order to collect any amount due under this Note, to negotiate or document a workout
or restructuring, or to preserve their respective rights in this Note and/or the Collateral (as
hereinafter defined) now or hereafter granted ("Expenses").

The Borrower acknowledges that the Holders previously, in or around 2005, delivered the sum
of $4,200,000 to the Borrower ($2,000,000 thereof from ANDOR GESTETNER, and
$2,200,000 thereof from GESTETNER CHARITABLE REMAINDER UNITRUST) with the
agreement that such sum would be invested for the benefit of the Holders. The Borrower
further acknowledges that the Holders have now agreed to accept the delivery of this Note, and
the Borrower's obligations and grant of Security Interest (as hereinafter defined) hereunder, as
repayment of such sum and a notional investment return thereon.

Notwithstanding the use of the singular or plural term herein, each Holder may exercise any
and all rights under this Note with respect to the entire principal and interest due under this
Note separately as if such Holder was the only holder under this Note; provided, however, that
any collection by such Holder shall, after such Holder's expenses of collection, be allocated
between the Holders in accordance with their respective interests in this Note at the time of
such collection.

**Collateral.** This Note is a non-recourse promissory note but secured by the Borrower's interest
(the "LLC Interest") as a Member of **LIFE CAPITAL GROUP LLC** (the "LLC"), a California
limited liability company formed on April 8, 2011, and operated pursuant to a Limited Liability
Company Agreement dated as of June 1, 2011 (the "Operating Agreement"), attached as Exhibit
A hereto and which Borrower represents is a true and correct copy of the Operating Agreement
of the LLC as currently in effect. As security for the prompt and complete payment when due
of all principal, interest and Expenses payable under this Note, the Borrower hereby assigns,
transfers, pledges and grants to the Holders a security interest (the "Security Interest") in all
right, title and interest in and to the LLC Interest and all Proceeds (as defined in the Uniform
Commercial Code as in effect in the State of California (the "UCC")) therefrom (such right, title
and interest in and to the LLC Interest and Proceeds being hereinafter referred to as the

00027585v8

"Collateral"). Borrower represents that the Collateral is, and agrees to keep the Collateral, free and clear of all levies, security interests and other liens and charges whatsoever, excepting only the Holders' first priority perfected security interest therein. Borrower agrees to cooperate with either Holder's efforts (i) to perfect the Holders' security interest in the Collateral in accordance with the requirements of applicable law, (ii) to achieve and maintain the priority of the Holders' security interest in the Collateral, and (iii) to maintain, preserve and protect the Collateral and the Holders' security interest therein.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 13% percent per annum.

**Payment.** Payments sunder this Note shall be made as follows: (1) a monthly payment of the sum of $10,000 to Andor Gestetner on the first day of each month hereafter, beginning on September 1, 2016 and continuing until this Note has been paid in full (the "Monthly Amount"), and (2) from the proceeds of (x) life insurance policies collected by the LLC upon the death of each insured identified on the two lists of policies attached as Exhibit B hereto (together the "List," which List also sets forth the approximate death benefit associated with each such policy (each a "Policy" and collectively the "Policies")), and (y) the Additional Policies (as hereinafter defined), to the extent that Borrower is entitled to a share of such proceeds. Borrower warrants the accuracy of the List and represents that (i) the Policies are in full force and effect, (ii) the LLC has good and marketable title to the Policies, (iii) the List shows nearly all of the policies held by the LLC, (iv) the LLC has good and marketable title to additional policies not shown on the List having an aggregate death benefit of approximately $14,000,000 (each such policy an "Additional Policy" and all such policies collectively the "Additional Policies"), and (v) the Borrower has rights in the proceeds of the Policies and the Additional Policies upon the death of the insureds thereunder and no other party, except the other Member of the LLC, has any rights or interests therein. Borrower also warrants that (i) the approximate annual investment by Shlomo Rechnitz in the LLC in connection with the Policies and the additional Policies (to enable the LLC to pay premiums thereon) is the sum of $1,000,000 and (ii) to date, said Shlomo Rechnitz has contributed approximately $5,500,000 in the aggregate of such investments to the LLC. Borrower agrees that upon the death of each insured the Borrower's entire share of the proceeds of the Policy or Additional Policy on such insured shall be paid directly to the Holders by the LLC, until such time as the entire principal balance under this Note and all accrued interest thereon has been paid. Notwithstanding the foregoing, Borrower agrees that in the event any such proceeds are paid to him, he shall immediately remit such proceeds to the Holders. For the avoidance of doubt, Borrower agrees to pay the Monthly Amount in all events and without regard to (a) whether any insured under the Policies or the Additional Policies is living or deceased or (b) the amount of any Policy or Additional Policy proceeds allocable or distributable to him. Upon payment in full of this Note, the Security Interest in the Collateral shall automatically terminate.

**Prepayment.** The Borrower may prepay the outstanding principal amount of this Note, in

2

whole or in part, together with accrued and unpaid interest on the principal amount so prepaid, without premium, penalty or fee, at any time or times.

**Events of Default.** Each of the following events also shall constitute an "Event of Default": (i) the Borrower fails to pay any amount due under this Note when that amount becomes payable or within ten (10) days thereafter or (ii) any representation of the Borrower in this Note or any other document delivered or statement made by the Borrower in connection with this Note proves to have been incorrect, incomplete or misleading in any material respect at the time it was made.

