1  Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
2      A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
(323) 937-4501      Fax (888) 316-6107
4  e-mail: baruchcohen@baruchcohenesq.com

5  *Attorney for Creditors Robert & Esther Mermelstein*

6              UNITED STATES BANKRUPTCY COURT

7              CENTRAL DISTRICT OF CALIFORNIA

8              LOS ANGELES ANA DIVISION

9

10  In re                                    Case No. 2:23-bk-10990-SK

11  LESLIE KLEIN,                            Chapter 11

12      Debtor and Debtor in Possession,    **ROBERT & ESTHER MERMELSTEIN'S
RENEWED OPPOSITION TO MOTION OF
13                                          CHAPTER 11 TRUSTEE FOR ORDER
APPROVING SETTLEMENT BETWEEN
14                                          THE TRUSTEE AND A. GESTETNER
FAMILY TRUST AND GESTETNER
15                                          CHARITABLE REMAINDER UNITRUST
PURSUANT TO BANKRUPTCY RULE
16                                          9019; DECLARATION OF ROBERT
MERMELSTEIN**

17                                          Date: 2-12-2025
Time: 9:00am
18                                          Place: 255 E. Temple Street, Los Angeles
Courtroom: 1575
19

20      **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY**

21  **JUDGE, THE DEBTOR AND HIS COUNSEL, MOVANTS AND THEIR COUNSEL, AND**

22  **ALL OTHER INTERESTED PARTIES**:

23          Creditors, Robert & Esther Mermelstein ("Mermelstein"), hereby renew their opposition to

24  the *Motion of Chapter 11 Trustee for Order Approving Settlement Between the Trustee and A.*

25  *Gestetner Family Trust and Gestetner Charitable Remainder Unitrust Pursuant to Bankruptcy*

26  *Rule 9019* ("Motion")[Doc-882] as follows:

27  _____

28              RENEWED OPPOSITION TO MOTION OF CHAPTER 11 TRUSTEE FOR
ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER

1. **INTRODUCTION: REVISITING THE UNRESOLVED DISPUTE WITH RENEWED VIGILANCE**

   a. **"It's Déjà Vu All Over Again"[1] - Questioning the Trustee's Repeated Attempts and Flawed Assertions**

      i. **Recurrence of Contested Motions**

      The Trustee initially filed this motion in September 2024, attempting to secure a $4.2 million interest for Gestetner, the deceased brother-in-law of Debtor Leslie Klein, in half of Klein's ownership stake in Life Capital Group ("LCG"). This motion, unaccompanied by substantive evidence except for the proposed settlement itself, was directed at prioritizing a family insider over the numerous victims of Klein's extensive Ponzi scheme. Mermelstein rightfully opposed this motion. In an unorthodox procedural turn, the Trustee introduced new evidence during his reply brief, an action that prompted the Court to permit withdrawal of the motion rather than an outright denial.

      ii. **Failure to Rectify or Reconcile**

      Following the initial hearing, despite promises of clarification and additional evidence to Mermelstein and other objecting creditors, the Trustee's counsel John Lucas ("Lucas") failed to deliver. Surprisingly, the Trustee refiled the motion with the sole substantive change being a reduction of the settlement claim to $3.65 million—a 13% decrease purportedly acknowledging the lack of evidentiary basis for the original $550,000 claim. This refiling did not address the foundational issues Mermelstein raised, particularly the inappropriate prioritization of a related party with a questionable secured claim.

      iii. **Evidence and Evidentiary Burdens**

      The Trustee's continued reliance on the same flawed analysis and the absence of a rigorous evaluation of litigation risks are glaring. Klein, the primary witness and a known perjurer with a

---

[1] A "Yogi-ism" is a term for the quotable quips of New York Yankees Hall of Famer Yogi Berra.

1    history of document forgery, previously denied under oath the existence of the alleged secured

2    interest to Gestetner. The documents in question are inconsistent and likely inadmissible, casting

3    significant doubt on the veracity of Gestetner's claim. Without concrete, reliable evidence, it is

4    probable that Gestetner's claim would fail under scrutiny at trial.

5        **iv. Inequitable and Unjustified Settlement Proposals**

6      The Trustee's proposal to settle for $3.65 million, despite prior repayments exceeding $1

7    million by Klein to Gestetner, represents not only an overreach but also a gross mismanagement of

8    creditor priorities. This proposed settlement does not prevent unjust enrichment at the expense of

9    other victims, nor does it offer a fair resolution consistent with the principles of bankruptcy law.

10        **v. Questioning the Basis of Gestetner's Claim**

11      Equally troubling is the persistence of unresolved issues regarding the legitimacy of

12    Gestetner's claim as "secured." The Trustee's failure to address this pivotal aspect raises serious

13    concerns about the equitable treatment of all creditors, particularly when Gestetner's positioning to

14    precede other victims of Klein's Ponzi scheme—in the absence of a valid, contestable secured

15    claim—smacks of preferential treatment that undermines the principles of justice and fairness. The

16    Trustee's strategy appears to be less about securing an equitable resolution and more about

17    expediently disposing of contentious claims at the expense of more vulnerable creditors.

18        **vi. The Illusion of Benefit and the Reality of Inequity**

19      Moreover, the justification provided for the full payment of $3.65 million—that this would

20    prevent interest accrual—holds little merit when other victims have yet to receive even the

21    principal amounts of their investments. Why should Gestetner accrue benefits in the form of

22    interest on his claim when others, equally victimized, continue to suffer without recourse? This

23    approach not only distorts the priorities set by equitable distribution but also exacerbates the

24    disparities among the victims of this financial debacle.

25        **vii. Urgent Need for Judicial Intervention**

26      This court must critically assess the motivations and methodologies of the Trustee's

27

28    <u>RENEWED OPPOSITION TO MOTION OF CHAPTER 11 TRUSTEE FOR</u>
ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER

1/16-5:56pm

1  handling of Gestetner's claims. The issue transcends mere procedural oversight and touches on the

2  core principles of justice and equity. The disparity in treatment between an insider and the

3  multitude of defrauded creditors calls for a stringent review to ensure that the bankruptcy process

4  upholds its foundational goal of equitable treatment for all creditors.

5           viii.    **Conclusion**

6       Mermelstein urges this court to reject the Trustee's renewed motion, motion—previously

7  documented as [Doc-800]—renewed as [Doc-882], which has resurfaced in an amended guise,

8  which is fundamentally flawed and fails to rectify the preferential treatment previously contested.

9  Approving this motion would not only perpetuate injustices against the numerous victims but also

10  undermine the integrity and fairness of the bankruptcy system. It is imperative that the court

11  intervenes to correct these persistent procedural and substantive injustices to maintain the

12  equitable distribution of assets in this case.

13       2.    **SUBSTANTIAL PROCEDURAL OVERSIGHTS: TRUSTEE'S FAILURE**

14           **TO OBJECT UNDERMINES CREDITOR RIGHTS**

15       a.    **Failure to Object and Its Consequences**

16       The Trustee's omission in challenging the Gestetner's Proof of Claim, as required by

17  Federal Rule of Bankruptcy Procedure 3007, has significantly compromised the rights of creditors,

18  including Mermelstein, by denying them the opportunity to engage in discovery concerning the

19  validity of this claim. This procedural neglect has stripped creditors of the essential tools needed to

20  scrutinize the basis of Gestetner's claim, fundamentally impacting their ability to protect their

21  financial interests in this bankruptcy case.

