1  Jeffrey W. Dulberg (State Bar No. 181200)
   John W. Lucas (State Bar No. 271038)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA 90067
   Telephone: 310/277-6910
4  Facsimile: 310/201-0760
   E-mail:  jdulberg@pszjlaw.com
5            jlucas@pszjlaw.com

6  Counsel to Bradley D. Sharp, Chapter 11 Trustee

7              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
8                  **LOS ANGELES DIVISION**

9  In re                                    Case No.: 2:23-bk-10990-SK
                                             Chapter 11
10 LESLIE KLEIN,

11         Debtor.                          **CHAPTER 11 TRUSTEE'S APPLICATION
                                             TO (A) EMPLOY COLDWELL BANKER
12                                           REALTY AS REAL ESTATE BROKER AND
                                             (B) ENTER INTO EXCLUSIVE LISTING
13                                           AGREEMENT; DECLARATIONS RE
                                             DISINTERESTEDNESS FOR
14                                           EMPLOYMENT OF PROFESSIONAL
                                             PERSONS UNDER F.R.B.P. 2014**
15

16                                           [322 N. June Street, Los Angeles, CA 90004]

17                                           [No Hearing Required Pursuant to Local
                                             Bankruptcy Rules 2014-1(b)(1) and 9013-1(o)]
18

19         Bradley D. Sharp, the duly appointed chapter 11 trustee (the "Trustee") of the bankruptcy

20 estate (the "Estate") of Leslie Klein (the "Debtor"), hereby seeks an order approving the

21 employment of Coldwell Banker Realty (the "Broker") as the Trustee's real estate broker in

22 connection with the marketing and sale of the real property located 322 N. June Street, Los

23 Angeles, California 90004 (the "Property"), substantially consistent with the terms set forth in the

24 listing agreement (the "Listing Agreement") attached hereto as **Exhibit "1"**.

25         This Application is brought pursuant to section 328 of title 11 of the United States Code, 11

26 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 2014, and

27 Local Bankruptcy Rule 2014-1. In support of the Application, the Trustee respectfully represents

28 as follows:

# I.

## BACKGROUND

On February 22, 2023, the Debtor filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code.

On April 24, 2023, creditors Erica and Joseph Vago filed a *Motion for Order Dismissing Debtor's Chapter 11 Bankruptcy Case* (the "Motion to Dismiss") [Docket No. 79].

On May 17, 2023, at a hearing held on the Motion to Dismiss, the Court ruled that the appointment of a chapter 11 trustee, and not dismissal of the case, was in the best interests of the estate.

On May 23, 2023, the UST filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No. 151], appointing Bradley D. Sharp to serve as chapter 11 Trustee (the "Trustee").

On May 24, 2023, the UST Filed an *Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154], approved by order entered the same day [Docket No. 155]. On that same day, the Trustee accepted his appointment [Docket No. 156].

On May 29, 2024, the Trustee filed a *First Amended Complaint for Quiet Title and Avoidance of Unrecorded Interest in Real Property Located at 322 N. June St., Los Angeles, California* (the "Complaint") [Adv. Docket No. 6].[1] The Trustee commenced this action seeking to (i) quiet title, pursuant to section 760.101, et. seq. of the California Code of Civil Procedure, of the Property in the name of the Debtor and, as such, as property of the Estate, (ii) avoid any unrecorded or invalid transfers, pursuant to section 544(a)(3) of the Bankruptcy Code, of the Property, and (iii) recover the Estate's interest in the Property, pursuant to section 550 of the Bankruptcy Code.

On September 20, 2024, the Trustee filed a *Motion for Summary Judgment on All Claims for Relief Against Defendants* (the "MSJ") [Adv. Docket No. 32], seeking summary judgment on all claims for relief as set forth in the Complaint. The MSJ was approved by order entered on December 20, 2024 [Adv. Docket No. 62].

---

[1] All references herein to "Adv. Docket No. ___" are to the docket entries in Adv. Case No.: 2:24-ap-01140-SK.

1    On January 17, 2025, the Trustee filed a *Motion for Order to Restore Possession of the*

2    *Property Located at 322 N. June St., Los Angeles, California to the Trustee and Compelling Debtor*

3    *to Vacate the Property* (the "Turnover Motion") [Docket No. 890], seeking entry of an order

4    pursuant to 11 U.S.C. §§ 105(a) and 542(a) to restore possession of the Property to the Trustee and

5    to compel the Debtor to vacate the Property.  The Turnover Motion was approved by order entered

6    on February 13, 2025 [Docket No. 923].

7    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28

8    U.S.C. §§ 1408 and 1409.

9                                              **II.**

10                    **MEMORANDUM OF POINTS & AUTHORITIES**

11    The Trustee respectfully applies for authority to employ Coldwell Banker Realty (the

12    "Broker"), through its agents Jessica Heredia and William Friedman (collectively, the "Agents"),

13    respectively, as the Trustee's real estate broker in connection with the marketing and sale of the

14    Property, pursuant to an exclusive listing agreement, based upon the following:

15            a.    The Property is scheduled as property of the Estate and title has been

16    determined to be held by the Estate following the aforementioned litigation.  This Application is

17    intended to effectuate the listing and marketing of the Property by the Trustee, to facilitate a sale by

18    the Trustee of the Property for the highest and best price.

19            b.    The Trustee has determined that the best way to market the Property is via a

20    licensed real estate broker both with experience in marketing properties in the region where the

21    Property is located, and who understands the bankruptcy sale process.

22            c.    The Agents employed by the proposed Broker are licensed real estate agents

23    experienced in marketing real property in the region where the Property is located.  In particular,

24    Mr. Friedman is an expert in real estate sales in bankruptcy cases.

25            d.    The initial listing price for the has not yet been determined and will be set at

26    a later time following inspection of the Property and in accordance with market conditions.

27            e.    The Trustee proposes to hire Coldwell Banker Realty as his real estate

28    broker for a total commission of five percent (5.0%) of the selling price for the Property (payable

LA:4903-2034-7923.2 78512.001

only upon close of sale) to be shared as follows:  two and one-half percent (2.50%) to buyer's broker, if any, and the other two and one-half percent (2.50%) to the Broker.

       f.     The terms of the exclusive Listing Agreement upon which the Trustee proposes to enter into with the Broker is reflected in **Exhibit "1"**, attached hereto and incorporated herein by this reference.

       g.     The Trustee seeks authorization to enter into the Listing Agreement with the Broker with regard to the Property and to extend the agreement from time to time as he believes in his sole discretion to be appropriate under the circumstances without further notice or order of the Court.

       h.     The Trustee believes the employment of the Broker is in the best interests of the estate, based on the above facts.

## III.

## <u>NOTICE</u>

Pursuant to Local Bankruptcy Rule 2014-1(b)(4), a hearing is not required in connection with the Application unless requested by the United States Trustee, a party in interest, or otherwise ordered by the Court.  Pursuant to Local Bankruptcy Rule 2014-1(b)(3), any response to the Application and request for hearing must be in the form prescribed by Local Bankruptcy Rule 9013-1(f) and must be filed with the Court and served upon the Trustee, his proposed counsel, and the United States Trustee no later than fourteen (14) days from the date of service of notice of the filing of the Application.

