FILED & ENTERED

APR 28 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin     DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

In re:

Leslie Klein,

Debtor(s)

Case No.:    2:23-bk-10990-NB

Chapter:    11

**MEMORANDUM DECISION GRANTING CHAPTER 11 TRUSTEE'S MOTION FOR ORDER ENFORCING THE AUTOMATIC STAY AND SANCTIONS, SUBJECT TO FURTHER PROCEEDINGS TO ESTABLISH DOLLAR AMOUNT OF SANCTIONS**

Hearing:
Date:  April 8, 2025
Time:  2:00 p.m.
Place: Courtroom 1545
        255 E. Temple Street
        Los Angeles, CA 90012
(or via Zoomgov per posted procedures)

This Memorandum Decision supplements this Bankruptcy Court's "Interim Order Granting Motion for Order Enforcing the Automatic Stay and Sanctions Against (A) The Debtor, (B) Daniel Crawford, (C) Crawford Law Group, (D) Leslie Klein & Associates, Inc., and (E) EKLK Foundation, and Related Relief" (dkt. 1026, "Stay Violation Order"). Specifically, this decision elaborates on this Bankruptcy Court's oral findings of fact and

conclusions of law set forth on the record at the above-captioned hearing on Trustee's

motion (dkt. 969, the "Stay Violation Motion") seeking to enforce the automatic stay and

an award of sanctions arising from the responding parties' stay violation.

## 1. BACKGROUND

Life Capital Group, LLC ("Life Capital") is a California limited liability corporation

that was formed on or about April 8, 2011.  Stay Violation Motion (dkt. 969), Ex. B.  Life

Capital is governed by a limited liability company operating agreement.  *Id.,* Ex. C (the

"LLC Agreement").  As set forth in the LLC Agreement, Debtor holds a 50%

membership interest in Life Capital and Shlomo Rechnitz holds the other 50%

membership interest.  *Id.*, Ex. C, Schedule A.

### a.  The Life Capital Action

On January 23, 2025 Trustee commenced an adversary proceeding in this

Bankruptcy Court (Adv. No. 2:25-ap-01020-NB) (the "**Life Capital Action**") against Life

Capital, Mr. Rechnitz, Jonathan Polter (the sole manager of Life Capital) and other

parties, seeking to avoid, as a fraudulent and/or preferential transfer, Debtor's pre-

petition release of his rights and entitlements to distributions from the proceeds of life

insurance policies governed by the terms and conditions of the LLC Agreement

pursuant to a settlement agreement (the "Life Capital Settlement") in which the parties

agreed on the terms and conditions concerning the distribution of proceeds from certain

life insurance policies.

### b.  The LKA Action

On March 6, 2025 - just over one month after Trustee filed the Life Capital Action

asserting that this bankruptcy estate has an interest in certain life insurance proceeds -

Leslie Klein & Associates, Inc. ("LKA") and EKLK Foundation ("EKLK" or, with LKA, the

"Klein Entities") filed an action in California Superior Court (Case No. 25STCV06300)

(the "**LKA Action**") *asserting an interest in those same proceeds*.  Specifically, the Klein

Entities asserted claims against Life Capital, Mr. Polter, and Mr. Rechnitz alleging that

Debtor and Mr. Polter agreed that LKA would be designated as a "lender" in the LLC

1    Agreement and that all amounts paid by LKA for life insurance premiums or to maintain

2    life insurance policies made before the formation of Life Capital would be repaid to it

3    from payments made by the respective insurers on the policies *before* any amounts

4    would be paid to Debtor and Mr. Rechnitz.  Stay Violation Motion (dkt. 969), Ex. F at

5    PDF pp. 163:10-21.[1]

6         **c.  The EKLK Action**

7         Also, on March 6, 2025 - again, just over one month after Trustee filed the Life

8    Capital Action asserting that this bankruptcy estate has an interest in certain life

9    insurance proceeds - EKLK filed an action in California Superior Court (Case No.

