Jeffrey W. Dulberg (CA State Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
Jeffrey P. Nolan (CA Bar No. 158923)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:   jdulberg@pszjlaw.com
           jlucas@pszjlaw.com
           jnolan@pszjlaw.com

*Counsel to Bradley D. Sharp,
Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>        Debtor. | Case No.: 2:23-bk-10990-NB<br><br>Chapter 11<br><br>**DECLARATION OF JOHN W. LUCAS IN SUPPORT OF MOTION OF CHAPTER 11 TRUSTEE FOR ORDER ENFORCING THE AUTOMATIC STAY AND AWARDING SANCTIONS**<br><br>Prior Hearing:<br>Date:         April 8, 2025<br>Time:         2:00 p.m.<br>Courtroom: 1545<br>Location:    255 E. Temple Street<br>                   Los Angeles, CA 90012<br>Judge:        Hon. Neil W. Bason<br><br>Sanctions Hearing:<br>Date:         May 20, 2025<br>Time:         1:00 p.m.<br>Courtroom: 1545<br>Location:    255 E. Temple Street<br>                   Los Angeles, CA 90012<br>Judge:        Hon. Neil W. Bason<br><br>[Relates to Docket Nos. 969, 997, 999, 1026, 1030, and 1039] |

4931-9477-0493.2 78512.001

I, John W. Lucas, declare and state as follows:

1. I am a partner in the law firm of Pachulski Stang Ziehl & Jones, LLP ("**PSZJ**"), counsel of record to Bradley D. Sharp, the duly appointed, authorized, and acting chapter 11 trustee (the "**Trustee**") of the estate of Leslie Klein, the debtor herein (the "**Debtor**"). My partner, Jeffrey W. Dulberg, and I are the attorneys at PSZJ principally responsible for representing the Trustee in this engagement.

2. I make this declaration in further support of the *Motion of Chapter 11 Trustee for Order (a) Enforcing the Automatic Stay against the Debtor, Daniel Crawford, The Crawford Law Group, Les Klein & Associates, and EKLK Foundation, (b) Compelling the Dismissal of the Actions, with Prejudice, and (c) Sanctioning Such Parties, on a Joint and Several Basis* [Docket No. 969] (the "**Motion**") and in response to the (i) *Interim Order Granting Motion for Order Enforcing the Automatic Stay and Sanctions Against (A) the Debtor, (B) Daniel Crawford, (C) Crawford Law Group, (D) Leslie Klein & Associates, and (E) EKLK Foundation, and Related Relief* [Docket No. 1026] the "**Interim Order**"), and (ii) *Declaration of Daniel A. Crawford in Opposition to Declaration of Jeffrey W. Dulberg ISO Sanctions Award* [Docket No. 1039] (the "**Crawford Declaration**"). All terms defined in the Motion are incorporated herein by this reference.

3. This declaration is submitted specifically to satisfy Paragraph 8.c of the Interim Order, which provides that "[o]n or before May 6, 2025, the Trustee shall file a reply (the "Reply") to the Sanctions Response either agreeing with or replying to the contested items in the Sanctions Response,**"** and in response to the Crawford Declaration.

4. Except as otherwise indicated, all statements in this declaration are based upon my personal knowledge, my review of certain of the Debtor's books and records, relevant documents, discovery produced by parties in this case, and other information prepared or collected by PSZJ or the Trustee's employees and/or advisors, or my opinion based on my experience serving as counsel to the Trustee in the Debtors' chapter 11 cases. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion.

5.      Despite admitting to having no experience in bankruptcy court,[1] Mr. Crawford assumes that the prosecution of an automatic stay violation should be routine. The Crawford Declaration necessitates this responsive declaration because Mr. Crawford continues to question the Court's findings issued at the April 8, 2025 hearing. As a result, PSZJ attorneys and paralegals, including myself, have had to conduct additional research, to which Mr. Crawford now objects.

6.      Paragraph 6 of the Crawford Declaration provides:

> The Trustee's motion was made in his capacity as a trustee, and not as an individual. **It is not clear whether the Trustee seeks monetary sanctions under 11 U.S.C. Sec. 362(h), or not**.

Crawford Declaration, Par. 6 (emphasis added).

