Jeffrey W. Dulberg (CA Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
Jeffrey P. Nolan (CA Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile: 310-201-0760
Email: jdulberg@pszjlaw.com
         jlucas@pszjlaw.com
         jnolan@pszjlaw.com

*Counsel to Bradley D. Sharp,
Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:23-bk-10990-NB |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | **MOTION OF CHAPTER 11 TRUSTEE, FOR ORDER (1) ENFORCING THE AUTOMATIC STAY AND VOIDING GRANT DEED; AND (2) SANCTIONS AGAINST (A) THE DEBTOR, (B) TRUSTEE OF THE CREDIT TRUST OF THE SECOND AMENDED KLEIN LIVING TRUST, (C) THE CREDIT TRUST OF THE SECOND AMENDED KLEIN LIVING TRUST, AND (D) EKLK FOUNDATION, AND RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFFREY W. DULBERG** |
| | Date:      TBD |
| | Time:      TBD |
| | Location: U.S. Bankruptcy Court |
| | Courtroom 1545 |
| | 255 E. Temple St. |
| | Los Angeles, CA 90012 |
| | Judge:    Hon. Neil W. Bason |
| | *[REQUESTED HEARING DATE & TIME: June 17, 2025, at 1:00 p.m.]* |
| | [Application For Order Setting Hearing On Shortened Notice Filed Concurrently Herewith] |

*(left margin, vertical text)* PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4902-6835-8733.3 78512.001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND PARTIES ENTITLED TO NOTICE HEREOF:**

**PLEASE TAKE NOTICE** that Bradley D. Sharp, in his capacity as Chapter 11 Trustee (the "**Trustee**") of the bankruptcy estate (the "**Estate**") of Leslie Klein, the debtor herein (the "**Debtor**"), hereby moves (the "**Motion**") the Court for entry of an order deeming null and void a grant deed, recorded in the Official Records of Recorder's Office, Los Angeles County as 20250120374 (the "**Deed**"), dated February 25, 2025, purporting to transfer property of the Estate, *i.e.*, title to real property located at 322 N. June St., Los Angeles, CA (the "**June St. Property**"), to one of the Debtor's affiliates, EKLK Foundation ("**EKLK**"), in direct contravention of the automatic stay, and other related relief.

On December 18, 2024, Judge Sandra Klein determined that the June St. Property is property of the Estate (the "**MSJ**"). On May 2, 2025, Judge Neil Bason refused to issue a stay of the MSJ [Docket Nos. 1049 and 1050] and the Trustee subsequently utilized the U.S. Marshals Service to evict the Debtor and take control of the June St. Property. On June 5, 2025, the Bankruptcy Appellate Panel of the Ninth Circuit Court of Appeals (the "**BAP**") affirmed Judge Klein's MSJ ruling.

The Debtor, in his capacity as trustee (the "**Credit Trustee**") of the Credit Trust (the "**Credit Trust**") of the Second Amended Klein Living Trust (the "**Klein Living Trust**"), issued the Deed to EKLK on February 25, 2025, in utter disregard for the quiet title judgment relating to the June St. Property and the automatic stay, both of which were unquestionably in effect at the time the Debtor issued the Deed and subsequently recorded the Deed on EKLK's behalf. Indeed, while the Court was wrestling with the difficult decision to deny the Debtor's request for a stay because, above all, he had no case on the merits, the Debtor had *already secretly* deeded the June St. Property to EKLK. This purported transfer is an abomination, and aside from undoing its harmful effects, the Court should reserve a future date to sanction the Debtor and any professional he utilized to conduct his illegal and wrongful actions.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Trustee first became aware of the existence of the Deed on June 11, 2025. The fact that the Debtor issued the Deed is an outright slap to the face of this Court and the Estate's stakeholders. As the Court is aware, the June St. Property holds significant value. The Debtor's issuance of the Deed is very likely to confuse title insurers and is now causing the Trustee to expend more Estate funds to nullify any effect it might have had. The whole point of the quiet title action is thwarted if the Debtor is permitted to get away with this outrageous behavior.

Accordingly, the Trustee respectfully requests the Court to enter an order (a) enforcing the automatic stay to protect valuable property of the Estate; (b) finding that the attempted transfer of the June St. Property by way of the Deed is null and void and has no force or effect as a result of the automatic stay under section 362(a) of the Bankruptcy Code; (c) authorizing the Trustee to record an order granting the Motion for the purpose of nullifying the Deed and clearing title of the June St. Property on account of the recordation of the Deed; (d) authorizing the Trustee to seek further relief from the Court if a title company refuses to issue title insurance as a result of the Debtor's attempt to cloud title to the June St. Property; (e) sanctioning the Debtor, Credit Trustee, Creditor Trust, and EKLK, on a joint and several basis, for the costs and fees associated with enforcing the Trustee's rights as the duly appointed representative of the Estate; and (f) granting such other and further relief as the Court deems necessary.

**PLEASE TAKE FURTHER NOTICE** that the Trustee is seeking, via his concurrently filed Motion to Shorten Time, the Court's authorization to notice the Motion for a hearing on **June 17, 2025,** at **1:00 p.m. Pacific Time**, or as soon thereafter as counsel may be heard before the Honorable Neil W. Bason, United States Bankruptcy Judge, in Courtroom 1545, 255 East Temple Street, Los Angeles, California 90012.

**PLEASE TAKE FURTHER NOTICE** that upon the Court's scheduling of a hearing on the Motion, the Trustee will promptly serve and file a notice of hearing on the Motion reflecting the date and time ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities and Declaration of Jeffrey W. Dulberg

annexed hereto, the record in this chapter 11 case, as well as any other documentary evidence as may be presented to this Court at or before the hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), if you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it upon the undersigned counsel no later than the deadline to be scheduled by the Court in response to the Motion to Shorten Time. The failure to properly file and serve an opposition may be deemed consent to the relief requested in the Motion or a waiver of any right to oppose the Motion.

Dated: June 12, 2025                              PACHULSKI STANG ZIEHL & JONES LLP


By     */s/ Jeffrey W. Dulberg*
       Jeffrey W. Dulberg

       *Counsel to Bradley D. Sharp,*
       *Chapter 11 Trustee*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4902-6835-8733.3 78512.001

4

# **<u>TABLE OF CONTENTS</u>**

Page(s)

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I. PRELIMINARY STATEMENT .......................................................................................... 1

II. BACKGROUND ................................................................................................................. 2

   A.   Bankruptcy Case Background ..................................................................................... 2

   B.   The June St. Action and June St Appellate Action ................................................... 3

   C.   The Grant Deed and Attempted Transfer of the June St. Property ....................... 4

III. Relief requested ............................................................................................................... 4

IV. ARGUMENT .................................................................................................................... 5

   A.   Section 362(a) Automatically Stays Any Transfer of the June St. Property ......... 5

   B.   Sanctions Under 11 U.S.C. § 105(a) are Necessary and Appropriate .................. 8

V. Conclusion ...................................................................................................................... 10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## **<u>TABLE OF AUTHORITIES</u>**

**<u>Page(s)</u>**

**Cases**

*Bank of Los Angeles v. Official PACA Creditors' Comm. (In re Southland + Keystone)*,
132 B.R. 632 (9th Cir. B.A.P. 1991) .......................................................................................... 6

*Butner v. United States*,
440 U.S. 48 (1979) ..................................................................................................................... 7

*Havelock v. Taxel (In re Pace)*,
67 F.3d 187 (9th Cir. 1995) ........................................................................................................ 8

*Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*,
997 F.2d 581 (9th Cir. 1993) ...................................................................................................... 5

*In re Bialac*,
712 F.2d 426 (9th Cir. 1983) ...................................................................................................... 7

*In re LPM Corp.*,
269 B.R. 217 (9th Cir. B.A.P. 2001) .......................................................................................... 6

*In re Schwartz*,
954 F.2d 569 (9th Cir. 1992) ...................................................................................................... 6

*In re Thu Thi Dao*,
616 B.R. 103 (Bankr. E.D. Cal. 2020) ....................................................................................... 6

*Knupfer v. Lindblade (In re Dyer)*,
322 F.3d 1178 (9th Cir. 2003) .................................................................................................... 8

*Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re
Spaulding Composites Co.)*,
207 B.R. 899 (B.A.P. 9th Cir. 1997) .......................................................................................... 6

*Morris v. Peralta*,
317 B.R. 381 (B.A.P. 9th Cir. 2004) .......................................................................................... 6

*Palmdale Hills Prop., LLC v. Lehman Commer. Paper, Inc. (In re Palmdale Hills Prop., LLC)*,
654 F.3d 868 (9th Cir. 2011) ...................................................................................................... 6

*Pinkstaff v. United States (In re Pinkstaff)*,
974 F.2d 113 (9th Cir. 1992) ...................................................................................................... 8

*Ramirez v. Fuselier (In re Ramirez)*,
183 B.R. 583 (B.A.P. 9th Cir. 1995) .......................................................................................... 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Shin v. Altman (In re Altman),*

    2018 Bankr. LEXIS 1947 (9th Cir. BAP June 26, 2018) ............................................................. 7

*United States v. Arkison (In re Cascade Roads, Inc.),*

    34 F.3d 756 (9th Cir. 1994) ............................................................................................................. 8

**Statutes**

11 U.S.C. § 105 ...................................................................................................................................... 8

11 U.S.C. § 362 ................................................................................................................................. 2, 6

28 U.S.C. § 157 ...................................................................................................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### PRELIMINARY STATEMENT

On February 25, 2025, the Debtor, in his capacity as Credit Trustee, executed and recorded a grant deed attempting to transfer title of the June St. Property from the Credit Trust to EKLK,[1] a company owned and controlled by the Debtor. Nine months earlier, the Trustee commenced an action for the primary purpose of quieting title of the June St. Property which resulted in an order placing title squarely with the Estate. The Debtor is apparently attempting to "re-cloud" title presumably to prevent or delay the sale of the June St. Property by the Trustee. The Trustee recently obtained a broker's opinion of value that shows the June St. Property is worth more than $6,000,000 with no encumbrances and only subject to an exemption in the amount of $189,050. This is the Debtor's third intentional violation of the automatic stay in less than six months, and two of these violations relate directly to the June St. Property.

It is indubitable that the Debtor is aware of the bankruptcy case that *he* filed on February 22, 2023. He is also acutely aware that an automatic stay is in effect, which he enjoys to this day with respect to the many actions against him based on his fraudulent acts and other mismanagement of the trusts and assets of many innocent third parties. The Debtor has contested the Trustee's actions to quiet title of the June St. Property since the inception of the adversary proceeding filed in May 2024.

The Debtor has continued to fight the Trustee's actions by appealing Judge Sandra Klein's ruling regarding the June St. Property. Instead of letting the courts resolve the disputed title of the June St. Property, the Debtor simply took matters into his own hands by executing the Deed by the Credit Trustee, as grantor, purporting to transfer the June St. Property to EKLK, as grantee. The Debtor's actions are a willful and intentional attempt to assert control over the June St. Property in violation of the automatic stay under 11 U.S.C. § 362(a). The automatic stay, however, renders

---

[1] EKLK is also the same company that filed a state court action against Life Capital Group, LLC thereby violating the automatic stay by attempting to take control of claims and assets of the Estate arising out of the Estate's interest in Life Capital Group, LLC.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  any attempted transfer void *ab initio*. Nevertheless, the Trustee seeks the relief herein on shortened

2  notice because the Debtor's actions are causing irreparable harm to the estate as he is readying to

3  market the June St. Property by clouding title of the June St. Property after the Trustee spent the

4  past year and considerable estate resources quieting title and taking control of the June St.

5  Property. Absent relief sought herein, the Debtor's ongoing violation of the automatic stay will

6  continue to cause the Trustee to expend valuable resources to thwart the Debtor's usurpation of an

7  Estate asset that is valued at more than $6,000,000.

8          For the reasons set forth herein, the Trustee respectfully request the Court to approve the

9  Motion.

10                                              **II.**

11                                      **BACKGROUND**

12  **A.      Bankruptcy Case Background**

13          On February 22, 2023 (the "**Petition Date**") [Docket No. 1], the Debtor commenced a

14  voluntary chapter 11 case in the United States Bankruptcy Court for the Central District of

15  California (Los Angeles Division) Case No. 23-10990.

16          On May 23, 2023, and in response to certain creditors seeking to dismiss the Debtor's case,

17  the Court denied the motion to dismiss and instead instructed the Office of the United States

18  Trustee (the "**UST**") to appoint a chapter 11 trustee to administer the Debtor's Estate and chapter

19  11 case. In response, the UST filed a *Notice of Appointment of Chapter 11 Trustee [Docket No.*

20  *151]. On May 24, 2023, the UST filed an Application for Order Approving Appointment of Trustee*

21  *and Fixing Bond* [Docket No. 154], which was approved by order entered the same day [Docket

22  No. 155]. On that same day, the Trustee accepted his appointment [Docket No. 156], as the

23  chapter 11 trustee of the Estate.

24          Since May 2023, the Trustee has been administering the Debtor's case and Estate with

25  little to no cooperation from the Debtor or his cadre of counsel[2] that he uses in the bankruptcy case

26

27  [2] Since the filing of this case, the Debtor has had numerous counsel that include: (a) The Law Offices of Michael Jay
    Berger; (b) The Law Offices of Michael Kogan; (c) The Law Offices of Eric Olson; (d) FLP Law Group, LLP; (e)

28  Parker, Milliken, Clark, O'Hara & Samuelian; (f) Michele Ferroni; (g) The Crawford Law Group.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  and numerous other actions that he commenced that are at cross-purposes with the best interests of

2  his creditors.

3  **B.**    **The June St. Action and June St Appellate Action**

4        On May 23, 2024, the Trustee commenced an action, Case No. 2:24-ap-01140 (the "**June**

5  **St. Action**") seeking to (i) quiet title, pursuant to section 760.101, et. seq. of the California Code

6  of Civil Procedure, of the June St. Property in the name of the Debtor and, as such, as property of

7  the Estate, (ii) avoid any unrecorded or invalid transfers, pursuant to section 544(a)(3) of the

8  Bankruptcy Code, of the June St. Property, and (iii) recover the Estate's interest in the June St.

9  Property, pursuant to section 550 of the Bankruptcy Code.

10        In the June St. Action, the Trustee filed a *Motion for Summary Judgment on All Claims for*

11  *Relief Against Defendants* (the "**MSJ**") [Adv. Docket No. 32],[3] seeking summary judgment on all

12  claims for relief as set forth in the complaint.  One week before the hearing on the MSJ, the

13  Debtor filed a motion to continue the hearing on the MSJ. [Adv. Docket No. 51] (the "**Motion to**

14  **Continue**"). The Motion to Continue was filed by Daniel A. Crawford of the Crawford Law

15  Group. In the Motion to Continue, the Debtor admitted that Mr. Crawford filed a complaint (the

16  "**Probate Complaint**") in probate court seeking to "reform" the Debtor's living trust (which owns

17  the Property) for the purpose of "reforming" the trust so that the June St. Property could be

18  transferred from the Debtor's living trust to a sub-trust that is not property of the Debtor's Estate.

19        The MSJ was granted by Judge Klein on December 20, 2024 (the "**MSJ Order**") [Adv.

20  Docket No. 62]. A true and correct copy of the MSJ Order is annexed to the Dulberg Declaration

21  as **Exhibit "A"**. Judge Klein held that there was no evidence showing that the Debtor had

22  transferred the Property from his living trust to any of its sub-trusts. Plus, even if the Debtor had

23  made such transfer, it would not have mattered because the Debtor's living trust, and the sub-trusts

24  thereunder, are self-settled and as a result the *res* held by any such trusts are property of the

25  Debtor's Estate. A transcript of the Court's December 18, 2024, ruling on the MSJ and the Motion

26  to Continue is annexed to the Dulberg Declaration as **Exhibit "B"**.

27

28  _____
[3] All references to [Adv. Docket No. ___] relate to the June St. Action.

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   As reflected in Judge Klein's ruling, the Court also denied the Motion to Continue. At the

2   close of the MSJ hearing, the Trustee's counsel brought the Probate Complaint to Judge Klein's

3   attention. In response, Judge Klein entered an order to show cause why the Debtor and Mr.

4   Crawford were not in violation of the automatic stay by filing the Probate Complaint and seeking

5   to reform the Debtor's living trust with respect to the Property. [*See* Adv. Docket No. 64] (the

6   "**Order to Show Cause**"). In response to the Order to Show Cause, Mr. Crawford caused the

7   Probate Complaint to be dismissed with prejudice. At that time, the Trustee did not seek sanctions

8   against Mr. Crawford or his law firm, but instead sought to have the Probate Complaint promptly

9   dismissed, which eventually happened.

10   The Debtor and the other defendants in the June St. Action appealed the MSJ Order to the

11   BAP, Case No. 25-1002 (the "**June St. Appellate Action**"). The June St. Appellate Action was

12   fully briefed on March 26, 2025, and the BAP heard oral argument on May 29, 2025. Just *one*

13   *week* later, on June 5, 2025, the BAP entered a decision [BAP Docket No. 20] (the "**BAP**

14   **Memorandum Decision**") affirming the MSJ Order. A true and correct copy of the BAP

15   Memorandum Decision is annexed to the Dulberg Declaration as **Exhibit "C"**.

16   **C.**      **The Grant Deed and Attempted Transfer of the June St. Property**

17   On February 25, 2025, the Debtor, acting as Credit Trustee under the Credit Trust,

18   executed a grant deed then recorded it in the Official Records of Recorder's Office, Los Angeles

19   County as 20250120374 (the "**Deed**") that purports to transfer the June St. Property from the

20   Credit Trust to EKLK. A true and correct copy of the Deed is annexed to the Dulberg Declaration

21   as **Exhibit "D"**. The execution and recordation of the Deed occurred approximately five days after

22   the Debtor and other appellants filed their opening brief in the June St. Appellate Action.

**III.**

**RELIEF REQUESTED**

25   Pursuant to sections 105(a) and 362 of the Bankruptcy Code, the Trustee is seeking entry

26   of an order: (a) enforcing the automatic stay against the Debtor, Credit Trustee, Credit Trust, and

27   EKLK with respect to their attempt to transfer the June St. Property from the Credit Trust to

28   EKLK, (b) finding that the attempted transfer of the June St. Property by way of the Deed is null

1  and void and has no force or effect as a result of the automatic stay under section 362(a) of the

2  Bankruptcy Code; (c) authorizing the Trustee to record an order granting the Motion for the

3  purpose of clearing title of the June St. Property on account of the recordation of the Deed; (d)

4  authorizing further relief from the Court if a title company refuses to issue title insurance as a

5  result of the Debtor's attempt to cloud title to the June St. Property; (e) sanctioning the Debtor,

6  Credit Trustee, Creditor Trust, and EKLK, on a joint and several basis, for the costs and fees

7  associated with enforcing the Trustee's rights as the duly appointed representative of the Estate;

8  and (f) granting such other and further relief as the Court deems necessary. A copy of the proposed

9  order is annexed hereto as **Exhibit "E"** (the "**Proposed Order**"). This is a core proceeding

10  pursuant to 28 U.S.C. § 157.

## IV.

## ARGUMENT

**A.**     **Section 362(a) Automatically Stays Any Transfer of the June St. Property**

The automatic stay of section 362(a) of the Bankruptcy Code protects property of the estate

in which the debtor has a legal, equitable, or possessory interest. *Ramirez v. Fuselier (In re

Ramirez)*, 183 B.R. 583, 587 (B.A.P. 9th Cir. 1995). As recognized by the Ninth Circuit, section

362 of the Bankruptcy Code is a critical protection of bankruptcy law and quite broad in its scope:

> It is designed to effect an immediate freeze of the status quo by
> precluding and nullifying post-petition actions, judicial or
> nonjudicial, in nonbankruptcy fora against the debtor or affecting
> the property of the estate. The automatic stay plays a vital and
> fundamental role in bankruptcy. The stay ensures that all claims
> against the debtor will be brought in a single forum, the bankruptcy
> court. The stay protects the debtor by allowing it breathing space
> and also protects creditors as a class from the possibility that one
> creditor will obtain payment on its claims to the detriment of all
> others.

*Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993)

(citations omitted).

"The automatic stay arising in consequence of the filing of a petition initiating a

bankruptcy case protects property of the estate from judgment enforcement, acts to obtain

possession of property of the estate, and acts to create, perfect, or enforce a lien." *In re Thu Thi*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  *Dao*, 616 B.R. 103, 111 (Bankr. E.D. Cal. 2020) (citing 11 U.S.C. § 362(a)). Moreover, per

2  section 362(c) of the Bankruptcy Code, "[t]he automatic stay protects property of the estate until

3  (1) it is no longer property of the estate or (2) the bankruptcy proceeding is closed, dismissed, or a

4  debtor's discharge is either granted or denied." *In re LPM Corp.*, 269 B.R. 217, 220 (9th Cir.

5  B.A.P. 2001). Further, "Since the automatic stay is effective against the world, regardless of

6  notice, acts in violation of the stay are automatically void ab initio." *Morris v. Peralta*, 317 B.R.

7  381, 389 (B.A.P. 9th Cir. 2004) (quoting *In re Schwartz*, 954 F.2d 569, 572–74 (9th Cir. 1992))

8  (emphasis added).

9      The automatic stay imposed by section 362(a) of the Bankruptcy Code bars actions that

10  would diminish the estate of a debtor in bankruptcy; therefore, if another party seeks to alter

11  claims held by a debtor's estate such party must seek relief from stay from the first debtor's home

12  bankruptcy court. *Palmdale Hills Prop., LLC v. Lehman Commer. Paper, Inc. (In re Palmdale*

13  *Hills Prop., LLC)*, 654 F.3d 868, 871, 875-876 (9th Cir. 2011). In *Palmdale Hills*, the estate of one

14  debtor sought to subordinate the claims of another debtor's estate and the Ninth Circuit held that

15  another party cannot seek to alter the rights of the affirmative claims of a debtor's estate without

16  first seeking stay relief. *Id*.

17      The determination of whether assets are property of the estate is a core matter of

18  bankruptcy court jurisdiction. *Bank of Los Angeles v. Official PACA Creditors' Comm. (In re*

19  *Southland + Keystone)*, 132 B.R. 632, 638 (9th Cir. B.A.P. 1991) ("Clearly, a determination of

20  whether assets are property of the bankruptcy estate concerns administration of the estate.")

21      In the Ninth Circuit, courts apply a three-part test to determine whether a party's actions

22  rise to the level of exercising control over property of the estate in violation of 11 U.S.C. §

23  362(a)(3). *Qarni v. Vahora (In re Qarni)*, Nos. 19-12679-A-13, 19-01090-A, 2019 Bankr. LEXIS

24  3779 at *6 (Bankr. E.D. Cal. Dec. 11, 2019). Courts ask first "whether the debtor had a property

25  right at state law," second, "whether that right was property of the estate[,]" and third, whether

26  "'the property was altered in a manner contrary to the relevant provisions of 11 U.S.C. § 362(a)'"

27  *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re*

28  *Spaulding Composites Co.)*, 207 B.R. 899, 907 (B.A.P. 9th Cir. 1997) (quoting *In re Bialac*, 712

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  F.2d 426, 429–30 (9th Cir. 1983)). "[A] debtor's property rights are defined by state law." *Shin v.*

2  *Altman (In re Altman)*, 2018 Bankr. LEXIS 1947, 2018 WL 3133164 at *5 (9th Cir. BAP June 26,

3  2018) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979).

4    It is indisputable that the June St. Property is property of the Debtor's Estate.

5  Consequently, any action to transfer the June St. Property or otherwise cloud title to the it without

6  Court authorization is a violation of section 362(a) of the Bankruptcy Code. As set forth in *Bialac*,

7  712 F.2d 426, 429-30 (9th Cir. 1983), the Debtor's actions violate the stay because:  (a) the June

8  St. Property is undoubtedly property of the Estate per the MSJ Order and BAP Memorandum

9  Decision, (b) the foregoing decisions held that the Debtor's Estate owns the June St. Property

10  because the title reflects that the property is owned by the Klein Living Trust and such trust (and

11  the sub-trusts thereunder) are self-settled, and (c) the execution of the Deed is a blatant attempt to

12  negatively impact the Estate's interest in the June St. Property.

13    The relief requested herein is neither complicated nor controversial under any

14  interpretation of the facts. The June St. Property is an extremely valuable asset that was recently

15  valued at more than $6,000,000. The Debtor continues to ignore this Court's orders and take

16  matters into his owns hands for the clear purpose of stealing Estate assets and clouding title on a

17  property that will be used to make distributions to the holders of allowed claims.

18    Now that both this Court and the BAP have found that the June St. Property is property of

19  the Debtor's Estate, the Trustee must not be hamstrung by the Debtor's illegal actions that are not

20  only clouding title but also causing the Trustee to unnecessarily expend estate resources that

21  would be better used to administer the Estate. The Trustee is concerned that the Debtor's repeated

22  violative actions will prevent or delay him from selling the June St. Property. If a title company,

23  buyer, or other party that is integral of the sale of the June St. Property is unwilling to close a sale

24  on account of the Deed or other conduct by the Debtor, the Trustee requests authorization to seek

25  further relief for the purpose of re-quieting title and addressing the concerns of a party or parties

26  that are reticent to close a sale.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**B.      Sanctions Under 11 U.S.C. § 105(a) are Necessary and Appropriate**

In light of the attempt to transfer the June St. Property by the Debtor, Credit Trustee, Credit Trust, and EKLK, who are fully aware of the Debtor's bankruptcy case and the status of the June St. Property, sanctions are necessary to deter further violations and appropriate to reimburse the Estate for the costs and fees incurred by the Trustee to protect the June St. Property for the benefit of the Estate.

This is the Debtor's third clear and express stay violation in the course of less than six months. The Debtor's blatant disregard for the automatic stay and the property interests of this Estate warrants sanctions. Section 105 of the Bankruptcy Code Provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Moreover, "[a] trustee can recover damages in the form of costs and attorney's fees under section 105(a) as a sanction for ordinary civil contempt." *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir. 1995) (citing *United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756, 767 (9th Cir. 1994); *see also Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190 (9th Cir. 2003) (while a trustee has "no private right of action for damages resulting from automatic stay violations," their recovery "is limited to the civil contempt remedy provided by § 105(a).").

"The threshold standard for imposing a civil contempt sanction in the context of an automatic stay violation therefore dovetails with the threshold standard for awarding damages under § 362(h)." *In re Dyer*, 322 F.3d at 1191 (citing *Pace*, 67 F.3d at 191) (applying the willfulness standard of § 362(h) as dictated by *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir. 1992)). Thus, under both statutes, the key consideration in permitting an award is not a finding of "bad faith" or subjective intent, but instead a determination of "willfulness." *Pace*, 67 F.3d at 191. A "willful violation" does not require a specific intent to violate the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   automatic stay, but only "a finding that the defendant knew of the automatic stay and that the

2   defendant's actions which violated the stay were intentional." *Id.*

3       The actions of the Debtor and the entities he controls are the very definition of willful and

4   intentional. As discussed above, in December 2024, the Debtor caused the filing of the Probate

5   Complaint where he sought to reform the Klein Living Trust (and the sub-trusts thereunder) for

6   the purpose of transferring the June St. Property from the Klein Living Trust to the Credit Trust. In

7   January 2025, the Debtor and EKLK (and his law firm, Les Klein & Associates) filed two actions

8   in state court that sought to assume control of causes of action against Life Capital Group, LLC,

9   regarding Estate claims arising from the Estate's interest in Life Capital Group, LLC, which are

10  claims controlled by the Trustee pursuant to an adversary proceeding that was commenced in

11  January 2025. Most recently, the Court found that the Debtor's and EKLK's state court actions

12  violated the automatic stay. *See* [Docket No. 1033].

13      The Debtor's and EKLK's repeated efforts to assume control over Estate assets is

14  purposeful, intentional, and willful. The Debtor and other parties are aware of the Debtor's chapter

15  11 case and clearly understand the actions the Trustee has taken with respect to June St. Property.

16  Any action to transfer or assume control of the June St. Property (as the Credit Trustee and EKLK

17  attempted by way of the Deed) is a willful violation of the automatic stay that should be subject to

18  sanctions. Absent severe sanctions, the Debtor's conduct will continue but down a different path.

19      If the Court determines that sanctions for the costs and fees associated with this Motion is

20  warranted, the Trustee proposes that he submit a declaration that provides a detailed overview of

21  the costs and fees incurred by the Estate because of the Debtor's and other's actions. If such

22  declaration is opposed, then the Trustee will schedule a hearing on regular notice and file a reply

23  to any opposition no later than seven days before the calendared hearing.

24

25

26

27

28

# V.

## **CONCLUSION**

For the reasons set forth above, the Trustee respectfully requests that this Court enter the Proposed Order granting this Motion in its entirety, including the imposition of sanctions, and granting such other and further relief as this Court deems just and proper.

Dated:  June 12, 2025                    PACHULSKI STANG ZIEHL & JONES LLP


                                   By    /s/ Jeffrey W. Dulberg
                                         Jeffrey W. Dulberg

                                         Counsel to Bradley D. Sharp,
                                         Chapter 11 Trustee

1

2                                          (Dulberg Declaration)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JEFFREY W. DULBERG

I, JEFFREY W. DULBERG, declare:

1.        I am an attorney at law duly licensed to practice before all courts in the State of California.  I am a partner with the law firm of Pachulski Stang Ziehl & Jones LLP, counsel of record for Bradley D. Sharp, Chapter 11 Trustee of the estate of Leslie Klein (the "**Debtor**"). The facts stated herein are of my own personal knowledge, or made known to me from a review of the files and pleadings in this action which are maintained in the ordinary course of business. If called upon as a witness to any facts set forth herein, I could and would competently testify thereto.

2.        Attached hereto as **Exhibit "A"** is a true and correct copy of the MSJ Order.

3.        Attached hereto as **Exhibit "B"** is a true and correct copy of the December 18, 2024 hearing transcript.

4.        Attached hereto as **Exhibit "C"** is a true and correct copy of the Original BAP Memorandum Decision.

5.        Attached hereto as **Exhibit "D"** is a true and correct copy of the Deed.


Executed this 12th day of June, 2025, at San Francisco, California.


_____/s/ Jeffrey W. Dulberg_____

Jeffrey W. Dulberg

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## **EXHIBIT A**

(MSJ Order)

<table>
<tr><td>1</td><td>Jeffrey W. Dulberg (State Bar No. 181200)<br>John W. Lucas (State Bar No. 271038)</td></tr>
</table>

1 | Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
2 | Jeffrey P. Nolan (State Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
3 | 10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
4 | Telephone: 310.277.6910
Facsimile: 310.201.0760
5 | Los Angeles, California 90067-4003
E-mail: jdulberg@pszjlaw.com
6 | jlucas@pszjlaw.com
jnolan@pszjlaw.com
7 |
Attorneys for Plaintiff, Bradley D. Sharp,
8 | Chapter 11 Trustee



FILED & ENTERED

DEC 20 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY may          DEPUTY CLERK

9 |
**UNITED STATES BANKRUPTCY COURT**
10 | **CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**
11 |
12 | In re:                                    Case No.: 23-10990-SK

13 | LESLIE KLEIN,                             Adv. Case No.: 2:24-ap-01140-SK

14 |          Debtor.                          Chapter 11

15 | BRADLEY D. SHARP, Chapter 11 Trustee,    **ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT ON ALL**
16 |          Plaintiff,                       **CLAIMS FOR RELIEF AGAINST**
**DEFENDANTS**
17 | v.
                                           Date:   December 18, 2024
18 | LESLIE KLEIN, an individual, THE SECOND   Time:   10:30 a.m.
AMENDED KLEIN LIVING TRUST, a trust,       Place:  Courtroom 1575
19 | THE MARITAL DEDUCTION TRUST OF                     255 E. Temple Street
ERIKA KLEIN, a trust, THE SURVIVOR'S               Los Angeles, CA 90012
20 | TRUST OF LESLIE KLEIN, a trust, and
BARBARA KLEIN, an individual,             [Relates to Docket Nos. 32, 33, 34, 36, 43, 44,
21 |                                          48 and 49]
         Defendants.
22 |
23 |
24 |          A hearing was held on December 18, 2024 at 10:30 a.m. in Courtroom 1575, 255 East

25 | Temple Street, Los Angeles, California 90012 before the Honorable Sandra R. Klein for the Court

26 | to consider and act upon the *Motion For Summary Judgment On All Claims for Relief Against*

27 | *Defendants* (the "**Motion**")[1] [Adv. Docket No. 32], filed by plaintiff, Bradley D. Sharp, as trustee

28 | _____
[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4920-9348-3016.1 78512.001

1 (the "**Plaintiff**") for the Chapter 11 estate of Leslie Klein.  Appearances were as noted on the

2 record.

3          Based upon the record, the Motion, the declaration of John W. Lucas [Adv. Docket No.

4 33], the request for judicial notice [Adv. Docket No. 34], and the statement of facts and

5 conclusions of law [Adv. Docket No. 36], filed by Plaintiff in support of the Motion; the

6 opposition to the Motion filed by Defendants [Adv. Docket No. 43], the statement of genuine

7 issues of facts filed by Defendants [Adv. Docket No. 44]; the reply to the statement of facts filed

8 by Plaintiff [Adv. Docket No. 48], and the reply to the Opposition filed by Plaintiff [Adv. Docket

9 No. 49]; the motion to continue filed by Defendants [Adv. Docket No. 51]; and the opposition to

10 the Motion to Continue, filed by Plaintiff [Adv. Docket No. 52]; and the arguments of counsel at

11 the hearing; based on the findings of fact and conclusions of law made by the Court on the record

12 of the hearing; and good cause appearing therefor; and for the reasons stated by the Court on the

13 record of the hearing,

14          **IT IS HEREBY ORDERED:**

15          1.      The Motion is GRANTED.

16          2.      The Bankruptcy Court shall retain exclusive jurisdiction to resolve any dispute

17 arising from or relating to this Order.

