Jeffrey W. Dulberg (CA Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile:  310-201-0760
Email: jdulberg@pszjlaw.com
        jlucas@pszjlaw.com

*Counsel to Bradley D. Sharp,
Chapter 11 Trustee*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>Debtor. | Case No. 2:23-bk-10990-NB<br><br>Chapter 11<br><br>**MOTION OF CHAPTER 11 TRUSTEE FOR ORDER (A) ENFORCING AUTOMATIC STAY, (B) EXPUNGING LIS PENDENS RECORDED AGAINST 322 N. JUNE STREET, LOS ANGELES, CALIFORNIA FROM PROPERTY RECORDS, (C) VOIDING LIS PENDENS AB INITIO AND FINDING IT HAVING NO FORCE OR EFFECT, AND (D) AUTHORIZING TRUSTEE TO RECORD AN ORDER GRANTING THE MOTION FOR THE PURPOSE OF CLEARING TITLE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFFERY W. DULBERG**<br><br>*[REQUESTED HEARING DATE & TIME: October 7, 2025, at 2:00 p.m.]*<br><br>Date:     TBD<br>Time:     TBD<br>Location: U.S. Bankruptcy Court<br>          Courtroom 1545<br>          255 E. Temple St.<br>          Los Angeles, CA 90012<br>Judge:    Hon. Neil W. Bason<br><br>[Application For Order Setting Hearing On Shortened Notice Filed Concurrently Herewith] |

4918-4891-8121.6 78512.001

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND PARTIES ENTITLED TO NOTICE HEREOF:**

**PLEASE TAKE NOTICE** that Bradley D. Sharp, in his capacity as Chapter 11 Trustee (the "**Trustee**") of the bankruptcy estate (the "**Estate**") of Leslie Klein, the debtor herein (the "**Debtor**"), hereby moves (the "**Motion**") the Court for entry of an order:

(A) enforcing the automatic stay;

(B) expunging the notice of pendency of action, recorded in the Official Records of Recorder's Office, Los Angeles County as 20250105088 (the "**Lis Pendens**"),[1] dated February 19, 2025, encumbering property of the Estate, *i.e.*, real property located at 322 N. June St., Los Angeles, CA (the "**June St. Property**");

(C) voiding the Lis Pendens *ab initio* and finding it has no force or effect;

(D) authorizing the Trustee to record an order granting the Motion for the purpose of clearing title of the June St. Property on account of the wrongful recordation of the Lis Pendens;

(E) authorizing further relief from the Court on an expedited basis if a title company refuses to issue title insurance as a result of the Debtor's actions against the June St. Property; and

(F) awarding sanctions in an amount to be determined at a future hearing upon separate motion to be filed by the Trustee, in his discretion.

**PLEASE TAKE FURTHER NOTICE** that the Trustee is seeking, via his concurrently filed *Application for Order Setting Hearing on Shortened Notice* ("**Motion to Shorten Time**"), the Court's authorization to notice the Motion for a hearing on **October 7, 2025,** at **2:00 p.m. Pacific Time**, or as soon thereafter as counsel may be heard before the Honorable Neil W. Bason, United States Bankruptcy Judge, in Courtroom 1545, 255 East Temple Street, Los Angeles, California 90012.

---

[1] A true and correct copy of the Lis Pendens is annexed to the Dulberg Declaration as **Exhibit "A"**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE FURTHER NOTICE** that upon the Court's scheduling of a hearing on the Motion, the Trustee will promptly serve and file a notice of hearing on the Motion reflecting the date and time ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the Memorandum of Points and Authorities and Declaration of Jeffrey W. Dulberg annexed hereto (the "**Dulberg Declaration**"), the record in this chapter 11 case, as well as any other documentary evidence as may be presented to this Court at or before the hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), if you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it upon the undersigned counsel no later than the deadline to be scheduled by the Court in response to the Motion to Shorten Time.  The failure to properly file and serve an opposition may be deemed consent to the relief requested in the Motion or a waiver of any right to oppose the Motion.

Dated:  September 19, 2025

PACHULSKI STANG ZIEHL & JONES LLP

By    _/s/ Jeffrey W. Dulberg_
Jeffrey W. Dulberg

*Counsel to Bradley D. Sharp,*
*Chapter 11 Trustee*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001                                    3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**PRELIMINARY STATEMENT AND KEY FACTS**

On three prior occasions in this case, this Court has found (a) the Debtor, (b) his wholly owned law firm, Leslie Klein & Associates ("**LKA**"), and (c) LKA's counsel, Daniel Crawford and the Crawford Law Group, knowingly violated the automatic stay. On two of the most recent occasions, the Court ruled their actions were subject to monetary sanction due to their efforts to misappropriate or diminish property of the Estate. This Motion unfortunately requires the Court to address yet another example of such an effort.[2]

The Court (Judge Sandra Klein) entered an order [Adv. Docket No. 62][3] (the "**MSJ Order**")[4] finding that the property located at 322 N. June St., Los Angeles, CA (the "**June St. Property**") is property of the Estate. Prior to entry of the MSJ Order, the Debtor and his counsel (Daniel Crawford; The Crawford Law Group) acknowledged they commenced an action in probate court (the "**Probate Action**") for the purpose of reforming the Debtor's living trust (the "**Klein Living Trust**") so that the June St. Property is held or owned by a sub-trust and not property of the Estate.

In response, on December 30, 2024, the Court (Judge Sandra Klein) entered an Order to Show Cause [Adv. Docket No. 64] (the "**OSC**")[5] why the Debor, his counsel Eric Olson, and Mr. Crawford should not be held in contempt as a result of the commencement of the Probate Action. After several hearings, the Debtor and Mr. Crawford finally cooperated and dismissed the Probate

---

[2] As set forth below, prior to filing this Motion, the Trustee, through counsel, asked Mr. Crawford whether the Debtor and LKA would voluntarily withdraw the Lis Pendens (as Mr. Crawford did previously with the Probate Action) so the Trustee would not be required to seek relief from the Court to void the Lis Pendens. The Trustee represented that if the Lis Pendens were promptly withdrawn that the Trustee would not seek sanctions. Subsequently, the Trustee's counsel made the same request to the Debtor and Eric Olson, one of the Debtor's other attorneys. The Trustee's counsel received no response from the Debtor, Mr. Crawford, or Mr. Olson.

[3] Adv. Case No. 24-01140 (the "**June St. Action**").

[4] A true and correct copy of the MSJ Order is annexed to the Dulberg Declaration as **Exhibit "B"**.

[5] A true and correct copy of the OSC is annexed to the Dulberg Declaration as **Exhibit "C"**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Action because they acknowledged that those lawsuits were void and initiated in violation of the automatic stay.

In addition, the Trustee filed a Motion to Enforce the Automatic Stay after the Debtor and Mr. Crawford transferred (the **"EKLK Transfer Deed"**) a purported interest in the June St. Property to EKLK Foundation ("**EKLK**") – an entity controlled by the Debtor and another of Mr. Crawford's clients. Per an order dated June 18, 2025 [Docket No. 1147] (the "**June 18 Order**"),[6] the Court (Judge Bason) held that the EKLK Transfer Deed was void and authorized the Trustee to record the June 18 Order to for the purpose of unclouding title of the June St. Property and to reflect that the EKLK Transfer Deed was void and without force or effect.

The June 18 Order provides in relevant part that:

> If the recordation of this Order does not uncloud title of the June St. Property, the Trustee may seek further relief for the purpose of re-quieting title of the June St. Property as necessary.

June 18 Order, Para. 4.

In connection with his efforts to begin marketing the June St. Property for sale, the Trustee recently discovered that the Debtor, through LKA, wrongly and without explanation recorded the Lis Pendens against the June St. Property. The Debtor and LKA recorded the Lis Pendens approximately two weeks prior to the EKLK Transfer Deed. Both the Lis Pendens itself and the act of recording it are violations of the automatic stay.

Through counsel, the Trustee requested that the Debtor, Mr. Crawford, and Mr. Olson remove or withdraw the Lis Pendens, but the Trustee has not received a response. By any measure, the Lis Pendens should have already been expunged but the June 18 Order does not specifically reference the Lis Pendens, only the EKLK Transfer Deed. Accordingly, and pursuant to Paragraph 4 of the June 18 Order and sections 105 and 362 of the Bankruptcy Code, the Trustee seeks such relief at this time to completely clear title to the June St. Property because the MSJ Order is final and no longer subject to appeal and the June St. Property is ready to be marketed.

---

[6] A true and correct copy of the June 18 Order is annexed to the Dulberg Declaration as **Exhibit "D"**.

## II.

## STATEMENT OF FACTS

**A.    Bankruptcy Case Background**

On February 22, 2023, the Debtor commenced a voluntary chapter 11 case before the United States Bankruptcy Court for the Central District of California (Los Angeles Division) Case No. 23-10990.

On May 23, 2023, and in response to certain creditors seeking to dismiss the Debtor's case, the Court denied the motion to dismiss and instead instructed the Office of the United States Trustee (the "**UST**") to appoint a chapter 11 trustee to administer the Debtor's Estate and chapter 11 case. In response, the UST filed a *Notice of Appointment of Chapter 11 Trustee [Docket No. 151]. On May 24, 2023, the UST filed an Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154], which was approved by order entered the same day [Docket No. 155]. On that same day, the Trustee accepted his appointment [Docket No. 156], as the chapter 11 trustee of the Estate.

Since May 2023, the Trustee has been administering the Debtor's case and Estate with little to no cooperation from the Debtor or his cadre of counsel[7] that he uses in the bankruptcy case and numerous other actions that he commenced that are at cross-purposes with the best interests of his creditors.

**B.    The Debtor's Recovery of June St. Property and
Debtor's Prior Efforts to Misappropriate Estate Assets**

On May 23, 2024, the Trustee commenced the June St. Action (the "**June St. Action**") seeking to (i) quiet title, pursuant to section 760.101, et. seq. of the California Code of Civil Procedure, to the June St. Property in the name of the Debtor and, as such, as property of the Estate, (ii) avoid any unrecorded or invalid transfers, pursuant to section 544(a)(3) of the

---

[7] Since the filing of this case, the Debtor has had numerous counsel that include: (a) The Law Offices of Michael Jay Berger; (b) The Law Offices of Michael Kogan; (c) The Law Offices of Eric Olson; (d) FLP Law Group, LLP; (e) Parker, Milliken, Clark, O'Hara & Samuelian; (f) Michele Ferroni; (g) The Crawford Law Group.

Bankruptcy Code, of the June St. Property, and (iii) recover the Estate's interest in the June St. Property, pursuant to section 550 of the Bankruptcy Code.

In the June St. Action, the Trustee filed a *Motion for Summary Judgment on All Claims for Relief Against Defendants* (the "**MSJ**") [Adv. Docket No. 32], seeking summary judgment on all claims for relief as set forth in the complaint. One week before the hearing on the MSJ, the Debtor filed a motion to continue the hearing on the MSJ. [Adv. Docket No. 51] (the "**Motion to Continue**"). The Motion to Continue was filed by Mr. Crawford of the Crawford Law Group. In the Motion to Continue, the Debtor admitted that Mr. Crawford filed the complaint in the Probate Action seeking to "reform" the Klein Living Trust (which then-owned the June St. Property) so that the June St. Property could be transferred from the Klein Living Trust to a sub-trust that is not property of the Debtor's Estate.

On December 20, 2024, Judge Klein entered the MSJ Order holding that there was no evidence showing that the Debtor had transferred the June St. Property from his Klein Living Trust to any of its sub-trusts. Plus, even if the Debtor had made such transfer, it would not have mattered because the Klein Living Trust, and the sub-trusts thereunder, are self-settled and as a result the *res* held by any such trusts are property of the Debtor's Estate.

As reflected in Judge Klein's ruling,[8] the Court also denied the Motion to Continue. At the close of the MSJ hearing, the Trustee's counsel brought the Probate Action to Judge Klein's attention. In response, Judge Klein entered the OSC, which required the Debtor, Mr. Crawford, and others to show why they were not in violation of the automatic stay by commencing the Probate Action and seeking to reform the Klein Living Trust with respect to the June St. Property. In response to the OSC, Mr. Crawford caused the Probate Action to be dismissed with prejudice. At that time, the Trustee did not seek sanctions against Mr. Crawford or his law firm but instead sought to have the Probate Action promptly dismissed, which eventually happened.

The Debtor and the other defendants in the June St. Action appealed the MSJ Order to the Bankruptcy Appellate Panel (the "**BAP**"), Case No. 25-1002 (the "**June St. Appeal**"). The June

---

[8] A true and correct copy of the December 18, 2024 hearing transcript is annexed to the Dulberg Declaration as **Exhibit "E"**.

St. Appeal was fully briefed on March 26, 2025, and the BAP heard oral argument on May 29, 2025. Just *one week* later, on June 5, 2025, the BAP entered a decision [BAP Docket No. 20] (the "**BAP Memorandum Decision**") affirming the MSJ Order. After filing a motion for reconsideration, which was denied [BAP Docket No. 25], the Debtor and the other defendants in the June Street Action did not appeal the BAP Memorandum Decision to the Ninth Circuit Court of Appeals, and any such appeal deadline expired on September 5, 2025. As a result, the MSJ Order is final.

### C.      The Wrongly Recorded Lis Pendens

On or about September 15, 2025, the Trustee learned that the Debtor, through his law firm LKA, in his capacity as administrator for the estate of decedent David Y. Green, recorded a notice of pendency of action on February 19, 2025, in the Official Records of Recorder's Office, Los Angeles County, as document number 20250105088 (*i.e.*, the Lis Pendens), encumbering the June St. Property described as: "[A]n undivided one-half interest" the June St. Property. A true and correct copy of the recorded Lis Pendens is attached to the Dulberg Declaration as **Exhibit "A".**

The Lis Pendens was recorded approximately two weeks prior to the recordation of the EKLK Transfer Deed that the Court (Judge Bason) found was wrongly executed and recorded in violation of the automatic stay. The Lis Pendens does not represent any legitimate obligation of the Estate, nor is its subject matter germane to the business of the Estate. Just as with the EKLK Transfer Deed, the Lis Pendens should be expunged, and the Trustee should be granted the ability to promptly return to this Court in the event the Lis Pendens results in any further cloud to title.

### D.      The Trustee's Effort to Correct Title Without Seeking Relief from This Court

Upon learning of the Lis Pendens on September 15, 2025, the Trustee requested that his counsel review the Lis Pendens. Once it was determined to be recorded in violation of the automatic stay, counsel for the Trustee contacted the Debtor and LKA, and their respective counsel, regarding a third stay violation with respect to the June St. Property in less than nine months (the **"Counsel Emails"**).[9] Via the Counsel Emails, the Trustee requested that Debtor or

---

[9] Attached to the Dulberg Declaration as **Exhibit "F"** is a true and correct copy of the Counsel Emails (without enclosures which are duplicative of Exhibits "A" and "C" of the Dulberg Declaration).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LKA, as the recorder of the Lis Pendens on behalf of the Debtor, or their respective counsel, withdraw the Lis Pendens promptly and in exchange the Trustee would waive any right to seek sanctions with respect to its contents and recording with the Los Angeles County Recorder's Office. The Trustee did not receive a response to these requests.

**III.**

**RELIEF REQUESTED**

Pursuant to Paragraph 4 of the June 18 Order and sections 105(a) and 362 of the Bankruptcy Code, the Trustee is seeking entry of an order (a) enforcing the automatic stay; (b) expunging the Lis Pendens recorded against the June St. Property: (c) voiding the Lis Pendens *ab initio* and finding that it has no force or effect; (d) authorizing the Trustee to record an order granting the Motion for the purpose of clearing title of the June St. Property on account of the recordation of the Lis Pendens; (e) authorizing further relief from the Court if a title company refuses to issue title insurance as a result of the Debtor's attempt to cloud title to the June St. Property; and (f) awarding sanctions in an amount to be determined at a future hearing upon separate motion to be filed by the Trustee, in his discretion.

A copy of the proposed order is annexed hereto as **Exhibit "G"** *(*the "**Proposed Order**"*)*. This is a core proceeding pursuant to 28 U.S.C. § 157.

**IV.**

**ARGUMENT**

**A.    Section 362(a) Automatically Voids the Lis Pendens**

The automatic stay of section 362(a) of the Bankruptcy Code protects property of the estate in which the debtor has a legal, equitable, or possessory interest. *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 587 (B.A.P. 9th Cir. 1995). As recognized by the Ninth Circuit, section 362 of the Bankruptcy Code is a critical protection of bankruptcy law and quite broad in its scope:

> It is designed to effect an immediate freeze of the status quo by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate. The automatic stay plays a vital and fundamental role in bankruptcy. The stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court. The stay protects the debtor by allowing it breathing space

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

> and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others.

*Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993) (citations omitted).

"The automatic stay arising in consequence of the filing of a petition initiating a bankruptcy case protects property of the estate from judgment enforcement, acts to obtain possession of property of the estate, and acts to create, perfect, or enforce a lien." *In re Thu Thi Dao*, 616 B.R. 103, 111 (Bankr. E.D. Cal. 2020) (citing 11 U.S.C. § 362(a)). Moreover, per section 362(c) of the Bankruptcy Code, "[t]he automatic stay protects property of the estate until (1) it is no longer property of the estate or (2) the bankruptcy proceeding is closed, dismissed, or a debtor's discharge is either granted or denied." *In re LPM Corp.*, 269 B.R. 217, 220 (9th Cir. B.A.P. 2001). Further, "Since the automatic stay is effective against the world, regardless of notice, acts in violation of the stay are automatically void ab initio." *Morris v. Peralta*, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004) (quoting *In re Schwartz*, 954 F.2d 569, 572–74 (9th Cir. 1992)) (emphasis added).

The automatic stay imposed by section 362(a) of the Bankruptcy Code bars actions that would diminish the estate of a debtor in bankruptcy; therefore, if a party seeks to alter claims held by a debtor's estate, such party must seek relief from stay from the debtor's bankruptcy court. *Palmdale Hills Prop., LLC v. Lehman Commer. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 871, 875-876 (9th Cir. 2011). In *Palmdale Hills*, the estate of one debtor sought to subordinate the claims of another debtor's estate and the Ninth Circuit held that another party cannot seek to alter the rights of the affirmative claims of a debtor's estate without first seeking stay relief. *Id*.

The determination of whether assets are property of the estate is a core matter of bankruptcy court jurisdiction. *Bank of Los Angeles v. Official PACA Creditors' Comm. (In re Southland + Keystone)*, 132 B.R. 632, 638 (9th Cir. B.A.P. 1991) ("Clearly, a determination of whether assets are property of the bankruptcy estate concerns administration of the estate.")

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

In the Ninth Circuit, courts apply a three-part test to determine whether a party's actions rise to the level of exercising control over property of the estate in violation of 11 U.S.C. § 362(a)(3). *Qarni v. Vahora (In re Qarni)*, Nos. 19-12679-A-13, 19-01090-A, 2019 Bankr. LEXIS 3779 at *6 (Bankr. E.D. Cal. Dec. 11, 2019). Courts ask first "whether the debtor had a property right at state law," second, "whether that right was property of the estate[,]" and third, whether "'the property was altered in a manner contrary to the relevant provisions of 11 U.S.C. § 362(a)'" *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899, 907 (B.A.P. 9th Cir. 1997) (quoting *In re Bialac*, 712 F.2d 426, 429–30 (9th Cir. 1983)). "[A] debtor's property rights are defined by state law." *Shin v. Altman (In re Altman)*, 2018 Bankr. LEXIS 1947, 2018 WL 3133164 at *5 (9th Cir. BAP June 26, 2018) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979).

It is indisputable that the June St. Property is property of the Debtor's Estate. The MSJ Order made that finding and such order is final and no longer appealable. Consequently, any action to cloud title to the June St. Property without Court authorization is a violation of section 362(a) of the Bankruptcy Code. As set forth in *Bialac*, 712 F.2d 426, 429-30 (9th Cir. 1983), the Debtor's actions violate the stay because:  (a) the June St. Property is property of the Estate per the MSJ Order and BAP Memorandum Decision, (b) the foregoing decisions held that the Debtor's Estate owns the June St. Property because the title reflects that the property is owned by the Klein Living Trust and such trust (and the sub-trusts thereunder) are self-settled, and (c) the recording of the Lis Pendens is a blatant attempt to diminish the Estate's interest in the June St. Property.

The relief requested herein is neither complicated nor controversial under any interpretation of the facts. More importantly, the relief requested by the Motion does not affect the rights of any other parties because the affected property (*i.e.*, the June St. Property) is owned by the Estate.

The June St. Property is a valuable asset that is worth more than $5,000,000 on a gross sale basis according to readily available online sources. The Debtor continues to ignore this Court's orders and take matters into his owns hands for the clear purpose of clouding title on real property where the proceeds of which will be used to make distributions to the holders of allowed claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Now that both this Court and the BAP have found that the June St. Property is property of the Estate, and such decisions are final and not subject to appeal, the Trustee cannot be hamstrung by the Debtor's illegal actions that are not only clouding title but also causing the Trustee to unnecessarily expend estate resources that should be available to creditors. Through his repeated violative actions, the Debtor's obvious intention – in direct contravention to his statutory duties under the Bankruptcy Code – is to prevent or delay the Trustee from selling the June St. Property.

The Trustee seeks the relief herein on shortened notice because the Trustee is currently in the process of listing the June St. Property for sale after extended delay caused by the Debtor and his counsel. The Lis Pendens will unnecessarily confuse prospective bidders during this early marketing period. If a title company, buyer, or other party that is integral of the sale of the June St. Property is unwilling to close a sale on account of the Lis Pendens or other conduct by the Debtor, the Trustee requests authorization to seek further relief for the purpose of re-quieting title and addressing the concerns of such potential buyer.

For the reasons set forth herein, the Trustee respectfully request the Court to approve the Motion.

## V.

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that this Court enter the Proposed Order granting this Motion in its entirety and granting such other and further relief as this Court deems just and proper.

Dated: September 19, 2025          PACHULSKI STANG ZIEHL & JONES LLP


By     */s/ Jeffrey W. Dulberg*
        Jeffrey W. Dulberg

        Counsel to Bradley D. Sharp,
        Chapter 11 Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001                    12

## DECLARATION OF JEFFREY W. DULBERG

I, Jeffrey W. Dulberg, declare:

1.      I am an attorney at law duly licensed to practice before all courts in the State of California.  I am a partner with the law firm of Pachulski Stang Ziehl & Jones LLP, counsel of record for Bradley D. Sharp, Chapter 11 Trustee of the estate of Leslie Klein. The facts stated herein are of my own personal knowledge or have been made known to me from a review of the files and pleadings in this action which are maintained in the ordinary course of business. If called upon as a witness to any facts set forth herein, I could and would competently testify thereto.

2.      Attached hereto as **Exhibit "A"** is a true and correct copy of the Lis Pendens.

3.      Attached hereto as **Exhibit "B"** is a true and correct copy of the MSJ Order.

4.      Attached hereto as **Exhibit "C"** is a true and correct copy of the OSC.

5.      Attached hereto as **Exhibit "D"** is a true and correct copy of the June 18 Order.

6.      Attached hereto as **Exhibit "E"** is a true and correct copy of the December 18, 2024 hearing transcript.

7.      Attached hereto as **Exhibit "F"** are true and correct copies of the Counsel Emails (without enclosures which are duplicative of Exhibits "A" and "C").

Executed this 19th day of September, 2025, at Los Angeles, California.

_/s/ Jeffrey W. Dulberg_
Jeffrey W. Dulberg

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001                              13

## **EXHIBIT A**

(Lis Pendens)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001

 

**This page is part of your document - DO NOT DISCARD**

## 20250105088





**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/19/25 AT 03:23PM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 103.00 |

Pages:
0004





**L E A D S H E E T**



202502190730029

**00025245392**



015149787

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**



E652839

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

NAME *Owen Podell, Esq.*

MAILING ADDRESS *6454 Van Nuys Blvd, #150*

CITY, STATE and ZIP CODE
*Van Nuys, CA 90401*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

TITLE(S)

*Notice of Pendency of Action (Lis Pendens)*

BO15 rev 20171228

LESLIE KLEIN (SBN 50908)
OWEN PODELL (97813
LESLIE KLEIN & ASSOCIATES
6454 Van Nuys Blvd #150
Van Nuys, CA 90401
818-501-2663
les.kleinlaw@gmail.com

Attorneys for Petitioner, Leslie Klein as
Administrator for Decedent's Estate

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| In re Estate of David Y. Green, | Case No.: 17STPB01585 |
|---|---|
| Decedent | NOTICE OF PENDENCY OF ACTION (LIS PENDENS) |

PLEASE TAKE NOTICE THAT above-captioned action, by Petitioner Leslie Klein as Administrator for Decedent's Estate, affects title to and/or possession of real property in that Petitioner seeks to quiet title to the real property located in Los Angeles County, at 322 N. June Street, Los Angeles, California, and described as:

An undivided one-half interest in the real property described as Lot 300 of Tract 8320 as per map recorded in Book 98, page 41 of Maps, commonly known as 322 N. June Street, Los Angeles, CA 90004.

The parties to this case include: Probate Referee Christina Acevedo; petitioner Leslie Klein; attorneys for petitioner, Leslie Klein and Owen Lee Podell; beneficiaries ~~Elizabeth~~ and Ofra Orjachovsky; ~~attorney for beneficiary Julie Smith Parkus~~ interested parties ~~Elizabeth Tom Davey and~~ Los Angeles County Public Administrator; ~~attorney for interested parties Steven Charles Sauer and~~ ~~decedent David Y. Green.~~

Date: February 12, 2025

LESLIE KLEIN, Esq.
LESLIE KLEIN & ASSOCIATES
Attorneys for Petitioner

---

NOTICE OF PENDENCY OF ACTION
(LIS PENDENS)

SEE ATTACHED
CA NOTARY CERTIFICATE



## SPACE BELOW FOR NOTARY'S USE

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT**                    **CIVIL CODE '1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _02/19/2025_ before me, _Seung H. Lim (Notary public)_

(Insert Name of Notary Public and Title)

personally appeared _Leslie Klein_, who

proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf on which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

SEUNG H. KIM
Notary Public - California
Los Angeles County
Commission # 2348665
My Comm. Expires Apr 15, 2025

Los Angeles City Planning | CP-7771.1 [6.1.2023]

Page 9 of 12

# **EXHIBIT B**

(Summary Judgment Motion Order)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001

Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
Jeffrey P. Nolan (State Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4003
Telephone: 310.277.6910
Facsimile: 310.201.0760
Los Angeles, California 90067-4003
E-mail:  jdulberg@pszjlaw.com
         jlucas@pszjlaw.com
         jnolan@pszjlaw.com

Attorneys for Plaintiff, Bradley D. Sharp,
Chapter 11 Trustee



FILED & ENTERED

DEC 20 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY may        DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LESLIE KLEIN,<br><br>    Debtor.<br><br>BRADLEY D. SHARP, Chapter 11 Trustee,<br><br>    Plaintiff,<br><br>v.<br><br>LESLIE KLEIN, an individual, THE SECOND AMENDED KLEIN LIVING TRUST, a trust, THE MARITAL DEDUCTION TRUST OF ERIKA KLEIN, a trust, THE SURVIVOR'S TRUST OF LESLIE KLEIN, a trust, and BARBARA KLEIN, an individual,<br><br>    Defendants. | Case No.: 23-10990-SK<br><br>Adv. Case No.: 2:24-ap-01140-SK<br><br>Chapter 11<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS FOR RELIEF AGAINST DEFENDANTS**<br><br>Date:  December 18, 2024<br>Time:  10:30 a.m.<br>Place:  Courtroom 1575<br>        255 E. Temple Street<br>        Los Angeles, CA 90012<br><br>[Relates to Docket Nos. 32, 33, 34, 36, 43, 44, 48 and 49] |

A hearing was held on December 18, 2024 at 10:30 a.m. in Courtroom 1575, 255 East Temple Street, Los Angeles, California 90012 before the Honorable Sandra R. Klein for the Court to consider and act upon the *Motion For Summary Judgment On All Claims for Relief Against Defendants* (the "**Motion**")[1] [Adv. Docket No. 32], filed by plaintiff, Bradley D. Sharp, as trustee

_____

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

4920-9348-3016.1 78512.001

(the "**Plaintiff**") for the Chapter 11 estate of Leslie Klein. Appearances were as noted on the record.

Based upon the record, the Motion, the declaration of John W. Lucas [Adv. Docket No. 33], the request for judicial notice [Adv. Docket No. 34], and the statement of facts and conclusions of law [Adv. Docket No. 36], filed by Plaintiff in support of the Motion; the opposition to the Motion filed by Defendants [Adv. Docket No. 43], the statement of genuine issues of facts filed by Defendants [Adv. Docket No. 44]; the reply to the statement of facts filed by Plaintiff [Adv. Docket No. 48], and the reply to the Opposition filed by Plaintiff [Adv. Docket No. 49]; the motion to continue filed by Defendants [Adv. Docket No. 51]; and the opposition to the Motion to Continue, filed by Plaintiff [Adv. Docket No. 52]; and the arguments of counsel at the hearing; based on the findings of fact and conclusions of law made by the Court on the record of the hearing; and good cause appearing therefor; and for the reasons stated by the Court on the record of the hearing,

**IT IS HEREBY ORDERED:**

1. The Motion is GRANTED.

2. The Bankruptcy Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to this Order.

### #

Date: December 20, 2024

Sandra R. Klein
United States Bankruptcy Judge

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT C**

(Order to Show Cause)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001

Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
Jeffrey P. Nolan (State Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4003
Telephone: 310.277.6910
Facsimile: 310.201.0760
Los Angeles, California 90067-4003
E-mail:  jdulberg@pszjlaw.com
              jlucas@pszjlaw.com
              jnolan@pszjlaw.com

Attorneys for Plaintiff, Bradley D. Sharp,
Chapter 11 Trustee

FILED & ENTERED

DEC 30 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY milano    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LESLIE KLEIN,<br><br>Debtor.<br> | Case No.: 23-10990-SK<br><br>Adv. Case No.: 2:24-ap-01140-SK<br><br>Chapter 11 |
| BRADLEY D. SHARP, Chapter 11 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>LESLIE KLEIN, an individual, THE SECOND AMENDED KLEIN LIVING TRUST, a trust, THE MARITAL DEDUCTION TRUST OF ERIKA KLEIN, a trust, THE SURVIVOR'S TRUST OF LESLIE KLEIN, a trust, and BARBARA KLEIN, an individual,<br><br>Defendants. | **ORDER TO SHOW CAUSE REGARDING WHY LESLIE KLEIN, DANIEL CRAWFORD, AND ERIC OLSON ARE NOT IN VIOLATION OF THE AUTOMATIC STAY**<br><br>Date:  January 22, 2025<br>Time:  9:00 a.m.<br>Crtrm:  Courtroom 1575<br>        255 E. Temple Street<br>        Los Angeles, CA 90012 |

On 2/22/23, debtor Leslie Klein (Klein) filed a voluntary chapter 11 bankruptcy petition, case no. 2:23-bk-10990-SK.  Docket #1.  On 5/24/23, the Court appointed Bradley D. Sharp (Sharp) as chapter 11 trustee for Klein's bankruptcy estate.  Docket #155.

