Jeffrey W. Dulberg (CA State Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  jdulberg@pszjlaw.com
        jlucas@pszjlaw.com

*Counsel to Bradley D. Sharp,*
*Chapter 11 Trustee*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:23-bk-10990-NB |
| **LESLIE KLEIN**, | Chapter 11 |
| Debtor. | **CHAPTER 11 TRUSTEE'S REPLY TO OPPOSITION OF ERICA AND JOSEPH VAGO TO SECOND INTERIM APPLICATION OF PACHULSKI STANG ZIEHL & JONES LLP FOR APPROVAL OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS GENERAL BANKRUPTCY COUNSEL TO THE CHAPTER 11 TRUSTEE AND TO THE FEE APPLICATIONS OF THE CHAPTER 11 TRUSTEE'S OTHER PROFESSIONALS; DECLARATION OF BRADLEY D. SHARP** |
| | [Relates to Docket Nos. 1215, 1216, 1217, 1218, 1219, and 1220] |
| | Date:       October 7, 2025<br>Time:       2:00 p.m.<br>Courtroom:  1545<br>Location:    255 E. Temple Street<br>            Los Angeles, CA 90012<br>Judge:      Hon. Neil W. Bason |

Bradley D. Sharp, the duly appointed chapter 11 trustee (the "**Trustee**") of the bankruptcy

estate (the "**Estate**") of Leslie Klein (the "**Debtor**"), hereby files this reply (the "**Reply**") to the

opposition (the "**Opposition**") [Docket No. 1225] filed by Erica and Joseph Vago (collectively the

"**Vagos**") to the fee applications (the "**Fee Applications**") filed by (a) Bradley D. Sharp, Chapter 11

Trustee (the "**Chapter 11 Trustee**") [Docket No. 1215]; (b) Pachulski Stang Ziehl & Jones LLP

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

("**PSZJ**") [Docket No. 1216]; (c) Development Specialists, Inc. ("**DSI**") [Docket No. 1217]; (d) The Law Offices of Goldfarb Gross Seligman & Co. ("**Goldfarb**") [Docket No. 1218]; (e) Kieckhafer Schiffer, LLP ("**Kieckhafer**") [Docket No. 1219]; and (f) The Law Office of Eric Everett Hawes ("**Hawes**", and together with the Chapter 11 Trustee, PSZJ, DSI, Goldfarb, and Kieckhafer, the "**Professionals**") [Docket No. 1220].  In support of the Reply, the Trustee represents as follows:

## I.

## PRELIMINARY STATEMENT

As the Vagos are well aware, this bankruptcy case is premised upon the Debtor's rampant prepetition fraud where he took advantage of members of his religious community when they entrusted tens of millions of dollars to him in his capacity as their attorney or trustee. Under the Bankruptcy Code, the Trustee is obligated to investigate all aspects of the Estate for the purpose of collecting assets, evaluating claims, and ultimately making distributions to creditors under a plan. The Trustee's administration of this case by definition requires a significant cost – and in fact the Trustee and his professionals began this case with virtually no cash on hand.

No creditors – other than the Vagos – nor the Office of the United States Trustee (the "**UST**") filed objections to the Fee Applications. As with the first round of interim fee applications, *only* the Vagos take issue with the Professionals in this case. As set forth further below, the Vagos draw erroneous conclusions from the cases they cite and misstate the applicable standard under section 330 of the Bankruptcy Code but also fail to cite to any specific work description as being unreasonable, unnecessary, or not benefiting the Estate.

Notably, the Opposition filed by the Vagos is substantially similar, if not identical, to the opposition [Docket No. 1087] (the "**First Opposition**") the Vagos filed to the first interim fee applications filed by the Professionals. As a result, the Trustee incorporates by reference the reply [Docket No. 1099] (the "**First Reply**") to the First Opposition so as not to repeat everything stated in the First Reply that is applicable to the current Opposition. Contrary to the assertions in the Vagos' Opposition, the standard for approving fees is not conditioned upon distributions to creditors or the results achieved. Rather, the (a) Bankruptcy Code requires a bankruptcy court to review fees from the perspective that existed when the services were rendered and (b) services at issue need not result

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

in an immediate "material benefit" to the Estate. The services need to be "reasonably likely" to benefit the Estate at the time they were rendered. As with the First Opposition, the new Opposition does not question any of the Professionals' time entries but instead makes wholesale vague objections in various billing categories that are <u>based solely on the results achieved or the lack of distributions to creditors – neither of which are appropriate grounds under the law</u>.

As set forth in greater detail below, the Opposition should be overruled.

