Jeffrey W. Dulberg (CA State Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  jdulberg@pszjlaw.com
         jlucas@pszjlaw.com

Counsel to Bradley D. Sharp, Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>              Debtor. | Case No. 2:23-bk-10990-NB<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF CHAPTER 11 TRUSTEE FOR ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND ROBERT AND ESTHER MERMELSTEIN PURSUANT TO BANKRUPTCY RULE 9019; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF BRADLEY D. SHARP AND ROBERT MERMELSTEIN ANNEXED THERETO AND FILED CONTEMPORANEOUSLY HEREWITH**<br><br>Date:     November 18, 2025<br>Time:    2:00 p.m.<br>Place:   Courtroom 1545<br>          255 E. Temple Street<br>          Los Angeles, CA 90012 |

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, ROBERT AND ESTHER MERMELSTEIN AND THEIR ATTORNEY OF RECORD, THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that Bradley D. Sharp, the duly appointed, authorized, and acting

chapter 11 trustee (the "**Trustee**") of the bankruptcy estate (the "**Estate**") of Leslie Klein, the debtor

herein (the "**Debtor**") hereby moves (the "**Motion**") the Court for entry of an order pursuant Rule

9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") to approve the

settlement ("**Settlement**") by and between the Trustee, on behalf of the Estate, on the one hand, and

LA:4899-1623-0768.4 78512.001

Robert and Esther Mermelstein (the "**Mermelsteins**" or "**Claimants**"), on the other hand (and together with the Trustee, the "**Parties**"), regarding Proof of Claim 19-2 ("**Claim 19-2**"), Proof of Claim 20-2 ("**Claim 20-2**"), Proof of Claim 21-2 ("**Claim 21-2**), Proof of Claim 22-2 ("**Claim 22-2**"), Proof of Claim 23-2 ("**Claim 23-2**"), Proof of Claim 24-2 ("**Claim 24-2**"), and Proof of Claim 25-3 ("**Claim 25-3**", and each a "**Claim**" and, collectively, the "**Claims**").

The terms of the Settlement are more fully set forth in the Settlement Agreement (the "**Settlement Agreement**") annexed hereto as **Exhibit "A"**. The principal terms include: (1) Claim 19-2, filed in the face amount of $1,178,219.17, will be reduced and allowed as a general unsecured claim in the amount of $500,000.00; (2) Claim 20-2, filed in the face amount of $362,556.71, will be reduced to $0.00; (3) Claim 21-2, filed in the face amount of $1,178,219.17, will be reduced and allowed as a general unsecured claim in the amount of $500,000.00; (4) Claim 22-2, filed in the face amount of $2,928,219.17, will be reduced and allowed as a general unsecured claim in the amount of $2,250,000.00; (5) Claim 23-2, filed in the face amount of $2,496,438.34, will be reduced and allowed as a general unsecured claim in the amount of $1,200,000.00; (6) Claim 24-2, filed in the face amount of $2,296,438.34, will be reduced and allowed as a general unsecured claim in the amount of $1,000,000.00; (7) Claim 25-3, filed in the face amount of $10,557,615.81, will be reduced and allowed as a general unsecured claim in the amount of $3,662,679.53; and (8) Claimants agree that they do not have a direct interest in or claim to the proceeds of the life insurance policies that gave rise to the Claims, or any other life insurance policy that is owned, controlled, or held by Life Capital Group, LLC.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion has been scheduled for **November 18, 2025,** at **2:00 p.m. Pacific Time**, or as soon thereafter as counsel may be heard before the Honorable Neil W. Bason, United States Bankruptcy Judge, in Courtroom 1545, 255 East Temple Street, Los Angeles, California 90012.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the declarations of Bradley D. Sharp and Robert Mermelstein annexed thereto and filed contemporaneously herewith, the record in this

chapter 11 case, as well as any other documentary evidence as may be presented to this Court at or before the hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), if you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it upon the undersigned counsel no later than fourteen (14) days prior to the hearing on the Motion.  The failure to properly file and serve an opposition may be deemed consent to the relief requested in the Motion or a waiver of any right to oppose the Motion.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order (a) granting the Motion; (b) approving the terms of the Settlement as set forth in the Settlement Agreement and the Trustee's execution thereof; and (c) granting the Trustee such other and further relief as the Court deems just and proper.

Dated:    October 23, 2025                    PACHULSKI STANG ZIEHL & JONES LLP

By */s/ John W. Lucas*
       John W. Lucas

Counsel to Bradley D. Sharp, Chapter 11 Trustee

LA:4899-1623-0768.4 78512.001                    3

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      BACKGROUND**

**A.      The Administration Of The Bankruptcy Case**

On February 22, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of United States Code.

On May 23, 2023, in response to certain motions to dismiss the case, the Court entered an order directing the United States Trustee (the "**UST**") to appoint a chapter 11 trustee [Docket No. 142]. On that same day, the UST filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No. 151], appointing Bradley D. Sharp to serve as chapter 11 trustee. On May 23, 2023, the UST Filed an *Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154], approved by order entered the same day [Docket No. 155]. On that same day, the Trustee accepted his appointment [Docket No. 156].

**B.      Circumstances Leading to Settlement**

In accordance with his statutory duties under the Bankruptcy Code, the Trustee and his professionals are reviewing all proofs of claim filed against the estate to determine whether they are appropriate in amount and classification. As part of that review, the Trustee and his professionals reviewed the Claims and determined the Claims were objectionable. Instead of filing a formal objection to the claims, the Trustee contacted Claimants' counsel to discuss the Trustee's concerns with the Claims and a potential resolution. The Settlement Agreement reflects the outcome of the Parties' successful negotiations.

**II.      SUMMARY OF THE SETTLEMENT**

The Parties have negotiated all claims between them and a full and complete settlement has been achieved with the following principal terms:[1]

- Reduction and Allowance of Claim 19-2:  On or before the occurrence of the effective date of the Settlement Agreement, Claim 19-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $500,000.00.  Proof of Claim 19-1 shall be expunged as having been amended and superseded by Claim 19-2 and the terms of the Settlement Agreement.

---

[1] The terms described are referenced herein as the "**Settlement**." A true and correct copy of the Settlement Agreement is annexed hereto as Exhibit "A".

- <u>Reduction of Claim 20-2</u>:  On or before the occurrence of the effective date of the Settlement Agreement, Claim 20-2 shall be modified and reduced to $0.00.  Proof of Claim 20-1 shall be expunged as having been amended and superseded by Claim 20-2 and the terms of the Settlement Agreement.

- <u>Reduction and Allowance of Claim 21-2</u>:  On or before the occurrence of the effective date of the Settlement Agreement, Claim 21-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $500,000.00.  Proof of Claim 21-1 shall be expunged as having been amended and superseded by Claim 21-2 and the terms of the Settlement Agreement.

- <u>Reduction and Allowance of Claim 22-2</u>:  On or before the occurrence of the effective date of the Settlement Agreement, Claim 22-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $2,250,000.00.  Proof of Claim 22-1 shall be expunged as having been amended and superseded by Claim 22-2 and the terms of the Settlement Agreement.

