Jeffrey W. Dulberg (CA Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile:  310-201-0760
jdulberg@pszjlaw.com
jlucas@pszjlaw.com

Counsel to Bradley D. Sharp, Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:23-bk-10990-SK |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | **DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION OF THE ESTATE OF LESLIE KLEIN** |

**THE COURT HAS NOT YET APPROVED THIS DISCLOSURE STATEMENT FOR USE IN SOLICITATION TO PARTIES ENTITLED TO VOTE ON THE PLAN. THE TRUSTEE IS NOT SOLICITING YOUR VOTE ON THE PLAN AT THIS TIME.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# Table of Contents

**Page**

I. INTRODUCTION .................................................................................................... 2

II. EXPLANATION OF CHAPTER 11 ...................................................................... 3

    A.    Overview of Chapter 11 .............................................................................. 3

    B.    Chapter 11 Plan ......................................................................................... 4

    C.    Confirmation of a Chapter 11 Plan .......................................................... 4

III. OVERVIEW OF THE PLAN ............................................................................... 5

    A.    Summary of the Terms of the Plan ........................................................... 5

        1.    Liquidation Trust ........................................................................ 5

    B.    Summary of Distributions Under the Plan ............................................... 5

IV. QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT AND THE PLAN ........................................................................ 6

V. HISTORY OF THE DEBTOR ............................................................................... 8

    A.    History of the Debtor ................................................................................ 8

VI. THE DEBTOR'S CHAPTER 11 CASE ............................................................... 9

    A.    Commencement of the Chapter 11 Case ................................................... 9

    B.    Retention of Professionals ........................................................................ 9

    C.    Asset Sales ............................................................................................... 9

        1.    Ocean Dr. Sale Motion .............................................................. 9

        2.    Poinsettia Sale Motion ............................................................... 9

        3.    Whitewater Sale Motion ............................................................ 9

        4.    BadCo. Sale Motion ................................................................... 9

        5.    Leonardo Plaza Sale Motion ..................................................... 9

    D.    June St. Property ..................................................................................... 10

    E.    Estate's Equity Interest in LCG .............................................................. 10

    F.    Executory Contracts and Unexpired Leases ........................................... 10

    G.    Schedules of Assets and Liabilities and Establishment of Bar Dates ..... 10

VII. THE CHAPTER 11 PLAN .................................................................................. 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | | |
|---|---|---|
| A. | Classification and Treatment of Claims | 11 |
| | 1. Administrative Expense Claims | 11 |
| | 2. Professional Fee Claims | 11 |
| | 3. Priority Tax Claims | 12 |
| | 4. Class 1: Other Priority Claims | 12 |
| | 5. Class 2: Secured Tax Claims | 13 |
| | 6. Class 3: Gestetner Secured Claim | 13 |
| | 7. Class 3(a): Other Secured Claims | 13 |
| | 8. Class 4: General Unsecured Claims | 13 |
| B. | Means for Implementation of the Plan | 14 |
| | 1. The Liquidation Trust | 14 |
| | 2. The Source of Distributions | 16 |
| | 3. Claims Reconciliation Process | 16 |
| | 4. Preservation of Right to Conduct Investigations | 16 |
| | 5. Preservation of Privilege and Defenses | 16 |
| | 6. Abandonment of Property | 17 |
| C. | Claims Reconciliation Process | 17 |
| | 1. Objections to, and Resolution, of Disputed Claims | 17 |
| | 2. Claim Objections | 17 |
| | 3. Estimation of Certain Claims | 17 |
| D. | Distributions Under the Plan | 18 |
| | 1. Manner of Cash Payments. | 18 |
| | 2. Setoff and Recoupment | 18 |
| | 3. No Distributions With Respect to Disputed Claims | 18 |
| | 4. Reserve for Disputed Claims and Administrative Expenses | 18 |
| | 5. Preservation of Causes of Action | 18 |
| E. | Exculpation and Injunction | 19 |
| | 1. Term of Bankruptcy Injunction or Stay | 19 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | | | | |
|---|---|---|---|---|
| | | 2. | Exculpation for Estate Fiduciaries. | 19 |
| | | 3. | Injunction | 19 |
| | F. | | Executory Contracts and Unexpired Leases | 20 |
| | | 1. | Rejection | 20 |
| | | 2. | Bar Date for Rejection Damage Claims | 21 |
| | G. | | Retention of Jurisdiction | 21 |
| | H. | | Miscellaneous Plan Provisions | 21 |
| | | 1. | Conditions Precedent to the Effective Date | 21 |

VIII. CONFIRMATION AND CONSUMMATION PROCEDURES ........................................ 21

| | | | | |
|---|---|---|---|---|
| | A. | | Overview | 21 |
| | B. | | Confirmation of the Plan | 22 |
| | | 1. | Elements of Section 1129 of the Bankruptcy Code | 22 |
| | | 2. | Acceptance | 24 |
| | | 3. | Best Interests of Creditors Test | 24 |
| | | 4. | Feasibility | 25 |
| | C. | | Effect of Confirmation | 26 |

IX. CONCLUSION ......................................................................................................... 26

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**NOTICE TO HOLDERS OF CLAIMS**

The purpose of this Disclosure Statement is to enable you, as a creditor whose Claim is impaired under the Plan, to make an informed decision in exercising your right to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN.  PLEASE READ THIS DOCUMENT WITH CARE.**

**PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.  IN THE EVENT OF ANY CONFLICT BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN OR ANY OTHER APPLICABLE DOCUMENT, THE TERMS OF THE PLAN OR ANY SUCH APPLICABLE DOCUMENT SHALL GOVERN.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (THE "<u>BANKRUPTCY RULES</u>") AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER NON-BANKRUPTCY LAW.  THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "<u>SEC</u>"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THIS DISCLOSURE STATEMENT NOR BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN THE DEBTOR IN THIS CHAPTER 11 CASE.**

Each Holder of a Claim entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting.  No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code.  Except for the Trustee and certain of his professionals, no person has been authorized to use or promulgate any information concerning the Debtor, his business, or the Plan other than the information contained in this Disclosure Statement and if given or made, such information may not be relied upon as having been authorized by the Trustee.  You should not rely on any information other than that contained in this Disclosure Statement and the Exhibits hereto.

After carefully reviewing this Disclosure Statement, including the attached Exhibits, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed ballot and return the same to the address set forth on the ballot, in the enclosed, postage prepaid, return envelope so that it is actually received by the Balloting Agent no later than the Voting

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4932-6270-5019.4 78512.001

Deadline.  All votes to accept or reject the Plan must be cast using the appropriate ballot.  Votes which are cast in any other manner will not be counted.  **All ballots must be actually received by the Trustee's bankruptcy counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Los Angeles, CA 90067 (the "Voting Agent"), or postmarked if submitted by first class mail, no later than _____, 2026.  In the event you have questions regarding the voting procedures, please contact Beth Dassa at bdassa@pszjlaw.com.**

**DO NOT RETURN ANY OTHER DOCUMENTS WITH YOUR BALLOT.**

You will be bound by the Plan if it is confirmed by the Bankruptcy Court, even if you do not vote to accept the Plan, or if you are the Holder of an unimpaired Claim.

> **THE TRUSTEE AS THE PLAN PROPONENT URGES ALL HOLDERS OF IMPAIRED CLAIMS TO ACCEPT THE PLAN**

**I.**

**INTRODUCTION**

On February 22, 2023, Leslie Klein, referred to herein as the Debtor,[1] filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division. The Debtor's chapter 11 case was originally filed pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code but on March 10, 2023, the Debtor voluntarily converted the case to chapter 11. *See* [Docket No. 43].

On April 24, 2023, a *Motion for Order Dismissing Debtor's Chapter 11 Bankruptcy Case* [Docket No. 79] was filed and heard by the Bankruptcy Court on May 17, 2023, where the Court ruled that the appointment of a chapter 11 trustee, and not dismissal of the case, was in the best interests of the estate. On May 23, 2023, the United States Trustee filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No. 151]. On May 24, 2023, the United States Trustee filed an *Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154], which was approved by an order entered the same day [Docket No. 155]. On May 24, 2023, the Trustee accepted his appointment [Docket No. 156].

