Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  jdulberg@pszjlaw.com
        jlucas@pszjlaw.com

Counsel to Bradley D. Sharp, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>        LESLIE KLEIN,<br><br>                        Debtor. | Case No. 2:23-bk-10990-NB<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SALE OF ESTATE'S INTEREST IN UNITS 511-512 OF THE DAN BOUTIQUE HOTEL, 31 HEBRON ROAD, BLOCK 30018, PARCEL 5, JERUSALEM, ISRAEL FREE AND CLEAR OF ALL LIENS, CLAIMS OR INTERESTS PURSUANT TO 11 U.S.C. § 363(b); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRADLEY D. SHARP IN SUPPORT THEREOF**<br><br>Date:      February 24, 2026<br>Time:     2:00 p.m.<br>Place:     Courtroom 1545<br>             255 E. Temple Street<br>             Los Angeles, CA 90012 |

LA:4921-3535-6522.2 78512.001

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND HIS COUNSEL OF RECORD, AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that Bradley D. Sharp, the duly appointed, authorized and acting chapter 11 trustee (the "**Trustee**") in the above-captioned bankruptcy case of Leslie Klein (the "**Debtor**"), will and hereby does move the Court for an order under 11 U.S.C. 363(b), Local Bankruptcy Rule 6004-1(c) and 9013-1, approving the sale of the bankruptcy estate's interest in Units 511-512 (previously Unit 505) of The Dan Boutique Hotel, 31 Hebron Road, Block 30018, Parcel 5, Jerusalem, Israel (the "**Property**"). The sale will be conducted by the duly appointed trustee in Israel following competitive bidding and in accordance with prevailing law. The sale is expected to yield approximately $214,000 in net proceeds for the Debtor's chapter 11 estate.[1]

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion will be held on **February 24, 2026,** at **2:00 p.m.**, or as soon thereafter as counsel may be heard before the Honorable Neil W. Bason, United States Bankruptcy Judge, in Courtroom 1545, 255 East Temple Street, Los Angeles, California 90012.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities and Declaration of Bradley D. Sharp annexed thereto, the record in this chapter 11 case, as well as any other documentary evidence as may be presented to this Court at or before the hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), if you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it upon the undersigned counsel no later than fourteen (14) days prior to the hearing on the

---

[1] This figure is prior to payment of any U.S. taxes which the Trustee anticipates will be *de minimis,* if any, after accounting for the estate's offsetting tax losses.

Motion.  The failure to properly file and serve an opposition may be deemed consent to the relief requested in the Motion or a waiver of any right to oppose the Motion.

Dated:    February 3, 2026                              PACHULSKI STANG ZIEHL & JONES LLP

         */s/ Jeffrey W. Dulberg*

         Jeffrey W. Dulberg
         Counsel to Bradley D. Sharp, Chapter 11 Trustee

LA:4921-3535-6522.2 78512.001                            3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### STATEMENT OF FACTS

**A.    Case Background**

On February 22, 2023, the Debtor filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code.  On April 24, 2023, creditors Erica and Joseph Vago filed a *Motion for Order Dismissing Debtor's Chapter 11 Bankruptcy Case* (the "**Motion to Dismiss**") [Docket No. 79].

On May 17, 2023, at a hearing held on the Motion to Dismiss, the Court ruled that the appointment of a chapter 11 trustee, and not dismissal of the case, was in the best interests of the estate. On May 23, 2023, the UST filed a Notice of Appointment of Chapter 11 Trustee [Docket No. 151], appointing Bradley D. Sharp to serve as chapter 11 Trustee. On May 24, 2023, the UST Filed an Application for Order Approving Appointment of Trustee and Fixing Bond [Docket No. 154], approved by order entered the same day [Docket No. 155]. On that same day, the Trustee accepted his appointment [Docket No. 156].

On January 25, 2024, the Trustee commenced a proceeding in Jerusalem Magistrates Court (the "**Israeli Court**") for recognition of the Debtor's bankruptcy case as a foreign main proceeding under Israel's Insolvency and Economic Rehabilitation Law, 2018.  The Israeli Court subsequently recognized the Debtor's bankruptcy case as a foreign main proceeding and appointed an Israeli trustee (the "**Israeli Trustee**") with respect to the Debtor and his Israeli affairs, for the purpose of, *inter alia*, liquidation of the Debtor's interest in the Property.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    Proposed Sale of the Property**

1.    The Property

Israeli property records reflect that the Debtor and Erika Klein (the Debtor's deceased spouse) are the leaseholders of residential units 511-512 (previously Unit 505) in the Dan Boutique Hotel as detailed in the Land Registry extract attached as **Exhibit "A"** to the Declaration of Bradley D. Sharp

(the "**Sharp Declaration**"). The property records reflect ownership of the Property is held through a long-term lease and the Debtors and Erika Klein as the exclusive leaseholders.

The Debtor scheduled his ownership interest in the Property at 50%, and the remaining 50% as held by his deceased wife's irrevocable marital trust. *See* Docket No. 70 at p. 5.  Thus, any interest that Erika Klein had is held by the Debtor pursuant to his living trust. As the Court is aware, the Debtor's living trust is self-settled and all property in such trust is property of the Debtor's estate. *See* Adv. 24-01140, Docket Nos. 62 and 92.[2]  Accordingly, the Trustee takes the position that the entirety of the net proceeds of the sale of the Property belongs to the Debtor's bankruptcy estate.

In his amended bankruptcy schedules filed on April 10, 2023 [Docket No. 70], the Debtor listed the value of the Property at $200,000.  The Israeli Trustee assessed the value of the Property at approximately 1,400,000 New Israeli Shekels ("**NIS**") ($453,015), and in a forced sale scenario, NIS 1,150,000 ($372,120).

2.    The Proposed Sale

The Israeli Trustee entered into an agreement with the proposed buyer to purchase the Property for NIS 800,000 or approximately $258,866 at the current exchange rate. The Trustee, in his business judgment, has approved of the sale of the Property for the benefit of the Debtor's creditors.  Except for an order prohibiting any disposition of the Property issued by the Israeli Court at the Trustee's request, the Property is unencumbered by any known liens, claims or third-party interests, except taxes and fees owed to the Dan Chain. A translation of the sale agreement (the "**Sale Agreement**")[3] is annexed to the Sharp Declaration as **Exhibit "B"**.

