Jeffrey W. Dulberg (CA Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile:  310-201-0760
jdulberg@pszjlaw.com
jlucas@pszjlaw.com

Counsel to Bradley D. Sharp, Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LESLIE KLEIN,<br><br>              Debtor. | Case No. 2:23-bk-10990-SK<br><br>Chapter 11<br><br>**DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION OF THE ESTATE OF LESLIE KLEIN** |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Table of Contents**

| | | | Page |
|---|---|---|---|

I. INTRODUCTION ........................................................................................................... 2

II. EXPLANATION OF CHAPTER 11 ............................................................................ 3

    A.    Overview of Chapter 11 ...................................................................................... 3

    B.    Chapter 11 Plan ..................................................................................................... 4

    C.    Confirmation of a Chapter 11 Plan ...................................................................... 4

III. OVERVIEW OF THE PLAN .................................................................................... 5

    A.    Summary of the Terms of the Plan ...................................................................... 5

            1.    Liquidation Trust ..................................................................................... 5

    B.    Summary of Distributions Under the Plan ......................................................... 5

IV. QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT AND THE PLAN ........................................................................................................ 6

V. HISTORY OF THE DEBTOR ................................................................................... 8

    A.    History of the Debtor ............................................................................................ 8

VI. THE DEBTOR'S CHAPTER 11 CASE ................................................................... 9

    A.    Commencement of the Chapter 11 Case ............................................................. 9

    B.    Retention of Professionals .................................................................................... 9

    C.    Asset Sales ............................................................................................................. 9

            1.    Ocean Dr. Sale Motion ........................................................................... 9

            2.    Poinsettia Sale Motion ............................................................................ 9

            3.    Whitewater Sale Motion ......................................................................... 9

            4.    BadCo. Sale Motion ................................................................................ 9

            5.    Leonardo Plaza Sale Motion .................................................................. 9

    D.    June St. Property .................................................................................................. 10

    E.    Estate's Equity Interest in LCG .......................................................................... 10

    F.    Executory Contracts and Unexpired Leases ...................................................... 10

    G.    Schedules of Assets and Liabilities and Establishment of Bar Dates ............. 10

VII. THE CHAPTER 11 PLAN ..................................................................................... 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| A. | | Classification and Treatment of Claims...............................................................11 |
| | 1. | Administrative Expense Claims........................................................................ 11 |
| | 2. | Professional Fee Claims................................................................................... 11 |
| | 3. | Priority Tax Claims........................................................................................... 12 |
| | 4. | Class 1: Other Priority Claims ....................................................................... 12 |
| | 5. | Class 2: Secured Tax Claims ......................................................................... 13 |
| | 6. | Class 3: Gestetner Secured Claim ................................................................. 13 |
| | 7. | Class 3(a): Other Secured Claims ................................................................. 13 |
| | 8. | Class 4: General Unsecured Claims .............................................................. 13 |
| B. | | Means for Implementation of the Plan...............................................................14 |
| | 1. | The Liquidation Trust ...................................................................................... 14 |
| | 2. | The Source of Distributions ............................................................................ 16 |
| | 3. | Claims Reconciliation Process......................................................................... 16 |
| | 4. | Preservation of Right to Conduct Investigations ............................................ 17 |
| | 5. | Preservation of Privilege and Defenses .......................................................... 17 |
| | 6. | Abandonment of Property ................................................................................ 17 |
| C. | | Claims Reconciliation Process.............................................................................17 |
| | 1. | Objections to, and Resolution, of Disputed Claims........................................ 17 |
| | 2. | Claim Objections ............................................................................................. 17 |
| | 3. | Estimation of Certain Claims .......................................................................... 18 |
| D. | | Distributions Under the Plan...............................................................................18 |
| | 1. | Manner of Cash Payments. ............................................................................. 18 |
| | 2. | Setoff and Recoupment ................................................................................... 18 |
| | 3. | No Distributions With Respect to Disputed Claims ....................................... 18 |
| | 4. | Reserve for Disputed Claims and Administrative Expenses ........................... 18 |
| | 5. | Preservation of Causes of Action.................................................................... 18 |
| E. | | Discharge, Exculpation, and Injunction..............................................................19 |
| | 1. | No Discharge of the Debtor ............................................................................ 19 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4932-6270-5019.5 78512.001

iii

2.    Term of Bankruptcy Injunction or Stay ....................................................... 19

3.    Exculpation for Estate Fiduciaries. ............................................................. 19

4.    Injunction ...................................................................................................... 20

F.    Executory Contracts and Unexpired Leases ......................................................... 21

1.    Rejection ....................................................................................................... 21

2.    Bar Date for Rejection Damage Claims ....................................................... 21

G.    Retention of Jurisdiction ...................................................................................... 21

H.    Miscellaneous Plan Provisions ............................................................................ 21

1.    Conditions Precedent to the Effective Date ................................................. 21

VIII. CONFIRMATION AND CONSUMMATION PROCEDURES ......................................... 22

A.    Overview ............................................................................................................... 22

B.    Confirmation of the Plan ...................................................................................... 23

1.    Elements of Section 1129 of the Bankruptcy Code ..................................... 23

2.    Acceptance .................................................................................................... 25

3.    Best Interests of Creditors Test .................................................................... 25

4.    Feasibility ...................................................................................................... 26

C.    Effect of Confirmation .......................................................................................... 26

IX. CONCLUSION ................................................................................................................... 27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## NOTICE TO HOLDERS OF CLAIMS

The purpose of this Disclosure Statement is to enable you, as a creditor whose Claim is impaired under the Plan, to make an informed decision in exercising your right to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.**

**PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF. IN THE EVENT OF ANY CONFLICT BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN OR ANY OTHER APPLICABLE DOCUMENT, THE TERMS OF THE PLAN OR ANY SUCH APPLICABLE DOCUMENT SHALL GOVERN.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (THE "BANKRUPTCY RULES") AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN THE DEBTOR IN THIS CHAPTER 11 CASE.**

Each Holder of a Claim entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting. No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. Except for the Trustee and certain of his professionals, no person has been authorized to use or promulgate any information concerning the Debtor, his business, or the Plan other than the information contained in this Disclosure Statement and if given or made, such information may not be relied upon as having been authorized by the Trustee. You should not rely on any information other than that contained in this Disclosure Statement and the Exhibits hereto.

After carefully reviewing this Disclosure Statement, including the attached Exhibits, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed ballot and return the same to the address set forth on the ballot, in the enclosed, postage prepaid, return envelope so that it is actually received by the Balloting Agent no later than the Voting

Deadline.  All votes to accept or reject the Plan must be cast using the appropriate ballot.  Votes which are cast in any other manner will not be counted.

**All ballots must be actually received no later than <u>April 7, 2026</u> (or post-marked by such date) by the Trustee's bankruptcy counsel:**

**Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
Los Angeles, CA 90067 (the "<u>Voting Agent</u>")**

**In the event you have questions regarding the voting procedures, please contact Beth Dassa: <u>bdassa@pszjlaw.com</u>.**

**DO NOT RETURN ANY OTHER DOCUMENTS WITH YOUR BALLOT.**

You will be bound by the Plan if it is confirmed by the Bankruptcy Court, even if you do not vote to accept the Plan, or if you are the Holder of an unimpaired Claim.

<div style="border:1px solid black; background-color:#d3d3d3; text-align:center">

**THE TRUSTEE AS THE PLAN PROPONENT URGES ALL HOLDERS OF
IMPAIRED CLAIMS TO ACCEPT THE PLAN**

</div>

**I.**

**<u>INTRODUCTION</u>**

On February 22, 2023, Leslie Klein, referred to herein as the Debtor,[1] filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division. The Debtor's chapter 11 case was originally filed pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code but on March 10, 2023, the Debtor voluntarily converted the case to chapter 11. *See* [Docket No. 43].

On April 24, 2023, a *Motion for Order Dismissing Debtor's Chapter 11 Bankruptcy Case* [Docket No. 79] was filed and heard by the Bankruptcy Court on May 17, 2023, where the Court ruled that the appointment of a chapter 11 trustee, and not dismissal of the case, was in the best interests of the estate. On May 23, 2023, the United States Trustee filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No. 151]. On May 24, 2023, the United States Trustee filed an *Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154], which was approved by an order entered the same day [Docket No. 155]. On May 24, 2023, the Trustee accepted his appointment [Docket No. 156].

The Trustee hereby submit this disclosure statement (the "<u>Disclosure Statement</u>"), pursuant to section 1125 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with respect to the *Plan of Liquidation of the Estate of Leslie Klein* (the "<u>Plan</u>").  This Disclosure Statement is to be used in connection with the solicitation of votes on the Plan by the Trustee.  A copy of the Plan is attached hereto as <u>Exhibit A</u>.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in <u>Appendix 1</u> of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

THE COURT APPROVED THIS DISCLOSURE STATEMENT AT A HEARING ON **FEBRUARY 24, 2026 AT 2:00 P.M. (PACIFIC TIME)** (THE "HEARING"). ONLY HOLDERS OF ALLOWED CLAIMS IN CLASS 3 (GESTETNER SECURED CLAIM), CLASS 3(A) (OTHER SECURED CLAIMS), AND CLASS 4 (GENERAL UNSECURED CLAIMS) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. ACCORDINGLY, THE TRUSTEE IS ONLY SOLICITING ACCEPTANCES OF THE PLAN FROM HOLDERS OF ALLOWED CLAIMS IN CLASS 3 (GESTETNER SECURED CLAIM, CLASS 3(A) (OTHER SECURED CLAIMS), AND CLASS 4 (GENERAL UNSECURED CLAIMS).

THE TRUSTEE BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF, AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO, HOLDERS OF ALL CLAIMS AGAINST THE DEBTOR'S ESTATE. ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE URGED TO VOTE IN FAVOR OF THE PLAN.

THE SOLICITATION PACKAGE ACCOMPANYING EACH OF THE BALLOTS CONTAINS APPLICABLE VOTING INSTRUCTIONS. **TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED, EXECUTED, AND ACTUALLY RECEIVED BY THE VOTING AGENT, OR POSTMARKED IF SENT BY FIRST CLASS MAIL, BY APRIL 7, 2026 (THE "VOTING DEADLINE").**

**All capitalized terms used in the Disclosure Statement and not defined herein shall have the meanings ascribed thereto in Appendix 1 of the Plan. Unless otherwise stated, all references herein to "Schedules" and "Exhibits" are references to schedules and exhibits to this Disclosure Statement.**

The Trustee proposes the Plan for the resolution and satisfaction of all Claims against and Interests in the Debtor's Estate. The Plan also provides for the establishment of a Liquidation Trust on the Effective Date for the primary purpose of administering and liquidating the Liquidation Trust Assets and for the secondary purposes of, *inter alia*, (a) collecting and liquidating Assets of the Estate, (b) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (c) making all Distributions provided for under the terms of the Plan. The Liquidation Trust shall be under the direction and control of the Liquidation Trustee, as trustee of the Liquidation Trust. On the Effective Date, all of the Estates' Assets, which are principally real properties, interests in life insurance policies, Cash and Causes of Action, shall vest in the Liquidation Trust. The Plan contemplates monetization of these Assets and the distribution of the net proceeds thereof to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan and Bankruptcy Code in satisfaction of the Estate's obligation hereunder. **The Trustee believes that the Plan represents a fair and equitable allocation of the Estate's assets among creditors.**

**As set forth in greater detail herein, the Trustee estimates that Holders of Class 3 (Gestetner Secured Claim) will recover 100% under the Plan and Holders of Class 4 Claims (General Unsecured Claims) will recover approximately 4% to 28% under the Plan, which is significantly better than the approximate 1% that may be recovered in chapter 7.**

**II.**

**EXPLANATION OF CHAPTER 11**

**A.    Overview of Chapter 11**

Chapter 11 is the principal chapter of the Bankruptcy Code pursuant to which a debtor's estate may reorganize or liquidate in an orderly fashion for the benefit of its creditors and other parties in interest.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor as of the date the petition is filed. The filing of a petition under the Bankruptcy Code triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, among other things, for an automatic stay of all attempts by creditors or other third parties to collect on prepetition claims against a debtor, the estate, or otherwise interfere with estate property or business. Exempted from the automatic stay are governmental authorities seeking to exercise regulatory or policing powers. Except as otherwise ordered by a bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed chapter 11 plan.

