Jeffrey W. Dulberg (CA Bar No. 181200)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile:  310-201-0760
Email:  jdulberg@pszjlaw.com
          jlucas@pszjlaw.com

Counsel to Bradley D. Sharp, Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>          Debtor. | Case No. 2:23-bk-10990-NB<br><br>Chapter 11<br><br>**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION OF THE ESTATE OF LESLIE KLEIN; DECLARATION OF BRADLEY D. SHARP IN SUPPORT THEREOF**<br><br><u>Confirmation Hearing</u><br><br>Date:       April 21, 2026<br>Time:      2:00 p.m.<br>Courtroom: 1545<br><br>Judge:   Hon. Neil W. Bason |

Bradley D. Sharp, the duly appointed chapter 11 trustee (the "***Trustee***") in the above-captioned bankruptcy case of Leslie Klein (the "***Debtor***"), hereby files this brief in support of confirmation of the *Chapter 11 Trustee's Plan of Liquidation of the Estate of Leslie Klein* [Docket No. 1311] (as may be amended, modified, or supplemented from time to time, the "***Plan***").[1]

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4927-1273-2059.3 78512.001

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................1

        A.      General Background .................................................................................1

        B.      Plan Overview .........................................................................................2

        C.      The Disclosure Statement and Solicitation ............................................5

        D.      Vote Tabulation .......................................................................................6

III.    JURISDICTION, VENUE, AND STATUTORY PREDICATES .........................7

IV.     THE PLAN SATISFIES EACH REQUIREMENT FOR CONFIRMATION ....................7

        A.      The Plan Complies With the Applicable Provisions  of the Bankruptcy
                Code (11 U.S.C. § 1129(a)(1)) ................................................................8

                1.      The Plan Satisfies the Classification Requirements of Section 1122. ..........8

                2.      The Plan Satisfies the Mandatory Plan Requirements of
                        Sections 1123(a)(1)-(a)(8). ........................................................9

                3.      The Plan Complies With the Applicable Provisions of the
                        Bankruptcy Code (11 U.S.C. § 1129(a)(2) .................................11

                4.      The Trustee is Authorized to File the Plan Under Section 1121 .................12

                5.      The Trustee Complied with the Disclosure Statement and Solicitation
                        Requirements of Section 1125 ..............................................12

                6.      The Trustee Complied With the Plan Acceptance Requirements of
                        Section 1126 ...........................................................................13

        B.      The Plan Has Been Proposed in Good Faith and Not by Any  Means
                Forbidden by Law (11 U.S.C. § 1129(a)(3)). ......................................14

        C.      The Plan Provides for Bankruptcy Court Approval of Certain Administrative
                Payments (11 U.S.C. § 1129(a)(4)) ......................................................15

        D.      Post-Effective Date Directors and Officers Are Disclosed and Their
                Appointment Is Consistent With Public Policy (11 U.S.C. § 1129(a)(5)) ..............16

        E.      The Plan Does Not Require Governmental Regulatory Approval of
                Rate Changes (11 U.S.C. § 1129(a)(6) ................................................16

        F.      The Plan Is in the Best Interests of Creditors and Interest Holders
                (11 U.S.C. § 1129(a)(7)) ......................................................................17

        G.      The Plan Complies With Statutorily Mandated Payment of Priority
                Claims (11 U.S.C. § 1129(a)(9)) ..........................................................18

        H.      Each Impaired Class of Claims Entitled to Vote Has Accepted the Plan,
                Excluding the Acceptances of Insiders (11 U.S.C. § 1129(a)(10)) ........................19

        I.      The Plan Is Feasible (11 U.S.C. § 1129(a)(11)) ...................................20

        J.      The Plan Provides for the Payment of All Fees under 28 U.S.C. § 1930
                (11 U.S.C. § 1129(a)(12)) ....................................................................21

        K.      The Plan Requirement for Payment of  Retiree Benefits Is Not Implicated.
                (11 U.S.C. § 1129(a)(13)) ....................................................................21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

L.      Sections 1129(a)(14) and 1129(a)(15) ....................................................................22

M.      The Plan Provides That Any Transfer of Property Will Be in Compliance
With Applicable Non-Bankruptcy Law, Subject to Bankruptcy Court
Oversight (11 U.S.C. § 1129(a)(16)) ....................................................................22

V.      THE DISCRETIONARY CONTENTS OF THE PLAN SHOULD BE
APPROVED ....................................................................................................................22

A.      The Rejection of the Executory Contracts and Unexpired Leases
Under the Plan Should Be Approved .....................................................................23

B.      The Plan's Exculpation Provisions Are Appropriate and Should
Be Approved ..........................................................................................................24

C.      The Plan's Injunction Provision ...........................................................................26

VI.     CONCLUSION ...............................................................................................................28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TABLE OF AUTHORITIES**

**CASES**

*Barakat v. Life Ins. Co. of Va. (In re Barakat)*
  99 F.3d 1520 (9th Cir. 1996)...................................................................................................... 8
*Blixseth v. Credit Suisse*
  961 F.3d 1074 (9th Cir. 2020)................................................................................................... 25
*Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*
  311 B.R. 530 (B.A.P. 9th Cir. 2004) ........................................................................................ 12
*Durkin v. Benedor Corp. (In re G.I. Indust., Inc.)*
  204 F.3d 1276 (9th Cir. 2000) .................................................................................................. 23
*Garvin v. Cook Invs. NW, SPNWY, LLC*
  922 F.3d 1031 (9th Cir. 2019).................................................................................................. 14
*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II)*
  994 F.2d 1160 (5th Cir. 1993) .................................................................................................... 7
*In re Am. Hardwoods*
  885 F.2d 621 (9th Cir. 1989) .................................................................................................... 27
*In re Ambanc La Mesa Ltd. P'ship*
  115 F.3d 650 (9th Cir. 1997) ...................................................................................................... 7
*In re Art & Architecture Books of the 21st Century*
  No. 2:13-bk-14135-RK, 2016 Bankr. LEXIS 859, at *40 (Bankr. C.D. Cal.
  Mar. 18, 2016).......................................................................................................................... 12
*In re Astria* Health
  623 B.R. 793 (Bankr, E.D. Wash. 2021)........................................................................ 22, 25, 26
*In re Bally Total Fitness of Greater N.Y., Inc.*,
  2007 Bankr. LEXIS 4729, at *12 (Bankr. S.D.N.Y. Sept. 17, 2007) ........................................... 7
*In re Cal. Fidelity, Inc.*
  198 B.R. 567 (B.A.P. 9th Cir. 1996) ........................................................................................ 12
*In re Chemtura Corp.*
  439 B.R. 561 (Bankr. S.D.N.Y. 2010) ...................................................................................... 14
*In re Chi-Feng Huang*
  23 B.R.798 (B.A.P. 9th Cir. 1982) ........................................................................................... 23
*In re Claar Cellars LLC*
  623 B.R. 578 (Bankr. E.D. Wash. 2021)......................................................................... 14, 20, 22
*In re Dow Corning Corp.*
  255 B.R. 445 (E.D. Mich. 2000) .............................................................................................. 27
*In re Downtown Inv. Club III*
  89 B.R. 59 (B.A.P. 9th Cir. 1988) ............................................................................................ 11
*In re Eagle-Picher Indus., Inc.*
  203 B.R. 256 (Bankr. S.D. Ohio 1996) ..................................................................................... 15
*In re Elsinore Shore Assocs.*
  91 B.R. 238 (Bankr. D. N.J. 1988) ........................................................................................... 16
*In re First Magnus Fin. Corp.*
  No. 4:07-bk-01578-JMM, 2008 Bankr. LEXIS 5126, at *16 (Bankr. D. Ariz.
  Feb. 15, 2008)........................................................................................................................... 20
*In re Johns-Manville Corp.*
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*,
  78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 ................................................................... 11
*In re Leslie Fay Cos.*
  207 B.R. 764 (Bankr. S.D.N.Y. 1997) ...................................................................................... 15
*In re Madison Hotel Assocs.*
  749 F.2d 410 (7th Cir. 1984)..................................................................................................... 14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*In re Mirant Corp.*
   No. 03-46590-DML-11, 2007 Bankr. LEXIS 4951, at *20 (Bankr. N.D. Tex.
   Apr. 27, 2007) ............................................................................................................... 8
*In re Parks Lumber Co., Inc.*
   19 B.R. 285 (Bankr. W.D. La. 1982) ........................................................................... 16
*In re Pomona Valley Med. Grp.*
   476 F.3d 665 (9th Cir. 2007) ....................................................................................... 23
*In re Rexford Props., LLC*
   558 B.R. 352 (Bankr. C.D. Cal. 2016) .......................................................................... 8
*In re Station Casinos, Inc.*
   Nos. BK-09-52477, BK 09-52470, BK 09-52487, BK 10-50381, 2010 Bankr.
   LEXIS 5365, at *336 (Bankr. D. Nev. Aug. 27, 2010) ............................................... 19
*In re Stearns Holdings, LLC*
   607 B.R. 781 (Bankr. S.D.N.Y. 2019) ......................................................................... 25
*In re Sylmar Plaza, L.P.*
   314 F.3d 1070 (9th Cir. 2002) ..................................................................................... 14
*In re U.S. Truck Co.*
   47 B.R. 932 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986) ......................... 20
*In re W. Asbestos Co.*
   313 B.R. 832 (Bankr. N.D. Cal. 2003) ......................................................................... 26
*In re Warren*
   89 B.R. 87 (B.A.P. 9th Cir. 1988) ................................................................................ 15
*In re Worldcom, Inc.*
   2003 Bankr. LEXIS 1401, at * 158-59 (Bankr. S.D.N.Y. Oct. 31, 2003) ................... 16
*In re Yellowstone Mountain Club, LLC*
   460 B.R. 254 (Bankr. D. Mont. 2011) .......................................................................... 25
*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
   843 F.2d 636 (2d Cir. 1988) ........................................................................................... 8
*Lazo v. Roberts*
   No. CV15-7037-CAS(PJWx), 2016 U.S. Dist. LEXIS 21956, at *21 (C.D. Cal.
   Feb. 22, 2016) .............................................................................................................. 25
*Meritage Homes of Nev. Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC)*
   478 B.R. 403 (D. Nev. 2012) ....................................................................................... 25
*Navellier v. Sletten*
   262 F.3d 923 (9th Cir. 2001) ....................................................................................... 23
*NLRB v. Bildisco & Bildisco*
   465 U.S. 513 (1984) ..................................................................................................... 23
*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*
   761 F.2d 1374 (9th Cir. 1985) ..................................................................................... 20
*Ryan v. Loui (In re Corey)*
   892 F.2d 829 (9th Cir. 1989) ....................................................................................... 14
*Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*
   84 B.R. 167 (B.A.P. 9th Cir. 1988) ............................................................................. 14
*WCI Cable, Inc.*
   282 B.R. 282 B.R. 457 (Bankr. D. Or. 2002) .............................................................. 27

