Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  jdulberg@pszjlaw.com
          jlucas@pszjlaw.com

Counsel to Bradley D. Sharp,
Liquidating Trustee of the Klein Creditors' Liquidation Trust

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:23-bk-10990-NB |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | **NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING (1) SALE OF REAL PROPERTY COMMONLY KNOWN AS 322 N. JUNE STREET, LOS ANGELES, CALIFORNIA 90036, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (2) CLARIFYING STATE OF TITLE TO PROPERTY PURSUANT TO PRIOR COURT ORDER; AND (3) PAYMENT OF REAL ESTATE BROKERS' COMMISSIONS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF BRADLEY D. SHARP, WILLIAM FRIEDMAN AND JESSICA HEREDIA IN SUPPORT THEREOF** |
| | [322 N. June Street, Los Angeles, CA] |
| | **DATE:**  June 30, 2026<br>**TIME**:    2:00 p.m.<br>**PLACE:** 255 East Temple Street<br>            Los Angeles, California<br>**CTRM**:   1545 (*or via Zoom per posted procedures*) |

LA:4912-5567-6179.3 78512.001

**TO THE HONORABLE NEIL W. BASON UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL INTERESTED BIDDERS, AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

**PLEASE TAKE NOTICE** that on June 30, 2026 at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 1545 of the United States Bankruptcy Court, 255 East Temple Street, Los Angeles, California, Bradley D. Sharp, the liquidating trustee (the "Liquidating Trustee") of the Klein Creditors' Liquidation Trust,[1] will and hereby does move the Court for an order (1) confirming a sale pursuant to 11 U.S.C. § 363 and Local Bankruptcy Rules 6004-1(c) and 9013-1 of the parcel of real property commonly known as 322 N. June Street, Los Angeles, California (the "June Street Property") to the Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust (the "Buyer") or the Buyer's assignee, for $5,140,000.00, subject to higher and better offers to be considered at the hearing on this Motion; (2) clarifying pursuant to a prior order of the Court that the chapter 11 estate (as of December 20, 2024) and now the Klein Creditors' Liquidation Trust,[2] is the titleholder to the June Street Property, for the purposes of completing the sale; and (3) authorizing the Liquidating Trustee to pay real estate brokers' commissions in connection with the sale in accordance with the terms of the brokers' previously Court-approved retention (the "Motion").

The sale is to be "as is" and "where is" with no warranty or recourse whatsoever.  The Liquidating Trustee and the Court may entertain higher and better bids at the time of the hearing on the Motion.

The Motion is based upon this notice of motion, the annexed Memorandum of Points and Authorities, and Declarations of Bradley D. Sharp, William Friedman, and Jessica Heredia, the papers and pleadings in the Debtor's bankruptcy case, and such other evidence that may be presented at the hearing.

---

[1] On April 28, 2026, the Court entered the *Order Confirming Third Amended Chapter 11 Plan* (the "Plan") [Docket No. 1366].  The Plan went effective on May 1, 2026 (the "Plan Effective Date"). *See Notice of Occurrence of Effective Date of Chapter 11 Plan of Liquidation* [Docket No. 1373].  Pursuant to the Plan, the Klein Creditors' Liquidation Trust became effective on the Plan Effective Date, with Bradley D. Sharp serving as the Liquidating Trustee.

[2] See, *supra*, fn. 1.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), any response or opposition must be in writing and filed with the Court and served upon undersigned counsel to the Liquidating Trustee no later than fourteen (14) days prior to the hearing date. Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file any response or opposition may be deemed by the Court to be consent to the approval of the Motion.

Dated: June 9, 2026                      PACHULSKI STANG ZIEHL & JONES  LLP


By  /s/ *Jeffrey W. Dulberg*
          Jeffrey W. Dulberg
          Counsel to Bradley D. Sharp,
          Liquidating Trustee of the Klein Creditors'
          Liquidation Trust

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### STATEMENT OF FACTS

#### A.    Case Background

On February 22, 2023, the Debtor filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code.  On April 24, 2023, creditors Erica and Joseph Vago filed a *Motion for Order Dismissing Debtor's Chapter 11 Bankruptcy Case* (the "Motion to Dismiss") [Docket No. 79].

On May 17, 2023, at a hearing held on the Motion to Dismiss, the Court ruled that the appointment of a chapter 11 trustee, and not dismissal of the case, was in the best interests of the estate.

On May 23, 2023, the UST filed a Notice of Appointment of Chapter 11 Trustee [Docket No. 151], appointing Bradley D. Sharp to serve as chapter 11 trustee (the "Chapter 11 Trustee").  On May 24, 2023, the UST Filed an Application for Order Approving Appointment of Trustee and Fixing Bond [Docket No. 154], approved by order entered the same day [Docket No. 155]. On that same day, the Trustee accepted his appointment [Docket No. 156].

Pursuant to Section 15 of the Plan, which was confirmed by order entered on April 28, 2026 [Docket No. 1366], the Court has jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The contemplated sale and related relief is a core proceeding under 28 U.S.C. § 157(b)(2).

#### B.    History of Litigation To Quiet Title to the June Street Property

As the Court is well aware, the Liquidating Trustee was formerly the Chapter 11 Trustee of the captioned chapter 11 estate.

In his capacity as the Chapter 11 Trustee, he filed a complaint styled as *Sharp v. Leslie Klein*, et al., Adv. Case No. 24-01140, seeking to quiet title on, and obtain full value from, the June Street Property, and to avoid any unrecorded transfers or other interests by virtue of section 544(a)(3) of the Bankruptcy Code.

LA:4912-5567-6179.3 78512.001                                    4

Defendants Leslie Klein (i.e. the Debtor), The Second Amended Klein Living Trust, The Marital Deduction Trust of Erika Klein, The Survivor's Trust of Leslie Klein, and Barbara Klein (collectively, the "Defendants") contended that the June Street Property is owned by the "Marital Deduction Trust," which was purportedly established by the Debtor and his late spouse (Erika Klein) at the time of her death; and that Barbara Klein, the Debtor's current spouse, holds a life-estate in the June Street Property.

On December 18, 2024, Judge Sandra Klein ruled from the bench and granted summary judgment on all counts in the Chapter 11 Trustee's complaint to quiet title of the June Street Property and avoid unrecorded or invalid transfers of the June Street Property. The Court entered an order on December 20, 2024, formally granting the summary judgment motion in favor of the Chapter 11 Trustee and against the Defendants. The Court found that the June Street Property is property of the Estate (and that the Debtor's living trust is "self-settled" and the property therein is in fact property of the Estate) and that all of the unrecorded interests or transfers were avoided. [Adv. Docket No. 62] (the "Summary Judgment Order").

On January 3, 2025, the Defendants appealed the Summary Judgment Order [Lead Case No. 23-10990, Docket No. 67] to the Bankruptcy Appellate Panel ("BAP") (BAP Case No. 25-1002).

On February 27, 2025, the Summary Judgment Order was recorded in the Official Records of the Los Angeles County Recorder's Office as Instrument No. 20250126958.

On April 29, 2025, the Defendants filed a motion to stay the Summary Judgment Order pending appeal [Docket No. 1036], which was denied by order entered May 2, 2025 [Docket No. 1050]. On May 29, 2025, the BAP heard oral argument and on June 5, 2025, issued a memorandum decision [BAP Docket No. 20] (the "Memorandum Decision") affirming the Summary Judgment Order in all respects.

On June 18, 2025, the Defendants filed a Petition for Panel Rehearing with the BAP to revise the Memorandum Decision [Docket No. 24], which was denied by order entered on August 6, 2025 [Docket No. 25].

The Defendants did not take an appeal from the BAP's Memorandum Decision. All of their appeal rights expired. Accordingly, as of the date of entry of the Summary Judgment Order in the

underlying quiet title proceeding, i.e. December 20, 2024, title to the June Street should have been deemed for all purposes to have transferred to the chapter 11 estate.

## C.    Debtor Violates Stay After Losing Summary Judgment Motion

The Debtor did not accept that the Bankruptcy Court and the Bankruptcy Appellate Panel ruled against him "sitting down." Rather, in the Winter of '24-'25, the Debtor led a conspiracy to pry the June Street Property away from his creditors.

On February 25, 2025, the Debtor, in his capacity as trustee of the Credit Trust of the Second Amended Klein Living Trust, issued a fraudulent deed (the "Fraudulent Deed") of the June Street Property to EKLK, an affiliate of the Debtor, in utter disregard for the aforementioned quiet title judgment relating to the June Street Property which was in effect at the time the Debtor issued the Deed and subsequently recorded the Deed on EKLK's behalf.

Accordingly, upon discovering the Fraudulent Deed, on June 12, 2025, the Chapter 11 Trustee filed a Motion for Order (1) Enforcing the Automatic Stay and Voiding Grant Deed; and (2) Sanctions Against (A) the Debtor, (B) Trustee of the Credit Trust of the Second Amended Klein Living Trust, (C) The Credit Trust of the Second Amended Klein Living Trust, and (D) EKLK Foundation [Docket No. 1128], which was approved by order entered on June 18, 2025 [Docket No. 1147] (the "Stay Enforcement Order").

Pursuant to paragraph 3 of the Stay Enforcement Order, the "Trustee is authorized to record a certified copy of this Order to uncloud the title of the June St. Property." Therefore, on June 24, 2025, the Chapter 11 Trustee recorded the Stay Enforcement Order in the Official Records of the Los Angeles County Recorder's Office as Instrument No. 20250418626.

## D.    Clarification of Title to the June Street Property and Re-Quieting of Title

Paragraph 4 of the Stay Enforcement Order states "If the recordation of this Order does not uncloud title of the June St. Property, the Trustee may seek further relief for the purpose of re-quieting title of the June St. Property as necessary." When issuing the Stay Enforcement Order, the Court was clearly keenly aware that between the results of the long-fought quiet title action and the confusion caused by the Fraudulent Deed, it could prove difficult for the appropriate governmental

agencies to properly reflect and record the state of the June Street Property's title (i.e. 100% held by the Chapter 11 Estate).

Unfortunately, this has proven to be the case. Precisely due to the confusion generated by the Debtor's wrongful recordation of the Fraudulent Deed, the Liquidating Trustee (who stands in the same shoes as the Chapter 11 Trustee did prior to the Plan Effective Date), now requires further relief in order to close a sale of the June Street Property. Pursuant to a preliminary title report dated May 5, 2026 (the "Title Report"), title to the June Street Property is incorrectly held by Leslie Klein and Erika Noemi Klein, as Trustees under the Klein Living Trust of 1975, as to an undivided one-half interest and EKLK Foundation, as to an undivided one-half interest. A true and correct copy of the Title Report is attached hereto as **Exhibit B** and incorporated herein by reference. This is obviously solely due to the impact of the Fraudulent Deed.

While the recorded Summary Judgment Order found that the June Street Property is property of the Estate, pursuant to the Title Report, there appears to be some confusion with the Assessor's office with respect to the chain of title that was caused by the Fraudulent Deed. Specifically pursuant to paragraph 4 of the Stay Enforcement Order, the Liquidating Trustee respectfully requests that the Court issue an order stating that title to the June Street Property is held solely by the Klein Creditors' Liquidation Trust in accordance with the Summary Judgment Order and the Plan.

E.      **Proposed Sale of the June Street Property**

1.      The Property

The property to be sold consists of all of the Klein Creditors' Liquidation Trust's right, title, and interest in residential real property located at 322 N. June Street, Los Angeles, California (i.e., the June Street Property).

2.      The Real Estate Broker and Its Marketing Efforts

On February 19, 2025, the Chapter 11 Trustee filed an *Application to (A) Employ Coldwell Banker Realty As Real Estate Broker and (B) Enter Into Exclusive Listing Agreement* (the "Employment Application") [Docket No. 931] in connection with the marketing and sale of the June Street Property. The Employment Application was approved by order entered on May 21, 2025 [Docket No. 1093].

Pursuant to the Employment Application, William Friedman and Jessica Heredia ("Heredia") were the Coldwell Banker realtors hired to market and sell the June Street Property. On or about February 20, 2026, Heredia left her position at Coldwell Banker and subsequently was hired as a sales manager at Sotheby's International Real Realty ("Sotheby's").[3]  Both Coldwell Banker and Sotheby's (together, the "Broker") have marketed the June Street Property for sale and will share the Broker's split of the commission, to be divided as follows: two percent (2.00%) to Buyer's Broker and two and one-half percent (2.50%) to the Broker.

On September 29, 2025, following an inspection, the Broker listed the June Street Property on the market. The Broker showed the June Street Property to approximately thirty-four (34) potential purchasers. The marketing efforts of the Broker are discussed in the accompanying declarations of William Friedman and Jessica Heredia.

3.    The Proposed Sale

The Liquidating Trustee received through his Broker an offer from the Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust (the "Buyer") to purchase the June Street Property.  The Buyer is represented by The Agency.  Following negotiations, the Liquidating Trustee and the Buyer entered into an agreement for the Liquidating Trustee to sell the June Street Property to the Buyer for $5,140,000.00, subject to Court approval and overbids (the "Accepted Counter-Offer").  A true and correct copy of the Accepted Counter-Offer is attached as **Exhibit A** and incorporated herein by reference.[4]

With respect to income tax consequences to the Klein Creditors' Liquidation Trust, the Liquidating Trustee does not anticipate a taxable gain from the sale of the June Street Property.

---

[3] *See* Supplement to Chapter 11 Trustee's Application to (A) Employ Coldwell Banker Realty as Real Estate Broker and (B) Enter Into Exclusive Listing Agreement; Supplemental Declaration of Jessica Heredia [Docket No. 1309].

[4] On May 26, 2026, the Buyer and the Liquidating Trustee signed amended escrow instructions (the "Amended Escrow Instructions"), (a) reducing the Accepted Counter Offer from $5,175,000.00 to $5,140,000.00, and (b) amending name of Buyer to Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust . The Amended Escrow Instructions are incorporated herein and made part of the Accepted Counter Offer.

The proposed sale terms of the June Street Property were reached via arms-length negotiations, and the proposed sale is "as is," "where is," "with all faults," with no warranty or recourse whatsoever, and is subject to overbid and Court approval.

The Accepted Counter-Offer is the highest and best offer the Liquidating Trustee has received to date for the June Street Property.  The Broker will continue to market the June Street Property pending the hearing on the Motion and will also post the hearing date of the Motion on the Multiple Listing Service inviting prospective overbidders to attend the hearing.

4.    Identity of Liens and Claims against the June Street Property

According to the Title Report, the liens and claims of record against the June Street Property consist of the following:

(a)    Real property taxes for the fiscal year 2026-2027.

(b)    General and special city and/or county taxes for the fiscal year 2025-2026.

(c)    Delinquent Property taxes for the fiscal years 2019-2020, 2021-2022, and 2023-2024.

(d)    Homestead Declaration executed by Leslie Klein, recorded on May 10, 2023, as Instrument No. 20230302966 of the Official Records.

(e)    Matters contained in document entitled United States Bankruptcy Court Central District of California Los Angeles Division recorded January 31, 2024 as Instrument No. 20240067815 of the Official Records.

(f)    Matters contained in document entitled "Order Granting Motion for Summary Judgment on all claims for Relief against Defendants" recorded February 27, 2025 as Instrument No. 20250126958 of the Official Records.

(g)    Matters contained in document entitled "Order Granting motion of Chapter 11 Trustee to enforce the automatic stay and void grant deed, and Granting in part request for sanctions" recorded June 24, 2025 as Instrument No. 20250418626 of Official Records.

(h)    Matters contained in document entitled "Order Granting Motion of chapter 11 trustee (1) Restoring possession of the property located at 322 N. June st., Los Angeles California to

LA:4912-5567-6179.3 78512.001                           9

the trustee and compelling debtor to vacate the property" by and recorded February 27, 2025 as Instrument No. 20250126956 of the Official Records.

(i)    Matters contained in document entitled "Order Granting Motion of Chapter 11 Trustee (A) Enforcing Automatic Stay, (B) Expunging Lis Pendens" recorded October 08, 2025, as Instrument No. 20250696275, of the Official Records.

(j)    Notice of power to sell tax defaulted real property for non-payment of delinquent taxes for the fiscal year 2019-2020 in the original amount of $7,349.72, recorded November 21, 2025, as Instrument No. 20250831414, of Official Records.

