Jeffrey W. Dulberg (CA State Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  jdulberg@pszjlaw.com
          jlucas@pszjlaw.com

*Counsel to Bradley D. Sharp, Liquidation Trustee*
*of the Klein Creditors' Liquidation Trust, and former*
*Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:23-bk-10990-NB |
| **LESLIE KLEIN**, | Chapter 11 |
| Debtor. | **LIQUIDATION TRUSTEE'S REPLY TO (1) OBJECTION TO ATTORNEYS' FEES CHARGED BY PACHULSKI, ET AL., FILED BY LESLIE KLEIN, TRUSTEE OF THE DAVID GREEN TRUST, TRUSTEE FOR THE JUDITH FRANKEL TRUST, [DAUGHTER OF SAM AND VERA MENLO]; AND LESLIE KLEIN, DEBTOR; (2) OMNIBUS OPPOSITION OF ERICA AND JOSEPH VAGO TO FINAL FEE APPLICATIONS OF BRADLEY D. SHARP, PACHULSKI STANG ZIEHL & JONES LLP, DEVELOPMENT SPECIALISTS, INC., GOLDFARB GROSS SELIGMAN & CO., AND KIECKHAFER SCHIFFER LLP; AND (3) DECLARATION OF LESLIE KLEIN, AS TRUSTEE OF THE EUGENE KOHN TRUST** |
| | [Relates to Docket Nos. 1396, 1397, 1398, 1399, 1400, 1430, 1431 and 1432] |
| | [Evidentiary Objections filed contemporaneously herewith] |
| | Date:        August 4, 2026<br>Time:        2:00 p.m.<br>Courtroom: 1545<br>Location:    255 E. Temple Street<br>                 Los Angeles, CA 90012<br>Judge:       Hon. Neil W. Bason |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4921-6090-8223.4 78512.001

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................................. 4

II.  LIQUIDATION TRUSTEE WILL CONTINUE TO MAINTAIN  A RESERVE FOR THE PURPOSE OF ADMINISTERING THE LIQUIDATION TRUST ......................... 7

III.  THIS IS NOT A COMMERCIAL CASE WITH PARTIES MAKING COMMERCIAL DECISION BUT A CASE BASED ON THE DEBTOR'S RAMPANT PREPETITION FRAUD ................................................................................ 8

IV.  THE VAGOS RELY ON PROPOSITIONS IN THIS CIRCUIT WITHOUT TAKING INTO CONSIDERATION THE FACTS IN THOSE CASES THAT SUPPORTED THE HOLDINGS ................................................................................. 9

V.  THE VAGOS' OBJECTIONS ARE VAGUE GENERALIZATIONS THAT  FOCUS ON POTENTIAL DISTRIBUTIONS TO CREDITORS RATHER  THAN VIEWING THE SERVICES FROM THE TIME THEY WERE RENDERED ............. 12

   A.  Asset Disposition ...................................................................................... 13

   B.  Bankruptcy Litigation ............................................................................... 14

   C.  Case Administration................................................................................... 15

   D.  Financial Filings........................................................................................ 15

   E.  Non-Working Travel.................................................................................. 16

VI.  THE OBJECTIONS TO THE OTHER  PROFESSIONALS ARE WHOLLY UNSUBSTANTIATED ........................................................................................ 16

VII.   CONCLUSION................................................................................................... 17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4921-6090-8223.4 78512.001

2

**TABLE OF AUTHORITIES**

**CASES**

*In re Riverside-Linden Investment Co.*
  925 F.2d 320 (9th Cir. 1991) ........................................................................................... 11

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co.* (*In re Mednet*)
  251 B.R. 103 (9th Cir. B.A.P. 2000) ............................................................................... 10

*Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*
  924 F.2d 955 (9th Cir. 1991) ..................................................................................... 10, 11

**STATUTES**

11 U.S.C. §1106 .................................................................................................................... 15

11 U.S.C. §1106(a) ..................................................................................................... 5, 11, 14

11 U.S.C. §330 ...................................................................................................................... 16

11 U.S.C. §330(a) ............................................................................................................. 9, 14

11 U.S.C. §704(a) ................................................................................................................. 14