**Consequences of Default.** If an Event of Default has occurred, the Holders shall have all rights accorded them hereunder, and all rights of a secured party under applicable law, including, without limitation, the right to (a) take immediate possession of the Collateral, with or without legal process, (b) sell, lease or otherwise dispose of the Collateral, at public or private sale, with or without demand, advertisement or notice of the time or place of sale or adjournment thereof (all of which are hereby waived by the borrower and (c) control or manage the Collateral, including without limitation exercising all rights and powers of the Borrower relating to the Collateral. For the avoidance of doubt, the Collateral is Borrower's LLC Interest and not the Policies, and (i) nothing in this Note shall give the Holders any direct rights to take possession and/or dispose of any of the Policies, to the extent that such rights are not granted to the Borrower pursuant to the Operating Agreement of the LLC, and (ii) in the event that the Holders take possession of the Collateral, the terms of the Operating Agreement of the LLC will be binding upon the Holders in the same manner as they are binding upon the Borrower on the date such possession is taken. At the request of either of the Holders, the Borrower shall promptly execute and deliver all instruments of title and other documents as such Holder may deem necessary or advisable to permit the Holders or either of them to fully exercise its rights hereunder, and the Borrower hereby appoints each Holder his lawful attorney-in-fact for the execution of any and all such documents. Each right, power and remedy of the Holders with respect to the Collateral shall be cumulative and concurrent and shall be in addition to every other right, power or remedy, and the exercise or beginning of the exercise of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise of any or all such other rights, powers or remedies.

**Waivers.** The Borrower hereby waives, to the fullest extent permitted by law, presentment, demand, protest and notices, including, without limitation, notices of nonperformance, notices of protest, notices of nonpayment, notices of dishonor, notices of the delivery or acceptance of this Note, and notices of the existence, creation or incurrence of new or additional obligations of the Borrower to the Holders, and all other defenses which otherwise might be available. Borrower acknowledges that the Holders have been induced to agree to the loan evidenced by this Note by, among other things, the provisions of this provision. No delay or failure by either Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holders or either of them of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability

3

00027585v8

to the Holder under this Note shall be limited exclusively to the Collateral (including, without limitation and for the avoidance of doubt, the Borrower's rights and interests in the LLC and the Policies and proceeds thereof), and if any proceedings shall be brought to enforce the provisions of this Note, the Holders shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Collateral.

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holders. Either Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed, by either Holder or such Holder's attorney duly authorized, in writing, a new Note for the principal amount then owed to such Holder will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holders under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one of this Note. Such notice or demand shall be effective, if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice to the Borrower by e-mail is not valid notice under this Note.

**Successors and Assigns.** The Borrower's covenants and agreements contained in this Note shall inure to the benefit of the respective heirs, legal representatives, successors and assigns of the Holders.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN, AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN, THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY AND CITY OF LOS ANGELES, STATE OF CALIFORNIA, IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION, BORROWER SHALL AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons, complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail, return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives

4

(i) any right to assert any counterclaim or setoff or any defense based upon a statute of limitations, upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is obtained as a direct or indirect result of any action on or under this Note.

In addition, the Borrower agrees that (i) any action or proceeding on or under this Note may, in the sole discretion of either party, be brought by him to the Arbitrator (as hereinafter defined) and (ii) in such event the Borrower shall submit to binding arbitration by the Arbitrator who shall determine the matter. For all purposes under this Note, the "Arbitrator" shall be a Rabbi designated by Beis Din Machon L'hoyroa, Monsey, New York (which, for the avoidance of doubt, may include one of the Rabbis serving on said Beis Din).

_____
**Leslie Klein**

Witnesses:

_____

_____

5

00027585v8

# CALIFORNIA ALL PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )

COUNTY OF _____ *L√* _____ )

On __*1/ √ 2016*__ before me , __*Johnney Hong   Notary Public*__ Notary Public,

      Date                      (here insert name and title of the officer)

personally appeared __*Leslie Klein*__

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> JOHNNEY HONG
> Commission # 2080856
> Notary Public - California
> Los Angeles County
> My Comm. Expires Sep 6, 2018

Signature: _____ (Seal)

_____ OPTIONAL _____

Description of Attached Document

Title or Type of Document: _____    Number of Pages: _____

Document Date: _____ Other: _____

## **Exhibit 7**

(UCC Financing Statement)

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

732-333-2385

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701
USA

**DOCUMENT NUMBER: 60339280002**
**FILING NUMBER: 17-7576774324**
**FILING DATE: 03/23/2017 08:13**

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | KLEIN | LESLIE | MENACHEM | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 322 NORTH JUNE STREET | LOS ANGELES | CA | 90004 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | GESTETNER | ANDOR | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1424 55TH STREET | BROOKLYN | NY | 11219 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

All of the debtor's right, title and interest in and to Life Capital Group, LLC, a California limited liability company (the "Company"), pursuant to the Limited Liability Company Agreement of the Company, dated June 1, 2011, as it may be amended from time to time (the "LLC Agreement"), including any and all returns of capital, priority returns, profits, cash flow, net proceeds of capital transactions and all other rights to distributions of, from and with respect to the Company allocable to the debtor's interest in the Company under the LLC Agreement, and all other rights of the debtor under the LLC Agreement, and any and all proceeds of the foregoing.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)    ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

FILING OFFICE COPY

 

U210046603629

B0394-0050 05/14/2021 5:58 PM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File #: U210046603629 |
| Date Filed: 5/14/2021 |

Submitter Information:

Contact Name — Jacob Unger

Organization Name — Law Office of Jacob Unger

Phone Number — (818) 960-0295

Email Address — junger@jacobungerlaw.com

Address — 5404 WHITSETT AVE. SUITE 182 VALLEY VILLAGE, CA 91607

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| LESLIE KLEIN | 14245 Ventura Blvd. Suite 301 Sherman Oaks, CA 91423 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| Andor Gestetner | 1425 55th Street Brooklyn, NY 11219 |
| GESTETNER CHARITABLE REMAINDER UNITRUST | Andor Gestetner 1425 55th Street Brooklyn, NY 11219 |
| A. GESTETNER FAMILY TRUST | Andor Gestetner 1425 55th Street Brooklyn, NY 11219 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
All right, title and interest in and to the Debtor's membership interest in Life Capital Group, LLC, a California limited liability company, and all Proceeds (as defined in the Uniform Commercial Code in effect in the State of California) therefrom.