22       b.    **Compromised Discovery: The Impracticality of Truthful Testimony**

23       Furthermore, even if the Trustee had appropriately objected to the claim, any discovery

24  efforts would likely prove ineffective. The death of Gestetner has effectively eliminated any

25  chance of directly verifying the assertions through his testimony, thereby closing a critical avenue

26  for uncovering the truth. Simultaneously, relying on Klein's testimony is impractical, given his

27

28       RENEWED OPPOSITION TO MOTION OF CHAPTER 11 TRUSTEE FOR
        ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER

known unreliability and the high risk that he would fail to testify truthfully. This situation leaves creditors in a precarious position, unable to depend on discovery to clarify the legitimacy of claims, thus further entrenching the inequity introduced by the trustee's initial oversight.

c.    **Critical Flaws in Expedited Settlement Procedures: Assessing the Trustee's Hasty Actions**; **Premature Settlement Undermines Due Process**

The Trustee's precipitous move to settle the Gestetner claim raises significant concerns about the integrity and legitimacy of the bankruptcy process. This rapid settlement suggests an assumption of validity where substantial questions remain, particularly concerning the claim's foundational legitimacy. Such an approach not only bypasses the thorough scrutiny required in bankruptcy proceedings but also compromises the rights of other creditors, including Mermelstein.

i.    **Foundational Objections Compromised by Gestetner's Inability to Authenticate Documents**

Had Gestetner been required to substantiate his claim, the process would undoubtedly have encountered substantial objections from Mermelstein, particularly on foundational grounds as stipulated by the Federal Rules of Evidence. The pivotal issue here revolves around the authentication of supporting documents—a process critically undermined by Gestetner's inability to testify due to his demise. This absence deprives the court and creditors of the essential testimonial evidence required to verify the authenticity and accuracy of the documentation linked to the claim.

ii.    **Challenging Procedural Shortcuts: The Need for Authentication in the Gestetner Claim; Demanding Accountability in the Verification Process**

Why should Gestetner be allowed to bypass crucial legal requirements for authenticating support documents for its claim? This exemption raises serious concerns about the integrity of the bankruptcy process. The Trustee's apparent haste to endorse this claim as legitimate—effectively rubber-stamping it without the requisite scrutiny—compromises the principles of fairness and due diligence that are fundamental to judicial proceedings.

RENEWED OPPOSITION TO MOTION OF CHAPTER 11 TRUSTEE FOR
ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER

1/16-5:56pm

1   The rush to settle Gestetner's claim without proper authentication not only undermines the

2   reliability of the claim itself but also sets a dangerous precedent that could affect the equitable

3   treatment of all creditors involved. If the Trustee does not adhere to established standards of

4   evidence, particularly those necessary to validate claims thoroughly, how can other creditors be

5   assured of a fair and just resolution to their own disputes?

6               iii.     **Urgent Call for Judicial Intervention**

7       In light of these significant procedural and practical issues, it is imperative that the court

8   recognizes the severe disadvantage imposed on Mermelstein and other creditors. The Trustee's

9   failure to act according to the mandates of FRBP 3007 and 9014 not only undermines the integrity

10  of the bankruptcy process but also prejudices the rights of creditors who are entitled to a

11  transparent and fair determination of claims. We urge the court to take corrective action to ensure

12  equitable treatment of all parties and uphold the fundamental principles of justice and due process

13  within this bankruptcy proceeding.

14  3.     **EXPOSING THE TRUTH: THE KOHN MEMORANDUM UNVEILS**

15         **GESTETNER'S REAL ROLE**

16      a.      **Unmasking Fraudulent Misrepresentations**

17      Mermelstein's previous opposition has illuminated critical aspects of Klein's fraudulent

18  activities, particularly in relation to Mermelstein's **Kohn Policy**, leading to Gestetner's unjust

19  enrichment. The pivotal document in this exposure, the Kohn Memorandum of Agreement for

20  Joint Venture ("**Kohn Memo**"), dated March 1, 2010, crucially indicates that Gestetner was not

21  merely a lender as has been misleadingly presented in the proceedings. Instead, this document

22  categorically reveals that Gestetner was actively purchasing Klein's policies.

23      b.      **Challenging the Mischaracterization of Gestetner's Role**

24              i.      **Clarifying the Investor Status Against Misleading Claims**

25      The Kohn Memo serves as the strongest, and potentially the only, concrete evidence of

26  Gestetner's actual involvement with his brother-in-law, Klein. It categorically states Gestetner's

27

28

1 role not as a lender, but as an investor—a critical distinction that shifts the narrative from one of

2 passive loan provision to active investment. This distinction is fundamental, as it challenges the

3 current portrayal of Gestetner's financial engagements and aligns his actions with those of

4 investors like the Mermelsteins, who similarly purchased policies rather than merely lending

5 funds.

6    c. **Advocating for Broader Recognition of the Evidence; Resisting Narrow**

7     **Interpretations to Reveal Comprehensive Implications**

8   While the Trustee might attempt to confine the implications of the Kohn Memo to this

9 specific transaction alone, it is imperative to leverage this document to broaden our understanding

10 of Gestetner's overall role. Limiting the scope of the Kohn Memo would severely restrict the

11 insight it provides into Gestetner's broader financial strategies and his true relationship with Klein.

12 Therefore, it is essential to assert that the document not only reveals the nature of a single deal but

13 also sheds light on a consistent pattern of investment behavior that mirrors that of recognized

14 investors.

15    d. **A Call for Equitable Evaluation and Transparency**

16   In light of this evidence, it becomes crucial for the court to reassess Gestetner's role and

17 the claims arising from it with a lens of equity and thorough investigation. By acknowledging the

18 true nature of Gestetner's involvement as detailed in the Kohn Memo, the court can ensure that

19 justice is served not based on misrepresented facts but on the transparent and accurate

20 understanding of each party's actions and intentions. This clarification will safeguard the integrity

21 of the legal process and ensure that all parties are treated fairly, based on their actual, rather than

22 purported, roles.

23 4. **REASSERTING THE FOUNDATIONS OF OUR OPPOSITION: A CALL FOR**

24   **RIGOROUS SCRUTINY**

25   a. **Continued Deficiencies in the Trustee's Motion**

26   Based on the aforementioned concerns and the critical fact that the Trustee's original

27

28

1  motion failed to progress, primarily due to the absence of compelling supporting evidence,

2  Mermelstein finds it necessary to reiterate the essence of his original opposition. This repetition

3  underscores the ongoing relevance and urgency of the concerns previously raised, which remain

4  unaddressed in the trustee's latest filings.

5      In light of the persistent issues with the Trustee's submissions, Mermelstein's restatement

6  of his initial opposition is both relevant and crucial. We urge the court to consider these reiterated

7  points with the seriousness they warrant, to foster a fair and equitable resolution in the

8  proceedings.

9  5.    **UNMASKING THE DEBTOR'S FRAUD: THE UNJUST ENRICHMENT OF**

10      **GESTETNER - <u>AS TO MERMELSTEIN'S KOHN POLICY</u>**

11      **Introduction**: The Court is confronted with a critical issue: the Debtor's fraudulent

12  manipulation of Mermelstein's **Kohn Policy**, which has led to the unjust enrichment of Gestetner.

13  The Trustee's Motion, which is glaringly deficient in both evidentiary support and a rigorous

14  analysis of Gestetner's claims, offers Gestetner a series of dubious and unwarranted benefits. This

15  motion, lacking substantive validation of Gestetner's proofs of claim, disproportionately favors

16  Gestetner by granting them advantages that are not only questionable but also fundamentally

17  unjust as to Mermelstein's **Kohn Policy**. Such a motion demands immediate and thorough

18  scrutiny to rectify the evident manipulation and prevent the further enrichment of Gestetner at

19  Mermelstein's expense. Specifically, this Motion seeks to grant Gestetner:

20      a.    <u>Legitimize a Secured Claim</u>: a valid and perfected secured claim against the

21          Debtor's equity interest in LCG;

22      b.    <u>Authorize a Substantial Claim</u>: an allowed secured claim against the Estate totaling

23          $4,200,000.00; and

24      c.    <u>Divide Recoveries</u>: an agreement to split any recoveries from LCG between the

25          Estate and Gestetner as per the Trustee's proposed Chapter 11 plan.

26      The Trustee's Motion disregards glaring discrepancies and blatant fraud by the Debtor

27

28      RENEWED OPPOSITION TO MOTION OF CHAPTER 11 TRUSTEE FOR
ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER

1/16-5:56pm                    -8-

1    involving Mermelstein's **Kohn Policy**, which forms the core of Mermelstein's Opposition.