Notice of filing of this Application was provided to the Office of the United States Trustee and all parties who filed and served a request for special notice as of the date of service of the Notice.

WHEREFORE, the Trustee prays for entry of an order authorizing him to (1) employ Coldwell Banker Realty as the Trustee's real estate broker effective as of January 29, 2025; (2) execute the exclusive Listing Agreement substantially consistent with the terms and conditions set forth in **Exhibit "1"** attached hereto; (3) authorize the Trustee to extend the Listing Agreement in his sole discretion without further notice or order of the Court; (4) authorize the Trustee to take

LA:4903-2034-7923.2 78512.001

such other actions as necessary in furtherance of the marketing and sale of the Property; and (5)  for all other further and proper relief.

Dated:    February 19, 2025                    PACHULSKI STANG ZIEHL & JONES  LLP


                                        By      /s/ *Jeffrey W. Dulberg*
                                                Jeffrey W. Dulberg

                                                Counsel to Bradley D. Sharp, Chapter 11
                                                Trustee

LA:4903-2034-7923.2 78512.001

## STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
## OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014
### (Coldwell Banker Realty)

1.      Name, address and telephone number of the professional ("the <u>Professional</u>") submitting this Statement:

Coldwell Banker Realty
3015 Main Street, Ste 400
Santa Monica, CA  90405
Telephone:  310-913-8112

2.      The services to be rendered by the Professional in this case are (specify):

To market and sell real property located at 322 N. June Street, Los Angeles, Los Angeles County, California 90004 (the "<u>Property</u>").  Attached as **Exhibit "2"** is a copy of my Resume which describes my expertise and experience.

3.      The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

a total commission of five percent (5.0%) of the selling price for the Property (payable only upon close of sale) to be shared as follows:  two and one half percent (2.50%) to buyer's broker, if any, and the other two and one-half percent (2.50%) to the Broker.

4.      The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

N/A

5.      The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

I have reviewed my files of past clients.  I was never involved with any transaction on this Property.

6.      The following is a complete description of all of the Professional's connections with the Chapter 11 Trustee, the Chapter 11 Debtor, principals of the Debtor, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

I was previously employed as broker by the Trustee in this bankruptcy case to market and sell the property located at 315 N. Martel Avenue, Los Angeles, California.

7.      The Professional is not a creditor, an equity security holder or an insider of the Debtor, except as follows (specify, attaching extra pages as necessary):

LA:4903-2034-7923.2 78512.001

None.

8.    The Professional is not and was not an investment banker for any outstanding security of the Debtor.

9.    The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

10.    The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

11.    The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the Debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary):

None

12.    Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

Jessica Heredia
Coldwell Banker Realty
3015 Main Street, Ste 400
Santa Monica, CA 90405
Telephone: 310-913-8112

13.    The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

N/A

14.    Total number of attached pages of supporting documentation:   20

15.    After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on February 3, 2025, at Brentwood, California.

_Jessica Heredia_

LA:4903-2034-7923.1 78512.001

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014
(Coldwell Banker Realty)**

1.      Name, address and telephone number of the professional ("the <u>Professional</u>") submitting this Statement:

Coldwell Banker Realty
1608 Montana Avenue
Santa Monica, CA  90405
Telephone: (310) 829-3939

2.      The services to be rendered by the Professional in this case are (specify):

To list and aid the Trustee in marketing and selling the real property located at 322 N. June Street, Los Angeles, California 90004 (the "<u>Property</u>").  Attached as **Exhibit "3"** is a copy of my Resume which describes my expertise and experience.

3.      The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

a total commission of five percent (5.0%) of the selling price for the Property (payable only upon close of sale) to be shared as follows:  two and one-half percent (2.50%) to buyer's broker, if any, and the other two and one-half  percent (2.50%) to the Broker.

4.      The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):     N/A

5.      The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

I have reviewed my files of past clients.  I was never involved with any transaction on the Property.

6.      The following is a complete description of all of the Professional's connections with the Chapter 11 trustee, the Debtor, principals of the Debtor, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

I was previously employed as broker by the Trustee to market and sell other properties in this bankruptcy case[2], and other bankruptcy trustees who are clients of the Trustee's general counsel, unrelated to the Debtor.

7.      The Professional is not a creditor, an equity security holder or an insider of the Debtor, except as follows (specify, attaching extra pages as necessary):

LA:4903-2034-7923.2 78512.001

None.

8.    The Professional is not and was not an investment banker for any outstanding security of the Debtor.

9.    The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

10.    The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

11.    The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the Debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary):

None.

12.    Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

William Friedman
Coldwell Banker Realty
1608 Montana Avenue
Santa Monica, CA 90405
Telephone: (310) 829-3939

13.    The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

N/A

14.    Total number of attached pages of supporting documentation: 20

15.    After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on February _3_, 2025, at Los Angeles, California.

_William Friedman_ (signature)
William Friedman

---

[1] I was previously employed to market and sell the properties located at: (1) 2560 N. Whitewater Club Drive, Unit B, Palm Springs, CA 92262; (2) 3752 Ocean Drive, Oxnard, CA 93035; (3) 161 N. Poinsettia Pl., Los Angeles, CA 90036; (4) 143 S. Highland Ave., Los Angeles, CA 90036; and (5) 315 N. Martel Ave., Los Angeles, CA 90036.

LA:4903-2034-7923.1 78512.001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT 1

Docusign Envelope ID: A297AE66-22E4-4F66-BD66-F39DE07AC47



CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
**(Exclusive Authorization and Right to Sell)**
**(C.A.R. Form RLA, Revised 12/24)**

COLDWELL BANKER
REALTY

Date Prepared: _01/29/2025_

1. **EXCLUSIVE RIGHT TO SELL:** _Bradley D. Sharp, Chapter 11 Trustee_ ("Seller")
hereby employs and grants _Coldwell Banker Realty_ ("Broker")
the exclusive and irrevocable right to sell or exchange the real property described as _322 N June St_
situated in _Los Angeles_ (City), _Los Angeles_ (County), California, _90004_ (Zip Code),
Assessor's Parcel No. _5523-003-008_ ("Property") for the Listing Period specified in **paragraph 2A(1).**