10   25STCV06306) (the "**EKLK Action**" or, with the LKA Action, the "**Superior Court**

11   **Actions**") *asserting another interest in those same proceeds*.  Specifically, EKLK

12   asserted claims against Mr. Rechnitz, among others, alleging that in 2011 EKLK

13   entered into an agreement with Sytamar Foundation ("SYTR"), a charitable foundation,

14   whereby the parties agreed, among other things, that SYTR would assume EKLK's

15   responsibility for making premium payments for three life insurance policies in which

16   EKLK was the assigned designated beneficiary: (x) the Goodkin Policy (Policy No.

17   UME2041681), (y) the Holtzman Policy (Policy No. 6003033), and (z) the Roth Policy

18   (Policy No. US0023724L) (collectively, the "Policies"), and, in exchange, EKLK and

19   SYTR would split the benefits and proceeds paid by the insurers of those policies.  Stay

20   Violation Motion (dkt. 969), Ex. G at PDF p. 174:6-12.[2]

21   _____

22   [1] LKA further alleges that Life Capital has received proceeds from policies and has distributed money from those
     proceeds without making payments due to it (*id.,* at PDF p. 164:11-13) and has transferred certain beneficial rights
23   and interests in some of the policies to third parties. *Id.,* at PDF p. 164:25-26.  As a result of the foregoing, LKA seeks
     an award of damages, declaratory relief, injunctive relief and/or the imposition of a constructive trust, and avoidance
24   of certain transfers made to the defendants in that action and/or third parties that allegedly were wrongfully distributed
     in violation of its rights and claims to such funds, rights and/or beneficial interests.  *Id.,* at PDF pp. 167:10-11:6.  In
25   other words, LKA not only asserts rights that allegedly would be prior to Trustee's claims but seeks a constructive
     trust and other enforcement of such purported rights.
26
27   [2] EKLK further alleges that it did not receive the required payments under the Policies and that those monies and
     certain rights and/or beneficial interests in the Policies were wrongfully converted and distributed to other parties.  *Id.*
28   at 174:26-180:19.  Accordingly, EKLK seeks an award of damages, declaratory relief, injunctive relief and/or the
     imposition of a constructive trust, and the avoidance of certain transfers, among other things.  *Id.,* at PDF pp. 180:23-

## 2. EVIDENTIARY OBJECTIONS

The Klein Entities and Daniel A. Crawford, Esq. (collectively, "Respondents")[3] object (dkt. 997 at PDF pp. 10-12) to the admissibility of (x) paragraph 3 of the Lucas Declaration (dkt. 969, PDF p. 22); (y) "Schedule C" of Life Capital's Operating Agreement (*id.*, Ex. C, Schedule C PDF p. 61); and (z) page 33 of the Life Capital's Operating Agreement (*id.,* Ex. C, PDF p. 58) on the grounds that the documents lack foundation, are hearsay and/or the declarant has not established that he is a custodian of records.

This Bankruptcy Court orally sustained those objections but granted leave for the Trustee's counsel to make an offer of proof at the hearing, to be supplemented with Trustee's declaration, about whether the Trustee could establish (i) a sufficient factual basis that he is the custodian of records or "another qualified witness" within the meaning of Rule 803(6)(D) (Fed. R. Evid.) and (ii) that the other elements of Rule 803(6) are satisfied (and a sufficient foundation for admissibility of the documents), and to follow up with the Trustee's actual written declaration verifying the foregoing things. *See* Dkt. 1026, p. 2:17-24.  *See also, e.g., United States v. Childs,* 5 F.3d 1328, 1334 (9th Cir. 1993) ("The phrase 'other qualified witness' [in FRE 803(6)] is broadly interpreted to require only that *the witness understand the record-keeping system*.") (citation omitted, emphasis added); *see also* Stay Violation Order (dkt. 1026).