7.      The Trustee's Motion clearly reflects that the Trustee is seeking sanctions pursuant to section 105(a) of the Bankruptcy Code – not section 362(h). Part IV.B of the Motion expressly reflects that the Trustee is moving pursuant to section 105(a) of the Bankruptcy Code, not section 362(h) of the Bankruptcy Code. While the case citations in the Motion reference section 362(h), they do so for the purpose of explaining that **the standard under section 105(a) of the Bankruptcy Code is the same or substantially similar to the standard under section 362(h) of the Bankruptcy Code**. The Motion is crystal clear on this point and Mr. Crawford's attempt to cast doubt on the legal basis for the Trustee's request for sanctions is disingenuous. It can only be interpreted as an attempt to confuse the Court on a point of law on what is otherwise a straightforward point. Indeed, Mr. Crawford's disingenuous reading of the Motion and unwillingness to engage in a discussion regarding his actions are the most significant factors necessitating the request for sanctions on behalf of the Trustee and the estate.

8.      Prior to filing the Motion, I attempted to contact Mr. Crawford immediately after I became aware of the complaints filed by LKA and EKLK. I emailed Mr. Crawford numerous times (*see* Motion, Exhibit I) and I only received his letter (see Motion, Exhibit J) (the "**Crawford Letter**").

---

[1] Indeed, their lack of depth is so severe that neither Mr. Crawford nor his partners are even registered with ECF. Mr. Crawford requires Mr. Olson to file Mr. Crawford's pleadings as a result.

9. In addition, I called Mr. Crawford's direct office telephone number numerous times (and left numerous voicemails). I also called and left messages with his partner in my attempt to talk to a person about the complaints filed by LKA and EKLK.

10. Mr. Crawford did not return any of my telephone calls. Mr. Crawford did not return any of my emails. Mr. Crawford refused to engage in any discussion and insisted that he push forward with his litigation on behalf of LKA and EKLK even in the face of my numerous attempts to communicate with him for the purpose of bringing a resolution to the dispute.

11. It is my practice to engage with parties before asking the Court to adjudicate a dispute, especially when it comes to a potential stay violation. The impact of bankruptcy's automatic stay is often not "clear-cut," and I prefer to give non-debtors initial leeway and a chance to discontinue, disavow, and/or withdraw the violative actions.

12. Here, however, Mr. Crawford refused to engage. As a result, the fees incurred by the Trustee are **directly** a result of Mr. Crawford's unwillingness to partake in even a single telephone call. Had Mr. Crawford engaged with me, the Trustee would have considered not pursuing sanctions. Had Mr. Crawford responded to me at that time (as I reached out to him when I first learned about the pending violative lawsuits) we could have resolved this without the Trustee seeking sanctions entirely, which was the purpose of my emails and telephone calls to Mr. Crawford.

13. In Paragraphs 8-14 of the Crawford Declaration, Mr. Crawford contends, without any legal support, that he and the other parties that violated the automatic stay cannot be held in contempt because they are not parties to the Debtor's bankruptcy case. Mr. Crawford asserts that:

> I note I have attempted to locate specific legal authority for or against the foregoing proposition, but have not been able to find any either way. I have not seen this proposition raised in or addressed by another court. I believe this legal contention is warranted by a nonfrivolous argument for extending or modifying existing law, or for establishing new law.

Crawford Declaration, Para. 14.

14. Mr. Crawford was not able to find any case law on this issue because his proposition is simply incorrect. Mr. Crawford's frivolous argument requires me, at expense to the estate, to

research and respond to his baseless attempt to avoid sanctions. Accordingly, the Trustee will be required to supplement the sanctions award.

15. The automatic stay is "designed to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *In re Stringer*, 847 F.2d 549, 552 (9th Cir. 1988). Section 362 of the Bankruptcy Code is "'extremely broad in scope and should apply to almost any type of formal or informal action against the debtor or the property of the estate." *Delpit v. Comm'r*, 18 F.3d 768, 771 (citing and quoting 2 Collier on Bankruptcy Par. 362.04, at 362-34 (15th ed. 1993)). Most importantly,

> [The] automatic stay **applies worldwide**, whether or not this is consistent with domestic law in the relevant foreign country. **If a creditor violates the stay anywhere in the world, that creditor is subject to sanctions in the United States**. Sanctions may include the denial of a creditor's claim in a U.S. bankruptcy case, monetary sanctions and, in an extreme case, injunctive relief. If a foreign creditor has assets that are subject to the jurisdiction of a United States court or has filed a claim in the relevant bankruptcy case, the bankruptcy court will be able to enforce sanctions for violation of the automatic stay, even if the violation occurred outside the United States.