18                                          # # #

19

20

21

22

23 Date: December 20, 2024

24                                    Sandra R. Klein
                                      United States Bankruptcy Judge

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

(December 18 Hearing Transcript)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

```
 1                  UNITED STATES BANKRUPTCY COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                            -oOo-

 4   In Re:                    ) Case No. 2:23-10990
                               ) Chapter 11
 5   LESLIE KLEIN              )
                               ) Los Angeles, California
 6                  Debtor.    ) Wednesday, December 18, 2024
     _____  ) 10:30 AM
 7
                                 ADV#: 2:23-01150
 8                               VAGO, ET AL v. KLEIN, ET AL.

 9                               ADV#: 2:23-01167
                                 SHARP, CHAPTER 11 TRUSTEE V.
10                               KLEIN, ET AL.

11                               ADV#: 2:24-01140
                                 SHARP, CHAPTER 11 TRUSTEE v.
12                               KLEIN, ET AL.

13                               #22.00 HRG RE MOTION FOR
                                 SUMMARY JUDGMENT ON ALL
14                               CLAIMS FOR RELIEF AGAINST
                                 DEFENDANTS
15
                                 #23.00 STATUS CONFERENCE RE
16                               COMPLAINT FOR QUIET TITLE AND
                                 AVOIDANCE OF UNRECORDED
17                               INTERESTS IN REAL PROPERTY
                                 LOCATED AT 322 N. JUNE ST.,
18                               LOS ANGELES, CA

19                 TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE SANDRA R. KLEIN
20               UNITED STATES BANKRUPTCY JUDGE

21   APPEARANCES (All present by video or telephone):
     For the Debtor:          LESLIE KLEIN, PRO SE
22
                              ERIC J. OLSON, ESQ.
23                            EJOlsonLaw
                              301 East Colorado Boulevard
24                            Suite 520
                              Pasadena, CA 91101
25                            (626)224-5619
```

2

```
 1   APPEARANCES (Continued):
     For the Debtor:             DANIEL A. CRAWFORD, ESQ.
 2                                Crawford Law Group
                                  15303 Ventura Boulevard
 3                                Floor 9
                                  Sherman Oaks, CA 91403
 4                                (818)935-6568

 5   For the Chapter 11          JEFFREY W. DULBERG, ESQ.
     Trustee:                    Pachulski Stang Ziehl & Jones
 6                                10100 Santa Monica Boulevard
                                  13th Floor
 7                                Los Angeles, CA 90067
                                  (310)277-6910
 8
                                 JOHN W. LUCAS, ESQ.
 9                                Pachulski Stang Ziehl & Jones
                                  One Sansome Street
10                                Suite 3430
                                  San Francisco, CA 94104
11                                (415)263-7000

12   For Joseph and Rachel       REEM J. BELLO, ESQ.
     Vago:                       Goe Forsythe & Hodges LLP
13                                17701 Cowan
                                  Suite 210, Lobby D
14                                Irvine, CA 92614
                                  (949)798-2460
15
     For Kenneth and Shoshana    SIMON ARON, ESQ.
16   Klein:                      Wolf, Rifkin, Shapiro, Schulman &
                                  Rabkin, LLP
17                                11400 West Olympic Boulevard
                                  Ninth Floor
18                                Los Angeles, CA 90064
                                  (310)478-4100
19

20

21

22

23

24

25
```

3

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17  Court Recorder:              WANDA TOLIVER
                                United States Bankruptcy Court
18                              Edward R. Roybal Federal Building
                                255 East Temple Street
19                              Room 940
                                Los Angeles, CA 90012
20                              (855)460-9641

21  Transcriber:                MICHAEL DRAKE
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (800) 257-0885
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

4

1   LOS ANGELES, CALIFORNIA, WEDNESDAY, DECEMBER 18, 2024, 10:28 AM

2                                   -oOo-

3        (Call to order of the Court.)

4        THE COURT:  So then the only remaining matter are the

5   Klein matters.  And I said those would be called at 10:30.  So

6   we're a little early for that.  I don't know if -- and I cannot

7   see on my screen who else may be in the Zoom room.  If anyone

8   is here on the Klein matters, please turn your video on because

9   you will show up in a different screen.

10        Hello, Mr. Dulberg.

11        MR. DULBERG:  Good morning, Your Honor.  I think

12   the -- just to assist Your Honor with your calendar, I think

13   the first item is the nondischargeability action involving the

14   Vagos.  And I see Ms. Bello is on.  I know Your Honor is having

15   trouble seeing folks.

16        THE COURT:  Yes.  Now I can see you.  That makes it

17   much easier.  So hold on.  Let me get there.

18        MR. DULBERG:  So we're not technically appearing on

19   that matter like I say.  But again, just to aid your video, we

20   were -- Mr. Lucas and I have jumped on here.

21        THE COURT:  Okay.  Thank you.  Yes, I believe that

22   will be quite brief.

23        So matter number 20 is Vago versus Klein.  Ms. Bello?

24        MS. BELLO:  Yes.  Good morning, Your Honor.  Reem

25   Bellow of Goe Forsythe & Hodges on behalf of Erica and Joseph

5

1   Vago.

2          THE COURT:  Good morning.  And, Mr. Olson, do you

3   represent Mr. Klein in this one?

4          MR. OLSON:  No.  I understood he was appearing in pro

5   se.

6          THE COURT:  Okay.  Well, he's not here.

7          Ms. Bello, what would you like the Court to know?

8          MS. BELLO:  Your Honor, according to our joint status

9   report, because of the issue of the appeal still out there,

10  both plaintiff, my clients, and Mr. Klein who participated in

11  preparing the joint status report and signed it, requested that

12  the Court simply not set dates yet that continue out the status

13  conference.

14         THE COURT:  And Ms. Bello, the appeal was -- I looked

15  at the docket.  I didn't see an appeal of the order that I

16  entered.  Did I miss it?

17         MS. BELLO:  No, Your Honor.  I apologize.  What was

18  meant by the appeal is the debtor's pre-petition appeal of the

19  Vagos judgment.

20         THE COURT:  Okay.  Understood.  And where is that in

21  its way through the state court system?

22         MS. BELLO:  I don't think anything has happened since

23  the bankruptcy was filed.

24         THE COURT:  Okay.

25         MS. BELLO:  We had reached out to the trustee after he

6

1    was appointed.

2              THE COURT:  Hold on.  I believe someone is speaking.

3    Please let Ms. Bello speak.  You'll be given an opportunity to

4    speak when she's done.

5              Ms. Bello?

6              MR. KLEIN:  Thank you.

7              MS. BELLO:  Yes.  We had reached out to the trustee.

8    Nothing has really transpired.  On that front, we've had

9    discussions with the debtor regarding settlement of the entire

10   proceeding, including the appeal.  That has not yet been

11   resolved.  So nothing has really happened on the appeal, Your

12   Hono, from the debtor taking any action.  And I believe that

13   might be Mr. Klein who was trying to speak earlier.

14             THE COURT:  Okay.  Mr. Klein, was that --

15             MR. KLEIN:  I agree with everything -- I agree.

16             THE COURT:  You agree what, Mr. Klein?

17             MR. KLEIN:  This is Mr. Leslie Klein.  I agree with

18   what Ms. Bello said.

19             THE COURT:  Okay.  So basically you agree that this

20   should be stayed pending the appeal, your state court appeal,

21   but it really hasn't gone anywhere.

22             MR. KLEIN:  That is correct.  I would like to go to

23   mediation.  We went to two full days of mediation with an

24   excellent mediator.  His name is Ben Free (ph.).  And I would

25   like to go back to him to mediate this matter.  I think it

1  could be settled.  I am convinced I could settle the case

2  today.

3          THE COURT:  Well, Mr. Klein, that certainly is up to

4  you and Ms. Bello, but I'm not involved in anything regarding

5  the state court judgment.  So you would have to address that

6  with Ms. Bello offline.

7          In terms of what to do regarding the status

8  conference, I can continue it for six months.  And then maybe

9  there might be --

10          MR. KLEIN:  Perfect.

11          THE COURT:  -- some type of resolution.  So I'm going

12  to continue this to some time in June.

13          Ms. Bello, I don't know if you were on.  I will be

14  retiring, so I will not be handling this case in June.  It will

15  be reassigned sometime n the spring.  I'll ask you as

16  plaintiff's counsel to get in touch with the new judge assigned

17  to the case to get this on track on the judge's calendar

18  sometime in June.

19          MS. BELLO:  Your Honor, if I may, would it be possible

20  to -- is Your Honor retiring early in 2025?

21          THE COURT:  It will be sometime in the spring.  I'm

22  not sure when the cases will be reassigned.

23          MS. BELLO:  Then maybe it makes more sense to continue

24  it out for ninety days while Your Honor is still on the bench.

25          THE COURT:  The last date that I currently have for

8

1   hearing is February 26th, which has already gotten really full.

2   And that's only eight weeks, not three months.  So --

3            MS. BELLO:  Okay.

4            THE COURT:  I think it's best to continue it to June.

5   I you want to get it on earlier, you certainly can.  If you

6   want me to say it should be on in April or May, I can say that.

7   That's up to you.  It's just there's nothing to report right

8   now.  And I don't think there's been much to report in this

9   case.  So I didn't want you to have to come in and spend money

10  just to say there's not much going on.

11           MS. BELLO:  Right.

12           THE COURT:  So I --

13           MS. BELLO:  All right.  That's fine, Your Honor.

14           THE COURT:  Okay.  So I'll continue it to June of 2025

15  for you to contact the new judge's chambers to get it on

16  calendar.

17           MS. BELLO:  Yes, Your Honor.

18           THE COURT:  Okay.  Thank you.

19           MS. BELLO:  Thank you.

20           THE COURT:  All right.

21           MR. KLEIN:  Thank you, Your Honor.

22           THE COURT:  Thank you.

23           So then turning to the actual motion for summary

24  judgment, I see Mr. Lucas turned his video on.

25           MR. DULBERG:  Your Honor, I just note that number 21

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document    Page 32 of 161
**Leslie Klein**

9

1  is the status conference on the other adversary that I

2  thought -- Mr. Lucas and I thought it would make sense to deal

3  with that first.

4          THE COURT:  Okay.  That's fine.

5          MR. DULBERG:  This is on Ken and Shoshana Klein as

6  defendants.

7          THE COURT:  Yes.  Yes.  And I know there's a pending

8  motion for summary judgment.  The motion and the opposition had

9  come in.  I think the reply is due today if I'm --

10         MR. DULBERG:  That's right.  We're in the midst of

11  getting it on file to do this afternoon.

12         THE COURT:  Okay.  Was there anything you'd like to

13  add on that, Mr. Dulberg?

14         MR. DULBERG:  Not in particular.  Mr. Aron is on as

15  well.  I didn't know if there was much to add at this point.  I

16  think the report otherwise speaks for itself.

17         THE COURT:  Mr. Aron?

18         MR. ARON:  Good morning again, Your Honor.  Simon Aron

19  for the defendants, Kenneth and Shoshana Klein.

20         I agree with Mr. Dulberg.  There isn't much to add.  I

21  think the only outstanding question was one of mediation where

22  we've been discussing the possibility of a mediation here.

23  Defendants have come around to the position that it would make

24  sense.  But I believe the trustee was still reserving its

25  position on whether it wanted to proceed with mediation or he

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document   Page 33 of 161
**Leslie Klein**

10

1  wanted to proceed with mediation or not.

2          So other than that, I think we're on track.  And I

3  believe the summary judgment hearings are set for February 5th,

4  if I'm not mistaken.

5          THE COURT:  5th, That's correct.  That's correct.

6          MR. ARON:  So it might make it might make sense to

7  continue the status conference to either that date or a date

8  subsequent to allow that process to go through.

9          THE COURT:  Mr. Dulberg, what is your position about

10 mediation?  Because it might be a good idea for the parties to

11 consider that before the Court rules on the summary judgment.

12         MR. DULBERG:  Your Honor, we thought a couple of

13 things.  1, we wanted to get these papers on.  And then 2, Mr.

14 Aron filed a cross-motion for summary judgment.  So it just

15 strikes me as being unlikely to be ripe for mediation at this

16 point, given the sort of diametrical opposition or

17 diametrically opposed positions I guess you would say that the

18 parties are taking on the same set of facts, roughly speaking.

19         So our view was mediation works best when there is

20 some -- when there's room.  And frankly, Your Honor, I just

21 don't know that this is there yet.  We've been focused on

22 getting these reply papers on.  The schedule is tight.  Two

23 weeks from the opposition deadline, there were a slew of

24 declarations and materials put in in addition to the

25 cross-motion.  So to be honest, that's been taking up a lot of

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document     Page 34 of 161
**Leslie Klein**

11

1  the time since.  Maybe once the dust settles and Mr. Aron's

2  client and my client at a time to sort of take in more of what

3  each side has had an opportunity to say, we can discuss that.

4  But up until now, we sort of have not been there yet.

5          THE COURT:  Understood.  I've reviewed the papers.  I

6  know what came in.  I'm well aware of what's being argued in

7  both sides' briefs.

8          MR. DULBERG:  Thank you, Your Honor.

9          THE COURT:  In terms of the cross-motion, it's

10 basically the opposition but just brought it as an affirmative

11 motion.

12         MR. DULBERG:  Something to that effect.

13         THE COURT:  Mr. Aron, you may disagree with the

14 Court's characterization of that.  But it's basically the

15 opposition as a motion.

16         MR. ARON:  Your Honor, I disagree somewhat.  I

17 would --

18         THE COURT:  Okay.

19         MR. ARON:  There's no denying there's an extreme

20 amount of overlap.  The parties have -- both have a set of

21 facts.  And they argue those set of facts.  We do obviously

22 both in the opposition.  More to the point, in the opposition

23 that the trustee hasn't carried its burden and that the

24 cross-motion asserts somewhat, again concurrently, based upon

25 the same facts, that there actually are facts.  The facts

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 35 of 161
**Leslie Klein**

12

1   actually support judgment for the defendants rather.  So --

2           THE COURT:  Right.  Right.

3           MR. ARON:  Can't argue.

4           THE COURT:  Okay, yeah.  It's --

5           MR. ARON:  Can't --

6           THE COURT:  It's the same set of facts.  It's just

7   which lens you look through it at or through --

8           MR. ARON:  Precisely.

9           THE COURT:  Okay.

10          MR. ARON:  Precisely.

11          THE COURT:  All right.  That's fine.  That's fine.

12  All right.  So then --

13          MR. DULBERG:  Your Honor, if I just might add, we

14  otherwise are fine with Mr. Aron's suggestion about having the

15  status report -- excuse me, the status conference and moving it

16  to the date of the next hearing.

17          THE COURT:  Yeah.  I think that's appropriate.  So

18  we'll just continue that to February 5th at 9.

19          MR. DULBERG:  Very well.  Thank you.

20          THE COURT:  Okay.  Thank you.

21          So then that gets us to the motion for summary

22  judgment.  I have read the pleadings.  I'm very familiar with

23  the facts.  I'm very familiar with the law.  Please don't

24  reiterate what's in the pleadings.  But if there's something

25  you would like to highlight, I'm interested in hearing it.  I

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document    Page 36 of 161
**Leslie Klein**

13

1   don't know who for the trustee would be arguing Mr. Lucas or

2   Mr. Dulberg.

3          MR. DULBERG:  I'm going to yield the floor to Mr.

4   Lucas.  Thank you,  Your Honor.

5          THE COURT:  Okay.  All right.  So Mr. Lucas, the floor

6   is yours.  You are the movant.  You have the burden.

7          MR. LUCAS:  Thank you, Your Honor.  Good morning.

8   John Lucas, Pachulski Stang Ziehl & Jones, for the

9   trustee/plaintiff in this summary judgment motion before the

10  Court.

11         Your Honor, one thing that I would like to do is just

12  a couple of housekeeping matters so that I can proceed to my

13  argument.  I think it's important for me to look at adversary

14  docket number 33, which is a declaration from myself which

15  contains documents produced by the defendants.  There's five

16  exhibits:  the premarital agreement and an amendment to the

17  premarital agreement, Barbara's admissions, the other

18  defendant's admissions, and the defendants' responses to

19  interrogatories.  I'm asking for the Court to admit those

20  documents into evidence.

21         THE COURT:  Any objection, Mr. Olson?

22         MR. OLSON:  No.

23         THE COURT:  They're admitted, Mr. Lucas.

24         MR. LUCAS:  Thank you, Your Honor.

25         Adversary docket number 34 is a request for judicial

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document       Page 37 of 161
**Leslie Klein**

14

1    notice.  There are Exhibits A through K.  A through E include

2    the petition in various orders regarding the trustee's

3    appointment.  That's A through E.  F are the schedules and

4    statements.  G is an order disallowing the homestead exemption

5    stopped by the debtor.  H is a duly recorded copy of the June

6    Street property deed.  I is a duly recorded copy of the second

7    amended Klein living trust.  Exhibits J and K are the complaint

8    and answer in the adversary proceeding respectively.  We ask

9    for those exhibits to be admitted into evidence.

10           THE COURT:  The Court admits those.  All of them are

11   either filed in this adversary in the main bankruptcy case or

12   were publicly filed documents.  And so the Court can take

13   judicial notice of each of those documents, although the Court

14   cannot take judicial notice of the truth of the contents of

15   those documents.  I can go through the law.  I already had that

16   written out in a ruling, but you short-circuited that for me,

17   Mr. Lucas, so thank you.

18           MR. LUCAS:  Your Honor, I'm just trying to proceed in

19   the way that if I have argument, I sort of want the facts to be

20   in the record.

21           THE COURT:  I appreciate it.

22           MR. LUCAS:  And then the third point, which is

23   similar, Your Honor, at adversary docket 36 is the trustee's

24   statement of facts.  And then in response to the defendants'

25   objection to that is adversary docket 48, where the trustee

15

1   replies to the defendants' statement.  And we can see in six

2   points raised by the defendant that we agree with the change 1

3   But otherwise, we believe that the defendants' attempt to

4   create a factual dispute fails.  We're doing nothing other than

5   citing to the documents which are already in the record.  And

6   we believe that our statement of facts, as modified by docket

7   number 48, should be admitted into evidence.

8          THE COURT:  And Mr. Lucas, I go through the facts

9   based upon the evidence in the record.  So I'm going to hold on

10  that.  I will lay out the uncontroverted facts in my ruling.

11         MR. LUCAS:  Thank you, Your Honor.

12         Then one thing --

13         MR. OLSON:  Your Honor, if I could --

14         THE COURT:  Who's --

15         MR. OLSON:  -- there has been a motion to continue

16  this hearing based on the fact that there has been a filing in

17  the probate court in the LA Superior Court.

18         THE COURT:  Thank you for the reminder, Mr. Olson.  So

19  there was a motion filed.  And there was no briefing on this,

20  and the Court intentionally didn't set a briefing.  A motion

21  was filed on 12/11, one week before today's hearing.  And

22  today's hearing was scheduled more than two and a half months

23  ago.  And the debtor filed a motion for continuance of the

24  hearing on the motion for summary judgment.

25         So I'm just going to go through the facts, and then

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 39 of 161
**Leslie Klein**

16

1  I'll rule on that motion for continuance.

2        And Mr. Lucas, I did not give you a chance to respond,

3  but I am addressing it now.

4        Mr. Olson, you could have set it for hearing.  You

5  could have filed an application for order shortening time.  You

6  did not do that.  You certainly knew about today's hearing date

7  more than two and a half months ago.  You also could have filed

8  something explaining why you were seeking to have it heard

9  today, but you didn't.  It just was hanging out there.  It just

10  so happened that I did see it on the docket.  So on March --

11        MR. OLSON:  Your Honor actually, it was filed by

12  Attorney Crawford.  And I don't know why he's not on the --

13        THE COURT:  He is on the -- he is on the Zoom, Mr.

14  Olson.  I can see him.

15        MR. OLSON:  Oh.

16        THE COURT:  So the complaint was filed by the trustee

17  seeking to quiet title and avoid unrecorded interest in the

18  June Street property on May 23rd.

19        On May 29th, a first amended complaint was filed

20  against Klein, the second amended Klein living trust, the

21  marital deduction trust, the survivor's trust, and Barbara

22  Klein, seeking to quiet title and avoid unrecorded interest in

23  the June Street property.

24        On July 12th, answers were filed -- an answer was

25  filed by all defendants.

1          On July 29th, a joint status report was filed that

2   docket 23, the trustee mentioned that he believed once

3   discovery was complete, the complaint could be resolved via

4   summary judgment.

5          On August 21st, a status conference, the Court set the

6   following deadlines:  August 31st to propound discovery,

7   September 30th to file dispositive motions.

8          On September 12th, debtor filed a motion for order

9   joining necessary parties.  The Court denied the motion at an

10  October 16th hearing.

11         On September 20th, ten days before the deadline, the

12  trustee filed the motion for summary judgment.  Shortly

13  thereafter, the Court set the briefing deadline and set the

14  matter for hearing today.  The opposition was due October 15th,

15  and the reply was due October 30th.  And debtor filed a timely

16  opposition.  At no time did debtor mention any request to

17  continue the hearing.

18         On 12/4, a status report was filed.  For the first

19  time, debtor mentioned that he thought the proper venue was,

20  quote, in the Superior Court in probate.  But he has said

21  nothing more about that.

22         On 12/11, as I mentioned, one week before today's

23  hearing -- and again, this hearing was scheduled more than two

24  and a half months ago, debtor filed the motion for continuance

25  of the hearing on the summary judgment.  Debtor claims that

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document    Page 41 of 161
**Leslie Klein**

18

1    issues regarding the motion for summary judgment all relate to

2    the internal affairs of the Klein trust and the respective

3    rights of the beneficiaries and cannot be decided by this

4    Court.  Klein argued that all issues regarding the internal

5    affairs of the Klein trust, including his role, the existence

6    and effect of the subtrust, and the interests of the

7    beneficiaries in the property are subject to the exclusive

8    jurisdiction of the probate Court and must be decided by that

9    court.  Klein indicated that he filed a petition in the LA

10   Superior Court which has been set for hearing in February.  He

11   claims that that court's decision will establish Conclusively

12   the existence and effectiveness of the marital deduction trust

13   and the credit trust.

14          Klein also on 12/11 filed a amended schedule AB which

15   expressly he claims address allocation of the interest in the

16   property.  The Court notes that Klein had previously filed his

17   schedules in April, most recently April of 2023.  So we're now

18   21 months later when Klein files an amended schedule AB to

19   supposedly address the interest in the property.

20          Klein claims that he retained new counsel, Mr.

21   Crawford, to assist with litigating this case, and due to the

22   complexity of the case, Crawford needs a continuance.

23          In support of the motion, Klein filed a declaration of

24   Mr. Crawford who indicates he was retained on 12/2, two weeks

25   ago.  And he filed a petition in the probate Court to confirm

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document      Page 42 of 161
**Leslie Klein**

19

1    the validity of the marital deduction trust and the credit

2    trust and to affirm Mr. Stein's allocation of the property to

3    the subtrust and beneficiaries.  I'm not sure if that was a

4    typo or why -- I don't know who Mr. Stein is.

5            Attached to that declaration is a caption page, just

6    one page, of a document filed in LA Superior Court 24STPB13777.

7    And the caption of that document is, quote, verified petition

8    for order conveying trust assets into the second amended

9    marital deduction trust and credit trust dated 4/8/90 of Erica

10   Klein.

11           In terms of jurisdiction, Klein asserts that the

12   probate court, rather than this Court, has exclusive

13   jurisdiction to determine some of the issues regarding the

14   living trust, the marital deduction trust, and the credit

15   trust.  To support his position, Klein sides Cal Probate Code

16   17000, which indicates that probate court has exclusive

17   jurisdiction of proceedings regarding the internal affairs of

18   trusts.  Probate code 17200 contains a list of what proceedings

19   concerned the internal affairs of a trust.  After reviewing

20   that list, as well as the cases cited by Klein, the Court finds

21   that that argument is unavailing.

22           As an initial matter, the cover page of the petition

23   that Klein filed on 12/9 does not support but rather undercuts

24   his position, the title of that petition.  And only one page

25   was provided in support of this motion for continuance was

20

1   seeking an order conveying trust assets into the second amended

2   marital deduction trust and credit trust.  It does not in any

3   way indicate that it is seeking a determination of the internal

4   affairs of a trust.

5         And as noted by In re Rens, 633 B.R. 594 (B.A.P. 9th

6   Cir. 2021), a case cited by Klein, this Court's jurisdiction is

7   not governed by California law but rather by federal law.  Even

8   if that were not the case, the applicable statutes, 17000 and

9   17200, read together reveal that exclusive jurisdiction is

10  limited to disputes among parties to the trust itself such as a

11  beneficiary and a trustee.  And that's directly out of the In

12  re Rens case.  Here there is no dispute between the

13  beneficiaries and any trustee of the trust.

14        In terms of continuance, the Court has broad

15  discretion to determine whether a request for continuance

16  should be granted.  That's U.S. v. Kloehn, 620 F.3D 1122 (9th

17  Cir. 2010).  The Court only abuses its discretion if its denial

18  of a continuance is arbitrary or unreasonable.

19        The Ninth Circuit uses four factors to determine

20  whether to grant a request for a continuance:  1, whether the

21  movement was diligent in preparing his defense or whether his

22  request for a continuance appears to be a delay tactic; 2,

23  whether granting a continuance would be useful; 3, whether

24  granting a continuance will inconvenience the Court and

25  opposing party; and 4, whether the movement will be prejudiced

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document      Page 44 of 161
**Leslie Klein**

21

1    by denial of a continuance.

2         After considering the factors that the Ninth Circuit

3    has announced courts should consider, the Court finds that all

4    factors weigh against continuing today's hearing.  The request

5    for a continuance appears to be a delay tactic.  The MSJ was

6    filed almost three months ago.  It was not until the eleventh

7    hour that Klein decides this Court does not have jurisdiction

8    over estate property, but instead it is in the exclusive

9    jurisdiction of the probate court.

10        On 12/2, two weeks before today's hearing, Klein filed

11   amended schedule A and B, which he argues, quote, expressly

12   addresses allocation of interest in property.  The problem for

13   Klein is his attempt to address allocation of interest in

14   property now is unavailing.

15        As the Court noted when summarizing the timeline,

16   Klein filed bankruptcy in 2023.  His most recent amendment

17   before a week ago was April 10th, 2023.  Now, 21 months later,

18   he has attempted to clarify the trust assets.  And it is a --

19   certainly a delay tactic in the Court's mind.

20        The second factor whether granting a continuance would

21   be useful, the Court finds it would not be useful.  The parties

22   have had ample opportunity to present their arguments, and the

23   Court is ready to rule.  There is no justifiable reason to

24   continue this matter.

25        The third factor, whether granting a continuance will

22

1   inconvenience the Court and opposing party.  Granting a

2   continuance would significantly prejudice the Court and the

3   trustee.  As noted, the motion was filed three months ago.

4   Klein had more than three and a half weeks to file an

5   opposition, which he did.  The Court spent considerable time

6   preparing for this hearing.  And the trustee has been

7   litigating against Klein regarding this property for almost

8   nine months.  Granting a continuance would inconvenience both

9   the Court and the trustee.

10          And finally, whether movant will be prejudiced by

11  denial of the continuance.  The Court finds that Klein has not

12  advanced any argument that he would be prejudiced or otherwise

13  negatively impacted by a denial of the continuance.  Even the

14  evidence that the supposedly demonstrated that he was seeking a

15  petition before the probate court does not support that

16  argument.

17          Therefore, the Court denies the motion to continue the

18  ruling on the MSJ.  And it will proceed with the hearing on the

19  MSJ as well as its ruling.

20          So Mr. Lucas, I'll turn it back to you.

21          MR. LUCAS:  Yeah.  Thank you, Your Honor.

22          And again, not to belabor the point, my client, the

23  trustee, did file an opposition to the motion to continue just

24  for the record.  And, Your Honor, I would like to make some

25  comments about the pending probate action after this summary

**Leslie Klein**

23

1   judgment motion has been considered by the Court.

2         THE COURT:  That's fine.  Mr. Lucas, I'm sorry.  I

3   looked at this when it was filed within a day.  When did you --

4   when did you file an opposition?  Because I did not see that.

5         MR. LUCAS:  On Monday morning around 8:30 a.m.

6         THE COURT:  Okay.  And that's why, because I worked it

7   up last week.

8         MR. LUCAS:  Yeah.

9         THE COURT:  But I appreciate that.  But I have ruled.

10  I assume you don't oppose that ruling that I made.

11        MR. LUCAS:  No, Your Honor.  We're wholly supportive

12  of it.  And you said many of the same things that we said in

13  our opposition.

14        THE COURT:  Okay.  Thank you.  And Mr. Lucas, why

15  don't you proceed with your argument on the MSJ?  As I think

16  you know, you've been before me, I do thoroughly read the

17  papers and am very familiar with the facts and the law.  But if

18  there's something you'd like to highlight, I'm interested in

19  hearing that.

20        MR. LUCAS:  Your Honor, to that point, I will not --

21  Your Honor, our motion, which is filed at docket number 32, it

22  goes through painstaking detail of citing not just the law but,

23  of course, the facts that support the ruling that we believe

24  we're entitled to as a matter of law.

25        And so for every factual statement that's in our

**Leslie Klein**

24

1   motion, there is a specific footnote reference to where that

2   facts come from.  And all of those facts here have been

3   admitted into evidence.

4        So, Your Honor, on a high level we believe that the

5   quiet title claim is ripe.  The June Street property is

6   described in the complaint.  And the complaint describes who

7   the trustee currently believes is the owner of the property.

8   We believe that the complaint describes the purported

9   adversity.  And it seeks to determination about who owns the

10   property.  And it includes a prayer for the determination of

11   the title against the adverse claims.  And, Your Honor, we want

12   to move forward in seeking relief on the quiet title.

13        And, Your Honor, on that point, on the quiet title, we

14   believe that the June Street property is owned by the debtor

15   and is his property of the debtor's bankruptcy estate because

16   the June Street property is held by the second amended Klein

17   living trust.  And whether it's held by the Klein living trust,

18   the marital deduction trust, or the survivor's trust, Your

19   Honor, Mr. Klein is the trustee and the beneficiary on an

20   income and a principal basis of all the trust as it sets forth

21   in the trust itself.  And he has unfettered discretion and

22   control of what to do with those assets.

23        And so, as a self-settled trust, as this Court, I

24   believe, already found in connection with the motion to join

25   the necessary parties a couple of months ago, a self-settled

**Leslie Klein**

25

1  trust is statutorily precluded from shielding the June Street

2  property or any other assets for that matter from creditors

3  with claims against the debtor by virtue of any spendthrift

4  clause.  And, Your Honor, We go through in detail.  We cite the

5  case law in there.  But we believe that that is the sort of the

6  essence of what is going on here and of the why we're entitled

7  to the relief that we're seeking that this piece of property is

8  property of the estate.  Whether it's held by the Klein living

9  trust or the MDT for that matter or the survivor's trust, they

10  all go to the debtor's control and beneficiary status under any

11  of the hats or any of the roles that he holds under that trust.

12       THE COURT:  Thank you, Mr. Lucas.

13       Mr. Olson?

14       MR. LUCAS:  I have more to go on.  Do you want me to

15  finish?

16       THE COURT:  Oh, I'm sorry.  I thought I didn't mean to

17  cut you off.  You just took a pause.  And so I thought that was

18  it, Mr. Lucas.  No, I --

19       MR. LUCAS:  Okay.  So, I mean, I'm trying to be brief,

20  and that was just sort of the quiet title piece, Your Honor.

21  But in further support of the quiet title piece, Your Honor,

22  and I won't go into excruciating detail on this either, but as

23  we know, Your Honor, earlier in the case, the debtor sought an

24  exemption with respect to the June Street property.  And the

25  case law from the United States Supreme Court holds that no

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 49 of 161
**Leslie Klein**

26

1    property can be exempt and thereby immunized from claims unless

2    it first falls within property of the estate.

3    And so Mr. Klein has a sort of a very, I think,

4    curious, to say the least, sort of evolving story about the

5    June Street property. It's supposedly half in, half out. And

6    then when it got to the answer, it's all held by the MDT. But,

7    Your Honor, I don't understand.

8    And then at the same time, the debtor has said in his

9    schedules, which were filed and signed under penalty of

10   perjury, that in the ten years prior to the bankruptcy filing,

11   that there had been no change or any transfer of his assets

12   into a self-settled trust.

13   And so it's my understanding that the June Street

14   property is held by the second amended trust or whatever

15   subtrusts that are -- exist under there, Your Honor, they all

16   point to Mr. Klein, his control, and his beneficial interest in

17   the June Street property. And as such, it should be considered

18   and is property of the estate.

19   And, Your Honor, on to the next piece, the debtor's

20   current spouse, Barbara -- And I'm using first names because

21   everybody has the last name of Klein. And so no disrespect is

22   meant by that. I'm just trying to keep people straight. But

23   Barbara purportedly has a life estate in the June Street

24   property. One small aside, the document that purportedly

25   creates that life estate, it was granted directly, and it

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document    Page 50 of 161
**Leslie Klein**

27

1  appears personally from the debtor himself but not in his

2  capacity as trustee, which I would think would be the party

3  that would be authorized to provide life estates with respect

4  to the June Street property.  But nevertheless, Barbara

5  admitted in her responsive discovery pleadings that the amended

6  marital property agreement was never recorded, and as such,

7  Your Honor, that interest can be avoided under 544 of the

8  Bankruptcy Code.

9       And, Your Honor, with respect to the other defendants,

10  whether it be the MDT or the survivor's trust, Your Honor,

11  there is no documentation that has been recorded in the county

12  of Los Angeles that we're able to determine that shows that the

13  MDT, the survivor's trust, or any other entity for that matter

14  or a person owns the June Street property.  The June Street

15  property deed itself reflects who the owner is.  It's the only

16  recorded document that outlines who owns the June Street

17  property.

18       And out of an abundance of caution, we're seeking

19  544(a) relief with respect to all the other defendants because

20  there has been nothing produced and there's nothing as far as

21  that we've been able to uncover that shows that any interest,

22  ownership interest with respect to the June Street property has

23  been duly recorded as it must be.  And to the extent that they

24  have some sort of interest, which we still haven't been able to

25  uncover, it too or those too should be avoided, Your Honor,

28

1  under 544(a)(3) of the Bankruptcy Code.

2        And, Your Honor, I will leave it at that.  And I'm

3  happy to answer any questions that the Court has.  But we do

4  rely on our motion, all of the exhibits and references that are

5  in the record, the points that are cited in our motion, and

6  also our objections and responses to the objections filed by

7  the defendants.

8        THE COURT:  Thank you.

9        Mr. Olson.

10       MR. OLSON:  Yes.  There are a number of critical

11 points overlooked in the argument.  And the first is that,

12 while the evidence presented by the trustee indicates that the

13 house is owned by the credit trust, for some reason, the credit

14 trust is not joined as a defendant.  So at least at this point

15 the it falls in a 12(b)(6) basis.

16       THE COURT:  Mr. Olson, I want you to continue, but

17 please state your argument again.

18       Mr. Crawford, your tile was lighting up, and I was

19 having problems hearing Mr. Olson.  So Mr. Crawford, if you

20 could please mute yourself unless you were going to argue

21 because I want the record to be clear.

22       Mr. Olson, if you could repeat again what you said

23 about the credit trust.

24       MR. OLSON:  Yes.  The recorded second amended trust,

25 which has as explicitly an asset of that trust, is recorded.

1    And it provides that Erica Klein, her community interest goes

2    to the marital deduction trust or the credit trust, depending

3    on circumstances.

4           For some reason, the trustee has not joined the credit

5    trust, although he has presented evidence showing that the

6    property is held by the -- or for the benefit of the credit

7    trust, several years of ledgers to that effect.  Under the

8    circumstances -- and this is a quiet title action.  And the

9    statute defining a quiet title action specifically requires

10   that all parties having any claims must be named as named as

11   defendants.  For some reason, the trustee has not seen fit to

12   join them as defendants.  And so at least at this point, the

13   motion fails simply because under Rule 12(b)(6).

14          Now they could certainly amend and state whatever

15   claims they have against the credit trust.  But in the absence

16   of having named them at all without any explanation as well as

17   the failure to name the children, which I realize we had a

18   motion on which deals with whether I had sufficient authority,

19   standing, whatever under Rule 19, there has been no similar

20   action by the trustee.  And in the absence of the credit trust

21   having been joined, the Court can not at this time grant a

22   motion for summary judgment against other parties.  There is

23   an --

24          THE COURT:  So, Mr. Olson, I'm looking at the

25   opposition that you filed on October 15th.  And I don't see any

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document     Page 53 of 161
**Leslie Klein**

30

1  argument regarding that the credit trust had to be joined.  You

2  say on page 18, heading 4, the complaint omits to join

3  necessary parties, the children and the beneficiaries of the

4  marital deduction trust and credit trust.  But you didn't say

5  the trust themselves were not joined.  You already litigated a

6  joinder motion, which I denied.  But this is a new argument

7  that you're making because that's not what's here.

8          MR. OLSON:  Your Honor, at the time when I filed that

9  opposition, I did not realize that they had failed to name the

10  credit trust.  I specifically referred to that problem in the

11  joint report that we filed.  And failure to state -- in state

12  nomenclature, failure to state a cause of action can be raised

13  and should be dealt with at any time it appears.