On 5/23/24, Sharp filed a complaint that initiated the above-captioned adversary proceeding.  Adv. Docket #1.  On 5/29/24 Sharp filed an amended complaint (Amended

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Complaint) against Klein, the Second Amended Klein Living Trust, the Marital Deduction Trust of Erika Klein, the Survivor's Trust of Leslie Klein and Barbara Klein (Defendants). Adv. Docket #6. The Amended Complaint sought: 1) a determination that 322 N. June St., Los Angeles, California, 90004, (Property) is solely owned by Klein's bankruptcy estate; 2) a judicial declaration quieting title to the Property; and 3) a determination that all unrecorded interests in the Property are void and unenforceable. Id. at 4-5.

On 9/20/24, Sharp filed a Motion for Summary Judgment (MSJ) regarding the causes of action pled in the Amended Complaint. Adv. Docket #32. On 9/24/24, the Court entered an order setting briefing deadlines and a hearing on the MSJ on 12/18/24 (12/18/24 Hearing). Adv. Docket #37. On 10/15/24, Defendants filed an opposition (Opposition), Adv. Docket #43, and on 10/30/24 Sharp filed a reply (Reply). Adv. Docket #49.

On 12/11/24, Daniel Crawford (Crawford), Klein's co-counsel with Eric Olson (Olson), filed a "Notice of Motion and Motion for Continuance of Motion for Summary Judgment . . ." (Motion to Continue). Adv. Docket #51. The Motion to Continue indicated that on 12/9/24, the Defendants filed a petition in the Los Angeles Superior Court, Probate Division, case no. 24STPB13777 (Probate Action), seeking to have the probate court "exercise its exclusive jurisdiction . . . to resolve a matter concerning the internal affairs" of the Second Amended Klein Living Trust (Klein Trust), specifically whether the Property was allocated in part, or in whole, to the Defendants' trusts. Id. Attached to the Motion to Continue was a "Verified Petition for Order Conveying Trust Assets Into the Second Amended Marital Deduction Trust and Credit Trust Dated April 8, 1990 of Erika Klein." (Petition), which was filed in the Probate Action on 12/9/24. Id. at 14.

On 12/18/24 at 10:30 a.m., the Court held a hearing on the MSJ and a status conference in this matter. During the 12/18/24 Hearing:

1) The Court granted the MSJ.

2) Sharp's counsel argued that filing the Petition in the Probate Action violated the automatic stay and requested that the Petition be dismissed.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3) The Court declined the request to dismiss the Petition, but indicated that it would issue an order to show cause why Klein, and his attorneys, Daniel Crawford and Eric Olson, should not be sanctioned for violating the automatic stay.

Based on the foregoing, IT IS HEREBY ORDERED THAT the following individuals are ordered to show cause regarding why they have not violated the automatic stay by filing the Petition and prosecuting the Probate Action:

1) Leslie Klein, in his individual capacity, and as trustee of The Second Amended Klein Living Trust, dated April 8, 1990, the Marital Deduction Trust, the Survivor's Trust, and the Credit Trust thereunder,

2) Daniel Crawford; and

3) Eric Olson.

If the Court finds that filing the Petition and/or prosecution of the Probate Action violated the automatic stay, it will also consider what sanctions, if any, should be imposed on Klein, Crawford, and/or Olson.

1) A written response to this OSC must be filed and served by 1/8/25 at 12:00 p.m. noon;

2) Replies, if any, must be filed and served by 1/15/25 12:00 p.m. noon;

3) No further briefing will be allowed or considered.

4) A hearing on this OSC is set for 1/22/25 at 9:00 a.m.

# # #

Date: December 30, 2024

Sandra R. Klein
United States Bankruptcy Judge

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4900-8183-7064.2 78512.001                3

**EXHIBIT D**

(June 18 Order)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001

Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email:    jdulberg@pszjlaw.com
          jlucas@pszjlaw.com

*Counsel to Bradley D. Sharp, Chapter 11 Trustee*



FILED & ENTERED

JUN 18 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

CHANGES MADE BY COURT

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No. 2:23-bk-10990-NB |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | **ORDER GRANTING MOTION OF CHAPTER 11 TRUSTEE TO ENFORCE THE AUTOMATIC STAY AND VOID GRANT DEED, AND <u>GRANTING IN PART REQUEST</u> FOR SANCTIONS** |
| | Date:      June 17, 2025 |
| | Time:      1:00 p.m. |
| | Location:  U.S. Bankruptcy Court |
| | Courtroom 1545 |
| | 255 E. Temple St. |
| | Los Angeles, CA 90012 |
| | Judge:     Hon. Neil W. Bason |

The Court having considered the *Motion for Order Enforcing the Automatic Stay and Sanctions Against the Debtor, Credit Trustee, Credit Trust, and EKLK* [Docket No. 1128] (the "**Motion**") and the Declaration of Jeffrey W. Dulberg in support thereof; the joinders in support of the Motion, filed by Erica and Joseph Vago [Docket No. 1137], the Gestetner Charitable Remainder Unitrust and A. Gestetner Family Trust [Docket No. 1139] and Franklin H. Menlo, as co-trustee of the Franklin Menlo Irrevocable Trust [Docket No. 1140]; and EKLK Foundation's conditional opposition to the Motion [Docket No. 1142] and, for the reasons stated on the record of June 17, 2025 hearing, the Motion is **GRANTED** as set forth herein, and it is hereby

**ORDERED** that,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1.      The execution and recordation of the grant deed, recorded in the Official Records of Recorder's Office, Los Angeles County as 20250120374 (the "**Grant Deed**"), by Leslie Klein, the trustee (the "**Creditor Trustee**") of the creditor trust (the "**Creditor Trust**") under the *Second Amended Klein Living Trust*, dated April 8, 1990, violated section 362(a)(3) and (6) of the Bankruptcy Code.

2.      The Grant Deed is void *ab initio* and has no force or effect because it was executed and recorded without Court authorization in violation of section 362(a) of the Bankruptcy Code and the execution and recordation of the Grant Deed did not cause the transfer of any interest in the real property located at 322 N. June Street, Los Angeles, CA (the "**June St. Property**"). A copy of the void Grant Deed is annexed hereto as **Exhibit 1**.

3.      The Trustee is authorized to record a certified copy of this Order to uncloud the title of the June St. Property.

4.      If the recordation of this Order does not uncloud title of the June St. Property, the Trustee may seek further relief for the purpose of re-quieting title of the June St. Property as necessary.

5.      The request for sanctions by the Trustee in the Motion, pursuant to section 105(a) of the Bankruptcy Code and/or pursuant to Rule 9011 (Fed. R. Bankr. P.) any other authority, against Leslie Klein, Creditor Trustee, Creditor Trust, EKLK Foundation, and/or any counsel thereto shall be made pursuant to a separate motion to be filed by the Trustee and heard by the Court at a date to be determined under the Court's self-calendaring procedures.

###

Date: June 18, 2025

_____
Neil W. Bason
United States Bankruptcy Judge

# EXHIBIT 1

**This page is part of your document - DO NOT DISCARD**



**20250120374**



**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/25/25 AT 03:55PM**

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 102.00 |



**L E A D S H E E T**



202502250750040

**00025260595**



015160375

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E528330

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

NAME EKLK Foundation
c/o Nat'l Reg. Agents, Inc.
MAILING ADDRESS
1209 Orange St.
CITY, STATE and ZIP CODE
Wilmington, DE 19801

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

GRANT DEED

BO15 rev 20171228

Recording Requested By:

**EKLK Foundation**

When recorded mail document to:

NAME    **EKLK Foundation
c/o Nat'l Reg. Agents, Inc.**

ADDRESS    **1209 Orange Street**

CITY    **Wilmington, DE 19801**
STATE & ZIP

APN:  **5523-003-008**

Above Space for Recorder's Use Only

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

DOCUMENTARY TRANSFER TAX is $ _-0-_____ CITY TAX $ -0- _~GIFT_____

☐ computed on full value of property conveyed, or

☐ computed on full value of items or encumbrances remaining at time of sale,

☐ Unincorporated area    ☒ City of __**LOS ANGELES**_____ , and

FOR A FULL VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Leslie Klein, as Trustee of the Credit Trust of the Second Amended Klein Living Trust**_____ hereby

GRANT(s) to ___**EKLK FOUNDATION**_____ the following

described real property in the City of __**LOS ANGELES**_____ County of **LOS ANGELES** , State of California:

An undivided one-half interest in the real property described as Lot 300 of Tract 8320 as per map recorded in Book 98, page 41 of Maps, commonly known as 322 N. June Street, Los Angeles, CA 90004

Dated: **February 2ͷ 2025**_____

Leslie Klein, Trustee_____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA}
COUNTY OF LOS ANGELES } SS

On 02/25/2025 before me, SEUNG H. Kim_____ a Notary Public, personally appeared ___Leslie Klein_____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/their/her authorized capacity (ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

SIGNATURE _____ (SEAL)

SEUNG H. KIM
Notary Public - California
Los Angeles County
Commission # 2348665
My Comm. Expires Apr 15, 2025

MAIL TAX STATEMENT TO ADDRESS AS SHOWN ABOVE

# **EXHIBIT E**

(December 18, 2024 Hearing Transcript)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001

1

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

-oOo-

In Re:                           ) Case No. 2:23-10990
                                 ) Chapter 11
LESLIE KLEIN                     )
                                 ) Los Angeles, California
                     Debtor.     ) Wednesday, December 18, 2024
_____ ) 10:30 AM

                                 ADV#: 2:23-01150
                                 VAGO, ET AL v. KLEIN, ET AL.

                                 ADV#: 2:23-01167
                                 SHARP, CHAPTER 11 TRUSTEE V.
                                 KLEIN, ET AL.

                                 ADV#: 2:24-01140
                                 SHARP, CHAPTER 11 TRUSTEE v.
                                 KLEIN, ET AL.

                                 #22.00 HRG RE MOTION FOR
                                 SUMMARY JUDGMENT ON ALL
                                 CLAIMS FOR RELIEF AGAINST
                                 DEFENDANTS

                                 #23.00 STATUS CONFERENCE RE
                                 COMPLAINT FOR QUIET TITLE AND
                                 AVOIDANCE OF UNRECORDED
                                 INTERESTS IN REAL PROPERTY
                                 LOCATED AT 322 N. JUNE ST.,
                                 LOS ANGELES, CA

                     TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE SANDRA R. KLEIN
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES (All present by video or telephone):
For the Debtor:            LESLIE KLEIN, PRO SE

                           ERIC J. OLSON, ESQ.
                           EJOlsonLaw
                           301 East Colorado Boulevard
                           Suite 520
                           Pasadena, CA 91101
                           (626)224-5619

2

APPEARANCES (Continued):

For the Debtor:                    DANIEL A. CRAWFORD, ESQ.
                                    Crawford Law Group
                                    15303 Ventura Boulevard
                                    Floor 9
                                    Sherman Oaks, CA 91403
                                    (818)935-6568

For the Chapter 11                 JEFFREY W. DULBERG, ESQ.
Trustee:                           Pachulski Stang Ziehl & Jones
                                    10100 Santa Monica Boulevard
                                    13th Floor
                                    Los Angeles, CA 90067
                                    (310)277-6910

                                   JOHN W. LUCAS, ESQ.
                                    Pachulski Stang Ziehl & Jones
                                    One Sansome Street
                                    Suite 3430
                                    San Francisco, CA 94104
                                    (415)263-7000

For Joseph and Rachel              REEM J. BELLO, ESQ.
Vago:                              Goe Forsythe & Hodges LLP
                                    17701 Cowan
                                    Suite 210, Lobby D
                                    Irvine, CA 92614
                                    (949)798-2460

For Kenneth and Shoshana           SIMON ARON, ESQ.
Klein:                             Wolf, Rifkin, Shapiro, Schulman &
                                    Rabkin, LLP
                                    11400 West Olympic Boulevard
                                    Ninth Floor
                                    Los Angeles, CA 90064
                                    (310)478-4100

3

Court Recorder:                     WANDA TOLIVER
                                    United States Bankruptcy Court
                                    Edward R. Roybal Federal Building
                                    255 East Temple Street
                                    Room 940
                                    Los Angeles, CA 90012
                                    (855)460-9641

Transcriber:                        MICHAEL DRAKE
                                    eScribers, LLC
                                    7227 N. 16th Street
                                    Suite #207
                                    Phoenix, AZ 85020
                                    (800) 257-0885

Proceedings recorded by electronic sound recording; transcript provided by transcription service.

4

LOS ANGELES, CALIFORNIA, WEDNESDAY, DECEMBER 18, 2024, 10:28 AM

-oOo-

(Call to order of the Court.)

THE COURT:  So then the only remaining matter are the Klein matters.  And I said those would be called at 10:30.  So we're a little early for that.  I don't know if -- and I cannot see on my screen who else may be in the Zoom room.  If anyone is here on the Klein matters, please turn your video on because you will show up in a different screen.

Hello, Mr. Dulberg.

MR. DULBERG:  Good morning, Your Honor.  I think the -- just to assist Your Honor with your calendar, I think the first item is the nondischargeability action involving the Vagos.  And I see Ms. Bello is on.  I know Your Honor is having trouble seeing folks.

THE COURT:  Yes.  Now I can see you.  That makes it much easier.  So hold on.  Let me get there.

MR. DULBERG:  So we're not technically appearing on that matter like I say.  But again, just to aid your video, we were -- Mr. Lucas and I have jumped on here.

THE COURT:  Okay.  Thank you.  Yes, I believe that will be quite brief.

So matter number 20 is Vago versus Klein.  Ms. Bello?

MS. BELLO:  Yes.  Good morning, Your Honor.  Reem Bellow of Goe Forsythe & Hodges on behalf of Erica and Joseph

5

Vago.

THE COURT:  Good morning.  And, Mr. Olson, do you represent Mr. Klein in this one?

MR. OLSON:  No.  I understood he was appearing in pro se.

THE COURT:  Okay.  Well, he's not here.

Ms. Bello, what would you like the Court to know?

MS. BELLO:  Your Honor, according to our joint status report, because of the issue of the appeal still out there, both plaintiff, my clients, and Mr. Klein who participated in preparing the joint status report and signed it, requested that the Court simply not set dates yet that continue out the status conference.

THE COURT:  And Ms. Bello, the appeal was -- I looked at the docket.  I didn't see an appeal of the order that I entered.  Did I miss it?

MS. BELLO:  No, Your Honor.  I apologize.  What was meant by the appeal is the debtor's pre-petition appeal of the Vagos judgment.

THE COURT:  Okay.  Understood.  And where is that in its way through the state court system?

MS. BELLO:  I don't think anything has happened since the bankruptcy was filed.

THE COURT:  Okay.

MS. BELLO:  We had reached out to the trustee after he

6

was appointed.

THE COURT: Hold on. I believe someone is speaking. Please let Ms. Bello speak. You'll be given an opportunity to speak when she's done.

Ms. Bello?

MR. KLEIN: Thank you.

MS. BELLO: Yes. We had reached out to the trustee. Nothing has really transpired. On that front, we've had discussions with the debtor regarding settlement of the entire proceeding, including the appeal. That has not yet been resolved. So nothing has really happened on the appeal, Your Hono, from the debtor taking any action. And I believe that might be Mr. Klein who was trying to speak earlier.

THE COURT: Okay. Mr. Klein, was that --

MR. KLEIN: I agree with everything -- I agree.

THE COURT: You agree what, Mr. Klein?

MR. KLEIN: This is Mr. Leslie Klein. I agree with what Ms. Bello said.

THE COURT: Okay. So basically you agree that this should be stayed pending the appeal, your state court appeal, but it really hasn't gone anywhere.

MR. KLEIN: That is correct. I would like to go to mediation. We went to two full days of mediation with an excellent mediator. His name is Ben Free (ph.). And I would like to go back to him to mediate this matter. I think it

7

could be settled.  I am convinced I could settle the case today.

THE COURT:  Well, Mr. Klein, that certainly is up to you and Ms. Bello, but I'm not involved in anything regarding the state court judgment.  So you would have to address that with Ms. Bello offline.

In terms of what to do regarding the status conference, I can continue it for six months.  And then maybe there might be --

MR. KLEIN:  Perfect.

THE COURT:  -- some type of resolution.  So I'm going to continue this to some time in June.

Ms. Bello, I don't know if you were on.  I will be retiring, so I will not be handling this case in June.  It will be reassigned sometime n the spring.  I'll ask you as plaintiff's counsel to get in touch with the new judge assigned to the case to get this on track on the judge's calendar sometime in June.

MS. BELLO:  Your Honor, if I may, would it be possible to -- is Your Honor retiring early in 2025?

THE COURT:  It will be sometime in the spring.  I'm not sure when the cases will be reassigned.

MS. BELLO:  Then maybe it makes more sense to continue it out for ninety days while Your Honor is still on the bench.

THE COURT:  The last date that I currently have for

hearing is February 26th, which has already gotten really full. And that's only eight weeks, not three months.  So --

MS. BELLO:  Okay.

THE COURT:  I think it's best to continue it to June. I you want to get it on earlier, you certainly can.  If you want me to say it should be on in April or May, I can say that. That's up to you.  It's just there's nothing to report right now.  And I don't think there's been much to report in this case.  So I didn't want you to have to come in and spend money just to say there's not much going on.

MS. BELLO:  Right.

THE COURT:  So I --

MS. BELLO:  All right.  That's fine, Your Honor.

THE COURT:  Okay.  So I'll continue it to June of 2025 for you to contact the new judge's chambers to get it on calendar.

MS. BELLO:  Yes, Your Honor.

THE COURT:  Okay.  Thank you.

MS. BELLO:  Thank you.

THE COURT:  All right.

MR. KLEIN:  Thank you, Your Honor.

THE COURT:  Thank you.

So then turning to the actual motion for summary judgment, I see Mr. Lucas turned his video on.

MR. DULBERG:  Your Honor, I just note that number 21

Case 2:23-bk-10990-NB   Doc 1228   Filed 09/19/25   Entered 09/19/25 14:29:08   Desc
Main Document     Page 42 of 140
**Leslie Klein**

9

is the status conference on the other adversary that I thought -- Mr. Lucas and I thought it would make sense to deal with that first.

THE COURT:  Okay.  That's fine.

MR. DULBERG:  This is on Ken and Shoshana Klein as defendants.

THE COURT:  Yes.  Yes.  And I know there's a pending motion for summary judgment.  The motion and the opposition had come in.  I think the reply is due today if I'm --

MR. DULBERG:  That's right.  We're in the midst of getting it on file to do this afternoon.

THE COURT:  Okay.  Was there anything you'd like to add on that, Mr. Dulberg?

MR. DULBERG:  Not in particular.  Mr. Aron is on as well.  I didn't know if there was much to add at this point.  I think the report otherwise speaks for itself.

THE COURT:  Mr. Aron?

MR. ARON:  Good morning again, Your Honor.  Simon Aron for the defendants, Kenneth and Shoshana Klein.

I agree with Mr. Dulberg.  There isn't much to add.  I think the only outstanding question was one of mediation where we've been discussing the possibility of a mediation here. Defendants have come around to the position that it would make sense.  But I believe the trustee was still reserving its position on whether it wanted to proceed with mediation or he

10

wanted to proceed with mediation or not.

So other than that, I think we're on track.  And I believe the summary judgment hearings are set for February 5th, if I'm not mistaken.

THE COURT:  5th, That's correct.  That's correct.

MR. ARON:  So it might make it might make sense to continue the status conference to either that date or a date subsequent to allow that process to go through.

THE COURT:  Mr. Dulberg, what is your position about mediation?  Because it might be a good idea for the parties to consider that before the Court rules on the summary judgment.

MR. DULBERG:  Your Honor, we thought a couple of things.  1, we wanted to get these papers on.  And then 2, Mr. Aron filed a cross-motion for summary judgment.  So it just strikes me as being unlikely to be ripe for mediation at this point, given the sort of diametrical opposition or diametrically opposed positions I guess you would say that the parties are taking on the same set of facts, roughly speaking.

So our view was mediation works best when there is some -- when there's room.  And frankly, Your Honor, I just don't know that this is there yet.  We've been focused on getting these reply papers on.  The schedule is tight.  Two weeks from the opposition deadline, there were a slew of declarations and materials put in in addition to the cross-motion.  So to be honest, that's been taking up a lot of

11

the time since.  Maybe once the dust settles and Mr. Aron's client and my client at a time to sort of take in more of what each side has had an opportunity to say, we can discuss that. But up until now, we sort of have not been there yet.

THE COURT:  Understood.  I've reviewed the papers.  I know what came in.  I'm well aware of what's being argued in both sides' briefs.

MR. DULBERG:  Thank you, Your Honor.

THE COURT:  In terms of the cross-motion, it's basically the opposition but just brought it as an affirmative motion.

MR. DULBERG:  Something to that effect.

THE COURT:  Mr. Aron, you may disagree with the Court's characterization of that.  But it's basically the opposition as a motion.

MR. ARON:  Your Honor, I disagree somewhat.  I would --

THE COURT:  Okay.

MR. ARON:  There's no denying there's an extreme amount of overlap.  The parties have -- both have a set of facts.  And they argue those set of facts.  We do obviously both in the opposition.  More to the point, in the opposition that the trustee hasn't carried its burden and that the cross-motion asserts somewhat, again concurrently, based upon the same facts, that there actually are facts.  The facts

12

actually support judgment for the defendants rather.  So --

THE COURT:  Right.  Right.

MR. ARON:  Can't argue.

THE COURT:  Okay, yeah.  It's --

MR. ARON:  Can't --

THE COURT:  It's the same set of facts.  It's just which lens you look through it at or through --

MR. ARON:  Precisely.

THE COURT:  Okay.

MR. ARON:  Precisely.

THE COURT:  All right.  That's fine.  That's fine.  All right.  So then --

MR. DULBERG:  Your Honor, if I just might add, we otherwise are fine with Mr. Aron's suggestion about having the status report -- excuse me, the status conference and moving it to the date of the next hearing.

THE COURT:  Yeah.  I think that's appropriate.  So we'll just continue that to February 5th at 9.

MR. DULBERG:  Very well.  Thank you.

THE COURT:  Okay.  Thank you.

So then that gets us to the motion for summary judgment.  I have read the pleadings.  I'm very familiar with the facts.  I'm very familiar with the law.  Please don't reiterate what's in the pleadings.  But if there's something you would like to highlight, I'm interested in hearing it.  I

13

don't know who for the trustee would be arguing Mr. Lucas or Mr. Dulberg.

MR. DULBERG:  I'm going to yield the floor to Mr. Lucas.  Thank you,  Your Honor.

THE COURT:  Okay.  All right.  So Mr. Lucas, the floor is yours.  You are the movant.  You have the burden.

MR. LUCAS:  Thank you, Your Honor.  Good morning. John Lucas, Pachulski Stang Ziehl & Jones, for the trustee/plaintiff in this summary judgment motion before the Court.

Your Honor, one thing that I would like to do is just a couple of housekeeping matters so that I can proceed to my argument.  I think it's important for me to look at adversary docket number 33, which is a declaration from myself which contains documents produced by the defendants.  There's five exhibits:  the premarital agreement and an amendment to the premarital agreement, Barbara's admissions, the other defendant's admissions, and the defendants' responses to interrogatories.  I'm asking for the Court to admit those documents into evidence.

THE COURT:  Any objection, Mr. Olson?

MR. OLSON:  No.

THE COURT:  They're admitted, Mr. Lucas.

MR. LUCAS:  Thank you, Your Honor.

Adversary docket number 34 is a request for judicial

14

notice.  There are Exhibits A through K.  A through E include the petition in various orders regarding the trustee's appointment.  That's A through E.  F are the schedules and statements.  G is an order disallowing the homestead exemption stopped by the debtor.  H is a duly recorded copy of the June Street property deed.  I is a duly recorded copy of the second amended Klein living trust.  Exhibits J and K are the complaint and answer in the adversary proceeding respectively.  We ask for those exhibits to be admitted into evidence.

THE COURT:  The Court admits those.  All of them are either filed in this adversary in the main bankruptcy case or were publicly filed documents.  And so the Court can take judicial notice of each of those documents, although the Court cannot take judicial notice of the truth of the contents of those documents.  I can go through the law.  I already had that written out in a ruling, but you short-circuited that for me, Mr. Lucas, so thank you.

MR. LUCAS:  Your Honor, I'm just trying to proceed in the way that if I have argument, I sort of want the facts to be in the record.

THE COURT:  I appreciate it.

MR. LUCAS:  And then the third point, which is similar, Your Honor, at adversary docket 36 is the trustee's statement of facts.  And then in response to the defendants' objection to that is adversary docket 48, where the trustee

15

replies to the defendants' statement.  And we can see in six points raised by the defendant that we agree with the change 1 But otherwise, we believe that the defendants' attempt to create a factual dispute fails.  We're doing nothing other than citing to the documents which are already in the record.  And we believe that our statement of facts, as modified by docket number 48, should be admitted into evidence.

THE COURT:  And Mr. Lucas, I go through the facts based upon the evidence in the record.  So I'm going to hold on that.  I will lay out the uncontroverted facts in my ruling.

MR. LUCAS:  Thank you, Your Honor.

Then one thing --

MR. OLSON:  Your Honor, if I could --

THE COURT:  Who's --

MR. OLSON:  -- there has been a motion to continue this hearing based on the fact that there has been a filing in the probate court in the LA Superior Court.

THE COURT:  Thank you for the reminder, Mr. Olson.  So there was a motion filed.  And there was no briefing on this, and the Court intentionally didn't set a briefing.  A motion was filed on 12/11, one week before today's hearing.  And today's hearing was scheduled more than two and a half months ago.  And the debtor filed a motion for continuance of the hearing on the motion for summary judgment.

So I'm just going to go through the facts, and then

16

I'll rule on that motion for continuance.

And Mr. Lucas, I did not give you a chance to respond, but I am addressing it now.

Mr. Olson, you could have set it for hearing. You could have filed an application for order shortening time. You did not do that. You certainly knew about today's hearing date more than two and a half months ago. You also could have filed something explaining why you were seeking to have it heard today, but you didn't. It just was hanging out there. It just so happened that I did see it on the docket. So on March --

MR. OLSON: Your Honor actually, it was filed by Attorney Crawford. And I don't know why he's not on the --

THE COURT: He is on the -- he is on the Zoom, Mr. Olson. I can see him.

MR. OLSON: Oh.

THE COURT: So the complaint was filed by the trustee seeking to quiet title and avoid unrecorded interest in the June Street property on May 23rd.

On May 29th, a first amended complaint was filed against Klein, the second amended Klein living trust, the marital deduction trust, the survivor's trust, and Barbara Klein, seeking to quiet title and avoid unrecorded interest in the June Street property.

On July 12th, answers were filed -- an answer was filed by all defendants.

17

On July 29th, a joint status report was filed that docket 23, the trustee mentioned that he believed once discovery was complete, the complaint could be resolved via summary judgment.

On August 21st, a status conference, the Court set the following deadlines:  August 31st to propound discovery, September 30th to file dispositive motions.

On September 12th, debtor filed a motion for order joining necessary parties.  The Court denied the motion at an October 16th hearing.

On September 20th, ten days before the deadline, the trustee filed the motion for summary judgment.  Shortly thereafter, the Court set the briefing deadline and set the matter for hearing today.  The opposition was due October 15th, and the reply was due October 30th.  And debtor filed a timely opposition.  At no time did debtor mention any request to continue the hearing.

On 12/4, a status report was filed.  For the first time, debtor mentioned that he thought the proper venue was, quote, in the Superior Court in probate.  But he has said nothing more about that.

On 12/11, as I mentioned, one week before today's hearing -- and again, this hearing was scheduled more than two and a half months ago, debtor filed the motion for continuance of the hearing on the summary judgment.  Debtor claims that

18

issues regarding the motion for summary judgment all relate to the internal affairs of the Klein trust and the respective rights of the beneficiaries and cannot be decided by this Court.  Klein argued that all issues regarding the internal affairs of the Klein trust, including his role, the existence and effect of the subtrust, and the interests of the beneficiaries in the property are subject to the exclusive jurisdiction of the probate Court and must be decided by that court.  Klein indicated that he filed a petition in the LA Superior Court which has been set for hearing in February.  He claims that that court's decision will establish Conclusively the existence and effectiveness of the marital deduction trust and the credit trust.

Klein also on 12/11 filed a amended schedule AB which expressly he claims address allocation of the interest in the property.  The Court notes that Klein had previously filed his schedules in April, most recently April of 2023.  So we're now 21 months later when Klein files an amended schedule AB to supposedly address the interest in the property.