**II.**

**TRUSTEE WILL CONTINUE TO MAINTAIN
<u>A RESERVE FOR THE PURPOSE OF ADMINISTERING THE ESTATE</u>**

The Trustee is sensitive to the fact that the Fee Applications seek approval for combined fees and expenses that exceed the amount of funds presently on hand in the Estate. Accordingly, as he has previously in this case, the Trustee has always planned, subject to Court approval, to (a) reimburse the allowed expenses of all professionals, (b) pay 100% of the allowed fees of Kieckhafer, Hawes and Goldfarb given that they are relatively small and/or incurred by professionals that do not routinely provide services in chapter 11 cases; and (c) pay a percentage of the allowed fees of the Trustee, DSI and PSZJ to extent possible while maintaining a sufficient reserve.

The Trustee currently holds a cash reserve of approximately $820,000.00. Of that amount, the Trustee plans to retain approximately $750,000.00 to administer the Estate. Thus, once the Estate receives the proceeds from the sale of Leonardo Plaza, any other property that is sold, or from other sources (*e.g.*, Life Capital Group, LLC), the Trustee anticipates making a distribution on notice to parties as he did pursuant to the prior orders approving fees. *See e.g.*, [Docket Nos. 1115 and 1208]. The Trustee, using his business judgment as called for by section 363 of the Bankruptcy Code, will only pay any awards made on account of the Fee Applications in full upon receipt of sufficient funds that also allow him to maintain a sufficient reserve for the Estate.

**III.**

**THIS IS NOT A COMMERCIAL CASE WITH PARTIES MAKING COMMERCIAL
<u>DECISION BUT A CASE BASED ON THE DEBTOR'S RAMPANT PREPEITION FRAUD</u>**

Section 1106(a)(1) and (3) of the Bankruptcy Code requires the Trustee to investigate the acts, conduct, assets, liabilities, and financial condition of the Debtor. The Trustee's and his

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

professionals' efforts to administer this case have been prolonged and made more complicated because the Debtor provides little to no information about the estate and also opposes the Trustee's administration of the Estate nearly every step of the way. The Debtor's conduct unfortunately increases the cost of administering the Estate. Due to his statutory obligations under the Bankruptcy Code, the Trustee does not have the luxury to elect to not investigate the Estate and that investigation inevitably comes with delay and cost.

None of the creditors of this Estate are "commercial" creditors of the sort typically found in a chapter 11 reorganization case. Rather, the creditor body here is made up of quintessential fraud victims who have seen parts, or all, of their lives ruined by the Debtor. The Debtor's estate is not a commercial enterprise that the Trustee can manage with goals of beating projections, managing employees, and preserving operational profits for the benefit of the Estate. The Debtor has opposed nearly all of the Trustee's efforts to administer this case. As non-commercial victims of the Debtor, these creditors have virtually no experience with the bankruptcy process, and they have been clearly chastened by the Debtor's misdeeds. At the end of the day, *no party* was willing to work with the Trustee:  not the Debtor, not the Debtor's partner at LCG, nor any other creditor (with the sole exception being with respect to resolution of their particular claims).

**IV.**

**THE VAGOS RELY ON PROPOSITIONS IN THIS CIRCUIT WITHOUT TAKING INTO CONSIDERATION THE FACTS IN THOSE CASES THAT SUPPORTED THE HOLDINGS**

As with the First Opposition, the Vagos cite the relevant provisions of section 330(a) of the Bankruptcy Code but they do not apply any of the factors a bankruptcy court considers to any of the detailed time entries supplied by PSZJ or any of the other Professionals. Instead, the Vagos rely on quotes from Ninth Circuit decisions and other decisions within this Circuit without taking into consideration any of the facts in those cases and whether the legal holdings in those cases have any application to facts in the case at bar.

In the Ninth Circuit, bankruptcy courts are required to review fee request in a **prospective** manner and not retrospectively focusing on the results or the present recovery. The leading case on this issue, which the Vagos rely on, holds that,

4925-1889-8792.2 78512.001

[s]ection 330(a)(3)(A)(C) clearly states that the question governing attorney compensation should be whether services were necessary or beneficial at the time at which the service was rendered. The Fifth Circuit reasoning that a professional's services are only compensable if they result in a material benefit to the estate does not comport with a strict reading of the statute. Section 330 clearly states that (1) services are compensable if they were "necessary . . . or beneficial at the time at which the service was rendered," and (2) services should not be compensable if they were not "reasonably likely to benefit the debtor's estate." §§ 330(a)(3)(A)(C) and (a)(4)(A)(ii)(I). The statute does not require that the services result in a material benefit to the estate in order for the professional to be compensated; the applicant must demonstrate only that the services were "reasonably likely" to benefit the estate at the time the services were rendered. The statute is clear and unambiguous. In our view, the Fifth Circuit's reading of the statute does not comport with the clear meaning of the 1994 amendments, would unreasonably restrict legitimate professional efforts toward effective estate administration, and could well cause attorneys to shy away from work that might benefit the estate. We therefore respectfully reject the Fifth Circuit's view.