- <u>Reduction and Allowance of Claim 23-2</u>:  On or before the occurrence of the effective date of the Settlement Agreement, Claim 23-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $1,200,000.00.  Proof of Claim 23-1 shall be expunged as having been amended and superseded by Claim 23-2 and the terms of the Settlement Agreement.

- <u>Reduction and Allowance of Claim 24-2</u>:  On or before the occurrence of the effective date of the Settlement Agreement, Claim 24-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $1,000,000.00.  Proof of Claim 24-1 shall be expunged as having been amended and superseded by Claim 24-2 and the terms of the Settlement Agreement.

- <u>Reduction and Allowance of Claim 25-3</u>:  On or before the occurrence of the effective date of the Settlement Agreement, Claim 25-3 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $3,662,679.53.  Proof of Claim 25-1 and Proof of Claim 25-2 shall be expunged as having been amended and superseded by Claim 25-3 and the terms of the Settlement Agreement.

- <u>Source of Payments</u>.  Claimants hereby agree that they do not have a direct interest in or claim to the proceeds of the life insurance policies of Garza, Ganz, Spitzer, Kohn, Friedman, and Zimmerman, or any other life insurance policy that is owned, controlled, or held by Life Capital Group, LLC.

- The Settlement does not diminish, alter, impair, or in any way affect Claimants' existing judgment [Adv. Pro. Docket No. 58] in the amount of $21,737,740.70 entered in Adv. Case No. 23-01153, which remains fully intact, enforceable, and wholly independent of this Settlement; provided, however, Claimants shall not enforce the judgment against property of the Debtor's bankruptcy estate, which includes all pre and postpetition property of the Debtor's estate as provided by 11 U.S.C. §§ 541 and 1115.

The foregoing is a summary and creditors and other interested parties are encouraged to review the Settlement Agreement in its entirety for the complete terms of the Settlement.

### III.    BACKGROUND REGARDING THE CLAIMS

The summary below outlines how each Claim arose and provides the documentation or agreement that gave rise to the claims.

#### A.    Claim 19-2

The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated August 3, 2009 (the "**Garza Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy of Marjorie Garza (the "**Garza Policy**") issued by American General. A true and correct copy of the Garza Joint Venture is annexed to Claim 19-2 that was filed with the Court.

Per the terms of the Garza Joint Venture, the Mermelsteins were to receive $500,000.00 upon the maturity of the Garza Policy. Per Claim 19-2, the Mermelsteins sought to recover interest in the amount of $678,219.17 on account of the $500,000.00 owed under the Garza Joint Venture. The terms of the Garza Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Garza Policy.

The Debtor subsequently sold an interest in the Garza Policy to a third party but also collected the proceeds when the Garza Policy matured and never paid the Mermelsteins their share per the terms of the Garza Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 19-2 in the amount of $500,000.00.

#### B.    Claim 20-2

On or about July 16, 2012, the Debtor, as trustee of The Times Square Media, Inc., executed a promissory note in favor of the Mermelsteins in the principal amount of $333,333.00. Per the terms of the Settlement, the Mermelsteins agreed that Claim 20-2 is expunged or entitled to $0.00.

#### C.    Claim 21-2

The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated August 3, 2009 (the "**Ganz Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy of Emanuel Ganz (the "**Ganz Policy**") issued by American General. A true and correct copy of the Ganz Joint Venture is annexed to Claim 21-2 that was filed with the Court.

Per the terms of the Ganz Joint Venture, the Mermelsteins were to receive $500,000.00 upon the maturity of the Ganz Policy. Per Claim 21-2, the Mermelsteins sought to recover interest in the amount of $678,219.17 on account of the $500,000.00 owed under the Ganz Joint Venture. The terms of the Ganz Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Ganz Policy.

The Debtor subsequently sold an interest in the Ganz Policy to a third party but also collected the proceeds when the Ganz Policy matured and never paid the Mermelsteins their share per the terms of the Ganz Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 21-2 in the amount of $500,000.00.

D.    **Claim 22-2**

The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated August 3, 2009 (the "**Spitzer Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy of Malvine Spitzer (the "**Spitzer Policy**") issued by American General. A true and correct copy of the Spitzer Joint Venture is annexed to Claim 22-2 that was filed with the Court.

Per the terms of the Spitzer Joint Venture, the Mermelsteins were to receive $2,250,000.00 upon the maturity of the Spitzer Policy. Per Claim 19-2, the Mermelsteins sought to recover interest in the amount of $678,219.17 on account of the $2,250,000.00 owed under the Spitzer Joint Venture. The terms of the Spitzer Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Spitzer Policy.

The Debtor subsequently sold an interest in the Spitzer Policy to a third party and the Debtor's estate does not control the Spitzer Policy or expect to receive any distribution upon its maturity. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 22-2 in the amount of $2,250,000.00.

E.    **Claim 23-2**

The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated March 12, 2010 (the "**Kohn Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy of Eugene Kohn (the "**Kohn Policy**") issued by American

General. A true and correct copy of the Kohn Joint Venture is annexed to Claim 23-2 that was filed with the Court.

Per the terms of the Kohn Joint Venture, the Mermelsteins were to receive $1,200,000.00 upon the maturity of the Kohn Policy. Per Claim 23-2, the Mermelsteins sought to recover interest in the amount of $1,296,438.34 on account of the $1,200,000.00 owed under the Kohn Joint Venture. The terms of the Kohn Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Kohn Policy.

The Debtor subsequently transferred the Kohn Policy to Life Capital Group, LLC. The Kohn Policy matured and the proceeds were paid to the Trustee, on behalf of the Debtor's estate, on account of the Debtor's 50% ownership interest in Life Capital Group, LLC. The Mermelsteins will not receive a direct distribution on account of the Kohn Policy per the terms of the Kohn Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 23–2 in the amount of $1,200,000.00.

### F.    Claim 24-2

The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated March 12, 2010 (the "**Friedman Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy Goldie Friedman (the "**Friedman Policy**") issued by American General. A true and correct copy of the Friedman Joint Venture is annexed to Claim 24-2 that was filed with the Court.

Per the terms of the Friedman Joint Venture, the Mermelsteins were to receive $1,000,000.00 upon the maturity of the Friedman Policy. Per Claim 24-2, the Mermelsteins sought to recover interest in the amount of $1,296,438.34 on account of the $1,000,000.00 owed under the Friedman Joint Venture. The terms of the Friedman Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Friedman Policy.

The Debtor subsequently sold an interest in the Friedman Policy to a third party but also collected the proceeds when the Friedman Policy matured and never paid the Mermelsteins their share per the terms of the Friedman Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 24-2 in the amount of $1,000,000.00.

### G.    Claim 25-3

#### 1.    Zimerman Joint Venture

The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated August 3, 2009 (the "**Zimmerman Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy Rozy Pearl Zimmerman (the "**Zimmerman Policy**") issued by American General. A true and correct copy of the Zimmerman Joint Venture is annexed to Claim 25-3 that was filed with the Court.