The Trustee hereby submit this disclosure statement (the "Disclosure Statement"), pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code") with respect to the *Plan of Liquidation of the Estate of Leslie Klein* (the "Plan").  This Disclosure Statement is to be used in connection with the solicitation of votes on the Plan by the Trustee.  A copy of the Plan is attached hereto as Exhibit A.

THE TRUSTEE WILL SEEK CONDITIONAL APPROVAL OF THIS DISCLOSURE STATEMENT AT A HEARING SCHEDULED FOR _____, 2026 AT 2:00 P.M. (PACIFIC TIME) (THE "HEARING").   ONLY HOLDERS OF ALLOWED CLAIMS IN CLASS 3 (GESTETNER SECURED CLAIM), CLASS 3(A) (OTHER SECURED CLAIMS), AND CLASS 4 (GENERAL UNSECURED CLAIMS) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.   ACCORDINGLY, THE TRUSTEE IS ONLY SOLICITING ACCEPTANCES OF THE PLAN FROM HOLDERS OF ALLOWED CLAIMS IN CLASS 3 (GESTETNER SECURED

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in Appendix 1 of the Plan.

CLAIM, CLASS 3(A) (OTHER SECURED CLAIMS), AND CLASS 4 (GENERAL UNSECURED CLAIMS).

THE TRUSTEE BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF, AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO, HOLDERS OF ALL CLAIMS AGAINST THE DEBTOR'S ESTATE.  ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE URGED TO VOTE IN FAVOR OF THE PLAN.

THE SOLICITATION PACKAGE ACCOMPANYING EACH OF THE BALLOTS CONTAINS APPLICABLE VOTING INSTRUCTIONS.  **TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED, EXECUTED, AND ACTUALLY RECEIVED BY THE VOTING AGENT, OR POSTMARKED IF SENT BY FIRST CLASS MAIL, BY _____, 2026 (THE "<u>VOTING DEADLINE</u>").**

**All capitalized terms used in the Disclosure Statement and not defined herein shall have the meanings ascribed thereto in Appendix 1 of the Plan.  Unless otherwise stated, all references herein to "Schedules" and "Exhibits" are references to schedules and exhibits to this Disclosure Statement.**

The Trustee proposes the Plan for the resolution and satisfaction of all Claims against and Interests in the Debtor's Estate. The Plan also provides for the establishment of a Liquidation Trust on the Effective Date for the primary purpose of administering and liquidating the Liquidation Trust Assets and for the secondary purposes of, *inter alia*, (a)  collecting and liquidating Assets of the Estate, (b) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (c) making all Distributions provided for under the terms of the Plan. The Liquidation Trust shall be under the direction and control of the Liquidation Trustee, as trustee of the Liquidation Trust.  On the Effective Date, all of the Estates' Assets, which are principally real properties, interests in life insurance policies, Cash and Causes of Action, shall vest in the Liquidation Trust.  The Plan contemplates monetization of these Assets and the distribution of the net proceeds thereof to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan and Bankruptcy Code in satisfaction of the Estate's obligation hereunder.  **The Trustee believes that the Plan represents a fair and equitable allocation of the Estate's assets among creditors.**

**As set forth in greater detail herein, the Trustee estimates that Holders of Class 3 (Gestetner Secured Claim) will recover 100% under the Plan and Holders of Class 4 Claims (General Unsecured Claims) will recover approximately 4% to 28% under the Plan, which is significantly better than the approximate 1% that may be recovered in chapter 7.**

## II.

## <u>EXPLANATION OF CHAPTER 11</u>

A.      <u>Overview of Chapter 11</u>

Chapter 11 is the principal chapter of the Bankruptcy Code pursuant to which a debtor's estate may reorganize or liquidate in an orderly fashion for the benefit of its creditors and other parties in interest.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor as of the date the petition is filed. The filing of a petition under the Bankruptcy Code triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, among other things, for an automatic stay of all attempts by creditors or other third parties to collect on prepetition claims against a debtor, the estate, or otherwise interfere with estate property or business.  Exempted from the automatic stay are governmental authorities seeking to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

exercise regulatory or policing powers. Except as otherwise ordered by a bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed chapter 11 plan.

**B.    Chapter 11 Plan**

The formulation of a chapter 11 plan is the principal purpose of a chapter 11 case. The plan sets forth the means for making distributions to the holders of valid claims against a debtor's estate. A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors, and the prior obligations owed by the debtor to such parties are compromised and exchanged for the obligations specified in the plan (unless and to the extent certain claims are not discharged on a creditor by creditor basis or the individual debtor does not receive a discharge under the plan, as proposed herein).

In general, after a chapter 11 plan has been filed, the holders of impaired claims against a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the plan proponent to prepare and file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. **This Disclosure Statement is presented to Holders of Claims against the Debtor's estate to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the plan proponent's solicitation of votes on the Plan.**

**C.    Confirmation of a Chapter 11 Plan**

If all applicable classes of claims and equity interests accept a chapter 11 plan, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied. **The Trustee, as the plan proponent, believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code.**

Chapter 11 of the Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a chapter 11 plan for the bankruptcy court to determine that the class has accepted the plan. Rather, a class of claims will be deemed to have accepted the plan if the court determines that the plan has been accepted by more than a majority in number and at least two-thirds in amount of those claims actually voting in such class. **Only the Holders of Allowed Claims who are entitled to vote, and actually vote, will be counted as either accepting or rejecting the Plan**.

In addition, classes of claims that are not "impaired" under a chapter 11 plan are conclusively presumed to have accepted the plan and thus are not entitled to vote. Furthermore, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims in an impaired class. **Class 3 (Gestetner Secured Claim), Class 3(a) (Other Secured Claims), and Class 4 (General Unsecured Claims) are impaired under the Plan and entitled to vote on the Plan.**

In general, a bankruptcy court may confirm a chapter 11 plan even though fewer than all the classes of impaired claims against a debtor accept such plan. For a chapter 11 plan to be confirmed, despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at least one class of impaired claims (determined without counting the vote of insiders) and the proponent(s) of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

as of the effective date of the plan, in an amount equal to the allowed amount of such claim or such other treatment as accepted by the holder of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive on account of such junior claim or equity interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interests in such class. **The Trustee believes that the Plan will satisfy the foregoing requirements as to any rejecting class of Claims or Interests, and can therefore be confirmed despite any such rejection by any Class.**

III.

**OVERVIEW OF THE PLAN**

**A.    Summary of the Terms of the Plan**

    **1.    Liquidation Trust**

The Plan provides for the establishment of a Liquidation Trust on the Effective Date for the primary purpose of administering and liquidating the Liquidation Trust Assets and for the secondary purposes of, *inter alia*, (a) collecting accounts receivable, (b) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (c) making all Distributions provided for under the terms of the Plan. The Liquidation Trust shall be under the direction and control of the Liquidation Trustee, as trustee of the Liquidation Trust. On the Effective Date, all of the Estates' Assets, which are principally Cash, equity interest in LCG, the June St. Property, interests in certain life insurance policies, and the Causes of Action, shall vest in the Liquidation Trust. The Plan contemplates monetization of these Assets and the distribution of the net proceeds thereof to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan and the Bankruptcy Code.

**B.    Summary of Distributions Under the Plan**

The following is a summary of the proposed distributions under the Plan. It is qualified in its entirety by reference to the full text of the Plan, which is attached to this Disclosure Statement as **Exhibit "A"**.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, as described in Section 3 of the Plan, have not been classified and thus are excluded from the Classes set forth in the Plan. The following table summarizes the classification of the Classes of Claims and Interests under the Plan and whether you are entitled to vote on the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS | DESCRIPTION | IMPAIRED / UNIMPAIRED | ENTITLED TO VOTE |
|---|---|---|---|
| **CLASS 1** | Other Priority Claims | Unimpaired | No - Deemed to Accept |
| **CLASS 2** | Secured Tax Claim | Unimpaired | No – Deemed to Accept |
| **CLASS 3** | Gestetner Secured Claim | Impaired | Yes |
| **CLASS 3(A)** | Other Secured Claims | Impaired | Yes |
| **CLASS 4** | General Unsecured Claims | Impaired | Yes |

Except as required by applicable bankruptcy law or agreement that provides otherwise, postpetition interest shall not accrue or be payable on account of any Claim. All Distributions under the Plan will be tendered to the entity holding the Allowed Claim.

**EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY ADMINISTRATIVE EXPENSE CLAIM, PROFESSIONAL FEE CLAIM, OR CLAIM THAT IS NOT ALLOWED.**

As discussed in the Liquidation Analysis attached hereto as <u>Exhibit B</u>, the Trustee estimates that recoveries for Holders of Allowed General Unsecured Claims will be greater under the Plan than in a liquidation under chapter 7 of the Bankruptcy Code.  In addition, the Trustee believes that distributions under chapter 7 of the Bankruptcy Code would likely be delayed due to the time it will take a chapter 7 trustee to assess the Debtor's assets, review and analyze claims, and evaluate and litigate claims against third parties.  Holders of Allowed Claims entitled to vote to accept or reject the Plan should review the Liquidation Analysis (including all footnotes thereto) in assessing whether to vote to accept or reject the Plan.

## IV.

## QUESTIONS AND ANSWERS REGARDING THIS <u>DISCLOSURE STATEMENT AND THE PLAN</u>

**Why is the Trustee sending me this Disclosure Statement?**

The Trustee is seeking to obtain Bankruptcy Court approval of the Plan. Prior to soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the preparation and approval of a Disclosure Statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan. This Disclosure Statement is being submitted in accordance with such requirements.

**What happens to my recovery if the Plan is not confirmed, or does not go effective?**

In the event that the Plan is not confirmed, the Trustee believes it is unlikely that he or a chapter 7 trustee will be able to achieve the same recoveries for creditors that are available under the Plan.  If the Plan is not confirmed in a timely manner, it is unclear what Holders of Claims would ultimately

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

receive in respect of their Claims against the Debtor's Estate. It is possible that any alternative may provide Holders of Claims with less than they would have received pursuant to the Plan. Moreover, non-confirmation of the Plan will likely result in either the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissal of the Chapter 11 Case in its entirety.

**If the Plan provides that I get a distribution, do I get it upon confirmation or when the Plan goes effective, and what do you mean when you refer to "confirmation," "Effective Date," and "consummation?"**

"Confirmation" of the Plan refers to the approval of the Plan by the Bankruptcy Court. Confirmation of the Plan does not guarantee that you will receive the distribution contemplated under the Plan. After confirmation of the Plan by the Bankruptcy Court, there are conditions that need to be satisfied or waived so that the Plan can be consummated and become effective. References to the "Effective Date" mean the date that all conditions to the Plan have been satisfied or waived and the Plan has been fully consummated.

**Where is the cash required to fund the Plan coming from?**

On the Effective Date, all of the Assets of the Estate, which includes the Debtor's equity interest in LCG, the June St. Property, any life insurance policies owned by the Debtor plus all Causes of Action, as well as the rights and powers of the Debtor, shall automatically vest in the Liquidation Trust.

**How do I vote for or against the Plan?**

This Disclosure Statement, accompanied by a ballot or ballots to be used for voting on the Plan, is being distributed to the holders of Claims entitled to vote on the Plan. If you are a Holder of a Claim in Class 3 (Gestetner Secured Claim), Class 3(a) (Other Secured Claims), or Class 4 (General Unsecured Claims) (the "Voting Classes"), you may vote for or against the Plan by completing the ballot and returning it in the envelope provided.

**What is the deadline to vote on the Plan?**

All ballots must be actually sent to the Trustee so as to be received, or postmarked if sent by first class mail, on or before _____, **2026**.

**Why is the Bankruptcy Court holding a confirmation hearing?**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.

**When is the confirmation hearing scheduled to occur?**

The Bankruptcy Court has scheduled the confirmation hearing for _____, **2026 at 2:00 p.m. (Pacific Time)** before the Honorable Neil W. Bason, United States Bankruptcy Judge, in the United States Bankruptcy Court, Central District of California, 255 E. Temple Street Los Angeles, CA 90012. The confirmation hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the confirmation hearing or any adjournment thereof. Objections to confirmation of the Plan must be filed and served on the Trustee and certain other parties, by no later than _____, **2026 at 5:00 p.m. (Pacific Time)** in accordance with the notice of the confirmation hearing that accompanies this Disclosure Statement. Unless objections to confirmation of the Plan are timely served and filed in compliance with the Solicitation Procedures Order, they might not be considered by the Bankruptcy Court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**What is the purpose of the confirmation hearing?**

The consummation of a chapter 11 plan is the principal objective of a chapter 11 case. The confirmation of a chapter 11 plan by the Bankruptcy Court binds the Estate, any person acquiring property under the chapter 11 plan, any creditor of a debtor and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.

**What role does the Bankruptcy Court play after the confirmation hearing?**

After the Plan is confirmed, the Bankruptcy Court will still have jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan including, but not limited to all matters described in section 12 of the Plan.

**Does the Trustee recommend voting in favor of the Plan?**

**Yes**.  In the opinion of the Trustee, the Plan is preferable to liquidation under chapter 7 of the Bankruptcy Code, as described in this Disclosure Statement and the Liquidation Analysis attached as Exhibit B hereto, and any other reasonably available alternative because the Trustee believes the Plan provides for a larger distribution to general unsecured creditors than would otherwise result from a liquidation under chapter 7 of the Bankruptcy Code or any other reasonably available alternative. **Accordingly, the Trustee recommends that Holders of Claims in Class 3 (Gestetner Secured Claim), Class 3(a) (Other Secured Claims), and Class 4 (General Unsecured Claims) support confirmation of the Plan and vote to accept the Plan**.

**V.**

**HISTORY OF THE DEBTOR**

**A.    History of the Debtor**

The Debtor is an attorney, a certified public accountant, and a serial "affinity" fraudster.  He spent years preying upon members of his own Orthodox Jewish community – in many instances, his victims are Holocaust survivors – and he filed his chapter 11 case for the sole purpose of staying numerous litigations against him resulting from his misappropriation of funds from numerous trusts to the detriment of the trusts' beneficiaries.

Instead of converting the Debtor's Chapter 11 Case to a case under chapter 7 or dismissing ease altogether, the Court appointed a chapter 11 trustee to administer the Debtor's Estate. The Debtor's Estate was handed to the Trustee in poor shape. It took the Trustee and his advisors substantial time and effort to obtain any degree of visibility into (a) the assets of the Estate, (b) affirmative claims held by the Estate, and (c) the claims against the Debtor and the Estate. Since the Trustee's appointment, the Debtor and his various counsels have been largely uncooperative with the Trustee and his professionals. The Debtor has failed to produce virtually any information or documents in response to requests made of him and the authenticity of many of the documents he has produced is highly questionable. Indeed, the Debtor and his various counsels' primary participation in the Chapter 11 Case has been to seek to "recharacterize" assets of the Estate and to oppose the Trustee's efforts to complete his statutory duties. Often, the Debtor's efforts have included blatant violations of the automatic stay.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# VI.

# THE DEBTOR'S CHAPTER 11 CASE

## A.    Commencement of the Chapter 11 Case

On February 22, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.  The Debtor subsequently converted the subchapter V case to case under chapter 11 of the Bankruptcy Code. The Chapter 11 Case was commenced in the Bankruptcy Court and was assigned to the Honorable Sandra Klein, United States Bankruptcy Judge.  Upon Judge Klein's retirement, the Chapter 11 case was transferred to the Honorable Neil W. Bason.

## B.    Retention of Professionals

After the appointment of the Trustee, the Bankruptcy Court approved the retention of: (i) Pachulski Stang Ziehl & Jones LLP as general bankruptcy counsel to the Trustee, (ii) Development Specialists, Inc. as the Trustee's forensic accountant, (iii) Law Office of Eric Everett Hawes, landlord/tenant counsel to the Trustee, and (iv) the Law Offices of Goldfarb Gross Seligman & Co., special Israeli litigation counsel.

## C.    Asset Sales

### 1.    Ocean Dr. Sale Motion

On October 25, 2023, the Trustee filed a motion to sell the Debtor's property located at 3752 Ocean Drive, Oxnard, California [Docket Nos. 452 and 453] (the "Ocean Dr. Sale Motion"). The Ocean Dr. Sale Motion was approved, and the sale subsequently closed. *See* [Docket No. 492].

### 2.    Poinsettia Sale Motion

On December 20, 2023, the Trustee filed a motion to sell the Debtor's property located at 161 Poinsettia Place, Los Angeles, California (the "Poinsettia Sale Motion") [Docket Nos. 537 and 538]. The Poinsettia Sale Motion was approved, and the sale subsequently closed.  *See* [Docket No. 602].