In January 2025, the Israeli Trustee published notices and invited the general public to submit offers on the Property. Over a period of six months, no offers were received. The Israeli

---

[2] On the same reasoning, earlier in this chapter 11 case, the Court approved a sale of the Debtor's interest and Erika Klein's purported interest held in the marital trust in a property known as the Leonardo Plaza. *See* Docket Nos. 895 and 920.

[3] Parties wishing to review the complete Sale Agreement including appendices in its original Hebrew may contact the Trustee's counsel who will provide a copy upon request.

Trustee also attempted to use brokerage services, with court approval, and for months tried to facilitate the submission of bids for the Property. These attempts were unsuccessful.

On July 13, 2025, the Israeli Trustee made another publication and invitation to submit offers. No offers were received, however, parties Dayan Bar and/or Yossi Barzani and/or their designee requested additional time for review, and one week later, submitted an offer to purchase the rights in the Property for NIS 600,000. After negotiations with the Israeli Trustee and Receiver on September 3, 2025, Dayan Bar and/or Yossi Barzani and/or their designee increased their offer to NIS 750,000 ($242,687).  Dayan Bar and/or Yossi Barzani and/or their designee justified their low bid by noting the following:  (a) the hotel is closed for renovations; (b) the Property itself needs a major renovation at a higher cost than was taken into consideration by the appraiser; (c) the appraisal does not take into account the fact that the long-term lease with the Israel Land Authority for the land on which the hotel is built will end in March 2026, and it is unclear if renewal of the long-term lease will result in charges being imposed on the owner of the unit; and (d) the appraisal did not examine the economic ramifications of the management agreement between the hotel and the unit owner. Thereafter, Suites America Ltd., Company No. 510822885, controlled by the Dan Chain (the "**Purchaser**") exercised its right of first refusal and offered to purchase the Property for NIS 800,000 (approximately $258,866 at the current exchange rate).[4]

The Purchaser made a deposit of 10% of the purchase price (NIS 80,000) with the Israeli Trustee. Under the Sale Agreement, once the Israeli Court approves the application to approve the sale, the Purchaser will have 30 days to pay an additional NIS 120,000 and 90 days from court approval to pay the remaining balance of the purchase price.

The funds will be held in a trust account by the Israeli Trustee for the benefit of the parties until title is registered in the name of the Purchaser, which will occur after the Israeli Trustee

---

[4] In addition to the foregoing, the ongoing war in Gaza has severely reduced foreign tourism to Israel. This hampered the value of the Property because apartments of this sort have historically been owned by non-Israelis who visit Israel once or twice a year for either the Jewish holidays or to visit family living in Israel, which also explains why the price is well below the assessed value.

provides certificates from the Israel Tax Authority and the City of Jerusalem that all taxes have been paid. The Trustee's counsel in Israel has informed him that this process could take several months.

A true and correct copy of the Sale Agreement is attached as **Exhibit "A"** to the Sharp Declaration and incorporated herein by reference.

The anticipated costs of sale of the Property include, but are not limited to, the following items:

Receiver Statutory Fee – $38,800 - NIS 120,000;

Appraisal – $1,520 – NIS 4,720;

Maintenance fee owed to Dan Hotels:  $1,415 – NIS 4,375;

Municipal tax debt:  $1,617 – NIS 5,000

Dan Hotel Management Fees- $1,132 – NIS 3,500; and

Miscellaneous costs and fees - $323.00 – NIS 1,000

The Trustee anticipates that, after subtracting costs of sale, including the above-described commissions, appraisal fees, transfer fees, taxes and the Israeli Trustee's fees, the sale of the Property will result in pre-tax proceeds of approximately NIS 661,405, which equals approximately $214,000 at present conversion rates, for the Debtor's bankruptcy estate.  This figure is prior to payment of any U.S. taxes which the Trustee anticipates will be *de minimis,* if any, after accounting for the estate's offsetting tax losses.

**II.**
**ARGUMENT**

A.    **The Trustee May Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b)**

Section 363(b) of the Bankruptcy Code empowers a trustee to "use, sell or lease . . . other than in the ordinary course of business, property of the estate.".  In considering a proposed transaction to use, sell, or lease, courts look at whether the transaction is in the best interests of the estate based on the facts and history of the case. *In re America West Airlines,* 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (*citing In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for the proposed sale.  (*citing In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for

the proposed sale. *In re 240 North Brand Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir. 1996); *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.,* 209 B.R. 974 (Bankr. W.D. Wash. 1997).

In approving any sale outside the ordinary course of business, there must be a sufficient business reason for the sale, and it must be in the best interest of the estate.  Here, the proposed transaction has a legitimate business justification and is in the best interest of the Estate.  The Sale will generate funds for the benefit of the estate and its unsecured creditors.

**B.    The Purchaser Should Be Deemed a "Good Faith Purchaser"**

11 U.S.C. § 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

A good faith purchaser is one who buys in good faith and for value. *Ewell v. Diebert (In re Ewell),* 958 F.2d 276, 281 (9th Cir. 1992).  Although the Bankruptcy Code does not define "good faith," courts have provided guidance as to the appropriate factors to consider.  *See id*. (lack of good faith generally shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders); *In re Pine Coast Enters., Ltd*., 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ("[t]he requirement that a purchaser act in good faith speaks to the integrity of its conduct in the course of the sale proceeding."); *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990) ("[t]he purpose of Section 363(m) is to disable courts from backtracking on promises with respect to bankruptcy sales in the absence of bad faith.").

Here, the proposed Purchaser is not known to have any connection to the Debtor and the Trustee is informed and believes that the Purchaser engaged in arms' length negotiations with the Israeli Trustee for the sale of the Property.