**B.** **Chapter 11 Plan**

The formulation of a chapter 11 plan is the principal purpose of a chapter 11 case. The plan sets forth the means for making distributions to the holders of valid claims against a debtor's estate. A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors, and the prior obligations owed by the debtor to such parties are compromised and exchanged for the obligations specified in the plan (unless and to the extent certain claims are not discharged on a creditor by creditor basis or the individual debtor does not receive a discharge under the plan, as proposed herein).

In general, after a chapter 11 plan has been filed, the holders of impaired claims against a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the plan proponent to prepare and file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. **This Disclosure Statement is presented to Holders of Claims against the Debtor's estate to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the plan proponent's solicitation of votes on the Plan.**

**C.** **Confirmation of a Chapter 11 Plan**

If all applicable classes of claims and equity interests accept a chapter 11 plan, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied. **The Trustee, as the plan proponent, believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code.**

Chapter 11 of the Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a chapter 11 plan for the bankruptcy court to determine that the class has accepted the plan. Rather, a class of claims will be deemed to have accepted the plan if the court determines that the plan has been accepted by more than a majority in number and at least two-thirds in amount of those claims actually voting in such class. **Only the Holders of Allowed Claims who are entitled to vote, and actually vote, will be counted as either accepting or rejecting the Plan**.

In addition, classes of claims that are not "impaired" under a chapter 11 plan are conclusively presumed to have accepted the plan and thus are not entitled to vote. Furthermore, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims in an impaired class. **Class 3 (Gestetner Secured Claim), Class 3(a) (Other Secured Claims), and Class 4 (General Unsecured Claims) are impaired under the Plan and entitled to vote on the Plan.**

In general, a bankruptcy court may confirm a chapter 11 plan even though fewer than all the classes of impaired claims against a debtor accept such plan. For a chapter 11 plan to be confirmed, despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at least one class of impaired claims (determined without counting the vote of insiders) and the proponent(s) of the plan must show, among other things, that the plan does not "discriminate unfairly"

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, in an amount equal to the allowed amount of such claim or such other treatment as accepted by the holder of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive on account of such junior claim or equity interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interests in such class. **The Trustee believes that the Plan will satisfy the foregoing requirements as to any rejecting class of Claims or Interests, and can therefore be confirmed despite any such rejection by any Class.**

<div align="center">

**III.**

**OVERVIEW OF THE PLAN**

</div>

**A.    Summary of the Terms of the Plan**

    **1.    Liquidation Trust**

The Plan provides for the establishment of a Liquidation Trust on the Effective Date for the primary purpose of administering and liquidating the Liquidation Trust Assets and for the secondary purposes of, *inter alia*, (a) collecting accounts receivable, (b) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (c) making all Distributions provided for under the terms of the Plan. The Liquidation Trust shall be under the direction and control of the Liquidation Trustee, as trustee of the Liquidation Trust. On the Effective Date, all of the Estates' Assets, which are principally Cash, equity interest in LCG, the June St. Property, interests in certain life insurance policies, and the Causes of Action, shall vest in the Liquidation Trust. The Plan contemplates monetization of these Assets and the distribution of the net proceeds thereof to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan and the Bankruptcy Code.

**B.    Summary of Distributions Under the Plan**

The following is a summary of the proposed distributions under the Plan. It is qualified in its entirety by reference to the full text of the Plan, which is attached to this Disclosure Statement as **Exhibit "A"**.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, as described in Section 3 of the Plan, have not been classified and thus are excluded from the Classes set forth in the Plan. The following table summarizes the classification of the Classes of Claims and Interests under the Plan and whether you are entitled to vote on the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS | DESCRIPTION | IMPAIRED / UNIMPAIRED | ENTITLED TO VOTE |
|---|---|---|---|
| **CLASS 1** | Other Priority Claims | Unimpaired | No - Deemed to Accept |
| **CLASS 2** | Secured Tax Claim | Unimpaired | No – Deemed to Accept |
| **CLASS 3** | Gestetner Secured Claim | Impaired | Yes |
| **CLASS 3(A)** | Other Secured Claims | Impaired | Yes |
| **CLASS 4** | General Unsecured Claims | Impaired | Yes |

Except as required by applicable bankruptcy law or agreement that provides otherwise, postpetition interest shall not accrue or be payable on account of any Claim. All Distributions under the Plan will be tendered to the entity holding the Allowed Claim.

**EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY ADMINISTRATIVE EXPENSE CLAIM, PROFESSIONAL FEE CLAIM, OR CLAIM THAT IS NOT ALLOWED.**

As discussed in the Liquidation Analysis attached hereto as <u>Exhibit B</u>, the Trustee estimates that recoveries for Holders of Allowed General Unsecured Claims will be greater under the Plan than in a liquidation under chapter 7 of the Bankruptcy Code.  In addition, the Trustee believes that distributions under chapter 7 of the Bankruptcy Code would likely be delayed due to the time it will take a chapter 7 trustee to assess the Debtor's assets, review and analyze claims, and evaluate and litigate claims against third parties.  Holders of Allowed Claims entitled to vote to accept or reject the Plan should review the Liquidation Analysis (including all footnotes thereto) in assessing whether to vote to accept or reject the Plan.

**IV.**

**QUESTIONS AND ANSWERS REGARDING THIS**
<u>**DISCLOSURE STATEMENT AND THE PLAN**</u>

**Why is the Trustee sending me this Disclosure Statement?**

The Trustee is seeking to obtain Bankruptcy Court approval of the Plan. Prior to soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the preparation and approval of a Disclosure Statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan. This Disclosure Statement is being submitted in accordance with such requirements.

**What happens to my recovery if the Plan is not confirmed, or does not go effective?**

In the event that the Plan is not confirmed, the Trustee believes it is unlikely that he or a chapter 7 trustee will be able to achieve the same recoveries for creditors that are available under the Plan.  If the Plan is not confirmed in a timely manner, it is unclear what Holders of Claims would ultimately

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

receive in respect of their Claims against the Debtor's Estate. It is possible that any alternative may provide Holders of Claims with less than they would have received pursuant to the Plan. Moreover, non-confirmation of the Plan will likely result in either the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissal of the Chapter 11 Case in its entirety.

**If the Plan provides that I get a distribution, do I get it upon confirmation or when the Plan goes effective, and what do you mean when you refer to "confirmation," "Effective Date," and "consummation?"**

"Confirmation" of the Plan refers to the approval of the Plan by the Bankruptcy Court. Confirmation of the Plan does not guarantee that you will receive the distribution contemplated under the Plan. After confirmation of the Plan by the Bankruptcy Court, there are conditions that need to be satisfied or waived so that the Plan can be consummated and become effective. References to the "Effective Date" mean the date that all conditions to the Plan have been satisfied or waived and the Plan has been fully consummated.

**Where is the cash required to fund the Plan coming from?**

On the Effective Date, all of the Assets of the Estate, which includes the Debtor's equity interest in LCG, the June St. Property, any life insurance policies owned by the Debtor plus all Causes of Action, as well as the rights and powers of the Debtor, shall automatically vest in the Liquidation Trust.

**How do I vote for or against the Plan?**

This Disclosure Statement, accompanied by a ballot or ballots to be used for voting on the Plan, is being distributed to the holders of Claims entitled to vote on the Plan. If you are a Holder of a Claim in Class 3 (Gestetner Secured Claim), Class 3(a) (Other Secured Claims), or Class 4 (General Unsecured Claims) (the "Voting Classes"), you may vote for or against the Plan by completing the ballot and returning it in the envelope provided.

**What is the deadline to vote on the Plan?**

All ballots must be actually sent to the Trustee so as to be received, or postmarked if sent by first class mail, on or before **April 7, 2026**.

**Why is the Bankruptcy Court holding a confirmation hearing?**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.

**When is the confirmation hearing scheduled to occur?**

The Bankruptcy Court has scheduled the confirmation hearing for **April 21, 2026 at 2:00 p.m. (Pacific Time)** before the Honorable Neil W. Bason, United States Bankruptcy Judge, in the United States Bankruptcy Court, Central District of California, 255 E. Temple Street Los Angeles, CA 90012. The confirmation hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the confirmation hearing or any adjournment thereof. Objections to confirmation of the Plan must be filed and served on the Trustee and certain other parties, by no later than **April 7, 2026 at 5:00 p.m. (Pacific Time)** in accordance with the notice of the confirmation hearing that accompanies this Disclosure Statement. Unless objections to confirmation of the Plan are timely served and filed in compliance with the Solicitation Procedures Order, they might not be considered by the Bankruptcy Court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**What is the purpose of the confirmation hearing?**

The consummation of a chapter 11 plan is the principal objective of a chapter 11 case. The confirmation of a chapter 11 plan by the Bankruptcy Court binds the Estate, any person acquiring property under the chapter 11 plan, any creditor of a debtor and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.

**What role does the Bankruptcy Court play after the confirmation hearing?**

After the Plan is confirmed, the Bankruptcy Court will still have jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan including, but not limited to all matters described in section 12 of the Plan.

**Does the Trustee recommend voting in favor of the Plan?**

**Yes**.  In the opinion of the Trustee, the Plan is preferable to liquidation under chapter 7 of the Bankruptcy Code, as described in this Disclosure Statement and the Liquidation Analysis attached as <u>Exhibit B</u> hereto, and any other reasonably available alternative because the Trustee believes the Plan provides for a larger distribution to general unsecured creditors than would otherwise result from a liquidation under chapter 7 of the Bankruptcy Code or any other reasonably available alternative. **Accordingly, the Trustee recommends that Holders of Claims in Class 3 (Gestetner Secured Claim), Class 3(a) (Other Secured Claims), and Class 4 (General Unsecured Claims) support confirmation of the Plan and vote to accept the Plan**.

<div align="center">

**V.**

**HISTORY OF THE DEBTOR**

</div>

**A.    History of the Debtor**

The Debtor is an attorney, a certified public accountant, and a serial "affinity" fraudster.  He spent years preying upon members of his own Orthodox Jewish community – in many instances, his victims are Holocaust survivors – and he filed his chapter 11 case for the sole purpose of staying numerous litigations against him resulting from his misappropriation of funds from numerous trusts to the detriment of the trusts' beneficiaries.

Instead of converting the Debtor's Chapter 11 Case to a case under chapter 7 or dismissing ease altogether, the Court appointed a chapter 11 trustee to administer the Debtor's Estate. The Debtor's Estate was handed to the Trustee in poor shape. It took the Trustee and his advisors substantial time and effort to obtain any degree of visibility into (a) the assets of the Estate, (b) affirmative claims held by the Estate, and (c) the claims against the Debtor and the Estate. Since the Trustee's appointment, the Debtor and his various counsels have been largely uncooperative with the Trustee and his professionals. The Debtor has failed to produce virtually any information or documents in response to requests made of him and the authenticity of many of the documents he has produced is highly questionable. Indeed, the Debtor and his various counsels' primary participation in the Chapter 11 Case has been to seek to "recharacterize" assets of the Estate and to oppose the Trustee's efforts to complete his statutory duties. Often, the Debtor's efforts have included blatant violations of the automatic stay.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

<div align="center">

**VI.**

**THE DEBTOR'S CHAPTER 11 CASE**

</div>

**A.**     **Commencement of the Chapter 11 Case**

On February 22, 2023 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.  The Debtor subsequently converted the subchapter V case to case under chapter 11 of the Bankruptcy Code. The Chapter 11 Case was commenced in the Bankruptcy Court and was assigned to the Honorable Sandra Klein, United States Bankruptcy Judge.  Upon Judge Klein's retirement, the Chapter 11 case was transferred to the Honorable Neil W. Bason.