**STATUTES**

11 U.S.C. § 105(a) ............................................................................................................. 27
11 U.S.C. § 365 ................................................................................................................. 23
11 U.S.C. § 365(a) ............................................................................................................. 23
11 U.S.C. § 507(a) ............................................................................................................. 19
11 U.S.C. § 1121 ............................................................................................................... 11
11 U.S.C. § 1122 ............................................................................................................. 7, 8
11 U.S.C. § 1123 ............................................................................................................. 7, 8
11 U.S.C. § 1123(a) ............................................................................................................. 9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4927-1273-2059.3 78512.001                          iv

11 U.S.C. § 1123(a)(1) ......................................................................................................... 10
11 U.S.C. § 1123(a)(2) ......................................................................................................... 10
11 U.S.C. § 1123(a)(3) ......................................................................................................... 10
11 U.S.C. § 1123(a)(5) ......................................................................................................... 10
11 U.S.C. § 1123(a)(6) ......................................................................................................... 10
11 U.S.C. § 1123(a)(7) ......................................................................................................... 10
11 U.S.C. § 1123(a)(8) ......................................................................................................... 11
11 U.S.C. § 1123(b) ............................................................................................................. 22
11 U.S.C. § 1123(b)(6) ......................................................................................................... 22
11 U.S.C. § 1125 ................................................................................................. 7, 8, 11, 12
11 U.S.C. § 1125(b) ............................................................................................................. 12
11 U.S.C. § 1126 ........................................................................................................... passim
11 U.S.C. § 1126(c) ............................................................................................................. 13
11 U.S.C. § 1126(d) ............................................................................................................. 13
11 U.S.C. § 1126(f) ............................................................................................................. 13
11 U.S.C. § 1127 ................................................................................................................. 7, 8
11 U.S.C. § 1129 ................................................................................................................. 7, 8
11 U.S.C. § 1129(a)(1) ........................................................................................................... 8
11 U.S.C. § 1129(a)(2) ......................................................................................................... 11
11 U.S.C. § 1129(a)(3) ..................................................................................................... 14, 15
11 U.S.C. § 1129(a)(4) ......................................................................................................... 16
11 U.S.C. § 1129(a)(5) ......................................................................................................... 16
11 U.S.C. § 1129(a)(5)(A)(i) ................................................................................................. 16
11 U.S.C. § 1129(a)(5)(A)(ii) ................................................................................................ 16
11 U.S.C. § 1129(a)(6) ......................................................................................................... 17
11 U.S.C. § 1129(a)(7) ......................................................................................................... 17
11 U.S.C. § 1129(a)(7)(i) ...................................................................................................... 17
11 U.S.C. § 1129(a)(9) ..................................................................................................... 18, 19
11 U.S.C. § 1129(a)(9)(A) ..................................................................................................... 18
11 U.S.C. § 1129(a)(9)(D) ..................................................................................................... 19
11 U.S.C. § 1129(a)(10) ................................................................................................... 19, 20
11 U.S.C. § 1129(a)(11) ......................................................................................................... 20
11 U.S.C. § 1129(a)(12) ......................................................................................................... 21
11 U.S.C. § 1129(a)(13) ......................................................................................................... 22
11 U.S.C. § 1129(a)(14) ......................................................................................................... 22
11 U.S.C. § 1129(a)(15) ......................................................................................................... 22
28 U.S.C. § 157(b)(2) ............................................................................................................. 7
28 U.S.C. § 1141(d)(5) ........................................................................................................... 3
28 U.S.C. § 1408 ................................................................................................................... 7
28 U.S.C. § 1409 ................................................................................................................... 7
28 U.S.C. § 1930(a)(6) ........................................................................................................... 21
31 U.S.C. § 3717 ................................................................................................................... 21

**OTHER AUTHORITIES**

5 Collier on Bankruptcy 1129.02[11]  (15th ed. 1984) ......................................................... 20
7 Collier on Bankruptcy P 1129.02 (16th 2022) .................................................................... 8
H.R. Rep. No. 95-595, at 412 (1977) ............................................................................... 8, 11
S. Rep. 12 No. 95-989, at 126 (1978) ............................................................................. 8, 11

**RULES**

Fed. R. Bankr. Proc. 3020(b)(2) ........................................................................................... 15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4927-1273-2059.3 78512.001                                        v

# I.

## INTRODUCTION

Since his appointment, in accordance with his duties, the Trustee has administered the chapter 11 estate's (the "*Estate*") assets in order to maximize their value for the benefit of the Estate's creditors. Notwithstanding the fact that the Debtor maintains wholly inadequate records and has vexatiously attempted to thwart the Trustee at multiple junctures, the Trustee has advanced on a variety of fronts. The Trustee initiated litigation against numerous parties including the Debtor and certain family members; remediated and preserved real properties; marketed certain properties for sale; and conducted sale processes with respect thereto. Moreover, the Trustee has reviewed all proofs of claim filed against the Estate leading to significant reductions to the total claim pool.

The Plan provides for the establishment of a Liquidating Trust that will identify and monetize the Estate's remaining assets. Holders of Allowed Claims will receive beneficial interests in the Liquidating Trust in satisfaction of their Allowed Claims against the Estate. The Liquidating Trustee will distribute net proceeds from the Liquidating Trust as further described in the Plan. The Debtor will not receive a bankruptcy discharge in connection with the Plan.

As set forth more fully below, the Plan meets all requirements for confirmation under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"). No objections to confirmation of the Plan have been filed.

Based on the foregoing, and as set forth below, the Plan is proposed in good faith and confirmation is warranted as a matter of law.

# II.

## FACTUAL BACKGROUND

### A.     General Background

On February 22, 2023, the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4927-1273-2059.3 78512.001                    1

On April 24, 2023, creditors Erica and Joseph Vago filed a Motion for Order Dismissing Debtor's Chapter 11 Bankruptcy Case (the "***Motion to Dismiss***") [Docket No. 79]. On May 17, 2023, at a hearing held on the Motion to Dismiss, the Court ruled that the appointment of a chapter 11 trustee, and not dismissal of the Case, was in the best interests of the estate. On May 23, 2023, the Office of the United States Trustee (the "***UST***") filed a Notice of Appointment of Chapter 11 Trustee [Docket No. 151], appointing Bradley D. Sharp to serve as chapter 11 trustee.

On May 23, 2023, the UST filed an Application for Order Approving Appointment of Trustee and Fixing Bond [Docket No. 154], approved by order entered the same day [Docket No. 155]. On that same day, the Trustee accepted his appointment [Docket No. 156].

The Debtor is an attorney, a certified public accountant, and a serial "affinity" fraudster. He spent years preying upon members of his own Orthodox Jewish community – in many instances, his victims are Holocaust survivors – and he filed his chapter 11 case for the sole purpose of staying numerous litigations against him resulting from his misappropriation of funds from numerous trusts to the detriment of the trusts' beneficiaries. Additional information about the history of the Debtor is set forth in the *Disclosure Statement In Support of Chapter 11 Trustee's Plan of Liquidation of the Estate of Leslie Klein* [Docket No. 1312] (the "***Disclosure Statement***"), which is incorporated herein by reference.

**B.      Plan Overview**

The Plan provides for the establishment of a Liquidation Trust on the Effective Date for the primary purpose of administering and liquidating the Liquidation Trust Assets and for the secondary purposes of, *inter alia*, (a) analyzing and pursuing Causes of Action (b) identifying any undisclosed assets of the Estate, (c) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (d) making all Distributions provided for under the terms of the Plan. The Liquidation Trust shall be under the direction and control of the Liquidation Trustee, as trustee of the Liquidation Trust.

On the Effective Date, all of the Estate's assets shall vest in the Liquidation Trust and the Liquidation Trustee shall be empowered to identify any assets of the Estate that were not disclosed and take the necessary action to liquidate such assets pursuant to the terms of this Plan. Subject to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

section 1141(d)(5) of the Bankruptcy Code and Section 13 of the Plan, the Plan contemplates liquidation of the Estate's Assets and the distribution of the net proceeds thereof to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan in satisfaction of the Claims against the Estate; *provided*, *however*, (a) to the extent the Debtor is subject to a Non-Dischargeable Claim, the Plan does not provide a discharge for such claims and (b) the Plan **does not** provide the Debtor with a discharge for claims that are not Non-Dischargeable Claims.

Except to the extent that a holder of a Class 1 claim ("***Other Priority Claims***") has agreed to a different treatment of such claim, each such holder, shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the Trustee or the Liquidation Trustee and the Holder of the Allowed Other Priority Claim.

Each holder of a Class 2 claim ("***Secured Tax Claims***") shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the Trustee or the Liquidation Trustee and the Holder of the Secured Tax Claim. The Trustee and the Liquidation Trustee (after the Effective Date) specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid, pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims.