5.    Proposed Treatment of Liens and Other Interests

The Liquidating Trustee intends to sell the June Street Property free and clear of all liens, claims, encumbrances and interests as provided below, with all such liens, claims, encumbrances and interests removed from the June Street Property and the allowed amounts of certain liens and claims to be paid through escrow, and any disputed sums to attach to like amounts of the net sale proceeds, with the same force, effect, validity and priority that they had as of the petition date as against the June Street Property, as follows:

The sale will be free and clear of any lien for real property taxes accrued prior to the date of the close of the sale.  The Liquidating Trustee will pay the real property taxes for the fiscal year 2026-2027 based on the proportion of the first installment period that runs through the closing date. The Buyer will be responsible for such taxes thereafter.  The Liquidating Trustee will also pay taxes pursuant to the Seller's closing statement, which amounts include transfer taxes, default taxes for tax years 2019-2020, 2021-2022, and 2023-2024, as well as penalties for the tax year 2025-2026.

6.    Proposed Overbid Procedures

The Liquidating Trustee requests that the Court approve the following overbid procedures:

(a)    The proposed sale is subject to higher and better bids. Overbidders must appear at the sale hearing concerning approval of this Motion.  Not later than forty-eight (48) hours prior to the hearing, overbidders must deliver to the undersigned counsel for the Trustee: (1) a cashier's check in the amount of $154,500.00 (i.e., 3.00% of the minimum overbid amount of $5,150,000.00) payable to "Bradley D. Sharp, Liquidating Trustee of the Klein Creditors'

Liquidation Trust"; (2) written proof of ability to close escrow unconditionally in a form acceptable to the Liquidating Trustee; and (3) a written offer to purchase using the form attached hereto as **Exhibit C.** Bidding, if any, shall proceed in increments of $10,000.00.[5] The Liquidating Trustee retains sole discretion to accept or reject any and all overbids.

(b)    Any prevailing overbidder's deposit shall be nonrefundable in the event that the Court confirms the sale to that party but, for any reason whatsoever, the party fails to close the sale timely. The overbidding party will be bound by all the terms of the proposal set forth in the agreement proposed for confirmation except as to price, without contingencies, including any financing contingency, and shall close the escrow no later than the first business day which is more than 14 calendar days after the entry of an order approving the sale.

(c)    The Liquidating Trustee proposes that the Court confirm a back-up buyer so that, in the event that the prevailing buyer fails to close the sale timely, the Liquidating Trustee may sell the June Street Property to the back-up buyer for the amount of such back-up buyer's last bid. The Trustee will be authorized to hold the back-up buyer's deposit pending the closing of the sale to the prevailing bidder.  If the prevailing bidder closes the sale, the Liquidating Trustee will immediately return the back-up buyer's deposit.

(d)    If the prevailing buyer fails to close the sale timely, the back-up buyer will be bound by all the terms of the proposal set forth in the agreement proposed for confirmation except as to price, without contingencies, including any financing contingency, and shall close the escrow within ten (10) calendar days after written notice from the Liquidating Trustee that the prevailing buyer has defaulted. The back-up buyer's deposit shall be nonrefundable in the event that the back-up buyer fails to close the sale timely.

7.    Payment of Commissions to Real Estate Broker through Escrow

---

[5] The Liquidating Trustee reserves the right to eliminate minimum bidding increments in order to maximize value.  In addition, due to the impact of Los Angeles's "mansion tax" (known as Measure ULA), in the event bidding reaches $5,399,000.00, the next available minimum overbid amount shall be $5,648,000.00.  As such, any overbid between $5,400,000.00 and $5,647,999.00 will not be accepted and shall be considered null and void.

The Liquidating Trustee seeks authority to pay commissions of the brokers through escrow. The Liquidating Trustee proposes to pay an aggregate commission of four and one half percent (4.50%) of the purchase price of the June Street Property to the brokers as follows: Two and one-half percent (2.50%) to be split between Coldwell Banker and Sotheby's as the Liquidating Trustee's broker in connection with the closing of this sale; and two percent (2.00%) to The Agency as the Buyer's broker in connection with the closing of this sale.  If a sale of the June Street Property is closed as a result of a higher and better offer to overbidder(s) represented by different broker(s), then the proposed commission for the June Street Property will follow the same split guidelines.

8.      Good Faith Finding

The Liquidating Trustee requests that the Court make a finding that the confirmed Buyer and any back-up bidder(s) are good-faith purchasers within the meaning of 11 U.S.C. § 363(m).

**II.**
**ARGUMENT**

**A.      The Trustee May Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b)**

Section 363(b) of the Bankruptcy Code empowers a trustee to "use, sell or lease . . . other than in the ordinary course of business, property of the estate.".  In considering a proposed transaction to use, sell, or lease, courts look at whether the transaction is in the best interests of the estate based on the facts and history of the case.  *In re America West Airlines,* 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (*citing In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for the proposed sale.  *In re 240 North Brand Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir. 1996); *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.,* 209 B.R. 974 (Bankr. W.D. Wash. 1997).

In approving any sale outside the ordinary course of business, there must be a sufficient business reason for the sale, and it must be in the best interest of the estate.  Here, the proposed transaction has a legitimate business justification and is in the best interest of the beneficiaries entitled to distribution under the Plan.

**B.      The Trustee May Sell the June Street Property Free and Clear of Liens, Claims and Interests**

The Liquidating Trustee seeks authority to sell the June Street Property free and clear of all liens and encumbrances pursuant to 11 U.S.C. § 363(f) which provides:

> The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -
>
> (1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)      such entity consents;
>
> (3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)      such interest is in bona fide dispute; or
>
> (5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Because subsections (1) through (5) of Bankruptcy Code § 363(f) are written in the disjunctive, authority to sell the June Street Property free and clear of any and all interests therein should be granted if any of the conditions are met with respect to each interest holder.  In this case, the Liquidating Trustee seeks to sell the June Street Property free and clear of all liens and claims, except as otherwise provided. The purchase price for the June Street Property will be at least $5,140,000.00 which is sufficient to satisfy the amount of real property taxes due.  11 U.S.C. § 363(f)(3).  The Liquidating Trustee seeks authority to pay the allowable and undisputed amounts for the foregoing items from escrow with disputed amounts attaching to the net sale proceeds with same force, effect, validity and priority that it had as to the June Street Property as of the commencement of the case.

**C.      The Buyer Should Be Deemed "Good Faith Purchasers" Pursuant to 11 U.S.C. § 363(m)**

11 U.S.C. § 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

LA:4912-5567-6179.3 78512.001                    13

A good faith purchaser is one who buys in good faith and for value. *Ewell v. Diebert (In re Ewell),* 958 F.2d 276, 281 (9ᵗʰ Cir. 1992).  Although the Bankruptcy Code does not define "good faith," courts have provided guidance as to the appropriate factors to consider.  *See id*. (lack of good faith generally shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders); *In re Pine Coast Enters., Ltd*., 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ("[t]he requirement that a purchaser act in good faith speaks to the integrity of its conduct in the course of the sale proceeding."); *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990) ("[t]he purpose of Section 363(m) is to disable courts from backtracking on promises with respect to bankruptcy sales in the absence of bad faith.").

Here, the June Street Property has been and continues to be listed on the Multiple Listing Service and notice of the June Street Property's sale has been posted on the United States Bankruptcy Court's website. The Liquidating Trustee has negotiated in good faith with the Buyer. Moreover, the sale is subject to overbid, and the notice of the Motion has been served on all creditors and interested parties.  Thus, the Liquidating Trustee requests that the Court make a finding that the confirmed Buyer(s) and any back-up buyer(s) are good faith purchasers of the June Street Property within the meaning of 11 U.S.C. § 363(m).

**D.**     **Waiver of Stay under Federal Rule of Bankruptcy Procedure 6004(h)**

Federal Rule of Bankruptcy Procedure 6004(h) provides that an "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Liquidating Trustee requests that if the Court approves the sale proposed by this Motion, that it also waive the 14-day stay under FRBP 6004(h).  In that regard, the Advisory Committee Notes to the 1999 Amendments to FRBP 6004 state that the Court "may, in its discretion, order that [the 14-day stay] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court".

LA:4912-5567-6179.3 78512.001                                    14

## III.
## CONCLUSION

Based on the foregoing, the Liquidating Trustee respectfully requests that this Court enter an order:

1.      Granting the Motion;

2.      Approving the terms of the Accepted Counter-Offer attached and authorizing the Trustee to sell the June Street Property to the Buyer, Successful Bidder, or the Back-Up Bidder, "as is," "where is," "with all faults," and without warranty or recourse, but free and clear of any and all liens, claims, and interests, except as set forth herein, together with all improvements, as well as all easements and appurtenances, pursuant to 11 U.S.C. §§ 363(b) and (f);

3.      Determining that the Buyer, the Successful Bidder, and the Back-Up Bidder are "good faith purchasers" pursuant to 11 U.S.C. § 363(m);

4.      Attaching to the net sales proceeds any unpaid portion of the liens and judgments in the same value, priority and scope as such liens currently exist against the June Street Property, subject to any and all of the Liquidating Trustee's rights to object to, dispute, or subordinate such lien;

5.      Reserving to the Liquidating Trustee all rights to object to the validity, scope and priority of all disputed liens, claims and interests;

6.      Approving the overbid procedures outlined in the Motion;

7.      Authorizing the Liquidating Trustee to take any and all necessary actions to consummate the sale of the June Street Property;

8.      Authorizing the Liquidating Trustee to pay, through escrow, from the proceeds of the sale of the June Street Property and without further order of the Court any escrow fees, title insurance premiums and other ordinary and typical closing costs and expenses payable by the Liquidating Trustee pursuant to the Accepted Counter-Offer or in accordance with local custom;

9.      Clarifying that the chapter 11 estate, and now the Klein Creditors' Liquidation Trust, is the titleholder to the June Street Property, for the purposes of completing the sale;

10.      Waiving any requirements for lodging periods of the order approving this Motion imposed by Local Bankruptcy Rule 9021-1 and any other applicable bankruptcy rules;

LA:4912-5567-6179.3 78512.001                    15

11.     Waiving the stay of the order approving this Motion imposed by Federal Rule of Bankruptcy Procedure 6004(h) and any other applicable bankruptcy rules; and

12.     For such other and further relief as the Court may deem just and proper.

Dated:    June 9, 2026                          PACHULSKI STANG ZIEHL & JONES  LLP


By  */s/ Jeffrey W. Dulberg*
            Jeffrey W. Dulberg
            Counsel to Bradley D. Sharp, Liquidating
            Trustee of the Klein Creditors' Liquidation
            Trust

LA:4912-5567-6179.3 78512.001                          16

# EXHIBIT A

## COUNTER-OFFER

This agreement (the "Agreement" or "Counter-Offer") is intended to set forth the terms and conditions of a contract for the purchase by and sale to Bruce Cohen and Mary Louise Cohen (the "Buyer") from Bradley D. Sharp (the "Seller" or "Trustee"), solely in his capacity as the duly appointed, qualified, and acting chapter 11 trustee for the bankruptcy estate of Leslie Klein ("the "Debtor"), of the real property more commonly known as 322 N. June Street, Los Angeles, California (the "Property").  When executed below, this Agreement will constitute conclusive evidence and the exclusive terms and conditions of the contract for such purchase and sale (the "Sale") of the Property and will supersede and replace in its entirety Buyer's written Purchase Agreement and all attachments in support thereof dated May 12, 2026 (the "Offer") and any oral or written negotiations since the Offer.

**PURCHASE PRICE; DEPOSIT; ESCROW.**  The purchase price for the Property shall be **$5,175,000** (the "Purchase Price"). Buyer shall make an initial deposit of **$155,250** (the "Initial Deposit") in the form of cashier's check or wire transfer made payable to "A&A Escrow Services, Inc." (the "Escrow Holder") which shall be delivered to A&A Escrow Services, Inc., 15250 Ventura Blvd, suite 715, Sherman Oaks, California, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement.

**FINANCIAL WHEREWITHAL.**  Buyer shall deliver to the Seller, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement, proof of committed funds available to Buyer sufficient to enable Buyer to consummate the acquisition contemplated herein, which proof shall be in the form of a letter of credit, loan commitment, or other form acceptable to Seller in Seller's sole discretion.  In the event that either (i) Buyer fails timely to provide any such proof, or (ii) Seller determines, in Seller's sole discretion, that any proof of funds provided to Seller by Buyer is unacceptable, Seller shall have the right, at Seller's option, to provide written notice to Buyer that this Counter-Offer is terminated.  In the event that Seller exercises such termination right, this Counter-Offer shall terminate effective as of the date of Seller's written notice to Buyer, whereupon the Initial Deposit (if theretofore deposited with the Escrow Holder) shall be returned to Buyer and Buyer and Seller shall each be relieved of any further obligations hereunder.

**ESCROW INSTRUCTIONS.**  Escrow instructions corresponding to the terms of this Agreement shall be provided by the Escrow Holder and signed by the parties within five (5) business days of the date of Buyer's and Seller's receipt of said escrow instructions.  Buyer and Seller shall deposit such documents and instruments with the Escrow Holder as and when reasonably required to complete the sale.  Prior to the Trustee's filing of his motion to approve the sale of the Property, Buyer shall be free to assign this Agreement to another person or entity (the "Assignee") subject to Seller's prior review and written approval (which approval Seller may grant or withhold in his sole discretion), but Buyer shall remain liable

Docusign Envelope ID: 2F3G3B49-761E-8FB7-8040-F52B788152D7

hereunder, together with such Assignee, in the event that such Assignee fails to perform any of Buyer's obligations hereunder.  Buyer shall not assign this Agreement to another person or entity after the Trustee has filed his motion for approval of the sale of the Property with the Bankruptcy Court.

**BUYER'S DUE DILIGENCE AND CANCELLATION RIGHT.**  Buyer shall have ten (10) calendar days from the date of execution hereof to perform, complete, and satisfy all contingencies, inspections, investigations, tests and reviews of reports, insurance and to complete all due diligence which Buyer desires for the Sale of the Property, including, but not limited to performing and completing any geological, soil, structural, environmental, or other tests, inspections, and investigations desire by Buyer.  Buyer may, not later than the end of the ten (10) calendar day due diligence period, provide Seller written notice of Buyer's election to withdraw from this Agreement because of Buyer's inability to complete or dissatisfaction with the results of any of those matters (the "Notice of Cancellation"), in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of Buyer's deposit.  If Buyer fails to give such Notice of Cancellation within such due diligence period, all such contingencies shall be automatically removed and Buyer's obligation to proceed shall be non-contingent except as provided herein for (i) Buyer's review of a preliminary title report and underlying documents respecting the title to the Property (as set forth below), and (ii) Bankruptcy Court approval of this Agreement and the Sale (as set forth below).

**APPRAISAL AND FINANCING**.  Buyer is paying all cash and waives the appraisal and financing contingencies.

**TITLE; TITLE INSURANCE.**  Within three (3) business days after acceptance of this Agreement, Stewart Title Company or such other title company of Seller's choice (the "Title Company") will be instructed to provide a preliminary report of the condition of title to the Property, including copies of underlying documents referred to in Schedule B thereof, for Buyer's review.  Buyer shall have 10 calendar days after receipt of the preliminary title report and underlying documents in which to provide Seller written notice (the "Notice of Title Disapproval") that Buyer disapproves the condition of title with respect to a material matter(s) that interfere with the use or marketability of the Property for the purpose for which it is currently used or intended to be used.  Such notice must refer to the specific exception(s) in Schedule B of the preliminary title report and the specific underlying document(s) which are the basis for Buyer's disapproval.  Within five (5) business days after receipt of the Notice of title Disapproval, Seller may, in Seller's sole discretion, either (i) cancel this Agreement and the Sale, in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of the Initial Deposit, or (ii) elect to correct the item(s) that were disapproved by Buyer, in which event the Sale shall proceed.  Seller may correct such item by any means that will result in the Title Company either removing the disapproved exception(s) from the preliminary report, providing title insurance coverage by endorsement against such exception(s), or providing that the order approving the Sale entered by the Bankruptcy Court shall resolve such exception.  At the close of the Sale, Seller shall convey and Buyer shall accept title to the Property as shown in Schedule B of the preliminary title report, subject to any corrections as in this paragraph above, free and clear of

all monetary liens, subject to the terms of the Agreement and the order approving the Sale. Seller shall pay the costs of a CLTA Standard Owner's policy of title insurance.