11 U.S.C. 1104(a)(1) ............................................................................................................. 14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Bradley D. Sharp, the liquidation trustee (the "**Liquidation Trustee**") of the Klein Creditors' Liquidation Trust (the "**Liquidation Trust**"),[1] hereby files this reply (the "**Reply**") to (1) the opposition filed by Leslie Klein in his capacities as "Green Trustee," "Frankel Trustee," and personally [Docket No. 1430] (the "**First Klein Opposition**") to the final fee application filed by Pachulski Stang Ziehl & Jones, LLP ("**PSZJ**") [Docket No. 1400]; (2) the opposition filed [Docket No. 1431] (the "**Vago Opposition**") by Erica and Joseph Vago (collectively, the "**Vagos**") to the following final fee applications filed by (a) Development Specialists, Inc. [Docket No. 1396] (the "**DSI Final Fee Application**"); (b) Goldfarb Gross Seligman & Co. [Docket No. 1397] (the "**Goldfarb Final Fee Application**"); (c) Kieckhafer Schiffer LLP [Docket No. 1398] (the "**Kieckhafer Final Fee Application**"); (d) Bradley D. Sharp, Chapter 11 Trustee [Docket No. 1399] (the "**Sharp Final Fee Application**"), and (e) PSZJ [Docket No. 1400] (the "**PSZJ Final Fee Application**" and together with the foregoing final fee applications, the "**Final Fee Applications**"), which request without a motion that hearings on the Final Fee Applications be continued for 180 days; and (3) Declaration of Leslie Klein, as Trustee of the Eugene Kohn Trust (the "**Kohn Trustee**") [Docket No. 1432] (the "**Second Klein Opposition**" and together with the First Klein Opposition, the "**Klein Oppositions**").  In support of the Reply, the Liquidation Trustee represents as follows:

## I.
## PRELIMINARY STATEMENT

By the PSZJ Final Fee Application, PSZJ seeks approval of $1,188,800.75 in fees and reimbursement of $14,572.07 in expenses (with respect to the most recent interim period) and final approval of fees in the amount of $7,379,387.20 and reimbursement of expenses in the amount of $124,919.63. PSZJ, however, agrees to seek only 75% of its total fee request (reducing the final fee amount to $5,534,540.40) and permanently forego the rights it had under its Court-approved retention application to share in 10% of all distributions to holders of allowed general unsecured claims up to 100% of the firm's standard billing rates.

---

[1] On April 28, 2026, the Court entered the *Order Confirming Third Amended Chapter 11 Plan* (the "**Plan**") [Docket No. 1366].  The Plan went effective on May 1, 2026 (the "**Plan Effective Date**"). *See Notice of Occurrence of Effective Date of Chapter 11 Plan of Liquidation* [Docket No. 1373].  Pursuant to the Plan, the Klein Creditors' Liquidation Trust became effective on the Plan Effective Date, with Bradley D. Sharp, who was formally the Chapter 11 Trustee, now serving as the Liquidation Trustee.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PSZJ recognizes that this case is no different than other "mass tort" cases where unwilling victims suffer damages caused by the debtor, only here, the Debtor is an affinity fraudster who preyed on members of his religious community causing substantial injury to dozens of individuals, many of whom are elderly. While PSZJ is by no means required to voluntarily reduce its fees, and in fact was engaged at a time when the prospects for repayment to professionals (not to mention unsecured creditors) were very dim, PSZJ nevertheless believes that this is the right step to take given the aforementioned nature of the creditor body and the unfortunate outcome the Debtor has caused for his creditors due to his incessant efforts to thwart creditor recoveries.[2]

Pursuant to section 1106(a) of the Bankruptcy Code, the Liquidation Trustee, in his prior capacity as the chapter 11 trustee, was obligated to investigate all aspects of the estate for the purpose of collecting assets, evaluating claims, and ultimately making distributions to creditors under a plan. The Chapter 11 Trustee's administration of this case by definition required a significant cost – and in fact the Chapter 11 Trustee and his professionals began this case with virtually no cash on hand.

Other than the Debtor who is responsible for the affairs of the estate, no creditors – other than the Vagos – nor the Office of the United States Trustee (the "**UST**") filed objections to the Final Fee Applications. As with the first and second round of interim fee applications, *only* the Vagos take issue with the professionals in this case. As set forth further below, the Vagos draw erroneous conclusions from the cases they cite and misstate the applicable standard under section 330 of the Bankruptcy Code but also fail to cite to any specific work description as being unreasonable, unnecessary, or not benefiting the estate.

Notably, the Vago Opposition is substantially similar, *if not identical*, to the two prior oppositions [Docket Nos. 1087 and 1225] the Vagos filed to the first interim and second interim fee applications filed by the professionals.  Accordingly, because they are equally applicable here given that this is a final request for approval of fees and expenses but so as not to repeat everything stated

---

[2] The Debtor's effort to thwart creditors continues to this day. On July 22, 2026, the Debtor filed a wholly baseless appeal of the Court's sale order relating to his home at 322 N. June St., Los Angeles.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

therein, the Trustee incorporates by reference his replies [Docket Nos. 1099 and 1236] to those prior oppositions filed by the Vagos.

Contrary to the assertions in the Vagos Opposition, the standard for approving fees is not conditioned upon distributions to creditors or the results achieved. Rather, the (a) Bankruptcy Code requires a bankruptcy court to review fees from the perspective that existed when the services were rendered and (b) services at issue need not result in an immediate "material benefit" to the estate. The services need to be "reasonably likely" to benefit the estate at the time they were rendered. As with the prior oppositions, the new Vago Opposition does not question any of the Professionals' time entries with any particularity but instead makes wholesale vague objections in various billing categories that are based solely on the results achieved or the lack of distributions to creditors – neither of which are appropriate grounds under the law.