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:
Not Applicable

Select an additional alternate Financing Statement type:
Not Applicable

Select an alternative Debtor/Secured Party designation for this Financing Statement:
Not Applicable

Optional Filer Reference Information:

Miscellaneous Information:

Search to Reflect:

☐ Order a Search to Reflect

Page 1 of 1



# Secretary of State

**Business Programs Division**
1500 11th Street, Sacramento, CA 95814

LAW OFFICE OF JACOB UNGER                         May 14, 2021 5:58 PM
JACOB UNGER
5404 WHITSETT AVE.                                File No.:  U210046603629
SUITE 182
VALLEY VILLAGE, CA  91607

## Lien Acknowledgment

This acknowledges the filing of the attached Lien document relevant to the information below. To access free copies of filed UCC documents, enter the File No. above in the Search module on the UCC Online web portal at bizfileonline.sos.ca.gov/search/ucc.

| DEBTOR INFORMATION | |
|---|---|
| Debtor Name: | LESLIE KLEIN |
| Debtor Address: | 14245 VENTURA BLVD. |
| | SUITE 301 |
| | SHERMAN OAKS, CA 91423 |

| SECURED PARTY INFORMATION | |
|---|---|
| Secured Party Name: | ANDOR GESTETNER |
| Secured Party Address: | 1425 55TH STREET |
| | BROOKLYN, NY 11219 |
| Secured Party Name: | GESTETNER CHARITABLE REMAINDER UNITRUST |
| Secured Party Address: | 1425  55TH STREET |
| | ANDOR GESTETNER |
| | BROOKLYN, NY 11219 |
| Secured Party Name: | A. GESTETNER FAMILY TRUST |
| Secured Party Address: | 1425  55TH STREET |
| | ANDOR GESTETNER |
| | BROOKLYN, NY 11219 |

| FILING INFORMATION | |
|---|---|
| Lien Type: | UCC |
| Lien File No.: | U210046603629 |
| File Date: | 5/14/2021 5:57 PM |
| Lapse Date: | 5/14/2026 11:59 PM |

**<u>Exhibit 8</u>**

(Lien Acknowledgment)

## MEMORANDUM OF UNDERSTANDING

Reference is made to the Limited Liability Company Agreement of the LLC, dated as of June 1, 2011 (the "Operating Agreement"), a Non-Recourse Secured Promissory Note in the principal amount of $9,630,000, dated September 1, 2016 (the "Promissory Note" evidencing the "Loan"), and the Supplement to Non-Recourse Secured Promissory Note and Assignment of Economic Rights, dated July 25, 2017 (the "Supplement").

Any capitalized terms used in this Agreement without definition shall have the meaning set forth in the Operating Agreement.

For good and valuable consideration, including their mutual promises herein, the parties hereby agree and acknowledge as follows:

a.    Gestetner Lien on Klein's Interest in LLC. The LLC (i) consents to the creation of the Security Interest in Klein's interest in the LLC (the "Collateral") under the Promissory Note, and agrees to execute the attached "Joinder of the LLC" to the Promissory Note, (ii) agrees to cooperate with Gestetner in connection with the exercise of his rights under the Promissory Note in connection with the Collateral; (iii) agrees, until further notice from Gestetner, to pay all amounts distributable to Klein from the LLC to Gestetner; and (iv) agrees not to permit the Borrower to sell, assign or transfer, or further pledge or otherwise encumber, all or any portion of the Collateral without prior notice to and the prior written consent of Gestetner, which consent may be granted or withheld in Gestetner's sole discretion.

b.    Allocation of Proceeds of Policies. Section 4.3 of the Operating Agreement shall be construed to require that:

(i)    Upon the receipt of proceeds from a Policy that is not a Non-Payment Policy, Rechnitz shall be repaid the Rechnitz Amount before Klein receives any distributions from the LLC.

(ii)    The Rechnitz Amount, defined in Section 14.1 and 3.1 of the Operating Agreement, includes (i) Rechnitz's Initial Capital Contribution of $3,800,000; (ii) the Priority Return on Rechnitz's Initial Capital Contribution; (iii) any additional Capital Contributions made by Rechnitz in respect of the policy at issue; and (iv) the Priority Return on any such additional Capital Contribution.

     (iii)     After Rechnitz is paid the Rechnitz Amount, Klein (and/or the Lenders listed on Schedule C of the Operating Agreement) shall be paid the Klein Amount (i.e., Klein's Capital Contributions made in respect of the policy at issue and the Priority Return on such Capital Contributions).

     (iv)     After Klein and/or the Lenders receive the Klein Amount, the LLC shall allocate and pay any remaining proceeds equally between and to Rechnitz and Klein (except to the extent that the payment to Klein is (i) reduced in order to maintain the Reserve Account balance or (ii) applied to the direct payment of premiums on the Marouthis Policies (as hereinafter defined), as herein provided).

     c.     <u>Regular Reporting</u>. The LLC shall provide to Gestetner (or his counsel) accurate and timely (at least quarterly) financial reporting with respect to the LLC, which reporting shall include (i) a current list of the life insurance policies held by the LLC (including any such policies held elsewhere but treated as between Rechnitz and Klein as held therein), (ii) information with respect to the collection, accounting and distribution of proceeds of same, and (iii) a current list of unpaid loans to which Schedule C of the Operating Agreement applies.

     d.     <u>Schedule C Loans</u>. The LLC confirms that the current balance of the loans listed on Schedule C of the Operating Agreement is $_____. There shall be no other loans, or increases in loans, added to said Schedule C by or at the request of Klein or any other party.

     e.     <u>Klein Agreements to Remain in Force</u>. All of the terms of prior agreements signed by both Klein and Gestetner relating to the LLC and/or Klein's interest therein shall continue in full force and effect.

     f.     <u>Successors and Assigns</u>. Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the parties hereunder and their legal representatives, heirs, administrators, executors, successors and assigns.

     g.     <u>Amendments</u>. This Agreement may be modified or amended only with the written consent of all of the parties hereto.

     h.     <u>Severability</u>. If any provision, including any phrase, sentence, clause, section or subsection, of this Agreement is invalid, inoperative or unenforceable for any reason, such circumstance shall not have the effect of rendering such provision in question invalid, inoperative or unenforceable in any other case or circumstance, or of rendering any other provision herein contained invalid, inoperative or unenforceable to any extent whatsoever.

     i.     <u>Headings</u>. The headings contained in this Agreement are for purposes of convenience only and shall not affect the meaning or interpretation of this Agreement.