2    The facts reveal that Klein had no personal ownership of the **Kohn Policy**, and Klein's

3    improper and illegal sale of the **Kohn Policy** to LCG, coupled with the continued collection of

4    premiums up until 2023, exposes a profound breach of fiduciary duty and fraudulent conduct by

5    Klein. Mermelstein contends that Gestetner's and the Estate's claims over Mermelstein's **Kohn**

6    **Policy** are unfounded and unjust, urging the Court to reject the Trustee's *Motion* - as to the **Kohn**

7    **Policy** and rectify the grave missteps that have unjustly favored Gestetner at Mermelstein's

8    expense.

9    6.    **TRUSTEE'S MOTION: GRANTING GESTETNER UNWARRANTED SECURED**

10    **CLAIMS AND DIVISIVE RECOVERY RIGHTS  - <u>AS TO MERMELSTEIN'S</u>**

11    **<u>KOHN POLICY</u>**

12    Bradley D. Sharp, in his capacity as Chapter 11 Trustee ("Trustee") of the bankruptcy

13    estate ("Estate") of Leslie Klein, the debtor herein ("Debtor")'s *Motion for Order Approving*

14    *Settlement* ("Motion") between the Trustee and A. Gestetner Family Trust and Gestetner

15    Charitable Remainder Unitrust (together, "Gestetner")[2] basically awards Gestetner: (1) a valid and

16    perfected secured claim against the Debtor's equity interest in Life Capital Group LLC ("LCG")[3];

17    (2) an allowed secured claim against the Estate of $4,200,000.00; and (3) any recoveries the Estate

18    receives from LCG on account of Debtor's interest in LCG are to be split evenly between the

19    Estate and Gestetner and distributed pursuant to a confirmed chapter 11 plan proposed by the

20    Trustee.

21    7.    **MERMELSTEIN'S CLAIM: UNCOVERING THE FINANCIAL OBLIGATIONS**

22    **AND AMENDMENTS SURROUNDING THE KOHN POLICY**

23    As the Court is well aware, on May 2, 2023 (and then amended on 1-10-2024),

24

25    [2] The Motion did not disclose that Gestetner is Klein's brother-in-law.

26    [3] LCG's sole asset was a portfolio of at least 24 life insurance policies, purportedly worth
$64 million.

27

28

Mermelstein filed a *Proof of Claim* against the Estate [Claim 23-1], in the amount of $2,496,438.34 based on the **Kohn Memo** and the **Kohn Policy** ("**Mermelstein - Kohn POC**").[4]

According to this claim, the Mermelsteins were both the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust dated July 27, 2009 ("**Mermelstein Trust**").

On March 10, 2010, Klein, acting on behalf of The Klein Charitable Remainder Unitrust dated February 20, 1996 ("**Klein Trust**"), entered into the Memorandum of Agreement for Joint Venture ("**Kohn Memo**"). The explicit purpose of the Kohn Memo was to facilitate the premium payments for a $3,000,000.00 life insurance policy ("**Kohn Policy**") issued by American General, insuring the life of Eugene Kohn. In furtherance of this agreement, Mermelstein contributed $200,000.00 towards the purchase of the **Kohn Policy**.

Under the terms of the **Kohn Memo**, Klein committed to paying the Mermelstein Trust a total of $1,200,000.00, which included the initial $200,000.00, an additional $1,000,000.00, and all premiums paid from the policy proceeds. However, on April 30, 2021, Klein executed a *First Amendment to the Memorandum of Agreement for Joint Venture* (Kohn), which amended the recipient of the $1,200,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

These issues were addressed in Adv. No. 2:23-ap-01153-SK, wherein on 2-16-2024, the Court awarded Mermelstein a nondischargeability judgment pursuant to 11 USC § 523(a)(2)(A) (fraud), 11 USC § 523(a)(4) (fiduciary fraud, embezzlement & larceny), & 11 USC § 523(a)(6) (conversion) against Defendant in the amount of $21,737,740.70.

8.    **EXPOSING FRAUDULENT CLAIMS: KLEIN'S DECEPTIVE ROLE AND SALE OF MERMELSTEIN'S KOHN POLICY**

It is crucial to note that when Kohn passed away on April 11, 2023,[5] there was no indication that Klein had any direct financial interest in the **Kohn Policy** itself.

---

[4] A true and correct copy of the **Mermelstein - Kohn POC**  [Claim 23-1] is attached hereto as Exhibit "1" and is incorporated here by this reference.

[5] A true and correct copy of the Kohn Death Certificate is attached hereto as Exhibit "2" and is incorporated here by this reference.

1    Subsequently, on January 25, 2024, creditor David Levy ("Levy") filed his *Proof of Claim*

2    against the Estate for $386,750.00 [Claim 36] ("**Levy POC**").[6]

3    The **Levy POC** attached a curious 2001 *Memorandum Agreement* between Klein and Levy

4    dated 5-18-2010, where on  page 2 of the agreement, Klein recorded the ownership percentages of

5    the parties of the Kohn policy - policy # US0016289L - showing that Klein had no ownership in

6    the Kohn policy.

7    According to the curious 2001 *Memorandum Agreement* between Klein and Levy dated 5-

8    18-2010, [Claim 36-1], the ownership of the **Kohn Policy** was exclusively vested in the following

9    entities: (1) Klein as Trustee for Mermelstein 40%; (2) Klein as Trustee for Gestetner 50%; (3) Ira

10    Services as custodian for the David Levy IRA 8%; and (4) David & Betty Levy 2%.[7]

11    Crucially, Klein, in his individual capacity, had absolutely no ownership interest in the

12    **Kohn Policy** whatsoever. This distinction is paramount and clarifies that the **Kohn Policy** was

13    never a personal asset of Klein or the Estate. Klein's role was strictly as a fiduciary, acting on

14    behalf of the respective trusts and entities involved. This clear and unequivocal separation

15    emphasizes that any claims related to the **Kohn Policy** are entirely irrelevant to Klein's personal

16    assets. It reinforces that Klein's involvement was limited to his fiduciary duties and did not extend

17    to individual beneficiary rights.

18    Furthermore, Klein was responsible for paying the premiums on the **Kohn Policy** only up

19    until 2011. After this period, Klein appears to have transferred ownership or portions of the Kohn

20    Policy to Life Capital Group, LLC ("LCG"), with Shlomo Yehuda Rechnitz ("Rechnitz") taking

21    over the responsibility for paying the premiums from 2011 onward. This critical information was

22

23    [6] A true and correct copy of the **Levy POC** [Claim 36] is attached hereto as Exhibit "3" and
is incorporated here by this reference.

24

25    [7] According to  the **Levy POC**, and per an unsigned Amended and Restated Limited Liability
Company Agreement of LCG, Klein and Rechnitz agreed that upon the death of Kohn, the
Mermelsteins would be reimbursed the premiums that they paid, plus interest on the premiums.

26    Thereafter, Klein and Rechnitz would split the profits 50/50 of the Kohn Policy, and that the
Mermelsteins would receive their $1,200,000.00.

27

28    RENEWED OPPOSITION TO MOTION OF CHAPTER 11 TRUSTEE FOR
ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER

1  concealed from the Mermelsteins by Klein. Recent disclosures indicate that, according to an

2  unsigned *Amended and Restated Limited Liability Company Agreement* of LCG, Klein and

3  Rechnitz had an agreement wherein they would be reimbursed for the premiums they paid, plus

4  interest, upon Kohn's death. Furthermore, the agreement stipulated that Klein and Rechnitz would

5  divide the profits from the **Kohn Policy** equally, while the $1,200,000.00 would be allocated as

6  previously agreed.

7         The **Levy POC** intensifies the evidence of Klein's audacious fraudulent conduct. Despite

8  allegedly transferring the **Kohn Policy** to Life Capital Group, LLC ("LCG") in 2011, Klein

9  continued to charge premiums to Levy up until 2023. This blatant discrepancy not only exposes

10 Klein's fraudulent behavior but also underscores the invalidity of the **Kohn Policy** sale to LCG.

11 Klein's continued billing for premiums after the purported sale reveals a fundamental flaw: Klein

12 sold an asset he never truly owned in his name. This fraudulent action further invalidates the sale

13 and reinforces the necessity for rectification of the claims related to the **Kohn Policy**.