2. **TERMS OF LISTING AGREEMENT:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs
provide further explanation. This form is 7 pages. Seller is advised to read all 7 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions |
|---|---|---|---|
| **A** | **Representation** | | |
| **A(1)** | 4G | **Listing Period** <br> **(Maximum Length)** | Beginning on _01/29/2025_ (date) Ending at 11:59 P.M. on _07/29/2025_ (date) <br> (Not to exceed 24 months if improved with one to four units and not owned by an entity. If Listing Period exceeds 24 months on a residential 1-4, this Agreement is void, unless Seller is a corporation, LLC or partnership.) |
| **A(2)** | | **Listing Price** | Dollars ($ _____ ) |
| **B** | | **Property Specific Listings** | ☐ Manufactured (mobile) home (C.A.R. Form MHLA attached) <br> ☐ Probate, conservatorship or guardianship (C.A.R. Form PLA attached) |
| **C** | **Compensation: NOTICE: The amount or rate of real estate commissions is not fixed by law. They are set by each broker individually and may be negotiable between Seller and Broker. See attached Broker Compensation Advisory (C.A.R. Form BCA).** | | |
| **C(1)** | 4B | **Compensation to Seller's Broker** <br> **(only Seller's side of transaction)** | _2.500_ % of the listing price AND, if any _____ OR ☐ $ _____ ; <br> OR ☐ see attached Broker-created compensation schedule. <br> (% above is based on purchase price if Seller and buyer sign a purchase agreement) |
| **C(2)** | 4C | ☐ **Additional Compensation to Seller's Broker if buyer is unrepresented** <br> **(Does NOT apply to dual agency)** | _____ % of the purchase price AND, if any _____ OR ☐ $ _____ , <br> OR ☐ see attached Broker-created compensation schedule. <br> (If Broker represents both buyer and Seller, buyer side compensation shall be specified in a separate written agreement between Broker and buyer.) |
| **C(3)** | 4D(2) | **Continuation of Right to Compensation for Broker Identified Prospective Buyers** | The Continuation Period shall be ___ calendar days after the Listing Period or any extension ("Continuation Period"). |
| **C(4)** | 4F | **Seller Obligation to Pay Previous Brokers** | Previous Listing/Other broker(s): _____ <br> Compensation to above broker(s) owed if Property transferred to: _____ |
| **D** | **Items Intended to be Included and Excluded** | | |
| **D(1)** | 5A | **Items Included** | ☐ _____ ; ☐ _____ ; |
| **D(2)** | 5A | **Excluded Items** | ☐ _____ ; ☐ _____ ; |
| **D(3)** | 5B | **Leased Items:** | ☐ Solar Power System(s); ☐ Alarm System(s); <br> ☐ Propane Tank(s); ☐ Water Softener; ☐ _____ |
| **D(4)** | 5B | **Liened Items:** | ☐ Solar Power System(s); ☐ Windows or Doors; <br> ☐ Heating/Ventilation/Air conditioning ☐ _____ ; ☐ _____ |
| **D(5)** | 5C | (a) **Smart Home Features Seller prefers to Include:** _____ <br> (b) **Smart Home Features Seller prefers to Exclude:** _____ | |
| **E** | **MLS and Public Marketing** | | |
| **E(1)** | | **Property will be marketed in the following MLS** | Primary _THEMLS/CLAW_    See C.A.R. Form MLSA. <br> Other(s): _____ |
| **E(2)** | 10 | **Publication of Seller willingness to consider concessions** | If checked below: (i) Seller authorizes Broker to market that Seller is willing to consider offers asking for concessions; and (ii) No amount of the possible concession will be stated in such marketing unless Seller notifies Broker in writing of the amount. <br> ☒ In MLS(s) listed above, if permitted by that MLS. <br> ☐ In any other marketing outside of the MLS |
| **E(3)** | 12A | ☐ **Seller instructs Broker not to take or use photographs in marketing, except as required by MLS rules.** | |

© 2024, California Association of REALTORS®, Inc.

**RLA REVISED 12/24 (PAGE 1 OF 7)**

Seller's Initials _____ / _____


EQUAL HOUSING
OPPORTUNITY

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 7)**

Docusign Envelope ID: 4B97E6BF-22C4-4F58-BD66-F5DFB6CFAC47
Property Address: *322 N June St, Los Angeles*    Date: *01/29/2025*

| F | | Broker's and Seller's Duties | | |
|---|---|---|---|---|
| F(1) | 7B | Timing of Presentation of Offers | Seller instructs Broker to present all offers received as soon as practicable OR ☐ Offers shall be presented on _____ (date) or ☐ _____ days after the Property is listed as active on the MLS. | |
| F(2) | 7C | Buyer Supplemental Offer Letters (Buyer Letters) | Seller instructs Broker not to present Buyer Letters, OR ☐ Seller instructs Brokers to present Buyer Letters. If Seller requests or relies on Buyer Letters, Seller is acting against Broker's advice. | |
| F(3) | 7E | Investigation Reports | ☒ Natural Hazard Disclosure ☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other: _____ | Seller shall order and pay for any reports selected within 5 (or _____) days of the Beginning Date of this Agreement |
| G | 21 | Exceptions to Ownership/Title | | |
| H | | | ☐ Seller intends to include a contingency to purchase a replacement property as part of any transaction (see C.A.R. Form SPRP) | |
| I | | Intentionally Left Blank | | |
| J | 13, 14 | Seller Opt Outs | ☐ Key safe/Lockbox ☐ Signs | |
| K | | Additional Terms | | |

3.  **ADVISORIES AND ADDENDA:**
    A. **Advisories**
    ☒ Broker Compensation Advisory (C.A.R. Form BCA)    ☐ REO Advisory Listing (C.A.R. Form REOL)
    ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)    ☐ Trust Advisory (C.A.R. Form TA)
    ☐ Other: _____

    B. **Addenda.** The addenda identified below are incorporated into this Agreement.
    ☒ BANKRUPTCY SALE ADDENDUM    ☐ _____

4.  **COMPENSATION TO BROKER:**

    **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker.**

    A. **ADVISORY:** Real estate commissions include all compensation and fees to Broker and are fully negotiable.

    B. **COMPENSATION TO BROKER:** Seller agrees to pay to Broker as compensation for services under this Agreement, the amount specified in **paragraph 2C(1)**.

    C. **OPTIONAL ADDITIONAL COMPENSATION FOR UNREPRESENTED BUYER:** Seller agrees to pay Broker the additional amount specified in **paragraph 2C(2)**, if checked, for services rendered only if the buyer is not represented by a real estate agent. If a buyer is represented by a real estate agent, whether working through Broker or another brokerage company, then **paragraph 2C(2)** does not apply.