In this Court's experience, trustees in bankruptcy generally qualify as an "other qualified witness" under this broad rule.  In addition, analogous authority supports that conclusion.  *See, e.g., MRT Constr. Inc. v. Hardrives, Inc.,* 158 F.3d 478, 483 (9th Cir. 1998) ("records a business *receives from others* are admissible under [FRE 803(6)] when those records are kept in the regular course of that business, relied upon by that

---

181:24.  In other words, EKLK not only asserts rights that allegedly would be prior to Trustee's claims but seeks a constructive trust and other enforcement of such purported rights.

[3] Debtor did not file any written response in advance of the hearing on the to the Stay Violation Motion or present any oral response at the hearing, so any opposition has been waived and/or forfeited. *See In re Hamer*, 138 S. Ct. 13, 17 n.1, 199 L. Ed. 2d 249 (2017) (distinguishing forfeiture and waiver)

1  business, and where that business has a substantial interest in the accuracy of the

2  records.") (emphasis added); *In re New Century TRS Holdings, Inc.,* 502 B.R. 416

3  (Bankr. D. Del. 2013) (similarly broad definition of "qualified witness," who need not

4  have personally participated in creation of that record or know who actually recorded the

5  information; if he or she is familiar with record-keeping procedures of organization).

6      Based on this Bankruptcy Court's consideration of Trustee's counsel's

7  representations on the record at the above-captioned hearing and review of Trustee's

8  supplemental declaration (dkt. 1028) filed after the hearing, this Bankruptcy Court finds

9  and concludes that Trustee has established sufficient grounds to admit the documents

10  so Respondents' evidentiary objections are overruled.

11  **3.  JURISDICTION, AUTHORITY, AND VENUE**

12      This Bankruptcy Court has jurisdiction, and venue is proper, under 28 U.S.C.

13  §§ 1334 and 1408.  This is a "core" proceeding in which this Bankruptcy Court has the

14  authority to enter a final judgment or order under 28 U.S.C. § 157(b)(2)(A).  *See*

15  *generally Stern v. Marshall*, 131 S. Ct. 2594 (2011); *In re Deitz*, 469 B.R. 11 (9th Cir.

16  BAP 2012) (discussing *Stern*); *In re AWTR Liquidation, Inc.*, 547 B.R. 831 (Bankr. C.D.

17  Cal. 2016) (same).

18  **4.  DISCUSSION**

19      **a.  § 362(a)(3)**

20      The parties' disputes concern the portion of the automatic stay contained in §

21  362(a)(3) [4], which provides:

22      (a) [With inapplicable exceptions,] a [bankruptcy] petition ... operates as a
           stay, applicable to all entities, of—

23                          * * *

24          (3) *any act to obtain possession of property* of the estate or of property
               from the estate *or to exercise control over property of the estate*[.]

25          [§ 362(a)(3), emphasis added.]

26

27  ───────────────
[4] Unless the context suggests otherwise, a "chapter" or "section" ("§") refers to the United States Bankruptcy Code,

28  11 U.S.C. § 101 et seq. (the "Code"), a "Rule" means the Federal Rules of Bankruptcy Procedure or other federal or

local rule, and other terms have the meanings provided in the Code, Rules, and the parties' filed papers.

### b. The parties' dispute

Trustee argues that Respondents violated the automatic stay under § 362(a)(3) by filing the State Court Actions because Respondents are seeking to usurp the rights, benefits and control of proceeds and/or beneficial rights and interests in millions of dollars derived from life insurance policies that the estate has an interest in and which are the subject of the Life Capital Action.  Stay Violation Motion (dkt. 969) at pp. 10:21-11:10.

Respondents contend that neither action involves property of the estate (or asserts claims against Debtor).  Opp. (dkt. 997) pp. 3:11-12 & 23, 4:14-5:9.  They argue that the LKA Action does not affect property of the estate because LKA seeks to recover payments and enforce rights to which it allegedly is entitled *prior to* any distribution to Debtor and that those payments did not pass through Debtor's hands at any time, but instead were wrongfully (they assert) conveyed to other parties.  *Id.,* pp. 4:14-5:9.  Respondents also argue that the EKLK Action involves life insurance policies that were never Debtor's property and, even assuming the policies might later become property of the estate in the event EKLK is successful (because EKLK is wholly owned by Debtor), there is no property in which Debtor himself owns even an indirect interest unless and until a judgment is entered in favor of EKLK.  *Id.*, pp. 3:14-4:13.