*In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 863 (Bankr. C.D. Cal. 2008).

16. While the holding in *Pro-Fit* was directed at "creditors of a debtor," they nevertheless apply to Mr. Crawford, LKA, and EKLK because actions taken against a debtor or estate assets, whether or not they are taken by a "creditor" are stay violations. Thus, the existence of a stay violation does not turn on whether the party is a creditor, *per se*, but whether the action affects the debtor or the estate. Here, the actions by LKA and EKLK violate the stay because they are affecting estate rights and assets. It makes no difference whether LKA, EKLA, or their counsel, are "parties" to this bankruptcy case or made a formal appearance in the case for them to violate the automatic stay and be subject to sanctions.

17. My partner, Mr. Dulberg filed a declaration [Docket No. 1030] (the "**Dulberg Declaration**") in support of the Motion. Mr. Dulberg and I are thoroughly familiar with all aspects of this case and PSZJ's representation of the Trustee. Mr. Dulberg and I regularly discuss the short-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

term and long-term goals of the case, strategize about the advice that we provide to the Trustee, and consult with each other regarding all the actions taken in this case.

18. In addition, Jeffrey P. Nolan regularly works on this matter and he regularly discusses the case, including the short-term and long-term goals, and strategizes about the advice that we provide to the Trustee with Mr. Dulberg and me. While it is true that neither Mr. Dulberg nor I are "standing over the shoulders of each other," or Mr. Nolan for that matter, we do conduct weekly calls with the Trustee and his other advisors, and regularly discuss case issues and all matters that are being prosecuted on behalf of the Trustee, which includes the Motion.

19. It is customary for a professional representing a bankruptcy estate, in connection with a fee application, to file timesheets as means of reporting the number of hours incurred and the type of services provided on behalf of the estate. An estate professional is not required to file declarations for <u>each</u> of the timekeepers to demonstrate the authenticity of the time billed and the descriptions thereof. Instead, a single declaration is filed by an attorney who familiar with the case from top to bottom. In this instance, that attorney could have been me or Mr. Dulberg.

20. The time entries set forth on Exhibit K of the Dulberg Declaration were submitted by each of the applicable timekeepers in the ordinary course of business using a timekeeping program that PSZJ uses for all attorneys and paralegals. All timekeepers are required to input their time and describe the services performed (and categorize the time). Once the time is entered, PSZJ's accounting department generates a monthly invoice that reflects all of the time incurred on behalf of the Trustee. Thus, Exhibit K to the Dulberg Declaration was prepared in the ordinary course of business, it is true and correct, and it accurately reflects the fees and other costs incurred by the Trustee in support of the Motion.

21. Mr. Crawford contends that the Motion is a "routine" matter that should not have required as much time as I and others at PSZJ devoted to it. Mr. Crawford is not only wrong, but he assumes that when a party is seeking sanctions for a stay violation that the prosecuting party can simply cite cases with boilerplate law that may or may not apply to this facts at bar.

22. Here, the stay violation by Mr. Crawford and his clients was assuredly not routine. For example, the two actions filed by LKA and EKLK were not filed against the Debtor. Thus, at

first glance, a stay violation was not "obvious" since the actions were filed against non-debtors. However, PSZJ was required to review the complaints filed by both LKA and EKLK and then review the LLC Agreement of Life Capital Group, LLC ("**LCG**") to determine if the allegations therein had any overlap with the rights held by the estate under the LLC Agreement. Even at that juncture, it was necessary to identify written opinions that captured the correct application of the law to facts that are similar or substantially similar (*e.g.*, is a limited liability company agreement of a non-debtor entity property of the estate; when are actions again non-debtor stay violations, etc.). Contrary to Mr. Crawford's amateurish assertions, PSZJ does not have a file of "stay violation" cases stowed away in a drawer that we look to when events like this happen. In fact, in my more than twenty years of chapter 11 practice, it is rare that a party violates the stay in the first instance, and even more infrequent that a party refuses to communicate and engage in discussions when the ongoing stay violation is brought to their attention.

23. In Paragraph 25 of the Crawford Declaration, Mr. Crawford questions the services provided by Ms. Dassa and Mr. Derac, who are both are paralegals at PSZJ who regularly work on the Klein bankruptcy case. Their familiarity with the case brings value and their role relieves PSZJ attorneys from having to perform tasks that should be left to a paralegal at a suitable billing rate.