14          THE COURT:  Someone is on the -- excuse me, Mr. Olson.

15          MR. OLSON:  Yes.

16          THE COURT:  Someone is on the phone.  And you need to

17  mute yourself because you're interfering with the record.

18  Unless you're appearing in this case, please mute yourself.

19          Mr. Lucas and Mr. Crawford, I see your hands are

20  raised.  I'll give Mr. Olson a chance to finish his argument.

21  Then I'll go in the order that I just mentioned.

22          Mr. Olson, please continue.

23          MR. OLSON:  Yes.  I also wanted to call to the

24  attention of the Court -- and this does appear in my original

25  opposition, at some points there was a typo in the section

**Leslie Klein**

31

1  number, but I think this situation falls under Probate Code

2  15304(b) which specifically indicates in an exception where the

3  amount as to whether or not there is -- this is a self-settled

4  trust, this -- insofar as the marital deduction trust and the

5  credit trust are concerned, this is specifically a distribution

6  of property from Erica, the deceased spouse, and is exempt from

7  being swept in as property of a self-settled trust, the notion

8  that this is -- this has to -- goes to some trusts, if you

9  will, is Erica's property, not Leslie's property.  And anything

10  resting on the idea that this is a self-settled trust by Leslie

11  is simply specifically incorrect under California law,

12  subsection B.  The materials that the trustee relies on would

13  fall under subsection A.  But this is specifically exempted.

14      THE COURT:  Thank you, Mr. Olson.  I'll go to Mr.

15  Crawford first actually because, Mr. Lucas, you are the movant.

16  So you get the last word.

17      Mr. Crawford?  And Mr. Olson has already argued.  So

18  I'm not going to allow you to reargue the same points.  If

19  there's one or two points that you want to highlight, that's

20  fine.

21      MR. CRAWFORD:  Thank you, Your Honor.  I heard your

22  ruling on the motion to continue, and I appreciate that.

23      I want to say that for the record, that I think that

24  despite the late hour of bringing this up, the question of the

25  exclusive jurisdiction of the probate court, I think that with

**Leslie Klein**

32

1   respect to the allocation of properties between the trusts,

2   that's a matter for the -- relating to the internal the

3   operation of the trust.  And that's an issue which should be

4   within the exclusive jurisdiction of the probate court.

5        The other thing is that with respect to Mr. Klein's

6   unfettered access to the income and principal, despite the

7   spendthrift provision argument that plaintiffs have made, this

8   also relates to the internal affairs of the trust.  This

9   relates to the power and authorities and benefits between Mr.

10  Klein and the other beneficiaries.  This is also a matter that

11  should be committed to the exclusive jurisdiction of the

12  probate court.

13       And again, this is the state of the law.  And I

14  appreciate that this was brought up at a late hour, but it was

15  brought up.  And I believe that these -- that it was also

16  raised in the opposition.  This should preclude a summary

17  judgment at this point.  These questions create --

18       THE COURT:  Hold on.  Mr. Crawford, Mr. Crawford,

19  where was the exclusive jurisdiction of the probate Court

20  raised in the opposition?  Please cite the page and the line

21  for me.

22       MR. CRAWFORD:  I'll withdraw that.  I'm not familiar

23  enough with it.  I thought it had been raised in there.  And if

24  it wasn't, it wasn't.  I apologize.

25       But in any event, even if it's not raised, it is a --

33

1    it is a legal point which should influence and direct this

2    Court's ruling, I believe.  It is the state of the law or it

3    isn't, but I believe it is.  And I believe that these are --

4    these raise disputed issues of material fact which should

5    preclude summary judgment, the obvious ones being where the

6    allocation of the June Street property goes.

7            There is one clear issue which is a disputed issue of

8    fact based on the evidence before the Court now, which is

9    whether the 2013 ledgers and the ledgers following that would

10   show the allocation of the property to the subtrusts are

11   effective or not.  This is actually addressed in the reply

12   papers by plaintiffs.  They say the an issue is the

13   credibility.  I believe they used the word credibility of the

14   ledgers.  Well, if you're raising the issue of credibility of

15   evidence, that creates -- that shows and concedes a disputed

16   issue of fact.

17           THE COURT:  Thank you, Mr. Crawford.  So in terms of

18   the motion for continuance, that's been denied.  I understand

19   you disagree with the Court's ruling.  That's been denied.

20           In terms of this motion, Mr. Olsen has already argued.

21   Again, I gave you leeway to argue one or two points.  I think

22   we're getting past that now.  Now there's two attorneys arguing

23   for the same side.  And it's definitely time to move on, Mr.

24   Crawford.

25           As I mentioned, I have considered all of the facts,

34

1   all of the evidence, all of the arguments.  If there's anything

2   further, briefly I'll allow you to address the Court.  But then

3   I'm going to go back to Mr. Lucas.

4        MR. CRAWFORD:  The last thing I say is going to be

5   that that what I had mentioned about them raising the

6   credibility of the evidence is in the reply brief at page 7,

7   starting at line 14.  They say that this is not credible.  If

8   there's an issue of credibility, that raises a disputed issue

9   of material fact.  And that should preclude summary judgment.

10  Thank you, Your Honor.

11        THE COURT:  Thank you, Mr. Crawford.

12        Mr. Lucas?

13        MR. LUCAS:  Thank you, Your Honor.  I'm going to go

14  just a little bit of the opposite order that I intended because

15  I want to go off of just exactly what Mr. Crawford was talking

16  about of a disputed issue.

17        Your Honor, and I quote  TW Electric Service, Inc.  v.

18  Pacific Electric contractors at 809 F.2d 626 at 630 (9th Cir.

19  1987).  Disputes over irrelevant or unnecessary facts will not

20  preclude grant of summary judgment; rather, following of a

21  properly submitted summary judgment motion, the burden shifts

22  to the opposing party to set forth specific facts showing that

23  there is a genuine issue for trial.  It's our view, Your Honor,

24  there are no facts that have been, Your Honor.

25        And so the opposing party cannot simply assert the

1   mere existence of some alleged factual dispute between the

2   parties, nor can it rest upon the mere allegations or denials

3   and pleadings.  And that's all that's happening here, Your

4   Honor.  Thus, That's for an issue to be genuine, there must be

5   real evidence such that a reasonable jury could reach a verdict

6   in favor of the nonmoving party.  None of that's here, Your

7   Honor in our view.

8        And so to try to sort of say that we're creating the

9   credibility dispute, Your Honor, we're just pointing out that

10  there is no evidence.  And this action that is apparently

11  pending in LA Superior Court probate Division isn't a

12  fact-finding.  It is a reformation action that is in violation

13  of the automatic stay, which I will talk about later.

14       And Your Honor, as for the credit trust and whether or

15  not the credit trust should or should not be a defendant in

16  this action, one thing that's really -- just sort of just sort

17  of jumps out at the plaintiff, the trustee, Your Honor, is if

18  you look at docket number 41, I believe, which is the

19  defendants' answer -- in the defendant's answer -- and

20  remember, Your Honor, when the debtor filed his schedules and

21  statements in the spring of 2023, then the debtor said that

22  half June street property was owned by him personally, and the

23  other half was owned by the marital deduction trust or the MDT.

24       But now the answer's filed, it doesn't say that the

25  creditor trust owns it.  It says that the June Street property

**Leslie Klein**

36

1  is wholly owned by the MDT.  But there's no description or

2  there are no documents.  It's just a conclusion.  It says this

3  is how things are now.  There's no description or documents

4  explaining about how it got there.  There might be some sort of

5  statement that says non-estate assets were used to purchase the

6  debtor's interest, and this is why the MDT wholly owns the

7  property now.  We've never seen any of these documents.  These

8  are just assertions, denials in attempts to try to create a

9  factual dispute.

10           And Your Honor, as for -- Mr. Olson also said that

11  after Erica died -- Erica died in December of 2012.  And in

12  April of 2013, the second living -- the second amended Klein

13  living trust, along with Erica's death certificate, was

14  recorded.  The trust was recorded in the same fashion that it

15  existed before her death.  And it exists today.  And so there

16  was no event or transfer that was automatic by virtue of

17  Erica's unfortunate death.

18           Instead, the trust documents in article 3, which is

19  titled trust allocation after first spouse's death, outlines

20  the rules and procedures the trustee, who is the debtor, may

21  use to allocate and distribute property after Erica's death.

22  For example, article 3A of the Klein living trust provides the

23  marital deduction trust shall consist of the minimum amount

24  that will entirely eliminate or reduce as far as possible the

25  federal estate tax after allowance of other deductions.

**Leslie Klein**

37

1        And so, Your Honor, you could find that reference at

2   the request for judicial notice, Exhibit I, Article 3, pages 4

3   and 5.

4        THE COURT:  And I'm looking at that document, Mr.

5   Lucas.  I have it in front of me.

6        MR. LUCAS:  Okay.  And then it also goes on to say

7   that all trust may be funded in cash in kind, party in each.

8        And, Your Honor, the above-cited provisions of the

9   Klein living trust do not provide that specific property would

10  be transferred to the MDT or to the survivor's trust or the

11  creditor's trust for that matter.  Instead, the distribution or

12  allocation of property to any trust is dependent upon the

13  minimum amount, which is a legal way to avoid taxation.

14  Nothing controversial about that, but somebody has to do

15  something.  It isn't automatic.  And nothing was done.  There

16  was no determination made by the trustee, who was the debtor.

17  Or the Klein -- and the Klein living trust didn't do anything,

18  and everything just sort of sits where it is.

19        And remember, Your Honor, if even if all of the

20  property was transferred to the marital deduction trust, Mr.

21  Klein is -- I mean, the debtor, Your Honor, is the trustee of

22  that trust who has unfettered discretion to use, sell, destroy.

23  He can do anything he wants with it.  And, Your Honor, he's

24  also the beneficiary.  And so it doesn't get them anywhere, in

25  our view, even if it is in the MDT.

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 61 of 161
**Leslie Klein**

38

1          And so, Your Honor, I wanted to respond to those

2     couple of points.  And I will cede the podium now unless I have

3     further questions after further argument.

4          THE COURT:  Thank you.  All right.  I'm ready to rule.

5          The motion was amply briefed by both sides.  So before

6     the Court is a motion for summary judgment filed by the

7     trustee.  The Court has considered all of the evidence

8     submitted by the trustee as well as the opposition submitted by

9     the debtor and the evidence submitted in support of the

10    opposition, as well as the reply and the evidence submitted in

11    support thereof.

12         So the following facts are uncontroverted:  The debtor

13    filed a bankruptcy petition on February 22nd, 2023.  It was a

14    Chapter 11 case.  On May '23, the U.S. Trustee's Office filed a

15    notice of appointment of Chapter 11 trustee.  And on that same

16    day, the trustee accepted his appointment as Chapter 11

17    trustee.

18         On March 8th, 2023, the debtor filed schedules and

19    statement of financial affairs.  On Schedule AB, debtor listed

20    the property at 322 North June Street, the property at issue

21    here as fifty percent owned by debtor and fifty percent owned

22    by the marital deduction trust of the debtor's deceased spouse,

23    Erica Klein.  According to the SOFA, in response to question

24    19, which asks within ten years before you filed for

25    bankruptcy, did you transfer any property to a self-settled

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 62 of 161
**Leslie Klein**

39

1  trust or a similar device of which you are a beneficiary,

2  debtor responded that he had not.

3          Schedule C property claimed as exempt indicated that

4  the property was held in the marital deduction trust and that

5  Barbara Klein, the debtor's current spouse, had a life estate

6  interest in the property.

7          The debtor, in his individual capacity, and Barbara

8  entered into a premarital agreement dated November 25th, 2013.

9  The debtor, in his individual capacity, and Barbara entered

10  into a first amendment to the premarital agreement dated

11  November 25th, 2015 in which the debtor agreed that Barbara,

12  quote, may also live at the house at North June Street, where

13  the parties lived during her lifetime.

14          Schedule AB reflected that debtor listed a 678,391

15  exemption in the property under California Code of Civil

16  Procedure 704.703.  After litigation, however, the Court

17  limited the debtor's exemption in the property to 189,050.

18          The real property deed for the property was recorded

19  on December 14th, 1977 and reflects that it was owned by Leslie

20  Klein and Erica Klein as trustees under the Klein living trust

21  of 1975.

22          On April 18th, 1990, the debtor and his former spouse,

23  Erica, created the second amended Klein living trust, which was

24  recorded on April 13th, 2013.  The living trust includes the

25  property.  Under the living trust, the debtor and Erica were

40

1    co-settlor, co-trustees, and co-beneficiaries of income and

2    principal during their lifetime.

3    On December 12th, 2013, Erica died.  Under the living

4    trust, upon Erica's death, the debtor became the surviving

5    settlor and assumed the role of trustee.  Under the living

6    trust, the trustee here, Klein, served as trustee for all

7    trusts under this instrument.  Under the living trust, the

8    debtor serves as trustee for the marital deduction trust.

9    Under the living trust, the marital deduction trust

10    provides that the debtor is both the income and beneficiary --

11    income beneficiary and principal beneficiary.  Under the living

12    trust, the marital deduction trust provides that trustee may

13    use both the income from the marital deduction trust and

14    principal of that trust for the benefit of the debtor.  Under

15    the living trust, the marital deduction trust provides that the

16    trustee, here the debtor, shall pay to or -- for the income

17    beneficiary all net income of the trust in convenient

18    installments at least annually.  Under the living trust, the

19    marital deduction trust provides that the surviving spouse,

20    here the debtor, shall pay to or for the principal beneficiary

21    as much of the principal as is necessary for the principal

22    beneficiary's health, education, or support to maintain the

23    principal beneficiary's accustomed manner of living.

24    Under the living trust, the debtor serves as the

25    trustee for the survivor's trust.  Under the living trust, the

**Leslie Klein**

41

1    survivor's trust provides that the debtor is both the income

2    beneficiary and the principal beneficiary.  Under the living

3    trust, the survivor's trust provides the trustee may use both

4    the income from the survivor's trust and the principal of the

5    survivor's trust for the benefit of the debtor.  Under the

6    living trust, the survivor's trust provides that the trustee

7    shall pay to or for the income beneficiary as much of the net

8    income as the trustee considers necessary for the income

9    beneficiary's health, education, support, comfort, welfare, or

10   happiness to maintain, at a minimum the income beneficiaries

11   accustomed manner of living.  Under the living trust, the

12   survivor's trust provides that the trustee shall pay to or for

13   the principal beneficiary as much of the principal as is

14   necessary for the principal beneficiary's health, education,

15   support, comfort, welfare, or happiness to maintain, at a

16   minimum the principal beneficiary's accustomed manner of

17   living.

18        Under the living trust, the marital deduction trust,

19   survivor's trust, and any other trust created under the living

20   trust, the trustee had the power to A, retain or abandon any

21   property held by the trust, including the property; B manage,

22   control, grant, auction, sell for cash or deferred payments

23   with or without security, convey, exchange, partition, divide,

24   improve, and repair trust property, including the trust

25   property.  The living trust contains a spendthrift clause.

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document      Page 65 of 161
**Leslie Klein**

42

1        On May 29th, 2024, the plaintiff filed an amended

2    complaint which is the operative pleading in this case.  As

3    noted previously, it lists the second amended Klein living

4    trust, marital deduction trust, survivor's trust, and Barbara

5    Klein as defendants.

6        On July 12th, each of the defendants filed a

7    consolidated answer.  In the answer, the defendants represent

8    that the survivor's trust transferred its fifty percent

9    interest in the property to the marital deduction trust.

10        Argument.  Sharp argues that the uncontroverted facts

11    demonstrate that the elements of quiet title are matte.  He

12    contends that the living trust and the associated underlying

13    trusts, survivor's trust, marital deduction trust, and credit

14    trust, were self-settled by Klein because Klein was the settlor

15    of the living trust, the trustee and beneficiary of the

16    subtrust, and has complete control over the living trust and

17    subtrusts.

18        Sharp argues that generally, California law recognizes

19    the validity of spendthrift trusts.  When a trust beneficiary,

20    however, exercise excessive control over a trust, the trust

21    assets are not protected by an anti-alienation provision in a

22    spendthrift clause.  In situations where the settlor acts as

23    the beneficiary, California law voids any spendthrift clause.

24    The trustee cites In re Salkin and Cutter v. Seror for this

25    proposition.

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document      Page 66 of 161
**Leslie Klein**

43

1          Sharp contends that the facts here are analogous to

2     those cases.  And he asserts that because the Klein living

3     trust and the subtrusts were all self-settled, any spendthrift

4     clause doesn't protect the property, meaning that the property

5     is property of the estate, regardless of which trust holds the

6     property.

7          Sharp contends that Klein, when he included the

8     property in his exemptions, admitted that the property is

9     property of his estate.  Sharp cites a Supreme Court case, Owen

10    v. Owen, to support his position that a debtor cannot exempt

11    property unless it is property of the estate.

12         Sharp highlights that Klein has not produced any

13    evidence that the property was transferred from the living

14    trust to any other trust or party, nor has he submitted any

15    writing reflecting that the property was granted to another

16    entity, as required by Cal Civil Code 109.2, and he should be

17    judicially estopped from arguing the property is not property

18    of the estate.

19         Sharp acknowledges that Klein claims Barbara holds an

20    interest in the property which Klein asserts is not subject to

21    avoidance.  Sharp argues, however, that under 544(a)(3), he is

22    a bona fide purchaser for value, holding a senior and perfected

23    security interest.  And he may avoid any junior unrecorded

24    interest Barbara claims.  Sharp contends that Klein has failed

25    to produce any written recorded document demonstrating that

1  Barbara or any subtrust hold an interest in the property.

2  Sharp contends that he has strong armed powers under 544(a)(3)

3  which allow him to avoid any transfers that would be junior to

4  a bona fide purchaser.

5       According to Sharp, under California law, a BFP

6  without actual or constructive notice may take free of a prior

7  equitable interest or constructive interest in the property.

8  Sharp argues that as of the petition date, any interest Barbara

9  may have obtained through a premarital agreement was not

10  recorded, and he can avoid any such interest based on his

11  strong arm powers because marital agreements involving real

12  property are unenforceable against a bankruptcy estate unless

13  they are perfected by recordation in accordance with applicable

14  law.

15       Sharp contends that because the premarital agreement

16  between Barbara and Klein was not recorded, he would not have

17  had constructive notice of Barbara's alleged interest in the

18  property.

19       Sharp argues that 544(a)(3) authorizes him to avoid

20  the trust interests in the property.  He contends there are no

21  documents recorded or produced that the subtrusts were granted

22  any interest in the property.  And Klein admitted in the SOFA

23  that during the ten years before filing bankruptcy, he had not

24  transferred any property to a self-settled trust.

25       Therefore, Sharp argues that he holds a senior and

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 68 of 161
**Leslie Klein**

45

1    perfected interest in the property regarding any subtrust.  He

2    contends that even if, however, there were unrecorded documents

3    purporting to convey the property, it would not make a

4    difference because examining the recorded real estate records

5    regarding the property on the petition date would not have

6    provided the necessary constructive notice to a BFP.  He

7    asserts that Klein's estate owns the entire property.  To the

8    extent that Barbara, the marital deduction trust, the survivor

9    trust, or any other entity holds an interest in the property,

10   he alleges that 550 permits Sharp to recover the property.

11         Sharp concludes by stating that Klein's defenses are

12   irrelevant or invalid because, 1, there's no evidence

13   demonstrating that any entity other than the living trust holds

14   an interest in the property; and 2, Klein admitted in the SOFA

15   that he had not transferred the property to any self-settled

16   trust.  Even if, however, a trust holds an interest in the

17   property, it is self-settled.  And Sharp, as a BFE, is entitled

18   to avoid any claim to interest.

19         Klein responds that the MDT -- whoever is on the

20   phone, please mute yourself.  I'll ask the court recorder to

21   mute you.

22         Klein responds that the MDT and credit trust are not

23   self-settled; rather, he contends, they were funded entirely by

24   Erica from her share of community property.  He asserts that

25   Erica provided him with a life estate in the property, and it

46

was never intended to be an income-producing property.
According to Klein, the MDT acquired the "second half" of the
property from the survivor's trust in exchange for other
proceeds from Erica. Klein cites Probate Code 15305 to support
his position that when a settlor of a trust is also a
beneficiary, a creditor can only reach the maximum amount, not
exceeding the amount of the settlers proportionate
contribution.

Klein contends that because the MDT and credit trust
were entirely funded by Erica, the amount attributable to him
is zero. He distinguishes Cutter and Salkin and argues that
the MDT and credit trust were not self-settled because they
were established by the living trust provisions and were funded
by Erica.

Klein asserts that Sharp's belief that the property
was not properly conveyed to the living trust through a written
deed is mistaken. He contends that a State of Heggstad, a 1993
California Appellate Court case, establishes that a proper
declaration is sufficient to create a trust in real property
and a written deed is unnecessary. He claims that judicial
estoppel is inapplicable. It doesn't address the property
because it belongs to the MDT and credit trust.

Klein contends that Sharp has failed to show any right
to avoid the MDT, credit trust, or Barbara's interest in the
property under 544(a)(3). According to Klein, Sharp has not

47

demonstrated why the ledger is associated with the living
trust, which were provided in response to interrogatories, do
not establish that the property belongs to the MDT and/or
credit trust or why a transaction inside a family trust must be
recorded.

Klein argues that Sharp cannot set aside Barbara's
interest in the property under 544.  He relies in In re
Zubenko, a 2015 case contending that constructive or inquiry
notice in accordance with Civil Code 19 can defeat a trustee's
BFP claim and open a notorious possession of real property is
sufficient to put a purchaser on notice.

Klein contends that Barbara's presence at the property
would put anyone on notice of her rights, and a potential buyer
would not be a BFP.

Finally, Klein argues that the necessary parties, the
beneficiaries, were not joined in this manner.

In reply, Schaap argues that the undisputed facts show
that as of the petition date, the property is owned by the
living trust, and for the reasons stated in the motion, summary
judgment should be granted.  He contends that the living trust
and any subtrusts are self-settled and wholly controlled by
Klein, which the Court found when ruling on the joinder motion.

Sharpe argues that the living trust provisions do not
predetermine allocation or distribution of trust property among
the subtrusts.  Rather, he contends that the living trust

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 71 of 161
**Leslie Klein**

48

1    provisions outline the procedures Klein may use to allocate and

2    distribute assets after Erica died.  But the living trust did

3    not mandate how Klein was to distribute or allocate any assets,

4    including the property.

5            Sharp asserts there's no evidence to show that any

6    trust property was transferred to the trust.  According to

7    Sharp, the subtrust did not hold any property.  They were not

8    properly formed because the existence of a trust res is

9    necessary for formation of a trust res.

10            Sharp contends that despite Klein's assertions, that

11   the ledgers show that the property was transferred to the MDT

12   and/or credit trust.  There is no right in complying with Cal

13   Civil Code 1092, and the ledgers were never recorded.

14            Sharp highlights that the recording of the living

15   trust is likewise insufficient because the living trust did not

16   effectuate any transfer or ownership of the property.

17            Sharp reiterates that Barbara's interest in the

18   property is not recorded, and her presence at the property is

19   insufficient for a constructive notice.

20            Sharp questions the efficacy of the amendment to the

21   premarital agreement because Klein, in his individual capacity,

22   didn't have the power or authority to convey any interest in

23   the property.

24            Finally, sharp notes that Klein's arguments regarding

25   joinder have already been addressed and rejected by the Court.

49

1        Legal standard:  FRBP 7056 provides that FRCP 56

2    applies to motions for summary judgment in adversary

3    proceedings.  The Court shall grant summary judgment if the

4    movant shows there is no genuine dispute of any material fact,

5    and the movement is entitled to judgment as a matter of law.

6        A fact is material for purposes of Rule 56 if it might

7    affect the outcome of the suit under governing law.  The

8    dispute is genuine if the evidence is such that a reasonable

9    jury could return a verdict for the nonmoving party.

10        When the movant has carried the burden, the opponent

11    must do more than simply show that there is some metaphysical

12    doubt as to the material facts.  Where the record taken as a

13    whole could not lead to a rational trier of fact to find for

14    the nonmoving party, there is no genuine issue for trial.

15    Credibility determinations, the weighing of evidence, and the

16    drawing of legitimate inferences from the facts are jury

17    functions, not those of a judge ruling on an MSJ.

18        When opposing parties tell two different stories, one

19    of which is blatantly contradicted by the record so that no

20    reasonable jury could believe it, a court should not adopt the

21    version of the facts for purposes of ruling on a motion for

22    summary judgment.

23        The party seeking summary judgment always bears the

24    initial responsibility of informing the Court of the basis for

25    the motion and identifying those portions of the pleadings,

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document      Page 73 of 161
**Leslie Klein**

50

1   depositions, answers to interrogatories, and admissions on

2   file, together with the affidavits, if any, which it believes

3   demonstrate the absence of a genuine issue of material fact.

4         If the nonmoving party carries its burden, summary

5   judgment should not be granted -- excuse me.  If the moving

6   party carries its burden, summary judgment should not be

7   granted if the nonmoving party can point to sufficient evidence

8   supporting the claimed factual dispute such that a fact-finder

9   is needed to resolve the parties' differing versions of the

10  truth at trial.

11        The nonmoving party may not merely question the

12  credibility of the movant to foreclose summary judgment.

13  Rather, the nonmoving party must go beyond the pleadings and,

14  by its own evidence, set forth specific facts showing there is

15  a genuine issue for trial.

16        When ruling on a summary judgment motion, the Court

17  must view the underlying facts in the light most favorable to

18  the party opposing the motion.

19        Analysis.  The Court has already addressed the request

20  for judicial notice.  Now turning to the substance of the

21  motion.

22        There's a fundamental issue that the Court must next

23  address:  who owns the property.  In Klein's schedule AB, he

24  listed the property, indicated it was valued at 4.9 million.

25  The value of his portion was 2.45.  And fifty percent is held

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 74 of 161
**Leslie Klein**

51

1    by the debtor and fifty percent held by his, Erica's

2    irrevocable marital deduction trust.  He expanded on that

3    information by stating debtor's principal residence paid in

4    full.  The property is held in the marital deduction trust.

5    The debtor's current spouse, Barbara Klein, has a life estate

6    in the residence.

7              On schedule C, Klein claimed a 678,391 exemption in

8    the property.  In Klein's statement of financial affairs, he

9    responded no to question 19 which states within ten years

10   before you filed for bankruptcy, did you transfer any property

11   to a self-settled trust or similar device of which you are a

12   beneficiary?  Klein signed all of his schedules and SOFA under

13   penalty of perjury.

14             In the answer, Klein indicated that the marital

15   deduction trust owned 100 percent of the property, and neither

16   the survivor trust nor bankruptcy estate held any interest in

17   the property except for Klein's life estate.

18             In the opposition, Klein claims that based on the

19   ledger dated 1 -- excuse me, 9/10/13 titled Klein marital

20   deduction trust dated 4/8/90 as of 9/10/13, the MDT wholly

21   owned the property.

22             In the opposition, Klein also claims that the 2014 to

23   2023 ledgers, which are titled marital deduction trust dated

24   4/8/90 as of 12/31/14 to 12/31/23, demonstrate that the credit

25   trust wholly owns the property.

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document     Page 75 of 161
**Leslie Klein**

52

1          Sharp contends that Klein is judicially estopped from

2     arguing that the property is not property of the estate based

3     on his claiming a homestead exemption in the property.  Klein

4     responds that Sharp didn't address that the property belongs to

5     the MDT and/or credit trust.  In the reply, Sharp contends that

6     despite Klein's various assertions regarding ownership of the

7     property, the undisputed facts show that as of the petition

8     date, the property was owned by the living trust, and Klein was

9     the trustee and beneficiary of the living trust and the

10    subtrust.

11          Judicial estoppel is an equitable doctrine that

12    precludes a party from gaining an advantage by asserting one

13    position and then later seeking an advantage by taking a

14    clearly inconsistent position.  The purpose of the doctrine is

15    to protect the integrity of the judicial process by prohibiting

16    parties from deliberately changing positions according to the

17    exigencies of the moment.

18          Courts consider three factors when determining if

19    judicial estoppel applies; whether 1, the party's later

20    position is clearly inconsistent with its earlier position; 2,

21    whether the party succeeded in persuading the court to accept

22    its earlier position; and 3, whether the party seeking to

23    assert an inconsistent position would derive an unfair

24    advantage if not estopped.  The Ninth Circuit has limited

25    application of judicial estoppel to cases where the court

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document    Page 76 of 161
**Leslie Klein**

53

relied on or accepted the party's previous inconsistent

position.

A few months after Klein filed bankruptcy, Erica and

Joseph Vago objected to Klein's claimed homestead exemption of

678,391.  Klein opposed the objection and filed a declaration

in support of the opposition in which he acknowledged claiming

a 679,391 homestead exemption in the property.  He stated that

the property was his primary residence, indicated that given

his financial situation, his homestead exemption is necessary

for support of his wife and him.  And he indicated he wasn't

seeking to hold on to his previous lifestyle, but he was merely

trying to protect his homestead exemption.  He signed that

declaration under penalty of perjury.

After considering the parties' pleadings and arguments

during a hearing on the Vago objection, when all parties were

afforded an opportunity to be heard, the Court entered an order

allowing Klein a 189,050-dollar exemption in the property.

According to the Supreme Court, a person cannot claim an

exemption in property unless that property is part of the

bankruptcy estate of that person.

Here, Klein's current position is clearly inconsistent

with his earlier position.  He now claims either the MDT or

credit trust owns 100 percent of the property, whereas when he

filed his schedules and opposed the Vagos' objection, he

claimed that fifty percent of the property was part of his

54

1    bankruptcy estate.  Klein succeeded in persuading the Court to

2    accept his earlier position, and the Court allowed Klein a

3    189,050-dollar homestead exemption in the property.

4         Finally, Klein would obtain an unfair advantage if he

5    were not estopped and if the Court were to credit his current

6    position that the MDT and/or credit trust owns 100 percent of

7    the property Klein previously represented to this Court and the

8    Court relied on his representation that he owned percent of the

9    property when it allowed his homestead exemption.

10        Therefore, the Court finds that Klein is judicially

11   estopped from claiming that the MDT and/or credit trust owns

12   100 percent of the property.  And as Klein represented in his

13   schedules, he at least owns fifty percent of the property via

14   his interest in the Klein living trust.

15        Looking at the remaining fifty percent interest, sharp

16   argues the property is wholly owned by the living trust, and

17   there are no documents evidencing that the property is owned by

18   any other party or trust.  Sharp contends that even if the

19   subtrust own part of all of the property, as Klein asserts,

20   because the spendthrift provision in the living trust is

21   invalid, the entire property is property of the estate.

22        Klein responds that the living trust provides that

23   upon Erica's death, her community property interest would go to

24   either the MDT or credit trust.  Klein contends that the

25   ledgers demonstrate that the MDT and/or creditor trust to own

1  the property.  Klein asserts that Sharp did not provide any
2  authority that the transfer of the property to the trust had to
3  be via a recorded deed.

4       In reply, Sharp reiterates there's no evidence that
5  the property was ever transferred from the living trust, and
6  the living trust did not predetermine allocation and
7  distribution of trust assets.

8       Sharp argues that the ledgers are unrecorded, are
9  insufficient to transfer real property, and no document exists
10 reflecting that the property was granted to any of the
11 subtrusts as required by Cal Civil Code 1090.

12      The evidence regarding the living trust and subtrusts
13 are as follows:  On 4/8/90, Klein and his then wife, Erica, as
14 settlors, executed the living trust.  Klein and Erica were
15 We're co-trustees and income and principal beneficiaries of the
16 living trust.  Upon the death of Klein or Erica, the living
17 trust provided for the creation of three subtrusts to be funded
18 as follows, a surviving spouse trust, which would consist of
19 the surviving spouse's interest in community property.  From
20 the remainder of the deceased spouse's interest in community
21 trust estate after payment of the spouse's taxes and expenses,
22 a MDT was to be created which would consist of the minimum
23 amount that would eliminate or reduce the federal estate tax,
24 and a credit trust which would consist of the balance of the
25 deceased spouse's community property trust estate.  The living

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 79 of 161
**Leslie Klein**

56

1    trust provided that all trusts "may be funded in cash or kind."

2         Regarding the MDT, the living trust provided that the

3    income and principal beneficiary would be the surviving spouse.

4    The trustee would pay, and here the trustee is Klein, to the

5    surviving spouse, who is also Klein, all net income of the MDT.

6    If the trustee considers the income insufficient, the trustee

7    here Klein, would pay as much of the principal as is necessary

8    for the surviving spouse's health, education, or support to

9    maintain the surviving spouse's accustomed manner of living.

10   And again the surviving spouse is Klein.

11        And the surviving spouse's death, the trustee shall

12   distribute any accrued interest to the surviving spouse's

13   estate and any remaining principal, according to the credit

14   trust distribution provisions.

15        Regarding the credit trust, the living trust provides

16   that the income and principal beneficiary would be the

17   surviving spouse, here Klein.  After the surviving spouse

18   passes, Klein and Erica's children, Kenneth, Sherry, Richard,

19   and Jason, are the beneficiaries.  The trustee, that's Klein,

20   shall pay to the surviving spouse the income of the credit

21   trust.  If the trustee considers the income insufficient, the

22   trustee, here Klein, shall pay as much of the principal as is

23   necessary for the surviving spouse's health, education, and

24   support to maintain the surviving spouses accustomed manner of

25   living.  Upon the death of the surviving spouse, the remainder

57

1  of the credit trust was to be distributed to the children of

2  the settlors.  And those are Klein's children and Erica's

3  children.

4          Klein misconstrues the trustee's stance regarding the

5  property.  The trustee's argument is not whether or when the

6  property was transferred to the living trust.  The trustee

7  acknowledges that the property was transferred to Klein and

8  Erica as trustees of the 1975 Klein living trust in 1977.

9  Rather, the trustee contends there's no evidence demonstrating

10  if or when the property was transferred from the Klein living

11  trust to the MDT or if it were transferred to any other trust

12  or party  By the living trust express terms, the survivor's

13  trust and the MDT would only be funded after one of the

14  settlors of the living trust, Klein or Erica, died.  It's

15  undisputed that Erica died in 2012.  And it was only after that

16  date that the survivor's trust and/or marital deduction trust

17  could have been established and/or funded.

18          Klein argues that the Estate of Heggstad supports his

19  position that a written deed of trust is not required to

20  transfer a property into a trust.  The Court finds that Klein's

21  reliance on this case is unpersuasive.

22          In that case, Heggstad executed a will naming his son,

23  Glenn, as executor and a revocable living trust, naming Halvard

24  as trustee and Glenn as a successor of trustee.  The Heggstad

25  family trust identified all the trust property in an attached

**Leslie Klein**

58

schedule, which included a property located at 100 Independence

Drive in Menlo Park.  That property remained in Halvard's name,

and there was no grantee conveying the property to the trust.

All other property listed in the family trust schedule have

been formally transferred via deeds to the family trust.

One month after executing the estate documents,

Halvard married Nancy Rhodes.  Nancy was not provided for in

the will or the family trust.  The party agreed she was

entitled to one-third of Halvard's estate under California la,

but nothing under the trust.

After Halvard died, Glenn was appointed as executor of

Halvard's estate and became successor trustee of the family

trust.  Shortly thereafter, the family trust documents were

recorded.  During probate, Glenn petitioned the court for

instructions regarding the disposition of the property,

claiming the language in the family trust which stated Halvard

Heggstad declares that he has set aside and transferred to

Halvard Heggstad in trust as trustee the property described in

schedule A attached to this instrument was sufficient to place

the property into the trust.  Nancy objected and argued that

there was not a properly executed document.  The probate court

determined that the language in the family trust was sufficient

to create a trust in the subject property.