Klein claims that he retained new counsel, Mr. Crawford, to assist with litigating this case, and due to the complexity of the case, Crawford needs a continuance.

In support of the motion, Klein filed a declaration of Mr. Crawford who indicates he was retained on 12/2, two weeks ago.  And he filed a petition in the probate Court to confirm

19

the validity of the marital deduction trust and the credit trust and to affirm Mr. Stein's allocation of the property to the subtrust and beneficiaries.  I'm not sure if that was a typo or why -- I don't know who Mr. Stein is.

Attached to that declaration is a caption page, just one page, of a document filed in LA Superior Court 24STPB13777. And the caption of that document is, quote, verified petition for order conveying trust assets into the second amended marital deduction trust and credit trust dated 4/8/90 of Erica Klein.

In terms of jurisdiction, Klein asserts that the probate court, rather than this Court, has exclusive jurisdiction to determine some of the issues regarding the living trust, the marital deduction trust, and the credit trust.  To support his position, Klein sides Cal Probate Code 17000, which indicates that probate court has exclusive jurisdiction of proceedings regarding the internal affairs of trusts.  Probate code 17200 contains a list of what proceedings concerned the internal affairs of a trust.  After reviewing that list, as well as the cases cited by Klein, the Court finds that that argument is unavailing.

As an initial matter, the cover page of the petition that Klein filed on 12/9 does not support but rather undercuts his position, the title of that petition.  And only one page was provided in support of this motion for continuance was

Case 2:23-bk-10990-NB   Doc 1228   Filed 09/19/25   Entered 09/19/25 14:29:08   Desc
Main Document     Page 53 of 140
**Leslie Klein**

20

seeking an order conveying trust assets into the second amended marital deduction trust and credit trust. It does not in any way indicate that it is seeking a determination of the internal affairs of a trust.

And as noted by In re Rens, 633 B.R. 594 (B.A.P. 9th Cir. 2021), a case cited by Klein, this Court's jurisdiction is not governed by California law but rather by federal law. Even if that were not the case, the applicable statutes, 17000 and 17200, read together reveal that exclusive jurisdiction is limited to disputes among parties to the trust itself such as a beneficiary and a trustee. And that's directly out of the In re Rens case. Here there is no dispute between the beneficiaries and any trustee of the trust.

In terms of continuance, the Court has broad discretion to determine whether a request for continuance should be granted. That's U.S. v. Kloehn, 620 F.3D 1122 (9th Cir. 2010). The Court only abuses its discretion if its denial of a continuance is arbitrary or unreasonable.

The Ninth Circuit uses four factors to determine whether to grant a request for a continuance: 1, whether the movement was diligent in preparing his defense or whether his request for a continuance appears to be a delay tactic; 2, whether granting a continuance would be useful; 3, whether granting a continuance will inconvenience the Court and opposing party; and 4, whether the movement will be prejudiced

21

by denial of a continuance.

After considering the factors that the Ninth Circuit has announced courts should consider, the Court finds that all factors weigh against continuing today's hearing.  The request for a continuance appears to be a delay tactic.  The MSJ was filed almost three months ago.  It was not until the eleventh hour that Klein decides this Court does not have jurisdiction over estate property, but instead it is in the exclusive jurisdiction of the probate court.

On 12/2, two weeks before today's hearing, Klein filed amended schedule A and B, which he argues, quote, expressly addresses allocation of interest in property.  The problem for Klein is his attempt to address allocation of interest in property now is unavailing.

As the Court noted when summarizing the timeline, Klein filed bankruptcy in 2023.  His most recent amendment before a week ago was April 10th, 2023.  Now, 21 months later, he has attempted to clarify the trust assets.  And it is a -- certainly a delay tactic in the Court's mind.

The second factor whether granting a continuance would be useful, the Court finds it would not be useful.  The parties have had ample opportunity to present their arguments, and the Court is ready to rule.  There is no justifiable reason to continue this matter.

The third factor, whether granting a continuance will

22

inconvenience the Court and opposing party.  Granting a continuance would significantly prejudice the Court and the trustee.  As noted, the motion was filed three months ago. Klein had more than three and a half weeks to file an opposition, which he did.  The Court spent considerable time preparing for this hearing.  And the trustee has been litigating against Klein regarding this property for almost nine months.  Granting a continuance would inconvenience both the Court and the trustee.

And finally, whether movant will be prejudiced by denial of the continuance.  The Court finds that Klein has not advanced any argument that he would be prejudiced or otherwise negatively impacted by a denial of the continuance.  Even the evidence that the supposedly demonstrated that he was seeking a petition before the probate court does not support that argument.

Therefore, the Court denies the motion to continue the ruling on the MSJ.  And it will proceed with the hearing on the MSJ as well as its ruling.

So Mr. Lucas, I'll turn it back to you.

MR. LUCAS:  Yeah.  Thank you, Your Honor.

And again, not to belabor the point, my client, the trustee, did file an opposition to the motion to continue just for the record.  And, Your Honor, I would like to make some comments about the pending probate action after this summary

23

judgment motion has been considered by the Court.

THE COURT:  That's fine.  Mr. Lucas, I'm sorry.  I looked at this when it was filed within a day.  When did you -- when did you file an opposition?  Because I did not see that.

MR. LUCAS:  On Monday morning around 8:30 a.m.

THE COURT:  Okay.  And that's why, because I worked it up last week.

MR. LUCAS:  Yeah.

THE COURT:  But I appreciate that.  But I have ruled.  I assume you don't oppose that ruling that I made.

MR. LUCAS:  No, Your Honor.  We're wholly supportive of it.  And you said many of the same things that we said in our opposition.

THE COURT:  Okay.  Thank you.  And Mr. Lucas, why don't you proceed with your argument on the MSJ?  As I think you know, you've been before me, I do thoroughly read the papers and am very familiar with the facts and the law.  But if there's something you'd like to highlight, I'm interested in hearing that.

MR. LUCAS:  Your Honor, to that point, I will not -- Your Honor, our motion, which is filed at docket number 32, it goes through painstaking detail of citing not just the law but, of course, the facts that support the ruling that we believe we're entitled to as a matter of law.

And so for every factual statement that's in our

24

motion, there is a specific footnote reference to where that facts come from. And all of those facts here have been admitted into evidence.

So, Your Honor, on a high level we believe that the quiet title claim is ripe. The June Street property is described in the complaint. And the complaint describes who the trustee currently believes is the owner of the property. We believe that the complaint describes the purported adversity. And it seeks to determination about who owns the property. And it includes a prayer for the determination of the title against the adverse claims. And, Your Honor, we want to move forward in seeking relief on the quiet title.

And, Your Honor, on that point, on the quiet title, we believe that the June Street property is owned by the debtor and is his property of the debtor's bankruptcy estate because the June Street property is held by the second amended Klein living trust. And whether it's held by the Klein living trust, the marital deduction trust, or the survivor's trust, Your Honor, Mr. Klein is the trustee and the beneficiary on an income and a principal basis of all the trust as it sets forth in the trust itself. And he has unfettered discretion and control of what to do with those assets.

And so, as a self-settled trust, as this Court, I believe, already found in connection with the motion to join the necessary parties a couple of months ago, a self-settled

25

trust is statutorily precluded from shielding the June Street property or any other assets for that matter from creditors with claims against the debtor by virtue of any spendthrift clause.  And, Your Honor, We go through in detail.  We cite the case law in there.  But we believe that that is the sort of the essence of what is going on here and of the why we're entitled to the relief that we're seeking that this piece of property is property of the estate.  Whether it's held by the Klein living trust or the MDT for that matter or the survivor's trust, they all go to the debtor's control and beneficiary status under any of the hats or any of the roles that he holds under that trust.

THE COURT:  Thank you, Mr. Lucas.

Mr. Olson?

MR. LUCAS:  I have more to go on.  Do you want me to finish?

THE COURT:  Oh, I'm sorry.  I thought I didn't mean to cut you off.  You just took a pause.  And so I thought that was it, Mr. Lucas.  No, I --

MR. LUCAS:  Okay.  So, I mean, I'm trying to be brief, and that was just sort of the quiet title piece, Your Honor.  But in further support of the quiet title piece, Your Honor, and I won't go into excruciating detail on this either, but as we know, Your Honor, earlier in the case, the debtor sought an exemption with respect to the June Street property.  And the case law from the United States Supreme Court holds that no

26

property can be exempt and thereby immunized from claims unless it first falls within property of the estate.

And so Mr. Klein has a sort of a very, I think, curious, to say the least, sort of evolving story about the June Street property.  It's supposedly half in, half out.  And then when it got to the answer, it's all held by the MDT.  But, Your Honor, I don't understand.

And then at the same time, the debtor has said in his schedules, which were filed and signed under penalty of perjury, that in the ten years prior to the bankruptcy filing, that there had been no change or any transfer of his assets into a self-settled trust.

And so it's my understanding that the June Street property is held by the second amended trust or whatever subtrusts that are -- exist under there, Your Honor, they all point to Mr. Klein, his control, and his beneficial interest in the June Street property.  And as such, it should be considered and is property of the estate.

And, Your Honor, on to the next piece, the debtor's current spouse, Barbara -- And I'm using first names because everybody has the last name of Klein.  And so no disrespect is meant by that.  I'm just trying to keep people straight.  But Barbara purportedly has a life estate in the June Street property.  One small aside, the document that purportedly creates that life estate, it was granted directly, and it

Case 2:23-bk-10990-NB   Doc 1228   Filed 09/19/25   Entered 09/19/25 14:29:08   Desc
Main Document     Page 60 of 140
**Leslie Klein**

27

appears personally from the debtor himself but not in his capacity as trustee, which I would think would be the party that would be authorized to provide life estates with respect to the June Street property.  But nevertheless, Barbara admitted in her responsive discovery pleadings that the amended marital property agreement was never recorded, and as such, Your Honor, that interest can be avoided under 544 of the Bankruptcy Code.

And, Your Honor, with respect to the other defendants, whether it be the MDT or the survivor's trust, Your Honor, there is no documentation that has been recorded in the county of Los Angeles that we're able to determine that shows that the MDT, the survivor's trust, or any other entity for that matter or a person owns the June Street property.  The June Street property deed itself reflects who the owner is.  It's the only recorded document that outlines who owns the June Street property.

And out of an abundance of caution, we're seeking 544(a) relief with respect to all the other defendants because there has been nothing produced and there's nothing as far as that we've been able to uncover that shows that any interest, ownership interest with respect to the June Street property has been duly recorded as it must be.  And to the extent that they have some sort of interest, which we still haven't been able to uncover, it too or those too should be avoided, Your Honor,

28

under 544(a)(3) of the Bankruptcy Code.

And, Your Honor, I will leave it at that.  And I'm happy to answer any questions that the Court has.  But we do rely on our motion, all of the exhibits and references that are in the record, the points that are cited in our motion, and also our objections and responses to the objections filed by the defendants.

THE COURT:  Thank you.

Mr. Olson.

MR. OLSON:  Yes.  There are a number of critical points overlooked in the argument.  And the first is that, while the evidence presented by the trustee indicates that the house is owned by the credit trust, for some reason, the credit trust is not joined as a defendant.  So at least at this point the it falls in a 12(b)(6) basis.

THE COURT:  Mr. Olson, I want you to continue, but please state your argument again.

Mr. Crawford, your tile was lighting up, and I was having problems hearing Mr. Olson.  So Mr. Crawford, if you could please mute yourself unless you were going to argue because I want the record to be clear.

Mr. Olson, if you could repeat again what you said about the credit trust.

MR. OLSON:  Yes.  The recorded second amended trust, which has as explicitly an asset of that trust, is recorded.

29

And it provides that Erica Klein, her community interest goes to the marital deduction trust or the credit trust, depending on circumstances.

For some reason, the trustee has not joined the credit trust, although he has presented evidence showing that the property is held by the -- or for the benefit of the credit trust, several years of ledgers to that effect.  Under the circumstances -- and this is a quiet title action.  And the statute defining a quiet title action specifically requires that all parties having any claims must be named as named as defendants.  For some reason, the trustee has not seen fit to join them as defendants.  And so at least at this point, the motion fails simply because under Rule 12(b)(6).

Now they could certainly amend and state whatever claims they have against the credit trust.  But in the absence of having named them at all without any explanation as well as the failure to name the children, which I realize we had a motion on which deals with whether I had sufficient authority, standing, whatever under Rule 19, there has been no similar action by the trustee.  And in the absence of the credit trust having been joined, the Court can not at this time grant a motion for summary judgment against other parties.  There is an --

THE COURT:  So, Mr. Olson, I'm looking at the opposition that you filed on October 15th.  And I don't see any

30

argument regarding that the credit trust had to be joined.  You say on page 18, heading 4, the complaint omits to join necessary parties, the children and the beneficiaries of the marital deduction trust and credit trust.  But you didn't say the trust themselves were not joined.  You already litigated a joinder motion, which I denied.  But this is a new argument that you're making because that's not what's here.

MR. OLSON:  Your Honor, at the time when I filed that opposition, I did not realize that they had failed to name the credit trust.  I specifically referred to that problem in the joint report that we filed.  And failure to state -- in state nomenclature, failure to state a cause of action can be raised and should be dealt with at any time it appears.

THE COURT:  Someone is on the -- excuse me, Mr. Olson.

MR. OLSON:  Yes.

THE COURT:  Someone is on the phone.  And you need to mute yourself because you're interfering with the record. Unless you're appearing in this case, please mute yourself.

Mr. Lucas and Mr. Crawford, I see your hands are raised.  I'll give Mr. Olson a chance to finish his argument. Then I'll go in the order that I just mentioned.

Mr. Olson, please continue.

MR. OLSON:  Yes.  I also wanted to call to the attention of the Court -- and this does appear in my original opposition, at some points there was a typo in the section

31

number, but I think this situation falls under Probate Code 15304(b) which specifically indicates in an exception where the amount as to whether or not there is -- this is a self-settled trust, this -- insofar as the marital deduction trust and the credit trust are concerned, this is specifically a distribution of property from Erica, the deceased spouse, and is exempt from being swept in as property of a self-settled trust, the notion that this is -- this has to -- goes to some trusts, if you will, is Erica's property, not Leslie's property.  And anything resting on the idea that this is a self-settled trust by Leslie is simply specifically incorrect under California law, subsection B.  The materials that the trustee relies on would fall under subsection A.  But this is specifically exempted.

THE COURT:  Thank you, Mr. Olson.  I'll go to Mr. Crawford first actually because, Mr. Lucas, you are the movant. So you get the last word.

Mr. Crawford?  And Mr. Olson has already argued.  So I'm not going to allow you to reargue the same points.  If there's one or two points that you want to highlight, that's fine.

MR. CRAWFORD:  Thank you, Your Honor.  I heard your ruling on the motion to continue, and I appreciate that.

I want to say that for the record, that I think that despite the late hour of bringing this up, the question of the exclusive jurisdiction of the probate court, I think that with

32

respect to the allocation of properties between the trusts, that's a matter for the -- relating to the internal the operation of the trust.  And that's an issue which should be within the exclusive jurisdiction of the probate court.

The other thing is that with respect to Mr. Klein's unfettered access to the income and principal, despite the spendthrift provision argument that plaintiffs have made, this also relates to the internal affairs of the trust.  This relates to the power and authorities and benefits between Mr. Klein and the other beneficiaries.  This is also a matter that should be committed to the exclusive jurisdiction of the probate court.

And again, this is the state of the law.  And I appreciate that this was brought up at a late hour, but it was brought up.  And I believe that these -- that it was also raised in the opposition.  This should preclude a summary judgment at this point.  These questions create --

THE COURT:  Hold on.  Mr. Crawford, Mr. Crawford, where was the exclusive jurisdiction of the probate Court raised in the opposition?  Please cite the page and the line for me.

MR. CRAWFORD:  I'll withdraw that.  I'm not familiar enough with it.  I thought it had been raised in there.  And if it wasn't, it wasn't.  I apologize.

But in any event, even if it's not raised, it is a --

33

it is a legal point which should influence and direct this Court's ruling, I believe.  It is the state of the law or it isn't, but I believe it is.  And I believe that these are -- these raise disputed issues of material fact which should preclude summary judgment, the obvious ones being where the allocation of the June Street property goes.

There is one clear issue which is a disputed issue of fact based on the evidence before the Court now, which is whether the 2013 ledgers and the ledgers following that would show the allocation of the property to the subtrusts are effective or not.  This is actually addressed in the reply papers by plaintiffs.  They say the an issue is the credibility.  I believe they used the word credibility of the ledgers.  Well, if you're raising the issue of credibility of evidence, that creates -- that shows and concedes a disputed issue of fact.

THE COURT:  Thank you, Mr. Crawford.  So in terms of the motion for continuance, that's been denied.  I understand you disagree with the Court's ruling.  That's been denied.

In terms of this motion, Mr. Olsen has already argued. Again, I gave you leeway to argue one or two points.  I think we're getting past that now.  Now there's two attorneys arguing for the same side.  And it's definitely time to move on, Mr. Crawford.

As I mentioned, I have considered all of the facts,

34

all of the evidence, all of the arguments.  If there's anything further, briefly I'll allow you to address the Court.  But then I'm going to go back to Mr. Lucas.

MR. CRAWFORD:  The last thing I say is going to be that that what I had mentioned about them raising the credibility of the evidence is in the reply brief at page 7, starting at line 14.  They say that this is not credible.  If there's an issue of credibility, that raises a disputed issue of material fact.  And that should preclude summary judgment.  Thank you, Your Honor.

THE COURT:  Thank you, Mr. Crawford.

Mr. Lucas?

MR. LUCAS:  Thank you, Your Honor.  I'm going to go just a little bit of the opposite order that I intended because I want to go off of just exactly what Mr. Crawford was talking about of a disputed issue.

Your Honor, and I quote  TW Electric Service, Inc.  v. Pacific Electric contractors at 809 F.2d 626 at 630 (9th Cir. 1987).  Disputes over irrelevant or unnecessary facts will not preclude grant of summary judgment; rather, following of a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial.  It's our view, Your Honor, there are no facts that have been, Your Honor.

And so the opposing party cannot simply assert the

35

mere existence of some alleged factual dispute between the parties, nor can it rest upon the mere allegations or denials and pleadings.  And that's all that's happening here, Your Honor.  Thus, That's for an issue to be genuine, there must be real evidence such that a reasonable jury could reach a verdict in favor of the nonmoving party.  None of that's here, Your Honor in our view.

And so to try to sort of say that we're creating the credibility dispute, Your Honor, we're just pointing out that there is no evidence.  And this action that is apparently pending in LA Superior Court probate Division isn't a fact-finding.  It is a reformation action that is in violation of the automatic stay, which I will talk about later.

And Your Honor, as for the credit trust and whether or not the credit trust should or should not be a defendant in this action, one thing that's really -- just sort of just sort of jumps out at the plaintiff, the trustee, Your Honor, is if you look at docket number 41, I believe, which is the defendants' answer -- in the defendant's answer -- and remember, Your Honor, when the debtor filed his schedules and statements in the spring of 2023, then the debtor said that half June street property was owned by him personally, and the other half was owned by the marital deduction trust or the MDT.

But now the answer's filed, it doesn't say that the creditor trust owns it.  It says that the June Street property

36

is wholly owned by the MDT.  But there's no description or there are no documents.  It's just a conclusion.  It says this is how things are now.  There's no description or documents explaining about how it got there.  There might be some sort of statement that says non-estate assets were used to purchase the debtor's interest, and this is why the MDT wholly owns the property now.  We've never seen any of these documents.  These are just assertions, denials in attempts to try to create a factual dispute.

And Your Honor, as for -- Mr. Olson also said that after Erica died -- Erica died in December of 2012.  And in April of 2013, the second living -- the second amended Klein living trust, along with Erica's death certificate, was recorded.  The trust was recorded in the same fashion that it existed before her death.  And it exists today.  And so there was no event or transfer that was automatic by virtue of Erica's unfortunate death.

Instead, the trust documents in article 3, which is titled trust allocation after first spouse's death, outlines the rules and procedures the trustee, who is the debtor, may use to allocate and distribute property after Erica's death.  For example, article 3A of the Klein living trust provides the marital deduction trust shall consist of the minimum amount that will entirely eliminate or reduce as far as possible the federal estate tax after allowance of other deductions.

37

And so, Your Honor, you could find that reference at the request for judicial notice, Exhibit I, Article 3, pages 4 and 5.

THE COURT:  And I'm looking at that document, Mr. Lucas.  I have it in front of me.

MR. LUCAS:  Okay.  And then it also goes on to say that all trust may be funded in cash in kind, party in each.

And, Your Honor, the above-cited provisions of the Klein living trust do not provide that specific property would be transferred to the MDT or to the survivor's trust or the creditor's trust for that matter.  Instead, the distribution or allocation of property to any trust is dependent upon the minimum amount, which is a legal way to avoid taxation. Nothing controversial about that, but somebody has to do something.  It isn't automatic.  And nothing was done.  There was no determination made by the trustee, who was the debtor. Or the Klein -- and the Klein living trust didn't do anything, and everything just sort of sits where it is.

And remember, Your Honor, if even if all of the property was transferred to the marital deduction trust, Mr. Klein is -- I mean, the debtor, Your Honor, is the trustee of that trust who has unfettered discretion to use, sell, destroy. He can do anything he wants with it.  And, Your Honor, he's also the beneficiary.  And so it doesn't get them anywhere, in our view, even if it is in the MDT.

38

And so, Your Honor, I wanted to respond to those couple of points. And I will cede the podium now unless I have further questions after further argument.

THE COURT: Thank you. All right. I'm ready to rule.

The motion was amply briefed by both sides. So before the Court is a motion for summary judgment filed by the trustee. The Court has considered all of the evidence submitted by the trustee as well as the opposition submitted by the debtor and the evidence submitted in support of the opposition, as well as the reply and the evidence submitted in support thereof.

So the following facts are uncontroverted: The debtor filed a bankruptcy petition on February 22nd, 2023. It was a Chapter 11 case. On May '23, the U.S. Trustee's Office filed a notice of appointment of Chapter 11 trustee. And on that same day, the trustee accepted his appointment as Chapter 11 trustee.

On March 8th, 2023, the debtor filed schedules and statement of financial affairs. On Schedule AB, debtor listed the property at 322 North June Street, the property at issue here as fifty percent owned by debtor and fifty percent owned by the marital deduction trust of the debtor's deceased spouse, Erica Klein. According to the SOFA, in response to question 19, which asks within ten years before you filed for bankruptcy, did you transfer any property to a self-settled

39

trust or a similar device of which you are a beneficiary, debtor responded that he had not.

Schedule C property claimed as exempt indicated that the property was held in the marital deduction trust and that Barbara Klein, the debtor's current spouse, had a life estate interest in the property.

The debtor, in his individual capacity, and Barbara entered into a premarital agreement dated November 25th, 2013. The debtor, in his individual capacity, and Barbara entered into a first amendment to the premarital agreement dated November 25th, 2015 in which the debtor agreed that Barbara, quote, may also live at the house at North June Street, where the parties lived during her lifetime.

Schedule AB reflected that debtor listed a 678,391 exemption in the property under California Code of Civil Procedure 704.703. After litigation, however, the Court limited the debtor's exemption in the property to 189,050.

The real property deed for the property was recorded on December 14th, 1977 and reflects that it was owned by Leslie Klein and Erica Klein as trustees under the Klein living trust of 1975.

On April 18th, 1990, the debtor and his former spouse, Erica, created the second amended Klein living trust, which was recorded on April 13th, 2013. The living trust includes the property. Under the living trust, the debtor and Erica were

40

co-settlor, co-trustees, and co-beneficiaries of income and principal during their lifetime.

On December 12th, 2013, Erica died.  Under the living trust, upon Erica's death, the debtor became the surviving settlor and assumed the role of trustee.  Under the living trust, the trustee here, Klein, served as trustee for all trusts under this instrument.  Under the living trust, the debtor serves as trustee for the marital deduction trust.

Under the living trust, the marital deduction trust provides that the debtor is both the income and beneficiary -- income beneficiary and principal beneficiary.  Under the living trust, the marital deduction trust provides that trustee may use both the income from the marital deduction trust and principal of that trust for the benefit of the debtor.  Under the living trust, the marital deduction trust provides that the trustee, here the debtor, shall pay to or -- for the income beneficiary all net income of the trust in convenient installments at least annually.  Under the living trust, the marital deduction trust provides that the surviving spouse, here the debtor, shall pay to or for the principal beneficiary as much of the principal as is necessary for the principal beneficiary's health, education, or support to maintain the principal beneficiary's accustomed manner of living.

Under the living trust, the debtor serves as the trustee for the survivor's trust.  Under the living trust, the

41

survivor's trust provides that the debtor is both the income beneficiary and the principal beneficiary.  Under the living trust, the survivor's trust provides the trustee may use both the income from the survivor's trust and the principal of the survivor's trust for the benefit of the debtor.  Under the living trust, the survivor's trust provides that the trustee shall pay to or for the income beneficiary as much of the net income as the trustee considers necessary for the income beneficiary's health, education, support, comfort, welfare, or happiness to maintain, at a minimum the income beneficiaries accustomed manner of living.  Under the living trust, the survivor's trust provides that the trustee shall pay to or for the principal beneficiary as much of the principal as is necessary for the principal beneficiary's health, education, support, comfort, welfare, or happiness to maintain, at a minimum the principal beneficiary's accustomed manner of living.

Under the living trust, the marital deduction trust, survivor's trust, and any other trust created under the living trust, the trustee had the power to A, retain or abandon any property held by the trust, including the property; B manage, control, grant, auction, sell for cash or deferred payments with or without security, convey, exchange, partition, divide, improve, and repair trust property, including the trust property.  The living trust contains a spendthrift clause.

42

On May 29th, 2024, the plaintiff filed an amended complaint which is the operative pleading in this case.  As noted previously, it lists the second amended Klein living trust, marital deduction trust, survivor's trust, and Barbara Klein as defendants.

On July 12th, each of the defendants filed a consolidated answer.  In the answer, the defendants represent that the survivor's trust transferred its fifty percent interest in the property to the marital deduction trust.

Argument.  Sharp argues that the uncontroverted facts demonstrate that the elements of quiet title are matte.  He contends that the living trust and the associated underlying trusts, survivor's trust, marital deduction trust, and credit trust, were self-settled by Klein because Klein was the settlor of the living trust, the trustee and beneficiary of the subtrust, and has complete control over the living trust and subtrusts.

Sharp argues that generally, California law recognizes the validity of spendthrift trusts.  When a trust beneficiary, however, exercise excessive control over a trust, the trust assets are not protected by an anti-alienation provision in a spendthrift clause.  In situations where the settlor acts as the beneficiary, California law voids any spendthrift clause.  The trustee cites In re Salkin and Cutter v. Seror for this proposition.

43

Sharp contends that the facts here are analogous to those cases. And he asserts that because the Klein living trust and the subtrusts were all self-settled, any spendthrift clause doesn't protect the property, meaning that the property is property of the estate, regardless of which trust holds the property.

Sharp contends that Klein, when he included the property in his exemptions, admitted that the property is property of his estate. Sharp cites a Supreme Court case, Owen v. Owen, to support his position that a debtor cannot exempt property unless it is property of the estate.

Sharp highlights that Klein has not produced any evidence that the property was transferred from the living trust to any other trust or party, nor has he submitted any writing reflecting that the property was granted to another entity, as required by Cal Civil Code 109.2, and he should be judicially estopped from arguing the property is not property of the estate.

Sharp acknowledges that Klein claims Barbara holds an interest in the property which Klein asserts is not subject to avoidance. Sharp argues, however, that under 544(a)(3), he is a bona fide purchaser for value, holding a senior and perfected security interest. And he may avoid any junior unrecorded interest Barbara claims. Sharp contends that Klein has failed to produce any written recorded document demonstrating that

44

Barbara or any subtrust hold an interest in the property. Sharp contends that he has strong armed powers under 544(a)(3) which allow him to avoid any transfers that would be junior to a bona fide purchaser.

According to Sharp, under California law, a BFP without actual or constructive notice may take free of a prior equitable interest or constructive interest in the property. Sharp argues that as of the petition date, any interest Barbara may have obtained through a premarital agreement was not recorded, and he can avoid any such interest based on his strong arm powers because marital agreements involving real property are unenforceable against a bankruptcy estate unless they are perfected by recordation in accordance with applicable law.

Sharp contends that because the premarital agreement between Barbara and Klein was not recorded, he would not have had constructive notice of Barbara's alleged interest in the property.

Sharp argues that 544(a)(3) authorizes him to avoid the trust interests in the property.  He contends there are no documents recorded or produced that the subtrusts were granted any interest in the property.  And Klein admitted in the SOFA that during the ten years before filing bankruptcy, he had not transferred any property to a self-settled trust.

Therefore, Sharp argues that he holds a senior and

45

perfected interest in the property regarding any subtrust.  He contends that even if, however, there were unrecorded documents purporting to convey the property, it would not make a difference because examining the recorded real estate records regarding the property on the petition date would not have provided the necessary constructive notice to a BFP.  He asserts that Klein's estate owns the entire property.  To the extent that Barbara, the marital deduction trust, the survivor trust, or any other entity holds an interest in the property, he alleges that 550 permits Sharp to recover the property.

Sharp concludes by stating that Klein's defenses are irrelevant or invalid because, 1, there's no evidence demonstrating that any entity other than the living trust holds an interest in the property; and 2, Klein admitted in the SOFA that he had not transferred the property to any self-settled trust.  Even if, however, a trust holds an interest in the property, it is self-settled.  And Sharp, as a BFE, is entitled to avoid any claim to interest.

Klein responds that the MDT -- whoever is on the phone, please mute yourself.  I'll ask the court recorder to mute you.