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co.* (*In re Mednet*), 251 B.R. 103, 108 (9th Cir. B.A.P. 2000).

The Vagos rely upon *Mednet* for a statement about billing judgment but fail to advise the Court that the holding in *Mednet* (a) requires a bankruptcy court to review fees from the perspective that existed when the services were rendered and (b) found that the services at issue need not result in an immediate "material benefit" to the Estate. Instead, the services need to be "reasonably likely" to benefit the Estate at the time they were rendered. The Opposition does not question any of PSZJ's time entries but instead makes wholesale vague objections in various billing categories that are <u>based solely on the results achieved or the lack of distributions to creditors</u>.

The Vagos assert that "[r]egarding the requirement to exercise billing judgment, the Ninth Circuit has stated that employment authorization does 'not give [the professional] free reign to run up a tab without considering the maximum probable recovery.'" citing *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 958 (9th Cir. 1991. In *Puget Sound*, the bankruptcy court authorized the committee to review $120,000 in attorneys' fees of a secured creditor and on appeal the Ninth Circuit affirmed the bankruptcy court's denial of fees because the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4925-1889-8792.2 78512.001

5

committee's counsel was informed that the fees were reasonable and that cost incurred opposing the fees would likely exceed the amount of fees in dispute, yet still went ahead and opposed the lender's fees without any regard to the cost at issue. *Id*. at 959.

The professional's billing judgment in *Puget Sound* was questionable because the services ($120,000 in fees) related to a claim that was *already recognized* to be largely indisputable and thus it was highly unlikely for there to be any upside to the estate if the claim were disallowed when compared to the fees incurred contesting the claim. Here, on the contrary, the Trustee and PSZJ were handed an estate that was in complete disarray with little to no information. It was impossible for the Trustee to administer the Estate and make informed decisions without acquiring information about the Estate and the claims asserted by and against the Estate.

As a result, the Trustee, with the assistance of his bankruptcy counsel, was required to force the eviction of the Debtor from the June St. Property, prosecute the appeal of the June St. Property judgment, the sale of Leonardo Plaza, and the turnover of June St. Property, take action to reverse or unwind the Debtor's attempts to transfer the June St. Property and steal the causes of actions against LCG. Presumably, creditors, including the Vagos, want the Trustee to take control of Estate assets and preserve them so their proceeds can be distributed to the holders of allowed claims rather than make decisions in a vacuum and potentially leave assets unadministered or allow claims in amounts that are unsubstantiated. Unlike *Puget Sound*, the Trustee and PSZJ do not have the luxury of information and transparency into various transactions. The Trustee continues to fight with the Debtor regarding the title to the June St. Property that has value in excess of $5,000,000.

Similarly, the Vagos cite and rely upon *In re Riverside-Linden Investment Co.*, 925 F.2d 320, 321 (9th Cir. 1991) for the proposition that "[w]hen a cost benefit analysis indicates that the only parties who will likely benefit from [a service] are the trustee and his professionals, the service is unwarranted and a court does not abuse its discretion in denying fees for those services." The Vagos again fail to explain that the Ninth Circuit upheld the denial of fees in *Riverside-Linden* because (a) the claim that was investigated was known to be valid and the estate was solvent and had money to satisfy the claim, *Id*. at 322, (b) there was no need to investigate the equity holders interest especially when the lone creditor did not contest distributions being made to equity, *Id*. 323-324, and (c) there

was no need to prepare a full tax return as opposed to a simple summary as the Bankruptcy Code requires. *Id.* at 324.

The professional's billing judgment in *Riverside-Linden* was rightly questioned because it was apparent that the services performed were not necessary before they began. Here, it is necessary for the Trustee to incur legal fees so that he can make informed decisions. It is impossible to administer a bankruptcy estate without information and the Trustee has utilized PSZJ to gather information so that he can make decisions. The fact gathering necessitates the incurrence of fees and the Trustee and PSZJ have not continued to pursue an investigation or other transaction if after acquiring information it did not appear there would be a benefit to the Estate. For example, the Trustee considered selling the personal property located at the June St. Property but determined that the personal property had inconsequential value and the costs would likely exceed the sale proceeds. *See, e.g.*, [Docket No. 1223].