Per the terms of the Zimmerman Joint Venture, the Mermelsteins were to receive $2,250,000.00 upon the maturity of the Zimmerman Policy. Per Claim 25-3, the Mermelsteins sought to recover interest in the amount of $3,051,986.52 on account of the $2,250,000.00 owed under the Zimmerman Joint Venture. The terms of the Zimmerman Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Zimmerman Policy.

The Debtor subsequently transferred the Zimmerman Policy to Life Capital Group, LLC. The Zimmerman Policy recently matured and the Trustee expects that the proceeds will be paid to the Debtor's estate, not the Mermelsteins per the terms of the Zimmerman Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle this portion of Claim 25-3 in the amount of $2,250,000.00.

#### 2.    The December 7, 2009 Note

The Debtor executed a promissory note, dated December 7, 2009 (the "**Dec. 7 Note**"), on behalf of a trust he controlled of the insured under the Zimmerman Policy for the benefit of the Mermelsteins in the amount of $570,000.00. A copy of the Dec. 7 Note is annexed to Claim 25-3.

The terms of the Dec. 7 Note are non-recourse. The Mermelsteins were not able to show they actually lent the Debtor $570,000.00 per the terms of the Dec. 14 Note. Per the terms of the Setttlement, the Trustee and the Mermelsteins agreed to settle this portion of Claim 25-3 in the amount of $0.00.

#### 3.    The January 14, 2010 Note

The Debtor executed a promissory note, dated January 14, 2010 (the "**Jan. 14 Note**"), on behalf of a trust he controlled of the insured under the Zimmerman Policy for the benefit of the

Mermelsteins in the amount of $375,000.00. A copy of the Jan. 14 Note is annexed to Claim 25-3.

The terms of the Jan. 14 Note are non-recourse. The Mermelsteins were not able to show they actually lent the Debtor $375,000.00 per the terms of the Dec. 7 Note. Per the terms of the Setttlement, the Trustee and the Mermelsteins agreed to settle this portion of Claim 25-3 in the amount of $0.00.

### 4.     The June 15, 2011 Note

The Debtor executed a promissory note, dated June 15, 2011 (the "**June 15 Note**"), on behalf of a trust he controlled of the insured under the Zimmerman Policy for the benefit of the Mermelsteins in the amount of $1,412,679.53. A copy of the June 15 Note is annexed to Claim 25-3.

The terms of the June 15 Note are non-recourse. However, the Mermelsteins were able to show they actually lent the Debtor $1,412,679.53 per the terms of the June 15 Note. The Mermelsteins produced a bank statement (the "**Bank Statement**") showing that $1,412,704.53 was wired to the Debtor's Bank of America account, xxxxx-x9404. A copy of the Bank Statement is annexed to the Mermelstein Declaration as **Exhibit "C"**.

Per the terms of the Setttlement, the Trustee and the Mermelsteins agreed to settle this portion of Claim 25-3 in the amount of $1,412,679.53.

### 5.     The Sum Total of Claim 25-3

In total, the Trustee and the Mermelsteins agreed to settle Claim 25-3 in the amount of $3,662,679.53.

## IV.     RELIEF REQUESTED

By this Motion, the Trustee is seeking, pursuant Rule 9019 of the Federal Rules of Bankruptcy Procedure, an order (a) granting the Motion; (b) approving the Settlement and his entry into the Settlement Agreement; and (c) granting the Trustee such other and further relief as the Court deems just and proper. A proposed form of order granting the Motion is annexed hereto as **Exhibit "B"**.

## V.    THE SETTLEMENT SHOULD BE APPROVED

### A.    Standard of Review for Approval of a Compromise.

Bankruptcy Rule 9019(a) sets forth the requirements for the settlement or compromise of controversies after notice to all creditors and a hearing upon each such proposed compromise. Bankruptcy courts favor compromise. *See In re Sassalos*, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise … rests in the sound discretion of the bankruptcy judge."). In reviewing a settlement, bankruptcy courts must determine whether the settlement is "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Protective Committee v. Anderson*, 390 U.S. 414, 424 (1968). When deciding whether to approve a settlement, the bankruptcy court must determine if the settlement is reasonable under the circumstances of the case, fair and equitable, and in the best interest of the estate.  *See Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). Courts generally should "give[ ] deference to a trustee's business judgment in deciding whether to settle a matter" for the benefit of the estate." (citations omitted). *In re Douglas J. Roger, M.D., Inc., APC, ("Roger"),* 393 F. Supp. 3d 940, 961 (C.D. Cal. 2019). Under the circumstances of this case, the Settlement as set forth in the Settlement Agreement between the Parties meets this standard.

The United States Court of Appeals for the Ninth Circuit has indicated that in determining the fairness, reasonableness, and adequacy of a proposed settlement agreement, a court should consider the following factors:  (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors and the proper deference to their reasonable views in the premises. *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988) (quoting *A & C Props.*, 784 F.2d at 1380). It is not necessary that all of the conclusions reached in the consideration of each of the foregoing factors support the settlement, but taken as a whole, those conclusions must favor

the approval of the settlement. *See In re Pacific Gas & Elec. Co*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)). "Ultimately, the court must determine whether the individual settlement sought to be approved under Bankruptcy Rule 9019(a) falls within the lowest range of reasonableness." *In re TCI2 Holdings, LLC*, 428 B.R. 117, 136 (Bankr. D.N.J. 2010).

As set forth below, the Settlement represents a fair and adequate settlement that should be approved by this Court.

**B.      The Settlement Agreement Satisfies The Rule 9019(a) Standard.**

As discussed below, consideration of the foregoing factors supports Court approval of the proposed Settlement.

**1.      Probability of Success**

While the Trustee believes that his probability of success is high in this matter, he cannot guarantee that he will prevail on appeal or in any trial on the merits.

**(a)      Claim 19-2**

Claim 19-2 was filed in the amount of $1,178,219.17, and of that amount, $678,219.17 was on account of interest accrued at a rate of 10% per annum; however, neither the Garza Joint Venture nor the Garza Policy entitle the Mermelsteins to any interest on account of their agreement with the Debtor. The Trustee nonetheless believes that the Mermelsteins should receive a claim in the amount $500,000.00, which equals the amount payable under the Garza Joint Venture had the Debtor fully performed and not breached the agreement. The Settlement will reduce Claim 19-2 more than 57%, which means that the Trustee will have achieved an outcome that matches any expectation he could have at trial.

**(b)      Claim 20-2**

Claim 19-2 was filed in the amount of $333,333.00 on account of a promissory note that was made by a non-debtor. The Trustee and the Mermelsteins agreed that Claim 20-2 shall be expunged and reduced to $0.00. The Settlement will reduce Claim 20-2 by 100%, which means that the Trustee will have achieved an outcome that exceeds any expectation he could have at trial without taking into consideration any costs avoided by not having to litigate any objections to this claim.