### 3.    Whitewater Sale Motion

On April 12, 2024, the Trustee filed a motion to sell the Debtor's property located at 2560 N. Whitewater Club Drive, Unit B, Palm Springs, California (the "Whitewater Sale Motion") [Docket Nos. 710 and 711].  The Whitewater Sale Motion was approved, and the sale subsequently closed. *See* [Docket No. 726].

### 4.    BadCo. Sale Motion

On June 19, 2024, the Trustee filed a motion to sell the Debtor's equity interest in Bay Area Development Company (the "BadCo. Sale Motion") [Docket No. 740]. The BadCo. Sale Motion was approved, and the sale subsequently closed. *See* [Docket No. 773].

### 5.    Leonardo Plaza Sale Motion

On January 22, 2025, the Trustee, in his business judgment, filed a motion to approve the sale of the Leonardo Plaza Hotel Property for the benefit of the Debtor's creditors [Docket No. 895] (the "Leonard Plaza Sale Motion"). The Leonardo Plaza Sale Motion was granted on February 13, 2025. *See* [Docket No. 920].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**D.    June St. Property**

The Trustee commenced an adversary proceeding (Adv. Case No. 24-01140) seeking a determination that the Estate owns a 100% interest in the June St. Property. The Bankruptcy Court granted the Trustee's summary judgment motion finding that the Estate owns 100% of the June St. Property. *See* [Adv. Pro. Docket No. 62], which was subsequently affirmed by the Bankruptcy Appellate Panel. *See* [BAP Docket No. 20]. The Trustee is currently marketing the June St. Property for sale. The June St. Property is wholly unencumbered except for certain outstanding property taxes and an exemption in favor of the Debtor in the amount of $189,050.00. *See* [Docket No. 141].

**E.    Estate's Equity Interest in LCG**

In June 2011, the Debtor formed LCG with Shlomo Rechnitz, and they each own a 50% interest in LCG. LCG was formed for the purpose of acquiring life insurance policies that the Debtor originally owned and maintained. However, upon the formation of LCG, the life insurance policies acquired by LCG were maintained by LCG with Mr. Rechnitz providing the necessary capital to pay premiums for each life insurance policy.

Upon the maturity of a life insurance policy, LCG is paid cash pursuant to the terms of the matured life insurance policy and the proceeds are distributed in accordance with the terms of the LCG Operating Agreement. Around the Petition Date, two life insurance policies held by LCG matured. LCG subsequently engaged with the Trustee and distributed $745,353.42 and $1,442,631.77 to the Trustee, which the Trustee retained on behalf of the Estate.

LCG currently holds fourteen life insurance policies. In the Fall of 2025, the life insurance policy for Rozy Pearl Zimmerman matured. While the foregoing policy has matured, the life insurance company has not yet made a payment to LCG on account of the matured policy.

**F.    Executory Contracts and Unexpired Leases**

Annexed hereto as **Exhibit "C"** is a list of contracts that the Trustee intends to assume for purposes of preserving the Estate's rights and benefits therein. Because the Debtor provided the Trustee with very little or no records or other bookkeeping regarding Estate Assets, the Trustee intends to preserve all executory contracts of the Estate so they are not automatically rejected by operation of law upon the Effective Date of the Plan. Accordingly, all executory contracts not expressly listed on **Exhibit "C"** hereto are preserved so that the Trustee or the Liquidating Trustee, as the case may be, can review any contract to determine whether or not such contract should be assumed or rejected. Upon the Effective Date, contracts that are not otherwise listed on **Exhibit "C"** are preserved and held in abeyance until the Trustee files a notice with the Court making the necessary election to either assume or reject a contract. The rights and defenses of the Estate and the counterparty to the applicable contracts are preserved.

The Trustee is not aware of any unexpired leases in the Debtor's name. As a result, if there were any unexpired leases they were rejected by operation of law pursuant to section 365(d) of the Bankruptcy Code.

**G.    Schedules of Assets and Liabilities and Establishment of Bar Dates**

On March 8, 2023, the Debtor filed his Schedules of Assets and Liabilities and Statement of Financial Affairs, which provided the Debtor's overview of assets, liabilities, and a description and/or listing of the various actions that represented claims against and claims in favor of the Estate. See [Docket No. 34] (collectively, the "**Schedules**"). The Debtor made or attempted to make various amendments to the Schedules as reflected in [Docket Nos. 61, 70, 875, and 878].

On February 27, 2023, the Debtor filed a notice setting May 3, 2023 as the deadline for any persons or other entities (except for governmental entities) that wish to assert a prepetition claim

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

against the Debtor, to file a proof of claim or forever be barred from asserting such claim (the "**General Bar Date**").

**VII.**

**THE CHAPTER 11 PLAN**

As a result of the chapter 11 process and through the Liquidation Trust and the Plan, the Trustee expects that creditors will obtain a greater recovery from the Estates than the recovery that would be available if the Assets had been liquidated under chapter 7 of the Bankruptcy Code. The Plan is annexed hereto as **Exhibit "A"** and forms part of this Disclosure Statement. The summary of the Plan set forth below is qualified in its entirety by the more detailed provisions set forth in the Plan.

**A.      Classification and Treatment of Claims**

**1.      Administrative Expense Claims**

a.      ***Treatment***. Except as otherwise provided in Section 5.1(b) of the Plan, or to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Trustee or Liquidation Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Trustee (in his administration of the Estate) prior to the Effective Date, shall be paid by the Trustee in his capacity as the representative of the Estate, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, any applicable orders of the Bankruptcy Court. In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 incurred prior to the Effective Date shall be paid on the Effective Date by the Estate, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidation Trustee in accordance with the applicable schedule for payment of such fees.

b.      ***Administrative Expense Claims Bar Date***. To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the First Administrative Expense Claims Bar Date or the Second Administrative Expense Claims Bar Date, as applicable, or such other date as may be agreed to by the Liquidation Trustee. Any Administrative Expense Claims that are not asserted in accordance herewith and with Section 5.1(a) of the Plan shall be disallowed under the Plan and shall be forever barred against the Debtor's Estate, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

**2.      Professional Fee Claims.**

Each Professional requesting compensation for services rendered and reimbursement for expenses incurred during the period from the Petition Date through the Effective Date must (i) file and serve a properly noticed final fee application by no later than 45 days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within 14 calendar days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidation Trustee. Any Professional Fee Claim that is not asserted in accordance with Section 5.2 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Estate, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

a.  ***Professional Fee Estimate***.  Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Trustee before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Trustee no later than 7 calendar days prior to the Effective Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Trustee shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

b.  ***Professional Fee Escrow***. If the Professional Fee Claims Estimate is greater than zero, as soon as reasonably practicable and no later than the Effective Date, the Trustee shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Claims Estimate, and no Liens, Claims, or Interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow Account (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Estate or the Liquidation Trust and (ii) shall be held in trust for the Professionals; *provided*, that funds remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Liquidation Trust. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court; *provided further*, that the Estate's obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow Account.

If the amount of funds in the Professional Fee Escrow Account is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow Account from the Estate without any further action or order of the Bankruptcy Court.

**3.**     **Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim, if any such Claim exists, shall receive Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the date that is 90 calendar days after the Effective Date.

**4.**     **Class 1:  Other Priority Claims**

a.  ***Classification***.  Class 1 consists of all Allowed Other Priority Claims against the Estate that are specified as having priority in section 507(a) of the Bankruptcy Code if any such Claims exist as of the Effective Date.

b.  ***Treatment***.  Except to the extent that a Holder of an Allowed Other Priority Claim against the Estate has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidation Trustee and the Holder of the Allowed Other Priority Claim against the applicable Debtor.

c.  ***Projection***. The Trustee estimates that the Holders of Class 1 Other Priority Claims will receive distributions equal to 100% of their Allowed Other Priority Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**5.**     **Class 2: Secured Tax Claims**

    a.     ***Classification***. Class 2 consists of all Allowed Secured Tax Claims against the Estate that, absent the secured status of such Claim, would be entitled to priority in right of payment under section 507(a) of the Bankruptcy Code if any such Claims exist as of the Effective Date.

    b.     ***Treatment***. Each Holder of an Allowed Secured Tax Claim against the Estate shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidation Trustee and the Holder of the Secured Tax Claim. The Trustee and the Liquidation Trustee (after the Effective Date) specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid, pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims.

    c.     ***Projection***. The Trustee estimates that the Holders of Class 2 Allowed Secured Tax Claims will receive distributions equal to 100% of their Allowed Secured Tax Claims.