**C.    Waiver of Stay under Federal Rule of Bankruptcy Procedure 6004(h)**

Federal Rule of Bankruptcy Procedure 6004(h) provides that an "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after

LA:4921-3535-6522.2 78512.001                                 8

entry of the order, unless the court orders otherwise." The Trustee requests that if the Court approves the sale proposed by this Motion, that it also waive the 14-day stay under FRBP 6004(h). In that regard, the Advisory Committee Notes to the 1999 Amendments to FRBP 6004 state that the Court "may, in its discretion, order that [the 14-day stay] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court."

## III.
## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that this Court enter an order:

1.    Granting the Motion;

2.    Approving the sale of the Property to the Purchaser on the terms set forth in the Sale Agreement;

3.    Determining that the Purchaser is a "good faith purchaser" pursuant to 11 U.S.C. § 363(m);

4.    Authorizing the Trustee to take any and all necessary actions to consummate the sale of the Property;

5.    Authorizing the Trustee to pay from the proceeds of the sale and without further order of the Court any escrow fees, title insurance premiums and other ordinary and typical closing costs and expenses payable by the Trustee pursuant to the Sale Agreement or in accordance with local custom;

6.    Waiving the stay of the order approving this Motion imposed by Federal Rule of Bankruptcy Procedure 6004(h) and any other applicable bankruptcy rules; and

7.    For such other and further relief as the Court may deem just and proper.

Dated:    February 3, 2026                    PACHULSKI STANG ZIEHL & JONES LLP


                                             By  /s/ Jeffrey W. Dulberg
                                                 Jeffrey W. Dulberg
                                                 Counsel to Bradley D. Sharp, Chapter 11
                                                 Trustee

LA:4921-3535-6522.2 78512.001                    9

## **DECLARATION OF BRADLEY D. SHARP**

I, Bradley D. Sharp, declare and state as follows:

1.      I am the duly appointed, authorized and acting chapter 11 trustee of the estate of Leslie Klein, the debtor herein (the "**Debtor**").

2.      I make this declaration in support of the Motion for Order Approving Sale of Estate's Interest in Units 511-512 of the Dan Boutique Hotel, 31 Hebron Road, Block 30018, Parcel 5, Jerusalem, Israel Free and Clear of All Liens, Claims or Interests Pursuant to 11 U.S.C. §§ 363(b) (the "**Motion**").  All terms defined in the Motion are incorporated herein by this reference.

3.      In his amended bankruptcy schedules [Docket No. 70], the Debtor listed the value of the property commonly known as Units 511-512[5] of The Dan Boutique Hotel, 31 Hebron Road, Block 30018, Parcel 5, Jerusalem, Israel (the "**Property**") at $200,000.00, with his ownership interest in the Property at 50%, and the remaining 50% ownership interest in the Property held by his deceased wife's irrevocable marital trust.

4.      The property records reflect that the ownership of the Property is held through a long-term lease and Leslie Klein and Erika Klein (the Debtor's deceased spouse) as the exclusive leaseholders. Any interest that Erika Klein had is held by the Debtor pursuant to his living trust. As the Court is aware, the Debtor's living trust is self-settled and all property in such trust property of the estate. Adv. Case No. 24-01140 [Adv. Docket Nos. 62 and 92]. Accordingly, I take the position that the entirety of the net proceeds of the sale of the Property belongs to the Debtor's bankruptcy estate.

5.      I am informed and believe the title registry for the Property (the "**Title Registry**") reflects that Leslie Klein and Erika Klein are the exclusive leaseholders of the Property. A true and correct copy of the Title Registry and a translation thereof is attached hereto as part of **Exhibit "A"** and incorporated herein by reference.

---

[5] Previously Unit 505.

6.      I have reviewed a translation of the agreement (the "**Sale Agreement**") for the sale of the estate's interest in the Property to Suites America Ltd., Company No. 510822885 (the "**Purchaser**"), for 800,000 New Israeli Shekels ("**NIS**") which is approximately $258,866 at the current exchange rate, subject to approval of the Israeli Court.  A true and correct copy of the Sale Agreement and its translation is attached hereto as **Exhibit "B"** and incorporated herein by reference.

7.      I am informed and believe that the Estate's interest in the Property will yield approximately this amount less applicable taxes and costs of sale estimated as follows:

Receiver Statutory Fee – $38,800 - NIS 120,000;

Appraisal – $1,520 – NIS 4,720;

Maintenance fee owed to Dan Hotels:  $1,415 – NIS 4,375;

Municipal tax debt:  $1,617 – NIS 5,000

Dan Hotel Management Fees- $1,132 – NIS 3,500; and

Miscellaneous costs and fees - $323.00 – NIS 1,000.

8.      I anticipate that, after subtracting costs of sale, including the above-described commissions, appraisal fees, transfer fees, taxes and the Israeli Trustee's fees, the sale of the Property will result in pre-tax proceeds of approximately NIS 661,405 which equals approximately $214,019 at present exchange rates, for the Debtor's bankruptcy estate.  This figure is prior to payment of any U.S. taxes which I anticipate will be *de minimis*, if any, after accounting for the estate's offsetting tax losses.

9.      The Purchaser has made a deposit of 10% of the purchase price (NIS 80,000) with the Israeli Trustee. Under the Sale Agreement, once the Israeli Court approves the application to approve the sale, the Purchaser will have 30 days to pay an additional NIS 120,000 and 90 days from court approval to pay the remaining balance of the purchase price.

10.      The funds will be held in a trust account by the Israeli Trustee for the benefit of the parties until title is registered in the name of the Purchaser, which will occur after the Israeli Trustee provides *inter alia* certificates from the Israel Tax Authority and the City of Jerusalem that all taxes have been paid. My counsel in Israel has informed me that this process could take several months.

11. I have not been contacted by any potential over-bidder and, in my business judgment, there are no viable alternative purchasers. Further, I am informed and believe that the Israeli Trustee has determined a highest and best bidder and does not believe there are viable alternative purchasers. Moreover, I do not control the disposition of the Debtor's assets in Israel and ultimately the Israeli Trustee is acting in compliance with Israeli law as indicated by my counsel in Israel.