**B.**     **Retention of Professionals**

After the appointment of the Trustee, the Bankruptcy Court approved the retention of: (i) Pachulski Stang Ziehl & Jones LLP as general bankruptcy counsel to the Trustee, (ii) Development Specialists, Inc. as the Trustee's forensic accountant, (iii) Law Office of Eric Everett Hawes, landlord/tenant counsel to the Trustee, and (iv) the Law Offices of Goldfarb Gross Seligman & Co., special Israeli litigation counsel.

**C.**     **Asset Sales**

**1.**     **Ocean Dr. Sale Motion**

On October 25, 2023, the Trustee filed a motion to sell the Debtor's property located at 3752 Ocean Drive, Oxnard, California [Docket Nos. 452 and 453] (the "**Ocean Dr. Sale Motion**"). The Ocean Dr. Sale Motion was approved, and the sale subsequently closed. *See* [Docket No. 492].

**2.**     **Poinsettia Sale Motion**

On December 20, 2023, the Trustee filed a motion to sell the Debtor's property located at 161 Poinsettia Place, Los Angeles, California (the "**Poinsettia Sale Motion**") [Docket Nos. 537 and 538]. The Poinsettia Sale Motion was approved, and the sale subsequently closed.  *See* [Docket No. 602].

**3.**     **Whitewater Sale Motion**

On April 12, 2024, the Trustee filed a motion to sell the Debtor's property located at 2560 N. Whitewater Club Drive, Unit B, Palm Springs, California (the "**Whitewater Sale Motion**") [Docket Nos. 710 and 711].  The Whitewater Sale Motion was approved, and the sale subsequently closed. *See* [Docket No. 726].

**4.**     **BadCo. Sale Motion**

On June 19, 2024, the Trustee filed a motion to sell the Debtor's equity interest in Bay Area Development Company (the "**BadCo. Sale Motion**") [Docket No. 740]. The BadCo. Sale Motion was approved, and the sale subsequently closed. *See* [Docket No. 773].

**5.**     **Leonardo Plaza Sale Motion**

On January 22, 2025, the Trustee, in his business judgment, filed a motion to approve the sale of the Leonardo Plaza Hotel Property for the benefit of the Debtor's creditors [Docket No. 895] (the "**Leonard Plaza Sale Motion**"). The Leonardo Plaza Sale Motion was granted on February 13, 2025. *See* [Docket No. 920].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**D.    June St. Property**

The Trustee commenced an adversary proceeding (Adv. Case No. 24-01140) seeking a determination that the Estate owns a 100% interest in the June St. Property. The Bankruptcy Court granted the Trustee's summary judgment motion finding that the Estate owns 100% of the June St. Property. *See* [Adv. Pro. Docket No. 62], which was subsequently affirmed by the Bankruptcy Appellate Panel. *See* [BAP Docket No. 20]. The Trustee is currently marketing the June St. Property for sale. The June St. Property is wholly unencumbered except for certain outstanding property taxes and an exemption in favor of the Debtor in the amount of $189,050.00. *See* [Docket No. 141].

**E.    Estate's Equity Interest in LCG**

In June 2011, the Debtor formed LCG with Shlomo Rechnitz, and they each own a 50% interest in LCG. LCG was formed for the purpose of acquiring life insurance policies that the Debtor originally owned and maintained. However, upon the formation of LCG, the life insurance policies acquired by LCG were maintained by LCG with Mr. Rechnitz providing the necessary capital to pay premiums for each life insurance policy.

Upon the maturity of a life insurance policy, LCG is paid cash pursuant to the terms of the matured life insurance policy and the proceeds are distributed in accordance with the terms of the LCG Operating Agreement. Around the Petition Date, two life insurance policies held by LCG matured. LCG subsequently engaged with the Trustee and distributed $745,353.42 and $1,442,631.77 to the Trustee, which the Trustee retained on behalf of the Estate.

LCG currently holds fourteen life insurance policies. In the Fall of 2025, the life insurance policy for Rozy Pearl Zimmerman matured. While the foregoing policy has matured, the life insurance company has not yet made a payment to LCG on account of the matured policy.

**F.    Executory Contracts and Unexpired Leases**

Annexed hereto as **Exhibit "C"** is a list of contracts that the Trustee intends to assume for purposes of preserving the Estate's rights and benefits therein. Because the Debtor provided the Trustee with very little or no records or other bookkeeping regarding Estate Assets, the Trustee intends to preserve all executory contracts of the Estate so they are not automatically rejected by operation of law upon the Effective Date of the Plan. Accordingly, all executory contracts not expressly listed on **Exhibit "C"** hereto are preserved so that the Trustee or the Liquidating Trustee, as the case may be, can review any contract to determine whether or not such contract should be assumed or rejected. Upon the Effective Date, contracts that are not otherwise listed on **Exhibit "C"** are preserved and held in abeyance until the Trustee files a notice with the Court making the necessary election to either assume or reject a contract. The rights and defenses of the Estate and the counterparty to the applicable contracts are preserved.

The Trustee is not aware of any unexpired leases in the Debtor's name. As a result, if there were any unexpired leases they were rejected by operation of law pursuant to section 365(d) of the Bankruptcy Code.

**G.    Schedules of Assets and Liabilities and Establishment of Bar Dates**

On March 8, 2023, the Debtor filed his Schedules of Assets and Liabilities and Statement of Financial Affairs, which provided the Debtor's overview of assets, liabilities, and a description and/or listing of the various actions that represented claims against and claims in favor of the Estate. See [Docket No. 34] (collectively, the "**Schedules**"). The Debtor made or attempted to make various amendments to the Schedules as reflected in [Docket Nos. 61, 70, 875, and 878].

On February 27, 2023, the Debtor filed a notice setting May 3, 2023 as the deadline for any persons or other entities (except for governmental entities) that wish to assert a prepetition claim

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

against the Debtor, to file a proof of claim or forever be barred from asserting such claim (the "**General Bar Date**").

**VII.**

**THE CHAPTER 11 PLAN**

As a result of the chapter 11 process and through the Liquidation Trust and the Plan, the Trustee expects that creditors will obtain a greater recovery from the Estates than the recovery that would be available if the Assets had been liquidated under chapter 7 of the Bankruptcy Code. The Plan is annexed hereto as **Exhibit "A"** and forms part of this Disclosure Statement. The summary of the Plan set forth below is qualified in its entirety by the more detailed provisions set forth in the Plan.

**A.    Classification and Treatment of Claims**

**1.    Administrative Expense Claims**

a.    ***Treatment***. Except as otherwise provided in Section 5.1(b) of the Plan, or to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Trustee or Liquidation Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Trustee (in his administration of the Estate) prior to the Effective Date, shall be paid by the Trustee in his capacity as the representative of the Estate, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, any applicable orders of the Bankruptcy Court. In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 incurred prior to the Effective Date shall be paid on the Effective Date by the Estate, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidation Trustee in accordance with the applicable schedule for payment of such fees.

b.    ***Administrative Expense Claims Bar Date***. To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the First Administrative Expense Claims Bar Date or the Second Administrative Expense Claims Bar Date, as applicable, or such other date as may be agreed to by the Liquidation Trustee. Any Administrative Expense Claims that are not asserted in accordance herewith and with Section 5.1(a) of the Plan shall be disallowed under the Plan and shall be forever barred against the Debtor's Estate, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

**2.    Professional Fee Claims.**

Each Professional requesting compensation for services rendered and reimbursement for expenses incurred during the period from the Petition Date through the Effective Date must (i) file and serve a properly noticed final fee application by no later than 45 days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within 14 calendar days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidation Trustee. Any Professional Fee Claim that is not asserted in accordance with Section 5.2 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Estate, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be

enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

a.  ***Professional Fee Estimate***.  Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Trustee before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Trustee no later than 7 calendar days prior to the Effective Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Trustee shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

b.  ***Professional Fee Escrow***. If the Professional Fee Claims Estimate is greater than zero, as soon as reasonably practicable and no later than the Effective Date, the Trustee shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Claims Estimate, and no Liens, Claims, or Interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow Account (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Estate or the Liquidation Trust and (ii) shall be held in trust for the Professionals; *provided*, that funds remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Liquidation Trust. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court; *provided further*, that the Estate's obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow Account.

If the amount of funds in the Professional Fee Escrow Account is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow Account from the Estate without any further action or order of the Bankruptcy Court.

**3.  Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim, if any such Claim exists, shall receive Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the date that is 90 calendar days after the Effective Date.

**4.  Class 1:  Other Priority Claims**

a.  ***Classification***.  Class 1 consists of all Allowed Other Priority Claims against the Estate that are specified as having priority in section 507(a) of the Bankruptcy Code if any such Claims exist as of the Effective Date.

b.  ***Treatment***.  Except to the extent that a Holder of an Allowed Other Priority Claim against the Estate has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidation Trustee and the Holder of the Allowed Other Priority Claim against the applicable Debtor.

c.  ***Projection***. The Trustee estimates that the Holders of Class 1 Other Priority Claims will receive distributions equal to 100% of their Allowed Other Priority Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**5.    Class 2:  Secured Tax Claims**

a.    ***Classification***.  Class 2 consists of all Allowed Secured Tax Claims against the Estate that, absent the secured status of such Claim, would be entitled to priority in right of payment under section 507(a) of the Bankruptcy Code if any such Claims exist as of the Effective Date.

b.    ***Treatment***.  Each Holder of an Allowed Secured Tax Claim against the Estate shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidation Trustee and the Holder of the Secured Tax Claim. The Trustee and the Liquidation Trustee (after the Effective Date) specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid, pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims.

c.    ***Projection***. The Trustee estimates that the Holders of Class 2 Allowed Secured Tax Claims will receive distributions equal to 100% of their Allowed Secured Tax Claims.

**6.    Class 3:  Gestetner Secured Claim**

a.    ***Classification***.  Class 3 consists of the Gestetner Secured Claim.

b.    ***Treatment***.  On the later of the Effective Date or the date on which LCG makes a distribution to the Estate or the Liquidating Trustee on account of the Debtor's equity interest in LCG, the Holder of an Allowed Class 3 Gestetner Secured Claim will receive 50% of the distribution made to the Estate or the Liquidating Trust, as the case may be, from LCG until the Gestetner Secured Claim held by the Gestetners is paid in full.

c.    ***Projection***. The Trustee estimates that the holder of Allowed Class 3 Gestetner Secured Claim will receive distributions equaling 100% of their Allowed Gestetner Secured Claim.

**7.    Class 3(a):  Other Secured Claims**

a.    ***Classification***.  Class 3(a) consists of all Other Secured Claims.

b.    ***Treatment***.  On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 3(a) Other Secured Claim will receive the collateral in which such Holder has a security interest or lien; *provided*, *however*, if such action was already undertaken prior to the Petition Date, in response to a stay relief request, by the Estate's abandonment, or other similar action then the Liquidation Trustee need not take any further action; *provided, further*, upon the request of a holder of an Allowed Class 3(a) Other Secured Claim it may elect to receive such other and less favorable distributions or treatments as may be agreed upon by and between the Holder of the Allowed Class 3(a) Other Secured Claim and the Liquidation Trustee.