Each holder of a Class 3 claim (the "***Gestetner Secured Claim***") shall, on the later of the Effective Date or the date on which Life Capital Group ("***LCG***") makes a distribution to the Estate or the Liquidating Trustee on account of the Debtor's equity interest in LCG, receive 50% of the distribution made to the Estate or the Liquidating Trust, as the case may be, from LCG until the Gestetner Secured Claim held by the Gestetners is paid in full.

Each holder of a Class 3(a) claim ("***Other Secured Claims***") shall, on the Effective Date, or as soon as reasonably practicable thereafter, receive the collateral in which such Holder has a security interest or lien; *provided, however*, if such action was already undertaken prior to the Petition Date, in response to a stay relief request, by the Estate's abandonment, or other similar action then the Liquidation Trustee need not take any further action; provided, further, upon the request of a holder of an Allowed Class 3(a) Other Secured Claim it may elect to receive such other and less favorable distributions or treatments as may be agreed upon by and between the Holder of the Allowed Class 3(a) Claim and the Liquidation Trustee.

Except to the extent that a holder of a Class 4 general unsecured claim ("***Allowed Class 4 Claim")*** agrees to a different treatment of such Claim, each holder of an Allowed Class 4 Claim will receive its *pro rata* share of the liquidated Liquidating Trust Assets as soon as practicable as determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement; provided, however, any Allowed Class 4 Claim that is subordinated shall not receive any distribution unless and until all holders of Allowed Class 4 Claims are paid in full or otherwise agree that their Claims have been satisfied. The Plan preserves the rights to dispute the validity of any Class 4 Claim, whether or not objected to prior to the Effective Date; provided, however, any Class 4 Claim that has been settled pursuant to a Bankruptcy Court order shall not be subject to further objection by the Liquidating Trustee or any party in interest.

The Plan provides for the resolution and satisfaction of all claims and interests in the Debtor's Estate.  The Liquidation Trustee will be appointed on the Effective Date in order to facilitate monetizing all of the Estate's assets, which consist of mainly real properties, interests in life insurance policies, and cash and causes of action.  Distribution of the net proceeds will be made to holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan and Bankruptcy Code.

The Plan further provides that the Effective Date shall not occur and the Plan shall not be consummated unless certain conditions, as set forth in Section 17 of the Plan, are satisfied or otherwise waived.  These conditions precedent include, but are not limited to, (i) entry of the

Confirmation Order and such Confirmation Order is not subject to a stay, (ii) the Liquidation Trustee and the Trustee having signed the Liquidation Trust Agreement; (iii) the funding of the Professional Fee Escrow Account having occurred and (iv) no material adverse effect having occurred in respect of the assets.  The Trustee anticipates that he will either satisfy all of the conditions precedent or that the relevant parties will waive any condition that has not otherwise been met.

**C.        The Disclosure Statement and Solicitation**

On December 15, 2025, the Trustee filed the Plan [Docket No. 1282] and Disclosure Statement [Docket No. 1283].

On January 6, 2026, the Trustee filed the *Notice of Motion and Motion of Chapter 11 Trustee for Order: (1) Approving the Disclosure Statement; (2) Approving Plan Solicitation, Notice, and Voting Procedures; (3) Approving Forms of Notice and Ballots; and (4) Establishing Plan Confirmation Deadlines and Procedures* [Docket No. 1286] (the "**Solicitation Procedures Motion**").

On February 27, 2026, the Trustee filed the following: (i) *Notice of Revised Form of Confirmation Hearing Notice and Revised Form of Ballots Regarding the Disclosure Statement in Support of the Plan of Liquidation of the Estate of Leslie Klein (*the "**Revised Confirmation Hearing Notice and Form of Ballots**")  [Docket No. 1310], (ii) the amended *Chapter 11 Plan of Liquidation of the Estate of Leslie Klein* (the "**First Amended Plan**") [Docket No. 1311], and (iii) the amended *Disclosure Statement in Support of Chapter 11 Trustee's Plan of Liquidation of the Estate of Leslie Klein* [Docket No. 1312].

On March 2, 2026, following notice and a hearing, the Court entered an order approving the Disclosure Statement [Docket No. 1316] (the "**Solicitation Procedures Order**").

On March 3, 2026, the Trustee filed a *Notice of Filing of Blackline Versions of Chapter 11 Trustee's Plan of Liquidation of the Estate of Leslie Klein and Disclosure Statement in Support of the Plan* [Docket No. 1319].

On March 30, 2026, the Trustee filed the *Chapter 11 Trustee's Second Amended Plan of Liquidation of the Estate of Leslie Klein* [Docket No. 1346] (the "**Second Amended Plan**"), and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4927-1273-2059.3 78512.001                                5

the *Notice of Filing of Chapter 11 Trustee's Second Amended Plan of Liquidation of the Estate of Leslie Klein* [Docket No. 1347], attaching a blackline comparison of the Second Amended Plan marked against the First Amended Plan.

On April 6, 2026, the Trustee filed the *Chapter 11 Trustee's Third Amended Plan of Liquidation of the Estate of Leslie Klein* [Docket No. 1350] (the "**Third Amended Plan**"), and the *Notice of Filing of Chapter 11 Trustee's Third Amended Plan* [Docket No. 1351], attaching a blackline comparison of the changes made in the Third Amended Plan as against the Second Amended Plan.

**D.    Vote Tabulation**

Pursuant to the terms of the Solicitation Procedures Order, the deadline to file objections to the Plan was April 7, 2026, and the deadline for all Holders of Claims entitled to vote on the Plan to cast their ballots was April 13, 2026 (the "**Voting Deadline**").[1] All classes of creditors entitled to vote have voted in favor of confirmation.

On April 14, 2026, the Trustee filed the *Certification With Respect to the Tabulation of Votes on the Chapter 11 Plan of Liquidation of the Estate of Leslie Klein* [Docket No. 1360] (the "**Voting Certification**").

In accordance with the Solicitation Procedures Order, after the Voting Deadline, Pachulski Stang Ziehl & Jones LLP, in its capacity as voting agent, tabulated the votes to accept or reject the Plan reflected in the ballots received on or before the Voting Deadline. *See* Voting Cert. at ¶ 5. As set forth in the Voting Certification and as set forth in the table below, each class eligible to vote on the Plan voted overwhelmingly to accept the Plan:

| Class | ($) Value | Count | Result |
| --- | --- | --- | --- |
| 3 (Gestetner Secured Claim – includes A. Gestetner Family Trust and Gestetner Charitable Remainder Unitrust) | Accept: $2,494,105.67 (100%) Reject:  N/A | 1 (100%) N/A | Accepts |

---

[1] *See* Notice of Extending Voting Deadline to accept or reject the Plan [Docket No. 1349].

| 4 (General Unsecured Claims) | Accept: $21,080,769.76 (99.96%)<br>Reject:         $7,555.65   (0.04%) | 3 (75%)<br>1 (25%) | Accepts<br>Rejects |
|---|---|---|---|

The hearing on confirmation of the Plan is scheduled to occur on April 21, 2026, at 2:00 p.m. (Pacific Time).

## III.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157.

This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Trustee seeks an order confirming the Plan and the statutory predicates for such relief are sections 1122, 1123, 1125, 1126, 1127, and 1129 of the Bankruptcy Code.

## IV.

## THE PLAN SATISFIES EACH REQUIREMENT FOR CONFIRMATION

To confirm the Plan, the plan proponent must demonstrate by a preponderance of the evidence that he has satisfied the provisions of section 1129. *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir. 1997) ("The bankruptcy court *must* confirm a Chapter 11 debtor's plan if the debtor proves by a preponderance of the evidence" that the plan meets the requirements of section 1129.) (emphasis added); *see also Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) ("The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under section 1129(a) and in a cramdown.");  *In re Bally Total Fitness of Greater N.Y., Inc.*, 2007 Bankr. LEXIS 4729, at *12 (Bankr. S.D.N.Y. Sept. 17, 2007) ("The Debtors, as proponents of the Plan, have the burden of proving the satisfaction of the elements of Sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence."). Here, the Plan complies with all relevant sections of the Bankruptcy Code, including sections 1122, 1123,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1125, 1126, 1127, and 1129, as well as the Bankruptcy Rules and applicable non-bankruptcy law. This memorandum addresses each requirement individually.

**A.    The Plan Complies With the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))**

Section 1129(a)(1) requires that a chapter 11 plan "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1).  The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 including, principally, rules governing classification of claims and interests and the contents of a chapter 11 plan.  S. Rep. 12 No. 95-989, at 126 (1978); H.R. Rep. No. 95-595, at 412 (1977); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988) (suggesting Congress intended the phrase "'applicable provisions' in [section 1129(a)(1)] to mean provisions of Chapter 11 . . . such as section 1122"); *see also In re Mirant Corp.*, No. 03-46590-DML-11, 2007 Bankr. LEXIS 4951, at *20 (Bankr. N.D. Tex. Apr. 27, 2007) (noting that objective of section 1129(a)(1) is to assure compliance with sections of Bankruptcy Code governing classification and contents of a plan); 7 Collier on Bankruptcy P 1129.02 (16th 2022). As explained below, the Plan complies with sections 1122 and 1123 in all respects.

**1.    The Plan Satisfies the Classification Requirements of Section 1122.**

Section 1122 of the Bankruptcy Code governs the classification of claims and interests. Section 1122(a) requires that a plan "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." The Ninth Circuit has recognized that, under section 1122, plan proponents have significant flexibility to place similar claims into different classes, provided there is a rational basis for doing so. *See Barakat v. Life Ins. Co. of Va. (In re Barakat)*, 99 F.3d 1520, 1524–25 (9th Cir. 1996); *see also In re Rexford Props., LLC*, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016) ("A claim that is substantially similar to other claims may be classified separately from those claims, even though section 1122(a) does not say so expressly."). For example, courts have allowed separate classification where there are good business reasons for separate classification. *See Barakat*, 99 F.3d at 1526

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(holding that substantially similar claims may be classified separately if there is a "legitimate business or economic justification" for doing so).