**REMOVAL OF CONTINGENCIES; COURT CONFIRMATION; CLOSING; DELIVERY OF POSSESSION.** If Buyer does not give Seller written Notice of Cancellation or Notice of Title Disapproval as and when provided in this Agreement, Buyer's silence shall be deemed acceptance and Buyer shall be deemed to have satisfied and removed all of Buyer's contingencies and to proceed with the Sale. Seller shall then file a motion with the Bankruptcy Court to confirm the Sale, which sale shall be subject to qualified overbids as approved by the Bankruptcy Court. Upon such removal of contingencies, Buyer shall be unconditionally obligated to proceed with the Sale, subject only to Bankruptcy Court confirmation as set forth below. If the Bankruptcy Court confirms the Sale to Buyer, the closing shall take place as soon as practicable after entry of the order approving the Sale, but no later than the later to occur of (i) the first business day after fourteen (14) calendar days following the entry of the operative Order of the Bankruptcy Court approving the Sale or (ii) if the effectiveness of the Order of the Bankruptcy Court approving the Sale is stayed, the first business day after the Order is no longer stayed (the "Closing Date"). The closing shall occur on the date the deed transferring the Property to Buyer is recorded with the County Recorder where the Property is located. Property shall be delivered vacant at close of escrow.

**BANKRUPTCY SALE.** Buyer acknowledges that Seller is a trustee duly appointed to administer the Debtors' bankruptcy estate, and is a party to this Agreement solely in that capacity. Seller and his brokers and agents (collectively, the "Seller's Brokers") have not and will not determine the condition or fitness for use of the Property for any particular purpose. The Sale shall be "as is," "where is," "with all faults," and with no warranty by or recourse whatsoever to Seller or Seller's Brokers herein. Transfer of the Property shall be by Quitclaim Deed. All parties acknowledge that Seller is a party to this Agreement solely in his capacity as trustee of the Debtors' estate and that in the event of any default in the performance of any of Seller's obligations under the Offer (as modified hereby) or in the event that any other claim is asserted against Seller, the Trustee, or the estate in connection with this transaction, the Trustee shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Buyer's sole recourse, if any, in such event shall be to the assets of the Debtors' estate.

**TAXES; PRORATIONS; COSTS OF SALE.** All real property taxes and assessments for the current tax year shown in the current County Tax Bill shall be prorated between Seller and Buyer and charged as of the closing date to the applicable accounts of Seller and Buyer. The Sale shall be free and clear of any homeowner's association assessments and all real property taxes (other than those prorated as provided above) enforceable against the Property through the closing date of the Sale. Escrow fees shall be split between Buyer and Seller in the manner customary in the County where the Property is located. Seller shall pay any real property transfer tax. Seller shall pay the cost of a Natural Hazard Disclosure Report, from a vendor selected by Seller, to be furnished to Buyer through escrow. Buyer shall pay and have sole responsibility for compliance with any requirements imposed on the Property or this Sale by any governmental agency(ies), including compliance with any applicable governmental retrofit requirements. Buyer shall pay the cost of recording the deed. Buyer and Seller shall each pay their own expenses of

every other type except as specifically provided in this Agreement.

**BANKRUPTCY COURT APPROVAL; OVERBIDDING.**  The Sale is subject to notice to creditors, approval by the Bankruptcy Court, and better qualified bids received by Seller through and including the Bankruptcy Court hearing to confirm the Sale.  Payment of any and all real estate brokers' commissions is also subject to notice to creditors and approval by the Bankruptcy Court.  Buyer acknowledges and agrees that Seller may not seek to obtain the Bankruptcy Court's approval if Seller has determined that it would be in the best interest of the bankruptcy estate not to do so.  Buyer acknowledges and agrees that if the Bankruptcy Court approves the Sale to a different buyer (the "Successful Overbidder") at the hearing on the Sale, the Trustee may hold the Buyer's deposit pending close of the Sale to the Successful Overbidder and, if the Successful Overbidder does not timely close its purchase of the Property, the Trustee has the right to close the Sale to the Buyer at the Purchase Price hereunder, or such higher price as the Buyer may have bid at the hearing on the Sale.

**BROKERS.**  Seller is represented by Coldwell Banker and Sotheby's International.  Buyer is represented by The Agency. Subject to Bankruptcy Court approval, Seller will pay a real estate broker's commission aggregating 4.5% of net sales price of the Property as follows: 1.25% to Coldwell Banker, 1.25% to Sotheby's International and 2% to The Agency in connection with the closing of the Sale.  Seller's Brokers and Buyer's Brokers are collectively referred to herein as the "Brokers".  No commission or compensation shall be due or payable to Brokers in connection with this Agreement or Sale except from the cash proceeds of an actual Sale of the Property that closes to Buyer.  Buyer hereby represents and warrants that, other than the Brokers, Buyer has not dealt with any broker, finder, or other person entitled to any fee, commission, or other compensation in connection with the Sale and Buyer shall indemnify, defend, protect, and hold Seller and the related bankruptcy estate harmless of, from, and against any claims, demands, actions, causes of action, losses, liabilities, costs, and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as Seller may suffer or incur in the event that any claims for any such fees, commissions, or other compensation of any kind are hereafter asserted.

**MATERIAL CHANGE OF CONDITION.**  In the event of any material change in the condition of the Property after the date of acceptance of this Counter-Offer, if Buyer demands repair of any resulting actual damage to the Property, Seller may, at Seller's sole option: (i) elect to terminate this Agreement, in which event Buyer's and Seller's obligations to buy or sell shall terminate and the Initial Deposit shall be refunded to Buyer without interest; or (ii) make required repairs at the bankruptcy estate's expense; or (iii) assign any insurance proceeds for the damage to the Property to Buyer as of the close of the Sale; or (iv) credit the cost of such repairs to Buyer through escrow, it being agreed that in the event that Seller elects and complies with subpart (b), (c), or (d) of this paragraph, Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property. Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property.

**REMEDY FOR BUYER'S OR SELLER'S FAILURE TO CLOSE.**  Buyer's sole remedy in the event that the Sale fails to close as a result of Seller's inability or failure to close for any reason, including but not limited to the reason of failure to obtain approval of the Sale by the Bankruptcy Court, shall be the mutual release of Buyer's and Seller's obligations to buy or

sell and a full refund of the Initial Deposit (plus any increase thereof by Buyer).  In the event Buyer fails to close the Sale for any reason other than Seller's default, after Buyer's contingencies have been removed as under this Agreement, Buyer's Initial Deposit (plus any increase thereof by Buyer) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action.  This provision shall apply equally to the Initial Deposit (and any increase thereof by Buyer) without interest. If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT, BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R.FORM RID).

Initial *BC*    Initial *MLC*    [Buyer(s) Initials]

**BANKRUPTCY COURT JURISDICTION.**   The United States Bankruptcy Court for the Central District of California, Los Angeles Division shall have sole and exclusive jurisdiction to interpret and enforce the terms of this Agreement and Buyer hereby consents and submits to such exclusive jurisdiction.  This Agreement shall be interpreted and enforced pursuant to the laws of the State of California, the United States of America, and title 11 of the United States Code.

**"AS-IS," "WHERE-IS" CONDITION; NO WARRANTIES.**   Buyer acknowledges and agrees that, to the maximum extent permitted by law, the sale contemplated by this Agreement is made "as-is," "where-is," and "with all faults," except as specifically provided in this Agreement.  Seller and Seller's Brokers have not made, do not make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever, whether express or implied, oral or written, concerning or respecting (i) the value of the Property; (ii) the income to be derived from the Property; (iii) the suitability of the Property, or lack thereof for any activity or use which Buyer may intend to conduct thereon, including any possibilities or limitations for future development; (iv) the habitability, merchantability, marketability, profitability, or fitness for a particular purpose, of the Property, or lack thereof; (v) the manner, quality, state of repair, or lack of repair of the Property; (vi) the nature, quality, or condition of the Property, or any portion, system, or component thereof, including without limitation, water, soil, and geology; (vii) the compliance of the Property or its operation, or lack thereof, with any laws, ordinances, regulations, rules, or orders of any applicable governmental authority or body; (viii) the manner or quality of engineering, design, construction or materials, if any, incorporated into the Property; (ix) the compliance or lack of compliance with any land use, building and safety, or other laws, ordinances, regulations, rules, orders, or other requirements imposed or enforced by any governmental or non-governmental body, including without limitation the Americans with Disabilities Act of 1990; (x) the presence or absence at, on, under, or adjacent to the Property, of materials described as "hazardous substances, hazardous

Docusign Envelope ID: 2F3G3B49-761E-8FB7-8940-F52B788152D7

materials, or toxic substances" or by similar terms under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§ 9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. §§1801, et seq.), the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901, et seq.), the Toxic Substance Control Act (15 U.S.C. § 2601, et seq.), the Clean Water Act (33 U.S.C. § 1251, et seq.), California Health and Safety Code §§ 25117 or 25316, or other statutes and laws, all as amended and including all regulations issued thereunder; (xi) the content, completeness or accuracy of any due diligence materials or preliminary report regarding title to the Property; (xii) the conformity or lack of conformity of the improvements to any plans or specifications for the Property, including any plans and specifications that may have been or may be provided to Buyer; (xiii) the conformity or lack of conformity of the Property to past, current, or future applicable zoning or building requirements; (xiv) any deficiency of any undershoring, drainage, or other aspects, systems, or components of or affecting the Property; (xv) the fact, if applicable, that all or a portion of the Property may be located on or near any natural hazard zone as determined by any governmental agency or body; (xvi) the existence of vested land use, zoning, or building entitlements affecting the Property or any other property; or (xvii) any other matter.  Without in any manner limiting the foregoing, Buyer hereby acknowledges and agrees that (i) Seller's Brokers have provided (and will hereafter provide) to Buyer various materials and information relating to the Property, including, without limitation, information and materials relating to the condition of the Property, and (ii) all such materials and information so provided to Buyer by Seller's Brokers shall, for all purposes of this Agreement, be deemed to have been disclosed to Buyer by the Seller, as well.

**BROKERS.**  Seller's Brokers herein have not and will not perform any inspections, investigations, or due diligence on behalf of Buyer unless otherwise specified herein. Buyer is informed that Buyer must arrange for any inspections and investigations desired by Buyer utilizing suitable third party professionals selected and compensated by Buyer.  In no event shall Seller have any liability or responsibility for any representation, warranty, statement made, or information furnished by Seller's Brokers, or any other person or entity, concerning the Property, this Agreement, or any other matter, unless expressly set forth in writing and signed personally by Seller.

**OPPORTUNITY TO INSPECT; BUYER'S SOLE RELIANCE.**  Buyer represents, warrants, acknowledges, and agrees that Buyer has been given the opportunity to inspect and investigate the Property and all other facts and circumstances deemed by Buyer relevant and significant, and to review information and documentation affecting the Property.  In deciding to proceed with the Sale, Buyer is relying solely on Buyer's own inspections and investigation of the Property (including by any outside professionals whom Buyer has elected to engage for such services) and review of such information and documentation, and not on any information provided or to be provided by Seller.  Buyer further acknowledges and agrees that any information made available to Buyer or provided or to be provided by or on behalf of Seller with respect to the Property was obtained from a variety of sources and that neither Seller nor Seller's Brokers nor any other person has made or makes any representations as to the accuracy or completeness of such information.  Buyer hereby fully and irrevocably

releases all such sources and preparers of information and documentation affecting the Property which were retained or engaged by Seller or Seller's Brokers from any and all claims that Buyer may now or hereafter have against such sources and preparers of information, for any costs, expenses, losses, liabilities, damages, demands, actions, or causes of action arising from any such information or documentation. NEITHER SELLER NOR BROKERS HAVE PROVIDED OR WILL PROVIDE ANY LEGAL OR TAX ADVICE TO BUYER. Buyer is informed that Buyer must obtain any such advice, if desired by Buyer, from independent professionals selected and engaged by Buyer.

**PHYSICAL, GEOLOGICAL, PEST CONTROL, AND ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS.**

A. BUYER SHALL CONDUCT THOROUGH PHYSICAL, GEOLOGICAL, PEST CONTROL, ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS MAY BE DETERMINED BY BUYER, THROUGH QUALIFIED PROFESSIONALS SELECTED BY BUYER. Seller and Seller's Brokers strongly recommend that Buyer fully exercise and not waive such inspections and investigations.

B. Buyer shall select and employ, at Buyer's sole expense, a licensed engineer(s), architect(s), contractor(s), geologist(s), pest control licensee(s), environmental consultant(s), or other qualified professional(s), to make inspection(s) and investigations of the Property, including, but not limited to, (i) its general structure, plumbing, heating, air conditioning (if any), electrical system, built-in appliances, cesspool/sewer/septic system, well, roof, soils, foundation, mechanical systems, pool, spa, related equipment and filters, sprinklers, and those other matters affecting the desirability of the Property (all if and only to the extent any such structures, systems, and components are presently a part of the Property); (ii) any actual or potential wood destroying pests or other conditions damaging to the Property or any portion thereof; (iii) environmental hazards, substances, products, or conditions, including without limitation, asbestos, formaldehyde, lead, lead-based paint, contaminated soil or water, fuel, chemical storage tanks, hazardous waste, electromagnetic fields, and radon gas, any of which may constitute a health risk; (iv) the presence or absence of any required governmental permits, inspections, applications, approvals, and certificates of occupancy, and compliance or lack of compliance with building codes and laws applicable to the Property; (v) plans and specifications for the Property; (vi) all applicable zoning, municipal, county, state, and federal, including those affecting the past, current, or any future use of the Property; (vii) deed restrictions and other matters of public record which may govern, restrict, condition, or prohibit the use, alteration, or development of the Property; and (viii) generally, without limitation, any and all other items and matters of whatsoever nature, character, or description, which Buyer deems material to Buyer's interests, in, on, or affecting the Property, and to approve or disapprove said inspection within the period and in the manner set forth in this Agreement.

**ITEMS INCLUDED IN PURCHASE PRICE**. The following shall be included without warranty: Refrigerator(s)/Dishwasher(s)/Oven(s), all window drapes and curtains.

**HPOZ.** The property is located in the Hancock Park Historic Preservation Overlay Zone.

**RETROFITTING.** All required retrofitting including but not limited to the payment of City Report (if report is required), installation of smoke and carbon monoxide detectors, low flow toilets and compliance with all governmental agencies shall be Buyer's responsibility for cost and completion.

**COMPLETE AGREEMENT; NO OTHER REPRESENTATIONS OR WARRANTIES.** Seller shall not be liable or bound in any manner by any oral or written statements, representations, or information pertaining to the Property, or the operation thereof, furnished by any real estate broker, agent, employee, contractor, or other person. Buyer further acknowledges and agrees Seller has no obligations to make repairs, replacements, or improvements to the Property except as may otherwise be expressly stated herein. Without limiting any other provision hereof, Buyer represents, warrants, and covenants to Seller that, except for Seller's express representations and warranties specified in this Agreement, Buyer is relying solely upon Buyer's own investigation of the Property.

**WRITTEN AFFIRMATION OF SELLER REQUIRED.** Buyer understands that Seller may continue to receive and respond to other offers on the Property and may be making several counter-offers concurrently containing the same or different terms. This Counter-Offer shall not be binding until accepted by Buyer and executed by Buyer and Seller on the signature page below; and then approved by Seller, in Seller's sole discretion, in the form of the Seller's "Affirmation of Agreement" attached hereto as Exhibit "A" which, if so executed by Seller, will constitute Seller's agreement that Seller will sell the Property to Buyer, subject to Bankruptcy Court approval, the rights of any overbidding parties, and the terms and conditions of this Agreement. Buyer further acknowledges that it would be imprudent and unrealistic to rely upon the expectation of entering into a binding agreement regarding the subject matter of this Counter-Offer prior to receipt of Seller's Affirmation of Agreement, and further represents to Seller that any efforts to complete due diligence, or to perform any of the obligations provided herein shall not be considered as evidence of binding intent without Seller's Affirmation of Agreement, and understands that BUYER'S ACCEPTANCE HEREOF SHALL HAVE NO FORCE OR EFFECT PRIOR TO BUYER'S RECEIPT OF SUCH AFFIRMATION OF AGREEMENT SIGNED BY SELLER.

**ATTORNEYS' FEES.** In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

**EXPIRATION OF COUNTER-OFFER.** This Counter-Offer shall expire if not accepted by Buyer by delivering a copy hereof, fully signed and initialed by Buyer, to Seller, on or before 5:00 p.m., Pacific time, on May 14, 2026. Such acceptance shall nevertheless be subject to the receipt of Seller's Affirmation of Agreement.

**AGREED AND ACCEPTED:**

BUYER:

Dated: 05/14/2026 | 1:12:39 PM PDT

By:

*Bruce Cohen*  *Mary Louise Cohen*

Bruce Cohen and Mary Louise Cohen

subject to Buyer Counter Offer


SELLER (subject to execution of Seller's Affirmation of Agreement):

Dated: May 13, 2026

By: _____

Bradley D. Sharp solely in capacity as Chapter 11 Trustee for Leslie Klein

## EXHIBIT "A"

## SELLER'S AFFIRMATION OF AGREEMENT

Seller hereby acknowledges Buyer's acceptance of the foregoing Counter-Offer and affirmatively agrees to sell the Property to Buyer on the terms and conditions of the foregoing Agreement, but subject to Bankruptcy Court approval and any qualified overbidders. Seller shall revoke any other outstanding Counter-Offers made to other prospective buyers or make the same subject and subordinate to this Agreement.