Notably, the Vagos assert that "[n]othing has been unearthed or recovered **from what the Vagos believe are tens of millions of dollars of the Debtor's hidden funds**." Vago Opposition, 3:5-6 (emphasis added). While the Liquidation Trustee hoped that he would find undisclosed valuable assets that could be used to compensate the Vagos and other creditors, the Liquidation Trustee, despite his efforts, was not able to locate any of the "tens of millions of dollars" the Vagos assert, without proof, exists. Now with hindsight, the Vagos wish the Liquidation Trustee simply sold off known assets with "minimal administrative cost." However, the Vagos again fail to recognize that even the "routine" sales in this case came with opposition from the Debtor, who generally appealed most major actions taken by the Liquidation Trustee and continues to do so.

As the Court recognized in its last ruling in response to the Vagos' opposition to PSZJ's fees,

> In cases like this one, it is also important to acknowledge that a disappointing dividend to creditors might have been "baked in" from the start of the case. While tragic, creditors' money has already been largely dissipated, and it is the unenviable task for bankruptcy professionals to attempt to salvage whatever can be salvaged, with no assurances of a likelihood of success or even of getting paid. To use a hypothetical example (exaggerated for illustrative purposes), it would be unrealistic to presume that a trustee's counsel could turn a likely 1% dividend to creditors into a 50% dividend, and to suppose that results would have been better if only they had been more efficient or if their fees were subjected to "20/20 hindsight" review. In fact, taking on a matter of this nature often exposes a law firm to a potential "catch 22."

> The firm is expected to aggressively pursue potential recoveries and produce miraculous results, while simultaneously assuming all risk that litigation will not result in enough funds to appropriately compensate it for its work, especially if counsel is expected to cap its own compensation so as to generate a meaningful dividend for creditors.

Oct. 7 Fee Opinion (as defined below).

The Vagos also make a request to adjourn the hearing on the Final Fee Applications for 180 days for the purpose of determining "what benefit was provided towards distribution to creditors." Vago Opposition, 2:19-23. Not only is the request improper (*i.e.*, any such request should be made by motion, not an opposition to an application seeking relief from the Court) but the basis for the request would require the Court to review the Final Fee Applications with 20/20 hindsight, which is something the Court has twice found to be improper in accordance with binding Ninth Circuit precedent. As set forth in greater detail below, the Vago Opposition should be overruled.

PSZJ and the Liquidation Trustee believe that the Klein Oppositions should be overruled because they do not object to any of PSZJ's fees and expenses as required by the Bankruptcy Code. Instead, the Debtor, individually and in various capacities where he has no standing, makes unsubstantiated and irrelevant assertions that have little or nothing to do with the PSZJ Final Fee Application. Accordingly, the Klein Oppositions should be overruled.

**II.**

**LIQUIDATION TRUSTEE WILL CONTINUE TO MAINTAIN
A RESERVE FOR THE PURPOSE OF ADMINISTERING THE LIQUIDATION TRUST**

The Liquidation Trustee is sensitive to the fact that the Final Fee Applications seek final approval for combined fees and expenses that exceed the amount of funds presently on hand in the estate. Accordingly, as he has previously in this case, the Liquidation Trustee has always planned, subject to Court approval, to (a) reimburse the allowed expenses of all professionals, (b) pay 100% of the allowed fees of Kieckhafer and Goldfarb given that they are relatively small and/or incurred by professionals that do not routinely provide services in chapter 11 cases; and (c) pay a percentage of the allowed fees of the Liquidation Trustee, DSI and PSZJ to extent possible while maintaining a sufficient reserve.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Liquidation Trustee currently holds a cash reserve of approximately $820,000.00. Of that amount, the Trustee plans to retain approximately $750,000.00 to administer the Liquidation Trust. Thus, once the Liquidation Trust receives the proceeds from the sale of the Dan Hotel (~$250,000) and June St. Property (~$5.1 million)[3] the Liquidation Trust will have sufficient funds to pay the Final Fee Applications in full to the extent the Court approves the same. The Liquidation Trustee, using his business judgment, will only pay any awards made on account of the Final Fee Applications in full upon receipt of sufficient funds that also allow him to maintain a sufficient reserve for the Liquidation Trust.

### III.

### THIS IS NOT A COMMERCIAL CASE WITH PARTIES MAKING COMMERCIAL DECISION BUT A CASE BASED ON THE DEBTOR'S RAMPANT PREPETITION FRAUD

Sections 1106(a)(1) and (3) of the Bankruptcy Code required the Liquidation Trustee to investigate the acts, conduct, assets, liabilities, and financial condition of the Debtor. The Liquidation Trustee's and his professionals' efforts to administer this case have been unnecessarily prolonged and made more complicated because the Debtor provided little to no information about the estate and also opposed the Liquidation Trustee's administration of the estate nearly every step of the way. The Debtor's conduct unfortunately increased the cost of administering the estate. Due to his statutory obligations under the Bankruptcy Code, the Liquidation Trustee did not have the luxury to elect to not investigate the estate and that investigation inevitably came with delay and cost.