2

j.        Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED UNDER, THE LAWS OF THE STATE OF CALIFORNIA, WITH ALL RIGHTS AND REMEDIES BEING GOVERNED BY SAID LAWS.

k.        Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, and both of which together shall constitute one and the same instrument. A facsimile or PDF of an executed signature page hereto transmitted by any party hereto to any other party shall be deemed the execution and delivery of an original counterpart of this Agreement by such party.

*[signature page follows]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered on the day and year first above written.

LIFE CAPITAL GROUP, LLC

By: _____
Jonathan Polter, Manager of LLC

_____
ANDOR GESTETNER

**<u>Exhibit 9</u>**

(Sep. 15, 2016 Letter)

LAW OFFICES OF

# LES KLEIN & ASSOCIATES, INC.

A LAW CORPORATION

—

14245 Ventura Boulevard

3rd Floor

Sherman Oaks, CA

91423-2740

Tel (818) 501-2663

Fax (818) 783-5987

—

*California Offices*

Inglewood

Los Angeles

San Fernando Valley

San Gabriel

Sherman Oaks

*National Offices*

Baltimore, Maryland

Washington D.C.

**E-MAIL**

**TO:**    **i.morsel@dalidiamond. com**

**DATE:**    September 15, 2016

**FROM:**    **LESLIE KLEIN & ASSOCIATES
LESLIE KLEIN**

**REGARDING:**    **BOZI**

Enclosed herewith please find the final numbers.        **TOTAL**

| | |
|---|---|
| Original funds received November 5, 2005........ | $4,200,000 |
| Interest earned in 2005 and 2006.... | $250,000 |
| Additional funds received in 2007.... | $110,000 |
| Interest earned in 2007... | $500,000 |
| Interest earned in 2008... | $650,000 |
| Interest earned in 2009... | $650,000 |
| Interest earned in 2010... | $650,000 |
| Interest earned in 2011... | $650,000 |
| Interest earned in 2012...(less distribution) | $430,000 |
| Interest earned in 2013.. (less distribution) | $530,000 |
| Interest earned in 2014.. (less distribution) | $530,000 |
| Interest earned in 2015.. (less distribution) | $435,000 |
| Interest earned in 2016..till September 1st (less distribution) | $45,000 |

$9,630,000

# **Exhibit 10**

(Supplement)

## SUPPLEMENT TO NON-RECOURSE SECURED PROMISSORY NOTE
### AND
### ASSIGNMENT OF ECONOMIC RIGHTS

**Date: July 25, 2017**

Reference is made to a **NON-RECOURSE SECURED PROMISSORY NOTE** (the "Note"), dated September 1, 2016, made by the undersigned, **LESLIE KLEIN** (the "Borrower"), having an office address of Leslie Klein and Associates, Inc., 14245 Ventura Boulevard, 3rd Floor, Sherman Oaks, California 91423-2740, in favor of **ANDOR GESTETNER**, an individual, and **GESTETNER CHARITABLE REMAINDER UNITRUST**, having an address of 1424 55th Street, Brooklyn, New York, 11219, or their respective registered assigns (each a "Holder" and together the "Holders"), in which the Borrower agreed to pay the principal sum of **$9,630,000** plus interest thereon at the rate of **13% per annum** and other terms and conditions as stated in the Note. The loan evidenced by the Note is secured by a grant by the Borrower to the Holders of a security interest in the Borrower's interest (the "LLC Interest" or "Collateral") as a Member of **LIFE CAPITAL GROUP LLC** (the "LLC"), a California limited liability company formed on April 8, 2011, and operated pursuant to a Limited Liability Company Agreement dated as of June 1, 2011. Under the terms of the Note, the Borrower agreed to cooperate with the Holders to perfect the Holders' security interest in the Collateral, to achieve and maintain the priority of the Holders' security interest in the Collateral, and to maintain, preserve and protect the Collateral and the Holders' security interest therein. Notwithstanding the provisions of the Note and efforts of the Borrower and the Holders, the LLC will not agree to acknowledge the Holders' interests in the Collateral.

The Borrower agrees that until the Note has been paid in full, he will refrain from taking, directly or indirectly, any action that may adversely affect the value of the LLC Interest or the rights of the Holders therein pursuant to the Note. Specifically, and without limitation, the Borrower will not, without the advance written consent from Andor Gestetner, (i) direct the LLC to reduce or halt the distributions from the LLC to the Holders or (ii) assign, transfer, pledge, or otherwise dispose of or encumber all or any part of the LLC Interest. In addition, Borrower agrees to cooperate with either Holder's efforts to obtain information from the LLC about the life insurance policies held by the LLC and collection, distribution and accounting of proceeds thereof, and to send copies of all financial statements and/or other reports received by the Borrower from the LLC to Andor Gestetner at the address listed for the Holders above.