14 9.    **CHALLENGING THE TRUSTEE'S MOTION: INVALID CLAIMS AND**

15       **UNWARRANTED BENEFITS RELATED TO MERMELSTEIN'S  KOHN POLICY**

16        Given that Klein had no personal interest in the **Kohn Policy**, the sale of the **Kohn Policy**

17 to LCG was not only improper but also illegal. Mermelstein firmly asserts that the Estate

18 possesses no legitimate claim to the **Kohn Policy**. Consequently, Mermelstein objects to the

19 Trustee's *Motion* on the following grounds:

20        Invalid Secured Claim: The Trustee's *Motion* to grant Gestetner a valid and perfected

21 secured claim against the Debtor's equity interest in LCG should be declared invalid with respect

22 to Mermelstein's **Kohn Policy**. Since Klein, in his individual capacity, had no stake in the **Kohn**

23 **Policy**, the Estate's claim over this asset is untenable.

24        Secured Claim Against the Estate: The Trustee's proposed secured claim of $4,200,000.00

25 against the Estate should be excluded from any consideration involving Mermelstein's **Kohn**

26 **Policy**. The Estate's involvement in the **Kohn Policy** is non-existent, making any such claim

27

28

1    unfounded and inappropriate.

2    Distribution of Recoveries: Any recoveries that the Estate obtains from LCG related to the

3    Debtor's interest in LCG should not be divided equally between the Estate and Gestetner. Since

4    the Estate has no valid interest in Mermelstein's **Kohn Policy**, such a division would be unjust

5    and erroneous.

6    10.    **RECTIFYING GESTETNER'S WINDFALL AT THE EXPENSE OF**

7           **MERMELSTEIN'S  KOHN POLICY**

8           Mermelstein's Opposition highlights the urgent need to address Gestetner's unjust

9    enrichment at Mermelstein's expense concerning the **Kohn Policy**. The current Motion fails to

10   accurately reflect the interests involved and must be revised to align with the legal and fiduciary

11   realities.

12          Given the compelling evidence of Klein's fraud and misconduct regarding the **Kohn**

13   **Policy**, the Court must reject the Trustee's Motion as to Mermelstein's **Kohn Policy**. The stark

14   discrepancies between Klein's purported sale of the **Kohn Policy** and his continued collection of

15   premiums until 2023 not only reveal the fraudulent nature of his actions but also undermine the

16   validity of the sale to LCG. The Motion unjustly rewards Gestetner with a secured claim and

17   recovery rights that are disconnected from the true ownership of the **Kohn Policy**. It is imperative

18   for the Court to uphold legal integrity and rectify these grave injustices by excluding - or by

19   carving out - the **Kohn Policy** from Gestetner's claims.

20   11.    **CONDITIONAL WITHDRAWAL: MERMELSTEIN'S OPPOSITION**

21          **CONTINGENT ON THE RELEASE OF THE KOHN POLICY FUNDS**

22          Should the Trustee decide to release the funds from the **Kohn Policy** to Mermelstein,

23   acknowledging that these funds do not rightfully belong to the Estate, Mermelstein is prepared to

24   withdraw this opposition. The acknowledgment that the **Kohn Policy** is not part of the Estate's

25   assets would effectively address the core issue of this dispute, aligning with Mermelstein's

26   position. In such a case, Mermelstein's opposition would be retracted, reflecting a resolution of the

27

28

1    matter in accordance with the true ownership and rightful claims concerning the **Kohn Policy**.

2    12.    **URGENT CALL FOR TRUSTEE ACCOUNTABILITY: ADDRESSING**

3          **OVERSIGHTS IN ASSET RECOVERY**

4          a.    **Trustee's Neglect in Pursuing Significant Claims**

5          The Trustee's glaring failure to initiate legal action against Life Capital Group (LCG) and

6    Shlomo Yehuda Rechnitz, despite controlling assets potentially worth $64 million, raises serious

7    fiduciary concerns. This inaction, particularly given previous objections regarding the impartiality

8    of the Trustee's law firm Pachulski Stang Ziehl & Jones LLP, signals potential conflicts of interest

9    influencing decision-making to the detriment of the estate and its creditors, including Mermelstein.

10         b.    **Selective Enforcement and Its Detrimental Effects**

11              i.    **Compromised Justice through Preferential Treatment**

12         Rather than pursuing a significant avenue for asset recovery, the Trustee has

13   inappropriately prioritized settling claims that benefit Gestetner, utilizing interests in the LCG

14   policies. This selective approach not only skews the equitable treatment of all parties involved in

15   the bankruptcy but also undermines the integrity of the entire proceedings.

16         Despite the availability of a lawsuit filed by Klein against LCG and Rechnitz detailing

17   fraudulent transfers and fiduciary breaches (LASC # 22STCV18787), , which was settled shortly

18   after its initiation, the Trustee has shown a disturbing lack of initiative. This lawsuit suggested

19   potential recoveries of over $64 million, yet the Trustee's passivity has potentially cost the estate

20   substantial assets, failing the creditors who stand to benefit from these recoveries.

21         Given these severe oversights, it is crucial that the court instructs the Trustee to correct

22   these failings by actively pursuing the claims against LCG and Rechnitz. The Trustee's current

23   passive strategy not only fails the creditors but also jeopardizes the core principles of bankruptcy

24   administration. Immediate, assertive measures are necessary to ensure all potential assets are

25   aggressively recovered to maximize returns to the estate's creditors.

26         While the Trustee's Fourth Status Report outlines various activities, it notably falls short in

27

28

1  delivering tangible outcomes crucial for creditor confidence. Now, more than ever, the focus must

2  shift from laying procedural groundwork to executing substantive actions—especially prosecuting

3  the significant state court lawsuit against Klein and thoroughly investigating the alleged Ponzi

4  scheme involving LCG and Rechnitz. Prioritizing these critical recovery efforts will be essential

5  for safeguarding the financial interests of all creditors.

6        Acknowledging the complexities of this case, it is time to move beyond foundational

7  efforts toward real, impactful progress. Mermelstein urges a strategic refocus towards actionable

8  outcomes, ensuring the Trustee capitalizes on opportunities to enhance the estate's value

9  effectively and efficiently.

10

11 DATED:        January 16, 2025        LAW OFFICE OF BARUCH C. COHEN
                                        A Professional Law Corporation
12
                                        By ____/S/ Baruch C. Cohen_____
13                                      Baruch C. Cohen, Esq.
                                        *Attorney For Creditors Robert & Esther Mermelstein*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1.      The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2.      This Declaration is in support of the **ROBERT & ESTHER MERMELSTEIN'S RENEWED OPPOSITION TO MOTION OF CHAPTER 11 TRUSTEE FOR ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER FAMILY TRUST AND GESTETNER CHARITABLE REMAINDER UNITRUST PURSUANT TO BANKRUPTCY RULE 9019** filed by Robert & Esther Mermelstein.

**EXPOSING THE TRUTH: THE KOHN MEMORANDUM UNVEILS GESTETNER'S REAL ROLE**

My previous opposition has illuminated critical aspects of Klein's fraudulent activities, particularly in relation to my **Kohn Policy**, leading to Gestetner's unjust enrichment. The pivotal document in this exposure, the Kohn Memorandum of Agreement for Joint Venture ("**Kohn Memo**"), dated March 1, 2010, crucially indicates that Gestetner was not merely a lender as has been misleadingly presented in the proceedings. Instead, this document categorically reveals that Gestetner was actively purchasing Klein's policies.

The Kohn Memo serves as the strongest, and potentially the only, concrete evidence of Gestetner's actual involvement with his brother-in-law, Klein. It categorically states Gestetner's role not as a lender, but as an investor—a critical distinction that shifts the narrative from one of passive loan provision to active investment. This distinction is fundamental, as it challenges the current portrayal of Gestetner's financial engagements and aligns his actions with those of investors like me, who similarly purchased policies rather than merely lending funds.