    D. **COMPENSATION TERMS:** Compensation is earned, and Seller shall pay Broker as follows:
    (1) **Completed Transaction or Seller Default:** If during the Listing Period, or any extension, Broker, any other broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
    OR (2) **Continuation of Right to Compensation for Broker Procured Buyer(s):** If, during the Continuation Period specified in **paragraph 2C(3)**, or the same period of time after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity:
    • who physically entered and was shown the Property during the Listing Period or any extension by Broker or any other broker; or
    • for whom Broker or any other broker submitted to Seller a signed, written offer to acquire, lease exchange or obtain an option on the Property.
    Broker's right to compensation pursuant to this paragraph shall only apply if, prior to expiration of this Agreement or any extension, Broker delivers to Seller a written notice of the names of such Prospective Buyers (C.A.R. Form NPB).
    OR (3) ~~Seller Interference with Listing:~~ If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, ~~otherwise transferred, or~~ ~~unmarketable by~~ ~~act of Seller~~ during the Listing Period, or any ~~extension.~~

RLA REVISED 12/24 (PAGE 2 OF 7)    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 7)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    322 N June St

Docusign Envelope ID: 2397E8B8-2BE4-4F3B-BD68-F54DEBEAC4F

Case 2:23-bk-10990-SK    Doc 931    Filed 02/19/25    Entered 02/19/25 09:51:09    Desc
Property Address: 322 N June St, Los Ang...    Main Document    Page 13 of 34

E.  **ADDITIONAL COMPENSATION TERMS:**

  (1)  ~~Buyer Breach and Seller Recovery of Damages: If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 4 shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection and suit, if any.~~

  (2)  **Escrow Instructions:** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to **paragraph 4**, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.

F.  **SELLER COMPENSATION OBLIGATIONS TO OTHER BROKERS:**

  (1)  Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified in **paragraph 2C(4)**.

  (2)  Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the individuals or entities specified in **paragraph 2C(4)**.

  (3)  If the Property is sold to anyone specified in **paragraph 2C(4)** during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

G.  **MAXIMUM LISTING PERIOD: The maximum listing period allowed by law for residential property improved with one to four units is 24 months from the date this Agreement is made. This restriction does not apply if Seller is a corporation, LLC or partnership. It is unlawful to record or file this listing Agreement, or a memorandum or notice thereof, with the county recorder.**

5.  A.  **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
Seller intends that the items specified in **paragraph 2D** be included or excluded in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the transaction; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

  B.  **LEASED OR NOT OWNED ITEMS; LIENED ITEMS:** The items specified in **paragraph 2D(3)** are leased or not owned by Seller and the items specified in **paragraph 2D(4)** have been financed and a lien has been placed on the Property to secure payment. Seller will provide to the buyer, as part of the purchase agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

  C.  **SMART HOME FEATURES:** The smart home features are intended to be included or excluded as specified in **paragraph 2D(5)**.

6.  **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: **(i)** any Notice of Default recorded against the Property; **(ii)** any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; **(iii)** any bankruptcy, insolvency or similar proceeding affecting the Property, **(iv)** any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and **(v)** any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7.  **BROKER'S AND SELLER'S DUTIES:**

  A.  **BROKER RESPONSIBILITY, AUTHORITY AND LIMITATIONS:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in **paragraph 7E** as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

  B.  **PRESENTATION OF OFFERS:**

    (1)  **Strategies Affecting Delayed Offers and Buyer Broker Compensation:** There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire shortly, hoping that Seller will accept before the presentation date. Additionally, certain buyers may not be able or allowed to pay compensation to a buyer's broker. These buyers may request for seller to pay buyer's broker through a term in the purchase agreement or through a separate compensation agreement. Seller is advised to discuss and consider the best strategy for Seller related to the presentation of offers.

    (2) (A)  **Seller Instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

  OR (B)  **Seller Instructs Broker not to Present Offers until a Later Time:** If checked in **paragraph 2F(1)**, Seller has elected to have Broker hold all offers and present them to Seller as specified in **paragraph 2F(1)**. Broker will inform Seller that an offer has come in, but will not submit the offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller. Broker and Seller may amend this instruction by agreeing in writing.

RLA REVISED 12/24 (PAGE 3 OF 7)                    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 7)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          322 N Jose St

C.  **BUYER SUPPLEMENTAL OFFER LETTERS (BUYER LETTERS):**

   (1)  **Advisory Regarding Buyer Letters:** Seller is advised of the practice of many buyers and their agents to include a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters. See C.A.R. Form FHDA for further information.

   (2)  (A)  **Seller Instructs Broker not to Present Buyer Letters** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

   OR  (B)  **Seller Instructs Broker to Present Buyer Letters:** If checked in **paragraph 2F(2)**, Broker advises seller that: **(i)** Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and **(ii)** if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

D.  **SELLER GOOD FAITH:** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 2C(4)**, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

E.  **INVESTIGATIONS AND REPORTS:** Seller agrees, within the time specified in **paragraph 2F(3)**, to order and, when required by the service provider, pay for all reports specified in **paragraph 2F(3)**. If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

F.  ~~**UNDISCLOSED CONDITIONS; INCOMPLETE OR INCORRECT INFORMATION:** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation,~~ ~~from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden~~ ~~conditions on the Property.~~

8.  **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9.  **AGENCY RELATIONSHIP:**

   A.  **DISCLOSURE:** Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD).

   B.  **SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 4F(3)**.

   C.  **POSSIBLE DUAL AGENCY:**

   (1)  **Disclosure and Consent in a Transaction:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Compensation is not necessarily determinative of agency.

   (2)  **Showing Properties:** Seller acknowledges that real estate brokers must have a written agreement in order to work with a buyer before showing properties to that buyer and that some buyers working through Broker may consider or make an offer on Seller's property. Seller consents to Broker entering into a representation agreement with a buyer, and if that buyer makes an offer on Seller's property, Broker will become a dual agent representing both that buyer and Seller.

   (3)  **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller – Disclosure and Consent" (C.A.R. Form PRBS).

   D.  **UNREPRESENTED BUYERS:** If a buyer is interested in viewing Seller's Property is not already represented by a real estate broker, and such buyer refuses to be represented by Broker, Seller authorizes Broker to obtain a signed document from such buyer refusing representation by Broker. Broker shall provide such buyers, at the earliest practicable time, a disclosure of non-representation, such as Buyer Non-Agency (CAR Form BNA) or Open House and Visitor Non Agency Disclosure and Sign-In (C.A.R. Form OHNA-SI).

   E.  **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

RLA REVISED 12/24 (PAGE 4 OF 7)

Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 7)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    322 N June St

Docusign Envelope ID: 2597E86E-22EE-4F50-BD66-FSDDEBEZAC47
Property Address: 322 N June St, Los Ang...

F. **TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

10. **SELLER CONCESSIONS:**
- Concessions are monetary payments that a seller agrees to contribute towards a buyer's expenses and other costs a buyer is responsible for in the transaction.
- Concessions may include, but are not limited to, costs of escrow or title, lender fees, repairs, inspections and buyer broker compensation.
- Concessions specified in the MLS must be allowed to be used for any permissible buyer expense or cost and must not specify the concessions are to be used for broker compensation. However, a term in the buyer's offer may specify that the Seller agrees to pay all or a portion of the compensation that the buyer owes its broker.
- Concessions identified in an MLS listing are not promises to pay but instead indicate to a buyer that the seller will consider offers asking for concessions. Concessions specified in the MLS are not intended to be binding on Seller unless included in the accepted purchase agreement.

11. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or injury to person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post a notice disclosing the existence of security devices.

12. **PHOTOGRAPHS AND INTERNET ADVERTISING:**

A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Unless checked in **paragraph 2E(3)**, Seller agrees that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post transaction and for Broker/Agent's business in the future.