### c. Legal standards

"The scope of the automatic stay is undeniably broad." *In re Bialac*, 712 F.2d 426 (9th Cir. 1983).  "It is designed to effect an immediate freeze of the status quo by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993).

For conduct that violates the automatic stay to be sanctionable, it is not necessary to show that the violator knew that its acts violated the automatic stay.  Once that person knows of the bankruptcy case, and hence of the possible application of the automatic stay, they act at their own risk, unless there is an "objectively reasonable

basis" to conclude that the conduct "might be lawful" under the automatic stay. *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019).

"[A] creditor who attempts, but fails, to achieve actual control over estate property does not give the creditor a safe harbor against a stay violation action." *In re Qarni*, 2019 LEXIS 3779, at *9 (Bankr. E.D. Cal. Dec. 11, 2019) (citations omitted). In other words, an "act to" obtain possession of property, or to exercise control over property, is still an "act" even if it does not succeed.

As noted above, § 362(a)(3) stays "any act *to obtain possession of property* of the estate or property from the estate or to *exercise control over property of the estate*." § 362(a)(3) (emphasis added). The Ninth Circuit has applied a three-part test to determine whether a creditor has violated § 362(a)(3). *Bialac*, 712 F.2d 426, 429.

First, the court examined whether a "property" interest existed. *Id.* Property rights are generally, but not always, determined under applicable State law. *Butner v. United States,* 440 U.S. 48, 54 (1979) ("Congress has *generally* left the determination of property rights in the assets of a bankrupt's estate to state law.") (footnote omitted, emphasis added). But that is not always so. For example, "property of the estate" includes not just property of a debtor as of the petition date (§ 541(a)(1)) but also recoveries of avoidance actions (§ 541(a)(3)) and legal claims that belong to the estate by virtue of the filing of the petition (§ 541(a)(7)).

Second, the Ninth Circuit asked whether, if any rights in property existed, such property was "of the estate" under 11 U.S.C. § 541. *Bialac*, 712 F.2d 426, 429. This is important because some property interests that belong to a debtor do not pass into the estate, such as certain retirement accounts under § 541(b)(7), and conversely some property interests, such as avoidance actions and their recoveries, do not belong to a debtor as of the petition date but are property of the estate under § 541(a)(3) and (7). In other words, to come within § 362(a)(3) any property must be property "of the estate."

Third, the Ninth Circuit determined "*if the property was altered* in a manner contrary to the relevant provisions of 11 U.S.C. § 362(a) ...." *Bialac*, 712 F.2d 426, 429-

30 (emphasis added).  In *Bialac* the Ninth Circuit held that a creditor's act of foreclosing on 5/6ths of a promissory note converted the debtor's 1/6 _undivided_ interest into a _divided_ interest and transformed his right to redeem 100% (6/6ths) of the promissory note for $450,000.00 into a right to redeem only 1/6th for $300,000.00, which was a huge financial loss.  *Id.,* 712 F.2d 426, 432.  That constituted an act in violation of § 362(a)(3).

### (i)  The legal claims in the Life Capital Action qualify as "property," and so do the equity interests in Life Capital

Respondents focus on (A) the life insurance policies, (B) the proceeds of those policies, and (C) the Klein Entities' claims to those things as asserted in the LKA Action and the EKLK Action.  They argue that at best Life Capital has certain claims and property interests, but that Debtor's 50% ownership interest in Life Capital does not give him any direct property interest in the property belonging to Life Capital.  That is true as far as it goes.

But, first, Respondents do not deny that Debtor's 50% ownership interest in Life Capital qualifies by itself as "property."  Second, Respondents do not deny that legal claims (such as Trustee's legal claims asserted in the Life Capital Action) are a form of intangible property.  *See e.g., Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 707 (9th Cir. 1986) ("[t]he scope of section 541 is broad and includes causes of action").