24. In Paragraphs 29-31 of the Crawford Declaration, Mr. Crawford also questions Mr. Dulberg's and my hourly rates. At the outset of the Trustee's appointment, PSZJ filed a retention application [Docket No. 177] that outlines the range of hourly rates of attorneys and paralegals. Judge Klein approved retention application [Docket No. 330] and the rates and any compensation that PSZJ seeks will be subject to fee applications under sections 327 and 330 of the Bankruptcy Code. The Motion, the reply to the objection, the Dulberg Declaration, and this declaration all show the amount of time and work the Trustee, and his counsel, had to devote to this stay violation. Each of the foregoing pleadings demonstrate that the amount of fees and other costs sought by the Trustee are well supported and reasonable. If Mr. Crawford has a legitimate objection to the hourly rates charged by PSZJ then he should file an objection in response to PSZJ's fee application after it is filed.

25. In Paragraph 26 of the Crawford Declaration, Mr. Crawford questions two billing entries on March 13, 2025, that reference "306 Highland." Mr. Crawford is correct that the subject matter of "306 Highland" does not relate to the Motion but it appears that topic might have arisen in connection with matters related to the Motion. However, PSZJ and the Trustee will not belabor this and agree to deduct the two entries, each for the duration of .3 hours, and each in the amount of $478.50 (for a total of $957.00).

26. In Paragraph 27 of the Crawford Declaration, Mr. Crawford contends that I should not have spent an hour "collecting and assembling exhibits" in support of the Motion. While perhaps this is work that a paralegal ordinarily performs, that cannot occur until after an attorney reviews the exhibits and instructs the paralegal which exhibits are relevant. A paralegal is typically incapable of knowing where to locate the exhibits, which exhibits to include, or how to arrange them in the declaration. In this case, there were 10 exhibits, and it is not only routine for an attorney to collect the exhibits (and review them) but essential that an attorney perform this task at the outset to ensure that the correct documents are being submitted in support of the Motion. It should also be noted that my legal assistant did the majority of the work related to this task and the estate did not charge for my legal assistant's services.

27. In Paragraph 28 of the Crawford Declaration, Mr. Crawford contends that my legal research took place on multiple days and was duplicative, but he fails to explain why he believes that it was duplicative or show any reason to support that it was duplicative. All the legal research I performed was necessary and was not duplicative. I did not treat the Motion as a routine task but rather as a serious issue because it is not the practice of PSZJ to seek sanctions against other lawyers. Instead, when I prosecute this type of motion, it is extremely important that that all the legal and factual points be correct and very well supported.

28. In Paragraphs 32-38 of the Crawford Declaration, Mr. Crawford asserts that Mr. Dulberg and I spent far too much time preparing the Motion, reviewing the opposition, and preparing the reply. Mr. Crawford does not provide any support for his assertion other than he believes the fees should not exceed $12,000. However, Mr. Crawford has already admitted to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Court that he is not a bankruptcy practitioner. As a result, it is not clear how he came to this conclusion when his case citations in opposition to the Motion are inapt and not well supported.

29. Each and every hour that Mr. Dulberg and I spent on the Motion and related pleadings was essential. Notably, I was required to spend more time on the Motion and the reply because I had to research and respond to the many unfounded legal propositions (*e.g.*, LKA and EKLK are not parties to this bankruptcy case and as such are not subject to the automatic stay). The same was true of the Crawford Letter and the opposition to the Motion. Given that the Court already found that the commencement of the actions by LKA and EKLK are stay violations, I should not be required to address Mr. Crawford's continued and meritless attempts in his declaration to avoid the damages arising from the liability that the Court **already** found and determined.

30. In the Dulberg Declaration, Mr. Dulberg reserved the right to supplement the fees and other costs incurred because the Interim Order (Par. 8.c) required PSZJ to submit a reply to Mr. Crawford's declaration if we did not agree with it. Plus, I expect that PSZJ will incur additional time attending the hearing on the Court's adjudication of the damages calculation that by all rights should be awarded as well.

31. Annexed hereto as **Exhibit L** are additional billing entries and other costs PSZJ incurred enforcing the automatic stay against Mr. Crawford and Mr. Olson and their clients. The time entries set forth on **Exhibit L** hereto were submitted by each of the applicable timekeepers in the ordinary course of business using a timekeeping program that PSZJ uses for all attorneys and paralegals. Like the time entries on Exhibit K, the timekeepers reflected on **Exhibit L** hereto are required to input their time and describe the services performed (and categorize the time). Once the time is entered, PSZJ's accounting department generates a monthly invoice that reflects all of the time incurred on behalf of the Trustee. Thus, **Exhibit L** hererto was prepared in the ordinary course of business, it is true and correct, and it accurately reflects the fees and other costs incurred by the Trustee in support of the Motion.