Nancy appealed, challenging the probate court's ruling

that an executed grant deed was not required to transfer the

1    property to the trust.  The Court of Appeals held that the

2    declaration was sufficient to transfer the property to the

3    family trust.  According to the Appellate Court, a written

4    declaration was sufficient to create a revocable living trust.

5    The Appellate Court noted that when trust property is real

6    estate, the statute of frauds requires that a declaration of

7    trust be in writing and signed by the trustee.  Because

8    Halvard's declaration satisfied these requirements and there

9    was no requirement that there be a separate writing conveying

10   the property, the court decided that a valid trust was created

11   for the property.

12        The Court finds that Heggstad is inapplicable here.

13   Sharp is not questioning the creation of the living trust or

14   that the living trust holds the property.  Instead, Sharp's

15   position is that there is no evidence that demonstrates the

16   property was transferred from the living trust to any other

17   trust or to any other person, in contrast to the declaration of

18   Heggstad which was attached to the trust documents specifically

19   mentioned -- to the trust documents, and it was specifically

20   mentioned the property and was recorded.  The ledgers are

21   unrecorded, are separate from the living trust.  They're not

22   attached to that document, nor are they mentioned in it.  And

23   they do not contain any evidence of a transfer.

24        According to Cal Civil Code 1092, a grant of an estate

25   and real property may be made in substance as follows:  AB

60

1  grant to CD all that real property situated in whatever county

2  and witness my hand.  Neither the 2013 ledger nor the 2014-2023

3  ledgers contain any language that could be construed as

4  complying with this provision of the Civil Code.

5          Further, as noted, when ruling on the joinder motion,

6  there is no evidence before the Court that upon Erica's

7  passing, the MDT survivor trust or credit trust were actually

8  created or funded with any assets.  The California Probate Code

9  establishes that trust property is required to create a trust.

10 Absent trust res, there is no trust.

11         Additionally, if any such trusts had been created,

12 there would have had to have been TINs issued by the IRS.  And

13 if the subtrust had been created and funded, they would have

14 had to have filed tax returns.  But there's no evidence of that

15 in the record.  Because there is no evidence that the MDT

16 and/or credit trust were created or funded with the property,

17 the Court finds that fifty percent of the property, which was

18 Erica's community property at the time she died, is held by the

19 living trust and is part of Klein's bankruptcy estate.

20         Even if the property had been transferred to either

21 the MDT or credit trust -- and as noted, the Court finds there

22 is no evidence that that occurred -- the next issue that the

23 Court must address is whether the spendthrift provision in the

24 living trust is valid and would prevent the trustee from

25 reaching the trust corpus.

**Leslie Klein**

61

1          When a bankruptcy case is filed, an estate is created

2    and includes all legal or equitable interests of the debtor and

3    property.  And interest of the debtor and property becomes

4    property of the estate.  Notwithstanding any provision in an

5    agreement, transfer instrument, or applicable non-bankruptcy

6    law that restricts conditions -- that restricts or conditions

7    transfer of such interests by the debtor.  541(c)(2), however,

8    provides that a restriction on the transfer of a beneficial

9    interest in the debtor in a trust that is enforceable under

10   applicable non-bankruptcy law is enforceable in a case under

11   this title.

12          The living trust is a self-settled trust which is a

13   trust in which the settlor is also the person who is to receive

14   the benefits of the trust.

15          A spendthrift provision in a trust is a clause that

16   prohibits the beneficiary's interest from being assigned and

17   prevents a creditor from attaching that interest.

18          To the extent a debtor holds a beneficial interest in

19   a trust, that beneficial interest becomes property of the

20   estate unless it is protected by a valid spendthrift provision.

21          Although spendthrift provisions are typically valid

22   under California law, they are invalid when the settlor is also

23   a beneficiary of the trust.

24          Here, the Klein living trust contains the following

25   provisions:  No beneficiary shall anticipate a signed

62

1   encumbrance subject to any creditor claim or to legal process,

2   any interest in principle or income before its actual receipt

3   by any beneficiary.  The beneficial and legal interest in this

4   trust, its principal, and its income, shall be free from

5   interference or control of any beneficiary's creditor and shall

6   not be subject to claims of any such creditor or liable to the

7   attachment, execution, bankruptcy, or any other process of law.

8        Sharp argues that the living trust and the subtrusts

9   are self-settled, provide Klein with absolute control over the

10   trust and discretion over the trust's assets.  And they are

11   statutorily precluded from shielding assets through a

12   spendthrift clause.

13        Klein responds that the MDT and credit trusts were not

14   self-settled and self-funded by Klein, but instead by Erica.

15   And he contributed zero to those trusts.

16        Sharp replies that the living trust and subtrusts are

17   self-settled and wholly controlled by Klein for his benefit.

18   And the spendthrift provision does not yield any property held

19   by these trusts from the creditor.  The living trust provided

20   that Klein and Erica were the settlors of the living trust, and

21   Klein and Erica were the co-trustees and beneficiaries of the

22   income and principal of the living trust.  It is undisputed

23   that the living trust was funded with community property.

24        Upon Erica's death, the living trust provided that the

25   trust were to be created.  And the MDT and Credit Trust were to

**Leslie Klein**

63

1   be funded with Erica's proportion of community property.

2   According to the living trust, the subtrusts were to be

3   controlled by Klein as trustee.  And Klein was the income and

4   principal beneficiary of the subtrust.

5          Klein, as sole trustee and beneficiary of the

6   subtrust, had full and complete control of the use, sale, and

7   distribution of the subtrust assets.  As trustee and sole

8   beneficiary, Klein was and is able to use any and all principal

9   and income from the living trust in each one of the sub trusts

10  for his own benefit.  Because Klein was the settlor, trustee,

11  and beneficiary of the living trust, and assuming any subtrusts

12  were ever created and funded, which, as the Court noted, there

13  is no evidence to demonstrate that that actually occurred,

14  Klein is now the trustee and sole beneficiary of the subtrust.

15  And the Court finds that the subtrusts, like the living trust,

16  are self-settled trusts.

17         Sharpe argues that Cutter and Salkin demonstrate that

18  the spendthrift provision in the living trust is invalid

19  because Klein is settlor, trustee, and beneficiary of that

20  trust and the subtrusts.

21         Klein attempts to distinguish Cutter and Salkin,

22  arguing that the MDT and credit trusts were not self-settled by

23  Klein but rather by Erica.  Sharp replies that the Court held

24  that the living trust and subtrusts are self-settled in the

25  ruling on the Joinder motion.

64

1    The Court has previously ruled that the living trusts

2 and subtrusts are self-settled, and it did so in the context of

3 the joinder motion.  So the Court is not going into details on

4 the cases.  But the Court finds that both Cutter and Salkin are

5 almost identical here.

6    The Court finds that the spendthrift provision of the

7 living trust is invalid.  Upon Erica's death, Klein was to

8 allocate the community property to either the survivor's trust,

9 the MDT, or the credit trust.  Klein, as a settlor, the

10 trustee, and the beneficiary of the living trust, and the

11 trustee and beneficiary of each of the subtrusts, had and has

12 complete control over the use, the distribution of assets which

13 are intended for his own benefit.  This control and power

14 renders the spendthrift provision contained in the living trust

15 invalid for that trust and for the subtrust as well if they

16 were ever created and funded.

17    Turning to Probate Code 15305, Klein cites Probate

18 Code 15305 and argues that because the MDT and/or credit trust

19 were entirely funded by Erica, the amount attributable to him

20 is zero.  And the property is not property of the estate.

21 Sharpe doesn't address this issue.

22    The Court notes that Klein's reference to 15305, which

23 addresses children and child and spousal support, was most

24 likely a scrivener's error, and the Court believes that Klein

25 meant to cite Probate Code 15304.  The Court does not find

65

1    Klein's reliance on this probate code section persuasive.  The

2    BAP in Cutter held that under 541, the Bankruptcy Court should

3    have granted summary judgment regarding the entire Cutter

4    corpus, including the-- I can't say it, the Ermatinger

5    property, the BAP recognized that ordinarily Section 15304(b)

6    only permits the portion of a trust corpus that is contributed

7    by the debtor beneficiary to be included in the bankruptcy

8    estate.  According to the BAP, this exclusion is inapplicable

9    when the debtor beneficiary has control over and is able to

10   reach trust property which was contributed by others.

11        When a debtor beneficiary has this control and reach,

12   the estate is entitled to the maximum amount the trust can

13   distribute to the debtor beneficiary.  Because Cutter had

14   complete control over the creditor trust for his benefit, the

15   spendthrift clause was invalid, and the entire Cutter trust

16   corpus, including the property at issue, was part of the

17   bankruptcy estate.

18        Because the living trust here provided that Klein was

19   the trustee and the principal and interest beneficiary and he

20   had complete control of the trust assets, the trust corpus,

21   including the trust property, is property of the bankruptcy

22   estate, regardless of whether Erica contributed any or all of

23   the assets to the living trust or any other subtrust.

24        Klein, as settlor and trustee and beneficiary of the

25   living trust, had and did have complete control over the

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document    Page 89 of 161
**Leslie Klein**

66

1   property held by the living trust in all distributions.  Klein

2   also had and has complete control over the use, distribution,

3   and benefit for the entire trust corpus purportedly held by the

4   subtrusts.  Therefore, any amount contributed by the -- to the

5   sub trust by Erica would not be shielded by Probate Code

6   15306(4)(b) or B from being included in Klein's bankruptcy

7   estate.

8           Turning to the actual causes of action in the

9   complaint, to state a claim for quiet title, a complaint must

10  include the subject property's description.  Plaintiffs allege

11  title to the property, the adverse claim against which a

12  determination is sought, and the date as of which the

13  determination is sought, and a prayer for the determination of

14  the title against the adverse claim.  The Court finds that the

15  complaint meets all of the requirements for a quiet title

16  action.  Here, the complaint describes the property providing

17  both its legal description and street address.  It seeks a

18  determination that, as of the petition date, Klein's estate

19  holds 100 percent interest in the property.  It indicates that

20  adverse claims for which it seeks a determination that neither

21  the MDT, Barbara, or any other party holds an interest in the

22  property.  And the trustee indicates he is entitled to a

23  judicial determination under Section 760.010, quieting the

24  property's title as of the petition date.

25          Based on the analysis above and allegations in the

1  complaint, the Court finds that there is no genuine issue of

2  material fact, and the trustee has established all elements of

3  quiet title.

4        Turning to the trustee's avoidance powers, Sharp

5  argues he is a BFP for value, holding a senior ownership in the

6  property, and he can avoid any junior unrecorded interest in

7  the property.  As a BFP under 544(a), Sharp contends he can

8  avoid any interest Barbara or any of the subtrust claim in the

9  property because, as of the petition date, there were no

10  recorded documents evincing any such interest or providing

11  constructive notice to Sharp.

12        Klein responds that Sharp cannot set aside Barbara's

13  interest in the property under 544(a) because it was conveyed

14  via a premarital agreement and forced amendment to the

15  premarital agreement.

16        Klein cites Zubenko and contends that Barbara's

17  presence at the property would put anyone on constructive

18  notice or inquiry notice, and any buyer would not be a BFP.

19        In the reply, Sharp reiterates there's no recorded

20  documents demonstrating Barbara or the subtrust hold any

21  interest in the property, and there are no facts that would

22  provide a BFP with constructive notice of Barbara's or any

23  subtrust's purported interest.

24        544(a) provides the trustee shall have as of the

25  commencement of the case and without regard to any knowledge of

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document    Page 91 of 161
**Leslie Klein**

68

1    the trustee or of any creditor the rights, powers of, or may

2    avoid any transfer of property of the debtor or any obligation

3    incurred by the debtor that is voidable by A BPF of real

4    property.  Section 544 creates the strong arm powers of the

5    trustee, one of which close a trustee with the status of a BFP

6    of real property.  Although 544(a)(3) provides the trustee

7    takes the power of a BPF over real property without regard to

8    any knowledge of the trustee or any creditor, that does not

9    override provisions of state law which impute notice of claims

10   to real estate.  State law determines whether a trustee has

11   constructive notice, or whether the trustee's status as a BFP

12   will defeat the rights of persons against whom a trustee seeks

13   to assert powers.

14       Under California law, every conveyance of real

15   property must be recorded in order to be valid against a BFP of

16   the same property who in good faith and for valuable

17   consideration records first.  That's CCC 1214.

18       CCC 19 defines constructive notice as every person who

19   has actual notice of circumstances sufficient to put a prudent

20   man upon inquiry as to a particular fact has constructive

21   notice of the fact itself in all cases in which by prosecuting

22   such inquiry he might have learned such fact.

23       In Zubenko, Peter Zubenko bought real property in

24   Sacramento encumbered by a note and deed of trust.  He

25   defaulted and a trustee sale was initiated.  A notice of

1    default, election to sell was recorded with the Sacramento

2    Recorder in May 2014.  And a notice of the trustee sale was

3    also recorded with the Sacramento Recorder in August of that

4    year.

5          Herbert U.S. Real Estate Company was the winning

6    bidder at the trustee's sale and received a trustee's deed upon

7    sale.  Shortly after the trustee's deed was issued, but before

8    recording it, Zubenko filed a Chapter 13 petition.  Herbert

9    sought relief from stay to record the trustee's deed.  Zubenko

10   opposed, and the Bankruptcy Court held an initial hearing

11   during which the issue of avoidance of Herbert's unrecorded

12   interest was raised.

13         According to the court, although California is a race-

14   notice jurisdiction, Cal Civil Code 1217 provides that

15   unrecorded instruments are valid between those who have notice

16   of the unrecorded instrument.  This means that a person who has

17   actual notice of circumstances to put a prudent person upon

18   inquiry notice requiring a particular fact has constructive

19   notice of that fact and can defeat a trustee's claim under 544.

20   The Zubenko court concluded that based on the notice of default

21   election to sell and notice of trustee sale, which were

22   recorded with the Sacramento Recorder, a prudent purchaser

23   would have inquired regarding the status of the Sacramento

24   property.  Therefore, the court found that the trustee could

25   not use his strong arm powers to avoid Herbert's unrecorded

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document      Page 93 of 161
**Leslie Klein**

70

1  instrument.

2  This Court finds that client's reliance on Zubenko is

3  unpersuasive.  In contrast to Zubenko, where the court found

4  that the recordings with the Sacramento Recorder were

5  sufficient to provide constructive notice, it is undisputed

6  that neither the premarital agreement nor the first amendment

7  to that agreement were ever recorded.  Although Klein contends

8  that Barber's presence in the property would put anyone on

9  notice of her rights, he provided no authority to support his

10  contention that a spouse here or wife who lives in a property

11  with her spouse, is sufficient to provide notice of the wife's

12  purported interest in the property.

13  Rather, many courts have held that when title holder

14  jointly occupies property with a stranger to title claiming an

15  interest in the property, the occupancy by the stranger to the

16  title does not provide constructive notice of his or her

17  interest.

18  In such circumstances, the law regards possession as

19  being with the title holder, and there is no presumption of an

20  interest of the joint occupant inconsistent with the title in

21  the other joint occupant.  And that's in re Thomas, 147 B.R.

22  526 (9th Cir. 1992).  As the BAP noted, this rule is often

23  applied when the joint occupants are related to one another.

24  Based on the facts here, the Court finds there is no

25  evidence demonstrating that Sharp had constructive notice that

71

1   Barbara, or anyone else for that matter other than Klein, had

2   any interest in the property.

3        Regarding the MDT and survivor trust, sharp argues he

4   holds a senior perfected ownership in the property because

5   there are no recorded documents memorializing the MDT and/or

6   survivor's trust interest in the property, nor are there any

7   recorded documents that would put him on constructive notice of

8   the MDT and/or survivor's trust's alleged interest in the

9   property.

10        Klein responds the living trust created the survivor

11   trust and subtrust upon Erica's death, and the ledgers

12   associated with the living trust demonstrate that the subtrust

13   hold 100 percent of the property and are enough to put Sharp on

14   notice and removed any backup claim.  Sharp reiterates this no

15   evidence showing that the property was ever transferred, the

16   ledgers are insufficient to demonstrate a property transfer,

17   and the ledgers were never recorded.

18        Per Civil code 1214, every conveyance of real property

19   must be recorded or is void against a subsequent purchaser who

20   in good faith and for valuable consideration records first.

21   Although Klein contends the ledgers demonstrate that the

22   property was transferred to the MDT, none of the ledgers were

23   recorded.  And there are no recorded documents evidencing that

24   any entity other than Klein's bankruptcy estate or the living

25   trust holds an interest in the property.  Therefore, Sharp, as

Case 2:23-bk-10990-NB   Doc 1128   Filed 06/12/25   Entered 06/12/25 09:19:28   Desc
Main Document     Page 95 of 161
**Leslie Klein**

72

1    a BFP, may use his strong arm powers under 544 to avoid any

2    interest the survivor trust and/or MDT might have in the

3    property.

4            In the opposition, Klein argues that joinder of

5    Klein's children as beneficiaries of the credit trust is

6    necessary, because without them, a ruling on this issue could

7    lead to a non-binding result and would be a waste of judicial

8    resources.

9            Sharp replies that Klein's arguments have already been

10   addressed and rejected.  The Court held a hearing about two

11   months ago on Klein's joinder a motion and made explicit,

12   detailed findings regarding why joinder of the children was

13   unnecessary and denied that motion.

14           So in conclusion, the Court finds that based on the

15   evidence presented, there is no genuine issue of material fact.

16   The living trust owns 100 percent of the property.  It is

17   appropriate to quiet title in favor of the trustee.  And the

18   motion for summary judgment is granted in its entirety.

19           Mr. Lucas, you are the prevailing party.  I'll ask

20   that you upload an order within seven days.

21           MR. LUCAS:  Your Honor, thank you.  We will upload an

22   order.  And I propose that it contains some language providing

23   access or control over this property so that the trustee can

24   ensure that the debtor moves out of the property so that we can

25   sell it, Your Honor.

73

1          THE COURT:  That would be a logical inference, Mr.

2     Lucas, but that wasn't a request in the motion at all.

3          MR. LUCAS:  Okay, Your Honor.

4          THE COURT:  I appreciate why you want to do that.  I

5     truly do.  But I don't think it would be fair to add that to

6     the order unless it were something that were had been requested

7     in the motion and that the debtor had a fair opportunity to

8     respond to.

9          So I am granting the motion for summary judgment.

10         MR. LUCAS:  Understood, Your Honor.  Understood.

11         THE COURT:  And you don't need to reiterate everything

12    that was said.  It will be for the reasons stated on the record

13    the motion is granted.  That's matter number 22.

14         Matter number 22 is the status conference in this

15    matter.  It's moot based upon the ruling.

16         All right.  Mr. Lucas, anything further?

17         MR. LUCAS:  Yes, Your Honor.  I do have one other

18    request, Your Honor.  And I don't think it's controversial.

19         So Mr. Olson and Mr. Crawford today made it clear that

20    they commenced an action in LA Superior Court in the probate

21    division.  I believe Your Honor recited the case number.  It's

22    case number 24STPB13777.  It's cited in their motion to

23    continue.

24         And, Your Honor, this is not a fact-finding lawsuit.

25    This is an action that was filed to reform documents to remove

**Leslie Klein**

74

1  property of the estate.  This is a willful, intentional, clear

2  violation of the automatic stay, Your Honor.  And I am asking

3  Your Honor to enter an order sua sponte or on my oral motion

4  here to require Mr. Crawford and Mr. Olson and the debtor who's

5  behind all this to dismiss the action.  Mr. Sharp wasn't even

6  named in the action.  Mr. Sharp wasn't served in the action.

7  This is something that the debtor, Mr. Klein, has no control,

8  no authorization to do.  Nevertheless, he continues to do it.

9       Your Honor, we think it is a waste of time, a waste of

10  estate resources to have to file a motion to enforce the

11  automatic stay which is supposed to be automatic.  But Mr.

12  Olson and now Mr. Crawford and the debtor, they do not care

13  about court orders, Your Honor.  And I'm sorry if I'm a little

14  bit heated, Your Honor, but this is got to stop.  The debtor

15  has no regard for this Court's order, no regard for the

16  process.  And if it's not Mr. Olson, now it's Mr. Crawford.

17  And if it's not going to be one of them, it will be one of the

18  other nine attorneys that the debtor sort of rifles through.

19       Using property of the estate to pay Mr. Crawford --

20  and I don't think Mr. Crawford has filed an attorney

21  disclosure, as he's here representing the debtor.  And I know

22  that Mr. Olson hasn't even though I've asked him to do it

23  countless number of times, Your Honor.  Your Honor, it just has

24  to stop.  And we're requesting that the Court enter an order

25  requiring the action to be stayed, dismissed, removed with

**Leslie Klein**

75

1    prejudice because it is a violation.  And it's void in itself.

2              THE COURT:  Mr. Crawford?

3              MR. CRAWFORD:  Yeah.  Thank you, Your Honor.

4              First of all, obviously this is not really properly

5    before the Court today I think.  I would ask for at least an

6    opportunity to -- maybe for the Court to set an order to show

7    cause or something like that, at least an opportunity to

8    respond.

9              Second, of course, in light of today's ruling, we

10   might reconsider the position ourselves.  But I think it would

11   be appropriate at least, respectfully, to give us an

12   opportunity to respond before making any kind of decisions with

13   respect to my actions or with respect to the probate petition.

14             THE COURT:  Mr. Lucas?

15             MR. LUCAS:  Your Honor, may I just -- one thing.  As a

16   Courtesy, my partner, Mr. Dulberg, has talked to Mr. Crawford.

17   We sent Mr. Crawford and Mr. Olson an email about this.  This

18   isn't a surprise.

19             And, Your Honor, Mr. Klein has been in bankruptcy

20   since February of '23.  This is not -- this is blatant

21   disregard.  And there can be nothing more appropriate now than

22   ensuring that estate resources are preserved and that Mr.

23   Crawford and Mr. Olson and the debtor are not permitted to make

24   an end-run around this Court's ruling today and going to

25   continue to prosecute this action which is violating the

Case 2:23-bk-10990-NB    Doc 1128    Filed 06/12/25    Entered 06/12/25 09:19:28    Desc
Main Document      Page 99 of 161
**Leslie Klein**

76

1    automatic stay and harming property of the estate and causing

2    the trustee to have to incur unnecessary fees and expenses.

3         There's nothing more to say.  A request for another

4    date is nothing more than a request to delay and to continue

5    the confusion and the purposefulness of the debtor's actions to

6    date.

7         THE COURT:  And I understand your frustration, Mr.

8    Lucas.  Obviously, I've been presiding over this for almost two

9    years.  I know what's happened in every hearing in every case.

10    I'm aware of the revolving door of attorneys that Mr. Klein has

11    had.  And that has created an issue separate and apart from

12    this.

13         I do have to ensure that the process is fair.  So what

14    I will do, I'll have you draft it and upload it.  I'll set a

15    hearing on an order to show cause why Mr. Olson and Mr.

16    Crawford and Mr. Klein should not be sanctioned for knowingly

17    violating the automatic stay.

18         MR. LUCAS:  And, Your Honor, I'm uploading this order.

19    Am I to understand that Your Honor will fill in the date and

20    time then?

21         THE COURT:  That's correct.  Upload the order.  I'll

22    fill in a date and time.  There will be an opportunity to

23    respond, but it will be an order to show cause.  It will be

24    very narrow.  It will be focused on why filing that probate

25    proceeding -- and I'm looking for the -- I had the motion

77

1    before me, and now I can't locate it because there's a lot of

2    documents on my bench.  But why filing that probate proceeding,

3    which I believe was maybe about a week ago, is not a violation

4    of the stay and why Mr. Olson and Mr. Crawford and Mr. Klein

5    should not be sanctioned for violating the automatic stay.

6          MR. DULBERG:  Your Honor, I don't know if -- this is

7    Mr. Dulberg.

8          I don't know if Mr. Crawford will offer it up.  We

9    have the case number for the probate proceeding.  We could --

10   if Your Honor wanted to read it into the record, I'm happy to.

11         THE COURT:  I read it into the record when I was

12   ruling on the continuance motion.

13         MR. DULBERG:  That's what I had thought.

14         THE COURT:  Yeah.

15         MR. DULBERG:  Thank you.

16         THE COURT:  But with moving papers around, Mr.

17   Crawford -- oh, here it is.  It's 24STPB13777.  And I believe

18   that was filed on December 11th -- on December 9th.  It was

19   within about a week.

20         MR. DULBERG:  I believe it's -- I believe it's the

21   9th.

22         THE COURT:  Yeah.  Thank you.

23         Mr. Olson, you have your hand raised.  And then we'll

24   conclude this hearing.

25         MR. OLSON:  Yes.  The Court had ordered the attorney

78

1  for the trustee to prepare and order on the motion for summary

2  judgment.  And I would request that the order include that it

3  does not apply to parties who are not named as defendants and

4  specifically including the credit trust.

5          THE COURT:  Mr. Olson, that request is denied.  The

6  order will be for the reasons stated on the record, the motion

7  for summary judgment is granted.  That's all it's going to say.

8  And the record will speak for itself.

9          All right.  So in terms of how we proceed, Mr. Lucas,

10  you're going to upload an order on the summary judgment ruling.

11  Again, it will be very brief.  I wouldn't want you to try to

12  recreate all of the ruling.

13          You'll also upload a order for an order to show cause

14  why filing what is captioned a verified petition for order

15  conveying trust assets into the second amended MDT and credit

16  trust dated 4/8/90 of Erica Klein is not a violation of the

17  automatic stay and why Mr. Olson and Mr. Crawford and Mr. Klein

18  should not be sanctioned for that filing.

19          MR. LUCAS:  Understood, Your Honor.  And we thank you

20  for your time.

21          THE COURT:  Thank you.

22     (Whereupon these proceedings were concluded at 12:25 PM)

23

24

25

79

I N D E X

| RULINGS: | PAGE | LINE |
|---|---|---|
| Motion to continue is denied. | 22 | 17 |
| Motion for summary judgment is granted. | 72 | 18 |

80

1                         C E R T I F I C A T I O N

2

3    I, Michael Drake, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ MICHAEL DRAKE, CER-513, CET-513

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  December 26, 2024

16

17

18

19

20

21

22

23

24

25

# A

**AB (6)**
18:14,18;38:19;
39:14;50:23;59:25
**abandon (1)**
41:20
**able (5)**
27:12,21,24;63:8;
65:9
**above (1)**
66:25
**above-cited (1)**
37:8
**absence (1)**
29:15,20;50:3
**Absent (1)**
60:10
**absolute (1)**
62:9
**abundance (1)**
27:18
**abuses (1)**
20:17
**accept (2)**
52:21;54:2
**accepted (2)**
38:16;53:1
**access (2)**
32:6;72:23
**accordance (2)**
44:13;47:9
**according (14)**
5:8;38:23;44:5;
46:2,25;48:6;52:16;
53:18;56:13;59:3,24;
63:2;65:8;69:13
**accrued (1)**
56:12
**accustomed (5)**
40:23;41:11,16;
56:9,24
**acknowledged (1)**
53:6
**acknowledges (2)**
43:19;57:7
**acquired (1)**
46:2
**action (19)**
4:13;6:12;22:25;
29:8,9,20;30:12;
35:10,12,16;66:8,16;
73:20,25;74:5,6,6,25;
75:25
**actions (2)**
75:13;76:5
**acts (1)**
42:22
**actual (6)**
8:23;44:6;62:2;
66:8;68:19;69:17
**actually (7)**

11:25;12:1;16:11;
31:15;33:11;60:7;
63:13
**add (5)**
9:13,15,20;12:13;
73:5
**addition (1)**
10:24
**Additionally (1)**
60:11
**address (11)**
7:5;18:15,19;21:13;
34:2;46:21;50:23;
52:4;60:23;64:21;
66:17
**addressed (4)**
33:11;48:25;50:19;
72:10
**addresses (2)**
21:12;64:23
**addressing (1)**
16:3
**admissions (3)**
13:17,18;50:1
**admit (1)**
13:19
**admits (1)**
14:10
**admitted (8)**
13:23;14:9;15:7;
24:3;27:5;43:8;44:22;
45:14
**adopt (1)**
49:20
**advanced (1)**
22:12
**advantage (4)**
52:12,13,24;54:4
**adversary (8)**
9:1;13:13,25;14:8,
11,23,25;49:2
**adverse (4)**
24:11;66:11,14,20
**adversity (1)**
24:9
**affairs (8)**
18:2,5;19:17,19;
20:4;32:8;38:19;51:8
**affect (1)**
49:7
**affidavits (1)**
50:2
**affirm (1)**
19:2
**affirmative (1)**
11:10
**afforded (1)**
53:16
**afternoon (1)**
9:11
**again (11)**
4:19;9:18;11:24;
17:23;22:22;28:17,

22;32:13;33:21;
56:10;78:11
**against (13)**
16:20;21:4;22:7;
24:11;25:3;29:15,22;
44:12;66:11,14;
68:12,15;71:19
**ago (10)**
15:23;16:7;17:24;
18:25;21:6,17;22:3;
24:25;72:11;77:3
**agree (7)**
6:15,15,16,17,19;
9:20;15:2
**agreed (2)**
39:11;58:8
**agreement (13)**
13:16,17;27:6;39:8,
10;44:9,15;48:21;
61:5;67:14,15;70:6,7
**agreements (1)**
44:11
**aid (1)**
4:19
**allegations (2)**
35:2;66:25
**allege (1)**
66:10
**alleged (3)**
35:1;44:17;71:8
**alleges (1)**
45:10
**allocate (4)**
36:21;48:1,3;64:8
**allocation (11)**
18:15;19:2;21:12,
13;32:1;33:6,10;
36:19;37:12;47:24;
55:6
**allow (4)**
10:8;31:18;34:2;
44:3
**allowance (1)**
36:25
**allowed (2)**
54:2,9
**allowing (1)**
53:17
**almost (4)**
21:6;22:7;64:5;
76:8
**along (1)**
36:13
**although (7)**
14:13;29:5;61:21;
68:6;69:13;70:7;
71:21
**always (1)**
49:23
**amend (1)**
29:14
**amended (17)**
14:7;16:19,20;

18:14,18;19:8;20:1;
21:11;24:16;26:14;
27:5;28:24;36:12;
39:23;42:1,3;78:15
**amendment (6)**
13:16;21:16;39:10;
48:20;67:14;70:6
**among (2)**
20:10;47:24
**amount (11)**
11:20;31:3;36:23;
37:13;46:6,7,10;
55:23;64:19;65:12;
66:4
**ample (1)**
21:22
**amply (1)**
38:5
**analogous (1)**
43:1
**Analysis (2)**
50:19;66:25
**and/or (13)**
47:3;48:12;52:5;
54:6,11,25;57:16,17;
60:16;64:18;71:5,8;
72:2
**ANGELES (2)**
4:1;27:12
**announced (1)**
21:3
**annually (1)**
40:18
**answer's (1)**
35:24
**anti-alienation (1)**
42:21
**anticipate (1)**
61:25
**apart (1)**
76:11
**apologize (2)**
5:17;32:24
**apparently (1)**
35:10
**appeal (9)**
5:9,14,15,18,18;
6:10,11,20,20
**appealed (2)**
58:24
**Appeals (1)**
59:1
**appear (1)**
30:24
**appearing (3)**
4:18;5:4;30:18
**appears (4)**
20:22;21:5;27:1;
30:13
**Appellate (3)**
46:18;59:3,5
**applicable (4)**
20:8;44:13;61:5,10

**application (2)**
16:5;52:25
**applied (1)**
70:23
**applies (2)**
49:2;52:19
**apply (1)**
78:3
**appointed (2)**
6:1;58:11
**appointment (3)**
14:3;38:15,16
**appreciate (5)**
14:21;23:9;31:22;
32:14;73:4
**appropriate (4)**
12:17;72:17;75:11,
21
**April (7)**
8:6;18:17,17;21:17;
36:12;39:22,24
**arbitrary (1)**
20:18
**argue (4)**
11:21;12:3;28:20;
33:21
**argued (5)**
11:6;18:4;31:17;
33:20;58:20
**argues (21)**
21:11;42:10,18;
43:21;44:8,19,25;
46:11;47:6,15,17,23;
54:16;55:8;57:18;
62:8;63:17;64:18;
67:5;71:3;72:4
**arguing (5)**
13:1;33:22;43:17;
52:2;63:22
**argument (15)**
13:13;14:19;19:21;
22:12,16;23:15;
28:11,17;30:1,6,20;
32:7;38:3;42:10;57:5
**arguments (5)**
21:22;34:1;48:24;
53:14;72:9
**arm (4)**
44:11;68:4;69:25;
72:1
**armed (1)**
44:2
**Aron (13)**
9:14,17,18,18;10:6,
14;11:13,16,19;12:3,
5,8,10
**Aron's (2)**
11:1;12:14
**around (4)**
9:23;23:5;75:24;
77:16
**article (3)**
36:18,22;37:2

**aside (4)**
26:24;47:6;58:17;
67:12
**assert (3)**
34:25;52:23;68:13
**asserting (1)**
52:12
**assertions (3)**
36:8;48:10;52:6
**asserts (10)**
11:24;19:11;43:2,
20;45:7,24;46:15;
48:5;54:19;55:1
**asset (1)**
28:25
**assets (19)**
19:8;20:1;21:18;
24:22;25:2;26:11;
36:5;42:21;48:2,3;
55:7;60:8;62:10,11;
63:7;64:12;65:20,23;
78:15
**assigned (2)**
7:16;61:16
**assist (2)**
4:12;18:21
**associated (3)**
42:12;47:1;71:12
**assume (1)**
23:10
**assumed (1)**
40:5
**assuming (1)**
63:11
**Attached (5)**
19:5;57:25;58:19;
59:18,22
**attaching (1)**
61:17
**attachment (1)**
62:7
**attempt (2)**
15:3;21:13
**attempted (1)**
21:18
**attempts (2)**
36:8;63:21
**attention (1)**
30:24
**Attorney (3)**
16:12;74:20;77:25
**attorneys (3)**
33:22;74:18;76:10
**attributable (2)**
46:10;64:19
**auction (1)**
41:22
**August (3)**
17:5,6;69:3
**authorities (1)**
32:9
**authority (4)**
29:18;48:22;55:2;

70:9
**authorization (1)**
74:8
**authorized (1)**
27:3
**authorizes (1)**
44:19
**automatic (10)**
35:13;36:16;37:15;
74:2,11,11;76:1,17;
77:5;78:17
**avoid (14)**
16:17,22;37:13;
43:23;44:3,10,19;
45:18;46:24;67:6,8;
68:2;69:25;72:1
**avoidance (3)**
43:21;67:4;69:11
**avoided (2)**
27:7,25
**aware (1)**
11:6;76:10

**B**

**back (3)**
6:25;22:20;34:3
**backup (1)**
71:14
**balance (1)**
55:24
**bankruptcy (27)**
5:23;14:11;21:16;
24:15;26:10;27:8;
28:1;38:13,25;44:12,
23;51:10,16;53:3,20;
54:1;60:19;61:1;62:7;
65:2,7,17,21;66:6;
69:10;71:24;75:19
**BAP (5)**
20:5;65:2,5,8;70:22
**Barbara (20)**
16:21;26:20,23;
27:4;39:5,7,9,11;
42:4;43:19,24;44:1,8,
16;45:8;51:5;66:21;
67:8,20;71:1
**Barbara's (9)**
13:17;44:17;46:24;
47:6,12;48:17;67:12,
16,22
**Barber's (1)**
70:8
**based (12)**
11:24;15:9,16;33:8;
44:10;51:18;52:2;
66:25;69:20;70:24;
72:14;73:15
**basically (3)**
6:19;11:10,14
**basis (3)**
24:20;28:15;49:24
**bears (1)**