Klein responds that the MDT and credit trust are not self-settled; rather, he contends, they were funded entirely by Erica from her share of community property.  He asserts that Erica provided him with a life estate in the property, and it

46

was never intended to be an income-producing property. According to Klein, the MDT acquired the "second half" of the property from the survivor's trust in exchange for other proceeds from Erica. Klein cites Probate Code 15305 to support his position that when a settlor of a trust is also a beneficiary, a creditor can only reach the maximum amount, not exceeding the amount of the settlers proportionate contribution.

Klein contends that because the MDT and credit trust were entirely funded by Erica, the amount attributable to him is zero. He distinguishes Cutter and Salkin and argues that the MDT and credit trust were not self-settled because they were established by the living trust provisions and were funded by Erica.

Klein asserts that Sharp's belief that the property was not properly conveyed to the living trust through a written deed is mistaken. He contends that a State of Heggstad, a 1993 California Appellate Court case, establishes that a proper declaration is sufficient to create a trust in real property and a written deed is unnecessary. He claims that judicial estoppel is inapplicable. It doesn't address the property because it belongs to the MDT and credit trust.

Klein contends that Sharp has failed to show any right to avoid the MDT, credit trust, or Barbara's interest in the property under 544(a)(3). According to Klein, Sharp has not

47

demonstrated why the ledger is associated with the living trust, which were provided in response to interrogatories, do not establish that the property belongs to the MDT and/or credit trust or why a transaction inside a family trust must be recorded.

Klein argues that Sharp cannot set aside Barbara's interest in the property under 544.  He relies in In re Zubenko, a 2015 case contending that constructive or inquiry notice in accordance with Civil Code 19 can defeat a trustee's BFP claim and open a notorious possession of real property is sufficient to put a purchaser on notice.

Klein contends that Barbara's presence at the property would put anyone on notice of her rights, and a potential buyer would not be a BFP.

Finally, Klein argues that the necessary parties, the beneficiaries, were not joined in this manner.

In reply, Schaap argues that the undisputed facts show that as of the petition date, the property is owned by the living trust, and for the reasons stated in the motion, summary judgment should be granted.  He contends that the living trust and any subtrusts are self-settled and wholly controlled by Klein, which the Court found when ruling on the joinder motion.

Sharpe argues that the living trust provisions do not predetermine allocation or distribution of trust property among the subtrusts.  Rather, he contends that the living trust

48

provisions outline the procedures Klein may use to allocate and distribute assets after Erica died.  But the living trust did not mandate how Klein was to distribute or allocate any assets, including the property.

Sharp asserts there's no evidence to show that any trust property was transferred to the trust.  According to Sharp, the subtrust did not hold any property.  They were not properly formed because the existence of a trust res is necessary for formation of a trust res.

Sharp contends that despite Klein's assertions, that the ledgers show that the property was transferred to the MDT and/or credit trust.  There is no right in complying with Cal Civil Code 1092, and the ledgers were never recorded.

Sharp highlights that the recording of the living trust is likewise insufficient because the living trust did not effectuate any transfer or ownership of the property.

Sharp reiterates that Barbara's interest in the property is not recorded, and her presence at the property is insufficient for a constructive notice.

Sharp questions the efficacy of the amendment to the premarital agreement because Klein, in his individual capacity, didn't have the power or authority to convey any interest in the property.

Finally, sharp notes that Klein's arguments regarding joinder have already been addressed and rejected by the Court.

49

Legal standard:  FRBP 7056 provides that FRCP 56 applies to motions for summary judgment in adversary proceedings.  The Court shall grant summary judgment if the movant shows there is no genuine dispute of any material fact, and the movement is entitled to judgment as a matter of law.

A fact is material for purposes of Rule 56 if it might affect the outcome of the suit under governing law.  The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

When the movant has carried the burden, the opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead to a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ruling on an MSJ.

When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment.

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for the motion and identifying those portions of the pleadings,

50

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

If the nonmoving party carries its burden, summary judgment should not be granted -- excuse me.  If the moving party carries its burden, summary judgment should not be granted if the nonmoving party can point to sufficient evidence supporting the claimed factual dispute such that a fact-finder is needed to resolve the parties' differing versions of the truth at trial.

The nonmoving party may not merely question the credibility of the movant to foreclose summary judgment. Rather, the nonmoving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing there is a genuine issue for trial.

When ruling on a summary judgment motion, the Court must view the underlying facts in the light most favorable to the party opposing the motion.

Analysis.  The Court has already addressed the request for judicial notice.  Now turning to the substance of the motion.

There's a fundamental issue that the Court must next address:  who owns the property.  In Klein's schedule AB, he listed the property, indicated it was valued at 4.9 million. The value of his portion was 2.45.  And fifty percent is held

**Leslie Klein**

51

by the debtor and fifty percent held by his, Erica's irrevocable marital deduction trust.  He expanded on that information by stating debtor's principal residence paid in full.  The property is held in the marital deduction trust. The debtor's current spouse, Barbara Klein, has a life estate in the residence.

On schedule C, Klein claimed a 678,391 exemption in the property.  In Klein's statement of financial affairs, he responded no to question 19 which states within ten years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?  Klein signed all of his schedules and SOFA under penalty of perjury.

In the answer, Klein indicated that the marital deduction trust owned 100 percent of the property, and neither the survivor trust nor bankruptcy estate held any interest in the property except for Klein's life estate.

In the opposition, Klein claims that based on the ledger dated 1 -- excuse me, 9/10/13 titled Klein marital deduction trust dated 4/8/90 as of 9/10/13, the MDT wholly owned the property.

In the opposition, Klein also claims that the 2014 to 2023 ledgers, which are titled marital deduction trust dated 4/8/90 as of 12/31/14 to 12/31/23, demonstrate that the credit trust wholly owns the property.

52

Sharp contends that Klein is judicially estopped from arguing that the property is not property of the estate based on his claiming a homestead exemption in the property.  Klein responds that Sharp didn't address that the property belongs to the MDT and/or credit trust.  In the reply, Sharp contends that despite Klein's various assertions regarding ownership of the property, the undisputed facts show that as of the petition date, the property was owned by the living trust, and Klein was the trustee and beneficiary of the living trust and the subtrust.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position and then later seeking an advantage by taking a clearly inconsistent position.  The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.

Courts consider three factors when determining if judicial estoppel applies; whether 1, the party's later position is clearly inconsistent with its earlier position; 2, whether the party succeeded in persuading the court to accept its earlier position; and 3, whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped.  The Ninth Circuit has limited application of judicial estoppel to cases where the court

53

relied on or accepted the party's previous inconsistent position.

A few months after Klein filed bankruptcy, Erica and Joseph Vago objected to Klein's claimed homestead exemption of 678,391.  Klein opposed the objection and filed a declaration in support of the opposition in which he acknowledged claiming a 679,391 homestead exemption in the property.  He stated that the property was his primary residence, indicated that given his financial situation, his homestead exemption is necessary for support of his wife and him.  And he indicated he wasn't seeking to hold on to his previous lifestyle, but he was merely trying to protect his homestead exemption.  He signed that declaration under penalty of perjury.

After considering the parties' pleadings and arguments during a hearing on the Vago objection, when all parties were afforded an opportunity to be heard, the Court entered an order allowing Klein a 189,050-dollar exemption in the property. According to the Supreme Court, a person cannot claim an exemption in property unless that property is part of the bankruptcy estate of that person.

Here, Klein's current position is clearly inconsistent with his earlier position.  He now claims either the MDT or credit trust owns 100 percent of the property, whereas when he filed his schedules and opposed the Vagos' objection, he claimed that fifty percent of the property was part of his

54

bankruptcy estate.  Klein succeeded in persuading the Court to accept his earlier position, and the Court allowed Klein a 189,050-dollar homestead exemption in the property.

Finally, Klein would obtain an unfair advantage if he were not estopped and if the Court were to credit his current position that the MDT and/or credit trust owns 100 percent of the property Klein previously represented to this Court and the Court relied on his representation that he owned percent of the property when it allowed his homestead exemption.

Therefore, the Court finds that Klein is judicially estopped from claiming that the MDT and/or credit trust owns 100 percent of the property.  And as Klein represented in his schedules, he at least owns fifty percent of the property via his interest in the Klein living trust.

Looking at the remaining fifty percent interest, sharp argues the property is wholly owned by the living trust, and there are no documents evidencing that the property is owned by any other party or trust.  Sharp contends that even if the subtrust own part of all of the property, as Klein asserts, because the spendthrift provision in the living trust is invalid, the entire property is property of the estate.

Klein responds that the living trust provides that upon Erica's death, her community property interest would go to either the MDT or credit trust.  Klein contends that the ledgers demonstrate that the MDT and/or creditor trust to own

55

the property.  Klein asserts that Sharp did not provide any authority that the transfer of the property to the trust had to be via a recorded deed.

In reply, Sharp reiterates there's no evidence that the property was ever transferred from the living trust, and the living trust did not predetermine allocation and distribution of trust assets.

Sharp argues that the ledgers are unrecorded, are insufficient to transfer real property, and no document exists reflecting that the property was granted to any of the subtrusts as required by Cal Civil Code 1090.

The evidence regarding the living trust and subtrusts are as follows:  On 4/8/90, Klein and his then wife, Erica, as settlors, executed the living trust.  Klein and Erica were We're co-trustees and income and principal beneficiaries of the living trust.  Upon the death of Klein or Erica, the living trust provided for the creation of three subtrusts to be funded as follows, a surviving spouse trust, which would consist of the surviving spouse's interest in community property.  From the remainder of the deceased spouse's interest in community trust estate after payment of the spouse's taxes and expenses, a MDT was to be created which would consist of the minimum amount that would eliminate or reduce the federal estate tax, and a credit trust which would consist of the balance of the deceased spouse's community property trust estate.  The living

56

trust provided that all trusts "may be funded in cash or kind."

Regarding the MDT, the living trust provided that the income and principal beneficiary would be the surviving spouse. The trustee would pay, and here the trustee is Klein, to the surviving spouse, who is also Klein, all net income of the MDT. If the trustee considers the income insufficient, the trustee here Klein, would pay as much of the principal as is necessary for the surviving spouse's health, education, or support to maintain the surviving spouse's accustomed manner of living. And again the surviving spouse is Klein.

And the surviving spouse's death, the trustee shall distribute any accrued interest to the surviving spouse's estate and any remaining principal, according to the credit trust distribution provisions.

Regarding the credit trust, the living trust provides that the income and principal beneficiary would be the surviving spouse, here Klein.  After the surviving spouse passes, Klein and Erica's children, Kenneth, Sherry, Richard, and Jason, are the beneficiaries.  The trustee, that's Klein, shall pay to the surviving spouse the income of the credit trust.  If the trustee considers the income insufficient, the trustee, here Klein, shall pay as much of the principal as is necessary for the surviving spouse's health, education, and support to maintain the surviving spouses accustomed manner of living.  Upon the death of the surviving spouse, the remainder

57

of the credit trust was to be distributed to the children of the settlors.  And those are Klein's children and Erica's children.

Klein misconstrues the trustee's stance regarding the property.  The trustee's argument is not whether or when the property was transferred to the living trust.  The trustee acknowledges that the property was transferred to Klein and Erica as trustees of the 1975 Klein living trust in 1977. Rather, the trustee contends there's no evidence demonstrating if or when the property was transferred from the Klein living trust to the MDT or if it were transferred to any other trust or party  By the living trust express terms, the survivor's trust and the MDT would only be funded after one of the settlors of the living trust, Klein or Erica, died.  It's undisputed that Erica died in 2012.  And it was only after that date that the survivor's trust and/or marital deduction trust could have been established and/or funded.

Klein argues that the Estate of Heggstad supports his position that a written deed of trust is not required to transfer a property into a trust.  The Court finds that Klein's reliance on this case is unpersuasive.

In that case, Heggstad executed a will naming his son, Glenn, as executor and a revocable living trust, naming Halvard as trustee and Glenn as a successor of trustee.  The Heggstad family trust identified all the trust property in an attached

58

schedule, which included a property located at 100 Independence Drive in Menlo Park.  That property remained in Halvard's name, and there was no grantee conveying the property to the trust. All other property listed in the family trust schedule have been formally transferred via deeds to the family trust.

One month after executing the estate documents, Halvard married Nancy Rhodes.  Nancy was not provided for in the will or the family trust.  The party agreed she was entitled to one-third of Halvard's estate under California la, but nothing under the trust.

After Halvard died, Glenn was appointed as executor of Halvard's estate and became successor trustee of the family trust.  Shortly thereafter, the family trust documents were recorded.  During probate, Glenn petitioned the court for instructions regarding the disposition of the property, claiming the language in the family trust which stated Halvard Heggstad declares that he has set aside and transferred to Halvard Heggstad in trust as trustee the property described in schedule A attached to this instrument was sufficient to place the property into the trust.  Nancy objected and argued that there was not a properly executed document.  The probate court determined that the language in the family trust was sufficient to create a trust in the subject property.

Nancy appealed, challenging the probate court's ruling that an executed grant deed was not required to transfer the

59

property to the trust.  The Court of Appeals held that the declaration was sufficient to transfer the property to the family trust.  According to the Appellate Court, a written declaration was sufficient to create a revocable living trust. The Appellate Court noted that when trust property is real estate, the statute of frauds requires that a declaration of trust be in writing and signed by the trustee.  Because Halvard's declaration satisfied these requirements and there was no requirement that there be a separate writing conveying the property, the court decided that a valid trust was created for the property.

The Court finds that Heggstad is inapplicable here. Sharp is not questioning the creation of the living trust or that the living trust holds the property.  Instead, Sharp's position is that there is no evidence that demonstrates the property was transferred from the living trust to any other trust or to any other person, in contrast to the declaration of Heggstad which was attached to the trust documents specifically mentioned -- to the trust documents, and it was specifically mentioned the property and was recorded.  The ledgers are unrecorded, are separate from the living trust.  They're not attached to that document, nor are they mentioned in it.  And they do not contain any evidence of a transfer.

According to Cal Civil Code 1092, a grant of an estate and real property may be made in substance as follows:  AB

60

grant to CD all that real property situated in whatever county and witness my hand.  Neither the 2013 ledger nor the 2014-2023 ledgers contain any language that could be construed as complying with this provision of the Civil Code.

Further, as noted, when ruling on the joinder motion, there is no evidence before the Court that upon Erica's passing, the MDT survivor trust or credit trust were actually created or funded with any assets.  The California Probate Code establishes that trust property is required to create a trust. Absent trust res, there is no trust.

Additionally, if any such trusts had been created, there would have had to have been TINs issued by the IRS.  And if the subtrust had been created and funded, they would have had to have filed tax returns.  But there's no evidence of that in the record.  Because there is no evidence that the MDT and/or credit trust were created or funded with the property, the Court finds that fifty percent of the property, which was Erica's community property at the time she died, is held by the living trust and is part of Klein's bankruptcy estate.

Even if the property had been transferred to either the MDT or credit trust -- and as noted, the Court finds there is no evidence that that occurred -- the next issue that the Court must address is whether the spendthrift provision in the living trust is valid and would prevent the trustee from reaching the trust corpus.

61

When a bankruptcy case is filed, an estate is created and includes all legal or equitable interests of the debtor and property.  And interest of the debtor and property becomes property of the estate.  Notwithstanding any provision in an agreement, transfer instrument, or applicable non-bankruptcy law that restricts conditions -- that restricts or conditions transfer of such interests by the debtor.  541(c)(2), however, provides that a restriction on the transfer of a beneficial interest in the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

The living trust is a self-settled trust which is a trust in which the settlor is also the person who is to receive the benefits of the trust.

A spendthrift provision in a trust is a clause that prohibits the beneficiary's interest from being assigned and prevents a creditor from attaching that interest.

To the extent a debtor holds a beneficial interest in a trust, that beneficial interest becomes property of the estate unless it is protected by a valid spendthrift provision.

Although spendthrift provisions are typically valid under California law, they are invalid when the settlor is also a beneficiary of the trust.

Here, the Klein living trust contains the following provisions:  No beneficiary shall anticipate a signed

62

encumbrance subject to any creditor claim or to legal process, any interest in principle or income before its actual receipt by any beneficiary.  The beneficial and legal interest in this trust, its principal, and its income, shall be free from interference or control of any beneficiary's creditor and shall not be subject to claims of any such creditor or liable to the attachment, execution, bankruptcy, or any other process of law.

Sharp argues that the living trust and the subtrusts are self-settled, provide Klein with absolute control over the trust and discretion over the trust's assets.  And they are statutorily precluded from shielding assets through a spendthrift clause.

Klein responds that the MDT and credit trusts were not self-settled and self-funded by Klein, but instead by Erica. And he contributed zero to those trusts.

Sharp replies that the living trust and subtrusts are self-settled and wholly controlled by Klein for his benefit. And the spendthrift provision does not yield any property held by these trusts from the creditor.  The living trust provided that Klein and Erica were the settlors of the living trust, and Klein and Erica were the co-trustees and beneficiaries of the income and principal of the living trust.  It is undisputed that the living trust was funded with community property.

Upon Erica's death, the living trust provided that the trust were to be created.  And the MDT and Credit Trust were to

63

be funded with Erica's proportion of community property. According to the living trust, the subtrusts were to be controlled by Klein as trustee.  And Klein was the income and principal beneficiary of the subtrust.

Klein, as sole trustee and beneficiary of the subtrust, had full and complete control of the use, sale, and distribution of the subtrust assets.  As trustee and sole beneficiary, Klein was and is able to use any and all principal and income from the living trust in each one of the sub trusts for his own benefit.  Because Klein was the settlor, trustee, and beneficiary of the living trust, and assuming any subtrusts were ever created and funded, which, as the Court noted, there is no evidence to demonstrate that that actually occurred, Klein is now the trustee and sole beneficiary of the subtrust. And the Court finds that the subtrusts, like the living trust, are self-settled trusts.

Sharpe argues that Cutter and Salkin demonstrate that the spendthrift provision in the living trust is invalid because Klein is settlor, trustee, and beneficiary of that trust and the subtrusts.

Klein attempts to distinguish Cutter and Salkin, arguing that the MDT and credit trusts were not self-settled by Klein but rather by Erica.  Sharp replies that the Court held that the living trust and subtrusts are self-settled in the ruling on the Joinder motion.

64

The Court has previously ruled that the living trusts and subtrusts are self-settled, and it did so in the context of the joinder motion.  So the Court is not going into details on the cases.  But the Court finds that both Cutter and Salkin are almost identical here.

The Court finds that the spendthrift provision of the living trust is invalid.  Upon Erica's death, Klein was to allocate the community property to either the survivor's trust, the MDT, or the credit trust.  Klein, as a settlor, the trustee, and the beneficiary of the living trust, and the trustee and beneficiary of each of the subtrusts, had and has complete control over the use, the distribution of assets which are intended for his own benefit.  This control and power renders the spendthrift provision contained in the living trust invalid for that trust and for the subtrust as well if they were ever created and funded.

Turning to Probate Code 15305, Klein cites Probate Code 15305 and argues that because the MDT and/or credit trust were entirely funded by Erica, the amount attributable to him is zero.  And the property is not property of the estate. Sharpe doesn't address this issue.

The Court notes that Klein's reference to 15305, which addresses children and child and spousal support, was most likely a scrivener's error, and the Court believes that Klein meant to cite Probate Code 15304.  The Court does not find

65

Klein's reliance on this probate code section persuasive.  The BAP in Cutter held that under 541, the Bankruptcy Court should have granted summary judgment regarding the entire Cutter corpus, including the-- I can't say it, the Ermatinger property, the BAP recognized that ordinarily Section 15304(b) only permits the portion of a trust corpus that is contributed by the debtor beneficiary to be included in the bankruptcy estate.  According to the BAP, this exclusion is inapplicable when the debtor beneficiary has control over and is able to reach trust property which was contributed by others.

When a debtor beneficiary has this control and reach, the estate is entitled to the maximum amount the trust can distribute to the debtor beneficiary.  Because Cutter had complete control over the creditor trust for his benefit, the spendthrift clause was invalid, and the entire Cutter trust corpus, including the property at issue, was part of the bankruptcy estate.

Because the living trust here provided that Klein was the trustee and the principal and interest beneficiary and he had complete control of the trust assets, the trust corpus, including the trust property, is property of the bankruptcy estate, regardless of whether Erica contributed any or all of the assets to the living trust or any other subtrust.

Klein, as settlor and trustee and beneficiary of the living trust, had and did have complete control over the

66

property held by the living trust in all distributions.  Klein also had and has complete control over the use, distribution, and benefit for the entire trust corpus purportedly held by the subtrusts.  Therefore, any amount contributed by the -- to the sub trust by Erica would not be shielded by Probate Code 15306(4)(b) or B from being included in Klein's bankruptcy estate.

Turning to the actual causes of action in the complaint, to state a claim for quiet title, a complaint must include the subject property's description.  Plaintiffs allege title to the property, the adverse claim against which a determination is sought, and the date as of which the determination is sought, and a prayer for the determination of the title against the adverse claim.  The Court finds that the complaint meets all of the requirements for a quiet title action.  Here, the complaint describes the property providing both its legal description and street address.  It seeks a determination that, as of the petition date, Klein's estate holds 100 percent interest in the property.  It indicates that adverse claims for which it seeks a determination that neither the MDT, Barbara, or any other party holds an interest in the property.  And the trustee indicates he is entitled to a judicial determination under Section 760.010, quieting the property's title as of the petition date.

Based on the analysis above and allegations in the

67

complaint, the Court finds that there is no genuine issue of material fact, and the trustee has established all elements of quiet title.

Turning to the trustee's avoidance powers, Sharp argues he is a BFP for value, holding a senior ownership in the property, and he can avoid any junior unrecorded interest in the property.  As a BFP under 544(a), Sharp contends he can avoid any interest Barbara or any of the subtrust claim in the property because, as of the petition date, there were no recorded documents evincing any such interest or providing constructive notice to Sharp.

Klein responds that Sharp cannot set aside Barbara's interest in the property under 544(a) because it was conveyed via a premarital agreement and forced amendment to the premarital agreement.

Klein cites Zubenko and contends that Barbara's presence at the property would put anyone on constructive notice or inquiry notice, and any buyer would not be a BFP.

In the reply, Sharp reiterates there's no recorded documents demonstrating Barbara or the subtrust hold any interest in the property, and there are no facts that would provide a BFP with constructive notice of Barbara's or any subtrust's purported interest.

544(a) provides the trustee shall have as of the commencement of the case and without regard to any knowledge of

68

the trustee or of any creditor the rights, powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by A BPF of real property.  Section 544 creates the strong arm powers of the trustee, one of which close a trustee with the status of a BFP of real property.  Although 544(a)(3) provides the trustee takes the power of a BPF over real property without regard to any knowledge of the trustee or any creditor, that does not override provisions of state law which impute notice of claims to real estate.  State law determines whether a trustee has constructive notice, or whether the trustee's status as a BFP will defeat the rights of persons against whom a trustee seeks to assert powers.

Under California law, every conveyance of real property must be recorded in order to be valid against a BFP of the same property who in good faith and for valuable consideration records first.  That's CCC 1214.

CCC 19 defines constructive notice as every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which by prosecuting such inquiry he might have learned such fact.

In Zubenko, Peter Zubenko bought real property in Sacramento encumbered by a note and deed of trust.  He defaulted and a trustee sale was initiated.  A notice of

69

default, election to sell was recorded with the Sacramento Recorder in May 2014.  And a notice of the trustee sale was also recorded with the Sacramento Recorder in August of that year.

Herbert U.S. Real Estate Company was the winning bidder at the trustee's sale and received a trustee's deed upon sale.  Shortly after the trustee's deed was issued, but before recording it, Zubenko filed a Chapter 13 petition.  Herbert sought relief from stay to record the trustee's deed.  Zubenko opposed, and the Bankruptcy Court held an initial hearing during which the issue of avoidance of Herbert's unrecorded interest was raised.

According to the court, although California is a race-notice jurisdiction, Cal Civil Code 1217 provides that unrecorded instruments are valid between those who have notice of the unrecorded instrument.  This means that a person who has actual notice of circumstances to put a prudent person upon inquiry notice requiring a particular fact has constructive notice of that fact and can defeat a trustee's claim under 544. The Zubenko court concluded that based on the notice of default election to sell and notice of trustee sale, which were recorded with the Sacramento Recorder, a prudent purchaser would have inquired regarding the status of the Sacramento property.  Therefore, the court found that the trustee could not use his strong arm powers to avoid Herbert's unrecorded

70

instrument.

This Court finds that client's reliance on Zubenko is unpersuasive.  In contrast to Zubenko, where the court found that the recordings with the Sacramento Recorder were sufficient to provide constructive notice, it is undisputed that neither the premarital agreement nor the first amendment to that agreement were ever recorded.  Although Klein contends that Barber's presence in the property would put anyone on notice of her rights, he provided no authority to support his contention that a spouse here or wife who lives in a property with her spouse, is sufficient to provide notice of the wife's purported interest in the property.

Rather, many courts have held that when title holder jointly occupies property with a stranger to title claiming an interest in the property, the occupancy by the stranger to the title does not provide constructive notice of his or her interest.

In such circumstances, the law regards possession as being with the title holder, and there is no presumption of an interest of the joint occupant inconsistent with the title in the other joint occupant.  And that's in re Thomas, 147 B.R. 526 (9th Cir. 1992).  As the BAP noted, this rule is often applied when the joint occupants are related to one another.

Based on the facts here, the Court finds there is no evidence demonstrating that Sharp had constructive notice that

71

Barbara, or anyone else for that matter other than Klein, had any interest in the property.

Regarding the MDT and survivor trust, sharp argues he holds a senior perfected ownership in the property because there are no recorded documents memorializing the MDT and/or survivor's trust interest in the property, nor are there any recorded documents that would put him on constructive notice of the MDT and/or survivor's trust's alleged interest in the property.

Klein responds the living trust created the survivor trust and subtrust upon Erica's death, and the ledgers associated with the living trust demonstrate that the subtrust hold 100 percent of the property and are enough to put Sharp on notice and removed any backup claim.  Sharp reiterates this no evidence showing that the property was ever transferred, the ledgers are insufficient to demonstrate a property transfer, and the ledgers were never recorded.

Per Civil code 1214, every conveyance of real property must be recorded or is void against a subsequent purchaser who in good faith and for valuable consideration records first. Although Klein contends the ledgers demonstrate that the property was transferred to the MDT, none of the ledgers were recorded.  And there are no recorded documents evidencing that any entity other than Klein's bankruptcy estate or the living trust holds an interest in the property.  Therefore, Sharp, as

72

a BFP, may use his strong arm powers under 544 to avoid any interest the survivor trust and/or MDT might have in the property.

In the opposition, Klein argues that joinder of Klein's children as beneficiaries of the credit trust is necessary, because without them, a ruling on this issue could lead to a non-binding result and would be a waste of judicial resources.

Sharp replies that Klein's arguments have already been addressed and rejected.  The Court held a hearing about two months ago on Klein's joinder a motion and made explicit, detailed findings regarding why joinder of the children was unnecessary and denied that motion.

So in conclusion, the Court finds that based on the evidence presented, there is no genuine issue of material fact. The living trust owns 100 percent of the property.  It is appropriate to quiet title in favor of the trustee.  And the motion for summary judgment is granted in its entirety.

Mr. Lucas, you are the prevailing party.  I'll ask that you upload an order within seven days.

MR. LUCAS:  Your Honor, thank you.  We will upload an order.  And I propose that it contains some language providing access or control over this property so that the trustee can ensure that the debtor moves out of the property so that we can sell it, Your Honor.

73

THE COURT:  That would be a logical inference, Mr. Lucas, but that wasn't a request in the motion at all.

MR. LUCAS:  Okay, Your Honor.

THE COURT:  I appreciate why you want to do that.  I truly do.  But I don't think it would be fair to add that to the order unless it were something that were had been requested in the motion and that the debtor had a fair opportunity to respond to.

So I am granting the motion for summary judgment.

MR. LUCAS:  Understood, Your Honor.  Understood.

THE COURT:  And you don't need to reiterate everything that was said.  It will be for the reasons stated on the record the motion is granted.  That's matter number 22.

Matter number 22 is the status conference in this matter.  It's moot based upon the ruling.

All right.  Mr. Lucas, anything further?

MR. LUCAS:  Yes, Your Honor.  I do have one other request, Your Honor.  And I don't think it's controversial.

So Mr. Olson and Mr. Crawford today made it clear that they commenced an action in LA Superior Court in the probate division.  I believe Your Honor recited the case number.  It's case number 24STPB13777.  It's cited in their motion to continue.

And, Your Honor, this is not a fact-finding lawsuit.  This is an action that was filed to reform documents to remove

74

property of the estate.  This is a willful, intentional, clear violation of the automatic stay, Your Honor.  And I am asking Your Honor to enter an order sua sponte or on my oral motion here to require Mr. Crawford and Mr. Olson and the debtor who's behind all this to dismiss the action.  Mr. Sharp wasn't even named in the action.  Mr. Sharp wasn't served in the action.  This is something that the debtor, Mr. Klein, has no control, no authorization to do.  Nevertheless, he continues to do it.

Your Honor, we think it is a waste of time, a waste of estate resources to have to file a motion to enforce the automatic stay which is supposed to be automatic.  But Mr. Olson and now Mr. Crawford and the debtor, they do not care about court orders, Your Honor.  And I'm sorry if I'm a little bit heated, Your Honor, but this is got to stop.  The debtor has no regard for this Court's order, no regard for the process.  And if it's not Mr. Olson, now it's Mr. Crawford.  And if it's not going to be one of them, it will be one of the other nine attorneys that the debtor sort of rifles through.

Using property of the estate to pay Mr. Crawford -- and I don't think Mr. Crawford has filed an attorney disclosure, as he's here representing the debtor.  And I know that Mr. Olson hasn't even though I've asked him to do it countless number of times, Your Honor.  Your Honor, it just has to stop.  And we're requesting that the Court enter an order requiring the action to be stayed, dismissed, removed with

75

prejudice because it is a violation.  And it's void in itself.