**V.**

### THE VAGOS' OBJECTIONS ARE VAGUE GENERALIZATIONS THAT FOCUS ON POTENTIAL DISTRIBUTIONS TO CREDITORS RATHER THAN VIEWING THE SERVICES FROM THE TIME THEY WERE RENDERED

The Vagos object to eight categories of fees in a vague, general manner but do not contest whether any of the services rendered were necessary or beneficial. Instead, each objection questions the fees incurred by looking at the consequences of the services, which from the Vagos' perspective includes only distributions to creditors.

In response to the First Opposition, the Court

> [O]verrule[d] the Vagos' objections to Trustee's Counsel's fees because, as Trustee's Counsel highlights, they do not refer to any specific time entries that they find objectionable, and their arguments appear to seek a retrospective review of Trustee's Counsel's services rather than analyzing whether the services were reasonably likely to benefit the estate at the time they were rendered. Although this Court has its own obligation to review the reasonableness of professionals' fees and expenses, the tentative ruling is that Trustee's Counsel's services appear to be reasonable and necessary considering Debtor's complete lack of cooperation and the dearth of information and documentation available to Trustee at the time of his initial appointment. The tentative ruling is also that while parties in interest are free to object to the

allowance of fees under section 330 or 331, nobody should be subjected to "20/20 hindsight."

Tentative Ruling, June 3, 2025 at 8:41:16 a.m. (the "**June 3 Fee Opinion**").

The Opposition should be overruled for the same reasons the First Opposition was overruled by the June 3 Fee Opinion. The Trustee nevertheless responds to each of the Vago's generalized objections below.

## A.    Asset Disposition

The current Opposition should be overruled for the same reasons set forth in the June 3 Fee Opinion. For example, in the Vagos' Opposition to the fee incurred in the "Asset Disposition" category, the Vagos contend that PSZJ should not be compensated for its work (a) evicting the Debtor from the June St. Property, (b) voiding the post-petition transfer of the deed to such property, (c) facilitating the sale of the Debtor's properties located in Israel, (d) working with the lenders to the property located at 143 S. Highland, and (e) investigating other potential life insurance policies.

The Trustee's litigation regarding the June St. Property was initiated in May 2024, the Court (Judge Klein) ruled on the summary judgment motion in December 2024, the Trustee immediately moved to obtain possession of the June St. Property, which the Debtor refused to comply requiring the Trustee to obtain a contempt order and employ the United States Marshal to evict the Debtor from the property, the BAP affirmed this Court's ruling on June 5, 2025 [BAP Docket No. 20], the BAP denied the Debtor's request for a new hearing on August 6, 2025 [BAP Docket No. 25], and the Debtor's time to appeal the BAP's ruling expired on September 5, 2025.

The above process is necessary and PSZJ's fees should not be conditioned on the sale of the June St. Property, which the Trustee has recently began to ready for sale and marketing after the Debtor elected not to appeal the BAP's affirmance of this Court's order that the June St. Property is property of the Estate. The Trustee expects that the June St. Property will yield substantial value given that it is not encumbered and subject to an exemption in the approximate amount of $189,050 and pending real property taxes. Remarkably, the Vagos appear to contest the PSZJ work to unwind the Debtor's illegal transfer of the June St. Property to his wholly owned company EKLK in violation of the automatic stay. While it is true that this work did not result in any distributions to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

creditors, it did preserve the value of an Estate asset that is worth more than $5,000,000, which would have otherwise been lost and the value would not have been available to pay the allowed claim of the Vagos and other creditors.

## B.    Bankruptcy Litigation

Most of the fees in the "Bankruptcy Litigation" category relate to the Trustee's complaint filed against Life Capital Group, LLC ("**LCG**"). *See*, Adv. Case No. 25-01020 (the "**LCG Action**"). In the LCG Action, the Trustee filed a complaint seeking to avoid a settlement the Debtor entered into that has value in excess of $6,000,000 and preference claims in the aggregate amount of $1,450,000. In response to filing the complaint, LCG and other defendants filed a motion to compel arbitration [Adv. Docket Nos. 26-28] (the "**Motion to Compel**"). The Trustee had a good faith basis to oppose the Motion to Compel and the results of such motion or the LCG Action generally should not dictate whether or not to approve the fees in in the PSZJ Fee Application.