**(c)    Claim 21-2**

Claim 21-2 was filed in the amount of $1,178,219.17, and of that amount, $678,219.17 was on account of interest accrued at a rate of 10% per annum; however, neither the Ganz Joint Venture nor the Ganz Policy entitle the Mermelsteins to any interest on account of their agreement with the Debtor. The Trustee nonetheless believes that the Mermelsteins should receive a claim in the amount $500,000.00, which equals the amount payable under the Ganz Joint Venture had the Debtor fully performed and not breached the agreement. The Settlement will reduce Claim 21-2 more than 57%, which means that the Trustee will have achieved an outcome that matches any expectation he could have at trial.

**(d)    Claim 22-2**

Claim 22-2 was filed in the amount of $2,928,219.17, and of that amount, $678,219.17 was on account of interest accrued at a rate of 10% per annum; however, neither the Spitzer Joint Venture nor the Spitzer Policy entitle the Mermelsteins to any interest on account of their agreement with the Debtor. The Trustee nonetheless believes that the Mermelsteins should receive a claim in the amount $2,250,000.00, which equals the amount payable under the Spitzer Joint Venture had the Debtor fully performed and not breached the agreement. The Settlement will reduce Claim 22-2 more than 30%, which means that the Trustee will have achieved an outcome that matches any expectation he could have at trial.

**(e)    Claim 23-2**

Claim 23-2 was filed in the amount of $2,496,438.34, and of that amount, $1,296,438.34 was on account of interest accrued at a rate of 10% per annum; however, neither the Kohn Joint Venture nor the Kohn Policy entitle the Mermelsteins to any interest on account of their agreement with the Debtor. The Trustee nonetheless believes that the Mermelsteins should receive a claim in the amount $1,200,000.00, which equals the amount payable under the Kohn Joint Venture had the Debtor fully performed and not breached the agreement. The Settlement will reduce Claim 23-2 more than 48%, which means that the Trustee will have achieved an outcome that matches any expectation he could have at trial.

**(f)    Claim 24-2**

Claim 24-2 was filed in the amount of $2,296,438.34, and of that amount, $1,296,438.34 was on account of interest accrued at a rate of 10% per annum; however, neither the Friedman Joint Venture nor the Friedman Policy entitle the Mermelsteins to any interest on account of their agreement with the Debtor. The Trustee nonetheless, believes that the Mermelsteins should receive a claim in the amount $1,000,000.00, which equals the amount payable under the Friedman Joint Venture had the Debtor fully performed and not breached the agreement. The Settlement will reduce Claim 24-2 more than 56%, which means that the Trustee will have achieved an outcome that matches any expectation he could have at trial.

**(g)    Claim 25-3**

Claim 25-3 was filed in the amount of $10,557,615.81, and of that amount, $3,051,986.52 was on account of interest accrued at a rate of 10% per annum; however, neither the Zimmerman Joint Venture nor the Zimmerman Policy entitle the Mermelsteins to any interest on account of their agreement with the Debtor. The Trustee nonetheless believes that the Mermelsteins should receive a claim in the amount $2,250,000.00, which equals the amount payable under the Friedman Joint Venture had the Debtor fully performed and not breached the agreement. The Trustee and the Mermelsteins have agreed that they will receive $0.00 on account of the Dec. 7 Note and the Jau. 14 Note. Last, the Trustee believes that the Mermelsteins should receive a claim in the amount of $1,412,679.53 on account of the June 15 Note because the Bank Statement reflects that the Mermelsteins did fund or lend the Debtor the money, per the terms of the June 15 Note, and the Debtor effectively converted these funds. This conversion resulted in a tort that damaged the Mermelsteins in the face amount of the June 15 Note with no right to assert a claim for interest. The Settlement will reduce Claim 25-3 by more than 65%, which means that the Trustee will have achieved an outcome that matches any expectation he could have at trial.

**(h)    The Overall Settlement**

The Claims as filed totaled $20,997,706.71. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed that the Claims "as reduced" will total $9,112,679.53, which results in an aggregate reduction of more than 43% thereby showing the Trustee will have achieved an outcome

that matches any expectation he could have at trial while avoiding the fees and expenses that would have been incurred.

### 2.    Difficulties With Collection

As this Settlement involves administering proofs of claim and no payment to the estate is anticipated or required, this factor is not pertinent to the approval of the Settlement Agreement.

### 3.    The Complexity of the Litigation

As the Court is aware, due to the nature of this case, the Trustee has limited records available to him to defend against claims. Plus, the records the Trustee has obtained from the Debtor are not always reliable. Accordingly, the Settlement Agreement eliminates the complexities involved in reconstructing the Debtor's sometimes incomplete or inaccurate financial records. However, the Trustee was able to rely on the various joint ventures filed with the Claims and also the Bank Statement that reflects the Mermelsteins lent more than $1.4 million to the Debtor per the terms of the June 15 Note. Thus, in this context the Trustee believes that it is prudent to agree to the terms of the Settlement as described herein because it brings a substantial reduction to the Claims in the aggregate and also brings certainty to the resolution of the allowed amount of the Claims thereby benefiting the holders of all allowed claims whose distributions will be enhanced a s result of the terms of the Settlement.

### 4.    Interests of Creditors

The bankruptcy case has been pending for over two years with the Trustee conducting numerous investigations. There are many substantial claims against the Estate, some holders of which have been litigating with the Debtor for more than a decade. The proposed Settlement is clearly in the best interests of creditors. The Settlement Agreement reduces to $9.1 million asserted claims in the aggregate amount of nearly $21 million, which in the end will help the Trustee propose a plan that will provide for distributions to the holders of all allowed claims. Under the circumstances of this case, the Settlement is fair, reasonable and in the best interests of creditors.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order (a) granting the Motion; (b) approving the Settlement and his entry into the Settlement Agreement; and (c) granting the Trustee such other and further relief as the Court deems just and proper.

Dated:     October 23, 2025                     PACHULSKI STANG ZIEHL & JONES LLP

By */s/ John W. Lucas*
                    John W. Lucas

Counsel to Bradley D. Sharp, Chapter 11 Trustee

## DECLARATION OF BRADLEY D. SHARP

I, Bradley D. Sharp, declare as follows:

1.       I am the duly appointed, authorized and acting chapter 11 trustee of the estate (the "**Estate**") of Leslie Klein, the debtor herein (the "**Debtor**").

2.       I make this Declaration in support of the *Motion for Order Approving Settlement Between The Trustee and Robert and Esther Mermelstein* (the "**Motion**")[2] to which this Declaration is annexed.  All matters set forth herein are based on either my personal knowledge, my review of relevant documents and information, including, without limitation, documents and information supplied to me by my professionals, and the record in this case for which judicial notice is sought. All capitalized terms herein which are otherwise not defined herein shall have the same meaning ascribed to them in the Motion.  If called upon to testify, I could and would testify competently to the facts set forth herein.  A true and correct copy of the Settlement Agreement is annexed hereto as **Exhibit "A"**.

3.       On February 22, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of United States Code.

4.       On May 23, 2023, in response to certain motions to dismiss the case, the Court entered an order directing the UST to appoint a chapter 11 trustee [Docket No. 142].  On that same day, the UST filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No. 151], appointing me to serve as chapter 11 Trustee. On May 23, 2023, the UST Filed an *Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154], approved by order entered the same day [Docket No. 155].  On that same day, I accepted this appointment [Docket No. 156].

5.       The summary below outlines how each Claim arose and provides the documentation or agreement that gave rise to the claims.

---

[2] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

**Claim 19-2**

6.      The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated August 3, 2009 (the "**Garza Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy of Marjorie Garza (the "**Garza Policy**") issued by American General. A true and correct copy of the Garza Joint Venture is annexed to Claim 19-2 that was filed with the Court.

7.      Per the terms of the Garza Joint Venture, the Mermelsteins were to receive $500,000.00 upon the maturity of the Garza Policy. Per Claim 19-2, the Mermelsteins sought to recover interest in the amount of $678,219.17 on account of the $500,000.00 owed under the Garza Joint Venture. The terms of the Garza Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Garza Policy.

8.      The Debtor subsequently sold an interest in the Garza Policy to a third party but also collected the proceeds when the Garza Policy matured and never paid the Mermelsteins their share per the terms of the Garza Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 19-2 in the amount of $500,000.00.

**Claim 20-2**

9.      On or about July 16, 2012, the Debtor, as trustee of The Times Square Media, Inc., executed a promissory note in favor of the Mermelsteins in the principal amount of $333,333.00. Per the terms of the Settlement, the Mermelsteins agreed that Claim 20-2 is expunged or entitled to $0.00.

**Claim 21-2**

10.      The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated August 3, 2009 (the "**Ganz Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy of Emanuel Ganz (the "**Ganz Policy**") issued by

American General. A true and correct copy of the Ganz Joint Venture is annexed to Claim 21-2 that was filed with the Court.

11.    Per the terms of the Ganz Joint Venture, the Mermelsteins were to receive $500,000.00 upon the maturity of the Ganz Policy. Per Claim 21-2, the Mermelsteins sought to recover interest in the amount of $678,219.17 on account of the $500,000.00 owed under the Ganz Joint Venture. The terms of the Ganz Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Ganz Policy.

12.    The Debtor subsequently sold an interest in the Ganz Policy to a third party but also collected the proceeds when the Ganz Policy matured and never paid the Mermelsteins their share per the terms of the Ganz Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 21-2 in the amount of $500,000.00.

**Claim 22-2**

13.    The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated August 3, 2009 (the "**Spitzer Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy of Malvine Spitzer (the "**Spitzer Policy**") issued by American General. A true and correct copy of the Spitzer Joint Venture is annexed to Claim 22-2 that was filed with the Court.

14.    Per the terms of the Spitzer Joint Venture, the Mermelsteins were to receive $2,250,000.00 upon the maturity of the Spitzer Policy. Per Claim 19-2, the Mermelsteins sought to recover interest in the amount of $678,219.17 on account of the $2,250,000.00 owed under the Spitzer Joint Venture. The terms of the Spitzer Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Spitzer Policy.

15.    The Debtor subsequently sold an interest in the Spitzer Policy to a third party and the Debtor's estate does not control the Spitzer Policy or expect to receive any distribution upon its

maturity. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 22-2 in the amount of $2,250,000.00.

**Claim 23-2**

16.     The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated March 12, 2010 (the "**Kohn Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy of Eugene Kohn (the "**Kohn Policy**") issued by American General. A true and correct copy of the Kohn Joint Venture is annexed to Claim 23-2 that was filed with the Court.

17.     Per the terms of the Kohn Joint Venture, the Mermelsteins were to receive $1,200,000.00 upon the maturity of the Kohn Policy. Per Claim 23-2, the Mermelsteins sought to recover interest in the amount of $1,296,438.34 on account of the $1,200,000.00 owed under the Kohn Joint Venture. The terms of the Kohn Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Kohn Policy.

18.     The Debtor subsequently transferred the Kohn Policy to Life Capital Group, LLC. The Kohn Policy matured and the proceeds were paid to the Trustee, on behalf of the Debtor's estate, on account of the Debtor's 50% ownership interest in Life Capital Group, LLC. The Mermelsteins will not receive a direct distribution on account of the Kohn Policy per the terms of the Kohn Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 23-2 in the amount of $1,200,000.00.

**Claim 24-2**

19.     The Mermelsteins and Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated March 12, 2010 (the "**Friedman Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy Goldie Friedman (the "**Friedman Policy**")

issued by American General. A true and correct copy of the Friedman Joint Venture is annexed to Claim 24-2 that was filed with the Court.

20.	Per the terms of the Friedman Joint Venture, the Mermelsteins were to receive $1,000,000.00 upon the maturity of the Friedman Policy. Per Claim 24-2, the Mermelsteins sought to recover interest in the amount of $1,296,438.34 on account of the $1,000,000.00 owed under the Friedman Joint Venture. The terms of the Friedman Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Friedman Policy.

21.	The Debtor subsequently sold an interest in the Friedman Policy to a third party but also collected the proceeds when the Friedman Policy matured and never paid the Mermelsteins their share per the terms of the Friedman Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle Claim 24-2 in the amount of $1,000,000.00.

### Claim 25-3

#### 5.	Zimerman Joint Venture

22.	The Mermelsteins and a Debtor-controlled trust entered into a *Memorandum of Agreement for Joint Venture*, dated August 3, 2009 (the "**Zimmerman Joint Venture**"), with respect to the sharing of proceeds from the life insurance policy Rozy Pearl Zimmerman (the "**Zimmerman Policy**") issued by American General. A true and correct copy of the Zimmerman Joint Venture is annexed to Claim 25-3 that was filed with the Court.

23.	Per the terms of the Zimmerman Joint Venture, the Mermelsteins were to receive $2,250,000.00 upon the maturity of the Zimmerman Policy. Per Claim 25-3, the Mermelsteins sought to recover interest in the amount of $3,051,986.52 on account of the $2,250,000.00 owed under the Zimmerman Joint Venture. The terms of the Zimmerman Joint Venture, however, do not entitle the Mermelsteins to interest on account of any distribution from the Zimmerman Policy.

24.    The Debtor subsequently transferred the Zimmerman Policy to Life Capital Group, LLC. The Zimmerman Policy recently matured and the Trustee expects that the proceeds will be paid to the Debtor's estate, not the Mermelsteins per the terms of the Zimmerman Joint Venture. Per the terms of the Settlement, the Trustee and the Mermelsteins agreed to settle this portion of Claim 25-3 in the amount of $2,250,000.00.

**The December 7, 2009 Note**

25.    The Debtor executed a promissory note, dated December 7, 2009 (the "**Dec. 7 Note**"), on behalf of a trust he controlled of the insured under the Zimmerman Policy for the benefit of the Mermelsteins in the amount of $570,000.00. A copy of the Dec. 7 Note is annexed to Claim 25-3.

26.    The terms of the Dec. 7 Note are non-recourse. The Mermelsteins were not able to show they actually lent the Debtor $570,000.00 per the terms of the Dec. 14 Note. Per the terms of the Setttlement, the Trustee and the Mermelsteins agreed to settle this portion of Claim 25-3 in the amount of $0.00.

**The January 14, 2010 Note**

27.    The Debtor executed a promissory note, dated January 14, 2010 (the "**Jan. 14 Note**"), on behalf of a trust he controlled of the insured under the Zimmerman Policy for the benefit of the Mermelsteins in the amount of $375,000.00. A copy of the Jan. 14 Note is annexed to Claim 25-3.

28.    The terms of the Jan. 14 Note are non-recourse. The Mermelsteins were not able to show they actually lent the Debtor $375,000.00 per the terms of the Dec. 7 Note. Per the terms of the Setttlement, the Trustee and the Mermelsteins agreed to settle this portion of Claim 25-3 in the amount of $0.00.

**The June 15, 2011 Note**

29.    The Debtor executed a promissory note, dated June 15, 2011 (the "**June 15 Note**"), on behalf of a trust he controlled of the insured under the Zimmerman Policy for the benefit of the

Mermelsteins in the amount of $1,412,679.53. A copy of the June 15 Note is annexed to Claim 25-3.

30.    The terms of the June 15 Note are non-recourse. However, the Mermelsteins were able to show they actually lent the Debtor $1,412,679.53 per the terms of the June 15 Note. The Mermelsteins produced a bank statement (the "**Bank Statement**") showing that $1,412,704.53 was wired to the Debtor's Bank of America account, xxxxx-x9404. A copy of the Bank Statement is annexed to the Mermelstein Declaration as **Exhibit "C"**.

31.    Per the terms of the Setttlement, the Trustee and the Mermelsteins agreed to settle this portion of Claim 25-3 in the amount of $1,412,679.53.

### **The Sum Total of Claim 25-3**

32.    In total, the Trustee and the Mermelsteins agreed to settle Claim 25-3 in the amount of $3,662,679.53.

33.    The Parties have negotiated all claims between them and a full and complete settlement has been achieved with the following principal terms:

• Claim 19-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $500,000.00.  Claim 19-1 shall be expunged as having been amended and superseded by Claim 19-2.

•Claim 20-2 shall be modified and reduced to $0.00.  Claim 20-1 shall be expunged as having been amended and superseded by Claim 20-2.

•Claim 21-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $500,000.00.  Claim 21-1 shall be expunged as having been amended and superseded by Claim 21-2.

•Claim 22-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $2,250,000.00.  Claim 22-1 shall be expunged as having been amended and superseded by Claim 22-2.

•Claim 23-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $1,200,000.00.

• Claim 24-2 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $1,000,000.00. Claim 24-1 shall be expunged as having been amended and superseded by Claim 24-2.

• Claim 25-3 shall be modified and Claimants shall have an allowed general unsecured claim in the amount of $3,662,679.53. Claims 25-1 and 25-1 shall be expunged as having been amended and superseded by Claim 25-3.

• Claimants agree that they do not have a direct interest in or claim to the proceeds of any of the foregoing policies, or any other life insurance policy that is owned, controlled, or held by Life Capital Group, LLC.

34. The proposed Settlement achieves all of my goals with respect to the questions regarding the final amount allowed for each of the Claims.

35. In absence of this settlement, I believe that the estate would have to incur legal fees and other expenses to successfully oppose the Claims and there is no guarantee that I would prevail. In my view, the settlement reached here reduces the Claims by more than 43%, which inures to the benefit of all creditors by increasing the pro rata distribution to all claims that are ultimately allowed.

36. The proposed Settlement is clearly in the best interests of creditors. The Case has been pending for nearly two years with numerous investigations having been conducted by me and my professionals employed in this Case. There are many substantial claims against the Estate, some holders of which have been litigating with the Debtor for more than a decade. A proposed form of order granting the Motion is annexed hereto as **Exhibit "B"**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of October, 2025 at ___Los Angeles___, California.

_____
Bradley D. Sharp

LA:4899-1623-0768.4 78512.001                                  24

# EXHIBIT A

## (Settlement Agreement)

LA:4899-1623-0768.4 78512.001

## SETTLEMENT AGREEMENT

This *Settlement Agreement* ("**Agreement**") is made and entered into by and between Bradley D. Sharp, solely in his capacity as the duly appointed, authorized, and acting chapter 11 trustee (the "**Trustee**") of the bankruptcy estate of Leslie Klein (the "**Debtor**") and Robert and Esther Mermelstein (the "**Mermelsteins**"), with reference to the following facts and recitals.  The Trustee and the Mermelsteins are referred to collectively hereinafter as the "**Parties**," and individually as a "**Party**."

## RECITALS

WHEREAS, the Debtor commenced a voluntary chapter 11 case on February 22, 2023, Case No.: 2:23-bk-10990-SK, in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "**Court**").

WHEREAS, the Mermelsteins filed the following proofs of claim (the "**Amended and Superseded Claims**") against the Debtor's estate, each in connection with certain life insurance policies, as designated below:

| Claim No. | Claim Amount | Life Insurance Policy |
|-----------|--------------|-----------------------|
| 19-1 | $500,000.00 | Garza |
| 20-1 | $333,333.00 | Times Square Media |
| 21-1 | $500,000.00 | Ganz |
| 22-1 | $2,250,000.00 | Spitzer |
| 23-1 | $1,200,00.00 | Kohn |
| 24-1 | $1,000,000.00 | Friedman |
| 25-1 | $2,400,000.00 | Zimmerman |
| 25-2 | $7,697,616.34 | Zimmerman |

WHEREAS, the Mermelsteins amended the above Amended and Superseded Claims (in certain cases, more than once) by filing the proofs of claim (the "**Mermelstein Claims**") listed below against the Debtor's estate:

| Claim No. | Claim Amount | Life Insurance Policy |
|-----------|--------------|-----------------------|
| 19-2 | $1,178,219.17 | Garza |
| 20-2 | $362,556.71 | Times Square Media |
| 21-2 | $1,178,219.17 | Ganz |
| 22-2 | $2,928,219.17 | Spitzer |
| 23-2 | $2,496,438.34 | Kohn |
| 24-2 | $2,296,438.34 | Friedman |
| 25-3 | $10,557,615.81 | Zimmerman |
| | | |
| Total: | $20,997,706.71 | |

1

WHEREAS, on May 12, 2023, the Mermelsteins commenced an adversary proceeding for Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6); and for Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2)(A); 11 U.S.C. § 727(a)(2)(B); 11 U.S.C. § 727(a)(3); 11 U.S.C. § 727(a)(4); 11 U.S.C. § 727(a)(5), Adv. Case No. 23-01153 (the "**Adversary Proceeding**").

WHEREAS, on February 16, 2024, in the Adversary Proceeding, the Mermelsteins obtained a non-dischargeable judgment against the Debtor, pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6) in the amount of $21,737,740.70 [Adv. Pro. Docket No. 58] (the "**Judgment**").

WHEREAS, the Trustee has reviewed the Amended and Superseded Claims and the Mermelstein Claims and sought and obtained informal discovery from the Mermelsteins on account of such proofs of claim.

WHEREAS, following the Trustee's review of the Amended and Superseded Claims, the Mermelstein Claims, and the information the Mermelsteins subsequently provided to the Trustee, the Parties have reached a settlement regarding the allowance of the Mermelstein Claims as set forth herein.

In consideration of the mutual covenants, conditions and provisions set forth below, and each Party intending to be legally bound, the Parties agree as follows:

## *A G R E E M E N T*

1.    **EFFECTIVENESS OF AGREEMENT**

This Agreement shall become effective on the later of the date (the "**Effective Date**") that (a) the Parties have fully executed this Agreement (the "**Execution Date**") and (b) the date that an order entered by the Court approving the Agreement has become a final order because it is not subject to a pending appeal and the applicable deadline in Federal Rule of Bankruptcy Procedure 8002 expired without any timely appeal having been filed.

2.    **GLOBAL SETTLEMENT**

(a)    <u>Allowance of Mermelstein Claims</u>.  Upon the Effective Date, the Mermelstein Claims shall be allowed as follows:

| Claim No. | Claim Amount | Life Insurance Policy |
|---|---|---|
| 19-2 | $500,000.00 | Garza |
| 20-2 | $0.00 | Times Square Media |
| 21-2 | $500,000.00 | Ganz |
| 22-2 | $2,250,000.00 | Spitzer |

2

| Claim No. | Claim Amount | Life Insurance Policy |
|---|---|---|
| 23-2 | $1,200,000.00 | Kohn |
| 24-2 | $1,000,000.00 | Friedman |
| 25-3 | $3,662,679.53 | Zimmerman |
| | | |
| Total: | $9,112,679.53 | |

(b)    The Amended and Superseded Claims shall be expunged as having been amended and superseded by the Mermelstein Claims and the terms of this Agreement.

(c)    Source of Payments.  The Mermelsteins hereby agree that they do not have a direct interest in or claim to the proceeds of the life insurance policies associated with the claims or any other life insurance policy that is owned, controlled, or held by the Debtor's estate or Life Capital Group, LLC.

(d)    Court Approval. Promptly after the Execution Date, the Trustee shall seek the Court's approval of this Agreement pursuant to Bankruptcy Rule 9019.

## 3.    LIMITATIONS REGARDING ENFORCEMENT OF THE JUDGMENT

The Settlement referenced herein resolves only the Amended and Superseded Claims and the Mermelstein Claims. It does not diminish, alter, impair, or in any way affect the Mermelsteins' existing Judgment in the amount of $21,737,740.70, which remains fully intact, enforceable, and wholly independent of this Settlement; *provided, however*, the Mermelsteins shall not enforce the Judgment against property of the Debtor's bankruptcy estate, which includes all pre and postpetition property of the Debtor's estate as provided by 11 U.S.C. §§ 541 and 1115.

## 4.    REPRESENTATIONS

Other than the "Feldman Policy," having a policy number JJ7033900, the Mermelsteins hereby represents that they are not party to any other agreements with the Debtor, any company owned or controlled by the Debtor, or any trust owned by the Debtor or administered by the Debtor as trustee, nor have the Mermelsteins made any agreements with the Debtor, any company owned or controlled by the Debtor, or any trust owned by the Debtor or administered by the Debtor as trustee, regarding the Amended and Superseded Claims and the Mermelstein Claims, or any other claim against the Debtor's estate or any company or trust owned or controlled by the Debtor.

## 5.    MUTUAL LIMITED RELEASE

Mutual Release.  As of the Effective Date, except as otherwise set forth herein with respect to Mermelstein Claims as modified herein, the Mermelsteins, on the one hand, and the Trustee, on behalf of the Debtor's estate, on the other hand, mutually release each other and each of their respective predecessors, successors, corporate

3

4938-5220-5675.3 78512.001

parents, subsidiaries, affiliates, present or former trustees, directors, officers, attorneys, agents and employees (excluding in all cases the Debtor to the extent it could apply) from any and all claims, suits, damages, liabilities, costs, losses, interest, or expenses of any kind or nature whatsoever, which have arisen or could arise on or before the Effective Date that are related to the Amended and Superseded Claims and the Mermelstein Claims. Each Party hereby waives and releases any and all rights under Section 1542 of the California Civil Code, which provides as follows: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or releasing party."

6.    **GENERAL**

(a)    Executed In Counterparts. This Agreement may be executed in counterparts and copies may be used instead of originals and delivered with electronic mail (including in PDF format) with the same force and effect as originals. The executed counterparts shall be construed as and constitute one document.

(b)    Integration Clause; Modifications In Writing. This Agreement is the final and entire agreement of the Parties regarding the subject matter herein, and supersedes all previous oral and written understandings, negotiations, term sheets, and agreements on the subject matter herein. This Agreement may only be modified by a written amendment signed by an authorized signatory of all Parties.

(c)    Agreement Ineffective If Not Approved In Whole. This effectiveness of this Agreement is conditioned upon the Court approving it in its entirety and all terms required thereby, including, but not limited to, the lift stay provisions. In the event this Agreement is not approved in its entirety, the Agreement and each of its terms shall be deemed void and of no legal force or effect.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date.

**Chapter 11 Trustee**

_____
Authorized Signature

Bradley D. Sharp, Chapter 11 Trustee


_____
Robert Mermelstein


____10/23/2025_____
Date

____10/21/25_____
Date

4

4938-5220-5675.3 78512.001

# EXHIBIT B

## (Proposed Order)

LA:4899-1623-0768.4 78512.001

Jeffrey W. Dulberg (CA State Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  jdulberg@pszjlaw.com
            jlucas@pszjlaw.com

Counsel to Bradley D. Sharp, Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:23-bk-10990-NB |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | **ORDER GRANTING MOTION AND MOTION OF CHAPTER 11 TRUSTEE FOR ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND ROBERT AND ESTHER MERMELSTEIN PURSUANT TO BANKRUPTCY RULE 9019** |
| | Date:   November 18, 2025<br>Time:   2:00 p.m.<br>Place:  Courtroom 1545<br>            255 E. Temple Street<br>            Los Angeles, CA 90012 |

The Court has considered the *Motion of Chapter 11 Trustee for Order Approving Settlement Between the Trustee and Robert and Esther Mermelstein Pursuant to Bankruptcy Rule 9019* (the "**Motion**")[1] [Docket No. _____], filed by Bradley D. Sharp, in his capacity as Chapter 11 Trustee (the "**Trustee**") of the bankruptcy estate of Leslie Klein, the Declaration of Bradley D. Sharp (the "**Sharp Declaration**"), and the Declaration of Robert Mermelstein (the "**Mermelstein Declaration**") filed in support of the Motion, pursuant to which the Trustee sought approval of a

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

LA:4899-1623-0768.4 78512.001

settlement agreement, dated October 23, 2025 (the "**Settlement Agreement**") by and between the Trustee, on behalf of the Estate, and claimants, Robert and Esther Mermelstein. The terms of the settlement (the "**Settlement**") are specifically set forth in the Settlement Agreement, a copy of which is annexed to the Motion. Based upon the Court's review of the Motion, the Sharp Declaration, the Mermelstein Declaration, and the Settlement, the Court finds that (1) the relief requested in the Motion is reasonable, appropriate, and in the best interests of the Parties; and (2) notice of the Motion was adequate and appropriate under the circumstances and no further notice be given, therefore

**IT IS HEREBY ORDERED** :

1.      The Motion is granted and the Settlement and the Settlement Agreement are approved in their entireties.

2.      The Trustee is authorized to enter into and take any and all actions reasonably necessary to effectuate the Settlement Agreement.

# # #

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **NOTICE OF MOTION AND MOTION OF CHAPTER 11 TRUSTEE FOR ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND ROBERT AND ESTHER MERMELSTEIN PURSUANT TO BANKRUPTCY RULE 9019; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF BRADLEY D. SHARP AND ROBERT MERMELSTEIN ANNEXED THERETO AND FILED CONTEMPORANEOUSLY HEREWITH** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 23, 2025,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) **October 23, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **October 23, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| **Via Email:**<br>Eric J Olson:  eric@ejolsonlaw.com<br><br>Leslie Klein:  les.kleinlaw@gmail.com;<br>leskleinlaw@gmail.com; kleinlaw@earthlink.net | |

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 23, 2025 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4925-1024-2137.1 78512.001

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  **Case 2:23-bk-10990-SK**

- **Simon Aron**   saron@wrslawyers.com,
  moster@wrslawyers.com;jlee@wrslawyers.com
- **Reem J Bello**   rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Ron Bender**   rb@lnbyg.com
- **Michael Jay Berger**   michael.berger@bankrutpcypower.com,
  yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.
  com
- **Greg P Campbell**   ch11ecf@aldridgepite.com,
  gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Baruch C Cohen**   bcc@BaruchCohenEsq.com,
  paralegal@baruchcohenesq.com
- **Theron S Covey**   AttorneyTCovey@gmail.com
- **Daniel A Crawford**   dac@crawfordlawgroup.com
- **Michael G D'Alba**   mgd@lnbyg.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Craig A Edelman**   notice@bkcylaw.com
- **Dane W Exnowski**   dane.exnowski@mccalla.com,
  bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
- **Todd S. Garan**   ch11ecf@aldridgepite.com,
  TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Robert P Goe**   rgoe@goeforlaw.com,
  kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@not
  ify.bestcase.com;ajohnston@goeforlaw.com
- **Michael I. Gottfried**   mgottfried@elkinskalt.com,
  lwageman@elkinskalt.com,docketing@elkinskalt.com,lmasse@elkinsk
  alt.com
- **M. Jonathan Hayes**   jhayes@rhmfirm.com
- **Brandon J. Iskander**   biskander@goeforlaw.com,
  kmurphy@goeforlaw.com;jfountain@goeforlaw.com
- **Michael S Kogan**   mkogan@koganlawfirm.com
- **Matthew A Lesnick**   matt@lesnickprince.com,
  matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **John W Lucas**   jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- **Armen Manasserian**   armen@ml-apc.com, jennifer@ml-
  apc.com,maria@ml-apc.com
- **Ron Maroko**   ron.maroko@usdoj.gov
- **Kirsten Martinez**   Kirsten.Martinez@bonialpc.com,
  Notices.Bonial@ecf.courtdrive.com
- **Steven M Mayer**   smayer@mayerlawla.com
- **Christopher M McDermott**   ch11ecf@aldridgepite.com,
  CMM@ecf.inforuptcy.com;cmcdermott@aldridgepite.com
- **Krikor J Meshefejian**   kjm@lnbyg.com

- **Jeffrey P Nolan**   jnolan@pszjlaw.com
- **Eric J Olson**   eric@ejolsonlaw.com
- **Lisa Patel**   lpatel@lesnickprince.com,
  jmack@lesnickprince.com;jnavarro@lesnickprince.com;lpatel@ecf.co
  urtdrive.com
- **Jeffrey N Pomerantz**   jpomerantz@pszjlaw.com
- **Brian A Procel**   brian@procel-law.com,
  rdankwa@millerbarondess.com;docket@millerbarondess.com
- **Matthew D. Resnik**   matt@rhmfirm.com,
  roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie
  @rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;rosario
  @rhmfirm.com;gabriela@rhmfirm.com;david@rhmfirm.com
- **Kevin Ronk**   Kevin@portilloronk.com,
  eService@cym.law,karen@cym.law,jodie@cym.law,aileen@cym.law
- **Joshua L Scheer**   jscheer@scheerlawgroup.com,
  jscheer@ecf.courtdrive.com
- **Bradley D. Sharp (TR)**   bsharp@dsi.biz
- **Richard P Steelman**   RPS@LNBYG.COM
- **Nikko Salvatore Stevens**   nikko@cym.law,
  eService@cym.law,karen@cym.law,aileen@cym.law
- **Alan G Tippie**   Alan.Tippie@gmlaw.com,
  atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar
  @gmlaw.com,denise.walker@gmlaw.com
- **Gary Tokumori**   gtokumori@pmcos.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**   mwachtell@buchalter.com,
  marias@buchalter.com;docket@buchalter.com
- **John P. Ward**   jward@attleseyward.com,
  ephuong@attleseyward.com
- **Brett J. Wasserman**   wasserman@smcounsel.com
- **Alex M Weingarten**   aweingarten@willkie.com,
  lcarter@willkie.com
- **Beth Ann R. Young**   bry@lnbyg.com, bry@lnbyb.com
- **Clarisse Young**   youngshumaker@smcounsel.com,
  levern@smcounsel.com
- **Paul P Young**   paul@cym.law, eService@cym.law,karen@cym.law
- **Roye Zur**   rzur@elkinskalt.com,
  lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur
  @ecf.courtdrive.com;lmasse@elkinskalt.com

2. **SERVED BY UNITED STATES MAIL**:

Peter C. Anderson, U.S. Trustee
Michael Jones, Assistant U.S. Trustee
Office of the U.S. Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA  90017

Leslie Klein
322 North June Street
Los Angeles, CA 90004

Nathan Talei
Oldman, Sallus & Gold, L.L.P.
16133 Ventura Blvd., PH-A
Encino, CA 91436

Leslie Klein & Associates, Inc.
c/o Leslie Klein
6454 Van Nuys Blvd. Suite 150
Van Nuys, CA 91401

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

LA:4925-1024-2137.1 78512.001