**6.**     **Class 3: Gestetner Secured Claim**

    a.     ***Classification***. Class 3 consists of the Gestetner Secured Claim.

    b.     ***Treatment***. On the later of the Effective Date or the date on which LCG makes a distribution to the Estate or the Liquidating Trustee on account of the Debtor's equity interest in LCG, the Holder of an Allowed Class 3 Gestetner Secured Claim will receive 50% of the distribution made to the Estate or the Liquidating Trust, as the case may be, from LCG until the Gestetner Secured Claim held by the Gestetners is paid in full.

    c.     ***Projection***. The Trustee estimates that the holder of Allowed Class 3 Gestetner Secured Claim will receive distributions equaling 100% of their Allowed Gestetner Secured Claim.

**7.**     **Class 3(a): Other Secured Claims**

    a.     ***Classification***. Class 3(a) consists of all Other Secured Claims.

    b.     ***Treatment***. On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 3(a) Other Secured Claim will receive the collateral in which such Holder has a security interest or lien; *provided*, *however*, if such action was already undertaken prior to the Petition Date, in response to a stay relief request, by the Estate's abandonment, or other similar action then the Liquidation Trustee need not take any further action; provided, further, upon the request of a holder of an Allowed Class 3(a) Other Secured Claim it may elect to receive such other and less favorable distributions or treatments as may be agreed upon by and between the Holder of the Allowed Class 3(a) Other Secured Claim and the Liquidation Trustee.

**8.**     **Class 4: General Unsecured Claims**

    a.     ***Classification***. Class 4 consists of all General Unsecured Claims. The Trustee will provide ballots to Holders of asserted Class 4 General Unsecured Claims.

    b.     ***Treatment***. Except to the extent that a Holder of an Allowed Class 4 Claim agrees to a different treatment of such Claim, each Holder of an Allowed Class 4 Claim will receive its Pro Rata share of the Liquidating Trust Assets as soon as practicable as determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement; *provided*, *however*, any Allowed Class 4 Claim that is subordinated shall not receive any distribution unless and until all

holders of Allowed Class 4 Claims are paid in full or otherwise agree that their Claims have been satisfied.

*Projection*. The Trustee estimates that the holders of Allowed Class 4 General Unsecured Claims will receive distributions ranging from approximately 4% to 28% of their Allowed General Unsecured Claims.

**B.    Means for Implementation of the Plan**

**1.    The Liquidation Trust**

a.    ***Formation of the Liquidation Trust***.  On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of administering and liquidating the Liquidation Trust Assets, prosecuting and resolving the Causes of Action, objecting to Claims, as necessary, and effectuating the Distributions to be made under the Plan to the Holders of Allowed Claims in accordance with the terms of the Plan.

b.    ***Federal Income Tax Treatment of the Liquidation Trust***.  For federal income tax purposes, it is intended that the Liquidation Trust be classified as a "grantor trust" for federal income tax purposes, pursuant to sections 671-677 of the Internal Revenue Code of 1986, as amended, and that the Liquidation Trust be owned by the Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidation Trust Assets and then contributed such interest to the Liquidation Trust.

c.    ***Funding the Liquidation Trust***.  On the Effective Date, all of the Assets of the Estate, including all Causes of Action, as well as the rights and powers of the Estate as held by the Trustee, shall automatically vest in the Liquidation Trust. Specifically, and without limitation, the Liquidation Trust, through the Liquidation Trustee, shall have the right to prosecute all Causes of Action, and receive all accounts receivable and the proceeds related thereto.

d.    ***Termination of Liquidation Trust***.  The duties, responsibilities, and powers of the Liquidation Trustee shall terminate in accordance with the terms of the Plan and the Liquidation Trust Agreement after (a) all the Liquidation Trust Assets have been fully administered, (b) all reasonably possible Distributions have been made in accordance with the terms of the Plan, and (c) all Disputed Claims have been resolved.

Upon the termination of the Liquidation Trust, the Liquidation Trustee shall file with the Bankruptcy Court a report thereof, seeking an order discharging the Liquidation Trustee and a final decree closing any open Chapter 11 Case.  The Liquidation Trustee shall not unduly prolong the duration of the Liquidation Trust.  As efficiently and expeditiously as possible, the Liquidation Trustee shall endeavor to resolve, settle, or otherwise dispose of all Liquidation Trust Assets, effect the distribution of the Liquidation Trust Assets in accordance with the terms of the Plan, and terminate the Liquidation Trust as soon as practicable.

e.    ***Vesting and Transfer of Assets to the Liquidation Trust***.  Pursuant to section 1141(b) of the Bankruptcy Code, the Assets of the Estates shall vest in the Liquidation Trust; *provided, however*, that the Liquidation Trustee may seek Bankruptcy Court approval to abandon or otherwise not accept any Assets that the Liquidation Trustee believes, in good faith, have no meaningful value to the Liquidation Trust; *provided, however*, that pursuant to an order of the Bankruptcy Court following proper notice, the Liquidation Trustee may abandon any Assets to any Person.

As of the Effective Date, all Assets vested in the Liquidation Trust and all Assets dealt with in the Plan, shall be free and clear of all Claims, Liens, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.  The Liquidation Trustee shall make distributions in accordance with the Plan and the Liquidation Trust Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

f.  ***Appointment and Powers of the Liquidation Trustee***.  The Liquidation Trustee shall be appointed pursuant to the Confirmation Order, as of the Effective Date.  The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in and subject to the terms of the Liquidation Trust Agreement and shall include the authority and responsibility to: (i) receive, manage, invest, supervise and protect the Liquidation Trust Assets; (ii) pay taxes and other obligations incurred by the Liquidation Trust; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of professionals (the "<u>Liquidation Trust Professionals</u>") to advise and assist in the administration, prosecution and Distribution of Liquidation Trust Assets; (iv) calculate and implement Distributions of Distributable Cash (v) prosecute, compromise and settle all Disputed Claims and all claims and Causes of Action vested in the Liquidation Trust; and (vi) pay Professional Fees of professionals retained in the Chapter 11 Case that are Allowed pursuant to any order of the Bankruptcy Court, whether such Professional Fees were incurred before or after the Effective Date.  Other rights and duties of the Liquidation Trustee shall be set forth in the Liquidation Trust Agreement.

The Liquidation Trustee shall have all of the rights and powers of a trustee in bankruptcy, a chapter 11 trustee and/or a debtor in possession to the same extent as would be held by those officers if the Plan had not been confirmed, and shall have the benefit of all time frames that would be applicable to actions by such officers, including without limitation pursuant to section 108 of the Bankruptcy Code

g.  ***Compensation of Liquidation Trustee***.  The Liquidation Trustee shall be reasonably compensated out of the Liquidation Trust Assets for his or her services and reimbursed out of the Liquidation Trust for his or her reasonable expenses in accordance with the Liquidation Trust Agreement.

h.  ***Resignation of Liquidation Trustee***.  The Liquidation Trustee may resign at any time.  The Liquidation Trustee shall file such written resignation with the Bankruptcy Court.  Any party in interest may request a hearing before the Bankruptcy Court regarding the Liquidation Trustee's resignation.  If no such hearing is requested, the resignation shall take effect 30 days after the filing of the notice of resignation with the Bankruptcy Court.  The resigning Liquidation Trustee shall, by the earliest date possible, deliver to the Liquidation Trustee's successor all of the Liquidation Trust Assets that were in the possession of the resigning Liquidation Trustee along with a complete record and inventory of all such Liquidation Trust Assets.

i.  ***Removal of Liquidation Trustee***.  The Bankruptcy Court may remove a Liquidation Trustee for good cause shown on a motion submitted by a Beneficiary of the Liquidation Trust or the U.S. Trustee following notice to parties in interest, including without limitation, the Liquidation Trustee.  The removal will take effect upon the date the Bankruptcy Court specifies.  Any removed Liquidation Trustee shall, by the earliest date possible, deliver to the Liquidation Trustee's successor all of the Liquidation Trust Assets that were in the possession of the removed Liquidation Trustee along with a complete record and inventory of all such Liquidation Trust Assets.

j.  ***Successor Liquidation Trustee***.  Any vacancy in the office of Liquidation Trustee shall be appointed by the Bankruptcy Court after notice and a hearing.

k.  ***Liability of the Liquidation Trustee***.  The Liquidation Trustee shall not be personally liable for any claim asserted against the Liquidation Trust or the Liquidation Trustee, except as set forth below.  The Liquidation Trustee shall not be liable for any error of judgment made in good faith or with respect to any action taken or omitted to be taken in good faith, unless with respect to the Liquidation Trustee's own respective fraud, gross negligence or willful misconduct.  Notwithstanding anything to the contrary set forth herein or in the Liquidation Trust Agreement, no provision of the Plan or the Liquidation Trust Agreement shall be construed to relieve the Liquidation Trustee from liability for gross negligence, fraud or willful misconduct.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

l.        ***Indemnification***.  From and after the Effective Date, the Liquidation Trustee and the independent contractors, employees, and/or professionals employed by the Liquidation Trust (collectively, the "Indemnified Parties" and each an "**Indemnified Party**") shall be, and hereby are, indemnified by the Liquidation Trust, to the fullest extent permitted under applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs, and other assertions of liability arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan, the Liquidation Trust Agreement, or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to such Indemnified Party's own respective fraud, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing any Causes of Action or objections to Claims, on and after the Effective Date.  The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) any document or information, whether verbal or written, referred to herein or supplied to the Liquidation Trustee; or (iv) proceedings by or on behalf of any claimant or Creditor.  Subject to the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trust shall, on demand, advance or pay promptly, in either case from the Liquidation Trust Reserve, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder due to the gross negligence, fraud, or willful misconduct of such Indemnified Party.  Any person entitled to indemnification hereunder shall have the right to employ such person's own separate counsel in any such action, payable solely from the Liquidation Trust Reserve, subject to the terms and conditions of the Plan.

The Liquidation Trustee is authorized, but not required, to obtain and purchase (solely from funds in the Liquidation Trust Reserve) insurance coverage with respect to the responsibilities, liabilities, and obligations of the Indemnified Parties under the Plan.

## 2.      The Source of Distributions

The sources of all distributions and payments under the Plan are the Liquidation Trust Assets (or proceeds of any Liquidation Trust Assets), including without limitation Cash and Distributable Cash, proceeds of all Causes of Action, and proceeds of or recoveries from any other remaining property of the Estate.

## 3.      Claims Reconciliation Process

From and after the Effective Date, the Liquidation Trust shall be solely responsible for objecting to Claims which are not otherwise Allowed.

## 4.      Preservation of Right to Conduct Investigations

Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtor, the Estate, or the Trustee prior to the Effective Date shall vest with the Liquidation Trust upon the Effective Date and shall continue in effect until dissolution or termination of the Liquidation Trust.

## 5.      Preservation of Privilege and Defenses

No action taken by the Trustee in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Estate, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(collectively, the "**Transferred Privileges**"). The Confirmation Order shall provide that notwithstanding the Trustee, or the Debtor, as the case may be, providing any Transferred Privileges to the Liquidation Trust, the Liquidation Trust, or any party or Person associated with the Liquidation Trust, such Transferred Privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged and shall vest in the Liquidation Trust, in trust, and, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Liquidation Trustee and the Liquidation Trust beneficiaries; *provided*, *however*, the Liquidation Trustee shall not share information protected by any Transferred Privilege with a holder of a general unsecured claim to the extent that such protected information implicates the claims the creditors have against the Liquidation Trust or claims the Liquidation Trust has against the Holder of a Claim; *provided further, however*, that the Liquidation Trustee shall not waive any Transferred Privilege, or otherwise disclose any material subject to a Transferred Privilege, to the extent such Transferred Privilege is held jointly with a third party, without the express written consent of such third party.

### 6.    Abandonment of Property

If and to the extent the Liquidation Trustee determines to abandon any Liquidation Trust Assets, then the Liquidation Trustee may abandon such assets in accordance with the Plan or any further order of the Bankruptcy Court.

### C.    Claims Reconciliation Process

### 1.    Objections to, and Resolution, of Disputed Claims

From and after the Effective Date, the Liquidation Trust shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, subject to the Liquidation Trust Agreement, and any agreement entered into by the Liquidation Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim; *provided*, *however*, that, under the Plan, all Disputed Claims will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order.

### 2.    Claim Objections

All objections to Claims (other than Professional Fee Claims) shall be filed by the Liquidation Trust on or before the Claim Objection Deadline, which date may be extended by filing a motion on or before the then Claim Objection Deadline.  If a timely objection has not been filed to a proof of claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtor but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

### 3.    Estimation of Certain Claims

The Liquidation Trust may, at any time, move for a Bankruptcy Court order estimating any contingent Claim, Disputed Claim, or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately Allowed.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**D.    Distributions Under the Plan**

    **1.    Manner of Cash Payments.**

Cash payments to Holders of Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Liquidation Trustee or, at the Liquidation Trustee's option, by wire transfer from a domestic bank.

    **2.    Setoff and Recoupment**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE LIQUIDATION TRUSTEE, ON BEHALF OF THE LIQUIDATION TRUST, MAY SETOFF, RECOUP, OR WITHHOLD AGAINST DISTRIBUTIONS ON ACCOUNT OF ANY CLAIM OR ANY ADMINISTRATIVE EXPENSE CLAIM, ANY CLAIMS THAT THE ESTATE OR THE LIQUIDATION TRUST MAY HAVE AGAINST THE HOLDER OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM. THE LIQUIDATION TRUST AND THE LIQUIDATION TRUSTEE WILL NOT BE DEEMED TO WAIVE OR RELEASE ANY CLAIM AGAINST THE HOLDER OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM BY FAILING TO EFFECT SUCH A SETOFF OR RECOUPMENT; BY ALLOWING ANY CLAIM OR ADMINISTRATIVE EXPENSE CLAIM, AS APPLICABLE, AGAINST THE ESTATE OR THE LIQUIDATION TRUST; OR BY MAKING A DISTRIBUTION ON ACCOUNT OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM.**

    **3.    No Distributions With Respect to Disputed Claims**

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim.

    **4.    Reserve for Disputed Claims and Administrative Expenses**

Liquidating Trustee may maintain a reserve for any distributable amounts required to be set aside on account of Disputed Claims and cost associated with administering the Liquidating Trust and shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidating Trust Agreement, as such Disputed Claims are resolved by Final Order, and such amounts shall be distributable in respect of such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date, provided that no interest shall be distributable or accrue with respect thereto.

    **5.    Preservation of Causes of Action**

The Liquidation Trustee, on behalf of the Estate and/or the Liquidation Trust, shall retain, and may exclusively enforce, any and all claims, rights, or Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, an adversary proceeding filed in this Chapter 11 Case. Subject to the Plan and the Liquidation Trust Agreement, the Liquidation Trustee, on behalf of the Estate and the Liquidation Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise on any reasonable terms any and all claims, rights and Causes of Action, and shall not be required to seek prior approval from the Bankruptcy Court to do so, except as otherwise provided in the Plan, and shall have the full rights and powers to commence and pursue any such Causes of Action (including, without limitation, any Avoidance Actions), on or after the Effective Date to at least the same extent as a trustee or debtor in possession could commence such actions prior to the Effective Date.  With respect to any matter affecting Liquidation Trust Assets, the Liquidation Trustee stands in the shoes of the Estate and/or the Liquidation Trust and may take such actions in their name without the need to intervene in, amend any pending matters, proceedings, or actions, or obtain any further order of the Bankruptcy Court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Plan provides that the Liquidation Trustee is authorized to exercise and perform the rights, powers, and duties held by the Estate and/or the Liquidation Trust, including without limitation the authority under section 1123(b)(3) of the Bankruptcy Code to provide for the settlement, adjustment, retention and enforcement of claims and interests of the Estate or the Liquidation Trust, including, but not limited to all Causes of Action.

The Plan preserves all claims and Causes of Action against any and all third parties, including, but not limited to, all creditors and interest holders, and others. Nothing contained in the Plan shall be construed as an acknowledgment or concession regarding the existence or validity of any claim or Cause of Action.

## E.    Exculpation and Injunction

### 1.    Term of Bankruptcy Injunction or Stay

Except as otherwise expressly provided in the Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and which are in effect on the confirmation Date, shall remain in full force and effect until the Effective Date.

### 2.    Exculpation for Estate Fiduciaries.

**Upon the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or any Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party shall be exculpated from any claim, obligation, cause of action, or liability for any Exculpated Claim, except for gross negligence, willful misconduct, fraud, or criminal conduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon confirmation of the Plan, shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

"Exculpated Claims" means any Claim related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, including the sale process, the formulation, preparation, dissemination, negotiation, or filing of the disclosure statement, the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the disclosure statement or the Plan, the filing of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, and the administration and implementation of the Plan, including the distribution of property under the Plan or any other agreement.

"Exculpated Parties" means collectively: (a) the Trustee; (b) Pachulski Stang Ziehl & Jones LLP as counsel to the Trustee; (c) Development Specialists, Inc. as the Trustee's forensic accountant; (d) Law Office of Eric Everett Hawes, landlord/tenant counsel to the Trustee, and (e) the Law Offices of Goldfarb Gross Seligman & Co., special Israeli litigation counsel.

### 3.    Injunction

**The Plan provides, and the Confirmation Order shall provide, among other things, that any Person (other than the Trustee or the Liquidation Trustee) who has held, holds, or may hold a claim against or right with respect to the Debtor's Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, or any claim against the Debtor's Estate or the Liquidation Trust for which the Debtor's Estate or the Liquidation Trust are or may be liable is, with respect to any such claim, interest, or right, permanently enjoined from and after the Effective Date from**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

taking any of the following actions (other than actions taken in the Bankruptcy Court or in any of the Chapter 11 Case to enforce any rights or obligations under the Plan or to defend challenges to the validity or amount of a Disputed Claim), absent further order of the Bankruptcy Court:  (i) asserting, commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting any of the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, on account of any claim for which the Estate or Liquidation Trustee are directly or indirectly liable, including without limitation, by way of contribution, indemnity or otherwise; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against any of the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien of any kind against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (v) prosecuting, commencing, continuing or otherwise asserting any right, claim or cause of action released pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; and (vi) acting to obtain possession of the Liquidation Trust Assets or to exercise control over the Liquidation Trust Assets or any rights or interests of the Estate, the Liquidation Trust, or the Liquidation Trustee with respect to the Assets or the Liquidation Trust Assets. If the Liquidation Trustee, the Liquidation Trust Assets or the Estate are injured by any willful violation of such injunction, the Liquidation Trustee shall be entitled to seek actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages, from the willful violator(s). Notwithstanding the foregoing, holders of Disputed Claims are not enjoined from and shall retain all rights to defend or prosecute such Disputed Claims in the Bankruptcy Court, including, without limitation, the right to assert affirmative defenses, setoff, or recoupment, if applicable.  Nothing herein shall impair or delay any rights of any Holder of a Claim against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, to pursue any action against the Debtor or any third party who may be directly liable to such Holder.

Nothing contained in Section 12.3 of the Plan shall be construed to in any way enjoin, prevent, or limit the Liquidation Trustee's rights, power, and authority under the Plan and the Liquidation Trust Agreement.

Nothing contained in Section 12.3 of the Plan shall be construed to in any way enjoin, prevent, or limit the ability of a party that was granted relief from the automatic stay during the Chapter 11 Case to liquidate its claims, or from continuing to liquidate such claims, in the applicable court.

F.    **Executory Contracts and Unexpired Leases**

1.    **Rejection**

Upon the Effective Date, all agreements executed by the Trustee before the Effective Date, other than agreements that were previously either assumed and assigned or rejected by a Final Order, to the extent that these agreements constitute executory contracts under section 365 of the Bankruptcy Code, shall be held in abeyance until the Liquidating Trustee elects to assume or reject such executory contract.  The order approving such assumption or rejection, as the case may be,  shall constitute a Final Order under section 365 of the Bankruptcy Code approving such assumption or rejection. Any unexpired leases that were not assumed or rejected by a prior Final Order are rejected upon entry of the Confirmation Order, which shall constitute a Final Order under section 365 of the Bankruptcy Code approving such rejection of an unexpired lease.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## 2.    Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Liquidation Trustee and his or her counsel within 30 days after the (a) Effective Date or (b) the date of the Final Order approving the rejection of such executory contract or unexpired lease . Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Estate, the Liquidation Trust, and the Liquidation Trustee, and their property, and the entities holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Liquidation Trustee shall have the right to object to any such Rejection Damage Claims.

## G.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan.

## H.    Miscellaneous Plan Provisions

### 1.    Conditions Precedent to the Effective Date

The Plan will not be consummated or become binding unless and until the Effective Date occurs. The Effective Date will be the first Business Day after the following conditions have been satisfied: (i) the Confirmation Order, in a form reasonably acceptable to the Trustee, shall have been entered by the Bankruptcy Court; (ii) the Confirmation Order is not stayed; (iii) the Liquidation Trustee and the Trustee shall have signed the Liquidation Trust Agreement; (iv) the funding of the Professional Fee Escrow Account shall have occurred; and (v) no material adverse effect has occurred in respect of the Assets. Each of these conditions precedent may be waived in whole or in part by the Trustee without further notice or order of the Bankruptcy Court.

## VIII.

## CONFIRMATION AND CONSUMMATION PROCEDURES

## A.    Overview

A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, upon confirmation of the plan, it becomes binding on the debtor's estate and all of its creditors, and the obligations owed by the estate to such parties are compromised and exchanged for the obligations specified in the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the plan proponent to prepare and file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. **This Disclosure Statement is presented to holders of Claims against the Estate to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the Trustee's solicitation of votes on the Plan.**

If all classes of claims accept a chapter 11 plan, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied. Section 1129(a) sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests of creditors" test and be "feasible." The "best interests" test generally requires that the value of the consideration to be distributed to the holders of claims or equity interests under a plan may not be less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the bankruptcy court generally

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization. **The Trustee believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the best interests of creditors' test and the feasibility requirement.**

The Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a plan of reorganization for the bankruptcy court to determine that the class has accepted the plan.  Rather, a class of creditors will be determined to have accepted the plan if the bankruptcy court determines that the plan has been accepted by a majority in number and two-thirds in amount of those claims actually voting in such class.  Similarly, a class of equity security holders will have accepted the plan if the bankruptcy court determines that the plan has been accepted by holders of two-thirds of the number of shares actually voting in such class.

In addition, classes of claims or equity interests that are not "impaired" under a plan of reorganization or liquidation are conclusively presumed to have accepted the plan and thus are not entitled to vote.  Furthermore, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan.  Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class.  A class is "impaired" if the legal, equitable, or contractual rights associated with the claims or equity interests of that class are modified in any way under the plan.  Modification for purposes of determining impairment, however, does not include curing defaults and reinstating maturity on the effective date of the plan. Class 3 (Gestetner Secured Claim), **Class 3(a) (Other Secured Claims), and Class 4 (General Unsecured Claims) are impaired under the Plan and entitled to vote on the Plan.**

A bankruptcy court also may confirm a chapter 11 plan even though fewer than all the classes of impaired claims accept such plan. For a chapter 11 plan to be confirmed despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at least one class of impaired claims (determined without counting the vote of insiders) and the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property from the estate, unless the senior class receives property having a value equal to the full amount of its allowed claim.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interest in such class.

**B.    Confirmation of the Plan**

**1.    Elements of Section 1129 of the Bankruptcy Code**

At the confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the conditions to confirmation under section 1129 of the Bankruptcy Code are satisfied, including the following:

a.     The Plan complies with the applicable provisions of the Bankruptcy Code.

b.     The Trustee has complied with the applicable provisions of the Bankruptcy Code.

c.     The Plan has been proposed in good faith and not by any means proscribed by law.

d.     Any payment made or promised by the Trustee or by an entity issuing securities or acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court; and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

e.     The Trustee has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtor or a successor to the Debtor under the Plan and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity holders and with public policy, and the Debtor have disclosed the identity of any insider that will be employed or retained by such Debtor, and the nature of any compensation for such insider.

f.     With respect to each impaired class of Claims, each holder of an impaired Claim or either has accepted the Plan or will receive or retain under the Plan, on account of the Claims or Interests held by such entity, property of a value, as of the applicable consummation date under the Plan, that is not less than the amount that such entity would receive or retain if the Debtor was liquidated on such date under chapter 7 of the Bankruptcy Code.

g.     In the event that the Trustee does not move to confirm the Plan non-consensually, each class of Claims entitled to vote has either accepted the Plan or is not impaired under the Plan.

h.     Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Priority Claims will be paid in full on the applicable consummation date and that Tax Claims will be paid in full, in cash, on the applicable consummation date or as soon as practicable thereafter; however, the Trustee shall have the right to make deferred cash payments on account of such Tax Claims over a period not exceeding six (6) years after the date of assessment of such Claims, having a value, as of the applicable consummation date, equal to the allowed amount of such Claims.

i.     At least one impaired class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such class.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

j.      Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any other successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

k.      All fees payable under section 1930 of Bankruptcy Code, as determined by the Bankruptcy Court at the confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

l.      The Plan provides for the continuation after the consummation of the Plan of payment of all retiree benefits at the level established under section 1114(e)(1)(B) or (g) of the Bankruptcy Code at any time prior to confirmation of the Plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

m.      If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

n.      In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—**(A)** the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or **(B)** the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

o.      All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

     The Trustee believe that the Plan will satisfy all the statutory provisions of chapter 11 of the Bankruptcy Code, that the Trustee has complied or will have complied with all of the provisions of the Bankruptcy Code, and that the Plan is being proposed and will be submitted to the Bankruptcy Court in good faith.

     **2.     Acceptance**

     A class of Claims will have accepted the Plan if the Plan is accepted, with reference to a class of Claims, by at least two-thirds in amount and more than one-half in number of the Allowed Claims of each such class of Claims.

     **3.     Best Interests of Creditors Test**

     Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired allowed claim or interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor

was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date (the "**Best Interests Test**").  The first step in meeting this test is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in the context of a chapter 7 liquidation in which a chapter 7 trustee is appointed and charged with reducing to cash any and all assets of the Debtor. Accordingly, this is the assumption employed in preparing the Liquidation Analysis. The Bankruptcy Court will determine whether the Cash and property issued under the Plan to each Class equals or exceeds the value that would be allocated to the holders of Claims in a liquidation under chapter 7 of the Bankruptcy Code. The Trustee believes that the holders of Claims against the Estate will have an equal or greater recovery under the Plan than could be realized in a chapter 7 liquidation.

Accordingly, the only question is whether the creditors will have recovered more (or at least as much) under the Plan than they would recover through a liquidation by a chapter 7 trustee.

To determine the value that a holder of a Claim in an Impaired Class would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtor's Assets if the Chapter 11 Case had been converted to a chapter 7 liquidation case and the Debtor's Assets were liquidated by a chapter 7 trustee (the "**Liquidation Value**").  The Liquidation Value would consist of the net proceeds from distribution of the Debtor's Assets, augmented by Cash held by the Debtor and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 case.

As explained below, the Liquidation Value available for satisfaction of Claims against the Debtor would be reduced by: (a) the costs, fees, and expenses of the liquidation under chapter 7, which would include disposition expenses and the compensation of a trustee and his counsel and other retained professionals, (b) the fees of the chapter 7 trustee, and (c) certain other costs arising from conversion of the Chapter 11 Case to chapter 7.  The Liquidation Analysis attached hereto as **Exhibit "B"** establishes that creditors will clearly benefit from confirmation of the Plan.

It is also anticipated that a chapter 7 liquidation would result in a significant delay in payments being made to creditors.  Bankruptcy Rule 3002(c) provides that conversion of the Chapter 11 Case to chapter 7 will trigger a new bar date for filing claims against the Estate, and that the new bar date will be more than 90 days after the Chapter 11 Case convert.  Not only would a chapter 7 liquidation delay distribution to creditors, but it is possible that additional Claims that were not asserted in the Chapter 11 Case, or were late-filed, could be filed against the Estate.  Reopening the Bar Dates in connection with conversion to chapter 7 would provide other claimants an additional opportunity to timely file Claims against the Estate.  Moreover, the Trustee would lose the benefit of having an established Claim Bar Date.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 Case, including: (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee; and (ii) the substantial increases in claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Case, the Trustee has determined that confirmation of the Plan will provide each holder of a Claim or Interest with a greater recovery than it would receive pursuant to liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

**4.**    **Feasibility**

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization.  Because distributions will be made only to the extent of existing assets or future recoveries, the Trustee believes the Plan is feasible.

## C.    **Effect of Confirmation**

Under section 1141 of the Bankruptcy Code, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equity security holder, whether or not the claim or interest of such creditor or equity security holder is impaired under the plan and whether or not such creditor or equity security holder voted to accept the plan. Any discharge of the Debtor is subject to section 1141(d)(5) of the Bankruptcy Code. Further, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors and equity security holders, except as otherwise provided in the plan or the confirmation order.

## IX.

## **CONCLUSION**

The Trustee believes that the Plan is in the best interest of all holders of Claims and urge all holders of impaired Claims against the Debtor's Estate to vote to accept the Plan and to evidence such acceptance by returning their ballots in accordance with the instructions accompanying the Disclosure Statement.

Submitted by:

December 15, 2025                      PACHULSKI STANG ZIEHL & JONES LLP

                                       By
                                          _____
                                          Jeffrey W. Dulberg (CA Bar No. 181200)
                                          John W. Lucas (CA Bar No. 271038)

                                          *Counsel to the Bradley D. Sharp, Chapter 11
                                          Trustee*

DOCS_LA:338919.11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

### (Plan)

### [Intentionally Omitted]

1

## EXHIBIT B

2

**(Liquidation Analysis)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4932-6270-5019.4 78512.001

**Bankruptcy Estate of Leslie Klein**

Ch 11 Plan Projections and Best Interest of Creditors Test Analysis - Summary

Effective Date: March 31, 2026

| | Plan Projections | | | | Projected Ch. 7 | |
| --- | --- | --- | --- | --- | --- | --- |
| | High | | Low | | | |
| | Amount | % Recovery | Amount | % Recovery | Amount | % Recovery |
| **Total Assets [1]** | $ 24,754,400 | | $ 10,491,906 | | $ 9,991,906 | |
| Gestetner Secured Claim | (2,494,106) | 100% | (2,494,106) | 100% | (2,494,106) | 100% |
| Other Secured Claims [2] | (72,778) | 100% | (72,778) | 100% | (72,778) | 100% |
| Chapter 7 Administrative Claims [3] | - | N/A | - | N/A | (3,708,863) | 100% |
| Pre-Effective Plan Creditor Payments - Administrative [4] | (5,972,243) | 100% | (4,299,369) | 100% | (3,048,042) | 100% |
| Pre-Effective Plan Creditor Payments - Priority [5] | (29,046) | 100% | (29,046) | 100% | (29,046) | 100% |
| Post-Effective Date - Administrative Costs [6] | (1,738,035) | 100% | (1,623,935) | 100% | - | N/A |
| **Remaining Funds for General Unsecured Creditors ("GUC")** | $ 14,448,193 | | $ 1,972,673 | | $ 639,072 | |
| **Unsecured Creditor Pool [7]** | 52,459,964 | 28% | 52,459,964 | 4% | 52,459,964 | 1% |
| **Subordinated Unsecured Claims [8]** | 19,663,224 | | 19,663,224 | | 19,663,224 | |

[1] Total Assets represent the liquidation of the Estate Assets, including but not limited to existing cash, real estate, proceeds from Life Capital Group, litigation efforts and collection on insurance policies.

[2] Turnover of funds received from rent on the Martel property to its foreclosing lender (Class 3(a)). The payment of secured tax claims is anticipated to occur when the corresponding real estate is sold and is factored into the anticipated net proceeds received therein.

[3] Chapter 7 Administrative claims incurred if the case were to convert including replacement counsel, financial advisors, tax professionals and the chapter 7 Trustee fees.

[4] Pre-Effective administrative claims represent professional fees that have been approved, but not paid as well as anticipated US Trustee fees.

[5] Priority claims as defined in the plan and disclosure statement.

[6] Post-Effective Administrative costs represent anticipated professional fees and U.S. Trustee fees needed to administer the Liquidating Trust to its conclusion.

[7] Anticipated general unsecured claims as defined in the plan and disclosure statement.

[8] The subordinated portion of the general unsecured claims for the Menlo and Vago parties per their settlement terms.