12. The proposed sale terms of the Property were reached via arms-length negotiations and is subject to approval of the Israeli Court.

13. I am informed and believe that except for an order prohibiting any disposition of the Property issued by the Israeli Court at my request, the Property is free and clear of all liens, claims or interests, other than taxes and fees owed to the Dan Chain.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 2nd day of February 2026, at Los Angeles, California.

_____
Bradley D. Sharp

LA:4921-3535-6522.2 78512.001                12

# EXHIBIT A

Date: 21\12\2025

Time: 16:28

Extract number: 883022

הרשות לרישום והסדר זכויות מקרקעין
LAND REGISTRY AND SETTLEMENT OF RIGHTS
سلطة تسجيل وتسوية الحقوق العقارية

משרד המשפטים
MINISTRY OF JUSTICE | وزارة العدل

**Land Registration Office: Jerusalem**

**Copy of the Register of Rights**

**Block: 30018  Parcel: 5**

| Deed No. | Date | Type of Action | Name of the lessee | | |
|---|---|---|---|---|---|
| 7003/2018/6 | 08/03/2018 | Correction of lease registration | Klein, Leslie | **Share in right**: 1/2 | **Notes**: California driver's license: P546209 |
| 7003/2018/6 | 08/03/2018 | Correction of lease registration | Klein, Erika | **Share in right**: 1/2 | **Notes**: California driver's license: E076835 |
| | **Lease level**: Primary | **Subject to original deed**: 2282/1983/0 | | **End date**: 30/03/2026 | |
| | | Subject to transfer restriction | Subject to inheritance restriction | **share in asset**: share in real estate | |
| | **Notes**: | Apartment 505 | | | |
| | **Correction deeds**: | 7003/2018 | | Applies to all owners | |

------------------Notes-------------

78512.001 4922-0595-0344.1

Date: 21\12\2025

Time: 16:28

הרשות לרישום והסדר זכויות מקרקעין
LAND REGISTRY AND SETTLEMENT OF RIGHTS
سلطة تسجيل وتسوية الحقوق العقارية

משרד המשפטים
MINISTRY OF JUSTICE | وزارة العدل

Extract number: 883022

## Land Registration Office: Jerusalem

## From the Register of Rights

## Block: 30018  Parcel: 5

| Deed No. | Date | Type of Action | Beneficiary Name | |
|---|---|---|---|---|
| 7003/2018/10 | 08/03/2018 | Note regarding transfer to foreigners | State of Israel | |
| | | **Notes**: | | Section 4(19) of the Israel Land Authority Law, 1960 |
| 11504/2024/2 | 18/03/2024 | Injunction order | Magistrates Court, Jerusalem. | |
| | | **Notes**: | Court file (insolvency) 58841-01-24, dated 12/03/2024 | prohibition on disposition. Applies to the lease of: Klein, Leslie. |

----------------------------------------End of Data----------------------

Registration Extract signed via approved digital signature constitutes an original so long as it is stored electronically per the Electronic Signature Law, 2001

Fee of ILS 17.00 paid

78512.001 4922-0595-0344.1

# EXHIBIT B

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

# Sale Agreement

Entered into on _____

**By:**

Attorney Ben Zrihen, of 8 Harav Kook St., Jerusalem, in his capacity as trustee in insolvency proceedings (hereinafter: the "Appointees" [sic] or the "Trustee"), regarding the rights of:

Leslie Klein, California Driver's License No. P546209 and Erika Klein, California Driver's License No. E076835 (hereinafter: the "Debtor(s)").

**And**

Suites America Ltd., Company No. 510822885 (hereinafter: the "Purchaser(s)" [sic]).

**Whereas** the Debtors are the exclusive leaseholders of a residential unit in the Dan Boutique Hotel, 31 Hebron Road, Block 30018, Parcel 5, Units 511-512 (previously unit 505), Jerusalem (hereinafter: the "Flat", the "Unit" or the "Property"), as detailed in the Land Registry extract attached as an integral part of this Agreement as **Annex A**;

**Whereas** the undersigned has been appointed as Receiver for the purpose of selling the Unit in Insolvency Case 58841-01-24 and is authorized to carry out the sale, pursuant inter alia to the decision of 21.7.2024 given by Jerusalem Magistrates Court Judge Haim Pass attached as **Annex B**;

**Whereas** the Purchaser declares that he is acquiring the Unit in its physical and legal condition as of the date of signing of this Agreement **AS IS** and that he has and shall have no claims whatsoever regarding physical or legal defects in the Flat and/or concerning the Debtors' rights in the Unit, except for hidden defects;

**Whereas** the Purchaser was given opportunity to inspect and has inspected the Unit, the Hotel, the physical and legal condition, and has decided to purchase it in its present condition, relying on his own examination, and the Receiver and the Trustee have no liability vis-à-vis the Property;

4916-7032-4616.1 78512.001                    1

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

**Whereas** the Purchaser wishes to purchase and receive all of the rights of the Debtor in the Flat and offered to the Trustee and the Receiver to purchase the Debtor's rights in the Flat, in accordance with and subject to this Agreement;

**Whereas the Purchaser acknowledges that as set forth below this Agreement is subject to the condition precedent of approval by the Insolvency Court in the Jerusalem Magistrates Court, and the Flat will be sold as one unit and the Agreement is contingent upon approval of the sale of both halves [of the Unit] (hereinafter: the "Condition Precedent")**; and

**Whereas** the Purchaser acknowledges that it has been made known to him and explained that the Receiver and/or his designee and/or his office and/or the Trustee and/or his designee and/or his office do not represent the Purchaser in this Agreement and/or examining the rights of the Debtor in the Flat and/or in the performance of this Agreement in general and the registration of the rights in the name of the Purchaser in particular.

**Therefore, it is agreed by the parties as follows:**

1. The preamble to this Agreement and its appendices form an integral part hereof.

2. The Purchasers declare that they were given the opportunity to view and inspect the Flat and the Debtors' rights in the Flat, physically and legally, and found it to be in a condition suitable for all of their purposes. The Purchasers waive any claim of defect or non-conformity relating to the Flat, and they are purchasing the Flat in its condition as of the date of execution of this Agreement AS IS.

   For the avoidance of doubt, it is agreed between the parties that the Appointees or any of their office staff are not liable to the Purchasers with respect to the physical or legal condition of the Flat, and the Purchasers shall have no claims against the Appointees and/or any of their staff in respect of any defects whatsoever, whether physical or legal, in the Flat.

3. The Purchasers declare, for the avoidance of doubt, that they hereby irrevocably and absolutely waive any and all claims of reliance of any kind whatsoever in respect of any representation, whether made directly or indirectly, whether by the Appointees and/or anyone from its office and/or any of its employees and/or anyone acting on its behalf, in any matter relating to this Agreement, including the Property, its physical condition,

4916-7032-4616.1 78512.001                         2

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

or anything connected with the registration of the Debtor's rights in the Property or the scope of the Debtor's rights concerning the Property, or the identity of the occupants of the Property, whether prior to the execution of this Agreement, during the negotiations leading to the execution of this Agreement, or during the period between the signing of this Agreement and after approval of the sale. For the avoidance of doubt, this waiver shall not apply to representations, statements or undertakings delivered to the Purchaser in writing by the Trustee or anyone on his behalf pursuant to this Agreement.

4. The Purchasers were given the opportunity and have inspected the Unit, and no claim shall be heard from them that the Appointees, the appraiser, the Appointees' employees, or any person acting on their behalf made any representation whatsoever.

5. The Appointees undertake, subject to and in reliance upon the Purchaser's declarations above and the decisions of the Insolvency Court, to sell and transfer to the Purchasers the Debtors' rights in the Flat, subject to the Purchasers' fulfillment of their obligations under this Agreement, and the Purchasers undertake to purchase and receive from the seller the aforesaid rights, as set forth above and below.

6. The Trustee's Declarations and Undertakings:

The Trustee declares that:

a. He is authorized to sell the Debtors' rights in the Flat by virtue of his appointment as Receiver/Trustee, as set forth in **Annex B** to this Agreement.

b. As far as is known to him, there are no pending legal proceedings against the Flat, except for the recognition proceeding in the insolvency proceeding of the Debtor; and to the best of his knowledge and based on the appraiser's opinion, a copy of which is attached hereto as **Annex C** to this Agreement, there are no hidden defects in the Flat.

c. There shall be no change in the legal status of the Flat until the date on which the rights in the Flat are registered in the name of the Purchaser. If any attachments and/or any orders and/or liens originating from the Debtor and/or anyone acting on his behalf are imposed on the Flat, the Trustee undertakes to remove them or reverse the change immediately.

4916-7032-4616.1 78512.001                    3

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

7. **Consideration**:

   a. In consideration for the Debtors' rights in the Flat, the Purchasers shall pay the amount of NIS 800,000 (in words: eight hundred thousand New Israeli Shekels) (hereinafter: the "**Consideration**").

   b. The Consideration shall be paid in installments, as follows:

     (1) An amount of NIS 80,000 (in words: eighty thousand New Israeli Shekels), constituting 10% of the Consideration, shall be paid to the Receiver on the date of execution of this Agreement (hereinafter: the "**First Payment**"). At the signing of this Agreement, the Trustee shall sign an application for the registration of a cautionary note. The application for registration of the cautionary note shall be delivered to the Purchaser's attorney at the signing, subject to the Purchaser signing at the signing a power of attorney to delete the cautionary note and an application form for cancellation of the cautionary note, and delivering them to the Trustee. The aforesaid application shall be submitted by the Purchaser's attorney to the Land Registry Office following the execution of this Agreement. For the avoidance of doubt, it is clarified that the Purchaser shall bear all costs and fees associated with the registration of the cautionary note.

     (2) An amount of NIS 120,000 (in words: one hundred and twenty thousand New Israeli Shekels) shall be paid by the Purchaser within 30 days from the date of approval of this Sale Agreement by the Insolvency Court, directly to the Israel Tax Authority as an advance payment of capital gains tax pursuant to Section 15(b) of the Real Estate Taxation (Appreciation and Acquisition) Law, 1963 (hereinafter: the "Capital Gains Tax Advance Payment Confirmation"). If the Trustee provides the Purchaser with confirmation of a reduction/zeroing of the advance payment, then the balance of this payment shall be paid directly to the Trustee.

     (3) The balance of the Consideration, i.e., the amount of NIS 600,000 (in words: six hundred thousand New Israeli Shekels), shall be paid within 90 days from

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

the date of approval of the sale by the Court as aforesaid (hereinafter: the "**Balance of the Consideration**").

c. Any payment made by cheque shall be deemed paid only upon the actual final clearing of the cheque by the drawee bank.

d. Any delay for any reason whatsoever, without exception, exceeding 14 days in making any payment, or any part thereof, of the payments specified above shall be deemed a fundamental breach of this Agreement by the Purchaser. For the avoidance of doubt, a delay of up to 14 days shall not be deemed a breach by the Purchaser.

e. Without prejudice to any of the seller's rights under any provision of law and/or under this Agreement, and in addition to any such right, any payment or any part thereof specified in this section that is not paid by the Purchasers on its due date shall bear default interest as defined in the Adjudication of Interest and Linkage Law, 1961, from the date scheduled for payment under this Agreement until actual full payment. Such calculation shall be made starting from the 15th day of delay, in accordance with subsection (d) above.

8. Until completion of the registration in the Land Registry (Tabu) in the name of the Purchaser, the Consideration funds shall be deposited in trust with the Receiver, for the benefit of the Purchaser and the benefit of the Appointees.

9. **Taxes:**

a. The seller shall bear payment of the taxes arising from the transaction that is the subject of this Agreement, only as specified below:

(1) Capital gains tax, if applicable to the transaction.
(2) Sale tax, if applicable to the transaction.
(3) Betterment levy, if imposed pursuant to a zoning plan that was duly approved prior to the date of execution of this Agreement by the Purchasers.
(4) Municipal taxes (including arnona and any levies) applicable to the Flat that would prevent transfer of the Flat in the Land Registry.
(5)  Payments of any type that may be required in connection with obtaining a municipal clearance certificate.

4916-7032-4616.1 78512.001                5

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

    b.    The Purchasers shall bear payment of all other taxes arising from the transaction that is the subject of this Agreement, including:

       (1) Purchase Tax.

       (2) Betterment levy, if imposed pursuant to a zoning plan that was approved after the date on which the Purchasers signed this Agreement.

    c.    It is clarified that the seller is not a "dealer" as defined in the Value Added Tax Law, 1975 and therefore the transaction that is the subject of this Agreement is not subject to VAT. The Purchaser shall report the transaction to the tax authorities as an "occasional transaction", insofar as it receives a recommendation to do so from its tax advisors.

**10. <u>Sale Approval:</u>**

    a.    The Appointees shall submit an application for approval of the sale as stated in Section 9b [sic] (hereinafter: the **"Sale Approval"**).

    b.    Upon the Insolvency Court approving the sale to the Purchasers, the Appointees shall sign this Agreement and, provided that the Purchasers have timely paid the payment specified in Section 6b(2) [sic] above, the Appointee shall file with the Honorable Insolvency Court, within 14 days of the aforesaid payment under Section 6b(2) [sic] above, an application for an order approving the sale in the Purchasers' favor pursuant to Section 34A of the Sale Law, under which the Debtors' rights in the Flat shall be transferred to the Purchasers free and clear of any debt and/or encumbrance (hereinafter: the "**Sale Order**").

**11. <u>Delivery of Possession:</u>**

    a.    Possession of the Unit shall be delivered upon and against the Court's approval of the sale, and shall take place on the date of payment of the Balance of the Consideration, subject to such payment being made (hereinafter: the "**Possession Delivery Date**").

    b.    The Trustee undertakes to remove and pay, by the Possession Delivery Date, any debt of any kind relating to the Property, including debts to management company, house committee, service providers, or any other third party, so that the Property

4916-7032-4616.1 78512.001          6

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

shall be delivered free and clear of any debt, attachment, or claim, all in accordance with the provisions set forth below.

c.  Municipal debts incurred up to the date of payment of the full Consideration shall be paid by the Appointees only to the extent necessary in order to transfer the Flat to the Purchaser's name at the Land Registry Office.

d.  Municipal debts incurred after the Possession Delivery Date shall not be paid by the Appointees.

e.  It is clarified that to the extent it is determined that any debts to authorities exist or will arise up to the Possession Delivery Date, including but not limited to debts for arnona [municipal property tax], water, sewage, electricity, fees, levies, or any other mandatory payment applicable to the Property or arising from its possession, and the payment of which is required solely for purposes of transferring the rights in the Property, such debts shall be borne exclusively by the Trustee. The Trustee undertakes to fully settle such debts prior to delivering possession to the Purchaser, so that possession shall be delivered with the Property free and clear of any debt to the authorities or to administrative bodies, and in accordance with Section 34A of the Sale Law.

Nonetheless, since payment of management fees is a condition for completing the transfer of the rights, it is clarified that if it is determined that any debt is owed to the Hotel's management company in respect of the Flat, including management fees and periodic payments, notwithstanding the foregoing and in any other part of this Agreement, the Purchaser shall be entitled to settle such debt directly with the management company, and the amount paid by the Purchaser shall be deducted from the Balance of the Consideration. The Trustee hereby gives his prior consent to the aforesaid right of setoff. The aforesaid amount is USD 1,120 and shall be deducted from the last payment.

f.  The Purchaser undertakes to notify the municipality, the Hotel, the management company or any other entity as may be required, of the change of ownership and possession of the Property.

4916-7032-4616.1 78512.001                    7

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only
after singing by the Receiver and approval by the Court**

12. **Registration of the Purchasers' Rights**

    a.   Registration of the Purchasers' rights at the Land Registry Office shall be effected by the Purchaser and at its sole expense.

    b.   The Appointee undertakes to enable the Purchasers to register the rights in the Flat in the Purchaser's name free and clear of any debt, charge, attachment, pledge, or mortgage (other than those relating to the Purchasers), and provided further that by that time the full Consideration has been paid as set forth in Section 6 [sic] above, the sale has been approved by the Court as aforesaid, and the Purchaser has fulfilled all obligations incumbent upon them for purposes of transferring the rights, as detailed in this Agreement and under any applicable law.

    c.   On the Possession Delivery Date, the Appointee shall provide the Purchasers with only the following documents, for purposes of completing the transfer of the rights in the Flat to the Purchasers, as follows:

        (1)  A formal Sale Order signed by the Court, pursuant to which the Flat was sold to the Purchasers free and clear of any debt and encumbrance, in accordance with Section 34A of the Sale Law, 1968.

        (2)  A capital gains tax clearance certificate for the transfer of the Debtor's rights in the Flat to the Purchasers.

        (3)  A sale tax clearance certificate (if required) for the transfer of the Debtor's rights in the Flat to the Purchasers.

        (4)  A municipal clearance certificate for the transfer of the Debtor's rights in the Flat to the Purchasers.

        (5)  Power of attorney to delete the cautionary note and the application form for deletion of the cautionary note.

        (6)  A tripartite deed of assignment of the leasehold right, signed by the Receiver.

        (7)  A power of attorney for registration of the rights, signed by the Receiver, in the form attached as **Annex D** to this Agreement.

    d.   Handling fees and/or any fee payment that may be required by the Land Registry (Tabu) and/or any other body maintaining a register of the rights in the Flat, for purposes of registering the rights in the Flat in the Purchaser's name, including

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

registration of a cautionary note, applications, and mortgages, shall be paid by the Purchaser.

e.  The Appointees undertake to provide the Purchaser with any additional certificate and/or document that may be required for the registration of the rights as aforesaid, and to sign any and all documents and certificates required or that shall be required for the transfer of the Flat to the Purchaser and its registration at the Land Registry Office. Furthermore, the Appointees undertake to appear before any required authority for the aforesaid purposes.

13. It is hereby clarified and agreed that the Appointee shall not be responsible for any construction without a permit and/or construction and/or deviation and/or use without a permit in the Flat, to the extent any such exist.

14. It is hereby clarified and agreed that the Appointee is not responsible for the registration status of the Flat at the Land Registry (Tabu), and that to the extent any need arises to correct and/or amend and/or register the Debtor's rights in the Flat prior to the registration of the Purchasers' rights, such actions shall be carried out by the Purchasers and at their expense.

15. **Breach of Agreement and Liquidated Damages:**

a.  It is agreed that if the Purchaser fails to pay the Balance of the Consideration in accordance with Section 6(b)(2) [sic] above by the due date, the Appointee may, at his sole discretion, terminate this Agreement.

b.  If the Agreement is terminated as aforesaid, then the amount deposited with the Appointees pursuant to Section 6(b)(1) [sic] above shall be forfeited as pre-determined liquidated damages for the Purchasers' breach of this Agreement, in addition to the Appointees' right to sue the Purchasers for compensation for any and all damages caused as a result of the Purchasers' breach of the Agreement.

c.  It is agreed that if the Appointees fail to comply with their obligations under this Agreement, including failure to submit an application for approval of the sale and/or failure to deliver possession on time and/or failure to provide the documents required for registration of the rights, the Purchaser shall be entitled to terminate this

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

Agreement immediately by written notice and to receive a refund of all amounts paid.

d.  The foregoing shall not prejudice the Appointees' rights under any law or under this Agreement, including its right to any additional remedy to which it is entitled under this Agreement.

16. **Condition Precedent**

If the Insolvency Court does not approve the sale for any reason, this Agreement shall be null and void automatically, and any amount paid by the Purchaser under this Agreement shall be refunded to the Purchaser in full within 7 days from the date of the Court's decision. For the avoidance of doubt, the Purchaser shall not bear any expense or damage in connection with the termination of this Agreement due to non-approval of the sale. The parties undertake to sign any document and to appear before any authority and/or person as may be required in order to implement this Agreement, as soon as possible.

17. The provisions of this Agreement reflect, exhaust, and embody the declarations, representations, and understandings between the parties, whether oral or written, that were presented, to the extent presented, and/or delivered, to the extent delivered, prior to the execution of this Agreement. Any prior agreement, if any, between the parties, whether oral or written, shall have no force or effect.

18. Any amendment that the parties seek to make to the provisions of this Agreement and/or any of its terms or any of the undertakings set forth herein shall be valid only if made in writing and with the consent and signatures of all parties to this Agreement.

It is clarified that any extension, discount, waiver, or failure to take action shall not constitute a waiver of any of the parties' rights under this Agreement and/or under any law, unless made in writing.

19. Wherever the term "Purchasers" is used in this Agreement, it shall also mean any one of them individually; for the avoidance of doubt, the Purchasers' liability for their obligations under this Agreement shall be joint and several.

20. As long as this Agreement has not been executed with the Receiver's signature and stamp, it shall be deemed an offer on the part of the Purchaser to purchase the Flat.

4916-7032-4616.1 78512.001                    10

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

21. The Purchaser is aware that the owner - namely, the Hotel - has a right of first refusal to purchase the Unit, that it has been provided with full information in this regard, and that this constitutes a fundamental term of this Agreement. If the Hotel elects to purchase the Unit, this Agreement shall be null and void, and subject to the refund of the amount paid by the Purchaser, the Purchaser shall have no claim against the Appointee and/or any other person in connection with the execution of this Agreement or its termination. [entire paragraph – sic]

22. Exclusive jurisdiction in connection with this Agreement shall be vested in the Magistrates Courts in Jerusalem, within the framework of the insolvency proceedings.

23. The parties shall cooperate with each other and act in good faith and in a customary manner in order to perform their obligations and exercise their rights under this Agreement. The parties undertake to take all actions required and, if necessary, to appear at the relevant offices and to sign any and all documents whose execution may be required in order to implement this Agreement in accordance with the time periods set forth herein, all subject to and in accordance with the provisions of this Agreement, and without any additional consideration beyond that stated in this Agreement.

24. The Purchaser declares and acknowledges that the transfer of the rights in the Property is conditional upon fulfillment of the following conditions, in accordance with the terms under which the seller [sic] is acquiring the Property:

    a. The Purchaser shall be approved by the board of directors of the company managing the Hotel (hereinafter: the "Company"), or by a committee appointed by it.

    It is acknowledged and agreed by and between the parties that the Company shall not be entitled to unreasonably withhold its approval of the proposed transferee or to impose unreasonable conditions, and that, in making such determination, the Company may take into account factors such as the character and nature of the proposed transferee and his suitability to be a lessee of a flat, having regard, inter alia, to the character and nature of the Hotel.

    Notwithstanding the foregoing, no such approval shall be required for any transfer by will or inheritance.

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

In addition, the Company shall not be entitled to refuse to give its consent to the proposed assignment on the ground that the proposed transferee is not suitable to be a lessee of a flat, if the proposed transferee is the Purchaser's spouse or child (or children).

b.  It shall be a condition precedent to the Company's consent to any transfer that the lessee has paid all mandatory payments applicable to it as lessee of the Unit, and that the Purchaser, if required by the Company, shall continue to fulfill all of the seller's obligations in respect of the Flat under the purchase agreement.

c.  It shall be an additional condition precedent to the Company's consent to any transfer that the Purchaser shall be required to pay the Company an aggregate commission of 0.5% (plus Israeli VAT) of the Consideration.

d.  Any transfer shall relate only to the entire Flat and to all of the lessee's rights and obligations under the lease agreement, and under this Agreement. Any purported transfer of only part of the lessee's rights and obligations under it [sic] shall be null and void ab initio and of no force or effect.

e.  The Purchaser hereby agrees that the Company may register a cautionary note at the Land Registry Office, in such form as may be required by the Land Registry Office from time to time, and which shall, insofar as possible, include at least the information set forth in the attached Annex 18(b), with respect to the transfer restrictions included herein.

f.  The Purchaser shall immediately notify the Company of any proposed direct or indirect transfer.

g.  Any proposed transfer made without the Company's prior written approval in accordance with Section 18(b) of the original purchase agreement shall be null and void and of no force or effect.

h.  The provisions of this Agreement shall be binding upon, and inure to, the parties hereto and their respective heirs, executors, administrators, successors, and assigns, including any person, corporation, or entity with which, or into which, the Company may merge or to which it may transfer all or substantially all of its assets or business,

4916-7032-4616.1 78512.001                    12

**Draft Sale Agreement subject to revision by the Receiver if necessary and binding only after singing by the Receiver and approval by the Court**

and/or any person, corporation, or entity to which the Company may assign or transfer its rights and obligations pursuant to this Agreement.

i.   The lessee agrees that the Company shall be entitled to sell, transfer, and assign all or any part of its rights and obligations under this Agreement, subject to the terms of this Agreement, without the lessee's consent.

The original purchase agreement is attached as **Annex E.**

**IN WITNESS WHEREOF, the parties have hereunto set their hands and signatures:**

_____

the Purchaser

_____

Attorney Ben Zrihen

Trustee in insolvency proceedings - Receiver

4916-7032-4616.1 78512.001                    13

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*)**: NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SALE OF ESTATE'S INTEREST IN UNITS 511-512 OF THE DAN BOUTIQUE HOTEL, 31 HEBRON ROAD, BLOCK 30018, PARCEL 5, JERUSALEM, ISRAEL FREE AND CLEAR OF ALL LIENS, CLAIMS OR INTERESTS PURSUANT TO 11 U.S.C. § 363(b); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRADLEY D. SHARP IN SUPPORT THEREOF** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 3, 2026,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) **February 3, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 3, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| **Via Email:**<br>Eric J Olson:  eric@ejolsonlaw.com<br><br>Leslie Klein:  les.kleinlaw@gmail.com;<br>leskleinlaw@gmail.com; kleinlaw@earthlink.net | |

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 3, 2026 | Nancy H. Brown | */s/ Nancy H. Brown* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4925-1024-2137.1 78512.001

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  **Case 2:23-bk-10990-SK**

- **Simon Aron**    saron@wrslawyers.com, moster@wrslawyers.com;jlee@wrslawyers.com
- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Ron Bender**    rb@lnbyg.com
- **Michael Jay Berger**    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Greg P Campbell**    ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Theron S Covey**    AttorneyTCovey@gmail.com
- **Daniel A Crawford**    dac@crawfordlawgroup.com
- **Michael G D'Alba**    mgd@lnbyg.com
- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Craig A Edelman**    notice@bkcylaw.com
- **Dane W Exnowski**    dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
- **Todd S. Garan**    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Robert P Goe**    rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com, lwageman@elkinskalt.com,docketing@elkinskalt.com,lmasse@elkinskalt.com
- **M. Jonathan Hayes**    jhayes@rhmfirm.com
- **Brandon J. Iskander**    biskander@goeforlaw.com, kmurphy@goeforlaw.com;jfountain@goeforlaw.com
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **John W Lucas**    jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- **Armen Manasserian**    armen@ml-apc.com, jennifer@ml-apc.com,maria@ml-apc.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Kirsten Martinez**    Kirsten.Martinez@bonialpc.com, Notices.Bonial@ecf.courtdrive.com
- **Steven M Mayer**    smayer@mayerlawla.com
- **Christopher M McDermott**    ch11ecf@aldridgepite.com, CMM@ecf.inforuptcy.com;cmcdermott@aldridgepite.com
- **Krikor J Meshefejian**    kjm@lnbyg.com
- **Jeffrey P Nolan**    jnolan@pszjlaw.com
- **Eric J Olson**    eric@ejolsonlaw.com
- **Lisa Patel**    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com;lpatel@ecf.courtdrive.com
- **Jeffrey N Pomerantz**    jpomerantz@pszjlaw.com
- **Brian A Procel**    brian@procel-law.com, rdankwa@millerbarondess.com;docket@millerbarondess.com
- **Matthew D. Resnik**    matt@rhmfirm.com, roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;david@rhmfirm.com
- **Kevin Ronk**    Kevin@portilloronk.com, eService@cym.law,karen@cym.law,jodie@cym.law,aileen@cym.law, sarah@cym.law
- **Joshua L Scheer**    jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- **Bradley D. Sharp (TR)**    bsharp@dsi.biz
- **Richard P Steelman**    RPS@LNBYG.COM
- **Nikko Salvatore Stevens**    nikko@cym.law, eService@cym.law,karen@cym.law,aileen@cym.law,sarah@cym.law
- **Alan G Tippie**    Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **Gary Tokumori**    gtokumori@pmcos.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**    mwachtell@buchalter.com, marias@buchalter.com;docket@buchalter.com
- **John P. Ward**    jward@attleseyward.com, ephuong@attleseyward.com
- **Brett J. Wasserman**    wasserman@smcounsel.com
- **Alex M Weingarten**    aweingarten@willkie.com, lcarter@willkie.com
- **Beth Ann R. Young**    bry@lnbyg.com, bry@lnbyb.com
- **Clarisse Young**    youngshumaker@smcounsel.com, levern@smcounsel.com
- **Paul P Young**    paul@cym.law, eService@cym.law,karen@cym.law,jodie@cym.law
- **Roye Zur**    rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

2. **SERVED BY UNITED STATES MAIL**:

Peter C. Anderson, U.S. Trustee
Michael Jones, Assistant U.S. Trustee
Office of the U.S. Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA  90017

Leslie Klein
322 North June Street
Los Angeles, CA 90004

Nathan Talei
Oldman, Sallus & Gold, L.L.P.
16133 Ventura Blvd., PH-A
Encino, CA 91436

Leslie Klein & Associates, Inc.
c/o Leslie Klein
6454 Van Nuys Blvd. Suite 150
Van Nuys, CA 91401

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4925-1024-2137.1 78512.001

**F 9013-3.1.PROOF.SERVICE**