**8.    Class 4:  General Unsecured Claims**

a.    ***Classification***.  Class 4 consists of all General Unsecured Claims.  The Trustee will provide ballots to Holders of asserted Class 4 General Unsecured Claims.

b.    ***Treatment***.  Except to the extent that a Holder of an Allowed Class 4 Claim agrees to a different treatment of such Claim, each Holder of an Allowed Class 4 Claim will receive its Pro Rata share of the Liquidating Trust Assets as soon as practicable as determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement; *provided*, *however*, any Allowed Class 4 Claim that is subordinated shall not receive any distribution unless and until all

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

holders of Allowed Class 4 Claims are paid in full or otherwise agree that their Claims have been satisfied.

*Projection*. The Trustee estimates that the holders of Allowed Class 4 General Unsecured Claims will receive distributions ranging from approximately 4% to 28% of their Allowed General Unsecured Claims.

**B.      Means for Implementation of the Plan**

**1.      The Liquidation Trust**

a.      ***Formation of the Liquidation Trust***.  On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement[2] for the purpose of administering and liquidating the Liquidation Trust Assets, prosecuting and resolving the Causes of Action, objecting to Claims, as necessary, and effectuating the Distributions to be made under the Plan to the Holders of Allowed Claims in accordance with the terms of the Plan.

b.      ***Federal Income Tax Treatment of the Liquidation Trust***.  For federal income tax purposes, it is intended that the Liquidation Trust be classified as a "grantor trust" for federal income tax purposes, pursuant to sections 671-677 of the Internal Revenue Code of 1986, as amended, and that the Liquidation Trust be owned by the Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidation Trust Assets and then contributed such interest to the Liquidation Trust.

c.      ***Funding the Liquidation Trust***.  On the Effective Date, all of the Assets of the Estate, including all Causes of Action, as well as the rights and powers of the Estate as held by the Trustee, shall automatically vest in the Liquidation Trust. Specifically, and without limitation, the Liquidation Trust, through the Liquidation Trustee, shall have the right to prosecute all Causes of Action, and receive all accounts receivable and the proceeds related thereto.

d.      ***Termination of Liquidation Trust***.  The duties, responsibilities, and powers of the Liquidation Trustee shall terminate in accordance with the terms of the Plan and the Liquidation Trust Agreement after (a) all the Liquidation Trust Assets have been fully administered, (b) all reasonably possible Distributions have been made in accordance with the terms of the Plan, and (c) all Disputed Claims have been resolved.

Upon the termination of the Liquidation Trust, the Liquidation Trustee shall file with the Bankruptcy Court a report thereof, seeking an order discharging the Liquidation Trustee and a final decree closing any open Chapter 11 Case.  The Liquidation Trustee shall not unduly prolong the duration of the Liquidation Trust.  As efficiently and expeditiously as possible, the Liquidation Trustee shall endeavor to resolve, settle, or otherwise dispose of all Liquidation Trust Assets, effect the distribution of the Liquidation Trust Assets in accordance with the terms of the Plan, and terminate the Liquidation Trust as soon as practicable.

e.      ***Vesting and Transfer of Assets to the Liquidation Trust***.  Pursuant to section 1141(b) of the Bankruptcy Code, the Assets of the Estates shall vest in the Liquidation Trust; *provided*, *however*, that the Liquidation Trustee may seek Bankruptcy Court approval to abandon or otherwise

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2] A form of Liquidation Trust Agreement is annexed hereto as **Exhibit C**.

not accept any Assets that the Liquidation Trustee believes, in good faith, have no meaningful value to the Liquidation Trust; *provided*, *however*, that pursuant to an order of the Bankruptcy Court following proper notice, the Liquidation Trustee may abandon any Assets to any Person.

As of the Effective Date, all Assets vested in the Liquidation Trust and all Assets dealt with in the Plan, shall be free and clear of all Claims, Liens, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. The Liquidation Trustee shall make distributions in accordance with the Plan and the Liquidation Trust Agreement.

f.    ***Appointment and Powers of the Liquidation Trustee***. The Liquidation Trustee shall be appointed pursuant to the Confirmation Order, as of the Effective Date. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in and subject to the terms of the Liquidation Trust Agreement and shall include the authority and responsibility to: (i) receive, manage, invest, supervise and protect the Liquidation Trust Assets; (ii) pay taxes and other obligations incurred by the Liquidation Trust; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of professionals (the "Liquidation Trust Professionals") to advise and assist in the administration, prosecution and Distribution of Liquidation Trust Assets; (iv) calculate and implement Distributions of Distributable Cash (v) prosecute, compromise and settle all Disputed Claims and all claims and Causes of Action vested in the Liquidation Trust; and (vi) pay Professional Fees of professionals retained in the Chapter 11 Case that are Allowed pursuant to any order of the Bankruptcy Court, whether such Professional Fees are incurred before or after the Effective Date. Other rights and duties of the Liquidation Trustee shall be set forth in the Liquidation Trust Agreement.

The Liquidation Trustee shall have all of the rights and powers of a trustee in bankruptcy, a chapter 11 trustee and/or a debtor in possession to the same extent as would be held by those officers if the Plan had not been confirmed, and shall have the benefit of all time frames that would be applicable to actions by such officers, including without limitation pursuant to section 108 of the Bankruptcy Code

g.    ***Compensation of Liquidation Trustee***. The Liquidation Trustee shall be reasonably compensated out of the Liquidation Trust Assets for his or her services and reimbursed out of the Liquidation Trust for his or her reasonable expenses in accordance with the Liquidation Trust Agreement.

h.    ***Resignation of Liquidation Trustee***. The Liquidation Trustee may resign at any time. The Liquidation Trustee shall file such written resignation with the Bankruptcy Court. Any party in interest may request a hearing before the Bankruptcy Court regarding the Liquidation Trustee's resignation. If no such hearing is requested, the resignation shall take effect 30 days after the filing of the notice of resignation with the Bankruptcy Court. The resigning Liquidation Trustee shall, by the earliest date possible, deliver to the Liquidation Trustee's successor all of the Liquidation Trust Assets that were in the possession of the resigning Liquidation Trustee along with a complete record and inventory of all such Liquidation Trust Assets.

i.    ***Removal of Liquidation Trustee***. The Bankruptcy Court may remove a Liquidation Trustee for good cause shown on a motion submitted by a Beneficiary of the Liquidation Trust or the U.S. Trustee following notice to parties in interest, including without limitation, the Liquidation Trustee. The removal will take effect upon the date the Bankruptcy Court specifies. Any removed Liquidation Trustee shall, by the earliest date possible, deliver to the Liquidation Trustee's successor all of the Liquidation Trust Assets that were in the possession of the removed Liquidation Trustee along with a complete record and inventory of all such Liquidation Trust Assets.

j.    ***Successor Liquidation Trustee***. Any vacancy in the office of Liquidation Trustee shall be appointed by the Bankruptcy Court after notice and a hearing.

k.      ***Liability of the Liquidation Trustee***.  The Liquidation Trustee shall not be personally liable for any claim asserted against the Liquidation Trust or the Liquidation Trustee, except as set forth below.  The Liquidation Trustee shall not be liable for any error of judgment made in good faith or with respect to any action taken or omitted to be taken in good faith, unless with respect to the Liquidation Trustee's own respective fraud, gross negligence or willful misconduct.  Notwithstanding anything to the contrary set forth herein or in the Liquidation Trust Agreement, no provision of the Plan or the Liquidation Trust Agreement shall be construed to relieve the Liquidation Trustee from liability for gross negligence, fraud or willful misconduct.

l.      ***Indemnification***.  From and after the Effective Date, the Liquidation Trustee and the independent contractors, employees, and/or professionals employed by the Liquidation Trust (collectively, the "Indemnified Parties" and each an "**Indemnified Party**") shall be, and hereby are, indemnified by the Liquidation Trust, to the fullest extent permitted under applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs, and other assertions of liability arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan, the Liquidation Trust Agreement, or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to such Indemnified Party's own respective fraud, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing any Causes of Action or objections to Claims, on and after the Effective Date.  The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) any document or information, whether verbal or written, referred to herein or supplied to the Liquidation Trustee; or (iv) proceedings by or on behalf of any claimant or Creditor.  Subject to the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trust shall, on demand, advance or pay promptly, in either case from the Liquidation Trust Reserve, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder due to the gross negligence, fraud, or willful misconduct of such Indemnified Party.  Any person entitled to indemnification hereunder shall have the right to employ such person's own separate counsel in any such action, payable solely from the Liquidation Trust Reserve, subject to the terms and conditions of the Plan.

The Liquidation Trustee is authorized, but not required, to obtain and purchase (solely from funds in the Liquidation Trust Reserve) insurance coverage with respect to the responsibilities, liabilities, and obligations of the Indemnified Parties under the Plan.

**2.      The Source of Distributions**

The sources of all distributions and payments under the Plan are the Liquidation Trust Assets (or proceeds of any Liquidation Trust Assets), including without limitation Cash and Distributable Cash, proceeds of all Causes of Action, and proceeds of or recoveries from any other remaining property of the Estate.

**3.      Claims Reconciliation Process**

From and after the Effective Date, the Liquidation Trust shall be solely responsible for objecting to Claims which are not otherwise Allowed.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 4. Preservation of Right to Conduct Investigations

Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtor, the Estate, or the Trustee prior to the Effective Date shall vest with the Liquidation Trust upon the Effective Date and shall continue in effect until dissolution or termination of the Liquidation Trust.

### 5. Preservation of Privilege and Defenses

No action taken by the Trustee in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Estate, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) (collectively, the "**Transferred Privileges**"). The Confirmation Order shall provide that notwithstanding the Trustee, or the Debtor, as the case may be, providing any Transferred Privileges to the Liquidation Trustee, the Liquidation Trust, or any party or Person associated with the Liquidation Trust, such Transferred Privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged and shall vest in the Liquidation Trust, in trust, and, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Liquidation Trustee and the Liquidation Trust beneficiaries; *provided*, *however*, the Liquidation Trustee shall not share information protected by any Transferred Privilege with a holder of a general unsecured claim to the extent that such protected information implicates the claims the creditors have against the Liquidation Trust or claims the Liquidation Trust has against the Holder of a Claim; *provided further, however*, that the Liquidation Trustee shall not waive any Transferred Privilege, or otherwise disclose any material subject to a Transferred Privilege, to the extent such Transferred Privilege is held jointly with a third party, without the express written consent of such third party.

### 6. Abandonment of Property

If and to the extent the Liquidation Trustee determines to abandon any Liquidation Trust Assets, then the Liquidation Trustee may abandon such assets in accordance with the Plan or any further order of the Bankruptcy Court.

## C. Claims Reconciliation Process

### 1. Objections to, and Resolution, of Disputed Claims

From and after the Effective Date, the Liquidation Trust shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, subject to the Liquidation Trust Agreement, and any agreement entered into by the Liquidation Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim; *provided*, *however*, that, under the Plan, all Disputed Claims will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order.

### 2. Claim Objections

All objections to Claims (other than Professional Fee Claims) shall be filed by the Liquidation Trust on or before the Claim Objection Deadline, which date may be extended by filing a motion on or before the then Claim Objection Deadline.  If a timely objection has not been filed to a proof of claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtor but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 3.    Estimation of Certain Claims

The Liquidation Trust may, at any time, move for a Bankruptcy Court order estimating any contingent Claim, Disputed Claim, or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately Allowed.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

### D.    Distributions Under the Plan

### 1.    Manner of Cash Payments.

Cash payments to Holders of Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Liquidation Trustee or, at the Liquidation Trustee's option, by wire transfer from a domestic bank.

### 2.    Setoff and Recoupment

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE LIQUIDATION TRUSTEE, ON BEHALF OF THE LIQUIDATION TRUST, MAY SETOFF, RECOUP, OR WITHHOLD AGAINST DISTRIBUTIONS ON ACCOUNT OF ANY CLAIM OR ANY ADMINISTRATIVE EXPENSE CLAIM, ANY CLAIMS THAT THE ESTATE OR THE LIQUIDATION TRUST MAY HAVE AGAINST THE HOLDER OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM. THE LIQUIDATION TRUST AND THE LIQUIDATION TRUSTEE WILL NOT BE DEEMED TO WAIVE OR RELEASE ANY CLAIM AGAINST THE HOLDER OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM BY FAILING TO EFFECT SUCH A SETOFF OR RECOUPMENT; BY ALLOWING ANY CLAIM OR ADMINISTRATIVE EXPENSE CLAIM, AS APPLICABLE, AGAINST THE ESTATE OR THE LIQUIDATION TRUST; OR BY MAKING A DISTRIBUTION ON ACCOUNT OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM.**

### 3.    No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim.

### 4.    Reserve for Disputed Claims and Administrative Expenses

Liquidating Trustee may maintain a reserve for any distributable amounts required to be set aside on account of Disputed Claims and cost associated with administering the Liquidating Trust and shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidating Trust Agreement, as such Disputed Claims are resolved by Final Order, and such amounts shall be distributable in respect of such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date, provided that no interest shall be distributable or accrue with respect thereto.

### 5.    Preservation of Causes of Action

The Liquidation Trustee, on behalf of the Estate and/or the Liquidation Trust, shall retain, and may exclusively enforce, any and all claims, rights, or Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, an adversary

proceeding filed in this Chapter 11 Case. Subject to the Plan and the Liquidation Trust Agreement, the Liquidation Trustee, on behalf of the Estate and the Liquidation Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise on any reasonable terms any and all claims, rights and Causes of Action, and shall not be required to seek prior approval from the Bankruptcy Court to do so, except as otherwise provided in the Plan, and shall have the full rights and powers to commence and pursue any such Causes of Action (including, without limitation, any Avoidance Actions), on or after the Effective Date to at least the same extent as a trustee or debtor in possession could commence such actions prior to the Effective Date.  With respect to any matter affecting Liquidation Trust Assets, the Liquidation Trustee stands in the shoes of the Estate and/or the Liquidation Trust and may take such actions in their name without the need to intervene in, amend any pending matters, proceedings, or actions, or obtain any further order of the Bankruptcy Court.

The Plan provides that the Liquidation Trustee is authorized to exercise and perform the rights, powers, and duties held by the Estate and/or the Liquidation Trust, including without limitation the authority under section 1123(b)(3) of the Bankruptcy Code to provide for the settlement, adjustment, retention and enforcement of claims and interests of the Estate or the Liquidation Trust, including, but not limited to all Causes of Action.

The Plan preserves all claims and Causes of Action against any and all third parties, including, but not limited to, all creditors and interest holders, and others. Nothing contained in the Plan shall be construed as an acknowledgment or concession regarding the existence or validity of any claim or Cause of Action.

**E.**     **Discharge, Exculpation, and Injunction**

**1.**     **No Discharge of the Debtor**

As set forth in Section 13 of the Plan, the Trustee is not seeking entry of an Order discharging the prepetition claims against the Debtor. Except as otherwise specifically provided in the Plan and Non-Dischargeable Claims, the Distributions, rights and treatment that are provided in the Plan shall not be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims and causes of action of any nature whatsoever.

**2.**     **Term of Bankruptcy Injunction or Stay**

Except as otherwise expressly provided in the Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and which are in effect on the confirmation Date, shall remain in full force and effect until the Effective Date.

**3.**     **Exculpation for Estate Fiduciaries.**

**Upon the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or any Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party shall be exculpated from any claim, obligation, cause of action, or liability for any Exculpated Claim, except for gross negligence, willful misconduct, fraud, or criminal conduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon confirmation of the Plan, shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

"Exculpated Claims" means any Claim related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, including the sale process, the formulation, preparation, dissemination, negotiation, or filing of the disclosure statement, the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the disclosure statement or the Plan, the filing of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, and the administration and implementation of the Plan, including the distribution of property under the Plan or any other agreement.

"Exculpated Parties" means collectively: (a) the Trustee; (b) Pachulski Stang Ziehl & Jones LLP as counsel to the Trustee; (c) Development Specialists, Inc. as the Trustee's forensic accountant; (d) Law Office of Eric Everett Hawes, landlord/tenant counsel to the Trustee, and (e) the Law Offices of Goldfarb Gross Seligman & Co., special Israeli litigation counsel.

## 4.  <u>Injunction</u>

**The Plan provides, and the Confirmation Order shall provide, among other things, that any Person (other than the Trustee or the Liquidation Trustee) who has held, holds, or may hold a claim against or right with respect to the Debtor's Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, or any claim against the Debtor's Estate or the Liquidation Trust for which the Debtor's Estate or the Liquidation Trust are or may be liable is, with respect to any such claim, interest, or right, permanently enjoined from and after the Effective Date from taking any of the following actions (other than actions taken in the Bankruptcy Court or in any of the Chapter 11 Case to enforce any rights or obligations under the Plan or to defend challenges to the validity or amount of a Disputed Claim), absent further order of the Bankruptcy Court:  (i) asserting, commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting any of the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, on account of any claim for which the Estate or Liquidation Trustee are directly or indirectly liable, including without limitation, by way of contribution, indemnity or otherwise; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against any of the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien of any kind against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (v) prosecuting, commencing, continuing or otherwise asserting any right, claim or cause of action released pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; and (vi) acting to obtain possession of the Liquidation Trust Assets or to exercise control over the Liquidation Trust Assets or any rights or interests of the Estate, the Liquidation Trust, or the Liquidation Trustee with respect to the Assets or the Liquidation Trust Assets. If the Liquidation Trustee, the Liquidation Trust Assets or the Estate are injured by any willful violation of such injunction, the Liquidation Trustee shall be entitled to seek actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages, from the willful violator(s). Notwithstanding the foregoing, holders of Disputed Claims are not enjoined from and shall retain all rights to defend or prosecute such Disputed Claims in the Bankruptcy Court, including, without limitation, the right to assert affirmative defenses, setoff, or recoupment, if applicable.  Nothing herein shall impair or delay any rights of any Holder of a Claim against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, to pursue any action against the Debtor or any third party who may be directly liable to such Holder.**

**Nothing contained in Section 12.3 of the Plan shall be construed to in any way enjoin, prevent, or limit the Liquidation Trustee's rights, power, and authority under the Plan and the Liquidation Trust Agreement.**

**Nothing contained in Section 12.3 of the Plan shall be construed to in any way enjoin, prevent, or limit the ability of a party that was granted relief from the automatic stay during the Chapter 11 Case to liquidate its claims, or from continuing to liquidate such claims, in the applicable court.**

## F. Executory Contracts and Unexpired Leases

### 1. Rejection

Upon the Effective Date, all agreements executed by the Trustee before the Effective Date, other than agreements that were previously either assumed and assigned or rejected by a Final Order, to the extent that these agreements constitute executory contracts under section 365 of the Bankruptcy Code, shall be held in abeyance until the Liquidating Trustee elects to assume or reject such executory contract. The order approving such assumption or rejection, as the case may be, shall constitute a Final Order under section 365 of the Bankruptcy Code approving such assumption or rejection. Any unexpired leases that were not assumed or rejected by a prior Final Order are rejected upon entry of the Confirmation Order, which shall constitute a Final Order under section 365 of the Bankruptcy Code approving such rejection of an unexpired lease.

### 2. Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Liquidation Trustee and his or her counsel within 30 days after the (a) Effective Date or (b) the date of the Final Order approving the rejection of such executory contract or unexpired lease . Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Estate, the Liquidation Trust, and the Liquidation Trustee, and their property, and the entities holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Liquidation Trustee shall have the right to object to any such Rejection Damage Claims.

## G. Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan.

## H. Miscellaneous Plan Provisions

### 1. Conditions Precedent to the Effective Date

The Plan will not be consummated or become binding unless and until the Effective Date occurs. The Effective Date will be the first Business Day after the following conditions have been satisfied: (i) the Confirmation Order, in a form reasonably acceptable to the Trustee, shall have been entered by the Bankruptcy Court; (ii) the Confirmation Order is not stayed; (iii) the Liquidation Trustee and the Trustee shall have signed the Liquidation Trust Agreement; (iv) the funding of the Professional Fee Escrow Account shall have occurred; and (v) no material adverse effect has occurred

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

in respect of the Assets. Each of these conditions precedent may be waived in whole or in part by the Trustee without further notice or order of the Bankruptcy Court.

## VIII.

## CONFIRMATION AND CONSUMMATION PROCEDURES

### A.    Overview

A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets.  In either event, upon confirmation of the plan, it becomes binding on the debtor's estate and all of its creditors, and the obligations owed by the estate to such parties are compromised and exchanged for the obligations specified in the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the plan proponent to prepare and file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. **This Disclosure Statement is presented to holders of Claims against the Estate to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the Trustee's solicitation of votes on the Plan.**

If all classes of claims accept a chapter 11 plan, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied.  Section 1129(a) sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests of creditors" test and be "feasible."  The "best interests" test generally requires that the value of the consideration to be distributed to the holders of claims or equity interests under a plan may not be less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code.  Under the "feasibility" requirement, the bankruptcy court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization.  **The Trustee believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the best interests of creditors' test and the feasibility requirement.**

The Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a plan of reorganization for the bankruptcy court to determine that the class has accepted the plan.  Rather, a class of creditors will be determined to have accepted the plan if the bankruptcy court determines that the plan has been accepted by a majority in number and two-thirds in amount of those claims actually voting in such class.  Similarly, a class of equity security holders will have accepted the plan if the bankruptcy court determines that the plan has been accepted by holders of two-thirds of the number of shares actually voting in such class.

In addition, classes of claims or equity interests that are not "impaired" under a plan of reorganization or liquidation are conclusively presumed to have accepted the plan and thus are not entitled to vote.  Furthermore, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan.  Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class.  A class is "impaired" if the legal, equitable, or contractual rights associated with the claims or equity interests of that class are modified in any way under the plan.  Modification for purposes of determining impairment, however, does not include curing defaults and reinstating maturity on the effective date of the plan. Class 3 (Gestetner Secured Claim), **Class 3(a) (Other Secured Claims), and Class 4 (General Unsecured Claims) are impaired under the Plan and entitled to vote on the Plan.**

A bankruptcy court also may confirm a chapter 11 plan even though fewer than all the classes of impaired claims accept such plan. For a chapter 11 plan to be confirmed despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at least one class of impaired claims (determined without counting the vote of insiders) and the proponent of the plan must show,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property from the estate, unless the senior class receives property having a value equal to the full amount of its allowed claim.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interest in such class.

**B.    Confirmation of the Plan**

**1.    Elements of Section 1129 of the Bankruptcy Code**

At the confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the conditions to confirmation under section 1129 of the Bankruptcy Code are satisfied, including the following:

a.    The Plan complies with the applicable provisions of the Bankruptcy Code.

b.    The Trustee has complied with the applicable provisions of the Bankruptcy Code.

c.    The Plan has been proposed in good faith and not by any means proscribed by law.

d.    Any payment made or promised by the Trustee or by an entity issuing securities or acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court; and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

e.    The Trustee has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtor or a successor to the Debtor under the Plan and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity holders and with public policy, and the Debtor have disclosed the identity of any insider that will be employed or retained by such Debtor, and the nature of any compensation for such insider.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

f.  With respect to each impaired class of Claims, each holder of an impaired Claim or either has accepted the Plan or will receive or retain under the Plan, on account of the Claims or Interests held by such entity, property of a value, as of the applicable consummation date under the Plan, that is not less than the amount that such entity would receive or retain if the Debtor was liquidated on such date under chapter 7 of the Bankruptcy Code.

g.  In the event that the Trustee does not move to confirm the Plan non-consensually, each class of Claims entitled to vote has either accepted the Plan or is not impaired under the Plan.

h.  Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Priority Claims will be paid in full on the applicable consummation date and that Tax Claims will be paid in full, in cash, on the applicable consummation date or as soon as practicable thereafter; however, the Trustee shall have the right to make deferred cash payments on account of such Tax Claims over a period not exceeding six (6) years after the date of assessment of such Claims, having a value, as of the applicable consummation date, equal to the allowed amount of such Claims.

i.  At least one impaired class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such class.

j.  Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any other successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

k.  All fees payable under section 1930 of Bankruptcy Code, as determined by the Bankruptcy Court at the confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

l.  The Plan provides for the continuation after the consummation of the Plan of payment of all retiree benefits at the level established under section 1114(e)(1)(B) or (g) of the Bankruptcy Code at any time prior to confirmation of the Plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

m.  If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

n.  In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—**(A)** the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or **(B)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

o.     All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

**The Trustee believe that the Plan will satisfy all the statutory provisions of chapter 11 of the Bankruptcy Code, that the Trustee has complied or will have complied with all of the provisions of the Bankruptcy Code, and that the Plan is being proposed and will be submitted to the Bankruptcy Court in good faith.**

## 2.     Acceptance

A class of Claims will have accepted the Plan if the Plan is accepted, with reference to a class of Claims, by at least two-thirds in amount and more than one-half in number of the Allowed Claims of each such class of Claims.

## 3.     Best Interests of Creditors Test

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired allowed claim or interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date (the "**Best Interests Test**").  The first step in meeting this test is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in the context of a chapter 7 liquidation in which a chapter 7 trustee is appointed and charged with reducing to cash any and all assets of the Debtor.  Accordingly, this is the assumption employed in preparing the Liquidation Analysis.  The Bankruptcy Court will determine whether the Cash and property issued under the Plan to each Class equals or exceeds the value that would be allocated to the holders of Claims in a liquidation under chapter 7 of the Bankruptcy Code. The Trustee believes that the holders of Claims against the Estate will have an equal or greater recovery under the Plan than could be realized in a chapter 7 liquidation.

Accordingly, the only question is whether the creditors will have recovered more (or at least as much) under the Plan than they would recover through a liquidation by a chapter 7 trustee.

To determine the value that a holder of a Claim in an Impaired Class would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtor's Assets if the Chapter 11 Case had been converted to a chapter 7 liquidation case and the Debtor's Assets were liquidated by a chapter 7 trustee (the "**Liquidation Value**").  The Liquidation Value would consist of the net proceeds from distribution of the Debtor's Assets, augmented by Cash held by the Debtor and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 case.

As explained below, the Liquidation Value available for satisfaction of Claims against the Debtor would be reduced by: (a) the costs, fees, and expenses of the liquidation under chapter 7, which would include disposition expenses and the compensation of a trustee and his counsel and other retained professionals, (b) the fees of the chapter 7 trustee, and (c) certain other costs arising from conversion of the Chapter 11 Case to chapter 7.  The Liquidation Analysis attached hereto as **Exhibit "B"** establishes that creditors will clearly benefit from confirmation of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

It is also anticipated that a chapter 7 liquidation would result in a significant delay in payments being made to creditors.  Bankruptcy Rule 3002(c) provides that conversion of the Chapter 11 Case to chapter 7 will trigger a new bar date for filing claims against the Estate, and that the new bar date will be more than 90 days after the Chapter 11 Case convert.  Not only would a chapter 7 liquidation delay distribution to creditors, but it is possible that additional Claims that were not asserted in the Chapter 11 Case, or were late-filed, could be filed against the Estate.  Reopening the Bar Dates in connection with conversion to chapter 7 would provide other claimants an additional opportunity to timely file Claims against the Estate.  Moreover, the Trustee would lose the benefit of having an established Claim Bar Date.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 Case, including: (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee; and (ii) the substantial increases in claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Case, the Trustee has determined that confirmation of the Plan will provide each holder of a Claim or Interest with a greater recovery than it would receive pursuant to liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

**4.**     **Feasibility**

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization.  Because distributions will be made only to the extent of existing assets or future recoveries, the Trustee believes the Plan is feasible.

**C.**     **Effect of Confirmation**

Under section 1141 of the Bankruptcy Code, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equity security holder, whether or not the claim or interest of such creditor or equity security holder is impaired under the plan and whether or not such creditor or equity security holder voted to accept the plan. Any discharge of the Debtor is subject to section 1141(d)(5) of the Bankruptcy Code. Further, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors and equity security holders, except as otherwise provided in the plan or the confirmation order.

*[Remainder of page intentionally left blank]*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# IX.

## **CONCLUSION**

The Trustee believes that the Plan is in the best interest of all holders of Claims and urge all holders of impaired Claims against the Debtor's Estate to vote to accept the Plan and to evidence such acceptance by returning their ballots in accordance with the instructions accompanying the Disclosure Statement.

Submitted by:

February 27, 2026                    PACHULSKI STANG ZIEHL & JONES LLP


By    */s/ John W. Lucas*
      Jeffrey W. Dulberg (CA Bar No. 181200)
      John W. Lucas (CA Bar No. 271038)

      *Counsel to the Bradley D. Sharp, Chapter 11
      Trustee*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

## (Plan)

# **EXHIBIT B**

## **(Liquidation Analysis)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Bankruptcy Estate of Leslie Klein**

Ch 11 Plan Projections and Best Interest of Creditors Test Analysis - Summary

Effective Date: March 31, 2026

| | Plan Projections | | | | Projected Ch. 7 | |
| --- | --- | --- | --- | --- | --- | --- |
| | High | | Low | | | |
| | Amount | % Recovery | Amount | % Recovery | Amount | % Recovery |
| **Total Assets [1]** | $ 24,754,400 | | $ 10,491,906 | | $ 9,991,906 | |
| Gestetner Secured Claim | (2,494,106) | 100% | (2,494,106) | 100% | (2,494,106) | 100% |
| Other Secured Claims [2] | (72,778) | 100% | (72,778) | 100% | (72,778) | 100% |
| Chapter 7 Administrative Claims [3] | - | N/A | - | N/A | (3,708,863) | 100% |
| Pre-Effective Plan Creditor Payments - Administrative [4] | (5,972,243) | 100% | (4,299,369) | 100% | (3,048,042) | 100% |
| Pre-Effective Plan Creditor Payments - Priority [5] | (29,046) | 100% | (29,046) | 100% | (29,046) | 100% |
| Post-Effective Date - Administrative Costs [6] | (1,738,035) | 100% | (1,623,935) | 100% | - | N/A |
| **Remaining Funds for General Unsecured Creditors ("GUC")** | $ 14,448,193 | | $ 1,972,673 | | $ 639,072 | |
| **Unsecured Creditor Pool [7]** | 52,459,964 | 28% | 52,459,964 | 4% | 52,459,964 | 1% |
| **Subordinated Unsecured Claims [8]** | 19,663,224 | | 19,663,224 | | 19,663,224 | |

[1] Total Assets represent the liquidation of the Estate Assets, including but not limited to existing cash, real estate, proceeds from Life Capital Group, litigation efforts and collection on insurance policies.

[2] Turnover of funds received from rent on the Martel property to its foreclosing lender (Class 3(a)). The payment of secured tax claims is anticipated to occur when the corresponding real estate is sold and is factored into the anticipated net proceeds received therein.

[3] Chapter 7 Administrative claims incurred if the case were to convert including replacement counsel, financial advisors, tax professionals and the chapter 7 Trustee fees.

[4] Pre-Effective administrative claims represent professional fees that have been approved, but not paid as well as anticipated US Trustee fees.

[5] Priority claims as defined in the plan and disclosure statement.

[6] Post-Effective Administrative costs represent anticipated professional fees and U.S. Trustee fees needed to administer the Liquidating Trust to its conclusion.

[7] Anticipated general unsecured claims as defined in the plan and disclosure statement.

[8] The subordinated portion of the general unsecured claims for the Menlo and Vago parties per their settlement terms.

**Bankruptcy Estate of Leslie Klein**
Ch 11 Plan Projections - Assets
Effective Date: March 31, 2026

| Asset Description | High | Low |
|---|---|---|
| Cash | | |
| Unrestricted | $529,046 | $529,046 |
| Restricted (Martel) | 72,778 | 72,778 |
| Restricted (Highland) | 75,858 | 75,858 |
| Total Cash | 677,681 | 677,681 |
| | | |
| Real Estate Proceeds | | |
| 322 N. June Street | 4,621,225 | 3,814,225 |
| 143 S. Highland | 135,061 | 0 |
| Dan Boutique | 25,000 | 0 |
| Total Real Estate Proceeds | 4,781,286 | 3,814,225 |
| | | |
| Life Capital Ownership | 15,646,812 | 6,000,000 |
| Life Capital Litigation | 1,450,000 | 0 |
| | | |
| Life Insurance Policies | | |
| Unmatured Policy #1 | 750,000 | 0 |
| Unmatured Policy #2 | 548,621 | 0 |
| Unmatured Policy #3 | 900,000 | 0 |
| Total Life Insurance Policies | 2,198,621 | 0 |
| | | |
| Total Assets | $24,754,400 | $10,491,906 |

# **EXHIBIT C**

**(Liquidation Trust Agreement)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## LIQUIDATION TRUST AGREEMENT AND DECLARATION OF TRUST

This liquidating trust agreement and declaration of trust (the "**Agreement**"), dated as of April __, 2026, is made by and among Bradley D. Sharp in his capacity as chapter 11 trustee (the "**Estate Representative**") of the bankruptcy estate (the "**Estate**") of Leslie Klein (the "**Debtor**") and Bradley D. Sharp ("**Trustee**," and together with the Estate Representative, each, a "**Party**" and collectively, the "**Parties**").

## RECITALS

A.     On February 23, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"), which is styled as In re Leslie Klein, Case No. 2:23-bk-10990-NB.

B.     On April 24, 2023, creditors Erica and Joseph Vago filed a *Motion for Order Dismissing Debtor's Chapter 11 Bankruptcy Case* [Docket No. 79] (the "**Motion to Dismiss**"). On May 17, 2023, at a hearing held on the Motion to Dismiss, the Court ruled that the appointment of a chapter 11 trustee, and not dismissal of the case, was in the best interests of the estate. On May 23, 2023, the United States Trustee filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No. 151], appointing Bradley D. Sharp to serve as chapter 11 Trustee. On May 24, 2023, the UST Filed an *Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154], approved by order entered the same day [Docket No. 155]. On that same day, the Mr. Sharp accepted his appointment as the Estate Representative [Docket No. 156].

C.      On May ▢▢, 2026, the Estate Representative filed the *Plan of Liquidation of the Estate of Leslie Klein* [Docket No. ▢▢▢▢] (as confirmed, the "**Plan**").[1]

D.      On May ▢▢, 2026, the Bankruptcy Court entered an order ("**Confirmation Order**") [Docket No. ▢▢▢] confirming the Plan, which became effective on May ▢▢, 2026 ("**Effective Date**").

E.      The Plan provides for the establishment of the Liquidation Trust ("**Trust**") effective on the Effective Date of the Plan.

F.      The Confirmation Order and Plan provide for the appointment of the Estate Representative as Liquidation Trustee (the "**Trustee**") of the Trust.

G.      The Trust is established for the benefit of the liquidation trust beneficiaries entitled to distributions under the Plan (collectively, "**Beneficiaries**").

H.      The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Liquidation Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

I.      Pursuant to the Plan, the Estate Representative, Trust, Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Estate to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

---

[1] All capitalized terms not defined herein have the meanings used in the Plan.

J.      Pursuant to the Plan, the Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code of 1986, as amended ("**IRC**"), and (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

K.      In accordance with the Plan, the Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## **DECLARATION OF TRUST**

The Estate Representative and the Trustee enter into this Agreement to effectuate the distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to section 8.1 of the Plan, all right, title, and interest in, under, and to the Liquidation Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns, and shall comprise Trust Assets for all purposes;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidation Trust Assets and all other property held from time to time by the Trust under this Agreement and

any proceeds thereof and earnings thereon (collectively, "**Trust Assets**") are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth in the Confirmation Order, the Plan and herein, solely for the benefit of the Beneficiaries and for no other party.

## ARTICLE I

### RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.2     Recitals.  The Recitals are incorporated into and made terms of this Agreement.

1.3     Definitions.  All terms used in this Agreement but not defined herein shall have the meanings set forth in the Plan.

1.4     Interpretation; Headings.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.  References herein to the Trust shall include the Trustee acting on behalf of the Trust.

1.5     Construction of Agreement. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.6     Conflict Among Plan Documents.  In the event of any inconsistency between the Plan and the Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence.

## ARTICLE II

## ESTABLISHMENT OF TRUST

2.1     <u>Effectiveness of Agreement; Name of Trust</u>.  This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Klein Creditors' Liquidation Trust."

2.2     <u>Purpose of Trust</u>.  The Estate Representative and the Trustee, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3     <u>Transfer of Trust Assets</u>.

2.3.1     <u>Conveyance of Liquidation Trust Assets</u>.  Pursuant to the Plan, the Estate Representative hereby grants, releases, assigns, irrevocably transfers, conveys and delivers, and shall be deemed to have effected all of the foregoing, on behalf of the Beneficiaries, the Liquidation Trust Assets to the Trust as of the Effective Date for all purposes, which shall be administered and applied as specified in this Agreement and the Plan.  The Estate Representative shall, from time to time, as and when reasonably requested by the Trust, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Estate Representative shall take or cause to be taken such further action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the

terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

      2.3.2    <u>Title to Trust Assets</u>.    Pursuant to the Plan, all of the Estate's right, title and interest in and to the Liquidation Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date and shall comprise Trust Assets for all purposes, free and clear of all liens, claims, encumbrances and other interests, and such transfer is on behalf of the Beneficiaries to establish the Trust.    The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, pursue all Causes of Action to the extent set forth in the Plan, and pursue, assert and/or and exercise all rights of setoffs and recoupment and defenses of the Estate to any counterclaims that may be asserted by any and all defendants as to any Causes of Action or holders of Disputed Claims.    Without limiting the generality of the foregoing, the Trust shall have the right to invoke section 542 of the Bankruptcy Code to pursue turnover of Trust Assets.    On the Effective Date, the Trust shall be substituted for the Estate or Estate Representative for all purposes with respect to the Trust Assets and administration of Claims and Interests.    The Trust shall be the sole representative of the Estate under section 1123(b)(3) of the Bankruptcy Code with respect to the Trust Assets including, but not limited to, Causes of Action, and shall also be the exclusive trustee of the Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. 6012(b)(3).    To the extent any law or regulation prohibits the transfer of ownership of any of the Liquidation Trust Assets from the Estate to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Liquidation Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in section 2.2, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing

statements or mortgages.  By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4    Capacity of Trust.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5    Cooperation of Estate.  The Estate Representative and his professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Estate to the Trust of administration of the Trust Assets and of creditors' Claims.  Such cooperation shall include, but not be limited to reasonably attempting to identify and facilitate access to (i) any evidence and information the Trust reasonably requests in connection with the Trust's investigation, prosecution or other pursuit, or defense (as applicable) of Causes of Action and objections to Disputed Claims; and (ii) former employees or Professionals of the Debtors with knowledge regarding any Causes of Action.

2.6    Privileges.  In connection with the vesting and transfer of the Liquidation Trust Assets, the Trust shall stand in the same position as the applicable Debtor with respect to any claim the applicable Debtor and/or its Estate may have as to an attorney-client privilege, work-product doctrine, or any other privilege or confidentiality protections attaching to any documents or communications (whether written or oral) relating to the Liquidation Trust Assets, and the Trust shall succeed to all rights of the Estate to hold, preserve, assert, be the beneficiary of, or waive any

such privilege or protection (collectively, "**Privileges**").  As of the Effective Date, all Privileges of the Estate relating to the Liquidation Trust Assets shall be deemed transferred, assigned, and delivered by the Estate to the Trust, without waiver or release, and shall vest in the Trust as Trust Assets. No such Privilege shall be waived by disclosures to the Trust, the Trustee, or the Professionals of the Trust or Trustee, with respect to the Estate's documents, information, or communication subject to attorney-client privilege, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Estate.

2.7    <u>Acceptance by Trustee</u>.  The Trustee accepts its appointment as Liquidation Trustee of the Trust.

<div align="center">

**ARTICLE III**

**ADMINISTRATION OF TRUST**

</div>

3.1    <u>Rights, Powers, and Privileges of Trustee Generally</u>.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Liquidation Trust Assets are transferred to the Trust and become Trust Assets, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.   In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1    <u>Power to Contract</u>.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee

shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

3.2    <u>Powers of Trustee</u>.  Without limiting the generality of the above section 3.1 but subject to section 3.10, in addition to the powers granted in the Plan, without further approval of the Bankruptcy Court or any other party, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1    cause the Trust to hold and maintain legal title to the Trust Assets and to any and all rights of the Debtors and the Beneficiaries in or arising from the Trust Assets;

3.2.2    cause the Trust to receive, maintain, conserve, supervise, prosecute, collect, settle, manage, invest, protect, and where appropriate, abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of section 3.7 hereof;

3.2.3    open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4    cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

3.2.5    collect and liquidate all Trust Assets, including the sale of any Trust Assets;

3.2.6    protect and enforce the rights to the Trust Assets (including any Causes of Action) vested in the Trust by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.7    investigate any Trust Assets and potential Causes of Action, review, reconcile, compromise, settle, or object to Claims of any kind or priority level, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.2.8    cause the Trust to employ or retain professionals, disbursing agents, and other agents, independent contractors and third parties pursuant to this Agreement and pay the reasonable compensation thereof;

3.2.9    cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the Trust Assets, solely out of Trust Assets;

3.2.10    cause the Trust to review, reconcile, enforce, collect, compromise, settle, or elect not to pursue all Causes of Action, including, but not limited to all Avoidance Actions to the extent set forth in the Plan;

3.2.11    calculate and make all Distributions to the holders of Allowed Claims as provided for in, or contemplated by, the Plan and this Agreement;

3.2.12    establish, supplement, adjust, and maintain any necessary distribution or reserves as the Trustee may deem appropriate, including a reserve for Disputed Claims;

3.2.13  cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trust has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.14  in reliance upon the Schedules and the official Claims register maintained in the Chapter 11 Case, review, and where appropriate, cause the Trust to allow or object to Claims, and, supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed Claims required to be administered by the Trust;

3.2.15  in reliance upon the Schedules and the official Claims register maintained in the Chapter 11 Case, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the official Claims register maintained in the Chapter 11 Case;

3.2.16  cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust, and to file any and all remaining tax returns for the Estate, as applicable; provided, however, that notwithstanding any other provision of this Agreement, neither the Trust nor the Trustee shall have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Estate's income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

3.2.17  cause the Trust to abandon or donate to a charitable organization any Trust Assets that the Trust determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.2.18  cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.19  cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.20  cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.21  cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.2.22  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.23  exercise, implement, enforce, and discharge all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.2.24  take all other actions consistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3  <u>Exclusive Authority to Pursue Causes of Action</u>.  The Trust shall have the exclusive right, power, and interest to review, reconcile, enforce, collect, compromise, settle, or elect not to pursue the Causes of Action, including as the sole representative of the Estates under section

1123(b)(3) of the Bankruptcy Code.  The Trust shall be deemed a party in interest with standing

to appear in all matters in the Chapter 11 Case for purposes of section 1109(b) of the Bankruptcy

Code.  The Trust shall be vested with and entitled to assert all setoffs and defenses of the Estate or

the Trust to any counterclaims that may be asserted by any defendant with respect to any Causes

of Action.  The Trust shall also be vested with and entitled to assert all of the Estate's rights with

respect to any such counterclaims, under section 558 of the Bankruptcy Code.

3.4    Abandonment.  Subject to Section 3.10, if, in the Trustee's reasonable judgment,

any non-cash Trust Assets cannot be sold in a commercially reasonable manner or the Trustee

believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries,

the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property,

including by donation of such property to a charitable organization.

3.5    Responsibility for Administration of Claims.  From and after the Effective Date,

the Trust shall become responsible for administering all Claims and paying Distributions to the

holders of Allowed Claims.  The Trust shall have the exclusive right to object to the allowance of

any Claim on any ground, to file, withdraw or litigate to judgment objections to Claims, to settle

or compromise any Disputed Claims without any further notice to or action, order or approval by

the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates.  The Trust shall

also be entitled to assert all of the Debtors' and the Estates rights under, without limitation, section

558 of the Bankruptcy Code.  The Trust may also seek estimation of any Claims under and subject

502(c) of the Bankruptcy Code.

3.6    Agents and Professionals.  The Trustee may, but shall not be required to, consult

with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the

Trustee believes have qualifications necessary to assist in the administration of the Trust.  For the

avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trust from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust. The Trust may pay the reasonable salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of business.

      3.7   <u>Safekeeping and Investment of Trust Assets</u>. All moneys and other assets received by the Trust shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan. Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for Distribution on account of Allowed Claims or payment to the Beneficiaries except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Trust to invest any moneys held by it, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills or short term money market funds; <u>provided</u>, <u>however</u>, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8    <u>Maintenance and Disposition of Trust and Estate Records</u>.  The Trust shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust.  The Trust may, but has no obligation to, engage a claims agent (including, but not limited to, the Claims Agent) to continue to maintain and update the Claims register maintained in the Chapter 11 Case throughout the administration of the Trust.  To the extent of any General Unsecured Claims reflected thereon, the claims register maintained by the Bankruptcy Court will serve as the Trust's register of beneficial interests held by Beneficiaries. The books and records maintained by the Trust and any records of the Estate transferred to the Trust may be disposed of by the Trust at the later of (i) such time as the Trust determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.9    <u>No Bond Required; Procurement of Insurance</u>.  Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

# ARTICLE IV

# DISTRIBUTIONS

4.1     <u>Distribution and Reserve of Trust Assets</u>.  Following the transfer of Trust Assets to the Trust, the Trust shall make continuing efforts on to collect, liquidate, and distribute all Trust Assets, subject to the reserves required under the Plan or this Agreement.

4.1.1     <u>Distributions</u>.  The Trust shall make distributions to the holders of Allowed Claims of the Trust's net Available Cash at least annually, except that, in the Trust's sole discretion, the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust, and retention of such amount may preclude Distributions to holders of Allowed Claims.

4.1.2     <u>Reserves; Pooling of Reserved Funds</u>.   Before any Distribution can be made, the Trust shall, in its reasonable discretion, establish, supplement, and maintain a Liquidation Trust Reserve in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses, the fees and expenses of other professionals.  In accordance with section 3.2.14 of this Agreement and Section 10.4 of the Plan, the Trust may also maintain as necessary a reserve for Disputed Claims with respect to Claims required to be administered by the Trust.  For the avoidance of doubt, the Trust may withhold any Distribution pending the Trust's determination of whether to object to any Claim.   Any such withheld Distribution shall become part of the Trust's reserve for Disputed Claims and shall be distributed to the appropriate Holder no later than the first Distribution Date after a decision is made not to object to the pertinent Claim or the Claim becomes Allowed.  The Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other

and other funds of the Trust; provided, however, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.3    Distributions Net of Reserves and Costs.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the Distributions.

4.1.4    Right to Rely on Professionals.   Without limitation of the generality of section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

4.1.5    Allocation of Distributions.  Except as otherwise provided in the Plan or as otherwise required by law, Distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

4.1.6    Free and Clear Distributions.  Except as otherwise provided in the Plan, any distribution or transfer made under the Plan, including Distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

4.1.7    No Post-Petition Interest.  Unless otherwise specifically provided for in the Plan, or the Confirmation Order, other order of the Bankruptcy Court, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim.

4.2    <u>Method and Timing of Distributions</u>.  Distributions to holders of Allowed Claims will be made from the Trust in accordance with the terms of the Plan (in particular, Section 10) and this Agreement.  The Trust may engage disbursing agents and other Persons to help make Distributions.  For the avoidance of doubt, unless otherwise agreed to by the Trust, no Distribution shall be made on account of any Claim until it becomes an Allowed Claim.

4.3    <u>Withholding from Distributions</u>.  The Trust, in its discretion, may withhold from amounts distributable from the Trust to any holder of an Allowed Claim any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Holder or the Trust with respect to the amount to be distributed to such Holder.  The Trust shall determine such maximum amount to be withheld in its sole, reasonable discretion and distribute to the Holder any excess amount withheld.

4.4    <u>Tax Identification Numbers</u>. The Trustee may require any Holder to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, as a prerequisite to receiving any Distribution under the Plan or this Agreement.  If a Holder does not timely provide the Trustee with its taxpayer identification number within ninety (90) days of first written request, the Holder shall be deemed to have forfeited its right to any current, reserved or future Distributions provided for under the Plan and such Holder's Claim shall be disallowed and expunged without further order of the Bankruptcy Court.  Any such forfeited Distribution shall be deemed to have reverted back to the Plan Trust for all purposes, including for Distributions to other holders of Allowed Claims, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

4.5     Unclaimed and Undeliverable Distributions.  If any Distribution to a Holder is returned to the Trust as undeliverable and/or otherwise remains unclaimed (including, but not limited to, as a result of a voided Distribution check in accordance with section 4.6 of this Agreement and Section 10.5 of the Plan), no further Distributions to such Holder shall be made unless and until the Holder notifies the Trustee of such Holder's then-current address and taxpayer identification number as set forth in Section 10.5 of the Plan. Absent such notification to the Trust such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and all title to and beneficial interest in such undeliverable Distribution shall revert to and/or remain in the Trust automatically and without any need for further order by the Bankruptcy Court, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary, and shall be distributed in accordance with this Article IV and the Plan.  If a Holder timely provides the Trustee the necessary information within timeframe set forth in the Plan, all missed Distributions shall be made to the Holder as soon as is practicable, without interest.

4.5.1     No Responsibility to Attempt to Locate Beneficiaries.  The Trust may, in its sole discretion, attempt to determine a Holder's current address or otherwise locate a Holder, but nothing in this Agreement or the Plan shall require the Trust to do so.

4.5.2     Disallowance of Claims; Cancellation of Corresponding Beneficial Interests.  All Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Trust for all purposes (including, but not limited to, for Distribution to holders of other Allowed Claims) pursuant to section 9 of the Plan shall be deemed disallowed and expunged without further action by the Trust or Trustee and without further order of the Bankruptcy Court, and the corresponding beneficial interests in the Trust of any Beneficiary holding such disallowed Claims shall be deemed canceled.  The Holder with respect to any such

disallowed Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such Claim, and further, such Holder is forever barred, estopped, and enjoined from receiving any Distributions under the Plan or this Agreement and from asserting such disallowed Claim against the Trust or Trustee.

   4.5.3 <u>Inapplicability of Escheat, Abandoned or Unclaimed Property Laws</u>. Unclaimed property held by the Trust shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, any state, or any local governmental unit.

   4.6 <u>Conflicting Claims</u>.  If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trust shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

   4.6.1 The Trust may elect to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

   4.6.2 The Trust shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the

satisfaction of the Trust which agreement shall include a complete release of the Trust and Trustee. Until the Trust receives written notice that one of the conditions of the preceding sentence is met, the Trust may deem and treat as the absolute owner under this Agreement of the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trust.  The Trust may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.6.3    In acting or refraining from acting under and in accordance with this section 4.7 of the Agreement, the Trust and Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.7    <u>Priority of Expenses of Trust</u>.  The Trust must reserve for or pay all of its expenses, including the Liquidation Trust Reserve, before making Distributions.

## ARTICLE V

## BENEFICIARIES

5.1    <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or the Debtor to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a beneficial interest herein which shall, subject to section 4.1 of this Agreement and subject to the Plan, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan.

5.3    <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust.

5.4    <u>No Right to Accounting</u>.  Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trust shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Trust at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Trust Assets.

5.5    <u>No Standing</u>.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

5.6    <u>Requirement of Undertaking</u>.  The Trust may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this section 5.6 shall not apply to any suit by the Trust or Trustee.

5.7    <u>Limitation on Transferability</u>.  It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trust, and the Trust may continue to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trust may rely upon such proof without the requirement of any further investigation.

5.8     Exemption from Registration.  The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

5.9     Delivery of Distributions.  Subject to the terms of this Agreement, the Trust shall make Distributions to Beneficiaries in the manner provided in the Plan.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Trustee.   In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets.  There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2     Limitation of Trustee Liability.  In exercising the rights granted herein, the Trustee shall exercise its best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee nor any of its respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether

sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. In no event shall the Trustee be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability provisions set forth in the Plan, including, but not limited to section 8.1 of the Plan, and the Trustee shall be entitled to the benefits of the limitation of liability provisions set forth in the Confirmation Order.

6.3     No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     No Liability for Acts of Predecessors. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment. Neither the Trust nor the Trustee shall be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trust or Trustee (as applicable) was grossly negligent in ascertaining the pertinent facts.

6.6     Reliance by Trust or Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trust and Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice,

request, consent, order or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.  The Trust and/or the Trustee may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in reliance upon the advice of such counsel, agents, or advisors.

6.7    No Liability For Acts Approved by Bankruptcy Court.  The Trust shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust and the Claims required to be administered by the Trust.  Neither the Trust nor the Trustee shall be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.8    No Personal Obligation for Trust Liabilities.  Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9    Indemnification.  The Trustee and its respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals and other representatives, each in their representative capacity as such, and any of such Person's successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in

connection with the exercise or performance of any of the Trust's or Trustee's respective powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or Trustee, including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

6.9.1    Expense of Trust; Limitation on Source of Payment of Indemnification.  All indemnification liabilities of the Trust under this section 6.9 shall be Liquidation Trust Reserve. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust.  Neither the Trustee nor its members shall be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay.  The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party.  By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10    <u>No Implied Obligations</u>.  The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

6.11    <u>Confirmation of Survival of Provisions</u>.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII

### TAX MATTERS

7.1    <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust.  The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

7.2    <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

7.3    <u>Tax Treatment of Reserves for Disputed Claims</u>.  The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any Distribution

Reserve, including (i) filing a tax election to treat any and all Distribution Reserves as a Disputed Ownership Fund ("**DOF**") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any Distribution Reserve as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

7.4    <u>Valuation of Trust Assets</u>.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trust shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trust's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE VIII

### SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE

8.1    <u>Initial Trustee</u>.  The Trustee has been selected by the terms of the Plan and is appointed effective as of the Effective Date.  The Initial Trustee shall be Bradley D. Sharp.

8.2    <u>Term of Service</u>.  The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, dissolution, incapacity, liquidation or removal.  In the event that the Trustee's appointment terminates by

reason of resignation, death, dissolution, incapacity, liquidation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

8.3    Removal of Trustee.  Any Person serving as Trustee may be removed at any time for cause by Order of the Bankruptcy Court.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.4    Resignation of Trustee.  The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court.  The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty days (30) after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee. In the event of a resignation, the resigning Trustee shall render to the U.S. Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

8.5    Appointment of Successor Trustee.    Upon the resignation, death, dissolution, incapacity, liquidation or removal of a Trustee, the Advisory Committee may unanimously designate a successor Trustee upon notice to the Bankruptcy Court.   Any party in interest (including, in the case of resignation, the Trustee) may file a motion in the Bankruptcy Court to appoint a successor trustee if the Advisory Committee fails to designate one.  In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed (a) shall consent to and accept his, her or its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her or its appointment as successor Trustee and (b) shall

not have any liability or responsibility for the acts or omissions of any predecessor(s). Any successor Trustee may be appointed to serve only on an interim basis.

8.6    <u>Powers and Duties of Successor Trustee</u>. A successor Trustee shall have all the rights, privileges, powers, and duties of his, her or its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7    <u>Trust Continuance</u>. The resignation, death, dissolution, incapacity, liquidation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8    <u>Compensation of Trustee and Costs of Administration</u>. The Trustee shall be compensated at his current hourly rate. for its services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Trust Assets. As of January 2026, the Trustee's hourly rate is $865.00 and his hourly rate changes on an annual basis. All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust as Liquidation Trust Reserve from the Trust Assets prior to any Distribution to holders of Allowed Claims.

## ARTICLE IX

## DURATION OF TRUST

9.1    <u>Duration</u>. Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2    <u>Termination on Payment of Trust Expenses and Distribution of Trust Assets</u>. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the

Trust, and the Distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3     <u>Termination after Five Years</u>.  If the Trust has not been previously terminated pursuant to section 9.2 hereof, on the fifth (5th) anniversary of the Effective Date, unless the Trust term has been extended, the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement.

9.4     <u>No Termination by Beneficiaries</u>.  The Trust may not be terminated at any time by the Beneficiaries.

9.5     <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its and the Trust's responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the Distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE X

## MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>.  The rights and remedies provided in this

Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail,

email (if available), or may be delivered personally, at the addresses for such Beneficiaries

appearing on their respective proofs of claim.  Any notice or other communication which may be

or is required to be given, served, or sent to the Trust or Trustee shall be in writing and shall be

sent by email, by registered or certified United States mail, return receipt requested, postage

prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as

follows:

> If to the Trust or Trustee:
>
> Bradley D. Sharp
> Address
> City, State
> Attn: _____
> Email: _____
>
> with a copy to its counsel:
>
> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Boulevard, 13th Floor
> Los Angeles, CA 90067
> Attn: John W. Lucas
> Email: jlucas@pszjlaw.com

or to such other address as may from time to time be provided in written notice by the Trust.

10.3    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance

with the laws of the State of California, without giving effect to rules governing the conflict of

laws.

10.4    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6    <u>Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan and this Agreement.

10.7    <u>Amendment</u>.  This Agreement may be amended by written agreement of the Trustee and the Debtors or by order of the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

10.8    <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

10.10    <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants

and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.11   <u>Further Assurances</u>.   Without limitation of the generality of section 2.5 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12   <u>Counterparts</u>.   This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13   <u>Jurisdiction</u>.   The Bankruptcy Court shall have jurisdiction regarding the Debtor, Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.   The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust.   The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of

the Bankruptcy Court shall instead mean an order or decision of such other court of competent

jurisdiction.

        IN WITNESS WHEREOF, the Parties have or are deemed to have executed this

Agreement as of the day and year written above.

        ESTATE OF LESLIE KLEIN


        By:_____


        Name:  Bradley D. Sharp_____


        Title:  Chapter 11 Trustee_____



        Bradley D. Sharp, not individually but solely in its capacity as
        Trustee under this Agreement

        By:_____


        Name:  Bradley D. Sharp_____


        Title:  Trustee of Liquidation Trust_____