Section 4 of the Plan provides for the separate classification of Claims into four (4) different Classes based upon differences in the legal or factual nature of those Claims or other relevant and objective criteria. Each of the Claims in a particular Class under the Plan is substantially similar to other Claims in such Class, and the classification structure is necessary to implement certain aspects of the Plan. Valid and sound factual and legal reasons exist for the separate classification of Claims, including, but not limited to the fact that each of the Claims in a particular Class are substantially similar to the other Claims in such Class and, therefore, the classification scheme does not discriminate unfairly between or among holders of such Claims.

Specifically, the Plan divides the classified Claims into the following Classes:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 2 | Secured Tax Claim | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 3 | Gestetner Secured Claim | Impaired | Entitled to Vote |
| Class 3(A) | Other Secured Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |

Administrative Claims, Priority Tax Claims, and Professional Fee Claims (the "Unclassified Claims") are not classified and are separately treated under Section 5 of the Plan.

Finally, the classification structure was not designed to gerrymander the Classes to create an impaired accepting Class. Accordingly, the Plan fully complies with the requirements of section 1122.

**2.      The Plan Satisfies the Mandatory Plan Requirements of Sections 1123(a)(1)-(a)(8).**

Section 1123(a) requires that the contents of a chapter 11 plan: (i) designate classes of claims and interests; (ii) specify unimpaired classes of claims and interests; (iii) specify treatment of impaired classes of claims and interests; (iv) provide the same treatment for each claim or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest; (v) provide adequate means for the plan's implementation; (vi) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (vii) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan.

The Plan satisfies the mandatory plan requirements set forth in section 1123(a). Section 4 of the Plan satisfies the first three requirements of section 1123(a) by designating Classes of Claims, as required by section 1123(a)(1), specifying the Classes of Claims that are Unimpaired under the Plan, as required by section 1123(a)(2), and specifying the treatment of each Class of Claims that is impaired, as required by section 1123(a)(3). The Plan also satisfies section 1123(a)(4)—the fourth mandatory requirement—because the treatment of each Allowed Claim within a Class is the same as the treatment of each other Allowed Claim in that Class, unless the holder of a Claim consents to less favorable treatment on account of its Claim.

The provisions of the Plan provide adequate means for the Plan's implementation, thus satisfying the fifth requirement of section 1123(a). *See* 11 U.S.C. § 1123(a)(5). The provisions of Section 2 of the Plan, provide for (i) the appointment of the Liquidation Trustee (Plan § 2) who shall be responsible for, among other things, making distributions to Holders of Allowed Claims (Plan § 10).

The sixth requirement of section 1123(a), *i.e.*, if a debtor is a corporation, its plan must prohibit the issuance of nonvoting equity securities, is inapplicable to this case. *See* 11 U.S.C. § 1123(a)(6).

The Plan fulfills the seventh requirement in section 1123(a), which requires that the Plan provisions with respect to the manner of selection of any officer, director, or trustee "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1123(a)(7). The Plan provides for the appointment of Bradley D.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Sharp, as the Liquidation Trustee, and the terms of such appointment are set forth in the Plan (Plan § 2).

The Plan fulfills the eighth requirement in section 1123(a), which requires earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor be contributed as is necessary for the execution of the plan. 11 U.S.C. § 1123(a)(8). The Trustee has been unable to obtain a commitment from the Debtor or any information about the Debtor's current earnings or future income. The Trustee nevertheless believes that such earnings or future income are not "necessary for the execution of the plan" because, under the terms of the Plan, the Debtor is not receiving a discharge and the Liquidation Trustee will continue to assert control over estate assets. Thus, the Liquidation Trustee will work to collect any of the Debtor's earnings and future income for the benefit of holders of allowed claims under this Plan.

### 3.    The Plan Complies With the Applicable Provisions of the  Bankruptcy Code (11 U.S.C. § 1129(a)(2)

Section 1129(a)(2) requires that the proponent of a chapter 11 plan comply with the applicable provisions of the Bankruptcy Code. The legislative history to Bankruptcy Code section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in section 1125 and the plan acceptance requirements set forth in section 1126. *See In re Johns-Manville Corp.,* 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 ("Objections to confirmation raised under section 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with sections 1125 and 1126 of the [Bankruptcy] Code."); *In re Downtown Inv. Club III*, 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988) ("Section 1129(a)(2) in turn requires that the proponent of the plan complies with the applicable provisions of Title 11."); *see also* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."). The  Trustee has complied with these provisions, including sections 1121, 1125, 1126, and 1127 of the Bankruptcy Code, as well as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Bankruptcy Rules 3017 and 3018, by carrying out the Solicitation Procedures approved by the Court in its Solicitation Procedures Order.

### 4.    The Trustee is Authorized to File the Plan Under Section 1121

Section 1121(c) provides that "[a]ny party in interest including the debtor, the trustee, . . . a creditors' committee, [or] . . . a creditor . . . may file a plan." 11 U.S.C. §1121(c). Since the Trustee is the plan proponent, and the  Trustee is clearly a party in interest as expressly contemplated by section 1121(c), the requirements of section 1121 are satisfied.

### 5.    The Trustee Complied with the Disclosure Statement and Solicitation Requirements of Section 1125

Section 1125(b) prohibits the solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). The purpose of section 1125 is to ensure that parties-in-interest are fully informed on the condition of the Debtor, the means for implementation of the Plan, and the treatment of all classes of Claims so they may make an informed decision on whether to accept or reject the Plan. *See In re Cal. Fidelity, Inc.,* 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) ("At a minimum, § 1125(b) seeks to guarantee that a creditor receives adequate information about the plan before the creditor is asked for a vote."); *In re Art & Architecture Books of the 21st Century*, No. 2:13-bk-14135-RK, 2016 Bankr. LEXIS 859, at *40 (Bankr. C.D. Cal. Mar. 18, 2016) ("The primary purpose of a disclosure statement is to give creditors and interest holders the information they need to decide whether to accept the plan.") (citing *Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 537 (B.A.P. 9th Cir. 2004).

The Trustee has satisfied section 1125. As described above, On December 15, 2025, the Trustee filed the Chapter 11 Plan of Liquidation of the Estate of Leslie Klein [Docket No. 1282], and related Disclosure Statement [Docket No. 1283], and on January 6, 2026, the Trustee filed the Solicitation Procedures Motion [Docket No. 1286].  Following a hearing held on February 24, 2026 to consider approval of the Trustee's Disclosure Statement, on February 27, 2026, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Trustee filed the Revised Confirmation Hearing Notice and Form of Ballots [Docket No. 1310], an Amended Plan [Docket No. 1311], and Disclosure Statement [Docket No. 1312].

On March 2, 2026, the Court entered the Solicitation Procedures Order, approving the notice and confirmation schedule proposed by the Trustee. *See* Docket No. 1316. The Solicitation Procedures Order also found that the Disclosure Statement contains adequate information and approved the Solicitation and Tabulation Procedures. *See* Solicitation Procedures Order at ¶ 4. The Solicitation Procedures Order approved the contents of the Solicitation Packages that the Trustee provided to Holders of Claims in the Voting Classes and the timing and method of delivery of the Solicitation Packages.  As set forth in the Voting Certification, the Trustee complied in all respects with the Solicitation Procedures as outlined in the Solicitation Procedures Order, including its compliance with service requirements and not soliciting acceptance of the Plan from any creditor prior to sending the Solicitation Packages that contained the court-approved Disclosure Statement. *See* Voting Certification at ¶¶ 6 and 7.

### 6.    The Trustee Complied With the Plan Acceptance Requirements of Section 1126

Section 1126 provides that only holders of claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan. 11 U.S.C. § 1126.  Sections 1126(c) and (d) specify the requirements for acceptance of a plan by a class of claims. Specifically, section 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of [section 1126], that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of [section 1126], that have accepted or rejected such plan.

Classes 1 and 2 are Unimpaired under the Plan.  Pursuant to section 1126(f), Holders of Claims in the Unimpaired Classes are not entitled to vote on the Plan and are conclusively deemed to have accepted the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Trustee solicited votes on the Plan from the Voting Classes—that is, the Holders of all Allowed Claims in each Impaired Class entitled to receive Distributions: Classes 3, 4, and 5. As noted above, the Voting Deadline occurred on April 13, 2026, and the Voting Certification details the results of the voting process in accordance with section 1126, in which the Plan was supported by the Holders of Claims in each Voting Class that returned ballots. Based on the foregoing, the Trustee's solicitation of votes on the Plan was undertaken in conformity with section 1126 and the Solicitation Procedures Order.

**B.**    **The Plan Has Been Proposed in Good Faith and**
**Not by Any  Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).**

Section 1129(a)(3) provides that a court may confirm a plan only if the plan is proposed "in good faith and not by any means forbidden by law." The Ninth Circuit defined that standard in the case of *In re Sylmar Plaza, L.P.*, 314 F.3d 1070 (9th Cir. 2002), by holding that "a plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *Id.* at 1074; accord *Ryan v. Loui (In re Corey)*, 892 F.2d 829, 835 (9th Cir. 1989); *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984).  The Ninth Circuit in *Sylmar Plaza* further held that "the requisite good faith determination is based on the totality of the circumstances." *Id.* at 1074; accord *Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988).  Moreover, the Ninth Circuit has also held that section 1129(a)(3) is limited "only to the proposal of a plan, not to the terms of the plan." *Garvin v. Cook Invs. NW, SPNWY, LLC*, 922 F.3d 1031, 1035 (9th Cir. 2019); *see also In re Claar Cellars LLC*, 623 B.R. 578, 591 (Bankr. E.D. Wash. 2021) ("Section 1129(a)(3)'s focus is thus on the plan proponent's actions specifically related to the plan proposal process, rather than whatever actions much occur pursuant to the plan itself or the proponent's behavior during the bankruptcy cases more generally.").

Courts have determined that good faith for purposes of section 1129(a)(3) may be found where the plan is supported by key creditor constituencies, or was the result of extensive arm's-length negotiations with creditors. *See In re Chemtura Corp.*, 439 B.R. 561, 608-09 (Bankr. S.D.N.Y. 2010) (finding good faith requirement met because, among other things, the debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

negotiated and reached agreements with several parties-in-interest to put forward a chapter 11 plan which "in the aggregate demonstrate a good faith effort on the part of the debtor to consider the needs and concerns of all major constituencies in this case") (quotation marks and citation omitted); *In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) ("The fact that the plan is proposed by the committee as well as the debtors is strong evidence that the plan is proposed in good faith."); *In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996) (finding that chapter 11 plan was proposed in good faith when, among other things, it was based on extensive arm's-length negotiations among plan proponents and other parties-in interest).

First, the Plan is the product of months of extensive negotiations and compromises among the Trustee and various claimants. These negotiations were difficult and addressed complex legal and factual issues surrounding contested interests in life insurance policies, real estate and other assets. The progress achieved during the chapter 11 case laid the groundwork for confirmation of the Plan. The Plan reflects the best possible outcome for all creditors under the totality of the circumstances. Moreover, the Plan has the support of each Voting Class. This support evidences the Trustee's good faith and good intentions in proposing the Plan, and the totality of circumstances surrounding its formulation clearly promotes the purposes of the Bankruptcy Code.

Additionally, Bankruptcy Rule 3020(b)(2) provides that the court may determine that a plan proponent proposed a plan in good faith and not by any means forbidden by law, without receiving evidence, if no party in interest has timely objected to the plan proponent's good faith. *See* Bankruptcy Rule 3020(b)(2) ("If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issue."); *see also In re Warren*, 89 B.R. 87, 91 (B.A.P. 9th Cir. 1988) ("Rule 3020(b)(2) states that without objection the court "may" find that the plan was filed in good faith without receiving evidence."). No party has objected to the good faith of the Trustee in proposing the Plan. The Trustee therefore submits that the requirements of section 1129(a)(3) have been satisfied.

**C.    The Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (11 U.S.C. § 1129(a)(4))**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under a plan, be subject to court approval as reasonable. *See, e.g., In re Worldcom, Inc.*, 2003 Bankr. LEXIS 1401, at * 158-59 (Bankr. S.D.N.Y. Oct. 31, 2003); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 267-68 (Bankr. D. N.J. 1988) (holding that requirements of section 1129(a)(4) were satisfied where plan provided for payment of only "allowed" administrative expenses). Here, the Plan, as modified, mandates that all Professional Fee Claims are subject to the approval of the Court. *See* Plan § 8.1.

**D.** **Post-Effective Date Directors and Officers Are Disclosed and Their Appointment Is Consistent With Public Policy (11 U.S.C. § 1129(a)(5))**

Section 1129(a)(5)(A)(i) provides that a court may confirm a plan only if the plan proponent discloses "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer of voting trustee of the debtor . . . or a successor to the Debtor under the plan." Section 1129(a)(5)(A)(ii) requires that the appointment to, or continuance of a director, officer or voting trusted be "consistent with the best interests of creditors and equity holders and with public policy." *In re Parks Lumber Co., Inc.*, 19 B.R. 285, 291 (Bankr. W.D. La. 1982). Section 1129(a)(5)(B) provides that a court may confirm a plan only if the plan proponent discloses "the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."

Appendix 1 of the Plan provides that Bradley D. Sharp will be the Liquidation Trustee of the Liquidation Trust responsible for paying Administrative Expense Claims, Professional Fee Claims, and Allowed Claims against the Estate.  Accordingly, the Plan complies with the requirements of section 1129(a)(5).

**E.** **The Plan Does Not Require Governmental Regulatory Approval of Rate Changes (11 U.S.C. § 1129(a)(6)**

Section 1129(a)(6) permits confirmation of a chapter 11 plan only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

change provided for in the plan. *See* 11 U.S.C. § 1129(a)(6). Section 1129(a)(6) is inapplicable here because the Plan does not provide for any rate changes.

**F.      The Plan Is in the Best Interests of Creditors
and Interest Holders (11 U.S.C. § 1129(a)(7))**

The "best interests of creditors" test of section 1129(a)(7) requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time. *See* 11 U.S.C. § 1129(a)(7).

The Trustee has satisfied the Best Interest Test with respect to Classes 3, 4, and 5, because, with respect to each such class of claims, each Holder of a Claim has either accepted the Plan or, as discussed below, will receive or retain property having a present value, as of the Effective Date, of not less than what such Holder would receive if the Estate was liquidated under chapter 7 of the Bankruptcy Code at that time. *See* 11 U.S.C. § 1129(a)(7)(i) (providing that the best interests of creditors test is satisfied when, "[w]ith respect to each impaired class of claims or interests[,] each holder of a claim or interest of such class has accepted the plan."); *supra*, Section II.D. (setting forth the vote tabulation).

Further, all creditors will receive more under the Plan than if the Chapter 11 Case was converted to chapter 7. Generally, in a chapter 7 case, (i) the debtor's assets are sold by a chapter 7 trustee, (ii) secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien, (iii) administrative claims are paid thereafter, (iv) unsecured creditors are paid after administrative claims from any remaining sales proceeds, according to their rights to priority, (v) unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims, and (vi) finally, interest holders receive the balance that remains after all creditors are paid, if any.

Though the Plan is a plan of liquidation, the costs of liquidation under chapter 7 of the Bankruptcy Code would be greater than under the Plan as they would include the fees payable to the chapter 7 trustee including 3% of the distributable assets, and the fees that would be payable to

4927-1273-2059.3 78512.001                                   17

additional attorneys and other professionals that such trustee might engage.  This would deplete the Estate significantly even before the additional fees and expenses of counsel or other advisors for the chapter 7 trustee.

As set forth in the Liquidation Analysis, the Trustee estimates that in a chapter 7 liquidation, the Holders of Allowed Class 4 Claims would receive a recovery on such Claims in the approximate amount of 1%, which is less than the approximate 4% to 28% anticipated under the Plan.

Conversion to chapter 7 of the Bankruptcy Code would also mean the establishment of a new claims bar date, which may result in new Unsecured Claims being asserted against the Estate, thereby further diluting the recoveries of Holders of Allowed Claims.

On balance, the Trustee believes that a chapter 7 trustee would be less likely to maximize the value available from all the Estate's assets. Therefore, the Trustee believes that confirmation of the Plan will provide each claimant with an equal or greater recovery than such claimant would receive pursuant to the liquidation of the Estate under chapter 7 of the Bankruptcy Code.  *See* 11 U.S.C. § 704(a)(1).

**G.    The Plan Complies With Statutorily Mandated
Payment of Priority Claims (11 U.S.C. § 1129(a)(9))**

Section 1129(a)(9) requires that persons holding allowed claims entitled to priority under section 507(a) receive specified cash payments under the Plan. Unless the holder of a particular claim agrees to a different treatment with respect to such claim, section 1129(a)(9) sets forth the treatment the Plan must provide. Under the Plan, Holders of Allowed Administrative Claims under section 503(b) shall receive Cash in full and final satisfaction of their Allowed Administrative Claims on the Effective Date or as soon as reasonably practicable thereafter, except to the extent the Trustee or Liquidating Trustee, as applicable, and a Holder of an Allowed Administrative Claim agree to less favorable treatment of such Allowed Administrative Claim. *See* Plan § 5.1. Consequently, the Trustee submits that section 1129(a)(9)(A) is satisfied because the Plan provides for the payment of all Administrative Claims on the Effective Date, except to the extent the Holder of such Claim has agreed to different treatment.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Pursuant to Section 6.1 of the Plan, all Allowed Other Priority Claims under section 507(a), unless otherwise agreed, shall receive payment in Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the Trustee or the Liquidation Trustee and the Holder of the Allowed Other Priority Claim.

The Plan also satisfies the requirements of section 1129(a)(9)(D) in respect of the treatment of Secured Tax Claims. Pursuant to Section 6.2 of the Plan, holders of Secured Tax Claims will receive cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the Trustee or the Liquidation Trustee and the Holder of the Secured Tax Claim. The Trustee and the Liquidation Trustee (after the Effective Date) specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid, pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims.

Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9).

**H.    Each Impaired Class of Claims Entitled to Vote Has Accepted the Plan, Excluding the Acceptances of Insiders (11 U.S.C. § 1129(a)(10))**

Section 1129(a)(10) provides that, if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. *See* 11 U.S.C. § 1129(a)(10); *see also In re Station Casinos, Inc.*, Nos. BK-09-52477, BK 09-52470, BK 09-52487, BK 10-50381, 2010 Bankr. LEXIS 5365, at *336 (Bankr. D. Nev. Aug. 27, 2010) ("The bankruptcy courts that have expressly considered the matter have uniformly held that compliance with Section 1129(a)(10) is tested on a per-plan basis, not on a per-debtor basis, and that Section 1129(a)(10) therefore does not require an accepting impaired class for each debtor under a joint plan."). As set forth above, all Voting Classes are impaired and entitled to vote and each Voting Class has accepted the Plan by number and amount. Specifically, section 1126(c) provides that a class of claims has accepted a plan if such plan has been accepted by non-insider

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

creditors by at least two-thirds in amount and more than one-half in number of the allowed claims that voted to accept or reject the plan.  As set forth in the Voting Certification, each Voting Class has accepted the Plan by substantially more than two-thirds in amount and one-half in number. Therefore, the Voting Certification confirms that the Plan satisfies section 1129(a)(10).

## I.       The Plan Is Feasible (11 U.S.C. § 1129(a)(11))

Section 1129(a)(11) requires that the Court determine that the Plan is feasible as a condition precedent to confirmation. Specifically, it requires that confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor, unless such liquidation or reorganization is proposed in the plan.  As described below, the Plan is feasible within the meaning of this provision.

The feasibility test set forth in section 1129(a)(11) requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success. *See Johns-Manville Corp.*, 843 F.2d at 649; *but see In re First Magnus Fin. Corp.*, No. 4:07-bk-01578-JMM, 2008 Bankr. LEXIS 5126, at *16 (Bankr. D. Ariz. Feb. 15, 2008) (holding that since the plan at issue was a plan of liquidation, section 1129(a)(11) was inapplicable). The standard set forth in section 1129(a)(11) has been described as "not an overly-demanding standard; a "reasonable probability" is akin to a preponderance standard (i.e., 51%+) and case law is clear that a plan's success need not be ensured." *See In re Claar Cellars LLC*, 623 B.R. 578, 595 (Bankr. E.D. Wash. 2021).

The key element of feasibility is whether there is a reasonable probability that the provisions of the plan can be performed. As noted by the United States Court of Appeals for the Ninth Circuit: "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the Debtors can possibly attain after confirmation." *Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 Collier on Bankruptcy 1129.02[11] at 1129–34 (15th ed. 1984)). However, just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility, and the mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds. *See In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4927-1273-2059.3 78512.001

20

As set forth herein, the uncontroverted evidence demonstrates that the Plan is feasible.  The Plan provides for the liquidation of the Estate's assets and, accordingly, no further reorganization is contemplated or likely.  The Trustee has sufficient funds available as of the Effective Date to pay all claims and expenses that are required to be paid on the Effective Date under the Plan (including Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims), and to capitalize the Liquidation Trust with sufficient funds to pay these claims as appropriate pursuant to the Plan. Accordingly, the Plan satisfies the feasibility requirement set forth in section 1129(a)(11).

**J.     The Plan Provides for the Payment of All Fees**
**under 28 U.S.C. § 1930 (11 U.S.C. § 1129(a)(12))**

Section 1129(a)(12) requires that, as a condition precedent to the confirmation of a plan, "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). The Plan complies with section 1129(a)(12) by providing that "any outstanding quarterly fees due and owing to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) and any applicable interest pursuant to 31 U.S.C. § 3717 shall be paid by the Liquidation Trustee from the Liquidation Trust Reserve. After the Effective Date, the Liquidation Trustee shall (i) file post confirmation quarterly disbursement reports and quarterly status reports of funds on hand, distributions made since the previous report and a brief description of any pending litigation, and (ii) pay from the Liquidation Trust Reserve all quarterly fees to the U.S. Trustee which are required by applicable law.  The Liquidation Trustee shall include in the Liquidation Trust Reserve reasonably sufficient monies to cover the quarterly fees of the U.S. Trustee incurred, or to be incurred, after the Effective Date" *See* Plan § 17.4. Accordingly, the Plan satisfies the requirements of section 1129(a)(12).

**K.     The Plan Requirement for Payment of**
**Retiree Benefits Is Not Implicated. (11 U.S.C. § 1129(a)(13))**

Section 1129(a)(13) provides that a court may confirm a plan only if "[t]he plan provides for the continuation after its effective date of payment of all retiree benefits . . . for the duration of the period the debtor has obligated itself to provide such benefits." *See* 11 U.S.C. §

4927-1273-2059.3 78512.001

21

1129(a)(13). This provision is inapplicable as the Debtor will not have any ongoing retiree benefit obligations as of the Effective Date. Accordingly, the Plan satisfies the requirement set forth in section 1129(a)(13).

**L.     Sections 1129(a)(14) and 1129(a)(15)**

Section 1129(a)(14) relates to the payment of domestic support obligations. The Trustee is unaware of the Debtor having any such obligations.

Section 1129(a)(15) applies only in cases in which there has been an objection to confirmation of the plan by the holder of an allowed unsecured claim.  No such claimholder has objected to confirmation of the Plan.

**M.     The Plan Provides That Any Transfer of Property
Will Be in Compliance With Applicable Non-Bankruptcy Law,
Subject to Bankruptcy Court Oversight (11 U.S.C. § 1129(a)(16))**

Section 1129(a)(16) provides that applicable non-bankruptcy law will govern all transfers of property under a plan to be made by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust." "Thus, a plan's proposed transfer of property held by an entity falling within this description must comply with applicable nonbankruptcy law." *In re Claar Cellars LLC*, 623 B.R. 578, 598-99 (Bankr. E.D. Wash. 2021).  The Debtor is not "an entity falling within" section 1129(a)(16)'s description.

**V.**

**THE DISCRETIONARY CONTENTS OF THE PLAN SHOULD BE APPROVED**

Section 1123(b) sets forth additional provisions that may be included in a chapter 11 plan. *See In re Astria* Health, 623 B.R. 793, 797 (Bankr, E.D. Wash. 2021) (finding that the language of 1123(b)(6) "invites creativity in drafting a plan and allows bankruptcy professionals to tailor a plan to the specific needs of the case so long as the plan terms are not inconsistent with specific provisions elsewhere in the Bankruptcy Code"). The Plan includes certain such additional provisions. For example, the Plan proposes treatment for executory contracts and unexpired leases. *See* Plan §14.  As discussed below, each of these provisions is in the best interests of the Estate, creditors, and other parties-in-interest.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**A.      The Rejection of the Executory Contracts
and Unexpired Leases Under the Plan Should Be Approved**

Section 14 of the Plan provides that all agreements executed by the Trustee before the Effective Date, other than agreements that were previously either assumed and assigned or rejected by a Final Order, to the extent that these agreements constitute executory contracts under section 365 of the Bankruptcy Code, shall be held in abeyance until the Liquidating Trustee elects to assume or reject such executory contract. The order approving such assumption or rejection, as the case may be, shall constitute a Final Order under section 365 of the Bankruptcy Code approving such assumption or rejection. Any unexpired leases that were not assumed or rejected by a prior Final Order are rejected upon entry of the Confirmation Order, which shall constitute a Final Order under section 365 of the Bankruptcy Code approving such rejection of an unexpired lease.

Section 365(a) provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). Courts routinely approve motions to assume and assign or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *Durkin v. Benedor Corp. (In re G.I. Indust., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) ("a bankruptcy court applies the business judgment rule to evaluate a [debtor-in-possession]'s rejection decision") (*citing NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)); *see also In re Chi-Feng Huang*, 23 B.R.798, 800 (B.A.P. 9th Cir. 1982). The debtor's exercise of its business judgment is entitled to deference. *See In re Pomona Valley Med. Grp.*, 476 F.3d 665, 670 (9th Cir. 2007) ("[I]n evaluating the rejection decision, the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate.") (citing *Navellier v. Sletten*, 262 F.3d 923, 946 n. 12 (9th Cir. 2001)).

After reviewing the Debtor's agreements, the Trustee is not aware of any remaining Executory Agreements and seek the rejection of any possible remaining Executory Agreements out of an abundance of caution.  Accordingly, the Trustee, in his business judgment, has

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4927-1273-2059.3 78512.001                                  23

concluded that it is in the best interests of all parties in interest to reject any remaining Executory Agreements under the Plan, as they are no longer providing a benefit to the Estate.  Accordingly, for all of the foregoing reasons, the proposed rejection of Executory Agreements should be approved in connection with confirmation.

**B.**    **The Plan's Exculpation Provisions Are Appropriate and Should Be Approved**

The Plan provides for the exculpation of certain parties (the "*Exculpated Parties*") for their acts during the Chapter 11 Case.

The "Exculpated Parties" include the following:

- o    the Trustee;
- o    Pachulski Stang Ziehl & Jones LLP;
- o    Development Specialists, Inc.;
- o    Law Office of Eric Everett Hawes;
- o    Law Offices of Goldfarb Gross Seligman & Co.; and
- o    Kieckhafer Schiffer, LLP

Specifically, upon the occurrence of the Effective Date, except as otherwise specifically provided herein or any Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from any claim, obligation, cause of action, or liability for any Exculpated Claim, except for gross negligence, willful misconduct, fraud, or criminal conduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon confirmation of the Plan, shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. *See* Plan § 12.2.

Exculpation of estate fiduciaries and plan proponents is customary and permissible in chapter 11. Indeed, the Ninth Circuit has approved exculpation provisions that extend to plan proponents, including non-debtor plan proponents. *See Blixseth v. Credit Suisse,* 961 F.3d 1074, 1084 (9th Cir. 2020) (approving exculpation of debtor's largest creditor that became a plan "proponent through its direct participation in the negotiations that preceded the adoption of the Plan"); *see also In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 277 (Bankr. D. Mont. 2011) (approving exculpation that extended to "the Debtors, Committee [of Unsecured Creditors], Credit Suisse and CrossHarbor, who all became, in essence, plan proponents").

Plan exculpations may also extend to non-estate fiduciaries when the exculpated parties make substantial contributions to the reorganization, the exculpations are important to such parties' participation in the reorganization efforts, and the exculpations are limited "in both scope and time" to actions related to the chapter 11 cases. *See Astria Health,* 623 B.R. at 798-800*; In re Yellowstone Mountain Club*, 460 B.R. at 272-73; *Meritage Homes of Nev. Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC)*, 478 B.R. 403, 415-16 (D. Nev. 2012) (approving exculpation of third party non-debtors because exculpation "sets a standard of care to be applied in the bankruptcy proceeding" and "does not improperly release third party nondebtors"); *Lazo v. Roberts*, No. CV15-7037-CAS(PJWx), 2016 U.S. Dist. LEXIS 21956, at *21 (C.D. Cal. Feb. 22, 2016) ("Increasingly, however, [t]he trend among bankruptcy courts [more generally] has been to confirm chapter 11 plans with express discharge or indemnification provisions for nondebtors if they meet certain tailored criteria or overall necessity.  This overall trend is evident in the Ninth Circuit.") (internal quotation marks and citations omitted); *see also In re Stearns  Holdings,  LLC*, 607 B.R. 781, 790-91 (Bankr. S.D.N.Y. 2019) (holding that exculpation could extend to parties "who make a substantial contribution to a debtor's reorganization and play an integral role in building consensus in support of a debtor's restructuring"). Exculpation clauses also are essential in cases like this one that  are heavily  litigated. *See, In re Yellowstone Mountain Club*, 460 B.R. at 274 ("An exculpation clause in this case was certainly advisable given the litigious posture  of the parties.").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

As the court recognized in *Astria Health*, exculpations that include non-estate fiduciaries are particularly appropriate where "each exculpated party actively participated in and contributed to the progress of the bankruptcy." *Astria Health*, 623 B.R. at 801.

The exculpation provision in the Plan appropriately excludes willful misconduct, gross negligence, fraud and criminal conduct, and there is no requirement that breaches of professional duties be excluded from a plan exculpation provision. *See In re W. Asbestos Co.*, 313 B.R. 832, 846 (Bankr. N.D. Cal. 2003) (approving provision that "neither the Plan Proponents nor any of their agents, including their attorneys,  shall be liable, *other than for willful misconduct*, with respect to any action or omission prior to the effective date in connection with the Debtors' operations, the Plan, or the conduct of the bankruptcy case.") (emphasis added).

### C.    The Plan's Injunction Provision

The Plan provides, and the Confirmation Order shall provide, among other things, that any Person (other than the Estate or the Liquidation Trustee) who has held, holds, or may hold a claim against, interest in, or right with respect to the Debtor's Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, or any claim against or interest in the foregoing, with respect to any such claim, interest, or right, permanently enjoined from and after the Effective Date from taking any of the following actions (other than actions taken in the Bankruptcy Court or in any of the Chapter 11 Case to enforce any rights or obligations under the Plan or to defend challenges to the validity or amount of a Disputed Claim), absent further order of the Bankruptcy Court: (i) asserting, commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, on account of any claim for which the Debtor or Liquidation Trustee are directly or indirectly liable, including without limitation, by way of contribution, indemnity or otherwise; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against any of the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iii) creating, perfecting

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

or otherwise enforcing in any manner, directly or indirectly, any lien of any kind against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (v) prosecuting, commencing, continuing or otherwise asserting any right, claim or cause of action released pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; and (vi) acting to Trust Assets or any rights or interests of the Estate, the Liquidation Trust, or the Liquidation Trustee with respect to the Assets or the Liquidation Trust Assets. If the Liquidation Trustee, the Liquidation Trust Assets or the Estate are injured by any willful violation of such injunction, the Liquidation Trustee shall be entitled to seek actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages, from the willful violator(s). Notwithstanding the foregoing, holders of Disputed Claims are not enjoined from and shall retain all rights to defend or prosecute such Disputed Claims in the Bankruptcy Court, including, without limitation, the right to assert affirmative defenses, setoff, or recoupment, if applicable. Nothing herein shall impair or delay any rights of any Holder of a Claim, the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, to pursue any action against any third party who may be directly liable to such Holder.  *See* Plan § 12.3.

Section 105(a) of the Bankruptcy Code authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). The court may issue an injunction in connection with plan confirmation in furtherance of a settlement or in the interest of the estate. *See WCI Cable, Inc*., 282 B.R. 282 B.R. 457, 469 (Bankr. D. Or. 2002) ("Section 105(a) can be used with respect to the injunction provisions of the WCI Plan only to the extent necessary and appropriate to carry out the terms of an approved settlement.") (citing *In re Dow Corning Cor*p., 255 B.R. 445, 478 (E.D. Mich. 2000); *see also In re Am. Hardwoods*, 885 F.2d 621, 625 (9th Cir. 1989) ("[S]ection 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate"). The equities favor imposition of the injunctive provisions because, among other things, the Plan presents the best possible

recovery to creditors (as evidenced by the overwhelming votes in support of the Plan) and the injunctions are necessary components to the Plan.

## VI.

## **CONCLUSION**

**WHEREFORE**, the Trustee respectfully requests that the court enter an order, substantially in the form of the Confirmation Order, (i) confirming the Plan, and (ii) granting such other and further relief as the court deems just and proper.

Dated:    April 14, 2026                      PACHULSKI STANG ZIEHL & JONES LLP


                                             By    */s/ John W. Lucas*
                                                      John W. Lucas
                                                      Counsel for Bradley D. Sharp, Chapter 11
                                                      Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4927-1273-2059.3 78512.001                      28

## **DECLARATION OF BRADLEY D. SHARP**

I, Bradley D. Sharp, declare that if called on as a witness, I would and could testify of my own personal knowledge as follows:

1. I am the duly appointed chapter 11 Trustee in the above-captioned bankruptcy case of Leslie Klein. The statements herein are based upon my personal knowledge of the facts and information gathered by me in my capacity as Trustee.

2. I make this declaration in support of the *Memorandum of Law In Support of Confirmation of Chapter 11 Trustee's Plan of Liquidation of The Estate of Leslie Klein* (the "***Confirmation Brief***").[1]

3. The Plan provides for my appointment as the Liquidation Trustee, and the terms of such appointment are set forth in the Plan (Plan § 2).

4. The Plan provides for the establishment of a Liquidation Trust on the Effective Date for the primary purpose of administering and liquidating the Liquidation Trust Assets and for the secondary purposes of, *inter alia*, (a) analyzing and pursuing Causes of Action (b) identifying any undisclosed assets of the Estate, (c) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (d) making all Distributions provided for under the terms of the Plan.

5. On the Effective Date, all of the Estate's assets shall vest in the Liquidation Trust and I will be empowered to identify any assets of the Estate that were not disclosed and take the necessary action to liquidate such assets pursuant to the terms of this Plan. Subject to section 1141(d)(5) of the Bankruptcy Code and Section 13 of the Plan, the Plan contemplates liquidation of the Estate's Assets and the distribution of the net proceeds thereof to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan in satisfaction of the Claims against the Estate; *provided*, *however*, (a) to the extent the Debtor is subject to a Non-Dischargeable Claim, the Plan does not provide a discharge for such claims and (b) the Plan does not provide the Debtor with a discharge for claims that are not Non-Dischargeable Claims.

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Confirmation Brief.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6.      The Plan describes the specific treatment of all Claims and the distribution of proceeds to Holders of Allowed Claims.   As set forth Section 6 of the Plan, except for Administrative Expense Claims, Priority Tax Claims and Professional Fee Claims, all Claims are divided under the Plan as follows:

- The Plan classifies Other Priority Claims (Class 1) as unimpaired and  deemed to have accepted the Plan (and thus not entitled to vote on the Plan). Class 1 Claims are anticipated to recover 100% of their Allowed Claims.

- The Plan classifies Secured Tax Claims (Class 2) as unimpaired and deemed to have accepted the Plan (ad thou sot entitled to vote on the Plan).  Class 2 Claims are anticipated to recover 100% of their Allowed Claims.

- The Plan classifies the Gestetner Secured Claim (Class 3) as impaired and entitled to vote on the Plan.  Holders of Allowed Claims in Class 3 shall, on the later of the Effective Date or the date on which Life Capital Group ("LCG") makes a distribution to the Estate or myself as the Liquidating Trustee on account of the Debtor's equity interest in LCG, receive 50% of the distribution made to the Estate or the Liquidating Trust, as the case may be, from LCG until the Gestetner Secured Claim held by the Gestetners is paid in full.

- The Plan classifies Other Secured Claims (Class 3(a)) as impaired and entitled to vote on the Plan.  Each Holder of an Allowed Claim in Class 3(a) shall, on the Effective Date, or as soon as reasonably practicable thereafter, receive the collateral in which such Holder has a security interest or lien; *provided*, *however*, if such action was already undertaken prior to the Petition Date, in response to a stay relief request, by the Estate's abandonment, or other similar action then I need not take any further action; provided, further, upon the request of a holder of an Allowed Class 3(a) Other Secured Claim it may elect to receive such other and less favorable distributions or treatments as may be agreed upon by and between the Holder of the Allowed Class 3(a) Claim and myself as Liquidation Trustee.

- The Plan classifies general unsecured claims (Class 4) as impaired and entitled to vote on the Plan.  Except to the extent that a holder of a Class 4 general unsecured claim ("***Allowed Class 4 Claim***") agrees to a different treatment of such Claim, each holder of an Allowed Class 4 Claim will receive its *pro rata* share of the liquidated Liquidating Trust Assets as soon as practicable as determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement; provided, however, any Allowed Class 4 Claim that is subordinated shall not receive any distribution unless and until all holders of Allowed Class 4 Claims are paid in full or otherwise agree that their Claims have been satisfied. The Plan preserves the rights to dispute the validity of any Class 4 Claim, whether or not objected to prior to the Effective Date; provided, however, any Class 4 Claim that has been settled pursuant to a Bankruptcy Court order shall not be subject to further objection by the Liquidating Trustee or any party in interest.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7.      The Plan provides for the resolution and satisfaction of all claims and interests in the Debtor's Estate.  The Liquidation Trustee, as of the Effective Date, will facilitate monetizing all of the Estate's assets, which consist of mainly real properties, interests in life insurance policies, and cash and causes of action.  Distribution of the net proceeds will be made to holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan and Bankruptcy Code.

8.      The Plan further provides that the Effective Date shall not occur and the Plan shall not be consummated unless certain conditions, as set forth in Section 17 of the Plan, are satisfied or otherwise waived.  These conditions precedent include, but are not limited to, (i) entry of the Confirmation Order and such Confirmation Order is not subject to a stay, (ii) the execution of the Liquidation Trust Agreement; (iii) the funding of the Professional Fee Escrow Account having occurred and (iv) no material adverse effect having occurred in respect of the assets.  I anticipate that I will either satisfy all of the conditions precedent or that the relevant parties will waive any condition that has not otherwise been met.

9.      As set forth in the Liquidation Analysis, the Trustee estimates that in a chapter 7 liquidation, the Holders of Allowed Class 4 Claims would receive a recovery on such Claims in the approximate amount of 1%, which is less than the approximate 4% to 28% anticipated under the Plan.

10.     Conversion to chapter 7 of the Bankruptcy Code would also mean the establishment of a new claims bar date, which could result in new General Unsecured Claims being asserted against the Estate, thereby diluting the recoveries of other Holders of Allowed Claims.

11.     I believe that confirmation of the Plan will provide each Holder of an Impaired Claim with an equal or greater recovery than such Holder would receive pursuant to the liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

12.     The Plan also provides that all agreements executed by me before the Effective Date, other than agreements that were previously either assumed and assigned or rejected by a Final Order, to the extent that these agreements constitute executory contracts under section 365 of the Bankruptcy Code, shall be held in abeyance until the Liquidating Trustee elects to assume or reject

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

such executory contract. The order approving such assumption or rejection, as the case may be, shall constitute a Final Order under section 365 of the Bankruptcy Code approving such assumption or rejection. Any unexpired leases that were not assumed or rejected by a prior Final Order are rejected upon entry of the Confirmation Order, which shall constitute a Final Order under section 365 of the Bankruptcy Code approving such rejection of an unexpired lease.

13.    After reviewing the Debtor's agreements, I am not aware of any remaining Executory Agreements and seek the rejection of any possible remaining Executory Agreements out of an abundance of caution.  Accordingly, I, in my business judgment, have concluded that it is in the best interests of all parties in interest to reject any remaining Executory Agreements under the Plan, as they are no longer providing a benefit to the Estate.  Accordingly, for all of the foregoing reasons, the proposed rejection of Executory Agreements should be approved in connection with confirmation.

14.    The Plan provides for the exculpation of certain parties (the "***Exculpated Parties***") for their acts during the Chapter 11 Case.  Specifically, upon the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from any claim, obligation, cause of action, or liability for any Exculpated Claim, except for gross negligence, willful misconduct, fraud, or criminal conduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon confirmation of the Plan, shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  *See* Plan § 12.2.

15.    The Plan provides, and the Confirmation Order shall provide, among other things, that any Person (other than the Estate or the Liquidation Trustee) who has held, holds, or may hold a claim against, interest in, or right with respect to the Debtor's Estate, the Assets, the Liquidation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Trust, or the Liquidation Trust Assets, or any claim against or interest in the foregoing, with respect to any such claim, interest, or right, permanently enjoined from and after the Effective Date from taking any of the following actions (other than actions taken in the Bankruptcy Court or in any of the Chapter 11 Case to enforce any rights or obligations under the Plan or to defend challenges to the validity or amount of a Disputed Claim), absent further order of the Bankruptcy Court: (i) asserting, commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, on account of any claim for which the Debtor or Liquidation Trustee are directly or indirectly liable, including without limitation, by way of contribution, indemnity or otherwise; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against any of the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien of any kind against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (v) prosecuting, commencing, continuing or otherwise asserting any right, claim or cause of action released pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan against the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; and (vi) acting to Trust Assets or any rights or interests of the Estate, the Liquidation Trust, or the Liquidation Trustee with respect to the Assets or the Liquidation Trust Assets. If the Liquidation Trustee, the Liquidation Trust Assets or the Estate are injured by any willful violation of such injunction, the Liquidation Trustee shall be entitled to seek actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages, from the willful violator(s). Notwithstanding the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

foregoing, holders of Disputed Claims are not enjoined from and shall retain all rights to defend or prosecute such Disputed Claims in the Bankruptcy Court, including, without limitation, the right to assert affirmative defenses, setoff, or recoupment, if applicable. Nothing herein shall impair or delay any rights of any Holder of a Claim, the Estate, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, to pursue any action against any third party who may be directly liable to such Holder. *See* Plan § 12.3.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this  14  day of April, 2026, at ___Oakland___, California.

_____
Bradley D. Sharp

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4927-1273-2059.3 78512.001                    6

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION OF THE ESTATE OF LESLIE KLEIN; DECLARATION OF BRADLEY D. SHARP IN SUPPORT THEREOF** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 14, 2026,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) **April 14, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 14, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

| **Via Email:**<br>Eric J Olson:  eric@ejolsonlaw.com<br><br>Leslie Klein:  les.kleinlaw@gmail.com;<br>leskleinlaw@gmail.com; kleinlaw@earthlink.net | **Via Email:**<br>Ron Maroko:  Ron.Maroko@usdoj.gov |
|---|---|

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 14, 2026 | Nancy H. Brown | */s/ Nancy H. Brown* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4927-7189-8017.1 78512.001

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  **Case 2:23-bk-10990-SK**

- **Simon Aron**   saron@wrslawyers.com,
  moster@wrslawyers.com;jlee@wrslawyers.com
- **Reem J Bello**   rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Ron Bender**   rb@lnbyg.com
- **Michael Jay Berger**   michael.berger@bankruptcypower.com,
  yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Greg P Campbell**   ch11ecf@aldridgepite.com,
  gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Baruch C Cohen**   bcc@BaruchCohenEsq.com,
  paralegal@baruchcohenesq.com
- **Theron S Covey**   AttorneyTCovey@gmail.com
- **Daniel A Crawford**   dac@crawfordlawgroup.com
- **Michael G D'Alba**   mgd@lnbyg.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Craig A Edelman**   notice@bkcylaw.com
- **Dane W Exnowski**   dane.exnowski@mccalla.com,
  bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
- **Todd S. Garan**   ch11ecf@aldridgepite.com,
  TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Robert P Goe**   rgoe@goeforlaw.com,
  kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Michael I. Gottfried**   mgottfried@elkinskalt.com,
  lwageman@elkinskalt.com,docketing@elkinskalt.com,lmasse@elkinskalt.com
- **M. Jonathan Hayes**   jhayes@rhmfirm.com,
  matt@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com
- **Brandon J. Iskander**   biskander@goeforlaw.com,
  kmurphy@goeforlaw.com;jfountain@goeforlaw.com
- **Michael S Kogan**   mkogan@koganlawfirm.com
- **Matthew A Lesnick**   matt@lesnickprince.com,
  matt@ecf.inforuptcy.com;jmack@lesnickprince.com;porpe@lesnickprince.com
- **John W Lucas**   jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- **Armen Manasserian**   armen@ml-apc.com, jennifer@ml-apc.com,ruben@ml-apc.com
- **Ron Maroko**   ron.maroko@usdoj.gov
- **Kirsten Martinez**   Kirsten.Martinez@bonialpc.com,
  Notices.Bonial@ecf.courtdrive.com
- **Steven M Mayer**   smayer@mayerlawla.com
- **Christopher M McDermott**   ch11ecf@aldridgepite.com,
  CMM@ecf.inforuptcy.com;cmcdermott@aldridgepite.com
- **Krikor J Meshefejian**   kjm@lnbyg.com

- **Jeffrey P Nolan**   jnolan@pszjlaw.com
- **Eric J Olson**   eric@ejolsonlaw.com
- **Lisa Patel**   lpatel@lesnickprince.com,
  jmack@lesnickprince.com;porpe@lesnickprince.com;lpatel@ecf.courtdrive.com
- **Jeffrey N Pomerantz**   jpomerantz@pszjlaw.com
- **Brian A Procel**   brian@procel-law.com,
  rdankwa@millerbarondess.com;docket@millerbarondess.com
- **Matthew D. Resnik**   matt@rhmfirm.com,
  roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;david@rhmfirm.com
- **Kevin Ronk**   Kevin@portilloronk.com,
  eService@cym.law,karen@cym.law,jodie@cym.law,aileen@cym.law,sarah@cym.law
- **Joshua L Scheer**   jscheer@scheerlawgroup.com,
  jscheer@ecf.courtdrive.com
- **Bradley D. Sharp (TR)**   bsharp@dsi.biz
- **Richard P Steelman**   RPS@LNBYG.COM
- **Nikko Salvatore Stevens**   nikko@cym.law,
  eService@cym.law,karen@cym.law,aileen@cym.law,sarah@cym.law
- **Alan G Tippie**   Alan.Tippie@gmlaw.com,
  atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **Gary Tokumori**   gtokumori@pmcos.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**   mwachtell@buchalter.com,
  marias@buchalter.com;docket@buchalter.com
- **John P. Ward**   jward@attleseyward.com,
  ephuong@attleseyward.com
- **Brett J. Wasserman**   wasserman@smcounsel.com
- **Alex M Weingarten**   aweingarten@willkie.com,
  lcarter@willkie.com
- **Reilly D Wilkinson**   rwilkinson@scheerlawgroup.com,
  rwilkinson@ecf.courtdrive.com
- **Beth Ann R. Young**   bry@lnbyg.com, bry@lnbyb.com
- **Clarisse Young**   youngshumaker@smcounsel.com,
  levern@smcounsel.com
- **Paul P Young**   paul@cym.law,
  eService@cym.law,karen@cym.law,jodie@cym.law,aileen@cym.law,sarah@cym.law,grace@cym.law
- **Roye Zur**   rzur@elkinskalt.com,
  lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

2. **SERVED BY UNITED STATES MAIL**:

Peter C. Anderson, U.S. Trustee
Michael Jones, Assistant U.S. Trustee
Office of the U.S. Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA  90017

Leslie Klein
322 North June Street
Los Angeles, CA 90004

Nathan Talei
Oldman, Sallus & Gold, L.L.P.
16133 Ventura Blvd., PH-A
Encino, CA 91436

Leslie Klein & Associates, Inc.
c/o Leslie Klein
6454 Van Nuys Blvd. Suite 150
Van Nuys, CA 91401

Ron Maroko, Trial Attorney
United States Department of Justice
Office of the United States Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA 90017

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4927-7189-8017.1 78512.001

**F 9013-3.1.PROOF.SERVICE**