SELLER

Dated: May 15, 2026

By: _____

Bradley D. Sharp solely in capacity as Chapter 11 Trustee for Leslie Klein

15250 Ventura Blvd, Suite 715
Sherman Oaks, CA 91403

Phone:  (310) 550-6055
Fax:  (310) 550-6130

Antonia Delgado                                                    Date:  May 26, 2026
Sr. Escrow Officer                                          Escrow No.:  106365-AA

**AMENDED ESCROW INSTRUCTIONS**

Property Address:          322 N. June Street,  Los Angeles, CA  90004

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS FOLLOWS:

**(1)**     Buyer and Seller herein acknowledge that the purchase price of subject property has been reduced and therefore authorize and instruct Escrow Holder to amend the PURCHASE PRICE to be **$5,140,000.00.**

(2)     Buyer herein acknowledges that **ALL BUYER CONTINGENCIES** of this transaction have been waived.

(3)     Escrow Instructions dated May 15, 2026, together with all amendments or supplements thereto, are hereby amended by removing , **Gift Trust for the Benefit of Bruce Cohen  and Gift Trust for the Benefit of Mary Louise Cohen** as a PURCHASER under the above referenced escrow, and the funds deposited by Buyer to the account of the Buyer in this escrow are to be credited to remaining Buyer, **Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust**, when this Instruction has been signed by all parties concerned. Upon execution hereof, **Gift Trust for the Benefit of Bruce Cohen and Gift Trust for the Benefit of Mary Louise Cohen** herein acknowledges that they will receive no right, title or interest in or to this property. However, they shall remain liable hereunder, together with **Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust**, in the event that **Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust** fails to perform any of Buyer's obligations hereunder.

**Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust**, hereby accepts said withdrawal and agrees to do all those things required of the Buyer in said escrow, as provided for in the California Residential Purchase Agreement and Joint Escrow Instructions, Counter Offers, Addendums, original Escrow Instructions and/or all amendments or supplements thereto, which the undersigned has read and hereby approves and accepts and acknowledges acceptance and approval thereof as well as receipt of a copy of same for their files.

Escrow Holder is hereby authorized and instructed to to show title vested in the following manner:

**Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust (exact vesting to be furnished in writing as soon as possible to provide for the drawing of necessary documents)**

THE UNDERSIGNED SELLER hereby concurs in and agrees to the above withdrawal and does hereby accept **Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust** as purchaser in this escrow.  Seller will hand you an executed Grant Deed  in the Buyer's favor as requested hereinabove.

Buyer and Seller agree to indemnify, defend and hold Escrow Holder, its agents, officers, directors, Real Estate Brokers and its agents, free and harmless from any/all liability or loss in connection with this

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

Page 2

Date:  May 26, 2026

Escrow No.:  106365-AA

**SELLERS:**

Bankruptcy Estate of Leslie Klein, Bankruptcy Case No. 2:23-bk-10990-SK

By: _____
    Bradley D. Sharp, solely in his capacity as Chapter 11 Trustee

**BUYERS:**

Bruce Cohen Revocable Trust

Signed by:
By: *Bruce Cohen, Trustee*
    6745B7CA69654F8...
    Bruce Cohen, Trustee

Mary Louise Cohen Revocable Trust

Signed by:
By: *Mary Louise Cohen, Trustee*
    D82E8D01AC1D495...
    Mary Louise Cohen, Trustee

**WITHDRAWING PURCHASER:**

Gift Trust for the Benefit of Bruce Cohen

Signed by:
By: *Bruce Cohen, Trustee*
    6745B7CA69654F8...
    Bruce Cohen, Trustee

Gift Trust for the Benefit of Mary Louise Cohen

Signed by:
By: *Mary Louise Cohen, Trustee*
    D82E8D01AC1D495...
    Mary Louise Cohen, Trustee

Docusign Envelope ID: 015A1631-610D-8F48-81DA-0AA35CFB6617

15250 Ventura Blvd, Suite 715
Sherman Oaks, CA 91403

Phone: (310) 550-6055
Fax: (310) 550-6130

Antonia Delgado                                                       Date: May 26, 2026
Sr. Escrow Officer                                              Escrow No.: 106365-AA

**AMENDED ESCROW INSTRUCTIONS**

Property Address:        322 N. June Street,  Los Angeles, CA  90004

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS
FOLLOWS:

**(1)**    Buyer and Seller herein acknowledge that the purchase price of subject property has been
reduced and therefore authorize and instruct Escrow Holder to amend the PURCHASE PRICE to
be **$5,140,000.00.**

(2)    Buyer herein acknowledges that **ALL BUYER CONTINGENCIES** of this transaction have been
waived.

(3)    Escrow Instructions dated May 15, 2026, together with all amendments or supplements thereto,
are hereby amended by removing , **Gift Trust for the Benefit of Bruce Cohen  and Gift Trust
for the Benefit of Mary Louise Cohen** as a PURCHASER under the above referenced escrow,
and the funds deposited by Buyer to the account of the Buyer in this escrow are to be credited to
remaining Buyer, **Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust**,
when this Instruction has been signed by all parties concerned. Upon execution hereof, **Gift
Trust for the Benefit of Bruce Cohen and Gift Trust for the Benefit of Mary Louise Cohen**
herein acknowledges that they will receive no right, title or interest in or to this property. However,
they shall remain liable hereunder, together with **Bruce Cohen Revocable Trust and Mary
Louise Cohen Revocable Trust**, in the event that **Bruce Cohen Revocable Trust and Mary
Louise Cohen Revocable Trust** fails to perform any of Buyer's obligations hereunder.

**Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust**, hereby accepts
said withdrawal and agrees to do all those things required of the Buyer in said escrow, as
provided for in the California Residential Purchase Agreement and Joint Escrow Instructions,
Counter Offers, Addendums, original Escrow Instructions and/or all amendments or supplements
thereto, which the undersigned has read and hereby approves and accepts and acknowledges
acceptance and approval thereof as well as receipt of a copy of same for their files.

Escrow Holder is hereby authorized and instructed to to show title vested in the following manner:

**Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust (exact vesting to
be furnished in writing as soon as possible to provide for the drawing of necessary
documents)**

THE UNDERSIGNED SELLER hereby concurs in and agrees to the above withdrawal and does
hereby accept **Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust** as
purchaser in this escrow.  Seller will hand you an executed Grant Deed  in the Buyer's favor as
requested hereinabove.

Buyer and Seller agree to indemnify, defend and hold Escrow Holder, its agents, officers, directors, Real
Estate Brokers and its agents, free and harmless from any/all liability or loss in connection with this

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

Docusign Envelope ID: 015A1631-610D-8F48-81DA-0AA35CFB6617

Page 2

Date:  May 26, 2026                                                                                  Escrow No.:  106365-AA

**SELLERS:**                                          **BUYERS:**

Bankruptcy Estate of Leslie Klein, Bankruptcy Case   Bruce Cohen Revocable Trust
No. 2:23-bk-10990-SK

By: _Bradley D. Sharp, solely in his capacity as Chapter 11 Trustee_
Bradley D. Sharp, solely in his capacity as
Chapter 11 Trustee

By: _____
Bruce Cohen, Trustee


Mary Louise Cohen Revocable Trust


By: _____
Mary Louise Cohen, Trustee


**WITHDRAWING PURCHASER:**

Gift Trust for the Benefit of Bruce Cohen


By: _____
Bruce Cohen, Trustee

Gift Trust for the Benefit of Mary Louise Cohen


By: _____
Mary Louise Cohen, Trustee

# EXHIBIT B



**Mindy Beckham**
Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
Phone:  (805) 367-5628
Fax:
teammindy@stewart.com

# PRELIMINARY REPORT

Order No.:              2045145
Your File No.:          106365-AA
Buyer/Borrower Name:
Seller Name:            Klein Trust / Leslie Co-Tr Klein

Property Address:  322 N June Street, Los Angeles, CA  90004

In response to the above referenced application for a Policy of Title Insurance, Stewart Title of California, Inc. hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Stewart Title Guaranty Company Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referenced to as an Exception on Schedule B or not excluded from coverage pursuant to the printed Schedules, Conditions, and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on covered Risks of said policy or policies are set forth in Exhibit A attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limits of Liability for certain coverages are also set forth in Exhibit A.  Copies of the policy forms should be read. They are available from the office which issued this report.

Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.

It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.

This report, (and any supplements or amendments thereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance a binder or commitment should be requested.

| Dated as of May 5, 2026 at 7:30AM | |
|---|---|
| | **Update No. 5** |

**When replying, please contact:**   Mindy Beckham, Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
(805) 367-5628
teammindy@stewart.com

**IF ANY DECLARATION, GOVERNING DOCUMENT (FOR EXAMPLE, COVENANT, CONDITION OR RESTRICTION) OR DEED IDENTIFIED AND/OR LINKED IN THIS TITLE PRODUCT CONTAINS ANY RESTRICTION BASED ON AGE, RACE COLOR, RELIGION, SEX, GENDER, GENDER IDENTITY, GENDER EXPRESSION, SEXUAL ORIENTATION, FAMILIAL STATUS, MARITAL STATUS, DISABILITY, VETERAN OR MILITARY STATUS, GENETIC INFORMATION, NATIONAL ORIGIN, SOURCE OF INCOME AS DEFINED IN SUBDIVISION (p) OF SECTION 12955, OR ANCESTRY, THAT RESTRICTION VIOLATES STATE AND FEDERAL FAIR HOUSING LAWS AND IS VOID, AND MAY BE REMOVED PURSUANT TO SECTION 12956.2 OF THE GOVERNMENT CODE BY SUBMITTING A "RESTRICTIVE COVENANT MODIFICATION" FORM, TOGETHER WITH A COPY OF THE ATTACHED DOCUMENT WITH THE UNLAWFUL PROVISION REDACTED TO THE COUNTY RECORDER'S OFFICE. THE "RESTRICTIVE COVENANT MODIFICATION" FORM CAN BE OBTAINED FROM THE COUNTY RECORDER'S OFFICE AND MAY BE AVAILABLE ON ITS WEBSITE. THE FORM MAY ALSO BE AVAILABLE FROM THE PARTY THAT PROVIDED YOU WITH THIS DOCUMENT. LAWFUL RESTRICTIONS UNDER STATE AND FEDERAL LAW ON THE AGE OF OCCUPANTS IN SENIOR HOUSING OR HOUSING FOR OLDER PERSONS SHALL NOT BE CONSTRUED AS RESTRICTIONS BASED ON FAMILIAL STATUS.**

# PRELIMINARY REPORT

**The form of Policy of Title Insurance contemplated by this report is:**

☐ Standard Coverage Owner's Policy

☐ Extended Coverage Owner's Policy

☒ CLTA/ALTA Homeowners Policy

☐ Standard Coverage Loan Policy

☒ Extended Coverage Loan Policy

☐ Short Form Residential Loan Policy

☐ Other: _____

# SCHEDULE A

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

FEE SIMPLE

**Title to said estate or interest at the date hereof is vested in:**

Leslie Klein and Erika Noemi Klein, as Trustees under the Klein Living Trust of 1975, as to an undivided one-half interest and EKLK Foundation, as to an undivided one-half interest, subject to Item No. 10 and 15, of schedule B, subject to bankruptcy proceedings filed by Leslie Klein, Debtor, pending in the United States Bankruptcy Court for the California Central Bankruptcy Court, Case No. 2:23-bk-10990-SK; filed on December 22, 2022.

Order No.:  2045145
Preliminary Report
Page 3 of  9

# LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Los Angeles, City of Los Angeles and described as follows:**

Lot 300 of Tract 8320, in the City of Los Angeles, County of of Los Angeles, State of California, as per Map recorded in Book 98 Page 41 of Maps, in the Office of the County Recorder of said County.

APN:  5523-003-008

(End of Legal Description)

MAP

THE MAP CONNECTED HEREWITH IS BEING PROVIDED AS A COURTESY AND FOR INFORMATIONAL PURPOSES ONLY; THIS MAP SHOULD NOT BE RELIED UPON. FURTHERMORE, THE PARCELS SET OUT ON THIS MAP MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES. STEWART ASSUMES NO LIABILITY, RESPONSIBILITY OR INDEMNIFICATION RELATED TO THE MAPS NOR ANY MATTERS CONCERNING THE CONTENTS OF OR ACCURACY OF THE MAP.

# <u>SCHEDULE B</u>

**At the date hereof, exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy or policies would be as follows:**

**Taxes:**

A.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes, to be levied for the fiscal year 2026 - 2027.

B.    General and special city and/or county taxes, and any assessments collected with taxes, for the fiscal year 2025 - 2026:

| | |
|---|---|
| 1st Installment | : $8,317.50 |
| Status 1st | : Delinquent |
| Delinquent Date | : December 10, 2025 |
| Penalty | : $831.75 |
| 2nd Installment | : $8,317.49 |
| Status 2nd | : Delinquent |
| Delinquent Date | : April 10, 2026 |
| Penalty | : $841.74 |
| Parcel No. | : 5523-003-008 |

Code Area / Tracer No.: 00067

C.    Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal year(s) 2019-2020, 2021- 2022,  2023-2024 for Parcel No. 5523-003-008. Amounts due show as follows:
Amount: $95,228.75; due by: May 2026
Amount: $96,211.64: due by: June 2026  .

D.    The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California.

E.    Taxes and/or assessments affecting the Land, if any, for community facility districts, including Mello Roos, which may exist by virtue of assessment maps or filed notices. These taxes and/or assessments are typically collected with the county taxes; however, sometimes they're removed and assessed and collected separately.

F.    Prior to recording, the final amounts due must be confirmed directly with tax collector.

**Exceptions:**

1.    Water rights, claims, or title to water, whether or not shown by the Public Records.

2.    Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

3.    Covenants, conditions and restrictions as set forth in a document recorded in Book 6158, Page 129 of Official Records.

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value.

4. A Homestead Declaration, executed by Leslie Klein, recorded on May 10, 2023, as Instrument No. 20230302966, of Official Records.

5. Please be advised that our search did not disclose any open deeds of trust of record. If you should have knowledge of any outstanding obligation, please contact your title officer immediately for further review.

6. Intentionally deleted

7. In order to insure, provide for review and approval prior to recording, a copy of the proposed draft of the order from the Bankruptcy Court regarding the disposition of the Land. Additional requirements or items may be requested upon review of the required documents set forth above; contact your title officer for further instruction.

8. Matters contained in document entitled United States Bankruptcy Court Central District of California Los angeles Division recorded January 31, 2024 as Instrument No. 20240067815 of Official Records.

9. Intentionally deleted

10. Intentionally deleted

11. Matters contained in document entitled "Order Granting Motion for Summary Judgment on all claims for Relief against Defendants" recorded February 27, 2025 as Instrument No. 20250126958 of Official Records.

12. Matters contained in document entitled "Order Granting motion of Chapter 11 Trustee to enforce the automatic stay and void grant deed, and Granting in part request for sanctions" recorded June 24, 2025 as Instrument No. 20250418626 of Official Records.

13. Matters contained in document entitled "Order Granting Motion of chapter 11 trustee (1) Restoring possession of the property located at 322 N. June st., Los Angeles California to the trustee and compelling debtor to vacate the property" by and recorded February 27, 2025 as Instrument No. 20250126956 of Official Records.

14. Matters contained in document entitled "Order Granting Motion of Chapter 11 Trustee (A) Enforcing Automatic Stay, (B) Expunging Lis Pendense"  recorded October 08, 2025, as Instrument No. 20250696275, of Official Records.

15. Intentionally deleted

16. Notice of power to sell tax defaulted real property for non-payment of delinquent taxes for the fiscal year 2019 - 2020 in the original amount of $7,349.72, recorded November 21, 2025, as Instrument No. 20250831414, of Official Records. NOTE: Redemption amount will need to be obtained prior to closing.

17. If title is to be insured in the trustee(s) of a trust or the trustee(s) act is to be insured, you must provide a full copy of the trust and any amendments thereto. In certain situations, you may be permitted to provide the STG Certification of Trust.
Please contact your title officer to discuss the above requirements.
The right is reserved to add requirements or additional items after completion of such review.

18. To assist in the clarifying, confirming and eliminating certain title matters, provide to Stewart Title, prior to recording, a completed Statement of Information for all identified and known Sellers/Owners in this transaction.

(End of Exceptions)

# NOTES AND REQUIREMENTS

A.  If you have knowledge of any other transfers or conveyances, please contact your title officer immediately for further research and review. The only transfers or conveyances shown in the Public Records within 24 months of the date of this report are:

Leslie Klein, as trustee of the Credit Trust of the Second amended Klein living trust, as Grantor and EKLK Foundation, as Grantee, recorded February 25, 2025 as Instrument No. 20250120374 of Official Records.

B.  There are no items in this Preliminary Report that will cause Stewart Title Guaranty Company to decline to attach the CLTA Endorsement Form 116 (or equivalent ALTA 22.1) or the CLTA Endorsement Form 116.01-06 (or equivalent ALTA 22-06), indicating that there is Single Family Residence; known as: 322 N June Street, Los Angeles, CA  90004.

C.  All Transactions - Seller(s) and Buyer(s) or Borrowers are provided, as attachments, the document entitled "Acknowledgement of Receipt, Understanding and Approval of STG Privacy Notice for Stewart Title Companies and Stewart's Affiliated Business Arrangement Disclosure Statement" and the individually or similarly named documents, for review and acknowledgment prior to closing.

D.  All Transactions - Buyer(s)/Seller(s)/Borrower(s) are provided the Preliminary Report for review and acknowledgment prior to closing. Buyer(s) approval shall include the Preliminary Report items that are to remain as exceptions to the title policy.

E.  All Transactions - Seller(s)/Owner(s) shall submit for review, prior to closing, a completed Stewart Title Guaranty Company's Owner's Affidavit and Indemnity.

F.  There are no items in this Preliminary Report that will cause Stewart Title Guaranty Company to decline to attach the CLTA Endorsement Form 100 (or equivalent ALTA 9) or, if applicable, the CLTA Endorsement Form 115.1-06 (or equivalent ALTA 4-06) or the CLTA Endorsement Form 115.1 (or equivalent ALTA 4) or the CLTA Endorsement Form 115.2-06 (or equivalent ALTA 5-06) to an ALTA Loan Policy, when issued in accordance with Stewart Title Guaranty Company's guidelines.

G.  A Preliminary Change of Ownership Report must be completed by the transferee (buyer) prior to the transfer of property in accordance with the provisions of Section 480.3 of the Revenue and Taxation Code. The Preliminary Change of Ownership Report should be submitted to the recorder concurrent with the recordation of any document effecting a change of ownership. If a document evidencing a change of ownership (i.e. Deed, Affidavit-Death Joint Tenant) is presented to the recorder for recording without a preliminary change of ownership report, the recorder may charge an additional $20.00, along with other potential fees and taxes.

# CALIFORNIA "GOOD FUNDS" LAW

California Insurance Code Section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies.  The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement.  Funds received by Stewart Title of California, Inc. via wire transfer may be disbursed upon receipt.  Funds received via cashier's checks or teller checks drawn on a California Bank may be disbursed on the next business day after the day of deposit.  If funds are received by any other means, recording and/or disbursement may be delayed, and you should contact your title or escrow officer.  All escrow and sub-escrow funds received will be deposited with other escrow funds in one or more non-interest bearing escrow accounts in a financial institution selected by Stewart Title of California, Inc..  Stewart Title of California, Inc. may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and Stewart Title of California, Inc. shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by Stewart Title of California, Inc..  Such benefits shall be deemed additional compensation to Stewart Title of California, Inc. for its services in connection with the escrow or sub-escrow.

If any check submitted is dishonored upon presentation for payment, you are authorized to notify all principals and/or their respective agents of such nonpayment.

## EXHIBIT "A"

### LEGAL DESCRIPTION

Order No.:  2045145
Escrow No.:  2045145

The land referred to herein is situated in the State of California, County of Los Angeles, City of Los Angeles and described as follows:

Lot 300 of Tract 8320, in the City of Los Angeles, County of of Los Angeles, State of California, as per Map recorded in Book 98 Page 41 of Maps, in the Office of the County Recorder of said County.

APN:  5523-003-008

(End of Legal Description)

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Date:        June 2, 2023

File No.:    2045145

Property:    322 N June Street, Los Angeles, CA  90004

From:        Stewart Title of California, Inc.

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") has a business relationship with Stewart Solutions, LLC, DBA – Stewart Specialty Insurance Services, LLC ("Stewart  Insurance"). Stewart Information Services Corporation owns 100% of Stewart Insurance and Stewart Title of California, Inc..  Because of this relationship, this referral may provide Stewart Title a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed.  You are NOT required to use the listed provider(s) as a condition for purchase, sale, or refinance of the subject Property.   THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| Stewart Insurance Settlement Service | Charge or range of charges |
|---|---|
| Hazard Insurance | $400.00 to $6,500.00 |
| Home Warranty | $255.00 to $ 780.00 |
| Natural Hazard Disclosure Report | $ 42.50 to $ 149.50 |

# ACKNOWLEDGEMENT OF RECEIPT, UNDERSTANDING AND APPROVAL OF STEWART TITLE GUARANTY COMPANY PRIVACY NOTICE FOR STEWART TITLE COMPANIES AND AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

The undersigned hereby acknowledge receipt of the Stewart Title Guaranty Company Privacy Notice for Stewart Title Companies and the Affiliated Business Arrangement Disclosure Statement that apply to this transaction. The undersigned further acknowledge that he/she/they have received, read, understand and accept these documents in connection with the above described transaction.

The undersigned have received a copy of this acknowledgement as evidenced by the signature below.

Klein Trust / Leslie Co-Tr Klein

By:_____

_____
Sagebrook Development, LLC

File No.:  2045145

**CALIFORNIA LAND TITLE ASSOCIATION**
**STANDARD COVERAGE POLICY – 1990 (11-09-18)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

**© California Land Title Association.  All rights reserved.**                                                                          **1**

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, EXHIBIT A (Rev. 11-04-22)

---

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)]

### CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE OWNER'S POLICY (02-04-22)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
   i. the occupancy, use, or enjoyment of the Land;
   ii. the character, dimensions, or location of any improvement on the Land;
   iii. the subdivision of land; or
   iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
   i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
   ii. for any other reason not stated in Covered Risk 9.b.
5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

---

© **California Land Title Association.  All rights reserved.**                                                                                **2**

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (07-01-2021)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
     i. the occupancy, use, or enjoyment of the Land;
     ii. the character, dimensions, or location of any improvement on the Land;
     iii. the subdivision of land; or
     iv. environmental remediation or protection.
   b. any governmental forfeiture, police, or regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.

2. Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.

3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by You;
   b. not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
   c. resulting in no loss or damage to You;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
   e. resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.
4. Lack of a right:
   a. to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
   b. in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
   Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.

© California Land Title Association.  All rights reserved.                                                                3

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

**CLTA PRELIMINARY REPORT FORM, EXHIBIT A (Rev. 11-04-22)**

5. The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 30.

7. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

8. Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.

9. Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.

10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**LIMITATIONS ON COVERED RISKS**

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 18: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 19: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 21: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)

**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

**© California Land Title Association.  All rights reserved.**                                                                                      **4**

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

**CLTA PRELIMINARY REPORT FORM, EXHIBIT A (Rev. 11-04-22)**

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.
4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.  in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

**LIMITATIONS ON COVERED RISKS**

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 18: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 19: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 21: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |

© California Land Title Association.  All rights reserved.                                           5

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, EXHIBIT A (Rev. 11-04-22)

## ALTA OWNER'S POLICY (07-01-2021)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.   the occupancy, use, or enjoyment of the Land;
        ii.  the character, dimensions, or location of any improvement on the Land;
        iii. the subdivision of land; or
        iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 9.b.
5.  Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.  Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

© **California Land Title Association.  All rights reserved.**                                          **6**

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)  the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii)  the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

© **California Land Title Association.  All rights reserved.**                                                                                     **7**

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

File No.:  2045145

# AVAILABLE DISCOUNTS DISCLOSURE STATEMENT

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.

Such discounts apply to and include:

Property located within an area proclaimed a state or federal disaster area;

Property purchased from a foreclosing beneficiary or successful bidder at a foreclosure sale;

Property being refinanced.

Please talk with your escrow or title officer to determine your qualification for any of these discounts.

File No.:  2045145

# Stewart Title of California, Inc.
# STATEMENT OF INFORMATION

**CONFIDENTIAL**

**THE STREET ADDRESS of the property in this transaction is:**    (IF NONE LEAVE BLANK)

ADDRESS  322 N June Street                                            CITY Los Angeles, CA 90004

IMPROVEMENTS:  ☐ SINGLE RESIDENCE   ☐ MULTIPLE RESIDENCE   ☐ COMMERCIAL

OCCUPIED BY:  ☐ OWNER   ☐ TENANTS

CONSTRUCTION OR IMPROVEMENTS WITHIN THE LAST 6 MONTHS?   ☐ YES   ☐ NO

IF YES, STATE NATURE WORK DONE _____

| **PARTY 1** | **PARTY 2** |
|---|---|
| FIRST          MIDDLE          LAST | FIRST          MIDDLE          LAST |
| FORMER LAST NAME(S), IF ANY | FORMER LAST NAME(S), IF ANY |
| BIRTHPLACE          BIRTH DATE | BIRTHPLACE          BIRTH DATE |
| Social Security No.          DRIVER'S LICENSE NO. | Social Security No.          DRIVER'S LICENSE NO. |
| Home          Cell | Home          Cell |
| ☐ AM SINGLE   ☐ AM MARRIED   ☐ HAVE A DOMESTIC PARTNER | ☐ AM SINGLE   ☐ AM MARRIED   ☐ HAVE A DOMESTIC PARTNER |
| Date of Marriage or Partnership _____ | Date of Marriage or Partnership _____ |
| NAME OF CURRENT SPOUSE OR DOM. PARTNER (if other than Party 2): | NAME OF CURRENT SPOUSE OR DOM. PARTNER (if other than Party 1): |
| NAME OF FORMER SPOUSE/DOM. PARTNER: (IF NONE, WRITE "NONE"): | NAME OF FORMER SPOUSE/DOM. PARTNER: (IF NONE, WRITE "NONE"): |

| | Party 1 | | | Party 2 | | |
|---|---|---|---|---|---|---|
| Dissolutions pending | Yes | No | (circle one) | Yes | No | (circle one) |
| Required to make child support payments? | Yes | No | (circle one) | Yes | No | (circle one) |
| Required to make Family support payments? | Yes | No | (circle one) | Yes | No | (circle one) |

If paying former spouse directly, please provide address:

## OCCUPATIONS FOR LAST 10 YEARS (attach additional 10 year information, if applicable)

Party 1: _____

Occupation          Firm Name          Street and City          No. Years

Party 2: _____

Occupation          Firm Name          Street and City          No. Years

## RESIDENCES FOR LAST 10 YEARS (attach additional 10 year information, if applicable)

Party 1: _____

Street No.          Street Name          City          No. Years

Party 2: _____

Street No.          Street Name          City          No. Years

## Email Address

If you would like us to contact you by email, please provide your email address _____

Home Phone: _____   Business Phone: _____   Cell Phone: _____

**The undersigned declare, under penalty of perjury, that foregoing is true and correct.**

**Signature:** _____   **Date:** _____   **Signature:** _____   **Date:** _____

Order No.:  2045145 - Statement of Information CA

Rev. 4/09

# CERTIFICATION OF TRUST
(California Probate Code 18100.5)

## IMPORTANT:  THIS CERTIFICATION OF TRUST MUST BE FULLY COMPLETED

I/(We) _____
(Name of Trustee(s))

as Trustee(s) of the _____
(Name of Trust)

dated _____ (the "Trust") am/are providing the information set forth below at the request of Stewart Title Guaranty Company, a Texas corporation, and its policy issuing agent Stewart Title of California, Inc., a California corporation (hereafter collectively called "Company").

WHEREAS, Company has been requested to issue a title insurance policy on the real property described in Schedule "A" of the Preliminary Report or Commitment issued under order number 2045145; and

WHEREAS, Company has determined that information concerning the Trust is necessary to ascertain whether Company will be able to issue the requested policy of title insurance;

THEREFORE, acting in my/our capacity as Trustee(s) of the Trust, I/we hereby certify and confirm to Company that the information set forth below is accurate and correct.

1.    The Trust identification number (SSN or employer Tax ID) is: _____

2.    As set out in the Trust, the Settlor(s) of the Trust is/are:
      _____
      _____

3.    The current active Trustee(s) of the Trust is/are:
      _____
      _____

4.    As set out in the Trust, the powers of the Trustee(s) include: (check all that apply)
      _____ The power to sell, convey and grant trust property.
      _____ The power to hypothecate (borrow money and encumber/lien trust property).
      _____ The power to invest and reinvest trust assets, including providing loans.

5.    As set out in the Trust, are all currently active Trustee(s) required to execute documents when exercising the powers set forth above?
      (circle one)          YES                          NO

6.    As set out in the Trust, the Trust is: (check the appropriate box)    _____ Revocable    _____ Irrevocable

7.    As set out in the Trust, if it's revocable, the name(s) of the person(s) identified as having power to revoke the Trust is/are:
      _____

8.    The Trust and the individual named Settlor(s) do not have any liens or money judgments pending, filed and/or recorded against the Trust and/or Settlor(s).

9.    The Trust and/or the individually named Settlor(s) are not aware of any threatened, pending, or filed lawsuits nor have it/they settled any lawsuits within the three (3) calendar years immediately preceding the signing of this Certification.

10.   By signing below, the undersigned Trustee(s) affirm that the Trust is in full force and effect and has not been revoked or terminated; in addition, the Trust has not been modified or amended in any manner which would cause the representations set forth herein to be incorrect.

11.   Is this Certification of Trust is being executed by all currently active Trustees of the Trust? (circle one)  YES   NO
      If "NO," please explain: _____

Order No.:  2045145                                                                          Page **1** of 2
Certification of Trust CA (rev. 7-2020)

12. Are there any living persons or entities named as Trustee in the Trust who are not "currently active Trustees"? (circle one)   YES    NO    If "YES," identify by name and explain why: _____
_____

13. The undersigned Trustees acknowledge and understand that Company may require additional information, including copies and/or excerpts of the Trust and any amendments, when necessary, in order to make an insurance determination.

14. There are no claims, challenges of any kind, and/or alleged causes of action, contesting or questioning the validity of the Trust or the Trustee(s) authority to act on behalf of the Trust.

**PLEASE READ, COMPLETE AND RESPOND TO ALL STATEMENTS IN THIS CERTIFICATION BEFORE SIGNING. THE TRUSTEE(S) HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE INFORMATION IS TRUE, ACCURATE AND CORRECT TO THE BEST OF HIS/HER/THEIR KNOWLEDGE. IF YOU DO NOT UNDERSTAND OR HAVE ANY QUESTIONS ABOUT THIS CERTIFICATION, YOU SHOULD SEEK THE ASSISTANCE OF YOUR INDEPENDENT FINANCIAL AND/OR LEGAL ADVISOR BEFORE SIGNING. THE TRUSTEE(S) UNDERSTAND THAT COMPANY MAY DECIDE NOT TO PROVIDE THE REQUESTED TITLE INSURANCE DESPITE THE INFORMATION AND AFFIRMATIONS CONTAINED HEREIN.**

Date Signed:_____      Date Signed:_____


_____      _____
Print Trustee Name                                          Print Trustee Name


_____      _____
Trustee Signature                                            Trustee Signature

Date Signed:_____      Date Signed:_____


_____      _____
Print Trustee Name                                          Print Trustee Name


_____      _____
Trustee Signature                                            Trustee Signature

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document. |
|---|

State of California                                }
                                                          }SS.
County of _____      }

On _____ before me, _____ , Notary Public, personally appeared _____ who proved to be on the basis of satisfactory evidence to be the person(s), whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                    (This area for official notarial seal)


Signature _____

# STGC TITLE PREMIUM DISCOUNT APPLICATION
# AND CONFIRMATION OF ELIGIBILITY

Order Number: 2045145

Property:  322 N June Street, Los Angeles, CA  90004

APN: 5523-003-008

In connection with the request of the Undersigned ("Applicant") for the preparation and issuance of title insurance, Applicant provides this completed STGC Title Premium Discount Application and Confirmation of Eligibility ("Request Form") for the benefit of, and reliance by, title insurer Stewart Title Guaranty Company, and its policy issuing agent Stewart Title of California, Inc. (collectively hereafter referred to as "Stewart Title") in connection with pricing the title premium in the above referenced transaction:

1.  Applicant understands that Stewart Title has available for qualifying requestors a 10% discount on the title insurance premium charged under certain circumstances; however, all endorsement fees and other charges are not discounted.

2.  Applicant understands that Stewart Title is only able to provide such discount if requested through providing this completed Request Form and is received by Stewart Title at least five (5) business days prior to recording of the transaction to which a discount is requested.

3.  Applicant understands that Stewart Title prohibits combined discounts; accordingly, Stewart Title will provide this requested discount and disregard other applicable discounts, if any, when eligibility requirements for such discount are satisfied.

4.  Applicant requests the following discount and affirms that Applicant meets the criteria and requirements set forth to qualify for such selected discount (SELECT ONLY ONE QUALIFYING DISCOUNT):

☐   <u>Active military personnel and honorably discharged veteran discount</u>* – To qualify for an active military personnel or honorably discharged veteran discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is engaged in full-time, active duty in the military on the date signed below or was a honorably discharged veteran.

☐   <u>Senior citizen discount</u> – To qualify for a senior citizen discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is 55 years of age or older on the date signed below.

*Active military personnel and honorably discharged veterans include those members from the following U.S. military services branches: Air Force, Army, Coast Guard, Marine Corps, Navy and Space Force, and any active Reserve members of these military services branches and any active members of the Air or Army National Guard.

☐ <u>First-time homebuyer discount</u> – To qualify for a first-time homebuyer discount: (1) the property being purchased is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s) is a U.S. citizen, permanent resident or qualified alien and has either never owned any property or, has not been an owner in a primary residence for the last three calendar years from the date signed below.

☐ <u>First responder discount</u> – To qualify for a first responder discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is currently employed as a police officer, firefighter, paramedic or emergency medical technician on the date signed below.

This Request Form is completed under penalty of perjury and is made for the purpose of inducing Stewart Title to provide the title premium discount, and the representations contained herein are material to such insurance coverage pricing.  The undersigned hereby indemnifies and holds Stewart Title harmless from any loss or damage, liability, costs, expenses and attorneys' fees which it may sustain to the extent any representation contained herein is incorrect. The undersigned understands that Stewart Title may decide not to provide the requested title insurance despite the information and affirmations contained herein.

**PLEASE READ AND COMPLETE THE STGC TITLE PREMIUM DISCOUNT REQUEST FORM ON THE PREVIOUS PAGE BEFORE SIGNING BELOW. IF YOU DO NOT UNDERSTAND OR HAVE ANY QUESTIONS ABOUT THIS AFFIDAVIT, YOU SHOULD CONTACT YOUR LOCAL STEWART TITLE PROFESSIONAL.**

**THE UNDERSIGNED DECLARES UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT.**

_____          _____
Signature                                                                        Signature


_____          _____
Printed Name                                                                 Printed Name


_____          _____
Date Signed                                                                   Date Signed

# OWNER'S AFFIDAVIT AND INDEMNITY

**Order No.:** 2045145
**Address/Location:**  322 N June Street, Los Angeles, CA  90004
**APN:** 5523-003-008

In connection with the request of the Undersigned ("Affiant") for the preparation and issuance of insurance, Affiant makes the following statements and representations for the benefit of, and reliance by, title insurer STEWART TITLE GUARANTY COMPANY, and its policy issuing agent STEWART TITLE OF CALIFORNIA, INC. (collectively hereafter referred to as "TITLE"):

1.  Affiant owns and holds title to the land described in Schedule A of the Preliminary Report or Commitment issued in connection with the above referenced Order Number (the "Land").

2.  The Affiant's ownership and/or possession of the Land has been peaceful and undisturbed, and title thereto has never been disputed, questioned or rejected, nor has the issuance of title insurance ever been refused, except as follows:  **(If none, please state "none")**
    _____

3.  Other than the Affiant, there are no parties entitled to possession of the Land other than the following:  **(If none, please state "none")**
    _____

4.  There are no leases, licenses, options, rights of first refusal, or contracts to sell, affecting the Land, or any parties currently in possession, of the Land, except the following: **(If none, please state "none")**
    _____

5.  All assessments by a management company or owners' association, or for common area or building maintenance, if any, are paid current or are not yet due and payable except for the following. **(If none, please state "none")**
    _____

6.  There are no pending contemplated repairs/improvements to the Land, except the following: **(If none, please state "none)**
    _____

7.  There has been no construction, building materials, repairs, improvements, or remodeling performed, provided, furnished or delivered within the last 12 months, except as follows: **(If none, please state "none")**
    _____
    This work performed, as detailed above, was completed on _____ (date of completion).

8.  Affiant is not aware of the existence of any of the following:
    a.  Improvements, including fences, encroaching into any easements on the Land, or over any boundary lines of the Land.
    b.  Adjoining property improvements encroaching onto the Land.
    c.  Liens against the Land and/or judgments or tax liens against Affiant or any other property owner currently in title, except those described in the Preliminary Report or Commitment issued in connection with the above referenced Order Number.
    d.  Outstanding claims or persons entitled to claims for mechanics' or materialman liens against the Land.
    e.  Pending repairs/improvements to any adjacent street(s) or any assessments related to road maintenance
    f.  Any pending litigation involving the Land, the Affiant or any other property owner currently in title.
    g.  Recent improvements completed or being made to any common area(s) located within the subdivision in which the Land is located.
    h.  Violations of building permits, zoning laws or recorded covenants, conditions and/or restrictions imposed on the Land.
    i.  Any pending assessments for Community Facility Districts.
    j.  Any new, pending or existing obligation or loan including any home improvements on the Land pursuant to the PACE or HERO program, or any other similar type program.

k.  Any unrecorded or recorded easements, covenants, conditions, or restrictions affecting the Land, other than those listed in the Preliminary Report or Title Commitment.

l.  Any use of the property for the production, sale, warehousing or transporting of fresh fruits, vegetables, livestock or poultry (e.g., supermarkets, restaurants, wineries, breweries and meat packing plants).

**With regard to 8a.-8l, except as follows**: **(If none, please state "none")**
_____

9.  No proceedings in bankruptcy or receivership have been instituted or filed by, or against, the Affiant or any other property owner currently in title.

10. There are no unpaid taxes, assessments or utility type bills including but not limited to bills for water, sewer, hazardous waste, recycling, storm drain and/or rubbish and there are no liens related to such utilities from or on the Land, with the exception of the following: **(If none, please state "none")**
_____

11. There are no financial obligations secured by trust deeds, mortgages, financing statements, vendor's liens, security agreements or otherwise, against the Land, except as set forth in the Preliminary Report, proforma and/or Commitment, and as set forth below: **(If none, please state "none")**

| <u>Creditor</u> | <u>Approximate Balance</u> |
|---|---|
| _____ | _____ |
| _____ | _____ |

12. There has been no harvesting or production of any oil, gas, geothermal materials or other minerals from or on the Land and there are no oil, gas, geothermal and/or mineral leases, licenses, options, rights of first refusal, and/or contracts to sell, affecting the mineral rights associated with the Land, or other parties currently in possession, of the mineral rights on the Land, except the following: **(If none, please state "none")**
_____

13. Other than the Affiant, there are no other parties currently in possession of the Land, including but not limited to, any possessory interest associated with the harvesting of any oil, gas, geothermal materials or other minerals, except the following: **(If none, please state "none")**
_____

14. Affiant has not executed and will not execute any documents or instruments related to the title to, or interest in, the Land prior to the recordation of the documents in this transaction.

15. By signing below, Affiant agrees to cooperate with TITLE and, upon request from TITLE, to promptly provide and/or execute, any corrective or curative information or documentation requested.

This is a sworn affidavit and is made for the purpose of inducing TITLE to provide certain insurance coverage to a purchaser and/or lender, and the representations contained herein are material to such insurance coverage. The undersigned hereby indemnifies and holds Stewart Title Guaranty Company and its policy issuing agent identified above harmless from any loss or damage, liability, costs, expenses and attorneys' fees which it may sustain under its policies of title insurance or commitments to the extent any representation contained herein is incorrect. The undersigned understands that TITLE may decide not to provide the requested title insurance despite the information and affirmations contained herein.

**PLEASE READ, COMPLETE AND RESPOND TO ALL STATEMENTS CONTAINED IN THIS OWNER'S AFFIDAVIT AND INDEMNITY BEFORE SIGNING IN THE PRESENCE OF A NOTARY PUBLIC. THE NOTARY PUBLIC WILL EXECUTE THE ACKNOWLEDGMENT ON THE FOLLOWING PAGE. HOWEVER, IF YOU DO NOT UNDERSTAND OR HAVE ANY QUESTIONS ABOUT THIS AFFIDAVIT, YOU SHOULD SEEK THE ASSISTANCE OF YOUR INDEPENDENT FINANCIAL AND/OR LEGAL ADVISOR BEFORE SIGNING.**

Klein Trust / Leslie Co-Tr Klein

By:_____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document.

---

State of California                    )
                                       ) ss.
County of _____ )

Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20____, by _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.


_____
Notary Signature

# STEWART TITLE GUARANTY COMPANY
# PRIVACY NOTICE

This Stewart Title Guaranty Company Privacy Notice ("Notice") explains how Stewart Title Guaranty Company and its subsidiary title insurance companies (collectively, "Stewart") collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of your information.  Pursuant to Title V of the Gramm-Leach Bliley Act ("GLBA") and other Federal and state laws and regulations applicable to financial institutions, consumers have the right to limit some, but not all sharing of their personal information.  Please read this Notice carefully to understand how Stewart uses your personal information.

The types of personal information Stewart collects, and shares depends on the product or service you have requested.

**Stewart may collect the following categories of personal and financial information from you throughout your transaction:**

1. Identifiers: Real name, alias, online IP address if accessing company websites, email address, account name, unique online identifier, social security number, driver's license number, passport number, or other similar identifiers;

2. Demographic Information: Marital status, gender, date of birth.

3. Personal Information and Personal Financial Information: Name, signature, social security number, physical characteristics or description, address, telephone number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, credit reports, or any other information necessary to complete the transaction.

**Stewart may collect personal information about you from:**

1. Publicly available information from government records.
2. Information we receive directly from you or your agent(s), such as your lender or real estate broker;
3. Information about your transactions with Stewart, our affiliates, or others; and
4. Information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

**Stewart may use your personal information for the following purposes:**

1. To provide products and services to you or in connection with a transaction.
2. To improve our products and services.
3. To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

**Stewart may use or disclose the personal information we collect for one or more of the following purposes:**

- To fulfill or meet the reason for which the information is provided.
- To provide, support, personalize, and develop our website, products, and services.
- To create, maintain, customize, and secure your account with Stewart.
- To process your requests, purchases, transactions, and payments and prevent transactional fraud.
- To prevent and/or process claims.
- To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf pursuant to valid service provider agreements.
- As necessary or appropriate to protect the rights, property or safety of Stewart, our customers or others.
- To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
- To help maintain the safety, security, and integrity of our website, products and services, databases and other technology-based assets, and business.
- To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
- Auditing for compliance with federal and state laws, rules and regulations.

File No.:  2045145

Updated 01/01/2023

- Performing services including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments.
- To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal information or use the personal information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

### Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties

Stewart does not sell your personal information to nonaffiliated third parties.  Stewart may share your information with those you have designated as your agent throughout the course of your transaction (for example, a realtor, broker, or a lender).  Stewart may disclose your personal information to a non-affiliated third party for a business purpose.  Typically, when we disclose personal information for a business purpose, we enter in a contract that describes the purpose and requires the recipient to both keep that personal information confidential and not use it for any purpose except performing the contract.

We share your personal information with the following categories of third parties:

- Non-affiliated service providers and vendors we contract with to render specific services (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)
- To enable Stewart to prevent criminal activity, fraud, material misrepresentation, or nondisclosure.
- Stewart's affiliated and subsidiary companies.
- Non-affiliated third-party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you.
- Parties involved in litigation and attorneys, as required by law.
- Financial rating organizations, rating bureaus and trade associations.
- Federal and State Regulators, law enforcement and other government entities to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

The law does not require your prior authorization or consent and does not allow you to restrict the disclosures described above.  Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with non-affiliated third parties, except as required or permitted by law.

### Right to Limit Use of Your Personal Information

You have the right to opt-out of sharing of your personal information among our affiliates to directly market to you.  To opt-out of sharing to our affiliates for direct marketing, you may send an "opt out" request to Privacyrequest@stewart.com, or contact us through other available methods provided under "Contact Information" in this Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

### How Stewart Protects Your Personal Information

Stewart maintains physical, technical and administrative safeguards and policies to protect your personal information.

### Contact Information

If you have questions or comments about this Notice, the ways in which Stewart collects and uses your information described herein, your choices and rights regarding such use, or wish to exercise your rights under law, please do not hesitate to contact us at:

**Phone:**  Toll Free at 1-866-571-9270

**Email:**  Privacyrequest@stewart.com

**Postal Address:**  Stewart Information Services Corporation
Attn:  Mary Thomas, Chief Compliance and Regulatory Officer
1360 Post Oak Blvd., Ste. 100, MC #14-1
Houston, TX  77056

File No.:  2045145

Updated 01/01/2023

Effective Date: <u>January 1, 2020</u>
Updated: <u>January 1, 2023</u>

**Privacy Notice at Collection for California Residents**

Pursuant to the California Consumer Privacy Act of 2018 ("CCPA") and the California Privacy Rights Act of 2020, effective January 1, 2023 ("CPRA"), Stewart Information Services Corporation and its subsidiary companies (collectively, "Stewart") are providing this **Privacy Notice at Collection for California Residents** ("CCPA & CPRA Notice").  This CCPA & CPRA Notice supplements the information contained in Stewart's existing privacy notice and applies solely to all visitors, users, and consumers and others who reside in the State of California or are considered California Residents as defined in the CCPA & CPRA ("consumers" or "you").  All terms defined in the CCPA & CPRA have the same meaning when used in this Notice.

**<u>Personal and Sensitive Personal Information Stewart Collects</u>**

- Publicly available information from government records.
- Deidentified or aggregated consumer information.
- Certain personal information protected by other sector-specific federal or California laws, including but not limited to the Fair Credit Reporting Act (FCRA), Gramm Leach Bliley Act (GLBA) and California Financial Information Privacy Act (FIPA).

Specifically, Stewart has collected the following categories of **personal and sensitive personal information** from consumers within the last twelve (12) months:

| Category | Examples | Collected |
|---|---|---|
| A. Identifiers. | A real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security number, driver's license number, passport number, or other similar identifiers. | YES |
| B. Personal information categories listed in the California Customer Records statute (Cal. Civ. Code § 1798.80(e)). | A name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information. Some personal information included in this category may overlap with other categories. | YES |
| C. Protected classification characteristics under California or federal law. | Age (40 years or older), race, color, ancestry, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, veteran or military status, genetic information (including familial genetic information). | YES |
| D. Commercial information. | Records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies. | YES |
| E. Biometric information. | Genetic, physiological, behavioral, and biological characteristics, or activity patterns used to extract a template or other identifier or identifying information, such as, fingerprints, faceprints, and voiceprints, iris or retina scans, keystroke, gait, or other physical patterns, and sleep, health, or exercise data. | YES |
| F. Internet or other similar network activity. | Browsing history, search history, information on a consumer's interaction with a website, application, or advertisement. | YES |
| G. Geolocation data. | Physical location or movements. | YES |

| H. Sensory data. | Audio, electronic, visual, thermal, olfactory, or similar information. | YES |
|---|---|---|
| I. Professional or employment-related information. | Current or past job history or performance evaluations. | YES |
| J. Non-public education information (per the Family Educational Rights and Privacy Act (20 U.S.C. Section 1232g, 34 C.F.R. Part 99)). | Education records directly related to a student maintained by an educational institution or party acting on its behalf, such as grades, transcripts, class lists, student schedules, student identification codes, student financial information, or student disciplinary records. | YES |
| K. Inferences drawn from other personal information. | Profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes. | YES |

Stewart obtains the categories of personal and sensitive information listed above from the following categories of sources:

- Directly and indirectly from customers, their designees, or their agents (For example, realtors, lenders, attorneys, brokers, etc.)
- Directly and indirectly from activity on Stewart's website or other applications.
- From third-parties that interact with Stewart in connection with the services we provide.

**Use of Personal and Sensitive Personal Information**

Stewart may use or disclose the personal or sensitive information we collect for one or more of the following purposes:

a. To fulfill or meet the reason for which the information is provided.
b. To provide, support, personalize, and develop our website, products, and services.
c. To create, maintain, customize, and secure your account with Stewart.
d. To process your requests, purchases, transactions, and payments and prevent transactional fraud.
e. To prevent and/or process claims.
f. To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf pursuant to valid service provider agreements.
g. As necessary or appropriate to protect the rights, property or safety of Stewart, our customers or others.
h. To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
i. To personalize your website experience and to deliver content and product and service offerings relevant to your interests, including targeted offers and ads through our website, third-party sites, and via email or text message (with your consent, where required by law).
j. To help maintain the safety, security, and integrity of our website, products and services, databases and other technology-based assets, and business.
k. To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
l. Auditing for compliance with federal and state laws, rules and regulations.
m. Performing services including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments, providing advertising or marketing services or other similar services.
n. To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal or sensitive information or use the personal or sensitive information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

**Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties**

Stewart does not sell your personal information to nonaffiliated third parties.  Stewart may share your information with those you have designated as your agent throughout the course of your transaction (for example, a realtor, broker, or a lender).  Stewart may disclose your personal information to a third party for a business purpose.

File No.:  2045145                                                                                       Updated 01/01/2023

Typically, when we disclose personal information for a business purpose, we enter into a contract that describes the purpose and requires the recipient to both keep that personal information confidential and not use it for any purpose except performing the contract.

We share your personal information with the following categories of third parties:

a. Service providers and vendors we contract with to render specific services (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)
b. Affiliated Companies.
c. Parties involved in litigation and attorneys, as required by law.
d. Financial rating organizations, rating bureaus and trade associations.
e. Federal and State Regulators, law enforcement and other government entities

In the preceding twelve (12) months, Stewart has disclosed the following categories of personal information for a business purpose:

Category A:  Identifiers
Category B:  California Customer Records personal information categories
Category C:  Protected classification characteristics under California or federal law
Category D:  Commercial Information
Category E:  Biometric Information
Category F:  Internet or other similar network activity
Category G:  Geolocation data
Category H:  Sensory data
Category I:  Professional or employment-related information
Category J:   Non-public education information
Category K:  Inferences

## Your Consumer Rights and Choices Under CPPA and CPRA

### Your Rights Under CCPA

The CCPA provides consumers (California residents as defined in the CCPA) with specific rights regarding their personal information.  This section describes your CCPA rights and explains how to exercise those rights.

### Access to Specific Information and Data Portability Rights

You have the right to request that Stewart disclose certain information to you about our collection and use of your personal information over the past 12 months.  Once we receive and confirm your verifiable consumer request, Stewart will disclose to you:

• The categories of personal information Stewart collected about you.
• The categories of sources for the personal information Stewart collected about you.
• Stewart's business or commercial purpose for collecting that personal information.
• The categories of third parties with whom Stewart shares that personal information.
• The specific pieces of personal information Stewart collected about you (also called a data portability request).
• If Stewart disclosed your personal data for a business purpose, a listing identifying the personal information categories that each category of recipient obtained.

### Deletion Request Rights

You have the right to request that Stewart delete any of your personal information we collected from you and retained, subject to certain exceptions. Once we receive and confirm your verifiable consumer request, Stewart will delete (and direct our service providers to delete) your personal information from our records, unless an exception applies.

Stewart may deny your deletion request if retaining the information is necessary for us or our service providers to:

File No.:  2045145                                                                                                    Updated 01/01/2023

1. Complete the transaction for which we collected the personal information, provide a good or service that you requested, take actions reasonably anticipated within the context of our ongoing business relationship with you, or otherwise perform our contract with you.

2. Detect security incidents, protect against malicious, deceptive, fraudulent, or illegal activity, or prosecute those responsible for such activities.

3. Debug products to identify and repair errors that impair existing intended functionality.

4. Exercise free speech, ensure the right of another consumer to exercise their free speech rights, or exercise another right provided for by law.

5. Comply with the California Electronic Communications Privacy Act (Cal. Penal Code § 1546 *seq.*).

6. Engage in public or peer-reviewed scientific, historical, or statistical research in the public interest that adheres to all other applicable ethics and privacy laws, when the information's deletion may likely render impossible or seriously impair the research's achievement, if you previously provided informed consent.

7. Enable solely internal uses that are reasonably aligned with consumer expectations based on your relationship with us.

8. Comply with a legal obligation.

9. Make other internal and lawful uses of that information that are compatible with the context in which you provided it.

## Your Rights Under CPRA

CPRA expands upon your consumer rights and protections offered by the CCPA.  This section describes your CPRA rights and explains how to exercise those rights.

## Opt-Out of Information Sharing and Selling

Stewart does not share or sell information to third parties, as the terms are defined under the CCPA and CPRA.  Stewart only shares your personal information as commercially necessary and in accordance with this CCPA & CPRA Notice.

## Correction of Inaccurate Information

You have the right to request that Stewart correct any inaccurate information maintained about.

## Limit the Use of Sensitive Personal Information

You have the right to limit how your sensitive personal information, as defined in the CCPA and CPRA is disclosed or shared with third parties.

## Exercising Your Rights Under CCPA and CPRA

To exercise the access, data portability, deletion, opt-out, correction, or limitation rights described above, please submit a verifiable consumer request to us by the available means provided below:

1. Calling us Toll Free at 1-866-571-9270; or

2. Emailing us at Privacyrequest@stewart.com; or

3. Visiting http://stewart.com/ccpa.

Only you, or someone legally authorized to act on your behalf, may make a verifiable consumer request related to your personal information.  You may also make a verifiable consumer request on behalf of your minor child, if applicable.

To designate an authorized agent, please contact Stewart through one of the methods mentioned above.

You may only make a verifiable consumer request for access or data portability twice within a 12-month period. The verifiable consumer request must:

- Provide sufficient information that allows us to reasonably verify you are the person about whom we collected personal information or an authorized representative.

- Describe your request with sufficient detail that allows us to properly understand, evaluate, and respond to it.

File No.:  2045145                                                                                                                 Updated 01/01/2023

Stewart cannot respond to your request or provide you with personal information if we cannot verify your identity or authority to make the request and confirm the personal information relates to you.

Making a verifiable consumer request does not require you to create an account with Stewart.

**Response Timing and Format**

We endeavor to respond to a verifiable consumer request within forty-five (45) days of its receipt. If we require more time (up to an additional 45 days), we will inform you of the reason and extension period in writing.

A written response will be delivered by mail or electronically, at your option.

Any disclosures we provide will only cover the 12-month period preceding the verifiable consumer request's receipt. The response we provide will also explain the reasons we cannot comply with a request, if applicable. For data portability requests, we will select a format to provide your personal information that is readily useable and should allow you to transmit the information from one entity to another entity without hindrance.

Stewart does not charge a fee to process or respond to your verifiable consumer request unless it is excessive, repetitive, or manifestly unfounded. If we determine that the request warrants a fee, we will tell you why we made that decision and provide you with a cost estimate before completing your request.

**Non-Discrimination**

Stewart will not discriminate against you for exercising any of your CCPA and CPRA rights. Unless permitted by the CCPA or CPRA, we will not:

- Deny you goods or services.
- Charge you a different prices or rates for goods or services, including through granting discounts or other benefits, or imposing penalties.
- Provide you a different level or quality of goods or services.
- Suggest that you may receive a different price or rate for goods or services or a different level or quality of goods or services.

**Record Retention**

Your personal information will not be kept for longer than is necessary for the business purpose for which it is collected and processed. We will retain your personal information and records based on established record retention policies pursuant to California law and in compliance with all federal and state retention obligations. Additionally, we will retain your personal information to comply with applicable laws, regulations, and legal processes (such as responding to subpoenas or court orders), and to respond to legal claims, resolve disputes, and comply with legal or regulatory recordkeeping requirements

**Changes to This CCPRA & CPRA Notice**

Stewart reserves the right to amend this CCPA & CPRA Notice at our discretion and at any time. When we make changes to this CCPA & CPRA Notice, we will post the updated Notice on Stewart's website and update the Notice's effective date.

**Link to Privacy Notice**

Stewarts Privacy Notice can be found on our website at https://www.stewart.com/en/privacy.html.

**Contact Information**

If you have questions or comments about this notice, the ways in which Stewart collects and uses your information described herein, your choices and rights regarding such use, or wish to exercise your rights under California law, please do not hesitate to contact us at:

**Phone:**        Toll Free at 1-866-571-9270

**Website:**      **http://stewart.com/ccpa**

**Email:**        Privacyrequest@stewart.com

**Postal Address:** Stewart Information Services Corporation
Attn: Mary Thomas, Chief Compliance and Regulatory Officer
1360 Post Oak Blvd., Ste. 100, MC #14-1
Houston, TX  77056

File No.:  2045145                                                                                          Updated 01/01/2023

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.



ASSESSOR'S MAP
COUNTY OF LOS ANGELES, CALIF.

TRACT NO. 215          M.B.14-42-43

TRACT NO. 8320        M.B. 98-41-43

CODE
67

FOR PREV. ASSMT SEE:
5523 - 3

5523   3

SCALE 1" = 100'

1982

# EXHIBIT C

## <u>OFFER TO PURCHASE REAL PROPERTY</u>

The undersigned (the "<u>Offeror</u>") hereby offers (the "<u>Offer</u>") to purchase from Bradley D. Sharp, the liquidating trustee of the Klein Creditors' Liquidation Trust (the "<u>Liquidating Trustee</u>") formed pursuant to the plan of liquidation confirmed in the chapter 11 case of Leslie Klein (the "<u>Debtor</u>"), pending in the United States Bankruptcy Court for the Central District of California (Los Angeles Division) (the "<u>Bankruptcy Court</u>") bearing case number 2:23-bk-10990-NB, the Liquidating Trustee's right, title and interest to the real property commonly known as 322 N. June Street, Los Angeles, California 90036 (the "<u>Property</u>"), which is the subject of a certain accepted Counter-Offer and exhibits thereto (collectively, the "<u>Agreement</u>"), dated on or about _____, 2026. **Offeror hereby acknowledges receipt of a copy of the Agreement.  [Initials_____].** Offeror agrees to substitute into the Agreement upon identical terms and conditions as set forth therein, except as to price and as otherwise set forth herein.

The Offer price, all cash, shall be $_____ [*NO LESS THAN $5,150,000.00*].

There are no contingencies to the Offer whatsoever—save and excepting Bankruptcy Court approval after notice and a hearing—including, without limitation, inspection, due diligence or financing contingencies.  The Offer is subject to acceptance by the Liquidating Trustee, approval by the Bankruptcy Court, and potential "higher and better" bids made at a hearing to consider approval of the sale of the Property scheduled for June 30, 2026, at 2:00 p.m. in Courtroom "1545" of the United States Bankruptcy Court located at 255 East Temple Street, Los Angeles, California, or as soon thereafter as the Bankruptcy Court provides (the "<u>Sale Approval Hearing</u>").  The Offeror understands, acknowledges, and agrees that if the Offeror is deemed a "qualified bidder," they or their duly authorized representative must personally attend the Sale Approval Hearing.

Offeror understands and acknowledges that the Liquidating Trustee has neither inspected the Property nor analyzed its fitness for any particular use.  Offeror further understands and acknowledges that the sale is solely of the Liquidating Trustee's right, title and interest in the Property, on an "As Is" and "Where Is" basis, with no warranty or recourse whatsoever.  Offeror has completed all due diligence which Offeror believes to be required to purchase the Property and has not relied upon any statement or representation from the Liquidating Trustee, his attorneys, his real estate brokers or other agents.  Any necessary testing, remediation, repairs, or other actions, including without limitation, those relating to any environmental laws, shall be the sole responsibility of the Offeror, at Offeror's sole expense.

The required minimum initial deposit is $154,500.00 (the "<u>Deposit</u>").  To be a "qualified bidder" for purposes of acquiring the Property, Offeror must deliver <u>no later than June 26, 2026 at 2:00 p.m.</u>, to the Liquidating Trustee, c/o Jeffrey W. Dulberg, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067: (a) a cashier's check payable to "Bradley D. Sharp, Liquidating Trustee of the Klein Creditors' Liquidating Trust" in an amount not less than the Deposit, (b) an executed copy of this Offer, and (c) proof of adequate funding to close the proposed sale.  Parties who do not timely submit the foregoing will be barred from bidding at the Sale Approval Hearing subject to the Liquidating Trustee's sole discretion.  The Deposit shall be non-refundable in the event that the Bankruptcy Court confirms the sale to the Offeror but the Offeror breaches their obligations under the Offer, in which event the Liquidating Trustee shall be free to sell the Property to another party and to retain the entire Deposit without liability to any party.  Offeror's sole remedy in the event a sale to Offeror is approved by the Bankruptcy Court and the Liquidating Trustee proves unable to close the sale due to reasons not

1

caused by Offeror shall be a return of the Deposit in full.  If the Offeror performs in full under the terms of the Offer, but the Bankruptcy Court confirms the sale of the Property to another party, Offeror's Deposit shall be refundable in full.  If another party is the successful bidder at the Sale Approval Hearing, Offeror may be deemed a back-up bidder in which event the Deposit will be retained by the Liquidating Trustee until the sale closes to the initial successful bidder.

A commission of 2.00% of the sale price shall be payable to Offeror's real estate broker, if any, subject to approval of the Bankruptcy Court, but only upon closing of the sale to Offeror and only from the proceeds of said sale.

The Offeror understands, acknowledges, and agrees that at the Sale Approval Hearing, only qualified bidders shall be entitled to bid, and that the Liquidating Trustee has sole discretion to determine, in the exercise of his sound business judgment, whether the Offeror is a "qualified bidder."  If the Offeror is not deemed a qualified bidder (but have not otherwise defaulted), the Liquidating Trustee will refund the Deposit.

The Offeror understands, acknowledges, and agrees that upon conclusion of the bidding process, the Liquidating Trustee shall have sole discretion, in the exercise of his business judgment, to decide which of the bids is the "highest and best" bid, subject to approval of the Bankruptcy Court. The overbidder who is accepted by the Liquidating Trustee and approved by the Bankruptcy Court as the successful bidder must pay all amounts reflected in its bid in cash at the closing of the sale. At the Sale Approval Hearing, and upon conclusion of the bidding process, the Liquidating Trustee may also acknowledge a back-up bidder, which shall be the bidder with the next best bid determined in the sole discretion of the Liquidating Trustee subject to Bankruptcy Court approval. Should the successful bidder fail to timely close on the sale of the Property, the Liquidating Trustee may sell the Property to the back-up bidder without further Bankruptcy Court order and retain the Deposit as liquidated damages.  The undersigned Offeror understands, acknowledges, and agrees that the Bankruptcy Court wherein bankruptcy case no. 2:23-bk-10990-NB is pending, shall have and retain exclusive jurisdiction to interpret and enforce this Offer as well as to resolve any dispute related in any way to this Offer, without a jury, and to enter final judgments thereon.

Dated: _____         _____
                                       (Name of Offeror)

                                       _____
                                       (address of Offeror)

                                       _____
                                       (tel. no. and email address of Offeror)

                                       _____
                                       (name, tel. no. email address of authorized agent
                                       of Offeror, if applicable)

                                       _____
                                       (name, tel. no. email address of real estate agent and
                                       brokerage of Offeror, if applicable)

                                       _____
                                       (signature of Offeror and/or authorized agent
                                       of Offeror, if applicable)

LA:4913-7108-3186.1 78512.001

## **DECLARATION OF BRADLEY D. SHARP**

I, Bradley D. Sharp, declare and state as follows:

1. I am the duly appointed liquidating trustee of the Klein Creditors' Liquidation Trust.

2. I make this declaration in support of the *Motion for Order (i) Authorizing Sale of Real Property Commonly Known as 322 N. June Street, Los Angeles, California, Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); and (2) Payment of Real Estate Brokers' Commission* (the "Motion"). All terms defined in the Motion are incorporated herein by this reference.

3. I have entered into an agreement to sell the property located at 322 N. June Street, Los Angeles, California (the "June Street Property") to Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust (the "Buyer"), for $5,140,000.00, subject to Court approval and overbids (the "Accepted Counter-Offer").[1] A true and correct copy of the Accepted Counter-Offer is attached as Exhibit A to the Motion and incorporated herein by reference.

4. With respect to income tax consequences to the Klein Creditors' Liquidation Trust, I do not anticipate a taxable gain from the sale of the June Street Property.

5. The proposed sale terms of the June Street Property was reached via arms-length negotiations, and is "as is," "where is," "with all faults," with no warranty or recourse whatsoever, and is subject to overbid and Court approval.

6. Per a preliminary title report dated May 5, 2026 (the "Title Report"), title to the June Street Property is held by Leslie Klein and Erika Noemi Klein, as Trustees under the Klein Living Trust of 1975, as to an undivided one-half interest and EKLK Foundation, as to an undivided one-half interest.. A true and correct copy of the Title Report is attached as Exhibit B to the Motion and incorporated herein by reference.

---

[1] On May 26, 2026, the Buyer and I signed amended escrow instructions (the "Amended Escrow Instructions"), (a) reducing the Accepted Counter Offer from $5,175,000.00 to $5,140,000.00, and (b) amending name of Buyer to Bruce Cohen Revocable Trust and Mary Louise Cohen Revocable Trust . The Amended Escrow Instructions are incorporated herein and made part of the Accepted Counter Offer.

LA:4912-5567-6179.3 78512.001                    17

7.    According to the Title Report, the liens and claims of record against the June Street Property consist of the following:

(a)    Real property taxes for the fiscal year 2026-2027.

(b)    General and special city and/or county taxes for the fiscal year 2025-2026.

(c)    Delinquent Property taxes for the fiscal years 2019-2020, 2021-2022, and 2023-2024.

(d)    Homestead Declaration executed by Leslie Klein, recorded on May 10, 2023, as Instrument No. 20230302966 of the Official Records.

(e)    Matters contained in document entitled United States Bankruptcy Court Central District of California Los Angeles Division recorded January 31, 2024 as Instrument No. 20240067815 of the Official Records.

(f)    Matters contained in document entitled "Order Granting Motion for Summary Judgment on all claims for Relief against Defendants" recorded February 27, 2025 as Instrument No. 20250126958 of the Official Records.

(g)    Matters contained in document entitled "Order Granting motion of Chapter 11 Trustee to enforce the automatic stay and void grant deed, and Granting in part request for sanctions" recorded June 24, 2025 as Instrument No. 20250418626 of Official Records.

(h)    Matters contained in document entitled "Order Granting Motion of chapter 11 trustee (1) Restoring possession of the property located at 322 N. June st., Los Angeles California to the trustee and compelling debtor to vacate the property" by and recorded February 27, 2025 as Instrument No. 20250126956 of the Official Records.

(i)    Matters contained in document entitled "Order Granting Motion of Chapter 11 Trustee (A) Enforcing Automatic Stay, (B) Expunging Lis Pendens" recorded October 08, 2025, as Instrument No. 20250696275, of the Official Records.

(j)    Notice of power to sell tax defaulted real property for non-payment of delinquent taxes for the fiscal year 2019-2020 in the original amount of $7,349.72, recorded November 21, 2025, as Instrument No. 20250831414, of Official Records.

LA:4912-5567-6179.3 78512.001                              18

8.      I intend to sell the June Street Property free and clear of all liens and claims as provided below, with all liens removed from the June Street Property and the allowed amounts of certain liens and claims to be paid through escrow, and any disputed sums to attach to like amounts of the net sale proceeds, with the June Street Property as follows:

The sale will be free and clear of any lien for real property taxes accrued prior to the date of the close of the sale.  I will pay the real property taxes based on the proportion of the first installment period that runs through the closing date.  The Buyer will be responsible for such taxes thereafter.  I will further pay through escrow taxes due pursuant to the Seller's closing statement, which amounts include transfer taxes, default taxes for tax years 2019-2020, 2021-2022, and 2023-2024, as well as penalties for the tax year 2025-2026.

9.      I propose that the Court approve the following overbid procedures:

(a)      The proposed sale is subject to higher and better bids. Overbidders must appear at the sale hearing concerning approval of this Motion.  Not later than forty-eight (48) hours prior to the hearing, overbidders must deliver to my counsel: (1) a cashier's check in the amount of $154,500.00 (i.e., 3.00% of the minimum overbid amount of $5,150,000.00) payable to "Bradley D. Sharp, Liquidating Trustee of the Klein Creditors' Liquidation Trust"; (2) written proof of ability to close escrow unconditionally in a form acceptable to the Liquidating Trustee; and (3) a written offer to purchase using the form attached as Exhibit C to the Motion and incorporated herein by reference. Bidding, if any, shall proceed in increments of $10,000.00.[2] I retain sole discretion to accept or reject any and all overbids..

(b)      Any prevailing overbidder's deposit shall be nonrefundable in the event that the Court confirms the sale to that party but, for any reason whatsoever, the party fails to close the sale timely. The overbidding party will be bound by all the terms of the proposal set forth in the agreement proposed for confirmation except as to price, without contingencies, including any

---

[2] I reserve the right to eliminate minimum bidding increments in order to maximize value.  In the event bidding reaches $5,399,000.00, the next available minimum overbid amount shall be $5,648,000.00.  As such, any overbid between $5,400,000.00 and $5,647,000.00 will not be accepted and shall be considered null and void.

financing contingency, and shall close the escrow no later than the first business day which is more than 14 calendar days after the entry of an order approving the sale.

(c)      I propose that the Court confirm a back-up buyer so that, in the event that the prevailing buyer fails to close the sale timely, I may sell the June Street Property to the back-up buyer for the amount of such back-up buyer's last bid.  I will be authorized to hold the back-up buyer's deposit pending the closing of the sale to the prevailing bidder.  If the prevailing bidder closes the sale, I will immediately return the back-up buyer's deposit.

(d)      If the prevailing buyer fails to close the sale timely, the back-up buyer will be bound by all the terms of the proposal set forth in the agreement proposed for confirmation except as to price, without contingencies, including any financing contingency, and shall close the escrow within ten (10) calendar days after written notice from me that the prevailing buyer has defaulted. The back-up buyer's deposit shall be nonrefundable in the event that the back-up buyer fails to close the sale timely.

10.     I further seek authority to pay commissions of the brokers through escrow.  I propose to pay an aggregate commission of four and one half percent (4.50%) of the purchase price of the June Street Property to the brokers as follows: Two and one-half percent (2.50%) to Coldwell Banker and Sotheby's as my broker in connection with the closing of this sale; and two percent (2.00%) to The Agency as the Buyer's broker in connection with the closing of this sale.  If a sale of the June Street Property is confirmed as a result of a higher and better offer to overbidder(s) represented by different broker(s), then the proposed commission for the June Street Property will follow the same split guidelines.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this  8th  day of June, 2026, at  New York      ,  NY  .

_____
Bradley D. Sharp

## **DECLARATION OF WILLIAM FRIEDMAN**

I, William Friedman, declare and state as follows:

1.    I am a real estate agent with Coldwell Banker Realty ("Coldwell Banker").   I have experience in marketing properties in the region where the June Street Property is located, and understand the bankruptcy sale process.

2.    Coldwell Banker has been retained by the Liquidating Trustee as a co-broker to market and sell the June Street Property.  *See* Order entered May 21, 2025 [Docket No. 1093].

3.    I make this declaration in support of the *Motion for Order (i) Authorizing Sale of Real Property Commonly Known as 322 N. June Street, Los Angeles, California, Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); and (2) Payment of Real Estate Brokers' Commission*  (the "Motion").  All terms defined in the Motion are incorporated herein by this reference.

4.    I received several offers on the June Street Property.  After negotiations with the Buyer's Broker, I prepared the Accepted Counter-Offer, which is attached to the Motion as Exhibit A.

5.    I will publish information shown below regarding the June Street Property on Coldwell Banker's website https://www.coldwellbankerhomes.com/ca/los-angeles/322-n-june-st/pid_69974314/ to encourage overbidding:

INTERESTED PARTIES CAN OVERBID VIA VIDEOCONFERENCE IN BANKRUPTCY COURT ON JUNE 30, 2026 AT 2:00 P.M. FOR A MINIMUM OVERBID OF $5,150,000. NOT LESS THAN 48 HOURS PRIOR TO THE HEARING YOU MUST DELIVER: 1.) CASHIER'S CHECK IN AMOUNT OF $154,500 PAYABLE TO BRADLEY D. SHARP, LIQUIDATING TRUSTEE OF THE KLEIN CREDITORS' LIQUIDATION TRUST; 2.) WRITTEN PROOF OF ABILITY TO CLOSE ESCROW UNCONDITIONALLY IN A FORM ACCEPTABLE TO TRUSTEE; 3.) A WRITTEN OFFER TO PURCHASE ON THE FORM ATTACHED AS EXHIBIT C TO THE SALE MOTION.  ALL CONTINGENCIES MUST BE WAIVED AND ESCROW SHALL CLOSE 14 DAYS AFTER ENTRY OF COURT ORDER APPROVING SALE. CALL LISTING AGENT FOR COPY OF DISCLOSURES AND TRUSTEE'S MOTION TO CONFIRM SALE OF REAL PROPERTY SALE SUBJECT TO BANKRUPTCY COURT APPROVAL AND OVERBID.

6. Prior to the hearing, I will deliver copies of the Motion with overbidding instruction to the agents of prospective buyers who delivered offers to attend the sale hearing to encourage overbidding on the Accepted Counter-Offer.

7. I will continue to actively market the June Street Property through the date of the hearing on the Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this _5_ day of June, 2026, at _Los Angeles_, California.

_____
William Friedman

## DECLARATION OF JESSICA HEREDIA

I, Jessica Heredia, declare and state as follows:

1.       I am a real estate broker with Sotheby's International Realty ("Sotheby's").  I have experience in marketing properties in the region where the June Street Property is located, and understand the bankruptcy sale process.

2.       Coldwell Banker has been retained by the Liquidating Trustee as broker to market and sell the June Street Property.  *See* Order entered August 22, 2023 [Docket No. 281].  On or about February 20, 2026, I left my position at Coldwell Banker and subsequently was hired as a sales manager at Sotheby's International Realty.  Both Coldwell Banker and Sotheby's have marketed the June Street Property for sale and will share the Broker's split of the commission.

3.       I make this declaration in support of the *Motion for Order (i) Authorizing Sale of Real Property Commonly Known as 322 N. June Street, Los Angeles California, Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); and (2) Payment of Real Estate Brokers' Commission* (the "Motion").  All terms defined in the Motion are incorporated herein by this reference.

4.       The June Street Property was listed on the Multiple Listing Service (the "MLS") on September 29, 2025. There were thirty-four (34) interested parties who either called to inquire about the property, toured the property and/or submitted an offer.

5.       The June Street Property marketing program has included, without limitation, the following:

a.       Listing the June Street Property on the MLS (the Combined Los Angeles/Westside Multiple Listing Service) and the California Regional Multiple Listing Service (CRMLS), with full photographic and descriptive content;

b.      Posting the June Street Property on sothebysrealty.com and the Sotheby's International Realty global luxury syndication network, which distributes listings to affiliated international consumer platforms;

c.      Syndication to all major consumer real estate platforms, including, without limitation: Zillow.com, Realtor.com, Trulia, Homes.com, and Coldwell Banker's consumer network;

d.      Direct broker-to-broker outreach to active buyers' agents working the Studio City, Sherman Oaks, Encino, and greater Westside Los Angeles luxury submarkets; and

f.      Multiple private showings scheduled and conducted by me with prospective buyers and their agents on weekdays and weekends throughout the marketing period.

6.      I will continue to actively market the June Street Property through the date of the hearing on the Motion. I will notify prospective overbidders who have expressed interest in the June Street Property as of the hearing date, as well as the and overbid procedures, and will update the MLS and consumer real estate platforms with such information as appropriate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 5 day of June, 2026, at Los Angeles, California.

Jessica Heredia

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*):  ***NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING (1) SALE OF REAL PROPERTY COMMONLY KNOWN AS 322 N. JUNE STREET, LOS ANGELES, CALIFORNIA 90036, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (2) CLARIFYING STATE OF TITLE TO PROPERTY PURSUANT TO PRIOR COURT ORDER; AND (3) PAYMENT OF REAL ESTATE BROKERS' COMMISSIONS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF BRADLEY D. SHARP, WILLIAM FRIEDMAN AND JESSICA HEREDIA IN SUPPORT THEREOF*** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **June 9, 2026,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:  On (*date*) **June 9, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **June 9, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| **Via Email:**<br>Eric J Olson:  *eric@ejolsonlaw.com*<br><br>Leslie Klein:  *les.kleinlaw@gmail.com*;<br>*leskleinlaw@gmail.com*; *kleinlaw@earthlink.net* | |

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 9, 2026 | Myra Kulick | */s/ Myra Kulick* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4903-8417-0401.2 78512.001

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: **Case 2:23-bk-10990-SK**

- **Simon Aron**   saron@wrslawyers.com, moster@wrslawyers.com;jlee@wrslawyers.com
- **Reem J Bello**   rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Ron Bender**   rb@lnbyg.com
- **Michael Jay Berger**   michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Greg P Campbell**   ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Baruch C Cohen**   bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Theron S Covey**   AttorneyTCovey@gmail.com
- **Daniel A Crawford**   dac@crawfordlawgroup.com
- **Michael G D'Alba**   mgd@lnbyg.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Craig A Edelman**   notice@bkcylaw.com
- **Dane W Exnowski**   dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
- **Todd S. Garan**   ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Robert P Goe**   rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Michael I. Gottfried**   mgottfried@elkinskalt.com, lwageman@elkinskalt.com,docketing@elkinskalt.com,lmasse@elkinskalt.com
- **M. Jonathan Hayes**   jhayes@rhmfirm.com, matt@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;sloan@rhmfirm.com
- **Brandon J. Iskander**   biskander@goeforlaw.com, kmurphy@goeforlaw.com;jfountain@goeforlaw.com
- **Michael S Kogan**   mkogan@koganlawfirm.com
- **Matthew A Lesnick**   matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com;porpe@lesnickprince.com
- **John W Lucas**   jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- **Armen Manasserian**   armen@ml-apc.com, jennifer@ml-apc.com,ruben@ml-apc.com
- **Ron Maroko**   ron.maroko@usdoj.gov
- **Kirsten Martinez**   Kirsten.Martinez@bonialpc.com, Notices.Bonial@ecf.courtdrive.com
- **Steven M Mayer**   smayer@mayerlawla.com
- **Christopher M McDermott**   christophermcdermott@placer.ca.gov, CMM@ecf.inforuptcy.com;cmcdermott@aldridgepite.com
- **Krikor J Meshefejian**   kjm@lnbyg.com
- **Jeffrey P Nolan**   jnolan@pszjlaw.com
- **Eric J Olson**   eric@ejolsonlaw.com
- **Lisa Patel**   lpatel@lesnickprince.com, jmack@lesnickprince.com;porpe@lesnickprince.com;lpatel@ecf.courtdrive.com
- **Jeffrey N Pomerantz**   jpomerantz@pszjlaw.com
- **Brian A Procel**   brian@procel-law.com, rdankwa@millerbarondess.com;docket@millerbarondess.com
- **Matthew D. Resnik**   matt@rhmfirm.com, roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;lesley@rhmfirm.com
- **Kevin Ronk**   Kevin@portilloronk.com, eService@cym.law,karen@cym.law,jodie@cym.law,aileen@cym.law,sarah@cym.law
- **Joshua L Scheer**   jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- **Bradley D. Sharp (TR)**   bsharp@dsi.biz
- **Thomas E Shuck**   tshuck@pmcos.com, efilings@pmcos.com
- **Richard P Steelman**   RPS@LNBYG.COM
- **Nikko Salvatore Stevens**   nikko@cym.law, eService@cym.law,karen@cym.law,aileen@cym.law,sarah@cym.law
- **Alan G Tippie**   Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**   mwachtell@buchalter.com, marias@buchalter.com;docket@buchalter.com
- **John P. Ward**   jward@attleseyward.com, ephuong@attleseyward.com
- **Brett J. Wasserman**   wasserman@smcounsel.com
- **Alex M Weingarten**   aweingarten@willkie.com, lcarter@willkie.com
- **Reilly D Wilkinson**   rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com
- **Beth Ann R. Young**   bry@lnbyg.com, bry@lnbyb.com
- **Clarisse Young**   youngshumaker@smcounsel.com, levern@smcounsel.com
- **Paul P Young**   paul@cym.law, eService@cym.law,karen@cym.law,jodie@cym.law,aileen@cym.law,sarah@cym.law,grace@cym.law
- **Roye Zur**   rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

2. **SERVED BY UNITED STATES MAIL**:

Peter C. Anderson, U.S. Trustee
Michael Jones, Assistant U.S. Trustee
Office of the U.S. Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA  90017

Leslie Klein
322 North June Street
Los Angeles, CA 90004

Nathan Talei
Oldman, Sallus & Gold, L.L.P.
16133 Ventura Blvd., PH-A
Encino, CA 92836

Leslie Klein & Associates, Inc.
c/o Leslie Klein
6454 Van Nuys Blvd. Suite 150
Van Nuys, CA 92801

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4903-8417-0401.2 78512.001

**F 9013-3.1.PROOF.SERVICE**