None of the creditors of the former chapter estate are "commercial" creditors of the sort typically found in a chapter 11 reorganization case. Rather, the creditor body here is made up of quintessential fraud victims who have seen parts, or all, of their lives ruined by the Debtor. Neither the Debtor's estate, nor the post-confirmation Creditors Trust, is a commercial enterprise that the Liquidation Trustee could manage with goals of beating projections, managing employees, and preserving operational profits for the benefit of creditors. The Debtor has opposed nearly all of the Liquidation Trustee's efforts to administer this case. As non-commercial victims of the Debtor, the creditors have virtually no experience with the bankruptcy process, and they have been clearly

---

[3] The timing of receipt of these proceeds will likely be further delayed pending resolution of the Debtor's appeal of this sale order.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

chastened by the Debtor's misdeeds. At the end of the day, *no party* was willing to work with the Trustee:  not the Debtor, not the Debtor's partner at LCG, nor any other creditor (with the sole exception being with respect to resolution of their particular claims).

**IV.**

### THE VAGOS RELY ON PROPOSITIONS IN THIS CIRCUIT WITHOUT TAKING INTO CONSIDERATION THE FACTS IN THOSE CASES THAT SUPPORTED THE HOLDINGS

As with the Vago's two prior oppositions to PSZJ's interim fee applications, the Vagos cite the relevant provisions of section 330(a) of the Bankruptcy Code and reply on various decisions from the Ninth Circuit and lower courts, but they again fail to apply any of the factors a bankruptcy court considers to the detailed time entries supplied by PSZJ or any of the other Professionals. Instead, the Vagos rely on quotes from Ninth Circuit decisions and other decisions within this Circuit without taking into consideration any of the facts in those cases and whether the legal holdings in those cases have any application to facts in the case at bar.

In the Ninth Circuit, bankruptcy courts are required to review fee requests in a **prospective** manner and not, retrospectively, focusing on the results or the present recovery. The leading case on this issue, which the Vagos rely on, holds that,

> [s]ection 330(a)(3)(A)(C) clearly states that the question governing attorney compensation should be whether services were necessary or beneficial at the time at which the service was rendered. The Fifth Circuit reasoning that a professional's services are only compensable if they result in a material benefit to the estate does not comport with a strict reading of the statute. Section 330 clearly states that (1) services are compensable if they were "necessary . . . or beneficial at the time at which the service was rendered," and (2) services should not be compensable if they were not "reasonably likely to benefit the debtor's estate." §§ 330(a)(3)(A)(C) and (a)(4)(A)(ii)(I). The statute does not require that the services result in a material benefit to the estate in order for the professional to be compensated; the applicant must demonstrate only that the services were "reasonably likely" to benefit the estate at the time the services were rendered. The statute is clear and unambiguous. In our view, the Fifth Circuit's reading of the statute does not comport with the clear meaning of the 1994 amendments, would unreasonably restrict legitimate professional efforts toward effective estate administration, and could well cause attorneys to shy away from work that might benefit the estate. We therefore respectfully reject the Fifth Circuit's view.

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co.* (*In re Mednet*), 251 B.R. 103, 108 (9th Cir. B.A.P. 2000).

The Vagos rely upon *Mednet* for a statement about billing judgment but fail to advise the Court that the holding in *Mednet* (a) requires a bankruptcy court to review fees from the perspective that existed when the services were rendered and (b) found that the services at issue need not result in an immediate "material benefit" to the estate. Instead, the services need to be "reasonably likely" to benefit the estate at the time they were rendered. The Vago Opposition does not question any of PSZJ's time entries but instead makes wholesale vague objections in various billing categories that are based solely on the results achieved or the lack of distributions to creditors.

The Vagos assert that "[r]egarding the requirement to exercise billing judgment, the Ninth Circuit has stated that employment authorization does 'not give [the professional] free reign to run up a tab without considering the maximum probable recovery.'" citing *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 958 (9th Cir. 1991). In *Puget Sound*, the bankruptcy court authorized the committee to review $120,000 in attorneys' fees of a secured creditor and on appeal the Ninth Circuit affirmed the bankruptcy court's denial of fees because the committee's counsel was informed that the fees were reasonable and that cost incurred opposing the fees would likely exceed the amount of fees in dispute, yet still went ahead and opposed the lender's fees without any regard to the cost at issue. *Id*. at 959.

The professional's billing judgment in *Puget Sound* was questionable because the services ($120,000 in fees) related to a claim that was *already recognized* to be largely indisputable and thus it was highly unlikely for there to be any upside to the estate if the claim were disallowed when compared to the fees incurred contesting the claim. Here, on the contrary, the Trustee and PSZJ were handed an estate that was in complete disarray with little to no information. It was impossible for the Liquidation Trustee to administer the estate and make informed decisions without acquiring information about the estate and the claims asserted by and against the estate. Further, the Liquidation Trustee cannot execute sales, defend opposition to sales, and respond to appeals without the advice and counsel of PSZJ, otherwise the Debtor would continue to walk away with property that rightly belongs to the estate for the benefit of creditors.

As a result, the Liquidation Trustee, with the assistance of his bankruptcy counsel, was required to force the eviction of the Debtor from the June St. Property, prosecute the appeal of the June St. Property judgment, the sale of Leonardo Plaza, and the turnover of June St. Property, take action to reverse or unwind the Debtor's attempts to transfer the June St. Property and steal the causes of actions against LCG. Presumably, creditors, including the Vagos, want the Trustee to take control of estate assets and preserve them so their proceeds can be distributed to the holders of allowed claims rather than make decisions in a vacuum and potentially leave assets unadministered or allow claims in amounts that are unsubstantiated. Unlike *Puget Sound*, the Trustee and PSZJ do not have the luxury of information and transparency into various transactions. In addition, the Liquidation Trustee continues to fight with the Debtor regarding the title to the June St. Property who recently appealed the sale order after he already lost his fight to steal the June St. Property before this Court and on appeal.

Similarly, the Vagos cite and rely upon *In re Riverside-Linden Investment Co.*, 925 F.2d 320, 321 (9th Cir. 1991) for the proposition that "[w]hen a cost benefit analysis indicates that the only parties who will likely benefit from [a service] are the trustee and his professionals, the service is unwarranted and a court does not abuse its discretion in denying fees for those services." The Vagos again fail to explain that the Ninth Circuit upheld the denial of fees in *Riverside-Linden* because (a) the claim that was investigated was known to be valid and the estate was solvent and had money to satisfy the claim, *Id*. at 322, (b) there was no need to investigate the equity holders interest especially when the lone creditor did not contest distributions being made to equity, *Id.* 323-324, and (c) there was no need to prepare a full tax return as opposed to a simple summary as the Bankruptcy Code requires. *Id.* at 324.

The professional's billing judgment in *Riverside-Linden* was rightly questioned because it was apparent that the services performed were not necessary before they began. Here, it is necessary for the Liquidation Trustee to incur legal fees so that he can make informed decisions in connection with his execution of his statutory duties under section 1106(a) of the Bankruptcy Code. It is impossible to administer a bankruptcy estate without information and the Liquidation Trustee has utilized PSZJ to gather information so that he can make decisions. The fact gathering necessitates the

incurrence of fees and the Liquidation Trustee and PSZJ have not continued to pursue an investigation or other transaction if after acquiring information it did not appear there would be a benefit to the estate. For example, the Trustee considered selling the personal property located at the June St. Property but determined that the personal property had inconsequential value and the costs would likely exceed the sale proceeds. *See, e.g.*, [Docket No. 1223].

**V.**

**THE VAGOS' OBJECTIONS ARE VAGUE GENERALIZATIONS THAT
FOCUS ON POTENTIAL DISTRIBUTIONS TO CREDITORS RATHER
THAN VIEWING THE SERVICES FROM THE TIME THEY WERE RENDERED**

The Vagos object to five categories of fees in a vague, general manner but do not contest whether any of the services rendered were necessary or beneficial. Instead, each objection questions the fees incurred by looking at the consequences of the services, which from the Vagos' perspective includes only distributions to creditors.

The Court should note that in response to the Vago's opposition to PSZJ's second interim fee application, the Court's tentative ruling was

> (A) to sustain in part and overrule in part the Vagos' objection to Pachulski Stang Ziehl & Jones LLP's ("Trustee's Counsel") fees on an interim basis, without prejudice to revisiting these issues in connection with any final allowance of such fees, but also without "20/20 hindsight," (B) to approve the requested fees of Trustee's Counsel, subject to a 10% fee reduction . . .

Tentative Ruling, October 7, 2025 at 9:14:33 a.m. (the "**Oct. 7 Fee Opinion**").

**Notably, PSZJ is not contesting the Court's interim decision regarding the 10% across the board reduction in fees in the second interim application**. In addition, the Court overruled many of the same issues raised by in the current Vago Opposition, and PSZJ and the Liquidation Trustee believe they apply equally here.

Similarly, in response to the Vagos' opposition to PSZJ's first interim application, the Court

> [O]verrule[d] the Vagos' objections to Trustee's Counsel's fees because, as Trustee's Counsel highlights, they do not refer to any specific time entries that they find objectionable, and their arguments appear to seek a retrospective review of Trustee's Counsel's services rather than analyzing whether the services were reasonably likely to benefit the estate at the time they were

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

rendered. Although this Court has its own obligation to review the reasonableness of professionals' fees and expenses, the tentative ruling is that Trustee's Counsel's services appear to be reasonable and necessary considering Debtor's complete lack of cooperation and the dearth of information and documentation available to Trustee at the time of his initial appointment. The tentative ruling is also that while parties in interest are free to object to the allowance of fees under section 330 or 331, nobody should be subjected to "20/20 hindsight."

Tentative Ruling, June 3, 2025, at 8:41:16 a.m. (the "**June 3 Fee Opinion**").

As discussed in greater detail below, the Vago Opposition should be overruled for the same reasons set forth by the Court in the Oct. 7 Fee Opinion and June 3 Fee Opinion.

**A.**     **Asset Disposition**

The Vago Opposition does not highlight even one time entry from Exhibit "A" of the PSZJ Final Fee Application (it is not clear that the Vagos, or their counsel, reviewed these entries) to question whether the time spent was excessive, whether the services were necessary, whether the services were performed within a reasonable amount of time relative to the complexity of the issue(s), and the other factors a bankruptcy court considers when considering the approval of fees pursuant to section 330(a) of the Bankruptcy Code. Instead, the Vagos argue "sales of properties can be handled by a trustee with modest administrative costs" and PSZJ has not shown the "actual net benefit to the creditors of the estate from these legal services." Vago Opposition, 6:25-27.

The Vago Opposition should be overruled for the same reasons set forth in the June 3 Fee Opinion and the October 7 Fee Opinion. Had the Vagos' counsel reviewed the detailed time entries attached to the PSZJ Final Fee Application as Exhibit "A" they would have seen that they reflect that PSZJ needed to (a) prepare a sale motion for the Debtor's property located at 143 S. Highland; (b) analyze surcharge rights with respect to 143 S. Highland; (c) communicate regarding the potential sale and/or abandonment of the Debtor's personal property located at the June St. Property; (d); the disposition of the Debtor's real estate in Israel; (e) work with title companies to clear up title of the June St. Property as a result of the Debtor's wrongful post-petition transfer to his wholly owned company; and (f) prepare for the sale of the June St. Property.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4921-6090-8223.4 78512.001     13

As the chapter 11 trustee of the Debtor's estate, Mr. Sharp was required to perform the duties outlined in section 1106(a) of the Bankruptcy Code (and section 704(a) as incorporated by section 1104(a)(1) of the Bankruptcy Code). In his former capacity as a chapter 11 trustee, Mr. Sharp could not fulfill his duties and execute the above described actions without legal counsel (*i.e.*, Mr. Sharp requires counsel to effectuate sales, abandonment, surcharge rights and enforcement, and cleaning title of estate property so that it can be sold). All of the steps Mr. Sharp took to administer the estate and corresponding services provided by PSZJ were reasonable, necessary, and the goals of the Mr. Sharp could not have been achieved without such services.

While PSZJ does not agree that its fees should be reviewed in hindsight (as the Court has ruled previously, twice, and required by binding authority), PSZJ notes that the 143 S. Highland sale and the related surcharge motion yielded $271,120 in sale proceeds, the Israel-related sales yielded $809,290 from the Leonardo Plaza sale and are expected to yield $250,000 one the sale of the Dan Hotel closes, and the sale of the June St. Property, which is expected to yield approximately $5.1 million in sale proceeds (subject to the Debtor's recent appeal). In addition, per the terms of the Plan, the Liquidation Trustee will offset the costs of the disposing of the Debtor's personal property by approximately $189,050 in real property exempt proceeds that would have otherwise been payable to the Debtor upon the close of the sale of the June St. Property.

**B.    Bankruptcy Litigation**

The Vagos' opposition to PSZJ's fees in the Bankruptcy Litigation and Appeals category is premised entirely on there being "no specific results" and "no specific benefit to creditors." Vago Opposition, 7:2-22. As above, the Vagos again do not identify any specific time entries to determine whether the time spent was excessive, whether the services were necessary, whether the services were performed within a reasonable amount of time relative to the complexity of the issue(s), and the other factors a bankruptcy court considers when considering the approval of fees pursuant to section 330(a) of the Bankruptcy Code. While the Vagos begrudgingly acknowledge that the "Debtor put up obstacles" during the course of this case, they fail to recognize that the Debtors' routine oppositions, stay violations, and appeals all require the Liquidation Trustee to respond to, and, in some instances, reverse the harm caused by the Debtor. It is unreasonable and unrealistic to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

expect PSZJ and the Liquidation Trustee's other professionals to work for free as they advise and help the Liquidation Trustee execute his statutory duties to administer this case pursuant to section 1106 of the Bankruptcy Code.

## C.    Case Administration

The Vagos contend that PSZJ should not be compensated for case administration, which includes calendaring, updating deadlines, maintaining work in progress list, and reviewing court procedures. The Vagos argue, again without reviewing the detailed time records attached to the PSZJ Final Fee Application as Exhibit "A", that PSZJ should not be compensated for these services "because they are not legal services that should be performed by attorneys." Vago Opposition, 7:24-28. Notably, calendaring, updating deadlines, maintaining work in progress list, and reviewing court procedures were performed by a paralegal or a legal secretary (where there was no charge). In addition, PSZJ, DSI, and the Liquidation Trustee met weekly, or as necessary, to address work-streams and other action items in the case, which are legal services that were included in this category. As PSZJ has stated previously, it was impossible to move this case forward without meeting internally and with the Liquidation Trustee. PSZJ staffed this representation with only three primary attorneys, which during the last fee period was reduced to two. PSZJ could use junior attorneys but PSZJ believes that would only increase the fees because it would add an additional layer of legal oversight that is avoided when the work is performed by experienced attorneys.

## D.    Financial Filings

The Vagos contend that the $5,500.50 relating to "financial filings" should not be compensable because they are not legal services. Again, the Vagos are wrong for the following reasons. The financial filings category relates to the review and completion of monthly operating reports ("**MORs**"). In the detailed time records annexed Exhibit "A" to the PSZJ Final Fee Application, they reflect very modest time entries where Mr. Dulberg reviews MORs in response to questions posed by the client and corresponding entries relating to PSZJ's paralegal's work

preparing and filing the MORs. PSZJ believes that $5,500.50 over the course of nine months is reasonable, necessary, and required because the MORs are a necessary part of any chapter 11 case.

**E.    Non-Working Travel**

The Vagos object to PSZJ's non-working travel time in the modest amount of $5,343.75 because they "are not legal services", there is "no carve-out for general unsecured creditors", and the Liquidation Trustee and his professionals "have not guaranteed that any funds will be paid to general unsecured creditors." Vago Opposition, 8:12-18.

PSZJ agrees that these are not legal services but expenses that were incurred in connection with legal services during an in-person mediation in this bankruptcy case. All but one of the hearings in this case have been conducted by zoom. PSZJ does not regularly travel in this case except for when this case was reassigned to the current Bankruptcy Judge and for an in person mediation. It is unreasonable to expect that the Liquidation Trustee's counsel should have to absorb expenses incurred in connection with the representation, especially when they are extremely modest.

**VI.**

**THE OBJECTIONS TO THE OTHER
PROFESSIONALS ARE WHOLLY UNSUBSTANTIATED**

As with their prior objections, the Vagos again issue a blanket, non-specific objection to the other Final Fee Applications filed by the Liquidation Trustee's professionals but fail to identify any problems with those applications. Instead, the Vagos ask whether or not any of their services have resulted in a return of assets to the estate. Had the Vagos' counsel reviewed those Final Fee Applications, it would have been apparent the services were necessary, for example, for the administration and disposition of real property in Israel (Goldfarb Final Fee Application), tax accounting (Kieckhafer Final Fee Application), the Trustee's forensic accountant (DSI Final Fee Application), and the chapter 11 trustee's commission itself (Sharp Final Fee Application).

All of the Final Fee applications outline the services provided on a professional-by-professional basis. The Vagos' sole focus on "recovery of assets" misses the mark insofar as the standard is applied under section 330 of the Bankruptcy Code. Accordingly, the opposition to the other Final Fee Applications should be denied.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# VII.

## CONCLUSION

For the reasons set forth herein, the Liquidation Trustee requests that the PSZJ Final Fee Application and the other Final Fee Applications be approved and the Vago Opposition and Klein Oppositions be overruled.

Dated:  July 24, 2026

PACHULSKI STANG ZIEHL & JONES LLP


By:   _/s/ Jeffrey W. Dulberg_
Jeffrey W. Dulberg

*Attorneys for Bradley D. Sharp,
Liquidation Trustee of the Klein Creditors'
Liquidation Trust and former Chapter 11
Trustee*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4921-6090-8223.4 78512.001

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*)**:  LIQUIDATION TRUSTEE'S REPLY TO  (1) OBJECTION TO ATTORNEYS' FEES CHARGED BY PACHULSKI, ET AL., FILED BY LESLIE KLEIN, TRUSTEE OF THE DAVID GREEN TRUST, TRUSTEE FOR THE JUDITH FRANKEL TRUST, [DAUGHTER OF SAM AND VERA MENLO]; AND LESLIE KLEIN, DEBTOR; (2) OMNIBUS OPPOSITION OF ERICA AND JOSEPH VAGO TO FINAL FEE APPLICATIONS OF BRADLEY D. SHARP, PACHULSKI STANG ZIEHL & JONES LLP, DEVELOPMENT SPECIALISTS, INC., GOLDFARB GROSS SELIGMAN & CO., AND KIECKHAFER SCHIFFER LLP; AND (3) DECLARATION OF LESLIE KLEIN, AS TRUSTEE OF THE EUGENE KOHN TRUST** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 22, 2026,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) **July 22, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

⊠    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July 22, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| **Via Email:**<br>Eric J Olson:  eric@ejolsonlaw.com<br><br>Leslie Klein:  les.kleinlaw@gmail.com;<br>leskleinlaw@gmail.com; kleinlaw@earthlink.net | |

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 22, 2026 | Nancy H. Brown | */s/ Nancy H. Brown* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4932-1246-2259.5 78512.001

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  **Case 2:23-bk-10990-NB**

- **Simon Aron**   saron@wrslawyers.com, moster@wrslawyers.com;jlee@wrslawyers.com
- **Reem J Bello**   rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Ron Bender**   rb@lnbyg.com
- **Michael Jay Berger**   michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Greg P Campbell**   ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Baruch C Cohen**   bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Theron S Covey**   AttorneyTCovey@gmail.com
- **Daniel A Crawford**   dac@crawfordlawgroup.com
- **Michael G D'Alba**   mgd@lnbyg.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Craig A Edelman**   notice@bkcylaw.com
- **Dane W Exnowski**   dane.exnowski@mccalla.com, bk.ca@mccalla.com;mccallaecf@ecf.courtdrive.com
- **Todd S. Garan**   ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Thomas M Geher**   tgeher@jeffer.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- **Robert P Goe**   rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Michael I. Gottfried**   mgottfried@elkinskalt.com, lwageman@elkinskalt.com,docketing@elkinskalt.com,lmasse@elkinskalt.com
- **M. Jonathan Hayes**   jhayes@rhmfirm.com, matt@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;sloan@rhmfirm.com
- **Brandon J. Iskander**   biskander@goeforlaw.com, kmurphy@goeforlaw.com;jfountain@goeforlaw.com
- **Michael S Kogan**   mkogan@koganlawfirm.com
- **Matthew A Lesnick**   matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com;porpe@lesnickprince.com
- **John W Lucas**   jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- **Armen Manasserian**   armen@ml-apc.com, jennifer@ml-apc.com,ruben@ml-apc.com
- **Ron Maroko**   ron.maroko@usdoj.gov
- **Kirsten Martinez**   Kirsten.Martinez@bonialpc.com, Notices.Bonial@ecf.courtdrive.com
- **Steven M Mayer**   smayer@mayerlawla.com
- **Christopher M McDermott**   christophermcdermott@placer.ca.gov, CMM@ecf.inforuptcy.com;cmcdermott@aldridgepite.com
- **Krikor J Meshefejian**   kjm@lnbyg.com
- **Jeffrey P Nolan**   jnolan@pszjlaw.com
- **Eric J Olson**   eric@ejolsonlaw.com
- **Lisa Patel**   lpatel@lesnickprince.com, jmack@lesnickprince.com;porpe@lesnickprince.com;lpatel@ecf.courtdrive.com
- **Jeffrey N Pomerantz**   jpomerantz@pszjlaw.com
- **Brian A Procel**   brian@procel-law.com, rdankwa@millerbarondess.com;docket@millerbarondess.com
- **Matthew D. Resnik**   matt@rhmfirm.com, roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;lesley@rhmfirm.com
- **Kevin Ronk**   Kevin@portilloronk.com, eService@cym.law,karen@cym.law,jodie@cym.law,aileen@cym.law, sarah@cym.law
- **Joshua L Scheer**   jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- **Bradley D. Sharp (TR)**   bsharp@dsi.biz
- **Thomas E Shuck**   tshuck@pmcos.com, efilings@pmcos.com
- **Richard P Steelman**   RPS@LNBYG.COM
- **Nikko Salvatore Stevens**   nikko@cym.law, eService@cym.law,karen@cym.law,sarah@cym.law,grace@cym.law, kate@cym.law
- **Alan G Tippie**   Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Michael L Wachtell**   mwachtell@buchalter.com, marias@buchalter.com;docket@buchalter.com
- **John P. Ward**   jward@attleseyward.com, ephuong@attleseyward.com
- **Brett J. Wasserman**   wasserman@smcounsel.com
- **Alex M Weingarten**   aweingarten@willkie.com, lcarter@willkie.com
- **Reilly D Wilkinson**   rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com
- **Beth Ann R. Young**   bry@lnbyg.com, bry@lnbyb.com
- **Clarisse Young**   youngshumaker@smcounsel.com, levern@smcounsel.com
- **Paul P Young**   paul@cym.law, eService@cym.law,karen@cym.law,jodie@cym.law,aileen@cym.law, sarah@cym.law,grace@cym.law
- **Roye Zur**   rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

2. **SERVED BY UNITED STATES MAIL**:

Peter C. Anderson, U.S. Trustee
Michael Jones, Assistant U.S. Trustee
Office of the U.S. Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA  90017

Nathan Talei
Talei and Talei
16133 Ventura Boulevard, Suite 700
Encino, CA  91436

Leslie Klein & Associates, Inc.
c/o Leslie Klein
6454 Van Nuys Blvd., Suite 150
Van Nuys, CA  91401

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
LA:4932-1246-2259.5 78512.001

**F 9013-3.1.PROOF.SERVICE**