_____
Leslie Klein

Witnesses:

_____

_____

00033019v3

> A notary public or other officer completing this certificate verifies only the identity
> of the individual who signed the document to which this certificate is attached and
> not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )          ss
COUNTY OF LOS ANGELES        )

      On **July 25, 2017**, before me, *Arvin Dermehrabian*, a Notary Public, personally appeared **LESLIE KLEIN** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal

Signature: _____

**NOTARY PUBLIC IN AND FOR SAID COUNTY**

[ SEAL ]

ARVIN DERMEHRABIAN
Notary Public – California
Los Angeles County
Commission # 2187571
My Comm. Expires Mar 23, 2021

## **Exhibit 11**

(MOU)

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding (this "Agreement"), dated as of March 13, 2019, between and among Life Capital Group, LLC, a California Limited Liability Company (the "LLC"); Leslie Klein ("Klein") and Shlomo Rechnitz ("Rechnitz", by Jonathan Polter on his behalf), individually and as members of the LLC; and Andor Gestetner, individually and on behalf of his designees ("Gestetner").

Reference is made to the Limited Liability Company Agreement of the LLC, dated as of June 1, 2011 (the "Operating Agreement"), a Non-Recourse Secured Promissory Note in the principal amount of $9,630,000, dated September 1, 2016 (the "Promissory Note" evidencing the "Loan"), and the Supplement to Non-Recourse Secured Promissory Note and Assignment of Economic Rights, dated July 25, 2017 (the "Supplement").

Reference is also made to (a) the original principal amount of the Promissory Note which consisted of (i) an original loan of $4,200,000 made on November 5, 2005 ("Gestetner's Original Investment") and (ii) accrued and unpaid interest of $5,430,000 through the date of the Promissory Note ("Unpaid Gestetner Return on Investment"), and (b) the unpaid accrued interest on the Promissory Note, for the period from September 1, 2016 through February 28, 2019 totaling $3,125,000 ("Frozen Accrued Interest").

Any capitalized terms used in this Agreement without definition shall have the meaning set forth in the Operating Agreement.

For good and valuable consideration, including their mutual promises herein, the parties hereby agree and acknowledge as follows:

    a.    Allocation of Proceeds of Policies. Section 4.3 of the Operating Agreement shall be construed to require that:

    (i)    Upon the receipt of proceeds from a Policy that is not a Non-Payment Policy, Rechnitz shall be repaid the Rechnitz Amount before Klein receives any distributions from the LLC.

    (ii)    The Rechnitz Amount, defined in Section 14.1 and 3.1 of the Operating Agreement, includes (i) Rechnitz's Initial Capital Contribution of $3,800,000; (ii) the Priority Return on Rechnitz's Initial Capital Contribution; (iii) any additional Capital Contributions made by Rechnitz in respect of the policy at issue; and (iv) the Priority Return on any such additional Capital Contribution.

    (iii)    After Rechnitz is paid the Rechnitz Amount, Klein (and/or the Lenders listed on Schedule C of the Operating Agreement) shall be paid the Klein Amount (i.e., Klein's Capital Contributions made in respect of the policy at issue and the Priority Return on such Capital Contributions).

(iv)    After Klein and/or the Lenders receive the Klein Amount, the LLC shall allocate and pay any remaining proceeds equally between and to Rechnitz and Klein (except to the extent that the payment to Klein is (i) reduced in order to maintain the Reserve Account balance or (ii) applied to the direct payment of premiums on the Marouthis Policies (as hereinafter defined), as herein provided).

b.    Correction of Prior LLC Allocations and Distributions; Regular Reporting. The proceeds of life insurance received by the LLC to date were not correctly allocated and distributed in accordance with Section 1.a. of this Agreement and, accordingly, the LLC's accounting records and the improper distributions to the date hereof will be corrected by the Manager, in both cases pursuant to Section 1.a. of this Agreement, as quickly as possible. Computations of the corrected amounts shall be provided to Klein and Gestetner within ten (10) of the date hereof. In addition, the LLC shall provide to Gestetner (or his counsel) accurate and timely (at least quarterly) financial reporting with respect to the LLC, which reporting shall include (i) a current list of the life insurance policies held by the LLC (including any such policies held elsewhere but treated as between Rechnitz and Klein as held therein), (ii) information with respect to the collection, accounting and distribution of proceeds of same, and (iii) a current list of unpaid loans to which Schedule C of the Operating Agreement applies.

c.    Klein to Purchase and Maintain Marouthis Life Insurance Policies. As partial repayment of the original principal amount of the Loan and as security for the repayment of the Loan, Klein shall:

(i)    purchase at his own expense variable universal life insurance policy numbers 610073860 and 610074991, both issued by Security Life of Denver Insurance Company (the "Insurance Company") and insuring the life of Carol Ann Marouthis (the "Marouthis Policies"), from the current owner thereof, at the estimated price of $550,000,

(ii)    name Gestetner (or his designee) as the owner of the Marouthis Policies with all rights of ownership,

(iii)    pay all periodic premiums required to maintain the Marouthis Policies until maturity, except to the extent prepaid as per (c)(iv) below, and in furtherance of the foregoing the LLC is hereby directed to pay $100,000, out of Klein's share of the proceeds received from each Policy, to the Insurance Company,

(iv)    pay the sum of $100,000 to the Insurance Company to cover the periodic premiums for the next two (2) years, and

(v)    simultaneously with the execution of this Agreement, deposit the cash sum of $650,000 with Poel Capital (an entity managed by Jonathan Polter), to be held in escrow and applied to the transactions described in (c)(i) and (c)(iv) above.

d.      Monthly Loan Payments by Klein. Klein agrees to continue to
make monthly Loan payments of $14,000 to Gestetner (or to Gestetner's designee) by
wire transfer on the first day of every month until the Loan has been repaid in full,
provided, however, that in the event that Gestetner shall have received from the LLC the
aggregate sum of $750,000, as a result of the addition of the Unpaid Gestetner Return on
Investment to Schedule C of the Operating Agreement (as hereinafter provided), within
12 months from the date hereof (and provided that Klein shall be performing all of his
obligations under this Agreement), Gestetner agrees that Klein may discontinue the
monthly Loan payments under this paragraph.

e.      Reduction of Total Balance of Loan. Provided that Klein shall
perform all of his obligations under this Agreement, Gestetner agrees to reduce the total
balance due under the Loan from the sum of $12,755,000 to $9,300,000. The agreed
reduction shall effectively decrease the aggregate sum of the Unpaid Gestetner Return on
Investment and the Frozen Accrued Interest from $8,555,000 to $5,100,000. The
$4,200,000 amount of Gestetner's Original Investment shall not be affected by said
reduction.

f.      Freezing of Accrued Interest on Loan. Gestetner agrees to freeze
the accumulation of interest on the Loan (the "Interest Freeze") as of the date hereof, and
no additional interest shall accrue on the Loan, provided that Klein shall perform all of
his obligations under this Agreement.

g.      Schedule C Loan. The parties agree to add the sum of $2,000,000
of the Unpaid Gestetner Return on Investment to Schedule C of the Operating
Agreement, to be repaid in accordance with the terms thereof. There shall be no other
loans added to said Schedule C by or at the request of Klein. Upon payment by the LLC
to Gestetner of the aggregate sum of $2,000,000, the LLC shall be entitled to set aside
from additional funds allocable to Klein for the Reserve Account, up the total amount
required under the terms of the Operating Agreement. Subject to the foregoing, upon the
full funding of the Reserve Account and provided that the Loan has not yet been fully
repaid, the then outstanding Loan balance (but in no event a sum greater than $2,500,000)
shall be added to Schedule C of the Operating Agreement, thereafter to be repaid in
accordance with the terms thereof.

h.      Supplement to Remain in Force. All of the terms of the
Supplement for the assignment of income from the LLC to Gestetner until the Loan is
fully repaid, shall continue in full force and effect.

i.      Breach by Klein. In the event that Klein breaches any of his
obligations to Gestetner under this Agreement, the Interest Freeze is cancelled and the
entire Loan (including principal and all accumulated interest thereon without regard to a
freeze) shall immediately be due and payable by Klein to Gestetner.

j.      Each payment received by Gestetner (or his designee) pursuant to
the terms of this Agreement, including proceeds of the Marouthis Policies or distributions

from the LLC, shall be applied to reduce the Loan (to the extent reduced as hereinabove provided), in the following order of priority:

    (i)   first, to Gestetner's Original Investment until it shall be reduced to zero,

    (ii)   next, to reduce the Unpaid Gestetner Return on Investment until it shall be reduced to zero,

    (iii)  third, to reduce the Frozen Accrued Interest until it shall be reduced to zero.

    k.    <u>Amendment of Prior Agreements</u>. The Operating Agreement, Promissory Note and Supplement are hereby deemed amended by the terms of this Agreement.

    l.    <u>Successors and Assigns</u>. Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the parties hereunder and their legal representatives, heirs, administrators, executors, successors and assigns.

    m.    <u>Amendments</u>. This Agreement may be modified or amended only with the written consent of all of the parties hereto.

    n.    <u>Severability</u>. If any provision, including any phrase, sentence, clause, section or subsection, of this Agreement is invalid, inoperative or unenforceable for any reason, such circumstance shall not have the effect of rendering such provision in question invalid, inoperative or unenforceable in any other case or circumstance, or of rendering any other provision herein contained invalid, inoperative or unenforceable to any extent whatsoever.

    o.    <u>Headings</u>. The headings contained in this Agreement are for purposes of convenience only and shall not affect the meaning or interpretation of this Agreement.

    p.    <u>Governing Law</u>. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED UNDER, THE LAWS OF THE STATE OF CALIFORNIA, WITH ALL RIGHTS AND REMEDIES BEING GOVERNED BY SAID LAWS.

    q.    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. A facsimile or PDF of an executed signature page hereto transmitted by any party hereto to any other party shall be deemed the execution and delivery of an original counterpart of this Agreement by such party.

*[signature page follows]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered on the day and year first above written.

LIFE CAPITAL GROUP, LLC

By: _____
    Jonathan Polter, Manager

By: _____
    Leslie Klein, Member

By: _____
    Shlomo Rechnitz, Member, by Jonathan
    Polter on his behalf

_____
LESLIE KLEIN

_____
SHLOMO RECHNITZ, BY JONATHAN
POLTER ON HIS BEHALF

_____
ANDOR GESTETNER

## **Exhibit 12**

(Payments Summary)

Bankruptcy Estate of Leslie Klein
Transaction Analysis: Gestetner
Les Klein & Associates, Inc. Trust Account Ending in 9404
Time Period: September 1, 2016 through April 30, 2023

| Tab No. | Ck. No. | Clear Date | Name | Disbursement Amount |
|---|---|---|---|---|
| 1 | 14600 | 09/08/16 | Andor Gestetner | (10,000.00) |
| 2 | 14644 | 10/14/16 | Andor Gestetner | (10,000.00) |
| 3 | 14680 | 11/22/16 | Andor Gestetner | (10,000.00) |
| 4 | 14730 | 12/27/16 | Andor Gestetner | (10,000.00) |
| 5 | 14786 | 01/13/17 | Andor Gestetner | (10,000.00) |
| 6 | 14838 | 02/07/17 | Andor Gestetner | (10,000.00) |
| 7 | 14889 | 03/08/17 | Andor Gestetner | (10,000.00) |
| 8 | 14939 | 04/24/17 | Andor Gestetner | (10,000.00) |
| 9 | 14990 | 05/09/17 | Andor Gestetner | (10,000.00) |
| 10 | 15031 | 06/21/17 | Andor Gestetner | (10,000.00) |
| 11 | 15072 | 07/10/17 | Andor Gestetner | (10,000.00) |
| 12 | 15126 | 08/14/17 | Andor Gestetner | (10,000.00) |
| 13 | 15151 | 09/12/17 | Andor Gestetner | (10,000.00) |
| 14 | 15176 | 10/18/17 | Andor Gestetner | (10,000.00) |
| 15 | 15221 | 11/30/17 | Andor Gestetner | (10,000.00) |
| 16 | 15337 | 01/11/18 | Andor Gestetner | (10,000.00) |
| 17 | 15375 | 02/13/18 | Andor Gestetner | (10,000.00) |
| 18 | 15418 | 03/08/18 | Andor Gestetner | (10,000.00) |
| 19 | 15461 | 04/12/18 | Andor Gestetner | (10,000.00) |
| 20 | 15509 | 05/09/18 | Andor Gestetner | (10,000.00) |
| 21 | 15550 | 06/11/18 | Andor Gestetner | (2,000.00) |
| 22 | 15587 | 07/11/18 | Andor Gestetner | (10,000.00) |
| 23 | 15639 | 08/27/18 | Andor Gestetner | (10,000.00) |
| 24 | 15683 | 09/13/18 | Andor Gestetner | (10,000.00) |
| 25 | 15717 | 10/15/18 | Andor Gestetner | (10,000.00) |
| 26 | 15615 | 11/13/18 | Andor Gestetner | (10,000.00) |
| 27 | 15779 | 12/11/18 | Andor Gestetner | (10,000.00) |
| 28 | 15832 | 01/22/19 | Andor Gestetner | (14,000.00) |
| 29 | 15863 | 02/21/19 | Andor Gestetner | (14,000.00) |
| 30 | 15897 | 03/13/19 | Andor Gestetner | (14,000.00) |
| 31 | 15930 | 04/11/19 | Andor Gestetner | (14,000.00) |
| 32 | 15978 | 05/09/19 | Andor Gestetner | (14,000.00) |
| 33 | 16017 | 06/12/19 | Andor Gestetner | (14,000.00) |
| 34 | 16045 | 07/09/19 | Andor Gestetner | (14,000.00) |
| 35 | 16098 | 08/12/19 | Andor Gestetner | (14,000.00) |
| 36 | 16141 | 09/12/19 | Andor Gestetner | (14,000.00) |
| 37 | 16158 | 10/10/19 | Andor Gestetner | (14,000.00) |
| 38 | 16201 | 11/12/19 | Andor Gestetner | (14,000.00) |
| 39 | 16241 | 12/12/19 | Andor Gestetner | (14,000.00) |
| 40 | 16272 | 01/15/20 | Andor Gestetner | (14,000.00) |

Bankruptcy Estate of Leslie Klein
Transaction Analysis: Gestetner
Les Klein & Associates, Inc. Trust Account Ending in 9404
Time Period: September 1, 2016 through April 30, 2023

| Tab No. | Ck. No. | Clear Date | Name | Disbursement Amount |
|---------|---------|------------|------|---------------------|
| 41 | 16296 | 02/18/20 | Andor Gestetner | (14,000.00) |
| 42 | 16069 | 03/20/20 | Andor Gestetner | (14,000.00) |
| 43 | 16358 | 04/21/20 | Andor Gestetner | (14,000.00) |
| 44 | 16376 | 05/14/20 | Andor Gestetner | (14,000.00) |
| 45 | 16421 | 06/15/20 | Andor Gestetner | (14,000.00) |
| 46 | 16441 | 07/10/20 | Andor Gestetner | (14,000.00) |
| 47 | 16495 | 08/17/20 | Andor Gestetner | (14,000.00) |
| 48 | 16535 | 09/21/20 | Andor Gestetner | (14,000.00) |
| 49 | 16557 | 10/14/20 | Andor Gestetner | (14,000.00) |
| 50 | 16628 | 11/25/20 | Andor Gestetner | (14,000.00) |
| 51 | 16681 | 12/16/20 | Andor Gestetner | (14,000.00) |
| 52 | 16694 | 01/19/21 | Andor Gestetner | (14,000.00) |
| 53 | 16714 | 02/04/21 | Andor Gestetner | (10,000.00) |
| 54 | 16724 | 02/18/21 | Andor Gestetner | (14,000.00) |
| 55 | 16656 | 03/25/21 | Andor Gestetner | (14,000.00) |
| 56 | 16741 | 04/26/21 | Andor Gestetner | (14,000.00) |
| 57 | 16832 | 05/20/21 | Andor Gestetner | (14,000.00) |
| 58 | 16813 | 07/08/21 | Andor Gestetner | (14,000.00) |
| 59 | 16859 | 07/30/21 | Andor Gestetner | (14,000.00) |
| 60 | 16900 | 08/26/21 | Andor Gestetner | (14,000.00) |
| 61 | 16924 | 09/30/21 | Andor Gestetner | (14,000.00) |
| 62 | 16983 | 11/24/21 | Andor Gestetner | (14,000.00) |
| 63 | 17069 | 01/14/22 | Andor Gestetner | (17,500.00) |
| 64 | 17063 | 01/20/22 | Andor Gestetner | (14,000.00) |
| 65 | 17099 | 02/28/22 | Andor Gestetner | (14,000.00) |
| 66 | 17146 | 03/28/22 | Andor Gestetner | (14,000.00) |
| 67 | 17162 | 04/04/22 | Andor Gestetner | (17,500.00) |
| 68 | 17175 | 04/11/22 | Andor Gestetner | (14,000.00) |
| 69 | 17195 | 05/17/22 | Andor Gestetner | (14,000.00) |
| 70 | 17232 | 07/12/22 | Andor Gestetner | (14,000.00) |
| 71 | 17244 | 07/29/22 | Andor Gestetner | (17,500.00) |
| 72 | 17233 | 08/01/22 | Andor Gestetner | (14,000.00) |
| 73 | 17257 | 08/30/22 | Andor Gestetner | (14,000.00) |
| 74 | 17270 | 09/28/22 | Andor Gestetner | (14,000.00) |
| 75 | 17293 | 11/07/22 | Andor Gestetner | (14,000.00) |
| 76 | 17312 | 12/30/22 | Andor Gestetner | (14,000.00) |
| 77 | 17302 | 01/05/23 | Andor Gestetner | (14,000.00) |
| 78 | 17326 | 01/18/23 | Andor Gestetner | (17,500.00) |
| | | | Sub-total | (986,000.00) |

Prepared by Development Specialists, Inc.
Preliminary - subject to change and / or update.

Bankruptcy Estate of Leslie Klein
Transaction Analysis: Gestetner
Les Klein & Associates, Inc. Trust Account Ending in 9404
Time Period: September 1, 2016 through April 30, 2023

| Tab No. | Ck. No. | Clear Date | Name | Disbursement Amount |
|---|---|---|---|---|
| 79 | 16964 | 11/03/21 | Endine Gestetner | (17,500.00) |
| 80 | 17412 | 04/14/23 | Endine Gestetner | (17,500.00) |
| | | | Sub-total | (35,000.00) |
| | | | | |
| 81 | 16700 | 01/21/21 | Erica Gestetner | (7,500.00) |
| 82 | 16747 | 04/06/21 | Erica Gestetner | (17,500.00) |
| 83 | 16862 | 07/21/21 | Erica Gestetner | (17,500.00) |
| | | | Sub-total | (42,500.00) |
| | | | | |
| 84 | 16953 | 10/25/21 | Gestetner Trust | (14,000.00) |
| 85 | 17028 | 12/22/21 | Gestetner Trust | (14,000.00) |
| | | | Sub-total | (28,000.00) |
| | | | | |
| | Grand Totals | | | $    (1,091,500.00) |

Prepared by Development Specialists, Inc.
Preliminary - subject to change and / or update.

## **Exhibit 13**

(Claim Summary)

**Bankruptcy Estate of Leslie Klein**
Gestetner Proofs of Claim (POC 29 & 30)

| | POC As Filed [1] | Trustee Adjustments | Trustee POC Value |
|---|---|---|---|
| Secured Claim [2] | | | |
| Sept. 1, 2016 Promissory Note | 9,630,000 | | $  9,630,000 |
| Interest | 8,352,955 | | 8,352,955 |
| Less: Disbursements since Sept. 1, 2016 | | $  (1,091,500) | (1,091,500) [3] |
| | | | |
| Total Secured Claim | 17,982,955 | (1,091,500) | 16,891,455 |

[1]  Both Gestetner claims were filed for the same amount and for the same basis.  Only one claim is to be allowed.

[2]  Claim secured by UCC filings dated March 23, 2017 and renewed May 14, 2021

[3]  DSI review of payments made to Gestetner parties between September 1, 2016 and the petition date

## **Exhibit 14**

(Timeline)

**Bankruptcy Estate of Leslie Klein**
Gestetner Proofs of Claim (POC 29 & 30)
Loan History

| Activity | Date | Amount | Loan Balance | Source |
|---|---|---|---|---|
| **Initial Investment** | | | | |
| Initial Funds November 5, 2005 | 11/05/05 | 4,200,000 | 4,200,000 | [1] [2] [3] |
| Interest from 2005 and 2006 | 12/31/06 | 250,000 | 4,450,000 | [3] |
| Additional Funds Contributed in 2007 | 12/31/07 | 110,000 | 4,560,000 | [3] |
| Interest earned in 2007 | 12/31/07 | 500,000 | 5,060,000 | [3] |
| Interest earned in 2008 | 12/31/08 | 650,000 | 5,710,000 | [3] |
| Interest earned in 2009 | 12/31/09 | 650,000 | 6,360,000 | [3] |
| Interest earned in 2010 | 12/31/10 | 650,000 | 7,010,000 | [3] |
| Interest earned in 2011 | 12/31/11 | 650,000 | 7,660,000 | [3] |
| Interest earned in 2012 (less distribution) | 12/31/12 | 430,000 | 8,090,000 | [3] |
| Interest earned in 2013 (less distribution) | 12/31/13 | 530,000 | 8,620,000 | [3] |
| Interest earned in 2014 (less distribution) | 12/31/14 | 530,000 | 9,150,000 | [3] |
| Interest earned in 2015 (less distribution) | 12/31/15 | 435,000 | 9,585,000 | [3] |
| Interest earned in 2015 to Sept. 1, 2016 (less distribution) | 09/01/16 | 45,000 | 9,630,000 | [3] |
| | | | | |
| **Promissory Note** | | | | |
| Face Value of Promissory Note | 09/01/16 | | 9,630,000 | [4] |
| Interest from Sept.1, 2016 to Feb. 28, 2019 | 02/28/19 | 3,125,000 | 12,755,000 | [1] |
| Reduction of Total Balance of Loan | 03/13/19 | (3,455,000) | 9,300,000 | [1] |
| | | | | |
| **Klein BK Causes Default** | | | | |
| Interest from March 1, 2019 to February 22, 2023 | 02/22/23 | 5,227,955 | 14,527,955 | [1] |
| Cancel of Interest Freeze due to Default | 02/22/23 | 3,455,000 | 17,982,955 | [1] |
| Less: Disbursements since Sept. 1, 2016 | | (1,091,500) | 16,891,455 | [5] |

[1] Memorandum of Understanding dated March 13, 2019

[2] October 2005 bank statement for the Les Klein & Associates Bank of America account ending -9404 that shows a wire of $3,659,507.10 received on October 11, 2005, the Gestetner Ledger showing this amount being wired to Leslie Klein on the same date, and a deposit of $608,000.00 received on October 14, 2005 into the -9404 account. The sum of the above deposits into the LKA account match the Dec. 1, 2005 Letter that the Debtor acknowledged the Gestetners invested with Klein.

[3] See the Sept. 15, 2016 showing interest accrual from the $4,200,000 principal amount to the $9,630,000 promissory note amount

[4] See Note, dated Septeber 1, 2016

[5] DSI review of payments made to Gestetner parties between September 1, 2016 and the petition date