//

//

**UNMASKING THE DEBTOR'S FRAUD: THE UNJUST ENRICHMENT OF**

**GESTETNER - <u>AS TO MERMELSTEIN'S KOHN POLICY</u>**

3.      The Court is confronted with a critical issue: the Debtor's fraudulent manipulation of my

**Kohn Policy**, which has led to the unjust enrichment of Gestetner. The Trustee's Motion,

which is glaringly deficient in both evidentiary support and a rigorous analysis of

Gestetner's claims, offers Gestetner a series of dubious and unwarranted benefits. This

motion, lacking substantive validation of Gestetner's proofs of claim, disproportionately

favors Gestetner by granting them advantages that are not only questionable but also

fundamentally unjust as to Mermelstein's **Kohn Policy**. Such a motion demands

immediate and thorough scrutiny to rectify the evident manipulation and prevent the

further enrichment of Gestetner at my expense. Specifically, this Motion seeks to grant

Gestetner:

a.      <u>Legitimize a Secured Claim</u>: a valid and perfected secured claim against the

Debtor's equity interest in LCG;

b.      <u>Authorize a Substantial Claim</u>: an allowed secured claim against the Estate totaling

$4,200,000.00; and

c.      <u>Divide Recoveries</u>: an agreement to split any recoveries from LCG between the

Estate and Gestetner as per the Trustee's proposed Chapter 11 plan.

4.      The Trustee's Motion disregards glaring discrepancies and blatant fraud by the Debtor

involving the **Kohn Policy**, which forms the core of my Opposition.

5.      The facts reveal that Klein had no personal ownership of the **Kohn Policy**, and Klein's

improper and illegal sale of the **Kohn Policy** to LCG, coupled with the continued

collection of premiums up until 2023, exposes a profound breach of fiduciary duty and

fraudulent conduct by Klein. Gestetner's and the Estate's claims over the **Kohn Policy** are

unfounded and unjust, urging the Court to reject the Trustee's *Motion* - as to the **Kohn**

**Policy** and rectify the grave missteps that have unjustly favored Gestetner at my expense.

**TRUSTEE'S MOTION: GRANTING GESTETNER UNWARRANTED SECURED CLAIMS AND DIVISIVE RECOVERY RIGHTS - <u>AS TO MERMELSTEIN'S KOHN POLICY</u>**

6.      Bradley D. Sharp, in his capacity as Chapter 11 Trustee ("Trustee") of the bankruptcy estate ("Estate") of Leslie Klein, the debtor herein ("Debtor")'s *Motion for Order Approving Settlement* ("Motion") between the Trustee and A. Gestetner Family Trust and Gestetner Charitable Remainder Unitrust (together, "Gestetner")[8] basically awards Gestetner: (1) a valid and perfected secured claim against the Debtor's equity interest in Life Capital Group LLC ("LCG")[9]; (2) an allowed secured claim against the Estate of $4,200,000.00; and (3) any recoveries the Estate receives from LCG on account of Debtor's interest in LCG are to be split evenly between the Estate and Gestetner and distributed pursuant to a confirmed chapter 11 plan proposed by the Trustee.

**MY CLAIM: UNCOVERING THE FINANCIAL OBLIGATIONS AND AMENDMENTS SURROUNDING THE KOHN POLICY**

7.      As the Court is well aware, on May 2, 2023 (and then amended on 1-10-2024), I filed a *Proof of Claim* against the Estate [Claim 23-1], in the amount of $2,496,438.34 based on the **Kohn Memo** and the **Kohn Policy** ("**Mermelstein - Kohn POC**").[10]

8.      According to this claim, me and my wife were both the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust dated July 27, 2009 ("**Mermelstein Trust**").

9.      On March 10, 2010, Klein, acting on behalf of The Klein Charitable Remainder Unitrust dated February 20, 1996 ("**Klein Trust**"), entered into the Memorandum of Agreement for Joint Venture ("**Kohn Memo**"). The explicit purpose of the Kohn Memo was to facilitate

---

[8] The Motion did not disclose that Gestetner is Klein's brother-in-law.

[9] LCG's sole asset was a portfolio of at least 24 life insurance policies, purportedly worth $64 million.

[10] A true and correct copy of the **Mermelstein - Kohn POC** [Claim 23-1] is attached hereto as Exhibit "1" and is incorporated here by this reference.

the premium payments for a $3,000,000.00 life insurance policy ("**Kohn Policy**") issued by American General, insuring the life of Eugene Kohn. In furtherance of this agreement, I contributed $200,000.00 towards the purchase of the **Kohn Policy**.

10.    Under the terms of the **Kohn Memo**, Klein committed to paying the Mermelstein Trust a total of $1,200,000.00, which included the initial $200,000.00, an additional $1,000,000.00, and all premiums paid from the policy proceeds. However, on April 30, 2021, Klein executed a *First Amendment to the Memorandum of Agreement for Joint Venture* (Kohn), which amended the recipient of the $1,200,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

11.    These issues were addressed in Adv. No. 2:23-ap-01153-SK, wherein on 2-16-2024, the Court awarded Mermelstein a nondischargeability judgment pursuant to 11 USC § 523(a)(2)(A) (fraud), 11 USC § 523(a)(4) (fiduciary fraud, embezzlement & larceny), & 11 USC § 523(a)(6) (conversion) against Defendant in the amount of $21,737,740.70.

**EXPOSING FRAUDULENT CLAIMS: KLEIN'S DECEPTIVE ROLE AND SALE OF THE KOHN POLICY**

12.    It is crucial to note that when Kohn passed away on April 11, 2023,[11] there was no indication that Klein had any direct financial interest in the **Kohn Policy** itself.

13.    Subsequently, on January 25, 2024, creditor David Levy ("Levy") filed his *Proof of Claim* against the Estate for $386,750.00 [Claim 36] ("**Levy POC**").[12]

14.    The **Levy POC** attached a curious 2001 *Memorandum Agreement* between Klein and Levy dated 5-18-2010, where on page 2 of the agreement, Klein recorded the ownership percentages of the parties of the Kohn policy - policy # US0016289L - showing that Klein had no ownership in the Kohn policy.

---

[11] A true and correct copy of the Kohn Death Certificate is attached hereto as Exhibit "2" and is incorporated here by this reference.

[12] A true and correct copy of the **Levy POC** [Claim 36] is attached hereto as Exhibit "3" and is incorporated here by this reference.

15.    According to the curious 2001 *Memorandum Agreement* between Klein and Levy dated 5-18-2010, [Claim 36-1], the ownership of the **Kohn Policy** was exclusively vested in the following entities: (1) Klein as Trustee for Mermelstein 40%; (2) Klein as Trustee for Gestetner 50%; (3) Ira Services as custodian for the David Levy IRA 8%; and (4) David & Betty Levy 2%.[13]

16.    Crucially, Klein, in his individual capacity, had absolutely no ownership interest in the **Kohn Policy** whatsoever. This distinction is paramount and clarifies that the **Kohn Policy** was never a personal asset of Klein or the Estate. Klein's role was strictly as a fiduciary, acting on behalf of the respective trusts and entities involved. This clear and unequivocal separation emphasizes that any claims related to the **Kohn Policy** are entirely irrelevant to Klein's personal assets. It reinforces that Klein's involvement was limited to his fiduciary duties and did not extend to individual beneficiary rights.

17.    Furthermore, Klein was responsible for paying the premiums on the **Kohn Policy** only up until 2011. After this period, Klein appears to have transferred ownership or portions of the Kohn Policy to Life Capital Group, LLC ("LCG"), with Shlomo Yehuda Rechnitz ("Rechnitz") taking over the responsibility for paying the premiums from 2011 onward. This critical information was concealed from the Mermelsteins by Klein. Recent disclosures indicate that, according to an unsigned *Amended and Restated Limited Liability Company Agreement* of LCG, Klein and Rechnitz had an agreement wherein they would be reimbursed for the premiums they paid, plus interest, upon Kohn's death. Furthermore, the agreement stipulated that Klein and Rechnitz would divide the profits from the **Kohn Policy** equally, while the $1,200,000.00 would be allocated as previously agreed.

18.    The **Levy POC** intensifies the evidence of Klein's audacious fraudulent conduct. Despite

---

[13] According to the **Levy POC**, and per an unsigned Amended and Restated Limited Liability Company Agreement of LCG, Klein and Rechnitz agreed that upon the death of Kohn, the Mermelsteins would be reimbursed the premiums that they paid, plus interest on the premiums. Thereafter, Klein and Rechnitz would split the profits 50/50 of the Kohn Policy, and that the Mermelsteins would receive their $1,200,000.00.

1    allegedly transferring the **Kohn Policy** to Life Capital Group, LLC (LCG) in 2011, Klein

2    continued to charge premiums to Levy up until 2023. This blatant discrepancy not only

3    exposes Klein's fraudulent behavior but also underscores the invalidity of the **Kohn Policy**

4    sale to LCG. Klein's continued billing for premiums after the purported sale reveals a

5    fundamental flaw: Klein sold an asset he never truly owned in his name. This fraudulent

6    action further invalidates the sale and reinforces the necessity for rectification of the claims

7    related to the **Kohn Policy**.

8    **CHALLENGING THE TRUSTEE'S MOTION: INVALID CLAIMS AND**

9    **UNWARRANTED BENEFITS RELATED TO THE KOHN POLICY**

10    19.    Given that Klein had no personal interest in the **Kohn Policy**, the sale of the **Kohn Policy**

11         to LCG was not only improper but also illegal. I firmly assert that the Estate possesses no

12         legitimate claim to the **Kohn Policy**. Consequently, I object to the Trustee's *Motion* on the

13         following grounds:

14         a.    Invalid Secured Claim: The Trustee's *Motion* to grant Gestetner a valid and

15               perfected secured claim against the Debtor's equity interest in LCG should be

16               declared invalid with respect to the **Kohn Policy**. Since Klein, in his individual

17               capacity, had no stake in the **Kohn Policy**, the Estate's claim over this asset is

18               untenable.

19         b.    Secured Claim Against the Estate: The Trustee's proposed secured claim of

20               $4,200,000.00 against the Estate should be excluded from any consideration

21               involving the **Kohn Policy**. The Estate's involvement in the **Kohn Policy** is

22               non-existent, making any such claim unfounded and inappropriate.

23         c.    Distribution of Recoveries: Any recoveries that the Estate obtains from LCG

24               related to the Debtor's interest in LCG should not be divided equally between the

25               Estate and Gestetner. Since the Estate has no valid interest in the **Kohn Policy**,

26               such a division would be unjust and erroneous.

27

28
_____
RENEWED OPPOSITION TO MOTION OF CHAPTER 11 TRUSTEE FOR
ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER

**TRUSTEE'S OVERSIGHT: IGNORING LCG AND RECHNITZ WHILE UNJUSTLY FAVORING GESTETNER**

20.     To this date, the Trustee has conspicuously failed to file a suit against Life Capital Group (LCG) and Shlomo Yehuda Rechnitz for the recovery of LCG's substantial portfolio, which includes at least 24 life insurance policies valued at an estimated $64 million. This glaring omission comes after I raised serious concerns about the impartiality of the Trustee's law firm, Pachulski Stang Ziehl & Jones LLP, during their employment application. I had previously objected to the firm's neutrality due to its past representation of Rechnitz, questioning whether Pachulski could be truly disinterested in taking action against LCG and Rechnitz.

21.     Despite these concerns, the Trustee's inaction has persisted, ignoring what can only be described as the proverbial "pink elephant" in the room of this bankruptcy case. Instead of addressing this critical issue, the Trustee has focused on awarding Gestetner and the Estate unjust interests in the LCG policies (as to the **Kohn Policy**). This oversight not only highlights a significant failure in fiduciary responsibility but also underscores the questionable motivations behind the Trustee's decisions, further complicating the case and skewing justice in favor of select parties.

**RECTIFYING GESTETNER'S WINDFALL AT THE EXPENSE OF THE KOHN POLICY**

22.     My Opposition highlights the urgent need to address Gestetner's unjust enrichment at mys expense concerning the **Kohn Policy**. The current Motion fails to accurately reflect the interests involved and must be revised to align with the legal and fiduciary realities.

23.     Given the compelling evidence of Klein's fraud and misconduct regarding the **Kohn Policy**, the Court must reject the Trustee's Motion as to the **Kohn Policy**. The stark discrepancies between Klein's purported sale of the **Kohn Policy** and his continued collection of premiums until 2023 not only reveal the fraudulent nature of his actions but

1   also undermine the validity of the sale to LCG. The Motion unjustly rewards Gestetner

2   with a secured claim and recovery rights that are disconnected from the true ownership of

3   the **Kohn Policy**. It is imperative for the Court to uphold legal integrity and rectify these

4   grave injustices by excluding - or by carving out - the **Kohn Policy** from Gestetner's

5   claims.

6   **CONDITIONAL WITHDRAWAL: MY OPPOSITION CONTINGENT ON THE**

7   **RELEASE OF THE KOHN POLICY FUNDS**

8   24.    Should the Trustee decide to release the funds from the **Kohn Policy** to me,

9   acknowledging that these funds do not rightfully belong to the Estate, I am prepared to

10  withdraw this opposition. The acknowledgment that the **Kohn Policy** is not part of the

11  Estate's assets would effectively address the core issue of this dispute, aligning with my

12  position. In such a case, my opposition would be retracted, reflecting a resolution of the

13  matter in accordance with the true ownership and rightful claims concerning the **Kohn**

14  **Policy**.

15  I declare under penalty of perjury under the laws of the United States, States of California

16  and of New York that the foregoing is true and correct.

17  Executed January 16, 2025, at Brooklyn, New York

18  By ____/S/ Robert Mermelstein_____
    ROBERT MERMELSTEIN
19

20

21

22

23

24

25

26

27

28

**EXHIBIT "1"**

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | | |
|---|---|---|---|
| 1. Who is the current creditor? | ROBERT & ESTHER MERMELSTEIN | | |
| | Name of the current creditor (the person or entity to be paid for this claim) | | |
| | Other names the creditor used with the debtor | | |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? | | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | | **Where should payments to the creditor be sent?** (if different) |
| | BARUCH C. COHEN, ESQ. | | |
| | Name | | Name |
| | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number        Street | | Number        Street |
| | LOS ANGELES        CA        90010 | | |
| | City        State        ZIP Code | | City        State        ZIP Code |
| | Contact phone  323-937-4501 | | Contact phone |
| | Contact email  baruchcohen@baruchcohenesq.com | | Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | | |
| 4. Does this claim amend one already filed? | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) 23 | | Filed on  05/02/2023<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? | | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   K   O   H   N

**7. How much is the claim?**   $_____2,496,438.34 .   **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**  $_____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/10/2024
                  MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Baruch C. Cohen
            First name            Middle name            Last name

Title       ATTORNEY FOR DAVID BERGER

Company     LAW OFFICE OF BARUCH C. COHEN, APLC
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     4929 WILSHIRE BOULEVARD, SUITE 940
            Number        Street

            LOS ANGELES              CA        90010
            City                     State     ZIP Code

Contact phone   323-937-4501         Email  baruchcohen@baruchcohenesq.com

## DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4. On 3-10-2010, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Kohn Memo").[1]

5. The purpose of the Kohn Memo, was to purchase a $3,000,000.00 Life Insurance Policy ("Kohn Policy"); American General on the life of Eugene Kohn  ("Kohn").

6. In furtherance of the Kohn Memo, I paid Klein $200,000.00 towards the purchase of the Kohn Policy.

7. Per the Kohn Memo, Klein promised to pay the Mermelstein Trust $1,200,000.00 ($200,000 and $1,000,000 and all premiums paid of the proceeds).

8. On 4-30-2021, Klein executed a First Amendment to the  Memorandum of Agreement for Joint Venture (Kohn), changing the recipient of the $1,200,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9. Klein paid premiums of the Kohn Policy up to 2011. Thereafter, Klein apparently sold portions or the entirety of the Kohn Policy to Life Capital Group, LLC ("LCG"), where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Kohn Policy premiums from

---

[1]A true and correct copy of the Kohn Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2]A true and correct copy of the First Amendment to the Kohn Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1    2011 onwards. Klein concealed this information from me.

2    10.    According to information recently received by me, an unsigned Amended and Restated

3    Limited Liability Company Agreement of Life Capital Group, LLC,[3] Klein and Rechnitz

4    agreed that upon the death of Kohn, Klein and Rechnitz would be reimbursed the premiums

5    that they paid, plus interest on the premiums. Thereafter, Klein and Rechnitz would split the

6    profits 50/50 of the Kohn Policy, and that I would receive my $1,200,000.00.

7    11.    As far as I know, Kohn is still alive. Because of Klein's deceptions and concealments, I am

8    filing this Proof of Claim against his estate - in the event of Kohn's death, as to my

9    entitlement.

10    **INTEREST CALCULATION**

11    12.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $1,000,000.00 from

12    3-10-2010 until the petition date of 2-22-2023 comes to $1,296,438.34 (4732 days at $$273.97

13    interest/day). The total amount due as of the filing date was $2,496,438.34.

14

15    I declare under penalty of perjury under the laws of the United States, States of California and

16  of New York that the foregoing is true and correct.

17    Executed January 10, 2024, at Brooklyn, New York

18            By   /S/ Robert Mermelstein
                 ROBERT MERMELSTEIN

19

20

21

22

23

24

25

26

---

27    [3]A true and correct copy of the Amended and Restated Limited Liability Company Agreement of Life Capital Group, LLC is attached hereto as Exhibit "3" and is incorporated herein by this

28  reference.

## Kohn

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|---|---|---|---|---|---|
| $1,200,000.00 | 3/10/2010 | $273.97 | 4732 | $1,296,438.34 | $2,496,438.34 |

**EXHIBIT "1"**

# MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:     **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:     **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I.  INTRODUCTION

Section 1.1
    The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General on the life of **EUGENE KOHN** .

    We have reached an agreement on the essential elements of the joint venture.  This document memorializes our agreement.

    This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II.  PURPOSE OF JOINT VENTURE

Section 2.1
    The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III.  DUTIES AND OBLIGATIONS

Section 3.1
    <u>Duties of the Parties</u>: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force.  In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV.  CAPITAL CONTRIBUTIONS

Page 1 of 4

Section 4.1
    <u>Capital Contributions</u>:  Each of us has contributed the necessary capital contribution.

## ARTICLE V.  MANAGEMENT STRUCTURE

Section 5.1
    <u>Management by Committee</u>:  The joint venture shall be managed by Leslie Klein.
Trustee.

## ARTICLE VI.  ASSIGNMENT

Section 6.1
    Each party shall have the right to assign his interest.

## ARTICLE VII.  DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1
    <u>Distribution of Profits</u>:  Distribution shall be as follows:

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009
shall receive $200,000 and $1,000,000 and all premiums paid of the proceeds.**

**The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII.  TERM

Section 8.1
    <u>Term and Termination</u>:  This Agreement shall expire upon the death of **EUGENE KOHN**

## ARTICLE IX.  CONFIDENTIALITY

Section 9.1
    <u>Definitions</u>:  For the purpose of this Agreement, "Proprietary Information" shall include
all information designated by any joint venturer, either orally or in writing, as confidential or
proprietary, or that reasonably would be considered proprietary or confidential to the business
contemplated by this Agreement.

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

<u>Effective Date</u>: The effective date of this Agreement shall be March 1, 2010

### *SIGNATURES APPEAR ON THE FOLLOWING PAGE*

Page 3 of 4

**THE MERMELSTEIN CHARITABLE REMAINDER
UNITRUST DATED July 27, 2009**

DATED: 3/1/2010                    By: _____

LESLIE KLEIN  - Trustee


Joint Venturers



DATED: 3/1/01.                    **THE KLEIN CHARITABLE REMAINDER
UNITRUST dated 2-20-1996**


By: _____

**KENNETH KLEIN, Trustee**
Joint Venturer


**Page 4 of  4**

**EXHIBIT "2"**

## FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE


Joint Venturer:        **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**


Joint Venturer:        **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General on the life of **EUGENE KOHN**


**I, LESLIE KLEIN, state as follows:**

**That I transfer the interest of THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

Dated: _4/30/2021_

_____
**LESLIE KLEIN**
                        **Trustee of
The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**


Page 1 of 1

**EXHIBIT "2"**

# STATE OF NEW JERSEY

A0018599155

# CERTIFICATE OF DEATH

**STATE FILE NUMBER**

20230021350

DECEASED NAME

**EUGENE KOHN**

DATE OF BIRTH | SEX | DATE OF DEATH
*02/06/1930* | *MALE* | *04/11/2023*

PLACE OF DEATH | COUNTY OF DEATH
**LAKEWOOD TOWNSHIP** | **OCEAN**

RESIDENCE ADDRESS | SOCIAL SECURITY NUMBER
**32 GREEN COVE ROAD** | *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*

MUNICIPALITY OF RESIDENCE | COUNTY OF RESIDENCE
**LAKEWOOD TOWNSHIP** | **OCEAN**

DOMESTIC STATUS

**WIDOWED**

MANNER OF DEATH: **NATURAL**

CAUSE OF DEATH:
CARDIAC ARREST
ACUTE RESPIRATORY FAILURE, PNEUMONIA
ATRIAL FIBRILLATION
DEMENTIA

DATE ISSUED: **APRIL 14, 2023**

DATE FILED WITH
REGISTRAR: 04/14/2023 | AMENDED DATE:

ISSUED BY:
*Spotswood Borough*

*Christina DeVito, Local Registrar*

This is to certify that the above is correctly
copied from a record on file in my office.
*Certified copy not valid unless the raised
Great Seal of the State of New Jersey
or the seal of the issuing municipality
or county, is affixed hereon.*





Tiffany Drennon
Acting State Registrar
Office of Vital Statistics and Registry

REG-42A
NOV 22

**EXHIBIT "3"**

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

Debtor 1   Leslie Klein

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:   **23–10990**

</td><td>

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

1/25/2024

**Kathleen J. Campbell, Clerk**

</td></tr>
</table>

Official Form 410
# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | David Levy<br><br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>David Levy<br>Name<br><br>2567 Larchmont Rd<br>Beachwood, OH 44122<br><br>Contact phone   3236462496<br>Contact email   idlevy@yahoo.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):      **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Contact phone<br>Contact email |
| **4. Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known)    Filed on     MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? |

Official Form 410       Proof of Claim       page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| **7. How much is the claim?** | $ 386750.00     **Does this amount include interest or other charges?**<br>☒ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Venture agreement to purchase and maintain a life insurance policy until policy payout (see attached documents).. |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☒ No<br>☐ Yes. The claim is secured by a lien on property.<br>   **Nature of property:**<br>   ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.<br>   ☐ Motor vehicle<br>   ☐ Other. Describe: _____<br><br>   **Basis for perfection:** _____<br><br>   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>   **Value of property:** $ _____<br><br>   **Amount of the claim that is secured:** $ _____<br><br>   **Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>   **Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>   **Annual Interest Rate** (when case was filed) _____ %<br><br>   ☐ Fixed<br>   ☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☒ No<br>☐ Yes. Identify the property: _____ |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    1/25/2024
MM / DD / YYYY

/s/  Israel David Levy
Signature

Print the name of the person who is completing and signing this claim:

Name    Israel David Levy
First name    Middle name    Last name

Title    _____

Company    _____
Identify the corporate servicer as the company if the authorized agent is a servicer

Address    2567 Larchmont
Number   Street
Beachwood, OH 44122
City   State   ZIP Code

Contact phone    3236462496    Email    idlevy@yahoo.com

Official Form 410    Proof of Claim    page 3

January 25, 2024

PROOF OF CLAIM DOCUMENT SUMMARY

Case #:  2:23-bk-10990-DS

Please note that David Levy was informed by a third party on January 22, 2024 that Leslie Klein filed for bankruptcy in February 2023. Hence the tardiness of this proof of claim filing.

With this proof of claim documentation, David Levy is claiming $386,750 from Leslie Klein. Breakdown of these monies is as follows.

Attachment 1:  Copy of venture agreement between Leslie Klein and David (and Betty) Levy, designating a total 10% (8% + 2%) share in the insurance policy for Eugene Kohn, effective May 18, 2010.

Attachment 2:  Letter from Leslie Klein to David Levy, dated 6/10/2010, confirming the investment of $50,000 to secure a 10% share in the insurance policy for Eugene Kohn.

Attachment 3:  Copies of the insurance premium invoices from Leslie Klein to David Levy. Each semi-annual notice reflected a $3470 premium to be paid by David Levy.  23 such premiums were paid by David Levy for a total of $86,750.  Premium payments stopped with the death of Eugene Kohn in April 2023.

Attachment 4: Copy of pertinent sections of the American General Life insurance policy, # US0016289L, for Eugene Kohn.  Said policy was for $3,000,000. A 10% share would be $300,000, to be paid to David {and Betty} Levy upon the death of Eugene Kohn.  Additionally, option 3 stipulates the reimbursement of all premiums paid.

## <u>MEMORANDUM OF AGREEMENT FOR JOINT VENTURE</u>

Joint Venturer:       **LESLIE KLEIN Trustee for the MERMELSTEIN CHARITABLE REMAINDER UNITRUST**

Joint Venturer:       **LESLIE KLEIN Trustee for the GESTESTNER CHARITABLE REMAINDER UNITRUST**

Joint Venturer:       **IRA SERVICES as custodian for the DAVID LEVY IRA**

Joint Venturer:       **DAVID LEVY and BETTY LEVY**

### ARTICLE I.  INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; **AMERICAN GENERAL** Policy Number: US 0016289L on the life of **EUGENE KOHN.**

We have reached an agreement on the essential elements of the joint venture.  This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

### ARTICLE II.  PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

### ARTICLE III.  DUTIES AND OBLIGATIONS

Section 3.1

<u>Duties of the Parties</u>: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force.  In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

### ARTICLE IV.  CAPITAL CONTRIBUTIONS

Page 1 of  4

Section 4.1
    <u>Capital Contributions</u>:  Each of us has contributed the necessary capital contribution.

## ARTICLE V.  MANAGEMENT STRUCTURE

Section 5.1
    <u>Management by Committee</u>:  The joint venture shall be managed by Leslie Klein.
Trustee.

## ARTICLE VI.  ASSIGNMENT

Section 6.1
    Each party shall have the right to assign his interest.

## ARTICLE VII.  DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1
    <u>Distribution of Profits</u>:  Distribution shall be as follows:

**LESLIE KLEIN Trustee for the MERMELSTEIN CHARITABLE REMAINDER
UNITRUST** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **40%**

**LESLIE KLEIN Trustee for the GESTESTNER CHARITABLE REMAINDER
UNITRUST** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **50 %**

**IRA SERVICES as custodian for the DAVID LEVY IRA** . . . . . . . . . . . . . . . . . . . . . . . **8%**

**DAVID LEVY and BETTY LEVY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2%**

## ARTICLE VIII.  TERM

Section 8.1
    <u>Term and Termination</u>: This Agreement shall expire upon the death of **EUGENE KOHN**

## ARTICLE IX.  CONFIDENTIALITY

Section 9.1
    <u>Definitions</u>:  For the purpose of this Agreement, "Proprietary Information" shall include
all information designated by any joint venturer, either orally or in writing, as confidential or
proprietary, or that reasonably would be considered proprietary or confidential to the business
contemplated by this Agreement.

## X.  TRANSFERS

Section 10.1
    Any transfer or assignment of any party's interest in the joint venture or its profits shall be
subject to the rights and obligations under this Agreement except with the express written
consent of the other parties.

## XI.  ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement  shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII.  INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution.  If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII.  EFFECTIVE DATE AND TERM

Section 13.1

Effective Date:  The effective date of this Agreement shall be **May 18, 2010**

*SIGNATURES APPEAR ON THE FOLLOWING PAGE*

Page 3 of  4

DATED: _____     _____
                             LESLIE KLEIN Trustee for the MERMELSTEIN
                             CHARITABLE REMAINDER UNITRUST


DATED: _____     _____
                             LESLIE KLEIN Trustee for the GESTESTNER
                             CHARITABLE REMAINDER UNITRUST


DATED: _____     _____
                             IRA SERVICES as custodian for the DAVID LEVY
                             IRA


DATED: _____     _____
                             DAVID LEVY and BETTY LEVY


*Signatures on file with Leslie Klein. 5/13/2010*

Page 4 of 4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010

A true and correct copy of the foregoing document entitled: **ROBERT & ESTHER MERMELSTEIN'S RENEWED OPPOSITION TO MOTION OF CHAPTER 11 TRUSTEE FOR ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND A. GESTETNER FAMILY TRUST AND GESTETNER CHARITABLE REMAINDER UNITRUST PURSUANT TO BANKRUPTCY RULE 9019; DECLARATION OF ROBERT MERMELSTEIN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/16/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached

☐ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:  On 1/16/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 1/16/2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/16/2025 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|-----------|----------------------|---------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Page 1

| | |
|---|---|
| Simon Aron (DF) | saron@wrslawyers.com, moster@wrslawyers.com; jlee@wrslawyers.com |
| Reem J Bello | rbello@goeforlaw.com, kmurphy@goeforlaw.com |
| Ron Bender (IP) | rb@lnbyg.com |
| Michael Jay Berger | michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com; michael.berger@ecf.inforuptcy.com |
| Greg P Campbell | ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com; gcampbell@aldridgepite.com |
| Theron S Covey | tcovey@raslg.com, sferry@raslg.com |
| Jeffrey W Dulberg (PL) | jdulberg@pszjlaw.com |
| Dane W Exnowski | dane.exnowski@mccalla.com, bk.ca@mccalla.com, mccallaecf@ecf.courtdrive.com |
| Todd S. Garan (CR) | ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com |
| Robert P Goe | kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com |
| Michael I. Gottfried | mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com |
| Brandon J Iskander | biskander@goeforlaw.com, kmurphy@goeforlaw.com |
| Michael S Kogan (IP) | mkogan@koganlawfirm.com |
| John W Lucas (TR) | jlucas@pszjlaw.com, ocarpio@pszjlaw.com |
| Armen Manasserian (PL) | armen@cym.law, jennifer@cym.law |
| Ron Maroko | ron.maroko@usdoj.gov |
| Kirsten Martinez (CR) | Kirsten.Martinez@bonialpc.com, Notices.Bonial@ecf.courtdrive.com |
| Steven M Mayer (IP) | smayer@mayerlawla.com |
| Christopher M McDermott (CR) | ch11ecf@aldridgepite.com, CMM@ecf.inforuptcy.com; cmcdermott@aldridgepite.com |
| Krikor J Meshefejian | kjm@lnbyg.com |
| Kenneth Misken (LA) | Kenneth.M.Misken@usdoj.gov |
| Jeffrey P Nolan (TR) | jnolan@pszjlaw.com |
| Eric J Olson (DF) | eric@ejolsonlaw.com |
| Jeffrey N Pomerantz (TR) | jpomerantz@pszjlaw.com |
| Brian A Procel (PL) | bprocel@millerbarondess.com, rdankwa@millerbarondess.com; docket@millerbarondess.com |
| Kevin Ronk (CR) | Kevin@portilloronk.com, jaclyn@cym.law,rolando@cym.law |
| Joshua L Scheer | jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com |
| Bradley D. Sharp (TR) | bsharp@dsi.biz |
| Mark M Sharf (TR) | mark@sharflaw.com, C188@ecfcbis.com; sharf1000@gmail.com; 2180473420@filings.docketbird.com |
| Richard P Steelman, Jr (IP) | rps@lnbyg.com |
| Nikko Salvatore Stevens (CR) | nikko@cym.law, mandi@cym.law |
| Alan G Tippie | Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com; Karen.Files@gmlaw.com, patricia.dillamar@gmlaw.com, denise.walker@gmlaw.com |
| Gary Tokumori | gtokumori@pmcos.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| Michael L Wachtell | mwachtell@buchalter.com |
| John P. Ward | jward@attleseystorm.com, ezhang@attleseystorm.com |
| Brett J. Wasserman (PL) | wasserman@smcounsel.com |
| Alex M Weingarten (CR) | aweingarten@willkie.com, lcarter@willkie.com |
| Beth Ann R. Young (IP) | bry@lnbyg.com, bry@lnbyb.com |
| Clarisse Young | youngshumaker@smcounsel.com, levern@smcounsel.com |
| Paul P Young | paul@cym.law, jaclyn@cym.law |
| Roye Zur | rzur@elkinskalt.com, cavila@elkinskalt.com; lwageman@elkinskalt.com; 1648609420@filings.docketbird.com |