B. Seller acknowledges that prospective buyers and/or other persons coming onto the Property may take photographs, videos or other images of the Property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken and/or put into electronic display on the internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

13. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

A. Unless checked in **paragraph 2J**, Seller authorizes Broker to install a keysafe/lockbox.

B. **TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

14. **SIGN:** Unless checked in **paragraph 2J**, Seller authorizes Broker to install a FOR SALE/SOLD sign on the Property.

15. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

16. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs except as provided in **paragraph 19A**.

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, Broker or Manager has the right to cancel this Agreement, in writing, within **5 days** After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

RLA REVISED 12/24 (PAGE 5 OF 7)                    Seller's Initials _____ / _____



Docusign Envelope ID: AE97AE86-22E4-4F56-BD66-F5D0R6EAC47
Property Address: *322 N June St, Los Ang...*

**19. DISPUTE RESOLUTION:**

A. **MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (the non-mediating party) (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in paragraph 16. (4) **Exclusions from this mediation agreement are specified in paragraph 19B.**

B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) **a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.** The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

C. **ARBITRATION ADVISORY: If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).**

**20. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**21. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are specified in **paragraph 2G.**

**22. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall deliver to Broker, within **3 days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

**PROCEED TO NEXT PAGE**

RLA REVISED 12/24 (PAGE 6 OF 7)        Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 6 OF 7)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com        322 N June St

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Residential Listing Agreement.

☐ ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)

(1) **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____

_____.

(3) **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.

(A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);

(B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(4) **Legally Authorized Signer:**

(A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. **See paragraph 22 for additional terms.**

(B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

**SELLER SIGNATURE(S):**

(Signature) By, _____ Date: _____

Printed name of SELLER: *Bradley D. Sharp, Chapter 11 Trustee*

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

Address _____ City _____ State *CA* Zip _____

Email _____ Phone # _____

(Signature) By, _____ Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

Address _____ City _____ State ____ Zip _____

Email _____ Phone # _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Coldwell Banker Realty* _____ DRE Lic # *00616212*

Address *11661 San Vicente Blvd 10th Floor* _____ City *Brentwood* _____ State *CA* Zip *90049*

By (Broker/Agent) _____ *Bill Friedman/Jessica Heredia* Date _____

Tel. *(310)913-8112* ___ E-mail *Jessica@JessicaHeredia.com* _____ DRE Lic # *00672015 /01349369*

By (Broker/Agent) *Jessica Heredia*   *Bill Friedman* _____ Date 1/29/2025

Tel. 213 200-2520 E-mail *bill FRIED @ EARTHLINK. NET* __ DRE Lic # __ 01349369

☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



**RLA REVISED 12/24 (PAGE 7 OF 7)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 7 OF 7)**

Docusign Envelope ID: 2B97B5BF-22E4-4F5B-BD68-F5DEB5CEAC47

CALIFORNIA
ASSOCIATION
OF REALTORS®

## ADDENDUM No. _1_

(C.A.R. Form ADM, Revised 12/21)

COLDWELL BANKER
REALTY

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _Residential Listing Agreement_

dated _____January 29, 2025_____ , on property known as _____322 N June St_____,
_____Los Angeles, CA 90004_____ ("Property/Premises"),
in which _____ is referred to as ("Buyer/Tenant")
and _____Bradley D. Sharp, Chapter 11 Trustee_____ is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

_1. The initial listing price for the Property has not yet been determined and will be set at a later time following inspection of the Property and in accordance with market conditions._

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant _____ Date _____

Buyer/Tenant _____ Date _____

Seller/Landlord _____ Date _____
_Bradley D. Sharp, Chapter 11 Trustee_
Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/21 (PAGE 1 OF 1)



## ADDENDUM (ADM PAGE 1 OF 1)

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

Bradley D. Sharp, solely in the capacity as the Chapter 11 Trustee ("Trustee") of the bankruptcy estate of Leslie Klein("Debtor")in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker ("Broker") the exclusive right to negotiate a sale of the real property commonly described as 322 N. June Street, Los Angeles, California ("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1.    <u>Addendum</u>.    This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2.    <u>No Liability</u>.    The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3.    <u>Termination</u>.    The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4.    <u>Abandonment</u>.    The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest.    In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5.    <u>Conditions of Sale</u>.    The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

    a.    The Trustee is selling the Property in the capacity as the Trustee and not in the Trustee's personal

124805.1    9937176A

capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding if the property is subdividable.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The sale is subject to overbids.

f.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property. The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

g.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h.    All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

i.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

124805.1    9937176A                          2

j.    The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

k.    If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

l.    Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)    the Trustee must prevail with respect to any objections to the proposed sale; and

(2)    the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

m.    The Property is being sold subject to:

(1)    All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

(2)    Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.  Title, however, is to be transferred free of secured claims of record.

6.    <u>Payment of Commission</u>. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.  The payment of the commission is subject to prior approval of the Bankruptcy Court.

7.    <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

8.  <u>Entire Agreement</u>. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization is not contrary to the terms and conditions herein, constitute the entire contract between the parties.  All prior agreements between the parties are incorporated into this agreement.  Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9.  <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization.  This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

Docusign Envelope ID: A267AE66-22E4-4F56-BD66-F2D0E6CEAC47

CALIFORNIA
ASSOCIATION
OF REALTORS®

**BROKER COMPENSATION ADVISORY**
(C.A.R. Form BCA, 7/24)

COLDWELL BANKER
REALTY

1. **WHEN SELLERS LIST THEIR PROPERTY FOR SALE THROUGH A REAL ESTATE BROKER THEY AGREE TO PAY THE SELLER'S BROKER WHEN ESCROW CLOSES.**

   A. **LISTING AGREEMENT COMPENSATION IS FULLY NEGOTIABLE:** When a seller enters into a listing agreement with a broker, the seller authorizes the broker to find a buyer for the seller's property and agrees to pay the seller's broker if a buyer is found who purchases the property. Compensation amounts are not fixed by law and are fully negotiable between the seller and the seller's broker. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.

   B. **OPTIONAL ADDITIONAL COMPENSATION IF BUYER IS UNREPRESENTED:** A listing agreement may include optional additional compensation amounts owed to the seller's broker for situations where the broker takes on additional responsibilities or workload. Sometimes a buyer may not be working with nor want to be represented by a real estate broker. When that happens, the seller's broker is not required to represent the buyer, and the seller and seller's broker may decide that they do not want to create such a relationship. In those situations, the seller's broker is advised to use a Buyer Non-Agency (C.A.R. Form BNA) to inform the buyer that the seller's broker will be acting on behalf of the seller only, and not act as the buyer's agent, throughout the transaction. However, because the buyer is unrepresented, the seller's agent will inevitably have to do more work to facilitate the transaction. A seller may agree to compensate their broker for the additional work in such cases.

   C. **BROKER MAY REPRESENT BOTH BUYER AND SELLER; DUAL AGENCY:** California law allows a brokerage company to represent both seller and buyer in a real estate transaction. At the time the agent, on behalf of a brokerage, obtains the signature of a seller on a listing agreement, the agent will not, in most cases, know who the eventual buyer will be for a seller's property. Similarly, at the time an agent, on behalf of a brokerage, obtains the signature of a buyer on a buyer representation agreement, the agent will not, in most cases, know who the eventual seller will be for a property the buyer wants to buy. Because many individual licensees may work through one brokerage company, and some individual licensees work with many buyers and sellers, there is a possibility that the same brokerage company will represent both buyer and seller in a transaction. If licensees working through broker represent both seller and buyer, broker is allowed to receive compensation from each, provided the seller and buyer are advised of the relationship and the total amount of compensation the broker will receive.

2. **BROKER AGREEMENTS WITH BUYERS:**

   A. **BUYER REPRESENTATION COMPENSATION IS FULLY NEGOTIABLE:** When a buyer enters into a representation agreement with a broker, the buyer authorizes the broker to locate properties for the buyer to buy and agrees to pay the buyer's broker if a transaction is completed. Compensation amounts are not fixed by law and are fully negotiable. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.

   B. **REQUIREMENT FOR WRITTEN AGREEMENTS:** Pursuant to a nationwide class action settlement reached by the National Association of REALTORS® (NAR), participants in Multiple Listing Services are required to have a written agreement with a buyer prior to showing a buyer a residential property or giving a buyer a tour of such a property. The agreement must identify the amount of compensation to be paid to the broker for services provided and require that the broker cannot receive any compensation in excess of the amount specified in the agreement. Pursuant to legislation expected to become law in California on January 1, 2025, all licensees showing a buyer any type of property will be required to have a written agreement with that buyer prior to the showing.

BCA 7/24 (PAGE 1 OF 2)          Seller's Initials _____ / _____    Buyer's Initials _____ / _____

EQUAL HOUSING
OPPORTUNITY

**BROKER COMPENSATION ADVISORY (BCA PAGE 1 OF 2)**

**C. ADVANTAGES OF WRITTEN AGREEMENTS:** Buyers and their brokers benefit when the terms of their relationship and respective duties are in writing. A written agreement establishes clear, mutual expectations and helps avoid misunderstandings over the buyer and broker's duties and the amount of compensation the buyer's agent is to be paid.

3. **WHEN ENLISTING A REAL ESTATE BROKER TO REPRESENT THEM, BUYERS AGREE TO PAY THE BUYER'S BROKER WHEN ESCROW CLOSES, BUT THE PERSON RESPONSIBLE FOR PAYMENT MAY BE NEGOTIATED IN THE TRANSACTION:**

**A. BUYER PAYS THE COMPENSATION PURSUANT TO A BUYER REPRESENTATION AGREEMENT:** A buyer's broker may negotiate the amount of compensation directly with the Buyer and then document that agreement in a buyer representation agreement (C.A.R. Form BRBC or PSRA). The buyer then becomes contractually obligated to pay the broker by providing funds to escrow prior to the closing of a transaction.

**B. SELLER PAYS THE COMPENSATION:**

(1) **Buyer negotiates for Seller to Compensate Buyer's Broker:** A buyer may make a conditional offer to the seller by including a term in the purchase offer asking the seller to pay the buyer's broker if the buyer has already agreed to pay their own broker pursuant to a buyer representation agreement. If such a term is included in the purchase offer, the request will become one term among many that a seller may accept, reject, or negotiate by way of a counter offer. The possibility of asking the seller to pay the buyer's contractual compensation obligation option should be discussed when creating a buyer representation agreement and prior to an offer being made.

(2) **Buyer's Agent negotiates an agreement directly with Seller:** If a seller is unrepresented or does not have an exclusive agency relationship with another broker, a buyer's broker may approach that seller asking the seller to sign an agreement (C.A.R. Form SP, Single Party Compensation Agreement) to pay the buyer's broker. In this situation, the seller agrees to pay the buyer's broker compensation without necessarily creating an agency relationship with the broker. When that happens, the buyer's broker is advised to use a Seller Non-Agency (C.A.R. Form SNA) to inform the seller that the buyer's broker will be acting on behalf of the buyer only, and not act as the seller's agent, throughout the transaction. However, because the seller is unrepresented, the buyer's agent will inevitably have to do more work to facilitate the transaction, which may be factored into the negotiation of the single party compensation agreement.

**C. CHANGING PRACTICE RELATED TO A SELLER'S BROKER'S OFFER OF COMPENSATION:**

Historically, in California, many seller's brokers used a Multiple Listing Service (MLS) to make a unilateral offer to compensate a buyer's broker who procured a buyer for the seller's property. However, the nationwide NAR settlement prohibits the seller's broker from using an MLS to make such an offer of compensation. The California Association REALTORS® (C.A.R.) listing agreement forms no longer provide for such offers of cooperating broker compensation nor does C.A.R. include other forms in its library of forms that might facilitate such offers. Buyers and sellers must separately negotiate compensation with their respective brokers, as specified above.

**By signing below, Seller or Buyer acknowledges that they have read, understand, and have received a Copy of this Broker Compensation Advisory. Seller or Buyer acknowledges they have been advised of their various options regarding compensation to be paid to real estate brokers and that any written agreement they have signed with a seller's or buyer's broker reflects a mutual understanding.**

Seller/Buyer _____  *Bradley D. Sharp, Chapter 11 Trustee* Date _____

Seller/Buyer _____  Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BCA 7/24 (PAGE 2 OF 2)**





**CALIFORNIA ASSOCIATION OF REALTORS®**

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/24)

**COLDWELL BANKER REALTY**

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

Note: Real estate broker commissions are not set by law and are fully negotiable.

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ *Bradley D. Sharp, Chapter 11 Trustee* Date _____
☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ Date _____
Agent _____ *Coldwell Banker Realty* DRE Lic. # 00616212
    Real Estate Broker (Firm)
By _____ *Jessica Heredia* *Bill Friedman/Jessica Heredia* DRE Lic. # 00672015 /01349369 Date 1/29/2025
   (Salesperson or Broker-Associate, if any)

**AD REVISED 12/24 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Docusign Envelope ID: A897AE66-22E4-4F56-BD68-F59DFBEEAC47

CALIFORNIA
ASSOCIATION
OF REALTORS®

## MULTIPLE LISTING SERVICE ADDENDUM
### (C.A.R. Form MLSA, Revised 12/24)



COLDWELL BANKER
REALTY

The following terms and conditions are hereby incorporated in and made a part of the Residential Listing Agreement, ☐ Other
_____ ("Agreement"),
dated _01/29/2025_ , on property known as _____ 322 N June St, Los Angeles, CA 90004 _____
in which _____ Bradley D. Sharp, Chapter 11 Trustee _____ is referred to as ("Seller")
and _____ Coldwell Banker Realty _____ is referred to as ("Broker").

1. **MULTIPLE LISTING SERVICE:**
   A. **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 3**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale, excepting offers of compensation. It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal or data sharing agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal or data sharing agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to internet sites that post property listings online.
   B. **WHAT INFORMATION IS PROVIDED TO THE MLS BEFORE OR AFTER SALE:** All terms of the transaction, including sales price and, if applicable, financing and concessions, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
   C. **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to the Multiple Listing Service (MLS) specified in **paragraph 2E(1)** of the Agreement and possibly others. Broker shall inform Seller if the MLS specified in **paragraph 2E(1)** is not the primary MLS for the geographic area of the Property. When required by **paragraph 3** or by the MLS, Property will be listed with the MLS(s) specified.

2. **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
   A. **EXPOSURE TO BUYERS THROUGH MLS:** Listing property **with an MLS** exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to internet sites that post property listings online.
   B. **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate internet sites that are used by the public to search for property listings; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property; and **(v)** the scope of marketing will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.
   C. **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
   D. **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

3. **PUBLIC MARKETING OF PROPERTY:**
   A. **CLEAR COOPERATION POLICY:** Unless **paragraph 3F** is checked, MLS rules require that exclusive and seller reserved listings for residential real property with one to four units and vacant lots be submitted to the MLS within **1 business day** of any public marketing. This is because the MLSs have adopted the Clear Cooperation Policy of the National Association of REALTORS®. That policy seeks to maximize Seller profits by highlighting the importance of advertising listed properties in forums that are ultimately visible to the public.
   B. **PUBLIC MARKETING WITHIN CLEAR COOPERATION: (i)** Public marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
   C. **"COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM)**
      (1) Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.

**MLSA REVISED 12/24 (PAGE 1 OF 2)**

EQUAL HOUSING
OPPORTUNITY

### MULTIPLE LISTING SERVICE ADDENDUM (MLSA PAGE 1 OF 2)

Docusign Envelope ID: 4297AE68-22E4-4F56-BD66-F3DF6FCEAC47

    (2) Seller does (☐ does not) authorize Broker to advertise the Property for or in Coming Soon status in Broker's MLS, if any.

**D. SELLER INSTRUCTIONS TO BROKER:**

    (1) Seller instructs Broker to market the Property to the public at the beginning of the Listing Period;

OR (2) ☐ Seller instructs Broker to EXCLUDE the Property from dissemination by the MLS. The MLS may require its own form or this MLSA to be submitted. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients while the Property is excluded. Seller understands the impact of opting out of the MLS in **paragraph 2B**, and Seller certifies and instructs Broker:

        (A) ☐ To begin marketing the Property to the public (including through the MLS) on _____ (date);

        (B) ☐ NOT to market the Property to the public during the Listing Period unless Seller gives written instruction otherwise.

**E.** Seller understands and agrees that should any public marketing of the property occur, the Property listing will be submitted to the MLS within **1 business day**.

**F.** ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** The MLSs utilized by Broker do not have a Clear Cooperation Policy that applies to the Property. **Paragraphs 3A-E** do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**4. MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the internet as permitted by (or in accordance with) the MLS is as follows:

    **A. PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the internet (C.A.R. Form SELI). Seller understands that either of these opt outs would mean consumers searching for listings on the internet may not see the Property or Property's address in response to their search.

    **B. FEATURE OPT OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands **(i)** that these opt outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other internet sites.

        (1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

        (2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

    **C. SELLER ELECTION:**

        (1) Seller authorizes the MLS to make all listing information available to internet sites;

    OR (2) ☐ Seller elects to opt out of certain internet features as provided by C.A.R. Form SELI or the local equivalent form.

**5. PHOTOGRAPHS:**

    **A.** Visitors entering or touring the Property may take photographs, and Broker does not have the ability to control or block the taking and use of Images. Seller can instruct Broker to publish information in the MLS is limited to those persons preparing appraisal or inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS.

    **B. SELLER INSTRUCTION:**

        (1) Visitors are not restricted from taking pictures of the Property;

    OR (2) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing appraisal or inspection reports.

**The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Multiple Listing Service Addendum.**

Seller _____ Date _____

    *Bradley D. Sharp, Chapter 11 Trustee*

Seller _____ Date _____

Real Estate Broker (Listing Firm) *Coldwell Banker Realty*      DRE Lic# *00616212*

By _____ *Bill Friedman/Jessica Heredia*     Date:

                                                       1/29/2025

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**MLSA REVISED 12/24 (PAGE 2 OF 2)**

**MULTIPLE LISTING SERVICE ADDENDUM (MLSA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     322 N Jane St

# EXHIBIT 2

# Jessica Heredia/Realtor

Address: 3015 Main St Ste 400, Santa Monica, CA 90405
Phone: 310-913-8112
Email: Jessica@JessicaHeredia.com

**Summary:**
Highly accomplished Real Estate Sales Agent with a successful track record since 2002.
Consistently recognized as a top-producing agent, achieving prestigious awards such as
International President's Elite, Diamond Society, and President's Circle. Adept at building
strong client relationships and delivering exceptional results.

**Experience:**

Real Estate Sales Agent, COLDWELL Banker Realty
2007- Present

- Demonstrated expertise in the real estate market, specializing in residential sales.
- Consistently ranked as a top-producing agent since 2007, consistently exceeding sales targets.
- Developed and implemented effective sales and marketing strategies to maximize property exposure.
- Cultivated and maintained strong relationships with clients, providing personalized service and expert guidance.
- Collaborated with buyers, sellers, and fellow agents to negotiate and close successful transactions.
- Conducted accurate market analysis and property evaluations to determine optimal pricing strategies.
- Utilized advanced technological tools to streamline processes and enhance customer experience.

Real Estate Sales Agent, Century 21 Citrus
2002-2007

- Client Acquisition: Actively prospecting and networking to generate leads and establish connections with potential buyers and sellers.
- Client Representation: Representing clients in buying, selling, and leasing properties, ensuring their interests are protected and their needs are met.
- Property Marketing: Creating compelling property listings, brochures, and online advertisements to effectively market and showcase properties to potential buyers and renters.
- Property Showings: Conducting property tours and showings, highlighting key features and addressing any questions or concerns from potential buyers or renters.
- Offer Negotiation: Assisting clients with offer preparation and negotiations to secure favorable terms and conditions for both buyers and sellers.
- Transaction Management: Overseeing all aspects of the real estate transaction, including coordinating inspections, appraisals, and necessary paperwork to ensure a smooth and timely closing.
- Market Research: Conducting market analysis to stay informed about local trends, property values, and neighborhood developments, providing clients with accurate and up-to-date information.

- Client Communication: Keeping clients informed throughout the buying or selling process, providing regular updates, and promptly addressing any questions or issues that may arise.
- Contract Preparation

**Volunteer Work:**

Megan's Wings
- Assisting children with cancer and their families in need. Developed a temporary housing program for families who are receiving treatment.

Meals on Wheels
- Delivered meals to elderly.

Verdugo Hospice
- Visited with patients and assisted with daily tasks.

**Skills:**

- Exceptional Sales Ability: Proficient in sales techniques, with a proven track record of success in closing deals and achieving targets.
- Market Knowledge: In-depth understanding of the local real estate market, including current trends, pricing, and property values.
- Client Relationship Management: Skilled in building and maintaining strong relationships with clients, providing personalized service, and earning their trust.
- Negotiation Skills: Experienced in negotiating terms, prices, and conditions to ensure mutually beneficial outcomes for buyers and sellers.
- Marketing and Advertising: Proficient in developing effective marketing strategies to promote properties, utilizing various channels and technologies.
- Communication Skills: Strong verbal and written communication abilities to engage with clients, understand their needs, and convey information clearly and effectively.
- Problem-Solving: Quick and effective problem-solving skills in dealing with diverse challenges that may arise during real estate transactions.
- Organization and Time Management: Excellent organizational skills to handle multiple listings, paperwork, and deadlines efficiently.
- Technology Proficiency: Familiarity with real estate software, CRM tools, digital marketing platforms, and other technological tools to enhance productivity and client service.
- Ethical Conduct: Committed to maintaining the highest ethical standards in real estate

# EXHIBIT 3



**William Friedman**

1608 MONTANA AVE
SANTA MONICA, CA 90403

RESIDENTIAL BROKERAGE

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 40 years. Mr. Friedman is a top producer for Coldwell Banker.  He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

**Bankruptcy Trustees:**
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

**Lenders:**
Countrywide Home Loans
Federal Home Loan Mortgage Corporation
Lincoln Service Corporation
Bank of America
Cal-Fed Enterprises
Union Federal Savings
California Federal Bank

Southern California Savings
Union Federal Bank
Residential Funding Corporation/GMAC
Coast Federal Bank

**Receivers:**
Stephen Donell
Samuel R. Biggs
David L. Ray

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **CHAPTER 11 TRUSTEE'S APPLICATION TO (A) EMPLOY COLDWELL BANKER REALTY AS REAL ESTATE BROKER AND (B) ENTER INTO EXCLUSIVE LISTING AGREEMENT; DECLARATIONS RE DISINTERESTEDNESS FOR EMPLOYMENT OF PROFESSIONAL PERSONS UNDER F.R.B.P. 2014** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 19, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) **February 18, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒   Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 19, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| **<u>Via Email:</u>**<br>Eric J Olson:  eric@ejolsonlaw.com<br><br>Leslie Klein:  les.kleinlaw@gmail.com;<br>leskleinlaw@gmail.com; kleinlaw@earthlink.net | |

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 19, 2025 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4888-5069-3839.1 78512.001

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Case 2:23-bk-10990-SK

- **Simon Aron**    saron@wrslawyers.com, moster@wrslawyers.com;jlee@wrslawyers.com
- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Ron Bender**    rb@lnbyg.com
- **Michael Jay Berger**
  michael.berger@bankruptcypower.com,
  yathida.nipha@bankruptcypower.com;michael.berger@ecf.inf
  oruptcy.com
- **Greg P Campbell**    ch11ecf@aldridgepite.com,
  gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Baruch C Cohen**    bcc@BaruchCohenEsq.com,
  paralegal@baruchcohenesq.com
- **Theron S Covey**    tcovey@raslg.com
- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Dane W Exnowski**    dane.exnowski@mccalla.com,
  bk.ca@mccalla.com;mccallaecf@ecf.courtdrive.com
- **Todd S. Garan**    ch11ecf@aldridgepite.com,
  TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Robert P Goe**    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@
  notify.bestcase.com;ajohnston@goeforlaw.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com,
  cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@
  elkinskalt.com,tparizad@elkinskalt.com
- **Brandon J. Iskander**    biskander@goeforlaw.com,
  kmurphy@goeforlaw.com
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **John W Lucas**    jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- **Armen Manasserian**    armen@ml-apc.com, jennifer@ml-
  apc.com,maria@ml-apc.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Kirsten Martinez**    Kirsten.Martinez@bonialpc.com,
  Notices.Bonial@ecf.courtdrive.com
- **Steven M Mayer**    smayer@mayerlawla.com
- **Christopher M McDermott**    ch11ecf@aldridgepite.com,
  CMM@ecf.inforuptcy.com;cmcdermott@aldridgepite.com

- **Krikor J Meshefejian**    kjm@lnbyg.com
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Jeffrey P Nolan**    jnolan@pszjlaw.com
- **Eric J Olson**    eric@ejolsonlaw.com
- **Jeffrey N Pomerantz**    jpomerantz@pszjlaw.com
- **Brian A Procel**    brian@procel-law.com,
  rdankwa@millerbarondess.com;docket@millerbarondess.com
- **Kevin Ronk**    Kevin@portilloronk.com,
  jaclyn@cym.law,karen@cym.law
- **Joshua L Scheer**    jscheer@scheerlawgroup.com,
  jscheer@ecf.courtdrive.com
- **Mark M Sharf (TR)**    mark@sharflaw.com,
  C188@ecfcbis.com;sharf1000@gmail.com;2180473420@filin
  gs.docketbird.com
- **Bradley D. Sharp (TR)**    bsharp@dsi.biz
- **Richard P Steelman**    RPS@LNBYG.COM
- **Nikko Salvatore Stevens**    nikko@cym.law, karen@cym.law
- **Alan G Tippie**    Alan.Tippie@gmlaw.com,
  atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.
  dillamar@gmlaw.com,denise.walker@gmlaw.com
- **Gary Tokumori**    gtokumori@pmcos.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**    mwachtell@buchalter.com,
  marias@buchalter.com;docket@buchalter.com
- **John P. Ward**    jward@attleseyward.com,
  ephuong@attleseyward.com
- **Brett J. Wasserman**    wasserman@smcounsel.com
- **Alex M Weingarten**    aweingarten@willkie.com,
  lcarter@willkie.com
- **Beth Ann R. Young**    bry@lnbyg.com, bry@lnbyb.com
- **Clarisse Young**    youngshumaker@smcounsel.com,
  levern@smcounsel.com
- **Paul P Young**    paul@cym.law, jaclyn@cym.law
- **Roye Zur**    rzur@elkinskalt.com,
  lwageman@elkinskalt.com;1648609420@filings.docketbird.co
  m;rzur@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**:

Peter C. Anderson, U.S. Trustee
Michael Jones, Assistant U.S. Trustee
Office of the U.S. Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA  90017

Nathan Talei
Oldman, Sallus & Gold, L.L.P.
16133 Ventura Blvd., PH-A
Encino, CA 91436

Leslie Klein & Associates, Inc.
c/o Parker Milliken
555 Flower Street
Los Angeles, CA  90071

Leslie Klein
322 North June Street
Los Angeles, CA 90004

Leslie Klein & Associates, Inc.
c/o Leslie Klein
6454 Van Nuys Blvd. Suite 150
Van Nuys, CA 91401

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4888-5069-3839.1 78512.001

**F 9013-3.1.PROOF.SERVICE**