### (ii) The claims in the Life Capital Action and the equity interests in Life Capital itself are property "of the estate"

Respondents contend that "neither of the Superior Court Actions involves property of the estate."  Opp. (dkt. 997) p. 3:14-15.  This Bankruptcy Court disagrees.

Again, the property at issue is not the life insurance policies, their proceeds, or Respondents' asserted claims to an interest in those things.  Instead, the property at issue is (A) the bundle of rights comprising Debtor's equity interests in Life Capital, including the dollar value of that equity interest after payment of legitimate claims or

interests that are determined to be of higher priority, and (B) the bundle of rights

asserted in the Life Capital Action.  Both of those things are property "of the

[bankruptcy] estate" under § 541(a)(1), (3), and (7).  Respondents do not claim

otherwise.

### (iii) Trustee's bundles of rights were "altered" in a manner contrary to § 362(a)(3)'s proscription against taking "possession" or "control" over property of the estate

Respondents willfully undertook acts to obtain possession of, or seek control

over, parts of the bundles of rights belonging to the bankruptcy estate.  Again, the

estate's interests include its ownership of Life Capital and the estate's claims asserted

in the Life Capital Action.  By filing the State Court Actions, which assert purportedly

superior rights in the same life insurance proceeds and assets sought by Trustee in the

Life Capital Action, and which would denude Life Capital of enormous value,

Respondents have violated § 362(a)(3).

To illustrate, consider a hypothetical scenario, and contrast that with the facts in

this case.  The hypothetical scenario is that a bankruptcy estate asserts a 0.1% interest

in the stock of General Motors and does _not_ assert any direct claim against the real or

personal property held by General Motors, and then during the bankruptcy case a

vendor sues General Motors for nonpayment.  In that scenario, the vendor's suit would

not violate the automatic stay of § 362(a)(3) because the vendor is not engaging in acts

to seizing control over General Motors, nor is the vendor engaging in acts to seize or

attempt to control any property that the estate itself owns (as distinguished from

property owned by General Motors).

This case presents a very different factual scenario.  Here, Trustee has not only

asserted a 50% membership interest in Life Capital, including _an undivided 50% interest_

_in the residual value_ of all the assets of Life Capital after payment of creditors, but has

also filed a lawsuit _asserting claims in the property of Life Capital_ - _i.e.,_ rights regarding

disposition of certain actions contemplated by Life Capital with respect to more than

$30,000,000.00 of unmatured life insurance policies.  Stay Violation Motion (dkt. 969) p. 11:5-8.  Then, almost immediately after Trustee asserted such claims, Respondents asserted their own claims to the same property that attempted to usurp all of the value of the estate's 50% interest in Life Capital and all of the value of Trustee's claims, by purporting to have primacy over whatever interests Trustee might hold.

By filing the State Court Actions, Respondents attempted to seize "possession" or "exercise control over property" of or from the estate, in violation of the automatic stay.  They were asserting competing interests in the very same property that the Trustee is seeking to recover for the benefit of the estate.  *See e.g., Qarni*, 2019 LEXIS 3779, at *9 ("The act of filing suit, which includes causes of action that seek to exercise control over property of the estate, is itself a violation of [§] 362(a)(3)," and creditor's action to appoint receiver for individual debtor's corporation was attempt to exercise control over debtor's right to steer corporate affairs).

This is no less a violation of § 362(a)(3) than what happened in *Bialac*.  In that case a seizure of property that did *not* belong to the debtor (the 5/6ths interest in the promissory note that did not belong to him) nevertheless converted his 1/6 undivided interest into a divided interest, and converted his right to redeem the entire promissory note into a much more expensive right to redeem only a 1/6 interest in the promissory note.  *See Bialac,* 712 F.2d 426, 429-30.

Likewise, this is no less a violation of § 362(a)(3) than what happened in *Hillis Motors*.  In that case a state agency's proceeding to dissolve a corporate debtor for failure to file corporate exhibits and pay its annual fees effectuated a transfer of all corporate property to the debtor's sole shareholder and deprived the trustee from continuing to oversee the administration of the estate for the benefit of creditors in accordance with the terms of the confirmed plan.  *See Hillis Motors*, 997 F.2d 581, 586-90.

To be clear, this Bankruptcy Court is *not* ruling that Respondents are prohibited from *properly* asserting any claims they believe they might have, even if those claims

assert an interest in the same property in which the estate claims an interest.  The

problem is not Respondents' desire to protect whatever rights and interests they might

have, which they could have done by, for example, seeking relief from the automatic

stay.  The problem is that Respondents sought to assert primacy over the bundle of

rights that Trustee was asserting _without_ seeking relief from the automatic stay.

**5. SANCTIONS**

Trustee asks this Court to impose sanctions against Respondents pursuant to

§ 105(a) in the form of his attorney's fees and costs.  *See In re Dyer*, 322 F.3d 1178,

1189-90 (9th Cir. 2003) ("Trustee may be entitled to recovery for violation of the

automatic stay under § 105(a) as a sanction for ordinary civil contempt") (citation and

quotation marks omitted).  To "hold a [party] in civil contempt" for violating the automatic

stay, there must be "no objectively reasonable basis for concluding that the creditor's

conduct might be lawful" under the automatic stay.  *Taggart v. Lorenzen*, 587 U.S. 554,

560.  Accordingly, this Bankruptcy Court must determine whether there was an

"objectively reasonable basis" for Respondents to conclude that filing the State Court

Actions would not violate § 362(a)(3), even though those were acts calculated to

denude the value of the estate's 50% interest in Life Capital and to supersede Trustee's

claims in the Life Capital Action.

It is not necessary for a party subjectively to want to violate the automatic stay.

*Qarni*, 2019 LEXIS 3779, at *6 (citing authorities).  But it is relevant, as Trustee

highlights, that Respondents previously engaged in similar conduct in violation of the

automatic stay by filing a probate complaint seeking to exercise control over real

property belonging to Debtor.  Stay Violation Motion (dkt. 969), p. 13:3-16 & 2:24-ap-

01140-NB, dkt. 64.  After Judge Sandra Klein (who previously presided over this case)

issued an order directing Debtor and Mr. Crawford to appear and show cause why they

have not violated the automatic stay and why they should not be sanctioned, they

dismissed the probate action.  *Id.*  Accordingly, Respondents were even more aware of

1  the potential application of the automatic stay than a typical respondent, who has no

2  such prior warning.

3      By filing the State Court Actions, Respondents knew they were acting to seize or

4  exercise control over $30 million or so of property that this Court might find is property

5  of the estate.  This Bankruptcy Court has little trouble concluding that Respondents

6  lacked an objectively reasonable basis to believe that their actions were consistent with

7  the automatic stay.  In addition, their filing of the State Court Actions establishes a

8  pattern that, once the estate asserts an interest in an asset, Respondents have

9  attempted to go into State Court to undue or supersede that interest.

10      In sum, a finding of civil contempt is appropriate because Respondents violated

11  the automatic stay based on "an objectively unreasonable understanding of the

12  [automatic stay or] its scope."  *Taggart*, 587 U.S. 554, 562.  *See also Dyer*, 322 F.3d

13  1178.  This Bankruptcy Court will determine, in further proceedings, an appropriate

14  dollar amount of civil contempt sanctions, including reimbursing Trustee and the estate

15  for the costs of Respondents' stay violations.  *See* Stay Violation Order (dkt. 1026, pp.

16  8:25-4:17).

17  **6.  CONCLUSION**

18      For the reasons set forth above, Respondents violated § 362(a)(3) of the

19  automatic stay by filing the State Court Actions, and civil contempt sanctions are

20  appropriate.  The dollar amount of those sanctions will be determined in future

21  proceedings.

22                    ###

23

24    Date: April 28, 2025

25                    Neil W. Bason
                      United States Bankruptcy Judge

26

27

28