32. On behalf of the Trustee and PSZJ, I reserve the right to supplement this declaration accordingly.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 5th day of May 2025, at Chatsworth, California.

                                                    /s/ John W. Lucas  
                                                      John W. Lucas

# EXHIBIT L

(Additional Billing Entries)

4931-9477-0493.2 78512.001

| DATE | TIMEKEEPER | TASK | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|
| 4/8/2025 | John W. Lucas | Prepare for motion to enforce automatic stay re Leslie Klein, Les Klein & Associates, and D. Crawford | 0.50 | $1,425.00 | $ 712.50 |
| 4/8/2025 | John W. Lucas | Travel from Los Angeles to San Francisco for April 8 in person hearing | 1.50 | $712.50 | $ 1068.75* |
| 4/9/2025 | Jeffrey W. Dulberg | Review and revise order on LKA/EKLK stay enforcement | 0.50 | $1,595.00 | $ 797.50 |
| 4/9/2025 | John W. Lucas | Revise and update order regarding stay violation by Debtor and Crawford | 0.60 | $1,425.00 | $ 855.00 |
| 4/14/2025 | Jeffrey W. Dulberg | Work on issues for declration regarding Crawford/EKLK fees | 0.70 | $1,595.00 | $ 1,116.50 |
| 4/15/2025 | Jeffrey W. Dulberg | Review entered order regarding EKLK/Crawford and email regarding same | 0.30 | $1,595.00 | $ 478.50 |
| 4/15/2025 | Jeffrey W. Dulberg | Work on declaraton regarding fees regarding EKLK/Crawford | 0.70 | $1,595.00 | $ 1,116.50 |
| 4/18/2025 | Jeffrey W. Dulberg | Work on my declaration in support of sanctions and draft extensive email to team regarding same | 0.40 | $1,595.00 | $ 638.00 |
| 4/21/2025 | Jeffrey W. Dulberg | Review file and emails with team regarding interim order regarding EKLK | 0.20 | $1,595.00 | $ 319.00 |
| 4/21/2025 | Jeffrey W. Dulberg | Work on Dulberg declaration regarding Klein sanctions and emails with B. Dassa | 0.70 | $1,595.00 | $ 1,116.50 |
| 4/21/2025 | Beth D. Dassa | Prepare exhibit to J. Dulberg supplemental declaration re motion to enforce stay and award sanctions (1.70); revisions to J. Dulberg declaration re same (.30); emails J. Dulberg re same (.20) | 2.20 | $625.00 | $ 1,375.00 |
| 4/22/2025 | Beth D. Dassa | Emails J. Dulberg and N. Brown re EKLK sanctions order | 0.20 | $625.00 | $ 125.00 |

| DATE | TIMEKEEPER | TASK | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|
| 4/22/2025 | Beth D. Dassa | Revisions to declaraton and motion to enforce stay and sanctions (.20) and emails J. Dulberg, DSI team and N. Brown re same (.20) | 0.40 | $625.00 | $ 250.00 |
| 4/29/2025 | Beth D. Dassa | Review Dec of D. Crawford re Opposition to J. Dulberg declaration in support of request for sanctions (.10) and email DSI team re same (.10) | 0.20 | $625.00 | $ 125.00 |
| 4/29/2025 | Beth D. Dassa | Email DSI team re Memo Decision and Order re Motion to Enforce Automatic Stay and Sanctions | 0.10 | $625.00 | $ 62.50 |
| 5/5/2025 | John W. Lucas | Review Crawford Declaration in opposition to sanctions declaration (.5); research regarding Crawford Declaration re stay violation (.80); draft declaration in response per interim order re same (1.70 | 3.00 | $1,425.00 | $ 4,275.00 |
| 5/5/2025 | Jeffrey W. Dulberg | Review and revise Lucas Declaration regarding Crawford sanctions | 1.40 | $1,595.00 | $ 2,233.00 |
| **TOTAL HOURS AND FEES** | | | **13.60** | | **$ 15,595.50** |

\* Rate reduced to 50% for non-working travel and only 33% of the time was allocated to the stay enforcement motion because JWL travelled for unrelated stay enforcement matters for the Trustee.