49:23
**became (2)**
40:4;58:12
**becomes (2)**
61:3,19
**behalf (1)**
4:25
**behind (1)**
74:5
**belabor (1)**
22:22
**belief (1)**
46:15
**believes (3)**
24:7;50:2;64:24
**Bello (23)**
4:14,23,24;5:7,8,14,
17,22,25;6:3,5,7,18;
7:4,6,13,19,23;8:3,11,
13,17,19
**Bellow (1)**
4:25
**belongs (3)**
46:22;47:3;52:4
**Ben (1)**
6:24
**bench (2)**
7:24;77:2
**beneficial (5)**
26:16;61:8,18,19;
62:3
**beneficiaries (12)**
18:3,7;19:3;20:13;
30:3;32:10;41:10;
47:16;55:15;56:19;
62:21;72:5
**beneficiary (39)**
20:11;24:19;25:10;
37:24;39:1;40:10,11,
11,17,20;41:2,2,7,13;
42:15,19,23;46:6;
51:12;52:9;56:3,16;
61:23,25;62:3;63:4,5,
8,11,14,19;64:10,11;
65:7,9,11,13,19,24
**beneficiary's (7)**
40:22,23;41:9,14,
16;61:16;62:5
**benefit (8)**
29:6;40:14;41:5;
62:17;63:10;64:13;
65:14;66:3
**benefits (2)**
32:9;61:14
**best (2)**
8:4;10:19
**beyond (1)**
50:13
**BFE (1)**
45:17
**BFP (12)**
44:5;45:6;47:10,14;
67:5,7,18,22;68:5,11,

15;72:1
**bidder (1)**
69:6
**bit (2)**
34:14;74:14
**blatant (1)**
75:20
**blatantly (1)**
49:19
**bona (2)**
43:22;44:4
**both (12)**
5:10;11:7,20,22;
22:8;38:5;40:10,13;
41:1,3;64:4;66:17
**bought (1)**
68:23
**BPF (2)**
68:3,7
**BR (2)**
20:5;70:21
**brief (4)**
4:22;25:19;34:6;
78:11
**briefed (1)**
38:5
**briefing (3)**
15:19,20;17:13
**briefly (1)**
34:2
**briefs (1)**
11:7
**bringing (1)**
31:24
**broad (2)**
20:14
**brought (3)**
11:10;32:14,15
**burden (6)**
11:23;13:6;34:21;
49:10;50:4,6
**buyer (2)**
47:13;67:18

**C**

**Cal (6)**
19:15;43:16;48:12;
55:11;59:24;69:14
**calendar (3)**
4:12;7:17;8:16
**CALIFORNIA (13)**
4:1;20:7;31:11;
39:15;42:18,23;44:5;
46:18;58:9;60:8;
61:22;68:14;69:13
**Call (2)**
4:3;30:23
**called (1)**
4:5
**came (1)**
11:6
**can (27)**

15;72:1
**bidder (1)**
15:72:1 — *(see above)*

4:16;7:8;8:5,6;
11:3;13:12;14:12,15;
15:1;16:14;26:1;27:7;
29:21;30:12;35:2;
37:23;44:10;46:6;
47:9;50:7;65:12;67:6,
7;69:19;72:23,24;
75:21
**capacity (4)**
27:2;39:7,9;48:21
**caption (2)**
19:5,7
**captioned (1)**
78:14
**care (1)**
74:12
**carried (2)**
11:23;49:10
**carries (2)**
50:4,6
**case (28)**
7:1,14,17;8:9;
14:11;18:21,22;20:6,
8,12;25:5,23,25;
30:18;38:14;42:2;
43:9;46:18;47:8;
57:21,22;61:1,10;
67:25;73:21,22;76:9;
77:9
**cases (6)**
7:22;19:20;43:2;
52:25;64:4;68:21
**cash (3)**
37:7;41:22;56:1
**cause (5)**
30:12;57:7;76:15,
23;78:13
**causes (1)**
66:8
**causing (1)**
76:1
**caution (1)**
27:18
**CCC (2)**
68:17,18
**CD (1)**
60:1
**cede (1)**
38:2
**certainly (5)**
7:3;8:5;16:6;21:19;
29:14
**certificate (1)**
36:13
**challenging (1)**
58:24
**chambers (1)**
8:15
**chance (2)**
16:2;30:20
**change (2)**
15:2;26:11
**changing (1)**

Leslie Klein

December 18, 2024

52:16

**Chapter (4)**
38:14,15,16;69:8

**characterization (1)**
11:14

**child (1)**
64:23

**children (9)**
29:17;30:3;56:18;
57:1,2,3;64:23;72:5,
12

**Cir (4)**
20:6,17;34:18;
70:22

**Circuit (3)**
20:19;21:2;52:24

**circumstances (5)**
29:3,8;68:19;69:17;
70:18

**cite (3)**
25:4;32:20;64:25

**cited (4)**
19:20;20:6;28:5;
73:22

**cites (5)**
42:24;43:9;46:4;
64:17;67:16

**citing (2)**
15:5;23:22

**Civil (9)**
39:15;43:16;47:9;
48:13;55:11;59:24;
60:4;69:14;71:18

**claim (11)**
24:5;45:18;47:10;
53:18;62:1;66:9,11,
14;67:8;69:19;71:14

**claimed (5)**
39:3;50:8;51:7;
53:4,25

**claiming (5)**
52:3;53:6;54:11;
58:16;70:14

**claims (18)**
17:25;18:11,15,20;
24:11;25:3;26:1;
29:10,15;43:19,24;
46:20;51:18,22;
53:22;62:6;66:20;
68:9

**clarify (1)**
21:18

**clause (8)**
25:4;41:25;42:22,
23;43:4;61:15;62:12;
65:15

**clear (4)**
28:21;33:7;73:19;
74:1

**clearly (3)**
52:14,20;53:21

**client (1)**
11:2,2;22:22

**clients (1)**
5:10

**client's (1)**
70:2

**close (1)**
68:5

**co-beneficiaries (1)**
40:1

**Code (21)**
19:15,18;27:8;28:1;
31:1;39:15;43:16;
46:4;47:9;48:13;
55:11;59:24;60:4,8;
64:17,18,25;65:1;
66:5;69:14;71:18

**comfort (2)**
41:9,15

**commenced (1)**
73:20

**commencement (1)**
67:25

**comments (1)**
22:25

**committed (1)**
32:11

**community (10)**
29:1;45:24;54:23;
55:19,20,25;60:18;
62:23;63:1;64:8

**Company (1)**
69:5

**complaint (14)**
14:7;16:16,19;17:3;
24:6,6,8;30:2;42:2;
66:9,9,15,16;67:1

**complete (8)**
17:3;42:16;63:6;
64:12;65:14,20,25;
66:2

**complexity (1)**
18:22

**complying (1)**
48:12;60:4

**concedes (1)**
33:15

**concerned (2)**
19:19;31:5

**conclude (1)**
77:24

**concluded (2)**
69:20;78:22

**concludes (1)**
45:11

**conclusion (2)**
36:2;72:14

**Conclusively (1)**
18:11

**concurrently (1)**
11:24

**conditions (2)**
61:6,6

**conference (7)**
5:13;7:8;9:1;10:7;

12:15;17:5;73:14

**confirm (1)**
18:25

**confusion (1)**
76:5

**connection (1)**
24:24

**consider (3)**
10:11;21:3;52:18

**considerable (1)**
22:5

**consideration (2)**
68:17;71:20

**considered (4)**
23:1;26:17;33:25;
38:7

**considering (2)**
21:2;53:14

**considers (3)**
41:8;56:6,21

**consist (4)**
36:23;55:18,22,24

**consolidated (1)**
42:7

**constructive (17)**
44:6,7,17;45:6;
47:8;48:19;67:11,17,
22;68:11,18,20;
69:18;70:5,16,25;
71:7

**construed (1)**
60:3

**contact (1)**
8:15

**contain (2)**
59:23;60:3

**contained (1)**
64:14

**contains (5)**
13:15;19:18;41:25;
61:24;72:22

**contending (1)**
47:8

**contends (25)**
42:12;43:1,7,24;
44:2,15,20;45:2,23;
46:9,17,23;47:12,20,
25;48:10;52:1,5;
54:18,24;57:9;67:7,
16;70:7;71:21

**contention (1)**
70:10

**contents (1)**
14:14

**context (1)**
64:2

**continuance (22)**
15:23;16:1;17:24;
18:22;19:25;20:14,
15,18,20,22,23,24;
21:1,5,20,25;22:2,8,
11,13;33:18;77:12

**continue (19)**

5:12;7:8,12,23;8:4,
14;10:7;12:18;15:15;
17:17;21:24;22:17,
23;28:16;30:22;
31:22;73:23;75:25;
76:4

**continues (1)**
74:8

**continuing (1)**
21:4

**contractors (1)**
34:18

**contradicted (1)**
49:19

**contrast (2)**
59:17;70:3

**contributed (5)**
62:15;65:6,10,22;
66:4

**contribution (1)**
46:8

**control (19)**
24:22;25:10;26:16;
41:22;42:16,20;62:5,
9;63:6;64:12,13;65:9,
11,14,20,25;66:2;
72:23;74:7

**controlled (3)**
47:21;62:17;63:3

**controversial (2)**
37:14;73:18

**convenient (1)**
40:17

**convey (3)**
41:23;45:3;48:22

**conveyance (2)**
68:14;71:18

**conveyed (2)**
46:16;67:13

**conveying (5)**
19:8;20:1;58:3;
59:9;78:15

**convinced (1)**
7:1

**copy (2)**
14:5,6

**corpus (6)**
60:25;65:4,6,16,20;
66:3

**co-settlor (1)**
40:1

**co-trustees (3)**
40:1;55:15;62:21

**counsel (2)**
7:16;18:20

**countless (1)**
74:23

**county (2)**
27:11;60:1

**couple (4)**
10:12;13:12;24:25;
38:2

**course (2)**

23:23;75:9

**Court (202)**
4:3,4,16,21;5:2,6,7,
12,14,20,21,24;6:2,
14,16,19,20;7:3,5,11,
21,25;8:4,12,14,18,
20,22;9:4,7,12,17;
10:5,9,11;11:5,9,13,
18;12:2,4,6,9,11,17,
20;13:5,10,19,21,23;
14:10,10,12,13,21;
15:8,14,17,17,18,20;
16:13,16;17:5,9,13,
20;18:4,8,9,10,16,25;
19:6,12,12,16,20;
20:14,17,24;21:3,7,9,
15,21,23;22:1,2,5,9,
11,15,17;23:1,2,6,9,
14;24:23;25:12,16,
25;28:3,8,16;29:21,
24;30:14,16,24;31:14,
25;32:4,12,18,19;
33:8,17;34:2,11;
35:11;37:4;38:4,6,7;
39:16;43:9;45:20;
46:18;47:22;48:25;
49:3,20,24;50:16,19,
22;52:21,25;53:16,
18;54:1,2,5,7,8,10;
57:20;58:14,21;59:1,
3,5,10,12;60:6,17,21,
23;63:12,15,23;64:1,
3,4,6,22,24,25;65:2;
66:14;67:1;69:10,13,
20,24;70:2,3,24;
72:10,14;73:1,4,11,
20;74:13,24;75:2,5,6,
14;76:7,21;77:11,14,
16,22,25;78:5,21

**Courtesy (1)**
75:16

**courts (3)**
21:3;52:18;70:13

**Court's (9)**
11:14;18:11;20:6;
21:19;33:2,19;58:24;
74:15;75:24

**cover (1)**
19:22

**Crawford (34)**
16:12;18:21,22,24;
28:18,19;30:19;
31:15,17,21;32:18,18,
22;33:17,24;34:4,11,
15;73:19;74:4,12,16,
19,20;75:2,3,16,17,
23;76:16;77:4,8,17;
78:17

**create (7)**
15:4;32:17;36:8;
46:19;58:23;59:4;
60:9

**created (14)**

Leslie Klein

December 18, 2024

39:23;41:19;55:22;
59:10;60:8,11,13,16;
61:1;62:25;63:12;
64:16;71:10;76:11
**creates (3)**
26:25;33:15;68:4
**creating (1)**
35:8
**creation (2)**
55:17;59:13
**credibility (8)**
33:13,13,14;34:6,8;
35:9;49:15;50:12
**credible (1)**
34:7
**credit (50)**
18:13;19:1,9,14;
20:2;28:13,13,23;
29:2,4,6,15,20;30:1,4,
10;31:5;35:14,15;
42:13;45:22;46:9,12,
22,24;47:4;48:12;
51:24;52:5;53:23;
54:5,6,11,24;55:24;
56:13,15,20;57:1;
60:7,16,21;62:13,25;
63:22;64:9,18;72:5;
78:4,15
**creditor (11)**
35:25;46:6;54:25;
61:17;62:1,5,6,19;
65:14;68:1,8
**creditors (1)**
25:2
**creditor's (1)**
37:11
**critical (1)**
28:10
**cross-motion (4)**
10:14,25;11:9,24
**curious (1)**
26:4
**current (5)**
26:20;39:5;51:5;
53:21;54:5
**currently (2)**
7:25;24:7
**cut (1)**
25:17
**Cutter (9)**
42:24;46:11;63:17,
21;64:4;65:2,3,13,15

**D**

**date (18)**
7:25;10:7,7;12:16;
16:6;44:8;45:5;47:18;
52:8;57:16;66:12,18,
24;67:9;76:4,6,19,22
**dated (7)**
19:9;39:8,10;51:19,
20,23;78:16

**dates (1)**
5:12
**day (2)**
23:3;38:16
**days (4)**
6:23;7:24;17:11;
72:20
**deadline (3)**
10:23;17:11,13
**deadlines (1)**
17:6
**deal (1)**
9:2
**deals (1)**
29:18
**dealt (1)**
30:13
**death (13)**
36:13,15,17,19,21;
40:4;54:23;55:16;
56:11,25;62:24;64:7;
71:11
**debtor (63)**
6:9,12;14:5;15:23;
17:8,15,16,19,24,25;
24:14;25:3,23;26:8;
27:1;35:20,21;36:20;
37:16,21;38:9,12,18,
19,21;39:2,7,9,11,14,
22,25;40:4,8,10,14,
16,20,24;41:1,5;
43:10;51:1;61:2,3,7,9,
18;65:7,9,11,13;68:2,
3;72:24;73:7;74:4,7,
12,14,18,21;75:23
**debtor's (11)**
5:18;24:15;25:10;
26:19;36:6;38:22;
39:5,17;51:3,5;76:5
**deceased (4)**
31:6;38:22;55:20,
25
**DECEMBER (6)**
4:1;36:11;39:19;
40:3;77:18,18
**decided (3)**
18:3,8;59:10
**decides (1)**
21:7
**decision (1)**
18:11
**decisions (1)**
75:12
**declaration (11)**
13:14;18:23;19:5;
46:19;53:5,13;59:2,4,
6,8,17
**declarations (1)**
10:24
**declares (1)**
58:17
**deduction (32)**
16:21;18:12;19:1,9,

14;20:2;24:18;29:2;
30:4;31:4;35:23;
36:23;37:20;38:22;
39:4;40:8,9,12,13,15,
19;41:18;42:4,9,13;
45:8;51:2,4,15,20,23;
57:16
**deductions (1)**
36:25
**deed (12)**
14:6;27:15;39:18;
46:17,20;55:3;57:19;
58:25;68:24;69:6,7,9
**deeds (1)**
58:5
**default (2)**
69:1,20
**defaulted (1)**
68:25
**defeat (3)**
47:9;68:12;69:19
**defendant (3)**
15:2;28:14;35:15
**defendants (15)**
9:6,19,23;12:1;
13:15;16:25;27:9,19;
28:7;29:11,12;42:5,6,
7;78:3
**defendants' (5)**
13:18;14:24;15:1,3;
35:19
**defendant's (2)**
13:18;35:19
**defense (1)**
20:21
**defenses (1)**
45:11
**deferred (1)**
41:22
**defines (1)**
68:18
**defining (1)**
29:9
**definitely (1)**
33:23
**delay (4)**
20:22;21:5,19;76:4
**deliberately (1)**
52:16
**demonstrate (9)**
42:11;50:3;51:24;
54:25;63:13,17;
71:12,16,21
**demonstrated (2)**
22:14;47:1
**demonstrates (1)**
59:15
**demonstrating (5)**
43:25;45:13;57:9;
67:20;70:25
**denial (4)**
20:17;21:1;22:11,
13

**denials (2)**
35:2;36:8
**denied (6)**
17:9;30:6;33:18,19;
72:13;78:5
**denies (1)**
22:17
**denying (1)**
11:19
**dependent (1)**
37:12
**depending (1)**
29:2
**depositions (1)**
50:1
**derive (1)**
52:23
**described (2)**
24:6;58:18
**describes (3)**
24:6,8;66:16
**description (4)**
36:1,3;66:10,17
**despite (4)**
31:24;32:6;48:10;
52:6
**destroy (1)**
37:22
**detail (3)**
23:22;25:4,22
**detailed (1)**
72:12
**details (1)**
64:3
**determination (10)**
20:3;24:9,10;37:16;
66:12,13,13,18,20,23
**determinations (1)**
49:15
**determine (4)**
19:13;20:15,19;
27:12
**determined (1)**
58:22
**determines (1)**
68:10
**determining (1)**
52:18
**device (2)**
39:1;51:11
**diametrical (1)**
10:16
**diametrically (1)**
10:17
**died (8)**
36:11,11;40:3;48:2;
57:14,15;58:11;60:18
**difference (1)**
45:4
**different (2)**
4:9;49:18
**differing (1)**
50:9

**diligent (1)**
20:21
**direct (1)**
33:1
**directly (2)**
20:11;26:25
**disagree (3)**
11:13,16;33:19
**disallowing (1)**
14:4
**disclosure (1)**
74:21
**discovery (3)**
17:3,6;27:5
**discretion (5)**
20:15,17;24:21;
37:22;62:10
**discuss (1)**
11:3
**discussing (1)**
9:22
**discussions (1)**
6:9
**dismiss (1)**
74:5
**dismissed (1)**
74:25
**disposition (1)**
58:15
**dispositive (1)**
17:7
**dispute (8)**
15:4;20:12;35:1,9;
36:9;49:4,8;50:8
**disputed (5)**
33:4,7,15;34:8,16
**disputes (2)**
20:10;34:19
**disregard (1)**
75:21
**disrespect (1)**
26:21
**distinguish (1)**
63:21
**distinguishes (1)**
46:11
**distribute (5)**
36:21;48:2,3;56:12;
65:13
**distributed (1)**
57:1
**distribution (8)**
31:5;37:11;47:24;
55:7;56:14;63:7;
64:12;66:2
**distributions (1)**
66:1
**divide (1)**
41:23
**Division (2)**
35:11;73:21
**docket (10)**
5:15;13:14,25;

14:23,25;15:6;16:10;
17:2;23:21;35:18
**doctrine (2)**
52:11,14
**document (9)**
19:6,7;26:24;27:16;
37:4;43:25;55:9;
58:21;59:22
**documentation (1)**
27:11
**documents (24)**
13:15,20;14:12,13,
15;15:5;36:2,3,7,18;
44:21;45:2;54:17;
58:6,13;59:18,19;
67:10,20;71:5,7,23;
73:25;77:2
**done (2)**
6:4;37:15
**door (1)**
76:10
**doubt (1)**
49:12
**draft (1)**
76:14
**drawing (1)**
49:16
**Drive (1)**
58:2
**due (4)**
9:9;17:14,15;18:21
**Dulberg (23)**
4:10,11,18;8:25;
9:5,10,13,14,20;10:9,
12;11:8,12;12:13,19;
13:2,3;75:16;77:6,7,
13,15,20
**duly (3)**
14:5,6;27:23
**during (6)**
39:13;40:2;44:23;
53:15;58:14;69:11
**dust (1)**
11:1

**E**

**earlier (7)**
6:13;8:5;25:23;
52:20,22;53:22;54:2
**early (2)**
4:6;7:20
**easier (1)**
4:17
**education (5)**
40:22;41:9,14;56:8,
23
**effect (3)**
11:12;18:6;29:7
**effective (1)**
33:11
**effectiveness (1)**
18:12

**effectuate (1)**
48:16
**efficacy (1)**
48:20
**eight (1)**
8:2
**either (7)**
10:7;14:11;25:22;
53:22;54:24;60:20;
64:8
**election (2)**
69:1,21
**Electric (2)**
34:17,18
**elements (2)**
42:11;67:2
**eleventh (1)**
21:6
**eliminate (2)**
36:24;55:23
**else (2)**
4:7;71:1
**email (1)**
75:17
**encumbered (1)**
68:24
**encumbrance (1)**
62:1
**end-run (1)**
75:24
**enforce (1)**
74:10
**enforceable (2)**
61:9,10
**enough (2)**
32:23;71:13
**ensure (2)**
72:24;76:13
**ensuring (1)**
75:22
**enter (2)**
74:3,24
**entered (4)**
5:16;39:8,9;53:16
**entire (6)**
6:9;45:7;54:21;
65:3,15;66:3
**entirely (4)**
36:24;45:23;46:10;
64:19
**entirety (1)**
72:18
**entitled (7)**
23:24;25:6;45:17;
49:5;58:9;65:12;
66:22
**entity (5)**
27:13;43:16;45:9,
13;71:24
**equitable (3)**
44:7;52:11;61:2
**Erica (32)**
4:25;19:9;29:1;

31:6;36:11,11;38:23;
39:20,23,25;40:3;
45:24,25;46:4,10,14;
48:2;53:3;55:13,14,
16;57:8,14,15;62:14,
20,21;63:23;64:19;
65:22;66:5;78:16
**Erica's (15)**
31:9;36:13,17,21;
40:4;51:1;54:23;
56:18;57:2;60:6,18;
62:24;63:1;64:7;
71:11
**Ermatinger (1)**
65:4
**error (1)**
64:24
**essence (1)**
25:6
**establish (2)**
18:11;47:3
**established (3)**
46:13;57:17;67:2
**establishes (2)**
46:18;60:9
**estate (53)**
21:8;24:15;25:8;
26:2,18,23,25;36:25;
39:5;43:5,9,11,18;
44:12;45:4,7,25;51:5,
16,17;52:2;53:20;
54:1,21;55:21,23,25;
56:13;57:18;58:6,9,
12;59:6,24;60:19;
61:1,4,20;64:20;65:8,
12,17,22;66:7,18;
68:10;69:5;71:24;
74:1,10,19;75:22;
76:1
**estates (1)**
27:3
**estopped (5)**
43:17;52:1,24;54:5,
11
**estoppel (4)**
46:21;52:11,19,25
**Even (11)**
20:7;22:13;32:25;
37:19,25;45:2,16;
54:18;60:20;74:5,22
**event (2)**
32:25;36:16
**everybody (1)**
26:21
**evidence (37)**
13:20;14:9;15:7,9;
22:14;24:3;28:12;
29:5;33:8,15;34:1,6;
35:5,10;38:7,9,10;
43:13;45:12;48:5;
49:8,15;50:7,14;55:4,
12;57:9;59:15,23;
60:6,14,15,22;63:13;

70:25;71:15;72:15
**evidencing (2)**
54:17;71:23
**evincing (1)**
67:10
**evolving (1)**
26:4
**exactly (1)**
34:15
**examining (1)**
45:4
**example (1)**
36:22
**exceeding (1)**
46:7
**excellent (1)**
6:24
**except (1)**
51:17
**exception (1)**
31:2
**excessive (1)**
42:20
**exchange (2)**
41:23;46:3
**exclusion (1)**
65:8
**exclusive (9)**
18:7;19:12,16;20:9;
21:8;31:25;32:4,11,
19
**excruciating (1)**
25:22
**excuse (4)**
12:15;30:14;50:5;
51:19
**executed (4)**
55:14;57:22;58:21,
25
**executing (1)**
58:6
**execution (1)**
62:7
**executor (2)**
57:23;58:11
**exempt (4)**
26:1;31:6;39:3;
43:10
**exempted (1)**
31:13
**exemption (14)**
14:4;25:24;39:15,
17;51:7;52:3;53:4,7,
9,12,17,19;54:3,9
**exemptions (1)**
43:8
**exercise (1)**
42:20
**Exhibit (1)**
37:2
**exhibits (5)**
13:16;14:1,7,9;28:4
**exigencies (1)**

52:17
**exist (1)**
26:15
**existed (1)**
36:15
**existence (4)**
18:5,12;35:1;48:8
**exists (2)**
36:15;55:9
**expanded (1)**
51:2
**expenses (2)**
55:21;76:2
**explaining (2)**
16:8;36:4
**explanation (1)**
29:16
**explicit (1)**
72:11
**explicitly (1)**
28:25
**express (1)**
57:12
**expressly (2)**
18:15;21:11
**extent (3)**
27:23;45:8;61:18
**extreme (1)**
11:19

**F**

**F2d (1)**
34:18
**F3D (1)**
20:16
**fact (16)**
15:16;33:4,8,16;
34:9;49:4,6,13;50:3;
67:2;68:20,21,22;
69:18,19;72:15
**fact-finder (1)**
50:8
**fact-finding (2)**
35:12;73:24
**factor (2)**
21:20,25
**factors (4)**
20:19;21:2,4;52:18
**facts (34)**
10:18;11:21,21,25,
25,25;12:6,23;14:19,
24;15:6,8,10,25;
23:17,23;24:2,2;
33:25;34:19,22,24;
38:12;42:10;43:1;
47:17;49:12,16,21;
50:14,17;52:7;67:21;
70:24
**factual (5)**
15:4;23:25;35:1;
36:9;50:8
**failed (3)**

30:9;43:24;46:23

**fails (2)**
15:4;29:13

**failure (3)**
29:17;30:11,12

**fair (3)**
73:5,7;76:13

**faith (2)**
68:16;71:20

**fall (1)**
31:13

**falls (3)**
26:2;28:15;31:1

**familiar (4)**
12:22,23;23:17;
32:22

**family (10)**
47:4;57:25;58:4,5,
8,12,13,16,22;59:3

**far (2)**
27:20;36:24

**fashion (1)**
36:14

**favor (2)**
35:6;72:17

**favorable (1)**
50:17

**February (6)**
8:1;10:3;12:18;
18:10;38:13;75:20

**federal (3)**
20:7;36:25;55:23

**fees (1)**
76:2

**few (1)**
53:3

**fide (2)**
43:22;44:4

**fifty (9)**
38:21,21;42:8;
50:25;51:1;53:25;
54:13,15;60:17

**file (7)**
9:11;17:7;22:4,23;
23:4;50:2;74:10

**filed (57)**
5:23;10:14;14:11,
12;15:19,21,23;16:5,
7,11,16,19,24,25;
17:1,8,12,15,18,24;
18:9,14,16,23,25;
19:6,23;21:6,10,16;
22:3;23:3,21;26:9;
28:6;29:25;30:8,11;
35:20,24;38:6,13,14,
18,24;42:1,6;51:10;
53:3,5,24;60:14;61:1;
69:8;73:25;74:20;
77:18

**files (1)**
18:18

**filing (7)**
15:16;26:10;44:23;

76:24;77:2;78:14,18

**fill (2)**
76:19,22

**finally (4)**
22:10;47:15;48:24;
54:4

**financial (3)**
38:19;51:8;53:9

**find (3)**
37:1;49:13;64:25

**findings (1)**
72:12

**finds (17)**
19:20;21:3,21;
22:11;54:10;57:20;
59:12;60:17,21;
63:15;64:4,6;66:14;
67:1;70:2,24;72:14

**fine (7)**
8:13;9:4;12:11,11,
14;23:2;31:20

**finish (2)**
25:15;30:20

**first (14)**
4:13;9:3;16:19;
17:18;26:2,20;28:11;
31:15;36:19;39:10;
68:17;70:6;71:20;
75:4

**fit (1)**
29:11

**five (1)**
13:15

**floor (2)**
13:3,5

**focused (2)**
10:21;76:24

**folks (1)**
4:15

**following (5)**
17:6;33:9;34:20;
38:12;61:24

**follows (3)**
55:13,18;59:25

**footnote (1)**
24:1

**forced (1)**
67:14

**foreclose (1)**
50:12

**formally (1)**
58:5

**formation (1)**
48:9

**formed (1)**
48:8

**former (1)**
39:22

**Forsythe (1)**
4:25

**forth (3)**
24:20;34:22;50:14

**forward (1)**

24:12

**found (4)**
24:24;47:22;69:24;
70:3

**four (1)**
20:19

**frankly (1)**
10:20

**frauds (1)**
59:6

**FRBP (1)**
49:1

**FRCP (1)**
49:1

**Free (3)**
6:24;44:6;62:4

**front (2)**
6:8;37:5

**frustration (1)**
76:7

**full (4)**
6:23;8:1;51:4;63:6

**functions (1)**
49:17

**fundamental (1)**
50:22

**funded (16)**
37:7;45:23;46:10,
13;55:17;56:1;57:13,
17;60:8,13,16;62:23;
63:1,12;64:16,19

**further (6)**
25:21;34:2;38:3,3;
60:5;73:16

## G

**gaining (1)**
52:12

**gave (1)**
33:21

**generally (1)**
42:18

**genuine (9)**
34:23;35:4;49:4,8,
14;50:3,15;67:1;
72:15

**gets (1)**
12:21

**given (3)**
6:3;10:16;53:8

**Glenn (4)**
57:23,24;58:11,14

**Goe (1)**
4:25

**goes (5)**
23:22;29:1;31:8;
33:6;37:6

**Good (8)**
4:11,24;5:2;9:18;
10:10;13:7;68:16;
71:20

**governed (1)**

20:7

**governing (1)**
49:7

**grant (8)**
20:20;29:21;34:20;
41:22;49:3;58:25;
59:24;60:1

**granted (12)**
20:16;26:25;43:15;
44:21;47:20;50:5,7;
55:10;65:3;72:18;
73:13;78:7

**grantee (1)**
58:3

**granting (7)**
20:23,24;21:20,25;
22:1,8;73:9

**guess (1)**
10:17

## H

**half (9)**
15:22;16:7;17:24;
22:4;26:5,5;35:22,23;
46:2

**Halvard (5)**
57:23;58:7,11,16,
18

**Halvard's (4)**
58:2,9,12;59:8

**hand (2)**
60:2;77:23

**handling (1)**
7:14

**hands (1)**
30:19

**hanging (1)**
16:9

**happened (4)**
5:22;6:11;16:10;
76:9

**happening (1)**
35:3

**happiness (2)**
41:10,15

**happy (1)**
28:3;77:10

**harming (1)**
76:1

**hats (1)**
25:11

**heading (1)**
30:2

**health (5)**
40:22;41:9,14;56:8,
23

**heard (3)**
16:8;31:21;53:16

**hearing (28)**
8:1;12:16,25;15:16,
21,22,24;16:4,6;
17:10,14,17,23,23,25;

20:7

**hearings (1)**
10:3

**heated (1)**
74:14

**Heggstad (8)**
46:17;57:18,22,24;
58:17,18;59:12,18

**held (22)**
24:16,17;25:8;26:6,
14;29:6;39:4;41:21;
50:25;51:1,4,16;59:1;
60:18;62:18;63:23;
65:2;66:1,3;69:10;
70:13;72:10

**Hello (1)**
4:10

**Herbert (2)**
69:5,8

**Herbert's (2)**
69:11,25

**high (1)**
24:4

**highlight (1)**
12:25;23:18;31:19

**highlights (2)**
43:12;48:14

**himself (1)**
27:1

**Hodges (1)**
4:25

**hold (9)**
4:17;6:2;15:9;
32:18;44:1;48:7;
53:11;67:20;71:13

**holder (2)**
70:13,19

**holding (2)**
43:22;67:5

**holds (14)**
25:11,25;43:5,19;
44:25;45:9,13,16;
59:14;61:18;66:19,
21;71:4,25

**homestead (8)**
14:4;52:3;53:4,7,9,
12;54:3,9

**honest (1)**
10:25

**Hono (1)**
6:12

**Honor (92)**
4:11,12,14,24;5:8,
17;7:19,20,24;8:13,
17,21,25;9:18;10:12,
20;11:8,16;12:13;
13:4,7,11,24;14:18,
23;15:11,13;16:11;
22:21,24;23:11,20,21;
24:4,11,13,19;25:4,

20,21,23;26:7,15,19;
27:7,9,10,25;28:2;
30:8;31:21;34:10,13,
17,23,24;35:4,7,9,14,
17,20;36:10;37:1,8,
19,21,23;38:1;72:21,
25;73:3,10,17,18,21,
24;74:2,3,9,13,14,23,
23;75:3,15,19;76:18,
19;77:6,10;78:19
**hour (3)**
21:7;31:24;32:14
**house (2)**
28:13;39:12
**housekeeping (1)**
13:12

## I

**idea (2)**
10:10;31:10
**identical (1)**
64:5
**identified (1)**
57:25
**identifying (1)**
49:25
**immunized (1)**
26:1
**impacted (1)**
22:13
**important (1)**
13:13
**improve (1)**
41:24
**impute (1)**
68:9
**inapplicable (3)**
46:21;59:12;65:8
**Inc (1)**
34:17
**include (3)**
14:1;66:10;78:2
**included (4)**
43:7;58:1;65:7;
66:6
**includes (3)**
24:10;39:24;61:2
**including (9)**
6:10;18:5;41:21,24;
48:4;65:4,16,21;78:4
**income (26)**
24:20;32:6;40:1,10,
11,13,16,17;41:1,4,7,
8,8,10;55:15;56:3,5,6,
16,20,21;62:2,4,22;
63:3,9
**income-producing (1)**
46:1
**inconsistent (6)**
52:14,20,23;53:1,
21;70:20
**inconvenience (3)**

20:24;22:1,8
**incorrect (1)**
31:11
**incur (1)**
76:2
**incurred (1)**
68:3
**Independence (1)**
58:1
**indicate (1)**
20:3
**indicated (6)**
18:9;39:3;50:24;
51:14;53:8,10
**indicates (6)**
18:24;19:16;28:12;
31:2;66:19,22
**individual (3)**
39:7,9;48:21
**inference (1)**
73:1
**inferences (1)**
49:16
**influence (1)**
33:1
**information (1)**
51:3
**informing (1)**
49:24
**initial (3)**
19:22;49:24;69:10
**initiated (1)**
68:25
**inquired (1)**
69:23
**inquiry (5)**
47:8;67:18;68:20,
22;69:18
**inside (1)**
47:4
**insofar (1)**
31:4
**installments (1)**
40:18
**instead (5)**
21:8;36:18;37:11;
59:14;62:14
**instructions (1)**
58:15
**instrument (5)**
40:7;58:19;61:5;
69:16;70:1
**instruments (1)**
69:15
**insufficient (6)**
48:15,19;55:9;56:6,
21;71:16
**integrity (1)**
52:15
**intended (3)**
34:14;46:1;64:13
**intentional (1)**
74:1

**intentionally (1)**
15:20
**interest (68)**
16:17,22;18:15,19;
21:12,13;26:16;27:7,
21,22,24;29:1;36:6;
39:6;42:9;43:20,23,
24;44:1,7,7,8,10,17,
22;45:1,9,14,16,18;
46:24;47:7;48:17,22;
51:16;54:14,15,23;
55:19,20;56:12;61:3,
9,16,17,18,19;62:2,3;
65:19;66:19,21;67:6,
8,10,13,21,23;69:12;
70:12,15,17,20;71:2,
6,8,25;72:2
**interested (2)**
12:25;23:18
**interests (4)**
18:6;44:20;61:2,7
**interference (1)**
62:5
**interfering (1)**
30:17
**internal (7)**
18:2,4;19:17,19;
20:3;32:2,8
**interrogatories (3)**
13:19;47:2;50:1
**into (16)**
13:20;14:9;15:7;
19:8;20:1;24:3;25:22;
26:12;39:8,10;57:20;
58:20;64:3;77:10,11;
78:15
**invalid (7)**
45:12;54:21;61:22;
63:18;64:7,15;65:15
**involved (1)**
7:4
**involving (2)**
4:13;44:11
**irrelevant (1)**
34:19;45:12
**irrevocable (1)**
51:2
**IRS (1)**
60:12
**issue (25)**
5:9;32:3;33:7,7,12,
14,16;34:8,8,16,23;
35:4;38:20;49:14;
50:3,15,22;60:22;
64:21;65:16;67:1;
69:11;72:6,15;76:11
**issued (2)**
60:12;69:7
**issues (4)**
18:1,4;19:13;33:4
**item (1)**
4:13

## J

**Jason (1)**
56:19
**John (1)**
13:8
**join (3)**
24:24;29:12;30:2
**joinder (9)**
30:6;47:22;48:25;
60:5;63:25;64:3;72:4,
11,12
**joined (6)**
28:14;29:4,21;30:1,
5;47:16
**joining (1)**
17:9
**joint (7)**
5:8,11;17:1;30:11;
70:20,21,23
**jointly (1)**
70:14
**Jones (1)**
13:8
**Joseph (2)**
4:25;53:4
**judge (2)**
7:16;49:17
**judge's (2)**
7:17;8:15
**judgment (39)**
5:19;7:5;8:24;9:8;
10:3,11,14;12:1,22;
13:9;15:24;17:4,12,
25;18:1;23:1;29:22;
32:17;33:5;34:9,20,
21;38:6;47:20;49:2,3,
5,22,23;50:5,6,12,16;
65:3;72:18;73:9;78:2,
7,10
**judicial (12)**
13:25;14:13,14;
37:2;46:20;50:20;
52:11,15,19,25;66:23;
72:7
**judicially (3)**
43:17;52:1;54:10
**July (3)**
16:24;17:1;42:6
**jumped (1)**
4:20
**jumps (1)**
35:17
**June (27)**
7:12,14,18;8:4,14;
14:5;16:18,23;24:5,
14,16;25:1,24;26:5,
13,17,23;27:4,14,14,
16,22;33:6;35:22,25;
38:20;39:12
**junior (3)**
43:23;44:3;67:6

**jurisdiction (13)**
18:8;19:11,13,17;
20:6,9;21:7,9;31:25;
32:4,11,19;69:14
**jury (4)**
35:5;49:9,16,20
**justifiable (1)**
21:23

## K

**keep (1)**
26:22
**Ken (1)**
9:5
**Kenneth (2)**
9:19;56:18
**kind (3)**
37:7;56:1;75:12
**Klein (172)**
4:5,8,23;5:3,10;6:6,
13,14,15,16,17,17,22;
7:3,10;8:21;9:5,19;
14:7;16:20,20,22;
18:2,4,5,9,14,16,18,
20,23;19:10,11,15,20,
23;20:6;21:7,10,13,
16;22:4,7,11;24:16,
17,19;25:8;26:3,16,
21;29:1;32:10;36:12,
22;37:9,17,17,21;
38:23;39:5,20,20,20,
23;40:6;42:3,5,14,14;
43:2,7,12,19,20,24;
44:16,22;45:14,19,22;
46:2,4,9,15,23,25;
47:6,12,15,22;48:1,3,
21;51:5,7,12,14,18,
19,22;52:1,3,8;53:3,5,
17;54:1,2,4,7,10,12,
14,16;56:4,5,7,10,17,
18,19,22;57:4,7,8,10,
14,18;61:24;62:9,13,
14,17,20,21;63:3,3,5,
64:7,9,17,24;65:18,
24;66:1;67:12,16;
70:7;71:1,10,21;72:4;
74:7;75:19;76:10,16;
77:4;78:16,17
**Klein's (22)**
32:5;45:7,11;48:10,
24;50:23;51:8,17;
52:6;53:4,21;57:2,20;
60:19;64:2;65:1;
66:6,18;71:24;72:5,9,
11
**Kloehn (1)**
20:16
**knew (1)**
16:6
**knowingly (1)**

76:16
**knowledge (2)**
67:25;68:8

## L

**LA (6)**
15:17;18:9;19:6;
35:11;58:9;73:20
**language (4)**
58:16,22;60:3;
72:22
**last (5)**
7:25;23:7;26:21;
31:16;34:4
**late (2)**
31:24;32:14
**later (5)**
18:18;21:17;35:13;
52:13,19
**law (26)**
12:23;14:15;20:7,7;
23:17,22,24;25:5,25;
31:11;32:13;33:2;
42:18,23;44:5,14;
49:5,7;61:6,10,22;
62:7;68:9,10,14;
70:18
**lawsuit (1)**
73:24
**lay (1)**
15:10
**lead (2)**
49:13;72:7
**learned (1)**
68:22
**least (8)**
26:4;28:14;29:12;
40:18;54:13;75:5,7,
11
**leave (1)**
28:2
**ledger (3)**
47:1;51:19;60:2
**ledgers (16)**
29:7;33:9,9,14;
48:11,13;51:23;
54:25;55:8;59:20;
60:3;71:11,16,17,21,
22
**leeway (1)**
33:21
**legal (7)**
33:1;37:13;49:1;
61:2;62:1,3;66:17
**legitimate (1)**
49:16
**lens (1)**
12:7
**Leslie (3)**
6:17;31:10;39:19
**Leslie's (1)**
31:9

**level (1)**
24:4
**liable (1)**
62:6
**life (7)**
26:23,25;27:3;39:5;
45:25;51:5,17
**lifestyle (1)**
53:11
**lifetime (2)**
39:13;40:2
**light (2)**
50:17;75:9
**lighting (1)**
28:18
**likely (1)**
64:24
**likewise (1)**
48:15
**limited (3)**
20:10;39:17;52:24
**line (2)**
32:20;34:7
**list (2)**
19:18,20
**listed (4)**
38:19;39:14;50:24;
58:4
**lists (1)**
42:3
**litigated (1)**
30:5
**litigating (2)**
18:21;22:7
**litigation (1)**
39:16
**little (3)**
4:6;34:14;74:13
**live (1)**
39:12
**lived (1)**
39:13
**lives (1)**
70:10
**living (107)**
14:7;16:20;19:14;
24:17,17;25:8;36:12,
13,22;37:9,17;39:20,
23,24,25;40:3,5,7,9,
11,15,18,23,24,25;
41:2,6,11,11,17,18,19,
25;42:3,12,15,16;
43:2,13;45:13;46:13,
16;47:1,19,20,23,25;
48:2,14,15;52:8,9;
54:14,16,20,22;55:5,
6,12,14,16,16,25;
56:2,9,15,25;57:6,8,
10,12,14,23;59:4,13,
14,16,21;60:19,24;
61:12,24;62:8,16,19,
20,22,23,24;63:2,9,
11,15,18,24;64:1,7,

10,14;65:18,23,25;
66:1;71:10,12,24;
72:16
**locate (1)**
77:1
**located (1)**
58:1
**logical (1)**
73:1
**look (3)**
12:7;13:13;35:18
**looked (2)**
5:14;23:3
**looking (4)**
29:24;37:4;54:15;
76:25
**LOS (2)**
4:1;27:12
**lot (2)**
10:25;77:1
**Lucas (48)**
4:20;8:24;9:2;13:1,
4,5,7,8,23,24;14:17,
18,22;15:8,11;16:2;
22:20,21;23:2,5,8,11,
14,20;25:12,14,18,19;
30:19;31:15;34:3,12,
13;37:5,6;72:19,21;
73:2,3,10,16,17;
75:14,15;76:8,18;
78:9,19

## M

**main (1)**
14:11
**maintain (5)**
40:22;41:10,15;
56:9,24
**makes (2)**
4:16;7:23
**making (2)**
30:7;75:12
**man (1)**
68:20
**manage (1)**
41:21
**mandate (1)**
48:3
**manner (6)**
40:23;41:11,16;
47:16;56:9,24
**many (2)**
23:12;70:13
**March (2)**
16:10;38:18
**marital (34)**
16:21;18:12;19:1,9,
14;20:2;24:18;27:6;
29:2;30:4;31:4;35:23;
36:23;37:20;38:22;
39:4;40:8,9,12,13,15,
19;41:18;42:4,9,13;

44:11;45:8;51:2,4,14,
19,23;57:16
**married (1)**
58:7
**material (8)**
33:4;34:9;49:4,6,
12;50:3;67:2;72:15
**materials (2)**
10:24;31:12
**matte (1)**
42:11
**matter (19)**
4:4,19,23;6:25;
17:14;19:22;21:24;
23:24;25:2,9;27:13;
32:2,10;37:11;49:5;
71:1;73:13,14,15
**matters (3)**
4:5,8;13:12
**maximum (2)**
46:6;65:12
**may (24)**
4:7;7:19;8:6;11:13;
16:18,19;36:20;37:7;
38:14;39:12;40:12;
41:3;42:1;43:23;44:6,
9;48:1;50:11;56:1;
59:25;68:1;69:2;72:1;
75:15
**maybe (5)**
7:8,23;11:1;75:6;
77:3
**MDT (45)**
25:9;26:6;27:10,13;
35:23;36:1,6;37:10,
25;45:19,22;46:2,9,
12,22,24;47:3;48:11;
51:20;52:5;53:22;
54:6,11,24,25;55:22;
56:2,5;57:11,13;60:7,
15,21;62:13,25;
63:22;64:9,18;66:21;
71:3,5,8,22;72:2;
78:15
**mean (3)**
25:16,19;37:21
**meaning (1)**
43:4
**means (1)**
69:16
**meant (3)**
5:18;26:22;64:25
**mediate (1)**
6:25
**mediation (9)**
6:23,23;9:21,22,25;
10:1,10,15,19
**mediator (1)**
6:24
**meets (1)**
66:15
**memorializing (1)**
71:5

**Menlo (1)**
58:2
**mention (1)**
17:16
**mentioned (9)**
17:2,19,22;30:21;
33:25;34:5;59:19,20,
22
**mere (2)**
35:1,2
**merely (2)**
50:11;53:11
**metaphysical (1)**
49:11
**midst (1)**
9:10
**might (11)**
6:13;7:9;10:6,6,10;
12:13;36:4;49:6;
68:22;72:2;75:10
**million (1)**
50:24
**mind (1)**
21:19
**minimum (5)**
36:23;37:13;41:10,
16;55:22
**misconstrues (1)**
57:4
**miss (1)**
5:16
**mistaken (2)**
10:4;46:17
**modified (1)**
15:6
**moment (1)**
52:17
**Monday (1)**
23:5
**money (1)**
8:9
**month (1)**
58:6
**months (13)**
7:8;8:2;15:22;16:7;
17:24;18:18;21:6,17;
22:3,8;24:25;53:3;
72:11
**moot (1)**
73:15
**more (13)**
7:23;11:2,22;15:22;
16:7;17:21,23;22:4;
25:14;49:11;75:21;
76:3,4
**morning (6)**
4:11,24;5:2;9:18;
13:7;23:5
**most (4)**
18:17;21:16;50:17;
64:23
**motion (63)**
8:23;9:8,8;11:11,

15;12:21;13:9;15:15,
19,20,23,24;16:1;
17:8,9,12,24;18:1,23;
19:25;22:3,17,23;
23:1,21;24:1,24;28:4,
5;29:13,18,22;30:6;
31:22;33:18,20;
34:21;38:5,6;47:19,
22;49:21,25;50:16,18,
21;60:5;63:25;64:3;
72:11,13,18;73:2,7,9,
13,22;74:3,10;76:25;
77:12;78:1,6
**motions (2)**
17:7;49:2
**movant (6)**
13:6;22:10;31:15;
49:4,10;50:12
**move (2)**
24:12;33:23
**movement (1)**
20:21,25;49:5
**moves (1)**
72:24
**moving (3)**
12:15;50:5;77:16
**MSJ (5)**
21:5;22:18,19;
23:15;49:17
**much (10)**
4:17;8:8,10;9:15,
20;40:21;41:7,13;
56:7,22
**must (13)**
18:8;27:23;29:10;
35:4;47:4;49:11;
50:13,17,22;60:23;
66:9;68:15;71:19
**mute (5)**
28:20;30:17,18;
45:20,21
**myself (1)**
13:14

**N**

**name (5)**
6:24;26:21;29:17;
30:9;58:2
**named (5)**
29:10,10,16;74:6;
78:3
**names (1)**
26:20
**naming (2)**
57:22,23
**Nancy (4)**
58:7,7,20,24
**narrow (1)**
76:24
**necessary (13)**
17:9;24:25;30:3;
40:21;41:8,14;45:6;

47:15;48:9;53:9;56:7,
23;72:6
**need (2)**
30:16;73:11
**needed (1)**
50:9
**needs (1)**
18:22
**negatively (1)**
22:13
**neither (4)**
51:15;60:2;66:20;
70:6
**net (3)**
40:17;41:7;56:5
**nevertheless (2)**
27:4;74:8
**new (4)**
7:16;8:15;18:20;
30:6
**next (4)**
12:16;26:19;50:22;
60:22
**nine (2)**
22:8;74:18
**ninety (1)**
7:24
**Ninth (3)**
20:19;21:2;52:24
**nomenclature (1)**
30:12
**non-bankruptcy (2)**
61:5,10
**non-binding (1)**
72:7
**nondischargeability (1)**
4:13
**None (2)**
35:6;71:22
**non-estate (1)**
36:5
**nonmoving (7)**
35:6;49:9,14;50:4,
7,11,13
**nor (7)**
35:2;43:14;51:16;
59:22;60:2;70:6;71:6
**North (2)**
38:20;39:12
**note (2)**
8:25;68:24
**noted (9)**
20:5;21:15;22:3;
42:3;59:5;60:5,21;
63:12;70:22
**notes (3)**
18:16;48:24;64:22
**notice (38)**
14:1,13,14;37:2;
38:15;44:6,17;45:6;
47:9,11,13;48:19;
50:20;67:11,18,18,22;
68:9,11,18,19,21,25;

69:2,14,15,17,18,19,
20,21;70:5,9,11,16,
25;71:7,14
**notion (1)**
31:7
**notorious (1)**
47:10
**Notwithstanding (1)**
61:4
**November (2)**
39:8,11
**number (15)**
4:23;8:25;13:14,25;
15:7;23:21;28:10;
31:1;35:18;73:13,14,
21,22;74:23;77:9

**O**

**objected (2)**
53:4;58:20
**objection (5)**
13:21;14:25;53:5,
15,24
**objections (2)**
28:6,6
**obligation (1)**
68:2
**obtain (1)**
54:4
**obtained (1)**
44:9
**obvious (1)**
33:5
**obviously (3)**
11:21;75:4;76:8
**occupancy (1)**
70:15
**occupant (2)**
70:20,21
**occupants (1)**
70:23
**occupies (1)**
70:14
**occurred (2)**
60:22;63:13
**October (4)**
17:10,14,15;29:25
**off (2)**
25:17;34:15
**offer (1)**
77:8
**Office (1)**
38:14
**offline (1)**
7:6
**often (1)**
70:22
**Olsen (1)**
33:20
**Olson (41)**
5:2,4;13:21,22;
15:13,15,18;16:4,11,

14,15;25:13;28:9,10,
16,19,22,24;29:24;
30:8,14,15,20,22,23;
31:14,17;36:10;
73:19;74:4,12,16,22;
75:17,23;76:15;77:4,
23,25;78:5,17
**omits (1)**
30:2
**once (2)**
11:1;17:2
**one (24)**
5:3;9:21;13:11;
15:12,21;17:22;19:6,
24;26:24;31:19;33:7,
21;35:16;49:18;
52:12;57:13;58:6;
63:9;68:5;70:23;
73:17;74:17,17;75:15
**ones (1)**
33:5
**one-third (1)**
58:9
**only (10)**
4:4;8:2;9:21;19:24;
20:17;27:15;46:6;
57:13,15;65:6
**oOo- (1)**
4:2
**open (1)**
47:10
**operation (1)**
32:3
**operative (1)**
42:2
**opponent (1)**
49:10
**opportunity (9)**
6:3;11:3;21:22;
53:16;73:7;75:6,7,12;
76:22
**oppose (1)**
23:10
**opposed (4)**
10:17;53:5,24;
69:10
**opposing (6)**
20:25;22:1;34:22,
25;49:18;50:18
**opposite (1)**
34:14
**opposition (24)**
9:8;10:16,23;11:10,
15,22,22;17:14,16;
22:5,23;23:4,13;
29:25;30:9,25;32:16,
20;38:8,10;51:18,22;
53:6;72:4
**oral (1)**
74:3
**order (29)**
4:3;5:15;14:4;16:5;
17:8;19:8;20:1;30:21;

14,15;25:13;28:9,10,
16,19,22,24;29:24;
30:8,14,15,20,22,23;
31:14,17;36:10;
73:19;74:4,12,16,22;
75:17,23;76:15;77:4,
23,25;78:5,17
**ordered (1)**
77:25
**orders (2)**
14:2;74:13
**ordinarily (1)**
65:5
**original (1)**
30:24
**others (1)**
65:10
**otherwise (4)**
9:16;12:14;15:3;
22:12
**ourselves (1)**
75:10
**out (14)**
5:9,12,25;6:7;7:24;
14:16;15:10;16:9;
20:11;26:5;27:18;
35:9,17;72:24
**outcome (1)**
49:7
**outline (1)**
48:1
**outlines (2)**
27:16;36:19
**outstanding (1)**
9:21
**over (14)**
21:8;34:19;42:16,
20;62:9,10;64:12;
65:9,14,25;66:2;68:7;
72:23;76:8
**overlap (1)**
11:20
**overlooked (1)**
28:11
**override (1)**
68:9
**Owen (2)**
43:9,10
**own (5)**
50:14;54:19,25;
63:10;64:13
**owned (15)**
24:14;28:13;35:22,
23;36:1;38:21,21;
39:19;47:18;51:15,
21;52:8;54:8,16,17
**owner (2)**
24:7;27:15
**ownership (5)**
27:22;48:16;52:6;
67:5;71:4
**owns (13)**
24:9;27:14,16;
35:25;36:6;45:7;
50:23;51:25;53:23;

54:6,11,13;72:16

**P**

**Pachulski (1)**
13:8
**Pacific (1)**
34:18
**page (7)**
19:5,6,22,24;30:2;
32:20;34:6
**pages (1)**
37:2
**paid (1)**
51:3
**painstaking (1)**
23:22
**papers (6)**
10:13,22;11:5;
23:17;33:12;77:16
**Park (1)**
58:2
**part (5)**
53:19,25;54:19;
60:19;65:16
**participated (1)**
5:10
**particular (3)**
9:14;68:20;69:18
**parties (17)**
10:10,18;11:20;
17:9;20:10;21:21;
24:25;29:10,22;30:3;
35:2;39:13;47:15;
49:18;52:16;53:15;
78:3
**parties' (2)**
50:9;53:14
**partition (1)**
41:23
**partner (1)**
75:16
**party (25)**
20:25;22:1;27:2;
34:22,25;35:6;37:7;
43:14;49:9,14,23;
50:4,6,7,11,13,18;
52:12,21,22;54:18;
57:12;58:8;66:21;
72:19
**party's (2)**
52:19;53:1
**passes (1)**
56:18
**passing (1)**
60:7
**past (1)**
33:22
**pause (1)**
25:17
**pay (9)**
40:16,20;41:7,12;
56:4,7,20,22;74:19

**payment (1)**
55:21
**payments (1)**
41:22
**penalty (3)**
26:9;51:13;53:13
**pending (4)**
6:20;9:7;22:25;
35:11
**people (1)**
26:22
**Per (1)**
71:18
**percent (17)**
38:21,21;42:8;
50:25;51:1,15;53:23,
25;54:6,8,12,13,15;
60:17;66:19;71:13;
72:16
**Perfect (1)**
7:10
**perfected (4)**
43:22;44:13;45:1;
71:4
**perjury (3)**
26:10;51:13;53:13
**permits (2)**
45:10;65:6
**permitted (1)**
75:23
**person (8)**
27:14;53:18,20;
59:17;61:13;68:18;
69:16,17
**personally (2)**
27:1;35:22
**persons (1)**
68:12
**persuading (2)**
52:21;54:1
**persuasive (1)**
65:1
**Peter (1)**
68:23
**petition (18)**
14:2;18:9,25;19:7,
22,24;22:15;38:13;
44:8;45:5;47:18;52:7;
66:18,24;67:9;69:8;
75:13;78:14
**petitioned (1)**
58:14
**ph (1)**
6:24
**phone (2)**
30:16;45:20
**piece (4)**
25:7,20,21;26:19
**place (1)**
58:19
**plaintiff (3)**
5:10;35:17;42:1
**plaintiffs (3)**

32:7;33:12;66:10
**plaintiff's (1)**
7:16
**pleading (1)**
42:2
**pleadings (7)**
12:22,24;27:5;35:3;
49:25;50:13;53:14
**please (9)**
4:8;6:3;12:23;
28:17,20;30:18,22;
32:20;45:20
**PM (1)**
78:22
**podium (1)**
38:2
**point (13)**
9:15;10:16;11:22;
14:22;22:22;23:20;
24:13;26:16;28:14;
29:12;32:17;33:1;
50:7
**pointing (1)**
35:9
**points (8)**
15:2;28:5,11;30:25;
31:18,19;33:21;38:2
**portion (2)**
50:25;65:6
**portions (1)**
49:25
**position (21)**
9:23,25;10:9;19:15,
24;43:10;46:5;52:13,
14,20,20,22,23;53:2,
21,22;54:2,6;57:19;
59:15;75:10
**positions (2)**
10:17;52:16
**possession (2)**
47:10;70:18
**possibility (1)**
9:22
**possible (2)**
7:19;36:24
**potential (1)**
47:13
**power (5)**
32:9;41:20;48:22;
64:13;68:7
**powers (8)**
44:2,11;67:4;68:1,
4,13;69:25;72:1
**prayer (2)**
24:10;66:13
**Precisely (2)**
12:8,10
**preclude (4)**
32:16;33:5;34:9,20
**precluded (2)**
25:1;62:11
**precludes (1)**
52:12

**predetermine (2)**
47:24;55:6
**prejudice (2)**
22:2;75:1
**prejudiced (3)**
20:25;22:10,12
**premarital (10)**
13:16,17;39:8,10;
44:9,15;48:21;67:14,
15;70:6
**prepare (1)**
78:1
**preparing (3)**
5:11;20:21;22:6
**pre-petition (1)**
5:18
**presence (4)**
47:12;48:18;67:17;
70:8
**present (1)**
21:22
**presented (3)**
28:12;29:5;72:15
**preserved (1)**
75:22
**presiding (1)**
76:8
**presumption (1)**
70:19
**prevailing (1)**
72:19
**prevent (1)**
60:24
**prevents (1)**
61:17
**previous (2)**
53:1,11
**previously (4)**
18:16;42:3;54:7;
64:1
**primary (1)**
53:8
**principal (27)**
24:20;32:6;40:2,11,
14,20,21,21,23;41:2,
4,13,13,14,16;51:3;
55:15;56:3,7,13,16,
22;62:4,22;63:4,8;
65:19
**principle (1)**
62:2
**prior (2)**
26:10;44:6
**pro (1)**
5:4
**probate (32)**
15:17;17:20;18:8,
25;19:12,15,16,18;
21:9;22:15,25;31:1,
25;32:4,12,19;35:11;
46:4;58:14,21,24;
60:8;64:17,17,25;
65:1;66:5;73:20;

75:13;76:24;77:2,9
**problem (2)**
21:12;30:10
**problems (1)**
28:19
**Procedure (1)**
39:16
**procedures (2)**
36:20;48:1
**proceed (7)**
9:25;10:1;13:12;
14:18;22:18;23:15;
78:9
**proceeding (5)**
6:10;14:8;76:25;
77:2,9
**proceedings (4)**
19:17,18;49:3;
78:22
**proceeds (1)**
46:4
**process (6)**
10:8;52:15;62:1,7;
74:16;76:13
**produce (1)**
43:25
**produced (4)**
13:15;27:20;43:12;
44:21
**prohibiting (1)**
52:15
**prohibits (1)**
61:16
**proper (2)**
17:19;46:18
**properly (5)**
34:21;46:16;48:8;
58:21;75:4
**properties (1)**
32:1
**property (241)**
14:6;16:18,23;18:7,
16,19;19:2;21:8,12,
14;22:7;24:5,7,10,14,
15,16;25:2,7,8,24;
26:1,2,5,14,17,17,22;
27:4,6,14,15,17,22;
29:6;31:6,7,9,9;33:6,
10;35:22,25;36:7,21;
37:9,12,20;38:20,20,
25;39:3,4,6,15,17,18,
18,25;41:21,21,24,25;
42:9;43:4,4,5,6,8,8,9,
11,11,13,15,17,18,20;
44:1,7,12,18,20,22,
24;45:1,3,5,7,9,10,14,
15,17,24,25;46:1,3,
15,19,21,25;47:3,7,
10,12,18,24;48:4,6,7,
11,16,18,18,23;50:23,
24;51:4,8,10,15,17,
21,25;52:2,2,3,4,7,8;
53:7,8,17,19,19,23,

25;54:3,7,9,12,13,16,
17,19,21,21,23;55:1,
2,5,9,10,19,25;57:5,6,
7,10,20,25;58:1,2,3,4,
15,18,20,23;59:1,2,5,
10,11,14,16,20,25;
60:1,9,16,17,18,20;
61:3,3,4,19;62:18,23;
63:1;64:8,20,20;65:5,
10,16,21,21;66:1,11,
16,19,22;67:6,7,9,13,
17,21;68:2,4,6,7,15,
16,23;69:24;70:8,10,
12,14,15;71:2,4,6,9,
13,15,16,18,22,25;
72:3,16,23,24;74:1,
19;76:1

**property's (2)**
66:10,24
**proportion (1)**
63:1
**proportionate (1)**
46:7
**propose (1)**
72:22
**proposition (1)**
42:25
**propound (1)**
17:6
**prosecute (1)**
75:25
**prosecuting (1)**
68:21
**protect (3)**
43:4;52:15;53:12
**protected (2)**
42:21;61:20
**provide (8)**
27:3;37:9;55:1;
62:9;67:22;70:5,11,
16
**provided (12)**
19:25;45:6,25;47:2;
55:17;56:1,2;58:7;
62:19,24;65:18;70:9
**provides (17)**
29:1;36:22;40:10,
12,15,19;41:1,3,6,12;
49:1;54:22;56:15;
61:8;67:24;68:6;
69:14
**providing (3)**
66:16;67:10;72:22
**provision (12)**
32:7;42:21;54:20;
60:4,23;61:4,15,20;
62:18;63:18;64:6,14
**provisions (8)**
37:8;46:13;47:23;
48:1;56:14;61:21,25;
68:9
**prudent (3)**
68:19;69:17,22

**publicly (1)**
14:12
**purchase (1)**
36:5
**purchaser (5)**
43:22;44:4;47:11;
69:22;71:19
**purported (3)**
24:8;67:23;70:12
**purportedly (3)**
26:23,24;66:3
**purporting (1)**
45:3
**purpose (1)**
52:14
**purposefulness (1)**
76:5
**purposes (2)**
49:6,21
**put (9)**
10:24;47:11,13;
67:17;68:19;69:17;
70:8;71:7,13

## Q

**quiet (14)**
16:17,22;24:5,12,
13;25:20,21;29:8,9;
42:11;66:9,15;67:3;
72:17
**quieting (1)**
66:23
**quite (1)**
4:22
**quote (5)**
17:20;19:7;21:11;
34:17;39:12

## R

**race- (1)**
69:13
**raise (1)**
33:4
**raised (9)**
15:2;30:12,20;
32:16,20,23,25;69:12;
77:23
**raises (1)**
34:8
**raising (2)**
33:14;34:5
**rather (11)**
12:1;19:12,23;20:7;
34:20;45:23;47:25;
50:13;57:9;63:23;
70:13
**rational (1)**
49:13
**re (5)**
20:5,12;42:24;47:7;
70:21

**reach (4)**
35:5;46:6;65:10,11
**reached (2)**
5:25;6:7
**reaching (1)**
60:25
**read (5)**
12:22;20:9;23:16;
77:10,11
**ready (2)**
21:23;38:4
**real (18)**
35:5;39:18;44:11;
45:4;46:19;47:10;
55:9;59:5,25;60:1;
68:3,6,7,10,14,23;
69:5;71:18
**realize (2)**
29:17;30:9
**really (6)**
6:8,11,21;8:1;
35:16;75:4
**reargue (1)**
31:18
**reason (4)**
21:23;28:13;29:4,
11
**reasonable (3)**
35:5;49:8,20
**reasons (3)**
47:19;73:12;78:6
**reassigned (2)**
7:15,22
**receipt (1)**
62:2
**receive (1)**
61:13
**received (2)**
69:6
**recent (1)**
21:16
**recently (1)**
18:17
**recited (1)**
73:21
**recognized (1)**
65:5
**recognizes (1)**
42:18
**reconsider (1)**
75:10
**record (17)**
14:20;15:5,9;22:24;
28:5,21;30:17;31:23;
49:12,19;60:15;69:9;
73:12;77:10,11;78:6,
8
**recordation (1)**
44:13
**recorded (36)**
14:5,6;27:6,11,16,
23;28:24,25;36:14,
14;39:18,24;43:25;

44:10,16,21;45:4;
47:5;48:13,18;55:3;
58:14;59:20;67:10,
19;68:15;69:1,3,22;
70:7;71:5,7,17,19,23,
23
**recorder (5)**
45:20;69:2,3,22;
70:4
**recording (2)**
48:14;69:8
**recordings (1)**
70:4
**records (3)**
45:4;68:17;71:20
**recover (1)**
45:10
**recreate (1)**
78:12
**reduce (2)**
36:24;55:23
**Reem (1)**
4:24
**reference (3)**
24:1;37:1;64:22
**references (1)**
28:4
**referred (1)**
30:10
**reflected (1)**
39:14
**reflecting (2)**
43:15;55:10
**reflects (2)**
27:15;39:19
**reform (1)**
73:25
**reformation (1)**
35:12
**regard (4)**
67:25;68:7;74:15,
15
**regarding (23)**
6:9;7:4,7;14:2;18:1,
4;19:13,17;22:7;30:1;
45:1,5;48:24;52:6;
55:12;56:2,15;57:4;
58:15;65:3;69:23;
71:3;72:12
**regardless (2)**
43:5;65:22
**regards (1)**
70:18
**reiterate (2)**
12:24;73:11
**reiterates (4)**
48:17;55:4;67:19;
71:14
**rejected (2)**
48:25;72:10
**relate (1)**
18:1
**related (1)**

70:23
**relates (2)**
32:8,9
**relating (1)**
32:2
**reliance (3)**
57:21;65:1;70:2
**relied (2)**
53:1;54:8
**relief (4)**
24:12;25:7;27:19;
69:9
**relies (2)**
31:12;47:7
**rely (1)**
28:4
**remainder (2)**
55:20;56:25
**remained (1)**
58:2
**remaining (3)**
4:4;54:15;56:13
**remember (2)**
35:20;37:19
**reminder (1)**
15:18
**remove (1)**
73:25
**removed (2)**
71:14;74:25
**renders (1)**
64:14
**Rens (2)**
20:5,12
**repair (1)**
41:24
**repeat (1)**
28:22
**replies (4)**
15:1;62:16;63:23;
72:9
**reply (10)**
9:9;10:22;17:15;
33:11;34:6;38:10;
47:17;52:5;55:4;
67:19
**report (9)**
5:9,11;8:7,8;9:16;
12:15;17:1,18;30:11
**represent (2)**
5:3;42:7
**representation (1)**
54:8
**represented (2)**
54:7,12
**representing (1)**
74:21
**request (14)**
13:25;17:16;20:15,
20,22;21:4;37:2;
50:19;73:2,18;76:3,4;
78:2,5
**requested (2)**

5:11;73:6
**requesting (1)**
74:24
**require (1)**
74:4
**required (5)**
43:16;55:11;57:19;
58:25;60:9
**requirement (1)**
59:9
**requirements (2)**
59:8;66:15
**requires (2)**
29:9;59:6
**requiring (2)**
69:18;74:25
**res (3)**
48:8,9;60:10
**reserving (1)**
9:24
**residence (3)**
51:3,6;53:8
**resolution (1)**
7:11
**resolve (1)**
50:9
**resolved (2)**
6:11;17:3
**resources (3)**
72:8;74:10;75:22
**respect (9)**
25:24;27:3,9,19,22;
32:1,5;75:13,13
**respectfully (1)**
75:11
**respective (1)**
18:2
**respectively (1)**
14:8
**respond (6)**
16:2;38:1;73:8;
75:8,12;76:23
**responded (2)**
39:2;51:9
**responds (7)**
45:19,22;52:4;
54:22;62:13;67:12;
71:10
**response (3)**
14:24;38:23;47:2
**responses (2)**
13:18;28:6
**responsibility (1)**
49:24
**responsive (1)**
27:5
**rest (1)**
35:2
**resting (1)**
31:10
**restriction (1)**
61:8
**restricts (2)**

61:6,6
**result (1)**
72:7
**retain (1)**
41:20
**retained (2)**
18:20,24
**retiring (2)**
7:14,20
**return (1)**
49:9
**returns (1)**
60:14
**reveal (1)**
20:9
**reviewed (1)**
11:5
**reviewing (1)**
19:19
**revocable (2)**
57:23;59:4
**revolving (1)**
76:10
**Rhodes (1)**
58:7
**Richard (1)**
56:18
**rifles (1)**
74:18
**right (15)**
8:7,11,13,20;9:10;
12:2,2,11,12;13:5;
38:4;46:23;48:12;
73:16;78:9
**rights (5)**
18:3;47:13;68:1,12;
70:9
**ripe (2)**
10:15;24:5
**role (2)**
18:5;40:5
**roles (1)**
25:11
**room (2)**
4:7;10:20
**roughly (1)**
10:18
**rule (7)**
16:1;21:23;29:13,
19;38:4;49:6;70:22
**ruled (2)**
23:9;64:1
**rules (2)**
10:11;36:20
**ruling (23)**
14:16;15:10;22:18,
19;23:10,23;31:22;
33:2,19;47:22;49:17,
21;50:16;58:24;60:5;
63:25;72:6;73:15;
75:9,24;77:12;78:10,
12

**S**

**Sacramento (6)**
68:24;69:1,3,22,23;
70:4
**sale (6)**
63:6;68:25;69:2,6,
7,21
**Salkin (5)**
42:24;46:11;63:17,
21;64:4
**same (10)**
10:18;11:25;12:6;
23:12;26:8;31:18;
33:23;36:14;38:15;
68:16
**sanctioned (3)**
76:16;77:5;78:18
**satisfied (1)**
59:8
**Schaap (1)**
47:17
**schedule (12)**
10:22;18:14,18;
21:11;38:19;39:3,14;
50:23;51:7;58:1,4,19
**scheduled (2)**
15:22;17:23
**schedules (8)**
14:3;18:17;26:9;
35:20;38:18;51:12;
53:24;54:13
**screen (2)**
4:7,9
**scrivener's (1)**
64:24
**se (1)**
5:5
**second (15)**
14:6;16:20;19:8;
20:1;21:20;24:16;
26:14;28:24;36:12,
12;39:23;42:3;46:2;
75:9;78:15
**section (5)**
30:25;65:1,5;66:23;
68:4
**security (2)**
41:23;43:23
**seeing (1)**
4:15
**seeking (13)**
16:8,17,22;20:1,3;
22:14;24:12;25:7;
27:18;49:23;52:13,
22;53:11
**seeks (4)**
24:9;66:17,20;
68:12
**self-funded (1)**
62:14
**self-settled (24)**

24:23,25;26:12;
31:3,7,10;38:25;
42:14;43:3;44:24;
45:15,17,23;46:12;
47:21;51:11;61:12;
62:9,14,17;63:16,22,
24;64:2
**sell (5)**
37:22;41:22;69:1,
21;72:25
**senior (4)**
43:22;44:25;67:5;
71:4
**sense (4)**
7:23;9:2,24;10:6
**sent (1)**
75:17
**separate (3)**
59:9,21;76:11
**September (3)**
17:7,8,11
**Seror (1)**
42:24
**served (2)**
40:6;74:6
**serves (2)**
40:8,24
**Service (1)**
34:17
**set (19)**
5:12;10:3,18;11:20,
21;12:6;15:20;16:4;
17:5,13,13;18:10;
34:22;47:6;50:14;
58:17;67:12;75:6;
76:14
**sets (1)**
24:20
**settle (1)**
7:1
**settled (1)**
7:1
**settlement (1)**
6:9
**settlers (1)**
46:7
**settles (1)**
11:1
**settlor (10)**
40:5;42:14,22;46:5;
61:13,22;63:10,19;
64:9;65:24
**settlors (4)**
55:14;57:2,14;
62:20
**seven (1)**
72:20
**several (1)**
29:7
**shall (13)**
36:23;40:16,20;
41:7,12;49:3;56:11,
20,22;61:25;62:4,5;

67:24
**share (1)**
45:24
**Sharp (53)**
42:10,18;43:1,7,9,
12,19,21,24;44:2,5,8,
15,19,25;45:10,11,17;
46:23,25;47:6;48:5,7,
10,14,17,20,24;52:1,
4,5;54:15,18;55:1,4,8;
59:13;62:8,16;63:23;
67:4,7,11,12,19;
70:25;71:3,13,14,25;
72:9;74:5,6
**Sharpe (3)**
47:23;63:17;64:21
**Sharp's (1)**
46:15;59:14
**Sherry (1)**
56:18
**shielded (1)**
66:5
**shielding (2)**
25:1;62:11
**shifts (1)**
34:21
**short-circuited (1)**
14:16
**shortening (1)**
16:5
**Shortly (3)**
17:12;58:13;69:7
**Shoshana (2)**
9:5,19
**show (12)**
4:9;33:10;46:23;
47:17;48:5,11;49:11;
52:7;75:6;76:15,23;
78:13
**showing (4)**
29:5;34:22;50:14;
71:15
**shows (4)**
27:12,21;33:15;
49:4
**side (2)**
11:3;33:23
**sides (2)**
19:15;38:5
**sides' (1)**
11:7
**signed (6)**
5:11;26:9;51:12;
53:12;59:7;61:25
**significantly (1)**
22:2
**similar (4)**
14:23;29:19;39:1;
51:11
**Simon (1)**
9:18
**simply (5)**
5:12;29:13;31:11;

34:25;49:11
**sits (1)**
  37:18
**situated (1)**
  60:1
**situation (2)**
  31:1;53:9
**situations (1)**
  42:22
**six (2)**
  7:8;15:1
**slew (1)**
  10:23
**small (1)**
  26:24
**SOFA (4)**
  38:23;44:22;45:14;
  51:12
**sole (3)**
  63:5,7,14
**somebody (1)**
  37:14
**someone (3)**
  6:2;30:14,16
**sometime (3)**
  7:15,18,21
**somewhat (2)**
  11:16,24
**son (1)**
  57:22
**sorry (3)**
  23:2;25:16;74:13
**sort (15)**
  10:16;11:2,4;14:19;
  25:5,20;26:3,4;27:24;
  35:8,16,16;36:4;
  37:18;74:18
**sought (4)**
  25:23;66:12,13;
  69:9
**speak (4)**
  6:3,4,13;78:8
**speaking (2)**
  6:2;10:18
**speaks (1)**
  9:16
**specific (4)**
  24:1;34:22;37:9;
  50:14
**specifically (9)**
  29:9;30:10;31:2,5,
  11,13;59:18,19;78:4
**spend (1)**
  8:9
**spendthrift (18)**
  25:3;32:7;41:25;
  42:19,22,23;43:3;
  54:20;60:23;61:15,
  20,21;62:12,18;
  63:18;64:6,14;65:15
**spent (1)**
  22:5
**sponte (1)**

74:3
**spousal (1)**
  64:23
**spouse (17)**
  26:20;31:6;38:22;
  39:5,22;40:19;51:5;
  55:18;56:3,5,10,17,
  17,20,25;70:10,11
**spouses (1)**
  56:24
**spouse's (10)**
  36:19;55:19,20,21,
  25;56:8,9,11,12,23
**spring (3)**
  7:15,21;35:21
**stance (1)**
  57:4
**standard (1)**
  49:1
**standing (1)**
  29:19
**Stang (1)**
  13:8
**starting (1)**
  34:7
**state (14)**
  5:21;6:20;7:5;
  28:17;29:14;30:11,
  11,12;32:13;33:2;
  46:17;66:9;68:9,10
**stated (5)**
  47:19;53:7;58:16;
  73:12;78:6
**statement (7)**
  14:24;15:1,6;23:25;
  36:5;38:19;51:8
**statements (2)**
  14:4;35:21
**States (2)**
  25:25;51:9
**stating (2)**
  45:11;51:3
**status (16)**
  5:8,11,12;7:7;9:1;
  10:7;12:15,15;17:1,5,
  18;25:10;68:5,11;
  69:23;73:14
**statute (2)**
  29:9;59:6
**statutes (1)**
  20:8
**statutorily (2)**
  25:1;62:11
**stay (9)**
  35:13;69:9;74:2,11;
  76:1,17;77:4,5;78:17
**stayed (2)**
  6:20;74:25
**Stein (1)**
  19:4
**Stein's (1)**
  19:2
**still (4)**

5:9;7:24;9:24;
  27:24
**stop (2)**
  74:14,24
**stopped (1)**
  14:5
**stories (1)**
  49:18
**story (1)**
  26:4
**straight (1)**
  26:22
**stranger (2)**
  70:14,15
**Street (23)**
  14:6;16:18,23;24:5,
  14,16;25:1,24;26:5,
  13,17,23;27:4,14,14,
  16,22;33:6;35:22,25;
  38:20;39:12;66:17
**strikes (1)**
  10:15
**strong (5)**
  44:2,11;68:4;69:25;
  72:1
**sua (1)**
  74:3
**sub (2)**
  63:9;66:5
**subject (6)**
  18:7;43:20;58:23;
  62:1,6;66:10
**submitted (6)**
  34:21;38:8,8,9,10;
  43:14
**subsection (2)**
  31:12,13
**subsequent (2)**
  10:8;71:19
**substance (2)**
  50:20;59:25
**subtrust (19)**
  18:6;19:3;42:16;
  44:1;45:1;48:7;52:10;
  54:19;60:13;63:4,6,7,
  14;64:15;65:23;67:8,
  20;71:11,12
**subtrusts (20)**
  26:15;33:10;42:17;
  43:3;44:21;47:21,25;
  55:11,12,17;62:8,16;
  63:2,11,15,20,24;
  64:2,11;66:4
**subtrust's (1)**
  67:23
**succeeded (2)**
  52:21;54:1
**successor (2)**
  57:24;58:12
**sufficient (11)**
  29:18;46:19;47:11;
  50:7;58:19,22;59:2,4;
  68:19;70:5,11

**suggestion (1)**
  12:14
**suit (1)**
  49:7
**summarizing (1)**
  21:15
**summary (35)**
  8:23;9:8;10:3,11,
  14;12:21;13:9;15:24;
  17:4,12,25;18:1;
  22:25;29:22;32:16;
  33:5;34:9,20,21;38:6;
  47:19;49:2,3,22,23;
  50:4,6,12,16;65:3;
  72:18;73:9;78:1,7,10
**Superior (6)**
  15:17;17:20;18:10;
  19:6;35:11;73:20
**support (21)**
  12:1;18:23;19:15,
  23,25;22:15;23:23;
  25:21;38:9,11;40:22;
  41:9,15;43:10;46:4;
  53:6,10;56:8,24;
  64:23;70:9
**supporting (1)**
  50:8
**supportive (1)**
  23:11
**supports (1)**
  57:18
**supposed (1)**
  74:11
**supposedly (3)**
  18:19;22:14;26:5
**Supreme (3)**
  25:25;43:9;53:18
**sure (2)**
  7:22;19:3
**surprise (1)**
  75:18
**surviving (17)**
  40:4,19;55:18,19;
  56:3,5,8,9,10,11,12,
  17,17,20,23,24,25
**survivor (6)**
  45:8;51:16;60:7;
  71:3,10;72:2
**survivor's (23)**
  16:21;24:18;25:9;
  27:10,13;37:10;
  40:25;41:1,3,4,5,6,12,
  19;42:4,8,13;46:3;
  57:12,16;64:8;71:6,8
**swept (1)**
  31:7
**system (1)**
  5:21

                **T**

**tactic (3)**
  20:22;21:5,19

**talk (1)**
  35:13
**talked (1)**
  75:16
**talking (1)**
  34:15
**tax (3)**
  36:25;55:23;60:14
**taxation (1)**
  37:13
**taxes (1)**
  55:21
**technically (1)**
  4:18
**ten (5)**
  17:11;26:10;38:24;
  44:23;51:9
**terms (8)**
  7:7;11:9;19:11;
  20:14;33:17,20;
  57:12;78:9
**the- (1)**
  65:4
**thereafter (2)**
  17:13;58:13
**thereby (1)**
  26:1
**Therefore (3)**
  22:17;44:25;54:10;
  66:4;69:24;71:25
**thereof (1)**
  38:11
**third (2)**
  14:22;21:25
**Thomas (1)**
  70:21
**thoroughly (1)**
  23:16
**though (1)**
  74:22
**thought (8)**
  9:2,2;10:12;17:19;
  25:16,17;32:23;77:13
**three (6)**
  8:2;21:6;22:3,4;
  52:18;55:17
**Thus (1)**
  35:4
**tight (1)**
  10:22
**tile (1)**
  28:18
**timeline (1)**
  21:15
**timely (1)**
  17:15
**times (1)**
  74:23
**TINs (1)**
  60:12
**title (25)**
  16:17,22;19:24;
  24:5,11,12,13;25:20,

21;29:8,9;42:11;
61:11;66:9,11,14,15,
24;67:3;70:13,14,16,
19,20;72:17
**titled (3)**
36:19;51:19,23
**today (8)**
7:2;9:9;16:9;17:14;
36:15;73:19;75:5,24
**today's (7)**
15:21,22;16:6;
17:22;21:4,10;75:9
**together (2)**
20:9;50:2
**took (1)**
25:17
**touch (1)**
7:16
**track (2)**
7:17;10:2
**transaction (1)**
47:4
**transfer (16)**
26:11;36:16;38:25;
48:16;51:10;55:2,9;
57:20;58:25;59:2,23;
61:5,7,8;68:2;71:16
**transferred (19)**
37:10,20;42:8;
43:13;44:24;45:15;
48:6,11;55:5;57:6,7,
10,11;58:5,17;59:16;
60:20;71:15,22
**transfers (1)**
44:3
**transpired (1)**
6:8
**trial (4)**
34:23;49:14;50:10,
15
**trier (1)**
49:13
**trouble (1)**
4:15
**truly (1)**
73:5
**trust (325)**
14:7;16:20,21,21;
18:2,5,12,13;19:1,2,8,
9,9,14,14,15,19;20:1,
2,2,4,10,13;21:18;
24:17,17,18,18,20,21,
23;25:1,9,9,11;26:12,
14;27:10,13;28:13,14,
23,24,25;29:2,2,5,7,
15,20;30:1,4,4,5,10;
31:4,4,5,7,10;32:3,8;
35:14,15,23,25;36:13,
14,18,19,22,23;37:7,
9,10,11,12,17,20,22;
38:22;39:1,4,20,23,
24,25;40:4,6,7,8,9,9,
12,12,13,14,15,15,17,

18,19,24,25,25;41:1,
3,3,4,5,6,6,11,12,18,
18,19,19,20,21,24,24,
25;42:4,4,4,8,9,12,13,
13,14,15,16,19,20,20;
43:3,5,14,14;44:20,
24;45:8,9,13,16,16,
22;46:3,5,9,12,13,16,
19,22,24;47:2,4,4,19,
20,23,24,25;48:2,6,6,
8,9,12,15,15;51:2,4,
11,15,16,20,23,25;
52:5,8,9;53:23;54:6,
11,14,16,18,20,22,24,
25;55:2,5,6,7,12,14,
16,17,18,21,24,25;
56:1,2,14,15,15,21;
57:1,6,8,11,11,12,13,
14,16,16,19,20,23,25,
25;58:3,4,5,8,10,13,
13,16,18,20,22,23;
59:1,3,4,5,7,10,13,14,
16,17,18,19,21;60:7,
7,9,9,10,10,16,19,21,
24,25;61:9,12,12,13,
14,15,19,23,24;62:4,
8,10,16,19,20,22,23,
24,25,25;63:2,9,11,
15,18,20,24;64:7,8,9,
10,14,15,18;65:6,10,
12,14,15,18,20,20,21,
23,25;66:1,3,5;68:24;
71:3,6,10,11,12,25;
72:2,5,16;78:4,15,16
**trustee (91)**
5:25;6:7;9:24;
11:23;13:1;14:25;
16:16;17:2,12;20:11,
13;22:3,6,9,23;24:7,
19;27:2;28:12;29:4,
11,20;31:12;35:17;
36:20;37:16,21;38:7,
8,15,16,17;40:5,6,6,8,
12,16,25;41:3,6,8,12,
20;42:15,24;52:9;
56:4,4,6,6,11,19,21,
22;57:6,9,24,24;
58:12,18;59:7;60:24;
63:3,5,7,10,14,19;
64:10,11;65:19,24;
66:22;67:2,24;68:1,5,
5,6,8,10,12,25;69:2,
21,24;72:17,23;76:2;
78:1
**trustee/plaintiff (1)**
13:9
**trustees (2)**
39:20;57:8
**trustee's (13)**
14:2,23;38:14;47:9;
57:4,5;67:4;68:11;
69:6,6,7,9,19
**trusts (15)**

19:18;31:8;32:1;
40:7;42:13,19;56:1;
60:11;62:13,15,19;
63:9,16,22;64:1
**trust's (2)**
62:10;71:8
**truth (2)**
14:14;50:10
**try (3)**
35:8;36:8;78:11
**trying (5)**
6:13;14:18;25:19;
26:22;53:12
**turn (2)**
4:8;22:20
**turned (1)**
8:24
**turning (5)**
8:23;50:20;64:17;
66:8;67:4
**TW (1)**
34:17
**two (13)**
6:23;10:22;15:22;
16:7;17:23;18:24;
21:10;31:19;33:21,
22;49:18;72:10;76:8
**type (1)**
7:11
**typically (1)**
61:21
**typo (2)**
19:4;30:25

### U

**unavailing (2)**
19:21;21:14
**uncontroverted (3)**
15:10;38:12;42:10
**uncover (2)**
27:21,25
**under (50)**
25:10,11;26:9,15;
27:7;28:1;29:7,13,19;
31:1,11,13;39:15,20,
25;40:3,5,7,7,9,11,14,
18,24,25;41:2,5,11,
18,19;43:21;44:2,5;
46:25;47:7;49:7;
51:12;53:13;58:9,10;
61:9,10,22;65:2;
66:23;67:7,13;68:14;
69:19;72:1
**undercuts (1)**
19:23
**underlying (2)**
42:12;50:17
**understood (6)**
5:4,20;11:5;73:10,
10;78:19
**undisputed (5)**
47:17;52:7;57:15;

62:22;70:5
**unenforceable (1)**
44:12
**unfair (2)**
52:23;54:4
**unfettered (3)**
24:21;32:6;37:22
**unfortunate (1)**
36:17
**United (1)**
25:25
**unless (9)**
26:1;28:20;30:18;
38:2;43:11;44:12;
53:19;61:20;73:6
**unlikely (1)**
10:15
**unnecessary (4)**
34:19;46:20;72:13;
76:2
**unpersuasive (1)**
57:21;70:3
**unreasonable (1)**
20:18
**unrecorded (11)**
16:17,22;43:23;
45:2;55:8;59:21;67:6;
69:11,15,16,25
**up (11)**
4:9;7:3;8:7;10:25;
11:4;23:7;28:18;
31:24;32:14,15;77:8
**upload (6)**
72:20,21;76:14,21;
78:10,13
**uploading (1)**
76:18
**upon (16)**
11:24;15:9;35:2;
37:12;40:4;54:23;
55:16;56:25;60:6;
62:24;64:7;68:20;
69:6,17;71:11;73:15
**use (11)**
36:21;37:22;40:13;
41:3;48:1;63:6,8;
64:12;66:2;69:25;
72:1
**used (2)**
33:13;36:5
**useful (3)**
20:23;21:21,21
**uses (1)**
20:19
**using (2)**
26:20;74:19

### V

**Vago (4)**
4:23;5:1;53:4,15
**Vagos (2)**
4:14;5:19

**Vagos' (1)**
53:24
**valid (3)**
59:10;60:24;61:20,
21;68:15;69:15
**validity (2)**
19:1;42:19
**valuable (2)**
68:16;71:20
**value (3)**
43:22;50:25;67:5
**valued (1)**
50:24
**various (2)**
14:2;52:6
**venue (1)**
17:19
**verdict (2)**
35:5;49:9
**verified (2)**
19:7;78:14
**version (1)**
49:21
**versions (1)**
50:9
**versus (1)**
4:23
**via (6)**
17:3;54:13;55:3;
58:5;67:14
**video (3)**
4:8;19:8;24
**view (5)**
10:19;34:23;35:7;
37:25;50:17
**violating (3)**
75:25;76:17;77:5
**violation (5)**
35:12;74:2;75:1;
77:3;78:16
**virtue (2)**
25:3;36:16
**void (2)**
71:19;75:1
**voidable (1)**
68:3
**voids (1)**
42:23

### W

**wants (1)**
37:23
**waste (3)**
72:7;74:9,9
**way (4)**
5:21;14:19;20:3;
37:13
**WEDNESDAY (1)**
4:1
**week (6)**
15:21;17:22;21:17;
23:7;77:3,19

Leslie Klein

December 18, 2024

**weeks (5)**
8:2;10:23;18:24;
21:10;22:4
**weigh (1)**
21:4
**weighing (1)**
49:15
**welfare (2)**
41:9,15
**what's (4)**
11:6;12:24;30:7;
76:9
**whereas (1)**
53:23
**Whereupon (1)**
78:22
**whole (1)**
49:13
**wholly (8)**
23:11;36:1,6;47:21;
51:20,25;54:16;62:17
**Who's (2)**
15:14;74:4
**wife (3)**
53:10;55:13;70:10
**wife's (1)**
70:11
**willful (1)**
74:1
**winning (1)**
69:5
**withdraw (1)**
32:22
**within (7)**
23:3;26:2;32:4;
38:24;51:9;72:20;
77:19
**without (6)**
29:16;41:23;44:6;
67:25;68:7;72:6
**witness (1)**
60:2
**word (2)**
31:16;33:13
**worked (1)**
23:6
**works (1)**
10:19
**writing (3)**
43:15;59:7,9
**written (6)**
14:16;43:25;46:16,
20;57:19;59:3

## Y

**year (1)**
69:4
**years (6)**
26:10;29:7;38:24;
44:23;51:9;76:9
**yield (2)**
13:3;62:18

## Z

**zero (3)**
46:11;62:15;64:20
**Ziehl (1)**
13:8
**Zoom (2)**
4:7;16:13
**Zubenko (9)**
47:8;67:16;68:23,
23;69:8,9,20;70:2,3

## 1

**1 (5)**
10:13;20:20;45:12;
51:19;52:19
**10:28 (1)**
4:1
**10:30 (1)**
4:5
**100 (8)**
51:15;53:23;54:6,
12;58:1;66:19;71:13;
72:16
**109.2 (1)**
43:16
**1090 (1)**
55:11
**1092 (2)**
48:13;59:24
**10th (1)**
21:17
**11 (3)**
38:14,15,16
**1122 (1)**
20:16
**11th (1)**
77:18
**12/11 (3)**
15:21;17:22;18:14
**12/2 (2)**
18:24;21:10
**12/31/14 (1)**
51:24
**12/31/23 (1)**
51:24
**12/4 (1)**
17:18
**12/9 (1)**
19:23
**12:25 (1)**
78:22
**1214 (2)**
68:17;71:18
**1217 (1)**
69:14
**12b6 (2)**
28:15;29:13
**12th (4)**
16:24;17:8;40:3;
42:6

**13 (1)**
69:8
**13th (1)**
39:24
**14 (1)**
34:7
**147 (1)**
70:21
**14th (1)**
39:19
**15304 (1)**
64:25
**15304b (2)**
31:2;65:5
**15305 (4)**
46:4;64:17,18,22
**153064b (1)**
66:6
**15th (2)**
17:14;29:25
**16th (1)**
17:10
**17000 (2)**
19:16;20:8
**17200 (2)**
19:18;20:9
**18 (2)**
4:1;30:2
**189,050 (1)**
39:17
**189,050-dollar (2)**
53:17;54:3
**18th (1)**
39:22
**19 (5)**
29:19;38:24;47:9;
51:9;68:18
**1975 (2)**
39:21;57:8
**1977 (2)**
39:19;57:8
**1987 (1)**
34:19
**1990 (1)**
39:22
**1992 (1)**
70:22
**1993 (1)**
46:17

## 2

**2 (4)**
10:13;20:22;45:14;
52:20
**2.45 (1)**
50:25
**20 (1)**
4:23
**2010 (1)**
20:17
**2012 (2)**
36:11;57:15

**2013 (6)**
33:9;36:12;39:8,24;
40:3;60:2
**2014 (2)**
51:22;69:2
**2014-2023 (1)**
60:2
**2015 (2)**
39:11;47:8
**2021 (1)**
20:6
**2023 (7)**
18:17;21:16,17;
35:21;38:13,18;51:23
**2024 (1)**
4:1;42:1
**2025 (2)**
7:20;8:14
**20th (1)**
17:11
**21 (3)**
8:25;18:18;21:17
**21st (1)**
17:5
**22 (2)**
73:13,14
**22nd (1)**
38:13
**23 (3)**
17:2;38:14;75:20
**23rd (1)**
16:18
**24STPB13777 (3)**
19:6;73:22;77:17
**25th (2)**
39:8,11
**26th (1)**
8:1
**29th (3)**
16:19;17:1;42:1

## 3

**3 (4)**
20:23;36:18;37:2;
52:22
**30th (2)**
17:7,15
**31st (1)**
17:6
**32 (1)**
23:21
**322 (1)**
38:20
**33 (1)**
13:14
**34 (1)**
13:25
**36 (1)**
14:23
**3A (1)**
36:22

## 4

**4 (3)**
20:25;30:2;37:2
**4.9 (1)**
50:24
**4/8/90 (5)**
19:9;51:20,24;
55:13;78:16
**41 (1)**
35:18
**48 (2)**
14:25;15:7

## 5

**5 (1)**
37:3
**526 (1)**
70:22
**541 (1)**
65:2
**541c2 (1)**
61:7
**544 (5)**
27:7;47:7;68:4;
69:19;72:1
**544a (4)**
27:19;67:7,13,24
**544a3 (6)**
28:1;43:21;44:2,19;
46:25;68:6
**550 (1)**
45:10
**56 (2)**
49:1,6
**594 (1)**
20:5
**5th (3)**
10:3,5;12:18

## 6

**620 (1)**
20:16
**626 (1)**
34:18
**630 (1)**
34:18
**633 (1)**
20:5
**678,391 (3)**
39:14;51:7;53:5
**679,391 (1)**
53:7

## 7

**7 (1)**
34:6
**704.703 (1)**
39:16

Leslie Klein

**7056 (1)**
  49:1
**760.010 (1)**
  66:23

### 8

**8:30 (1)**
  23:5
**809 (1)**
  34:18
**8th (1)**
  38:18

### 9

**9 (1)**
  12:18
**9/10/13 (2)**
  51:19,20
**9th (6)**
  20:5,16;34:18;
  70:22;77:18,21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pachulski Stang Ziehl & Jones LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT C**

(BAP Memorandum Decision)

FILED

JUN 5 2025

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY APPELLATE PANEL
### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>LESLIE KLEIN,<br><br>        Debtor. | BAP No. CC-25-1002-LCF<br><br>Bk. No. 2:23-bk-10990-SK |
| LESLIE KLEIN; THE SECOND<br>AMENDED KLEIN LIVING TRUST;<br>THE MARITAL DEDUCTION TRUST<br>OF ERIKA KLEIN; THE SURVIVOR'S<br>TRUST OF LESLIE KLEIN; BARBARA<br>KLEIN,<br><br>        Appellants,<br>v.<br>BRADLEY D. SHARP, Chapter 11<br>Trustee,<br><br>        Appellee. | Adv. No. 2:24-ap-01140-SK<br><br><br><br><br><br>MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Sandra R. Klein, Bankruptcy Judge, Presiding

Before: LAFFERTY, CORBIT, and FARIS, Bankruptcy Judges.

### INTRODUCTION

Leslie Klein ("Debtor"), his wife Barbara Klein, and certain trusts

created by Debtor and his former wife (collectively, "Appellants") appeal

---

\* This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential
value, *see* 9th Cir. BAP Rule 8024-1.

1

the bankruptcy court's order granting the chapter 11[1] trustee's motion for summary judgment.

Many years ago, Debtor and his former wife created a trust and designated themselves as both trustees and beneficiaries of the trust. The trust provided for allocation of trust assets to certain subtrusts upon the death of Debtor's former wife.

The trust documents further provided that Debtor would be the sole trustee of both the main trust and all subtrusts, as well as a beneficiary of all four trusts. And although the trust included a spendthrift provision that purported to prevent creditors from reaching assets of the trust, the trust provisions allowed Debtor, as the sole trustee, to exploit trust assets as he saw fit, including for his own benefit and without any limits.

Debtor eventually remarried. Through a premarital agreement, Debtor provided his current wife a right to live on certain property held by the trust for the remainder of her life.

Debtor filed a bankruptcy petition in 2023. After the court appointed a chapter 11 trustee, the trustee initiated an action to recover real property held by the trusts. In a motion for summary judgment, the chapter 11 trustee argued that the spendthrift provision protecting the trusts was invalid, the assets of the trusts were property of the estate, and any interest

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

Debtor's current wife may have in the property could be avoided pursuant to the Code. The bankruptcy court agreed and entered summary judgment in favor of the chapter 11 trustee.

We AFFIRM.

## FACTS[2]

### A.    Prepetition events

In 1975, Debtor and his then-wife, Erika Klein, formed a family trust as settlors. In 1990, Debtor and Erika amended their family trust, executing the operative Second Amended Klein Living Trust (the "Klein Trust"). The Klein Trust designated Debtor and Erika[3] as co-trustees and named Debtor and Erika as beneficiaries for the duration of their lives.

The Klein Trust identified real property located on June Street in Los Angeles, CA (the "June Property") as an asset held by the trust. The trust documents also included a grant deed transferring the June Property to the Klein Trust.

Pursuant to the terms of the Klein Trust, Debtor and Erika had the authority, as co-trustees, to pay themselves, as beneficiaries, as much income as necessary for their "health, education, support, comfort, welfare,

---

[2] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] For ease of reference and to avoid confusion between Erika Klein, Debtor's former wife, and Barbara Klein, Debtor's current wife, we refer to Erika and Barbara by their first names. No disrespect is intended.

or happiness to maintain at a minimum [their] accustomed manner of living." In addition, if Debtor or Erika found the distribution of income insufficient, the Klein Trust allowed Debtor and Erika to distribute to themselves additional principal.

As trustees, Debtor and Erika enjoyed broad discretion in the handling of the Klein Trust's assets. For instance, as trustees, they could in their sole discretion retain or abandon property; sell, exchange, or repair property; lease property; or invest in property. They also could determine what trust assets qualified as principal and income and apportion funds to beneficiaries (i.e., themselves) accordingly. Additionally, they could invest funds, borrow money, obtain insurance, and loan money to third parties. Pursuant to the Klein Trust, a trustee of any subtrust created under the Klein Trust also would enjoy all of the broad powers listed above.

After one spouse's death, the Klein Trust provided that the surviving spouse would become the sole trustee and the sole beneficiary. At that time, the surviving spouse, as the sole trustee, would inherit and could exercise exclusively all of the broad powers listed above. And upon one spouse's death, the Klein Trust also contemplated the formation of three subtrusts: (i) the Surviving Spouse's Trust, (ii) the Marital Deduction Trust, and (iii) the Credit Trust.

When established, the Surviving Spouse's Trust would contain the surviving spouse's share of community property. The deceased spouse's share of community property would be split as follows: (i) first, for tax

4

planning purposes, a minimum amount would be placed into the Marital Deduction Trust; and (ii) second, after such minimum amount was met, the remainder of the deceased spouse's community share would be placed into the Credit Trust.

The Klein Trust provided that all three subtrusts could be funded in cash or in kind. In addition, the Klein Trust named the surviving spouse as the beneficiary of all three subtrusts, with the exception that Debtor's and Erika's children also were named as beneficiaries of the Credit Trust. The Klein Trust also included a spendthrift provision that read:

> No beneficiary shall anticipate, assign, encumber, or subject to any creditor's claim or to legal process any interest in principal or income before its actual receipt by any beneficiary. The beneficial and legal interests in this trust, its principal, and its income shall be free from interference or control of any beneficiary's creditor and shall not be subject to claims of any such creditor or liable to attachment, execution, bankruptcy, or other process of law.

Finally, the Klein Trust provided that, upon the death of the surviving spouse, the successor trustee (identified as one of Debtor's children) would distribute any assets remaining in the Surviving Spouse's Trust and the Marital Deduction Trust to the Credit Trust. At that time, the Credit Trust would be divided between Debtor's and Erika's children. Importantly, the successor trustee would not have any authority over any of the trusts until the death of both co-trustees, i.e., Debtor and Erika.

In December 2012, Erika died. Pursuant to the terms of the Klein Trust, Debtor became the sole trustee of the Klein Trust and any subtrust that may have been created thereunder, including the Surviving Spouse's Trust, the Marital Deduction Trust, and the Credit Trust. In 2013, Debtor recorded the Klein Trust.

After Erika's death, Debtor married Barbara. In their premarital agreement, Debtor agreed that Barbara "may also live in the [June Property] where the Parties live during her [lifetime]."

## B.     Debtor's bankruptcy filing and the adversary proceeding

On February 22, 2023, Debtor filed a chapter 11 petition. Soon thereafter, Debtor identified a 50% interest in the June Property in his schedules and indicated that the remaining 50% of the property was owned by the Marital Deduction Trust. Debtor valued the June Property at $4.9 million and indicated there were no encumbrances against the June Property other than a $15,000 tax lien. Debtor also scheduled approximately $32 million in liabilities.

In his Statement of Financial Affairs, Debtor indicated that he had not transferred any property to a self-settled trust. Debtor also claimed the June Property as exempt and noted that Barbara maintained a "life estate" in the June Property. In subsequently amended schedules, Debtor again indicated that 50% of the June Property was held by Debtor and 50% by the Marital Deduction Trust. Debtor's schedules and statements were signed under penalty of perjury.

6

One day after Debtor filed amended schedules claiming a 50% interest in the June Property, certain creditors objected to Debtor's claim of a homestead exemption. After a hearing on the matter, the court reduced the amount of Debtor's claimed exemption but nevertheless allowed Debtor an exemption in the June Property in the amount of $189,050.

In May 2024, chapter 11 trustee Bradley D. Sharp (the "Trustee") initiated an adversary proceeding against Debtor, the Klein Trust, the Marital Deduction Trust, the Surviving Spouse's Trust, and Barbara. Through the operative first amended complaint (the "FAC"), the Trustee sought to quiet title to the June Property in the name of Debtor's bankruptcy estate and to avoid any unrecorded interests in the June Property under § 544(a)(3).

Appellants filed a consolidated answer to the FAC. In their answer, and contrary to Debtor's filed schedules, Appellants stated that the Surviving Spouse's Trust transferred its 50% interest in the June Property to the Marital Deduction Trust, such that the Marital Deduction Trust owned 100% of the June Property.

In September 2024, Appellants moved the court to order the joinder of Debtor's children as parties to the adversary proceeding (the "Joinder Motion"). Appellants argued that the children were necessary parties to the action because they were beneficiaries of the Credit Trust.

In October 2024, the court held a hearing and orally denied the Joinder Motion. The court held that the children were not necessary parties

7

to the adversary proceeding because: (i) the children did not have any interest in assets of the Klein Trust or any of the subtrusts until Debtor died, in which case they would only have an interest in any assets remaining at that time; (ii) Debtor did not produce any evidence that the subtrusts were ever created or funded, such that even upon Debtor's death there would be no assets flowing from the Surviving Spouse's Trust or the Marital Deduction Trust into the Credit Trust; and (iii) because Debtor was both the settlor and beneficiary of the Klein Trust and all three subtrusts, the spendthrift provision protecting trust assets from recovery by creditors was invalid. The court later entered an order denying the Joinder Motion (the "Joinder Order").

The Trustee eventually filed a motion for summary judgment on all his claims (the "MSJ").

After the Trustee filed the MSJ, Debtor filed an amended schedule A/B. This time, Debtor stated that the Credit Trust owned the June Property. Appellants also filed an opposition to the MSJ, reiterating that the June Property was owned entirely by the Credit Trust and referencing certain ledgers dated between 2014 and 2023 in support of this new contention. Echoing their arguments from the Joinder Motion, Appellants again argued that joinder of Debtor's children was required because the children were beneficiaries of the Credit Trust.

Finally, Appellants asserted that the spendthrift provision in the trusts protected the June Property from recovery by the estate and that the Trustee could not avoid Barbara's "life estate" interest in the June Property.

In December 2024, the court held a hearing on the MSJ and orally ruled in favor of the Trustee. Specifically, the court held that: (i) Debtor was judicially estopped from arguing that the June Property was not property of the estate because he successfully claimed an exemption in the June Property; (ii) there was no evidence demonstrating that the June Property was transferred from the Klein Trust to one of the subtrusts or that any of the subtrusts were funded or created; (iii) even if the June Property was transferred to one of the subtrusts, the subtrusts were self-settled trusts wholly controlled by Debtor and containing an invalid spendthrift provision, such that the June Property would still belong to the bankruptcy estate; (iv) Debtor's control over all of the trusts rendered Cal. Probate Code § 15304(b) inapplicable, such that the bankruptcy estate could reach assets that were contributed not only by Debtor, but also by Erika; and (v) Barbara's purported life estate interest in the June Property was never recorded and thus could be avoided by the Trustee. In connection with Appellants' arguments regarding the necessity of joining Debtor's children as defendants, the court referenced its earlier ruling on the Joinder Motion.

On December 20, 2024, the court entered an order granting the Trustee's motion for summary judgment (the "Summary Judgment Order"). Appellants timely appealed.

9

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and
157(b)(2)(E) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Did the bankruptcy court err in denying the Joinder Motion?

2.  Was the failure to properly name certain defendants a
    jurisdictional defect that requires reversal of the Summary
    Judgment Order?

3.  Did the bankruptcy court err in granting the MSJ?

## STANDARDS OF REVIEW

We review a bankruptcy court's Civil Rule 19 joinder determinations
for an abuse of discretion. *Cachil Dehe Band of Wintun Indians of the Colusa
Indian Cmty. v. California*, 547 F.3d 962, 969–70 (9th Cir. 2008) (citing *Am.
Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002)). "To the
extent that in its inquiry the [bankruptcy] court 'decided a question of law,
we review that determination de novo.'" *Id.* (quoting *Am. Greyhound
Racing*, 305 F.3d at 1022).

We review the bankruptcy court's decision to grant or deny a motion
for summary judgment de novo. *Botosan v. Paul McNally Realty*, 216 F.3d
827, 830 (9th Cir. 2000). We apply the same standards used by the
bankruptcy court under Civil Rule 56, as made applicable by Rule 7056.
*Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir. 1999). Facts
determined for summary judgment proceedings are not entitled to the

clearly erroneous standard of appellate review. *Audre, Inc. v. Casey (In re Audre, Inc.)*, 216 B.R. 19, 25 (9th Cir. BAP 1997), *overruled on other grounds as recognized by Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 104 n.2 (9th Cir. BAP 2007); *Gertsch v. Johnson & Johnson, Fin. Co. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace* (*In re Francis*), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted). A bankruptcy court abuses its discretion when it applies an incorrect legal rule or when its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

On appeal, Appellants argue that the bankruptcy court erred when it: (i) denied Appellants' request to join Debtor's children as defendants; (ii) allowed the action to proceed despite the Trustee's failure to properly name the trustee of the defendant-trusts as the defendant instead of the trusts themselves; (iii) held that the June Property is property of the estate; and (iv) held that the Trustee may avoid Barbara's life estate interest under § 544(a)(3). We address each of Appellants' arguments in turn.

## A.  The bankruptcy court did not err in denying the Joinder Motion.

Appellants assert that the bankruptcy court erred in concluding that Debtor's children were not necessary parties under Civil Rule 19.

11

As a preliminary matter, we must ascertain if Appellants' appeal of the Joinder Order is timely and proper. In his appellate brief, the Trustee contends that Appellants may not raise any arguments related to the bankruptcy court's decision regarding joinder because Appellants did not timely appeal the Joinder Order.

But the Joinder Order was not a final judgment, and any appeal of the same would have been an interlocutory appeal. *See Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981) ("Orders granting or denying motions to add new parties to a pending suit are interlocutory and non-appealable."). "An interlocutory order becomes appealable when final judgment is entered." *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 897 (9th Cir. 2001); *see also Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1364 (9th Cir. 1981) (an appeal from a final judgment draws in question all earlier non-final orders and all rulings which produced the judgment).

Thus, when a final order disposing of a matter is entered, earlier interlocutory orders "merge" into the final order. *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000). When a party appeals the final order, "[t]he notice of appeal encompasses all orders that, for purposes of appeal, merge into the identified judgment or appealable order or decree. **It is not necessary to identify those orders in the notice of appeal.**" Rule 8003(a)(4) (emphasis added).

12

Here, the Summary Judgment Order was a final, appealable order. Appellants timely appealed that order. Although Appellants did not identify the Joinder Order as an order on appeal, under Rule 8003(a)(4) and the doctrine of merger, the appeal of the Summary Judgment Order includes an appeal of all interlocutory orders, such as the Joinder Order, that merged into the Summary Judgment Order.[4] As a result, the appeal of the Joinder Order is timely.

We agree with the bankruptcy court that Debtor's children were not required parties for purposes of Civil Rule 19.

In their appellate brief, Appellants reference Civil Rule 19(a)(1)(B)(ii), which requires joinder, if feasible, where an action may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." According to Appellants, the "existing party" at such risk is the Trustee, because the Trustee may face future litigation initiated by Debtor's children as beneficiaries of the Credit Trust.

---

[4] Of course, an appellate panel need not review all interlocutory orders that may have merged into a final judgment or order; to facilitate an appellate panel's review of an interlocutory order, the appellant must adequately brief why the court should review that order. *See PCC Rokita S.A. v. HH Tech. Corp. (In re HH Tech. Corp.)*, 659 B.R. 788, 797 (1st Cir. BAP 2024) (noting that the "numerous interlocutory orders" merged into the final dismissal and appellants "were not required to list those orders in their notice of appeal," but "[t]o the extent the [a]ppellants desired appellate review of any interlocutory orders . . .  they were required to brief them").

However, the plain language of Civil Rule 19 does not require joinder simply because there may be a threat of future litigation against the Trustee and/or bankruptcy estate. Rather, the Civil Rule applies when there is a "substantial risk" of multiple or inconsistent obligations borne by the estate. No such "substantial risk" exists in this case.

The crux of the Trustee's lawsuit against the Appellants was to identify the June Property as property of the bankruptcy estate under § 541. As further discussed below, there is no dispute that Debtor is the primary beneficiary of the Klein Trust and all three subtrusts.

Appellants mostly dispute the bankruptcy court's conclusion that Debtor's children would not become beneficiaries of the Credit Trust until Debtor's death, arguing that the children are identified as "primary beneficiaries" alongside Debtor. As to this point, Appellants may be correct. The Credit Trust identifies its beneficiaries as follows: "[s]urviving spouse, settlors' children." The Credit Trust does not refer to either Debtor (the surviving spouse) or Debtor's children as the primary beneficiary, instead listing all as both income and principal beneficiaries.

However, as further discussed below, there is no evidence that the June Property was ever held by the Credit Trust. Appellants did not provide any evidence of a transfer of the June Property from the Klein Trust to the Credit Trust. Appellants only provided ledgers – unattached to any trust document or any other document that would effectuate a transfer, such as a grant deed – that listed the June Property under a column titled

14

"Credit Trust." Given the lack of any indication in the record that the Credit Trust held the June Property, and because Debtor's children are only listed as beneficiaries of the Credit Trust and no other trusts, Debtor's children do not appear to have an interest in the June Property and are not required parties to this action.

Nevertheless, even if the June Property was placed into the Credit Trust, and even if we interpret the Credit Trust as naming both Debtor and his children as current beneficiaries, the record would still be devoid of a "substantial risk" of inconsistent obligations requiring joinder of the children to this action.

As of the petition date, the sole trustee of the Klein Trust and all three subtrusts was Debtor. Debtor's children are not named as trustees of any of the trusts; as is clear from the language in the Klein Trust, Debtor's son is named a successor trustee only after Debtor dies.

The Klein Trust and all three subtrusts confer the broadest possible authority on Debtor, as the sole trustee of all four trusts, to use and exploit any assets held by any of the trusts. Pursuant to the terms of the Klein Trust and the subtrusts, Debtor, as the sole trustee, does not need permission from any beneficiaries to take any action with respect to any of the trust's assets. For instance, Debtor could elect to sell property held by the trusts without disclosing his intention or receiving approval from any other beneficiaries, such as Debtor's children. Pursuant to the terms of the trusts, Debtor also could use the proceeds of any such sale (or any other

15

exploitation of trust property) to pay himself, as a beneficiary of all four trusts, any amount he decides is appropriate. Thus, even if Debtor's children have a current beneficial interest in the Credit Trust, the children would be entirely powerless to stop Debtor, as the sole trustee, from exploiting any of the trusts' assets for his own benefit.

As a result, any right the children would have to assets held by the Credit Trust is inferior to Debtor's. Given that Debtor's children could not exercise any effective rights, the exclusion of the children from this action did not present a risk of inconsistent obligations. As a result, the court did not abuse its discretion in holding that joinder of the children was not required under Civil Rule 19.[5]

## B.  Summary judgment standard

Civil Rule 56(a) provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute over material facts is

---

[5] For the first time on appeal, Appellants also argue that the Credit Trust was a required party to this action. Appellants never argued that the Credit Trust was a required party before the bankruptcy court. As a result, their argument on appeal is waived. *Orton v. Hoffman (In re Kayne)*, 453 B.R. 372, 386–87 (9th Cir. BAP 2011) (issue not raised in bankruptcy court is waived on appeal); *see also SK PM Corp. v. Sharp (In re SK Foods, L.P.)*, BAP No. EC-12-1624-JuKiPa, 2013 WL 6488275, at *11 (9th Cir. BAP Dec. 10, 2013) (holding that appellants' failure to argue before the bankruptcy court that certain parties were necessary or indispensable under Civil Rule 19 qualified as a waiver of such arguments on appeal).

In any event, even if Appellants had not waived this argument, nothing in the record demonstrates that the June Property was ever placed into the Credit Trust. As such, it is unclear what interest the Credit Trust would have in this litigation.

16

genuine where a reasonable jury could return a verdict for the nonmoving party based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant has come forward with uncontroverted facts entitling it to relief, the burden shifts to the nonmovant to establish that there is a specific and genuine disputed issue of material fact to warrant a trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 332 n.3 (1986) (Brennan, J., dissenting). The nonmovant "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that the dispute exists." *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008) (citation omitted). Conjecture, surmise or "metaphysical doubt" by the nonmovant of the movant's assertions will not defeat a summary judgment motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *In re Gertsch,* 237 B.R. at 165 (even in cases where intent is at issue, summary judgment may be appropriate if the nonmovant "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation") (citation omitted).

In deciding whether material factual issues exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. But the court must do so only if a nonmoving party submits specific evidence that contradicts a fact specifically averred by the moving party. *Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871, 888 (1990). If a motion for summary judgment is properly

supported and the nonmovant does not set forth specific facts showing a

genuine issue for trial, the court must grant summary judgment. Civil Rule

56(a); Rule 7056.

**C.    The Trustee's failure to properly identify certain trusts is not a jurisdictional defect requiring reversal.**

For the first time on appeal, Appellants contend that the Trustee

improperly sued the Klein Trust, the Marital Deduction Trust, and the

Surviving Spouse's Trust instead of naming Debtor, acting in his capacity

as the trustee of the trusts, as the defendant. Appellants assert that this

issue qualifies as a jurisdictional defect, and thus their arguments about the

issue were not waived despite their failure to raise them before the

bankruptcy court.

Appellants are correct that a "trust itself can neither sue nor be sued

in its own name. Instead, the real party in interest in litigation involving a

trust is always the trustee." *Presta v. Tepper*, 179 Cal. App. 4th 909, 914 (Cal.

Ct. App. 2009). However, the failure to name a trustee is not seen as a

"jurisdictional defect" that "deprive[s] courts of power to act." *Jo Redland

Tr., U.A.D. 4-6-05 v. CIT Bank, N.A.*, 92 Cal. App. 5th 142, 161 (Cal. Ct. App.

2023), *as modified* (June 28, 2023). Even where the trustee of a trust is not

named as a defendant, and recognizing that the trustee is an

"indispensable party," "the court still has the power to render a decision as

to the parties before it which will stand." *Id.*

18

In any event, Debtor actually appeared in this action as the trustee of the defendant-trusts. For instance, Debtor signed stipulations on behalf of the trusts, specifically identifying himself as the trustee of each defendant-trust. Appellants' answer also properly identified the defendant parties by naming Debtor, as trustee on behalf of each trust, as the proper defendant.

Appellants have not presented a jurisdictional defect that would require reversal, and Appellants waived any argument regarding this issue. *See In re Kayne*, 453 B.R. at 386–87 (issue not raised in bankruptcy court is waived on appeal).

**D.    The June Property is property of the bankruptcy estate.**

Appellants contend that the assets held by the Marital Deduction Trust and the Credit Trust, including the June Property, are not property of the estate because Erika, and not Debtor, funded those subtrusts.

**1.    There is no evidence that the June Property was transferred to the Marital Deduction Trust or the Credit Trust.**

As a preliminary matter, and as noted above, the record does not indicate that the June Property was ever transferred to either the Marital Deduction Trust or the Credit Trust, or that the Marital Deduction Trust and Credit Trust were created at all.

Under California law, "[a] trust is created only if there is trust property." Cal. Prob. Code § 15202. While it is true that the Klein Trust contemplated that Erika's share of the June Property would be placed in either the Marital Deduction Trust (if necessary to reach the minimum

19

amount required to avoid certain taxes) or, alternatively, the Credit Trust, the record does not reflect that Debtor ever effectuated any such transfer.

On this point, the Trustee presented evidence that the June Property was held by the Klein Trust, which provided that all property identified in the attached schedule A, which listed the June Property, would be transferred to the Klein Trust. The Trustee also presented a grant deed effectuating the transfer of the June Property to the Klein Trust.[6]

Appellants' sole evidence disputing that the Klein Trust owned the June Property as of the petition date is a string of ledgers that lists the June Property under a column titled "Credit Trust." The ledgers are handwritten and unrecorded, and not attached to any trust documents or other instruments of transfer, such as a grant deed.

To present a genuine issue of material fact, Appellants must submit "**specific** evidence" that contradicts the Trustee's evidence showing that

---

[6] Citing *Estate of Heggstad*, 16 Cal. App. 4th 943 (1993), Appellants contend that they did not have to produce a grant deed establishing that the June Property was owned by the Klein Trust because California law allows for property to be conveyed by a declaration of trust. Appellants' reference to *Heggstad* is confusing because neither the bankruptcy court nor the Trustee disputed that the Klein Trust held the June Property.

To the extent Appellants rely on *Heggstad* in support of their argument that the trust documents establish a transfer **out** of the Klein Trust and into one of the subtrusts, *Heggstad* is inapplicable because none of the trust documents identify any transfers of the June Property out of the Klein Trust. Thus, even if a declaration of ownership within the trust documents would be sufficient to effectuate a transfer without a grant deed, the trust documents only provide that the Klein Trust, and no other trust or entity, owns the June Property. As discussed below, the only documents relied on by Appellants are certain ledgers, which were not part of any trust documents. As a result, *Heggstad* is inapposite.

the Klein Trust owns the June Property. *In re Barboza*, 545 F.3d at 707

(emphasis added). Given the Trustee's submission of a recorded grant deed

and the recorded Klein Trust, both of which indicate that the Klein Trust

owns the June Property, as well as Debtor's own myriad and conflicting

statements[7] – some sworn under penalty of perjury – regarding the

ownership of the June Property, the submission of ledgers hardly qualifies

as the type of evidence that would create a genuine issue of material fact

regarding the ownership of the June Property.

Nevertheless, even if Debtor transferred the June Property from the

Klein Trust to a subtrust, the Trustee could recover the Property under

§ 544(a)(3). Under § 544(a)(3):

> (a) The trustee shall have, as of the commencement of the case,
> and without regard to any knowledge of the trustee or of any
> creditor, the rights and powers of, or may avoid any transfer of
> property of the debtor or any obligation incurred by the debtor
> that is voidable by—

---

[7] In its ruling, the bankruptcy court relied in part on the doctrine of judicial
estoppel. To judicially estop a party, courts consider "(1) whether a party's later
position is clearly inconsistent with its original position; (2) whether the party has
successfully persuaded the court of the earlier position, and (3) whether allowing the
inconsistent position would allow the party to derive an unfair advantage or impose an
unfair detriment on the opposing party." *United States v. Ibrahim*, 522 F.3d 1003, 1009
(9th Cir. 2008) (cleaned up).

Debtor successfully argued that he is entitled to a homestead exemption in the
June Property, an argument that depended on Debtor having an interest in the June
Property. Arguably, Debtor's now inconsistent position could be subject to the doctrine
of judicial estoppel. However, the doctrine would only estop **Debtor** from arguing that
he did not have an interest in the June Property. It would not estop the other
Appellants, such as the trusts, from asserting their interest in the June Property.

. . . .

> (3) A bona fide purchaser of all real property, other than
> fixtures, from the debtor, against whom applicable law
> permits such transfer to be perfected, that attains the
> status of a bona fide purchaser and has perfected such
> transfer at the time of the commencement of the case,
> whether or not such a purchaser exists.

In other words, "[a] bankruptcy trustee has the power to avoid any transfer that a hypothetical bona fide purchaser for value could have avoided under the law of the state in which the real property is located." *Chase Manhattan Bank, USA, N.A. v. Taxel (In re Deuel)*, 594 F.3d 1073, 1076 (9th Cir. 2010).

> Under California law:

> Every conveyance of real property or an estate for years therein
> . . . is void as against any subsequent purchaser or mortgagee
> of the same property, or any part thereof, in good faith and for
> a valuable consideration, whose conveyance is first duly
> recorded, and as against any judgment affecting the title, unless
> the conveyance shall have been duly recorded prior to the
> record of notice of action.

Cal. Civ. Code § 1214.

There is no dispute that the ledgers – the only evidence offered by Appellants regarding ownership of the June Property – were never recorded. Thus, as of the petition date, a hypothetical bona fide purchaser for value would not have any notice that the June Property had been transferred out of the Klein Trust.

22

Appellants' sole argument regarding this issue is that the Klein Trust itself was recorded. Although not explicitly stated, a generous reading of Appellants' argument is that subsequent purchasers should have been on notice that the June Property would have been transferred to one of the subtrusts upon Erika's death.[8]

As noted by the bankruptcy court, there is no evidence that any of the subtrusts were properly funded or created after Erika's death. Thus, the fact that the Klein Trust anticipated a transfer of assets after Erika's death is insufficient to provide notice to subsequent purchasers that such transfers were **actually** effectuated.

In any event, for the reasons discussed below, even if the June Property was properly transferred to one of the subtrusts, the Trustee would still be able to recover the June Property into the estate.

### 2. Even if the June Property was placed into one of the subtrusts, the June Property would be property of Debtor's bankruptcy estate.

Even if we assume that the June Property landed in any of the subtrusts, the June Property would still be property of the estate. *See Cutter v. Seror (In re Cutter)*, 398 B.R. 6 (9th Cir. BAP 2008), *aff'd*, 468 F. App'x 657 (9th Cir. 2011). Although Appellants attempt to distinguish this case from *Cutter*, the facts in *Cutter* are remarkably similar to the facts before us, and we are bound to follow our precedent in *Cutter*.

---

[8] Erika's death certificate was included in the recorded trust documents.

In *Cutter*, the debtor created a trust and named himself the trustee. *Id.* at 12. Although the debtor did not explicitly name himself a beneficiary, the trust agreement provided that the debtor, as trustee, could make distributions from the trust to benefit himself, as trustor, in an amount to provide for his health, education, or the maintenance of his customary manner of living. *Id.* The trust agreement further allowed the debtor to use trust property for emergencies related to his health, education, support and/or maintenance. *Id.* Notwithstanding these provisions, the trust agreement prohibited the debtor, as trustee, from exercising his powers primarily for the benefit of himself instead of for the beneficiaries of the trust. *Id.* The trust agreement also contained a spendthrift provision. *Id.*

In reviewing this trust agreement, the bankruptcy court in *Cutter* concluded that the debtor was a primary beneficiary of the trust despite the trust agreement not explicitly naming the debtor as a beneficiary. *Id.* at 14. Because the debtor was the settlor, the trustee, and the beneficiary, the bankruptcy court held that the trust was a self-settled trust and that the assets belonging to the trust were property of the debtor's bankruptcy estate. *Id.* However, the bankruptcy court excluded from its ruling one-third of a share of real property that was contributed by someone other than the debtor. *Id.* at 11-12.

On appeal, the Panel affirmed the bankruptcy court's conclusion that the trust's assets were property of the estate. *Id.* at 18-20. The Panel first reviewed the applicable law:

24

> [W]hile assets transferred to a trust do not ordinarily become
> property of the bankruptcy estate of the trust's trustee, powers
> that a debtor who is trustee of a trust may exercise for his or her
> own benefit become property of the estate. Moreover, to the
> extent a debtor holds a beneficial interest in a trust, that
> beneficial interest becomes property of the estate, unless it is
> protected by a *valid* spendthrift provision. Assets transferred to
> an irrevocable trust do not become part of a bankruptcy estate
> unless the transfer or the trust is invalid.

*Id.* at 19 (cleaned up).

Because the debtor in *Cutter* had "access to potentially all of the Trust's assets and income in order to maintain his standard of living," and "possessed the right, at his sole discretion, to make distributions" to himself, the Panel held that the debtor held an equitable interest in the trust as a beneficiary. *Id.* at 20.

"The critical inquiry in determining whether a spendthrift trust is valid under California law is whether the trust's beneficiaries exercise excessive control over the trust." *Ehrenberg v. S. Cal. Permanente Med. Grp. (In re Moses)*, 167 F.3d 470, 473 (9th Cir. 1999). "[U]nder California law, a settlor of a spendthrift trust cannot also act as beneficiary of that trust (i.e., California law prohibits 'self-settled' trusts)." *Id.* "California law voids self-settled trusts to prevent individuals from placing their property beyond the reach of their creditors while at the same time still reaping the bounties of such property." *Id.*

Relying on *Moses*, the Panel in *Cutter* held that, because the debtor could potentially use all of the trust's assets for his own benefit, the trust's assets could be recovered into the debtor's bankruptcy estate. *In re Cutter*, 398 B.R. at 21.

The Panel then went a step further than the bankruptcy court, stating that the bankruptcy trustee could have recovered "the entire Trust corpus," including the one-third share of real property contributed by someone other than the debtor, "by virtue of section 541 alone." *Id.*

> Ordinarily, if only a portion of a spendthrift trust's corpus is contributed by a beneficiary-debtor, only that portion becomes property of the beneficiary-debtor's estate. If, however, the trust agreement allows the debtor-beneficiary to exercise control over and reach trust property contributed by others, the estate is entitled to the maximum amount that the trust could pay or distribute to the debtor-beneficiary. Therefore, the bankruptcy court could have, and should have, granted summary judgment granting Trustee title to all of the Trust corpus.

*Id.* at 21-22.

Here, unlike in *Cutter*, Debtor is explicitly named as a beneficiary of all four trusts. Thus, unlike *Cutter*, here an inquiry into whether Debtor has a beneficial interest in any of the trusts is unnecessary.

Because Debtor also is the settlor and trustee of all four trusts, the trusts are "self-settled." As is evident from the terms of the trusts, Debtor enjoyed "unfettered access to and dominion and control" over the Klein Trust and all three subtrusts. As highlighted above, Debtor could use and

26

exploit all of the trusts' assets for his own benefit, with no limitation, and in his sole discretion as the only trustee of all four trusts.

Under *Cutter* and *Moses*, this "excessive control" over the trusts, and the ability for unrestricted self-dealing by Debtor, renders the spendthrift provision of the trusts invalid, and the Trustee may recover the whole of the trusts' assets into the bankruptcy estate.

Appellants' arguments distinguishing *Cutter* are unpersuasive. Appellants rely heavily on their assertion that Erika's share of community property funded the Marital Deduction Trust and the Credit Trust, relying on Cal. Probate Code § 15304(b). However, in *Cutter*, the fact that a third party contributed property to the trust was irrelevant where the debtor could reach the property for his own benefit. As explained by the Panel in *Cutter*, notwithstanding Cal. Probate Code § 15304(b), the debtor's unfettered ability to reach the entirety of the trust corpus rendered the assets of the trust property of the estate by operation of § 541.

Here, the trust documents make clear that Debtor can reach **any** assets held by any of the trusts for his own benefit, whether contributed by Erika or Debtor. Thus, under *Cutter* and § 541,[9] the Trustee may exercise

---

[9] Section § 541(b)(1) further bolsters the holding of *Cutter*. Pursuant to § 541(b)(1), property of the estate does not include "any power that the debtor may exercise **solely** for the benefit of an entity other than the debtor." (Emphasis added). Because Debtor may exercise the powers outlined above for his own benefit, the implication of § 541(b)(1) is that those powers **are** property of the estate and that the bankruptcy trustee may exercise them to benefit Debtor's creditors.

Debtor's powers and reach any assets held by the trusts for the benefit of the bankruptcy estate.

Appellants also attempt to distinguish *Cutter* by arguing that Debtor's use of trust property was limited so that some assets would pass to Debtor's children. However, the trust documents completely contradict this assertion. Nothing in the language of the Klein Trust or any of the subtrusts limits Debtor's use of assets or requires Debtor to keep a minimum amount of assets intact for his children.

Appellants also argue that Debtor never intended to sell the June Property, or to use the June Property as an income-producing property, but Debtor's intentions are not the relevant inquiry. Rather, Debtor's **ability** to sell or lease the June Property determines the amount of control Debtor maintains over trust assets. Whatever Debtor's or Erika's intentions, the trust documents clearly allow Debtor to sell or lease the June Property in his sole discretion as the surviving trustee.

Finally, Appellants argue that the Marital Deduction Trust and Credit Trust are irrevocable trusts. The trust in *Cutter* also was irrevocable, and the nature of the trust as such did not impact the Panel's analysis in that case.

For the reasons set forth above, the June Property is property of the estate regardless of which trust holds the June Property.

28

**E.**   **The bankruptcy court did not err in holding that the Trustee may avoid Barbara's life estate interest in the June Property.**

As discussed above, "California is a race-notice jurisdiction and requires every conveyance of real property to be recorded in order to be of value against a subsequent purchaser of the same property." *In re Zubenko*, 528 B.R. 784, 788 (Bankr. E.D. Cal. 2015) (citing Cal. Civ. Code § 1214).

Here, it is undisputed that Barbara's life estate interest in the June Property was never recorded. Nevertheless, Appellants contend that the Trustee had actual or constructive notice of Barbara's life estate interest because Barbara lived on the June Property.

Appellants are correct "that constructive or inquiry notice obtained in accordance with California Civil Code section 19 can defeat a trustee's claim." *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 420 (9th Cir. 1993). Under Cal. Civ. Code § 19, "[e]very person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact."

"[W]hen the title holder jointly occupies property with a stranger to title claiming an interest in the property, the occupancy by the stranger to title does not provide constructive notice of his or her interest." *Huber v. Danning (In re Thomas)*, 147 B.R. 526, 531 (9th Cir. BAP 1992), *aff'd*, 32 F.3d 572 (9th Cir. 1994). "This general rule is often applied when the joint occupants are related to one another." *Id.*

As of the petition date, the recorded title owner of the June Property was the Klein Trust. Debtor was the sole beneficiary of the Klein Trust. Barbara is not named as a trustee or beneficiary anywhere in the Klein Trust or any of the subtrusts. Thus, as of the petition date, only Debtor's interest in the June Property was on title.

Because Debtor jointly occupied the June Property, under the authorities above, Barbara's presence on the property alongside Debtor was insufficient to provide constructive notice that she also had an interest in the June Property. Given that Barbara's life estate interest was never recorded, and a hypothetical subsequent bona fide purchaser would not otherwise have constructive notice of Barbara's interest, the bankruptcy court did not err in holding that the Trustee could avoid Barbara's life estate interest under § 544(a)(3).

## CONCLUSION

The bankruptcy court did not err in granting the MSJ. We therefore AFFIRM.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **EXHIBIT D**

(Deed)

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

1



**This page is part of your document - DO NOT DISCARD**

## 20250120374





**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**02/25/25 AT 03:55PM**

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 102.00 |



**L E A D S H E E T**



202502250750040

00025260595



015160375

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E528330

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

NAME EKLK Foundation

c/o Nat'l Reg. Agents, Inc.

MAILING ADDRESS

1209 Orange St.

CITY, STATE and ZIP CODE

Wilmington, DE 19801

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

GRANT DEED

BOLS rev 20171228

Recording Requested By:

**EKLK Foundation**

When recorded mail document to:

NAME    **EKLK Foundation
c/o Nat'l Reg. Agents, Inc.**

ADDRESS    **1209 Orange Street**

CITY    **Wilmington, DE 19801**
STATE & ZIP

APN: **5523-003-008**

Above Space for Recorder's Use Only

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

DOCUMENTARY TRANSFER TAX is $ _-0-_____  CITY TAX $ -0-    _GIFT_

☐ computed on full value of property conveyed, or
☐ computed on full value of items or encumbrances remaining at time of sale,
☐ Unincorporated area   ☒ City of __LOS ANGELES_____, and

FOR A FULL VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Leslie Klein, as Trustee of the Credit Trust of the Second Amended Klein Living Trust**_____ hereby

GRANT(s) to    **EKLK FOUNDATION**_____ the following

described real property in the City of **LOS ANGELES**_____ County of **LOS ANGELES**_, State of California:

An undivided one-half interest in the real property described as Lot 300 of Tract 8320 as per map recorded in Book 98, page 41 of Maps, commonly known as 322 N. June Street, Los Angeles, CA 90004

Dated: **February 25 2025**_____

_[signature]_

┌─────────────────────────────────────┐
│ A notary public or other officer completing this │
│ certificate verifies only the identity of the individual │
│ who signed the document to which this certificate is │
│ attached, and not the truthfulness, accuracy, or │
│ validity of that document. │
└─────────────────────────────────────┘

Leslie Klein, Trustee_____

STATE OF CALIFORNIA}
COUNTY OF LOS ANGELES_____ } SS

On 02/25/2025___ before me, _Seung H. Kim_____ a Notary Public, personally appeared _Leslie Klein_____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/their/her authorized capacity (ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

SIGNATURE _[signature]_____ (SEAL)

┌──────────────────────────┐
│ SEUNG H. KIM │
│ Notary Public - California │
│ Los Angeles County │
│ Commission # 2348665 │
│ My Comm. Expires Apr 15, 2025 │
└──────────────────────────┘

MAIL TAX STATEMENT TO ADDRESS AS SHOWN ABOVE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**<u>EXHIBIT E</u>**

(Proposed Order)

1   Jeffrey W. Dulberg (State Bar No. 181200)
    John W. Lucas (State Bar No. 271038)
2   Jeffrey P Nolan (CA State Bar No. 158923)
    PACHULSKI STANG ZIEHL & JONES LLP
3   10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA 90067
4   Telephone: 310/277-6910
    Facsimile: 310/201-0760
5   E-MAIL: jdulberg@pszjlaw.com
            jlucas@pszjlaw.com
6           jnolan@pszjlaw.com

7   *Counsel to Bradley D. Sharp, Chapter 11 Trustee*

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                 **LOS ANGELES DIVISION**

11  In re:                          | Case No. 2:23-bk-10990-SK

12  LESLIE KLEIN,                   | Chapter 11

13          Debtor.                 | **ORDER GRANTING MOTION OF CHAPTER
                                    | 11 TRUSTEE, FOR ORDER ENFORCING
14                                  | THE AUTOMATIC STAY AND SANCTIONS
                                    | AGAINST (A) THE DEBTOR, (B) TRUSTEE
15                                  | OF THE CREDIT TRUST OF THE SECOND
                                    | AMENDED KLEIN LIVING TRUST, (C) THE
16                                  | CREDIT TRUST OF THE SECOND
                                    | AMENDED KLEIN LIVING TRUST, AND ,
17                                  | AND (D) EKLK FOUNDATION, AND
                                    | RELATED RELIEF; MEMORANDUM OF
18                                  | POINTS AND AUTHORITIES; AND
                                    | DECLARATION OF JEFFREY W. DULBERG
19                                  | IN SUPPORT THEREOF**

20                                  | Date:      TBD, 2025
                                    | Time:      TBD p.m.
21                                  | Location:  U.S. Bankruptcy Court
                                    |            Courtroom 1545
22                                  |            255 E. Temple St.
                                    |            Los Angeles, CA 90012
23                                  | Judge:     Hon. Neil W. Bason

24      The Court having considered the *Motion for Order Enforcing the Automatic Stay and

25  Sanctions Against the Debtor, Credit Trustee, Credit Trust, and EKLK* [Docket No. ▢ ] (the

26  "**Motion**")[4] and the Declaration of Jeffrey W. Dulberg in support thereof; and for the reasons

27  _____

28  [4] Capitalized terms not defined herein have the meanings used in the Motion.

4902-6835-8733.3 78512.001                 1

stated on the record of June ___, 2025 hearing, the Motion is **GRANTED** and it is hereby **ORDERED** that,

1.      The Debtor, Credit Trustee, Credit Trust, and EKLK are hereby enjoined from taking any action to transfer or otherwise control the June St. Property without further order of the Court.

2.      The Deed, recorded in the Official Records of Recorder's Office, Los Angeles County as 20250120374 and annexed hereto as **Exhibit "1",** is void and has no force or effect because it was executed without Court authorization in violation of section 362(a) of the Bankruptcy Code.

3.      The Trustee is authorized to file a certified copy of this Order for the purpose of ameliorating any harm caused by the Debtor's and EKLK's recordation of the Deed.

4.      If the recordation of this Order does not uncloud title of the June St. Property as a result of the recordation of the Deed, the Trustee may seek further relief for the purpose of re-quieting title of the June St. Property as necessary.

5.      The request for sanctions by Bradley D. Sharp, the Chapter 11 Trustee, arising under section 105(a) of the Bankruptcy Code, against Leslie Klein, Credit Trustee, Credit Trust, and EKLK are approved on a joint and several basis subject to the Trustee and/or his counsel submitting a declaration (the "**Sanctions Declaration**") with the Court that provides a detailed descriptions of the costs and fees arising as a result of the Motion.

6.      Upon filing of the Sanctions Declaration, Leslie Klein, Credit Trustee, Credit Trust, and EKLK shall have 14 days to review and file a response (the "**Sanction Response**") to such declaration either agreeing with or contesting the payment of the costs and fees set forth in the Sanctions Declaration.

7.      If the Sanction Response opposes any portion of the Sanction Declaration, the Trustee shall schedule a hearing on regular notice and file any reply no later than seven (7) days prior to the hearing on the Sanction Declaration.

######

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT 1</u>**

**(DEED)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

**This page is part of your document - DO NOT DISCARD**



## 20250120374



**Pages: 0003**



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/25/25 AT 03:55PM**

| | |
|---|---:|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 102.00 |



**L E A D S H E E T**



202502250750040

00025260595



015160375

**SEQ:
01**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

E528330

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

NAME EKLK Foundation
c/o Nat'l Reg. Agents, Inc.
MAILING ADDRESS
1209 Orange St.
CITY, STATE and ZIP CODE
Wilmington, DE 19801

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

GRANT DEED

BOLS rev 20171228

Recording Requested By:

**EKLK Foundation**

When recorded mail document to:

| | |
|---|---|
| NAME | **EKLK Foundation**<br>**c/o Nat'l Reg. Agents, Inc.** |
| ADDRESS | **1209 Orange Street** |
| CITY<br>STATE & ZIP | **Wilmington, DE 19801** |

---

APN: **5523-003-008**

Above Space for Recorder's Use Only

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

/GIFT

DOCUMENTARY TRANSFER TAX is $ _-0-_____ CITY TAX $ -0-_____

☐ computed on full value of property conveyed, or
☐ computed on full value of items or encumbrances remaining at time of sale,
☐ Unincorporated area   ☒ City of __LOS ANGELES_____, and

FOR A FULL VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Leslie Klein, as Trustee of the Credit Trust of the Second Amended Klein Living Trust**_____ hereby

GRANT(s) to   **EKLK FOUNDATION**_____ the following

described real property in the City of **LOS ANGELES**_____ County of **LOS ANGELES**_, State of California:

An undivided one-half interest in the real property described as Lot 300 of Tract 8320 as per map recorded in
Book 98, page 41 of Maps, commonly known as 322 N. June Street, Los Angeles, CA 90004

Dated: **February 25 2025**_____

Leslie Klein, Trustee_____

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

STATE OF CALIFORNIA}
COUNTY OF LOS ANGELES____ } SS

On 02/25/2025 before me, _Seung H. Kim_____a Notary Public, personally appeared
_Leslie Klein_____who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/their/her authorized capacity (ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.**

WITNESS my hand and official seal.

SIGNATURE _____(SEAL)

SEUNG H. KIM
Notary Public - California
Los Angeles County
Commission # 2348665
My Comm. Expires Apr 15, 2025

MAIL TAX STATEMENT TO ADDRESS AS SHOWN ABOVE