THE COURT:  Mr. Crawford?

MR. CRAWFORD:  Yeah.  Thank you, Your Honor.

First of all, obviously this is not really properly before the Court today I think.  I would ask for at least an opportunity to -- maybe for the Court to set an order to show cause or something like that, at least an opportunity to respond.

Second, of course, in light of today's ruling, we might reconsider the position ourselves.  But I think it would be appropriate at least, respectfully, to give us an opportunity to respond before making any kind of decisions with respect to my actions or with respect to the probate petition.

THE COURT:  Mr. Lucas?

MR. LUCAS:  Your Honor, may I just -- one thing.  As a Courtesy, my partner, Mr. Dulberg, has talked to Mr. Crawford. We sent Mr. Crawford and Mr. Olson an email about this.  This isn't a surprise.

And, Your Honor, Mr. Klein has been in bankruptcy since February of '23.  This is not -- this is blatant disregard.  And there can be nothing more appropriate now than ensuring that estate resources are preserved and that Mr. Crawford and Mr. Olson and the debtor are not permitted to make an end-run around this Court's ruling today and going to continue to prosecute this action which is violating the

76

automatic stay and harming property of the estate and causing the trustee to have to incur unnecessary fees and expenses.

There's nothing more to say.  A request for another date is nothing more than a request to delay and to continue the confusion and the purposefulness of the debtor's actions to date.

THE COURT:  And I understand your frustration, Mr. Lucas.  Obviously, I've been presiding over this for almost two years.  I know what's happened in every hearing in every case. I'm aware of the revolving door of attorneys that Mr. Klein has had.  And that has created an issue separate and apart from this.

I do have to ensure that the process is fair.  So what I will do, I'll have you draft it and upload it.  I'll set a hearing on an order to show cause why Mr. Olson and Mr. Crawford and Mr. Klein should not be sanctioned for knowingly violating the automatic stay.

MR. LUCAS:  And, Your Honor, I'm uploading this order. Am I to understand that Your Honor will fill in the date and time then?

THE COURT:  That's correct.  Upload the order.  I'll fill in a date and time.  There will be an opportunity to respond, but it will be an order to show cause.  It will be very narrow.  It will be focused on why filing that probate proceeding -- and I'm looking for the -- I had the motion

77

before me, and now I can't locate it because there's a lot of documents on my bench.  But why filing that probate proceeding, which I believe was maybe about a week ago, is not a violation of the stay and why Mr. Olson and Mr. Crawford and Mr. Klein should not be sanctioned for violating the automatic stay.

MR. DULBERG:  Your Honor, I don't know if -- this is Mr. Dulberg.

I don't know if Mr. Crawford will offer it up.  We have the case number for the probate proceeding.  We could -- if Your Honor wanted to read it into the record, I'm happy to.

THE COURT:  I read it into the record when I was ruling on the continuance motion.

MR. DULBERG:  That's what I had thought.

THE COURT:  Yeah.

MR. DULBERG:  Thank you.

THE COURT:  But with moving papers around, Mr. Crawford -- oh, here it is.  It's 24STPB13777.  And I believe that was filed on December 11th -- on December 9th.  It was within about a week.

MR. DULBERG:  I believe it's -- I believe it's the 9th.

THE COURT:  Yeah.  Thank you.

Mr. Olson, you have your hand raised.  And then we'll conclude this hearing.

MR. OLSON:  Yes.  The Court had ordered the attorney

78

for the trustee to prepare and order on the motion for summary judgment. And I would request that the order include that it does not apply to parties who are not named as defendants and specifically including the credit trust.

THE COURT: Mr. Olson, that request is denied. The order will be for the reasons stated on the record, the motion for summary judgment is granted. That's all it's going to say. And the record will speak for itself.

All right. So in terms of how we proceed, Mr. Lucas, you're going to upload an order on the summary judgment ruling. Again, it will be very brief. I wouldn't want you to try to recreate all of the ruling.

You'll also upload a order for an order to show cause why filing what is captioned a verified petition for order conveying trust assets into the second amended MDT and credit trust dated 4/8/90 of Erica Klein is not a violation of the automatic stay and why Mr. Olson and Mr. Crawford and Mr. Klein should not be sanctioned for that filing.

MR. LUCAS: Understood, Your Honor. And we thank you for your time.

THE COURT: Thank you.

(Whereupon these proceedings were concluded at 12:25 PM)

79

I N D E X

RULINGS:                                          PAGE LINE

Motion to continue is denied.                      22    17

Motion for summary judgment is granted.            72    18

80

C E R T I F I C A T I O N

I, Michael Drake, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

/s/ MICHAEL DRAKE, CER-513, CET-513

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date: December 26, 2024

Leslie Klein

December 18, 2024

## A

**AB (6)**
18:14,18;38:19;
39:14;50:23;59:25
**abandon (1)**
41:20
**able (5)**
27:12,21,24;63:8;
65:9
**above (1)**
66:25
**above-cited (1)**
37:8
**absence (3)**
29:15,20;50:3
**Absent (1)**
60:10
**absolute (1)**
62:9
**abundance (1)**
27:18
**abuses (1)**
20:17
**accept (2)**
52:21;54:2
**accepted (2)**
38:16;53:1
**access (2)**
32:6;72:23
**accordance (2)**
44:13;47:9
**according (14)**
5:8;38:23;44:5;
46:2,25;48:6;52:16;
53:18;56:13;59:3,24;
63:2;65:8;69:13
**accrued (1)**
56:12
**accustomed (5)**
40:23;41:11,16;
56:9,24
**acknowledged (1)**
53:6
**acknowledges (2)**
43:19;57:7
**acquired (1)**
46:2
**action (19)**
4:13;6:12;22:25;
29:8,9,20;30:12;
35:10,12,16;66:8,16;
73:20,25;74:5,6,6,25;
75:25
**actions (2)**
75:13;76:5
**acts (1)**
42:22
**actual (6)**
8:23;44:6;62:2;
66:8;68:19;69:17
**actually (7)**

11:25;12:1;16:11;
31:15;33:11;60:7;
63:13
**add (5)**
9:13,15,20;12:13;
73:5
**addition (1)**
10:24
**Additionally (1)**
60:11
**address (11)**
7:5;18:15,19;21:13;
34:2;46:21;50:23;
52:4;60:23;64:21;
66:17
**addressed (4)**
33:11;48:25;50:19;
72:10
**addresses (2)**
21:12;64:23
**addressing (1)**
16:3
**admissions (3)**
13:17,18;50:1
**admit (1)**
13:19
**admits (1)**
14:10
**admitted (8)**
13:23;14:9;15:7;
24:3;27:5;43:8;44:22;
45:14
**adopt (1)**
49:20
**advanced (1)**
22:12
**advantage (4)**
52:12,13,24;54:4
**adversary (8)**
9:1;13:13,25;14:8,
11,23,25;49:2
**adverse (4)**
24:11;66:11,14,20
**adversity (1)**
24:9
**affairs (8)**
18:2,5;19:17,19;
20:4;32:8;38:19;51:8
**affect (1)**
49:7
**affidavits (1)**
50:2
**affirm (1)**
19:2
**affirmative (1)**
11:10
**afforded (1)**
53:16
**afternoon (1)**
9:11
**again (11)**
4:19;9:18;11:24;
17:23;22:22;28:17,

22;32:13;33:21;
56:10;78:11
**against (13)**
16:20;21:4;22:7;
24:11;25:3;29:15,22;
44:12;66:11,14;
68:12,15;71:19
**ago (10)**
15:23;16:7;17:24;
18:25;21:6,17;22:3;
24:25;72:11;77:3
**agree (7)**
6:15,15,16,17,19;
9:20;15:2
**agreed (2)**
39:11;58:8
**agreement (13)**
13:16,17;27:6;39:8,
10;44:9,15;48:21;
61:5;67:14,15;70:6,7
**agreements (1)**
44:11
**aid (1)**
4:19
**allegations (2)**
35:2;66:25
**allege (1)**
66:10
**alleged (3)**
35:1;44:17;71:8
**alleges (1)**
45:10
**allocate (4)**
36:21;48:1,3;64:8
**allocation (11)**
18:15;19:2;21:12,
13;32:1;33:6,10;
36:19;37:12;47:24;
55:6
**allow (4)**
10:8;31:18;34:2;
44:3
**allowance (1)**
36:25
**allowed (2)**
54:2,9
**allowing (1)**
53:17
**almost (4)**
21:6;22:7;64:5;
76:8
**along (1)**
36:13
**although (7)**
14:13;29:5;61:21;
68:6;69:13;70:7;
71:21
**always (1)**
49:23
**amend (1)**
29:14
**amended (17)**
14:7;16:19,20;

22;32:13;33:21;
56:10;78:11
18:14,18;19:8;20:1;
21:11;24:16;26:14;
27:5;28:24;36:12;
39:23;42:1,3;78:15
**amendment (6)**
13:16;21:16;39:10;
48:20;67:14;70:6
**among (2)**
20:10;47:24
**amount (11)**
11:20;31:3;36:23;
37:13;46:6,7,10;
55:23;64:19;65:12;
66:4
**ample (1)**
21:22
**amply (1)**
38:5
**analogous (1)**
43:1
**Analysis (2)**
50:19;66:25
**and/or (13)**
47:3;48:12;52:5;
54:6,11,25;57:16,17;
60:16;64:18;71:5,8;
72:2
**ANGELES (2)**
4:1;27:12
**announced (1)**
21:3
**annually (1)**
40:18
**answer's (1)**
35:24
**anti-alienation (1)**
42:21
**anticipate (1)**
61:25
**apart (1)**
76:11
**apologize (2)**
5:17;32:24
**apparently (1)**
35:10
**appeal (9)**
5:9,14,15,18,18;
6:10,11,20,20
**appealed (1)**
58:24
**Appeals (1)**
59:1
**appear (1)**
30:24
**appearing (3)**
4:18;5:4;30:18
**appears (4)**
20:22;21:5;27:1;
30:13
**Appellate (3)**
46:18;59:3,5
**applicable (4)**
20:8;44:13;61:5,10

**application (2)**
16:5;52:25
**applied (1)**
70:23
**applies (2)**
49:2;52:19
**apply (1)**
78:3
**appointed (2)**
6:1;58:11
**appointment (3)**
14:3;38:15,16
**appreciate (5)**
14:21;23:9;31:22;
32:14;73:4
**appropriate (4)**
12:17;72:17;75:11,
21
**April (7)**
8:6;18:17,17;21:17;
36:12;39:22,24
**arbitrary (1)**
20:18
**argue (4)**
11:21;12:3;28:20;
33:21
**argued (5)**
11:6;18:4;31:17;
33:20;58:20
**argues (21)**
21:11;42:10,18;
43:21;44:8,19,25;
46:11;47:6,15,17,23;
54:16;55:8;57:18;
62:8;63:17;64:18;
67:5;71:3;72:4
**arguing (5)**
13:1;33:22;43:17;
52:2;63:22
**argument (15)**
13:13;14:19;19:21;
22:12,16;23:15;
28:11,17;30:1,6,20;
32:7;38:3;42:10;57:5
**arguments (5)**
21:22;34:1;48:24;
53:14;72:9
**arm (4)**
44:11;68:4;69:25;
72:1
**armed (1)**
44:2
**Aron (13)**
9:14,17,18,18;10:6,
14;11:13,16,19;12:3,
5,8,10
**Aron's (2)**
11:1;12:14
**around (4)**
9:23;23:5;75:24;
77:16
**article (3)**
36:18,22;37:2

eScribers, LLC

Leslie Klein

December 18, 2024

**aside (4)**
26:24;47:6;58:17;
67:12
**assert (3)**
34:25;52:23;68:13
**asserting (1)**
52:12
**assertions (3)**
36:8;48:10;52:6
**asserts (10)**
11:24;19:11;43:2,
20;45:7,24;46:15;
48:5;54:19;55:1
**asset (1)**
28:25
**assets (19)**
19:8;20:1;21:18;
24:22;25:2;26:11;
36:5;42:21;48:2,3;
55:7;60:8;62:10,11;
63:7;64:12;65:20,23;
78:15
**assigned (2)**
7:16;61:16
**assist (2)**
4:12;18:21
**associated (3)**
42:12;47:1;71:12
**assume (1)**
23:10
**assumed (1)**
40:5
**assuming (1)**
63:11
**Attached (5)**
19:5;57:25;58:19;
59:18,22
**attaching (1)**
61:17
**attachment (1)**
62:7
**attempt (2)**
15:3;21:13
**attempted (1)**
21:18
**attempts (2)**
36:8;63:21
**attention (1)**
30:24
**Attorney (3)**
16:12;74:20;77:25
**attorneys (3)**
33:22;74:18;76:10
**attributable (2)**
46:10;64:19
**auction (1)**
41:22
**August (3)**
17:5,6;69:3
**authorities (1)**
32:9
**authority (4)**
29:18;48:22;55:2;

70:9
**authorization (1)**
74:8
**authorized (1)**
27:3
**authorizes (1)**
44:19
**automatic (10)**
35:13;36:16;37:15;
74:2,11,11;76:1,17;
77:5;78:17
**avoid (14)**
16:17,22;37:13;
43:23;44:3,10,19;
45:18;46:24;67:6,8;
68:2;69:25;72:1
**avoidance (3)**
43:21;67:4;69:11
**avoided (2)**
27:7,25
**aware (2)**
11:6;76:10

**B**

**back (3)**
6:25;22:20;34:3
**backup (1)**
71:14
**balance (1)**
55:24
**bankruptcy (27)**
5:23;14:11;21:16;
24:15;26:10;27:8;
28:1;38:13,25;44:12,
23;51:10,16;53:3,20;
54:1;60:19;61:1;62:7;
65:2,7,17,21;66:6;
69:10;71:24;75:19
**BAP (5)**
20:5;65:2,5,8;70:22
**Barbara (20)**
16:21;26:20,23;
27:4;39:5,7,9,11;
42:4;43:19,24;44:1,8,
16;45:8;51:5;66:21;
67:8,20;71:1
**Barbara's (9)**
13:17;44:17;46:24;
47:6,12;48:17;67:12,
16,22
**Barber's (1)**
70:8
**based (12)**
11:24;15:9,16;33:8;
44:10;51:18;52:2;
66:25;69:20;70:24;
72:14;73:15
**basically (3)**
6:19;11:10,14
**basis (3)**
24:20;28:15;49:24
**bears (1)**

49:23
**became (2)**
40:4;58:12
**becomes (2)**
61:3,19
**behalf (1)**
4:25
**behind (1)**
74:5
**belabor (1)**
22:22
**belief (1)**
46:15
**believes (3)**
24:7;50:2;64:24
**Bello (23)**
4:14,23,24;5:7,8,14,
17,22,25;6:3,5,7,18;
7:4,6,13,19,23;8:3,11,
13,17,19
**Bellow (1)**
4:25
**belongs (3)**
46:22;47:3;52:4
**Ben (1)**
6:24
**bench (2)**
7:24;77:2
**beneficial (5)**
26:16;61:8,18,19;
62:3
**beneficiaries (12)**
18:3,7;19:3;20:13;
30:3;32:10;41:10;
47:16;55:15;56:19;
62:21;72:5
**beneficiary (39)**
20:11;24:19;25:10;
37:24;39:1;40:10,11,
11,17,20;41:2,2,7,13;
42:15,19,23;46:6;
51:12;52:9;56:3,16;
61:23,25;62:3;63:4,5,
8,11,14,19;64:10,11;
65:7,9,11,13,19,24
**beneficiary's (7)**
40:22,23;41:9,14,
16;61:16;62:5
**benefit (8)**
29:6;40:14;41:5;
62:17;63:10;64:13;
65:14;66:3
**benefits (2)**
32:9;61:14
**best (2)**
8:4;10:19
**beyond (1)**
50:13
**BFE (1)**
45:17
**BFP (12)**
44:5;45:6;47:10,14;
67:5,7,18,22;68:5,11,

15;72:1
**bidder (1)**
69:6
**bit (2)**
34:14;74:14
**blatant (1)**
75:20
**blatantly (1)**
49:19
**bona (2)**
43:22;44:4
**both (12)**
5:10;11:7,20,22;
22:8;38:5;40:10,13;
41:1,3;64:4;66:17
**bought (1)**
68:23
**BPF (2)**
68:3,7
**BR (2)**
20:5;70:21
**brief (4)**
4:22;25:19;34:6;
78:11
**briefed (1)**
38:5
**briefing (3)**
15:19,20;17:13
**briefly (1)**
34:2
**briefs (1)**
11:7
**bringing (1)**
31:24
**broad (1)**
20:14
**brought (3)**
11:10;32:14,15
**burden (6)**
11:23;13:6;34:21;
49:10;50:4,6
**buyer (2)**
47:13;67:18

**C**

**Cal (6)**
19:15;43:16;48:12;
55:11;59:24;69:14
**calendar (3)**
4:12;7:17;8:16
**CALIFORNIA (13)**
4:1;20:7;31:11;
39:15;42:18,23;44:5;
46:18;58:9;60:8;
61:22;68:14;69:13
**Call (2)**
4:3;30:23
**called (1)**
4:5
**came (1)**
11:6
**can (27)**

15;72:1
4:16;7:8;8:5,6;
11:3;13:12;14:12,15;
15:1;16:14;26:1;27:7;
29:21;30:12;35:2;
37:23;44:10;46:6;
47:9;50:7;65:12;67:6,
7;69:19;72:23,24;
75:21
**capacity (4)**
27:2;39:7,9;48:21
**caption (2)**
19:5,7
**captioned (1)**
78:14
**care (1)**
74:12
**carried (2)**
11:23;49:10
**carries (2)**
50:4,6
**case (28)**
7:1,14,17;8:9;
14:11;18:21,22;20:6,
8,12;25:5,23,25;
30:18;38:14;42:2;
43:9;46:18;47:8;
57:21,22;61:1,10;
67:25;73:21,22;76:9;
77:9
**cases (6)**
7:22;19:20;43:2;
52:25;64:4;68:21
**cash (3)**
37:7;41:22;56:1
**cause (5)**
30:12;75:7;76:15,
23;78:13
**causes (1)**
66:8
**causing (1)**
76:1
**caution (1)**
27:18
**CCC (2)**
68:17,18
**CD (1)**
60:1
**cede (1)**
38:2
**certainly (5)**
7:3;8:5;16:6;21:19;
29:14
**certificate (1)**
36:13
**challenging (1)**
58:24
**chambers (1)**
8:15
**chance (2)**
16:2;30:20
**change (2)**
15:2;26:11
**changing (1)**

eScribers, LLC

52:16
**Chapter (4)**
38:14,15,16;69:8
**characterization (1)**
11:14
**child (1)**
64:23
**children (9)**
29:17;30:3;56:18;
57:1,2,3;64:23;72:5,
12
**Cir (4)**
20:6,17;34:18;
70:22
**Circuit (3)**
20:19;21:2;52:24
**circumstances (5)**
29:3,8;68:19;69:17;
70:18
**cite (3)**
25:4;32:20;64:25
**cited (4)**
19:20;20:6;28:5;
73:22
**cites (5)**
42:24;43:9;46:4;
64:17;67:16
**citing (2)**
15:5;23:22
**Civil (9)**
39:15;43:16;47:9;
48:13;55:11;59:24;
60:4;69:14;71:18
**claim (11)**
24:5;45:18;47:10;
53:18;62:1;66:9,11,
14;67:8;69:19;71:14
**claimed (5)**
39:3;50:8;51:7;
53:4,25
**claiming (5)**
52:3;53:6;54:11;
58:16;70:14
**claims (18)**
17:25;18:11,15,20;
24:11;25:3;26:1;
29:10,15;43:19,24;
46:20;51:18,22;
53:22;62:6;66:20;
68:9
**clarify (1)**
21:18
**clause (8)**
25:4;41:25;42:22,
23;43:4;61:15;62:12;
65:15
**clear (4)**
28:21;33:7;73:19;
74:1
**clearly (3)**
52:14,20;53:21
**client (3)**
11:2,2;22:22

**clients (1)**
5:10
**client's (1)**
70:2
**close (1)**
68:5
**co-beneficiaries (1)**
40:1
**Code (21)**
19:15,18;27:8;28:1;
31:1;39:15;43:16;
46:4;47:9;48:13;
55:11;59:24;60:4,8;
64:17,18,25;65:1;
66:5;69:14;71:18
**comfort (2)**
41:9,15
**commenced (1)**
73:20
**commencement (1)**
67:25
**comments (1)**
22:25
**committed (1)**
32:11
**community (10)**
29:1;45:24;54:23;
55:19,20,25;60:18;
62:23;63:1;64:8
**Company (1)**
69:5
**complaint (14)**
14:7;16:16,19;17:3;
24:6,6,8;30:2;42:2;
66:9,9,15,16;67:1
**complete (8)**
17:3;42:16;63:6;
64:12;65:14,20,25;
66:2
**complexity (1)**
18:22
**complying (2)**
48:12;60:4
**concedes (1)**
33:15
**concerned (2)**
19:19;31:5
**conclude (1)**
77:24
**concluded (2)**
69:20;78:22
**concludes (1)**
45:11
**conclusion (2)**
36:2;72:14
**Conclusively (1)**
18:11
**concurrently (1)**
11:24
**conditions (2)**
61:6,6
**conference (7)**
5:13;7:8;9:1;10:7;

12:15;17:5;73:14
**confirm (1)**
18:25
**confusion (1)**
76:5
**connection (1)**
24:24
**consider (3)**
10:11;21:3;52:18
**considerable (1)**
22:5
**consideration (2)**
68:17;71:20
**considered (4)**
23:1;26:17;33:25;
38:7
**considering (2)**
21:2;53:14
**considers (3)**
41:8;56:6,21
**consist (4)**
36:23;55:18,22,24
**consolidated (1)**
42:7
**constructive (17)**
44:6,7,17;45:6;
47:8;48:19;67:11,17,
22;68:11,18,20;
69:18;70:5,16,25;
71:7
**construed (1)**
60:3
**contact (1)**
8:15
**contain (2)**
59:23;60:3
**contained (1)**
64:14
**contains (5)**
13:15;19:18;41:25;
61:24;72:22
**contending (1)**
47:8
**contends (25)**
42:12;43:1,7,24;
44:2,15,20;45:2,23;
46:9,17,23;47:12,20,
25;48:10;52:1,5;
54:18,24;57:9;67:7,
16;70:7;71:21
**contention (1)**
70:10
**contents (1)**
14:14
**context (1)**
64:2
**continuance (22)**
15:23;16:1;17:24;
18:22;19:25;20:14,
15,18,20,22,23,24;
21:1,5,20,25;22:2,8,
11,13;33:18;77:12
**continue (19)**

5:12;7:8,12,23;8:4,
14;10:7;12:18;15:15;
17:17;21:24;22:17,
23;28:16;30:22;
31:22;73:23;75:25;
76:4
**continues (1)**
74:8
**continuing (1)**
21:4
**contractors (1)**
34:18
**contradicted (1)**
49:19
**contrast (2)**
59:17;70:3
**contributed (5)**
62:15;65:6,10,22;
66:4
**contribution (1)**
46:8
**control (19)**
24:22;25:10;26:16;
41:22;42:16,20;62:5,
9;63:6;64:12,13;65:9,
11,14,20,25;66:2;
72:23;74:7
**controlled (3)**
47:21;62:17;63:3
**controversial (2)**
37:14;73:18
**convenient (1)**
40:17
**convey (3)**
41:23;45:3;48:22
**conveyance (2)**
68:14;71:18
**conveyed (2)**
46:16;67:13
**conveying (5)**
19:8;20:1;58:3;
59:9;78:15
**convinced (1)**
7:1
**copy (2)**
14:5,6
**corpus (6)**
60:25;65:4,6,16,20;
66:3
**co-settlor (1)**
40:1
**co-trustees (3)**
40:1;55:15;62:21
**counsel (2)**
7:16;18:20
**countless (1)**
74:23
**county (2)**
27:11;60:1
**couple (4)**
10:12;13:12;24:25;
38:2
**course (2)**

23:23;75:9
**Court (202)**
4:3,4,16,21;5:2,6,7,
12,14,20,21,24;6:2,
14,16,19,20;7:3,5,11,
21,25;8:4,12,14,18,
20,22;9:4,7,12,17;
10:5,9,11;11:5,9,13,
18;12:2,4,6,9,11,17,
20;13:5,10,19,21,23;
14:10,10,12,13,21;
15:8,14,17,17,18,20;
16:13,16;17:5,9,13,
20;18:4,8,9,10,16,25;
19:6,12,12,16,20;
20:14,17,24;21:3,7,9,
15,21,23;22:1,2,5,9,
11,15,17;23:1,2,6,9,
14;24:23;25:12,16,
25;28:3,8,16;29:21,
24;30:14,16,24;31:14,
25;32:4,12,18,19;
33:8,17;34:2,11;
35:11;37:4;38:4,6,7;
39:16;43:9;45:20;
46:18;47:22;48:25;
49:3,20,24;50:16,19,
22;52:21,25;53:16,
18;54:1,2,5,7,8,10;
57:20;58:14,21;59:1,
3,5,10,12;60:6,17,21,
23;63:12,15,23;64:1,
3,4,6,22,24,25;65:2;
66:14;67:1;69:10,13,
20,24;70:2,3,24;
72:10,14;73:1,4,11,
20;74:13,24;75:2,5,6,
14;76:7,21;77:11,14,
16,22,25;78:5,21
**Courtesy (1)**
75:16
**courts (3)**
21:3;52:18;70:13
**Court's (9)**
11:14;18:11;20:6;
21:19;33:2,19;58:24;
74:15;75:24
**cover (1)**
19:22
**Crawford (34)**
16:12;18:21,22,24;
28:18,19;30:19;
31:15,17,21;32:18,18,
22;33:17,24;34:4,11,
15;73:19;74:4,12,16,
19,20;75:2,3,16,17,
23;76:16;77:4,8,17;
78:17
**create (7)**
15:4;32:17;36:8;
46:19;58:23;59:4;
60:9
**created (14)**

Leslie Klein

39:23;41:19;55:22;
59:10;60:8,11,13,16;
61:1;62:25;63:12;
64:16;71:10;76:11
**creates (3)**
26:25;33:15;68:4
**creating (1)**
35:8
**creation (2)**
55:17;59:13
**credibility (8)**
33:13,13,14;34:6,8;
35:9;49:15;50:12
**credible (1)**
34:7
**credit (50)**
18:13;19:1,9,14;
20:2;28:13,13,23;
29:2,4,6,15,20;30:1,4,
10;31:5;35:14,15;
42:13;45:22;46:9,12,
22,24;47:4;48:12;
51:24;52:5;53:23;
54:5,6,11,24;55:24;
56:13,15,20;57:1;
60:7,16,21;62:13,25;
63:22;64:9,18;72:5;
78:4,15
**creditor (11)**
35:25;46:6;54:25;
61:17;62:1,5,6,19;
65:14;68:1,8
**creditors (1)**
25:2
**creditor's (1)**
37:11
**critical (1)**
28:10
**cross-motion (4)**
10:14,25;11:9,24
**curious (1)**
26:4
**current (5)**
26:20;39:5;51:5;
53:21;54:5
**currently (2)**
7:25;24:7
**cut (1)**
25:17
**Cutter (9)**
42:24;46:11;63:17,
21;64:4;65:2,3,13,15

**D**

**date (18)**
7:25;10:7,7;12:16;
16:6;44:8;45:5;47:18;
52:8;57:16;66:12,18,
24;67:9;76:4,6,19,22
**dated (7)**
19:9;39:8,10;51:19,
20,23;78:16

**dates (1)**
5:12
**day (2)**
23:3;38:16
**days (4)**
6:23;7:24;17:11;
72:20
**deadline (3)**
10:23;17:11,13
**deadlines (1)**
17:6
**deal (1)**
9:2
**deals (1)**
29:18
**dealt (1)**
30:13
**death (13)**
36:13,15,17,19,21;
40:4;54:23;55:16;
56:11,25;62:24;64:7;
71:11
**debtor (63)**
6:9,12;14:5;15:23;
17:8,15,16,19,24,25;
24:14;25:3,23;26:8;
27:1;35:20,21;36:20;
37:16,21;38:9,12,18,
19,21;39:2,7,9,11,14,
22,25;40:4,8,10,14,
16,20,24;41:1,5;
43:10;51:1;61:2,3,7,9,
18;65:7,9,11,13;68:2,
3;72:24;73:7;74:4,7,
12,14,18,21;75:23
**debtor's (11)**
5:18;24:15;25:10;
26:19;36:6;38:22;
39:5,17;51:3,5;76:5
**deceased (4)**
31:6;38:22;55:20,
25
**DECEMBER (6)**
4:1;36:11;39:19;
40:3;77:18,18
**decided (3)**
18:3,8;59:10
**decides (1)**
21:7
**decision (1)**
18:11
**decisions (1)**
75:12
**declaration (11)**
13:14;18:23;19:5;
46:19;53:5,13;59:2,4,
6,8,17
**declarations (1)**
10:24
**declares (1)**
58:17
**deduction (32)**
16:21;18:12;19:1,9,

14;20:2;24:18;29:2;
30:4;31:4;35:23;
36:23;37:20;38:22;
39:4;40:8,9,12,13,15,
19;41:18;42:4,9,13;
45:8;51:2,4,15,20,23;
57:16
**deductions (1)**
36:25
**deed (12)**
14:6;27:15;39:18;
46:17,20;55:3;57:19;
58:25;68:24;69:6,7,9
**deeds (1)**
58:5
**default (2)**
69:1,20
**defaulted (1)**
68:25
**defeat (3)**
47:9;68:12;69:19
**defendant (3)**
15:2;28:14;35:15
**defendants (15)**
9:6,19,23;12:1;
13:15;16:25;27:9,19;
28:7;29:11,12;42:5,6,
7;78:3
**defendants' (5)**
13:18;14:24;15:1,3;
35:19
**defendant's (2)**
13:18;35:19
**defense (1)**
20:21
**defenses (1)**
45:11
**deferred (1)**
41:22
**defines (1)**
68:18
**defining (1)**
29:9
**definitely (1)**
33:23
**delay (4)**
20:22;21:5,19;76:4
**deliberately (1)**
52:16
**demonstrate (9)**
42:11;50:3;51:24;
54:25;63:13,17;
71:12,16,21
**demonstrated (2)**
22:14;47:1
**demonstrates (1)**
59:15
**demonstrating (5)**
43:25;45:13;57:9;
67:20;70:25
**denial (4)**
20:17;21:1;22:11,
13

**denials (2)**
35:2;36:8
**denied (6)**
17:9;30:6;33:18,19;
72:13;78:5
**denies (1)**
22:17
**denying (1)**
11:19
**dependent (1)**
37:12
**depending (1)**
29:2
**depositions (1)**
50:1
**derive (1)**
52:23
**described (2)**
24:6;58:18
**describes (3)**
24:6,8;66:16
**description (4)**
36:1,3;66:10,17
**despite (4)**
31:24;32:6;48:10;
52:6
**destroy (1)**
37:22
**detail (3)**
23:22;25:4,22
**detailed (1)**
72:12
**details (1)**
64:3
**determination (10)**
20:3;24:9,10;37:16;
66:12,13,13,18,20,23
**determinations (1)**
49:15
**determine (4)**
19:13;20:15,19;
27:12
**determined (1)**
58:22
**determines (1)**
68:10
**determining (1)**
52:18
**device (2)**
39:1;51:11
**diametrical (1)**
10:16
**diametrically (1)**
10:17
**died (8)**
36:11,11;40:3;48:2;
57:14,15;58:11;60:18
**difference (1)**
45:4
**different (2)**
4:9;49:18
**differing (1)**
50:9

**diligent (1)**
20:21
**direct (1)**
33:1
**directly (2)**
20:11;26:25
**disagree (3)**
11:13,16;33:19
**disallowing (1)**
14:4
**disclosure (1)**
74:21
**discovery (3)**
17:3,6;27:5
**discretion (5)**
20:15,17;24:21;
37:22;62:10
**discuss (1)**
11:3
**discussing (1)**
9:22
**discussions (1)**
6:9
**dismiss (1)**
74:5
**dismissed (1)**
74:25
**disposition (1)**
58:15
**dispositive (1)**
17:7
**dispute (8)**
15:4;20:12;35:1,9;
36:9;49:4,8;50:8
**disputed (5)**
33:4,7,15;34:8,16
**disputes (2)**
20:10;34:19
**disregard (1)**
75:21
**disrespect (1)**
26:21
**distinguish (1)**
63:21
**distinguishes (1)**
46:11
**distribute (5)**
36:21;48:2,3;56:12;
65:13
**distributed (1)**
57:1
**distribution (8)**
31:5;37:11;47:24;
55:7;56:14;63:7;
64:12;66:2
**distributions (1)**
66:1
**divide (1)**
41:23
**Division (2)**
35:11;73:21
**docket (10)**
5:15;13:14,25;

14:23,25;15:6;16:10;
17:2;23:21;35:18
**doctrine (2)**
52:11,14
**document (9)**
19:6,7;26:24;27:16;
37:4;43:25;55:9;
58:21;59:22
**documentation (1)**
27:11
**documents (24)**
13:15,20;14:12,13,
15;15:5;36:2,3,7,18;
44:21;45:2;54:17;
58:6,13;59:18,19;
67:10,20;71:5,7,23;
73:25;77:2
**done (2)**
6:4;37:15
**door (1)**
76:10
**doubt (1)**
49:12
**draft (1)**
76:14
**drawing (1)**
49:16
**Drive (1)**
58:2
**due (4)**
9:9;17:14,15;18:21
**Dulberg (23)**
4:10,11,18;8:25;
9:5,10,13,14,20;10:9,
12;11:8,12;12:13,19;
13:2,3;75:16;77:6,7,
13,15,20
**duly (3)**
14:5,6;27:23
**during (6)**
39:13;40:2;44:23;
53:15;58:14;69:11
**dust (1)**
11:1

**E**

**earlier (7)**
6:13;8:5;25:23;
52:20,22;53:22;54:2
**early (2)**
4:6;7:20
**easier (1)**
4:17
**education (5)**
40:22;41:9,14;56:8,
23
**effect (3)**
11:12;18:6;29:7
**effective (1)**
33:11
**effectiveness (1)**
18:12

**effectuate (1)**
48:16
**efficacy (1)**
48:20
**eight (1)**
8:2
**either (7)**
10:7;14:11;25:22;
53:22;54:24;60:20;
64:8
**election (2)**
69:1,21
**Electric (2)**
34:17,18
**elements (2)**
42:11;67:2
**eleventh (1)**
21:6
**eliminate (2)**
36:24;55:23
**else (2)**
4:7;71:1
**email (1)**
75:17
**encumbered (1)**
68:24
**encumbrance (1)**
62:1
**end-run (1)**
75:24
**enforce (1)**
74:10
**enforceable (2)**
61:9,10
**enough (2)**
32:23;71:13
**ensure (2)**
72:24;76:13
**ensuring (1)**
75:22
**enter (2)**
74:3,24
**entered (4)**
5:16;39:8,9;53:16
**entire (6)**
6:9;45:7;54:21;
65:3,15;66:3
**entirely (4)**
36:24;45:23;46:10;
64:19
**entirety (1)**
72:18
**entitled (7)**
23:24;25:6;45:17;
49:5;58:9;65:12;
66:22
**entity (5)**
27:13;43:16;45:9,
13;71:24
**equitable (3)**
44:7;52:11;61:2
**Erica (32)**
4:25;19:9;29:1;

31:6;36:11,11;38:23;
39:20,23,25;40:3;
45:24,25;46:4,10,14;
48:2;53:3;55:13,14,
16;57:8,14,15;62:14,
20,21;63:23;64:19;
65:22;66:5;78:16
**Erica's (15)**
31:9;36:13,17,21;
40:4;51:1;54:23;
56:18;57:2;60:6,18;
62:24;63:1;64:7;
71:11
**Ermatinger (1)**
65:4
**error (1)**
64:24
**essence (1)**
25:6
**establish (2)**
18:11;47:3
**established (3)**
46:13;57:17;67:2
**establishes (2)**
46:18;60:9
**estate (53)**
21:8;24:15;25:8;
26:2,18,23,25;36:25;
39:5;43:5,9,11,18;
44:12;45:4,7,25;51:5,
16,17;52:2;53:20;
54:1,21;55:21,23,25;
56:13;57:18;58:6,9,
12;59:6,24;60:19;
61:1,4,20;64:20;65:8,
12,17,22;66:7,18;
68:10;69:5;71:24;
74:1,10,19;75:22;
76:1
**estates (1)**
27:3
**estopped (5)**
43:17;52:1,24;54:5,
11
**estoppel (4)**
46:21;52:11,19,25
**Even (11)**
20:7;22:13;32:25;
37:19,25;45:2,16;
54:18;60:20;74:5,22
**event (2)**
32:25;36:16
**everybody (1)**
26:21
**evidence (37)**
13:20;14:9;15:7,9;
22:14;24:3;28:12;
29:5;33:8,15;34:1,6;
35:5,10;38:7,9,10;
43:13;45:12;48:5;
49:8,15;50:7,14;55:4,
12;57:9;59:15,23;
60:6,14,15,22;63:13;

70:25;71:15;72:15
**evidencing (2)**
54:17;71:23
**evincing (1)**
67:10
**evolving (1)**
26:4
**exactly (1)**
34:15
**examining (1)**
45:4
**example (1)**
36:22
**exceeding (1)**
46:7
**excellent (1)**
6:24
**except (1)**
51:17
**exception (1)**
31:2
**excessive (1)**
42:20
**exchange (2)**
41:23;46:3
**exclusion (1)**
65:8
**exclusive (9)**
18:7;19:12,16;20:9;
21:8;31:25;32:4,11,
19
**excruciating (1)**
25:22
**excuse (4)**
12:15;30:14;50:5;
51:19
**executed (4)**
55:14;57:22;58:21,
25
**executing (1)**
58:6
**execution (1)**
62:7
**executor (2)**
57:23;58:11
**exempt (4)**
26:1;31:6;39:3;
43:10
**exempted (1)**
31:13
**exemption (14)**
14:4;25:24;39:15,
17;51:7;52:3;53:4,7,
9,12,17,19;54:3,9
**exemptions (1)**
43:8
**exercise (1)**
42:20
**Exhibit (1)**
37:2
**exhibits (5)**
13:16;14:1,7,9;28:4
**exigencies (1)**

52:17
**exist (1)**
26:15
**existed (1)**
36:15
**existence (4)**
18:5,12;35:1;48:8
**exists (2)**
36:15;55:9
**expanded (1)**
51:2
**expenses (2)**
55:21;76:2
**explaining (2)**
16:8;36:4
**explanation (1)**
29:16
**explicit (1)**
72:11
**explicitly (1)**
28:25
**express (1)**
57:12
**expressly (2)**
18:15;21:11
**extent (3)**
27:23;45:8;61:18
**extreme (1)**
11:19

**F**

**F2d (1)**
34:18
**F3D (1)**
20:16
**fact (16)**
15:16;33:4,8,16;
34:9;49:4,6,13;50:3;
67:2;68:20,21,22;
69:18,19;72:15
**fact-finder (1)**
50:8
**fact-finding (2)**
35:12;73:24
**factor (2)**
21:20,25
**factors (4)**
20:19;21:2,4;52:18
**facts (34)**
10:18;11:21,21,25,
25,25;12:6,23;14:19,
24;15:6,8,10,25;
23:17,23;24:2,2;
33:25;34:19,22,24;
38:12;42:10;43:1;
47:17;49:12,16,21;
50:14,17;52:7;67:21;
70:24
**factual (5)**
15:4;23:25;35:1;
36:9;50:8
**failed (3)**

Leslie Klein

December 18, 2024

30:9;43:24;46:23

**fails (2)**
15:4;29:13
**failure (3)**
29:17;30:11,12
**fair (3)**
73:5,7;76:13
**faith (2)**
68:16;71:20
**fall (1)**
31:13
**falls (3)**
26:2;28:15;31:1
**familiar (4)**
12:22,23;23:17;
32:22
**family (10)**
47:4;57:25;58:4,5,
8,12,13,16,22;59:3
**far (2)**
27:20;36:24
**fashion (1)**
36:14
**favor (2)**
35:6;72:17
**favorable (1)**
50:17
**February (6)**
8:1;10:3;12:18;
18:10;38:13;75:20
**federal (3)**
20:7;36:25;55:23
**fees (1)**
76:2
**few (1)**
53:3
**fide (2)**
43:22;44:4
**fifty (9)**
38:21,21;42:8;
50:25;51:1;53:25;
54:13,15;60:17
**file (7)**
9:11;17:7;22:4,23;
23:4;50:2;74:10
**filed (57)**
5:23;10:14;14:11,
12;15:19,21,23;16:5,
7,11,16,19,24,25;
17:1,8,12,15,18,24;
18:9,14,16,23,25;
19:6,23;21:6,10,16;
22:3;23:3,21;26:9;
28:6;29:25;30:8,11;
35:20,24;38:6,13,14,
18,24;42:1,6;51:10;
53:3,5,24;60:14;61:1;
69:8;73:25;74:20;
77:18
**files (1)**
18:18
**filing (7)**
15:16;26:10;44:23;

76:24;77:2;78:14,18
**fill (2)**
76:19,22
**finally (4)**
22:10;47:15;48:24;
54:4
**financial (3)**
38:19;51:8;53:9
**find (3)**
37:1;49:13;64:25
**findings (1)**
72:12
**finds (17)**
19:20;21:3,21;
22:11;54:10;57:20;
59:12;60:17,21;
63:15;64:4,6;66:14;
67:1;70:2,24;72:14
**fine (7)**
8:13;9:4;12:11,11,
14;23:2;31:20
**finish (2)**
25:15;30:20
**first (14)**
4:13;9:3;16:19;
17:18;26:2,20;28:11;
31:15;36:19;39:10;
68:17;70:6;71:20;
75:4
**fit (1)**
29:11
**five (1)**
13:15
**floor (2)**
13:3,5
**focused (2)**
10:21;76:24
**folks (1)**
4:15
**following (5)**
17:6;33:9;34:20;
38:12;61:24
**follows (3)**
55:13,18;59:25
**footnote (1)**
24:1
**forced (1)**
67:14
**foreclose (1)**
50:12
**formally (1)**
58:5
**formation (1)**
48:9
**formed (1)**
48:8
**former (1)**
39:22
**Forsythe (1)**
4:25
**forth (3)**
24:20;34:22;50:14
**forward (1)**

24:12
**found (4)**
24:24;47:22;69:24;
70:3
**four (1)**
20:19
**frankly (1)**
10:20
**frauds (1)**
59:6
**FRBP (1)**
49:1
**FRCP (1)**
49:1
**Free (3)**
6:24;44:6;62:4
**front (2)**
6:8;37:5
**frustration (1)**
76:7
**full (4)**
6:23;8:1;51:4;63:6
**functions (1)**
49:17
**fundamental (1)**
50:22
**funded (16)**
37:7;45:23;46:10,
13;55:17;56:1;57:13,
17;60:8,13,16;62:23;
63:1,12;64:16,19
**further (6)**
25:21;34:2;38:3,3;
60:5;73:16

**G**

**gaining (1)**
52:12
**gave (1)**
33:21
**generally (1)**
42:18
**genuine (9)**
34:23;35:4;49:4,8,
14;50:3,15;67:1;
72:15
**gets (1)**
12:21
**given (3)**
6:3;10:16;53:8
**Glenn (4)**
57:23,24;58:11,14
**Goe (1)**
4:25
**goes (5)**
23:22;29:1;31:8;
33:6;37:6
**Good (8)**
4:11,24;5:2;9:18;
10:10;13:7;68:16;
71:20
**governed (1)**

20:7
**governing (1)**
49:7
**grant (8)**
20:20;29:21;34:20;
41:22;49:3;58:25;
59:24;60:1
**granted (12)**
20:16;26:25;43:15;
44:21;47:20;50:5,7;
55:10;65:3;72:18;
73:13;78:7
**grantee (1)**
58:3
**granting (7)**
20:23,24;21:20,25;
22:1,8;73:9
**guess (1)**
10:17

**H**

**half (9)**
15:22;16:7;17:24;
22:4;26:5,5;35:22,23;
46:2
**Halvard (5)**
57:23;58:7,11,16,
18
**Halvard's (4)**
58:2,9,12;59:8
**hand (2)**
60:2;77:23
**handling (1)**
7:14
**hands (1)**
30:19
**hanging (1)**
16:9
**happened (4)**
5:22;6:11;16:10;
76:9
**happening (1)**
35:3
**happiness (2)**
41:10,15
**happy (2)**
28:3;77:10
**harming (1)**
76:1
**hats (1)**
25:11
**heading (1)**
30:2
**health (5)**
40:22;41:9,14;56:8,
23
**heard (3)**
16:8;31:21;53:16
**hearing (28)**
8:1;12:16,25;15:16,
21,22,24;16:4,6;
17:10,14,17,23,23,25;

18:10;21:4,10;22:6,
18;23:19;28:19;
53:15;69:10;72:10;
76:9,15;77:24
**hearings (1)**
10:3
**heated (1)**
74:14
**Heggstad (8)**
46:17;57:18,22,24;
58:17,18;59:12,18
**held (22)**
24:16,17;25:8;26:6,
14;29:6;39:4;41:21;
50:25;51:1,4,16;59:1;
60:18;62:18;63:23;
65:2;66:1,3;69:10;
70:13;72:10
**Hello (1)**
4:10
**Herbert (2)**
69:5,8
**Herbert's (2)**
69:11,25
**high (1)**
24:4
**highlight (3)**
12:25;23:18;31:19
**highlights (2)**
43:12;48:14
**himself (1)**
27:1
**Hodges (1)**
4:25
**hold (9)**
4:17;6:2;15:9;
32:18;44:1;48:7;
53:11;67:20;71:13
**holder (2)**
70:13,19
**holding (2)**
43:22;67:5
**holds (14)**
25:11,25;43:5,19;
44:25;45:9,13,16;
59:14;61:18;66:19,
21;71:4,25
**homestead (8)**
14:4;52:3;53:4,7,9,
12;54:3,9
**honest (1)**
10:25
**Hono (1)**
6:12
**Honor (92)**
4:11,12,14,24;5:8,
17;7:19,20,24;8:13,
17,21,25;9:18;10:12,
20;11:8,16;12:13;
13:4,7,11,24;14:18,
23;15:11,13;16:11;
22:21,24;23:11,20,21;
24:4,11,13,19;25:4,

20,21,23;26:7,15,19;
27:7,9,10,25;28:2;
30:8;31:21;34:10,13,
17,23,24;35:4,7,9,14,
17,20;36:10;37:1,8,
19,21,23;38:1;72:21,
25;73:3,10,17,18,21,
24;74:2,3,9,13,14,23,
23;75:3,15,19;76:18,
19;77:6,10;78:19
**hour (3)**
  21:7;31:24;32:14
**house (2)**
  28:13;39:12
**housekeeping (1)**
  13:12

## I

**idea (2)**
  10:10;31:10
**identical (1)**
  64:5
**identified (1)**
  57:25
**identifying (1)**
  49:25
**immunized (1)**
  26:1
**impacted (1)**
  22:13
**important (1)**
  13:13
**improve (1)**
  41:24
**impute (1)**
  68:9
**inapplicable (3)**
  46:21;59:12;65:8
**Inc (1)**
  34:17
**include (3)**
  14:1;66:10;78:2
**included (4)**
  43:7;58:1;65:7;
  66:6
**includes (3)**
  24:10;39:24;61:2
**including (9)**
  6:10;18:5;41:21,24;
  48:4;65:4,16,21;78:4
**income (26)**
  24:20;32:6;40:1,10,
  11,13,16,17;41:1,4,7,
  8,8,10;55:15;56:3,5,6,
  16,20,21;62:2,4,22;
  63:3,9
**income-producing (1)**
  46:1
**inconsistent (6)**
  52:14,20,23;53:1,
  21;70:20
**inconvenience (3)**

20:24;22:1,8
**incorrect (1)**
  31:11
**incur (1)**
  76:2
**incurred (1)**
  68:3
**Independence (1)**
  58:1
**indicate (1)**
  20:3
**indicated (6)**
  18:9;39:3;50:24;
  51:14;53:8,10
**indicates (6)**
  18:24;19:16;28:12;
  31:2;66:19,22
**individual (3)**
  39:7,9;48:21
**inference (1)**
  73:1
**inferences (1)**
  49:16
**influence (1)**
  33:1
**information (1)**
  51:3
**informing (1)**
  49:24
**initial (3)**
  19:22;49:24;69:10
**initiated (1)**
  68:25
**inquired (1)**
  69:23
**inquiry (5)**
  47:8;67:18;68:20,
  22;69:18
**inside (1)**
  47:4
**insofar (1)**
  31:4
**installments (1)**
  40:18
**instead (5)**
  21:8;36:18;37:11;
  59:14;62:14
**instructions (1)**
  58:15
**instrument (5)**
  40:7;58:19;61:5;
  69:16;70:1
**instruments (1)**
  69:15
**insufficient (6)**
  48:15,19;55:9;56:6,
  21;71:16
**integrity (1)**
  52:15
**intended (3)**
  34:14;46:1;64:13
**intentional (1)**
  74:1

**intentionally (1)**
  15:20
**interest (68)**
  16:17,22;18:15,19;
  21:12,13;26:16;27:7,
  21,22,24;29:1;36:6;
  39:6;42:9;43:20,23,
  24;44:1,7,7,8,10,17,
  22;45:1,9,14,16,18;
  46:24;47:7;48:17,22;
  51:16;54:14,15,23;
  55:19,20;56:12;61:3,
  9,16,17,18,19;62:2,3;
  65:19;66:19,21;67:6,
  8,10,13,21,23;69:12;
  70:12,15,17,20;71:2,
  6,8,25;72:2
**interested (2)**
  12:25;23:18
**interests (4)**
  18:6;44:20;61:2,7
**interference (1)**
  62:5
**interfering (1)**
  30:17
**internal (7)**
  18:2,4;19:17,19;
  20:3;32:2,8
**interrogatories (3)**
  13:19;47:2;50:1
**into (16)**
  13:20;14:9;15:7;
  19:8;20:1;24:3;25:22;
  26:12;39:8,10;57:20;
  58:20;64:3;77:10,11;
  78:15
**invalid (7)**
  45:12;54:21;61:22;
  63:18;64:7,15;65:15
**involved (1)**
  7:4
**involving (2)**
  4:13;44:11
**irrelevant (2)**
  34:19;45:12
**irrevocable (1)**
  51:2
**IRS (1)**
  60:12
**issue (25)**
  5:9;32:3;33:7,7,12,
  14,16;34:8,8,16,23;
  35:4;38:20;49:14;
  50:3,15,22;60:22;
  64:21;65:16;67:1;
  69:11;72:6,15;76:11
**issued (2)**
  60:12;69:7
**issues (4)**
  18:1,4;19:13;33:4
**item (1)**
  4:13

## J

**Jason (1)**
  56:19
**John (1)**
  13:8
**join (3)**
  24:24;29:12;30:2
**joinder (9)**
  30:6;47:22;48:25;
  60:5;63:25;64:3;72:4,
  11,12
**joined (6)**
  28:14;29:4,21;30:1,
  5;47:16
**joining (1)**
  17:9
**joint (7)**
  5:8,11;17:1;30:11;
  70:20,21,23
**jointly (1)**
  70:14
**Jones (1)**
  13:8
**Joseph (2)**
  4:25;53:4
**judge (2)**
  7:16;49:17
**judge's (2)**
  7:17;8:15
**judgment (39)**
  5:19;7:5;8:24;9:8;
  10:3,11,14;12:1,22;
  13:9;15:24;17:4,12,
  25;18:1;23:1;29:22;
  32:17;33:5;34:9,20,
  21;38:6;47:20;49:2,3,
  5,22,23;50:5,6,12,16;
  65:3;72:18;73:9;78:2,
  7,10
**judicial (12)**
  13:25;14:13,14;
  37:2;46:20;50:20;
  52:11,15,19,25;66:23;
  72:7
**judicially (3)**
  43:17;52:1;54:10
**July (3)**
  16:24;17:1;42:6
**jumped (1)**
  4:20
**jumps (1)**
  35:17
**June (27)**
  7:12,14,18;8:4,14;
  14:5;16:18,23;24:5,
  14,16;25:1,24;26:5,
  13,17,23;27:4,14,14,
  16,22;33:6;35:22,25;
  38:20;39:12
**junior (3)**
  43:23;44:3;67:6

**jurisdiction (13)**
  18:8;19:11,13,17;
  20:6,9;21:7,9;31:25;
  32:4,11,19;69:14
**jury (4)**
  35:5;49:9,16,20
**justifiable (1)**
  21:23

## K

**keep (1)**
  26:22
**Ken (1)**
  9:5
**Kenneth (2)**
  9:19;56:18
**kind (3)**
  37:7;56:1;75:12
**Klein (172)**
  4:5,8,23;5:3,10;6:6,
  13,14,15,16,17,22;
  7:3,10;8:21;9:5,19;
  14:7;16:20,20,22;
  18:2,4,5,9,14,16,18,
  20,23;19:10,11,15,20,
  23;20:6;21:7,10,13,
  16;22:4,7,11;24:16,
  17,19;25:8;26:3,16,
  21;29:1;32:10;36:12,
  22;37:9,17,17,21;
  38:23;39:5,20,20,20,
  23;40:6;42:3,5,14,14;
  43:2,7,12,19,20,24;
  44:16,22;45:14,19,22;
  46:2,4,9,15,23,25;
  47:6,12,15,22;48:1,3,
  21;51:5,7,12,14,18,
  19,22;52:1,3,8;53:3,5,
  17;54:1,2,4,7,10,12,
  14,19,22,24;55:1,13,
  14,16;56:4,5,7,10,17,
  18,19,22;57:4,7,8,10,
  14,18;61:24;62:9,13,
  14,17,20,21;63:3,3,5,
  8,10,14,19,21,23;
  64:7,9,17,24;65:18,
  24;66:1;67:12,16;
  70:7;71:1,10,21;72:4;
  74:7;75:19;76:10,16;
  77:4;78:16,17
**Klein's (22)**
  32:5;45:7,11;48:10,
  24;50:23;51:8,17;
  52:6;53:4,21;57:2,20;
  60:19;64:22;65:1;
  66:6,18;71:24;72:5,9,
  11
**Kloehn (1)**
  20:16
**knew (1)**
  16:6
**knowingly (1)**

Leslie Klein

December 18, 2024

76:16
**knowledge (2)**
67:25;68:8

**L**

**LA (6)**
15:17;18:9;19:6;
35:11;58:9;73:20
**language (4)**
58:16,22;60:3;
72:22
**last (5)**
7:25;23:7;26:21;
31:16;34:4
**late (2)**
31:24;32:14
**later (5)**
18:18;21:17;35:13;
52:13,19
**law (26)**
12:23;14:15;20:7,7;
23:17,22,24;25:5,25;
31:11;32:13;33:2;
42:18,23;44:5,14;
49:5,7;61:6,10,22;
62:7;68:9,10,14;
70:18
**lawsuit (1)**
73:24
**lay (1)**
15:10
**lead (2)**
49:13;72:7
**learned (1)**
68:22
**least (8)**
26:4;28:14;29:12;
40:18;54:13;75:5,7,
11
**leave (1)**
28:2
**ledger (3)**
47:1;51:19;60:2
**ledgers (16)**
29:7;33:9,9,14;
48:11,13;51:23;
54:25;55:8;59:20;
60:3;71:11,16,17,21,
22
**leeway (1)**
33:21
**legal (7)**
33:1;37:13;49:1;
61:2;62:1,3;66:17
**legitimate (1)**
49:16
**lens (1)**
12:7
**Leslie (3)**
6:17;31:10;39:19
**Leslie's (1)**
31:9

**level (1)**
24:4
**liable (1)**
62:6
**life (7)**
26:23,25;27:3;39:5;
45:25;51:5,17
**lifestyle (1)**
53:11
**lifetime (2)**
39:13;40:2
**light (2)**
50:17;75:9
**lighting (1)**
28:18
**likely (1)**
64:24
**likewise (1)**
48:15
**limited (3)**
20:10;39:17;52:24
**line (2)**
32:20;34:7
**list (2)**
19:18,20
**listed (4)**
38:19;39:14;50:24;
58:4
**lists (1)**
42:3
**litigated (1)**
30:5
**litigating (2)**
18:21;22:7
**litigation (1)**
39:16
**little (3)**
4:6;34:14;74:13
**live (1)**
39:12
**lived (1)**
39:13
**lives (1)**
70:10
**living (107)**
14:7;16:20;19:14;
24:17,17;25:8;36:12,
13,22;37:9,17;39:20,
23,24,25;40:3,5,7,9,
11,15,18,23,24,25;
41:2,6,11,11,17,18,19,
25;42:3,12,15,16;
43:2,13;45:13;46:13,
16;47:1,19,20,23,25;
48:2,14,15;52:8,9;
54:14,16,20,22;55:5,
6,12,14,16,16,25;
56:2,9,15,25;57:6,8,
10,12,14,23;59:4,13,
14,16,21;60:19,24;
61:12,24;62:8,16,19,
20,22,23,24;63:2,9,
11,15,18,24;64:1,7,

10,14;65:18,23,25;
66:1;71:10,12,24;
72:16
**locate (1)**
77:1
**located (1)**
58:1
**logical (1)**
73:1
**look (3)**
12:7;13:13;35:18
**looked (2)**
5:14;23:3
**looking (4)**
29:24;37:4;54:15;
76:25
**LOS (2)**
4:1;27:12
**lot (2)**
10:25;77:1
**Lucas (48)**
4:20;8:24;9:2;13:1,
4,5,7,8,23,24;14:17,
18,22;15:8,11;16:2;
22:20,21;23:2,5,8,11,
14,20;25:12,14,18,19;
30:19;31:15;34:3,12,
13;37:5,6;72:19,21;
73:2,3,10,16,17;
75:14,15;76:8,18;
78:9,19

**M**

**main (1)**
14:11
**maintain (5)**
40:22;41:10,15;
56:9,24
**makes (2)**
4:16;7:23
**making (2)**
30:7;75:12
**man (1)**
68:20
**manage (1)**
41:21
**mandate (1)**
48:3
**manner (6)**
40:23;41:11,16;
47:16;56:9,24
**many (2)**
23:12;70:13
**March (2)**
16:10;38:18
**marital (34)**
16:21;18:12;19:1,9,
14;20:2;24:18;27:6;
29:2;30:4;31:4;35:23;
36:23;37:20;38:22;
39:4;40:8,9,12,13,15,
19;41:18;42:4,9,13;

44:11;45:8;51:2,4,14,
19,23;57:16
**married (1)**
58:7
**material (8)**
33:4;34:9;49:4,6,
12;50:3;67:2;72:15
**materials (2)**
10:24;31:12
**matte (1)**
42:11
**matter (19)**
4:4,19,23;6:25;
17:14;19:22;21:24;
23:24;25:2,9;27:13;
32:2,10;37:11;49:5;
71:1;73:13,14,15
**matters (3)**
4:5,8;13:12
**maximum (2)**
46:6;65:12
**may (24)**
4:7;7:19;8:6;11:13;
16:18,19;36:20;37:7;
38:14;39:12;40:12;
41:3;42:1;43:23;44:6,
9;48:1;50:11;56:1;
59:25;68:1;69:2;72:1;
75:15
**maybe (5)**
7:8,23;11:1;75:6;
77:3
**MDT (45)**
25:9;26:6;27:10,13;
35:23;36:1,6;37:10,
25;45:19,22;46:2,9,
12,22,24;47:3;48:11;
51:20;52:5;53:22;
54:6,11,24,25;55:22;
56:2,5;57:11,13;60:7,
15,21;62:13,25;
63:22;64:9,18;66:21;
71:3,5,8,22;72:2;
78:15
**mean (3)**
25:16,19;37:21
**meaning (1)**
43:4
**means (1)**
69:16
**meant (3)**
5:18;26:22;64:25
**mediate (1)**
6:25
**mediation (9)**
6:23,23;9:21,22,25;
10:1,10,15,19
**mediator (1)**
6:24
**meets (1)**
66:15
**memorializing (1)**
71:5

**Menlo (1)**
58:2
**mention (1)**
17:16
**mentioned (9)**
17:2,19,22;30:21;
33:25;34:5;59:19,20,
22
**mere (2)**
35:1,2
**merely (2)**
50:11;53:11
**metaphysical (1)**
49:11
**midst (1)**
9:10
**might (11)**
6:13;7:9;10:6,6,10;
12:13;36:4;49:6;
68:22;72:2;75:10
**million (1)**
50:24
**mind (1)**
21:19
**minimum (5)**
36:23;37:13;41:10,
16;55:22
**misconstrues (1)**
57:4
**miss (1)**
5:16
**mistaken (2)**
10:4;46:17
**modified (1)**
15:6
**moment (1)**
52:17
**Monday (1)**
23:5
**money (1)**
8:9
**month (1)**
58:6
**months (13)**
7:8;8:2;15:22;16:7;
17:24;18:18;21:6,17;
22:3,8;24:25;53:3;
72:11
**moot (1)**
73:15
**more (13)**
7:23;11:2,22;15:22;
16:7;17:21,23;22:4;
25:14;49:11;75:21;
76:3,4
**morning (6)**
4:11,24;5:2;9:18;
13:7;23:5
**most (4)**
18:17;21:16;50:17;
64:23
**motion (63)**
8:23;9:8,8;11:11,

eScribers, LLC

15;12:21;13:9;15:15,
19,20,23,24;16:1;
17:8,9,12,24;18:1,23;
19:25;22:3,17,23;
23:1,21;24:1,24;28:4,
5;29:13,18,22;30:6;
31:22;33:18,20;
34:21;38:5,6;47:19,
22;49:21,25;50:16,18,
21;60:5;63:25;64:3;
72:11,13,18;73:2,7,9,
13,22;74:3,10;76:25;
77:12;78:1,6
**motions (2)**
17:7;49:2
**movant (6)**
13:6;22:10;31:15;
49:4,10;50:12
**move (2)**
24:12;33:23
**movement (3)**
20:21,25;49:5
**moves (1)**
72:24
**moving (3)**
12:15;50:5;77:16
**MSJ (5)**
21:5;22:18,19;
23:15;49:17
**much (10)**
4:17;8:8,10;9:15,
20;40:21;41:7,13;
56:7,22
**must (13)**
18:8;27:23;29:10;
35:4;47:4;49:11;
50:13,17,22;60:23;
66:9;68:15;71:19
**mute (5)**
28:20;30:17,18;
45:20,21
**myself (1)**
13:14

## N

**name (5)**
6:24;26:21;29:17;
30:9;58:2
**named (5)**
29:10,10,16;74:6;
78:3
**names (1)**
26:20
**naming (2)**
57:22,23
**Nancy (4)**
58:7,7,20,24
**narrow (1)**
76:24
**necessary (13)**
17:9;24:25;30:3;
40:21;41:8,14;45:6;

47:15;48:9;53:9;56:7,
23;72:6
**need (2)**
30:16;73:11
**needed (1)**
50:9
**needs (1)**
18:22
**negatively (1)**
22:13
**neither (4)**
51:15;60:2;66:20;
70:6
**net (3)**
40:17;41:7;56:5
**nevertheless (2)**
27:4;74:8
**new (4)**
7:16;8:15;18:20;
30:6
**next (4)**
12:16;26:19;50:22;
60:22
**nine (2)**
22:8;74:18
**ninety (1)**
7:24
**Ninth (3)**
20:19;21:2;52:24
**nomenclature (1)**
30:12
**non-bankruptcy (2)**
61:5,10
**non-binding (1)**
72:7
**nondischargeability (1)**
4:13
**None (2)**
35:6;71:22
**non-estate (1)**
36:5
**nonmoving (7)**
35:6;49:9,14;50:4,
7,11,13
**nor (7)**
35:2;43:14;51:16;
59:22;60:2;70:6;71:6
**North (2)**
38:20;39:12
**note (2)**
8:25;68:24
**noted (9)**
20:5;21:15;22:3;
42:3;59:5;60:5,21;
63:12;70:22
**notes (3)**
18:16;48:24;64:22
**notice (38)**
14:1,13,14;37:2;
38:15;44:6,17;45:6;
47:9,11,13;48:19;
50:20;67:11,18,18,22;
68:9,11,18,19,21,25;

69:2,14,15,17,18,19,
20,21;70:5,9,11,16,
25;71:7,14
**notion (1)**
31:7
**notorious (1)**
47:10
**Notwithstanding (1)**
61:4
**November (2)**
39:8,11
**number (15)**
4:23;8:25;13:14,25;
15:7;23:21;28:10;
31:1;35:18;73:13,14,
21,22;74:23;77:9

## O

**objected (2)**
53:4;58:20
**objection (5)**
13:21;14:25;53:5,
15,24
**objections (2)**
28:6,6
**obligation (1)**
68:2
**obtain (1)**
54:4
**obtained (1)**
44:9
**obvious (1)**
33:5
**obviously (3)**
11:21;75:4;76:8
**occupancy (1)**
70:15
**occupant (2)**
70:20,21
**occupants (1)**
70:23
**occupies (1)**
70:14
**occurred (2)**
60:22;63:13
**October (4)**
17:10,14,15;29:25
**off (2)**
25:17;34:15
**offer (1)**
77:8
**Office (1)**
38:14
**offline (1)**
7:6
**often (1)**
70:22
**Olsen (1)**
33:20
**Olson (41)**
5:2,4;13:21,22;
15:13,15,18;16:4,11,

14,15;25:13;28:9,10,
16,19,22,24;29:24;
30:8,14,15,20,22,23;
31:14,17;36:10;
73:19;74:4,12,16,22;
75:17,23;76:15;77:4,
23,25;78:5,17
**omits (1)**
30:2
**once (2)**
11:1;17:2
**one (24)**
5:3;9:21;13:11;
15:12,21;17:22;19:6,
24;26:24;31:19;33:7,
21;35:16;49:18;
52:12;57:13;58:6;
63:9;68:5;70:23;
73:17;74:17,17;75:15
**ones (1)**
33:5
**one-third (1)**
58:9
**only (10)**
4:4;8:2;9:21;19:24;
20:17;27:15;46:6;
57:13,15;65:6
**oOo- (1)**
4:2
**open (1)**
47:10
**operation (1)**
32:3
**operative (1)**
42:2
**opponent (1)**
49:10
**opportunity (9)**
6:3;11:3;21:22;
53:16;73:7;75:6,7,12;
76:22
**oppose (1)**
23:10
**opposed (4)**
10:17;53:5,24;
69:10
**opposing (6)**
20:25;22:1;34:22,
25;49:18;50:18
**opposite (1)**
34:14
**opposition (24)**
9:8;10:16,23;11:10,
15,22,22;17:14,16;
22:5,23;23:4,13;
29:25;30:9,25;32:16,
20;38:8,10;51:18,22;
53:6;72:4
**oral (1)**
74:3
**order (29)**
4:3;5:15;14:4;16:5;
17:8;19:8;20:1;30:21;

34:14;53:16;68:15;
72:20,22;73:6;74:3,
15,24;75:6;76:15,18,
21,23;78:1,2,6,10,13,
13,14
**ordered (1)**
77:25
**orders (2)**
14:2;74:13
**ordinarily (1)**
65:5
**original (1)**
30:24
**others (1)**
65:10
**otherwise (4)**
9:16;12:14;15:3;
22:12
**ourselves (1)**
75:10
**out (14)**
5:9,12,25;6:7;7:24;
14:16;15:10;16:9;
20:11;26:5;27:18;
35:9,17;72:24
**outcome (1)**
49:7
**outline (1)**
48:1
**outlines (2)**
27:16;36:19
**outstanding (1)**
9:21
**over (14)**
21:8;34:19;42:16,
20;62:9,10;64:12;
65:9,14,25;66:2;68:7;
72:23;76:8
**overlap (1)**
11:20
**overlooked (1)**
28:11
**override (1)**
68:9
**Owen (2)**
43:9,10
**own (5)**
50:14;54:19,25;
63:10;64:13
**owned (15)**
24:14;28:13;35:22,
23;36:1;38:21,21;
39:19;47:18;51:15,
21;52:8;54:8,16,17
**owner (2)**
24:7;27:15
**ownership (5)**
27:22;48:16;52:6;
67:5;71:4
**owns (13)**
24:9;27:14,16;
35:25;36:6;45:7;
50:23;51:25;53:23;

54:6,11,13;72:16

**P**

**Pachulski (1)**
13:8
**Pacific (1)**
34:18
**page (7)**
19:5,6,22,24;30:2;
32:20;34:6
**pages (1)**
37:2
**paid (1)**
51:3
**painstaking (1)**
23:22
**papers (6)**
10:13,22;11:5;
23:17;33:12;77:16
**Park (1)**
58:2
**part (5)**
53:19,25;54:19;
60:19;65:16
**participated (1)**
5:10
**particular (3)**
9:14;68:20;69:18
**parties (17)**
10:10,18;11:20;
17:9;20:10;21:21;
24:25;29:10,22;30:3;
35:2;39:13;47:15;
49:18;52:16;53:15;
78:3
**parties' (2)**
50:9;53:14
**partition (1)**
41:23
**partner (1)**
75:16
**party (25)**
20:25;22:1;27:2;
34:22,25;35:6;37:7;
43:14;49:9,14,23;
50:4,6,7,11,13,18;
52:12,21,22;54:18;
57:12;58:8;66:21;
72:19
**party's (2)**
52:19;53:1
**passes (1)**
56:18
**passing (1)**
60:7
**past (1)**
33:22
**pause (1)**
25:17
**pay (9)**
40:16,20;41:7,12;
56:4,7,20,22;74:19

**payment (1)**
55:21
**payments (1)**
41:22
**penalty (3)**
26:9;51:13;53:13
**pending (4)**
6:20;9:7;22:25;
35:11
**people (1)**
26:22
**Per (1)**
71:18
**percent (17)**
38:21,21;42:8;
50:25;51:1,15;53:23,
25;54:6,8,12,13,15;
60:17;66:19;71:13;
72:16
**Perfect (1)**
7:10
**perfected (4)**
43:22;44:13;45:1;
71:4
**perjury (3)**
26:10;51:13;53:13
**permits (2)**
45:10;65:6
**permitted (1)**
75:23
**person (8)**
27:14;53:18,20;
59:17;61:13;68:18;
69:16,17
**personally (2)**
27:1;35:22
**persons (1)**
68:12
**persuading (2)**
52:21;54:1
**persuasive (1)**
65:1
**Peter (1)**
68:23
**petition (18)**
14:2;18:9,25;19:7,
22,24;22:15;38:13;
44:8;45:5;47:18;52:7;
66:18,24;67:9;69:8;
75:13;78:14
**petitioned (1)**
58:14
**ph (1)**
6:24
**phone (2)**
30:16;45:20
**piece (4)**
25:7,20,21;26:19
**place (1)**
58:19
**plaintiff (3)**
5:10;35:17;42:1
**plaintiffs (3)**

32:7;33:12;66:10
**plaintiff's (1)**
7:16
**pleading (1)**
42:2
**pleadings (7)**
12:22,24;27:5;35:3;
49:25;50:13;53:14
**please (9)**
4:8;6:3;12:23;
28:17,20;30:18,22;
32:20;45:20
**PM (1)**
78:22
**podium (1)**
38:2
**point (13)**
9:15;10:16;11:22;
14:22;22:22;23:20;
24:13;26:16;28:14;
29:12;32:17;33:1;
50:7
**pointing (1)**
35:9
**points (8)**
15:2;28:5,11;30:25;
31:18,19;33:21;38:2
**portion (2)**
50:25;65:6
**portions (1)**
49:25
**position (21)**
9:23,25;10:9;19:15,
24;43:10;46:5;52:13,
14,20,20,22,23;53:2,
21,22;54:2,6;57:19;
59:15;75:10
**positions (2)**
10:17;52:16
**possession (2)**
47:10;70:18
**possibility (1)**
9:22
**possible (2)**
7:19;36:24
**potential (1)**
47:13
**power (5)**
32:9;41:20;48:22;
64:13;68:7
**powers (8)**
44:2,11;67:4;68:1,
4,13;69:25;72:1
**prayer (2)**
24:10;66:13
**Precisely (2)**
12:8,10
**preclude (4)**
32:16;33:5;34:9,20
**precluded (2)**
25:1;62:11
**precludes (1)**
52:12

32:7;33:12;66:10
**predetermine (2)**
47:24;55:6
**prejudice (2)**
22:2;75:1
**prejudiced (3)**
20:25;22:10,12
**premarital (10)**
13:16,17;39:8,10;
44:9,15;48:21;67:14,
15;70:6
**prepare (1)**
78:1
**preparing (3)**
5:11;20:21;22:6
**pre-petition (1)**
5:18
**presence (4)**
47:12;48:18;67:17;
70:8
**present (1)**
21:22
**presented (3)**
28:12;29:5;72:15
**preserved (1)**
75:22
**presiding (1)**
76:8
**presumption (1)**
70:19
**prevailing (1)**
72:19
**prevent (1)**
60:24
**prevents (1)**
61:17
**previous (2)**
53:1,11
**previously (4)**
18:16;42:3;54:7;
64:1
**primary (1)**
53:8
**principal (27)**
24:20;32:6;40:2,11,
14,20,21,21,23;41:2,
4,13,13,14,16;51:3;
55:15;56:3,7,13,16,
22;62:4,22;63:4,8;
65:19
**principle (1)**
62:2
**prior (2)**
26:10;44:6
**pro (1)**
5:4
**probate (32)**
15:17;17:20;18:8,
25;19:12,15,16,18;
21:9;22:15,25;31:1,
25;32:4,12,19;35:11;
46:4;58:14,21,24;
60:8;64:17,17,25;
65:1;66:5;73:20;

75:13;76:24;77:2,9
**problem (2)**
21:12;30:10
**problems (1)**
28:19
**Procedure (1)**
39:16
**procedures (2)**
36:20;48:1
**proceed (7)**
9:25;10:1;13:12;
14:18;22:18;23:15;
78:9
**proceeding (5)**
6:10;14:8;76:25;
77:2,9
**proceedings (4)**
19:17,18;49:3;
78:22
**proceeds (1)**
46:4
**process (6)**
10:8;52:15;62:1,7;
74:16;76:13
**produce (1)**
43:25
**produced (4)**
13:15;27:20;43:12;
44:21
**prohibiting (1)**
52:15
**prohibits (1)**
61:16
**proper (2)**
17:19;46:18
**properly (5)**
34:21;46:16;48:8;
58:21;75:4
**properties (1)**
32:1
**property (241)**
14:6;16:18,23;18:7,
16,19;19:2;21:8,12,
14;22:7;24:5,7,10,14,
15,16;25:2,7,8,24;
26:1,2,5,14,17,18,24;
27:4,6,14,15,17,22;
29:6;31:6,7,9,9;33:6,
10;35:22,25;36:7,21;
37:9,12,20;38:20,20,
25;39:3,4,6,15,17,18,
18,25;41:21,21,24,25;
42:9;43:4,4,5,6,8,8,9,
11,11,13,15,17,17,20;
44:1,7,12,18,20,22,
24;45:1,3,5,7,9,10,14,
15,17,24,25;46:1,3,
15,19,21,25;47:3,7,
10,12,18,24;48:4,6,7,
11,16,18,18,23;50:23,
24;51:4,8,10,15,17,
21,25;52:2,2,3,4,7,8;
53:7,8,17,19,19,23,

25;54:3,7,9,12,13,16,
17,19,21,21,23;55:1,
2,5,9,10,19,25;57:5,6,
7,10,20,25;58:1,2,3,4,
15,18,20,23;59:1,2,5,
10,11,14,16,20,25;
60:1,9,16,17,18,20;
61:3,3,4,19;62:18,23;
63:1;64:8,20,20;65:5,
10,16,21,21;66:1,11,
16,19,22;67:6,7,9,13,
17,21;68:2,4,6,7,15,
16,23;69:24;70:8,10,
12,14,15;71:2,4,6,9,
13,15,16,18,22,25;
72:3,16,23,24;74:1,
19;76:1

**property's (2)**
66:10,24

**proportion (1)**
63:1

**proportionate (1)**
46:7

**propose (1)**
72:22

**proposition (1)**
42:25

**propound (1)**
17:6

**prosecute (1)**
75:25

**prosecuting (1)**
68:21

**protect (3)**
43:4;52:15;53:12

**protected (2)**
42:21;61:20

**provide (8)**
27:3;37:9;55:1;
62:9;67:22;70:5,11,
16

**provided (12)**
19:25;45:6,25;47:2;
55:17;56:1,2;58:7;
62:19,24;65:18;70:9

**provides (17)**
29:1;36:22;40:10,
12,15,19;41:1,3,6,12;
49:1;54:22;56:15;
61:8;67:24;68:6;
69:14

**providing (3)**
66:16;67:10;72:22

**provision (12)**
32:7;42:21;54:20;
60:4,23;61:4,15,20;
62:18;63:18;64:6,14

**provisions (8)**
37:8;46:13;47:23;
48:1;56:14;61:21,25;
68:9

**prudent (3)**
68:19;69:17,22

**publicly (1)**
14:12

**purchase (1)**
36:5

**purchaser (5)**
43:22;44:4;47:11;
69:22;71:19

**purported (3)**
24:8;67:23;70:12

**purportedly (3)**
26:23,24;66:3

**purporting (1)**
45:3

**purpose (1)**
52:14

**purposefulness (1)**
76:5

**purposes (2)**
49:6,21

**put (9)**
10:24;47:11,13;
67:17;68:19;69:17;
70:8;71:7,13

## Q

**quiet (14)**
16:17,22;24:5,12,
13;25:20,21;29:8,9;
42:11;66:9,15;67:3;
72:17

**quieting (1)**
66:23

**quite (1)**
4:22

**quote (5)**
17:20;19:7;21:11;
34:17;39:12

## R

**race- (1)**
69:13

**raise (1)**
33:4

**raised (9)**
15:2;30:12,20;
32:16,20,23,25;69:12;
77:23

**raises (1)**
34:8

**raising (2)**
33:14;34:5

**rather (11)**
12:1;19:12,23;20:7;
34:20;45:23;47:25;
50:13;57:9;63:23;
70:13

**rational (1)**
49:13

**re (5)**
20:5,12;42:24;47:7;
70:21

**reach (4)**
35:5;46:6;65:10,11

**reached (2)**
5:25;6:7

**reaching (1)**
60:25

**read (5)**
12:22;20:9;23:16;
77:10,11

**ready (2)**
21:23;38:4

**real (18)**
35:5;39:18;44:11;
45:4;46:19;47:10;
55:9;59:5,25;60:1;
68:3,6,7,10,14,23;
69:5;71:18

**realize (2)**
29:17;30:9

**really (6)**
6:8,11,21;8:1;
35:16;75:4

**reargue (1)**
31:18

**reason (4)**
21:23;28:13;29:4,
11

**reasonable (3)**
35:5;49:8,20

**reasons (3)**
47:19;73:12;78:6

**reassigned (2)**
7:15,22

**receipt (1)**
62:2

**receive (1)**
61:13

**received (1)**
69:6

**recent (1)**
21:16

**recently (1)**
18:17

**recited (1)**
73:21

**recognized (1)**
65:5

**recognizes (1)**
42:18

**reconsider (1)**
75:10

**record (17)**
14:20;15:5,9;22:24;
28:5,21;30:17;31:23;
49:12,19;60:15;69:9;
73:12;77:10,11;78:6,
8

**recordation (1)**
44:13

**recorded (36)**
14:5,6;27:6,11,16,
23;28:24,25;36:14,
14;39:18,24;43:25;

44:10,16,21;45:4;
47:5;48:13,18;55:3;
58:14;59:20;67:10,
19;68:15;69:1,3,22;
70:7;71:5,7,17,19,23,
23

**recorder (5)**
45:20;69:2,3,22;
70:4

**recording (2)**
48:14;69:8

**recordings (1)**
70:4

**records (3)**
45:4;68:17;71:20

**recover (1)**
45:10

**recreate (1)**
78:12

**reduce (2)**
36:24;55:23

**Reem (1)**
4:24

**reference (3)**
24:1;37:1;64:22

**references (1)**
28:4

**referred (1)**
30:10

**reflected (1)**
39:14

**reflecting (2)**
43:15;55:10

**reflects (2)**
27:15;39:19

**reform (1)**
73:25

**reformation (1)**
35:12

**regard (4)**
67:25;68:7;74:15,
15

**regarding (23)**
6:9;7:4,7;14:2;18:1,
4;19:13,17;22:7;30:1;
45:1,5;48:24;52:6;
55:12;56:2,15;57:4;
58:15;65:3;69:23;
71:3;72:12

**regardless (2)**
43:5;65:22

**regards (1)**
70:18

**reiterate (2)**
12:24;73:11

**reiterates (4)**
48:17;55:4;67:19;
71:14

**rejected (2)**
48:25;72:10

**relate (1)**
18:1

**related (1)**

70:23

**relates (2)**
32:8,9

**relating (1)**
32:2

**reliance (3)**
57:21;65:1;70:2

**relied (2)**
53:1;54:8

**relief (4)**
24:12;25:7;27:19;
69:9

**relies (2)**
31:12;47:7

**rely (1)**
28:4

**remainder (2)**
55:20;56:25

**remained (1)**
58:2

**remaining (3)**
4:4;54:15;56:13

**remember (2)**
35:20;37:19

**reminder (1)**
15:18

**remove (1)**
73:25

**removed (2)**
71:14;74:25

**renders (1)**
64:14

**Rens (2)**
20:5,12

**repair (1)**
41:24

**repeat (1)**
28:22

**replies (4)**
15:1;62:16;63:23;
72:9

**reply (10)**
9:9;10:22;17:15;
33:11;34:6;38:10;
47:17;52:5;55:4;
67:19

**report (9)**
5:9,11;8:7,8;9:16;
12:15;17:1,18;30:11

**represent (2)**
5:3;42:7

**representation (1)**
54:8

**represented (2)**
54:7,12

**representing (1)**
74:21

**request (14)**
13:25;17:16;20:15,
20,22;21:4;37:2;
50:19;73:2,18;76:3,4;
78:2,5

**requested (2)**

5:11;73:6

**requesting (1)**
74:24

**require (1)**
74:4

**required (5)**
43:16;55:11;57:19;
58:25;60:9

**requirement (1)**
59:9

**requirements (2)**
59:8;66:15

**requires (2)**
29:9;59:6

**requiring (2)**
69:18;74:25

**res (3)**
48:8,9;60:10

**reserving (1)**
9:24

**residence (3)**
51:3,6;53:8

**resolution (1)**
7:11

**resolve (1)**
50:9

**resolved (2)**
6:11;17:3

**resources (3)**
72:8;74:10;75:22

**respect (9)**
25:24;27:3,9,19,22;
32:1,5;75:13,13

**respectfully (1)**
75:11

**respective (1)**
18:2

**respectively (1)**
14:8

**respond (6)**
16:2;38:1;73:8;
75:8,12;76:23

**responded (2)**
39:2;51:9

**responds (7)**
45:19,22;52:4;
54:22;62:13;67:12;
71:10

**response (3)**
14:24;38:23;47:2

**responses (2)**
13:18;28:6

**responsibility (1)**
49:24

**responsive (1)**
27:5

**rest (1)**
35:2

**resting (1)**
31:10

**restriction (1)**
61:8

**restricts (2)**

61:6,6

**result (1)**
72:7

**retain (1)**
41:20

**retained (2)**
18:20,24

**retiring (2)**
7:14,20

**return (1)**
49:9

**returns (1)**
60:14

**reveal (1)**
20:9

**reviewed (1)**
11:5

**reviewing (1)**
19:19

**revocable (2)**
57:23;59:4

**revolving (1)**
76:10

**Rhodes (1)**
58:7

**Richard (1)**
56:18

**rifles (1)**
74:18

**right (15)**
8:7,11,13,20;9:10;
12:2,2,11,12;13:5;
38:4;46:23;48:12;
73:16;78:9

**rights (5)**
18:3;47:13;68:1,12;
70:9

**ripe (2)**
10:15;24:5

**role (2)**
18:5;40:5

**roles (1)**
25:11

**room (2)**
4:7;10:20

**roughly (1)**
10:18

**rule (7)**
16:1;21:23;29:13,
19;38:4;49:6;70:22

**ruled (2)**
23:9;64:1

**rules (2)**
10:11;36:20

**ruling (23)**
14:16;15:10;22:18,
19;23:10,23;31:22;
33:2,19;47:22;49:17,
21;50:16;58:24;60:5;
63:25;72:6;73:15;
75:9,24;77:12;78:10,
12

## S

**Sacramento (6)**
68:24;69:1,3,22,23;
70:4

**sale (6)**
63:6;68:25;69:2,6,
7,21

**Salkin (5)**
42:24;46:11;63:17,
21;64:4

**same (10)**
10:18;11:25;12:6;
23:12;26:8;31:18;
33:23;36:14;38:15;
68:16

**sanctioned (3)**
76:16;77:5;78:18

**satisfied (1)**
59:8

**Schaap (1)**
47:17

**schedule (12)**
10:22;18:14,18;
21:11;38:19;39:3,14;
50:23;51:7;58:1,4,19

**scheduled (2)**
15:22;17:23

**schedules (8)**
14:3;18:17;26:9;
35:20;38:18;51:12;
53:24;54:13

**screen (2)**
4:7,9

**scrivener's (1)**
64:24

**se (1)**
5:5

**second (15)**
14:6;16:20;19:8;
20:1;21:20;24:16;
26:14;28:24;36:12,
12;39:23;42:3;46:2;
75:9;78:15

**section (5)**
30:25;65:1,5;66:23;
68:4

**security (2)**
41:23;43:23

**seeing (1)**
4:15

**seeking (13)**
16:8,17,22;20:1,3;
22:14;24:12;25:7;
27:18;49:23;52:13,
22;53:11

**seeks (4)**
24:9;66:17,20;
68:12

**self-funded (1)**
62:14

**self-settled (24)**

24:23,25;26:12;
31:3,7,10;38:25;
42:14;43:3;44:24;
45:15,17,23;46:12;
47:21;51:11;61:12;
62:9,14,17;63:16,22,
24;64:2

**sell (5)**
37:22;41:22;69:1,
21;72:25

**senior (4)**
43:22;44:25;67:5;
71:4

**sense (4)**
7:23;9:2,24;10:6

**sent (1)**
75:17

**separate (3)**
59:9,21;76:11

**September (3)**
17:7,8,11

**Seror (1)**
42:24

**served (2)**
40:6;74:6

**serves (2)**
40:8,24

**Service (1)**
34:17

**set (19)**
5:12;10:3,18;11:20,
21;12:6;15:20;16:4;
17:5,13,13;18:10;
34:22;47:6;50:14;
58:17;67:12;75:6;
76:14

**sets (1)**
24:20

**settle (1)**
7:1

**settled (1)**
7:1

**settlement (1)**
6:9

**settlers (1)**
46:7

**settles (1)**
11:1

**settlor (10)**
40:5;42:14,22;46:5;
61:13,22;63:10,19;
64:9;65:24

**settlors (4)**
55:14;57:2,14;
62:20

**seven (1)**
72:20

**several (1)**
29:7

**shall (13)**
36:23;40:16,20;
41:7,12;49:3;56:11,
20,22;61:25;62:4,5;

67:24

**share (1)**
45:24

**Sharp (53)**
42:10,18;43:1,7,9,
12,19,21,24;44:2,5,8,
15,19,25;45:10,11,17;
46:23,25;47:6;48:5,7,
10,14,17,20,24;52:1,
4,5;54:15,18;55:1,4,8;
59:13;62:8,16;63:23;
67:4,7,11,12,19;
70:25;71:3,13,14,25;
72:9;74:5,6

**Sharpe (3)**
47:23;63:17;64:21

**Sharp's (2)**
46:15;59:14

**Sherry (1)**
56:18

**shielded (1)**
66:5

**shielding (2)**
25:1;62:11

**shifts (1)**
34:21

**short-circuited (1)**
14:16

**shortening (1)**
16:5

**Shortly (3)**
17:12;58:13;69:7

**Shoshana (2)**
9:5,19

**show (12)**
4:9;33:10;46:23;
47:17;48:5,11;49:11;
52:7;75:6;76:15,23;
78:13

**showing (4)**
29:5;34:22;50:14;
71:15

**shows (4)**
27:12,21;33:15;
49:4

**side (2)**
11:3;33:23

**sides (2)**
19:15;38:5

**sides' (1)**
11:7

**signed (6)**
5:11;26:9;51:12;
53:12;59:7;61:25

**significantly (1)**
22:2

**similar (4)**
14:23;29:19;39:1;
51:11

**Simon (1)**
9:18

**simply (5)**
5:12;29:13;31:11;

34:25;49:11

**sits (1)**
37:18

**situated (1)**
60:1

**situation (2)**
31:1;53:9

**situations (1)**
42:22

**six (2)**
7:8;15:1

**slew (1)**
10:23

**small (1)**
26:24

**SOFA (4)**
38:23;44:22;45:14;
51:12

**sole (3)**
63:5,7,14

**somebody (1)**
37:14

**someone (3)**
6:2;30:14,16

**sometime (3)**
7:15,18,21

**somewhat (2)**
11:16,24

**son (1)**
57:22

**sorry (3)**
23:2;25:16;74:13

**sort (15)**
10:16;11:2,4;14:19;
25:5,20;26:3,4;27:24;
35:8,16,16;36:4;
37:18;74:18

**sought (4)**
25:23;66:12,13;
69:9

**speak (4)**
6:3,4,13;78:8

**speaking (2)**
6:2;10:18

**speaks (1)**
9:16

**specific (4)**
24:1;34:22;37:9;
50:14

**specifically (9)**
29:9;30:10;31:2,5,
11,13;59:18,19;78:4

**spend (1)**
8:9

**spendthrift (18)**
25:3;32:7;41:25;
42:19,22,23;43:3;
54:20;60:23;61:15,
20,21;62:12,18;
63:18;64:6,14;65:15

**spent (1)**
22:5

**sponte (1)**

74:3

**spousal (1)**
64:23

**spouse (17)**
26:20;31:6;38:22;
39:5,22;40:19;51:5;
55:18;56:3,5,10,17,
17,20,25;70:10,11

**spouses (1)**
56:24

**spouse's (10)**
36:19;55:19,20,21,
25;56:8,9,11,12,23

**spring (3)**
7:15,21;35:21

**stance (1)**
57:4

**standard (1)**
49:1

**standing (1)**
29:19

**Stang (1)**
13:8

**starting (1)**
34:7

**state (14)**
5:21;6:20;7:5;
28:17;29:14;30:11,
11,12;32:13;33:2;
46:17;66:9;68:9,10

**stated (5)**
47:19;53:7;58:16;
73:12;78:6

**statement (7)**
14:24;15:1,6;23:25;
36:5;38:19;51:8

**statements (2)**
14:4;35:21

**States (2)**
25:25;51:9

**stating (2)**
45:11;51:3

**status (16)**
5:8,11,12;7:7;9:1;
10:7;12:15,15;17:1,5,
18;25:10;68:5,11;
69:23;73:14

**statute (2)**
29:9;59:6

**statutes (1)**
20:8

**statutorily (2)**
25:1;62:11

**stay (9)**
35:13;69:9;74:2,11;
76:1,17;77:4,5;78:17

**stayed (2)**
6:20;74:25

**Stein (1)**
19:4

**Stein's (1)**
19:2

**still (4)**

5:9;7:24;9:24;
27:24

**stop (2)**
74:14,24

**stopped (1)**
14:5

**stories (1)**
49:18

**story (1)**
26:4

**straight (1)**
26:22

**stranger (2)**
70:14,15

**Street (23)**
14:6;16:18,23;24:5,
14,16;25:1,24;26:5,
13,17,23;27:4,14,14,
16,22;33:6;35:22,25;
38:20;39:12;66:17

**strikes (1)**
10:15

**strong (5)**
44:2,11;68:4;69:25;
72:1

**sua (1)**
74:3

**sub (2)**
63:9;66:5

**subject (6)**
18:7;43:20;58:23;
62:1,6;66:10

**submitted (6)**
34:21;38:8,8,9,10;
43:14

**subsection (2)**
31:12,13

**subsequent (2)**
10:8;71:19

**substance (2)**
50:20;59:25

**subtrust (19)**
18:6;19:3;42:16;
44:1;45:1;48:7;52:10;
54:19;60:13;63:4,6,7,
14;64:15;65:23;67:8,
20;71:11,12

**subtrusts (20)**
26:15;33:10;42:17;
43:3;44:21;47:21,25;
55:11,12,17;62:8,16;
63:2,11,15,20,24;
64:2,11;66:4

**subtrust's (1)**
67:23

**succeeded (2)**
52:21;54:1

**successor (2)**
57:24;58:12

**sufficient (11)**
29:18;46:19;47:11;
50:7;58:19,22;59:2,4;
68:19;70:5,11

**suggestion (1)**
12:14

**suit (1)**
49:7

**summarizing (1)**
21:15

**summary (35)**
8:23;9:8;10:3,11,
14;12:21;13:9;15:24;
17:4,12,25;18:1;
22:25;29:22;32:16;
33:5;34:9,20,21;38:6;
47:19;49:2,3,22,23;
50:4,6,12,16;65:3;
72:18;73:9;78:1,7,10

**Superior (6)**
15:17;17:20;18:10;
19:6;35:11;73:20

**support (21)**
12:1;18:23;19:15,
23,25;22:15;23:23;
25:21;38:9,11;40:22;
41:9,15;43:10;46:4;
53:6,10;56:8,24;
64:23;70:9

**supporting (1)**
50:8

**supportive (1)**
23:11

**supports (1)**
57:18

**supposed (1)**
74:11

**supposedly (3)**
18:19;22:14;26:5

**Supreme (3)**
25:25;43:9;53:18

**sure (2)**
7:22;19:3

**surprise (1)**
75:18

**surviving (17)**
40:4,19;55:18,19;
56:3,5,8,9,10,11,12,
17,17,20,23,24,25

**survivor (6)**
45:8;51:16;60:7;
71:3,10;72:2

**survivor's (23)**
16:21;24:18;25:9;
27:10,13;37:10;
40:25;41:1,3,4,5,6,12,
19;42:4,8,13;46:3;
57:12,16;64:8;71:6,8

**swept (1)**
31:7

**system (1)**
5:21

---

**T**

**tactic (3)**
20:22;21:5,19

**talk (1)**
35:13

**talked (1)**
75:16

**talking (1)**
34:15

**tax (3)**
36:25;55:23;60:14

**taxation (1)**
37:13

**taxes (1)**
55:21

**technically (1)**
4:18

**ten (5)**
17:11;26:10;38:24;
44:23;51:9

**terms (8)**
7:7;11:9;19:11;
20:14;33:17,20;
57:12;78:9

**the- (1)**
65:4

**thereafter (2)**
17:13;58:13

**thereby (1)**
26:1

**Therefore (6)**
22:17;44:25;54:10;
66:4;69:24;71:25

**thereof (1)**
38:11

**third (2)**
14:22;21:25

**Thomas (1)**
70:21

**thoroughly (1)**
23:16

**though (1)**
74:22

**thought (8)**
9:2,2;10:12;17:19;
25:16,17;32:23;77:13

**three (6)**
8:2;21:6;22:3,4;
52:18;55:17

**Thus (1)**
35:4

**tight (1)**
10:22

**tile (1)**
28:18

**timeline (1)**
21:15

**timely (1)**
17:15

**times (1)**
74:23

**TINs (1)**
60:12

**title (25)**
16:17,22;19:24;
24:5,11,12,13;25:20,

21;29:8,9;42:11;
61:11;66:9,11,14,15,
24;67:3;70:13,14,16,
19,20;72:17
**titled (3)**
36:19;51:19,23
**today (8)**
7:2;9:9;16:9;17:14;
36:15;73:19;75:5,24
**today's (7)**
15:21,22;16:6;
17:22;21:4,10;75:9
**together (2)**
20:9;50:2
**took (1)**
25:17
**touch (1)**
7:16
**track (2)**
7:17;10:2
**transaction (1)**
47:4
**transfer (16)**
26:11;36:16;38:25;
48:16;51:10;55:2,9;
57:20;58:25;59:2,23;
61:5,7,8;68:2;71:16
**transferred (19)**
37:10,20;42:8;
43:13;44:24;45:15;
48:6,11;55:5;57:6,7,
10,11;58:5,17;59:16;
60:20;71:15,22
**transfers (1)**
44:3
**transpired (1)**
6:8
**trial (4)**
34:23;49:14;50:10,
15
**trier (1)**
49:13
**trouble (1)**
4:15
**truly (1)**
73:5
**trust (325)**
14:7;16:20,21,21;
18:2,5,12,13;19:1,2,8,
9,9,14,14,15,19;20:1,
2,2,4,10,13;21:18;
24:17,17,18,18,20,21,
23;25:1,9,9,11;26:12,
14;27:10,13;28:13,14,
23,24,25;29:2,2,5,7,
15,20;30:1,4,4,5,10;
31:4,4,5,7,10;32:3,8;
35:14,15,23,25;36:13,
14,18,19,22,23;37:7,
9,10,11,12,17,20,22;
38:22;39:1,4,20,23,
24,25;40:4,6,7,8,9,9,
12,12,13,14,15,15,17,

18,19,24,25,25;41:1,
3,3,4,5,6,6,11,12,18,
18,19,19,20,21,24,24,
25;42:4,4,4,8,9,12,13,
13,14,15,16,19,20,20;
43:3,5,14,14;44:20,
24;45:8,9,13,16,16,
22;46:3,5,9,12,13,16,
19,22,24;47:2,4,4,19,
20,23,24,25;48:2,6,6,
8,9,12,15,15;51:2,4,
11,15,16,20,23,25;
52:5,8,9;53:23;54:6,
11,14,16,18,20,22,24,
25;55:2,5,6,7,12,14,
16,17,18,21,24,25;
56:1,2,14,15,15,21;
57:1,6,8,11,11,12,13,
14,16,16,19,20,23,25,
25;58:3,4,5,8,10,13,
13,16,18,20,22,23;
59:1,3,4,5,7,10,13,14,
16,17,18,19,21;60:7,
7,9,9,10,10,16,19,21,
24,25;61:9,12,12,13,
14,15,19,23,24;62:4,
8,10,16,19,20,22,23,
24,25,25;63:2,9,11,
15,18,20,24;64:7,8,9,
10,14,15,18;65:6,10,
12,14,15,18,20,20,21,
23,25;66:1,3,5;68:24;
71:3,6,10,11,12,25;
72:2,5,16;78:4,15,16
**trustee (91)**
5:25;6:7;9:24;
11:23;13:1;14:25;
16:16;17:2,12;20:11,
13;22:3,6,9,23;24:7,
19;27:2;28:12;29:4,
11,20;31:12;35:17;
36:20;37:16,21;38:7,
8,15,16,17;40:5,6,6,8,
12,16,25;41:3,6,8,12,
20;42:15,24;52:9;
56:4,4,6,6,11,19,21,
22;57:6,9,24,24;
58:12,18;59:7;60:24;
63:3,5,7,10,14,19;
64:10,11;65:19,24;
66:22;67:2,24;68:1,5,
5,6,8,10,12,25;69:2,
21,24;72:17,23;76:2;
78:1
**trustee/plaintiff (1)**
13:9
**trustees (2)**
39:20;57:8
**trustee's (13)**
14:2,23;38:14;47:9;
57:4,5;67:4;68:11;
69:6,6,7,9,19
**trusts (15)**

18,19,24,25,25;41:1,

19:18;31:8;32:1;
40:7;42:13,19;56:1;
60:11;62:13,15,19;
63:9,16,22;64:1
**trust's (2)**
62:10;71:8
**truth (2)**
14:14;50:10
**try (3)**
35:8;36:8;78:11
**trying (5)**
6:13;14:18;25:19;
26:22;53:12
**turn (2)**
4:8;22:20
**turned (1)**
8:24
**turning (5)**
8:23;50:20;64:17;
66:8;67:4
**TW (1)**
34:17
**two (13)**
6:23;10:22;15:22;
16:7;17:23;18:24;
21:10;31:19;33:21,
22;49:18;72:10;76:8
**type (1)**
7:11
**typically (1)**
61:21
**typo (2)**
19:4;30:25

### U

**unavailing (2)**
19:21;21:14
**uncontroverted (3)**
15:10;38:12;42:10
**uncover (2)**
27:21,25
**under (50)**
25:10,11;26:9,15;
27:7;28:1;29:7,13,19;
31:1,11,13;39:15,20,
25;40:3,5,7,7,9,11,14,
18,24,25;41:2,5,11,
18,19;43:21;44:2,5;
46:25;47:7;49:7;
51:12;53:13;58:9,10;
61:9,10,22;65:2;
66:23;67:7,13;68:14;
69:19;72:1
**undercuts (1)**
19:23
**underlying (2)**
42:12;50:17
**understood (6)**
5:4,20;11:5;73:10,
10;78:19
**undisputed (5)**
47:17;52:7;57:15;

62:22;70:5
**unenforceable (1)**
44:12
**unfair (2)**
52:23;54:4
**unfettered (3)**
24:21;32:6;37:22
**unfortunate (1)**
36:17
**United (1)**
25:25
**unless (9)**
26:1;28:20;30:18;
38:2;43:11;44:12;
53:19;61:20;73:6
**unlikely (1)**
10:15
**unnecessary (4)**
34:19;46:20;72:13;
76:2
**unpersuasive (2)**
57:21;70:3
**unreasonable (1)**
20:18
**unrecorded (11)**
16:17,22;43:23;
45:2;55:8;59:21;67:6;
69:11,15,16,25
**up (11)**
4:9;7:3;8:7;10:25;
11:4;23:7;28:18;
31:24;32:14,15;77:8
**upload (6)**
72:20,21;76:14,21;
78:10,13
**uploading (1)**
76:18
**upon (16)**
11:24;15:9;35:2;
37:12;40:4;54:23;
55:16;56:25;60:6;
62:24;64:7;68:20;
69:6,17;71:11;73:15
**use (11)**
36:21;37:22;40:13;
41:3;48:1;63:6,8;
64:12;66:2;69:25;
72:1
**used (2)**
33:13;36:5
**useful (3)**
20:23;21:21,21
**uses (1)**
20:19
**using (2)**
26:20;74:19

### V

**Vago (4)**
4:23;5:1;53:4,15
**Vagos (2)**
4:14;5:19

**Vagos' (1)**
53:24
**valid (6)**
59:10;60:24;61:20,
21;68:15;69:15
**validity (2)**
19:1;42:19
**valuable (2)**
68:16;71:20
**value (3)**
43:22;50:25;67:5
**valued (1)**
50:24
**various (2)**
14:2;52:6
**venue (1)**
17:19
**verdict (2)**
35:5;49:9
**verified (2)**
19:7;78:14
**version (1)**
49:21
**versions (1)**
50:9
**versus (1)**
4:23
**via (5)**
17:3;54:13;55:3;
58:5;67:14
**video (3)**
4:8,19;8:24
**view (5)**
10:19;34:23;35:7;
37:25;50:17
**violating (3)**
75:25;76:17;77:5
**violation (5)**
35:12;74:2;75:1;
77:3;78:16
**virtue (2)**
25:3;36:16
**void (2)**
71:19;75:1
**voidable (1)**
68:3
**voids (1)**
42:23

### W

**wants (1)**
37:23
**waste (3)**
72:7;74:9,9
**way (4)**
5:21;14:19;20:3;
37:13
**WEDNESDAY (1)**
4:1
**week (6)**
15:21;17:22;21:17;
23:7;77:3,19

weeks (5)
8:2;10:23;18:24;
21:10;22:4
weigh (1)
21:4
weighing (1)
49:15
welfare (2)
41:9,15
what's (4)
11:6;12:24;30:7;
76:9
whereas (1)
53:23
Whereupon (1)
78:22
whole (1)
49:13
wholly (8)
23:11;36:1,6;47:21;
51:20,25;54:16;62:17
Who's (2)
15:14;74:4
wife (3)
53:10;55:13;70:10
wife's (1)
70:11
willful (1)
74:1
winning (1)
69:5
withdraw (1)
32:22
within (7)
23:3;26:2;32:4;
38:24;51:9;72:20;
77:19
without (6)
29:16;41:23;44:6;
67:25;68:7;72:6
witness (1)
60:2
word (2)
31:16;33:13
worked (1)
23:6
works (1)
10:19
writing (3)
43:15;59:7,9
written (6)
14:16;43:25;46:16,
20;57:19;59:3

**Y**

year (1)
69:4
years (6)
26:10;29:7;38:24;
44:23;51:9;76:9
yield (2)
13:3;62:18

**Z**

zero (3)
46:11;62:15;64:20
Ziehl (1)
13:8
Zoom (2)
4:7;16:13
Zubenko (9)
47:8;67:16;68:23,
23;69:8,9,20;70:2,3

**1**

1 (5)
10:13;20:20;45:12;
51:19;52:19
10:28 (1)
4:1
10:30 (1)
4:5
100 (8)
51:15;53:23;54:6,
12;58:1;66:19;71:13;
72:16
109.2 (1)
43:16
1090 (1)
55:11
1092 (2)
48:13;59:24
10th (1)
21:17
11 (3)
38:14,15,16
1122 (1)
20:16
11th (1)
77:18
12/11 (3)
15:21;17:22;18:14
12/2 (2)
18:24;21:10
12/31/14 (1)
51:24
12/31/23 (1)
51:24
12/4 (1)
17:18
12/9 (1)
19:23
12:25 (1)
78:22
1214 (2)
68:17;71:18
1217 (1)
69:14
12b6 (2)
28:15;29:13
12th (4)
16:24;17:8;40:3;
42:6

13 (1)
69:8
13th (1)
39:24
14 (1)
34:7
147 (1)
70:21
14th (1)
39:19
15304 (1)
64:25
15304b (2)
31:2;65:5
15305 (4)
46:4;64:17,18,22
153064b (1)
66:6
15th (2)
17:14;29:25
16th (1)
17:10
17000 (2)
19:16;20:8
17200 (2)
19:18;20:9
18 (2)
4:1;30:2
189,050 (1)
39:17
189,050-dollar (2)
53:17;54:3
18th (1)
39:22
19 (5)
29:19;38:24;47:9;
51:9;68:18
1975 (2)
39:21;57:8
1977 (2)
39:19;57:8
1987 (1)
34:19
1990 (1)
39:22
1992 (1)
70:22
1993 (1)
46:17

**2**

2 (4)
10:13;20:22;45:14;
52:20
2.45 (1)
50:25
20 (1)
4:23
2010 (1)
20:17
2012 (2)
36:11;57:15

2013 (6)
33:9;36:12;39:8,24;
40:3;60:2
2014 (2)
51:22;69:2
2014-2023 (1)
60:2
2015 (2)
39:11;47:8
2021 (1)
20:6
2023 (7)
18:17;21:16,17;
35:21;38:13,18;51:23
2024 (2)
4:1;42:1
2025 (2)
7:20;8:14
20th (1)
17:11
21 (3)
8:25;18:18;21:17
21st (1)
17:5
22 (2)
73:13,14
22nd (1)
38:13
23 (3)
17:2;38:14;75:20
23rd (1)
16:18
24STPB13777 (3)
19:6;73:22;77:17
25th (2)
39:8,11
26th (1)
8:1
29th (3)
16:19;17:1;42:1

**3**

3 (4)
20:23;36:18;37:2;
52:22
30th (2)
17:7,15
31st (1)
17:6
32 (1)
23:21
322 (1)
38:20
33 (1)
13:14
34 (1)
13:25
36 (1)
14:23
3A (1)
36:22

**4**

4 (3)
20:25;30:2;37:2
4.9 (1)
50:24
4/8/90 (5)
19:9;51:20,24;
55:13;78:16
41 (1)
35:18
48 (2)
14:25;15:7

**5**

5 (1)
37:3
526 (1)
70:22
541 (1)
65:2
541c2 (1)
61:7
544 (5)
27:7;47:7;68:4;
69:19;72:1
544a (4)
27:19;67:7,13,24
544a3 (6)
28:1;43:21;44:2,19;
46:25;68:6
550 (1)
45:10
56 (2)
49:1,6
594 (1)
20:5
5th (3)
10:3,5;12:18

**6**

620 (1)
20:16
626 (1)
34:18
630 (1)
34:18
633 (1)
20:5
678,391 (3)
39:14;51:7;53:5
679,391 (1)
53:7

**7**

7 (1)
34:6
704.703 (1)
39:16

**Leslie Klein**

**December 18, 2024**

**7056 (1)**
  49:1
**760.010 (1)**
  66:23

### 8

**8:30 (1)**
  23:5
**809 (1)**
  34:18
**8th (1)**
  38:18

### 9

**9 (1)**
  12:18
**9/10/13 (2)**
  51:19,20
**9th (6)**
  20:5,16;34:18;
  70:22;77:18,21

**EXHIBIT F**

(Counsel Emails)

**From:** Jeffrey Dulberg
**Sent:** Tuesday, September 16, 2025 7:33 PM
**To:** Daniel Crawford <dac@crawfordlawgroup.com>
**Cc:** John W. Lucas <jlucas@pszjlaw.com>; Bradley Sharp <bsharp@DSIConsulting.com>
**Subject:** KLEIN / New LKA Stay Violation

Mr. Crawford-

As you will recall, the Court (Judge Sandra Klein) entered the attached order to show cause why Mr. Klein and you should not be held in contempt as a result of the commencement of the probate action where you and Mr. Klein sought to reform Mr. Klein's living trust so that the June St. property was part of one of the sub-trusts. In response, and after several hearings, you cooperated and had the probate case dismissed because you and Mr. Klein acknowledged that those actions were in violation of the automatic stay.

In addition, the Trustee filed another motion to enforce the automatic stay when you and Mr. Klein transferred an interest in the June St. Home to your client, EKLK. Per the attached order, the Court (Judge Bason) held that the transfer was void and authorized the Trustee to record the attached order (which we did) to reflect that the deed was void and without force or effect.

We recently discovered that Mr. Klein wrongly and without explanation recorded a lis pendens against the June St. property. See attached. Both the lis pendens itself and the act of recording it are stay violations. The lis pendens was recorded approximately two weeks prior to the deed transfer. By any measure, the lis pendens should have been expunged as well.

Will you voluntarily withdraw the lis pendens? If not, the Trustee will seek relief from the Court. If you withdraw it and in fact do so timely, the Trustee will agree not to pursue any sanctions related to its recording in the first instance.

Please let us know LKA's response by the close of business on Thursday, September 18.

Best,
**Jeffrey Dulberg**
Pachulski Stang Ziehl & Jones LLP
Tel: 310.277.6910 | Fax: 310.201.0760
jdulberg@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

| | |
|---|---|
| **From:** | Jeffrey Dulberg |
| **Sent:** | Thursday, September 18, 2025 11:50 AM |
| **To:** | Eric J. Olson (Eric@EJOlsonLaw.com); Leslie Klein 1 (les.kleinlaw@gmail.com); 'leskleinlaw@gmail.com' |
| **Cc:** | Daniel Crawford; John W. Lucas; Bradley Sharp |
| **Subject:** | Klein / New Stay Violation |
| **Attachments:** | CA_LOS ANGELES_INV_NA 2025.105088.PDF; 00064 12-30-24 OSC re L Klein, D Crawford, E Olson Not Violation Auto Stay - TTE.pdf; 01147  06-18-25 Order Granting Mtn to Enforce Automatic Stay, etc - Ct.pdf |

Mr. Olson-

As you will recall, the Court (Judge Sandra Klein) entered the attached order to show cause why Mr. Klein, among others, should not be held in contempt as a result of the commencement of the probate action where Mr. Klein sought to reform his living trust so that the June Street property was part of one of the sub-trusts. In response, and after several hearings, Mr. Crawford and Mr. Klein cooperated and had the probate case dismissed because they acknowledged that those actions were taken in violation of the automatic stay.

The Trustee subsequently filed another motion to enforce the automatic stay when Mr. Crawford and Mr. Klein transferred an interest in the June Street property to your client's affiliate, EKLK. Per the attached order, the Court (Judge Bason) held that the transfer was void and authorized the Trustee to record the attached order (which we did) to reflect that the deed was void and without force or effect.

We recently discovered that, in February 2025, Mr. Klein wrongly and without explanation recorded a lis pendens against the June Street property. See attached. Both the lis pendens itself and the act of recording it are stay violations. The lis pendens was recorded approximately two weeks prior to the deed transfer. By any measure, the lis pendens should have been expunged as well.

Will Mr. Klein voluntarily withdraw the lis pendens? This past Tuesday, I wrote to Mr. Crawford – copied here -- asking him to do the same, but I have received no response.  If Mr. Klein withdraws it and in fact does so timely, the Trustee will agree not to pursue any sanctions related to its recording in the first instance.

**Please let us know immediately as the lis pendens is impacting the marketing process. If we do not hear from you this week, we will file a motion seeking expungement and for further sanctions.**

Best,

**Jeffrey Dulberg**
Pachulski Stang Ziehl & Jones LLP
Tel: 310.277.6910 | Fax: 310.201.0760
jdulberg@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**EXHIBIT G**

(Proposed Order)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001

Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
Jeffrey P Nolan (CA State Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-MAIL: jdulberg@pszjlaw.com
           jlucas@pszjlaw.com
           jnolan@pszjlaw.com

*Counsel to Bradley D. Sharp, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>LESLIE KLEIN,<br><br>                   Debtor. | Case No. 2:23-bk-10990-SK<br><br>Chapter 11<br><br>**ORDER GRANTING MOTION OF CHAPTER 11 TRUSTEE (A) ENFORCING AUTOMATIC STAY, (B) EXPUNGING LIS PENDENS RECORDED AGAINST 322 N. JUNE STREET, LOS ANGELES, CALIFORNIA FROM PROPERTY RECORDS, (C) VOIDING LIS PENDENS AB INITIO AND FINDING IT HAVING NO FORCE OR EFFECT, AND (D) AUTHORIZING TRUSTEE TO RECORD AN ORDER GRANTING THE MOTION FOR THE PURPOSE OF CLEARING TITLE**<br><br>Date:    TBD<br>Time:    TBD<br>Location: U.S. Bankruptcy Court<br>           Courtroom 1545<br>           255 E. Temple St.<br>           Los Angeles, CA 90012<br>Judge:  Hon. Neil W. Bason |

The Court having considered the *Motion of Chapter 11 Trustee for Order to Expunge Lis Pendens Recorded Against 322 N. June Street, Los Angeles, California* and the Declaration of Jeffrey W. Dulberg in support thereof [Docket No. ___] (the "**Motion**")[1]; and for the reasons

---

[1] Capitalized terms not defined herein have the meanings used in the Motion.

4918-4891-8121.6 78512.001

stated on the record of the _____, 2025 hearing, the Motion is **GRANTED** and it is hereby **ORDERED** that,

1.     The Lis Pendens, recorded in the Official Records of Recorder's Office, Los Angeles County as document number 20250105088 and annexed hereto as **Exhibit "1",** is expunged and has no force or effect because it was executed and recorded without Court authorization in violation of section 362(a) of the Bankruptcy Code.

2.     The automatic stay is enforced against the Debtor, Probate Referee Christina Acevedo, Leslie Klein & Associates, Owen Lee Podell, and beneficiaries Ofra Orjachovsky and Los Angeles County Public Administrator.

3.     The Trustee is authorized to record a certified copy of this Order for the purpose of ameliorating any harm caused by the Debtor's recordation of the Lis Pendens.

4.     If the recordation of this Order does not uncloud title of the June St. Property as a result of the recordation of the Lis Pendens, the Trustee may seek further relief for the purpose of re-quieting title of the June St. Property as necessary.

5.     Sanctions may be awarded in an amount to be determined at a future hearing upon separate motion to be filed by the Trustee, in his discretion.

######

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001                                    2

**EXHIBIT 1**

(Lis Pendens)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4918-4891-8121.6 78512.001

 

**This page is part of your document - DO NOT DISCARD**



## 20250105088



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/19/25 AT 03:23PM**

**Pages:
0004**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 103.00 |

 



**L E A D S H E E T**



202502190730029

**00025245392**



015149787

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

*E652839*

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

NAME *Owen Podell, Esq.*

MAILING ADDRESS *6454 Van Nuys Blvd, #150*

CITY, STATE and ZIP CODE *Van Nuys, CA 90401*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

*Notice of Pendency of Action (Lis Pendens)*

BO15 rev 20171228

LESLIE KLEIN (SBN 50908)
OWEN PODELL (97813
LESLIE KLEIN & ASSOCIATES
6454 Van Nuys Blvd #150
Van Nuys, CA 90401
818-501-2663
les.kleinlaw@gmail.com

Attorneys for Petitioner, Leslie Klein as
Administrator for Decedent's Estate

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| In re Estate of David Y. Green, | Case No.: 17STPB01585 |
| --- | --- |
| Decedent | NOTICE OF PENDENCY OF ACTION (LIS PENDENS) |

PLEASE TAKE NOTICE THAT above-captioned action, by Petitioner Leslie Klein as Administrator for Decedent's Estate, affects title to and/or possession of real property in that Petitioner seeks to quiet title to the real property located in Los Angeles County, at 322 N. June Street, Los Angeles, California, and described as:

An undivided one-half interest in the real property described as Lot 300 of Tract 8320 as per map recorded in Book 98, page 41 of Maps, commonly known as 322 N. June Street, Los Angeles, CA 90004.

The parties to this case include: Probate Referee Christina Acevedo; petitioner Leslie Klein; attorneys for petitioner, Leslie Klein and Owen Lee Podell; beneficiaries ~~Elizabeth~~ and Ofra Orjachovsky; ~~attorney for beneficiary Julia Roth; Burkass~~ interested parties ~~Gitaful L. Tam Day; and~~ Los Angeles County Public Administrator; ~~attorney for interested parties Steven Charles Saur; and decedent David Y. Green.~~

Date: February 12, 2025

LESLIE KLEIN, Esq.
LESLIE KLEIN & ASSOCIATES
Attorneys for Petitioner

NOTICE OF PENDENCY OF ACTION
(LIS PENDENS)

SEE ATTACHED
CA NOTARY CERTIFICATE



## SPACE BELOW FOR NOTARY'S USE

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT**          **CIVIL CODE '1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ *Los Angeles* _____

On __ *02/19/2025* __ before me, __ *Seung H. Lim ( Notary Public )* __
(Insert Name of Notary Public and Title)

personally appeared _____ *Leslie Klein* _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf on which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

SEUNG H. KIM
Notary Public - California
Los Angeles County
Commission # 2348665
My Comm. Expires Apr 15, 2025

Los Angeles City Planning | CP-7771.1 [6.1.2023]          Page 9 of 12