## C.    Case Administration

The Vagos contend that PSZJ should not be compensated for case administration, which includes calendaring, updating deadlines, maintaining work in progress list, and reviewing court procedures. Notably, all of the above services are performed by a paralegal. In addition, PSZJ, DSI, and the Trustee meet weekly, or as necessary, to address work-streams and other action items in the case. It is impossible to move this case forward without meeting internally and with the Trustee. PSZJ staffs this representation with only three primary attorneys. PSZJ could use junior attorneys but PSZJ believes that would only increase the fees because it would add an additional layer of legal oversight that is avoided when the work is performed by experienced attorneys.

## D.    Claims Administration

The Vagos wrongly contend that the approximate $108,000 in fees in "Claim Administration" category relate "almost exclusively" to documenting the settlement with the Vagos. While the Vagos contend the motion was not contested, they fail to recall that the motion seeking approval of the settlement with the Vagos was contested. *See* [Docket No. 1003]. Notably, the Vago's filed a pleading [Docket No. 1011] in reply to the opposition. The settlement with the Vagos was ultimately approved but the Trustee and his counsel do not take settlements lightly given that the

Vagos, Mermelsteins, and Bergers each objected to the Trustee's settlement with Gestetner, which the Trustee believed was straightforward. The Trustee, through counsel, is required to present to the Court the necessary facts to support the Court's approval of a settlement motion, which takes time even for settlements that are straightforward in the event they are contested. The settlement with the Vagos resulted reduction of their claim in the amount of approximately $8,500,000, which will inure to the benefit of all creditors by reducing the overall amount of claims in the unsecured claims pool. The other fees relate to claim settlements that the Trustee will be filing shortly that will result in the reduction of claims in the tens of millions of dollars.

### E.    Preparation of Fee Applications

The Trustee believes that it is prudent to file fee applications quarterly so that the Court and other parties in interest are informed about fees and expenses incurred by estate professionals and the work they are undertaking. The Trustee does not agree with the Vagos that fee applications should wait until there is sufficient cash to pay estate professionals. The Trustee believes that it is more manageable for the Court and the UST to review fees for a more discrete period rather than waiting for an undetermined period of time to pass before filing a fee application. In either case, fee applications must be prepared and it is not a waste of estate resources to prepare them at time when the estate does not have sufficient cash to pay them because the expense will be incurred at some point.

### F.    Stay Litigation

The litigation relating to the automatic stay is the result of the Debtor's disregard for the bankruptcy case he filed and the Court's orders in this case. The Vagos contend it is premature to award these fees when there is no certainty that unsecured creditors will receive any meaningful distribution from the Estate. However, the Trustee cannot control the Debtor's actions. The Debtor and his counsel have violated the automatic stay on at least three occasions:

- Debtor and his counsel commenced an action in probate court seeking to reform the Debtor's living trust so that the June St. Property is owned by a sub-trust and not part of the Estate;

- Debtor commenced an action against LCG, among others, attempting to usurp the Estate claims against LCG, which have value in excess of $6,000,000; and

4925-1889-8792.2 78512.001

10

- Debtor transferred the June St. Property to EKLK, a company wholly owned by the Debtor.

More recently, the Trustee discovered that the Debtor wrongly filed a *lis pendens* against the June St. Property and subsequently filed a motion on shortened time for an order to have it vacated. The Trustee must respond to these actions by the Debtor or the Estate would stand to lose millions in value. Plus, the fees and expenses of PSZJ and other estate professionals that are aimed at preserving Estate assets should not be conditioned upon distributions to creditors.

**VI.**

**THE OBJECTIONS TO THE OTHER
PROFESSIONALS ARE VAGUE AND UNSUBSTANTIATED**

The Vagos generally object to all the other fee application filed by the Trustee's professionals but fail to identify any problem with any application. Instead, the Vagos ask whether or not any of their services have resulted in a return of assets to the Estate. All of the applications outline the services provided on a professional-by-professional basis. The Trustee should not be required to re-state what is in each of the fee application to further support the fee applications. Plus, the Vagos' sole focus on "recovery of assets" misses the mark insofar as the standard is applied under section 330 of the Bankruptcy Code. Accordingly, the opposition to the Trustee's other professionals should be denied.

**VII.**

**CONCLUSION**

For the reasons set forth herein, the Trustee requests that the Fee Applications be approved and the Opposition be overruled.

Dated:  September 25, 2025          PACHULSKI STANG ZIEHL & JONES LLP


By:  */s/ John W. Lucas*
       John W. Lucas

       *Attorneys for Bradley D. Sharp,
       Chapter 11 Trustee*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA